```
 1          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                   EASTERN DIVISION

 3   DEMETRIUS JOHNSON,              )   No. 20 C 4156
                                     )
 4              Plaintiff,           )
                                     )
 5         vs.                       )   Chicago, Illinois
                                     )
 6   REYNALDO GUEVARA, JOANN HALVORSEN,  )
     as Personal Representative to the   )
 7   Estate of Ernest Halvorsen, DARRYL  )
     DALEY, WILLIAM ERICKSON, JOHN       )
 8   HEALY, and the CITY OF CHICAGO,     )
                                     )   May 26, 2021
 9              Defendants.           )   9:45 a.m.

10               TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HON. SARA L. ELLIS
11
     APPEARANCES:
12
     For the Plaintiff:     MR. ANAND SWAMINATHAN
13                          Loevy & Loevy,
                            311 North Aberdeen Street, 3rd Floor,
14                          Chicago, Illinois  60607

15   For Defendant
     Guevara:               MR. THOMAS M. LEINENWEBER
16                          Leinenweber, Baroni & Daffada, LLC,
                            120 North Lasalle Street, Suite 2000,
17                          Chicago, Illinois  60602

18
     For Defendants Daley,
19   Halvorsen, Erickson,
     and Healy:             MR. JOSH M. ENGQUIST
20                          The Sotos Law Firm, P.C.,
                            141 West Jackson Boulevard, Suite 1240A,
21                          Chicago, Illinois  60604

22

23               PATRICK J. MULLEN
               Official Court Reporter
24          United States District Court
        219 South Dearborn Street, Room 1412
25             Chicago, Illinois  60604
                  (312) 435-5565
```

1    APPEARANCES:   (Continued.)

2    For Defendant City
     of Chicago:              MS. EILEEN E. ROSEN
3                             Rock, Fusco & Connelly, LLC,
                              321 North Clark Street, Suite 2200,
4                             Chicago, Illinois  60654

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    THE CLERK:  2020 CV 4156, Johnson versus Guevara.

2    MR. SWAMINATHAN:  Good morning, Judge.  Anand

3  Swaminathan for plaintiff Johnson.

4    MR. LEINENWEBER:  Good morning, Judge.  Tom

5  Leinenweber for defendant Guevara.

6    MS. ROSEN:  Good morning, Your Honor.  Eileen Rosen on

7  behalf of defendant City of Chicago.

8    MR. ENGQUIST:  Good morning, Your Honor.  Josh

9  Engquist on behalf of the other individual defendant officers.

10    THE COURT:  All right.  Good morning, everybody.

11    Okay.  So we've got the motion to bifurcate, and we

12  have got the motion regarding the deposition of the third party

13  witness.  So with the motion to bifurcate, we just got that

14  filed on the docket, and that's denied.  With the motion

15  regarding the third party deposition, you're going to be before

16  Judge Weisman, I believe, on Friday, is that correct?

17    MR. SWAMINATHAN:  I believe so, Your Honor.

18    MS. ROSEN:  Yes, Judge.

19    THE COURT:  Okay.  That's in the Sierra versus Guevara

20  case, 18 C 3029.  So I've been talking to Judge Weisman and the

21  other judges who are handling the same motion that was filed in

22  these other cases, and I'm giving you kind of a preview of

23  coming attractions.

24    So what Judge Weisman is going to propose to all of

25  you is this.  None of the judges believe that legally we've got

1  the power to enter an order controlling what the other judges

2  do in their cases, and all of the other judges also don't want

3  to see multiple depositions of the same witness.  So what Judge

4  Weisman is going to propose to the parties is this:  to see

5  whether you would agree in all of these cases to one deposition

6  and that the defendants would have extra time so that you

7  can -- you know, in each of the cases, each of the defendants

8  would have sufficient time to ask questions that are specific

9  to each of those cases.  You can figure out how on the

10  defendants' side to split up the questioning in terms of what's

11  common in all the cases, and then one judge -- and Judge

12  Weisman has agreed to be that judge -- would handle any

13  disputes that came up during that deposition, you know, but it

14  would have to be done on consent.

15  So what do the parties think about that proposal?

16  MR. SWAMINATHAN:  I can say from plaintiffs'

17  perspective that that seems quite reasonable.  From our

18  perspective, we would agree to that.  I would say with regard

19  to the, you know, additional time, the answer is yes, we would

20  agree to additional time, as needed, for those depositions

21  beyond the typical seven hours.

22  I'll just say that, you know, in our experience with

23  404(b) witness depositions, they typically don't go the full

24  seven hours.  You know, I think there was one yesterday in

25  another case that went about a half-day.  So I don't anticipate

1    it being, you know, that it even is typically necessary to go
2    the full seven hours, but to the extent defendants needed it, I
3    think we would have no opposition to that.

