```
 1                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3   DEMETRIUS JOHNSON,                )  No. 20 C 4156
                                       )
 4                  Plaintiff,         )
                                       )
 5          vs.                        )  Chicago, Illinois
                                       )
 6   REYNALDO GUEVARA, JOANN HALVORSEN, )
     as Personal Representative to the )
 7   Estate of Ernest Halvorsen, DARRYL)
     DALEY, WILLIAM ERICKSON, JOHN     )
 8   HEALY, and the CITY OF CHICAGO,   )
                                       )  January 12, 2023
 9                  Defendants.        )  9:45 a.m.

10                    TRANSCRIPT OF PROCEEDINGS
                   BEFORE THE HON. SARA L. ELLIS
11
     APPEARANCES:
12
     For the Plaintiff:    MS. DANIELLE O. HAMILTON
13                         Loevy & Loevy,
                           311 North Aberdeen Street, 3rd Floor,
14                         Chicago, Illinois  60607

15   For Defendant
     Guevara:              MS. MEGAN K. McGRATH
16                         Leinenweber, Baroni & Daffada, LLC,
                           120 North Lasalle Street, Suite 2000,
17                         Chicago, Illinois  60602

18
     For Defendants Daley,
19   Halvorsen, Erickson,
     and Healy:            MR. JOSH M. ENGQUIST
20                         The Sotos Law Firm, P.C.,
                           141 West Jackson Boulevard, Suite 1240A,
21                         Chicago, Illinois  60604

22

23                        PATRICK J. MULLEN
                        Official Court Reporter
24                   United States District Court
                219 South Dearborn Street, Room 1412
25                     Chicago, Illinois  60604
                          (312) 435-5565
```

```
 1   APPEARANCES:   (Continued.)

 2   For Defendant City
     of Chicago:              MS. EILEEN E. ROSEN
 3                            Rock, Fusco & Connelly, LLC,
                              333 West Wacker Drive, 19th Floor,
 4                            Chicago, Illinois  60606

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Telephonic proceedings on the record.)

2          THE COURT:  Then last but not least, 20 CV 4156,

3    Johnson versus Guevara.

4          MS. HAMILTON:  Good afternoon, Your Honor.  This is --

5          THE COURT:  Go ahead.

6          MS. HAMILTON:  Sorry.  This is Danielle Hamilton on

7    behalf of plaintiff's counsel -- on behalf of plaintiff, along

8    with Anand Swaminathan and Isabella Aguilar.

9          MS. McGRATH:  Good afternoon, Your Honor.  Megan

10   McGrath on behalf of defendant Guevara.

11         MS. ROSEN:  Good afternoon, Your Honor.  Eileen Rosen

12   on behalf of defendant City of Chicago.

13         MR. ENGQUIST:  Good afternoon, Your Honor.  Josh

14   Engquist on behalf of the other defendant officers.

15         THE COURT:  All right.  So this is a motion to resolve

16   the disputed facts, and it looks throughout this that it's not

17   a dispute as to the facts themselves but, rather, the

18   evidentiary report of the facts and basically a run through

19   hearsay objections and what qualifies as a business record.

20         So rather than go through these, basically, you know,

21   police reports can be used to support something on summary

22   judgment and isn't necessarily hearsay if it's a business

23   record.  Entries in a police report that result from the

24   officer's observation or knowledge can be admitted under the

25   business rule exception.  So I am at a slight loss as to why

1    these police reports would fall outside of the business rule

2    exception to hearsay.

3           MS. McGRATH:  Your Honor, if I may, this is

4    Megan McGrath for defendant Guevara.  As we said throughout our

5    motion, I think one of the issues that we tried to flag was the

6    amount of times the police report was relied on for the truth

7    of the matter asserted.  It's one thing to rely on a police

