**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEMETRIUS JOHNSON, | ) | |
| | ) | Case No. 20 cv 4156 |
| *Plaintiff*, | ) | |
| | ) | Judge Sara L. Ellis |
| *v.* | ) | |
| | ) | Magistrate Judge Heather K. McShain |
| REYNALDO GUEVARA, the ESTATE of | ) | |
| ERNEST HALVERSON, DARRYL DALEY, | ) | |
| WILLIAM ERICKSON, JOHN HEALY, and | ) | |
| the CITY OF CHICAGO | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| *Defendants*. | ) | |

**<u>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS PARTIAL MOTION
FOR SUMMARY JUDGMENT AGAINST DEFENDANT GUEVARA</u>**

Arthur Loevy
Jon Loevy
Danielle Hamilton
Anand Swaminathan
Steven Art
Rachel Brady
Isabella Aguilar
Sean Starr
Joshua Tepfer
LOEVY & LOEVY
311 North Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312) 243-5900
hamilton@loevy.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... i

INTRODUCTION ............................................................................................................................1

SUMMARY OF UNDISPUTED FACTS ........................................................................................2

LEGAL STANDARD.......................................................................................................................8

ARGUEMENT .................................................................................................................................8

    I.    Defendant Guevara Suppressed Exculpatory Evidence.........................................................9

    II.    Johnson and his Defense Attorneys Exercised Reasonable Diligence .............................11

    III.    The Suppressed Lineup Report Was Favorable to the Defense.........................................14

    IV.    The Suppressed Lineup Report Was Material ...................................................................15

CONCLUSION................................................................................................................................15

## Table of Authorities

*Avery v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017) ...........................................................13

*Banks v. Dretke*, 540 U.S. 668 (2004) ........................................................................................12

*Bies v. Sheldon*, 775 F.3d 386 (6th Cir. 2014) ............................................................................14

*Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001)....................................................................9,11

*Boyette v. Lefevre*, 246 F.3d 76 (2d Cir. 2001) ..........................................................................14

*Brady v. Maryland*, 373 U.S. 83 (1963) ............................................................................... *passim*

*Carrillo v. City of Los Angeles*, 798 F.3d 1210 (9th Cir. 2015) ..................................................14

*Cent. States, Se. & Sw. Areas Pension Fund v. Port Huron Bldg. Supply Co.,* 2016 WL 611805, (N.D. Ill. Feb. 16, 2016*)*........................................................................................................8

*Fields v. Wharrie*, 672 F.3d 505 (7th Cir. 2012) ........................................................................15

*Giglio v. United States*, 405 U.S. 150 (1972) ........................................................................8,9,15

*HSBC Bank USA, N.A. v. Leon*, 2014 WL 1088810 (N.D. Ill. Mar. 18, 2014) ..............................8

*Jefferson v. United States*, 730 F.3d 537 (6th Cir. 2013) ..............................................................12

*Kyles v. Whitley*, 514 U.S. 419 (1995)............................................................................................9

*Napue v. Illinois*, 360 U.S. 264 (1959) ..........................................................................................9

*Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 67 F. Supp. 3d 874, 880(N.D. Ill. 2014).....8

*Rivera v. Guevara*, 319 F. Supp. 3d 1004 (N.D. Ill. 2018) ..........................................................14

*Smith v. Cain*, 132 S. Ct. 627 (2012) ............................................................................................9

*Steidl v. Fermon*, 494 F.3d 623 (7th Cir. 2007) ..........................................................................10

*Strickler v. Greene*, 527 U.S. 263 (1999) ..........................................................................11,12,13

*United States v. Agurs*, 427 U.S. 97 (1976)................................................................................9,15

*United States v. Bagley*, 473 U.S. 667 (1985) ............................................................................15

*United States v. Earnest*, 129 F.3d 906 (7th Cir. 1997)................................................................21

*Wearry v. Cain*, 136 S. Ct. 1002 (2016) ........................................................................................9

