```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
                              EASTERN DIVISION

DEMETRIUS JOHNSON,                    )   No. 20 C 4156
                                      )
              Plaintiff,              )
                                      )
         vs.                          )   Chicago, Illinois
                                      )
REYNALDO GUEVARA, JOANN HALVORSEN,    )
as Personal Representative to the     )
Estate of Ernest Halvorsen, DARRYL    )
DALEY, WILLIAM ERICKSON, JOHN         )
HEALY, and the CITY OF CHICAGO,       )
                                      )   June 1, 2023
              Defendants.             )   1:45 p.m.

                      TRANSCRIPT OF PROCEEDINGS
                    BEFORE THE HON. SARA L. ELLIS
```

APPEARANCES:

For the Plaintiff:        MS. ISABELLA AGUILAR
                          Loevy & Loevy,
                          311 North Aberdeen Street, 3rd Floor,
                          Chicago, Illinois  60607

For Defendant
Guevara:                  MS. MEGAN K. McGRATH
                          Leinenweber, Baroni & Daffada, LLC,
                          120 North Lasalle Street, Suite 2000,
                          Chicago, Illinois  60602


For Defendants Daley,
Halvorsen, Erickson,
and Healy:                MR. JOSH M. ENGQUIST
                          The Sotos Law Firm, P.C.,
                          141 West Jackson Boulevard, Suite 1240A,
                          Chicago, Illinois  60604



                       PATRICK J. MULLEN
                     Official Court Reporter
                   United States District Court
                219 South Dearborn Street, Room 1412
                      Chicago, Illinois  60604
                          (312) 435-5565

```
 1   APPEARANCES:  (Continued.)

 2   For Defendant City
     of Chicago:              MS. EILEEN E. ROSEN
 3                            Rock, Fusco & Connelly, LLC,
                              333 West Wacker Drive, 19th Floor,
 4                            Chicago, Illinois   60606

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            (Telephonic proceedings on the record.)
 2            THE CLERK:  2020 CV 4156, Johnson versus Guevara.
 3            MS. AGUILAR:  Good morning, Your Honor.  I'm sorry.
 4   Good afternoon.  Isabella Aguilar on behalf of plaintiff.
 5            MS. ROSEN:  Good morning.  I mean good afternoon, Your
 6   Honor.  Eileen Rosen on behalf of defendant City of Chicago.
 7            MR. ENGQUIST:  Good afternoon, Your Honor.  Josh
 8   Engquist on behalf of the individual defendants with the
 9   exception of Reynaldo Guevara.
10            MS. McGRATH:  Good afternoon, Your Honor.  Megan
11   McGrath on behalf of defendant Guevara.
12            THE COURT:  All right.  So we've got a couple of
13   motions.  The one to extend the expert discovery is granted,
14   but I then need to modify the summary judgment briefing
15   schedule as well.  So the parties want then the deposition
16   of -- sorry.  Does anybody have your motion up to give me the
17   dates?
18            MS. ROSEN:  I do.
19            THE COURT:  Okay.
20            MS. ROSEN:  Judge, I do.  It's Eileen Rosen.  We are
21   going to depose the plaintiff's experts by June 30th.
22   Defendants' expert disclosures would be due August 11th, and
23   then plaintiff would be required to complete defendants' expert
24   depositions by September 22nd.
25            THE COURT:  Okay.  All right.  So then given that,
```

```
 1   when do defendants want to file their motion for summary
 2   judgment?
 3              MS. ROSEN:  We could file it -- let me get that
 4   calendar out -- maybe 30 days or 45 days after.
 5              THE COURT:  Yes, that's fine.  You let me know.
 6              MS. ROSEN:  Okay.  How about if we do November 3rd?
 7              THE COURT:  Sure.  Then when does plaintiff want to
 8   file a response?
 9              MS. AGUILAR:  Your Honor, we would defer to the Court
10   on that, but maybe 30 days after?
11              THE COURT:  That's fine.
12              Ms. Johnson, what does that look like?
13              THE CLERK:  December the 4th.
14              THE COURT:  December 4th.  Then how about defendants'
15   reply?
16              MS. ROSEN:  Well, only because it's the holidays, if
17   we could get until, say, January 5th.
18              THE COURT:  Yes, that's fine.
19              MS. ROSEN:  Great.
20              THE COURT:  All right.  Then I'm going to change the
21   ruling date for the summary judgment, which would be May 1st,
22   2024.  So that's taken care of.
23              Then the motion to seal is granted, which is at docket
24   253.
25              Then with regard to the motion to resolve the
```

