**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| DEMETRIUS JOHNSON, | ) | |
| | ) | Case No. 20-cv-4156 |
| *Plaintiff,* | ) | |
| | ) | Judge Sara L. Ellis |
| *v.* | ) | |
| | ) | Magistrate Judge Heather K. McShain |
| REYNALDO GUEVARA, the ESTATE of | ) | |
| ERNEST HALVERSON, DARRYL DALEY, | ) | |
| WILLIAM ERICKSON, JOHN HEALY, and | ) | |
| the CITY OF CHICAGO | ) | |
| | ) | JURY TRIAL DEMANDED |
| *Defendants.* | ) | |

---

# EXHIBIT 1

## PLAINTIFF'S CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS REGARDING SUMMARY JUDGMENT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| DEMETRIUS JOHNSON, | ) | |
| | ) | Case No. 20 cv 4156 |
| *Plaintiff,* | ) | |
| | ) | Judge Sara L. Ellis |
| *v.* | ) | |
| | ) | Magistrate Judge Heather K. McShain |
| REYNALDO GUEVARA, the ESTATE of | ) | |
| ERNEST HALVERSON, DARRYL DALEY, | ) | |
| WILLIAM ERICKSON, JOHN HEALY, and | ) | |
| the CITY OF CHICAGO | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| *Defendants.* | ) | |

## PLAINTIFF'S CONSOLIDATED RESPONSE IN
## OPPOSITION TO DEFENDANTS' MOTIONS REGARDING SUMMARY JUDGMENT

Arthur Loevy
Jon Loevy
Anand Swaminathan
Steven Art
Sean Starr
Alyssa Martinez
LOEVY & LOEVY
311 North Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312) 243-5900
alyssa@loevy.com

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......................................................................................................... i

INTRODUCTION ...................................................................................................................... 1

DISCUSSION ............................................................................................................................ 2

    A. Defendants' Repeated Delays Should Not Be Rewarded ................................................ 2

    B. Plaintiff's Exhaustive Efforts to Respond Quickly, Substantively, and Repeatedly to

        Defendants' Proposed Joint Statements of Fact .............................................................. 7

        1. Plaintiff's Contributions to the City's Proposed Undisputed Facts ........................ 7

        2. Plaintiff's Efforts Comply with the Court's Orders and the Rules ...................... 15

        3. Plaintiff's Contributions to the Individual Defendants' Proposed Undisputed Facts

            ........................................................................................................................... 21

    C. The Parties' Conferrals on the Joint Statement of Fact Demonstrate That Defendants

        Have No Basis to Move for Summary Judgement ......................................................... 23

CONCLUSION ........................................................................................................................ 26

## Table of Authorities

*Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010) .........................................26

*Fields v. City of Chicago*, No. 10 C 1168 (N.D. Ill.).......................................................................13

*Harpold v. Ethicon Endo–Surgery, Inc.,* No. 1:06–cv–1666–DFH–DML, 2009 WL 688984......18

*Jones v. City of Chicago,* No. 87 C 2536 (N.D. Ill.).........................................................................13

*Palmer v. City of Chicago,* 562 F. Supp. 1067 (N.D. Ill.) ..............................................................13

*Rivera v. Guevara*, No. 12 C 4428 (N.D. Ill.)..........................................................................7, 13

*Scott v. Edinburg,* 346 F.3d 752, 759 (7th Cir.2003) ...................................................................18

*Treadwell v. McHenry Cnty., Illinois*, 193 F. Supp. 3d 900, 903 (N.D. Ill. 2016) ......................18

## Other Authorities

Local Rule 56.1 ...............................................................................................................................16

## Rules

Standing Order ....................................................................................................................... passim

Plaintiff, DEMETRIUS JOHNSON, by his attorneys, responds in opposition to the individual Defendants' motion for an extension of time, Dkt. 290, and the City of Chicago's motion to deem facts admitted at summary judgment, Dkt. 292, stating as follows:

## INTRODUCTION

One week before the final and already thrice-extended deadline for summary judgment filings in this case, Defendants have filed motions asking the Court for relief that is plainly not warranted. Defendants' consistent efforts to delay resolution of this case should not be rewarded. Defendants have caused repeated delays in moving this case to trial, and they have now engineered a situation where it is impossible for them to comply with the Court's Standing Order and the Rules governing summary judgment before filing a summary judgment motion by the Court's final deadline. Had Plaintiff engaged in the same behavior, his option to move for summary judgment would be off the table. The same should be true for Defendants.

Meanwhile, despite Defendants' delays, Plaintiff has worked tirelessly to respond quickly and substantively to Defendants' proposed statements of fact, providing detailed comments, additions, corrections, and objections. Indeed, since Defendants first sent their proposed facts late in the afternoon of the last business day before the Christmas holiday, the City has not engaged whatsoever in providing a substantive response to Plaintiff's contributions to the joint statement of facts. Plaintiff's contributions comply with the Court's Standing Order and the Local Rules, and the City's arguments otherwise lack merit. This Court should deny the City's request that its facts be deemed admitted because the City has not engaged at all in the process and has instead simply run out the clock.

Finally, as Plaintiff has stressed repeatedly, this is not a summary judgment case for any of Defendants on any claim. Plaintiff already moved for summary judgment against Defendant

Guevara. Dkt. 210. That motion was denied, Dkt. 273, and the disputes of fact that the Court found warranted a trial persist today and preclude a motion for summary judgment brought by the other side. Even if there had not been a summary judgment decision already, there are numerous material disputes of fact about the individual Defendants' liability for Plaintiff's wrongful conviction, as the individual Defendants' proposed joint statement of facts shows.

For its part, the City's effort to move for summary judgment is frivolous. The City has lost the *Monell* theories at issue in this case in at least two recent federal jury trials and has been precluded from litigating them in at least one; those decisions have been affirmed post-judgment by multiple district judges and have been affirmed by the Seventh Circuit. Even if it were not precluded, there is no universe in which the City can establish there is no material dispute of fact on these *Monell* theories. This is the reason that Plaintiff offered a compromise to narrow the case and avoid the need for exhaustive summary judgment proceedings.

The Court should deny Defendants' motions and either proceed to trial in this case or order Defendants to rely on only the actually agreed material facts, and file their summary judgment motions on the January 31 final deadline set by the Court.

