**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEMETRIUS JOHNSON | ) | |
| | ) | Case No. 20 CV 4156 |
| Plaintiff, | ) | |
| | ) | Judge Sara L. Ellis |
| v. | ) | |
| | ) | Magistrate Judge Heather K. McShain |
| REYNALDO GUEVARA, et al. | ) | |
| | ) | |
| | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

**<u>JOINT MOTION TO RESOLVE DISPUTED MATERIAL FACTS</u>**

Pursuant to Judge Ellis's standing order on summary judgment practice. The Parties submit of the following Joint Motion to Resolve Disputed Facts, relative to Defendant Officers' forthcoming Motion for Summary Judgment Against Plaintiff:

**Plaintiff's General Objection to Joint Statement of Fact:** Respectfully, Plaintiff objects to the Court's individual practices requiring an agreed statement of fact. The process the Court has set forth requires parties to agree to statements being included in a joint statement of fact, even where there is a dispute as to the material fact, by permitting a party to characterize a fact as undisputed by simply pointing to one side of the evidence on the issue. So, for example, at the hearing on January 25, 2024, the Court provided guidance on how to handle a dispute on a hotly contested issue—for example, whether Witness A good look at saw the shooter and could make an independent identification, or whether Witness A did not get a good look at the shooter and was told who to pick by police. Based on the Court's guidance, if Defendants include a fact such as, "At trial, Witness A testified that he saw the shooter and identified Plaintiff from a photo array on his own," it must be treated as undisputed if that is indeed what the trial transcript says. Under the Court's guidance, if there is evidence to the contrary from police reports, affidavits, depositions, or other documents indicating that the witness *did not* see the shooter and/or *could not* make an identification, that does not create a dispute of fact. Instead, it may be a basis to add a separate statement of fact. In Plaintiff's view, this process permits the moving party to distort the underlying summary judgment record on a disputed issue, assert that something is undisputed, and then demand the nonmoving party agree to that fact in a so-called joint statement of undisputed facts, which the moving party will then use to argue that summary judgment is warranted. That process is contrary to the Federal Rules of Civil Procedure.

## IV.     Police Investigation

### a)     *June 12, 1991*

28.     Officer Daley was informed that Bryan Johns was not identified in the lineup and that he would be subsequently released. **(Supporting Evidence: Ex. 6 – Daley Deposition at 76:22-77:12.)**

**Plaintiff's Objection**: This statement is disputed. Daley testified at Plaintiff's criminal trial about the lineup and the results from his personal knowledge; he never claimed he was only *informed* of the results (if he had, this would have rendered it inadmissible hearsay at the criminal trial). Ex. 5 - R. B-27, B-31-32 (Daley criminal trial testimony regarding the lineup and its results, nowhere stating that he was merely informed of the lineup and its results).

Regarding law of the case, same as above (objections to Paragraph 15). There is a difference between agreed facts and inferences on Plaintiff's motion for summary judgment, and agreed facts and inferences for Defendant Daley's own motion for summary judgment.

**Defendant Officers' Response:** This is from his deposition and law of the case (*see* Dkt 241 at 11 and 62) and issue preclusion/estoppel support this fact. (*see* Dkt 212 at 11 and 62) ("Officer Daley was not involved in the line-up process" and "Officer Daley testified about his arrest of Johns. He also testified that Johns was not identified in a lineup on the night of the shooting.")


30.     There is no evidence that Defendant Halvorsen was involved in the Edwin Fred homicide investigation on the first night, June 12-13, 1991. There is no evidence that Defendant Halvorsen was involved in the Edwin Fred homicide investigation before June 29, 1991. **(Supporting Evidence: Ex. 2 – Four-person lineup report at RFC-Johnson 40-42; Ex. 7 – Six-witness lineup Report at RFC-Johnson 26-27; Ex. 2 – Guevara 6/13/91 Supp Report at RFC-Johnson 46-53; Ex. 2 - Original Offense Case Report at RFC- Johnson 38-39; Ex. 2 - Patrol Supp. Report of 6/29/91 at RFC-Johnson 66 (earliest record of Halvorsen's name in the records.)**

**Plaintiff's Objection**: Plaintiff offered to agree to a clarified statement of fact that comports with the actual evidence, as follows: "Defendant Halvorsen is not listed on any police reports in the Edwin Fred homicide investigation from June 12-13, 1991. Defendant Halvorsen is not listed on any police reports in the Edwin Fred homicide investigation from before June 29, 1991." Defendants rejected that compromise.

As written, the statement is disputed. There is no dispute that Defendant Guevara was involved with the investigation from the first day of the shooting, and over the entirety of the ensuing weeks leading up to Plaintiff being charged. The citations below show that Guevara and Halvorsen were partners and routinely investigated and closed homicide investigations together. Ex. 48 – Halvorsen Deposition in *Montanez v. Guevara*, 2/6/19 at 53:3-11 (Guevara and Halvorsen were partners for 8-9 years), 186:16-20 (he was usually with Guevara, and he types up dozens of their reports every week), 187:4-7, 230:15-16 (investigating together); Ex. 49 – Mingey Deposition in *Montanez v. Guevara* at 193:17-23 (Guevara and Halvorsen's supervising

sergeant, testifying that the two of them worked together and solved more gang-related cases than other detectives), 314:12-24 (same). In addition, when asked about Halvorsen's involvement in the investigation, and his role in the misconduct alleged throughout the investigation, Defendant Guevara pleaded the Fifth regarding Halvorsen's involvement, both generally and specifically. Ex. 42 – Guevara Deposition at 15:5-16 (pleading Fifth on solving the case with Halvorsen); 39:19-40:2, 40:17-41:1 (deciding to frame Plaintiff); 41:2-23 (working with Guevara every step of the way); 76:16-77:14, 78:22-79:4, 81:21-25, 115:21-117:4 (conspired with Halvorsen against Plaintiff), 118:1-8 (same); 138:16-139:3 (conspire with EH against others); 141:12-19 (same); 142:7-11 (same); 144:3-22 (same); 145:8-25 (same); 146:7-13, 20-24 (same).

**Defendant Officers' Response:** Plaintiff provides no support for this position in the record. This is speculation that Halvorsen and Guevara worked together in this case prior to their report indicating Halvorsen was involved in the case. It is not only that Halvorsen's name does not appear in reports prior to June 29, 1991, there is no testimony in this case from anyone that indicates that Halvorsen was investigating this homicide prior to June 29, 1991.

Guevara asserting his Fifth Amendment to oppose the facts fails to appreciate that the assertion of the Fifth Amendment alone is insufficient to meet his burden. *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 390 (7th Cir. 1995)(quoting *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976) ("[T]he entry of judgment based only on the invocation of the privilege and 'without regard to the other evidence' exceeds constitutional bounds."); *Evans v. City of Chicago,* 2006 WL 463041, at *9 (N.D. Ill. Apr. 26, 2006)(aff'd and remanded by *Evans v. Katalinic,* 445 F.3d 593 (7th Cir. 2006). For Plaintiff to obtain the adverse inference of a fact from Guevara's invocation, he must point to other probative evidence of that fact. *Baxter,* 425 U.S. at 318 ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify *in response to probative evidence offered against them*.") (emphasis added); *see also Doe ex rel. Rudy-Glanzer v. Glanzer,* 232 F.3d 1258, 1265 (9th Cir. 2000) ("An adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer.").

Guevara's assertion of the Fifth Amendment is not evidence and allows an inference against Guevara only if there is corroboration, but does not allow an inference against Halvorsen, Healy, Erickson or Daley. The question of whether a nonparty's invocation of the Fifth Amendment may be used against a party is determined on a case-by-case basis and depends on whether such an "adverse inference is trustworthy under all of the circumstances and will advance the search for truth." *Sebastian v. City of Chicago,* No. 05 C 2077, 2008 WL 2875255, at *33 (N.D. Ill. July 24, 2008) (quoting *Kontos v. Kontos,* 968 F. Supp. 400, 406 (S.D.Ind.1997); *LiButti v. U.S.,* 107 F.3d 110, 124 (2d Cir.1997). The court assesses the relationship between the witness invoking and the party to determine if there is some relationship of loyalty between the witness and party. *See LiButti v. U.S.,* 107 F.3d 110, 122 (2d Cir.1997); *State Farm Mut. Auto. Ins. Co. v. Abrams,* No. 96 C 6365, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000). Most courts that have imputed an adverse Fifth Amendment inference from a nonparty to a party have done so where there is a close family relationship between the party and the nonparty or a business relationship, such as an agency or employer-employee relationship. *See State Farm Mut. Auto Ins. Co.,* 2000 WL 574466, at *6 (collecting cases); *Kontos,* 968 F.Supp. at 408. Plaintiff has no evidence of Guevara's relationship at the time of his invocation with any of the co-defendants, considering

3

Halvorsen has been deceased since 2020 and retired in 2010, Erickson has been deceased since 2018 and retired in 1991, and Healy has been deceased since 2002 and retired in 1992. As for Daley (the only other living defendant), he testified that he had no relationship with Guevara and did not personally care for him. **Ex. 6 – Daley Deposition at 138:24-139:19**.

### b) *Continuing Investigation*

31. On July 11, 1991, Defendants Guevara and Halvorsen showed a photo array to Elba Burgos in which she indicated that the male she saw running from the scene of the murder with a gun in his hand resembled Darrell Johnson (Plaintiff's older brother), but a little younger. **(Supporting Evidence: Ex. 2 - 7/17/91 supp report at RFC-Johnson 68-70; Ex. 5 - 11/18/92 Criminal Trial Transcript (Elba Burgos) at JGS_JOHNSON 106 (A95:2-12); Ex. 39 – Photos from Photo Array containing Darrell Johnson – Impound Evidence 398-407.)**

**Plaintiff's Objection**: This is, again, one of the central disputes in the case: whether Elba Burgos ever got a good enough look at the shooter to make an independent identification, and whether she ever identified Plaintiff as the shooter without police manipulation, and in turn whether she first identified Plaintiff's brother Darrell as looking similar to the shooter. What Defendants have included as an undisputed fact is simply the official version of events told in the police reports, disputed by ample evidence developed in discovery. For example:

1. Elba also testified that she saw the shooter running by from her left side, running down the sidewalk past her house on the West side of the street (opposite her home on the East side of the street), and so could only have seen the side of the shooter's face. Ex. 7 – Police Report of Elba Interview, at RFC Johnson 19 (sitting on her front porch, saw person with gun running down the sidewalk on West side of street); Ex. 5 – JGS_JOHNSON 111-112 (A-100:19-A-101:13 (person running was on other side of street). And she had only a few seconds to see the shooter's face, all circumstances that rendered any possible identification from Elba impossible without police manipulation. Ex. 5 – JGS_JOHNSON 121 (A-110:18-20).

2. Guevara pleaded the Fifth as to all of these facts, which permits an inference in Plaintiff's favor as the non-moving party. Ex. 42 - Guevara Dep: 27:4-9 (Elba did not give police a description of shooter when she first spoke to them), 30:2-7 (Elba said she could not give good description of the shooter and could not identify him), 54:20-55:25 (photo array shown to Elba and Guevara made up that she ID'd Darrell but younger), 56:1-11 ("what you showed Elba was not a proper photo array, was it?"), 56:12-59:12 (improper fillers and improper ID procedures and did not disclose manipulation), 64:18-65:13 (tainting Elba's live lineup ID), 72:10-22 (only evidence was you telling her who to pick); 77:15-78:1.

3. Plaintiff also disputes that the July photo arrays purportedly shown to Elba Burgos, in which she purportedly focused on Plaintiff's brother first, and then Plaintiff, formed the basis of any focus on Demetrius Johnson, because Ricardo Burgos testified that he made a photo array identification in June 1991 before any procedures with Elba Burgos, undermining the police timeline of events contained in this statement of fact. Ex. 5 – Ricardo Burgos Criminal Trial Testimony, JGS_Johnson 97 (A-86:4-21) (shown the same two photos with Plaintiff in it on June

21, 1991); Ex. 5 – Guevara Criminal Trial Testimony, JGS_Johnson 227 (B-52:21-23) (to Guevara: "Q. On June 21, 1991, did you show Ricardo Burgos a photo array. A. Yes, I did.").

What Defendants are doing here is simply reciting the police version of events (hotly disputed), and citing to only a portion of the evidence on the issue. However, based on this Court's guidance, what Defendants can identify as an undisputed fact is to present this fact as follows: "*According to a July 17, 1991 police report,* on July 11, 1991, Defendants Guevara and Halvorsen showed a photo array to Elba Burgos in which she indicated that the male she saw running from the scene of the murder with a gun in his hand resembled Darrell Johnson, but a little younger."

