IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| DEMETRIUS JOHNSON | ) |
| | ) Case No. 20 CV 4156 |
| Plaintiff, | ) |
| | ) Judge Sara L. Ellis |
| v. | ) |
| | ) Magistrate Judge Heather K. McShain |
| REYNALDO GUEVARA, et al. | ) |
| | ) |
| Defendants. | ) JURY TRIAL DEMANDED |
| | ) |

**JOINT MOTION TO RESOLVE DISPUTED MATERIAL FACTS**

Pursuant to this Court's standing order on summary judgment practice, the Parties submit the following Motion to Resolve Disputed Facts, relative to the City of Chicago's forthcoming Motion for Summary Judgment related to Plaintiff's *Monell* claim.

**PLAINTIFF'S OPENING OBJECTIONS:**

Respectfully, Plaintiff objects to the Court's individual practices requiring an agreed statement of fact. The process the Court has set forth requires parties to agree to statements being included in a joint statement of fact, even where there is a dispute as to the material fact, by permitting a party to characterize a fact as undisputed by simply pointing to one side of the evidence on the issue. So, for example, at the hearing on January 25, 2024, the Court provided guidance on how to handle a dispute on a hotly contested issue—for example, whether Witness A good look at saw the shooter and could make an independent identification, or whether Witness A did not get a good look at the shooter and was told who to pick by police. Based on the Court's guidance, if Defendants include a fact such as, "At trial, Witness A testified that he saw the shooter and identified Plaintiff from a photo array on his own," it must be treated as undisputed if that is indeed what the trial transcript says. Under the Court's guidance, if there is evidence to the contrary from police reports, affidavits, depositions, or other documents indicating that the witness did not see the shooter and/or could not make an identification, that does not create a dispute of fact. Instead, it may be a basis to add a separate statement of fact. In Plaintiff's view, this process permits the moving party to distort the underlying summary judgment record on a disputed issue, assert that something is undisputed, and then demand the nonmoving party agree to that fact in a so-called joint statement of undisputed facts, which the moving party will then use to argue that summary judgment is warranted. That process is contrary to the Federal Rules of Civil Procedure.

**CITY'S RESPONSE:**

The Seventh Circuit has held on several occasions that this Court's summary judgment practice does not violate Local Rule 56.1. *See Chi. Studio Rental, Inc. v. Ill. Doc.,* 940 F.3d 971, 982 (7th Cir. 2019); *Sweatt v. Union Pac. R.R. Co.,* 796 F.3d 701, 711-12 (7th Cir. 2015). Specifically finding that the practice merely requires the parties to file a joint statement of undisputed facts, if possible, which is consistent with the Federal Rules of Civil Procedure 56(a) and Local Rule 56.1. *Id.*

**DISPUTED FACTS**[1]

**PROPOSED PARAGRAPH 23:** S.O. 83-2 did not require a single repository for all investigative information maintained by a lead investigator; applied only to detectives, and excluded all other officers involved in investigating major crimes; provided no guidance about what information a detective was required to include in a supplementary report beyond information deemed "relevant," or about how information should be communicated or documented among detectives; provided no policy directive or procedure to ensure production of investigative files; relied on inventory sheets instead of actual file disclosures; and lacked an audit/oversight mechanism. (Exhibit 22, SO 83-2; Ex. 5, Tiderington Report, at 48; Ex. 17, Hickey Dep. in *Kluppelberg*, at 236:7-238:12.)

**CITY'S OBJECTIONS:** The City objects to this paragraph to the extent it relies on Plaintiff's expert's opinion for the truth of the matter asserted. An expert opinion is not evidence, it is simply an opinion, and is therefore hearsay. *See, Sommerfield v. City of Chicago,* 254 F.R.D. 317, 329 (N.D. Ill. 2008). Further objecting, Plaintiff's citation to Hickey's testimony in *Kluppelburg* only supports the highlighted portion of this paragraph. The remainder of the paragraph is Plaintiff's summary of SO 83-2, which is a 5 page special order.

