IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEMETRIUS JOHNSON, Plaintiff, | No. 20 C 4156 |
| vs. | Chicago, Illinois |
| REYNALDO GUEVARA, JOANN HALVORSEN, as Personal Representative to the Estate of Ernest Halvorsen, DARRYL DALEY, WILLIAM ERICKSON, JOHN HEALY, and the CITY OF CHICAGO, Defendants. | February 29, 2024 1:45 p.m. |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HON. SARA L. ELLIS

APPEARANCES:

For the Plaintiff: MR. ANAND SWAMINATHAN
MS. MARGARET GOULD
Loevy & Loevy,
311 North Aberdeen Street, 3rd Floor,
Chicago, Illinois 60607

For Defendant Guevara: MS. GABRIELLE R. SANSONETTI
Leinenweber, Baroni & Daffada, LLC,
120 North Lasalle Street, Suite 2000,
Chicago, Illinois 60602

For Defendants Daley, Halvorsen, Erickson, and Healy: MR. JOSH M. ENGQUIST
MR. DAVID A. BRUEGGEN
The Sotos Law Firm, P.C.,
141 West Jackson Boulevard, Suite 1240A,
Chicago, Illinois 60604

PATRICK J. MULLEN
Official Court Reporter
United States District Court
219 South Dearborn Street, Room 1412
Chicago, Illinois 60604
(312) 435-5565

APPEARANCES: (Continued.)

For Defendant City of Chicago: MS. EILEEN E. ROSEN
Rock, Fusco & Connelly, LLC,
321 North Clark Street, Suite 2200,
Chicago, Illinois 60654

(Telephonic proceedings on the record.)

THE CLERK: 2020 CV 4156, Johnson versus Guevara.

MR. SWAMINATHAN: Good afternoon, Your Honor. Anand Swaminathan and Meg Gould for plaintiff Demetrius Johnson.

MR. ENGQUIST: Good morning -- or good afternoon, Your Honor. Josh Engquist and David Brueggen on behalf of defendants -- oh, geez -- Halverson, Erickson, Daley, and Healy.

MS. ROSEN: Good afternoon, Your Honor. Eileen Rosen on behalf of defendant City of Chicago.

MS. SANSONETTI: Good afternoon, Your Honor. Gabrielle Sansonetti on behalf of Mr. Guevara.

THE COURT: All right. Good afternoon.

All right. So we'll go through the joint motion to resolve facts. The one thing that I'll note, I noticed that the plaintiff made general objections to this process, and I'll say this one more time to explain the purpose of the process, which in reading both of these motions I still think people don't understand.

It is that when I am looking at a joint statement of facts, these are the facts that are undisputed. It doesn't mean they're good for you. It doesn't mean they're bad for you. It just means that they are facts. What I don't want to see is argument in the statement of facts. They simply are stating that these are the facts. What could be drawn from

those facts may be in dispute.

So in this case, for example, it is clearly in dispute as to the validity and legitimacy of the witness identification of Mr. Johnson as the shooter, but that comes from competing facts that are not in dispute. They compete with each other which creates a dispute, but they themselves are not in dispute, and that is what this statement should be.

So if, for example, you have, you know, a witness that testifies that the light was green and somebody else testifies that the light was red, you cannot put in the statement of facts that the light was green or that it was red because that fact is actually in dispute. How do we know it's in dispute? From the undisputed fact that this one said it was green and the undisputed fact that that one said it was red. That is the purpose of this exercise. So I'm overruling the plaintiff's general objection, and we will go forward.

MR. SWAMINATHAN: And, Judge, let me just add this. Just for clarification, I appreciate your statement and I understand it. I mean, I understood a lot that you said, and this is for purposes of our briefing that's now going to be coming after this is over. If in the statement of facts you have the light is green from one witness and the light is red says the other witness, in the brief --

THE COURT: In the brief, then you argue it and you say: Judge, clearly you cannot find summary judgment here,

right, because that is a question of fact that you cannot decide on summary judgment.

