**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| DEMETRIUS JOHNSON, ) | |
| ) | Case No. 20 cv 4156 |
| Plaintiff, ) | |
| ) | Judge Sara L. Ellis |
| *v.* ) | |
| ) | Magistrate Judge Heather K. McShain |
| REYNALDO GUEVARA, the ESTATE of ) | |
| ERNEST HALVERSON, DARRYL DALEY, ) | |
| WILLIAM ERICKSON, JOHN HEALY, and ) | |
| the CITY OF CHICAGO ) | |
| ) | |
| Defendants. ) | JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Dated: April 12, 2024                    Respectfully Submitted,


/s/ Josh M. Engquist
Josh M. Engquist, Atty. No. 6242849
*One of the Attorneys for the Individual
Defendants*

Josh M. Engquist
James G. Sotos
Josh M. Engquist
David A. Brueggen
Elizabeth R. Fleming
Daniel McGinnis
Special Assistant Corporation Counsel
THE SOTOS LAW FIRM, P.C.
141 W. Jackson, Suite 1240A
Chicago, IL 60604
(630) 735-3300
jengquist@jsotoslaw.com

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND .....................................................................................2

    The June 12, 1991 Shooting of Edwin Fred and Raul Ortiz .................................2

    Police Investigation the First Night ......................................................................3

        *Officer Daley's actions* ...................................................................................3

        *Lineups the first night* ....................................................................................4

    Continuing Police Investigation............................................................................5

        *The arrest and identifications of Johnson*......................................................6

        *Sgt. Healy's involvement in the investigation* ...............................................6

    Demetrius Johnson, Terrell Agee & Bryan Johns: MLDs and Best Friends ......6

    Criminal Proceedings............................................................................................7

        *Johnson's interactions with Bryan Johns after his arrest* .......................8

        *Johnson hires Gubin to represent him* ...........................................................8

        *Johnson's trial* ................................................................................................9

LEGAL STANDARD................................................................................................10

ARGUMENT .............................................................................................................11

    I.      Johnson Has Insufficient Evidence to Support his Fair Trial Due Process Claims Based on Fabrication (Count I) Against Daley, Halvorsen, Erickson and Healy................. 11

        a.    Johnson's fabrication claims based on Rosa, Ricardo, and Elba Burgos fail because there is no evidence that their identifications were false or knowingly manufactured.................................................................................... 11

        b.    Defendants Erickson, Healy and Daley were not involved with the witnesses in the identification of Johnson..................................................................... 13

# TABLE OF CONTENTS
## -Continued-

PAGE

    c.  Johnson's fabrication claims based on police reports documenting identification procedures fail because there is no evidence the reports were fabricated or falsified, nor were they used to establish Johnson's conviction. ......................... 14

       1.  Police reports documenting identification procedures.................................... 14

       2.  June 12, 1991 four-witness lineup report....................................................... 15

II.   Johnson's Claim that Unduly Suggestive Identification Procedures Deprived him of a Fair Criminal Trial Fails as a Matter of Law (Count I) ............................................... 16

    a.  Vega instructs that prophylactic evidentiary rules, like the rule against admitting unduly suggestive identifications, are not bases for § 1983 liability................... 17

    b.  Johnson cannot demonstrate that any identification procedure deprived him of a fair criminal trial. ...................................................................................................... 17

       1.  The identification procedures were not unduly suggestive............................ 18

       2.  The witness identifications were sufficiently reliable to overcome the taint of any unduly suggestive procedures. ................................................................ 20

    c.  Alternatively, Johnson lacks evidence that Defendants acted with the requisite intent necessary to confer Section 1983 liability. ................................................... 21

    d.  Johnson cannot establish that Defendants Healy, Erickson or Daley were involved in the suggestive identification procedures.......................................................... 23

    e.  Alternatively, Defendants are entitled to qualified immunity. ............................. 24

III.  Johnson lacks sufficient evidence to support his Brady claim. .................................. 26

    a.  Johnson's claims for fabrication of evidence cannot be recast as independent Brady claims. .................................................................................................................. 27

    b.  Johnson lacks sufficient evidence to demonstrate that Daley, Halvorsen or Healy were aware of the June 13 six-witness lineup report. ........................................... 28

    c.  Erickson retired before Johnson's criminal trial and there is no evidence that he was involved in producing documents to the State's Attorney's Office. ............. 29

# TABLE OF CONTENTS
## -Continued-

**PAGE**

      d.   Johnson was aware of all the information in the June 13 six-witness lineup report and advised his attorney of that information before his criminal trial. ................. 31

      e.   There is no Brady claim based upon the alleged suppression of generic non-descript evidence, "street files," or notes." ........................................................... 31

IV.    Johnson's Unlawful Detention (Count II) and Malicious Prosecution (Count IV) Claims Fail Because There was Probable Cause to Arrest Based Upon Three Identifications ............................................................................................................ 33

      a.   Erickson, Daley and Healy were not personally involved in gathering any evidence against Johnson or seeking charges. ...................................................... 33

      b.   The existence of probable cause defeats Johnson's claims. ................................ 34

      c.   Alternatively, the presence of arguable probable cause entitles Defendants to qualified immunity on the federal unlawful detention claim. .............................. 35

V.    Johnson's Supervisory Liability Claim Against Defendant Healy Fails ................... 36

VI.    Defendants are Entitled to Summary Judgment on Johnson's Failure to Intervene Claim (Count III) ........................................................................................................ 37

      a.   There cannot be failure to intervene liability without an underlying constitutional tort. ..................................................................................................................... 37

      b.   Johnson lacks evidence that Halvorsen, Daley, Erickson and Healy had a realistic opportunity to intervene in any alleged constitutional violation. ........................ 38

      c.   Failure to intervene is not cognizable as a federal tort because it violates Section 1983's prohibition against vicarious liability. ..................................................... 39

VII.    Halvorsen, Erickson, Daley and Healy are Entitled to Judgment on Johnson's IIED Claim (Count VII) Because They Did Not Commit any Extreme and Outrageous Acts that Caused Emotional Distress ................................................................................. 39

VIII.    There is no Evidence to Support Johnson's § 1983 (Count IV) and state law (Count VI) Conspiracy Claims ............................................................................................... 40

      a.   There is no evidence of an agreement to support the conspiracy claims. ............. 40

iv

**TABLE OF CONTENTS**
**-Continued-**

**PAGE**

      b.  Alternatively, Defendants are entitled to qualified immunity. ............................ 41

IX.    Johnson Cannot State an Independent Claim for Willful and Wanton Conduct (Count VIII) Under Illinois State Law .................................................................................... 42

CONCLUSION ......................................................................................................................... 42

v

## TABLE OF AUTHORITIES

**CASES**                                                                                           **PAGE**

*Accord McDonald v. Village of Winnetka,* 371 F.3d 992, 1001 (7th Cir. 2004) ........................ 10

*Alexander v. City of South Bend,* 433 F.3d 550, 555, 556 (7th Cir. 2006) .............................17,18

*Allin v. City of Springfield,* 845 F. 3d 858, 862 (7th Cir. 2016) ................................... 24

*Alvarado v. Hudak,* 2015 WL 4978683, *3 (N.D. Ill. 2015) ......................................... 28

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) ....................................... 10

*Archie v. City of Racine,* 847 F.2d 1211, 1219 (7th Cir. 1988) ................................... 22

*Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) ................................................... 24

*Ashcroft v. Iqbal,* 556 U.S. 662, 676–77 (2009) ................................................. 39

*Avery v. City of Milwaukee,* 847 F.3d 433, 443 (7th Cir. 2017) ................................... 31

*Beaman v. Freesmeyer,* 776 F.3d 500, 510 (7th Cir. 2015) ......................................... 40

*Blackmon v. City of Chicago,* No. 19 CV 767, 2023 WL 7160639, at *9, *14
(N.D. Ill. Oct. 31, 2023) .................................................................... 22, 35

*Blackmon,* 2023 WL 7160639, at *14, *8 ......................................................... 34

*Bolden v. City of Chicago,* No. 17 CV 417, 2019 WL 3766104, at *11
(N.D. Ill. Aug. 9, 2019) ..................................................................... 32

*Boss v. Pierce,* 263 F.3d 734, 741 (7th Cir. 2001) ............................................... 31

*Boyd,* 225 F. Supp. 3d at 720 ................................................................... 28

*Brady v. Maryland,* 373 U.S. 83 (1963) ................................... 26, 27, 28, 30, 31, 32, 33

*Byrd v. Brishke,* 466 F.2d 6 (7th Cir. 1972) .................................................... 39

*Cairel,* 821 F.3d at 835 ....................................................................... 35

*Carmona v. City of Chicago,* No. 15 C 462, 2019 WL 4166856, at *9
(N.D. Ill. Sept. 3, 2019) ................................................................... 36, 37

## TABLE OF AUTHORITIES
### -Continued-

**CASES**                                                                                          **PAGE**

*Carvajal v. Dominguez,* 542 F.3d 561, 566–67 (7th Cir. 2008) ..............................................26, 28

*Celafu v. Village of Elk Grove,* 211 F.3d 416, 423 (7th Cir. 2000) ...............................................41

*Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir. 2001) ...............................................36, 37

*Colbert v. City of Chicago,* 851 F.3d 649, 657, 658 (7th Cir. 2017) .....................................13, 24

*Coleman v. City of Peoria,* 925 F.3d 336, 344, 345, 347, 348, 350, 351
(7th Cir. 2019).......................................................................... 11, 15, 20, 22, 26, 34, 35

*Cooney v. Casaday,* 746 F.Supp.2d 973, 977-78 (N.D. Ill. 2010)...............................................40

*Cooney v. Casady,* 735 F.3d 514, 519 (7th Cir. 2013) ................................................................41

*Daniels v. Williams,* 474 U.S. 327, 328 (1986) ...........................................................................22

*District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018)........................................................25

*Dorsey v. Morgan Stanley,* 507 F.3d 624, 627 (7th Cir. 2007) ...................................................29

*Doxtator v. O'Brien,* 39 F.4th 852, 864–65 (7th Cir. 2022). ......................................................38

*Drager v. Vill. of Bellwood,* 969 F. Supp. 2d 971, 985 (N.D. Ill. 2013)......................................41

*Estate of Davis v. Ortiz,* 987 F.3d 635, 638 (7th Cir. 2021) .......................................................25

*Ezell v. City of Chicago,* No. 18 C 1049, 2024 WL 278829, at *23.............................................17

*Fields v. Wharrie,* 740 F.3d 1107, 1110 (7th Cir. 2014) ("Fields II")..........................................11

*Gaddis v. DeMattei,* 30 F.4th 625,*13, 630 (7th Cir. 2022)..................................................24, 34

*Garcia v. Posewitz,* 79 F. 4th 874, 880 (7th Cir. 2023) ..............................................................35

*Gill v. City of Milwaukee,* 850 F.3d 335, 340, 341, 344 (7th Cir. 2017) .........................23-24, 36

*Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010) ....................................11

*Grayson v. City of Aurora,* 157 F. Supp. 3d 725, 740 (N.D. Ill. 2016) .......................................12

## TABLE OF AUTHORITIES
### -Continued-

**CASES**                                                                                          **PAGE**

*Green v. Newport,* 868 F.3d 629, 633 (7th Cir. 2017) ................................................................. 24

*Gregory –Bey,* 332 F.3d at 1045 ................................................................................................. 20

*Grieveson v. Anderson,* 538 F.3d 763, 776 (7th Cir. 2008) ................................. 13, 16, 29, 32, 33

*Haliw v. City of South Elgin,* 2020 WL 1304697, *4 (N.D. Ill. March 3, 2020) ........................ 41

*Harper v. Albert,* 400 F.3d 1052, 1064 (7th Cir. 2005) ................................................................ 37

*Harris v. Kuba,* 486 F. 3d 1010, 1016-1017 (7th Cir. 2007) ........................................................ 28

*Harris,* 281 F.3d at 670–71 ........................................................................................................... 25