4           THE COURT:  And what do the defendants think of that
5    proposal?

6           MR. ENGQUIST:  Well, Your Honor, this is Josh
7    Engquist.  I know we have to kind of mull it over and talk
8    among ourselves.  I know this would cause some other issues,
9    too, just because I know we have witnesses that are being
10   deposed for multiple times on the plaintiffs' side or who have
11   already been deposed in other cases and are being deposed again
12   to see if they'll change their story or are being deposed for
13   other reason.  But, you know, we need to kind of look at the
14   cases as a whole, all the different cases and all the different
15   witnesses as a whole to try to figure that part out.  So we'll
16   probably need to put our heads together, but I know we do have
17   some concerns, or I think we'll have some concerns.

18          MS. ROSEN:  And, Judge, sorry.  This is Eileen Rosen.
19   I just want to add that the trouble as a practical matter is
20   all these cases are on different tracks.  So, for example, in
21   the Solache-Reyes case, that discovery is closing June 30th.
22   In Rivera, that discovery is currently scheduled to close June
23   30th.  Your case, this case is on a different track, and we're
24   talking about 10 witnesses that we're going to try and fit in
25   and understand the impact for all the other cases that we're

1   not as familiar with.  So it causes a practical problem based
2   on, you know, the different procedural posture each of the
3   cases are in if plaintiffs in each of the cases are going to be
4   identifying the same witnesses.

5          THE COURT:  And I --

6          MS. ROSEN:  So presumably --

7          THE COURT:  I definitely hear you on that, Ms. Rosen,
8   and the same with you, Mr. Engquist.  You know, what I would
9   propose -- and when you talk to Judge Weisman I know he's going
10  to going to propose the same thing -- you know, even though the
11  cases are on different tracks, the judges involved I think
12  would be willing to stretch out discovery and be flexible on
13  deadlines in order to better coordinate discovery so that
14  things are more efficient.

15         You know, plaintiffs should not be getting multiple
16  bites at the apple in terms of deposing multiple witnesses on
17  the defense side multiple times.  You know, I believe there are
18  six -- well, I guess eight cases, and there should be
19  coordinated discovery so that it's more efficient.  Should
20  plaintiffs in any of these cases prevail, you know, in terms of
21  fees, you know, it doesn't make sense to be continuing to rack
22  up fees on things that could have been done once rather than
23  multiple times.

24         So I would encourage the parties to figure really
25  what's next, you know, what needs to be done, what's left to be

1  done, and figure a way to coordinate that.  From the judges'

2  perspective, we are certainly happy to enter orders that

3  coordinate the discovery and then have just one judge ruling on

4  these issues so that everything is consistent.

5       MR. SWAMINATHAN:  We are certainly amenable from

6  plaintiffs' side.  We're happy to have that conversation with

7  defense counsel about the issue of timing and needing, you

8  know, potentially needing additional time to make it work

9  across the discovery deadlines across the cases.

10       I'll note that the two cases with earlier deadlines

11  that Ms. Rosen mentioned in June, Sierra and Reyes, both of

12  those cases are going to have some additional time for the

13  Monell phase of the case.  So there's going to be an additional

14  fact discovery period that's, you know, ostensibly for Monell

15  rather than the individual case.  So certainly we have no

16  problem agreeing, you know, to do some of those 404(b)

17  depositions in that subsequent period to the extent it allows

18  the parties, you know, to be able to do the depositions in a

19  way that works.

20       MS. ROSEN:  And, Judge, on that point, that's true.

21  There is certainly a Monell phase that's been scheduled in

22  Solache-Reyes.  I don't believe there's been a separate Monell

23  phase scheduled yet in Sierra, but it's going to necessarily

24  have to happen because of the delays that are being caused by

25  the volume of files that are being sought both from the Cook

1   County Public Defender's office and eventually the Cook County
2   State's Attorney's office which are going to obviously, now
3   that this Court has denied the bifurcation motion, are going to
4   impact the schedule here.

5          I don't know if we want to address the schedule now or
6   if you plan to do that later.  But also, you know, that time
7   has been designated for Monell.  Monell is time consuming and
8   requires its own work.  So I don't know necessarily that simply
9   shifting the 404(b) discovery to the Monell phase is going to
10  be enough time from the defendants' perspective, but we're
11  happy to talk to plaintiffs about it.

12         THE COURT:  Yes.  So I would say, you know, talk to
13  each other in advance of Friday, and I think if you come to
14  Judge Weisman with a proposal to coordinate everything and then
15  get that proposal in the form of a motion filed before the
16  other judges with whatever extra time built in that you need to
17  get these things done, I am sure that you will find a favorable
18  reception in front of all the other judges in these cases
19  because it will just be a lot more efficient and much easier
20  and more streamlined for everybody.