8    report to say that this happened on X date, but it's another

9    thing to rely on a police report to essentially give facts of

10   an investigation, which that's what -- the ones that we

11   objected to, that's what a lot -- that's what they have in

12   common, the reliance for the truth of the matter asserted.

13          THE COURT:  But I guess I disagree.  You know, so I

14   think that a lot of these are what the officer had observed or

15   what the officer knew at the time and documented.  So because

16   of the business record exception they're allowed to do that,

17   right?

18          So, for example, I'm looking at number 12 which is on

19   page 3.  That says:

20          "Detective William Erickson wrote a police report

21   documenting the lineup of Johns approximately three hours after

22   the shooting.  Erickson's report lists defendant Guevara being

23   present during the lineup.  Detective Erickson is listed as the

24   reporting officer on the report."

25          None of that is hearsay.

1           MS. ROSEN:  Judge, this is Eileen Rosen.  If I could

2     just explain perhaps why particularly with the Erickson report

3     we have these concerns, so the statement at paragraph 12 states

4     that Detective William Erickson wrote a police report.

5     Detective William Erickson is deceased.  We have never taken

6     his deposition.  He didn't testify in the criminal case, and

7     the report that's being relied upon was not signed by any

8     supervisor.  It was not -- it doesn't have all of the

9     signatures that are typically on a completed supplementary

10    report.

11          So we believe that to extrapolate from a report that

12    is unsigned and doesn't fit all of the parameters of the

13    business records exception because it doesn't look like and

14    fulfill all of the typical requirements of a typical Chicago

15    Police Department supplementary report, they go too far.

16    Plaintiff goes too far when he says at paragraph 12 that

17    Detective William Erickson wrote the report and the things that

18    he documented -- that are documented in that report about what

19    occurred in the lineup.

20          THE COURT:  Well, look --

21          MS. HAMILTON:  Your Honor, may I respond to that?

22          THE COURT:  You can in a second.

23          MS. HAMILTON:  Sure.

24          THE COURT:  I get that obviously this report seems to

25    me has popped up out of nowhere and contradicts the lineup

1    report that defendant Guevara wrote and submitted as part of a

2    file, right?

3              MS. ROSEN:  Correct.

4              THE COURT:  Okay.  So you can certainly draw attention

5    to the fact that this report is not signed by a supervisor,

6    that this report doesn't typically follow what would happen to

7    a report if it were a final report and calls into question the

8    legitimacy of the report, and that's perfectly fine to do if

9    plaintiff wants to use this report on summary judgment.  They

10   can absolutely -- you can absolutely do that.

11             But to say that it's not a business record and

12   basically to say -- essentially, you know, how I'm reading this

13   dispute is that defendants want to say that this report doesn't

14   exist, but I don't believe that you can do that or that you can

15   use the rules of evidence to do that.

16             MS. ROSEN:  Well, I don't think we want to -- sorry.

17             THE COURT:  Go ahead.

18             MS. ROSEN:  I don't think we want to say it doesn't

19   exist.  I think what we're saying is it doesn't support a lot

20   of the facts that are being stated in the 56.1 statement.  So,

21   you know, for example, you know, paragraph 12 does not say

22   there is a police report dated June 12th, 1991, that states X,

23   right?  It states that Detective William Erickson wrote a

24   police report documenting the lineup that he did.  I think it

25   goes too far.  We're not suggesting that they can't refer to