*Youngblood v. West Virginia*, 547 U.S. 867 (2006)........................................................................8

i

## INTRODUCTION

In 1991, fifteen-year-old Demetrius Johnson was wrested from his family, school, and friends when he was wrongfully arrested, prosecuted, and convicted for murder and attempted murder, crimes that he did not commit. He spent the next thirteen-and-a-half years in prison fighting to prove his innocence. Decades later, Johnson learned that Chicago police officers, led by notorious detective Reynaldo Guevara, had fabricated and suppressed evidence that caused his wrongful conviction. In 2019, based on the revelation that false evidence had been used against him and exculpatory evidence had been hidden from him, Johnson was granted post-conviction relief, and state prosecutors dropped the charges against him. The next year, Illinois courts awarded Johnson a certificate of innocence. In July 2020, Johnson filed a civil rights lawsuit alleging that Guevara and others, as well as the policies and practices of the City of Chicago, violated his rights protected by the U.S. Constitution and Illinois law.

Over the course of Johnson's civil suit, he has amassed overwhelming evidence that among other misconduct, Defendant Guevara suppressed highly exculpatory evidence that shows Johnson was innocent. Accordingly, Johnson seeks partial summary judgment against Guevara on his *Brady* claim. There is no genuine dispute that Guevara suppressed a report documenting that the police's original suspect was identified by an eyewitness in a lineup, and that this suppressed evidence was material and favorable to Johnson. As such, Johnson is entitled to judgment as a matter of law.[1]

---

[1] On July 19, 2022, Johnson informed Defendant Guevara that he intended to move for partial summary judgment on his *Brady* claim, described the basis of the motion, and proposed a Joint Statement of Undisputed Material Facts. Over the next seven months, the parties exchanged multiple drafts of the joint statement. On January 6, 2023, the parties submitted a joint motion to resolve several statements of fact that were in dispute. On January 12, the Court resolved the disputed facts in Johnson's favor. Dkt. 203. The agreed Joint Statement of Undisputed Material Facts ("JSOF") is attached to this motion.

## SUMMARY OF UNDISPUTED FACTS

On the evening of June 12, 1991, a single shooter opened fire near the intersection of Claremont and North Avenues in Chicago. Joint Statement of Undisputed Material Facts (hereafter, "JSOF") ¶3. The shooter fired at Edwin Fred and Raul Ortiz who were standing on the corner. JSOF ¶5. Fred died from his wounds while Ortiz survived and was taken to the hospital. JSOF ¶6. This was the night the Chicago Bulls won their first NBA Championship; the game was televised and ongoing at the time of the shooting. JSOF ¶4.

Chicago police responded to the scene and conducted an initial canvas. They interviewed eyewitness Aby Gonzalez, who stated the shooter pointed a gun in his direction, and then Gonzalez got out of the way and observed the shooter fire at Fred. JSOF ¶7. Defendant Guevara was assigned to investigate the case and interviewed several eyewitnesses, including Gonzalez, who told Defendant Guevara that he had seen the shooter. JSOF ¶8.

Officer Darryl Daley also responded to the shooting. Initial flash messages sent out minutes after the shooting indicated that the shooter was a "male Black" member of the Maniac Latin Disciples street gang with the name "Little D" or "Bryan Johnson." The messages included that a second offender was a "male Hispanic." Daley, who knew Bryan Johns to match the description, go by the nickname "Little D," and to be a member of the Maniac Latin Disciples, immediately suspected Johns committed the shooting. JSOF ¶9.

Daley drove to the location where he had seen Johns approximately an hour before the shooting. Daley saw Johns exiting a van with two male Hispanics. He arrested Johns and had the van searched. A handgun was recovered from the van. JSOF ¶10.

The same night of the shooting, Daley took Johns to Area 5 and Johns was placed in a lineup viewed by some of the eyewitnesses, including Gonzalez. JSOF ¶¶11, 17. Detective

2

William Erickson wrote a police report documenting the lineup with Johns. Erickson's report lists Defendant Guevara as being present for the lineup. JSOF ¶12. According to the lineup report, Gonzalez identified Johns as the perpetrator of the Fred murder and Ortiz attempted murder. JSOF ¶17.