1 discovery dispute for plaintiff's expert, did defendants
2 provide the SPSS data for the -- sorry. I'm trying to find the
3 guy's name.
4        MS. ROSEN: Gideon? Dr. Gideon.
5        THE COURT: Dr. Gideon. So I thought you --
6        MS. ROSEN: Plaintiff has Dr. Steblay, and we have
7 Dr. Gideon in another case. Dr. Gideon is not an expert.
8        THE COURT: Yes, there's Dr. Wix-somebody.
9        MS. ROSEN: Oh, Dr. Wixped.
10        THE COURT: Yes.
11        MS. ROSEN: No, Dr. Wixped did not do that type of
12 analysis, so there's no SPSS data for him. He did not review
13 that. So the dataset at issue is --
14        THE COURT: So did Dr. Gideon, though, produce the
15 SPSS file.
16        MS. ROSEN: He produced the work results. So my
17 understanding of how SPSS works is that the data, the data
18 which was originally prepared by plaintiff's counsel included
19 information extracted in Dr. Steblay's case from the
20 investigative files. It was produced to Dr. Steblay in an
21 Excel format, and then she imported it into something called
22 the SPSS database and did analysis in the SPSS database that
23 resulted in runs and outputs and logs, which is how she --
24 because the dataset that was provided to her contained nearly
25 200,000 cells of information, a lot of which was unimportant to

1 Dr. Steblay -- and that's what she testified to in the previous
2 deposition -- and so she needed to cull that information in
3 whatever way she culled. In order to do that, she dumped the
4 data into SPSS and then ran or did runs and logs and outputs.
5     Dr. Gideon, in a different case, not this case because
6 the issues with respect to Dr. Gideon are not relevant to this
7 case, used or was also using SPSS and also used that for an
8 Excel spread sheet created by plaintiff's counsel which also
9 had something like 200 or 300,000 cells of information culled
10 from complaint register files. So then he put the data into
11 SPSS and then ran or did the analysis to try to understand what
12 plaintiff's expert in those cases did, not Dr. Steblay, a
13 different expert.
14     But he in connection with his report produced the
15 output, the log runs, and the SPSS equivalent so that you could
16 see it. In order to run SPSS, you have to have it. So for the
17 lawyers, it's not much utility to. The equivalence, the point
18 is to see his work --
19     THE COURT: Right.
20     MR. ROSEN: -- and how he arrived at the numbers.
21 Dr. Steblay has not done that.
22     THE COURT: Right. So what is plaintiff's objection
23 to producing the logs and outputs and the SPSS dataset that she
24 created?
25     MS. AGUILAR: Sure, Your Honor. So it's plaintiff's

1    position that the Excel sheet is the data, and it affects the
2    assumptions that, you know, Dr. Steblay relied on.  The
3    homicide files are -- they were produced to us.  You know,
4    defendants have the homicide files, and Dr. Steblay explained
5    the process in 14 hours of deposition time of how she, you
6    know, came up with the numbers, you know, that she came up
7    with, and plaintiff has already stated that defendants are
8    welcome to question her on that process.  I think that's really
9    what's at issue here.
10             THE COURT:  Well, right, but -- so they -- I think
11   defendants are entitled to the results of the runs and, you
12   know, what she put in to get those results to essentially be
13   able to check her work, right?  So it's not enough just that
14   she hands over this report and says:  This is what I did.
15             So it's, you know:  I used these formulas and put them
16   in there, and this is how I got to it.
17             They are entitled to see that so that they can see if
18   they can replicate it using essentially the same datasets.
19             MS. AGUILAR:  But it's plaintiff's understanding that
20   the Excel sheet is the data, which they do have, and they have
21   the homicide files in order to input it to come up with a
22   number and to check it if they disagree, and they can question
23   her at the deposition about that disagreement.
24             THE COURT:  So I don't understand why. What is the --
25   what are you claiming is privileged?  They are allowed to see

1  what her methodology is.