## DISCUSSION

### A. Defendants' Repeated Delays Should Not Be Rewarded

Defendants have repeatedly delayed summary judgment in this case. In November 2023, this Court granted a final extension of their deadline to file summary judgment motions. Then, Defendants delayed again, and now find themselves in a position of their own creation, where they cannot timely file their motion for summary judgment in compliance with this Court's procedures. This Court's Standing Order provides, "Parties should provide the Court with sufficient time to rule on factual disputes before summary judgment motions are due."

Defendants have not done that, and they should not be granted an additional extension beyond the final extension. At some point, Defendants' persistent delays and efforts to help themselves to extensions to delay resolution of this case should be reigned in, to ensure actual compliance with the Court's orders, and to prevent any further prejudice to Plaintiff, who waits anxiously for his day in court.

The procedural history is set out in detail in Plaintiff's response to Defendants' last motion for an extension of time. Dkt. 286. To recap, fact discovery closed in December 2022. In January 2023, the Court set an expert and summary judgment schedule, making Defendants' motions due August 28, 2023. Defendants first moved to extend that deadline on May 1, 2023, Dkt. 244, and for a second time on May 26, 2023, Dkt. 255, and this Court granted both motions, ultimately setting November 3, 2023, as the summary judgment deadline. Dkts. 246 & 258. At that point, Defendants had 11 months from the close of fact discovery and six months from the completion of Plaintiff's experts' depositions to draft and file motions for summary judgment.

Starting in August 2023, Plaintiff corresponded with Defendants at length about (a) narrowing the parties and claims for summary judgment, (b) Plaintiff's view that summary judgment is not warranted in this case, and (c) Defendants' draft of the proposed joint statements of fact necessary to comply with the Court's Standing Order. Plaintiff asked for Defendants' proposed statements of fact repeatedly at the end of October 2023, but he never received a draft of a joint statement of facts, despite the November 3, 2023 deadline for Defendants' motion for summary judgment.

Instead, on November 3—the day their summary judgment motions were due—and without conferring with Plaintiff, Defendants moved for a third extension of time to file their motions for summary judgment, representing to the Court that they needed a modest amount of

time to complete the summary judgment process. Dkt. 283. Plaintiff opposed the motion strenuously. Dkt. 286. The Court granted Defendants a third and final extension, setting January 31, 2024, as the due date for summary judgment motions. Dkt. 288. During the hearing on that motion, Plaintiff expressed concern that Defendants were perpetually delaying resolution of the case, and the Court made clear that January 31, 2024 was the final deadline.

But Defendants' delay continued after that ruling. Instead of promptly providing Plaintiff with a proposed joint statement of facts in response to his requests or engaging with Plaintiff in further efforts to narrow the case at summary judgment, Defendants did not contact Plaintiff at all. Instead, late in the afternoon of Friday, December 22, 2023, the last business day before the Christmas holiday, Defendants sent two separate proposed joint statements of fact—one from the City and one from the individual Defendants—which totaled 296 paragraphs. Defendants provided these proposed facts more than two months after Plaintiff began requesting them, more than five weeks after the Court granted their third extension of time, and right before Christmas Eve. Plaintiff's counsel were out with their families between Christmas and New Year's Day and their office was closed.

On January 2, 2024, Plaintiff's counsel began the process of responding to Defendants' proposed facts. Just two weeks later, on January 16 and 17, Plaintiff provided detailed responses to the City and individual Defendants, respectively. Contrary to the City's statement that Plaintiff did not provide the City with any exhibits, *see* Dkt. 292-1, Mot. at 9, Plaintiff attached all exhibits to its correspondence with the City. *See* Dkt. 292-3 (Jan. 17, 2023 Email Correspondence, at 9-10). Still there was time to reach agreement on the joint statements of fact. On January 19, the individual Defendants provided a second round of responses to Plaintiff's additions, edits, and objections to that joint statement of facts. Plaintiff responded promptly again

on January 22. The individual Defendants sent another version on January 22, 2024, about which the parties conferred. Plaintiff committed to providing another response on January 23, 2024, which would have resolved the issues.

The City, by contrast, did nothing with Plaintiff's additions, edits, and objections to the City's proposed statement of facts. Instead, at the end of the day on Friday, January 19, the City sent a letter to Plaintiff, complaining that Plaintiff's edits and objections did not comply with the Rules. The letter did not contain any substantive response to any of the edits, additions, comments, or objections that Plaintiff had spent two weeks on. It simply demanded that Plaintiff do another draft.

 Plaintiff responded on Monday, January 22, with a detailed letter. Exhibit A (Jan. 22, 2024 Letter from Plaintiff's Counsel). Plaintiff explained his position about the timing and explained that he had complied with this Court's Standing Orders and the Local Rules. In the interest of not further delaying the case, Plaintiff proposed a number of compromises to narrow disputes and responded to particular complaints that the City identified. On the same day, Plaintiff provided a second round of additions, edits, and objections to the City, even though the City still had not responded to the first. *See* Exhibit B (Plaintiff's Second Revised JSOF with City); Exhibit C (Jan. 22, 2024 Correspondence from Gould to the City).

Still, the City did not engage substantively with Plaintiff's draft. Instead, on January 22, the City and Plaintiff met and conferred. The City admitted that it had not looked at Plaintiff's draft, said that conferring was pointless, and continued to suggest that Plaintiff was violating the Rules (even though the City had not read the draft). The City rejected wholesale Plaintiff's proposed compromises within its letter and stated its intention to file this motion instead. In response, Plaintiff again explained his position, and he asked the City to engage substantively in

5

the process of reaching agreement on a joint statement of facts. Instead of doing so, Defendants filed their motion. As of the date of this filing, Plaintiff still has not received any substantive response to his edits and comments on the City's joint statement of facts.[1]

Defendants have engaged in months of delay at summary judgment in this case. This Court already granted them a final extension of time to file a motion. Yet for months, they failed to provide a proposed joint statement of fact, defying this Court's Standing Order that parties exchange and identify disputes of fact far in advance of summary judgment and with enough time for the Court to consider disputes. Indeed, by providing first drafts of lengthy joint statements of fact on the eve of the Christmas holiday, four weeks before their motions were due, they all but ensured that there would not be sufficient time for the Court to rule on any disputes. They then refused to engage in the process of responding to Plaintiff's edits to those joint statements when Plaintiff's counsel moved heaven and earth to turn around responses in two weeks. Instead, Defendants now complain that it took Plaintiff two weeks to respond to almost three hundred paragraphs of facts (most of which are clearly disputed), despite Defendants having taken eleven months since the close of fact discovery to draft a joint statement of facts.