**Defendant Officers' Response:** There is no support for the argument that Elba (or Elva) Burgos did not inform detectives that the shooter looked like Darrell Johnson but younger. That is what she said in her sworn testimony. Plaintiff is disputing this fact by arguing that she did not have the ability to view the shooter and make an identification at all. The fact simply states that she made the identification, which is undisputed according to her testimony.

Guevara asserting his Fifth Amendment to support the facts fails to appreciate that the assertion of the Fifth Amendment alone is insufficient to meet his burden. *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 390 (7th Cir. 1995) (quoting *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976) ("[T]he entry of judgment based only on the invocation of the privilege and 'without regard to the other evidence' exceeds constitutional bounds."); *Evans v. City of Chicago*, 2006 WL 463041, at *9 (N.D. Ill. Apr. 26, 2006) (aff'd and remanded by *Evans v. Katalinic*, 445 F.3d 593 (7th Cir. 2006). For Plaintiff to obtain the adverse inference of a fact from Guevara's invocation, he must point to other probative evidence of that fact. *Baxter*, 425 U.S. at 318 ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify *in response to probative evidence offered against them.*") (emphasis added); *see also Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) ("An adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer.").

Guevara's assertion of the Fifth Amendment is not evidence and allows an inference against Guevara only if there is corroboration, but does not allow an inference against Halvorsen, Healy, Erickson or Daley. The question of whether a nonparty's invocation of the Fifth Amendment may be used against a party is determined on a case-by-case basis and depends on whether such an "adverse inference is trustworthy under all of the circumstances and will advance the search for truth." *Sebastian v. City of Chicago*, No. 05 C 2077, 2008 WL 2875255, at *33 (N.D. Ill. July 24, 2008) (quoting *Kontos v. Kontos*, 968 F.Supp. 400, 406 (S.D.Ind.1997); *LiButti v. U.S.*, 107 F.3d 110, 124 (2d Cir.1997). The court assesses the relationship between the witness invoking and the party to determine if there is some relationship of loyalty between the witness and party. *See LiButti v. U.S.*, 107 F.3d 110, 122 (2d Cir.1997); *State Farm Mut. Auto. Ins. Co. v. Abrams*, No. 96 C 6365, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000). Most courts that have imputed an adverse Fifth Amendment inference from a nonparty to a party have done so where there is a close family relationship between the party and the nonparty or a business relationship, such as an agency or employer-employee relationship. *See State Farm Mut. Auto Ins. Co.*, 2000 WL 574466, at *6 (collecting cases); *Kontos*, 968 F.Supp. at 408. Plaintiff has no evidence of Guevara's relationship at the time of his invocation with any of the co-defendants, considering

5

Halvorsen has been deceased since 2020 and retired in 2010, Erickson has been deceased since 2018 and retired in 1991, and Healy has been deceased since 2002 and retired in 1992. As for Daley (the only other living defendant), he testified that he had no relationship with Guevara and did not personally care for him. **Ex. 6 – Daley Deposition at 138:24-139:19**.

Plaintiff's reference to Ricardo Burgos viewing a photo array does not contradict when Elba Burgos was shown a photo array and her testimony confirms the timing during the investigation.


32.     Having knowledge that Darrell Johnson had a younger brother, Defendants Guevara and Halvorsen contacted Officer Daley to ask if he had a photo of the younger brother. On July 15, 1991, Officer Daley located a photo of the younger brother, Demetrius Johnson, standing with two other individuals and gave the requested photo to the investigating detectives. This was Officer Daley's last involvement in the Edwin Fred Homicide investigation. Officer Daley had no contact with Plaintiff regarding this investigation or any witness that identified Plaintiff. **(Supporting Evidence: Ex. 2 - 7/17/91 supp report at RFC-Johnson 68-70; Ex. 6 – Daley Deposition at 243:24-244:5; 245:6-10, 130:21-131:5)**

**Plaintiff's Objection**: Disputed in part.

Disputed as to "Having knowledge that Darrell Johnson had a younger brother" – this portion is disputed, per Plaintiff's objections to Paragraph 31.

Disputed as to "This was Officer Daley's last involvement in the Edwin Fred Homicide investigation." Daley had continued involvement, including by testifying falsely that Johns was not identified on the night of the shooting. Ex. 5 - R. B-27, 31-32.

**Defendant Officers' Response:** It is accurate that this was the last involvement in the police investigation that Officer Daley had. Additionally, Daley's deposition confirms that Detectives Halvorsen and Guevara asked him for a photograph of Darrell Johnson's younger brother, which confirms that the detectives knew Darrell Johnson had a younger brother. Furthermore, testimony at trial is not part of the murder investigation. The police investigation ended when charges were approved by the Cook County State's Attorney's Office. Daley's later testimony at trial was solely about events prior to and in the middle of July. **Ex. 5 – Criminal Trial Transcript (Daley) at JGS_JOHNSON 203 (B28:3-9.)**


33.     Later that day on July 15, 1991, Defendants Halvorsen and Guevara showed the three-person photo to Elba Burgos, who made a positive identification of Plaintiff Demetrius Johnson as the person she saw running with a gun from the scene of the shooting. **(Supporting Evidence: Ex. 2 - 7/17/91 supp report at RFC-Johnson 68-70; Ex. 5 - Criminal Trial Transcript (Elba Burgos) at JGS_JOHNSON 106-107 (A95:24-96:24); Ex. 11 – 3-person polaroid (trial exhibit 6B) Impound Evidence 410-411.)**

**Plaintiff's Objection**: Disputed, based on all of the evidence set forth in Plaintiff's objection to Paragraph 31 that creates a dispute of fact: There is substantial evidence creating a dispute as to

whether Elba ever got a good enough look at the shooter to make an independent identification, picked out Darryl Johnson without police manipulation, or in turn identified Demetrius Johnson, without police manipulation.

Defendants' response during conferrals to the evidence set forth above that creates a dispute of fact—that their proposed statement of fact "is from her sworn testimony and therefore supported"—shows that Defendants are not identifying undisputed facts, but instead finding evidentiary support for the facts they like, without consideration of other evidence that creates a dispute of fact.

**Defendant Officers' Response:** This is from her sworn testimony and therefore supported. Plaintiff's dispute that she made an identification is not supported by any evidence. Here Plaintiff is disputing whether her identification was accurate, not whether she did identify Plaintiff.

### c)    *The Arrest and Charging of Plaintiff*

35.    On July 22, 1991, at 8:30 p.m., Elba Burgos, Rosa Burgos, Angel Cordova, Victor Cordova, and Ricardo Burgos all viewed a lineup conducted by Halvorsen and Guevara. Elba Burgos identified Demetrius Johnson as the person "she saw run past her home, with gun in his hand, immediately after hearing gunshots being fired at the corner of North Ave. & Claremont." Rosa Burgos identified Demetrius Johnson as the person "she saw shot Edwin Fred." Ricardo Burgos identified Demetrius Johnson as the person "he saw shoot Edwin Fred." Neither Victor nor Angel Cordova identified Demetrius Johnson as the person who shot Edwin Fred. **(Supporting Evidence: Ex. 2 - July 22, 1991 Lineup Report at RFC-Johnson 72-74; Ex. 5 – Criminal Trial Transcript (Elba Burgos) at JGS_JOHNSON 108 -109 (A97:8-98:7); Ex. 14 - Line up photo (Impound Evidence 389); Ex. 5- Criminal Trial Transcript (Rosa Burgos) at JGS_JOHNSON 49-50 (A38:3-39:16); and Ex. 5 - Criminal Trial Transcript (Ricardo Burgos) at JGS_JOHNSON 85-86 (A74:12-75:14).)**

**Plaintiff Objection:** Plaintiff does not dispute that the police reports say that the Burgoses each made an identification, but this statement of fact is broader than that, and other evidence places every aspect of those purported identifications in dispute. Ample evidence supports Plaintiff's view that Elba, Rosa or Ricardo never could, or did, made identifications of Demetrius Johnson other than through police manipulation. Again, this is simply the official version of events told in the police reports, which is hotly disputed.

Regarding Ricardo Burgos, he was 60-70 feet away when the shooting occurred, and only saw the shooter running away from behind and never saw his face. Any identification he might have made could only have come if someone told him who to pick. *See e.g.*, Ex. 46 - Ricardo Affidavit, Johnson 601-603; Ex. 32 - Ricardo Deposition at 17:10-19:4, 38:5-14 (if the police said he could of identified the shooter, that it would have been false), 45:5-11 ("Q. "[I]s it fair to say that if you were shown photos or lineups, you would not have been able to identify anyone? A. That's correct.").

Regarding Elba Burgos, see all of the evidence set forth in Plaintiff's objection to Paragraph 30 that creates a dispute of fact: There is substantial evidence creating a dispute as to whether Elba ever got a good enough look at the shooter to make an independent identification, picked out Darryl Johnson without police manipulation, or in turn identified Demetrius Johnson, without police manipulation. In addition, Elba Burgos testified at her deposition that she did not see the shooting, did not go to the police station in July 1991, and did not speak to Guevara or identify anyone. See Ex. 33 - Elba Deposition at 44-45.

Regarding Rosa Burgos, she was in a building walking down a staircase behind Raul Ortiz, and ran back upstairs when the shooting started, so she did not see the shooter. Ex. 7 - Police Report of Rosa Interview, RFC-Johnson 20-21; Ex. 34 - Rosa Deposition at 40:21-42:19. She told police "everything happened so fast and that she wasn't sure who the shooter was." Ex. 5 – JGS_Johnson 185-187. And she testified that she "had trouble distinguishing between black people because all those people look alike." Ex. 5 – Rosa Trial Testimony at JGS_Johnson 66 (R. A-55:6-10). And when she viewed a lineup, she did not make a positive identification but instead was unsure. Ex. 5 - Rosa Trial Testimony at JGS_Johnson 187-188 (B-12:19 –B-13:11). In addition, prior to this three individuals had already identified someone else and she was told by police that they had the wrong guy. Ex. 5 – PD Carey Testimony Rosa, JGS Johnson 187 (B-12:2-18) (Public Defender testifying that Rosa told him there were three identifications previously and the police told them it was wrong guy).

In addition to all of this evidence, Defendant Guevara pleaded the Fifth as to every one of these identifications and whether they were the product of police manipulation. See generally, Ex. 42 – Guevara Deposition at p. 22:22-23:1, 24:5-30:25, 78:17-81:20, 82:6-84:7, 91:23-92:21, 101:23-104:4, 110:4-111:8 (pleading Fifth on every one of these issues).

However, consistent with the Court's instruction, Plaintiff will not object to the inclusion of this fact for purposes of this summary judgment only, if Defendants (a) modify the paragraph to make clear they are referring to only a portion of the evidence on the issue, as follows: "According to the police reports and portions of the trial testimony of Rosa, Elba and Ricardo Burgos. . . "; and (b) include the contrary evidence in subsequent paragraphs, as follows:

>Ricardo Burgos testified at this civil deposition that he was 60-70 feet away when the shooting occurred, that he only saw the shooter running away from behind and never saw his face, and that any claim by police that he could identify the shooter was false. **Supporting Evidence: Ex. 46 - Ricardo Affidavit, Johnson 601-603; Ex. 32 - Ricardo Deposition at 17:10-19:4, 38:5-14 (if the police said he could of identified the shooter, that it would have been false), 45:5-11 ("Q. "[I]s is it fair to say that if you were shown photos or lineups, you would not have been able to identify anyone? A. That's correct.").**

>Elba Burgos's criminal trial testimony, and the police report of the initial interview of Elba, indicate that Elba was on her front porch on the East side of the street, and saw the shooter running down the sidewalk past her house on the West side of the street (opposite her home on the East side of the street), and so could only have seen the side of the shooter's face. And she had only a few seconds to see the shooter's face. **Supporting Evidence: Ex. 7 – Police Report of Elba**

8

**Interview, at RFC Johnson 19 (sitting on her front porch, saw person with gun running down the sidewalk on West side of street); Ex. 5 – JGS_JOHNSON 111-112 (A-100:19-A-101:13 (person running was on other side of street). Ex. 5 – JGS JOHNSON 121 (A-110:18-20); see also Ex. 42 - Guevara Dep: 27:4-9 (Elba did not give police a description of shooter when she first spoke to them), 30:2-7 (Elba said she could not give good description of the shooter and could not identify him)**.