**PLAINTIFF'S RESPONSE:** Special Order 83-2 is supportive of all of the facts stated in this proposed fact. *See* S.O. 83-2 at pgs. 1-5 (no requirement for a single repository for information maintained by lead investigator; only applies to Detective Division, meaning that no other officers involved in investigating major crimes are included; provides no guidance about information in a supplementary report beyond information deemed relevant; provides no guidance about how information should be communicated or documented among detectives; provides no procedure to ensure production of investigative files; relies on Investigative File Inventory Sheet, *see* id. at 2, to forward material to the Records Division, not actual file disclosures; lacks an audit mechanism). The City's objections do not demonstrate that the Order applies to anyone but the Detective Division nor does it demonstrate that any of the stated fact is not supported. Plaintiff's citation to Hickey's Deposition in *Kluppelberg* also supports this paragraph and provides his testimony that Special Order 83-2 does not provide guidance about the information that must be included in a supplemental report. *See* Ex. 17, Hickey Dep. in *Kluppelberg*, at 236:7-238:12.

**CITY'S RESPONSE:** The City stands on its objections. This paragraph is a summary of Plaintiff's interpretation of the special order. For example, there is nothing within the special order that states that it "excludes all other officers involved in investigating major crimes." In fact, the

---

[1] The exhibits are numbered as they are in the full Joint Statement of Facts.

introduction to the Order states: "This order is designed to institutionalize the control of all violent crimes investigation documents[.]" Moreover, Plaintiff's summary of what he purports to be *lacking* in the order is clearly argumentative, and not proper pursuant to the Court's guidance and standing order.

**PROPOSED PARAGRAPH 31:** While the policy stated that "the name(s) of persons identified in the lineup" had to be reported, it did not provide any guidance on what had to be reported in the event of a lineup procedure in which someone was not identified, tentatively identified, or a filler was selected. Ex. 24, General Order 83-5; Ex. 18 Rivera Hickey Dep. at 264:6-265:19. Likewise, neither that policy nor any other policies in effect in 1988 governed the conduct of photographic lineups. (Ex. 11, G.O. 88-18; Ex. 18 *Rivera* Hickey Dep at 264:6-265:19).

**CITY'S RESPONSE:** The additional testimony does not support the paragraph as written. Rather, when asked if a witness identified a filler as opposed to the suspect, the "clearest direction [from the order was] Subsection H, which results in the identification of a suspect, by definition, the filler is a non-suspect…so the report would indicate that there was not an identification of the suspect." Ex. 18 Rivera Hickey Dep. at 264:6-265:19

**PLAINTIFF'S RESPONSE:** The testimony cited supports the statement. Hickey's testimony confirms that the policy lacked clear instruction on the selection of a filler, but instead collapsed that separate identification into the non-identification of a suspect. Ex. 18 Rivera Hickey Dep. at 264:6-265:19. Plaintiff will not remove this fact.

**CITY'S RESPONSE:** Plaintiff's response in support of this paragraph demonstrates how this paragraph is not supported by the evidence cited. Rather, it is Plaintiff's interpretation of the testimony, argumentative and does not comply with this Court's guidance and standing orders.

```
 6    Q.  Okay.  What happens under this policy if
 7    the -- if the witness is unable to make an
 8    identification?
 9    A.  It's simply a listing of those that
10    participated.  There is no one identified.
11    Q.  Okay.  Well, is the -- does this policy
12    provide any guidance to the participants in the --
13    to the police participants in the lineup process as
14    to how they should document the absence of an
15    identification?
16    A.  No, but it's I suppose presumed that you
17    would say no one was selected or no -- the suspect
18    was not selected.
19    Q.  Suppose the -- suppose the witness
20    identifies a filler as opposed to the suspect.
21    Under this report what is the obligation of the
22    member of the department?
23    MS. ROSEN:  Under this order you mean.
24    MR. BOWMAN:  I'm sorry, under this order,
```

```
 1    right.
 2    THE WITNESS:  I would say the clearest
 3    direction it's in Subsection H which -- which
 4    results in the identification of a suspect by
 5    definition the filler is a non-suspect, you know.
 6    BY MR. BOWMAN:
 7    Q.  So this would be the member of the
 8    department then would -- would in his report
 9    indicate that there was not an identification?
10    A.  There was not an identification of the
11    suspect.
12    Q.  That would be the way that would be
13    recorded?
14    A.  At that time in 1988.
15    Q.  Okay.  And that was -- speaking on behalf
16    of the Chicago Police Department that was the --
17    the procedure in practice that was followed in
18    1988?
19    A.  Yes, sir.
```

**PLAINTIFF'S RESPONSE:** If the City wishes to add its additional reference to testimony as an additional fact, Plaintiff will not object; however, Plaintiff will not remove this fact.