MR. SWAMINATHAN: That's right.

THE COURT: Therefore, it goes to the jury.

MR. SWAMINATHAN: Right.

THE COURT: And that's where the argument belongs, in the brief, not in the statement of facts. You use the statement of facts to set yourself up to make these arguments in the brief.

So let me go through the objections. So I'm looking first at the ones regarding the defendant officers' motion.

MS. SANSONETTI: Judge, is that document 302?

THE COURT: Yes. All right. So paragraph 28 -- paragraphs 28, 30, 31, 32, 33, 35, 37, 38, 39, 42, 43, 44, 59, 60, 71, 87, and 88 all go in.

Then do the plaintiffs want their proposed -- it looks like they're proposing an additional fact at the bottom of their objection to paragraph 88.

MR. SWAMINATHAN: That's correct, Your Honor. Our position is if, as I think you just said, you're admitting paragraph 88, what we're saying is we agree to that so long as our --

THE COURT: All right. Did you propose it?

MR. SWAMINATHAN: We did. We did propose it. In fact, actually at the end of their statement --

THE COURT: Okay. I just want to make sure that this is the same as what was --

MR. SWAMINATHAN: Yes. So these were presented to defendants. We conferred about them and, in fact, I think I just spoke with counsel before we walked in. Paragraph 88 reads as though there was still some dispute, so what we had said was --

THE COURT: Okay. So yours is 134. Yours is your proposal to 134.

MR. SWAMINATHAN: That's exactly right, Your Honor.

THE COURT: Okay.

MR. SWAMINATHAN: What they're saying is they don't dispute it if we include --

THE COURT: Okay.

MS. SWAMINATHAN: You know, we just respelled "Hispanic." So it sounds like we don't have a dispute about 88 because we're including 134.

THE COURT: All right. Then 89 --

MR. SWAMINATHAN: That goes in.

THE COURT: -- goes in.

MR. SWAMINATHAN: Yeah.

THE COURT: Then I'll say 134 also goes in.

90 needs to be modified to read:

"Mr. Burgos testified he then saw this man fire the gun."

All right. 91 and 97 go in.

102, however, needs to be edited to read:

"Elba Burgos was on her front porch on the east side of the street, and the shooter was running down the sidewalk on the west side of the street. She only had a few seconds to see the shooter as he was running by, and any identification came only weeks later."

Then remove "she only saw the shooter from the side" because that doesn't come from anybody's testimony. That's an inference, right, that you want me to make, but that doesn't come from anyone's testimony.

Then I would remove the sentence starting "in addition" because, again, that's another inference that you want me to make. Then you can say:

"Elba's trial identification came" -- remove the word "only" -- "after she was shown plaintiff's picture multiple times, including in a single photo containing plaintiff and two dissimilar individuals in a lineup in which he was the only person from prior photos."

You can then later argue that that was, you know, an invalid or a suspect identification, but it needs to be those facts.

All right. 103 goes in. 106 goes in.

108 is a bit of a mess, so you need to clean this up. So the section where it says "she told police everything

happened so fast and she wasn't sure who the shooter was," that doesn't come from any police reports. That is coming from the testimony of the public defender.

So, you know, there's a paragraph later -- and we'll get to that -- about what he testified to that could go in, but it can't go in here about her statements because it's not appropriate to go in here. So you can remove that section, and the last two sentences should come out. The first one is just duplicative, as is the second.

MR. ENGQUIST: So, Your Honor, I'm just trying to be clear. So it would be --

THE COURT: It's a bit of a mess of a paragraph, so you know what shouldn't be in there, right?

MR. ENGQUIST: I think -- I believe so, Your Honor.

THE COURT: All right. So I want the plaintiff to go back and rework paragraph 108. If I understand you correctly in what you want, you know, you want to include things that bring the validity of her identification into question, right? So you can do that. It just shouldn't be in the mishmash that you've got here, right?