*Hessel v. O'Hearn,* 977 F.2d 299, 305 (7th Cir. 1992) 24 ........................................................... 24

*Hill v. City of Chicago,* 2009 WL 174994, * 4, *9 (N.D. Ill. 2009) ..................................... 32, 41

*Hill v. Cook County,* 463 F. Supp. 3d 820, 845 (N.D. Ill. May 31, 2020) .................................. 33

*Holloway v. City of Milwaukee,* 43 F.4th 760, 766 (7th Cir. 2022) ............................................ 17

*Humphrey v. City of Anderson,* 19-cv-00764-JRS-TAB, 2021 WL 4477806, at *7 (C.D. Ill. Sept. 30, 2021) ................................................................................................................................. 12-13

*Humphrey v. Staszak,* 148 F.3d 719, 725 (7th Cir. 1998) ............................................................ 36

*Jackson v. City of Cleveland,* 925 F.3d 793, 819-20 (6th Cir. 2019) .......................................... 41

*Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors,* 2012 IL 112479, ¶ 19 .............. 42

*Johnson v. Advoc. Health & Hosps. Corp.,* 892 F.3d 887, 894 (7th Cir. 2018) ................... 29, 31

*Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir.2003) ........................................ 29

*Kidwell v. Eisenhauer,* 679 F.3d 957, 964 (7th Cir. 2012) .......................................................... 10

*Krywin v. Chicago Transit Auth.,* 238 Ill. 2d 215, 235 (2010) .................................................... 42

*Lee,* 750 F.3d at 691 ..................................................................................................................... 18

## TABLE OF AUTHORITIES
### -Continued-

**CASES**                                                               **PAGE**

*Manson v. Brathwaite,* 432 U.S. 98, 116 (1977) ................................................... 19, 22

*Manuel v. City of Joliet,* 580 U.S. 357, 368 (2017) ......................................... 34

*McDonough v. Smith,* No. 15-CV-1505 (MAD/DJS), 2022 WL 3279348, at *24 (N.D.N.Y. Aug. 11, 2022) ........................................................................................................ 13

*McGowan v. Miller,* 109 F.3d 1168, 1173 (7th Cir. 1997) ......................................... 18

*Molina ex rel. Molina v. Cooper,* 325 F.3d 963, 974 (7th Cir. 2003) .......................... 24

*Monell v. N.Y. City Dep't of Soc. Servs.,* 436 U.S. 658 (1978) ................................ 39

*Moran v. Calumet City,* 54 F.4th 483, 493, 498, 499-500 (7th Cir. 2022) .... 11, 12, 22, 27, 30, 35

*Mullenix v. Luna,* 136 S. Ct. 305, 308 (2015) ......................................................... 24

*Munson v. Gaetz,* 673 F.3d 630, 637 (7th Cir. 2012) ................................................. 23

*Mustafa v. City of Chicago,* 442 F.3d 544, 547 (7th Cir. 2006) ................................ 34

*Mwangangi v. Nielsen,* 48 F.4th 816, 834 (7th Cir. 2022) ......................................... 39

*Myvett v. Heerdt,* 2015 WL 12745087, *6 (N.D. Ill. 2015) ......................................... 27

*Neil v. Biggers,* 409 U.S. 188, 199-200 (1972) .................................................. 20, 22, 26

*Oliva v. City of Chicago,* No. 21-cv-06001, 2023 WL 2631575, at *6 (N.D. Ill. Mar. 24, 2023) ................................................................................................ 40

*Patrick v. City of Chicago,* 974 F.3d 824, 835 (7th Cir. 2020) ................................ 15

*Patrick,* 103 F. Supp. 3d at 915 ................................................................................ 27

*People v. Kelley,* 304 Ill. App. 3d 628, 638 (1999) ................................................. 25

*People v. Ortiz,* 2017 IL App (1st) 142559, ¶ 25 ..................................................... 25

*Perry v. New Hampshire,* 132 S. Ct. 716, 724 (2012) ................................................. 18

**TABLE OF AUTHORITIES**
**-Continued-**

**CASES**                                              **PAGE**

*Petty v. City of Chicago,* 754 F.3d 416, 423, 424 (7th Cir. 2014) ........................................15, 26

*Phillips v. Allen,* 668 F.3d 912, 915, 917 (7th Cir. 2012) .....................................................22, 35

*Phillips v. City of Chicago,* 2015 WL 5675529, *5-6 (N.D. Ill. 2015) ......................................27

*Rasho v. Elyea,* 856 F.3d 469, 478 (7th Cir. 2017) ............................................................ 13, 30

*Roberts v. Broski,* 186 F.3d 990, 995 (7th Cir. 1999) ................................................................ 11

*Rosado v. Gonzalez,* 832 F.3d 714, 718 (7th Cir. 2016) ............................................................ 37

*Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) ................................................ 13, 36

*Saunders-El,* 778 F.3d at 562 .................................................................................................... 28

*Serrano v. Guevara,* No. 17 CV 2869, 2020 WL 3000284, at *19 (N.D. Ill. June 4, 2020) ........ 28

*Siegel v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir.2010) .......................................................... 29

*Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008) .................................................................. 40

*Spiegel v. Cortese,* 196 F.3d 717, 723 (7th Cir. 1999), as amended (Jan. 7, 2000) ...................... 35

*Swearingen–El v. Cook County Sheriff's Dept.,* 602 F.3d 852, 863, 864(7th Cir. 2010) ....... 33, 39

*Swetlik v. Crawford,* 738 F.3d 818, 829 (7th Cir. 2013) ........................................................... 10

*Thayer v. Chiczewski,* 705 F.3d 237, 246 (7th Cir. 2012) .......................................................... 34

*Thompson v. Clark,* 142 S. Ct. 1332, 1137-38 & n.2 (2022) .................................................. 33, 34

*Tun v. Whitticker,* 398 F.3d 899, 902, 903 (7th Cir. 2005) .................................................. 21-22

*Turner v. Hirschbach Motor Lines,* 854 F.3d 926, 930 (7th Cir. 2017) ...................................... 40

*U.S. ex rel. Kosik v. Napoli,* 814 F.2d 1151 (7th Cir. 1987) ...................................................... 21

*U.S. v. Goodman,* 797 F.2d 468, 471 (7th Cir. 1986) ................................................................ 21

x

**TABLE OF AUTHORITIES**
**-Continued-**

<u>**CASES**</u> <u>**PAGE**</u>

*U.S. v. Harris,* 281 F.3d 667, 670 (7th Cir. 2002) ........................................................ 25

*U.S. v. Johnson,* 745 F.3d 227, 230 (7th Cir. 2014) ..................................................... 25

*U.S. v. Jones,* 454 F.3d 642, 649 (7th Cir. 2006) .......................................................... 18

*U.S. v. Kimoto,* 588 F.3d 464, 492 (7th Cir. 2009) ....................................................... 27

*U.S. v. McPartlin,* 595 F.2d 1321, 1346, n. 32 (7th Cir. 1979) ..................................... 32

*U.S. v. Newman,* 144 F.3d 531, 535 (7th Cir. 1998) ...................................................... 20

*U.S. v. Parks,* 100 F.3d 1300, 1307 (7th Cir.1996) ....................................................... 27

*U.S. v. Warren,* 454 F.3d 752, 759 (7th Cir. 2006) ....................................................... 32

*Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996) ....................................... 13, 16, 23, 29, 32, 33

*Vaughn v. Chapman,* 662 F. App'x 464, 467 (7th Cir. 2016) ....................................... 34

*Vega v. Tekoh,* 597 U.S. 134, 150 (2022) ...................................................................... 17

*Wade v. Collier,* 783 F.3d 1081, 1085, 1087 (7th Cir. 2015) ................................... 33, 34

*Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994) .................... 11

*White v. Pauly,* 137 S. Ct. 548, 551 (2017) ................................................................... 24

*Whitlock v. Brueggemann,* 682 F.3d 567, 580 (7th Cir. 2012) ...................................... 11

*Williams v. Martinez,* No. 22-CV-06602, 2023 WL 6141494, at *4 (N.D. Ill. Sept. 20, 2023) ... 34

*Young v. City of Chicago,* 987 F.3d 641, 644 (7th Cir. 2021) ....................................... 34

*Ziarko v. Soo Line R. Co.,* 161 Ill. 2d 267, 274 (1994) ................................................. 42

## TABLE OF AUTHORITIES
### -Continued-

**<u>STATUTES</u>**                                                          **<u>PAGE</u>**

42 U.S.C. § 1983 ................................................................................................ passim

42 U.S.C. § 1985 ....................................................................................................41

Fed. R. Civ. P. 56(a) ..............................................................................................10

**<u>OTHER AUTHORITIES</u>**                                              **<u>PAGE</u>**

7th Circuit Pattern Jury Instruction 7.14 ...............................................................15

Local Rule 56.1 .........................................................................................................2

## INTRODUCTION

On the evening of June 12, 1991, Edwin Fred and Raul Ortiz were shot on the sidewalk of North Avenue just West of Claremont Avenue. Fred died as a result of his wounds. Police investigated and interviewed witnesses. The police investigation has two important periods, the first night when a suspect was taken into custody and lineups were run, and the continuing investigation that resulted in the identification of Plaintiff Demetrius Johnson.

Defendant Darryl Daley was an officer who on the first night arrested Bryan Johns, who he believed was the shooter, and then provided detectives with a photograph of Johnson later in the investigation. Defendants Reynaldo Guevara and William Erickson ran lineups the first night of the investigation and Erickson was not further involved before he retired from CPD about a month and a half later. About two weeks after the shooting, Defendant Ernest Halvorsen began assisting Guevara in the continuing investigation. Johnson was identified in a photo as the shooter and was brought in and identified by three witnesses on July 22, 1991. Johnson was charged and convicted of the crime.

Defendant John Healy was a sergeant in Area Five whose only connection to the case was signing several detective reports two days after Johnson was arrested and charged.

Initially, there is *zero* evidence that Defendants Healy and Daley engaged in any of the misconduct alleged in Johnson's complaint, and therefore, they are entitled to summary judgment on all counts. Johnson's specific allegations against Halvorsen and Erickson fare no better. In Count I, he contends his fair trial rights were violated because they fabricated identifications and police reports, suggested to witnesses who should be identified, and withheld *Brady* evidence. But the three witnesses who identified Johnson have not recanted and confirm that their trial testimony was true, there is no evidence of any suggestion of who to identify, and

Johnson lacks proof that evidence was suppressed or that any of these Defendants were involved with the allegedly suppressed evidence.

Johnson further contends in Counts II and VI that he was unlawfully detained and maliciously prosecuted. However, he was identified by three witnesses in lineups, which provided ample probable cause to arrest. Johnson also alleges derivative claims of failure to intervene and conspiracy (Counts III, IV, and IX), but cannot show that his rights were violated or that the Defendants had the opportunity to intervene or came to an agreement to harm Johnson. Finally, in Counts VII and VIII, Johnson contends that Defendants inflicted emotional distress on him and were willful and wanton toward his rights. But willful and wanton is not a valid claim under Illinois law and these claims are based on the same underlying conduct as his failing Counts I and II, and they also fail.

Accordingly, Defendants Daley, Halvorsen, Erickson and Healy[1] are entitled to summary judgment on all of Johnson's claims. In further support of this memorandum of law, these Defendants rely on the Rule 56.1 Joint Statement of Undisputed Material Facts ("JSOF").

## FACTUAL BACKGROUND

### The June 12, 1991 Shooting of Edwin Fred and Raul Ortiz

On the Wednesday evening of June 12, 1991, a gunman opened fire near the intersection of Claremont and North Avenue in Chicago where Edwin Fred, Raul Ortiz, and Forrest Garnett were standing. (JSOF ¶ 6.) The gunman shot at the three with a handgun, striking Fred with numerous bullets and hitting Ortiz once in the right shoulder. After the shooting, the gunman fled

---

[1] Defendants Halvorsen, Erickson and Healy are deceased, and Geri Yanow has been appointed their special representative for this case, but for clarity Defendants will refer to the deceased defendants by their names rather than the appointed special representative.

south on Claremont. (JSOF ¶ 7.) Fred succumbed to his wounds but Ortiz survived, was treated at the hospital, and returned to the scene that night. (JSOF ¶ 8.)