21         So in looking at our -- let's see.  So we've got fact
22  discovery closing on July 30th, which obviously you're not
23  going to meet.  How much more time do you want?

24         MS. ROSEN:  So, Judge, this is Eileen Rosen for the
25  city.  So based on what we know about how the Monell discovery

1   has been playing out in the other cases, from the city's

2   perspective it seems to me that in order -- as is stands right

3   now, we don't have agreement on the number of years of files

4   that plaintiff wants for purposes of his Monell claim in this

5   particular case.

6          What we do know is that I believe right now the

7   discovery is requesting 20 years worth of files.  In the other

8   cases where we've litigated the issue, the courts have narrowed

9   that to four or five years, generally speaking.  In the cases

10  where we have a hard-and-fast four or five years worth of

11  files, those cases do not overlap with this case.

12         So once we figure what the appropriate timeframe is

13  for the files, the city is going to have to obviously obtain

14  those files, and historically what we believe will happen is

15  that there will be approximately 100 files per year, depending

16  on the number of years.  So if we just assume for purposes of

17  figuring this out that we're dealing with a four-year timeframe

18  leading up to the incident in this case, which is 1991, the

19  city is going to have to locate and produce approximately 400

20  investigative files and 400 companion records division files.

21         Plaintiff will then issue a subpoena to the Cook

22  County Public Defender's office for the companion files.  In

23  the Sierra case, that subpoena issued in December of 2020.  We

24  don't have the files yet because the PD cannot -- does not have

25  the resources to produce the files in a quick manner.  They

1   have only just identified possible locations for the files.
2   There's about half that they believe they have.  They have to
3   look through the boxes to figure out if the files are actually
4   in the boxes, which is a difficult task for them, and then
5   eventually they're going to have to do a privilege review of
6   those files.

7           Once we know how many files the Cook County Public
8   Defender's office have, then the city is going to subpoena the
9   CCSAO files that match because our defense is that if there was
10  information missing from the PD file but it was in the CCSAO
11  file, the city has dispensed with its Brady obligations.

12          THE COURT:  Okay.

13          MS. ROSEN:  So that's a little bit of background to
14  say we're five months into it in Sierra and we still don't have
15  PD files.  We do now have a list of potential files that the PD
16  might have so that the city can issue its subpoena to the
17  CCSAO, and then I assume the CCSAO is going to have whatever
18  amount of time it's going to need to amass those files.

19          THE COURT:  Okay.

20          MS. ROSEN:  And, of course, once the files are all
21  produced, then the parties are going to evaluate them and
22  develop their theories.

23          THE COURT:  Okay.

24          MS. GARCIA:  So the plaintiff is going to develop his
25  theories on why this establishes his Monell claims, and the

1    city will just develop its defense.

2                THE COURT:  Okay.  Well --

3                MS. ROSEN:  So it seems to me it's going to take at

4    least six to nine months.

5                THE COURT:  Okay.  So what I'm going to do is I'm

6    going to extend fact discovery through July 29th, 2022.  Then

7    in terms of the timeframe of files, 20 years, I will never

8    agree to that.  That's way too much.  I think that between four

9    and five years prior to the incident is appropriate, and I'll

10   leave it to the parties.

11                You know, I don't know in terms of the volume what the

12   difference is between four years versus five years.  Because

13   it's obviously going to be difficult to get these files, you

14   know, if it's a significant number of files, if it adds a

15   significant number of files going with five years versus four,

16   then I'd prefer that the parties do four.

17                MR. SWAMINATHAN:  And then -- oh, sorry, Judge.  I'm

18   sorry.

19                THE COURT:  But I'll leave it up to the parties to

20   decide between those two, that timeframe.

21                MR. SWAMINATHAN:  Yeah, and so let me address that

22   because I think I have a good working relationship with

23   Ms. Rosen, but some of that I feel is a little bit of a

24   misstatement about where we are.  We made a proposal to them

25   that was not about 20 years.  We specifically sent them a

1    letter saying:  Hey, we can agree to do seven years of CRs or

2    five years of CRs, depending on how we choose to categorize it,

3    and we can do seven years of investigative files, which has

4    been our proposal in each of these cases.

5         So, you know, the city has opposed that in every

6    instance and opposed doing any set of files in these cases.  So

7    there's still going to be a stage in which we're going to fight

8    about that.  Typically, you know, one piece that slows these

9    cases down substantially is that we spend months in negotiation

10   with the city waiting for the city to take a position.  It's

11   not Ms. Rosen's fault, but her client, you know, spends months

12   saying, well, they're evaluating their position, only to give

13   us the same position in every case.