```
 1    the existence of the report, but it goes too far.

 2              THE COURT:  Well --

 3              MS. McGRATH:  Your Honor, especially because -- you

 4    know, Eileen raises a good point when we keep saying it refers

 5    to the Erickson report.  There's been no one to confirm that

 6    that is a report written by Erickson or can identify that.  I

 7    mean, we're not trying to pretend it doesn't exist, but there

 8    are ways that this is going and the line is being taken too

 9    far.

10              THE COURT:  So --

11              MS. HAMILTON:  Your Honor, this is Danielle Hamilton.

12              THE COURT:  Go ahead.

13              MS. HAMILTON:  If I may just respond to that to say

14    that, you know, the face of the report, you know, it's clear

15    that it's Erickson's report.  It's a sworn police report.  It's

16    signed by him.  It says Erickson.  It's his star number.  There

17    are other police records that show that William Erickson had

18    that star number, all police reports that were produced by the

19    City of Chicago in this case.

20              So, you know, we don't -- you know, we don't have a

21    dog in the fight about what the report is called, but certainly

22    Your Honor is absolutely correct that there aren't any

23    evidentiary rules that would exclude this evidence as being

24    relied upon in the joint statement of facts.

25              And also, you know, in addition to the business
```

1    records exception, many of these reports are not being offered

2    for the truth of the matter asserted.  They're being offered to

3    show what information the defendants had at the time, the

4    course of the investigation, the effects the information had on

5    them, and what information they did or did not pass on to

6    prosecutors.  Those are all admissible non-hearsay purposes,

7    and the courts -- the Seventh Circuit has held in many cases

8    that for all of those purposes police reports are admissible

9    and the courts can consider them on summary judgment.

10          So, you know, we think you're exactly right in terms

11   of this that these evidentiary objections, you know, are not

12   appropriate at this time at the summary judgment stage and, you

13   know, we would ask that, you know, the Court rule these reports

14   in particular are either admissible or can be presented in a

15   way that is admissible at trial and, therefore, there's no --

16   it's appropriate to rely on them.

17          THE COURT:  All right.  Anything else from the

18   defendants?

19          MS. ROSEN:  On the issue of police reports?  No.

20   There are some other evidentiary -- well, I will say that

21   depending on which paragraphs, our global comment that I

22   mentioned earlier is that we're not denying or we're not

23   intending to deny the existence of the report but we are

24   concerned with the way the report is being characterized in the

25   fact statements, and that applies to more than the paragraph --

1   more paragraphs than number 12.  But I think our objections

2   with respect to both the Erickson report and some of the other

3   supp reports have the same issue.

4          There is other -- there are other categories of

5   exhibits or evidence that are not police reports that we

6   believe also are problematic, and I don't know if the Court

7   wants to discuss that or not.  But that's all we have on the

8   police reports.

9          THE COURT:  All right.  So with regard to the police

10  reports, I'm going to overrule the defendants' hearsay

11  objections as to those.  I find that there are -- some of these

12  reports are not being used for hearsay purposes and others in

13  other paragraphs, the reports fall under the hearsay exception

14  either as a business record or as to the effect on the listener

15  and what the officers did next and what conduct and decisions

16  they made.  So I'm going to overrule those objections.

17         Then we've got the court's opinions and orders.  As to

18  that objection, I don't believe that those are being used for a

19  hearsay purpose but, instead, those are indicating basically

20  the status of the case and what happened at the time.  So it's

21  basically laying out the progress of Mr. Johnson's case.  So

22  I'm going to overrule those objections as well.  So it goes to

23  the opinions as well as the documents that were filed, the

24  pleadings that were filed.

25         And then the next category would be the affidavits.

1  So those affidavits, why do defendants believe that these

2  individuals would not be available at trial?

3          MS. ROSEN:  Well, with respect to Mr. Agee, we had him

4  under subpoena.  We had communication with him about his

5  deposition.  He needed to continue the deposition.  He stopped

6  returning our phone calls.  He was apparently in communication

7  with plaintiff's counsel.  He indicated that he was ill.  We

8  picked another date for his deposition through plaintiff's

9  counsel because he stopped communicating with us.  The date

10  that we picked, he did not appear.  He still will not

11  communicate with us.