Despite being immediately suspected of the crime, despite being located near the crime scene in possession of a gun, despite being arrested for the Fred murder, and despite being identified by an eyewitness in a lineup conducted by Guevara and Erickson, Bryan Johns was released from custody that same night. JSOF ¶38.

Defendant Guevara then wrote a different lineup report stating that he and Detective Erickson conducted a lineup on the night of the shooting with Johns as the suspect. According to Guevara's report, eyewitness Gonzalez *did not* make an identification during the Johns lineup. JSOF ¶¶24, 25.

As discussed in greater detail below, Erickson's lineup report was never disclosed to prosecutors, defense attorneys, or to Johnson during criminal proceedings. *Infra* at XX. Erickson's report was also never included in the Chicago Police Department's Permanent Retention File for the Fred homicide, in violation of CPD policy. JSOF ¶¶14, 15. Erickson submitted his report a day after the lineup occurred. JSOF ¶19. Erickson's lineup lists the same Records Division number (P270878) as other police reports for the Fred homicide investigation and should have been kept in the Permanent Retention File so it would be available if subpoenaed. JSOF ¶63. But it was not. Instead, Erickson's lineup report was placed in the Investigative File. JSOF ¶16.

Detective Erickson's lineup report lists five individuals as standing in a lineup: Johns (listed as a volunteer), Jozell Hobbs (listed with CB# 8853977), Terrell Agee (listed as a

3

volunteer), James Brown (listed with CB# 8854359), and Fabian Wells (listed with CB# 8854072). JSOF ¶20. Chicago Police Department ("CPD") reports show Hobbs, Brown, and Wells were all arrested and in police custody at the time of the lineup, with the same arrest numbers as listed in Erickson's report. JSOF ¶21. Agee swore under penalty of perjury that he stood in a lineup with Johns in the summer of 1991. He found out much later that Johns had been selected in that lineup. JSOF ¶22. Wells also recalled standing in a lineup in 1991 on the same night the Chicago Bulls won their first NBA championship. JSOF ¶23.

The circumstances surrounding the Guevara lineup report are very different. As discussed below, Guevara's report was disclosed to all in the criminal proceedings. *Infra* at 9-11. Guevara's lineup report is in the Permanent Retention File. JSOF ¶30. The report was not approved until more than a month later on July 24, 1991, after Demetrius Johnson had been arrested and charged. JSOF ¶30. In addition, Defendant Guevara's lineup report listed five individuals as standing in the lineup. All but Johns are different individuals than listed in Detective Erickson's report. The other four individuals listed are: Dewan Patterson, Carlos McFadden, Dwayne David, and Michael Robinson. JSOF ¶31. The CPD has no arrest reports for any individuals named Dwayne David at any period, including June 1-15, 1991. JSOF ¶32. The criminal histories of Patterson and McFadden show that they were not arrested in June of 1991. JSOF ¶33. McFadden swore under penalty of perjury that he did not stand in a lineup in June of 1991 and has never heard of Defendant Guevara. JSOF ¶34. In other words, the Erickson lineup report is confirmed by CPD arrest reports and sworn witness statements; the Guevara report is contradicted by the same CPD records.

Six weeks after the shooting and the original lineup, on July 22, 1991, Defendant Guevara and Officer Ernest Halvorsen arrested fifteen-year-old Demetrius Johnson for the

4

murder of Fred and attempted murder of Ortiz. JSOF ¶¶2, 45. At the time, Johnson was in the tenth grade at Roberto Clemente High School. JSOF ¶2. That same day, Guevara and Halvorsen interrogated Johnson and then placed him in a live lineup. JSOF ¶¶45, 46. Guevara's arrest report stated during the live lineup, three witnesses identified Johnson as the shooter. JSOF ¶45. Assistant State's Attorney ("ASA") Kevin Buckley approved charges later that day. JSOF ¶46.