2   MS. AGUILAR: Right. So we're claiming that the SPSS
3  files are privileged because they are work product. So, I
4  mean, the briefing kind of explains how the SPSS files, it's
5  like a calculator. It's a sophisticated calculator that she
6  needs to, you know, come up with the numbers that are in her
7  report. She's explained how she, you know, did what she did.
8  She talked about it. She put it in her report. So it's the
9  calculator.

10   THE COURT: Right. But, you know, if you're using a
11  calculator and you input specific formulas into the calculator
12  and then you get results, you're entitled -- you know, the
13  other side is entitled to see that and see whether they can
14  replicate it. It's one thing to testify about it at a
15  deposition. It's another thing to actually see if they can do
16  what she did and get to the same result.

17   MS. AGUILAR: So I guess what I'm trying to explain,
18  respectfully, Your Honor, is that the Excel sheet is the data,
19  and the homicide files, you know, is what -- so they have the
20  data that she used to make the calculations, and they have the
21  homicide files. You know, it's just plaintiff's position that
22  she can explain it.

23   THE COURT: Okay. And I'm disagreeing.

24   MS. AGUILAR: Okay.

25   THE COURT: So you need to turn those over. As for

1 the length of the deposition, in reading this it's the
2 plaintiff's position that the changes in the two reports are
3 non-substantive, is that it?
4     MS. AGUILAR: Yes, Your Honor. It's plaintiff's
5 position that, you know, the typos identified in the
6 supplementary report, which are just three, they don't relate
7 to any error in the dataset. They don't relate to any error in
8 Dr. Steblay's analysis in any of the report.
9     THE COURT: And the defendants believe that those are
10 substantive changes?
11     MS. ROSEN: Yes, Judge. So Dr. Steblay has different
12 numbers in certain aspects of her report that appear for the
13 very first time in the Johnson report. So she's prepared four
14 other reports in the four other cases. The error or errors,
15 which is what plaintiff and Dr. Steblay are calling it,
16 it's unexplained how that error occurred or how that error was
17 finally discovered on the fifth report.
18     This may go back to the initial point, that we can't
19 figure out her work, so we don't know how the error occurred.
20 We obviously have questions about how the error occurred, how
21 the error was discovered, and our inquiry about it, we issued a
22 subpoena to her to ask for whatever documents or calculations
23 she made that led her to realize the error in the earlier
24 reports, and that resulted in a supplemental opinion that was
25 handed to us I believe the day before we filed the motion that

1    doesn't really explain it.  It simply notes the error but
2    doesn't really explain how she figured it out.
3            And like I said, maybe the answer is in when we get
4    the additional production, and we're not suggesting, Judge,
5    that we need all seven hours, but we're entitled to the seven
6    hours.  And certainly if we're going to get additional
7    materials from her, that obviously could lead to additional
8    inquiry about what she did, how she did it, how she arrived at
9    the numbers she arrived at.
10           THE COURT:  All right.
11           MS. ROSEN:  And considering the entire Monell claim
12   related to identification procedures relies on Dr. Steblay, we
13   don't think it -- we are the ones that are going to have to pay
14   for her testimony, and we don't see why we shouldn't get the
15   full seven hours if we need it.
16           THE COURT:  All right.
17           MS. AGUILAR:  Your Honor, if plaintiffs could respond.
18           THE COURT:  Go ahead.
19           MS. AGUILAR:  So the report, the supplementary report
20   that defendants are referencing is the two-page report where
21   Dr. Steblay explicitly says what happened.  She states:
22           "The three minor changes on page 12 as I moved from
23   the Iglesias report to the Johnson report, these were three
24   instances in which I had not carried a preferred number from
25   the original report to the summary sentence below."