---

[1] Compare Defendants' approach to that taken by Plaintiff when Plaintiff moved for summary judgment, where the joint statement of facts was provided to Defendants months in advance, and then Defendants delayed responding. In July 2022, Plaintiff notified Defendants of his intention to file a motion for partial summary judgment against Defendant Guevara on his *Brady* claim. Dkt. 164-1. Plaintiff's letter included a 53-paragraph proposed joint statement of facts per this Court's rules. *Id.* In August 2022, counsel for all parties participated in a phone conference in which Defendants refused to confer on the proposed joint statement of facts. The briefing schedule was pushed back repeatedly as the result of Defendants' delays in responding to Plaintiff's proposed joint statement of facts. Dkt. 223. Due to those delays, Plaintiff was not able to file his partial motion for summary judgment until February 21, 2023—more than seven months after he first sent his proposed joint statement of facts to Defendants. Dkt. 210.

Plaintiff is entitled to his day in Court. This Court is entitled to compliance with its Standing Orders. And Defendants cannot be allowed to continually delay the resolution of this case. For that reason alone, this Court should deny Defendants' motions and set the case for trial.

**B.      Plaintiff's Exhaustive Efforts to Respond Quickly, Substantively, and Repeatedly to Defendants' Proposed Joint Statements of Fact**

The Court should also reject Defendants' contentions that Plaintiff has not engaged in the joint statement process in good faith. Plaintiff has complied with this Court's Standing Orders and the Local Rules; he has provided fulsome explanations of his edits and objections to the proposed joint statements, which are supported by identified evidence; and he has done so quickly and thoroughly. Defendants' arguments otherwise lack merit.

**1.   Plaintiff's Contributions to the City's Proposed Undisputed Facts**

The City provided 164 proposed agreed facts regarding the *Monell* claim. Plaintiff's initial review of Defendants' facts confirmed one thing: that most facts on summary judgment related to Plaintiff's *Monell* claims are hotly disputed.  In fact, a sizable portion of the City's proposed agreed facts appear to have been copied and pasted from the City's affirmative statement of facts submitted in support of its motion for summary judgment in *Rivera v. Guevara*, No. 12 C 4428 (N.D. Ill.), a case in which the same *Monell* theories at issue here were tried to a jury, resulting in a *Monell* verdict against the City. That was startling. The City knows that those facts were hotly contested in *Rivera*, and that the Court there denied summary judgment to the City, after which the City lost at trial, which was affirmed in the denial of its post-trial motion. The City had therefore submitted a first draft of facts that it knew for certain was contested in every respect. Still, the City's proposed facts went to great lengths to characterize these disputed facts as undisputed, which required serious attention to detail and significant modifications to most offered facts.

As previously stated, Plaintiff provided those significant edits to the City's already-lengthy document on January 17, 2024. *See* Ex. D (First Revised JSOF to City). After the City responded without substantive comments but instead with a letter, Plaintiff still went to great lengths to reach compromise, addressing the issues that the City identified in its letter, and making proposals for narrowing disputes. Ex. A (Jan. 22, 2024 Letter to City). In particular, in response to the City's complaint about paragraphs being removed without explanation, Plaintiff recognized that the problem was a formatting issue, and he reformatted the document so that the City could see his objections below the paragraphs (instead of in comments in the margins). Ex. B (Second Revised JSOF to City).  In addition, Plaintiff provided additional details supporting objections and additional edits where the City had misquoted evidentiary sources. *Id.* Moreover, following the parties' meet and confer yesterday, still endeavoring to provide the City with clear objections so that it could finally respond substantively to Plaintiff's edits and modifications, Plaintiff *again* provided a revision to paragraphs specifically identified during the call as lacking detail. *See* Exhibit E (Jan. 22, 2024 Correspondence from S. Art to City); Exhibit F (Third Revised JSOF to City).[2]

Plaintiff is frankly surprised at the City's response to his detailed effort to create a final product in the face of Defendants' delay. Plaintiff has repeatedly attempted to compromise and provide detail and explanation in response to the City's initial submission, letter, and meet and confer, all without any substantive response from the City. Plaintiff has gone to great lengths to provide the City with all of the clarity it has requested, and is now met with accusations that his response to the City is a move to "sabotage" the City's ability to respond.

---

[2] For each of its three revisions to the City's proposed undisputed facts, Plaintiff has included (1) the track change version and (2) a clean version of the revisions for the Court's review. Both versions are included in the exhibit referencing that revision. *See* Exhibits D (First Revised JSOF), B (Second Revised JSOF), and F (Third Revised JSOF).

An examination of Plaintiff's contributions to the City's joint statement of facts demonstrates that the City's complaints are without basis, and that the City merely hopes to delay resolution of summary judgment. Specifically, in an effort to respond comprehensively to the 164 paragraphs contained in the City's initial proposed statement of undisputed facts, Plaintiff took four steps:

**First, Plaintiff provided additional context where the City quoted a document for the purpose of setting out an agreed fact, but the proposed agreed fact was materially incomplete**. For instance, the City quoted only the first sentence of a lengthy two-page portion of Plaintiff's interrogatory response regarding Plaintiff's "eyewitness identification *Monell* theory," *see* Ex. B (Second Revised JSOF), at p. 24, ¶ 10, and one sentence out of over four pages included in Plaintiff's interrogatory responses to explain Plaintiff's "street files" *Monell* theory—of an overall twelve-page response to the City's Interrogatory No. 2. *See* Ex. B at p.24-25, ¶ 11; *see also* Exhibit G (Plaintiff's Resp. to Def. City of Chicago's First Set of Inter.). Defendants then stated that Plaintiff did not supplement his Responses to these interrogatories. Ex. B at p. 30, ¶ 17. The City's purpose was to narrow the scope of Plaintiff's *Monell* theories in the case by referencing documents selectively that the City claimed gave it notice of the *Monell* claims at issue in the case, as the City routinely does at summary judgment. But the City was incorrect about the scope of the *Monell* theories, and Plaintiff's interrogatory response explained the actual breadth of those theories in detail. Accordingly, Plaintiff added the missing content to the City's proposed excerpt of the evidentiary source and proposed it as an agreed fact. Ex. B at p. 7-16, ¶ 2. When Defendants complained about the length, Plaintiff proposed as a compromise that he would agree to remove citation to full interrogatory responses if the City agreed to remove its selective citation of them. The City refused.