The police report documenting officers' initial interview of Rosa Burgos indicates that Rosa was in a building walking down a staircase behind Raul Ortiz, and ran back upstairs as soon as the shooting started. Rosa testified that she told police "everything happened so fast and that she wasn't sure who the shooter was"; and that she "had trouble distinguishing between black people because all those people look alike"; and that when she viewed a lineup she did not make a positive identification but instead told the police she was unsure. **Supporting Evidence: Ex. 7 – Police Report of Rosa Interview, RFC-Johnson 20-21; Ex. 34 - Rosa Deposition at 40:21-42:19; Ex. 5 – PD Carey Trial Testimony at JGS_Johnson 185-187; Ex. 5 – Rosa Trial Testimony at JGS_Johnson 66 (R. A-55:6-10), 1188-1189 (B-12:19 –B-13:11).**

Demetrius Johnson's Public Defender, Jack Carey, testified at trial that when he interviewed Rosa Burgos, she told him that she had gone to the police station on an earlier occasion (before the lineup in which Demetrius Johnson was the suspect) to view a different lineup. At that time, three individuals had identified someone and she was told by police that they had the wrong guy. **Supporting Evidence: Ex. 5 – PD Carey Trial Testimony, JGS Johnson 187 (B-12:2-18) (Public Defender testifying that Rosa told him there were three identifications previously and the police told them it was wrong guy).**

When Reynaldo Guevara was asked at his deposition whether Elba, Rosa and Ricardo told him they could not identify the shooter, whether he told them who to pick, and whether he ultimately fabricated police reports falsely claiming that they had identified Plaintiff without his interference, Guevara pleaded the Fifth. **Supporting Evidence: Ex. 42 – Guevara Deposition at p. 22:22-23:1, 24:5-30:25, 78:17-81:20, 82:6-84:7, 91:23-92:21, 101:23-104:4, 110:4-111:8 (pleading Fifth on these issues throughout deposition).**

**Defendant Officers' Response**: This is supported by their trial testimony and the record. To the extent that Plaintiff is arguing that the witnesses did not make identifications, we address the witnesses' inability over 30 years later to recall what they saw in later facts, but the witnesses all confirm that they testified truthfully at trial. *See* ¶¶ **117, 119**.

To the extent Plaintiff is disputing they could not make identifications based on the circumstances surrounding the event, this paragraph is about the fact that they did make identifications of Plaintiff, not whether those identifications were accurate.

Guevara asserting his Fifth Amendment to oppose the facts fails to appreciate that the assertion of the Fifth Amendment alone is insufficient to meet his burden. *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 390 (7th Cir. 1995)(quoting *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976) ("[T]he entry of judgment based only on the invocation of the privilege and 'without regard to the other evidence' exceeds constitutional bounds."); *Evans v. City of Chicago*, 2006 WL 463041, at *9 (N.D. Ill. Apr. 26, 2006) (aff'd and remanded by *Evans v. Katalinic*, 445 F.3d 593 (7th Cir. 2006). For Plaintiff to obtain the adverse inference of a fact from Guevara's invocation, he must point to other probative evidence of that fact. *Baxter*, 425 U.S. at 318 ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify *in response to probative evidence offered against them*.") (emphasis added); *see also Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) ("An adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer.").

Guevara's assertion of the Fifth Amendment is not evidence and allows an inference against Guevara only if there is corroboration, but does not allow an inference against Halvorsen, Healy, Erickson or Daley. The question of whether a nonparty's invocation of the Fifth Amendment may be used against a party is determined on a case-by-case basis and depends on whether such an "adverse inference is trustworthy under all of the circumstances and will advance the search for truth." *Sebastian v. City of Chicago*, No. 05 C 2077, 2008 WL 2875255, at *33 (N.D. Ill. July 24, 2008) (quoting *Kontos v. Kontos*, 968 F.Supp. 400, 406 (S.D.Ind.1997); *LiButti v. U.S.*, 107 F.3d 110, 124 (2d Cir.1997). The court assesses the relationship between the witness invoking and the party to determine if there is some relationship of loyalty between the witness and party. *See LiButti v. U.S.*, 107 F.3d 110, 122 (2d Cir.1997); *State Farm Mut. Auto. Ins. Co. v. Abrams*, No. 96 C 6365, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000). Most courts that have imputed an adverse Fifth Amendment inference from a nonparty to a party have done so where there is a close family relationship between the party and the nonparty or a business relationship, such as an agency or employer-employee relationship. *See State Farm Mut. Auto Ins. Co.*, 2000 WL 574466, at *6 (collecting cases); *Kontos*, 968 F.Supp. at 408. Plaintiff has no evidence of Guevara's relationship at the time of his invocation with any of the co-defendants, considering Halvorsen has been deceased since 2020 and retired in 2010, Erickson has been deceased since 2018 and retired in 1991, and Healy has been deceased since 2002 and retired in 1992. As for Daley (the only other living defendant), he testified that he had no relationship with Guevara and did not personally care for him. **Ex. 6 – Daley Deposition at 138:24-139:19**.

37.     During ASA Buckley's interview with Demetrius Johnson, Johnson told ASA Buckley that he knew of the murder from his friend, Brian Johns. Johnson also stated he was a member of the Disciples Street Gang and that he did not recall his whereabouts on the night of the murder, but it was his habit to pick up his girlfriend from work at 6:40 p.m. and then to go to her house until 9:30 p.m. on every day except for Wednesdays or Sundays. **(Supporting Evidence: Ex. 7 – Cleared/Closed supp. Report at RFC-Johnson 15-17.)**

**Plaintiff's Objection:** This is simply the Defendants' version of events as told in their police reports, and rather than reference the various evidence on this issue Defendants cite to only the police report. Other evidence creates a dispute. For example, Demetrius Johnson testified that he

was not interviewed by ASA Buckley. Ex. 12 - Plaintiff Deposition at 148:21-22 ("No, I didn't talk to any ASA"), *see also* 88:21-91:18 (when describing interrogations and treatment in police station, identifying only Guevara and Halvorsen), 104:7-9 (does not recall ever speaking with a State's Attorney), 146:11-19 (answering "No" when asked if he recalled ever speaking with ASA Buckley). Johnson also testified that he did not provide the statement about picking up his girlfriend from work as claimed in the police report. E.g., Ex. 12 - Johnson Deposition at 150:17-151:5. Again, this is a critical area of dispute in this case: whether, consistent with their pattern and practice in other cases, Defendants Guevara and Halvorsen fabricated Johnson's alibi to undermine Plaintiff's credibility and discredit his true alibi in which he was watching the Bulls championship game. *E.g.*, Ex. 12 – Johnson Deposition at 173:6-13.

**Defendant Officers' Response:** The cited pages do not support the objection because Plaintiff does not **deny** speaking to ASA Buckley, only that he **does not recall** speaking to an ASA.

#### d) *Sgt. Healy's Involvement in the Investigation*

38.     Sgt. Healy's name appears in the police records on four documents as the approving sergeant, all of which are signed by him on July 24, 1991. These four documents include the four-witness lineup report of Defendants Guevara and Erickson stating there were no positive identifications of Bryan Johns on the night of the shooting, as well as the cleared closed report and the lineup report of Defendants Guevara and Halvorsen. There is no evidence that Sgt. Healy had any other involvement in the Fred murder investigation other than signing the four documents. **(Supporting Evidence: Ex. 2 – Chicago Police Records RD File at RFC-Johnson 40, 62, 72, and 76 (Sgt. Healy's signed reports).)**

**Plaintiff's Objection:** Disputed as to last sentence regarding Sgt. Healy's involvement, which is contradicted by other testimony. Healy is on multiple police reports, including police reports dated June 12 and June 20, 1991. Ex. 2 – Police Reports at RFC-Johnson 40, 62 (one of which is the Guevara four-witness lineup report stating that Johns was not identified). In addition, supervisors such as Healey were kept abreast of the investigation they conducted and of the results of lineups that occurred at Area 5, including all positive and negative identifications, meaning Healey would have been informed of the two different lineup results from June 12 regarding Bryan Johns E.g., Ex. 41 – Foster 30(b)(6) Deposition at 262:18-265:5 (inter alia, "Every aspect of a homicide investigation is monitored by a supervisor in the Detective Division"; characterizing monitoring day-to-day conduct of homicide investigations as "integral role that a supervisor in the Detective Division serves or performs"). Moreover, the investigative file containing the Erickson six-witness lineup report documenting a lineup identification of Johns—contradicting the four-person Guevara lineup report that Healy signed—was kept in the Sergeant's office, where Healy worked. Ex. 50 – Winstrom 30(b)(6) Deposition at 200:12-18. These facts create a dispute of fact.

**Defendant Officers' Response:** Plaintiff's citations do not refute the above supported facts. There is no evidence in the police records or testimony that Sgt. Healy signed any other police reports or that he was involved in the investigation. Plaintiff's argument that the reports were kept in the sergeants' office and that sergeants monitored every aspect of a homicide

investigation does not support that Healy was involved in this investigation. There were other sergeants at Area five who were involved in this investigation prior to charging. *See* **Ex. 2 – CPD RD file at RFC-Johnson 46 (Sgt. Epplen signed report on June 13, 1991), 48 (personnel assigned on June 12, 1991 included Sgt. Harte and Lt. Serafini), 50 (detectives assigned on June 12, 1991 by Sgt. Mingey), 54 (Sgt. Berry signed report on June 15, 1991), 58 (Sgt. Epplen signed report on June 23, 1991), 68 (Sgt. Epplen signed report on July 18, 1991).**

39.    There is no evidence in the record that Sgt. Healy was at Area 5 on any date other than July 24, 1991. **(<u>Supporting Evidence</u>: Ex. 7 - CPD Investigative File at RFC-Johnson 1-37; Ex. 2 – CPD RD file at RFC-Johnson 38-87.)**

**Plaintiff's Objection:** Disputed. See evidence cited in Plaintiff's objection to Paragraph 38 above. Sergeant Healy approved police reports dated June 12 and June 20, 1991, among others, documenting numerous events occurring on multiple dates prior to July 24, 1991. It also includes the testimony of the City's 30(b)(6) designees regarding the active involvement of sergeant's in homicide investigations, and their possession of the investigative file in their office. The proposed statement of fact requires ignoring this evidence, or at minimum granting all inferences in Defendants' favor, which is improper as they are the moving party.

**Defendant Officers' Response:** Plaintiff does not point to any evidence to dispute this fact or that Sergeant Healy was at Area 5 at any other time other than unsupported speculation. The fact that he signed reports dated in June by the authors of those reports does not mean he was present when those reports were drafted and submitted, or that he was present for the events. A sergeant is not required to be present for the events underlying a report, and is often not, to sign them. Whereas in this fact, it is supported by the undisputed fact that the only specific reference to him in the investigation is him signing reports on July 24, 1991.

e)    ***Demtrius Johnson, Terrell Agee & Bryan Johns***

42.    Johnson, along with Agee and Johns, would often go "hunting," which meant looking for someone to beat up.  They specifically would go catch a King (referring to a Latin King), and just beat them up, and let them know who it was that beat them up. **(<u>Supporting Evidence</u>: Ex. 9 – Agee Deposition at 66:1-16 ("...back then we would go over there and just beat up Kings, you know, go over there in the car, park somewhere two blocks away and catch a King or something like that and just beat him up but then let them know who it was that beat him up");** *id.* **at 67:21-68:1 (This included Johnson and Johns);** *id.* **at 77:19-21 ("[W]e probably was out messing around at that time again, out hunting as we called it, looking for somebody to beat up.").)**

**Plaintiff's Objection:** First, this is not a relevant or material fact, the police reports themselves make clear that the victim was member of Spanish Lords, not the Kings. Ex. 2 – Police Report at RFC Johnson 46 (victim Fred a Spanish Lord). In addition, it's plainly disputed; Defendants cite to the testimony of a witness Terrell Agee, but ignore the testimony of Plaintiff Demetrius

Johnson. He never stated that he went hunting, and instead stated that he was an MLD because all the kids from the neighborhood were, and that he had no rank or responsibility in the gang. Ex. 12 – Johnson Deposition at 46:5-10; Ex. 51 – Plaintiff Supplemental Response to Defendant Guevara's Interrogatories, Request No. 7. In addition, Darrell Johnson, Plaintiff's brother, denied that Plaintiff hung out with Terrell Agee. Ex. 15 – Darrell Johnson Deposition at 112:22-113:12.

**Defendant Officers' Response:** Material and relevance are not proper objections. Plaintiff fails to point to any evidence supporting his dispute of these facts.