3

**CITY'S RESPONSE:** The City stands on its objections. In the event the Court overrules the City's objections, the City proposes the inclusion of the following langauge as its own fact: "When Hickey was asked if a witness identified a filler as opposed to the suspect, the "clearest direction [from the order was] Subsection H, which results in the identification of a suspect, by definition, the filler is a non-suspect…so the report would indicate that there was not an identification of the suspect." (Ex. 18 Rivera Hickey Dep. at 264:6-265:19.) The City disagrees that its position violates the Court's guidance. The City's objections are that the paragraph is not supported by the citations, and as such, the City does not agree with how Plaintiff has written this statement and maintains that the paragraph should be stricken or rewritten to accurately cite the testimony. Accordingly, adding in an additional fact does not cure the deficiencies noted in the City's objections. However, in the event the Court disagrees with the City and allows the paragraph to stand, then the City would ask the Court to include its proposed paragraph.

**PLAINTIFF's RESPONSE:** Plaintiff objects to the City's position, which violates the Court's guidance to add an additional fact when there is a dispute over additional evidence offered to contradict the Plaintiff's evidence, but maintains its response to the City's objections nonetheless.

**PROPOSED PARAGRAPH 35:** The training materials were from 1996, and do not indicate they were in effect before this year. Ex. 13, Training Materials at Foster 30(b)(6), 000011, 000040.

**CITY'S OBJECTIONS:** This fact is not supported by the evidence cited. Specifically, page 40 of Ex. 13 does not discuss dates at all. Further, while the training was written/updated in 1996 (*see,* Ex. 13 at 11), the original course lesson plan/program was developed in 1981 and based off of a general order drafted in 1988. (*See,* Ex. 13 at 55).

**PLAINTIFF'S RESPONSE:** The fact is supported by Exhibit 13, which was created in 1996, eight years after the General Order on which it was purported to provide training, according to the City. *See* Ex. 13. Plaintiff has cited to a page including the 1996 date for these specific training materials on identification procedures and lineups. Moreover, the City's preceding paragraph No. 34, to which this fact was offered as an additional fact, references pages 40 and 41 of the training materials – which are separate from a separate unit of training materials identified on Page 55. The City's objection regarding the training materials is without merit. Page 55's reference to a separate "course lesson plan" does not support the City's stated fact. (*See* Ex. 13 at 55).

**PROPOSED PARAGRAPH 42:** The training that detectives received was three hours long and did not include training on what information was to go into supplementary reports. When asked if "part of the training instruction to the detectives [was] that they should document everything they learned during an investigation," 30(b)(6) representative Winstrom stated, "I don't believe so, but I haven't – I don't believe so." Ex. 16, Winstrom Dep, 147:1-4, 148:1-4, 149:2-6.

**CITY'S RESPONSE:** This paragraph is directly contradicted by the testimony cited by Plaintiff. When asked "did it include training on what information should be included in those reports?" Commander Winstrom testified "I – you know, they say it did."

4



**PLAINTIFF's RESPONSE:** The last sentence in the fact was in reference to Winstrom Dep. at 149:2-6, not 147, as the City provided above. Plaintiff has provided the relevant testimony below. Plaintiff objects to the City's position, which violates the Court's guidance to add an additional fact when there is a dispute over additional evidence offered to contradict the Plaintiff's evidence. Plaintiff maintains his objections to the inclusion of this testimony in this fact.

```
                                                    Page 149
1   BY MR. SWAMINATHAN:
2       Q    Did -- strike that. Was part of the training
3   instruction to the detectives that they should document
4   everything they learned during the investigation?
5       A    I don't believe so, but I haven't -- I don't
6   believe so.
```

**CITY'S RESPONSE:** Plaintiff's position ignores the testimony quoted by the City in which Winstrom responded, and therefore the City stands on its objections. The City seeks to add the following language as a new fact: "When Hickey was asked about training on the subject of a detective obligation to record information, Hickey testified that "[t]he detective [was] expected and was trained on his obligation to record information, which is pertinent and relevant to the investigation." (Ex. 17, Hickey Dep. *Kluppelburg,* at 96:17-97:4). The City disagrees that its position violates the Court's guidance. The City's objections are that the paragraph is not supported by the citations, and as such, the City does not agree with how Plaintiff has written this statement and maintains that the paragraph should be stricken or rewritten to accurately cite the testimony. Accordingly, adding in an additional fact does not cure the deficiencies noted in the

5

City's objections. However, in the event the Court disagrees with the City and allows the paragraph to stand, then the City would ask the Court to include its proposed paragraph.