MR. SWAMINATHAN: Okay.

THE COURT: It should be that here's the -- and you can do -- you can split it up into other paragraphs. You don't have to jam it all into one. It can be here's the circumstances of what happened during the shooting. She was

coming down the stairs behind Mr. Ortiz. Someone shot Mr. Ortiz. She turned around and ran back upstairs.

That's one paragraph, right? Then you can argue from that that she would not have had time nor -- well, because she wouldn't be expecting this and had been surprised, she wouldn't have been paying attention to the identity of the person and didn't have a long enough time, even if she was looking, to make a valid identification.

You know, that she also had trouble distinguishing among people and that she didn't make a positive identification, I mean, those are all be separate sentences. They don't all need to go in one where you're making an argument in the paragraph about why it's not a valid identification. You can argue that later in your brief, so you'll just need to fix that.

Paragraphs 117 and 118 can go in.

119 should just be edited to read:

"At her deposition in this case, Rosa Burgos testified that she currently suffers from hereditary memory issues but stated" -- rather than "confirmed" -- that she would not have lied to the police if asked questions about a shooting and would have told the truth when under oath in giving testimony in a courtroom."

129 can go in.

130 should be edited to remove "and so could only have

seen the side of the shooter's face." That's an inference. It's not a fact. Then the last sentence should read:

"She had only four to five seconds to see the shooter's face."

131, you need to remove the portion that says:

"She told police everything happened so fast and she wasn't sure who the shooter was."

132 can go in as well as 133, 134, 135.

136, the distance from the porch to the sidewalk being greater than 50 feet away, I don't know where that comes from. I don't see any support for that.

MR. SWAMINATHAN: You're looking at paragraph 136 right now, Judge?

THE COURT: Yes.

MR. SWAMINATHAN: That is from -- if we go back to paragraph 97, paragraph 97 is where I think you said in your ruling that 97 comes in. Then in our -- if you look at page 20 --

THE COURT: Yes, I see your map but --

MR. SWAMINATHAN: The response, that's where we put in the evidence room.

THE COURT: I see your map; however, I don't know where this map comes from.

MR. SWAMINATHAN: So it's a Google map, and what we would say is we would ask the Court to take judicial notice of

the Google map and the distances contained on the map as a basis to support our fact.

THE COURT: Well, then you need -- so this isn't the appropriate way to do that, right? You're not going to just throw a Google map at me and ask me to take judicial notice, right? First of all, the other side would need to know that you would be using this map to establish what the distance is from where she was sitting to the other side of the street, right?

So if you can fix it, then you can put in the distance. If you can support it with something, then go ahead. But as it stands right now, it's not supported by anything in the record.

137 can go in.

All right. Then at docket 305, paragraphs 23 and 31 can go in, and it looks like the city wants to add additional -- an additional fact. Did you propose that fact?

MS. ROSEN: Are you looking at page 4?

THE COURT: 4, yes, at the top.

MS. ROSEN: So the city proposed that fact if the objection -- we said "overruled," but I think we meant "sustained." Yes. Sorry. I'm saying it backwards. Yes, if the Court overrules the objection, which is what the Court just did on paragraph 31, we want to add when he -- the language that begins "the city proposes the inclusion of the following

language as its own fact: When Hickey was asked" --

THE COURT: Right.

MS. ROSEN: Through the cite of Hickey.

THE COURT: Okay. So, yes. So, again, the process again is don't imbed what you want in your objection. You know, just say: Here's some additional proposed facts that we want.

But I assume that plaintiff doesn't object.

MS. GOULD: No, Your Honor, we do not object. We say if they want to add that, that's fine as an additional fact.

THE COURT: All right. So you can add that as an additional fact.

So for 35, when I look at Exhibit 13 at Bates number 55, there's this, and I think it's 1983 training material. What I'm not -- what I'm confused about is how are the parties using these at all. So are you trying to say that there were no training materials that the detectives received prior to this incident? Are you trying to say that here are the training materials that were in effect at the time of the incident? I couldn't follow.