**Police Investigation the First night**

Chicago police officers responded to the scene and identified four initial witnesses – Aby Gonzalez, Stanley Jewel, Fina Martinez, and Omar Ortiz. (JSOF ¶ 9.) Defendant Guevara was assigned to investigate the case and went to the scene where he interviewed Raul Ortiz (victim), Forrest Garnett, and Aby Gonzalez. (JSOF ¶ 10.) Ortiz stated that while exiting his building— 2333 W. North Avenue— he was shot and then observed a person running southbound on Claremont. (JSOF ¶ 10.) Garnett advised he saw a Black male shoot Fred. (JSOF ¶ 10.) Gonzalez relayed that while on the southeast corner of North and Claremont Avenues, he observed a Black male running towards him turn west and shoot at Fred and Ortiz before turning again and running southbound on Claremont and then westbound on LeMoyne. (JSOF ¶ 10.)

_Officer Daley's Actions_

Officer Darryl Daley also responded to the shooting after hearing initial flash messages indicating that the shooter was a "male Black," with the name "Little D" or "Bryan Johnson." (JSOF ¶ 11.) Daley knew a Black man named Bryan Johns, who matched the description, went by the nickname "Little D," and was a member of the Maniac Latin Disciples street gang ("Disciples" or "MLD"), so Daley immediately suspected Johns. (JSOF ¶ 11.) Daley drove to a location where he had seen Johns earlier and saw him exiting a van with two Hispanic males at which point he detained Johns. (JSOF ¶ 12.) Daley took Johns to Area 5 where he was placed in a lineup, but Daley was not involved in the line-up process. (JSOF ¶ 13.)

*Lineups the First Night*

There is a lineup report that has Erickson's name as a reporting officer that indicates that Defendant Detectives Erickson and Guevara conducted a lineup on June 12, 1991, at 11:30 p.m., approximately three hours after the shooting, and listed the "submitted" date as June 13, 1991 ("June 13 six-witness lineup report"). Johns and four other individuals were listed as in the lineup, and the report indicated the lineup was viewed by six individuals: Aby Gonzalez, Forrest Garnett, Fina Montanez, Rosaline Morales, Angel Cordova, and Rosa Burgos. (JSOF ¶¶ 14, 16.) The lineup report states that one eyewitness, Aby Gonzalez, positively identified Johns as the perpetrator of the Fred murder; Cordova and Morales stated the offender was not in the lineup; and Garnett, Rosa Burgos, and Montanez were unable to make an identification. (JSOF ¶ 14.)

There is a separate lineup report authored by Detective Guevara that indicates that he and Erickson conducted a lineup on the night of the shooting comprised of Johns and four others on June 12, 1991 at 11 p.m. with the same "submitted" date ("June 12 four-witness lineup report"). (JSOF ¶ 23.) According to the report, four witnesses viewed a lineup: Gonzalez, Garnett, Rosa Burgos, and Montanez. (JSOF ¶ 23.) That report does not identify any other police officers as being present for the lineup viewings. (JSOF ¶ 23.) The lineup report states that "[a]fter four witnesses viewing this line-up the results of it was negative." (JSOF ¶ 24.)

Detective Erickson's name does not appear on any police records other than the June 12 and June 13 lineup reports and there is no evidence that Erickson was involved in the investigation of Fred's murder after the first night. (JSOF ¶¶ 18, 21.) Detective Erickson retired from the Chicago Police Department (CPD) on August 2, 1991, less than two months after the shooting. (JSOF ¶ 22.)

4

At his civil deposition in this case, Aby Gonzalez testified that he was in the vicinity of Edwin Fred's shooting but did not see the shooter. (JSOF ¶ 26.) Gonzalez denied that he identified someone as the offender on the night of the shooting and does not recall participating in a lineup related to the shooting or going to Area 5. (JSOF ¶ 15.)

Officer Daley was informed that Johns was not identified in the lineup and that he would be released. (JSOF ¶ 28.) Johns was released from custody that same night "[b]ecause the results of the line-up were negative." (JSOF ¶ 29.) There is no evidence that Defendant Halvorsen was involved in the Edwin Fred homicide investigation on the first night, June 12-13, or at any time before June 29, 1991. (JSOF ¶ 30.)

**Continuing Police Investigation**

Elba Burgos lived on Claremont and saw a man running past her house from the scene of the murder with a gun in his hand immediately after the shooting. (JSOF ¶¶ 94-97.) On July 11, 1991, Defendants Guevara and Halvorsen showed her a photo array that included a man named Darrell Johnson, and she indicated that the male she saw running resembled the photo of Darrell Johnson ("Darrell"), but a little younger. (JSOF ¶¶ 31, 99.) Guevara and Halvorsen knew that Darrell had a younger brother named Demetrius Johnson ("Johnson") and contacted Officer Daley to obtain Johnson's photo. (JSOF ¶ 32.) On July 15, Daley provided a single photo depicting Johnson with two other individuals. (JSOF ¶ 32.) This was Daley's last involvement in the investigation; he had no contact with Johnson regarding the investigation or with any witness that identified Johnson. (JSOF ¶ 32.) Later that day, Halvorsen and Guevara showed the single three-person photo received from Daley to Elba Burgos, who positively identified Johnson from the three persons in the photo as the person she saw running with a gun from the scene of the shooting. (JSOF ¶ 33.) Ricardo Burgos testified at the criminal trial that he also viewed this three-person polaroid photo and identified Plaintiff. (JSOF ¶ 92.)

*The Arrest and identifications of Johnson*

On July 22, 1991, Johnson was arrested by Guevara and Halvorsen for the murder based on Elba Burgos's photo identification. (JSOF ¶ 34.) Guevara then placed Johnson in a live lineup and at 8:30 p.m., Elba, Rosa, and Ricardo Burgos all viewed a lineup conducted by Halvorsen and Guevara. (JSOF ¶ 35.) Elba identified Johnson as the person "she saw run past her home, with gun in his hand, immediately after hearing gunshots being fired at the corner of North Ave. & Claremont." (JSOF ¶ 35.) Rosa identified Johnson as the person "she saw shot Edwin Fred." Ricardo identified Johnson as the person "he saw shoot Edwin Fred." (JSOF ¶ 35.)

Following the positive lineups, felony review ASA Buckley was contacted and responded to Area 5. (JSOF ¶ 36.) After ASA Buckley reviewed the evidence, and interviewed the witnesses and Johnson, he approved felony charges against him. (JSOF ¶¶ 35-36.) Johnson told ASA Buckley that he knew of the murder from his friend, Bryan Johns. (JSOF ¶ 37.) Johnson also stated that he was a member of the Disciples and that he did not recall his whereabouts on the night of the murder. (JSOF ¶ 37.)

*Sgt. Healy's Involvement in the Investigation*

Sgt. Healy's name appears on four CPD documents (the June 12 four-witness lineup report, June 20 supplementary report, July 22 supplementary report, and July 23 supplementary report), all signed and dated by Sgt. Healy on July 24, 1991, as the approving sergeant. (JSOF ¶ 38.) There is no evidence that Sgt. Healy had any other involvement in the investigation. (JSOF ¶ 38.) There is no evidence that Sgt. Healy was at Area 5 on any date other than July 24, 1991. (JSOF ¶ 39.)

**Demetrius Johnson, Terrell Agee & Bryan Johns: MLDs and Best Friends.**

In 1991, Johnson was associated with the MLDs because he grew up and hung out on the same block with the people in the gang. (JSOF ¶¶ 40, 49.) His best friends, Terrell Agee and

Bryan Johns, and Johnson's older brother Darrell, were fellow MLDs. (JSOF ¶¶ 41, 50.)
Johnson, Agee and Johns, would often go "hunting," which meant "looking for somebody to beat
up." (JSOF ¶ 42.) They specifically "would go …catch a King[2]… and just beat them up but then
let them know who it was that beat him up." (JSOF ¶ 42.) In response to these MLD attacks, the
Kings tried to "put a case on" them by lying to the police to get them off the street. (JSOF ¶ 43.)

Johnson, Agee, and Johns recognized the Chicago Police Officers who patrolled their
neighborhood because they had many encounters with them and specifically Officer Daley.
(JSOF ¶ 44.) Daley was known in the neighborhood as a fair officer. (JSOF ¶ 44.)

**Criminal Proceedings**

On August 19, 1991, Demetrius Johnson was indicted for first-degree murder, attempted
murder, aggravated battery and aggravated discharge of a firearm committed against Edwin Fred,
Raul Ortiz, Forrest Garnett, and Rosa Burgos. (JSOF ¶¶ 55-56.) Johnson was initially
represented by Cook County Assistant Public Defender ("APD") Jack Carey. (JSOF ¶ 57.)[3] The
prosecuting ASA requested documents from CPD on September 19, 1991, and APD Carey
issued a subpoena to CPD requesting documents by August 13, 1991. (JSOF ¶ 58.) APD Carey
met with Johnson during the representation (JSOF ¶ 59), and an undated note from a meeting
reflect the following:



Records do show that on August 28, 1991, APD Carey visited Bryan Johns in jail. (JSOF ¶ 60.)

---

[2] Referring to a member of the Latin Kings gang ("Kings"). (JSOF ¶ 38.)
[3] Johnson's assigned APD, Jack Carey, passed away in January 2002. (JSOF ¶ 82.)

*Johnson's interactions with Bryan Johns after his arrest*

Johnson was detained at Cook County Jail (CCJ) before his trial, when Johns was also in custody there. (JSOF ¶ 48.) Johnson knew Johns and considered him an associate from the neighborhood. (JSOF ¶ 48.) Johns told Johnson he knew about Johnson's "situation" and that Johns had been "pointed out in the lineup" the day the crime happened, prior to Johnson's criminal trial. (JSOF ¶ 51.) Johnson testified in his deposition that he asked Johns "did he do it," and Johns said "yes." (JSOF ¶ 52.) Fellow MLD Terrell Agee estimated that about two months after the lineup—he and Johns were out "hunting" and discussed the lineup. (JSOF ¶ 46.) Johns told Agee that he was picked out of the lineup, but he did not tell him how he found out. (JSOF ¶ 46.)

*Johnson hires Gubin to represent him*

In February 1992, Johnson hired Debra Gubin to represent him. (JSOF ¶ 63.) Johnson told Gubin that according to Johns, Johns had been identified in a lineup on the night Fred was shot and had committed the murder. (JSOF ¶ 53.) When Gubin took over the case, APD Carey tendered to Gubin all police reports, photos and "anything else that [was] not propriety to the public defender's office," and discussed the case with her. (JSOF ¶¶ 64, 66.) After she reviewed the file and met with APD Carey, Gubin filed a Motion for Additional Discovery on February 18, 1992. (JSOF ¶ 65.) Gubin explained that she filed the motion to obtain "[t]he photo of the line-up taken 6/13/1991" because she "didn't have a copy of the photo lineup of June 13th. And I knew that there was a lineup, and I wanted a copy of it." (JSOF ¶ 67.)

Pursuant to CPD policies in place at the time, an evidence technician or an authorized member of the Detective Division was required to take photographs of any formal lineup *which resulted in the identification of a suspect*. (JSOF ¶ 68.) In 1991, Gubin was aware of the CPD

policies regarding lineup identifications, specifically that a photograph would only have been taken if the lineup resulted in a positive identification. (JSOF ¶¶ 67-68.)

Gubin's defense theory was that Johns was the real killer, but she did not attempt to interview him because she did not know if he had an attorney and she thought he might not talk to her. (JSOF ¶¶ 70, 71.) She moved to suppress the identification of Johnson but withdrew it because, if it failed, her planned argument at trial that the identification was not reliable would have been difficult to make and she thought it would be better to present her theory about the unreliable identifications all at once. (JSOF ¶ 69, 72.)