14        So, you know, our perspective is this is sort of

15   well-trodden territory.  It's been ruled on in every case.  If

16   we're going to have to file a motion to compel on these Monell

17   files because they're not agreeing to produce them to us, then

18   let's get that process moving.  These things should be filed

19   within two to three weeks.  Let's get it done, and let's get it

20   before Your Honor so that we can address it because this is all

21   -- we sort of know how this all plays out.  Then if it has to

22   play out, it does.  But, you know, let's keep that going and

23   keep that moving.

24        Then the other piece I want to just add is this.

25   There are -- a substantial portion of the files in this case

1  will have been produced in other cases.  So it's not the case

2  that we're starting with no overlap.  This is a 1991 case.

3  1991 files have already been produced in Sierra.  With regard

4  to the earlier years, 1990, '89, '88, and so on, 138 of those

5  files have already been produced in a prior case that's over,

6  Jacques Rivera's case, and a number of other files have been

7  ordered to be produced in the Bouto case.

8          So there will be substantial overlap.  It may be the

9  case that there is some portion that is not overlap, but I want

10  to note that because that has very real implications about the

11  suggestion that we're starting fresh with, you know, 500 files

12  that the city has got to pull out of nowhere and do a whole

13  bunch of work.  So I want to note that.

14          I also want to note that having now worked with the

15  PD's office on these subpoenas, our hope is that now there's an

16  understanding of how that process works.  We've offered to

17  bring in third parties to assist the PD in pulling the

18  documents.  So there's now a process that will be in place for

19  the pulling of files, so that should go faster.

20          So all of that is to say that our view is that an

21  additional year is really much more than we need.  You know,

22  counsel indicated six to nine months.  We would have said six

23  months is what we need to finish this up as long as we put some

24  rigor in place to keep the schedule moving.  If we're going to

25  have to file a motion over how many files and years we get,

1    let's have that conferral and let's get any motions on file

2    within two weeks so we know how this plays out.  Let's engage

3    in that process.  If we do this efficiently and effectively,

4    there's no reason we can't complete this in six months.  That's

5    plaintiff's position.

6              THE COURT:  All right.  Well, let's see where we're at

7    because I'm hoping that you're going to coordinate among all

8    these cases so that, you know, we'll get some efficiencies

9    there.  But in terms of the timeframe for CR files and

10   investigative files, I'm going to say it will be five years up

11   through the incident, so '86 to '91.

12             Then, you know, whatever has been produced in other

13   cases, you can just direct the plaintiff to the production in

14   those cases so that we're not having to redo everything that

15   has been done.  So where you can get efficiencies, you know,

16   use those efficiencies, and then I will see everybody back here

17   September 9th so that we can see how things are progressing.

18             MS. ROSEN:  Judge, this is Eileen Rosen.  One point of

19   clarification.  You said five years of files, right?

20             THE COURT:  Yes, five years of files.

21             MS. ROSEN:  That would be '87, actually, to '91.

22             MR. SWAMINATHAN:  That's right, '87 to '91.

23             THE COURT:  Yes, '87 to '91.

24             MR. SWAMINATHAN:  Okay.  So, Your Honor, you said

25   September 9th?  I'm sorry.  I missed that.

1       THE COURT:  Yes, September 9th.

2       MR. SWAMINATHAN:  Yes.

3       THE COURT:  And that will be at 1:30.

4       MR. SWAMINATHAN:  Thank you, Your Honor.

5       THE COURT:  Okay.  Thanks.

6       Then in terms of the motion for protective order, I'm

7  going to enter and continue that just to allow you to get that

8  resolved, and in two weeks if you can just file something on

9  the docket by June 9th just indicating whether you have reached

10 an agreement or not.

11      MR. SWAMINATHAN:  Okay.  Got it, Your Honor.

12      MS. ROSEN:  Thanks, Judge.

13      THE COURT:  All right.  Thank you.

14      MR. SWAMINATHAN:  Thank you.

15      MR. LEINENWEBER:  Thanks, Judge.

16      MR. ENGQUIST:  Thanks, Judge.

17    (Proceedings concluded.)

18                C E R T I F I C A T E

19      I, Patrick J. Mullen, do hereby certify that the
   foregoing is a complete, true, and accurate transcript of the
20 proceedings had in the above-entitled case before the Honorable
   SARA L. ELLIS, one of the judges of said Court, at Chicago,
21 Illinois, on May 26, 2021.

22                          /s/ Patrick J. Mullen
                            Official Court Reporter
23                          United States District Court
                            Northern District of Illinois
24                          Eastern Division

25