12          I think the last date or the date that he was last

13  scheduled to appear was December 28th.  I don't know if

14  plaintiff's counsel has had any more communications with him or

15  not.  We have not, so we have no reason to believe at this

16  juncture based on his lack of cooperation in sitting for his

17  deposition that he will appear at trial.

18          With respect to the other individual whose name at the

19  moment escapes me, he's out of the Court's jurisdiction.

20          THE COURT:  Mr. Wells.

21          MS. ROSEN:  So again, we have no reason to believe

22  that he will appear for trial.

23          MS. HAMILTON:  Your Honor, this is Danielle Hamilton.

24  Both of those witnesses have been disclosed by plaintiff, and

25  the defendants have their contact information.  We do expect

 1    them to appear at trial.  You know, the defendants haven't
 2    taken any steps to compel Mr. Agee's deposition.  He was ill
 3    for the original deposition he didn't appear for, and I think
 4    that was the reason he didn't or he failed to appear, you know,
 5    later.
 6          You know, obviously the Court can compel that
 7    deposition or take steps to compel it, if needed, but that has
 8    nothing to do with whether or not he'll appear at trial.  You
 9    know, from our perspective, you know, we have no reason to
10    believe that he wouldn't appear at trial.  He's been disclosed
11    as a witness.  He knows he's a witness, the same with
12    Mr. Wells.
13          You know, affidavits are routinely considered at
14    summary judgment as long as it's from a witness who can testify
15    at trial.  So we would ask that the affidavits also be
16    admitted.
17          MS. ROSEN:  Your Honor, if I --
18          THE COURT:  And is Mr. Wells outside the jurisdiction?
19          MS. HAMILTON:  No, he lives in Chicago, in this
20    jurisdiction.
21          THE COURT:  Okay.
22          MS. ROSEN:  Judge, with respect to Mr. Agee, to the
23    extent that Ms. Hamilton just represented that he did not
24    appear on December 27th or December 28th when all the parties
25    were here for his deposition at my office because he was ill,

1    that has not been communicated to us either from Mr. Agee or

2    plaintiff's counsel.

3         The last we heard, plaintiff's counsel repeatedly

4    called Mr. Agee to find out where he was on the date he was

5    supposed to be in our office.  It was our understanding that

6    the reason he didn't appear the first date, whatever date that

7    was a couple weeks prior, was being he was ill.  So to the

8    extent plaintiff has additional information, we'd love to hear

9    it.

10        MR. ENGQUIST:  Your Honor, if I may, this is Josh

11   Engquist.  I think something was said about Mr. Wells.  My

12   understanding is Mr. Wells is in Arkansas, not in Chicago.

13        THE COURT:  Ms. Hamilton, do you believe he's in

14   Chicago?

15        MS. HAMILTON:  No, Mr. Wells lives in Arkansas.  We've

16   had communications with him.  The defendants did not try to

17   take his deposition, and we have no reason to believe he

18   wouldn't show up at trial.  We don't have any additional

19   information about Mr. Agee, who does reside in Chicago, about

20   why he didn't appear at the deposition.  I meant to state that

21   he didn't appear when it was originally scheduled because he

22   was ill.

23        THE COURT:  All right.  All right.  Well, at this

24   point, I mean, we normally do consider and accept affidavits.

25   You know, if the defendants still want to compel Mr. Agee's

1    deposition, you know, I'm happy to do that.  We have done that

2    with other individuals, and I'm happy to do that.  So I'm going

3    to overrule those objections.

4            Then the last bucket of evidentiary objections I

5    believe was -- I think that was it.

6            MS. ROSEN:  Actually, no, Judge.  If you go to the

7    end --

8            MS. McGRATH:  Your Honor, may I be heard about the

9    felony review notes?

10           THE COURT:  I'm sorry?

11           MS. McGRATH:  We have the issue about the felony

12   review notes.

13           THE COURT:  All right.  With the felony review notes,

14   again, why don't those fall under the business records

15   exception?

16           MS. McGRATH:  They haven't been identified as the

17   records of the person who they're attributed to.

18           MS. HAMILTON:  Your Honor, this is Danielle Hamilton.

19   The records come from the state's attorney's office.  We

20   subpoenaed the state's attorney's office for their file on the

21   prosecution of Mr. Johnson, and this is what they produced.  If

22   you look at the face of the document which, you know, we

23   included as an exhibit, it says, you know, whatever the name of

24   the form is followed by a brief synopsis of the facts and then

25   it says by ASA Susan Ziegler.  So the face of the document says

1    that it was a synopsis of facts written by Susan Ziegler.  It's

2    her handwriting.  You know, the end of the document is in the

3    same handwriting as the handwriting that says "Susan Ziegler"

4    on it.

5            We think this is also very clearly a business record