ASA Susan Zeigler presented the case to the grand jury. Johnson was indicted for murder, attempted murder, aggravated battery, and aggravated discharge of a firearm. Her grand jury synopsis makes no mention of the June 12, 1991, positive identification of Johns. JSOF ¶47.

In defense of the case, Johnson's attorneys, Deborah Gubin and now-federal Magistrate Judge Ruth Miller, visited the scene, filed motions for discovery and answered discovery, viewed the prosecution's file, obtained answers to their discovery, made oral requests for discovery, developed a theory of the case, and pursued the alibi defense that Johnson was watching the Bulls game with two friends. JSOF ¶¶48, 65. Gubin also made a specific request for the photo of the June 12, 1991, lineup. She expected that all the documents requested would be provided to her if they existed. JSOF ¶59.

Johnson's criminal trial began on November 18, 1992. JSOF ¶61. Defendant Guevara testified that there was a lineup conducted on June 12, 1991, and, contrary to Erickson's lineup report, Guevara testified that Gonzalez did not identify anyone in that lineup. JSOF ¶40, 63. Daly also testified that Johns had not been identified in the lineup the night of the shooting. JSOF ¶62.

At trial, the defense argued that Johnson was misidentified during suggestive police identification procedures six weeks after the shooting. JSOF ¶65. The defense filed a motion to suppress the July 22, 1991, identification of Johnson but determined the motion was not viable and withdrew it. JSOF ¶48. The defense also argued that Johns was the perpetrator, and that

5

Johnson looked like Johns, which may have contributed to the misidentification. In addition, they argued that Johnson's alibi was uniquely credible because of the significance of the night: the two friends he was watching the Bulls game with were not basketball fans and did not usually watch games, so the night was memorable to them. JSOF ¶65.

In response, the state rebutted the defense's argument that Johns was the true perpetrator. The trial prosecutor, ASA Kevin Sheehan, stated that none of the witnesses who viewed the June 12, 1991, lineup that included Johns had identified Johns. ASA Sheehan specifically said that Gonzalez had not identified Johns. JSOF ¶66.

There was no mention whatsoever of Erickson's lineup report recording the identification of Johns at the criminal trial. JSOF ¶34. In this civil case, Sheehan testified that he never had Erickson's lineup report. He testified:

> Q. And does the information in the transcripts we just reviewed, including your closing argument, confirm to you or give you confidence that you had not been provided a copy of [the Erickson Report of the 6/12/91 Lineup]?
> A. *It's not the argument that gives me confidence. What gives me confidence is the truth, I never got it.*

JSOF ¶41 (emphasis added). ASA Sheehan's contemporaneous handwritten notes in the prosecutor file indicated that the June 12 lineup resulted in "no ID," confirming he did not have the Erickson lineup report. JSOF ¶42. He testified that he "definitely would have immediately turned over" Erickson's lineup report to the defense if he had had it. JSOF ¶59.

Defense Attorney Gubin testified that she and Attorney Miller "absolutely did not have Erickson's lineup report in preparation for Johnson's criminal trial or at any point during Johnson's criminal proceedings." JSOF ¶43. Miller testified that she is "absolutely certain" the defense never had the lineup report at any time during the criminal proceedings. JSOF ¶43.

6

Neither Gubin nor Miller had any reason to believe that ASA Sheehan withheld documents from them. JSOF ¶59.

Because they did not have the Erickson lineup report, Johnson's attorneys did not investigate Gonzalez or subpoena Detective Erickson for trial. They did not continue to pursue the motion to suppress and did not cross-examine Defendant Guevara or Daley about the Guevara lineup report that stated that no identification of Johns was made. Had they had the Erickson lineup report, they would have taken all these steps. JSOF ¶¶50, 69.