1        And then she explained it further.  So essentially
2   this is a cross-reference issue where, you know, she
3   transported the wrong number, and so she corrected that.  It's
4   really that simple.
5        THE COURT:  All right.  So I am going to give the
6   defendants four hours to do her deposition.  If it looks like
7   things are more complicated and, you know, it's a bigger mess
8   than you think it is or a bigger mess than what plaintiffs say
9   it is, you know, you can come back and let me know.  But if
10  it's really more of a computing error when she went back and
11  looked at it, you know, I don't know that it's going to take a
12  long time to get to the bottom of it.
13       So for now you'll have four hours.  You know,
14  obviously you're not going to go back over information that you
15  got over the last 14 hours that you deposed her, but this will
16  I think at least give you some wiggle room to see where it is.
17  And because you're going to be getting all this information
18  anyway, you'll be able to better see whether this really is a
19  computation error where she just didn't carry over the right
20  number or it's something else.
21       MS. ROSEN:  Judge, in light of the schedule that we
22  just set to depose plaintiff's experts by June 30th, if we
23  could get the data that the Court just ordered plaintiff to
24  produce in seven days so that we can have chance to review it,
25  talk to our experts if we need to, and then get the dep

1  scheduled so that we can comply with the June 30th deadline.
2              THE COURT:  That's fine.  Does that work for the
3  plaintiff?
4              MS. AGUILAR:  Yes, plaintiff will make it work.  But
5  if not, we will reach out to defendants and discuss if an
6  extension is necessary.
7              THE COURT:  Okay.  All right.  Then we'll see
8  everybody August 1st for a ruling on the plaintiff's summary
9  judgment motion.
10             MS. ROSEN:  Judge, with respect to that, Detective
11 Guevara's response brief is due June 7th.  If we could just get
12 an extra couple of days to June 12th, I don't imagine that will
13 impact the dates.
14             THE COURT:  That's fine.
15             MS. AGUILAR:  So plaintiff --
16             THE COURT:  But then I need to change plaintiff's
17 reply date.  Can you get it done by the 19th?
18             MS. AGUILAR:  So plaintiff just wants to state his
19 objection on the record.  You know, defendants have had quite a
20 few extensions and, you know, it was originally due I believe
21 back in February of this year.  So it's been quite a few months
22 of extensions, so plaintiff just wants to, you know, make the
23 record clear that it strongly objects to moving that.
24             THE COURT:  It's five days.
25             MS. AGUILAR:  Understood, Your Honor.

1     THE COURT:  So I'm going to give them the five days.
2  Can you get yours done by the 19th?  I'm going extend it for
3  your reply.
4     MS. AGUILAR:  Yeah, a corresponding deadline moving
5  the same way, that's fine.
6     THE COURT:  All right.  We'll see everybody August
7  1st.
8     MS. ROSEN:  Thanks, Judge.  Enjoy your time off.
9     THE COURT:  Thanks.
10    MR. ENGQUIST:  Thank you, Your Honor.
11    MS. AGUILAR:  Thank you, Your Honor.
12    MS. McGRATH:  Thank you, Your Honor.
13    (Proceedings concluded.)
14               C E R T I F I C A T E
15    I, Patrick J. Mullen, do hereby certify that the
16 foregoing is a complete, true, and accurate transcript of the
17 proceedings had in the above-entitled case before the Honorable
18 SARA L. ELLIS, one of the judges of said Court, at Chicago,
19 Illinois, on June 1, 2023.
20
21                    /s/ Patrick J. Mullen
                      Official Court Reporter
22                    United States District Court
                      Northern District of Illinois
23                    Eastern Division
24
25