9

Defendants cannot rely on an evidentiary source to try to narrow the claims in the case on which they are trying to obtain summary judgment before trial, and then complain when Plaintiff adds the missing context from the same evidentiary source, showing that the claims are not so narrow. Defendants argued that they can use this admission of a party opponent at summary judgment but Plaintiff cannot, Fed. R. Evid. 801(d)(2), but that does not mean that they can selectively quote it to create a jointly agreed fact that is in fact contradicted by the document they are quoting and not agreed.

Another form of this deficiency whereby the City excludes relevant evidence and then objects to its addition by Plaintiff can be found in Defendants' selective citation of deposition testimony regarding the definition of "street files," a key concept for Plaintiff's *Monell* claims. Defendants only cited to the 2014 testimony of its Rule 30(b)(6) representative James Hickey, who stated that "street files," or "working files," or "running files" were manila folders containing "photocopies of reports, criminal history statements, photographs, mugshots and memorandums requesting assistance on investigations." Ex. B, Second Revised JSOF, at p. 32, ¶ 21 (original text in black). However, this description is incomplete and disputed, as the City knows well from prior trials on this very issue. So, Plaintiff provided additional facts, supported by evidence, providing the fuller context of what comprises street files. *See* Ex. B, Second Revised JSOF, at ¶ 21 (in track changes). The City has not responded to Plaintiff's objection.

Other non-exhaustive examples where Plaintiff provides context for materially incomplete proposed facts includes the following, found in the track changes of Exhibit B, Second Revised JSOF: p. 1-6, ¶ 1 (the City cites excerpts of Plaintiff's complaint to encapsulate Plaintiff's *Monell* claims, so Plaintiff reproduces the accurate and complete allegations in Plaintiff's complaint); p.49, ¶ 59 (The City cites excerpts of unrelated deposition testimony to

limit Tiderington's criticisms of CPD's policies and practices concerning the documentation and disclosure of information learned during homicide investigations into "two global criticisms," so Plaintiff includes the accurate scope of his criticisms as stated in Tiderington's expert report); p. 70-71, ¶ 117 (The City claims that "there is no column in the [relevant] spreadsheet that says failure to document," ignoring all of the columns in the spreadsheet related to a failure to document steps, which Plaintiff provides in full).

**Second, Plaintiff corrected incorrect quotations and incorrect summaries of evidence provided by the City that were not an accurate reflection of the evidence that the City cited.** This occurred in significant part in the sections containing Defendants' inaccurate summaries of the testimony of Plaintiff's expert witnesses. For instance, Defendants offered as an agreed fact that:

> The evidence upon which Tiderington relies in support of his opinion that police officers were treating notes as their personal property is the fact that "there were no notes on investigations that you would reasonably expect to see notes and that many files were void of notes as well." (Ex. 6, Tiderington Dep from *Solache/Reyes* dated 10/6/22, 494:10-24).

Ex. B, Second Revised JSOF, at p. 75-76, ¶ 128 (original text in black).

There are many problematic issues with this citation, including that this testimony from Tiderington's deposition in *Solache/Reyes* (a different case) is not a complete summary of his opinions in this case, which are encompassed in Tiderington's expert report. Plaintiff therefore provided a fuller context to Tiderington's opinion to arrive at a proposed agreed fact, adding Tiderington's reliance on and review of (a) historical evidence of police officers' treatment of notes as personal property, (b) observations in this litigation that multiple, separate investigative files were maintained, (c) review of prior testimony from CPD designee Hickey regarding detectives' confusion about how personal notes had to be retained, and (d) evidence that

handwritten notes are still routinely used but were not included in GPRs. (See Ex. B, Second Revised JSOF at p. 75-76, ¶ 128 (in track changes, and omitting citations)). The City has not responded to Plaintiff's objection.

Other examples where the City misquoted or selectively misstates documents and testimony include but are not limited to the  following, as seen in the track changes of Exhibit B, Second Revised JSOF: p. 37, ¶ 31 (Defendant misquotes General Order 88-18, and Plaintiff's edits correct the deficiency, as noted in its objection); p. 38, ¶ 32 (the City provided an incomplete quotation of General Order 88-18, and Plaintiff's edits correct the deficiency, as noted in its objection); p. 78-79, ¶ 133 (the City's proposed agreed fact states that Tiderington's report "assumes the redacted document are not police documents," when in reality Tiderington testified that he did not recall specifically being told that redactions were made only of redacted privileged information and not police reports, but believes he was told to operate under that assumption); p. 82-83, ¶ 145 (The City selectively provides only one statement from Tiderington's testimony speaking to what "withheld" means, when two were available in that deposition, and Plaintiff provides the second statement); p. 83-92, ¶¶146, 156-157, 160, 163, 166 (the City selectively quotes from Tiderington's review of the Kim Mathis, Ardell Clemons, Oscar Soto, Leon Fields, and Guy Rainey cases, and Plaintiff provides the rest of the review for accuracy); p. 104, ¶ 199 (the City provided an incomplete quotation of Dr. Steblay's report, and Plaintiff provided the first half of the quote); p. 118, ¶ 218 (the City misstates Dr. Steblay's statistical analysis, and Plaintiff reproduces the portion of the analysis in full); p. 120, ¶ 222 (The City claims that "Steblay does not know if the 11 field studies exclusively relied on homicide cases," which is an inaccurate summary of her testimony, so Plaintiff quoted that testimony directly).

**Third,** Plaintiff added proposed agreed material facts on which Plaintiff will contend that he is entitled to summary judgment on particular *Monell* theories against the City. Plaintiff also added undisputed facts about the fact that the City has tried and lost multiple federal trials on the same *Monell* claims at issue in this case. Plaintiff will rely on these additions in support of his forthcoming motion that the City is precluded from re-litigating its *Monell* liability, and, separately, that the City cannot create a triable dispute of fact that its policies governing police file keeping were facially deficient at the relevant time.