43.     The Kings' response to these attacks was to get back at the MLDs by trying to "put a case on" them, so the Kings would lie to police to try and get them (MLDs) off the street. **(Supporting Evidence: Ex. 9 – Agee Deposition at 66:17-67:11 ("I believe that was -- that was [the Latin Kings] way of getting back at us, always trying to put cases on us… they would lie and say,[...] he did this or he did that to get us off the street.").)**

**Plaintiff's Objection:** Not relevant or a material fact. See objections to Paragraph 42 above— the victim was a Spanish Lord, not a Latin King, and the evidence in Plaintiff's objection to Paragraph 41 shows there is a dispute of fact about Demetrius Johnson having any involvement in any "hunting." In addition, the citation refers to Agee testifying about Guevara and Halvorsen trying to pin cases on them; this statement is therefore a misstatement of the cited testimony, and at minimum this context must be included in this paragraph if it is to be included.

**Defendant Officers' Response:** Material and relevance are not proper objections. Plaintiff's cited testimony does not support his argument that Agee testified that Guevara and Halvorsen were "trying to pin cases on them."

44.     Agee testified regarding Officer Daley that "Daley was cool with us. He was a fair officer. If he caught you, he caught you, you know. He never tried to put nothing on us, never harassed us or nothing like that. He always tried to talk positive to us and, you know, get us to get away from that gang life." **(Supporting Evidence: Ex. 9 – Agee Deposition at 65:15-20 ("Daley was cool with us. He was a fair officer. If he caught you, he caught you, you know. He never tried to put nothing on us, never harassed us or nothing like that. He always tried to talk positive to us and, you know, get us to get away from that gang life.").)**

**Plaintiff's Objection:** It is not a relevant or a material fact at summary judgment as to whether Officer Daley had a reputation of being "cool with us," and in particular the opinions of Terrell Agee on this point—who is not Plaintiff and for whom there is no evidence that he was a witness to the underlying crime—are all the more irrelevant and immaterial.

In addition, the statement that Defendant Daley had a good reputation in the neighborhood and treated them fairly is disputed by Plaintiff's own testimony. See e.g., Ex. 12 - Plaintiff Deposition at 338 (discussing Daley ripping him off a bike as a child).

**Defendant Officers' Response:** Material and relevance are not proper objections. Plaintiff fails to point to any evidence refuting what Agee said.

## VI.    Criminal Prosecution

### b)    *Johnson's Criminal Defense.*

59.    At some point during his representation, APD Carey met with Johnson. APD Carey took notes regarding that meeting.  Those notes reflect the following:



**(Supporting Evidence: Ex. 18 - CCPD Notes at CCPDO 00003; Ex. 12 – Demetrius Johnson Deposition at 134:-136:11; Ex. 26 – CCPD Privilege Log)**

**Plaintiff's Objection:** Disputed. There is no evidence that these are the notes of PD Carey, and Defendants provide no supporting evidence for this claim. Likewise, Defendants' proposed statement asserts that this is information told to APD Carey by Demetrius Johnson during a meeting or interview; that is supposition, as the cited supporting evidence does not support this claim.

In addition, objection as these notes contain at least two layers of inadmissible hearsay.

**Defendant Officers' Response:** These were represented by the CCPD as "handwritten notes re: strategy, witness and discussions with client" in its privilege log as the basis to withhold this document. *See* EX. 26 - CCPD privilege log. This is not hearsay because it is offered to show Plaintiff's and his counsel's knowledge that Brian Johns told Plaintiff the police tried to charge Johns.

60.    According to the CCPD notes, on August 28, 1991, APD Carey went to visit Bryan Johns in jail. **(Supporting Evidence: Ex. 18 - CCPD Notes (CCPDO 00001); Ex. 26 – CCPD Privilege Log.)**

**Plaintiff's Objection:** Objection to foundation, as there is no evidence as to who wrote the information on this page, what they meant, and whether the information contained herein actually occurred. In addition, objection as inadmissible hearsay.

In addition, Defendants' citation does not provide support for Defendant's claim. Instead, this statement requires inferences in Defendants' favor, contrary to the summary judgment standard.

**Defendant Officers' Response:** These were represented by CCPD as "attorneys' notes work product" in its privilege log as the basis to withhold this document in its response to a subpoena. *See* EX. 26 - CCPD privilege log. This is not hearsay because it is a business record memorializing the actions/appearances of Attorney Carey. ***See Fed. R. Evid. 803(6)***.

71.    Gubin testified that she chose not to interview Bryan Johns because he had initially been arrested for this and released, and therefore she didn't know if he had an attorney. She also knew he was a gang member, who possibly could have been the real killer, and she thought he might not talk to her at all. **(Supporting Evidence: Ex. 20 - Gubin Deposition at 29:15-30:5 ("Q. Was there a reason why you didn't interview Bryan Johns? A. Because of the potential that he had initially been arrested for this and released. I didn't know if he had an attorney. I didn't know if I would be creating problems, for interviewing somebody when they didn't have their attorney present. And I also knew he was a gang member who possibly could have been the real shooter, and I don't think he would have talked to me at all.").)**

**Plaintiff's Objection:** This is disputed. This statement purports to present an undisputed fact about why Gubin did not interview Johns. But Defendants' ignore contrary evidence on that issue: Gubin had already been told by Plaintiff that Johns had made clear he would not testify and would not help Plaintiff. Ex. 12 – Demetrius Johnson Deposition at 315:2-10 (Gubin asked Plaintiff if Johns would testify and admit his guilt, and Plaintiff told Gubin that Johns had said he would not). Defendants simply disregard this evidence on the issue of why Gubin did not interview Bryan Johns, and instead choose the evidence, and inferences therefrom, in their favor.

**Defendant Officers' Response:** This fact comes directly from Gubin's testimony, as quoted above, and is fully supported.

c)    ***Criminal Trial***

87.    Aby Gonzalez did not testify at Johnson's criminal trial but was interviewed the day of the shooting. He further gave a deposition in the instant case where he testified about where he grew up in Humboldt Park, and identified the area as one that had a lot of gangs in it. Gonzalez denied being a member of a gang, but admitted when he was younger, he used to hang out with gang members, specifically Cobras in his neighborhood. He further explained that Cobras are Latin Kings. **(Supporting Evidence: Ex. 5 - Criminal Trial Transcript at JGS_JOHNSON 11-12 (A2, B2); Ex. 7 - General Offense Case Report at RFC-Johnson 36-37; Ex. 8 - Gonzalez Deposition at 101:22-102:3, 106:22-107:10.)**

**Plaintiff's Objection:** The first sentence is agreed. Notably, it includes that Aby Gonzalez viewed a lineup, which directly contradicts Defendants' earlier proposed facts at Paragraphs 15 and 26 that Aby Gonzalez did *not* view a lineup.

The rest of this paragraph—about Aby Gonzalez being from Humboldt Park and the fact that he hung out with Spanish Cobras and/or Latin Kings (the victim was not a member of either of

those gangs)—is not relevant or a material fact at summary judgment, and during the parties' conferrals Defendants provided no explanation for how this is possibly a material fact at summary judgment.

**Defendant Officers' Response:** Material and relevance are not proper objections.

### d) Trial Testimony of the Three Eyewitnesses

    i. <u>Ricardo Burgos</u>:

88.    Ricardo Burgos testified that on June 12, 1991 at approximately 7:45 p.m., he was driving with a friend East down North Ave. At that time he saw a black guy wearing a T-shirt and gray pants walking North down Claremont with a gun in his hand. **(<u>Supporting Evidence</u>: Ex. 5 - Criminal Trial Transcript (Ricardo Burgos) at JGS_JOHNSON 79 (A68:16-21), JGS_JOHNSON 80-81 (A69:22-70:7).)**

**Plaintiff's Objection:** This is yet another example of Defendants simply citing to one piece of evidence on an issue, and ignoring all of the evidence to the contrary. For example, Defendants' proposed statement says Ricardo saw a "black guy," but the initial police report of Guevara's interview of Ricardo says he described the shooter as a "male hispanic." Ex. 7 - RFC Johnson 25 ("he noticed a male hispanic"); Ex. 5 – Guevara Trial Testimony at JGS_Johnson 227 (B-52:5-9) (Q. What is the description given by Ricardo Burgos? A. . . . male Hispanic"). During the parties' conferrals, Defendants did not respond to this clear dispute; they simply stated that their proposed statement is "a direct citation of his sworn testimony," which does not account for disputes created by Ricardo's other sworn statements.

However, consistent with the Court's instruction, Plaintiff will not object to the inclusion of this fact for purposes of this summary judgment, if Defendants include the contrary evidence in a subsequent paragraph, as follows:

    Based on the initial police report documenting Defendant Guevara's interview of Ricardo Burgos, Ricardo told police that the shooter was a "male hispanic," not a "black guy." **Supporting Evidence: Ex. 7 - RFC Johnson 25 ("he noticed a male hispanic"); Ex. 5 – Guevara Trial Testimony at JGS_Johnson 227 (B-52:5-9) (Q. What is the description given by Ricardo Burgos? A. . . . male Hispanic").**

**Defendant Officers' Response:** This is a direct citation of his sworn testimony and he confirmed he testified truthfully at trial. *See* ¶ 117. Plaintiff has no basis for dispute as he admits referring to the Court's instruction. He is attempting to make arguments, which are improper.

89.    Mr. Burgos testified he viewed this guy with a gun from across the street and he estimated the distance being about sixty feet. **(<u>Supporting Evidence</u>: Ex. 5 - Criminal Trial Transcript (Ricardo Burgos) at JGS_JOHNSON 80 (A69:18-24).)**

**Plaintiff's Objection:** Ricardo Burgos's trial testimony is disputed by other evidence that he did not see the shooter or a gun. Ricardo Burgos was 60-70 feet away when the shooting occurred, "did not see the man with a weapon," and only saw the shooter running away from behind and never saw his face. Any identification he might have made could only have come if someone told him who to pick. *E.g.*,Ex. 46 - Ricardo Affidavit, Johnson 601-603; Ex. 32 - Ricardo Deposition at 17:10-19:4, 38:5-14 (if the police said he could of identified the shooter, that it would have been false), 45:5-11 ("Q. "[I]s it fair to say that if you were shown photos or lineups, you would not have been able to identify anyone? A. That's correct."); Ex. 47 - Dysart Expert Report (opining as to the circumstances that made the identification highly unreliable and unlikely without prompting).

However, consistent with the Court's instruction, Plaintiff will not object to the inclusion of this fact for purposes of this summary judgment, if Defendants include the contrary evidence in a subsequent paragraph, as follows:

> In a sworn statement given on October 8, 2020, Ricardo Burgos swore that he was 60-70 feet away when the shooting occurred, "did not see the man with a weapon," and only saw the shooter running away from behind and never saw his face. **Supporting Evidence: Ex. 46 - Ricardo Affidavit, Johnson 601-603.**

**Defendant Officers' Response:** This is a direct citation of his sworn testimony and he confirmed he testified truthfully at trial. *See* ¶ **117**. Plaintiff has no basis for dispute as he admits referring to the Court's instruction. He is attempting to make arguments as to why he believes Burgos's testimony is wrong, which are improper.

90.      Mr. Burgos then saw this man fire the gun. (**Supporting Evidence: Ex. 5 - Criminal Trial Transcript (Ricardo Burgos) at JGS_JOHNSON 81 (A70:8-10).)**

**Plaintiff's Objection:** Same objection as Paragraph 88 and 89: Defendants cite to only one piece of evidence on the issue, ignoring all other evidence to the contrary, including Ricardo's other sworn statements. For example:

1. Ricardo Burgos was 60-70 feet away when the shooting occurred, did not see the shooting itself, and only saw someone running away that he assumed was the shooter; but he never saw a weapon, and never saw the person's face. Any identification he might have made could only have come if someone told him who to pick. E.g., Ex. 46 - Ricardo Affidavit, Johnson 601- 603; Ex. 32 - Ricardo Deposition at 17:10-19:4, 38:5-14 (if the police said he could of identified the shooter, that it would have been false), 45:5-11 ("Q. "[I]s it fair to say that if you were shown photos or lineups, you would not have been able to identify anyone? A. That's correct."); Ex. 47 - Dysart Expert Report (opining as to the circumstances that made the identification highly unreliable and unlikely without prompting).

2. And see the deposition of Reynaldo Guevara, pleading the Fifth on all aspects of his conduct related to Ricardo Burgos, including whether he told Ricardo who to pick. Ex. 42 - Guevara Deposition at 23:12-26:1 (Ricardo did not see shooter's face); 29:21-30:1; 53:8-54:12 (Ricardo

shown June 1991 photo array in which he could not identify anyone); 78:23-81:15 (Guevara told Ricardo who to pick).