**PROPOSED PARAGRAPH 245:** Foster was unaware of any policy or any training about how tentative identifications were to be documented, and confirmed that detectives were not trained to ask witnesses if they were 100 percent confident in their identifications, so tentative identifications would only occur if the witness themselves volunteered that they were not 100 percent certain. Ex. 14, Foster 30(b)(6) Dep., 246:1-7, 246:24-247:3, 247:8-11 .

**CITY'S OBJECTIONS:** This paragraph is not supported by the record citation, as Foster testified that tentative identifications were documented as non-identifications, and the practice was to document a statement about the lack of confidence in an identification. Ex. 14, Foster 30(b)(6) Dep., 246:1-247:11.

**PLAINTIFF'S RESPONSE:** Each part of the paragraph is supported by the record citation. *See id.* 246:1-7 ("Q. . . . [W]as there any policy about how tentative identifications were to be documented? A. Not that I'm aware of, no. Q. Okay. Was there . . . any training on how tentative identifications were to be documents? A. Not that I'm aware of, No."); 246:24-247:3 ("Q. Okay . . . if I understand correctly in this time period, detectives were not trained to ask witnesses if they were 100 percent confident in their identifications, correct? A. Correct."), 247:8-11 ("Q. Okay. So tentative identifications would only occur if the witness themselves volunteered that they were not 100 percent certain; Is that correct? A. Correct."). Referencing other testimony is not a basis to object to these direct references to the testimony, per the Court's guidance. Plaintiff will not remove this fact.

**CITY'S RESPONSE:** The City directed Plaintiff to the testimony he cited, which reads as follows:

```
 8       Q    Okay.  And what was the practice with regard
 9   to the ident -- with regard to the documentation of
10   tentative identifications?
11       A    They were considered non-identifications and I
12   -- and documented as such.
13       Q    Okay.  And when you say they were documented
14   as non-identifications, was the fact that the person was
15   tentative about their identification documented?
16       A    Yes.
17       Q    In other words, the practice was to document a
18   statement about their lack of confidence in the
19   identification; is that right?
20       A    Correct.
```

**PLAINTIFF'S RESPONSE:** The City is free to add this as an additional fact. Plaintiff has modified the citations to conform directly to the lines cited.

**CITY'S RESPONSE:** The City stands on its objections. In the event the Court overrules its objections, the City proposes the additional fact: "When asked what the practice was with regard to the documentation of tentative identifications, Foster testified that they were considered non-identifications and documented as such. Further, when asked if the fact that a person was tentative about their identification was documented, he said yes." Ex. 14, Foster 30(b)(6) Dep., 246:1-247:11).

**PLAINTIFF'S RESPONSE:** Plaintiff objects to the City's position, which violates the Court's guidance to add an additional fact when there is a dispute over additional evidence offered to contradict the offered evidence. Plaintiff will accept the City's proposed fact as written above.

**CITY'S RESPONSE:** The City disagrees that its position violates the Court's guidance. The City's objections are that the paragraph is not supported by the citations, and as such, the City does not agree with how Plaintiff has written this statement and maintains that the paragraph should be stricken or rewritten to accurately cite the testimony. Accordingly, adding in an additional fact does not cure the deficiencies noted in the City's objections. However, in the event the Court disagrees with the City and allows the paragraph to stand, then the City would ask the Court to include its proposed paragraph.

DATE: February 23, 2024

Respectfully Submitted,

*/s/ Meg Gould*
Attorney for Plaintiff

Jon Loevy
Anand Swaminathan
Steve Art
Meg Gould
Alyssa Martinez
LOEVY & LOEVY
311 N. Aberdeen
Chicago, Illinois 60607
(312) 243-5900

*/s/ Theresa Berousek Carney*
Special Assistant Corporation Counsel for Defendant City of Chicago

Eileen E. Rosen
Austin G. Rahe
Catherine M. Barber
Theresa B. Carney
Lauren M. Ferrise
ROCK FUSCO & CONNELLY, LLC
333 West Wacker Drive, 19th Fl.
Chicago, IL 60606
(312) 494-1000
tcarney@rfclaw.com