MS. GOULD: Right. This is -- I think it's because the fact preceding this one was not included, and that fact referred to pages, I believe, 40 and 41. So what this additional fact was responding to was that the material on pages 40 and 41 was from the 1996 training manual. Then the

reference on 55 to previous materials in the 1980s, that's not a -- you know, that's not evidence of a separate training manual. That's just a reference to something in 1980.

So the manual itself was from 1996 with a reference to earlier special orders. So our position was that as an additional fact, we wanted to point out that this was a 1996 training manual without reference to another training manual before that.

THE COURT: All right. So then that puts it into context, and that makes sense. I'm not sure then what the city's objection is if they're only pointing out that this training manual was in effect in 1996 and the incident occurred prior to that date.

MS. ROSEN: Sure. The reference in the training manual to the previous special orders indicates as best as we can tell, right, that this isn't the first time this was trained, which is I think what plaintiff is intending to argue.

THE COURT: Right, but I guess you can -- you know, either there is training materials that pre-date this, right, that somebody can testify to -- and I presume somebody did -- that this was the training in effect at the time of the incident and this is what they went through. Then, you know, if the city wants to point to what was in a training manual in 1996, if that occurred prior to the incident, that's not helpful.

MS. ROSEN: No, I understand the point.

THE COURT: Okay. So I'll overrule the objection.

Then 42 is a little hard to follow in that when you read everything around that citation, during his deposition he says this wasn't directed to supplemental reports; it was for general progress reports.

So what I'm concerned about is leaving it the way it is currently I don't think tracks what was said in the deposition in the context in which the questions were asked and answered, in that he was talking about training on newly introduced general progress reports and telling people: We're introducing a way for you to keep track of what happened during your investigation. So rather than everybody keeping random notes that you kept in your pocket or threw away or they went through the wash, we're going to memorialize your notes and do it in a uniform fashion. That's why we've created a general progress report, and we expect the people to use it, and this is what the report looks like.

In reading his deposition, that's my understanding of what this particular training was for. It didn't involve supplemental reports because it was all about the GPR. So if you want, I think what you're trying to get at is that the city has not identified anything in the police department that trained detectives on what it is that they are supposed to include in their reports when they are making reports of

investigation. You can say that, and you can certainly argue that in the brief but just not this way because I don't think that this tracks. Having read his deposition, I don't think it tracks what the deposition is saying.

MS. GOULD: Okay. Thank you. I think when we were -- so these are all kind of direct citations, and from what I understand, your position is that it's just not providing the context that this was about a GPR training. So one proposed modification is that we could say the training, you know, on general progress reports that detectives received did not include training on what was supposed to be in supplemental reports. Because the citation does say or supports --

THE COURT: But I think it's different in that it would instead be two sentences that you could then ask me to draw the inference from in your brief, which is, the police department provided training to detectives on general progress reports, on the use of general progress reports, and the city or the police department did not have training on what was to be included in supplemental reports.

If that question, you know, was ever asked, I don't know. But, you know, if it was ever proved, if there was anything that was ever proffered by the city, I don't know. You could say that the record doesn't include what was provided as training on supplemental reports, but to say that they didn't do it based on questions about training for a GPR isn't

an accurate way to reflect what was asked, because GPRs are different than supplemental reports and in some ways serve a different purpose and this training really was: We're going to create a general progress report that contains the information that the detectives learn in an investigation. It's all in one place and it's maintained in the file, and anybody could go back and look at it at any time if they need to, and it is required to be part of the case file.

There are then supplemental reports, and as the investigation progresses, detectives then are required to fill out a supplemental report that adds to what would be in the GPR. There may or may not have been training on supplemental reports, right? It might be that once they rolled it out they realized: If you write a GPR and you keep investigating, where does that information go? We need to create something called a supplemental report.