*Johnson's Trial*

Sgt. Healy, Detective Erickson and Detective Halvorsen did not testify at Johnson's criminal pre-trial proceedings or trial. (JSOF ¶ 84.) Johnson's criminal trial began on November 18, 1992, and no police officer witnesses were called by the State. (JSOF ¶¶ 85, 86.)

Ricardo Burgos testified that he saw a Black guy wearing a T-shirt and gray pants walking North down Claremont with a gun in his hand from about 60 feet away. (JSOF ¶¶ 88-90.) He then identified Johnson as the person he saw fire the gun that day. (JSOF ¶ 91.)

Elba Burgos testified that she was in front of her house on Claremont, heard gunshots and saw a young Black man—who she identified in court as Johnson —about 25 feet from her running down Claremont with a gun. (JSOF ¶¶ 94-98.) She further described her interactions with the police, viewing the photo array including Darrell, viewing the photo depicting Johnson and two other men, and identifying Johnson in a lineup on July 22 as the man she saw carrying a gun on Claremont. (JSOF ¶¶ 99-102.)

Rosa Burgos testified that she was about 10 feet from the shooter, who was short, young and Black, when she exited her building with Raul Ortiz. (JSOF ¶ 103.) Rosa identified Johnson

9

in court as the person who shot Raul Ortiz. (JSOF ¶ 104.) Rosa testified she knew "Little D" as Bryan Johns before the shooting and that "Little D" did not shoot Ortiz. (JSOF ¶ 106.) Rosa also testified about her interactions with the police and the identifications she participated in. (JSOF ¶¶ 105, 107-108.)

Detective Guevara and Officer Daley were called by the defense at Johnson's trial. (JSOF ¶ 109.) Daley testified about his arrest of Johns and that he was informed that Johns was not identified in a lineup the night of the shooting. (JSOF ¶ 110.) Guevara testified that there was a lineup conducted on June 12, 1991, in which no one was identified. (JSOF ¶¶ 111, 112.) The defense argued that Johnson was misidentified weeks after the shooting during suggestive police identification procedures and that Johnson resembled Johns, which may have contributed to the misidentification. (JSOF ¶ 113.) Johnson was convicted and sentenced to 25 years in prison. He was paroled in October 2004 after spending 12 years in custody. (JSOF ¶ 116.) In 2019, his conviction was vacated and prosecutors then dropped all charges. (JSOF ¶¶ 120-121.)

## LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). While the court must construe the facts in the light most favorable to the non-moving party and draw all reasonable inferences in his favor (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)), "that duty does not extend to drawing inferences that are supported only by speculation or conjecture," *Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013). *Accord McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). In the end,

summary judgment is the "put up or shut up moment in litigation." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). As to any issue on which a Plaintiff bears the ultimate burden of proof, he is obligated to identify evidence that would permit a jury to find in his favor. *Roberts v. Broski*, 186 F.3d 990, 995 (7th Cir. 1999) (citing *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)).

## ARGUMENT

### I. Johnson Has Insufficient Evidence to Support his Fair Trial Due Process Claims Based on Fabrication (Count I) Against Daley, Halvorsen, Erickson and Healy

Johnson alleges in Count I that Defendants violated his due process rights by fabricating police reports and the three witness identifications of him. (JSOF ¶ 126.) But as explained below, Johnson cannot meet his burden and Defendants are entitled to summary judgment on this claim.

To prevail on his evidence fabrication claim, Johnson must establish that Defendants "'manufactured false evidence against' him, which was 'later used to deprive him of his liberty in some way.'" *Moran v. Calumet City*, 54 F.4th 483, 498 (7th Cir. 2022) (cleaned up) (quoting *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012)). Fabricated evidence is evidence "that is made up; it is invariably false." *Fields v. Wharrie*, 740 F.3d 1107, 1110 (7th Cir. 2014) ("*Fields II*"). For Johnson to succeed on his fabricated evidence claim, he must show that *each defendant knew* – "with certainty" – that the evidence was false. *Coleman v. City of Peoria*, 925 F.3d 336, 345 (7th Cir. 2019). "This is a high bar to clear," *id.* at 344, and one that Johnson cannot clear.

#### a. Johnson's fabrication claims based on Rosa, Ricardo, and Elba Burgos fail because there is no evidence that their identifications were false or knowingly manufactured.

Johnson contends that Defendants "knowingly procured false identifications of Plaintiff as the person responsible for the Fred murder from Ricardo, Rosa, and Elba Burgos, after which

11

they concealed the falsity of the identification for decades." (JSOF ¶ 122.) Johnson's fabrication

of identification claim fails against all Defendants because Johnson cannot show that Rosa's,

Ricardo's, or Elba's identifications and testimony were false or manufactured. *See Moran*, 54

F.4th at 498 (holding plaintiff must prove false evidence was used against him). At his criminal

trial, all three witnesses confirmed their identifications of Johnson. (JSOF ¶¶ 91, 98, 100-101,

104, 107.) Rosa and Ricardo Burgos were deposed in this case and testified that they told the

truth at the criminal trial. During Rosa Burgos' deposition, she confirmed that she would not

have lied to the police about what she saw and would have told the truth when under oath and

giving testimony in a courtroom. (JSOF ¶ 119.) Similarly, although Ricardo Burgos couldn't

recall testifying at the criminal trial due to suffering a serious head injury in 1996 or 1997, he

testified that he would not have lied under oath in front of a judge. (JSOF ¶ 117.) Elba Burgos

could not be located for a deposition,[4] but there is no evidence in the record that Elba Burgos'

identifications and testimony were fabricated; she has never recanted her trial testimony. (JSOF

¶¶ 98, 100-101, 118.)

The unequivocal deposition testimony of Rosa and Ricardo—that they would not have

lied about what they saw—and the absence of any evidence that Elba lied, vitiates any contention

that Defendants knowingly manufactured false testimony. *See, e.g.*, *Grayson v. City of Aurora*,

157 F. Supp. 3d 725, 740 (N.D. Ill. 2016) (rejecting fabrication claim because "the two witnesses

who testified at Grayson's criminal trial, universally stated that the Defendants did not provide

them with what to say or force them to make statements at trial that they knew to be untrue");

*Humphrey v. City of Anderson*, 19-cv-00764-JRS-TAB, 2021 WL 4477806, at *7 (C.D. Ill. Sept.

---

[4] In 2022, a woman named Ada Elba Burgos was subpoenaed and testified in this case that she had no recollection of living in at 1535 N. Claremont, of talking to police after a shooting in 1991 or of testifying at a criminal proceeding in 1992—she testified that she was not the Elba Burgos who was a witness in this case. (JSOF ¶ 122.)

30, 2021) (holding there was no fabrication claim because the witness "testified unequivocally 'No,'" when asked if officers told him "what to say"); *McDonough v. Smith*, No. 15-CV-1505 (MAD/DJS), 2022 WL 3279348, at *24 (N.D.N.Y. Aug. 11, 2022) (rejecting fabrication claim where witnesses "consistently testified . . . at two criminal trials, and during their depositions taken in this case," and "not one… has since recanted his or her testimony or even implied that it was untruthful or fabricated."). Thus, Johnson lacks evidence that Defendants manufactured false testimony from Richardo, Elba, or Rosa Burgos and summary judgment is appropriate on his fabrication claim.

> **b.  Defendants Erickson, Healy and Daley were not involved with the witnesses in the identification of Johnson.**

Also, the claim that Defendants fabricated the identification fails against Defendants Erickson, Healy and Daley because they were not involved in or present for any of those identifications.

As a prerequisite, "individual liability under § 1983…requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago.*, 851 F.3d 649, 657 (7th Cir. 2017) (cleaned up). "A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson,* 538 F.3d 763, 776 (7th Cir. 2008) (internal quotation marks omitted). "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017) (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)); *see also Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the

individual defendant caused or participated in a constitutional deprivation.") (internal quotation marks omitted).

Here, there is no evidence that Defendants Erickson, Healy and Daley interacted with Rosa, Ricardo or Elba Burgos when those witnesses identified Johnson and therefore, the detectives could not have "knowingly procured false identifications." Erickson's role was limited to performing lineups the first night and had no further involvement in the investigation (JSOF ¶ 21); Healy only signed reports two days after Johnson was arrested and charged (JSOF ¶¶ 38-39); Daley responded to the shooting, detained Johns for further investigation, and weeks later provided detectives a polaroid photo depicting Johnson and two other individuals. (JSOF ¶¶ 11-13, 32.)

Johnson has no evidence linking Defendants Erickson, Daley or Healy to any personal involvement in the alleged fabrication of the three identifications nor any evidence of contact between these Defendants and those witnesses after Johnson became a suspect. As such, Defendants Erickson, Healy and Daley are entitled to summary judgment on the claim that the identifications were fabricated.

    **c.**    **Johnson's fabrication claims based on police reports documenting identification procedures fail because there is no evidence the reports were fabricated or falsified, nor were they used to establish Johnson's conviction.**

        **1.**  **Police reports documenting identification procedures.**

Johnson claims that Defendants wrote false police reports documenting the identification procedures, and fabricated reports regarding the identifications made by Elba, Ricardo and Rosa Burgos. This aspect of Johnson's fabrication of evidence claim suffers from a fatal flaw—namely there is no evidence in the record to support a plausible inference that Rosa, Ricardo, or Elba Burgos' identifications were false, let alone that these Defendants knew with certainty that the

identifications were false. *Petty v. City of Chicago*, 754 F.3d 416, 423 (7th Cir. 2014); *see* Section I(a), *supra.* Because Johnson cannot establish that the identifications were false, it logically follows that he similarly cannot establish that Defendants falsified or fabricated police reports documenting the very same identification procedures.

### 2. June 12, 1991 four-witness lineup report.

Johnson further contends that Defendants "falsified police reports to hide a lineup on or about June 12, 1991 in which Bryan Johns was identified by Aby Gonzalez." (JSOF ¶¶ 122-123.) Specifically, Johnson claims that the lineup report Guevara prepared on June 12, 1991 ("June 12 four-witness lineup report"), stating that he and Erickson conducted a lineup on the night of the shooting with Johns as the suspect and that there was no identification, was fabricated. (JSOF ¶¶ 111-112.)

Johnson's claim against all Defendants fails because the report was not used at his trial. The very "essence of a due process evidence-fabrication claim is that the accused was ***convicted*** and imprisoned ***based on*** knowingly falsified evidence." *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020) (emphasis added); *see Coleman*, 925 F.3d at 344 ("*Using* false evidence *to convict* violates a defendant's right to a fair trial") (emphasis added); *see also* 7th Circuit Pattern Jury Instruction 7.14 (plaintiff must prove, *inter alia*, that "knowingly fabricated evidence was introduced against Plaintiff"). Here, the State did not use the June 12 four-witness lineup report at all, nor did it elicit any testimony from Guevara regarding the contents of that report. Instead, it was *introduced by Johnson* to cross-examine Defendant Guevara. (JSOF ¶¶ 111-112.) But the report itself was not introduced at trial. (JSOF ¶ 84.) As such, Johnson cannot establish that the report was used to obtain his conviction, defeating his claim.

15

Here, Johnson also cannot prevail on this theory against Defendants Halvorsen, Daley and Healy because they did not create the June 12 four-witness lineup report and there is no evidence that these Defendants were involved in or present for the lineup referenced in the June 12 four-witness lineup report, nor that they had knowledge of the identification procedure. (JSOF ¶¶ 13, 30, 38-39.) Corroborating this fact, the report itself does not state that any of the three Defendants were there. (JSOF ¶ 23) Given this, Johnson has failed to prove they were personally involved. *See Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996) (Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.) (internal quotations omitted); *see also Grieveson v. Anderson,* 538 F.3d 763, 776 (7th Cir. 2008) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions.") (citations omitted).