6    of the state's attorney's office, and the state's attorneys

7    have been disclosed in this case that could authenticate that

8    record.  So we would think this also falls in the business

9    record exception and should be considered at summary judgment

10   by Your Honor.

11           THE COURT:  Okay.

12           MS. ROSEN:  Judge, if I could, this is Eileen Rosen.

13           MS. McGRATH:  Your Honor --

14           MS. ROSEN:  If I could just add one point, first of

15   all, they're not felony review notes.

16           MS. HAMILTON:  They're not called felony review.

17           MS. ROSEN:  Correct.  They're called the CCSAO Form

18   101.  They're Exhibit No. 25.  The paragraph at -- the

19   statement at paragraph 45 that relies solely on this form

20   states that ASA Susan Ziegler presented the case to the grand

21   jury.  Even reading document itself, even if you're just

22   reading the language, we don't know that that's, in fact, true.

23   That's not support for that statement.

24           Then it goes on to say that Johnson was indicted for

25   murder, attempted murder, aggravated battery, and aggravated

1    discharge of a firearm, and then it goes on to say her grand

2    jury synopsis, presumably in reference to ASA Ziegler, makes no

3    mention of the June 12th positive identification of Johns by

4    Aby Gonzalez.  We don't know whose notes they actually are.  We

5    don't know when the notes were taken.  We don't know what the

6    purpose of the notes were.  There's been no foundation laid for

7    the notes.

8            THE COURT:  All right.  So if you look at the last

9    page of that exhibit, it's Bates stamped CCSAO 32.  This

10   states:

11           "True bill presented Grand Jury by Susan Ziegler."

12           Then it gives the date of August 19th, 1991, and then

13   the grand jury number, which is August 826.  So that, you know,

14   I think that takes care of the first sentence, right, that she

15   presented the case to the grand jury and has the information

16   there as well, what the facts were and the witnesses.

17           And then Exhibit 26 is basically who said what when

18   they were in front of the grand jury, it looks like.

19           MS. ROSEN:  Judge, I would just direct your attention

20   to Bates stamp -- sorry, it's hard to read.  So it's CCSAO, and

21   I believe it's 16 or 17, and it's page 3.

22           THE COURT:  Yes.

23           MS. ROSEN:  So you'll see it says "do not copy this

24   page" as a post-it note.

25           THE COURT:  Yes.

1          MS. ROSEN:  Then below that, you can see "Zalez,"

2     Z-a-l-e-z, and we know that the name of the witness was Aby

3     Gonzalez.  You cannot read what this says, and then there's a

4     redaction, so on that page and then the next page, and then

5     there's the list that says -- I think it's the last, yeah, the

6     last page of the document, it says:

7          "4, none.  5, none.  6, none.  Defendant has extensive

8     juvenile history but no findings of delinquency.  7, none.  8,

9     none."

10          That to me does not summarize what went on in the

11     grand jury, which is the problem with the conclusion in the

12     fact statement that it was a summary of the testimony that was

13     given before the grand jury.

14          THE COURT:  But if you're looking at --

15          MS. HAMILTON:  Your Honor, this is Danielle Hamilton.

16     Just to say that CCSAO --

17          THE COURT:  Hold on.

18          MS. HAMILTON:  Oh, I'm sorry.

19          THE COURT:  If you look at CCSAO 18, it says "Witness

20     6, Aby Gonzalez," and then it says:

21          "Witness 6 was standing on the southeast corner of

22     North and Claremont when he saw a male black come running

23     toward him.  The male black stopped and pulled a gun and

24     pointed it at him, stood there for several seconds, and then

25     the male black ran toward Victim 1.  Witness 6 saw the male

1    black fire two shots at Victim 1 and one shot at Victim 2 and

2    then put the gun in his waistband and ran past Witness 6 again

3    southbound on Claremont toward LeMoyne.  Witness 6 did not view

4    a lineup with defendant in it."

5         So again, you know, that's what these -- that's just

6    what's included in the notes.  That's what the notes reflect.

7    Now, does it mean that this is, you know, exactly what

8    happened?  No, and you can argue as to, you know, whatever

9    inference you want to argue from it.  But this document, you

10   know, I'm sure, also doesn't mention other things.  But just

11   because it doesn't mention it doesn't mean that it didn't

12   necessarily happen.  You know, you can always get the grand

13   jury transcripts if they exist.  But again, I don't see how

14   it's not a business record.  You know, as long as they can lay

15   the foundation for it and authenticate it at trial, I can

16   consider it on summary judgment.

17         All right.  There was something else, Ms. Rosen,

18   another bucket?

19         MS. ROSEN:  If we look at paragraphs 78 and 79, the

20   reliance on the state's brief related to the certificate of

21   innocence proceeding where the statement is:

22         "The state said in its briefing on Johnson's petition

23   for a certificate of innocence that Guevara's suppression of

24   the Erickson lineup report was a" -- quote -- "obvious Brady

25   violation."

1    THE COURT:  Yes.  But again, it's not being -- that's

2  not being used for the truth that it was.  That is that that's

3  what the state's position was at the time, and that's the only

4  way that I would consider it.  So not that that makes it true

5  that it was an obvious Brady violation but, rather, that that

6  is the position that the state took.

7    And the same with 79, it's that, you know, this was a

8  factor that the judge considered in granting a certificate of

9  innocence.  Okay.  That doesn't mean that it was a Brady

10  violation.  All it means is that this is something that that

11  particular judge considered in issuing a certificate of

12  innocence.

13    MS. ROSEN:  Well, I know that we're not supposed to

14  argue relevance in this, but then it gets back to then why is

15  it -- if they're not offering it for the truth of the matter

16  asserted, which is that the state's attorney's office and the

17  judge already determined there was a Brady violation, then

18  there's really no relevance to these two paragraphs to any

19  summary judgment motion.  But I appreciate that that's not what

20  we're supposed to be arguing here today.

21    THE COURT:  And if it's -- you know, again, if it's

22  not relevant, I won't consider it on summary judgment.  I

23  haven't seen the plaintiff's argument obviously at this point,

24  but things that are not relevant, I won't consider them.  But I

25  don't know what the plaintiff's argument is, and so I don't --

1    I'm not going to at this point guess as to the relevance.  But

2    in terms of, you know, it being inadmissible hearsay, I don't

3    read it as inadmissible hearsay.  Instead, it's, you know, this

4    is what she -- one of the factors she considered in ruling on a

5    certificate of innocence.

6              All right.  Did I miss anything?

7              MS. HAMILTON:  Nothing from the plaintiff, Your Honor.

8    I think you covered everything.

9              MS. ROSEN:  I think you addressed it all, Judge.

10             THE COURT:  Okay.  All right.  I think that's it then,

11   right?  We've got the summary judgment briefing schedule set.

12   I see that you have a settlement conference with Judge McShain

13   set for February 8th.  Do you want me to bump the summary

14   judgment briefing schedule till after your settlement

15   conference, or do you want to keep it as is?

16             MS. HAMILTON:  Your Honor, the plaintiff would prefer

17   that we keep it as is.  You know, we've worked hard at getting

18   this schedule in place, so we're prepared to file the motion on

19   January 20th.

20             THE COURT:  All right.  What do defendants think?

21             MS. ROSEN:  Well, the defendants think that it's

22   potentially a waste of resources to proceed with the summary

23   judgment briefing in light of the fact that we have a

24   settlement conference scheduled February 8th.

25             THE COURT:  So, Ms. Hamilton, I tend to agree with

1    Ms. Rosen on this.  You know, if both parties are going into

2    the settlement conference in good faith, which I presume you

3    are, you know, it's going to be a lot of money in terms of time

4    that the plaintiff is putting together to put this summary

5    judgment motion together and file it, and I would rather the

6    time and money that you're spending on the summary judgment

7    motion, you know, not be adding -- you know, one of the things

8    you're going to have to talk about are attorney's fees, and I

9    don't want to add to the attorney's fees if we don't have to.

10          MS. HAMILTON:  Understood, Your Honor.  Could we --

11   we'd be prepared to file the summary judgment motion after the

12   conference.  Could we have a date of February 11th, which is

13   three days after the conference?  If it isn't successful, could

14   we then file?

15          THE COURT:  Sure.  Then, Ms. Rosen, when do defendants

16   want to file a response?

17          MS. McGRATH:  Your Honor, if we could have the same

18   schedule as we agreed to, that would give us 30 days.

19          THE COURT:  All right.  So then it would be due March

20   13th for the response.  Then how long for the reply?

21          MS. HAMILTON:  I think two weeks from the response

22   date will be fine for plaintiff.

23          THE COURT:  All right.  So that will be March 27th.

24   So we'll make that change in the minute order today.

25          All right.  Anything else we need to take up?

1        MS. ROSEN:  Not from the city.

2        MS. McGRATH:  I don't believe so, Your Honor, not from

3   defendant Guevara.

4        MS. HAMILTON:  Nothing from plaintiff.

5        MR. ENGQUIST:  Your Honor, this is Josh Engquist.

6   Nothing from me.

7        THE COURT:  All right.  Then we'll see -- oh, where

8   are you in terms of your experts?  I know the plaintiff's

9   expert disclosures are due January 30th.  Have you already,

10  Ms. Hamilton, put the work in to identifying your experts and