Without the Erickson lineup report, Johnson was convicted and sentenced to twenty-five years in prison for the murder of Fred and ten years in prison for the attempted murder of Ortiz to be served concurrently. JSOF ¶67. Through the time of his conviction, Johnson had no knowledge of the existence of the Erickson lineup report. JSOF ¶68.

At all times, Johnson maintained his innocence. JSOF ¶69. He continued to maintain his innocence throughout his post-conviction criminal proceedings. He filed a direct appeal that was denied by the appellate court. The court noted in its decision, "Johns was placed in a lineup, but he was not selected by the witnesses viewing the lineup." JSOF ¶70. Johnson also filed a post-conviction petition asserting his innocence. Nowhere in that petition did Johnson mention the Erickson lineup report. His petition was denied. JSOF ¶71.

On September 5, 2019, Johnson retained counsel and sought relief from his conviction arguing, *inter alia*, the Erickson report was newly discovered evidence. JSOF ¶72. There was no evidentiary hearing on Johnson's post-conviction petition. On November 12, 2019, Cook County Judge LeRoy K. Martin, Jr. granted Johnson relief, vacating his conviction and ordering a new trial. JSOF ¶77. On December 20, 2019, state prosecutors dropped all charges against Johnson. JSOF ¶78.

7

In June 2020, Johnson filed a petition for a certificate of innocence ("COI") pursuant to 735 ILCS 5/2-702. JSOF ¶79. The state said in its COI briefing that Guevara's suppression of the Erickson lineup report was an "obvious *Brady* violation." JSOF ¶80. On April 7, 2021, Cook County Judge Erica Reddick granted Johnson a certificate of innocence. JSOF ¶81.

## LEGAL STANDARD

"Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *HSBC Bank USA, N.A. v. Leon*, 2014 WL 1088810, at *1 (N.D. Ill. Mar. 18, 2014) (citing Fed. R. Civ. P. 56). "To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits," *Cent. States, Se. & Sw. Areas Pension Fund v. Port Huron Bldg. Supply Co.*, 2016 WL 611805, at *1 (N.D. Ill. Feb. 16, 2016) (citing Fed. R. Civ. P. 56). "The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists," and then the non-moving party "must use the evidentiary tools . . . to identify specific material facts that demonstrate a genuine issue for trial." *Id.* (citation omitted). A plaintiff need not seek summary judgment on an entire claim, but instead may seek partial summary judgment on a portion of a claim. *See, e.g.*, *Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 67 F. Supp. 3d 874, 880 (N.D. Ill. 2014).

## ARGUMENT

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and its progeny, due process requires that the government "disclose evidence materially favorable to the accused," including both exculpatory and impeachment evidence. *Youngblood v. West Virginia*, 547 U.S. 867 (2006) (per curiam); *Giglio v. United States*, 405 U.S. 150 (1972). *Brady* applies to prosecutors and police

8

officers alike. *Kyles v. Whitley*, 514 U.S. 419, 438 (1995). When assessing a *Brady* claim, this Court asks whether: (1) evidence was suppressed; (2) it was favorable to the defense; and (3) it was material. *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001). Where evidence was available to a criminal defendant through the exercise of reasonable diligence, it has not been suppressed within the meaning of *Brady*. *See, e.g., United States v. Earnest*, 129 F.3d 906, 910 (7th Cir. 1997).

Regarding materiality, "'[e]vidence qualifies as material when there is 'any reasonable likelihood' it could have 'affected the judgment of the jury.'" *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016) (quoting *Giglio*, 405 U.S. at 154; *Napue v. Illinois*, 360 U.S. 264, 271 (1959)). A litigant "need not show that he 'more likely than not' would have been acquitted had the new evidence been admitted. . . . He must show only that the new evidence is sufficient to 'undermine confidence' in the verdict." *Id.* (citing *Smith v. Cain*, 132 S. Ct. 627, 629-31 (2012)); *see also Kyles*, 514 U.S. at 434. The question as to whether suppressed evidence was material depends on the strength of other evidence used in the criminal proceedings—it might take only a little evidence to disturb an already-weak conviction. *United States v. Agurs*, 427 U.S. 97, 113 (1976).