These paragraphs added by Plaintiff are beyond dispute. They concern the theories litigated, instructions given, judgments entered, post-trial motions denied, etc., in litigation in which the City was found liable, including *Rivera v. Guevara*, No. 12 C 4428 (N.D. Ill.), *Fields v. City of Chicago*, No. 10 C 1168 (N.D. Ill.), *Palmer v. City of Chicago*, 562 F. Supp. 1067 (N.D. Ill.), and *Jones v. City of Chicago*, No. 87 C 2536 (N.D. Ill.). In support, Plaintiff provided the specific exhibits that supported each paragraph that he added. These past Court documents and judgments are certainly admissible—indeed, the Court can take judicial notice of them all. However, other than its blanket objection to their inclusion, the City has not substantively responded to these specific additions.

**Fourth,** Plaintiff stated objections to the City's proposed paragraphs where the facts contained in those paragraphs are disputed or the evidence relied upon is not admissible. As an example, the City often provided a characterization of a passage from an expert's deposition as undisputed, where that characterization is plainly disputed in the same expert's principal report in the case.

For example, the City provided a drastically incomplete statement of Dr. Steblay's nine-paragraph description of her coding process as an agreed fact. *See* Ex. B at p. 105-107, ¶ 203

13

(struck-through text from City stating that "Dr. Steblay's report states that the data pertained to information regarding witness identifications that were coded from investigation files and RD files corresponding to homicide investigations from 1989-1998.") (citations omitted). Plaintiff's modification remedies that deficiency by providing the full text of her report, which provides the data on which she relied ("an Excel spreadsheet detailing 2786 Chicago lineups reported in Area Five homicide files" from 1989-1998"), as well as a description of the information that was coded; that she was provided access to all of the homicide case files associated with the lineups, and discussed with Plaintiff's counsel the effective coding method for her analyses; that "[t]he process followed was a scientifically-sound coding system and more than sufficient to yield a scientifically-sound dataset."; and an extensive description of the basis for reliable coding. *See* Ex. B at p. 105-107, ¶ 203 (added text). Plaintiff's proposed additions state the description of her coding process in full, without such severe reduction of her process. There is no possibility that the City's single line could stand as an "agreed" fact when so much has been omitted.

As another example, the City states that Plaintiff's expert Dr. Steblay "did not evaluate whether any of the eyewitness identifications from the Dataset were fabricated because '[t]here's no way to know that from my data set – the data set.'" *See* Ex. F, Third Revised JSOF, at p. 1, ¶ 252. Yet this selective portion of Steblay's deposition is disputed in Steblay's principal report, which explains in detail how the overrepresentation of suspect identifications in the Chicago data could be explained by the fabrication of evidence by police officers. *See id.* at ¶ 252 (Objection). Moreover, the City's description of Dr. Steblay's deposition testimony is incomplete, and clearly disputed by the *very next question* after the one cited by the City. In that response, she describes her analysis of eyewitness identifications, including the important distinction between "suspect identifications, filler identifications, [and] no identifications at all," which assisted in her

14

evaluation of false identifications. *Id.* Plaintiff would agree to the full excerpt of Steblay's deposition being used as agreed facts, but not the misleading initial portion cited by Defendants.

Finally, the City included as proposed agreed facts contentions that were based solely on the report of its own eyewitness identification expert, Dr. John Wixted, who rebuts the report of Dr. Steblay, Plaintiff's expert on the same subject. *See* Ex. B, Second Revised JSOF, at p. 133, ¶ 262. As Plaintiff pointed out in objections, the contents of Dr. Wixted report on which the City would like to rely are plainly contradicted by Dr. Steblay's report and her rebuttal report. All of these facts in the paragraphs discussing Defendants' rebuttal expert are disputed, as one would expect from a rebuttal expert in civil litigation. The City has not responded to that objection.

### 2. Plaintiff's Efforts Comply with the Court's Orders and the Rules

Plaintiff's effort described in the last section was plainly a good faith and thorough attempt to comply with this Court's standing order in response to a proposed statement of agreed facts that the City knew was not agreed in nearly every respect. Plaintiff completed the task of explaining his position on an extremely tight timeline to ensure that this Court's deadlines were met. Even a cursory review of Plaintiff's edits demonstrates that there is no basis for the City to obtain a ruling that its highly disputed facts are admitted for purposes of summary judgment. The City certainly cannot obtain such relief having refused to respond substantively to Plaintiff's contributions to the joint statement.

None of the City's arguments otherwise have merit. The City complains that Plaintiff sent multiple versions of the same documents, but each new version was created by Plaintiff specifically to address some grievance raised by the City. The City cannot now turn around and argue that they were unprepared to receive these, particularly when they have even stated aloud to Plaintiff on the conferral call that they had not taken any time to review them. Indeed, the City

even recognizes in its Motion that the "substance and length" of Plaintiff's added paragraphs "has not changed." *See* Dkt. 292-1 at 10, n.2. It defies reason that the City actually has a problem reviewing the same substance when the paragraphs are re-numbered.

The City also complains about the length of some of Plaintiff's proposed agreed paragraphs. Plaintiff is aware that the final version of the Parties' agreed statement of undisputed facts must have "short, numbered paragraphs," *see* Local Rule 56.1(a). However, the City has yet to offer *any* means of reducing Plaintiff's additions, and has provided *no* substantive response to these additions by Plaintiff, other than to reject Plaintiff's proposal of removing interrogatory references altogether. Plaintiff would of course endeavor to make the final version of the Parties' agreed statement of undisputed facts in compliance with the Local Rule, but could not do so without any cooperation from the City in identifying what is undisputed and what is not. Plaintiff has provided the City with the evidentiary context for what agreements are possible in particular paragraphs, where the City's proposal was not, but without a response to those proposals, it is impossible for Plaintiff to cut the lengths of the paragraphs to a shorter length.

The City next complains that there are certain paragraphs without citations. *See* Dkt. 292-1 at 12. These paragraphs are: (1) Plaintiff's statement that the issue of the suppression of exculpatory evidence was fully litigated *Rivera* and *Fields* (*see* City's reference to the City's Exhibits D/E, ¶¶4(d), and 5(e)); (2) Plaintiff's explanation of claims in *Rivera* and *Kluppelberg* (City's reference to its Exhibits D/E, ¶¶ 5(b) and 6(a)); summary statements of this previous litigation (¶ 9, citing cases fully referenced in the paragraphs directly above, and for ¶ 10, directly below); and one paragraph with two citations to Dr. Steblay's Expert Report (¶ 197). When Plaintiff receives substantive responses to its objections and additions, he is glad to restate those incorporated citations at the identified paragraphs.