**Defendant Officers' Response:** This is a direct citation of his sworn testimony and he confirmed he testified truthfully at trial. ***See ¶ 117***. Plaintiff again is disputing what a witness testified to by arguing that the witness was wrong, which is improper.

Guevara asserting his Fifth Amendment to oppose the facts fails to appreciate that the assertion of the Fifth Amendment alone is insufficient to meet his burden. *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 390 (7th Cir. 1995)(quoting *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976) ("[T]he entry of judgment based only on the invocation of the privilege and 'without regard to the other evidence' exceeds constitutional bounds."); *Evans v. City of Chicago*, 2006 WL 463041, at *9 (N.D. Ill. Apr. 26, 2006) (aff'd and remanded by *Evans v. Katalinic*, 445 F.3d 593 (7th Cir. 2006). For Plaintiff to obtain the adverse inference of a fact from Guevara's invocation, he must point to other probative evidence of that fact. *Baxter*, 425 U.S. at 318 ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify *in response to probative evidence offered against them*.") (emphasis added); *see also Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) ("An adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer.").

Guevara's assertion of the Fifth Amendment is not evidence and allows an inference against Guevara only if there is corroboration, but does not allow an inference against Halvorsen, Healy, Erickson or Daley. The question of whether a nonparty's invocation of the Fifth Amendment may be used against a party is determined on a case-by-case basis and depends on whether such an "adverse inference is trustworthy under all of the circumstances and will advance the search for truth." *Sebastian v. City of Chicago*, No. 05 C 2077, 2008 WL 2875255, at *33 (N.D. Ill. July 24, 2008) (quoting *Kontos v. Kontos*, 968 F. Supp. 400, 406 (S.D.Ind.1997); *LiButti v. U.S.*, 107 F.3d 110, 124 (2d Cir.1997). The court assesses the relationship between the witness invoking and the party to determine if there is some relationship of loyalty between the witness and party. *See LiButti v. U.S.*, 107 F.3d 110, 122 (2d Cir.1997); *Abrams*, 2000 WL 574466, at *6. Most courts that have imputed an adverse Fifth Amendment inference from a nonparty to a party have done so where there is a close family relationship between the party and the nonparty or a business relationship, such as an agency or employer-employee relationship. *See State Farm Mut. Auto Ins. Co.*, 2000 U.S. Dist. LEXIS 6837, at *22 (collecting cases) *Kontos*, 968 F. Supp. at 408. Plaintiff has no evidence of Guevara's relationship with any of the co-defendants, considering Halvorsen has been deceased since 2020 and retired in 2010, Erickson has been deceased since 2018 and retired in 1991, and Healy has been deceased since 2002 and retired in 1992. As for Daley (the only other living defendant), he testified that he had no relationship with Guevara and did not personally care for him. Ex. 6 – Daley Deposition at 138:24-139:19.


91.     Mr. Burgos testified that he looked at this man who fired the gun for about forty-five seconds and could see his face. Mr. Burgos then identified Demetrius Johnson as the person he saw fire the gun that day. (**Supporting Evidence: Ex. 5 - Criminal Trial Transcript (Ricardo Burgos) at JGS_JOHNSON 81 (A70:12-15), JGS_JOHNSON 85 (A74:3-14)**)

**Plaintiff's Objection:** Dispute as to the first sentence. Same objection as Paragraphs 35, 87, 88 and 89: Defendants cite to only one piece of evidence on the issue, ignoring all other evidence to the contrary, including Ricardo's other sworn statements. The citations in the paragraphs above show that he did not see the shooting or the shooter, never saw a weapon, only saw a person running away from behind, and could not make an identification, and that any identification he made was only possible if the police told him who to pick. This evidence creates a dispute of fact on every aspect of Defendants' proposed statement of fact.

**Defendant Officers' Response:** This isa direct citation of Mr. Burgos's sworn testimony and he confirmed he testified truthfully at trial. ***See*** ¶ **117.** Plaintiff's basis for dispute is argument.


ii. <u>Elba Burgos:</u>

97.     Elba Burgos testified that the person she saw with a gun was young and black and about 25 feet from her. **(<u>Supporting Evidence</u>: Ex. 5 - Criminal Trial Transcript (Elba Burgos) at JGS_JOHNSON 103 (A92:1-4, 8-24).)**

**Plaintiff's Objection:** See objections to Paragraphs 31 and 94, which provide evidence that Rosa was on her front porch on the East side of the street, and the shooter was on the opposite sidewalk on the West side of the street. This distance is far more than 25 feet, as it must account for the area in front of the porch to the curb, the width of the street itself, and the curb strip, which is more than 60 feet (at its shortest point). *See, e.g.*, the following (from Google maps):[1]

e

---

[1]  https://www.google.com/maps/place/1535+N+Claremont+Ave,+Chicago,+IL+60622/@41.9095777,-87.6861167,21z/data=!4m6!3m5!1s0x880fd2bb0f072c99:0xa77d7f27010a5c51!8m2!3d41.9095638!4d-87.6856714!16s%2Fg%2F11c181t_8w?entry=ttu



However, consistent with the Court's instruction, Plaintiff will not object to the inclusion of this fact for purposes of this summary judgment, if Defendants include the contrary evidence in a subsequent paragraph, as follows:

> Elba Burgos also testified that she was on her front porch on the East side of the street, and saw the shooter running down the sidewalk on the opposite side of the street. This distance from the porch to the sidewalk on the opposite side of the street is greater than 50 feet way. **Supporting Evidence:** Ex. 7 – Police Report of Elba Interview, at RFC Johnson 19 (sitting on her front porch, saw person with gun running down the sidewalk on West side of street); Ex. 5 – JGS_JOHNSON 111-112 (A-100:19-A-101:13 (person running was on other side of street).

**Defendant Officers' Response:** This is a direct citation of Elba's sworn testimony. Plaintiff's map is argument and speculates about Elba's location and the location of the person running and his citations do not support their exact locations for measurement.


102.    Elba Burgos was on her front porch on the East side of the street, and the shooter was running down the sidewalk on the West side of the street. She only saw the shooter from the side, and had only a few seconds to see the shooter as he was running by, and any identification came only weeks later. In addition, the purported identification of Plaintiff by Elba on July 15,

1991 is based on the claim that she had previously said the shooter looked like Plaintiff's brother a week earlier, but Ricardo Burgos testified that Plaintiff had already been included in a photo array he was shown in June 1991. Elba's trial identification came only after she was shown Plaintiff's picture multiple times, including in a single photo containing Plaintiff and two dissimilar individuals, and a lineup in which he was the only person from prior photos. **(Supporting Evidence: Ex. 7 – Police Report of Elba Interview, at RFC Johnson 19 (sitting on her front porch, saw person with gun running down the sidewalk on West side of street); Ex. 5 – JGS_JOHNSON 111-112 (A-100:19-A-101:13 (person running was on other side of street); 121 (A-110:18-20) (she had only a few seconds to see the shooter's face ); Ex. 5 – Ricardo Burgos Criminal Trial Testimony, JGS_Johnson 97 (A-86:4-21) (shown the same two photos with Plaintiff in it on June 21, 1991); Ex. 5 – Guevara Criminal Trial Testimony, JGS_Johnson 227 (B-52:21-23) (to Guevara: "Q. On June 21, 1991, did you show Ricardo Burgos a photo array. A. Yes, I did."); Ex. 11 – 3-person polaroid (trial exhibit 6B) Impound Evidence 410-411; Ex. 14 - Line up photo (Impound Evidence 389); Guevara Dep: 27:4-9 (Elba did not give police a description of shooter when she first spoke to them); 30:2-7 (Elba said she could not give good description of the shooter and could not identify him); 54:20-55:25 (Photo array shown to Elba and Guevara made up that she ID'd Darrell but younger); 56:1-11 ("what you showed Elba was not a proper photo array, was it?"); 56:12-59:12 (improper fillers and improper ID procedures and did not disclose manipulation); 64:18-65:13 (tainting Elba's live lineup ID); 72:10-22 (only evidence was you telling her who to pick); 77:15-78:1; Ex. 47 - Dysart Expert Report (opining as to the circumstances that made the identification highly unreliable and unlikely without prompting)).**

**Plaintiff's Position**: Plaintiff included this statement of fact in response to Paragraphs 98-101, above. Each of those paragraphs cites only to one source of evidence on the issue of Elba Burgos's observations of the shooting and his ability to make an identification: Elba's trial testimony. But the ample other evidence that creates a dispute on the material fact is ignored, as discussed in Plaintiff's objections to Paragraphs 98-101. If those Paragraphs are permitted as undisputed facts pointing to one side of the evidence on the issue, then this paragraph containing the contrary evidence should also be permitted. But in Plaintiff's view, Paragraphs 98-102 should all be removed because they discuss an issue on which there is clearly a dispute of fact

**Defendant Officers' Response:** This is argument and opinion and does not comport with the Court's standing order on Rule 56.1 statements because it does not simply set forth discrete facts. The citations do not support the alleged facts. The phrase "she only saw the shooter from the side" is disputed. Her complete testimony is:

> Q: Ms. Burgos, when you saw the man come by the front of your house did you have an opportunity to see the front of his face?
> A: Well, yes, I saw him.
> Q: The front of his face?
> A: Yes because when I stood up and I looked he was running this way.
> Q: Was he running toward you?
> A: He was on the other side of the street but he was running, coming this way.
> Q: Okay. How long did you get to see the front of his face?
> A: I saw between four to five seconds.

**Ex. 5 - JGS_Johnson 121 (A110: 8-20).** Plaintiff's reference to Ricardo Burgos viewing a photo array is not supported by the citations and is argument applied to Elba.Ricardo's testimony does not contradict when Elba Burgos was shown a photo array and her testimony confirms the timing. Elba Burgos testified that on July 11, 1991 Det. Guevara came to her house and showed her photographs. She viewed photographs 7A-7E and told Det. Guevara that the person looked like 7C but younger. **(Supporting Evidence: Ex. 5 - Criminal Trial Transcript (Elba Burgos) at JGS_JOHNSON 105-106 (A94:3-95:12); , Ex. 39 - Photo array (7A-7E) Impound Evidence 398-407.)** Elba Burgos testified that on July 15, 1991, Det. Guevara came to see her at her home and showed her a photograph and she identified Demetrius Johnson as the person she saw running past her with a gun. **(Supporting Evidence: Ex. 5 - Criminal Trial Transcript (Elba Burgos) at JGS_JOHNSON 106-107 (A95:24-96:24); Ex. 11 – 3-person polaroid (trial exhibit 6B) Impound Evidence 410-411).)**

Reliance on Guevara's deposition does not provide the needed support for the alleged facts because Guevara asserting his Fifth Amendment to support the facts fails to appreciate that the assertion of the Fifth Amendment alone is insufficient to meet his burden. *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 390 (7th Cir. 1995) (quoting *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976)) ("[T]he entry of judgment based only on the invocation of the privilege and 'without regard to the other evidence' exceeds constitutional bounds."); *Evans v. City of Chicago,* 2006 WL 463041, at *9 (N.D. Ill. Apr. 26, 2006) (aff'd and remanded by *Evans v. Katalinic*, 445 F.3d 593 (7th Cir. 2006). For Plaintiff to obtain the adverse inference of a fact from Guevara's invocation, he must point to other probative evidence of that fact. *Baxter*, 425 U.S. at 318 ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify *in response to probative evidence offered against them.*") (emphasis added); *see also Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) ("An adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer.").