There might have been training on that. There might not have been. I don't know. I didn't litigate this case. I have no idea what questions were asked other than what's in all of this. So you can go back --

MS. GOULD: We can go back to the drawing board on this one.

THE COURT: -- and figure this out, but that's where I'm coming from on that one. So I know that the city had proposed additional language on that one. Go back and just

work that issue out.

For paragraph 245, I'm going to edit it to read:

"Foster was unaware of any policy or any training about how tentative identifications were to be documented and confirmed that detectives were not trained to ask witnesses if they were 100 percent confident of their identifications," period.

"Tentative identifications would" -- I'd take out the word "only" -- "would occur if the witnesses themselves volunteered that they were not 100 percent certain."

Then the city can add the additional fact on that one, and I think that's it.

Okay. So I now need to set a briefing schedule. Okay. So when do folks want to file motions for summary judgment?

MR. SWAMINATHAN: So, Your Honor, we're not filing a motion for summary judgment. We filed previously as to, you know, a discrete issue involving Mr. Johnson. So I think it's the defendants who will be filing. I just want to state for the record -- and I think I did this last time -- my client was actually supposed to be here. He has an emergency with his son, so he wasn't able to be here. But, you know, he continues to insist that this process since fact discovery closed more than a year and a half ago, expert discovery was something like six, nine months ago, whatever it was, you know, he feels, you

know, we've got to move.

And from our perspective, there's no reason the summary judgment motions shouldn't have been -- they should have been working on those for the last year. They, you know, sent us a statement in fact in November, which was later than we thought it should have happened. But there's no reason that we shouldn't be filing summary judgment motions in a week, you know, or whatever it is. You may not grant that amount of time, but in our view, you know, it's time to move.

THE COURT: All right. Well, you don't even know what they're going to say, right?

MS. ROSEN: Judge, we would like until April 12th to file the summary judgment. We need to get the transcript and revise these particular facts, and then we also have three different summary judgments that hit on actually March 25th, April 8th, and I'm looking for the other one which is somewhere in between there. So based on all of that, we would like until April 12th to file summary judgment.

THE COURT: All right. And any Daubert motions?

MS. ROSEN: Correct.

THE COURT: So everything is on the same date?

MS. ROSEN: Correct.

THE COURT: But know this. I'm not moving these dates at all. So an act of God, whatever, figure it out. I'm not moving the dates --

MS. ROSEN: Understood.

THE COURT: -- for anything and for anyone.

All right. When do the -- when does the plaintiff want to file a response? So keep in mind you're responding to all the summary judgment motions and then any Daubert.

MR. SWAMINATHAN: Yes, we've seen the Daubert motions now in two companion cases. I assume they'll be very similar, same experts. So we'll be prepared to file our response within, say, 30 days.

THE COURT: Okay. That's fine.

Ms. Johnson?

THE CLERK: May the 13th.

MR. SWAMINATHAN: Thank you.

THE COURT: All right. And then the replies?

(Discussion off the record.)

MS. ROSEN: So plaintiff is filing their responses on May 13th, we said, right?

THE COURT: Yes.

MR. SWAMINATHAN: Could we get till June 10th?

THE COURT: All right. But again, know that I'm not moving the dates, so that's it.

All right. So then I'll strike the July 10th ruling date and set it for September 17th. So it's not that far off from the prior July ruling date.

All right. So I'll see everybody then on September

17th.

MS. ROSEN: Thank you, Judge.

MR. ENGQUIST: Thank you, Judge.

MR. SWAMINATHAN: Thanks.

MS. SANSONETTI: Thanks, Judge.

(Proceedings concluded.)

C E R T I F I C A T E

I, Patrick J. Mullen, do hereby certify that the foregoing is a complete, true, and accurate transcript of the proceedings had in the above-entitled case before the Honorable SARA L. ELLIS, one of the judges of said Court, at Chicago, Illinois, on February 29, 2024.

*/s/ Patrick J. Mullen*
Official Court Reporter
United States District Court
Northern District of Illinois
Eastern Division