## II.   Johnson's Claim that Unduly Suggestive Identification Procedures Deprived him of a Fair Criminal Trial Fails as a Matter of Law (Count I)

Johnson claims that Defendants "procured supposed eyewitness identifications implicating Johnson in the crime by using unduly suggestive identification techniques during photo identifications and during live lineups." (JSOF ¶ 126; Complaint, Dkt. No. 1 at ¶ 144.) This claim fails as a matter of law under the undisputed facts for four reasons: there is 1) no cognizable unduly suggestive identification procedures claim; 2) insufficient evidence that the identifications were unnecessarily suggestive and so unreliable that they tainted his trial; 3) insufficient evidence to show that Defendants Erickson, Daley and Healy were personally involved in the identifications; 4) no evidence that Halverson knowingly suggested who any witness should identify. In addition, Defendants are entitled to qualified immunity.

### a. *Vega* instructs that prophylactic evidentiary rules, like the rule against admitting unduly suggestive identifications, are not bases for § 1983 liability.

Johnson cannot bring a § 1983 claim for unduly suggestive identification procedures because it is an evidentiary protection, not a constitutional right. The "U.S. Constitution does not mandate that photo arrays or lineups meet a certain standard of quality." *Alexander v. City of South Bend*, 433 F.3d 550, 555 (7th Cir. 2006). Recently, in *Vega v. Tekoh*, the Supreme Court held that the plaintiff had no § 1983 claim based on a violation of *Miranda* because prophylactic evidentiary principles do not equate to constitutional rights. 597 U.S. 134, 150 (2022). Shortly thereafter, in *Holloway v. City of Milwaukee*, the Seventh Circuit posited, but declined to decide, that the reasoning in *Vega* would bar an unduly suggestive identification procedures claim because the protection against such procedures "is, like *Miranda*, only a trial right." 43 F.4th 760, 766 (7th Cir. 2022). Addressing that very question, this Court determined this year in *Ezell v. City of Chicago*, that an unduly suggestive identification "claim is not cognizable in light of the Supreme Court's holding in *Vega*," finding "the Constitution does not guarantee Plaintiffs a fair lineup procedure," and dismissed the claim because "§1983 does not support constitutional claims when they arise out of alleged violations of judge-made prophylactic rules." No. 18 C 1049, 2024 WL 278829, at *23. Here, Defendants are entitled to the same relief.

### b. Johnson cannot demonstrate that any identification procedure deprived him of a fair criminal trial.

Even if there were a cognizable claim, Seventh Circuit cases issued before *Vega* set a high bar for what qualifies as an unduly suggestive identification procedure. The plaintiff must do more than "say[ ] that a witness was shown a suggestive photo array or lineup and later testified." *Alexander*, 433 F.3d at 556. Nor is it enough to show a plaintiff was later exonerated. *Id*.

When determining if an identification procedure reaches this substantial threshold, criminal courts have engaged in a two-step analysis. *See Lee*, 750 F.3d at 691. "First, [courts] determine whether the identification procedure was suggestive and unnecessary." *Id.*; *see also Perry v. New Hampshire*, 132 S. Ct. 716, 724 (2012). If so, courts must "determine under the totality of the circumstances whether the procedure was nonetheless reliable." *Lee,* 750 F.3d at 691; *see also Alexander,* 433 F.3d at 555 ("Both suggestiveness and reliability are evaluated by reference to the totality of the circumstances."). This inquiry is addressed separately from the issue of undue suggestion. *McGowan v. Miller*, 109 F.3d 1168, 1173 (7th Cir. 1997). Johnson must have sufficient evidence to establish that the identifications in this case were so egregiously suggestive that they tainted the whole trial. *Coleman*, 925 F.3d 347.

### 1. The identification procedures were not unduly suggestive.

To determine if identification procedures were unduly suggestive, courts focus on "the manner in which the witness was shown the suspect's likeness, reserving criticism for procedures that have been orchestrated to yield the identification of one particular suspect." *U.S. v. Jones*, 454 F.3d 642, 649 (7th Cir. 2006). "For the most part, suggestive procedures involve the repeated presentation of only one suspect by the police to a witness, or a lineup in which the suspect is clearly distinguishable from the other persons." *Id.* Nothing like that occurred here.

The procedures employed in this case included Halvorsen and Guevara on July 15, 1991, showing a photo depicting three people, one of whom was Johnson, to Elba Burgos on July 15, 1991 and also identified Johnson from the three people depicted as the shooter. (JSOF ¶ 33.) Ricardo Burgos testified at trial that he also viewed the single photo containing three people. (JSOF ¶ 92.) One week later, on July 22nd, Elba, Rosa and Ricardo selected Johnson from a live lineup. (JSOF ¶ 35.)

Plaintiff's contention that showing a single photo containing three people is suggestive, fails because this information was known to the finder of fact at trial. Both Elba and Ricardo testified unrebutted at trial about seeing the single three-person photo prior to their identifications of Johnson in the July 22 lineup. (JSOF ¶¶ 92, 100). In short, all the concerns were put forth before "the [finder of fact] to weigh," which removes the possibility of "a very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977) ("Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.") (citations omitted). Under the totality of the circumstances, Johnson had all the process due to him to address any concerns with the identifications; thus, summary judgment is proper because his right to a fair trial was not irreparably tainted by the introduction of the identification evidence. Moreover, there is no evidence of suggestiveness as to Rosa Burgos, who never saw the single polaroid photo depicting three people and nevertheless identified Johnson during the live lineup without there being any evidence of suggestion. (JSOF ¶¶ 35, 107.)

Johnson weakly contends that the lineups were unduly suggestive implying that the only way Ricardo Burgos, Rosa Burgos, and Elba Burgos could have picked Plaintiff out of a live lineup is if Defendants manipulated the identification process and used unduly suggestive identification procedures such as including fillers in the lineup who were a different age and height than Plaintiff and did not have distinct characteristics that Plaintiff did. But this contention, devoid of any supporting evidence, does not demonstrate a suggestive identification procedure or that the witnesses' identifications were influenced by it. Indeed, the circumstances regarding the use of the single three-person photo as well as the photo itself was introduced at Johnson's criminal trial for the finder of fact to consider. There is simply no evidence that

Halvorsen told any witness to identify Johnson nor is there any evidence that any witness selected him because he stood out in the lineup.

### 2. The witness identifications were sufficiently reliable to overcome the taint of any unduly suggestive procedures.

Even if the identification procedures could be characterized as unnecessarily suggestive, the identifications were, nonetheless, sufficiently reliable to warrant admission to the jury which satisfied due process. The Seventh Circuit has called reliability "the linchpin of the due process calculus in identification cases," *U.S. v. Newman*, 144 F.3d 531, 535 (7th Cir. 1998). In determining reliability, courts consider the five "Biggers" factors: (1) the witness' opportunity to view the suspect at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the suspect; (4) the level of certainty that the witness demonstrated at the time of the confrontation; and (5) the time elapsed between the crime and the confrontation. *Gregory –Bey,* 332 F.3d at 1045 citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). In applying these factors here, the identifications made by Rosa, Elba, and Ricardo Burgos were plainly reliable enough to dispel any contention that any suggestive procedures "were so egregious as to taint the entire trial." *Coleman*, 925 F.3d 347.

With respect to the first two factors, Rosa, Elba, and Ricardo all had an opportunity to observe and were closely focused on the offender they identified as Johnson. Rosa Burgos was about to exit her apartment building when she saw Ortiz, who was standing in front of her, being shot. (JSOF ¶ 103.) Rosa had a clear view of the offender, who was a mere 10 feet away from her, and armed with a gun. (JSOF ¶ 103.) Rosa looked at the offender's face for four seconds before running back into her apartment building. (JSOF ¶ 103.) She described the offender as "short, black and young." (JSOF ¶ 103.) Elba Burgos was sitting on her front porch when she heard gunshots, prompting her to stand up and look towards North Avenue. (JSOF ¶¶ 95-96.)

Immediately after hearing the gunshots, Elba observed a man run past her house with a gun in his hand. (JSOF ¶¶ 96, 97, 102.) She had a clear view of the man, whom she described as "young" and "black," who was only twenty-five feet away from her. (JSOF ¶ 97.) Ricardo testified truthfully at trial that he was across the street when he saw a black guy wearing a T-shirt and gray pants walking North on Claremont with a gun in his hand fire, saw him fire his gun for about forty-five seconds, and saw his face. (JSOF ¶¶ 88-91, 117.) Thus, Johnson cannot seriously dispute this factor.

As to certainty of the identifications, Elba, Ricardo, and Rosa testified under oath at trial that they accurately identified Johnson as the shooter when they viewed the July 22 lineup. (JSOF ¶¶ 91, 101, 107) And when questioned during their depositions in this matter, Rosa and Ricardo confirmed that they would have told the truth when under oath and giving testimony in a courtroom. (JSOF ¶¶ 117, 119.) Lastly, the span of time between the shooting and the pretrial identifications, here less than two months, does not cast doubt on the reliability of Rosa's, Ricardo's and Elba's identifications. *See, e.g.*, *U.S. ex rel. Kosik v. Napoli*, 814 F.2d 1151 (7th Cir. 1987) (holding that two-month gap does not by itself raise serious question about reliability of identification;) *U.S. v. Goodman,* 797 F.2d 468, 471 (7th Cir. 1986) (two months from incident and the "suggestive pretrial identification" and five months from incident to identification at trial did not under the circumstances render the identification inadmissible). Johnson cannot avoid the fact that these witnesses' opportunity to observe, degree of attention and certainty of their identifications overwhelmingly establishes their reliability.

### c. Alternatively, Johnson lacks evidence that Defendants acted with the requisite intent necessary to confer Section 1983 liability.

"The scope of substantive due process is very limited." *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005). "It is one thing to say that officials acted badly, even tortiously, but—and

this is the essential point— it is quite another to say that their actions rise to the level of a constitutional violation." *Id*. at 903. The Supreme Court has explained that due process was designed to prevent abusive governmental conduct, not negligence or inadvertence. *Daniels v. Williams,* 474 U.S. 327, 328 (1986) (Section 1983 liability under "the Due Process Clause is simply not implicated by a *negligent act* of an official causing unintended loss of or injury to life, liberty, or property."). Only where the defendant's actions rise to the level of criminal recklessness—deliberate indifference—is there a violation of the Due Process Clause. *Archie v. City of Racine*, 847 F.2d 1211, 1219 (7th Cir. 1988) (explaining criminal recklessness allows a Defendant's knowledge of the risk to be inferred and "the more lenient tort-law definition of recklessness would not adequately recognize the difference between constitutional and common law obligations"); *see also Moran*, 54 F.4th at 493 ("[F]or purposes of [§ 1983] civil liability, negligent conduct does not offend the Due Process Clause."). Under these facts, Johnson faces an insurmountable bar.

As applied here, Johnson must show—beyond suggestiveness and reliability—that Defendants knew their actions would taint the procedure and cause an unreliable identification. *See Coleman*, 925 F.3d at 347–48 (holding that "even if a court had later found [an] identification[] inadmissible under the *Brathwaite/Biggers* framework, an officer is not automatically liable" as a plaintiff must show the officers deliberately used a prohibited identification technique to obtain an unreliable identification.) (citing *Phillips v. Allen*, 668 F.3d 912, 917 (7th Cir. 2012) (agreeing with the Fifth and Eighth Circuits that "damages [are] permissible under" Section 1983 "when a state actor deliberately uses a forbidden technique to generate a false identification.")); *see also Blackmon*, 2023 WL 7160639, at *14 ("The Court is not required to consider these lineup procedures in a vacuum without taking Defendants' conduct

and inferences from that conduct into account—due process claims under § 1983 require a

showing of intent.").

Johnson has failed to show the requisite intent. As explained below, Erickson, Daley and

Healy were not involved with the July 22 identification procedures and so they could not have

knowingly tainted the identification procedure to cause a misidentification. (JSOF ¶¶ 21, 32, 38.)

And as it relates to Halvorsen, Johnson has no evidence that he used a forbidden identification

procedure he knew would cause Elba, Rosa, or Ricardo Burgos to identify Johnson. Thus,

Johnson cannot meet his burden to show that Defendants acted with the requisite intent to violate

Johnson's due process rights.