11  the reports at this point?

12       MS. HAMILTON:  Not completely, we're working on the

13  reports now.  But, you know, if the Court is inclined to give

14  an extension to that in light of the settlement conference,

15  we'd be fine with, you know, having a deadline after the

16  conference.

17       THE COURT:  Okay.  So I'm going to do that as well.

18  How many experts do you plan on disclosing?

19       MS. HAMILTON:  We intend to disclose, I think, four or

20  five experts.  Some of those will be individuals, the

21  individual case experts, and then some of those will be the

22  Monell experts.

23       THE COURT:  All right.  Why don't I do this.  Because

24  it's going to shift everything else, would the parties just

25  want to talk to each other and propose at the conclusion of

1    the -- either do it now or after your settlement conference,

2    just send me a proposed expert discovery schedule and summary

3    judgment briefing schedule that works for everybody?

4          MS. ROSEN:  That's fine, Judge.

5          MS. HAMILTON:  Your Honor, on behalf of the plaintiff,

6    we'd prefer if the Court sets an expert discovery schedule just

7    because we've had continuing disagreements about the length of

8    that schedule.  You know, our position is that the Monell

9    expert, the defendants have seen the same report before and so

10    we wanted a shorter deadline.  So if it's not too much, if Your

11    Honor wouldn't mind setting the schedule, I think that would

12    avoid any, you know, need for motion practice.

13          MS. ROSEN:  Well, we have a -- Judge, this is Eileen

14    Rosen.  We have a schedule in place.

15          THE COURT:  Right.

16          MS. ROSEN:  The Court already settled that dispute,

17    right, the dispute about how much time.  So I thought we were

18    simply talking about adjusting the schedule, but it's a lot of

19    dates.  I understood the Court to say if we could simply

20    propose the dates to avoid the Court having to make all the

21    adjustments.

22          I assume we're going to pick whatever the disclosure

23    dates are that plaintiff wants based on the settlement

24    conference and then move all the scheduling behind that date in

25    the same way.  You know, I don't remember what this one was in

1    particular, but if it's 60 days between plaintiff's disclosure

2    and defendants taking the expert deps or whatever it is, then

3    it would just move in sync.

4           THE COURT:  Yes, you are correct.

5           MS. HAMILTON:  Okay.  That's fine with plaintiff.  I

6    misunderstood what the Court was asking.  If we're just moving

7    the schedule by some amount, the already existing schedule,

8    that's fine with plaintiff.  We can do that and propose it to

9    the Court.

10          THE COURT:  All right.  All right.  I don't know what

11   else -- you know, you guys may have other trials going on and

12   other things, and once I start moving them myself you're going

13   to go back and see that it's not going to work.  So I would

14   rather you just talk to each other and within that framework

15   pick dates that work for everybody.  So if you go ahead and do

16   that and just send that to our proposed order email, then we

17   can get that entered.

18          MS. ROSEN:  That would be great.  There's one thing,

19   one additional thing actually, Judge, that I forgot about.

20   Some of the exhibits that plaintiff filed with the joint motion

21   to resolve disputed facts are criminal histories related to

22   individuals that are not parties to this case.  They're all

23   marked confidential and they weren't filed to put the file

24   under seal, and there's a lot of personal identifying

25   information in those documents.

1    THE COURT:  Okay.  So what the parties should do --

2    and maybe, Ms. Hamilton, you can do it since you filed it -- go

3    back and ask the docketing department to remove 196 and then

4    just go ahead and file it under seal, or if they can do it

5    themselves then just seal docket 196.

6         MS. HAMILTON:  Yes, Your Honor.  We'll do that right

7    away.

8         THE COURT:  Okay.  All right.  I think that's it then.

9    If there's anything else, let me know.  Otherwise, it looks

10   like I'll see everybody back on January 10th for a ruling date

11   on the summary judgment motions.  Okay.  Thank you.

12        MS. ROSEN:  Thanks, Judge.

13        MS. HAMILTON:  Thank you, Judge.

14        MS. McGRATH:  Thank you, Your Honor.  Have a good day.

15        THE COURT:  You, too.

16              C E R T I F I C A T E

17        I, Patrick J. Mullen, do hereby certify that the
     foregoing is a complete, true, and accurate transcript of the
18   proceedings had in the above-entitled case before the Honorable
     SARA L. ELLIS, one of the judges of said Court, at Chicago,
19   Illinois, on January 12, 2023.

20                        /s/ Patrick J. Mullen
                          Official Court Reporter
21                        United States District Court
                          Northern District of Illinois
22                        Eastern Division

23

24

25