The Court should grant partial summary judgment on Johnson's *Brady* claim. The undisputed evidence shows that the case against Johnson was exceedingly thin and based on fabricated evidence, and the Erickson Lineup Report suppressed by Defendant Guevara would have undermined confidence in his conviction.

## I. Defendant Guevara Suppressed Exculpatory Evidence

The record in this case shows that powerful evidence of an eyewitness identification of Johns, the police's original suspect in the Fred homicide, was suppressed by Defendant Guevara. The undisputed evidence is as follows:

9

Defendant Guevara was the main detective on the case and did not turn over Erickson's lineup report to the prosecution. JSOF ¶8, 41. ASA Sheehan, the trial prosecutor, testified unequivocally that he *never* got Erickson's lineup report from Guevara. JSOF ¶41. ASA Sheehan's contemporaneous handwritten notes in the prosecution file corroborate that he did not have Erickson's lineup report of a positive identification from the June 12, 1991, lineup with Johns. JSOF ¶42. ASA Susan Zeigler, who presented the case to the grand jury, also took contemporaneous notes that do not mention a positive identification of Johns. JSOF ¶47.

Because Guevara never turned over the lineup report to the prosecution, Johnson and his defense attorneys never got it. Attorney Gubin testified that she and Attorney Miller "absolutely did not have Erickson's lineup report in preparation for Johnson's criminal trial or at any point during Johnson's criminal proceedings." JSOF ¶43. Miller testified that she is "absolutely certain" the defense never had the lineup report at any time during the criminal proceedings. JSOF ¶43. Through the time of his conviction, Johnson had no knowledge of the existence of the Erickson lineup report. JSOF ¶68.

Instead, the undisputed evidence shows that Guevara created a different lineup report documenting exactly the opposite: that Gonzalez *did not* identify Johns in the June 12, 1991, lineup. JSOF ¶¶24-25. ASA Sheehan's notes—that the June 12, 1991, lineup resulted in "no ID"— show that Guevara turned over his report to the prosecution, while Erickson's report of a positive identification was not disclosed. JSOF ¶¶39, 42. Guevara's knowing suppression of Erickson's report violates the constitution as a matter of law. *Steidl v. Fermon*, 494 F.3d 623, 632 (7th Cir. 2007).

While these facts alone are enough to grant summary judgment on Johnson's *Brady* claim, there is more evidence that Guevara suppressed Erickson's lineup report. Erickson's

10

lineup report was not mentioned whatsoever at the criminal trial, despite the centrality of Johns in both the State and the defense's case. JSOF ¶34. And Guevara testified consistent with his lineup report, and in direct contradiction to Erickson's lineup report, that Gonzalez and other eyewitnesses did identify Johns. JSOF ¶50.

Finally, a comparison of the two reports themselves suggests that Erickson's lineup report was suppressed. Erickson's lineup report is not in the Permanent Retention File, despite having the same Records Division Number as other reports in the police file. JSOF ¶63. Its absence from the location where all police reports for the Fred homicide were kept suggests it was hidden. *Id.* Finally, CPD reports and witness statements confirm that three people who participated as fillers in the lineup Erickson conducted were in CPD custody at the time of the lineup. JSOF ¶¶21-23. By contrast, Guevara's lineup report is contradicted by CPD arrest reports and witness statements. JSOF ¶30, 33, 34.

## II. Johnson and His Defense Attorneys Exercised Reasonable Diligence

Evidence is not "suppressed" within the meaning of *Brady* if a reasonably diligent defendant and/or their attorney could have obtained it. *Boss*, 263 F.3d at 740. But the concept of "reasonable diligence" is not limitless. It merely requires criminal defendants and their counsel to obtain available evidence. *See Strickler v. Greene*, 527 U.S. 263, 283-284 (1999) (limiting the concept of reasonable diligence); *Boss*, 263 F.3d at 743-44 (addressing the limits of the reasonable diligence doctrine). With this in mind, there is no genuine dispute that the suppressed evidence in this case was not obtained despite reasonable diligence by Johnson and his attorneys.