Next, the City contends that Plaintiff has relied on inadmissible evidence. But Plaintiff has relied on precisely the same categories of evidence that the City relied on in its draft: Plaintiff's complaint, Plaintiff's interrogatory responses, the City's written policies, Rule 30(b)(6) testimony, expert reports, and expert depositions. The City relied on each of these categories of evidence as well, and for it to move to have facts admitted because Plaintiff followed suit makes no sense.

Addressing those categories, Plaintiff added language from the complaint (which indeed are allegations) and his complete interrogatory response because the City cited those same sources to suggest that Plaintiff's *Monell* theories in this case are limited and to imply that Plaintiff did not give the City notice of certain theories during discovery. If the City intends to make the argument that the *Monell* theories are limited, then the Court should have before it the information exchanged in discovery about those theories as an agreed fact, and not the City's truncated version. Moreover, as stated, in the interest of avoiding further debate, Plaintiff proposed removing all paragraphs and references that rely on his complaint and interrogatory responses if Defendants agreed to do the same, which was met with blanket refusal.

With respect to the City's complaint about Plaintiff's reference to "jury instructions from other unrelated cases, jury verdict summaries and judgments from other civil cases, [and] court opinions from unrelated cases," the City notably provides zero support for the proposition that these items of evidence are inadmissible. Plaintiff refers to indisputable documents from cases in which the City's liability for the *Monell* theories at issues here has been adjudicated and where the City has lost. Plaintiff includes these evidentiary materials to support his argument that the

City should be precluded from re-litigating the *Monell* theories at issue here. Without a basis for objecting to the inclusion of these materials, these materials are admissible.[3]

The City also takes issue with Plaintiff's citations to expert reports. This objection is troubling for two reasons. First, the City's first draft of the proposed joint statement of facts is littered with citations to expert reports. Why should it be that the City can cite this type of evidence but not Plaintiff? Further, the City ignores that routinely expert reports are cited as part of the summary judgment record when supported by a declaration from the expert that their testimony at trial will reflect their report, as Rule 26(a)(2) contemplates. *Treadwell v. McHenry Cnty., Illinois*, 193 F. Supp. 3d 900, 903 (N.D. Ill. 2016) ("[T]he majority rule is that a "belated affidavit is sufficient to support the use of the report at the summary judgment stage." (quoting *Harpold v. Ethicon Endo–Surgery, Inc.*, No. 1:06–cv–1666–DFH–DML, 2009 WL 688984, at *1 (S.D.Ind. Mar. 11, 2009) (Hamilton, J.)); *but see Scott v. Edinburg,* 346 F.3d 752, 759 (7th Cir.2003) ("[The expert] report was introduced into the record *without any supporting affidavit* verifying its authenticity and is therefore inadmissible and cannot be considered for purposes of summary judgment.") (emphasis added). The City's contention that it can rely on expert reports but Plaintiff cannot is unsupported by the law and lacks common sense.

On this point, the City also complains that Plaintiff has disputed paragraphs where the City relied upon excerpts of Plaintiff's experts' depositions (often misquoting or unfairly

---

[3] The City also accuses Plaintiff of citing "to his own counsel's responses to post-trial motions from . . . unrelated cases to attempt to establish undisputed facts on the City's policies in this case." Dkt. 292-1, Mot. at 10. But Plaintiff does not cite briefs. Instead, in the paragraphs referenced, Plaintiff references transcripts of proceedings during which Brasfield, whose expert report was reviewed and relied on by Plaintiff's expert Tiderington, testified. *See* Ex. H, Plaintiff's Resp. to Def.'s Post-Trial Mot. in *Rivera* Ex. 9 (June 15, 2018 Tr. of Proceedings), at 2178-2179; Ex. I, Plaintiff's Resp. to Def.'s Post-Trial Mot. in *Rivera* Ex. 10 (June 18, 2018 Tr. of Proceedings), at  2438). Plaintiff has yet to receive an in-line response to its use of these exhibits from the City.

summarizing the testimony) that are at odds with their reports. Plaintiff has provided a lengthy example above of how it has objected to the City's adversarial, selective use of citations to expert reports and depositions. The City cannot cross examine an expert during a deposition for hours, pull a half-dozen excerpts from that deposition, and present those excerpts to this Court as the expert's undisputed opinions, when in fact many of them are clearly contradicted by the content of the same expert's reports. A snippet of an expert deposition contradicted by other evidence does not create an undisputed fact for summary judgment; it identifies an area for cross examination at trial. Nonetheless, Plaintiff proposed an agreement on this issue as well: he agreed to remove all paragraphs and references that rely only on expert reports and depositions if Defendants agree to do the same. Again, Defendants refused even to consider the proposal.

Along the same lines, the City contends that Plaintiff's objections indicating that one of the City's proposed paragraphs contradicts an expert report is also an improper objection. Plaintiff does not see how its objection could be clearer on this point: if the City's proposed paragraph contradicts an expert's report and testimony, then that paragraph contains disputed information. That is precisely the type of objection contemplated by this process. Disputed information cannot be considered in a joint statement of undisputed facts.[4] Expert testimony can be tested and challenged at trial, allowing those disputes to be clarified before a jury.

Finally, the City accuses Plaintiff of providing minimal information to support its objections. *See* Dkt. 292-1, at 12. Yet for its representative examples that the City cites as lacking support, Plaintiff already provided the City with modified objections, in response to the City's complaints:

---

[4] Likewise, Defendants argue that Plaintiff improperly objects to the City's attempt to use its own rebuttal expert to establish "undisputed" facts. *See* Dkt. 292-1, at 13. Yet, as Plaintiff's objections make clear, a rebuttal expert *creates* a disputed fact. The proposed agreed facts in the paragraphs discussing Defendants' rebuttal expert are disputed, as one would expect from a rebuttal expert in civil litigation.

217. Steblay compared the results of the single—suspect, first attempt, stranger-perpetrator lineups in the CPD homicide files using a comparison subset of 1,076 lineups here to the average aggregate results of 6,743 lineups from the 11 field studies, using a subset of 1,076 lineups from CPD homicide files for her comparison. (Ex. 1, Steblay Report, p. 4).

DISPUTED/OBJECTION: The City's proposed paragraph is an inaccurate and incomplete description of Steblay's analysis. Plaintiff will accept the corrected version here, which is taken directly from the cited page of Dr. Steblay's report.