Guevara's assertion of the Fifth Amendment is not evidence and allows an inference against Guevara only if there is corroboration, but does not allow an inference against Halvorsen, Healy, Erickson or Daley. The question of whether a nonparty's invocation of the Fifth Amendment may be used against a party is determined on a case-by-case basis and depends on whether such an "adverse inference is trustworthy under all of the circumstances and will advance the search for truth." *Sebastian v. City of Chicago*, No. 05 C 2077, 2008 WL 2875255, at *33 (N.D. Ill. July 24, 2008) (quoting *Kontos v. Kontos*, 968 F.Supp. 400, 406 (S.D.Ind.1997); *LiButti v. U.S.*, 107 F.3d 110, 124 (2d Cir.1997). The court assesses the relationship between the witness invoking and the party to determine if there is some relationship of loyalty between the witness and party. *See LiButti v. U.S.*, 107 F.3d 110, 122 (2d Cir.1997); *State Farm Mut. Auto. Ins. Co. v. Abrams*, No. 96 C 6365, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000). Most courts that have imputed an adverse Fifth Amendment inference from a nonparty to a party have done so where there is a close family relationship between the party and the nonparty or a business relationship, such as an agency or employer-employee relationship. *See State Farm Mut. Auto Ins. Co.*, 2000 WL 574466, at *6 (collecting cases); *Kontos*, 968 F.Supp. at 408. Plaintiff has no evidence of Guevara's relationship at the time of his invocation with any of the co-defendants, considering Halvorsen has been deceased since 2020 and retired in 2010, Erickson has been deceased since 2018 and retired in 1991, and Healy has been deceased since 2002 and retired in 1992. As for

Daley (the only other living defendant), he testified that he had no relationship with Guevara and did not personally care for him. **Ex. 6 – Daley Deposition at 138:24-139:19**.

        iii.    <u>Rosa Burgos</u>:

103.    Rosa Burgos testified that on June 12, 1991 at about 7:45 p.m., she was coming out of her building with Raul Ortiz. She saw the person shoot Raul Ortiz, then she ran back upstairs. She was approximately 10 feet from the person who shot Raul Ortiz, and saw his face for four seconds. The person who shot Raul was short, black and young. **(<u>Supporting Evidence</u>: Ex. 5 - Criminal Trial Transcript (Rosa Burgos) at JGS_JOHNSON 43-44 (A32:16-33:20), JGS_JOHNSON 45 (A34:6-13), JGS_JOHNSON 45-46 (A34:22-35:8), JGS_JOHNSON 46 (A35:13-20), JGS_JOHNSON 48 (A37:15-23.)**

**Plaintiff's Objection:** Plaintiff can agree to the following facts as undisputed: "On June 12, 1991 at about 7:45 p.m., Rosa Burgos was coming out of her building with Raul Ortiz. When the shooting started, she ran back upstairs." Disputed as to the rest. See Plaintiff's objections to Paragraph 35, which provides citation to ample evidence that creates a dispute of fact on the substance of Rosa Burgos's testimony. Regarding Rosa Burgos, she was in a building walking down a staircase behind Raul Ortiz, and ran back upstairs when the shooting started, so she did not see the shooter. Ex. 7 – Police Report of Rosa Interview, RFC-Johnson 20-21; Ex. 34 - Rosa Deposition at 40:21-42:19. She told police "everything happened so fast and that she wasn't sure who the shooter was." Ex. 5 – JGS_Johnson 185-187. And she testified that she "had trouble distinguishing between black people because all those people look alike." Ex. 5 – Rosa Trial Testimony at JGS_Johnson 66 (R. A-55:6-10). And when she viewed a lineup, she did not make a positive identification but instead was unsure. Ex. 34 - Rosa Deposition at Johnson 001188-001189 (B-12:19 –B-13:11). In addition, prior to this three individuals had already identified someone else and she was told by police that they had the wrong guy. Ex. 5 – PD Carey Testimony Rosa, JGS Johnson 187 (B-12:2-18) (Public Defender testifying that Rosa told him there were three identifications previously and the police told them it was wrong guy). In addition to all of this, when asked about Rosa's ability to see the shooter and make an identification without police manipulation, Guevara pleaded the Fifth, permitting an inference in Plaintiff's favor as the non-moving party. Ex. 42 - Guevara Dep. 27:15-29:20 (Rosa did not see the shooter's face and could not make identification), 81:16-84:7 (Guevara told her who to pick); Ex. 47 - Dysart Expert Report (opining as to the circumstances that made the identification highly unreliable and unlikely without prompting). Defendants simply ignore all of this evidence and cite only to a portion of Rosa's trial testimony.

However, consistent with this Court's guidance, Plaintiff will agree to this fact if the paragraphs Plaintiff has proposed that present the evidence in the record contrary to this statement are added.

**Defendant Officers' Response:** This is a direct citation of her sworn testimony and she confirmed she testified truthfully at trial. *See* ¶ 119. As Plaintiff tacitly concedes, when stating he is abiding by this Court's guidance, there is no basis to dispute the fact. Plaintiff's basis for dispute is argument and misrepresents Rosa's testimony by conflating her testimony about the first lineup on June 12 and subsequent lineup on July 22. Plaintiff's reliance on Carey's

testimony is misplaced because it is hearsay. Federal Rule of Evidence 804(b) (1) (explaining that prior testimony is admissible if it is offered against a party or his predecessor who had an opportunity and similar motive to test the testimony.); *Hill v. Chicago*, No. 06 C 6772, 2011 WL 3876915, at *2 (N.D. Ill. Sept. 1, 2011) (in subsequent civil proceeding the court barred the use of prior criminal trial testimony of plaintiff's criminal codefendant as hearsay because the defendant officers in the civil litigation were not parties to the criminal predecessor); *Butler v. Indianapolis Metropolitan Police Dep't*, No. 07 C 1103, 2009 WL 2092416, at *2 (S.D.Ind. July 13, 2009) ("The motive of the prosecutor to cross-examine the witness is markedly different from that of the defendant police officer or city in a later civil lawsuit arising from the same incident.").

Plaintiff's reliance on Guevara asserting his Fifth Amendment to oppose the fact fails to appreciate that the assertion of the Fifth Amendment alone is insufficient to meet his burden. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995) (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)) ("[T]he entry of judgment based only on the invocation of the privilege and 'without regard to the other evidence' exceeds constitutional bounds."); *Evans v. City of Chicago*, 2006 WL 463041, at *9 (N.D. Ill. Apr. 26, 2006) (aff'd and remanded by *Evans v. Katalinic*, 445 F.3d 593 (7th Cir. 2006). For Plaintiff to obtain the adverse inference of a fact from Guevara's invocation, he must point to other probative evidence of that fact. *Baxter*, 425 U.S. at 318 ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify *in response to probative evidence offered against them*.") (emphasis added); *see also Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) ("An adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer.").

Guevara's assertion of the Fifth Amendment is not evidence and allows an inference against Guevara only if there is corroboration, but does not allow an inference against Halvorsen, Healy, Erickson or Daley. The question of whether a nonparty's invocation of the Fifth Amendment may be used against a party is determined on a case-by-case basis and depends on whether such an "adverse inference is trustworthy under all of the circumstances and will advance the search for truth." *Sebastian v. City of Chicago*, No. 05 C 2077, 2008 WL 2875255, at *33 (N.D. Ill. July 24, 2008) (quoting *Kontos v. Kontos*, 968 F.Supp. 400, 406 (S.D.Ind.1997); *LiButti v. U.S.*, 107 F.3d 110, 124 (2d Cir.1997). The court assesses the relationship between the witness invoking and the party to determine if there is some relationship of loyalty between the witness and party. *See LiButti v. U.S.*, 107 F.3d 110, 122 (2d Cir.1997); *State Farm Mut. Auto. Ins. Co. v. Abrams*, No. 96 C 6365, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000). Most courts that have imputed an adverse Fifth Amendment inference from a nonparty to a party have done so where there is a close family relationship between the party and the nonparty or a business relationship, such as an agency or employer-employee relationship. *See State Farm Mut. Auto Ins. Co.*, 2000 WL 574466, at *6 (collecting cases); *Kontos*, 968 F.Supp. at 408. Plaintiff has no evidence of Guevara's relationship at the time of his invocation with any of the co-defendants, considering Halvorsen has been deceased since 2020 and retired in 2010, Erickson has been deceased since 2018 and retired in 1991, and Healy has been deceased since 2002 and retired in 1992. As for Daley (the only other living defendant), he testified that he had no relationship with Guevara and did not personally care for him. **Ex. 6 – Daley Deposition at 138:24-139:19**.

106.     Rosa Burgos testified that she knew "Little D" prior to the shooting and testified it was not "Little D" who shot Raul Ortiz. Rosa Burgos knew that Little D's real name was Brian Johns. **(Supporting Evidence: Ex. 5 - Criminal Trial Transcript (Rosa Burgos) at JGS_JOHNSON 47-48 (A36:21-37:14), JGS_JOHNSON 55 (A44:11-13).)**

**Plaintiff's Objection:** This is plainly disputed by other evidence, including Rosa Burgos's deposition testimony that she did not know who Bryan Johns was, and that she did not remember any person with the nickname Little D. Ex. 34 – Rosa Deposition at 19:23-20:2 ("Q. Did you know an individual named Bryan Johns? A. Who? Q. Bryan Johns. A. No."), 20:3-20:5 (same), 64:7-65:5. It is also contradicted by the police reports in this case. In the lineup report in which Rosa Burgos viewed a lineup containing Bryan Johns, there is no documentation stating that she recognized Johns as someone she knew prior to the shooting, nor is any of the information in this proposed fact contained in the Defendants' police report documenting their interview of Rosa Burgos. Ex. 7 – Erickson Lineup Report, at RFC-Johnson 27; Ex. 7 – Supplementary Report of Interview of Rosa Burgos, at RFC-Johnson 21.

However, consistent with the Court's instruction, Plaintiff will not object to the inclusion of this fact for purposes of this summary judgment, if Defendants include the contrary evidence in the subsequent paragraph, as follows:

Rosa Burgos testified at her civil deposition that she did not know an individual named Bryan Johns. The police report documenting the police interview of Rosa Burgos contains no reference to Rosa recognizing the shooter or Bryan Johns as someone she knew from the neighborhood, nor does the Erickson police report documenting a lineup viewed by Rosa Burgos in which Johns was the suspect. **Supporting Evidence: Ex. 34 – Rosa Deposition at 19:23-20:2 ("Q. Did you know an individual named Bryan Johns? A. Who? Q. Bryan Johns. A. No."), 20:3-20:5 (same), 64:7-65:5; Ex. 7 – Erickson Lineup Report, at RFC-Johnson 27; Ex. 7 – Supplementary Report of Interview of Rosa Burgos, at RFC-Johnson 21.**

**Defendant Officers' Response:** This is a direct citation of her sworn testimony and she confirmed he testified truthfully at trial. *See* ¶ **119**. Plaintiff tacitly concedes this when he states that if he abides by this Court's instruction he will not dispute it. Plaintiff's purported basis for dispute is that Rosa cannot recall thirty years later, which does not dispute her sworn testimony shortly after the incident.

108.     Rosa Burgos's statement to police and other sworn testimony include that Rosa Burgos was in a building walking down a staircase behind Raul Ortiz, and ran back upstairs when the shooting started, so she did not see the shooter; she told police "everything happened so fast and that she wasn't sure who the shooter was"; she testified that she "had trouble distinguishing between black people because all those people look alike"; when she viewed a lineup, she did not make a positive identification but instead was unsure; and prior to any lineup or trial identification three individuals had already identified someone else and Rosa was told by police that they had the wrong guy. Rosa Burgos was in a building walking down a staircase behind Raul Ortiz, and ran back upstairs when the shooting started, so she did not see the shooter. In addition, prior to this three individuals had already identified someone else and she

was told by police that they had the wrong guy. **(Supporting Evidence: Ex. 7 - RFC-Johnson 20-21, Rosa Dep. at 40:21-42:19; Ex. XX – JGS_Johnson 185-187; XX - R. A-55; Johnson 1188-001189 (B-12:19 –B-13:11; Carey Interview of Rosa, Johnson 001188 (B-12:2-18.; Ex. XX - Guevara Dep. 27:15-29:20 (Rosa did not see the shooter's face and could not make identification), 81:16-84:7 (Guevara told her who to pick); Ex. 47 - Dysart Expert Report (concluding that the identifications were unreliable under the circumstances).)**

**Plaintiff's Position:** Plaintiff included this statement of fact in response to Paragraphs 103-107. Each of those paragraphs cites only to one source of evidence on the issue of Rosa Burgos's observations of the shooting and her ability to make an identification: Rosa's trial testimony. But the ample other evidence that creates a dispute on the material fact is ignored, as discussed in Plaintiff's objections to Paragraphs 103-107. If those Paragraphs are permitted as undisputed facts pointing to one side of the evidence on the issue, then this paragraph containing the contrary evidence should also be permitted. But in Plaintiff's view, Paragraphs 103-108 should all be removed because they discuss an issue on which there is clearly a dispute of fact.