### d. Johnson cannot establish that Defendants Healy, Erickson or Daley were involved in the suggestive identification procedures.

Personal involvement is a prerequisite for liability under 42 U.S.C. § 1983. *Munson v.

Gaetz*, 673 F.3d 630, 637 (7th Cir. 2012). And liability does not attach unless the individual

defendant caused or participated in a constitutional deprivation. *Vance v. Peters*, 97 F.3d 987,

991 (7th Cir. 1996).

Daley, Erickson, and Healy had no involvement in showing the three-person photo to

any witness. Daley located the single polaroid photo of Johnson with two other individuals and

had no further involvement in the investigation. There is no evidence that he directed or was

aware of how the photo was subsequently used to identify Johnson. And neither Daley, Erickson,

nor Healy were present for or in conducted the live lineup. (JSOF ¶¶ 21,32, 38-39), Healy signed

the lineup report two days after it occurred but that is not evidence that he is responsible for the

procedures used at the lineup. (JSOF ¶ 38.) This, alone, is insufficient to demonstrate personal

involvement, which requires proof that the defendant either committed the violation, directed it,

or minimally, knew about and acquiesced to it. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th

Cir. 2017). As to those factors, there is no evidence Healy was aware of the misconduct Johnson ascribes to Defendants Halvorsen and Guevara with respect to the identification procedures. As a result, Johnson cannot maintain a claim that Healy was involved in or aware of any unduly suggestive identification procedures. Thus, Healy, Daley, and Erickson are, once again, entitled to summary judgment based on lack of personal involvement. *See Colbert*, 851 F.3d at 657–58 (lack of personal involvement in allegedly unconstitutional conduct bars claims even if plaintiff can establish underlying violation); *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 974 (7th Cir. 2003) (same); *Hessel v. O'Hearn*, 977 F.2d 299, 305 (7th Cir. 1992) (same).

### e. Alternatively, Defendants are entitled to qualified immunity.

Qualified immunity shields officials from civil liability if "their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gill v. City of Milwaukee*, 850 F.3d 335, 340 (7th Cir. 2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). To decide qualified immunity, courts consider: "(1) whether the facts taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether the constitutional right was clearly established at the time of the alleged violation." *Allin v. City of Springfield*, 845 F. 3d 858, 862 (7th Cir. 2016) (citation omitted).

"The showing of clearly established law must be specific to the particular facts of the case." *Gaddis v. Demattei*, 30 F.4th 625, *13 (7th Cir. 2022). The Supreme Court has warned against denying qualified immunity based on generalities as to constitutional principles. *See White v. Pauly*, 137 S. Ct. 548, 551 (2017); *Gill*, 850 F.3d at 340-41. It is Johnson's burden to identify precedent with facts sufficiently on point to defeat summary judgment. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017) ("The

plaintiff bears the burden of demonstrating that a right was clearly established at the time the alleged violation occurred").

As explained above, the evidence is insufficient to establish a constitutional violation because there was no clearly established precedent in 1991 that would have put Defendants on notice that their alleged conduct was unconstitutional. "The unlawfulness of challenged conduct is clearly established ... only if it is 'dictated by controlling authority or a robust consensus of cases of persuasive authority, such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. It is essential to evaluate the public official's conduct at the correct level of granularity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) *citing Estate of Davis v. Ortiz*, 987 F.3d 635, 638 (7th Cir. 2021).

Against this backdrop, Johnson cannot point to any controlling or persuasive authority that clearly established that it was impermissible for the police to show a photo containing multiple people including the suspect prior to a live lineup. *See Harris*, 281 F.3d at 670–71 ("there is nothing *per se* impermissible about placing the same suspect in two different identification procedures"). Similarly, Johnson cannot identify authorities establishing, in 1991, that the single polaroid photo or lineup contained an insufficient number of quality fillers that made it so suggestive that witnesses would have only picked him. *See, e.g. U.S. v. Johnson*, 745 F.3d 227, 230 (7th Cir. 2014) (holding the disparity between fillers and subject must be serious); *U.S. v. Harris*, 281 F.3d 667, 670 (7th Cir. 2002) (stating that four person photo array was "reasonable"); *People v. Ortiz*, 2017 IL App (1st) 142559, ¶ 25 (quoting *People v. Kelley*, 304 Ill. App. 3d 628, 638 (1999)) (stating "[t]he law, however, does not require the participants in a photo array or lineup 'to be identical or near identical.'")

Even if the limited number of fillers clearly established that the single polaroid photo containing three people and lineups were suggestive, there is no controlling authority that would support a conclusion that it was clearly established that they were so egregious under the *Biggers* factors so as to taint the entire trial. *See Coleman*, 925 F.3d at 347. Thus, Plaintiff cannot meet his burden to establish that any reasonable officer in Defendants' position would have known they were violating Johnson's constitutional rights, and Defendants are entitled to qualified immunity.

**III.      Johnson lacks sufficient evidence to support his *Brady* claim.**

Count I also alleges that Defendants violated Johnson's due process rights by suppressing exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Johnson alleges that Defendants suppressed: (1) evidence of all the misconduct alleged; (2) the June 13 six-witness lineup report, indicating a positive identification of Johns (3) their fabrication of witness statements, and (4) unidentified police reports and non-descript general "personal" documents. (JSOF ¶¶ 123, 124.) As set forth below, Johnson lacks evidence to support all the required elements of his *Brady* claims against Defendants.

To prevail under *Brady*, Johnson must show that the evidence was: 1) favorable to him because it was exculpatory or impeaching; 2) willfully suppressed by the officer; and 3) material, meaning if it had been disclosed there is a reasonable probability the proceeding would have resolved differently. *Carvajal v. Dominguez*, 542 F.3d 561, 566–67 (7th Cir. 2008). Evidence is not suppressed under *Brady* where the criminal defendant is aware of the evidence or could have learned of it through reasonable diligence. *See Petty v. City of Chicago*, 754 F.3d 416, 423–24 (7th Cir. 2014) (summary judgment on *Brady* claim affirmed where defense counsel knew of the

allegedly suppressed statement prior to the criminal trial); *U.S. v. Kimoto*, 588 F.3d 464, 492 (7th Cir. 2009) (materials that could have been located could not form basis for *Brady* violation).

Additionally, Johnson's *Brady* claim cannot be based on speculation that documents would have existed. *U.S. v. Parks,* 100 F.3d 1300, 1307 (7th Cir.1996) ("speculation is not enough to establish that the Government has hidden evidence"). Finally, because this is a civil suit, Johnson must not only present sufficient evidence to meet the above requirements, but also that a Defendant who was responsible for the suppression "acted intentionally or at least recklessly in failing to turn…over" the evidence. *Moran*, 54 F.3d at 493. Johnson cannot meet his burden as to Defendants Healy, Daley, Halvorsen and Erickson, and they are entitled to summary judgment.

### a. Johnson's claims for fabrication of evidence cannot be recast as independent *Brady* claims.

Johnson attempts to create a *Brady* claim by alleging that Defendants had a duty to disclose their own misconduct—seeking to expand the concept of "suppression" into a "catch-all" that would fold all of Defendants' alleged misconduct under the umbrella of a *Brady* claim. But suppression of one's misconduct does not give rise to a *Brady* violation. *See Patrick*, 103 F. Supp. 3d at 915 (finding that "plaintiff's objection to defendants' conduct appears to be not so much that they suppressed evidence as that the evidence they ultimately produced was fabricated or otherwise secured by misconduct and is more appropriately characterized as a claim for malicious prosecution); *Phillips v. City of Chicago*, 2015 WL 5675529, *5-6 (N.D. Ill. 2015) (finding that the officers' non-disclosure of their alleged treatment of the plaintiffs' co-defendants' and witness does not amount to a *Brady* violation); *Myvett v. Heerdt*, 2015 WL 12745087, *6 (N.D. Ill. 2015) (granting summary judgment on *Brady* claim where plaintiff failed to identify any evidence that was withheld from him, but instead claimed that defendants

withheld their fabrication of witnesses' statements); *Alvarado v. Hudak*, 2015 WL 4978683, *3 (N.D. Ill. 2015) (dismissing *Brady* claim that officers failed to admit their misdeeds to the prosecution because an officer's silence following his alleged fabrication of evidence does not result in a *Brady* violation).

Moreover, recasting of his fabrication claims as *Brady* claims is not appropriate and in contravention of Seventh Circuit precedent. *See Saunders-El*, 778 F.3d at 562; *Serrano v. Guevara*, No. 17 CV 2869, 2020 WL 3000284, at *19 (N.D. Ill. June 4, 2020) ("Failing to disclose falsified evidence, or "keeping quiet" about that evidence, is the same as a fabrication of evidence claim and cannot be recast as a *Brady* allegation"); *Boyd,* 225 F. Supp. 3d at 720 ("There is no support for a <u>*Brady*</u> claim where, as here, the allegation is not that defendants suppressed evidence, but rather that they produced evidence that was fabricated."). "Withholding truth," in the form of detectives' accounts of interviews, is not suppression of evidence for purposes of *Brady,* and the Seventh Circuit has foreclosed an extension of *Brady* to encompass the theory that a police officer is "suppressing" evidence by giving the prosecution a false account of the interview. *See Carvajal*, 542 F. 3d at 567; *Harris v. Kuba*, 486 F. 3d 1010, 1016-1017 (7th Cir. 2007). Accordingly, Johnson's attempt to create a *Brady* claim through the recasting of his fabrication claim cannot survive summary judgment.

### b. Johnson lacks sufficient evidence to demonstrate that Daley, Halvorsen or Healy were aware of the June 13 six-witness lineup report.

Johnson next argues Defendants suppressed the six-witness lineup report. He has insufficient evidence, however, to connect Daley, Healy and Halvorsen to the June 13 six-witness lineup report or any failure to produce it. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the

individual defendant caused or participated in a constitutional deprivation." *Vance,* 97 F.3d at 991; *see also Grieveson,* 538 F.3d at 776.

Johnson has no evidence that Daley, Healy or Halvorsen were aware that the June 13 six-witness lineup report was created, much less that they knew or intended it to be withheld. Indeed, Halvorsen was not involved with the investigation at any point on the first night. (JSOF ¶ 30). Daley was involved in the investigation, but he was not a detective, did not participate in the lineups on the first night, and was simply told that no one was identified. (JSOF ¶¶ 13, 28). Nor is there any evidence that Healy was working the first night, and he did not review or sign the June 13 six-witness lineup report. (JSOF ¶¶ 38-39.) Thus, Johnson can only speculate that they were involved in the alleged failure to produce the report. But summary judgment is "the put up or shut up" stage where Johnson must come forward with evidence that supports his theory. *Siegel v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir.2010) (quoting *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir.2003)). And speculation is not sufficient. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) ("Inferences supported only by speculation or conjecture will not suffice."); *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) ("[I]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."). Accordingly, Daley, Healy and Halvorsen had no personal involvement in the six-witness lineup and they should be granted summary judgment.

### c. Erickson retired before Johnson's criminal trial and there is no evidence that he was involved in producing documents to the State's Attorney's Office.

Johnson's theory that Erickson was involved with the alleged failure to produce the June 13 six-witness lineup report likewise fails notwithstanding the fact that he purportedly wrote and signed the report. The uncontradicted evidence is that the document was placed in the CPD

investigative file as confirmed by its presence in that file when produced in this case. (JSOF ¶ 14) Thus, there is no evidence that Erickson failed to put the document in the police files.