Johnson's defense counsel filed a formal motion for discovery that sought, among other things, all of the evidence that might or would be favorable to the defense. JSOF ¶48. In its answer the state responded: "The People are unaware of any evidence or witnesses which may be

11

favorable to the defense in this case." *Id; see also* Ex. 26 at ¶16. Johnson's defense counsel also made a specific request for documents related to the June 12, 1991, lineup. JSOF ¶59. Johnson's defense attorneys expected that all documents they requested would be provided if they existed. *Id.*

Given Johnson's defense counsel's two affirmative motions for discovery and subsequent answer from the state indicating there was no material evidence to disclose, it was beyond reasonable for Johnson's defense attorneys to rely upon the state—including the police—to produce all the favorable evidence in their files. *Strickler v. Greene*, 527 U.S. 263, 284 (1999) (imposing a duty on the state to disclose material exculpatory or impeachment evidence, even when there has been no request for that evidence by the accused). It was equally reasonable for Johnson's defense attorneys to rely upon the state's response that everything available had been disclosed. *Banks v. Dretke*, 540 U.S. 668, 694 (2004) (holding defense attorneys are entitled to rely upon a "representation of full disclosure by" the police). All these steps well exceed the narrow "reasonable diligence" threshold to conclude as a matter of law that Defendant Guevara suppressed material evidence.

Importantly, the Supreme Court has established that criminal defendants do not have the burden of finding information that is intentionally being hidden, which is precisely what happened in this case. *See Banks*, 540 U.S. at 695 ("A rule thus declaring 'prosecutor may hide, defendant must seek' is not tenable in a system constitutionally bound to accord defendants due process."); *see also Jefferson v. United States*, 730 F.3d 537, 545 (6th Cir. 2013) (reasonable diligence does not require a criminal defendant to "repeatedly to seek out information that the government unconstitutionally failed to disclose despite having notice that petitioner sought the very information suppressed").

To the extent Defendant Guevara might argue in response that the defense was not reasonably diligent because they may have known that Johns was the real perpetrator, that argument is a nonstarter for several reasons. Most prominently, Guevara suppressed an official police report documenting an identification procedure for which he was present, which stated clearly that Johns was selected by a witness as a perpetrator on the night of the crime. No other report contains anything like that information, the report would have established Johnson's defense completely—with police evidence—at trial, and the report contradicted all of the police testimony implicating Johnson at trial. This is why when assessing reasonable diligence, courts distinguish between facts a defendant might suspect and the suppression of police paperwork that would enable the defendant to *prove* what the defendant suspects. In *Strickler*, for example, the Supreme Court rejected the argument that the existence of multiple statements by a witness were not suppressed even though trial testimony and newspaper articles could have arguably led to the conclusion that multiple statements had been made. 527 U.S. at 284. Instead, the Court held that even if defense might have known about multiple interviews, "it by no means follows that they would have known that *records* pertaining to those interviews . . . existed and had been suppressed." *Id* (emphasis added); *Avery v. City of Milwaukee*, 847 F.3d 433, 443–44 (7th Cir. 2017) (holding that evidence that informants were pressured was suppressed, even though defendant knew what he said to informants, because he did not know about documentary and other evidence that could have been used to impeach informants).

Similarly, here, regardless of what facts Johnson or his attorneys may have known about Johns being the perpetrator, it was no substitute for the CPD document that corroborated those facts. Under prevailing law, Defendant Guevara's suppression of a police record proving that Johns was identified in a lineup violates due process, regardless of whether Johnson or his

13

attorneys were familiar with the topics addressed in that document. *See, e.g.*, *Rivera v. Guevara*, 319 F. Supp. 3d 1004 (N.D. Ill. 2018) (holding the fact that the plaintiff knew about being in a lineup was no substitute "for the withheld arrest reports, GPRs, and police paperwork.").