*See* Exhibit B, Second Revised JSOF, at p. 118, ¶ 217. Plaintiff also provided more fulsome objections to the other paragraphs identified in the City's Motion. *Compare* Dkt. 292, at 13 *with* Ex. B at p. 120-121, ¶¶ 222-223 (corresponding to Exhibit D, First Revised JSOF, ¶¶ 218-219),[5] and Ex. F, Third Revised JSOF, at p. 1-4, ¶¶ 252-261 (corresponding to Ex. D, First Revised JSOF at p.113-115, ¶¶ 248-257)). Plaintiff's objections are fulsome, cite to evidence, and explain Plaintiff's reasoning. Plaintiff still has not received any substantive response to those objections, despite multiple rounds of attempting to placate the City. If the City has not reviewed the Plaintiff's endeavors to work with the City to give them the information they need, and if it refuses to respond substantively, then the City should not be bringing this dispute to the Court.

The City has provided no legally sound argument for the adoption of its own facts as admitted. It has provided no justification for its refusal to engage in the summary judgment process. It has provided no substantive response or reason that Plaintiff's contribution to the joint statement of facts is insufficient, and Plaintiff's submissions reflect otherwise. This Court should deny the City's motion.

---

[5] Plaintiff's counsel indicated in correspondence with the City's counsel that he was considering supplementing his objection to paragraph 224 and 228 in the Second Revised Proposed JSOF, which correspond to paragraphs 220 and 224 in the first revision of the JSOF. See Exhibit C (January 22, 2024 Correspondence from M. Gould to the City).

### 3. Plaintiff's Contributions to the Individual Defendants' Proposed Undisputed Facts

Plaintiff has made the same good-faith and expeditious effort to respond to the individual Defendants' proposed joint statement of facts. When Plaintiff provided his response to the individual Defendants on January 17, 2024, Dkt. 290-1, Plaintiff flagged that not only was the proposed joint statement full of disputed facts, in many cases Defendants had attempted to improperly circumvent an obvious dispute of fact by citing to only one side of the dispute.

As with the City, Plaintiff offered corrections, additions, objections, and citations to evidence. As with the City, there is no question that Plaintiff's efforts complied with the Court's Standing Orders and Rules, and Defendants do not suggest otherwise.

On Friday, January 19, the individual Defendants provided a response to Plaintiff's comments, and they announced for the first time that a motion regarding disagreements would have to be filed on Monday. Dkt. 290-3 at 4. After providing their drafts nearly on Christmas Eve, and after Plaintiff had responded in extreme detail in just two weeks of work, Defendants announced that Plaintiff would have to reach agreement or not on the remainder of issues within approximately one business day.

Still Plaintiff attempted to collaborate, offering a time when his counsel was available on Monday to meet-and-confer on outstanding issues and providing a new draft of the joint statement in less than one business day, on the morning of Monday, January 22, which included a number of agreements and compromises. Dkt. 290-4. Plaintiff flagged again that Defendants' latest round of edits failed to solve the problem raised previously: in numerous places, Defendants left comments that did not address the objection or dispute that Plaintiff raised and simply made conclusory claims like "the fact is supported." Ex. J at 3 (A. Swaminathan Jan. 22 Email). Defendants chose to simply cite to evidence on one side of a dispute, and then debate

21

whether the citation is "supported," ignoring the evidence Plaintiff cited that creates a dispute of fact on the same material fact. *Id.*

During the meet-and-confer at 4:30 p.m. on January 22, the parties agreed that Plaintiff would look through all of Defendants' latest round of edits to ensure that his objections were incorporated and to see where the remaining disputes lay. Upon review, Plaintiff noticed that Defendants had not incorporated some of his objections and citations. As such, Plaintiff had to work through the document one paragraph at a time, and he informed Defendants that there was not enough time to complete the effort on the night of January 22. Ex. J at 1-2 (A. Swaminathan Jan. 22 Email). The individual Defendants then filed their motion.

Plaintiff has done all he can to abide by this Court's Standing Order and confer with Defendants in good faith to craft a joint statement of undisputed material facts on the truncated timeline that Defendants created by waiting until right before Christmas Eve to start the process. The resulting inability to meet the Court's final summary-judgment deadline is a problem of Defendants' own creation, and Defendants should bear the consequences of that problem. Defendants ask for an additional week of time, but Plaintiff has no faith that this will be the last request to extend the summary judgment deadline, or that the inherent problems with Defendants' proposed statement of fact (discussed below) can be addressed by the parties, and then the Court, on this timeframe. Meanwhile, the Court has already ruled there would be no further extensions. This Court's Standing Order makes it Defendants' responsibility to timely organize their motions for summary judgment, they have not done so, and their motion for more time should be denied.

22

**C.     The Parties' Conferrals on the Joint Statement of Fact Demonstrate That Defendants Have No Basis to Move for Summary Judgment**

Last but not least, it is worth emphasizing again that Defendants' consistent delays and non-participation in the summary judgment process have occurred in the context of a case where there is no good-faith basis for Defendants to move for summary judgment in the first place. The back and forth regarding Defendants' joint statements of fact make that clear as day.

In this case, Plaintiff contends that his wrongful conviction was caused by the investigative misconduct of the individual Defendants and the policies and practices of the City of Chicago. The principal individual Defendant, Guevara, is asserting his Fifth Amendment rights in response to all questions. A motion for summary judgment filed by the Plaintiff on the evidence suppressed in the case has already resulted in a ruling from this Court that there are genuine issues of material fact that a jury must resolve. The remaining individual Defendants have no basis to argue that their role in the misconduct, the investigation of Plaintiff, and his wrongful conviction was so limited that there is no genuine dispute of fact about whether they are liable for violating Plaintiff's constitutional rights or Illinois law. The City of Chicago, as discussed, has already lost at trial and on appeal the very same *Monell* theories at issue here, and so it is either precluded from re-litigating those issues or those past results belie any contention by the City that there are no genuine disputes of fact for trial. With all of this background, how could it be possible that Defendants are justified in wasting months or years of the parties' time and the Court's resources advancing an argument that there is nothing for a jury to resolve here.