**Defendant Officers' Response:** This is argument and does not comport with the Court's standing order on Rule 56.1 statements because it does not simply set forth discrete facts. Defendants dispute that Rosa testified "that she told police 'everything happened so fast and that she wasn't sure who the shooter was'" because the citations do not support this statement. This statement is from APD Carey's testimony about what Rosa allegedly said to him which is hearsay because Carey is deceased. **Ex. 5 –Trial Testimony (APD Carey) at JGS_Johnson 187 (B12:7-10);** *see* Federal Rule of Evidence 802. Carey's testimony at Plaintiff's trial is hearsay and he is deceased. *See* Federal Rule of Evidence 804(b) (1) (explaining that prior testimony is admissible if it is offered against a party or his predecessor who had an opportunity and similar motive to test the testimony.); *Hill v. Chicago*, No. 06 C 6772, 2011 WL 3876915, at *2 (N.D. Ill. Sept. 1, 2011) (in subsequent civil proceeding the court barred the use of prior criminal trial testimony of plaintiff's criminal codefendant as hearsay because the defendant officers in the civil litigation were not parties to the criminal proceeding); *Butler v. Indianapolis Metropolitan Police Dep't*, No. 07 C 1103, 2009 WL 2092416, at *2 (S.D.Ind. July 13, 2009) ("The motive of the prosecutor to cross-examine the witness is markedly different from that of the defendant police officer or city in a later civil lawsuit arising from the same incident."). Additionally, Plaintiff misrepresents Rosa's testimony by conflating her testimony about the first lineup on June 12 and subsequent lineup on July 22. Plaintiff's reliance on Carey's testimony is misplaced because it is hearsay. Federal Rule of Evidence 804(b) (1) (explaining that prior testimony is admissible if it is offered against a party or his predecessor who had an opportunity and similar motive to test the testimony.); *Hill v. Chicago*, No. 06 C 6772, 2011 WL 3876915, at *2 (N.D. Ill. Sept. 1, 2011) (in subsequent civil proceeding the court barred the use of prior criminal trial testimony of plaintiff's criminal codefendant as hearsay because the defendant officers in the civil litigation were not parties to the criminal proceeding); *Butler v. Indianapolis Metropolitan Police Dep't*, No. 07 C 1103, 2009 WL 2092416, at *2 (S.D.Ind. July 13, 2009) ("The motive of the prosecutor to cross-examine the witness is markedly different from that of the defendant police officer or city in a later civil lawsuit arising from the same incident.")

Plaintiff's reliance on Guevara asserting his Fifth Amendment to support the facts fails to appreciate that the assertion of the Fifth Amendment alone is insufficient to meet his burden. *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 390 (7th Cir. 1995)(quoting *Baxter v.*

*Palmigiano,* 425 U.S. 308, 318 (1976) ("[T]he entry of judgment based only on the invocation of the privilege and 'without regard to the other evidence' exceeds constitutional bounds."); *Evans v. City of Chicago,* 2006 WL 463041, at \*9 (N.D. Ill. Apr. 26, 2006) (aff'd and remanded by *Evans v. Katalinic,* 445 F.3d 593 (7th Cir. 2006). For Plaintiff to obtain the adverse inference of a fact from Guevara's invocation, he must point to other probative evidence of that fact. *Baxter,* 425 U.S. at 318 ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify *in response to probative evidence offered against them.*") (emphasis added); *see also Doe ex rel. Rudy-Glanzer v. Glanzer,* 232 F.3d 1258, 1265 (9th Cir. 2000) ("An adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer.").

Guevara's assertion of the Fifth Amendment is not evidence and allows an inference against Guevara only if there is corroboration, but does not allow an inference against Halvorsen, Healy, Erickson or Daley. The question of whether a nonparty's invocation of the Fifth Amendment may be used against a party is determined on a case-by-case basis and depends on whether such an "adverse inference is trustworthy under all of the circumstances and will advance the search for truth." *Sebastian v. City of Chicago,* No. 05 C 2077, 2008 WL 2875255, at \*33 (N.D. Ill. July 24, 2008) (quoting *Kontos v. Kontos,* 968 F.Supp. 400, 406 (S.D.Ind.1997); *LiButti v. U.S.,* 107 F.3d 110, 124 (2d Cir.1997). The court assesses the relationship between the witness invoking and the party to determine if there is some relationship of loyalty between the witness and party. *See LiButti v. U.S.,* 107 F.3d 110, 122 (2d Cir.1997); *State Farm Mut. Auto. Ins. Co. v. Abrams,* No. 96 C 6365, 2000 WL 574466, at \*6 (N.D. Ill. May 11, 2000). Most courts that have imputed an adverse Fifth Amendment inference from a nonparty to a party have done so where there is a close family relationship between the party and the nonparty or a business relationship, such as an agency or employer-employee relationship. *See State Farm Mut. Auto Ins. Co.,* 2000 WL 574466, at \*6 (collecting cases); *Kontos,* 968 F.Supp. at 408. Plaintiff has no evidence of Guevara's relationship at the time of his invocation with any of the co-defendants, considering Halvorsen has been deceased since 2020 and retired in 2010, Erickson has been deceased since 2018 and retired in 1991, and Healy has been deceased since 2002 and retired in 1992. As for Daley (the only other living defendant), he testified that he had no relationship with Guevara and did not personally care for him. **Ex. 6 – Daley Deposition at 138:24-139:19**.

## VII.    Deposition Testimony of the Three Eyewitnesses

### a)    *Ricardo Burgos*:

117.    At his deposition in this case, Ricardo Burgos, who suffered a serious head injury in 1996 or 1997 that impacts his memory, testified that while he doesn't recall testifying in Johnson's criminal case, he would not have lied under oath in front of a judge. **(Supporting Evidence: Ex. 32 - Ricardo Burgos Deposition at 79:5-80:20.)**

**Plaintiff's Objection:** This is not a relevant or material fact; it is a claim about Mr. Burgos's memory and credibility that can serve only as argument about which evidence should be credited and which evidence should not, which is improper at summary judgment. The proposed statement is also disputed by much of the rest of Ricardo's deposition, in which he testifies to his

specific memory of the shooting and what he saw (and did not see), and that any identification attributed to him could only have occurred if someone told him who to pick. See Plaintiff's objections to Paragraphs 87-91.

**Defendant Officers' Response:** Plaintiff's objection does not address the discrete facts set forth and relevant and material are not proper objections. Defendants accurately summarize Ricardo Burgos's testimony at his deposition, and Plaintiff makes no argument and cites nothing in the record to the contrary.

      **b)**   *Elba Burgos*:

118.    In 2022, a woman named Ada Elba Burgos was subpoenaed and testified during a civil deposition in this case. She testified that she recalled living in the area of North Avenue and Claremont, but that she did not recall living at 1535 N. Claremont, of talking to police after a shooting in 1991 or of testifying at a criminal proceeding in 1992. She could not recall when she got married or her husband's name. **(Supporting Evidence: Ex. 33 - Elba Burgos Deposition, April 26, 2022, (10:17-20; 15:19-16:2; 26:11-27:4; 44:7-25; 48:9:15).)**

**Plaintiff's Objection:** This is not a material or relevant fact. Elba Burgos' testimony about her memory, for example, is at most evidence related to a material disputed fact (whether she could see the shooting and made a legitimate identification). On that point, there is clearly a dispute of fact, as we have presented above. See Plaintiff's objections to Paragraphs 92-99. Plaintiff also notes that Defendants' reference to 1535 N. Claremont fails to acknowledge that the police report documenting the Defendants' interview of Elba Burgos states that she lived at 1513 N. Claremont. Ex. 7 – Police Report of Elba Interview, at RFC-Johnson 18.

**Defendant Officers' Response:** Plaintiff's objection does not address the discrete facts set forth and material and relevance are not proper objections and relevant and material are not proper objections. Defendants accurately summarize Elba Burgos's testimony at her deposition, and Plaintiff makes no argument and cites nothing in the record to the contrary.

      **c)**   *Rosa Burgos*:

119.    At her deposition in this case, Rosa Burgos testified that she currently suffers from hereditary memory issues but confirmed that she would not have lied to the police if asked questions about a shooting and would have told the truth when under oath and giving testimony in a court room. **(Supporting Evidence: Ex. 34 - Rosa Burgos Deposition, May 12, 2022 (at 18:5-7, 22:9-24; 23:12-14).)**

**Plaintiff's Objection:** This is not a relevant or material fact; it is a claim about Rosa's memory and credibility that can serve only as argument about which evidence should be credited and which evidence should not, which is improper at summary judgment. The proposed statement is also disputed by the ample evidence discussed above that she could not really see the shooter or make an identification, that any testimony that she saw the shooter's face well enough to be able

to make an independent identification without police manipulation was false. See Plaintiff's objections to Paragraphs 101-105.

**Defendant Officers' Response:** Plaintiff's objection does not address the discrete facts set forth and material and relevance are not proper objections and relevant and material are not proper objections. Defendants accurately summarize Rosa Burgos's testimony at her deposition, and Plaintiff makes no argument and cites nothing in the record to the contrary.

## PLAINTIFF'S CONTINGENT ADDITIONAL FACTS FROM HIS OBJECTIONS

### Objection to Paragraph 35

129.    Ricardo Burgos testified at this civil deposition that he was 60-70 feet away when the shooting occurred, that he only saw the shooter running away from behind and never saw his face, and that any claim by police that he could identify the shooter was false. **Supporting Evidence: Ex. 46 - Ricardo Affidavit, Johnson 601-603; Ex. 32 - Ricardo Deposition at 17:10-19:4, 38:5-14 (if the police said he could of identified the shooter, that it would have been false), 45:5-11 ("Q. "[I]s is it fair to say that if you were shown photos or lineups, you would not have been able to identify anyone? A. That's correct.").**

**Defendant Officers' Response**: Defendants dispute "that any claim by police that he could identify the shooter was false" because it is argument and not supported by the citations. At trial Mr. Burgos testified that he looked at this man who fired the gun for about forty-five seconds and could see his face. Mr. Burgos then identified Demetrius Johnson as the person he saw fire the gun that day. **(Supporting Evidence: Ex. 5 - Criminal Trial Transcript (Ricardo Burgos) at JGS_JOHNSON 81 (A70:12-15), JGS_JOHNSON 85 (A74:3-14)).**

130.    Elba Burgos's criminal trial testimony, and the police report of the initial interview of Elba, indicate that Elba was on her front porch on the East side of the street, and saw the shooter running down the sidewalk past her house on the West side of the street (opposite her home on the East side of the street), and so could only have seen the side of the shooter's face. And she had only a few seconds to see the shooter's face. **Supporting Evidence: Ex. 7 – Police Report of Elba Interview, at RFC Johnson 19 (sitting on her front porch, saw person with gun running down the sidewalk on West side of street); Ex. 5 – JGS_JOHNSON 111-112 (A-100:19-A-101:13 (person running was on other side of street). Ex. 5 – JGS JOHNSON 121 (A-110:18-20); see also Ex. 42 - Guevara Dep: 27:4-9 (Elba did not give police a description of shooter when she first spoke to them), 30:2-7 (Elba said she could not give good description of the shooter and could not identify him**.

**Defendant Officers' Response**: The first clause of the first sentence is already in the agreed facts. (*See* ¶¶ 95-97). The phrase "so could only have seen the side of the

shooter's face. And she had only a few seconds to see the shooter's face" is disputed. Her complete testimony is:

> Q: Ms. Burgos, when you saw the man come by the front of your house did you have an opportunity to see the front of his face?
> A: Well, yes, I saw him.
> Q: The front of his face?
> A: Yes because when I stood up and I looked he was running this way.
> Q: Was he running toward you?
> A: He was on the other side of the street but he was running, coming this way.
> Q: Okay. How long did you get to see the front of his face?
> A: I saw between four to five seconds.

**Ex. 5 - JGS_Johnson 121 (A110: 8-20)**

131.    The police report documenting officers' initial interview of Rosa Burgos indicates that Rosa was in a building walking down a staircase behind Raul Ortiz, and ran back upstairs as soon as the shooting started. Rosa testified that she told police "everything happened so fast and that she wasn't sure who the shooter was"; and that she "had trouble distinguishing between black people because all those people look alike"; and that when she viewed a lineup she did not make a positive identification but instead told the police she was unsure. **Supporting Evidence: Ex. 7 – Police Report of Rosa Interview, RFC-Johnson 20-21; Ex. 34 - Rosa Deposition at 40:21-42:19; Ex. 5 – PD Carey Trial Testimony at JGS_Johnson 185-187; Ex. 5 – Rosa Trial Testimony at JGS_Johnson 66 (R. A-55:6-10), 1188-1189 (B-12:19 –B-13:11).**

**Defendant Officers' Response**: Defendants do not dispute the first sentence or that Rosa testified that she "had trouble distinguishing between black people because all those people look alike." Defendants dispute that Rosa testified "that she told police "everything happened so fast and that she wasn't sure who the shooter was" because the citations do not support this statement. This statement is from APD Carey's testimony about what Rosa allegedly said to him which is hearsay. **Ex. 5 –Trial Testimony (APD Carey) at JGS_Johnson 187 (B12:7-10);** *see* Federal Rule of Evidence 802. Carey's testimony at Plaintiff's trial is hearsay and he is deceased. *See* Federal Rule of Evidence 804(b) (1) (explaining that prior testimony is admissible if it is offered against a party or his predecessor who had an opportunity and similar motive to test the testimony.); *Hill v. Chicago*, No. 06 C 6772, 2011 WL 3876915, at *2 (N.D. Ill. Sept. 1, 2011) (in subsequent civil proceeding the court barred the use of prior criminal trial testimony of plaintiff's criminal codefendant as hearsay because the defendant officers in the civil litigation were not parties to the criminal proceeding); *Butler v. Indianapolis Metropolitan Police Dep't*, No. 07 C 1103, 2009 WL 2092416, at *2 (S.D.Ind. July 13, 2009) ("The motive of the prosecutor to cross-examine the witness is markedly different from that of the defendant police officer or city in a later civil lawsuit arising from the same incident.").