Johnson's theory is that when the police records were provided to the State's Attorney and in response to criminal defense counsel's record subpoena, the June 13 six-witness lineup report was not included. But there is no evidence that Erickson had any involvement with the investigation of the Fred murder after the first night. (JSOF ¶ 21) Indeed, Erickson retired from CPD on August 2, 1991, (JSOF ¶ 22), less than two weeks after Johnson's July 22, 1991 arrest and two weeks before Johnson was indicted on August 19, 1991. (JSOF ¶¶ 34, 56). The ASA did not request documents until September 19, 1991 and a response to Johnson's criminal defense attorney's subpoena was not due until August 13, 1991, (JSOF ¶ 58), all well after Erickson had any involvement with the case, and after he had retired. (JSOF ¶¶ 21-22.) Erickson never testified in this case either. (JSOF ¶¶ 21, 22, 84.) Johnson has no evidence that Defendant Erickson subjectively intended to withhold the June 13 six-witness lineup up report, that he knew the report was withheld, or was personally involved in the alleged *Brady* violation related to that report.

To defeat summary judgment, Johnson must show that Erickson was not only personally involved in the unlawful conduct, but also that he subjectively intended the report to be withheld. *See Moran*, 54 F.3d at 493 (plaintiff must show "intentional or at least reckless failure to disclose); *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017) (personal involvement requires showing that defendant directed the misconduct or allowed it to occur with his knowledge or consent). Here, the undisputed timeline of Erickson's involvement—only on the first night of the investigation—his subsequent retirement, and the dates when police records were produced and subpoena responses due, demonstrates that Johnson lacks evidence that Erickson was directly

30

involved in or even knew of the alleged failure to produce the June 13 six-witness lineup report. Johnson can only speculate that Erickson intended to suppress the report and speculation will not carry the day. *See Johnson*, 892 F.3d at 894. Accordingly, Erickson is entitled to summary judgment on this aspect of Johnson's *Brady* claim.

### d. Johnson was aware of all the information in the June 13 six-witness lineup report and advised his attorney of that information before his criminal trial.

Johnson's *Brady* claim based on the June 13 six-witness lineup report also fails because he cannot show the information in it was suppressed and that it was not available through reasonable diligence considering the information he had. Evidence known to the defendant is not suppressed. *Avery v. City of Milwaukee*, 847 F.3d 433, 443 (7th Cir. 2017). "Reasonable diligence" asks whether the defendant had access to the exculpatory evidence through other means. *Boss v. Pierce*, 263 F.3d 734, 741 (7th Cir. 2001). Here, Johnson has admitted that he was not only aware of the identification of Johns in the June 13 six-witness lineup report, but that Johns admitted he was the murderer. (JSOF ¶ 52.) Johnson testified that while in Cook County Jail awaiting trial, Johns told him that he was arrested for the Fred murder the night it happened, he was identified in a lineup but released, and that he committed the murder (JSOF ¶ 51.)[5] Johnson then provided this information to his attorneys to use in his defense. (JSOF ¶ 53.) Thus, the information in the six-witness lineup report was not kept from Johnson and his *Brady* rights were not violated.

### e. There is no *Brady* claim based upon the alleged suppression of generic non-descript evidence, "street files," or notes."

Johnson makes the sweeping contention that "'street files' and/or 'personal notes' and/or 'personal files' kept by detectives working on and in regard to the Edwin Fred murder were

---

[5] This disclosure by Johns to Johnson is corroborated by Terrell Agee's testimony that Johns also advised Agee that Johns was identified in the lineup for the Fred murder. (JSOF ¶¶ 19, 46.)

fabricated, withheld, destroyed or concealed, and that such documents contained exculpatory and impeaching information that would have permitted Johnson to demonstrate his innocence." (JSOF ¶ 124.) This allegation fails because Johnson has no evidence that personal notes and/or personal files were created by or kept by Defendants, nor proof that the claimed personal notes and/or personal files contained exculpatory information.

To fill the evidentiary void, Johnson is left with no choice but to rely on speculation and conjecture, which is wholly insufficient at the summary judgment stage. "[A] denial of Due Process cannot be premised on the defendant's mere conjecture that there might have been favorable evidence which was undisclosed. The existence of the evidence must be established…" *U.S. v. McPartlin*, 595 F.2d 1321, 1346, n. 32 (7th Cir. 1979); *see also Hill v. City of Chicago,* 2009 WL 174994, * 4 (N.D. Ill. 2009) (no *Brady* violation based on plaintiff's mere speculation that a report may have existed); *U.S. v. Warren,* 454 F.3d 752, 759 (7th Cir. 2006) (finding no *Brady* violation because defendant was "unable to point to any specific evidence, exculpatory or otherwise, withheld by the government."). Here, Johnson's failure to identify any notes, let alone specific notes, that were ever taken by Defendants defeats his *Brady* claim. And even if Johnson could present evidence that notes existed, he certainly has no evidence to prove that they contained exculpatory information. Indeed, "[w]ithout knowing what the notes said," this Court "cannot determine whether they had exculpatory value or whether that exculpatory value was apparent to defendants before the notes were destroyed." *Bolden v. City of Chicago,* No. 17 CV 417, 2019 WL 3766104, at *11 (N.D. Ill. Aug. 9, 2019).

Finally, Johnson cannot say who was responsible for drafting and/or suppressing any alleged personal files or notes which eliminates his ability to show personal involvement. *Vance,* 97 F.3d at 991; *Grieveson,* 538 F.3d at 776. Absent evidence identifying the alleged

32

missing personal notes or files, the substance of the notes or files or the individuals responsible

for withholding them, Johnson's speculative *Brady* claim based on this theory cannot proceed.

### IV. Johnson's Unlawful Detention (Count II) and Malicious Prosecution (Count IV) Claims Fail Because There was Probable Cause to Arrest Based Upon Three Identifications

Johnson alleges an unlawful pretrial detention claim under the Fourth Amendment

(Count II) and a state law malicious prosecution claim (Count VI). To sustain a Fourth

Amendment pretrial detention claim, a plaintiff must allege, at a minimum, that criminal

proceedings were initiated without probable cause. *Thompson v. Clark*, 142 S. Ct. 1332, 1137-38

& n.2 (2022). Proving "the absence of probable cause" is also an essential element of a state law

malicious prosecution claim. *See, e.g., Wade v. Collier*, 783 F.3d 1081, 1085 (7th Cir. 2015)

(quoting *Swearingen–El v. Cook County Sheriff's Dept.*, 602 F.3d 852, 863 (7th Cir. 2010)).

### a. Erickson, Daley and Healy were not personally involved in gathering any evidence against Johnson or seeking charges.

Initially, Johnson cannot prove that Defendants Erickson, Daley and Healy were

personally involved in initiating the prosecution as required for liability under the Fourth

Amendment unlawful pretrial detention or state law malicious prosecution. *See Vance,* 97 F.3d at

991; *Grieveson,* 538 F.3d at 776. The commencement or continuance of a prosecution requires a

defendant to have played a "significant role" in the criminal prosecution. *Hill v. Cook County*,

463 F. Supp. 3d 820, 845 (N.D. Ill. May 31, 2020) (citations omitted). None of them were

involved in obtaining the three witness identifications which led to the charges against Johnson.

(JSOF ¶¶ 21, 32, 38). None of them are listed on the arrest report or were even present during his

arrest or when he was identified. (JSOF ¶¶ 21, 32, 38). None of them initiated criminal charges

beginning the prosecution against Johnson. (JSOF ¶¶ 21, 32, 38.) And none testified for the state

to aid the prosecution. (JSOF ¶¶ 84, 109.) Accordingly, Defendants Erickson, Daley and Healy are entitled to summary judgment on these claims.

### b. The existence of probable cause defeats Johnson's claims.

The presence of probable cause is an absolute defense to claims under § 1983 against police officers for pretrial detention (*Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006)) and under state law for malicious prosecution. *See Wade*, 783 F.3d at 1085. Probable cause for both claims is evaluated at the time the legal process is initiated. *See Williams v. Martinez*, No. 22-CV-06602, 2023 WL 6141494, at *4 (N.D. Ill. Sept. 20, 2023) (citing *Manuel v. City of Joliet*, 580 U.S. 357, 368 (2017) (stating probable cause is evaluated at the time of the filing of the charges on which the plaintiff was held)); *Thompson*, 142 S. Ct. at 1337–38 (holding the plaintiff must prove under the Fourth Amendment, "the wrongful initiation of charges without probable cause"); *Vaughn v. Chapman*, 662 F. App'x 464, 467 (7th Cir. 2016) (holding probable cause should be evaluated at the time the criminal complaint was filed for an Illinois malicious prosecution claim).

Probable cause is a relatively low bar. *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021) (citations omitted). It exists where the facts and circumstances are such that a reasonably prudent person would believe that the arrestee has committed a crime. *Coleman*, 925 F.3d at 350; *Blackmon*, 2023 WL 7160639, at *8. That belief does not need to be "correct or even more likely true than false, so long as it is reasonable." *Gaddis v. DeMattei*, 30 F.4th 625, 630 (7th Cir. 2022). "This is an objective inquiry; [the court] do[es] not consider the subjective motivations of the officer." *Wade*, 783 F.3d at 1087 (quoting *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012) (first brackets in original)).

34

The Seventh Circuit has repeatedly held that a single identification, even if questionable, is sufficient to create probable cause. *See, e.g.*, *Moran*, 54 F.4th at 499–500; *Coleman*, 925 F.3d at 351; *see also Cairel*, 821 F.3d at 835 (holding eyewitness identification provided probable cause, despite witness' hesitancy and inconsistencies with earlier descriptions). *Phillips,* 668 at 915 (stating identification by one eyewitness who lacks an apparent grudge against the accused person supplies probable cause). Even a recantation of a statement does not, on its own, negate probable cause. *Garcia v. Posewitz,* 79 F. 4th 874, 880 (7th Cir. 2023).

Here, the identifications of Rosa Burgos, Elba Burgos and Ricardo Burgos established probable cause to detain and prosecute Johnson for the murder of Fred. *See Blackmon v. City of Chicago,* No. 19 CV 767, 2023 WL 7160639, at *9 (N.D. Ill. Oct. 31, 2023) (single identification provided probable cause to arrest, which is an absolute defense to wrongful detention and malicious prosecution claims;) *Moran*, 54 F.4th at 500 (holding that "an eyewitness identification[], even if questionable, [is] enough to give [the police] probable cause to arrest, and here there were two witnesses who insisted that [the plaintiff] was the shooter.") (citing *Coleman*, 925 F.3d at 351 (internal quotations omitted)) Accordingly, Johnson's claims are defeated by the existence of probable cause.

      **c.**     **Alternatively, the presence of arguable probable cause entitles Defendants to qualified immunity on the federal unlawful detention claim.**

Alternatively, Defendants are entitled to qualified immunity because Ricardo, Rosa and Elba Burgos' identifications of Johnson arguably created probable cause for his detention. Qualified immunity protects officers who reasonably but mistakenly conclude that probable cause exists. *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999), *as amended* (Jan. 7, 2000). "Arguable probable cause exists when a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could*

have reasonably believed that probable cause existed in light of well-established law." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998) (emphasis in original) (citation omitted). Here, and in light of the cases discussed in § IV (b) above, there was no clearly established law to inform Defendants that the three identifications of Johnson were insufficient to establish probable cause, and qualified immunity bars this claim.

## V.    Johnson's Supervisory Liability Claim Against Defendant Healy Fails

There is no evidence that Defendant Healy was involved in this investigation in any capacity other than as a supervisor and that alone does not make him liable under Section 1983 for a subordinate's alleged misconduct. *Carmona v. City of Chicago*, No. 15 C 462, 2019 WL 4166856, at *9 (N.D. Ill. Sept. 3, 2019) (citing *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001)). Section 1983 liability is predicated on personal involvement and responsibility for the deprivation of a constitutional right. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). A supervisor is personally responsible "if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Id.*

Here, there is no evidence that Sgt. Healy actively participated in the Fred homicide investigation or directed any of the conduct of which Johnson complains. Sgt. Healy's only identified involvement was signing four reports on July 24, 1991—two days after Plaintiff's identification and arrest. (JSOF ¶ 38.) There is no evidence that Sgt. Healy was at the Area Five Detective Division on any other date. (JSOF ¶ 39.) Importantly, there is no evidence in the record, or a plausible inference to be drawn from the mere fact that he reviewed and signed police reports identifying the progression of the investigation after it had taken place. *See Gill*, 850 F.3d at 344 (affirming dismissal of Section 1983 claims against a supervisor where there was "no allegation or plausible inference that [the supervisor] knew about or was personally involved

in the specific conduct"); *Carmona*, 2019 WL 4166856, at *9 (finding no evidence that the

supervisor had "any inkling that the alleged constitutional violations – or any alleged malicious

prosecution – were taking place, let alone that he facilitated, approved, or condoned them"). Sgt.