### III. The Suppressed Lineup Report Was Favorable to the Defense

Erickson's lineup report was obviously favorable to the defense: it is exculpatory evidence that suggests another individual committed the crime. Evidence suggesting an alternative perpetrator is "classic *Brady* material," *Boyette v. Lefevre*, 246 F.3d 76, 91 (2d Cir. 2001), and the square holding of *Brady* itself, 373 U.S. at 87-88. *See also Carrillo v. City of Los Angeles*, 798 F.3d 1210, 1224 (9th Cir. 2015) (alternative suspect evidence falls within *Brady*); *Bies v. Sheldon*, 775 F.3d 386, 400 (6th Cir. 2014) ("On its face, the nondisclosure of the identities of the other suspects . . . was an egregious breach of the State's *Brady* obligation.").

In many scenarios, Erickson's lineup report was favorable to Johnson. It was the strongest piece of evidence in support of Plaintiff's defense theory: that Johns was the real perpetrator and Plaintiff had been mistakenly identified. In addition, it could have been used to impeach Guevara's testimony at trial that no witnesses made an identification in the lineup the night of the shooting, with evidence directly to the contrary: that eyewitness Aby Gonzalez did in fact make an identification of Johns. In addition, Guevara's testimony that Johnson was identified by three witnesses could have been impeached at trial with evidence that an eyewitness to the shooting had made a positive identification of another individual entirely, Johns. The defense also would have had reason to investigate Gonzalez and subpoena him, as well as Detective Erickson, for trial, to eviscerate Guevara's credibility. Johnson's defense attorneys testified that they would have taken all these steps had they had Erickson's lineup report. JSOF ¶¶50, 60.

14

### IV. The Suppressed Lineup Report Was Material

The undisputed evidence also shows that Defendant Guevara's suppression of Erickson's lineup report would have undoubtedly undermined confidence in Johnson's conviction. It is worth emphasizing again that the defense theory at trial was that Johns was the perpetrator. JSOF ¶65. In response, the state successfully argued that no one had identified Johns in a lineup. JSOF ¶66. Johnson's conviction was upheld on appeal for the same reason. JSOF ¶70. It is hard to imagine more powerful evidence to prove the defense's theory, rebut the state's argument, and challenge Johnson's conviction than a lineup report documenting that Johns actually had been identified as the perpetrator. Had Defendant Guevara disclosed Erickson's lineup report, it is no exaggeration to say that it would have immediately halted the criminal prosecution and conclusively shown that Johnson was innocent.

Assuming *arguendo* that disclosure of the lineup report would not have stopped the prosecution altogether, this suppressed evidence is the sort of impeachment evidence that is conclusively material, within the meaning of *United States v. Bagley*, 473 U.S. 667, 676 (1985) and *Giglio*, 405 U.S. at 154-55. It could have been used to cross-examine Guevara, Daley, and the witnesses who identified Johnson in a manner that would have left the state without good evidence to convict Johnson. *Fields v. Wharrie*, 672 F.3d 505, 517 (7th Cir. 2012) ("The constitutional violation occurs . . . when other information that impeach the testimony's reliability are not shared with the defense."). Considering the only evidence against Johnson was three unreliable identifications, there is no genuine dispute that the highly exculpatory lineup report would have disturbed Johnson's already-weak conviction. *Agurs*, 427 U.S. at 113.

### CONCLUSION

For the foregoing reasons, the Court should grant this motion.

RESPECTFULLY SUBMITTED,

/s/ Danielle Hamilton

Jon Loevy
Danielle Hamilton
Anand Swaminathan
Steven Art
Rachel Brady
Isabella Aguilar
Joshua Tepfer
Sean Starr
Wallace Hilke
LOEVY & LOEVY
311 N. Aberdeen
Chicago, Illinois 60607
(312) 243-5900
hamilton@loevy.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, Danielle Hamilton, an attorney, certify that on February 21, 2023, I filed the foregoing pleading using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Danielle Hamilton

16