This reality is reflected in the Defendants' approach to joint statements of fact. Defendants' proposed joint statements of fact are patently improper. They are full of mischaracterizations of evidence and selective citation to the record. Most fundamentally, they are full of disputed facts, including disputed facts that go to the most hotly contested issues in the

case. As discussed, while Defendants attempt to sidestep this problem by citing to only the evidence on one side of the dispute, that is not an appropriate approach to a joint statement of undisputed facts, and it simply highlights why this is not a summary judgment case.

To provide a few examples, the individual Defendants' proposed statement of fact includes the following:

> At his civil deposition in this case, Aby Gonzalez denied he identified someone as the offender on the night of the shooting and denied that he saw the shooting. (Supporting Evidence: Ex. 8 - Gonzalez Deposition 60:18-61:1, 75:4-8.)

Dkt. 290-1 at ¶25. This is one of the central issues in the case: whether eyewitness Aby Gonzalez saw the shooting and identified an alternate suspect named Bryan Johns from a lineup on the night of the shooting. Contrary to Defendants' proposed statement of fact, there is a mountain of evidence that he did. This includes the original police report from the scene, describing what Aby Gonzalez saw: the shooter "pulled a gun and pointed it at him and stood there for several seconds," and then "fire two shots at Fred [the victim] . . . and ran past Gonzalez again. . . ." Ex. K – RFC Johnson 52. And it includes the lineup report from the night of the shooting written by Detective Erickson—discussed at length in the briefing on Plaintiff's motion for summary judgment against Guevara—which explicitly says Aby Gonzalez "identified the #2 Bryan Johns as the offender." Ex. L – RFC Johnson 27. This is enough to create a dispute, but there is much more. *See, e.g.*, Ex. M - Johnson 911-912 (Tepfer Report, detailing that Gonzalez told him that he positively identified someone in a lineup on the night of the shooting); Ex. N - Tepfer Dep. Vol. II at 88:17-90:20.

Defendants try to avoid this obvious dispute and present the material fact about whether Gonzalez saw the shooting and identified Johns as undisputed by simply rewriting the statement of fact to focus only on the civil deposition testimony of Aby Gonzalez ("At his civil deposition

in this case, Aby Gonzalez testified…"). In this way, Defendants ignore all of the evidence above, which clearly demonstrates that there is a dispute of fact on this issue. This is improper. If disputes could be circumvented in this way, then parties could assert that any issue in the case is undisputed by simply citing to the evidence that favors them, defeating the entire purpose of this Court's procedures.

> Consider another example from Defendants' proposed statement of fact:
>
> Ricardo Burgos testified that on June 12, 1991 at approximately 7:45, he was driving with a friend East down North Ave. At that time he saw a black guy wearing a T-shirt and gray pants walking North down Claremont with a gun in his hand. (Supporting Evidence: Ex. 5 - Criminal Trial Transcript (Ricardo Burgos) at JGS_JOHNSON 79 (A68:16-21), JGS_JOHNSON 80-81 (A69:22-70:7).) (Dkt. 290-1 at ¶102)
>
> Mr. Burgos testified that he looked at this man who fired the gun for about forty-five seconds and could see his face. Mr. Burgos then identified Demetrius Johnson as the person he saw fire the gun that day. (Supporting Evidence: Ex. 5 - Criminal Trial Transcript (Ricardo Burgos) at JGS_JOHNSON 81 (A70:12-15), JGS_JOHNSON 85 (A74:3-14) (Dkt. 290-1 at ¶105 )

Dkt. 290-1 at ¶¶102, 105. Whether eyewitness Ricardo Burgos ever actually saw the shooter and could make an identification of Plaintiff without the Defendant officers telling him who to pick is another hotly disputed issue. Mr. Burgos' criminal trial testimony is merely one piece of evidence bearing on this issue. Others include the police report documenting his initial conversation with police, his sworn declaration, and his deposition testimony. All of these contradict Mr. Burgos' trial testimony and create a dispute of fact. See, e.g., Ex. O –Police Report of Ricardo Interview at RFC-Johnson 25 (Ricardo describes the shooter as a "male Hispanic," not a "black guy"); Ex. P - Declaration of Mr. Burgos at Johnson 000601- 000603 (he was driving by in a moving car, did not see shooting, only saw shooter running away, did not see shooter's face; Ex. Q – Deposition of Mr. Burgos at 17:10-19:4, 38:5-14 (if the police said he could have identified the shooter, that would have been false), 45. Defendants ignore all of this

evidence, instead re-writing the statement of fact to focus only on the piece of evidence they like, the criminal trial testimony.

As discussed above, during the conferral process Plaintiff raised this problem, which permeates Defendants' proposed statements of fact. Defendants provided no response, simply ignoring it and pressing ahead with their proposed statement. As these examples show, it is the approach that Defendants have taken to the joint statements of fact that violates this Court's Standing Orders and the Local Rules. Indeed, Defendants' approach conflicts with Rule 56 itself, which requires the moving party to meet the initial burden of establishing that there is no genuine dispute of material fact for a jury to decide on the claims or defenses. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010).

At the end of the day, Defendants have taken this approach to summary judgment because it is the only approach available to Defendants. There are innumerable disputes of fact on every material issue in this case. The case should go to trial instead of languishing further at summary judgment.

## CONCLUSION

For all of these reasons, Defendants' motion for additional time should be denied, and the City's motion to deem facts admitted should be denied. In a case like this one, as this process demonstrates amply, summary judgment is a waste of the Court's and the parties' time and resources, and the case should proceed directly to trial.

To the extent that Defendants truly believe that they have a good faith basis to move for summary judgment on a truly agreed set of facts, they should be ordered to do so by the final deadline of January 31, 2024. Indeed, there are a set of facts from each joint statement on which the parties have reached agreement, and as Plaintiff has expressed to Defendants repeatedly,

Plaintiff remains willing to continue discussing the proposed joint statements of fact to see if any additional agreements can be reached. But having failed to provide a proposed joint statement of fact with sufficient time for the parties to meaningfully confer and for the Court to adjudicate disputes, it is only those agreed facts on which Defendants should be permitted to move by the January 31, 2024 deadline.

**January 23, 2024**                              RESPECTFULLY SUBMITTED,
                                                  DEMETRIUS JOHNSON

                                        BY:    /s/Alyssa Martinez

Anand Swaminathan
Steve Art
Sean Starr
Alyssa Martinez
LOEVY & LOEVY
311 N. Aberdeen Street
Chicago, Illinois 60607
(312) 243-5900

27