Defendants dispute that Rosa stated "that when she viewed a lineup she did not make a positive identification but instead told the police she was unsure" because Plaintiff again relies on hearsay testimony of APD Carey for this and the cited reference is to the June 12, 1991 lineup. Rosa testified that on July 22, 1991, she went to Area 5 to view a lineup and identified Demetrius Johnson as the person who shot Raul Ortiz. **Ex. 5 - Criminal Trial Transcript (Rosa Burgos) at JGS_JOHNSON 49-50 (A38:3-39:16); Ex. 14 - Line up photo (impound Evidence 389).)** Rosa further denied she was unsure of her identification at the lineup. **Ex. 5 - Criminal Trial Transcript (Rosa Burgos) at JGS_JOHNSON 74 (A63:23-64:2)**

132.    Demetrius Johnson's Public Defender, Jack Carey, testified at trial that when he interviewed Rosa Burgos, she told him that she had gone to the police station on an earlier occasion (before the lineup in which Demetrius Johnson was the suspect) to view a different lineup. At that time, three individuals had identified someone and she was told by police that they had the wrong guy. **Supporting Evidence: Ex. 5 – PD Carey Trial Testimony, JGS Johnson 187 (B-12:2-18) (Public Defender testifying that Rosa told him there were three identifications previously and the police told them it was wrong guy).**

**Defendant Officers' Response**: Defendants dispute this fact because Rosa denies she spoke to Carey.

> Q :The first time you went to the police station, the night of the shooting?
> A: I don't remember.
> Q Isn't it true that you told Jack Carey that you told the police that you were able to identify someone in that lineup and they said no that's not the guy?
> A: I didn't say nothing. I didn't talk to them.
> THE COURT: You didn't talk to whom?
> THE WITNESS: To the two mens that came up.

**Ex. 5 - Criminal Trial Transcript (Rosa Burgos) at JGS_JOHNSON 62-63 (A51:20-52:5);**

Additionally, Carey's testimony at Plaintiff's trial is hearsay and he is deceased. *See* Federal Rule of Evidence 804(b) (1) (explaining that prior testimony is admissible if it is offered against a party or his predecessor who had an opportunity and similar motive to test the testimony.); *Hill v. Chicago*, No. 06 C 6772, 2011 WL 3876915, at *2 (N.D. Ill. Sept. 1, 2011) (in subsequent civil proceeding the court barred the use of prior criminal trial testimony of plaintiff's criminal codefendant as hearsay because the defendant officers in the civil litigation were not parties to the criminal proceeding); *Butler v. Indianapolis Metropolitan Police Dep't*, No. 07 C 1103, 2009 WL 2092416, at *2 (S.D.Ind. July 13, 2009) ("The motive of the prosecutor to cross-examine the witness is markedly different from that of the defendant police officer or city in a later civil lawsuit arising from the same incident.").

133.    When Reynaldo Guevara was asked at his deposition whether Elba, Rosa and Ricardo told him they could not identify the shooter, whether he told them who to pick, and whether he ultimately fabricated police reports falsely claiming that they had identified Plaintiff without his interference, Guevara pleaded the Fifth. **Supporting Evidence: Ex. 42 – Guevara Deposition at p. 22:22-23:1, 24:5-30:25, 78:17-81:20, 82:6-84:7, 91:23-92:21, 101:23-104:4, 110:4-111:8 (pleading Fifth on these issues throughout deposition).**

**Defendant Officers' Response**: Defendants do not dispute that Guevara asserted his Fifth Amendment but deny that it supports the implied facts without other corroborating evidence. Plaintiff's reliance on Guevara asserting his Fifth Amendment to support the facts fails to appreciate that the assertion of the Fifth Amendment alone is insufficient to meet his burden. *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 390 (7th Cir. 1995)(quoting *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976) ("[T]he entry of judgment based only on the invocation of the privilege and 'without regard to the other evidence' exceeds constitutional bounds."); *Evans v. City of Chicago,* 2006 WL 463041, at *9 (N.D. Ill. Apr. 26, 2006) (aff'd and remanded by *Evans v. Katalinic,* 445 F.3d 593 (7th Cir. 2006). For Plaintiff to obtain the adverse inference of a fact from Guevara's invocation, he must point to other probative evidence of that fact. *Baxter,* 425 U.S. at 318 ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify *in response to probative evidence offered against them.*") (emphasis added); *see also Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) ("An adverse inference can only be drawn when independent evidence exists of the fact to which the party refuses to answer.").

Guevara's assertion of the Fifth Amendment is not evidence and allows an inference against Guevara only if there is corroboration, but does not allow an inference against Halvorsen, Healy, Erickson or Daley. The question of whether a nonparty's invocation of the Fifth Amendment may be used against a party is determined on a case-by-case basis and depends on whether such an "adverse inference is trustworthy under all of the circumstances and will advance the search for truth." *Sebastian v. City of Chicago*, No. 05 C 2077, 2008 WL 2875255, at *33 (N.D. Ill. July 24, 2008) (quoting *Kontos v. Kontos*, 968 F.Supp. 400, 406 (S.D.Ind.1997); *LiButti v. U.S.*, 107 F.3d 110, 124 (2d Cir.1997). The court assesses the relationship between the witness invoking and the party to determine if there is some relationship of loyalty between the witness and party. *See LiButti v. U.S.*, 107 F.3d 110, 122 (2d Cir.1997); *State Farm Mut. Auto. Ins. Co. v. Abrams*, No. 96 C 6365, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000). Most courts that have imputed an adverse Fifth Amendment inference from a nonparty to a party have done so where there is a close family relationship between the party and the nonparty or a business relationship, such as an agency or employer-employee relationship. *See State Farm Mut. Auto Ins. Co.*, 2000 WL 574466, at *6 (collecting cases); *Kontos*, 968 F.Supp. at 408. Plaintiff has no evidence of Guevara's relationship at the time of his invocation with any of the co-defendants, considering Halvorsen has been deceased since 2020 and retired in 2010, Erickson has been deceased since 2018 and retired in 1991, and Healy has been deceased since 2002 and retired in 1992. As for Daley (the only other living defendant), he testified that he had no relationship with Guevara and did not personally care for him. **Ex. 6 – Daley Deposition at 138:24-139:19**.

## Objection to Paragraph 88

134.    Based on the initial police report documenting Defendant Guevara's interview of Ricardo Burgos, Ricardo told police that the shooter was a "male hispanic," not a "black guy." **Supporting Evidence: Ex. 7 - RFC Johnson 25 ("he noticed a male hispanic"); Ex. 5 – Guevara Trial Testimony at JGS_Johnson 227 (B-52:5-9) (Q. What is the description given by Ricardo Burgos? A. . . . male Hispanic").**

**Defendant Officers' Response**: Not disputed if Plaintiff corrects the quote to be accurate and say "hispanich" [sic] but requires Defendants to add an additional fact. *See* Paragraph 138.

## Objection to Paragraph 89

135.    In a sworn statement given on October 8, 2020, Ricardo Burgos swore that he was 60-70 feet away when the shooting occurred, "did not see the man with a weapon," and only saw the shooter running away from behind and never saw his face. **Supporting Evidence: Ex. 46 - Ricardo Affidavit, Johnson 601-603.**

**Defendant Officers' Response**: Not disputed.

## Objection to Paragraph 97

136.    Elba Burgos also testified that she was on her front porch on the East side of the street, and saw the shooter running down the sidewalk on the opposite side of the street. This distance from the porch to the sidewalk on the opposite side of the street is greater than 50 feet way. **Supporting Evidence:** Ex. 7 – Police Report of Elba Interview, at RFC Johnson 19 (sitting on her front porch, saw person with gun running down the sidewalk on West side of street); Ex. 5 – JGS_JOHNSON 111-112 (A-100:19-A-101:13 (person running was on other side of street).

**Defendant Officers' Response**: The first sentence is duplicative of paragraphs 95-97 and 130 and therefore is not required. Defendants dispute the second sentence and distance because it is not supported by citations and Plaintiff's map is argument and speculates about Elba's location and the location of the person running. Additionally, Elba Burgos testified that the person she saw with a gun was about 25 feet from her. **(Supporting Evidence: Ex. 5 - Criminal Trial Transcript (Elba Burgos) at JGS_JOHNSON 103 (A92:1-4, 8-24).)**

## Objection to Paragraph 106

137.    Rosa Burgos testified at her civil deposition that she did not know an individual named Bryan Johns. The police report documenting the police interview of Rosa Burgos contains no reference to Rosa recognizing the shooter or Bryan Johns as someone she knew from the

neighborhood, nor does the Erickson police report documenting a lineup viewed by Rosa Burgos in which Johns was the suspect. **Supporting Evidence: Ex. 34 – Rosa Deposition at 19:23-20:2 ("Q. Did you know an individual named Bryan Johns? A. Who? Q. Bryan Johns. A. No."), 20:3-20:5 (same), 64:7-65:5; Ex. 7 – Erickson Lineup Report, at RFC-Johnson 27; Ex. 7 – Supplementary Report of Interview of Rosa Burgos, at RFC-Johnson 21.**

**Defendant Officers' Response**: Not disputed.

Dated: February 2, 2024                                        RESPECTFULLY SUBMITTED,

/s/ Anand Swaminathan                                    /s/ Josh M. Engquist
Anand Swaminathan                                          Josh M. Engquist, Atty. No. 6242849
Jon Loevy                                                          *One of the Attorneys for the Individual*
Anand Swaminathan                                          *Defendants*
Steve Art
Rachel Brady                                                     Josh M. Engquist
LOEVY & LOEVY                                              James G. Sotos
311 N. Aberdeen                                                Josh M. Engquist
Chicago, IL 60607                                             David A. Brueggen
(312) 243-5900                                                  Elizabeth R. Fleming
*Attorneys for Plaintiff*                                     Daniel McGinnis
                                                                       Special Assistant Corporation Counsel
                                                                       THE SOTOS LAW FIRM, P.C.
                                                                       141 W. Jackson, Suite 1240A
                                                                       Chicago, IL 60604
                                                                       (630) 735-3300
                                                                       jengquist@jsotoslaw.com

## CERTIFICATE OF SERVICE

I, Josh M. Engquist, an attorney, certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that on Friday, February 2, 2024, I electronically filed the foregoing **Joint Motion to Resolve Disputed Material Facts** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record on the below Service List.

*Attorneys for Plaintiff:*

Jon Loevy
Anand Swaminathan
Joshua Tepfer
Rachel Brady
Steven Art
Sean Starr
Alyssa Martinez
Margaret Gould
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
312-243-5900
jon@loevy.com
anand@loevy.com
josh@loevy.com
brady@loevy.com
steve@loevy.com
sean@loevy.com
alyssa@loevy.com
gould@loevy.com

*Attorneys for City of Chicago:*

Eileen E. Rosen
Austin G. Rahe
Catherine M. Barber
Theresa B. Carney
Rock Fusco & Connelly, LLC
321 N. Clark, Suite 2200
Chicago, Illinois 60654
312-494-1000
erosen@rfclaw.com
arahe@rfclaw.com
cbarber@rfclaw.com
tcarney@rfclaw.com

*Attorneys for Defendant Guevara:*

Thomas M. Leinenweber
Michael J. Schalka
James V. Daffada
Leinenweber Baroni & Daffada
120 N. LaSalle St., Suite 2000
Chicago, IL 60602
(312) 663-3003
thomas@ilesq.com
mjs@ilesq.com
jim@ilesq.com


/s/ Josh M. Engquist
Josh M. Engquist