Healy cannot be held liable for alleged misconduct of which he had no knowledge. *See Chavez*,

251 F.3d at 651 (7th Cir. 2001) (holding there is no liability for failing to detect and prevent

subordinate's misconduct). Consequently, Sgt. Healy is entitled to judgment as a matter of law

for all claims against him.

## VI. Defendants are Entitled to Summary Judgment on Johnson's Failure to Intervene Claim (Count III)

Johnson claims a violation of his due process rights because Defendants failed to

intervene and prevent the violation of his rights despite having "had the duty and the opportunity

to do so." (Complaint, Dkt. No. 1 at ¶ 128.) To prevail on his failure to intervene claim, Johnson

must prove a constitutional violation in which the Defendant had a realistic opportunity to

intervene to prevent the violation. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005).

Defendants are entitled to summary judgment for three independent reasons: 1) no such claim

can exist without an underlying constitutional violation; 2) there is no evidence that the

Defendants ever knew of or had an opportunity to intervene in the purported violations of

Johnson's constitutional rights; and 3) such a claim is not legally cognizable as it violates

Section 1983's bar on vicarious liability.

### a. There cannot be failure to intervene liability without an underlying constitutional tort.

"In order for there to be a failure to intervene, it logically follows that there must exist an

underlying constitutional violation." *Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016)

(internal quotation marks omitted). As demonstrated throughout this brief, there are no viable

constitutional claims that survive against Defendants Erickson, Halvorsen, Daley and Healy in this litigation. Because Johnson's failure to intervene claim is derivative of his substantive constitutional claims as alleged above, where those claims fail against any individual Defendant, so, too, do the derivative claims. Thus, there can be no failure to intervene claim, and summary judgment should enter for the Defendants on Count III.

> **b.** **Johnson lacks evidence that Halvorsen, Daley, Erickson and Healy had a realistic opportunity to intervene in any alleged constitutional violation.**

To establish a failure to intervene claim, a plaintiff must establish that "an officer must know that a citizen's rights are being infringed, and he must have a 'realistic opportunity' to intervene." *Doxtator v. O'Brien*, 39 F.4th 852, 864–65 (7th Cir. 2022). As set forth above in § V, there is no evidence that Sgt. Healy had any other involvement in the Fred murder investigation other than signing documents or that he was even present on any day other than two days after Plaintiff's arrest and charging. (JSOF ¶¶ 38-39.) Similarly, and as set forth above in §§ I (b); II (d) and III (b)(c), neither Erickson nor Daley was present for any identification procedure of Johnson or when documents were produced to the prosecutors or criminal defense attorneys. Finally, Halvorsen was not present for the homicide investigation on the first night (*see* § III (b), *supra*) and the claims of fabricated/suggestive evidence fail against him as set forth above in §§ I (a and c) and II (a and b). Thus, summary judgment should be entered on Count IV because Plaintiff lacks evidence of a realistic opportunity to intervene in any alleged constitutional violation. *See Doxtator*, 39 F.4th 864–65. (affirming summary judgment for defendant officers where they had no realistic opportunity to intervene in other officers' purported misconduct).

c.   **Failure to intervene is not cognizable as a federal tort because it violates Section 1983's prohibition against vicarious liability.**

Defendants are aware of how frequently failure to intervene claims are raised, recognized and litigated in § 1983 litigation. Recently, Seventh Circuit Judge Frank Easterbrook called into question the viability of the failure to intervene theory of § 1983 liability, noting that "'[f]ailure to intervene' sounds like vicarious liability," which would of course be untenable, as "[t]he Supreme Court has held many times that § 1983 supports only direct, and not vicarious, liability." *Mwangangi v. Nielsen*, 48 F.4th 816, 834 (7th Cir. 2022) (Easterbrook, J., concurring) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009); *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Defendants recognize that this Court is bound to follow the Seventh Circuit's current jurisprudence recognizing such a claim—*Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972)—but raise the argument for the express purpose of preserving it for appeal and as such, Defendants request that it be dismissed for failure to state a viable cause of action.

**VII.   Halvorsen, Erickson, Daley and Healy are Entitled to Judgment on Johnson's IIED Claim (Count VII) Because They Did Not Commit any Extreme and Outrageous Acts that Caused Emotional Distress**

To prove an IIED claim under Illinois law, a plaintiff must put forth evidence establishing the following: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe distress." *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir.2010). Here, Johnson's IIED claim is based on the same conduct that allegedly violated his constitutional rights. Because the constitutional claims against Daley, Erickson, Halvorsen and Healy fail based on the lack of evidence and their lack of involvement (*see* §§ I-IV, *supra*), so does Johnson's IIED claim. Johnson cannot demonstrate the "extreme and outrageous" conduct necessary to support his IIED claim. *See*

*Cooney v. Casaday*, 746 F.Supp.2d 973, 977-78 (N.D. Ill. 2010) (plaintiff's IIED claim must fail when it is premised on alleged constitutional violations that fail). Accordingly, summary judgment is appropriate for Defendants on Johnson's IIED claim.

**VIII.  There is no Evidence to Support Johnson's § 1983 (Count IV) and state law (Count VI) Conspiracy Claims**

Like failure to intervene, the conspiracy claims are derivative of the federal constitutional and state law malicious prosecution claims. As a result, where those claims fail against any individual Defendant, so, too, do the derivative claims and they should be dismissed. *See e.g,* *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (stating conspiracy is not an independent basis of liability in § 1983 actions); *Oliva v. City of Chicago*, No. 21-cv-06001, 2023 WL 2631575, at *6 (N.D. Ill. Mar. 24, 2023) ("[d]erivative claims fail when the underlying claim upon which they rely fails.") Alternatively, dismissal is warranted on the conspiracy claims for two additional reasons: 1) there is no evidence to support the conspiracy claims and 2) Defendants are entitled to qualified immunity.

**a.  There is no evidence of an agreement to support the conspiracy claims.**

Johnson's Section 1983 and state law conspiracy claims both require evidence of an agreement between more than one person. *See Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means."); *Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 930 (7th Cir. 2017) (an agreement is a "necessary and important" element of this conspiracy, and "[a] defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy"). Johnson has not adduced any evidence of a conspiratorial agreement that was made amongst Defendants. Further as set forth above regarding Plaintiff's failure to intervene claim

40

(§ VI, *supra*) the Defendants were not present or involved in the alleged constitutional violations and so lacked the opportunity to form an agreement. Additionally, any argument of an agreement is merely speculation, and insufficient to establish liability. *Cooney v. Casady,* 735 F.3d 514, 519 (7th Cir. 2013) (concluding vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's burden at summary judgment). Therefore, Johnson's inability to establish a constitutional violation against Defendants dooms his conspiracy claims. *Hill*, 2009 WL 174994, at *9; *see also Celafu v. Village of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000).

**b. Alternatively, Defendants are entitled to qualified immunity.**

Alternatively, Defendants are entitled to qualified immunity on Plaintiff's Section 1983 conspiracy claim because "it cannot be said that the law [was] clearly established on this point…[t]hat is, reasonable officers would not necessarily know that a conspiracy amongst employees of a single municipality can violate the Constitution (no matter what the underlying substantive right is at stake)." *Haliw v. City of South Elgin*, 2020 WL 1304697, *4 (N.D. Ill. March 3, 2020) (finding liability is not clearly established for conspiracies amongst police officers of a single municipality because the law was unsettled on whether the intracorporate conspiracy doctrine applies to § 1983 claims) (*comparing Jackson v. City of Cleveland*, 925 F.3d 793, 819-20 (6th Cir. 2019) (the intracorporate conspiracy doctrine applies to § 1983 just as it does to § 1985 claims because both create "cause[s] of action against any 'person' who deprives a plaintiff of his rights[.]"), *with Drager v. Vill. of Bellwood*, 969 F. Supp. 2d 971, 985 (N.D. Ill. 2013) ("The Seventh Circuit has yet to decide whether the doctrine applies to § 1983 conspiracy claims, and district courts in this Circuit are split on whether it does."). At issue in *Haliw* was an alleged conspiracy to frame the plaintiff in 2017. Here, the issue is an alleged conspiracy among

Defendants in 1991. If the law was unsettled in 2017, it was certainly unsettled in 1991, and Defendants are entitled to qualified immunity on the federal conspiracy claims.

**IX.     Johnson Cannot State an Independent Claim for Willful and Wanton Conduct (Count VIII) Under Illinois State Law**

In Count VIII (willful and wanton conduct), Johnson alleges Defendant Officers "acted willfully and wantonly through a course of conduct that showed an utter indifference to, or conscious disregard of, [Plaintiff's] rights." (Complaint, Dkt. No. 1 at ¶ 163.) However, there is no separate and independent tort of "willful and wanton" misconduct. *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors*, 2012 IL 112479, ¶ 19 (holding that in Illinois, there is no separate, independent tort of willful and wanton conduct); *Krywin v. Chicago Transit Auth.*, 238 Ill. 2d 215, 235 (2010) (same); *Ziarko v. Soo Line R. Co.*, 161 Ill. 2d 267, 274 (1994) (same). But even if there was, this claim is just a state law recasting of Johnson's federal claims in Counts I and II and fails for the same reasons his federal claims fail. *See* §§ I-IV, *supra*. Thus, Defendants Healy, Daley, Erickson and Halvorsen are entitled to summary judgment on Count VIII.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants request that the Court enter summary judgment in their favor on all claims and against Johnson.

Dated: April 12, 2024
                                    Respectfully Submitted,


                                    /s/ Josh M. Engquist
                                    Josh M. Engquist, Atty. No. 6242849
                                    *One of the Attorneys for the Individual*
                                    *Defendants*

Josh M. Engquist
James G. Sotos
Josh M. Engquist
David A. Brueggen
Elizabeth R. Fleming
Daniel McGinnis
Special Assistant Corporation Counsel
THE SOTOS LAW FIRM, P.C.
141 W. Jackson, Suite 1240A
Chicago, IL 60604
(630) 735-3300
jengquist@jsotoslaw.com

43

## CERTIFICATE OF SERVICE

I, Josh M. Engquist, certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that the foregoing is true and correct, that on Tuesday, April 16, 2024, I electronically filed the foregoing **Memorandum of Law in Support of Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record on the below Service List.

*Attorneys for Plaintiff:*

Jon Loevy
Anand Swaminathan
Joshua Tepfer
Rachel Brady
Steven Art
Sean Starr
Alyssa Martinez
Margaret Gould
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
312-243-5900
jon@loevy.com
anand@loevy.com
josh@loevy.com
brady@loevy.com
steve@loevy.com
sean@loevy.com
alyssa@loevy.com
gould@loevy.com

*Attorneys for City of Chicago:*

Eileen E. Rosen
Austin G. Rahe
Catherine M. Barber
Theresa B. Carney
Rock Fusco & Connelly, LLC
321 N. Clark, Suite 2200
Chicago, Illinois 60654
312-494-1000
erosen@rfclaw.com
arahe@rfclaw.com
cbarber@rfclaw.com
tcarney@rfclaw.com

*Attorneys for Defendant Guevara:*

Thomas M. Leinenweber
Michael J. Schalka
James V. Daffada
Leinenweber Baroni & Daffada
120 N. LaSalle St., Suite 2000
Chicago, IL 60602
(312) 663-3003
thomas@ilesq.com
mjs@ilesq.com
jim@ilesq.com

/s/ Josh M. Engquist
Josh M. Engquist

44