# Exhibit S&'

ORIGINAL

# S W O R N   S T A T E M E N T

| | |
|---|---|
| PEOPLE OF THE STATE | ) |
| OF ILLINOIS | ) |
| | ) |
| VS. | ) CASE NO. 93 CR 18173 |
| | ) |
| ARMANDO SERRANO, | ) |
| | ) |
| Defendant. | ) |

---

The sworn statement of **TIMOTHY DUANE RANKINS** in the above-styled matter was taken pursuant to notice for discovery and/or evidentiary purposes, before Aneta M. Bazzie, a Notary Public within and for the State of West Virginia at Large, on the 3rd day of April, 2012, commencing at 12:17 P.M., EDST, at the Beckley Federal Correctional Institution, 1600 Industrial Road, Beaver, West Virginia.

---

## BROWN REPORTING AGENCY
P.O. Box 5473
Beckley, West Virginia 25802-5473
304/252-4106

EXHIBIT

JR-L 02893

APPEARANCES:          JENNIFER BONJEAN, ESQ.
                      LAW OFFICE OF JENNIFER BONJEAN, PLLC
                      142 Joralemon Street
                      Suite 5A
                      Brooklyn, New York  11201
                        Counsel for Defendant

I N D E X

Witness:                                    Examination

Timothy Duane Rankins                            3

Exhibits:                                     Marked

Rankins Exhibit No. 1                           15

Reporter's Certificate -- Page 34

**B.R.A.**

JR-L 02894

Exam.                                                                    3

1                          (Witness Affirmed)

2   THEREUPON came,

3       T I M O T H Y    D U A N E    R A N K I N S

4   who, having been first duly affirmed according to law,

5   testified as follows:

6                          EXAMINATION

7   BY MS. BONJEAN:

8           Q        Good afternoon, Mr. Rankins, my name is

9   Jennifer Bonjean and I represent Armando Serrano in the

10  case of the People of the State of Illinois v. Armando

11  Serrano, Jose Montanez, and Jorge Pacheco.  Do you under-

12  stand that, sir?

13          A        Yes.

14          Q        And do you understand that I represent

15  Armando Serrano?

16          A        Yes.

17          Q        Okay.  And, Mr. Rankins, we are here

18  today at Beckley Federal Correctional Institution.  And,

19  sir, is it correct that you are an inmate here at Beckley

20  Federal Correctional Institution?

21          A        Yes.

22          Q        And do you understand, sir, that the

23  purpose of my visit today is to take a sworn statement

**B.R.A.**

Exam.                                                                                    4

1  from you regarding your knowledge of facts related to the

2  prosecution of Mr. Armando Serrano and Jose Montanez?

3          A       Yes.

4          Q       And, Mr. Rankins, do you understand

5  today that you are under oath, sir?

6          A       Yes.

7          Q       And do you understand that by taking

8  this oath you are swearing to tell the truth to the

9  best of your ability?

10         A       Yes.

11         Q       And, Mr. Rankins, would it be fair to

12 say that we are in an interview room at Beckley Federal

13 Correctional Institution and that you, myself, and a

14 certified court reporter are present in this room?

15         A       Yes.

16         Q       And is there any reason you cannot

17 give truthful testimony here today, Mr. Rankins?

18         A       No.

19         Q       And is anyone forcing you or coercing

20 you to give this statement here today?

21         A       No.

22         Q       And have you been promised anything

23 in exchange here for your testimony today?

**B.R.A.**

Exam.                                                                    5

1          A       No.

2          Q       Okay.  We'll start easy.  Can you

3    please state your full name?

4          A       Timothy Duane Rankins.

5          Q       What is your date of birth,

6    Mr. Rankins?

7          A       1-16-74.

8          Q       And it's fair to say that you currently

9    reside here in Beckley -- or Beaver, West Virginia, where

10   the Beckley Federal Correctional Institution lies?

11         A       Yes.

12         Q       And, sir, do you know what your

13   anticipated release date is?

14         A       2015.

15         Q       Okay.  Now, Mr. Rankins, I would like

16   to draw your attention to spring of 1993 approximately.

17   Okay?  Where were you living?

18         A       I was living on Central Park and

19   Shakespeare.

20         Q       And would that be the area of

21   Humboldt Park?

22         A       Yes.

23         Q       At that time, sir, were you a member

Exam.                                                                          6

1   of a street gang?

2            A        Yes.

3            Q        And what street gang was that?

4            A        It's known as Insane Spanish Cobra.

5            Q        And can you repeat that in case the

6   court reporter had a hard time understanding?

7            A        Insane Spanish Cobra.

8            Q        Insane Spanish Cobra.  Is that correct?

9            A        Yes.

10           Q        Now, Mr. Rankins, in the evening hours

11  of June 10th, 1993, do you recall being arrested in the

12  area of Shakespeare and Central Park?

13           A        Yes.

14           Q        And can you tell me what happened when

15  you were arrested at that time?

16           A        Yes.  I was standing in front of the

17  apartment I was renting when a blue and white pulled

18  up, and behind a blue and white was a plain -- was

19  a plain car, police car, and in the back of the police

20  car was a -- was a known female from the neighborhood

21  as being a prostitute.

22           Q        Okay.  And, Mr. Rankins, when you

23  say blue and white, do you mean a marked Chicago

**B.R.A.**

Exam.                                                                          7

1   police car?

2              A        Yes.

3              Q        And when you say an unmarked car --

4   what did you recognize an unmarked car to be?

5              A        A detective car.

6              Q        Okay.  And tell me what happened after

7   they pulled up on you?

8              A        When they pulled up, the female officer

9   got out of the car, she said, don't run, I didn't run,

10  then handcuffs was placed on me, I was placed in the back

11  of the unmarked police car where there was three -- there

12  was three detectives in the car, and they drove me to

13  the police station.

14             Q        Do you now know the name of the

15  detectives that were in that car?

16             A        Yes.

17             Q        Can you please tell me their names?

18             A        Detective Guevara, Detective Mingey,

19  which recently was a sergeant, and Halvorsen.

20             Q        Okay.  And I'm going to say their names

21  again, and you can tell me if I'm correct, so that the

22  court reporter has it perfectly.  Would that be Detective

23  Reynaldo Guevara?

**B.R.A.**

JR-L 02899

Exam.                                                                  8

1          A          Yes.

2          Q          And that's G-U-E-V-A-R-A?

3          A          Yes.

4          Q          And would that be Detective Halvorsen?

5          A          Yes.

6          Q          And Detective Sergeant -- or Sergeant

7    Mingey?

8          A          Yes.

9          Q          M-I-N-G-E-Y?  Do you know?

10         A          Yes, something like that.

11         Q          Okay.  Now, after you were placed in

12   the unmarked vehicle, where were you taken?

13         A          I was taken to the police station on

14   Grand and Central.

15         Q          And do you know on what charge you

16   were being arrested?

17         A          They said armed robbery.

18         Q          When you arrived at the police station

19   -- and was this known as Area 5?

20         A          Yes.

21         Q          Okay.  When you arrived at Area 5,

22   where were you taken?

23         A          I was taken upstairs to the detectives

**B.R.A.**

JR-L 02900

Exam.                                                                    9

1  area and was put in Interview Room 3.

2            Q         And were you handcuffed still?

3            A         Yes.

4            Q         And when you were placed in the

5  interview room, were you accompanied by anybody?

6            A         Yes.

7            Q         By whom?

8            A         Mingey, Halvorsen, and Guevara.

9            Q         Okay.  And would it be fair to say that

10 at that time you were approximately 19 years old?

11           A         Yes.

12           Q         Now, once inside that interview room,

13 what happened?

14           A         I was told that they can't catch

15 certain guys, and they put a statement in front of

16 me and told me that they wanted me to testify.

17 They wanted me to read the statement and study the

18 statement and they wanted me to sign it against

19 three guys in a murder case.

20           Q         Okay.  Did they question you about

21 any other murder cases?

22           A         No, they told me about other murder

23 cases.

**B.R.A.**

Exam.                                                                        10

1         Q        And when you say they told you about

2   other murder cases, can you explain that a little more?

3         A        They told me about a murder case that

4   a family that was executed with their hands tied behind

5   their back, they wanted to blame it on an IG named Rico

6   and Marvel, they're brothers.  They said that these guys

7   is the ones that testified on my brother which were

8   Armando Serrano and Jose Montanez.

9         Q        Okay.  Now, you say that they told you

10  that these guys wanted to testify -- or testified on your

11  brother.  I'm going to back you up there.  Who told you

12  that someone had testified against your brother?

13        A        Rey Guevara.

14        Q        And when he said that someone had

15  testified against your brother, who was he referring

16  to?

17        A        He said Armando Serrano and Jose

18  Pacheco and -- I mean, Armando Serrano, Jose Montanez,

19  and Pacheco, and also Rico and Marvel, had testified

20  on my brother.

21        Q        Okay.  Detective Guevara told you

22  that these individuals had testified against your

23  brother.  Did you know whether any of them had

**B.R.A.**

JR-L 02902

Exam.                                                                11

1   testified against your brother?

2           A       No.

3           Q       Was it clear from what he said to you

4   why he was telling you they had testified against your

5   brother?

6           A       No, but he made it clear.

7           Q       And what did he say?

8           A       He said that he was going -- that he

9   wanted to put Armando Serrano, Jose Montanez, and Jorge

10  Pacheco, and the rest of these guys away, and he was

11  going to do it, and I was going to assist him in doing

12  it.

13          Q       And in essence, did he want you to

14  testify and -- or give statements in two separate

15  murders?  Is that what he was asking you to do?

16          A       Yes.

17          Q       Okay.  Now, what did you tell Detective

18  Guevara?

19          A       I told him I wasn't going to do it

20  because I didn't know nothing about it.

21          Q       And what did he say to that?

22          A       He didn't say anything, I was kicked

23  out of a chair.

**B.R.A.**

JR-L 02903

Exam.                                                                    12

1           Q        When you say you were kicked out of a

2    chair, can you describe that?

3           A        Yes, he raised his feet up and kicked

4    me out of the chair with my hands behind my back.

5           Q        Were your hands cuffed?

6           A        Yes.

7           Q        And he kicked you out of the chair.

8    And did you fall to the ground?

9           A        Yes, to the floor.

10          Q        And did he say anything when he did

11   that?

12          A        He threw his statement on the floor

13   with three pictures in front of me and he said, these

14   are the guys who did the murder, they're going down,

15   and you're going to be the key witness, you need to

16   study that statement and you need to understand that

17   you're going to tell what that statement say and

18   you're going to sign it.

19          Q        And he said you needed to study the

20   statement?

21          A        Yes.

22          Q        And who else was present in the room,

23   if anyone, when Guevara told you you were going to sign

**B.R.A.**

JR-L 02904

1   the statement -- or study the statement and then sign

2   it?

3             A         Halvorsen and Mingey.

4             Q         Okay.  After he kicked you out of the

5   chair, did he leave or did he stay?

6             A         He stayed.  I was being kicked in my

7   stomach and in my back, and then after that, they put

8   a phone book over my head and started beating it with

9   a mag light.

10            Q         They put a phone book over your head

11  and beat it with a mag light?

12            A         Yes.

13            Q         What's a mag light?

14            A         It's a police-issued flashlight.

15            Q         Okay.  It's a big fat flashlight?

16            A         Yes.

17            Q         And was this primarily Detective

18  Guevara?

19            A         Yes.

20            Q         Did either of the other officers

21  participate?

22            A         Yes, Mingey and Halvorsen.

23            Q         Okay.  Now, after they beat you with

**B.R.A.**

Exam.                                                                    14

1  the phone book, what happened?

2          A       I was told to study the statement,

3  they walked out, and came back approximately like

4  20 to 30 minutes later.

5          Q       And what did they say then?

6          A       They asked me what happened during

7  the time when we went on the drug run.

8          Q       And what were they referring to when

9  they said what happened when you went on the drug run?

10         A       The statement had said that me, Armando

11 Serrano, Jose Montanez, and Jorge Pacheco, I believe

12 that's his name, went to -- to go get some drugs, and

13 I was the fastest runner.

14         Q       I see.  And this statement that they

15 were referring to, did you write this statement?

16         A       No.

17         Q       Did you at any point tell them that you

18 were going to go on a drug run with Armando Serrano and

19 Montanez?

20         A       No.

21         Q       I'm going to show you what I'm going

22 to mark as Rankins 1.

**B.R.A.**

Exam.                                                                    15

1                              (WHEREUPON, Rankins Exhibit

2                              No. 1 was marked for

3                              identification purposes)

4    BY MS. BONJEAN:

5            Q        Mr. Rankins, can you identify this

6    document?

7            A        It's a statement.

8            Q        And is this the statement that you

9    referred to that was presented to you by Guevara

10   that he said you need to study this?

11           A        Yes.

12           Q        Okay.  And, sir, not your signature,

13   but the substance of the statement, is that your

14   handwriting?

15           A        No.

16           Q        And do you know who prepared this

17   statement?

18           A        Reynaldo Guevara.

19           Q        Right.  Yeah.  It says -- who was

20   present in -- let's see, oh, does it also say that

21   Detective Halvorsen was present?

22           A        Yes.

23           Q        Okay.  And did you see them write out

**B.R.A.**

Exam.                                                                16

1    this statement or did they just present it to you?

2              A        They just presented it to me.

3              Q        So you don't know whose handwriting

4    that is, I take it?

5              A        Not really.

6              Q        Now, you said that they left the room

7    and then came back?

8              A        Yes.

9              Q        And what happened when they came back?

10             A        I was told -- well, they was asking me

11   what happened during that time of us being able to go

12   on a drug run.

13             Q        Right.

14             A        I told them, I don't know what you're

15   talking about, I wasn't there, I ain't got nothing to

16   do with it.  He told me again, Halvorsen told me this

17   time, you're going to study this statement and we're

18   going to come back and you better know that we mean

19   business with you.

20             Q        And when he said, you'd better study

21   this statement or we mean business, what did you take

22   that to mean?

23             A        That I either had to sign the statement

Exam.                                                                17

```
 1  or I was going to get beat some more.
 2            Q        And were you afraid?
 3            A        Yes.
 4            Q        Were you afraid for your life?
 5            A        Yes.
 6            Q        Now, you also mentioned that they
 7  showed you three photos.  Did they identify who --
 8  did any of the officers identify who was pictured
 9  in those photos?
10            A        No.
11            Q        Okay.  Did they provide you with any
12  nicknames for individuals in the photos?
13            A        Yes.
14            Q        And what did they say?
15            A        They said the photo with the fat guy,
16  name's Barrel Belly.
17            Q        Did you know that person in the photo
18  with the fat guy as Barrel Belly?
19            A        No.
20            Q        And did they identify another individual
21  as Stripes?
22            A        Yes.
23            Q        And did you know that person as Stripes?
```

**B.R.A.**

Exam.                                                                    18

1           A       No.

2           Q       And did they identify another person

3    by the name of Joker?

4           A       Yes.

5           Q       And did you know that person as Joker?

6           A       No.

7           Q       All right.  Did they leave the room at

8    any point again?

9           A       Yes.

10          Q       Okay.  And for how long?

11          A       Another 20 to 30 minutes.

12          Q       And did they return?

13          A       Yes.

14          Q       And what happened then?

15          A       I was given a soda to drink, and it was

16   -- my hands was still behind my back, and they held the

17   soda for me to drink, and because I didn't sign the

18   statement, when I was drinking the soda, I was put in a

19   chokehold until I started choking, and then I was hit

20   in my privates.

21          Q       Okay.  And at that point, had you told

22   them you weren't going to sign the statement?

23          A       Yes.

**B.R.A.**

JR-L 02910

Exam.                                                                      19

1           Q           And did they continue to assault you?

2           A           I was assaulted until I signed the

3    statement.

4           Q           And did they -- did you eventually say

5    you would sign the statement?

6           A           Yes.

7           Q           And why did you do that?

8           A           I signed the statement so I could stop

9    being abused.

10          Q           And did you -- did they release you

11   from your handcuffs so you could sign the statement --

12          A           Yes.

13          Q           -- at the point that you indicated

14   you'd be willing to sign the statement?

15          A           Yes.

16          Q           All right.  After you signed the

17   statement, what happened?

18          A           I was given food and I was told that

19   the armed robbery that I had is just going to be where

20   they can control me and if I cooperated with the murder

21   case that I'll be let go.

22          Q           Did you understand that to mean that if

23   you cooperated as a witness in the murder prosecution

**B.R.A.**

JR-L 02911

Exam.                                                                20

1   they would take care of your robbery case?

2          A       Yes.

3          Q       And by take care of, what did you --

4   what did you think that meant?

5          A       That's what I asked him, what did he

6   mean.  Rey explained it -- Rey Guevara explained it

7   to me that the armed robbery was just to have control

8   over me and all I had to do was give a statement to the

9   grand jury and to the state's attorney's office that

10  I was with Armando Serrano, Jose Pacheco -- I mean,

11  Jose Montanez, and Jorge Pacheco during this murder.

12         Q       Okay.  Now, with respect to the

13  statement, I'm going to go through some of it and

14  I want to ask you a few questions.  I'm not going to

15  go through the whole thing.  Were you with Armando

16  Serrano, Jose Montanez, Jorge Pacheco, on February

17  5th, 1993?

18         A       No.

19         Q       Is it fair to say that this statement

20  is in its entirety false?

21         A       Yes.

22         Q       And you've had an opportunity obviously

23  to look at the statement that they attribute to you?

**B.R.A.**

Exam.                                                              21

1          A       Yes.

2          Q       Now, Mr. Rankins, were you eventually

3  brought to Cook County Jail?

4          A       Yes.

5          Q       Did you have an opportunity to speak to

6  the prosecutor that was prosecuting the case against

7  Mr. Serrano and Mr. Montanez?

8          A       Yes.

9          Q       Do you remember what his name was?

10         A       Matt Coughlin.

11         Q       And when did you -- if you can

12 remember, where were you when you had the opportunity

13 to speak to him?

14         A       At the police station.

15         Q       Oh, before you came to Cook County?

16         A       Yes.

17         Q       Okay.  And did you tell him at that

18 time that Guevara was forcing you to make a false

19 statement?

20         A       Yes.

21         Q       And what did Mr. Coughlin or A.S.A.

22 Coughlin say to you?

23         A       He said to me, I don't care what you're

**B.R.A.**

Exam.                                                                22

1  saying, you're going to -- you're going to get on the

2  stand and you're going to tell me what this statement

3  said.

4         Q        And did at any point you have an

5  opportunity to visit the alleged scene of where the

6  murder of Rodrigo Vargas took place?

7         A        Yes.

8         Q        And who accompanied you there?

9         A        Guevara, Halvorsen, Mingey, and

10 Coughlin.

11        Q        And where did they take you, if you

12 remember, not exact location, but --

13        A        They drove me around for a few hours,

14 back and forth, around where they said the murder scene

15 was, by a school, and we was, I think, in a factory.

16        Q        Okay.  And did you eventually testify

17 before the grand jury?

18        A        Yes.

19        Q        And do you remember who brought you

20 to the grand jury?

21        A        Matt Coughlin, I believe, if I remember

22 correctly.

23        Q        You remember seeing him at the grand

**B.R.A.**

JR-L 02914

23

Exam.

1   jury?

2           A       Yes.

3           Q       And do you remember when you testified

4   in front of the grand jury?

5           A       No.

6           Q       Now, after you testified before the

7   grand jury, did you appear in your own armed robbery

8   case eventually?

9           A       Yes.

10          Q       And after appearing in your own armed

11  robbery case, did you continue to be housed in the Cook

12  County Department of Corrections or were you housed

13  somewhere else?

14          A       I was housed somewhere else.

15          Q       And where was that?

16          A       In the witness quarters.

17          Q       And when you say witness quarters, is

18  this the Cook County State's Attorney Witness Quarters?

19          A       Yes.

20          Q       And can you describe the Cook County

21  State's Attorney Witness Quarters a little bit?

22          A       Yes.  It had -- when you go in, you

23  are taken where -- like a garage.  When you go in, if

**B.R.A.**

JR-L 02915

24

Exam.

1   you go to the right, it's where -- you walk in the door,

2   there's a kitchen with a small dining hall to it, you

3   walk, and you'll see a cage where the officers -- where

4   the state's attorneys see you watching you sit, down

5   -- you go down farther, there's a phone right there

6   on the wall, when you go farther, there's a little --

7   there's a little area like a -- like a living room,

8   and there's like four or five couches there, and

9   there's a TV, a floor model TV, sitting on top of

10  a vault, on top of a safe, a big bank safe like.

11         Q       And did you have free movement

12  in the witness quarters?

13         A       Yes.

14         Q       Now, did you see anyone else in witness

15  quarters who you knew was a witness in this case, in the

16  Serrano or Montanez case?

17         A       Yes.

18         Q       And who was that?

19         A       Frankie, I forget his last name.

20         Q       Okay.  And would that be Frankie

21  Vicente?

22         A       Yes.

23         Q       Okay.  And when did you learn that

**B.R.A.**

Exam.

1 Frankie Vicente was also a witness in this case, if you

2 remember?

3      A     When he came to me and he told me

4 that he had to go over my statement with me.

5      Q     Okay. And did you happen to see

6 Detective Guevara ever in witness quarters?

7      A     Yes.

8      Q     Did he come to witness quarters?

9      A     He came quite often.

10      Q     And did you ever see A.S.A. Coughlin

11 in the witness quarters?

12      A     Yes.

13      Q     Now, were you given any sort of

14 benefits or privileges while you were housed in

15 the witness quarters?

16      A     Yes.

17      Q     Okay. Can you describe some of the

18 things that you received?

19      A     We was receiving shoes, jumpsuits,

20 cigarettes, special visits, phone calls.

21      Q     And when you say cigarettes, who would

22 bring you cigarettes?

23      A     Matt Coughlin in the State's Attorney's

**B.R.A.**

JR-L 02917

Exam.

1  Office.

2        Q        And would Detective Guevara ever bring

3  you cigarettes?

4        A        At times he would, and Matt Coughlin

5  would be with him when he brought them.

6        Q        I see.  And did you -- did anyone ever

7  give you cash?

8        A        Yes.

9        Q        And who was that?

10        A        Rey Guevara, when I was in the county.

11        Q        And did he get that cash from his

12  pocket or do you know how he --

13        A        He went in his pocket and passed it to

14  me.

15        Q        Now, when you say there was special

16  visits in the witness quarters, what do you mean by

17  that?

18        A        Your girlfriend or your family could

19  come down and they could sit with you and watch a movie

20  and they can cook food in the kitchen, but when they

21  cook, they had to cook for everybody.

22        Q        And did the special visits include

23  so-called conjugal visits ever?

**B.R.A.**

JR-L 02918

Exam.                                                                                    27

1          A          I never had a conjugal visit myself,

2   but at times you did have your -- your females to like

3   come in a room with you.

4          Q          So a female could go in the room with

5   you and no one would be the wiser if a conjugal visit

6   took place?

7          A          Right.

8          Q          Were there Cook County Sheriffs there?

9          A          No.

10         Q          So this was all personnel from the Cook

11  County State's Attorney's Office?

12         A          Yes.

13         Q          And they -- did they ever object if

14  people had girls in their private space?

15         A          No.

16         Q          Now, did you have any conversations

17  with Frankie Vicente about this case?

18         A          Yes.

19         Q          And did Frankie Vicente tell you that

20  he, too, had been abused by Detective Guevara?

21         A          Not at first.

22         Q          Okay.  And did he -- did you eventually

23  come to learn that he had been abused by Detective

**B.R.A.**

JR-L 02919

Exam.

28

1  Guevara?

2          A        Yes.

3          Q        And did he tell you what had happened?

4          A        He told me that -- when he told me he

5  had to go over my statement with me -- we had to both go

6  over our statements with each others, so that he could

7  know what I'd say in Court and I could know what he had

8  to say in Court.

9          Q        And did he say who told -- if anyone,

10  told him that he needed to do that?

11          A        He said Guevara did.

12          Q        Okay.  And what did you say in response

13  to that?

14          A        We got into a fight.

15          Q        Okay.  And when you say you got into a

16  fight, is that because you -- well, I don't want to put

17  words in your mouth, you tell me, why did you get into a

18  fight?

19          A        Because I told him that I'm not going

20  to get on the stand and testify against an innocent

21  person.  He went into saying something about some

22  armed robbery cases.  There's some cases that he

23  himself was going to get off on that was promised

**B.R.A.**

Exam.

29

1    him.  I walked away, I grabbed a broomstick, and I went

2    up the side of his head.  That's when the State's

3    Attorney's Office came in and broke it up.

4            Q       And after you got into a fight with

5    Frankie, where -- what happened?

6            A       I was put back in the county jail.

7            Q       And did you have any conversations with

8    Detective Guevara about what had happened?

9            A       Detective Guevara came to see me the

10   next day with Halvorsen and Matt Coughlin.

11           Q       And what happened?

12           A       They just told me that I should have

13   just cooperated and stayed inside the witness quarter

14   protection program and that everything would have been

15   all right.

16           Q       And were they unhappy with you?

17           A       Yes.

18           Q       Now, after you were removed from

19   witness quarters, what happened?

20           A       I was placed in the county jail and

21   then I was put on house arrest.

22           Q       They put you on house arrest?

23           A       Yes.

**B.R.A.**

JR-L 02921

Exam.                                                            30

1          Q          And was that with the Cook County

2    State's Attorney's consent?

3          A          Yes.

4          Q          And when you say house arrest, did

5    you have a monitoring bracelet or anything like

6    that?

7          A          Yes, I had to wear an electronic

8    monitor on my leg and one had to be at the house

9    hooked up to a telephone.

10         Q          And where did you get released to

11   then on the electronic monitoring?

12         A          To my mom's house.

13         Q          Now, while you were on electronic

14   monitoring, did you comply with it?

15         A          No.

16         Q          And were you eventually re-arrested?

17         A          I was telling them that I'm not going

18   to cooperate with them, so they told me, they said, well,

19   you're going to cooperate, so I took the -- I cut the

20   band off my leg and ran.

21         Q          And were you eventually caught?

22         A          Yes.

23         Q          And after you were caught, I take it

**B.R.A.**

31

Exam.

1  you were returned to the county.  Correct?

2          A        Yes.

3          Q        And were you put in protective custody?

4          A        When I return to the county?

5          Q        Yeah.  Do you remember if you were in

6  protective custody at that point or --

7          A        I don't remember.

8          Q        Okay.  Now, after -- after you were

9  returned to the county, were you still facing charges

10  on your own armed robbery?

11         A        Yes.

12         Q        And did you go back and forth to

13  Court for your armed robbery?

14         A        Yes.

15         Q        And during that time, did you have

16  any more conversations with either Guevara or the

17  State's Attorney's Office?

18         A        Yes.

19         Q        And what were -- what was the nature

20  of those conversations?

21         A        They wanted me to cooperate with them,

22  they said.  They wanted me to testify in Court.

23         Q        And what did you tell them?

**B.R.A.**

JR-L 02923

Exam.                                                                    32

1           A         I told them I'm not going to do it.

2           Q         And did you tell them why you weren't

3    going to do it?

4           A         I told him because I was forced to sign

5    a statement and I was beat and I'm not going to testify

6    against somebody who didn't do the crime.

7           Q         And was your armed robbery case

8    eventually resolved?

9           A         Yes.

10          Q         And did you testify in the Serrano,

11   Montanez matter?

12          A         No.

13          Q         Okay.  And just so it's clear, what was

14   the reason you didn't testify in the case?

15          A         I didn't testify in the case because I

16   didn't know these guys and I was made to sign a statement

17   saying that I knew these guys and that I was with these

18   guys when they committed the murder.

19          Q         And that statement, your testimony

20   today is that it was a false statement?

21          A         Yes.

22          Q         Now, Mr. Rankins, have you had any

23   contact with Mr. Serrano in the last decade?

**B.R.A.**

JR-L 02924

33

1        A     No.

2        Q     And are you here today telling this

3 statement of your own free will?

4        A     Yes.

5        Q     And why are you here making this

6 statement today?

7        A     I'm making the statement today because

8 I want the truth to be told, and that it's the truth that

9 the statement, that they made me sign it, and I wasn't

10 with the -- with the person who they said I was with.

11        Q     And when you signed that statement,

12 did you fear for your life?

13        A     Yes.

14        MS. BONJEAN:  All right.  I think that

15        concludes our statement.

16              (WHEREUPON, the sworn

17               statement was concluded)

**B.R.A.**

Exhibit S&

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS )
                                 )
              Plaintiff          )
                                 )
         vs.                     )     No. 93 CR 18173
                                 )
JOSE MONTANEZ                    )
                                 )
              Defendant          )

```
                                       ┌──────────────────────┐
                                       │  Deputy Clerk Signature │
                                       │  Dorothy Brown        │
                                       │  Clerk of the Circuit Court │
                                       │  Criminal Division    │
                                       │  AUG 24 2004          │
                                       │  TIME   AM            │
                                       │         PM            │
                                       │  FILED  201           │
                                       └──────────────────────┘
```

### NOTICE

TO:  Kurt Smitko
     Assistant State's Attorney
     2650 S. California Avenue
     Chicago, Illinois  60608

     PLEASE TAKE NOTICE that on or before August 24, 2004, I
will file with the Clerk of the Circuit Court, 2600 S.
California Avenue, Chicago, Illinois, for presentation to the
Honorable Clayton J. Crane, defendant's Post-Conviction
Petition, a copy of which is hereby served upon you.

                              _____
                              FREDERICK F. COHN
                              Attorney for Defendant
                              35 E. Wacker Drive
                              Suite 595
                              Chicago, Illinois  60601
                              (312) 641-0692
                              Atty. No. 02184


### CERTIFICATE OF SERVICE

     I hereby certify that I have served a copy of the within
Notice and Petition upon the above addressee by mailing same
to him this ___ day of August, 2004.

                              _____
                              FREDERICK F. COHN

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS )
                                )
           Plaintiff      )
                                )
   vs.                   )     No. 93 CR 18173
                                )
JOSE MONTANEZ                )
                                )
         Defendant    )

<u>POST-CONVICTION PETITION</u>

Now comes defendant, Jose Montanez, by Attorney Frederick F. Cohn, and moves for a new trial pursuant Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, <u>et seq.</u>, and 735 ILCS 5/2-1401.

In support hereof it is asserted:

1. Defendant was tried in this case in a bench trial before the Honorable Michael B. Bolan.

2. Defendant was represented by Assistant Public Defender George Greca.

3. Although severed, defendant was tried with co-defendant, Armando Serrano (represented by Donna Makowski), Gregory Vasquez and Jorge Pacheco (represented by Assistant Public Defender Clare Hillyard).

4. Defendant was convicted of murder, sentenced to forty-five years and convicted of attempt armed robbery, sentenced to ten years consecutive. Co-defendant Pacheco was found not guilty. The other co-defendant was found guilty and received the same sentence as defendant.

5. The murder occurred on February 5, 1993. There were no eyewitnesses to the murder. The crucial witness against

defendant was Francisco Vincente.  He was a gang member who
asserted defendant confessed to him that defendant committed
the crime.  This confession was related to the police by
Vincente after Vincente was arrested for many crimes,
including three armed robberies and one robbery.  At the time
he testified against defendant, Vincente had four serious
crimes pending against him.  They were three armed robberies
(Tr. 138) and one robbery.  (Tr. 138, Exhibit 1)  He was
arrested under the name of Carlos Morales.  He pled guilty as
part of a deal on those four cases.  He received four years on
the armed robberies concurrent with three years on the
robberies.

Because he was an informer, his testimony had to be
considered with care and caution.  In On Lee v. United States,
343 U.S. 747, 96 L.Ed. 343 at 343 U.S. at 757, the court
stated:

> "The use of informers, accessories,
> accomplices, false friends, or any of the other
> betrayals which are 'dirty business' may raise
> serious questions of credibility."

Federal Jury Practice and Instruction 9.02 reads:

> "The testimony of an informer, or any witness
> whose self-interest or attitude is shown to be such
> as might tend to prompt testimony unfavorable to the
> accused, should always be considered with caution
> and weighed with great care."

6.  See also I.P.I. Accomplice Instruction 3.17.

7.  At the time that Vincente testified in this case, he
was listed as a witness for the State in two other cases.
(Tr. 93, 126-27, Exhibit 2)  He was a State witness to testify

2

against three different defendants as to murder confessions they allegedly gave to him.  (Tr. 126-27)

8.   Society has recently determined that confessions allegedly related to informers suffer from serious credibility problems, especially when the informer is receiving benefits for his testimony.  (See Exhibit 3.)

9.   Mr. Vincente was a heroin addict at the time he provided information.  (Tr. 206, Exhibit 4)

10.   Evidence has been obtained that Francisco Vincente committed perjury as distinct from merely presenting erroneous testimony.  He has now provided a statement asserting his own perjury.  (Exhibit 5)

11.   The perjury here was caused by actions of the police.  (See Affidavit, Exhibit 5.)

12.   Prosecutors are responsible for perjury caused by police.

13.   Perjury caused by police violates due process.

14.   There is sufficient allegation as to require an evidentiary hearing.

15.   Defendant was not culpably negligent in failing to file a P-C at an earlier time.  He did not provide his present statement until May 26, 2004.

3

WHEREFORE, it is prayed as above.

Respectfully submitted,

_____

FREDERICK F. COHN
Attorney for Defendant
35 E. Wacker Drive
Suite 595
Chicago, Illinois  60601
(312) 641-0692
Atty. No. 02184

## AFFIDAVIT

FREDERICK F. COHN, being first duly sworn on oath, deposes and states that he has read the above and foregoing Post-Conviction Petition by him subscribed and that same is true in substance and in fact.

_____

FREDERICK F. COHN

Subscribed and sworn to
before me this _____ day
of August, 2004.

_____

NOTARY PUBLIC

4

Exhibit S&

STATE OF ILLINOIS   )
          )   SS
COUNTY OF COOK   )

---

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

---

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) | |
| ) | |
| Respondent, ) | |
| ) | |
| vs. ) | No. 93-CR-18173 |
| ) | |
| ) | |
| ARMANDO SERRANO and JOSE ) | The Honorable |
| MONTANEZ, ) | Maura Slattery Boyle |
| ) | Judge Presiding |
| Petitioners. ) | |

---

## SUPPLEMENTAL POST-CONVICTION PETITION

---

Now comes Petitioner, **ARMANDO SERRANO**, by his attorney **JENNIFER BONJEAN** and respectfully requests discovery outlined below.

### BACKGROUND

1.  On October 21, 1994, Armando Serrano was convicted of first degree murder and armed robbery in a simultaneous but severed bench trial before the Honorable Michael B. Bolan. Serrano's co-defendants Jose Montanez and Jorge Pacheco were also convicted.[1]

2.  On March 3, 1995, Judge Bolan sentenced Mr. Serrano to a term of 45 years'

---

[1] Judge Bolan later reversed his guilty finding with respect to Jorge Pacheco and entered a finding of not guilty as to Pacheco.

imprisonment for murder and 10 years for attempt armed robbery to be served consecutively.

3.　　Serrano's convictions and sentence were affirmed on direct appeal. *People v. Serrano*, 1-95-1249, Unpublished Rule 23 Order (1st Dist., October 28, 1997)

4.　　On August 9, 1999, Mr. Serrano filed a *pro se* post-conviction petition that was summarily dismissed. That dismissal was also affirmed on appeal.

5.　　On August 24, 2004, Mr. Serrano's co-defendant, Jose Montanez, filed a counseled petition for post-conviction relief based on the recantation affidavit of the State's key witness Francisco Vicente. Mr. Serrano subsequently filed a post-conviction petition based on Vicente's affidavit and a cornucopia of affidavits, transcripts, OPS complaints (and other supporting documentation) revealing that the lead detective in this matter, Reynaldo Guevara, had engaged in a pattern and practice of coercing evidence (including the testimony of Francisco Vicente) through the use of threats, intimidation, lies, and physical abuse.

6.　　Mr. Serrano's petition was docketed on September 16, 2005. The Honorable Judge Jorge Alonzo denied the State's motion to dismiss on August 27, 2007 and ordered that the case advance to a third-stage evidentiary hearing.

7.　　On January 5, 2011, Mr. Serrano's previous attorney, Jeffrey Urdangen of the Northwestern University Center on Wrongful Convictions sought leave to withdraw as Mr. Serrano's attorney. That request was granted and Steven Becker requested leave to file his appearance on behalf of Mr. Serrano. This Court denied Mr. Becker's request on February 17, 2011, citing an irreconcilable conflict of interest.

8.　　Jennifer Bonjean was granted leave to file her appearance on behalf of Mr. Serrano on May 9, 2011.

9. On July 11, 2011, the office of the Cook County State's Attorney issued subpoenas to various third-parties, including Logan Correctional Center, the Illinois Department of Corrections, Northwestern University Center on Wrongful Convictions, Sergio Seritella, Medill School of Journalism, and David Protess.

10. On August 30, 2011, the State discovered that the third-party subpoenas contained a typographical error and had to be reissued.

11. On October 18, 2011, the office of the Cook County State's Attorney filed a "Supplemental Motion for Discovery" requesting leave to search three additional hard drives from computers used by staff at Medill that were in the custody and control of Richard O'Brien of Sidley and Austin. This Court allowed the motion and granted the State leave to subpoena materials from Sidley.

12. To date, subpoenas have not been returned by Northwestern Medill School of Journalism, Sergio Seritella, or Sidley and Austin.

13. Serrano's former attorney, Jeffrey Urdangen, of the Center on Wrongful Convictions previously produced various memorandums related to interviews conducted with the State's key witness, Francisco Vicente. Additionally, the Illinois Department of Corrections produced Vicente's IDOC "Master File."

14. Critically, two new documents were produced to the State and defense counsel which contain facts that form the basis of additional constitutional claims. Affidavit notes from interviews with Francisco Vicente by Medill Journalism students reveal that Vicente was given additional undisclosed benefits by Guevara and the State in exchange for his trial testimony. And that the State knew or should have known that Vicente's trial testimony was false. Exhibit A -

3

Affidavit Notes from Interview with Francisco Vicente. Further, Vicente's final sentencing order which was produced for the first time from the Illinois Department of Corrections reveals that Vicente was given additional pre-custody credit to which he was not entitled and which reduced his sentence by an entire year. Exhibit B - Vicente Sentencing Order.

15.     In light of this newly discovered evidence which forms the basis of additional constitutional claims, Petitioner Serrano now seeks to supplement his previously filed post-conviction petition.

## SUMMARY OF TRIAL EVIDENCE

16.     In the early morning hours of February 5, 1993, Rodrigo Vargas was shot to death. His body was found inside his parked and locked van at 1838 N. Springfield Ave near his home. Mr. Vargas's radio and wallet containing $190 were locked inside his van. (R. K68) Police recovered eight 9mm shell casings next to the van. (R. K27-28)  The State's star witness was a convicted felon and notorious heroin addict, Francisco Vicente.

17.     Vicente testified that at 8:00 a.m. on February 5, 1993 he was on the corner of Harding and Altgeld when he saw Serrano, Montanez, and Pacheco drive up in a tan Buick. (R. I71-73) Vicente, who was high on heroin, claimed that Montanez removed a 9mm pistol from under the dashboard and hid it in an air vent in the car. (R. I75) Vicente claimed that the defendants were talking about having committed a murder. (R. I76)

18.     Vicente elaborated that Montanez told him that the day before the shooting, they saw a Mexican guy at a gas station pull out a "big knot of money" and that they had made plans to stick him up. According to Vicente, Serrano did not dispute Montanez's claims. (R. I79-81) Vicente further testified that Montanez later told him that Pacheco smashed his car, the tan

4

Buick, during the course of the robbery. (R. 184-86)

19.    At the time of his testimony, Vicente was in custody facing multiple charges for armed robbery. Vicente did not go to the police with his knowledge of the Vargas shooting. Rather, Vicente purportedly shared his knowledge of Serrano, Montanez and Pacheco's involvement in the shooting *after* he was arrested for a string of robberies.

20.    Incredibly, after his arrest, Vicente also became the state's key witness in two other murder cases involving Detective Guevara.  In exchange for his testimony in the Serrano case, the State recommended a minimum sentence of nine years (in total) for his four robbery cases. While waiting to testify in all three murder cases, Vicente was part of the State's Witness Protection Program. While incarcerated in the State's witness quarters, Vicente admitted to receiving the following benefits: cigarettes, a radio, special meals, a Nike suit, and visits with his girlfriend. Vicente expressly denied receiving conjugal visits.

21.    On October 21, 1994, the Court found Mr. Serrano guilty of first degree murder and attempt armed robbery. In his ruling, Judge Bolan acknowledged that the State's hinged on the testimony of Francisco Vicente. (R. K112)

22.    The appellate court rejected Mr. Serrano's argument that the State failed to prove him guilty by proof beyond a reasonable doubt, finding that "The trial court was in the best position to judge the credibility of Vicente's testimony, and the court found is sufficient to support the Defendant's conviction." *People v. Serrano*, Unpublished Rule 23 Order at pg. 10-11 (1st Dist., October 28, 1997).

## CONSTITUTIONAL CLAIMS

I. **SERRANO WAS DENIED HIS DUE PROCESS GUARANTEES UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 2 OF THE ILLINOIS CONSTITUTION WHEN THE STATE FAILED TO DISCLOSE THAT FRANCISCO VICENTE RECEIVED: (1) ROUGHLY $1800 FROM THE STATE AND ADDITIONAL MONEY FROM REYNALDO GUEVARA; (2) ACCESS TO DRUGS WHILE IN STATE WITNESS QUARTERS; (3) CONJUGAL VISITS WITH DIFFERENT WOMEN WHILE IN STATE WITNESS QUARTERS; AND (4) AT LEAST 184 DAYS OF PRE-SENTENCING CREDIT TO WHICH HE WAS NOT ENTITLED - ALL IN EXCHANGE FOR HIS TRIAL TESTIMONY.**

23. Petitioner realleges and reasserts paragraphs 1-22 as though set out herein.

24. In response to the State's third-party subpoenas issued on August 30, 2011, the Illinois Department of Corrections tendered Francisco Vicente's "Master File." Mr. Serrano's prior attorney Jeffrey Urdangen previously tendered two lengthy memoranda memorializing Medill Journalism students' meetings with Vicente, namely "Team Serrano Memo" and "Affidavit Notes." In those memoranda, Vicente reveals that he received a wide-range of benefits from the State that were concealed from the Defendant. Exhibit A - Affidavit Notes

25. Specifically, the memoranda reveal the following facts that were not adduced at Defendant's trial and in some cases were expressly denied by Vicente in his testimony.

- Vicente received $1200 in cash, plus $400 or $500 in moving expenses from the State

6

- Vicente had access to drugs while housed in the "Q" under the custody and control of the office of the Cook County State's Attorney.

- Vicente received money from Guevara when he asked for it

- Vicente was permitted conjugal visits with both his wife, Michele Vicente and his ex-wife Dolores Medina and claims to have fathered a child while in state custody.

- Vicente falsely testified in both the Bouto and Iglesias's case and was promised leniency in his pending robbery cases in exhange for his testimony in all *three* cases.

- Vicente reported "Jack O'Malley's office, that was so corrupt. I had clothes, jewelry, and money sent me to send home. The day it was over was the day they had used me for all their cases and they had Big Muddy River in SMU. Sometimes I'd get a call from John Dillon he'd ask if I was all right."

26.     Additionally, Petitioner has discovered that Vicente received a minimum of 184 days of credit for time served that he didn't actually earn. Exhibit B - Vicente's Sentencing Order.

27.     Vicente's sentencing order, produced to the Defendant for the first time in August, 2011 reveals that after testifying in the Bouto, Iglesias and Serrano prosecutions, Vicente was sentenced on September 23, 1996 by the Honorable Judge Fred Suria. Exhibit C - Transcripts from Vicente's Sentencing Hearing. ASA Dillon represented to the Court that Vicente had served 1476 days in pre-trial custody and prepared Vicente's sentencing order reflecting 1476 credit for time considered served. In reality, Vicente had served no more that 1292 days. In short, Vicente

7

received a benefit of 184 days credit which reduced his sentence in real time by an entire year. This benefit was never disclosed to the Defense.

28.     The United States Supreme Court held in *Brady* that the prosecution is required to turn over to the defense upon request any evidence that is favorable to the accused and a failure to do so results in a denial of Due Process where the evidence is material to guilt or to punishment. *Brady v. Maryland, People v. Coleman*, 206 Ill.2d 261, 285 (2002).

29.     In *United States v. Agurs*, 427 U.S. 97 (1976), the Court held that the duty to disclose applies even when there has been no request for the exculpatory evidence.

30.     In *United States v. Bagley*, 473 U.S. 667, 676, the Court held that the duty to disclose includes impeachment evidence as well as exculpatory evidence.

31.     *Brady* also applies to the exculpatory evidence known only to the police and not to the prosecutor. *Kyles v. Whitley*, 415 U.S. 419, 433-434 (1995). An individual prosecutor is required to learn of favorable evidence known to others acting on behalf of the government in the case. *Id.* at 437. *Coleman*, 206 Ill. 2d at 285.

32.     Evidence if material if a reasonable probability exists that, had the evidence been disclosed, the result of the proceeding would have been different. *Bagley*, 473 U.S. at 682. *Colemen*, 206 Ill. 2d at 285.

33.     Documents tendered to the defense for the first time in August, 2011 reveal that the State's key witness received various undisclosed benefits in exchange for his testimony, ranging from cash to nearly a year off his supposed 9-year sentence.

34.     Taken as true, these fact indisputably show that the State concealed exculpatory evidence that would have critically impeached its key witness, Frankie Vicente. There is no

8

question that the Court's view of Frankie Vicente's credibility would have been critically undermined by the revelation of the above-named benefits.

35.    Because Vicente's testimony was the lynchpin to the State's case, a reasonable probability exists that had the State disclosed the extensive benefits given to Vicente in exchange for his testimony, the result of the proceedings would have been different.

36.    Accordingly, Mr. Serrano has established that his Due Process guarantees were denied when the State withheld *Brady* material and this Court must grant Serrano the opportunity to prove this claim at an evidentiary hearing.

## II.    SERRANO WAS DENIED HIS DUE PROCESS GUARANTEES UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 2 OF THE ILLINOIS CONSTITUTION WHEN THE STATE KNOWINGLY ELICITED FALSE TESTIMONY OR FAILED TO CORRECT FALSE TESTIMONY OF FRANCISCO VICENTE.

37.    Petitioner realleges and reasserts paragraphs 1-36 as though set out herein.

38.    The recently disclosed memoranda of Medill Journalism students further reveal that ASAs Coughlan and Dillon knowingly suborned perjury from Francisco Vicente and failed to correct false testimony.

39.    In his affidavit, Vicente admits that his testimony at Serrano's trial was "false in all respects" and that his false testimony was a result of intimidation and physical abuse of Detective Reynaldo Guevera. *See* Exhibit 3 of Petitioner's Post-Conviction Petition.

40.    As memorialized in memoranda prepared by Northwestern Journalism students, Vicente reveals that he was coached to testify falsely in Serrano's case and two other murder

prosecutions (Bouto and Iglesias cases) also investigated by Detective Guevara and prosecuted by ASAs Coughlan and Dillon.

41.     Vicente states that ASAs Dillon and Coughlan knew, condoned, and promoted Guevara and Halvorsen's coaching of Vicente in the Serrano, Bouto and Iglesias cases. Guevara and Halvorson's coercion and coaching of Vicente occurred under the watchful eye of ASAs Dillon and Coughlan in the office of the Cook County State's Attorney.

42.     The rule is well-established that the State's knowing use of perjured testimony to obtain a criminal conviction constitutes a violation of Due Process of law. *People v. Olinger*, 176 Ill. 2d 326, 345 (1997). A conviction obtained by the knowing use of perjured testimony must be set aside if there is a reasonable likelihood that the false testimony could ave affected the jury's verdict. *Id. See United States v. Bagley*, 473 U.S. 667, 678-80 (1985).

43.     The same principles apply where the State although not soliciting the false testimony, permit it to go uncorrected. *Olinger*, 176 Ill. 2d at 345. *See also, Napue v. Illinois*, 360 U.S. 264 (1959).

44.     It is equally well established that the above principles apply even were the witness' false testimony goes only to the witness' credibility. *Id.* This is because the "jury's testimony of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that defendant's life or liberty may depend." *Id.*

45.     Here, Vicente claims that the State not only knew that his testimony in Serrano's case (and two other murder prosecutions) was false but that with the aid of their henchman Detective Guevara coached that false testimony. Vicente claims that he met multiple times with

10

Guevara and the ASAs Dillion and Coughlan in the Gang Crimes Unit where his testimony was fed to him.

46.    Furthermore, Vicente was expressly asked on cross-examination during trial whether he was permitted to receive conjugal visits while housed in the State's witness quarters. Vicente denied that he was given conjugal visits. However, Vicente now claims that he received conjugal visits with at least two separate women and that he even fathered a child while in State custody.

47.    Given the foregoing allegations, which must be accepted as true, Serrano has established that his Due Process guarantees were denied when the State knowingly suborned false testimony from Frankie Vicente and failed to correct Vicente's false testimony.

## CONCLUSION

48    For the foregoing reasons, Petitioner respectfully requests that this Court advance these claims to third-state post-conviction proceedings.

Respectfully Submitted,

JENNIFER BONJEAN

Jennifer Bonjean
Bonjean Law Group, PLLC
142 Joralemon St., Ste. 5A
Brooklyn, NY 11201
718-875-1850
jennifer@bonjeanlaw.com

11

Exhibit S&*



**ATTORNEY WORK PRODUCT**
**PRIVILEGED AND CONFIDENTIAL**

## MEMORANDUM

| | |
|---|---|
| TO: | File |
| FROM: | Daniel Greenfield |
| | Jeff Carroll |
| RE: | Guevara Investigation – Armando Serrano and Jose Montanez |
| DATE: | March 3, 2015 |

---

I.    **Introduction**

We investigated three cases in which defendants purportedly confessed to the same person: Francisco Vicente. The defendants in these cases are Robert Bouto, Armando Serrano and Jose Montanez, and a third defendant.

Principally, the factual background relevant to claims of misconduct and actual innocence is as follows. On 5/14/93, Francisco Vicente, a member of the Imperial Gangsters street gang, was arrested in connection with three armed robberies and one simple robbery he was suspected of having committed over the prior ten months. Beginning the following morning and continuing for approximately six weeks, Dets. Rey Guevara and Ernest Halvorsen reported that Vicente had obtained confessions in three unrelated murder cases. In each case, the record indicates that Vicente's confession evidence was corroborated by a second informant—Edwin Maldonado in connection with the case against Bouto; Timothy Rankins in connection with the case against Montanez and Serrano; and a still-anonymous confidential informant in connection with the case against third defendant.[1] In two of the cases, Dets. Guevara and Halvorsen reported that Vicente first provided that evidence to someone other than them—in the Bouto case, the record indicates that Vicente first shared evidence against Bouto with Det. Maher or another detective or officer, who then alerted Det. Halvorsen; in the Montanez/Serrano case, the record indicates that Rankins first provided evidence against Montanez, Serrano, and Pacheco to Sgt. Ed Mingey, who then alerted Dets. Guevara and Halvorsen.

Since Dets. Guevara and Halvorsen initially reported this information, it has been recanted by Rankins, Maldonado, and Vicente. First, beginning in 1994 and continuing to the present day, Rankins has recanted the evidence that he provided against Montanez and Serrano, alleging that it was coerced from him by a lengthy list of police and prosecution personnel, including Dets. Guevara and Halvorsen. Then, starting in 1996 and continuing to the present day,

---

[1] Bouto, Serrano, and Montanez remain incarcerated pursuant to these convictions, whereas the third defendant was released under supervision recently.

**SIDLEY**
SIDLEY AUSTIN LLP

Maldonado recanted the evidence that he provided against Bouto, alleging first that he was pressured to do so by Vicente but years later also claiming that police personnel coerced him. In 2003, Vicente told students investigating possible wrongful convictions that the confession evidence he provided in all three cases had been fabricated, alleging that he had been coerced by Dets. Guevara and Halvorsen. On later occasions he negotiated for various benefits in return for executing an affidavit and potentially providing testimony in connection with the Montanez/Serrano post-conviction matter. Other individuals who served time with Vicente—specifically, Lydell Williams and Valentine Gomez (aka "Tomato")—have also provided information potentially corroborating Vicente's recantations in the Bouto and Montanez/Serrano matters, respectively. Finally, some non-informant witnesses in the Bouto and Montanez/Serrano matters have described actions by Det. Guevara that, if accurate, could constitute misconduct.

For purposes of investigating these allegations, we analyzed the record and conducted interviews with individuals involved in these cases. In this report, we present a detailed statement of facts, our analyses and findings, and our conclusions regarding allegations of misconduct and claims of actual innocence in the Montanez/Serrano case. We were not able to make comprehensive conclusions in the third defendant's matter.

## II. The Montanez/Serrano Case

### 1. Introduction

To analyze the case against Serrano and Montanez for purposes of assessing claims of misconduct and, separately, their claims that they are actually innocent, we reviewed and analyzed the complete record in the matter. We also interviewed or met with sixteen people connected with the case, including the following:

- Det. Ernest Halvorsen (reporting detective)
- Sgt. Ed Mingey (interviewed purported eyewitness Tim Rankins)
- Capt. Lupe Pena (arrested Francisco Vicente and Jose Montanez)
- Jose Montanez (defendant)
- Armando Serrano (defendant)
- Tim Rankins (purported eyewitness)
- Demond Williams (aka "Shorty Folks") (purported eyewitness)

We note that we were unable to interview Det. Guevara or State's witnesses Francisco Vicente, Wilda Vargas, and Anna Velez, who also had significant roles in the matter. Specifically, Det. Guevara and Vicente have been advised by counsel not to consent to interviews with us. Wilda did not respond to multiple messages left by us at her home or the bar she co-owns, and appears to be avoiding us. Velez, we learned from our private investigator, is suffering from dementia, and had no relevant recall during a conversation with him.

First, we present the facts, and then our analysis. We begin our analysis by examining the confession evidence provided by Vicente and Rankins, including its recantation. We conclude our analysis by examining the evidence provided by sources other than Vicente and Rankins.



2.     **Statement of Facts**

a.     **The Shooting**

On 2/5/93, at approximately 5:32 a.m., Rodrigo Vargas was shot to death in his van in front of his home at 1838 N. Springfield Ave. (2/6/93 Supplemental Report ("Supp. R.").) The bullets that killed Vargas had been "fired into the vehicle from the driver's side door area," shattering the front driver's side window. (*Id.* at 7.) Springfield is a one-way street, and therefore the driver's door adjacent to the curb. (*Id.*)

The shattering glass caused "numerous cuts on the face in an around the eyes" [sic] of Vargas. (*Id.* at 2; *also see* Photos in Evidence.) Vargas was shot five times. (*Id.* at 2.) One shot entered his "left upper arm" and exited "the inside of his left upper arm." (*Id.*) Two shots entered his lower back and two entered his upper back. (*Id.*) Two "essentially intact" bullets were "found in the front upper clothing of the victim[.]" (*Id.* at 7.) Vargas's "feet were to the front, under the dashboard" when found, and, combined with the abrasions on his face, police determined that "[i]t appeared that the victim was looking at the window at the time one of the shots was fired before he attempted to get to the rear of the vehicle." (*Id.*)

b.     **The Initial Investigation**

Chicago Police Department ("CPD") officers and detectives began arriving on the scene at 8:25 a.m. (2/5/93 General Offense Case Report.) Upon arriving, they found the van's engine running, its parking gear engaged, and its doors locked. (10/18/94 Trial Transcript, Vol. 1 at 64-65.) Vargas was holding a pull-out radio and lay atop a lunch bag. (2/6/93 Supp. R. at 7.) On Vargas's person was found $190 in cash (10/19/94 Trial Transcript, Vol. 3 at 10), and a receipt for $300 from an unidentified source. (2/5/93 General Progress Report.) After examining the scene and interviewing witnesses, Dets. N. Jack and R. Schak reported that "[t]he victim was shot several times as he sat in his vehicle preparing to go his place of employment." (2/6/93 Supp. R. at 3.) Vargas was still wearing his scarf and a cap. (Photos in Evidence.) There was no evidence of a struggle according to responding Officer Jeff Show. (10/18/94 Trial Transcript, Vol. 1 at 65.)

Police canvassed the neighborhood interviewing potential witnesses. (2/5/93 Supp. R.; 2/6/93 Supp. R. at 8-11.) Wilda Vargas, the victim's wife, informed CPD that her husband had "no enemies" and "no problems" and that she could think of no reason for his murder, noting only that her husband's van had been stolen a year earlier but recovered.[2] (2/6/93 Supp. R. at 8-9.) She further informed police that nothing appeared to have been taken from Vargas's van or his person. (*Id.* at 7.)

---

[2] For purposes of clarity, we henceforth refer to the victim as "Vargas" and his widow as "Wilda."

3

**SIDLEY**
SIDLEY AUSTIN LLP

Anna Velez, Vargas's neighbor and friend, had discovered Vargas's body and called CPD. (2/6/93 Supp. R. at 8.) She stated to police on-scene that at 5:30 a.m. she looked out her window and noticed Vargas's van parked at the curb beneath with its engine running. (2/5/93 Supp. R. at 8.) Velez, who lived two houses south of the Vargas home, "sometimes" saw Vargas as he warmed up his van in the morning. (10/18/94 Trial Transcript, Vol. 1 at 32, 37). On the morning of the murder, she "saw the van was – he was heating up the van." (*Id.* at 38.) She could tell, she said, because of "the smoke that comes out through the back when you turn on the car." (*Id.*) Velez stated that two to three minutes later, while she was in the bathroom (*Id.* at 29), she heard gun shots and looked out the window, but "did not observe anyone, did not see any cars moving and did not notice anything unusual." (2/6/93 Supp. R. at 8.) Velez also specified she did not hear any yelling from outside. (10/18/94 Trial Transcript, Vol. 1 at 32, 37.) Later, after it became light out, she observed that Vargas's van remained parked at the curb, still running, at which time she discovered his body. (2/6/93 Supp. R. at 8.)

Police also spoke to Gary Shoop, another neighbor. (2/5/93 Supp. R. at 3.) He was awakened by gunshots and "peered out the window." (10/18/94 Trial Transcript, Vol. 1 at 44.) At that time, he saw an older, light brown sedan, possibly a two-door vehicle, driving northbound on Springfield Ave. (2/5/93 Supp. R. at 3.)

Judy Milinkovic, who was on her way to visit her mother-in-law two doors away from the Vargas home at about 5:30 a.m.—i.e., about two minutes prior to the shooting—as she did most mornings at that time, told CPD that she "believed" she saw Vargas as he was exiting his home. (2/6/93 Supp. R. at 9-10.) She reported that she did not see anyone on the street other than Vargas. (*Id.*) "A few moments later," after entering her mother-in-law's home, Milinkovic heard gun shots. (*Id.*) Milinkovic also saw the sedan that Shoop described. (*Id.*)

The day after the shooting, 2/6/93, Detectives N. Jack and R. Schak interviewed Benjamin Salazar because he and a friend, Antonio Rojo, had been victimized several weeks earlier during an incident characterized by police as "very similar." (2/6/93 Supp. R. at 11.) Although both Salazar and Rojo saw the African-American offenders, Rojo had a better vantage, and Dets. Jack and Schak reported plans to interview Rojo "as soon as possible."[3] (*Id.*) The investigative record went silent, however, on 2/6/93, and remained so until 3/11/93.[4]

---

[3] Neither Rojo nor Salazar participated in the line-up identifications of Montanez and Serrano (6/11/93 Supp. R. by G/H, Rankins Line-Up; 6/11/93 Supp. R. by G/H, Wilda Line-Up; 7/10/93 Supp. R. by G/H, Line-Up), which both took place before ballistics evidence was returned indicating that the same weapon was not used in the incident involving them and the murder of Vargas. (9/25/93 Ballistics Comparison.)

[4] Although Dets. Guevara and Halvorsen each testified that he began investigating the case on 2/6/93, the day after the murder (10/21/94 Trial Transcript at 4; 10/19/94 Trial Transcript, Vol. 3 at 108), the initial investigation reports were prepared by other personnel and do not reference the participation of either Det. Guevara or Halvorsen. Det. Halvorsen's name first appears in the record within the Supp. R. dated 6/2/93.

4

**SIDLEY** | SIDLEY AUSTIN LLP

On 3/11/93, at the request of Det. Guevara, Velez submitted to a polygraph examination. (3/17/93 Crime Lab Report.) Det. Guevara's request reflected the first time his name appeared in the Vargas investigative record. (*Id.*) The resulting report indicated that Velez "allegedly tells people [she] saw offenders," which she denied during the polygraph.[5] (*Id.*) Handwritten notes accompanying the polygraph report read: "Deception Indicated." (*Id.*) After Velez's polygraph results were reported on 3/17/93, the investigative file in the Montanez/Serrano case again goes silent through 6/2/93, but for a ballistics laboratory report and Vargas's toxicology laboratory report. (4/6/93 Ballistics Report; 2/16/93 Toxicology Report.)

c.  **Vicente is Arrested**

On 5/14/93, Francisco Vicente, aka "Chino," a member of the Imperial Gangsters street gang, was arrested by Officers Lupe Pena and Luis Marron in connection with three armed robberies, all class X offenses, and one simple robbery he was suspected of having committed over the prior ten months. (5/14/93 Francisco Vicente Arrest Report; 9/23/96 Francisco Vicente Change of Plea Hearing.) A suspected accomplice of Vicente's, Kenneth Thrane, nicknamed "Kenny," was also arrested at about that time. (Vicente Armed Robbery File.) (Vicente, who admitted to having a "bad" heroin habit and who later acknowledged robbing people in order to support his habit, committed three of the robberies in order to steal his victim's gold jewelry, all of them at gun or knifepoint. (Vicente Armed Robbery File.)) In the other, he stole a bicycle from a school-age child. (9/23/96 Francisco Vicente Change of Plea Hearing.) Vicente also had an extensive prior criminal history. (*Id.*)

d.  **Unknown CPD or ASAs Request Criminal History of Defendants**

Although not reported in the Vargas investigative file (i.e., the RD File), on 5/25/93 unknown police or prosecution personnel requested the criminal histories of Jose Montanez, Armando Serrano, and Jorge Pacheco.[6] (5/25/93 Criminal Histories.) There is no evidence that we are aware of that Montanez, Serrano, or Pacheco committed any criminal activity on or about that date.[7]

---

[5] Velez did not participate in the eventual police station line-up identifications of Montanez and Serrano. (6/11/93 Supp. R. by G/H, Rankins Line-Up; 6/11/93 Supp. R. by G/H, Wilda Line-Up; 7/10/93 Supp. R. by G/H, Line-Up.)

[6] We obtained this documentation from the City in July of 2014 in response to requesting from our client additional material concerning this and other cases we were asked to evaluate.

[7] Montanez's criminal history contains a 5/17/93 entry, reading "BFW No FOID," which means "Bond Forfeiture Warrant" related to a weapons charge. (5/25/93 Criminal Histories.) Serrano obtained some minor charges in late April, but none in May. (*Id.*) And Pacheco was not charged with anything in April or May of 1993. (*Id.*)

**SIDLEY**
SIDLEY AUSTIN LLP

e.    **The Evidence Reportedly Obtained From Vicente**

(i)    **Det. Halvorsen Decides to Question Vicente About the Vargas Murder**

One week later, in a Supp. R. dated 6/2/93, and approved 6/3/93, but reflecting evidence reported to have been gathered as late as 6/6/93, significant investigative activity is reported for the first time since Velez's polygraph. (6/2/93 Supp. R. by G/H.) Specifically, at time unknown on 6/2/93, a "circumstantial witness who for his own safety must remain anonymous" was reported to have informed both Dets. Guevara and Halvorsen that on 6/2/93, he had been present, four months earlier, when Montanez, Serrano, and Pacheco discussed having murdered Vargas.[8] (*Id.*) The anonymous circumstantial witness was described as a member of the Imperial Gangsters street gang, and he identified the defendants by street name, accurately, as Pistol Pete, Mando, and Jordan.[9] (*Id.*) More than three weeks later, the circumstantial witness was identified as Vicente.[10] (6/28/93 Vicente HW Statement by H.)

At trial, Det. Halvorsen described the circumstances of that meeting, explaining that he interviewed Vicente on 6/2/93 because he "had heard rumors on the street that a guy by the name of Pistol Pete was involved" in the Vargas murder.[11] (10/19/94 Trial Transcript, Vol. 3 at 82.) These rumors, according to Det. Halvorsen, were "unsubstantiated" and he "had no evidence to involve Pistol Pete in a crime whatsoever." (*Id.*) Moreover, there were "many Pistol Petes" in the "nickname file," a circumstance that he testified rendered the alias information "utterly useless" to him. (*Id.* at 116.) Det. Halvorsen had learned, however, during the course of "talk[ing] to [Vicente] about the Robert Bouto investigation" on "[t]he date Francisco Vicente was

---

[8] It is not clear to us whether Det. Guevara was in fact at the meeting with Vicente as it is reported in the Supp. R. dated 6/2/93. Although Vicente testified that Dets. Guevara and Halvorsen were both present (Trial Transcript, Vol. 2 at 98-99, 128), Det. Halvorsen testified that he interviewed Vicente without Det. Guevara present. (10/19/94 Trial Transcript, Vol. 3 at 81.) However, Det. Halvorsen told us that he and Det. Guevara were both present for the 6/2/93 meeting. (10/21/93 Interview with Ernest Halvorsen.)

[9] Montanez told us that his nicknames were "Gordo" and "Pistol Pete." (10/17/13 Interview with Jose Montanez.) The latter street name was a reference to basketball great Pistol Pete Maravich, and reflected Montanez's skill from the three-point line, Montanez told us. (*Id.*) On occasion, he noted, Pistol Pete was diminutized to "Pito." (*Id.*)

[10] Accordingly, we refer to the circumstantial witness as Vicente from this point forward for purposes of clarity. Similarly, although Vicente refers to the defendants by their street names, Pistol Pete, Mando, and Jordan, for purposes of clarity we primarily refer to them as Montanez, Serrano, and Pacheco, respectively.

[11] Those rumors are not reflected in the investigative record.

## SIDLEY
SIDLEY AUSTIN LLP

arrested"—i.e., 5/14/93—that Vicente had been "arrested with a second offender who had a nickname of Pistol Pete," according to Det. Halvorsen.[12] (*Id.* at 114.) Thus, he was "curious whether or not [Vicente] might be able to assist" in the Vargas murder investigation. (*Id.* at 82.)

At that time, Det. Halvorsen testified, Vicente informed him he "had the right nickname but I had the wrong Pistol Pete, I wanted big Pistol Pete and not little Pistol Pete." (*Id.* at 83.) Vicente testified that he then told Det. Halvorsen, "I knew two Pistol Petes, the one that I had the armed robbery with" and Montanez.[13] (10/18/94 Trial Transcript, Vol. 2 at 28-29.) Then Vicente "supplied [Det. Halvorsen] the three nicknames of Pistol Pete, Mando and Jordan." (10/19/94 Trial Transcript, Vol. 3 at 83.) After talking to Vicente, Det. Halvorsen testified, "I checked my nickname files at my office and I saw that Pistol Pete was in fact Jose Montanez, Mando was Armando Serrano and Jordan was Jorge Pacheco." (*Id.*) Det. Halvorsen testified that he knew all three from prior investigations.[14] (*Id.*) Det. Halvorsen testified that he then "went and obtained black and white CPD identification photos of them … and I showed these three photos to Francisco Vicente" who identified them "as being the individuals that he had given the statement regarding." (*Id.* at 84.)

---

[12] Vicente's arrest records for the four relevant robberies, which we obtained and examined, indicate that he was not arrested with (nor did he commit any of his robberies with) a Pistol Pete. (Vicente Armed Robbery File.) Rather, Vicente's only co-perpetrator on these robberies was Kenneth Thrane, nicknamed simply "Kenny," and the pair were not actually arrested together. (*Id.*) Notwithstanding this evidence, Vicente testified at trial that he had in fact been arrested with a Pistol Pete. (10/18/94 Trial Transcript, Vol. 2 at 28.) Vicente also testified at trial that he gave a statement against that other Pistol Pete—i.e., not Montanez—in connection with the robbery they allegedly committed together, another assertion we have been unable to confirm through our search of Vicente's criminal records. (*Id.* at 126-27, 129.)

[13] Captain Lupe Pena, Vicente's arresting officer on his armed robberies, told us that he knew of only two Pistol Petes in the neighborhood at that time, Montanez and another man named Jose Cotto. (7/17/14 Interview with Lupe Pena.) The "little Pistol Pete" referenced by Vicente and Halvorsen is Angel Sanchez, according to information obtained by student investigators from Montanez's family, whose brother Armando Quinones was nicknamed, like Armando Serrano, simply "Mando." (5/4/03 Email.) Quinones confirmed these nicknames in an interview with us. (Interview with Armando Quinones.) Both Sanchez and Quinones were members of the Imperial Gangsters (*id.*), and have extensive criminal histories, including for the following charges: armed robbery, burglary, narcotics possession, mob action, theft, receipt of stolen property, and receipt of stolen vehicle. (7/14/14 Armando Quinones Background; 12/13/94 Angel Sanchez Criminal History.)

[14] Halvorsen was the arresting officer of Montanez's co-defendant in a prior murder trial. (6/24/90 Jose Baez Arrest Report by H.) (Montanez was acquitted at trial in that case, and told us he had been innocent of the crime. (10/17/13 Interview with Jose Montanez.)

SIDLEY | SIDLEY AUSTIN LLP

(ii)     **The 2/5/93 Confession**

Regarding the details of the confession, Vicente was reported to have informed the "R/Dets." that he was hanging out at a "dope spot" at the corner of Hamlin and Altgeld on 2/5/93. (6/2/93 Supp. R. by G/H.) Vicente had spent the entire night on that corner and had used heroin at about 1:30 or 2 a.m.[15] (10/18/94 Trial Transcript, Vol. 2 at 88.) Then, between 8:30 and 9 a.m., when Vicente was "coming down off of" his heroin high, Montanez drove up in a tan-colored Buick. (*Id.* at 10-11.) Serrano and Pacheco, he said, were passengers.[16] (*Id.* at 89.) Although there is a large church and school complex on the corner of Hamlin and Altgeld, Vicente testified that he was not aware of the church or school, and did not see any other people during the time he spent on that corner with Montanez, Serrano, and Pacheco.[17] (*Id.* at 123, 130-31.)

Serrano and Pacheco exited the car and Montanez, who remained inside of it, placed a "large frame, 9 mm semi-automatic pistol" in one of the vehicle's air vents. (6/2/93 Supp. R. by G/H.) (At trial, in contrast, Vicente described for the first time Montanez hiding his weapon by "plac[ing] it outside somewhere." (10/19/94 Trial Transcript, Vol. 2 at 33.)) While parked on the corner, Montanez also "play[ed] with a bag of … dope," i.e. heroin. (6/2/93 Supp. R. by G/H; 10/18/94 Trial Transcript, Vol. 2 at 10-11.) Thereafter, in Vicente's presence, "[t]he three of them were talking about a robbery they had just done, that had gone bad" because Serrano "fucked up" and "went at the guy wrong." (6/2/93 Supp. R. by G/H.) Montanez continued, "we

---

[15] At trial, Vicente referred instead twice to a meeting at *Harding* and Altgeld. (10/18/94 Trial Transcript, Vol. 2 at 8, 116-17.) However, later in his testimony he again began referring to *Hamlin* and Altgeld as the site of the meeting. (*Id.* at 130-131, 140.) At trial, ASA Coghlan referred to the streets only as Hamlin and Altgeld, with the references occurring after Vicente said Harding. (*Id.* at 130-31, 140.) Vicente referred to Hamlin once more, in a 5/26/04 affidavit he executed recanting his statements and testimony against Montanez, Serrano, and Pacheco. (5/26/04 Affidavit of Francisco Vicente.)

[16] Vicente told the grand jury that he had known Montanez for seven years prior to the corner meeting, that he had known Pacheco "nine or eight years" before the meeting, and that he had known Serrano for "about six years" before the meeting." (7/1/93 Grand Jury Testimony of Francisco Vicente.) Vicente and Serrano had been in a fight in July of 1992, after Vicente had informed someone that Serrano had broken into his car. (7/13/99 Affidavit of Felix Serrano.) In conversation with us, Serrano denied that he had broken into that car, but confirmed the fight. (10/17/13 Interview with Armando Serrano.) Vicente has not specifically discussed the fight, to our knowledge, but did tell student investigators that he "hated" Serrano. (6/19/03 Email.)

[17] Stephanie Turner, an investigator employed by the Cook County Public Defender's Office, testified that "[T]here's a big Catholic school there at the corner and the school is very large. It goes all the way around and all the way up to Ridgeland and all around. So it's a very large school." (10/21/94 Trial Transcript at 42-43.) We visited that location and confirmed the accuracy of her characterization.

SIDLEY
SIDLEY AUSTIN LLP

would have never did what we did if [Serrano] never fucked up." (*Id.*) At that time, Pacheco "stood around laughing as [Montanez] yelled at [Serrano]." (*Id.*) When Vicente asked for clarification, Montanez stated "we shot a stud" and "we hurt that stud bad." (*Id.*) Vicente and the occupants of the Buick conversed for three to four hours, at the corner of Hamlin and Altgeld, on Vicente's porch, and on the drive to Gold Busters, Vicente testified. (10/19/94 Trial Transcript, Vol. 2 at 12.)

Montanez continued: "the day before the three of them had spotted a victim with lots of money" at an undescribed location. (6/2/93 Supp. R. by G/H.) Specifically, "Pistol Pete was getting change for a dollar when the victim walked in and showed a lot of money."[18] (*Id.*) (At trial, Vicente stated for the first time that Pacheco also discussed with him the fact that they had spotted Vargas the night before they killed him. (10/18/94 Trial Transcript, Vol. 2 at 111.)) Then, Montanez, Serrano, and Pacheco followed him home, but held off robbing him because "he was with his lady and some kids." (6/2/93 Supp. R. by G/H.) (At trial, Vicente testified that Montanez, Serrano, and Pacheco held off on the robbery "because the guy's wife was aware that they were being followed." (10/18/94 Trial Transcript, Vol. 2 at 10-11.)) Instead, because they "knew this guy would be a sweet victim . . . they laid out for him." (6/2/93 Supp. R. by G/H.)

According to Vicente, Montanez stated that "they did not get money from the victim they popped, and needed to get some money to buy" heroin. (*Id.*) In fact, they did not take anything from Vargas, Vicente testified. (10/18/94 Trial Transcript, Vol. 2 at 19.) Accordingly, Montanez allegedly stated that "they robbed some kid on the street with his school bags." (6/2/93 Supp. R. by G/H.) Montanez continued, according to Vicente, stating "he took this victims [sic] three neck chains, and his bracelet." (*Id.*) Serrano allegedly stated that "he took the school ring off the victims [sic] finger." (*Id.*)

Vicente then reportedly accompanied Montanez, Serrano, and Pacheco to a store called "Gold Busters," where they fenced the gold chains and school ring "to get money to buy heroin." (*Id.*) Det. Halvorsen told us that he and Det. Guevara determined that Gold Busters did not exist. (10/21/13 Interview with Ernest Halvorsen.) Said Det. Halvorsen: "Gold Busters was bullshit." (*Id.*) We have independently determined, through a search of relevant public records, that no store called Gold Busters existed in Chicago at that time. (10/20/14 Public Records Search.)

(iii)    **The 2/7/93 Confession**

Vicente is also reported to have stated to the "R/Dets." on 6/2/93 that on 2/7/93, two days after the initial reported meeting, Montanez again drove up to Vicente. (6/2/93 Supp. R. by G/H.) That second visit, Vicente testified, was motivated by Montanez's need to repair his muffler, a job Vicente had agreed to do for Montanez. (10/18/94 Trial Transcript, Vol. 2 at 120-21.) When

---

[18] Vicente later expanded upon this in a handwritten statement (6/28/93 Vicente H/W Statement by H) and at trial, explaining that Montanez informed him that the "day before" Montanez had "seen this Mexican guy walk into the gas station." (10/18/94 Trial Transcript, Vol. 2 at 16.)

# SIDLEY
SIDLEY AUSTIN LLP

Montanez arrived, Vicente said, he first "noticed new damage to the left front fender" of Montanez's car.[19] (6/2/93 Supp. R. by G/H.)

Vicente asked "'Pistol Pete' what happened to his car," and Montanez reportedly informed Vicente that "after they popped" Vargas, "he was driving his car and smashed into a parked car as they drove off" from the scene. (*Id.*) Vicente then sought clarification, asking Montanez "what went wrong." (*Id.*) In response, Montanez stated:

> The victim who was a Mexican came out carrying a car radio. Mondo was supposed to grab the victim around the neck, so they could go into the victim's pockets. Mondo got greedy when he saw the radio and, instead of grabbing the victim he went for the radio. The victim started fighting, and got shot. Pistol Pete and Mondo jumped back into the car.[20]

(*Id.*)

At trial, Vicente stated for the first time that he was with a "friend" known to him only as "Rick" when Montanez described the Vargas murder on 2/7/93. (10/18/94 Trial Transcript, Vol. 2 at 22.) Vicente acknowledged that he had not, prior to trial, specifically discussed with anyone Rick's presence during the confession. (*Id.* at 112-13.) He stated, however, that he had previously informed ASA Coghlan that a "friend" was with him on 2/7/93. (*Id.*) (That prior disclosure is not reflected in the record.)

As reported by Dets. Guevara and Halvorsen, the "R/Dets. were familiar with the Imperial Gangsters Street Gang and had photos of Pistol Pete, Jordan and Mondo," which Vicente then identified as Montanez, Pacheco, and Serrano, respectively. (6/2/93 Supp. R. by G/H.)

Jose Garcia, a mechanic, later submitted an affidavit in which he noted that on 2/19/93, Montanez brought in his car for repair. (3/2/95 Affidavit of Jose Garcia.) Garcia stated that it was part of his standard practice to examine customer vehicles for damage, and that there was no damage on Montanez's vehicle. (*Id.*) Attached to the affidavit is a receipt for repair, dated 2/19/93. (*Id.*) Montanez told us that he damaged his car by hitting a parked vehicle when he was "high." (10/17/13 Interview with Jose Montanez.)

Det. Halvorsen did not take notes during the 6/2/93 interview with Vicente, he testified. (10/19/94 Trial Transcript, Vol. 3 at 111.)

---

[19] Vicente would later tell ASA Coghlan and testify at trial that he actually noticed the damage on 2/5/93, but did not disclose that fact to anyone. (9/21/94 Investigative Report; 10/18/94 Trial Transcript, Vol. 2 at 120.)

[20] During the 2/7/93 meeting between Montanez and Vicente, Montanez purportedly did not describe Pacheco's involvement in the robbery or shooting. (6/2/93 Supp. R. by G/H.)

**SIDLEY**
SIDLEY AUSTIN LLP

f.      **Dets. Guevara and Halvorsen Obtain Evidence From Wilda Vargas**

(i)      **Wilda Discusses the "Gas-Station Incident"**

Also, at time unknown on 6/2/93, Det. Guevara reportedly met alone with Wilda, Vargas's widow. (6/2/93 Supp. R. by G/H.) Det. Halvorsen testified that while he was "seated in the car on the street," Det. Guevara "went into the house." (10/19/94 Trial Transcript, Vol. 3 at 85.)

Wilda informed Det. Guevara that she, Vargas, and their children went to the bank on 2/4/93, and  then, at some time between 6:40 and 7 p.m., "stopped at the gas station at North Ave. and Central Park." (10/19/94 Trial Transcript, Vol. 3 at 12; 6/2/93 Supp. R. by G/H.) At that point, a vehicle "pulled up and parked directly in front of them." (6/2/93 Supp. R. by G/H.) Although Dets. Guevara and Halvorsen reported that Wilda described that vehicle as a "tan car" (*Id.*), Det. Guevara later testified that Wilda did not describe to him the vehicle she saw at the gas station. (10/21/94 Trial Transcript at 25.)

Wilda could "see that there were three" male Latino occupants, a driver, a front passenger, and a rear passenger. (6/2/93 Supp. R. by G/H.) Wilda "looked at the man next to her husband" and the "man who was seated in the front passenger seat." (*Id.*) (At trial, Wilda testified, in contrast, that both passengers sat in the back seat. (10/19/94 Trial Transcript, Vol. 3 at 16.))

Wilda informed Det. Guevara that after "[h]er husband went into the station to make a purchase" the "driver of this car walked into the station behind her husband." (6/2/93 Supp. R. by G/H.) Her husband, Wilda reportedly stated, "had a roll of money, about $350" with him. (*Id.*) (At trial, however, Wilda testified several times that by the time the occupant of the tan sedan entered the cashier's station at the gas station, her husband had already exited the cashier's station and was either pumping gas or seated in their van.[21] (10/19/94 Trial Transcript, Vol. 3 at 13, 20, 69).) Wilda and her family and the occupants of the tan car were at the gas station together for three minutes, she testified. (10/19/94 Trial Transcript, Vol. 3 at 71.)

At the expiration of this time, the "people in the tan car began to follow them, all the way back to her house on Springfield." (6/2/93 Supp. R. by G/H.) (At trial, in contrast, Wilda testified several times that she did not know whether the vehicle she saw at the gas station followed her all the way home.[22])

---

[21] On one occasion, on cross examination, Wilda she testified that Vargas was still in the cashier's station when the occupant of the tan sedan entered.  (10/19/94 Trial Transcript, Vol. 3 at 70.)

[22] Specifically, Wilda testified that although she and Rodrigo believed that the car followed them directly out of the gas station, they were not sure whether it followed them after they made their

**SIDLEY**

Det. Guevara then showed Wilda eight black and white CPD identification photos—specifically, Montanez, Serrano, and Pacheco plus five fillers.[23] (*Id.*) Wilda identified Montanez as the person who "followed her husband into the gas station" and Serrano as the person she "saw seated in the front passenger seat." (*Id.*) She could not, however, "see the man in the back seat clearly." (*Id.*) According to Vicente, that would have been Pacheco. (*Id.*)

After Wilda identified Serrano and Montanez, Det. Guevara "asked her to go with us and show us the route that they took that night at the gas station going home." (10/21/94 Trial Transcript at 10.) Det. Guevara and Wilda then exited her home, and all three drove to the gas station at the corner of Central Park and North Avenue. (*Id.*) There, Det. Halvorsen "watched as Wilda Vargas explained in Spanish to Detective Guevara the events that had taken place in that gas station the day before her husband was murdered." (10/19/94 Trial Transcript, Vol. 3 at 85.) (Det. Halvorsen told us that he did not speak Spanish. (10/21/13 Interview with Ernest Halvorsen.))

(ii)   **Wilda Identifies Montanez's Car**

As also reported in the Supp. R. dated 6/2/93, at time and date unknown, the "R/Dets. gained information" regarding the location of Montanez's car, a "tan colored, 1984, 2Dr, Buick Regal" with "damage to the left front fender" and a "bullet hole in the trunk and in the left passenger door." (6/2/93 Supp. R. by G/H.)

Then, Wilda, in the presence only of Det. Guevara, reportedly drove around. (*Id.*) At that time, Wilda "was asked if she recognized the car that had followed her the day before her husband was killed."[24] (*Id.*) As reported, Wilda "positively identified the 1984 2Dr. Buick Regal

---

first of several turns. (10/19/94 Trial Transcript, Vol. 3 at 53-55, 57-60, 76.) On 5/23/06, however, in connection with a student investigation of potential wrongful convictions, Wilda executed an affidavit in which she asserted that she *did* notice that the men drove behind the van until the Vargases reached their home, but that they then "continued driving without pausing or slowing," and that "[i]t did not appear to me that we were being 'followed' by these men," and that Rodrigo Vargas also did not indicate that he thought they had been followed. (5/23/06 Affidavit of Wilda Vargas.)

[23] We have not been able to locate this photo array among the Impounded Evidence, although a 3/8/95 Impounding Order confirms that the array was impounded, and the trial transcript indicates that Wilda was shown the photo array photos at trial. (10/19/94 Trial Transcript, Vol. 3 at 21-23.)

[24] Dets. Guevara and Halvorsen both testified that they did not look for Montanez's car with Wilda on 6/2/93, but rather on 6/6/93. (10/21/94 Trial Transcript at 10; 10/19/94 Trial Transcript, Vol. 3 at 86-87.) As reported in the Supp. R. dated 6/2/93, it was not until "6 June 93 [that] the R/Dets. took photos of this 1984 Buick Regal." (6/2/93 Supp. R. by G/H.) A 6/6/93 Crime Scene Processing Report confirms this. (6/6/93 Crime Scene Processing Report by H.)

12

**SIDLEY**
SIDLEY AUSTIN LLP

of Jose Montanez as the car that followed her from the gas station." (*Id.*) (In actuality, the car was a four-door. (Photos in Evidence.))

However, prior to the 2013 post-conviction proceedings in this matter, Wilda allegedly told Russell Ainsworth and Jennifer Bonjean, post-conviction counsel to Montanez and Serrano, respectively, that Det. Guevara had pointed out Montanez's car to her, and asked if it was the vehicle that had followed her home. (5/15/13 Hearing Transcript at 194-98.) Specifically, she allegedly stated that Dets. Guevara and Halvorsen drove her around looking for the car that blocked Vargas's van at the gas station on the eve of his murder. (*Id.*) She allegedly stated that she was not able to identify the car that she saw at that gas station. (*Id.*) She stated, allegedly, that Det. Guevara than brought her to a car and identified it to Wilda as the car that had been driven by the offenders. (*Id.*) Upon being pointed out the car by Det. Guevara, Wilda purportedly said only that the vehicle was "similar," at which time Det. Guevara responded that the bullet holes in Montanez's car matched the ballistics evidence from the crime scene and that the fender damage on Montanez's car "matched the accounts of the crime." (*Id.*) There is no evidence to support Det. Guevara's alleged statement regarding the ballistics match or fender damage. In fact, the bullet damage to Montanez's car was to a passenger side door and the trunk, neither of which would have been exposed to gunfire emanating from the driver's side sidewalk on a one-way street. (Photos in Evidence.) Wilda, allegedly, was prepared to testify to this event at the post-conviction hearing, according to an offer of proof, but was barred from testifying by the post-conviction court. (5/15/13 Hearing Transcript at 194-198.)

g.    **Sequencing of Vicente's and Wilda's Evidence**

At trial, Dets. Guevara and Halvorsen testified to the sequencing of these events. Upon concluding his meeting with Vicente, Det. Halvorsen testified that he "informed [his] partner Detective Reynaldo Guevara of the statement that I had gotten from Francisco Vicente." (10/19/94 Trial Transcript, Vol. 3 at 85.) After receiving this information from Det. Halvorsen, Det. Guevara testified that he "immediately" called Wilda, with whom he had been "keeping constant contact" since the "day after" the murder, and "asked her if anything unusual happened the night before the murder." (10/21/94 Trial Transcript at 4-5.) In response, Wilda said, "yes." but did not elaborate and, accordingly, Det. Guevara drove to her house with Det. Halvorsen to elicit additional information, he testified. (*Id.* at 6-7.) After Det. Guevara had a conversation with Wilda at her home, she accompanied Dets. Guevara and Halvorsen to the gas station where she described the incident that occurred. (10/19/94 Trial Transcript, Vol. 3 at 85.)

Wilda also testified to the sequencing of these events, stating several times, however, that she, rather than Det. Guevara, first introduced the incident that took place on the eve of her husband's murder.[25] (*Id.* at 10-11, 36-39.) Like Det. Guevara, Wilda testified that she and Det.

---

[25] Wilda stated three times at trial that she volunteered the 2/4/93 incident to Det. Guevara. On direct, she said that Det. Guevara asked her if she had been to the bank the night before the murder, at which time she told him "[t]hat we went to the gas station to pay gas for the van." (10/19/94 Trial Transcript, Vol. 3 at 10-11.) Asked whether "the detective asked you if you had been at the gas station," she responded, "No, I told him that we went to the gas station." (*Id.* at

13

**SIDLEY**
SIDLEY AUSTIN LLP

Guevara had been in contact in the months after the murder, stating: "I used to get in touch with him." (*Id.* at 38.) Wilda testified inconsistently regarding when she and the detectives visited the gas station and surrounding streets in an effort to locate the car she saw at the gas station, describing it variously as 2/8/93 and June of 1993. (*Id.* at 61-62, 23-25.) (Det. Halvorsen testified that "nobody showed her any cars" on 2/8/93. (*Id.* at 104.))

We also asked Det. Halvorsen about the sequencing of these events. Det. Halvorsen told us that when he was working on the Supp. R. in which this evidence was reported—i.e., the Supp. R. dated 6/2/93—"Rey [Guevara] came into the office and told" him "by the way" at some point prior to 6/2/93, Wilda had informed him that she "remembered something happened the night before [the murder] at a gas station." (10/21/13 Interview with Ernest Halvorsen.) Det. Halvorsen recalled exclaiming at the time, "You're just telling me about this now?" (*Id.*) When we asked Det. Halvorsen whether Vicente instead might have introduced that incident into the case, Det. Halvorsen said, "no," explaining that Vicente "had no knowledge of that." (*Id.*)

### h.  Serrano and Pacheco are Detained for Questioning

On 6/8/93, Serrano was brought into Area 5 Violent Crimes for questioning. (6/14/93 Supp. R. I by G/H.) At that time, he "denied having any knowledge" of the incident, and requested a polygraph. (*Id.*) At the conclusion of the polygraph, he was "informed that he had failed the test and that he had knowledge or participated in the incident." (*Id.*) A report accompanying the test reads, in part, "Deception Indicated." (6/8/93 Crime Lab Report.)

The following day, Pacheco was brought into Area 5 VC to be interviewed. (6/14/93 Supp. R. by G/H II.) Pacheco, like Serrano, "denied having any knowledge of the incident and also requested to be taken for a polygraph test." (*Id.*) Pacheco was also "told that he failed the test" but he "kept on denying any knowledge of the incident." (*Id.*) A report accompanying his test reads, also, in part, "Deception Indicated." (6/9/93 Crime Lab Report.)

### i.  Tim Rankins Claims to Have Witnessed Shooting

#### (i)  Rankins Meets with Sgt. Mingey

On 6/10/93, at approximately 11 p.m., Timothy Rankins (aka "Loco"), 19, a member of the Spanish Cobras street gang, was arrested moments after allegedly committing a robbery. (6/10/93 Timothy Rankins Arrest Report.) At 1:05 a.m., Demond Williams (aka "Shorty Folks"), 15, a member of the Gangster Disciples street gang, was arrested in connection with the same robbery, and described as Rankins's co-perpetrator. (6/11/93 Demond Williams Arrest Report.)

---

36-37.) She then verified that sequence when asked a clarifying question. (*Id.* at 38.) In a later interview with student investigators, Wilda said that she told police investigators about the gas-station incident on the day that Rodrigo was shot and killed. (4/24/06 Interview with Student Investigators at 6.)

# SIDLEY
### SIDLEY AUSTIN LLP

After Rankins was brought in, Sgt. Ed Mingey decided to interview him because, as reported by Dets. Guevara and Halvorsen, "preliminary information . . . indicated" that a victim in another case had been murdered by a Spanish Cobra. (6/14/93 Supp. R. II by G/H.) (The defendant in that case, an Imperial Gangster, was later convicted of that murder, in part, on his alleged confession to Vicente. As noted in the introduction to this report, we investigated his case, as well, but were unable to make a final finding regarding innocence.[26]) Rankins was reported to have revealed to Sgt. Mingey at that time that "he was a witness to a murder that occurred in Feb. 93," which Sgt. Mingey recognized as a reference to the Vargas murder. (*Id.*) Mingey knew that Dets. Guevara and Halvorsen "had previously gained information as to suspects" in that case, and thus contacted them for purposes of requesting that they take a statement from Rankins. (*Id.*) Specifically, Sgt. Mingey told us, "[t]he lead they were working on was this Vicente guy . . . who was Halvorsen's snitch on other cases." (4/7/14 Interview with Ed Mingey.) There are no notes in the record from Sgt. Mingey memorializing his interview with Rankins, although he told us that he did take brief notes of the conversation, containing only Rankins's nicknames for the assailants—Barrel Belly, Stripes, and Joker—which he then turned over to Dets. Guevara and Halvorsen.[27] (*Id.*)

Sgt. Mingey told us that Rankins was "the best witness I ever had." (*Id.*) Mingey said that Rankins "was extremely cooperative and easy to talk to," and that it was "obvious" after talking to Rankins "that one, he was the offender or, two, he actually witnessed it." (*Id.*) Sgt. Mingey continued:

> When I talked to this guy, I never talked to anyone who gave me more info and it turned out to be totally legit. . . . I've never talked to a guy who was a better informant. He spewed out all this information. It seems strange, but that's exactly what happened.

(*Id.*)[28]

---

[26] The reporting in the third defendant's case indicates that the preliminary information pointed at the Imperial Gangsters rather than the Spanish Cobras, as Sgt. Mingey was reported by Dets. Guevara and Halvorsen to have believed. (6/24/93 Supp. R. by G/H.) Moreover, Sgt. Mingey told us that he did not, in fact, participate in that murder investigation. (4/7/14 Interview with Ed Mingey.)

[27] Serrano told us that Joker and Stripes were well-known gang members in the neighborhood. (10/17/13 Interview with Armando Serrano.) Stripes, according to Serrano, lived near Monticello Park. (*Id.*) Another Imperial Gangster, Armando Quinones (aka "Mondo") told us in an interview on 8/9/14, too, that Stripes and Joker were well-known Imperial Gangsters. (2014 Interview with Armando Quinones.)

[28] Mingey currently serves as the Director of Security for the Illinois Racing Board. (4/7/14 Interview with Ed Mingey.)

**SIDLEY**
SIDLEY AUSTIN LLP

(ii)    **Rankins Meets with Dets. Guevara and Halvorsen and Gives a Handwritten Statement**

At 2 p.m. on 6/11/93, Dets. Guevara and Halvorsen interviewed Rankins. (6/14/93 Supp. R. II by G/H.) At 11:35 p.m., he met with ASA Jon King and Det. Halvorsen and gave a handwritten statement.[29] (6/11/93 Timothy Rankins H/W Statement by H.) Rankins stated that on 2/4/93 he was standing on the corner of Spaulding and Armitage, "a hangout for the Imperial Gangsters Street Gang." (*Id.*) Rankins noted that at that time, "his gang was friendly with the Imperial Gangsters Street Gang" because they were "part of the 'Folk Nation.'" (*Id.*) At about 9 p.m. (*Id.*), a "tan colored Buick Regal" drove up. (6/14/93 Supp. R. II by G/H.) That car, according to Rankins, was driven by an Imperial Gangster "he knows as Moses" or "Barrel Belly" (Montanez), the latter nickname a reference to his "large stomach." (*Id.*) An Imperial Gangster "he knows as Joker" (Serrano) was also in the car.[30] (*Id.*) Serrano exited the car and said, "I want you to go with us tonight to go pick up some guns and drugs." (*Id.*) According to Rankins, he had done so with Serrano, Montanez, and other Imperial Gangsters on two prior occasions because he is fast runner and could outrun the police if stopped with contraband. (*Id.*)

As planned, Rankins arrived at Monticello Park at 4:30 a.m. (*Id.*) There, he found Serrano and Montanez and another Imperial Gangster "he knows as 'Stripes'" (Pacheco). (*Id.*) Rankins's girlfriend "Sabrina" and "a guy he knows as Shorty Folks" (Demond Williams) were also in the park with Serrano, Montanez, and Pacheco. (*Id.*) Then, according to Rankins, he talked to his girlfriend while Montanez, Serrano, and Pacheco had a conversation by themselves.[31] (*Id.*) Rankins "could not hear what they were saying." (*Id.*) After a time, Serrano approached Rankins and said, "Come on now, we're going to do this." (*Id.*) Then, Serrano and Montanez got into the "same tan Buick that they had been riding in earlier." (*Id.*) Williams and Pacheco got into a "red van with white stripes on the bottom."[32] (*Id.*) That van, according to Rankins, had been borrowed from another Imperial Gangster, but he did not know from whom specifically. (*Id.*)

Upon departing Monticello Park, Rankins, Williams, and Pacheco drove down Springfield and then "parked their van at the corner of Springfield and Cortland." (*Id.*) Pacheco

---

[29] The content of that handwritten statement is almost identical to the content of the 6/14/93 Supp. R. memorializing Dets. Guevara and Halvorsen's 2 p.m. meeting with Rankins.

[30] For purposes of clarity, we primarily refer to the defendants as Montanez, Serrano, and Pacheco under circumstances where Rankins referred to them by purported nicknames.

[31] In the handwritten statement, in contrast, Rankins indicated that Williams also took part in this conversation with the defendants. (6/11/93 Timothy Rankins Handwritten Statement by H.)

[32] An Imperial Gangster commonly known as Joker (i.e., not Serrano), in fact, owned the red and white van that Rankins described, according to Serrano. (10/17/13 Interview with Armando Serrano.)

16

SIDLEY AUSTIN LLP
**SIDLEY**

exited the red and white striped van and met Montanez and Serrano near another "van that was parked on Springfield"—i.e., Vargas's van. (*Id.*) Pacheco, Serrano, and Montanez were standing on the sidewalk "about seven or eight houses away from where Rankins was watching." (*Id.*) A "couple of minutes" later, a man exited a "gate" and was stopped by Serrano, Montanez, and Pacheco. (*Id.*) Although Serrano, Montanez, and Pacheco "said something to this man," Rankins "could not make out the words." (*Id.*) Rankins noticed that the man was carrying a "Snatch Out Radio." (*Id.*) Then the "man ran to a blue and grey van that was parked on Springfield." (*Id.*) As he ran, Pacheco "was yelling out, 'DO HIM, DO HIM.'" (*Id.*) When the man jumped inside the van, Montanez "yelled out, 'GO AHEAD, GO AHEAD.'" (*Id.*) Then Serrano "pulled out a large semi-automatic pistol" and started "firing into the van." (*Id.*) Rankins could "hear the glass on the drivers side window shatter." (*Id.*) After Serrano fired into the van "6-9 times," he and Montanez "ran back to the tan Buick and drove off." (*Id.*) Pacheco then got back into the van, at which point he stated to Rankins and Williams, "If you tell anyone what you saw, we'll kill you too." (*Id.*)

Rankins told Dets. Guevara and Halvorsen that as he was "afraid he would be killed," he had not talked to anyone about the shooting. (6/11/93 Timothy Rankins Handwritten Statement by H.) However, when Rankins was locked up for a robbery on 6/11/93, "he asked to speak with Sgt. Eddie Mingey who Timothy knows and trusts."[33] (*Id.*). Rankins noted that "is scared of being killed by the Imperial Gangsters but came forward to Sgt. Mingey anyway." (*Id.*)

After Rankins shared this information, Dets. Guevara and Halvorsen "asked Timothy Rankins to verify the information he was providing, by showing the R/Dets. the exact location where the man was shot." (6/14/93 Supp. R. II by G/H.) Det. Halvorsen testified that he said the following to Rankins at the conclusion of the interview: "I wanted to believe the information he was providing me but he is going to have to demonstrate to me that he actually had evidence of this." (10/19/94 Trial Transcript, Vol. 3 at 93.) Det. Halvorsen testified he then informed Rankins "that they were going to drive North on Springfield, and that Timothy Rankins should indicate the location where the victim was shot." (*Id.* at 93.) Rankins "instructed the R/Dets. to stop in front of 1838 N. Springfield" (i.e., the Vargas home) and "pointed out the gate that the Victim walked out of, and pointed to the spot on the street where the victim[']s van was parked." (6/14/93 Supp. R. II by G/H.) After Rankins viewed the crime scene, he was "returned to Area Five VC" where he viewed a photo array consisting of eight color photos, and identified Stripes as Pacheco, Joker as Serrano, and Barrel Belly as Montanez. (*Id.*) He also stated that he had known Montanez, Serrano, and Pacheco for about "seven years." (6/11/93 Timothy Rankins Handwritten Statement by H.)

On 6/15/93, Rankins appeared before a grand jury, and provided testimony largely consistent with his prior statements. (6/15/93 Grand Jury Transcript.) At that time, he also stated the following for the first time: (1) He knew Jorge Pacheco by the nickname "Jordan" in addition

---

[33] Sgt. Mingey told us that he "may have" known Rankins previously, but "I really don't know." (4/7/14 Interview with Ed Mingey.) He continued: "Something tells me I may have known this guy from some place. If he was arrested previously and it was a robbery case, I could have been involved in arresting him previously." (*Id.*)

**SIDLEY**
SIDLEY AUSTIN LLP

to the nickname "Stripes"; and (2) He knew Montanez by the nickname "Pistol Pete," in addition to the nicknames "Moses" and "Barrel Belly." He also, at this time, did not describe his girlfriend as having been at the Monticello Park. (*Id.*)

Det. Guevara testified before a grand jury on 7/29/93, at which time he related the evidence provided by Rankins. (7/29/93 Grand Jury Transcript.)

We discussed with Det. Halvorsen his attempt to corroborate Rankins's evidence. (7/1/14 Interview with Ernest Halvorsen.) Said Det. Halvorsen: "I just remember this black guy that was as crazy as crazy could be. He was just making up stories. This guy was way off his bean. He didn't have any of the facts of the case, to me." (*Id.*) We asked Det. Halvorsen directly if he recalled driving Rankins to the scene of Vargas's murder. (*Id.*) He said: "I don't remember if we did or not, but I remember the guy didn't have any of the facts. He was sitting up in the office and Mingey sent us to go talk to him. Mingey said, 'Go talk to this guy, Rankins.' Why he was up there in the first place, I don't know. . . . He had no information. Everything he had was goofy, talking to him. I imagine I told Eddie, 'This guy's nuts.'" (*Id.*)

We also interviewed Williams, identified in the record as "Shorty Folks." (5/1/14 Interview with Demond Williams.) As an initial matter, it appeared that he learned both of the Vargas murder and his reported connection to it from us. (*Id.*) Williams credibly appeared baffled when we explained to him why we were interested in speaking with him and denied any knowledge of the crime. (*Id.*) He claimed also not to know Montanez, Serrano, or Pacheco. (*Id.*) Nor did he have any knowledge of Dets. Guevara or Halvorsen or Sgt. Mingey. (*Id.*) He stated, further, he did not associate with Imperial Gangsters. (*Id.*) As he said, "I would never fuck with those guys, I would never hang with [them]. I got nothing to do with those IGs." (*Id.*) He did, however, vividly recall Tim Rankins, and informed us that Rankins falsely implicated him in a robbery in June of 1993 for which he served four years in jail, and for which he maintained his innocence. (*Id.*) Said Williams: "Rankins lied on and said me and him did a robbery in 1993. I was fifteen years old…. I will never forget his name." (*Id.*) At the conclusion of the interview, he said of Rankins's allegedly false statements regarding his role in the Vargas murder, "If I ever see Tim Rankins again, I'll kill him." (*Id.*)

j.     **Serrano Is Arrested**

One hour after Dets. Guevara and Halvorsen first met with Rankins, they arrested Serrano. (6/11/93 Serrano Arrest Report.) Serrano's arrest was approved by ASA King. (*Id.*) The arrest report indicated that Serrano was "identified by an eyewitness [i.e., Rankins], and a circumstantial witness [i.e., Vicente] as the person who shot to death, Rodrigo Vargas." (*Id.*) Later that evening, at 6:45 p.m., Rankins identified Serrano in a lineup in the presence of Dets. Guevara and Halvorsen. (6/11/93 Supp. R. by G/H, Rankins Line-Up.)

Also at 6:45 p.m. on 6/11/93, Wilda, in the presence of Dets. Guevara and Halvorsen, identified Serrano as the front-seat passenger of the vehicle that was parked in front of her husband's van at the gas station on the evening of 2/4/93. (6/11/93 Supp. R. by G/H, Wilda Line-Up.)

**SIDLEY**

Serrano had several prior arrests, including arrests for possession of marijuana, armed robbery, battery, obstructing traffic, disorderly conduct, and assault. (5/25/93 Criminal Histories.) Serrano told us that he also stole cars and car radios on a regular basis. (8/22/13 Interview with Armando Serrano.) His primary income, however, came from selling drugs, he told us. (*Id.*) Typically, he sold crack, cocaine, and marijuana, he said. (*Id.*) Serrano claimed not to carry a gun, and he described himself as a low-volume, "street-level" dealer. (*Id.*) Finally, Serrano described himself to us as a "punk" and a "typical gang banger." (*Id.*) He insisted, however, that he "never shot anyone, never killed anyone, never owned a gun." (*Id.*)

### k. Vicente Is Identified as Confidential Informant

Several weeks later, on 6/28/93, Vicente signed a hand-written statement, which was prepared by Det. Halvorsen and ASA Solita Pandit. Therein he was first identified as the previously "anonymous" witness who reportedly gave evidence against Montanez, Serrano, and Pacheco on 6/2/93. (*Id.*) But for some minor additions and differences, described as follows, his hand-written statement was consistent with the evidence reflected in the Supp. R. dated 6/2/93: (1) Vicente specifically identified the place where Montanez saw Vargas with money as a gas station for the first time; and (2) During their second meeting, Vicente said, Montanez asked Vicente to repair his muffler, Vicente stated for the first time. (*Id.*) After Vicente executed the statement, ASA Pandit approved arrest warrants for Montanez and Pacheco. (7/3/93 Supp. R. by G/H.)

### l. Dets. Guevara and Halvorsen Appear Before Grand Jury, Montanez and Pacheco Are Arrested, and Vicente and Rankins Are Placed in Witness Quarters

On 7/1/93, Det. Halvorsen appeared before the grand jury. (7/1/93 Grand Jury Transcript.) His testimony was consistent with the evidence provided exclusively by Rankins. (*Id.*) Specifically, Det. Halvorsen testified that after evading Montanez, Serrano, and Pacheco, Vargas "was able to run and get in his van." (*Id.*) Then, according to Det. Halvorsen, "[h]e closed the van door and locked it" and "Serrano ran up to the van, shot through the window." (*Id.*)

Vicente also appeared before the grand jury on 7/1/93. (*Id.*) His testimony was consistent with his statement as reported by Dets. Guevara and Halvorsen in the Supp. R. dated 6/2/93. On 7/7/93, Vicente was moved to the Witness Quarters, also known as the "Q," at the Office of the State's Attorney. (6/19/12 Subpoena Attachment 1.)

The following day, 7/8/93, Montanez was arrested for the Vargas murder by Officers Lupe Pena, Luis Marron, J. Silva, and R. Rodriguez. (7/8/93 Montanez Arrest Report.) We discussed the Montanez arrest with now-Capt. Lupe Pena. (7/7/14 Interview with Lupe Pena.) Capt. Pena said that he had gone to high school with Montanez, recalling him as a "funny guy" and "very personable." (*Id.*) He recalled, however, that Montanez later developed a heroin habit. (*Id.*) On the day of the arrest, he said, he went to Montanez's girlfriend's house, having been informed that Montanez's car was parked there. (*Id.*) Capt. Pena said that after Montanez's girlfriend's father let him into the home, Montanez emerged from a hiding spot behind the door

**SIDLEY**
<small>SIDLEY AUSTIN LLP</small>

of a bedroom. (*Id.*) Capt. Pena said that Montanez appeared shocked to learn that there was a warrant for his arrest for murder, and would not believe it until Pena "ran a name check over the wire in front of him." (*Id.*) However, Capt. Pena said that Montanez "didn't go crazy after learning it." (*Id.*)

Prior to 7/8/93, Montanez had an extensive criminal history, including charges for armed and simple robbery and first-degree murder (of which he was acquitted in a 1991 trial.[34]) (5/25/93 Criminal Histories.) Regarding the robberies, Montanez told us that he had been involved in "more than ten stick ups." (10/17/13 Interview with Jose Montanez.) Typically, he "stuck up drug dealers" for their "dope and money," he explained. (*Id.*) Although he had "access to guns" and had "handled guns," he claimed that he had not directly used one in a crime. (*Id.*) Primarily, he explained, "back then, we fought with our hands." (*Id.*) He conceded, however, that on "one or two" occasions, his co-conspirators had been armed with a gun during the course of a stick-up. (*Id.*)

Thereafter, Dets. Guevara and Halvorsen were notified of the arrest. (7/10/93 Supp. R. by G/H.) Montanez was identified in a lineup by Wilda "as the person she saw the night before in the gas station staring at the Victim and his money." (7/10/93 Supp. R. by G/H, Line-Up Report.) Det. Guevara testified at trial that he was with Wilda when she identified Montanez, (10/21/94 Trial Transcript at 11), whereas the 7/10/13 Supp. R. Line-Up Report indicates that Dets. Guevara and Halvorsen were both present.[35] (7/10/93 Supp. R. by G/H, Line-Up Report.) At the time of the lineup, Montanez was wearing a jacket with his first name, Jose, appliquéd to the front of the jacket. (Photos in Evidence.)

On 7/12/93, Pacheco was arrested by Officers Pena and Marron. (7/12/93 Pacheco Arrest Report.) Thereafter, Dets. Guevara and Halvorsen were notified of the arrest and Det. Guevara alone interviewed him. (7/13/93 Supp. R. by G/H.) Det. Guevara asked whether Pacheco would talk about "the incident" to which Pacheco responded, he "would think about it." (*Id.*) Although the impounded evidence in this case contains line-up photos with Pacheco (Photos in Evidence), and the 7/13/93 Supp. R. notes that line-up photos were taken, no line-up involving Pacheco is reported in the record.

Pacheco had prior arrests for possession of marijuana (multiple times), trespass of a vehicle, discharging a weapon within city limits, and mob action. (5/25/93 Criminal Histories.) On 11/14/90, he was arrested for first-degree murder and armed robbery, but was released the following day without being charged. (*Id.*)

On 7/30/93, Rankins was also placed into the Q. (3/6/12 Rankins Disposition Sheet.) There, Vicente and Rankins appear to have met for the first time, as there is no evidence that we

---

[34] As noted above, Det. Halvorsen was involved in that case peripherally, as an arresting officer of Montanez's co-defendant. (6/24/90 Jose Baez Arrest Report by H.)

[35] Montanez told us that he knew Det. Guevara but not Det. Halvorsen prior to his arrest. (10/17/13 Interview with Jose Montanez.)

**SIDLEY** SIDLEY AUSTIN LLP

are aware of that Vicente and Rankins knew each other prior to their time in the Q. In a sworn statement given to Serrano's post-conviction counsel, Jennifer Bonjean, Rankins said that after meeting Vicente in the Q, Vicente told him that Det. Guevara wanted them to coordinate their statements and instructed Vicente "to go over my statement with me." (4/4/12 Rankins Sworn Statement at 28.) Rankins then told Vicente that he would not "get on the stand and testify against an innocent person." (*Id.* at 28.) Thereafter, according to Rankins, Vicente began to pressure Rankins to cooperate. (*Id.* at 28-29.) That pressure, according to Rankins, caused Rankins to attack Vicente with a pool stick. (*Id.*) Rankins told us he was removed from the Q after the incident (3/2/14 Interview with Timothy Rankins), and the record confirms that he was placed back in the Cook County jail and on, on 10/18/93, under house arrest. (3/6/12 Rankins Disposition Sheet.) In a discussion with student investigators, Vicente partially corroborated Rankins's story regarding the altercation, though he claimed to be the aggressor rather than Rankins. Vicente said that he "chased this guy with a stick and beat this black guy in the Q so I could get out of there." (Francisco Vicente Affidavit Notes.)

m.   **Montanez's Parents Reportedly Attempt to Bribe Wilda**

As documented in an unattributed handwritten General Progress Report ("GPR"), dated 8/2/93, Montanez's parents reportedly offered Wilda "a couple thousand dollars to come to the pre-hearing of their son (Jose Montanez) and say that it was someone [else] and not thier [sic] son that killed her husband." (8/2/93 GPR.) In response, Wilda reportedly stated "she would not do such thing [sic]." (*Id.*) At that point, Montanez's parents reportedly "got very upset and left." (*Id.*) Reportedly, the conversation was also witnessed by James Montalbano, for whom a phone number was provided. (*Id.*) Our private investigator attempted to locate Montalbano, but no one by that name could be connected to the phone number listed on the report.

We discussed this incident with Montanez. (2013 Interview with Jose Montanez.) He told us that his parents had in fact met with Wilda, but had not offered her any money. (*Id.*) Instead, he said, his parents "wanted to know why she" had implicated him. (*Id.*) His parents, he said, were "just trying to help him out." (*Id.*) Montanez did not instruct them to meet with her, he said. (*Id.*)

n.   **Rankins Recants**

On 3/29/94, Rankins recanted his statement and grand jury testimony implicating Montanez, Serrano, and Pacheco in the Vargas murder.[36] (3/29/94 Rankins Recantation.) In the handwritten statement, Rankins alleged that after he was arrested on an armed robbery charge, two unnamed "police" stated that they would have the charge "drop" in exchange for "testifie on a murder case for us." [sic] (*Id.*) Allegedly, when Rankins protested, "I know noting about the murder case so how is Im going to testiefie to something I know nothing about [sic]," the police

---

[36] Rankins's handwritten statement was purportedly obtained from Montanez's family by undergraduate students investigating potential wrongful convictions. (5/4/03 Email.) The circumstances of the execution of this recantation are unknown to us.

**SIDLEY** | SIDLEY AUSTIN LLP

stated, "your testifie cause if not were charge you with this fucking murder." (*Id.*) Then, according to Rankins, the police "start telling me what to say" to the "state attorney [sic]." (*Id.*) Rankins continued, the "reason why I sign the statement for the State Attorney cause the police threat me with case and that the State maid me a offer I couldn't refuse [sic]." (*Id.*) Rankins noted that he is certain of Montanez, Serrano, and Pacheco's innocence because "sergeant Eddie Mingy told me the reason why they gat these guys is cause he couldn't catch them up on any case but he knew that they sailing drugs [sic]." (*Id.*) Finally, Rankins alleged that he was in Gary, Indiana, on the day of the Vargas murder, and that his mother, Ella Rankins, and his girlfriend, Janet Clark, could corroborate that.[37] (*Id.*) For each, he provided a phone number. (*Id.*) Rankins claimed to have "writ[ten] th[e] statement on my own behalf[,] no deal or threats has been made[.]" (*Id.*)

In 1999, 2012, and 2014, Rankins provided additional recantation evidence. Those recantations are detailed below.

### o. **Vicente Provides New Evidence to ASA Coghlan**

On 9/21/94, Vicente met with ASA Coghlan and State's Attorney Investigator Jose Martinez for purposes of preparing for trial, at which time Vicente modified his statements and grand jury testimony implicating Montanez, Serrano, and Pacheco in the Vargas murder. (9/21/94 Investigative Report.) Specifically, upon being asked to review Dets. Guevara and Halvorsen's Supp. R. dated 6/2/93, in which the substance of Vicente's evidence was first reported, Vicente stated that the report is "basically correct" but offered several modifications. (*Id.*)

First, Vicente stated that "when [Montanez] was yelling at [Serrano], [Serrano] responded by saying that [Montanez] should have 'ganked' the victim himself so that [Serrano] could have gone through the victim's pockets."[38] (*Id.*) Vicente continued, "[Pacheco] took [Serrano's] side during the conversation and told [Montanez] that 'yeah, you're bigger than us, you should have ganked him from behind.'" (*Id.*) (Prior to this time, only Rankins had attributed inculpatory statements to Serrano and Pacheco.) Second, Vicente stated that Montanez, Serrano, and Pacheco were arguing about the robbery—Montanez "was angry because the victim had a lot of money and the robbery had gone bad" because they did not obtain anything from Vargas. (*Id.*) In response, according to Vicente, Serrano said, "'well, we can always do another one,'" meaning to commit another robbery.(*Id.*) Third, Vicente stated that on 2/7/93, "Montanez had said that [Pacheco], not [Montanez], was driving the car as the defendants fled the murder

---

[37] We obtained Indiana medical records for Rankins from February of 1993, confirming his hospital admission, but they were for several days after the Vargas murder, not the day of, as he alleged. (2/17/93 Rankins Medical Records.)

[38] Ganking, Vicente explained, is a "street saying meaning to grab someone by the neck in a choke hold." (9/21/94 Investigative Report.)

**SIDLEY** SIDLEY AUSTIN LLP

scene."[39] (*Id.*) Fourth, Vicente stated that he had actually "noticed the bullet holes and damage to Montanez's car" the first time he saw Montanez, Serrano, and Pacheco—i.e., on the morning of 2/5/93—although that fact had not been reported in Dets. Guevara or Halvorsen's report or in his handwritten statement, which both indicated that he did not notice the damage until 2/7/93. (*Id.*)

Vicente later testified that prior to meeting with ASA Coghlan on 9/21/94, he had had six or seven meetings with him. (10/18/94 Trial Transcript, Vol. 2 at 126.) He testified, too, that he had not previously provided to CPD, or shared with the Grand Jury, any of the information shared with ASA Coghlan on 9/21/94. (*Id.* at 124-26, 138-39.) Vicente responded affirmatively when ASA Coghlan questioned whether Vicente was "recovering from [his] heroin addiction" on 6/2/93—when he initially gave a statement against Montanez, Serrano, and Pacheco—and, accordingly, whether his "recollection of those events bec[a]me clearer as [Vicente] recovered more and more from [his] addiction to heroin"—i.e., by 9/21/94. (*Id.* at 139-40.)

        p.    **Alibi Evidence**

Montanez and Pacheco offered some alibi evidence prior to, during, and after trial. Serrano did not.

Regarding Montanez, before the commencement of the trial, Montanez filed an Amended Answer to Discovery and noted that he would assert an alibi defense. (10/11/94 Montanez Answer to Discovery.) Specifically, he stated that he was with his parents during the time of the offense. (*Id.*) He did not assert such a defense at trial, however. On 3/15/95, Montanez's girlfriend, Jacqueline Pacheco (no relation to Jorge), submitted an affidavit in which she stated that Montanez was with her from 5 p.m. on 2/4/93 until 8:30 a.m. on 2/5/93. (3/15/94 Affidavit of Jacqueline Pacheco.) She noted further that Montanez's defense counsel was aware of this alibi prior to trial but considered it unlikely to sway the finder of fact given that she was Montanez's girlfriend. (*Id.*) Pacheco stated further that Montanez's car was damaged on 3/13/93. (*Id.*) This assertion would later be corroborated by Montanez's mechanic, as explained above. (3/2/95 Affidavit of Jose Garcia.)

Regarding Jorge Pacheco, on 7/13/93, in the presence of ASA Kevin Hughes and possibly Det. Guevara, Pacheco provided a partial alibi, stating that he was with his girlfriend, Michelle Zaleske, "on the date in question." (7/13/93 Supp. R. by G/H.) On 7/13/93, Zaleske gave a statement to Det. Guevara and ASA Hughes in which she provided a partial alibi for Pacheco. (7/13/93 Zaleske H/W Statement by G.) Specifically, Zaleske stated that she was with Pacheco at her Des Plaines, Illinois, home until 3 p.m. on 2/4/93, the day before the Vargas murder. (*Id.*) Zaleske stated further that Pacheco returned to her home in Des Plaines at 7:30 p.m. on 2/4/93, where he remained until 9 p.m. (*Id.*) The evidence indicates further that Zaleske stated that she did not see Pacheco from 9 p.m. on 2/4/93 until 7 p.m. on 2/5/93. (*Id.*) At trial, Zaleske testified consistent with this information. (10/21/94 Trial Transcript at 62.) A diary that she

---

[39] At trial, Vicente would elaborate, confirming that the fact that Pacheco was driving also meant that Pacheco "had smashed the car" when he fled the scene. (10/18/94 Trial Transcript, Vol. 2 at 23.)

**SIDLEY**
SIDLEY AUSTIN LLP

claimed corroborated this account was offered into evidence, but not admitted. (*Id.* at 66.) Also, on 9/30/94, State's Attorney Investigators Martinez and Thomas Finnelly interviewed Felix Rodriguez, the ex-husband of Jorge Pacheco's sister. (9/30/94 Investigative Report.) Rodriguez stated he was "home all day" with Pacheco on 2/5/93, the date that Vargas was murdered and, thus, "knows that Jorge didn't do this shooting." (*Id.*) He reportedly qualified the alibi defense, however, by noting that "he was drinking most of" the relevant day and, thus, "doesn't remember what time he went to bed or if Jorge went to bed before him or if Jorge even went to sleep." (*Id.*) Reportedly, he noted that if contacted by defense counsel he would testify on Pacheco's behalf "because he has had trouble with the Police and States Attorney before" and "wouldn't help them." (*Id.*) He reportedly stated further that "he likes Jorge Pacheco very much" and "wants to see Jorge get out of jail." (*Id.*)

Serrano told us that he would be "lying" if he said he knew where he was the night before the Vargas murder. He speculated that he was "running the streets" as he "didn't have a job" at that point. (10/17/13 Interview with Armando Serrano.) He said that he was usually at home with his parents and now ex-wife at 5:30 a.m., but said that he has attempted to come up with a verifiable alibi for years for the relevant dates, and has been unable to do so. (*Id.*) Serrano told us that he considered Vicente's and Rankins's evidence incredible, among other reasons, because Vargas's car radio was playing when his body was discovered. (8/22/14 Interview with Armando Serrano.) That evidence, according to Serrano, indicated that Vargas was in his car, warming up the engine, and listening to the radio, when he was shot. However, Serrano is mistaken. As discussed above, Vargas's radio was not on when Vargas was murdered—in fact, Vargas's body was discovered atop his radio. Serrano received his information while later researching the case, he said, from a Chicago Tribune article in which the fact was erroneously reported. (*Id.*)

### q. **The Trial**

On 10/18/94, the trial of Montanez, Serrano, and Pacheco began. Vicente, Wilda, Velez, Shoop, Dets. Guevara and Halvorsen, Investigator Martinez, and Officer Show testified for the State. For Pacheco, alibi witness Zaleske testified. Office of Public Defender Investigator Stephanie Turner testified for Serrano. Montanez did not put on any witnesses.

### (i) **Francisco Vicente**

Vicente responded affirmatively to ASA Coghlan's question of whether "in return for your testimony in this case and other cases I have indicated to you that I would recommend a total of nine years … on your cases." (10/18/94 Trial Transcript, Vol. 2 at 4.) On cross, Vicente acknowledged that each of his three pending Class X charges for armed robbery carry sentences of between six and thirty years and his single simple robbery charge carries a sentence of three to seven years. (*Id.* at 72, 76.) On cross, Vicente also described his living arrangements in the Witness Protection Quarters, and stated that CPD bought him a Walkman, Nike track suits, and cigarettes, and allowed him "home-cooked meals," visits with friends, and visits with his girlfriend. (*Id.* at 79-80.)

Vicente correctly identified each of the three defendants in court. (*Id.* at 5-6.)

24



(ii)     **Wilda Vargas**

Upon being asked to perform an in-court identification of the man who entered the cashier's station, the vehicle's driver, she chose Serrano initially, an action attributed in the record to Montanez. (10/19/94 Trial Transcript, Vol. 3 at 17-18.) (After ASA Coghlan asked the defendants to stand up, however, Wilda correctly identified Montanez. (*Id.* at 18-19.)) On being asked to perform an in-court identification of one of the passengers (described in the Supp. R. dated 6/2/93 as a front-seat passenger), she chose Pacheco twice, although at the line-up Vargas identified Serrano as the only passenger she saw. (10/19/94 Trial Transcript, Vol. 3 at 19, 23.) (She was reported to have stated at the time that she was not able to see the rear seat passenger—i.e., Pacheco—clearly. (6/2/93 Supp. R. by G/H.))

(iii)     **Gary Shoop**

Vargas's neighbor, Shoop, testified that he was unable to definitely state that Montanez's car was the car he saw after hearing gunshots, although he said that it was "similar" to the car he saw and answered affirmatively when asked if it "appear[ed] to be the same car." (10/18/94 Trial Transcript, Vol. 1 at 47.) On cross, Shoop testified that he told CPD that the vehicle was "possibly a two door" and had not told CPD that the car was two-toned with a vinyl top. (*Id.* at 54.) He testified, however, that he believed his original description consistent with Montanez's car. (*Id.* at 47.) Shoop testified further that as the auto drove away, he heard its "tires squealing" as it rounded several corners. (*Id.* at 44.) He did not, however, hear a subsequent car crash. (*Id.* at 44, 53.) He also testified on cross that he did not see any passengers in the car. (*Id.* at 52.)

(iv)     **Investigator Jose Martinez**

State's Attorney Investigator Martinez testified that he tried, but failed, to locate Rankins.[40] (10/21/94 Trial Transcript at 32-33.) His efforts, Martinez testified, included contacting "a girlfriend by the name of Janet Clark in Gary, Indiana," a name that appears within Rankins's 3/29/94, handwritten recantation, but nowhere else in the record. (*Id.* at 33.) Martinez testified further that Clark "said she hasn't seen Rankins for about a year and couldn't give me any other information on Rankins at all." (*Id.*) At the conclusion of Martinez's testimony, ASA Coghlan requested a continuance "to make one last effort to locate Timothy Rankins." (*Id.* at 34.) The Court denied the request, explaining that the State had already devoted a day to the task without success. (*Id.*)

(v)     **Det. Halvorsen**

---

[40] Although not in the record, Rankins was arrested on a domestic violence charge along with a Sabrina Hernandez less than a month before trial, but failed to appear for a scheduled hearing days before the commencement of the Montanez/Serrano trial. (9/15/94 Rankins Domestic Documents.) We consider it likely, but cannot assert definitively, that this is the same Sabrina referenced in the statements against Montanez, Serrano, and Pacheco.

**SIDLEY**
SIDLEY AUSTIN LLP

Det. Halvorsen testified to the genesis of and content of Rankins's evidence. (10/19/94 Trial Transcript, Vol. 3 at 89-93.) Det. Halvorsen also testified that he did not discuss with the State's Attorney possibly charging Rankins with murder. (*Id.* at 106.)

(vi)     **Verdict and Findings**

At the conclusion of the bench trial, the court found all three defendants guilty. (10/21/94 Trial Transcript at 119.) Thereafter, Serrano, Montanez, and Pacheco each moved for a new trial. (1/10/95 Hearing.) The court granted Pacheco's motion, acquitting him, but denied Montanez's and Serrano's motions. (*Id.* at 30-31.) Montanez and Serrano were later sentenced to fifty-five years. (3/3/95 Hearing at 97.)

r.     **Vicente is Sentenced**

As explained above in the Bouto section, on 9/23/96, approximately two months after the last of the three cases in which Vicente provided evidence concluded with a guilty verdict, Vicente was sentenced on his three armed robberies and one simple robbery. (9/23/96 Francisco Vicente Change of Plea Hearing.) ASA Dillon represented the State at that hearing and recommended a sentence of nine years. (*Id.*) Vicente was sentenced in accordance with the State's request. (*Id.*) Before the sentencing judge was also a letter from Lt. Earl F. Tucker, a Division Nine Shift Commander. (9/22/96 Letter from L.T. Tucker.) In that letter, Lt. Tucker described Vicente's assistance in procuring for him photos of a corrections officer "standing in the cell with his arm around several inmates and money on the bed." (*Id.*) As a result of that assistance, Lt. Tucker noted that "[i]t has been brought to my attention that his life, along with his families (sic) has been threatened after he gets out …. [and] states attorney John Dillon is aware of the danger his family is in." (*Id.*) Tucker noted further that "the service that he gave us is extraordinary." (*Id.*) He concluded with "any consideration that you deem fit may or may not have any influence on future actions." (*Id.*)

s.     **Rankins Recants Again**

As noted above, Rankins recanted several more times in the years after the trial, specifically in 1999, 2012, and 2014. Although Rankins continued to maintain that his evidence against Montanez, Serrano, and Pacheco had been fabricated, he alleged different misconduct and perpetrators within each iteration.

(i)     **1999**

On 4/30/99, Rankins, incarcerated in California, petitioned, pro se, for relief under Section 1983, naming ASA Coghlan as defendant. (4/30/99 Timothy Rankins §1983 Claim.) As additional defendants, he named "John Doe 1-3 … Detectives at Grand and Central Police Station," Cook County State's Attorney Jack O'Malley, and ASA Jack Hines. (*Id.*) Rankins alleged therein that in 1993, "Doe # 1-3 beat and force" him to "sign a statement" under threat of being "beat and charge[d] with murder." (*Id.*) Rankins alleged further that ASAs Coghlan and Hines and State's Attorney O'Malley physically abused him and threatened that he would "go down for the crime" if he didn't testify against "George Pacheco and two more people." (*Id.*)

26

**SIDLEY**
SIDLEY AUSTIN LLP

Then, according to Rankins, he was "charge[d] with arm robbery and placed in jail and then in the witness program were another witness on the case was hired by the defendant to teach plaintiff what to say." (*Id.*) When he got out of jail, Rankins was told by State's Attorney O'Malley that "if he came to court against the state" he would be charged with murder and "his family will be killed." (*Id.*)

Rankins then fled to Puerto Rico to evade "being harassed." (*Id.*) Rankins has discussed his Puerto Rico trip on several subsequent occasions, including in a 6/23/99 letter to Montanez (6/23/99 Rankins Letter) and in a 3/2/14 interview with us. In the letter to Montanez, Rankins said that he asked Montanez's father and his private investigator Julio Lebron to take him to Puerto Rico, and that Montanez's family was exceedingly gracious to him during that time. (6/23/99 Rankins Letter.) Rankins also wrote in the letter that he slept at Montanez's sister's house in Chicago and Puerto Rico, slept at Montanez's grand parents's house "for two days," and "ate your families table with all this you showed me much love even though I sign a statement against you by force." (*Id.*) Rankins was paroled out of custody on 7/28/94 (8/26/14 Rankins Custody Record) and was arrested and charged with battery in Chicago on 9/19/94 (3/14/14 Rankins Background), and his trip to Puerto Rico likely occurred some time between those two dates.

### (ii)    **2012**

On 4/4/12, Rankins, incarcerated at a federal prison in West Virginia, provided a sworn statement to Bonjean, Serrano's current post-conviction counsel. (4/4/12 Rankins Sworn Statement.) According to Rankins, Det. Guevara informed him that Montanez, Serrano, and Pacheco had previously provided evidence against Rankins's brother.[41] (*Id.* at 10.)

Then, according to Rankins, Dets. Halvorsen and Guevara and Sgt. Mingey gave him a prepared statement against Montanez, Serrano, and Pacheco. (*Id.* at 12.) Det. Guevara "threw his statement on the floor with three pictures in front of me and he said, these are the guys who did the murder." (*Id.*) Rankins said that Dets. Guevara and Halvorsen and Sgt. Mingey provided Rankins with nicknames—Barrel Belly, Stripes, and Joker—but not birth names for the men depicted in the photos. (*Id.* at 17-18.) Det. Guevara informed Rankins "you need to study that statement … and you're going to sign it." (*Id.* at 12.) Rankins stated that Dets. Guevara and Halvorsen and Sgt. Mingey also brought him to the murder scene. (*Id.* at 22.)

When Rankins refused to cooperate, Det. Guevara kicked him out of a chair, he alleged. (*Id.* at 11.) Det. Guevara assaulted him further, kicking him, beating him with a phone book and a flash light, and choking him, Rankins claimed. (*Id.* at 12-13, 18.) Although Det. Guevara doled out most of the physical abuse, Rankins alleged that Det. Halvorsen and Sgt. Mingey participated, too. (*Id.* at 13.)

---

[41] In our interview with him, Serrano confirmed this fact. (8/22/14 Interview with Armando Serrano.) He said that he had been the target of a murder attempt by Rankins's brother, and, that being the case, later testified at his sentencing hearing. (*Id.*)

27

# SIDLEY
SIDLEY AUSTIN LLP

He was "assaulted until [he] signed the statement," Rankins said. (*Id.* at 19.) Rankins alleged that he later informed ASA Coghlan that his statement implicating Serrano, Montanez, and Pacheco was fabricated and coerced. (*Id.* at 21.) According to Rankins, ASA Coghlan responded: "I don't care what you're saying, you're going to get on the stand and you're going to tell me what this statement said." (*Id.* at 21-22.)

Rankins stated that he was housed in the State's Attorney Witness Quarters. (*Id.* at 23.) While in the Witness Quarters, Rankins stated that he met on multiple occasions with Det. Guevara and ASA Coghlan. (*Id.* at 25.) While in the Witness Quarters, Rankins also alleged that he received "shoes, jumpsuits, cigarettes, special visits, [and] phone calls." (*Id.*) He continued: "[y]our girlfriend or your family could come down and they could sit with you and watch a movie and they can cook food in the kitchen[.]" (*Id.* at 26.) Rankins stated that conjugal visits were possible, but that he did not have any. (*Id.* at 26-27.) Det. Guevara, according to Rankins, also provided him with cash in the Witness Quarters, on occasion. (*Id.* at 26.)

Vicente was also in the Witness Quarters at that time, Rankins stated and the record evidence confirms. (*Id.* at 24; 6/19/12 Subpoena Attachment.) Allegedly, Vicente informed Rankins that Det. Guevara had instructed that they were to "go over our statements with each other[], so that he could know what I'd say in Court and I could know what he had to say in Court." (4/4/12 Rankins Sworn Statement at 28.) Vicente also informed Rankins that he had been abused by Det. Guevara. (*Id.* at 27-28.) When Rankins told Vicente that he would not "get on the stand and testify against an innocent person," Vicente raised his own "armed robbery cases." (*Id.* at 28.) Vicente explained, according to Rankins, that "[t]here's some cases that he himself was going to get off on that was promised him." (*Id.* at 28-29.) When Vicente persisted, Rankins stated that he beat Vicente with a broomstick. (*Id.*) (Vicente has related a similar account, although he said that he was the one who hit Rankins with the stick. (Francisco Vicente Affidavit Notes.)) That fight, according to Rankins, resulted in his transfer out of the Witness Quarters. (4/4/12 Rankins Sworn Statement at 29.) Dets. Guevara and Halvorsen and ASA Coghlan approached him after and stated, "I should have just cooperated and stayed inside the witness quarter protection program and that everything would have been alright." (*Id.*)

    (iii)    **2014**

    (a)    **Interview**

We interviewed Rankins on 3/2/14. (3/2/14 Interview with Timothy Rankins.) Rankins said that he was shown three Polaroid photos of the three defendants by Dets. Guevara and Halvorsen and Sgt. Mingey, and told that the man wearing a striped shirt (Jorge Pacheco) would be known as "Stripes" in his statement, that the man with "a big stomach" (Jose Montanez) would be known as "Barrel Belly," and that the man smiling (Armando Serrano) would be known as "Joker." (*Id.*) Rankins said: "There was no line-up and there was no photo array. There were three photos and they came and told me, 'This is who killed this man, this is what you're gonna say.'" (*Id.*)

After being told what they wanted him to attest to, Rankins said, Rankins was shepherded by the detectives to the office of ASA Coghlan, in whose presence Rankins said he was beaten

# SIDLEY
### SIDLEY AUSTIN LLP

by Dets. Guevara and Halvorsen: "I was punched in my private, I was hit in my mouth, punched in my stomach, given water. Every time I drank water, I'd get punched." (*Id.*) Rankins said that Sgt. Mingey was present for much of this exchange, but would occasionally leave the room. (*Id.*)

Rankins said that he explained to ASA Coghlan that "if they put me on the stand to say anything, I'm gonna tell the truth. I'm gonna tell how they beat me up." (*Id.*) Rankins said that ASA Coghlan then took him to a judge's chambers, where Rankins told the judge, "I wasn't there, I wasn't there. This is a lie." (*Id.*) The judge responded: "You signed it, this is what you're gonna testify to, and we're gonna get this case over with." (*Id.*) Rankins stated that he visited the judge's chambers "six to eight times." (*Id.*) According to Rankins, at some point, Det. Guevara and ASA Coghlan told him, "If you back out on us, we could just kill you." (*Id.*)

In order to assist him in committing to memory the details of the story they wanted him to tell, Rankins said that he was taken to the scene four times. (*Id.*) Rankins said that Dets. Guevara and Halvorsen took him to the scene the first time, that ASA King took him the second time, that ASAs King and Coghlan took him the third time, and that the fourth and final time he was taken by ASA Coghlan, Dets. Guevara and Halvorsen, and Sgt. Mingey.[42] (*Id.*) He said that he was taken to the scene, specifically, "to memorize how we got there, where the people were standing, and what took place." (*Id.*)

Rankins said that he was eventually placed on house arrest, ending his incarceration for the armed robbery (*id.*), which is corroborated by a 10/18/93 court order. (3/6/12 Rankins Disposition Sheet.) He said that during the course of his house arrest, he was visited frequently by Det. Halvorsen. (3/2/14 Interview with Timothy Rankins.) Rankins said that Det. Halvorsen would supply him with money - $15,000 overall - and remind him that he was expected to testify as a "key witness" in the Montanez/Serrano/Pacheco trial. (*Id.*) Rankins said he continually told Det. Halvorsen that he was going to decline to go through with his testimony. (*Id.*) Rankins said that Det. Halvorsen's steady supply of cash was not unusual, particularly in this case. (*Id.*) He said, "I used to get called by these guys, and if I was with a girl and she needed anything or I needed money to do anything, I got it from them. It wasn't a problem. This was how bad they wanted this case." (*Id.*)

Rankins also said that during that time, "Halvorsen, Mingey, Guevara and these other dirty detectives were grabbing us and putting guns on us." (*Id.*) Rankins said that he remembered the names of fellow gang members who could corroborate this aspect of his story, but declined to share their names during the interview, allegedly for fear of retaliation. (*Id.*) Rankins said that Dets. Halvorsen and Guevara had been running a drug trade in the neighborhood they patrolled, and he speculated that Montanez, Serrano, and Pacheco had declined to participate with them, and perhaps being charged with the Vargas murder served as retaliation by the detectives. (*Id.*)

---

[42] Other than reflected in Rankins's recantation, there is no evidence that any ASAs accompanied Rankins on a site visit. Moreover, Sgt. Mingey told us that he did not accompany Dets. Guevara and Halvorsen when they went along with Rankins to the scene for purposes of verifying his evidence. (4/7/14 Interview with Ed Mingey.)

**SIDLEY**
SIDLEY AUSTIN LLP

Rankins said that he returned to the continental United States from Puerto Rico before the commencement of the Montanez/Serrano/Pacheco trial. (*Id.*) Some time after his return, Rankins said, he was arrested, and approached again about testifying at trial against the three defendants in the Vargas trial. (*Id.*) He said: "I said if you put me on the stand, I'm gonna tell you the truth. That's when the judge and the state's attorney and Halvorsen and Mingey (said), 'Look, we're gonna say we just can't find you.'" (*Id.*) According to Rankins, the judge said that the prosecution could "always use Vicente" instead as a witness "to seal the deal.'" (*Id.*) Rankins said that the judge in this incident was a different judge than the one he had met with several times in the months prior. (*Id.*) He did not know the judge's name. (*Id.*)

<div align="center">(b)      <strong>The Second Section 1983 Claim</strong></div>

On 3/31/14 Rankins once again filed a law suit under Section 1983, naming as defendants Dets. Guevara and Halvorsen, Sgt. Mingey, Judge Coghlan, Area 5 Chicago Police Department, the Rochelle and Elgin, Illinois, police departments, John Doe correctional officer, John Doe police officer, State's Attorney John Doe 1, State's Attorney John Doe 2, the Chicago division of the Office of State's Attorney, the Illinois Department of Corrections, the Illinois Department of Justice, the cities of Chicago, Elgin, Rochelle, Pasadena, and Oregon [sic], the California Department of Justice, the Pasadena State's Attorney's Office, the Oregon State's Attorney's Office, the Rochelle Public Defender's Office, Judge John Payne, Mr. F.N.U Miller, Corporal F.N.U. Hilliard, and the Ramada Inn and Suites. (3/31/14 Timothy Rankins §1983 Claim.)

According to Rankins, in approximately June of 1993, Dets. Guevara and Halvorsen and Sgt. Mingey approached Rankins. (*Id.* at 5.) Det. Guevara told him "they need me to do them a favor." (*Id.*) Although Rankins "knew these detective's to make people sale drugs for them when they is caught or do some dirty works agust other people [sic]" Rankins told them "I ain't doing anything." (*Id.*) Det. Halvorsen responded, "yes you is" and Rankins was placed in a car with Dets. Guevara and Halvorsen and Sgt. Mingey. (*Id.*) Det. Guevara said, "Loco you going to put three guys away for us" who "don't want to do what we tell them." (*Id.*) Det. Guevara continued: "they have to go[,] these are our streets." (*Id.*) When Rankins refused again, Det. Guevara "smack[ed]" him with the back of his hand. (*Id.*) Sgt. Mingey then explained that failure to cooperate would lead to an armed robbery charge, which would entail a six- to thirty-year sentence. (*Id.*)

Rankins was taken to the Grand and Central police station and placed in an interview room with Dets. Guevara and Halvorsen and Sgt. Mingey, he said. (*Id.*) When Rankins refused to cooperate once again, Det. Halvorsen "jump up and smack me out the chair [sic]" and "punch me in the stomach [sic]" and "slam my face on the table while I was cuff from behind [sic]." (*Id.* at 5-6.) Sgt. Mingey told Rankins that Rankins had the ability to "make this stop." (*Id.* at 6.) After Rankins refused again, Sgt. Mingey placed him in a "choke hold" while Det. Halvorsen continued to punch him. (*Id.*) At that point, Rankins said, he agreed to cooperate. (*Id.*)

After further resistance, Rankins said, he signed an already prepared statement. (*Id.*) Rankins was then instructed "to say everything on the statement to the state's attorney John Doe # 1 who came and seen us." (*Id.*) Rankins told him that the "police beat me and made me sign that statement." (*Id.*) ASA John Doe # 1 stated, allegedly, "I don't care what happen to you[,] I

<div align="center">30</div>

# SIDLEY
### SIDLEY AUSTIN LLP

just care about getting promoted [sic]." (*Id.*) Several days later, Rankins was taken before ASA Coghlan. (*Id.*) He told ASA Coghlan that he was "beat and made to sign a statement and it was a lie." (*Id.*) ASA Coghlan responded, "I don't care what happen to you or anyone else[,] Pacho[,] Montanez[,] and Surrano is going down for this murder [sic]." (*Id.*)

Rankins was "taken before the Grand Jury and I told them I was beaten." (*Id.*) At that point, Rankins was removed from the grand jury room and "told by Judge John Doe # 1, I'm crazy[,] I was facing 30 years[,] and if I don't go and say what I stated on the statement[,] I'll be gone for a long time." (*Id.* at 6-7.) Rankins relented then, and "told the Grand Jury what the statement said." (*Id.* at 7.)

Later, Rankins entered the Witness Protection Program, where he met "witness John Doe # 1[,] a witness" against "Surrano, Pacheco and Montanez [sic]." (*Id.*) That witness informed Rankins that he was "getting paid by the State's Attorney Office and all his cases would be drop or he would be given liss time for all his crimes [sic]." (*Id.*) Several weeks later, Rankins "beat witness John Doe # 1 with a pool stick." (*Id.*) ASA Coghlan then asked Rankins if he wanted to "play Hard Ball?" (*Id.*) When Rankins reiterated that he would not give false testimony at trial, ASA Coghlan removed him from the witness quarters and placed him in the "county jail very late at night" in a "cell with Montanez[,] the defendant in the murder." (*Id.*)

Montanez, according to Rankins, said "a few guys wanted to kill" Rankins, but he instructed them not to because doing so would "fuck my case up" and "start another gang war." (*Id.* at 8.) Then Montanez presented Rankins and a corrections officer with "a copy of the statement I sign[ed] by force." (*Id.*) Recognizing that Rankins was "the key witness" in the case against Montanez, the corrections officer assigned Rankins to a different cell. (*Id.*)

Later, after being placed on home monitoring, Rankins met with a lawyer who reviewed Rankins's statement against Montanez, Serrano, and Pacheco. (*Id.*) The lawyer said "he didn't want anything to do with the case" because Rankins "implicated myself in a murder" but "was not charge with the murder [sic]." (*Id.*) The lawyer thought that indicated "something was very wrong." (*Id.*)

While on home monitoring, Rankins said he was "bother twice a week by Halvorsen showing up at my house letting me know they keeping a eye on me." (*Id.*) Det. Guevara also came by on occasion and gave Rankins money, "telling me to take it, or they know I turn on them [and] will kill me." (*Id.*) Later, Rankins was "caught at gun point by Guevara" and instructed to "keep quiet about things cause people will lose they jobs family and they life [sic]." (*Id.* at 9.) Before that would happen, Det. Guevara stated, Rankins "will [lose those things.]" (*Id.*)

In 1997, after Rankins was charged in Ogle County, Illinois, he contacted ASA Coghlan and threatened to meet with CBS and WGN reporters regarding the Montanez, Serrano, and Pacheco matter unless the Ogle County charges were dropped. (*Id.*) ASA Coghlan contacted Judge John Payne and several unnamed Ogle County State's Attorneys, Rankins said. (*Id.*) The Ogle County personnel "beat and sexually assaulted" Rankins. (*Id.*) Rankins was then told to

**SIDLEY**
SIDLEY AUSTIN LLP

"keep my mouth close[d]" about "Montanez and Surrano [sic]" unless he wanted to serve a longer sentence or "be killed." (*Id.* at 9-10.)

In 1998, Rankins said he was "contacted by Couglin [sic] and Guevara" who stated that "Surrano was appealing his case and I'll have to testify and keep him in prison [sic]." (*Id.* at 10.) Rankins was given $10,000 to "travel to California and Vegas." (*Id.*) In Pasadena, Rankins and several friends rented a room at the Ramada Inn. (*Id.*) After Rankins and his friends participated in an "orgy" with several prostitutes, Rankins received a phone call from Det. Guevara and ASA Coghlan. (*Id.* at 10-11.) Det. Guevara stated, according to Rankins, "see no matter were you go we are" there. (*Id.* at 11.) ASA Coghlan told Rankins the "fun" he just had would "cost" him if he did not keep "quiet." (*Id.*) Later that evening, Rankins was arrested for raping one of the prostitutes. (*Id.*) Several weeks later, Rankins was informed by Pasadena prosecution personnel that ASA Coghlan "asks us to work with you" and "want you to keep your mouth closed on the Surrano case [sic]." (*Id.*)

In 2013, after speaking with Bonjean "a few times," Rankins was "threatened" by "lawyers" and an "investigator" who "said they work for Coughlin and Gueverra [sic]." (*Id.* at 12.) Later that year, Rankins was contacted by telephone and informed that he was a "walking dead man." (*Id.*)

t.  **Vicente Recants**

On 6/19/03 Vicente told students investigating possible wrongful convictions that the confession evidence he shared against Montanez, Serrano, and Pacheco (and against Bouto and the third defendant, too[43]) had been fabricated, after he had allegedly been "coerced" and "beat" by Dets. Guevara and Halvorsen. (6/19/03 Email.) Serrano, who he "hated," and Montanez were innocent, he stated. (*Id.*) On later occasions he negotiated for various benefits in return for executing an affidavit and his potential testimony in connection with the Montanez/Serrano post-conviction matter.

On 8/24/04 and 9/16/05, respectively, Montanez and Serrano moved for post-conviction relief, primarily relying on Vicente's allegations.[44] (8/24/04 Montanez Postconviction Petition;

---

[43] Det. Halvorsen told us that he did not remember that Vicente had also received a confession in the third defendant's matter, stating: "That's news to me." (7/1/14 Interview with Ernest Halvorsen.) When we asked him to examine the Supp. R. attributed to him and Det. Guevara reporting Vicente's information, Det. Halvorsen expressed surprise, stating: "He got another one? In the Cook County jail?" (*Id.*) Det. Halvorsen then stated of Vicente, "This guy's a roving confession elicitator" [sic]. (*Id.*)

[44] Previously, on 8/9/99, Serrano had petitioned pro se for post-conviction relief under the Illinois Post-Conviction Act, but his petition was dismissed as untimely. (Serrano Postconviction Petition at 2.) On 10/27/00, Serrano petitioned, pro se, for federal habeas relief, alleging, among other things, that "[t]he State knowingly used the perjured testimony of Francisco Vicente who was a professional snitch who had already testified in two other cases…." (10/27/00 Serrano

**SIDLEY**
SIDLEY AUSTIN LLP

Serrano Postconviction Petition at 2.) At a hearing, both Det. Guevara and Vicente appeared, but invoked their Fifth Amendment rights. (7/22/13 Hearing.)

On 5/16/13, during the pendency of the Montanez/Serrano post-conviction matter, a former inmate, Valentine Gomez (aka "Tomato"), testified that in 1995 or 1996 Vicente told him then that "he had caught a case and in order for him to cut a deal with some officer, he "lied on" Montanez, Serrano, and Pacheco and "pointed the finger" at them. (5/16/93 Hearing at 108-09.) Vicente also told Gomez that his trial testimony "was a lie." (*Id.* at 109.) Gomez testified further that he had not seen Serrano or Montanez for nearly twenty years and that he had not spoken to them about their case or Vicente's statements to him. (*Id.* at 111.) On cross exam, Gomez testified that although he was acquainted with both Montanez and Serrano he did not know them to be friends and had never seen them together. (*Id.* at 119-20.)

3.     **Analysis**

First we analyze the evidence obtained from Vicente and Rankins. Then we analyze the evidence obtained from other sources.

a.     **The Evidence Provided by Vicente and Rankins**

As was also the case in the Bouto and third defendant matters, the informants—here, Vicente and Rankins—knew details about the murder that they could only have learned through participating in or witnessing the murder, by learning about it from the participants after its commission, or by learning of it from another party knowledgeable about it, a category that includes the police investigating it or verifiable eyewitnesses to it. Rankins, in particular, provided detailed information about the murder, including regarding its location, Vargas's van, the radio, and that the gunfire shattered the passenger window. First we consider Vicente's evidence, then we consider Rankins's evidence.

(i)     **Vicente's Evidence**

To determine whether it is more likely that Vicente obtained the evidence from Montanez, Serrano, and Pacheco or from one or more of the other categories of possible sources identified above, we analyze that evidence as it relates to the following: (1) whether it includes verifiable information not previously obtained from other sources; (2) the introduction of the evidence regarding a 2/4/93 incident with the victim; (3) its possible corroboration by Wilda and other sources; (4) its consistency (or lack thereof); (5) the purported circumstances of its receipt; and (6) its recantation.

(a)     **Inclusion of Verifiable Information Not Previously Obtained from Other Sources**

---

Habeas Petition.) His federal habeas petition was dismissed as untimely on 7/24/01. (7/24/01 Serrano Habeas Dismissal.)

**SIDLEY** ˢᴵᴰᴸᴱʸ ᴬᵁˢᵀᴵᴺ ᴸᴸᴾ

For purposes of assessing whether Montanez, Serrano, and Pacheco confessed to Vicente, or whether Vicente instead became knowledgeable about the crime through other sources, it is useful to consider whether Vicente provided any verifiable information that had not been reported to police prior to Vicente's statement.

We begin with Vicente's description of the genesis of the crime. According to Vicente, Montanez, Serrano, and Pacheco decided to rob Vargas because they spotted him displaying a significant amount of cash. At least as early as the first day of the investigation, a General Progress Report noted that a receipt for $300 was found on the person of Vargas. Moreover, Vargas was discovered with $190 in cash in his wallet. Relatedly, as we explain below, the 2/4/93 incident with Latino was likelier than not known to police before Vicente reportedly discussed it with Dets. Guevara and Halvorsen.

Second, Vargas's pull-out car radio played a significant role in Vicente's story. Vargas was found holding such a radio, as reported in a Supp. R. which issued the day after the murder.

Third, Vicente stated that Montanez, Serrano, and Pacheco were in Montanez's car when they spotted the victim and, the following morning, committed the crime. As early as 2/5/93, the day of the shooting, it was reported in a GPR and a Supp. R. that several of Vargas's neighbors, including State's witness Gary Shoop, saw a brown or light brown car driving north on Springfield after the shots were fired.

Fourth, Vicente described the victim, Vargas, as a "Mexican." On 2/6/93, the day after Vargas was murdered, Dets. Schak and Jack reported that Vargas had been born in Mexico. Moreover, it is not clear how Montanez, Serrano, or Pacheco would know the victim's country of origin.

To summarize, we find that all of the verifiable information that Vicente allegedly provided had been previously mentioned in some form in the investigation record, and that Vicente did not introduce any new, verifiable information.

<div align="center">

(b)    **The Introduction of Evidence Regarding a 2/4/93 Incident Involving Latino Men and the Victim**

</div>

Making some determination of whether Vicente first introduced evidence regarding an incident on the eve of Vargas's murder involving several Latino men and the victim is instructive. If Vicente first introduced into the case that evidence—i.e., no one else knew about it, and Wilda subsequently confirmed that information—it would be meaningful evidence that Montanez, Serrano, and Pacheco confessed to him. If, however, Wilda first introduced that information, then Vicente's knowledge of it would not establish that Montanez, Serrano, and Pacheco confessed to him, for Vicente could have learned the information from another source, including police who may have previously received that information from Wilda.

# SIDLEY
SIDLEY AUSTIN LLP

We first consider evidence suggesting that Wilda merely confirmed information first introduced into the case by Vicente. We then examine evidence suggesting that Wilda introduced into the case the evidence prior to its alleged reporting by Vicente.

First, as detailed above, at trial Det. Guevara testified that he contacted Wilda after speaking with Vicente on 6/2/93, asking her "if anything unusual happened the night before the murder." Det. Guevara was suggesting, we believe, that Vicente introduced the incident, and that Wilda then confirmed it. Second, there is no mention of the incident in the record until Dets. Guevara and Halvorsen filed the Supp. R. dated 6/2/93. Although the Supp. R. dated 6/2/93 does not reference the sequence of evidence-gathering, the introduction of the incident in that report would tend to suggest that the incident had not been discussed by Wilda prior to the meeting she had with Dets. Guevara and Halvorsen as reflected in that report.

Regarding the evidence that Wilda first introduced evidence about a 2/4/93 confrontation into the case, we consider the following. First, Wilda stated at trial on several occasions that she introduced the incident into the evidence. That is, Wilda testified that she volunteered the evidence to them. Related to this point, Det. Guevara and Wilda both testified that they were in frequent contact, commencing the day after Vargas was murdered. It is unlikely that Wilda would not have shared this detail during one of those conversations. Second, Det. Halvorsen told us that Wilda, not Vicente, first introduced into the case the evidence of a 2/4/93 confrontation. (10/21/13 Interview with Ernest Halvorsen.) Of course, in connection with this point, we do not overlook the fact that Det. Halvorsen was speaking to us about an event that occurred more than twenty years ago. Still, Det. Halvorsen's statement to us is consistent with Wilda's testimony.

Third, the important Supp. R. dated 6/2/93, which memorialized Dets. Guevara and Halvorsen's meetings with Vicente and Wilda, did not itself indicate that Wilda corroborated evidence first provided by Vicente. With regard to Vicente and timing, the Supp. R. reads, "On 2 June 93, the R/Dets. had a meeting with a circumstantial witness who for his own safety must remain anonymous at this time." With regard to Wilda and timing, the Supp. R. reads, "On 2 June 93, Det. R. Guevara interviewed Wilda Vargas, the victims [sic] wife." Although Vicente's evidence precedes Vargas's evidence within the report, there is no indication within this or other Supp. R.'s that we reviewed that this is a meaningful distinction. This is particularly so where, as Det. Halvorsen explained to us, the report was prepared on word processing software.[45] (10/21/13 Interview with Ernest Halvorsen.) Moreover, there is no statement of sequencing within the report. For instance, the report does not state that Dets. Guevara and Halvorsen (or anyone else) met with Vicente and then met with Wilda, or that Wilda confirmed evidence previously provided by Vicente. The document asserts only that Dets. Guevara and Halvorsen spoke to Vargas and Vicente on the same day, but does not indicate at which time or in what order they spoke.

---

[45] That the Supp. R. dated 6/2/93 is backdated, i.e. it reports activity occurring on 6/6/93, four days later, is another reason that the report itself is an unreliable metric of sequencing in connection with the gas station evidence.

**SIDLEY** SIDLEY AUSTIN LLP

(c)     **Corroboration of Evidence Provided by Vicente**

For purposes of assessing the veracity of Vicente's purported receipt of confession evidence, it is also useful to consider whether Vicente's evidence is corroborated by other sources and evidence. First, we consider whether Wilda did or did not corroborate aspects of Vicente's evidence. Then we consider whether other witnesses or evidence did or did not corroborate Vicente's evidence.

(1)     **Corroboration by Wilda**

Here we consider evidence that Wilda did and did not corroborate other evidence reportedly disclosed to Vicente by Montanez, Serrano, and Pacheco. We begin with the ways in which she corroborated evidence.

To begin, the record evidence indicates that Wilda identified Montanez and Serrano at Area 5 station line-ups conducted by Dets. Guevara and Halvorsen as the men she saw at a gas station the night before her husband's murder. If reliable, these line-up identifications would tend to corroborate Vicente's evidence that Montanez and Serrano spotted Vargas the day before he was murdered.

Second, the Supp. R. dated 6/2/93 indicates that Wilda identified Montanez's car in the presence of Dets. Guevara and Halvorsen as the car she saw at the gas station. If reliable, this is meaningful corroboration, as well, of Vicente's evidence.

We now consider ways in which Wilda did not corroborate evidence reportedly disclosed to Vicente by Montanez, Serrano, and Pacheco.

First, while it is important to Vicente's evidence regarding motive that Montanez saw Vargas, with his money visible, Wilda testified in answer to three separate questions at trial that her husband was already out of the store and back to the family van by the time that Montanez entered the store. (However, she stated otherwise on one occasion at trial, at the conclusion of her testimony, on cross examination.) If Wilda's first three responses are accurate—i.e., that Vargas was out of the gas station store by the time the driver of the tan car entered the cashier's line—there would no longer exist an incentive for the defendants to target Vargas as a potential robbery victim; the driver of the tan vehicle would not have seen his money.

Second, Wilda failed several times at trial to accurately identify Montanez and Serrano, which may raise questions regarding the reliability of her reported photo array and lineup identifications.

Third, Wilda testified in response to multiple questions at trial that she did not see the car follow her husband home, although she acknowledged that Det. Guevara reported differently in the Supp. R. dated 6/2/93. (10/19/94 Trial Transcript, Vol. 3 at 55-56.) Absent following the Vargases home, the Latino men spotted at the gas station would have no way of knowing where they lived. (As noted above, years later, however, in an affidavit executed on 5/23/06 in

36

**SIDLEY** SIDLEY AUSTIN LLP

conjunction with a student investigation of potential wrongful convictions, Wilda did state that the vehicle from the gas station was still behind her when she and Vargas arrived at home, although she did not believe they were being "followed.")

Fourth, although Dets. Guevara and Halvorsen reported and testified that Wilda was riding with them when she spontaneously identified Montanez's car outside his girlfriend's house as the car that she saw at the gas station, Wilda herself has allegedly since said that she did not, according to Montanez's and Serrano's post conviction attorneys. Specifically, she reportedly stated that Det. Guevara pointed out the car to her, at which point she conceded only that it was similar to the car she saw at the gas station. Relatedly, Det. Guevara testified that Wilda did not describe to him the car she spotted at the gas station (10/21/94 Trial Transcript at 25), which may suggest that she could not have identified Montanez's car without assistance.

        (2)    **Corroboration of Vicente's Evidence by Other Sources or Evidence**

We also consider whether Vicente's evidence is corroborated by other witnesses or evidence. First, we examine Vicente's linking of the Vargas murder to a botched robbery. Second, we examine Vicente's linking of Montanez's car to the Vargas murder. Third, we examine Vicente's trial testimony concerning "Rick" and a purported trip to "Gold Busters" with Montanez, Serrano, and Pacheco.

        i)    **Regarding a Purported Connection Between the Vargas Murder and an Attempted Robbery**

A significant component of the evidence provided by Vicente is his statement and testimony that Montanez, Serrano, and Pacheco killed Vargas after attempting to rob him. We consider here evidence that Vargas's murder did and did not arise from a failed robbery.

We begin with the latter. There is no significant evidence that Vargas had any meaningful enemies and, accordingly, would have been the subject of a targeted and planned crime, rather than the victim of a robbery perpetrated by strangers, such as Montanez, Serrano, and Pacheco. First, while students investigating the case spoke with Vargas's brother Ramiro Vargas, who told the students that Vargas's family had speculated that the killing had been related to the drug trade, we are aware of no evidence supporting Ramiro's speculation. (3/7/03 Email.) Second, although some of his co-workers told police that Vargas's employers had been "grouchy" about his continuation of a worker's compensation lawsuit (2/5/93 General Progress Report at 11), there is no follow-up indicating that this was examined further or considered to be a credible lead. Moreover, such a lawsuit does not seem likely to motivate a planned killing. Third, while Vargas's family members reportedly told students investigating the case that an ex-girlfriend "stalker" might have been upset that Vargas's first wedding anniversary with Wilda was nearing, we are aware of no evidence supporting this theory. (5/4/03 Email.)

**SIDLEY**
<small>SIDLEY AUSTIN LLP</small>

Regarding the possibility that Vargas's murder did not result from Montanez, Serrano, and Pacheco's failed attempt to rob Vargas, we consider the following. First, the story of a sidewalk confrontation between the defendants and Vargas and a botched "ganking" while struggling over a car radio is not corroborated by the eye and ear witnesses to Vargas's murder. Both Anna Velez and Judy Milinkovic likely would have seen Montanez, Serrano, and Pacheco on the sidewalk beside Vargas's home waiting for him to exit the gate, but did not. Indeed, Velez provided evidence tending to indicate that Vargas was sitting in his car, warming the engine, at the time of the confrontation that resulted in his death. Moreover, witnesses Hector and Iris Melendez, who were near enough to the crime scene to have reported hearing footsteps, did not report hearing a mugging (or the shouts described by Rankins). (2/5/93 GPR at 8.)

Second, the physical evidence at the scene is examined for consistency with the tale of a failed robbery. As an initial matter, it is unlikely that the defendants would shoot to death their target, but then not steal the goods that they were after, particularly under circumstances where those items were accessible. Having shot out a portion of the window, the assailants need only have reached into the van, unlocked the door, and taken Vargas's money and radio. (Photos in Evidence.) Relevant to this point, Vicente described Montanez, Serrano, and Pacheco as sufficiently in need of cash to procure drugs that they then committed a second robbery, this time in broad daylight. Under such circumstances, it is not clear why the perpetrators would not take the extra few seconds to obtain Vargas's cash or his radio. At 5:32 a.m., the extra risk from that action may have been marginal.

Relatedly, Vargas was discovered lying face down between the front seats of his van, positioned in a fashion indicating that he was, according to CPD, shot "as he sat in his vehicle preparing to go to his place of employment." He was holding his radio, his lunch bag was underneath his body, and his scarf, hood, and baseball cap were not disturbed. (Photos in Evidence.) It is unlikely that Vargas, after being confronted on the sidewalk by three assailants, would have held onto both a radio and a plastic lunch bag while running to his van, locking the doors behind him, starting the vehicle, and positioning himself to drive away. Indeed, on-scene investigators determined that there was no evidence of a struggle, and the medical examiner determined that Vargas had no defensive wounds. (2/6/93 Supp. R. at 7.)

ii)   **Regarding Possible Connections Between Montanez's Car and the Shooting**

Another important component of Vicente's evidence is the link between Montanez's car and the Vargas murder. We consider here evidence that Montanez's car was connected to the Vargas murder. We then consider evidence that Montanez's car was not connected to the Vargas murder.

Regarding the former, we consider the following. First, Vargas's neighbor, Gary Shoop, testified that the car he saw fleeing the crime scene was similar to Montanez's car. The evidence indicates that Montanez purchased his car on 1/4/93—i.e., before the murder. (6/6/93 Montanez Vehicle History.) It is at least possible, then, that the car that Shoop viewed was Montanez's.

38

# SIDLEY
SIDLEY AUSTIN LLP

Second, Dets. Guevara and Halvorsen reported, in the Supp. R. dated 6/2/93, that Wilda identified Montanez's car. Assuming the reliability of that identification, that is meaningful evidence that Montanez's vehicle was involved in the murder.

Regarding the possibility that Montanez's car was not connected to the Vargas murder, we now consider the following.

First, as detailed above, Det. Guevara testified that Wilda did not describe to him in advance the car she later purportedly positively identified, which may diminish the importance of the identification because it suggests she did not recall the car with particularity. Moreover, Wilda allegedly informed post-conviction counsel to Montanez and Serrano that Det. Guevara engaged in misconduct in connection with her identification of that car, which, if true, further calls into question the reliability of that identification. Furthermore, it is unlikely that she would remember the car after four months when she did not mention the incident the day of the murder.

Second, although Vicente purportedly asserted that Montanez explained to him that there was damage to his front fender because he crashed his car "into a parked car as they drove off," there is no reference in the investigation record of such a car crash in the vicinity of the crime. Indeed, although ten ear and eyewitnesses described hearing the shooting, and Shoop described hearing the tires squeal as it rounded corners several blocks away, none described hearing a car crash. (2/5/93 Supp. R.; 2/6/93 Supp. R.)

Third, Montanez's mechanic attested in an affidavit that Montanez brought the car into his shop for repair well after the shooting, and it did not have any damage. Relatedly, Montanez's former girlfriend executed an affidavit attesting similarly. (Montanez informed us that he crashed his car in March of 1993 when he was under the influence of narcotics. (10/17/13 Interview with Jose Montanez.)

Fourth, Montanez's car was a distinctive, two-toned vehicle—its body was light tan and its vinyl top was dark brown, which Shoop did not reference prior to trial. Milinkovic also described viewing a brown car driving away from the scene, and did not describe it as two-toned or reference the vinyl top. Such distinguishing details are the sort that we expect Shoop would have shared with on-scene personnel given the specificity of his description on scene.[46] Relatedly, Montanez's car was a four-door sedan, whereas Shoop told police the car he saw may have been a two-door.

---

[46] As we noted in our discussion of the Robert Bouto case, in "Eyewitness Testimony" psychology and law professor Elizabeth F. Loftus terms such details that are noted by many witnesses "salient details," which have a "high probability of being spontaneously mentioned by individuals who witness a particular event." A two-toned color scheme on a vehicle could qualify as such a detail, meaning it would be unlikely that multiple witnesses viewing the car would fail to note that aspect of its appearance.

**SIDLEY**
SIDLEY AUSTIN LLP

Finally, tan was a popular color for cars produced in the 1980s and early 1990s[47], and Montanez drove a sedan, a very popular body style. Considering the size and population density of the city of Chicago, a description of a tan or brown sedan may not have meaningfully limited the universe of possible vehicles used in commission of the crime.

<div align="right">

iii) **Regarding "Rick" and "Gold Busters"**

</div>

We consider here two additional pieces of evidence that Vicente provided against Montanez and Serrano. First, we consider Vicente's testimony that the second time that Montanez confessed to him, Vicente was with his friend "Rick." Second, we consider Vicente's statement and testimony regarding a trip to "Gold Busters" with Montanez, Serrano, and Pacheco to fence gold.

We begin with Rick. Vicente's trial testimony stands as the only reference to Rick in the record, and nothing in the record corroborates Vicente's testimony regarding him. Although Vicente testified at trial that he informed ASA Coghlan on 9/21/94 that he was with a friend when Montanez confessed on 2/7/93, (10/18/94 Trial Transcript, Vol. 2 at 112-113), that purported statement is not reflected in the record, and we consider it unlikely that both ASA Coghlan and Investigator Martinez would have failed to note such a detail if provided to them. We note, too, that Montanez may have been unlikely to have confessed to murder in front of a stranger, and Vicente did not allege that Rick and Montanez were acquainted.

Second, we examine Vicente's statements and testimony regarding Gold Busters. While Dets. Halvorsen and Guevara both included the Gold Busters evidence in the Supp. R. dated 6/2/93, and Vicente testified to it at trial, Det. Halvorsen told us, as noted above, that he and Det. Guevara investigated that portion of Vicente's story and determined that Gold Busters did not exist. Also as noted above, we have independently determined that no store called Gold Busters existed in Chicago at that time.

<div align="center">

(d) **Consistency of Vicente's Evidence**

</div>

We consider here internal consistencies and inconsistencies in connection with evidence provided by Vicente, parameters also useful for assessing credibility.

First, we describe the internal consistencies in connection with evidence provided by Vicente. Prior to his recantation in 2003, Vicente spoke on the record five times about the confession he allegedly received from Montanez, Serrano, and Pacheco: (1) As an unidentified confidential informant, as documented in a Supp. R. prepared by Dets. Guevara and Halvorsen dated 6/2/93; (2) In a handwritten statement memorialized by ASA Solita Pandit and Det.

---

[47] *See* Kelly, John. "Today's Popular Car Colors Rev No Engines," *Washington Post*, 4/23/12. (noting that brown and beige were among the most popular car colors during the relevant time period).

**SIDLEY**

Halvorsen on 6/28/93; (3) Before the grand jury on 7/1/93; (4) To ASA Coghlan and Investigator Martinez on 9/21/94; and (5) At trial on 10/18/94.

In all but the 9/21/94 statement, which is limited to new or altered information, Vicente related a complete telling or retelling of the confession. In each instance, he was standing near an intersection, when Montanez pulled up in his car, with Serrano and Pacheco. Consistently, Montanez explained to Vicente that the three men saw Vargas with money out the night before, and followed him to his home because of it, electing to hold off on robbing him then because his wife and children were present. Also in each instance, Vicente said that Montanez told him that Vargas was shot after Serrano attempted unsuccessfully to steal his pull-out radio. He also consistently told of a second meeting, with Montanez, that occurred two days later, and at which Montanez explained further the events of that morning.

Now, we examine the internal inconsistencies in connection with Vicente's evidence. We begin by examining the additions and alterations Vicente made to his evidence on 9/21/94 in a meeting with ASA Coghlan and Investigator Martinez. Then we examine inconsistencies that arose at trial.

In Vicente's original statements, Pacheco and Serrano had not spoken in front of him about their role in the murder. In the 9/21/94 update, however, Vicente said that Serrano and Pacheco made inculpatory statements. It may be notable that prior to Rankins's recantation, which predated the 9/21/94 meeting, Rankins's alleged eyewitness account was the only evidence that attributed comments specifically to Serrano and Pacheco admitting involvement in the shooting.

Second, while Vicente, in his initial statements to police, said that the defendants had indicated that Montanez was the getaway driver after the Vargas shooting, in the 9/21/94 report and at trial, Vicente described Pacheco as the driver instead. Recall that in Rankins's statement, Pacheco drove the striped van while Montanez drove his own sedan.

Third, as reported in the Supp. R. dated 6/2/93, and also in the hand-written statement executed a few weeks later, Vicente reportedly stated that he first noticed damage to Montanez's car on 2/7/93, two days after he initially spoke to the defendants about the Vargas murder. On 9/21/94, however, he stated that he "had noticed the bullet holes and damage to Montanez's car when he first talked to the defendants on 2/5/93—i.e., during the first purported conversation with defendants.

Regarding trial inconsistencies, first, as reported in the Supp. R. dated 6/2/93, and also in the hand-written statement executed a few weeks later, Vicente reportedly stated that he spoke with the three defendants outside, on the corner, and during a trip to Gold Busters. At trial, however, Vicente said that the conversation with the defendants took place in considerable part on his porch.

**SIDLEY**
SIDLEY AUSTIN LLP

Second, Vicente introduced for the first time at trial the assertion that Montanez disposed of the murder weapon, his 9 mm gun, somewhere outside the vehicle before driving to Gold Busters. Previously, he had only said that Montanez hid the gun in the car's heating vent.

Finally, at trial, as discussed above, Vicente for the first time introduced a new witness to the confession—Rick.

<div align="center">

(e)    **The Circumstances of the Confession's
Purported Receipt by Vicente**

</div>

We consider here the circumstances of the purported receipt by Vicente of confession evidence.

The record indicates and Vicente testified that he received the confession from the defendants after meeting with them at 8:30 or 9 a.m. on 2/5/93 at the corner of Hamlin and Altgeld streets. We consider first ways in which the circumstances of the receipt of the purported confession contribute to its reliability. Then we consider ways in which the circumstances of its receipt detract from its reliability.

Regarding the former, we note, first, that this was, we have verified, the neighborhood that Vicente lived in at the time. It would, therefore, make some sense that Vicente would have been spending time at that location. Second, Vicente knew Montanez and Serrano, and possibly Pacheco and, accordingly, may have had reason to converse upon seeing each other. Specifically, Montanez told us that he had recruited Vicente into the Imperial Gangsters well before the Vargas murder, although he said that they did not have contact after that. (10/17/13 Interview with Jose Montanez.) Vicente later referred to Montanez as a "friend" in conversation with students investigating the case. Regarding Serrano, Vicente and Serrano had a prior altercation, discussed above. In fact, Vicente told students investigating the case that he "hated Serrano." At trial, Vicente stated that he had known Pacheco for "nine, eight years," although he does not elsewhere discuss a prior relationship with Pacheco, and we have not been unable to locate any corroborating evidence from Pacheco.

Third, Montanez, Serrano, and Pacheco were at least acquainted with each other and, thus, it is at least plausible that they would have committed a crime together. Specifically, Serrano told us that he was "aware of" Montanez and Pacheco, but "didn't really hang" with either regularly. (10/17/13 Interview with Armando Serrano.) Serrano also said that he had smoked marijuana with Pacheco a few times, and knew his girlfriend or sister, but that he had not socialized with Montanez. (*Id.*) Montanez said he knew Serrano, but did not socialize with him due to their differences in ages. (10/17/13 Interview with Jose Montanez.) Montanez said that he knew Pacheco better, and had "partied" with him on several occasions, but had not participated in criminal activity with either man. (*Id.*)

We consider now the ways in which the circumstances of its purported receipt detract from its reliability.

<div align="center">42</div>

SIDLEY AUSTIN LLP
**SIDLEY**

First, Vicente testified that he was not aware of the fact that Our Lady of Grace Catholic church and school are situated at Hamlin and Altgeld, notwithstanding the fact that the complex dominates several blocks there. Relatedly, Vicente testified that he did not see anyone other than the defendants during the hours he spent at the corner, notwithstanding the fact that on the morning of 2/5/93 (a non-holiday weekday), clergy, church employees, children, their parents, teachers, and other staff would likely have been arriving for the start of the work and school day.

Second, recall that Vicente discussed Montanez, Serrano, and Pacheco "yelling" at each other about how they had just killed someone. During that conversation, they were also purportedly using heroin. But for the church and school complex, this was not an otherwise vacant neighborhood. On the corners not dominated by the church and school, four- and five-story brick homes and apartment complexes stand. It may have been unlikely that Montanez, Serrano, and Pacheco would have handled a firearm, used heroin, and shouted about a murder next to a church and school in a crowded neighborhood. Moreover, no one reported overhearing their argument about a murder or witnessing them use drugs.

Third, according to our research, the outside temperature was in the high 20s and low 30s Fahrenheit, during that time period, which may have made it difficult to spend the entire evening and morning outside.

Fourth, the relationship between Serrano on one hand and Vicente on the other hand, may not have been such that he would have been likely to have confessed to him. It is also possible that Pacheco did not know Vicente, a circumstance which would also tend to make Pacheco unlikely to confess murder to Vicente.

Fifth, the relationship among the individual defendants may not have been such that they were likely to commit a crime together. In fact, there is no evidence that we are aware of indicating that any defendant had committed a crime with any other prior to their reported involvement in the Vargas murder.

(f)     **Vicente's Recantation**

(1)     **Consistency or Inconsistency**

Vicente has stated on several occasions that he fabricated the evidence he provided against Montanez, Serrano, and Pacheco, although he has provided inconsistent reasons for having done so. We examine here the ways in which those recantations are consistent and the ways in which they are inconsistent.

Some time prior to 2003, undergraduate students investigating potential wrongful convictions were informed that Vicente had told his co-defendant in another case, Valentine Gomez, aka "Tomato," that he had "admitted to falsely testifying against" Montanez and Serrano. (5/21/03 Email.) There is no evidence that Vicente told Tomato that he had been coerced to do so. Instead, Vicente apparently informed Tomato that he had been motivated by the promise of sentencing leniency.

**SIDLEY**
SIDLEY AUSTIN LLP

On 6/19/03 Vicente told students investigating possible wrongful convictions that the confession evidence he shared against Montanez, Serrano, and Pacheco was fabricated, but this time alleging that he was "coerced" and "beat" by Dets. Guevara and Halvorsen. (6/19/03 Email.)

            (2)      **Potential Incentives for Providing False Evidence or Falsely Recanting**

We detailed Vicente's sentencing benefits for providing evidence above, in our discussion of the Robert Bouto case. To summarize, Vicente was facing a possible lengthy sentence for his armed robberies. In exchange for his cooperation as an informant in the three murder cases, Vicente was sentenced instead to nine years and served only three. He also received at least standard witness quarters benefits at Cook County Jail, such as better meals and more comfortable surroundings, and "contact visits" with family members.

Regarding other incentives to provide false evidence against the defendants, we note that Vicente allegedly had a pre-existing bad relationship with Serrano, as detailed above.

Regarding incentives to falsely recant, we note that Vicente informally recanted on 6/19/03 and only later negotiated for incentives in exchange for possibly executing a recantation affidavit and testifying at the Montanez/Serrano post-conviction matter. Similarly, we are not aware of any evidence that Montanez or Serrano coerced Vicente to recant prior to 6/19/03.

            (ii)      **Rankins's Evidence**

To determine whether it is more likely that Rankins witnessed the murder or instead learned details of the crime from one or more of the other categories of sources identified above, we analyze that evidence as it relates to the following: (1) its inclusion of verifiable information not previously obtained from other sources; (2) its corroboration; (3) the circumstances of its receipt; and (4) its recantation.

            (a)      **Inclusion of Verifiable Information Not Previously Obtained from Other Sources**

For purposes of assessing whether Rankins witnessed the murder or instead became knowledgeable about the crime through other sources, it is useful to consider whether Rankins provided any verifiable information on 6/11/93 that had not been reported to police previously.

First, Rankins stated that Vargas was confronted over a pull-out radio. As we noted above, that Vargas was found with a pull-out radio was a detail included in the Supp. R. filed the day after the murder, and Vicente reportedly provided this information, too. Second, Rankins stated that Vargas was shot to death while inside a blue-gray van parked in front of his home, a fact reported early in the police investigation. Third, Rankins allegedly accurately identified the make and model of Montanez's car four and a half months after he allegedly witnessed the shooting. (6/11/93 General Progress Report.) By the time that Dets. Guevara and Halvorsen

**SIDLEY** SIDLEY AUSTIN LLP

spoke to Rankins, they had already purportedly identified Montanez's Buick Regal as the vehicle involved in the shooting, based in part on Vicente's evidence.

We are aware of no verifiable information obtained from Rankins that had not already been obtained from other sources, including Vicente.

<div align="center">(b) <strong>Corroboration of Rankins's Evidence</strong></div>

For purposes of assessing the veracity of Rankins's evidence, it is also useful to consider whether the evidence not previously known to police prior his statement to ASA King and Det. Halvorsen on 6/11/93 can be corroborated by other sources and evidence. First, we consider whether it is corroborated by ear and eyewitnesses to the crime or by any other verifiable evidence. Second, we consider whether Demond Williams (aka "Shorty Folks") and Sabrina corroborated Rankins's evidence. Third, we compare Rankins's evidence to Vicente's evidence.

<div align="center">(1) <strong>Corroborating Rankins's Evidence with Ear and Eyewitness Evidence and Other Verifiable Evidence</strong></div>

First, Rankins described the three defendants waiting on the sidewalk in front of Vargas's home, then surrounding Vargas when he exited his gate, and finally Montanez and Pacheco yelling out encouragement to Serrano to shoot Vargas. Among the many eyewitnesses interviewed on 2/5 and 2/6/93, not one saw the defendants waiting on the sidewalk or surrounding Vargas. Nor did any ear or eyewitness hear the purported exhortations (or, indeed, any voices at all issuing from outside during the relevant time frame that might have represented what Rankins described). However, a number of ear and/or eyewitnesses would have had an opportunity to see three assailants on the street and/or hear these shouts, including at the very least, Velez, Milinkovic, and Melendez.

Related to the above evidence, Rankins stated several times that he was parked, inside the van, seven or eight houses away from the Vargas home. This would have been well over two-hundred feet from where Vargas was walking when he was purportedly apprehended by Montanez, Serrano, and Pacheco, while it was dark out.[48] We have confirmed, by visiting the site after sundown, that at the distance described by Rankins it likely would have been impossible to determine that Vargas was carrying a radio. Not only that, but it likely would have been impossible to clearly see Vargas, the assailants, and Vargas's van, at all. It likely would have been impossible to see Vargas exit his gate. Finally, it likely would have been impossible to hear the encouragements—"Do him! Do him!" and "Go ahead! Go ahead!" attributed to Pacheco and Montanez, respectively—at all, let alone to be able to attribute them, from that distance, to individual assailants.

---

[48] The sun rose at 6:58 a.m. on 2/5/93, nearly an hour and a half after the shots that killed Vargas. (http://www.wunderground.com/history/airport/KMDW/1993/2/5/DailyHistory.html?req_city=NA&req_state=NA&req_statename=NA)

<div align="center">45</div>

**SIDLEY**
SIDLEY AUSTIN LLP

Second, the nicknames Rankins assigned to the assailants do not match the known nicknames of the three defendants. In the course of our investigation, we have not uncovered any evidence that linked any of the three defendants to any of the nicknames appearing in Rankins's statement. In an interview with us, Rankins offered an explanation: He was shown photos of the three defendants, one showing an overweight Montanez (hence, Barrel Belly), one showing Pacheco dressed in a striped shirt (hence, Stripes), and one showing Serrano smiling (hence, Joker). (3/2/14 Interview with Timothy Rankins.) From those photos, Rankins said, the detectives invented the nicknames assigned to the defendants in his statement. (*Id.*) We have identified in the record and examined what we presume are these photos, and note that the defendants' appearance therein is consistent with Rankins's characterization. (Photos in Evidence.) Also regarding nicknames, Serrano told us during his interview with us that upon arresting him, Guevara kept referring to him as "Joker" in front of groups of other police officers, which he said he did not understand. (8/22/14 Interview with Armando Serrano.)

Third, Rankins also described a second get-away vehicle, a van with distinctive stripes. There is no other evidence in the record regarding such a vehicle.

(2)    **Corroborating Rankins's Evidence with Demond Williams and Sabrina**

Rankins's evidence is also not corroborated by the two additional participants—Demond Williams (aka "Shorty Folks") and Sabrina—he introduces into the story of the Vargas shooting. There is no evidence in the record that police sought to confirm Rankins's account with Williams even though Williams was in custody on the charge that brought Rankins into custody and remained there until the completion of his four-year sentence, well after the trial of Montanez, Serrano, and Pacheco. As noted above, we spoke to Williams, who credibly professed no knowledge of the Vargas murder, and thus could not corroborate Rankins's account.

Finally, the record reflects—and there is no allegation in the record—that Dets. Guevara or Halvorsen were able to corroborate Rankins's evidence with Rankins's alleged girlfriend, Sabrina. We believe she was arrested alongside Rankins prior to the start of Montanez, Serrano, and Pacheco's trial, thus potentially affording the opportunity to do so.

(3)    **Corroborating Rankins's Evidence with Vicente's Evidence**

Rankins's evidence corroborates Vicente's evidence in some instances, and in other instances it adds additional details that cannot be reconciled with the account allegedly tendered by Vicente.

Regarding the ways in which Rankins's evidence corroborates Vicente's, we first note that in both informants' stories, the three defendants all approached Vargas on the sidewalk outside his home. Also according to both, Serrano then attempted to steal the victim's pull-out radio. Then, according to both Rankins and Vicente, Vargas was shot after fleeing to his van.

**SIDLEY**
SIDLEY AUSTIN LLP

The evidence provided by Rankins, however, also differs from Vicente's in several significant ways. According to Rankins, there was not one vehicle, Montanez's car, but two, including a van driven by Pacheco, at the scene of the Vargas murder. There were also two additional people present in Rankins's telling of the story, Rankins and Williams. Additionally, in Rankins's story, Montanez and Pacheco loudly encouraged Serrano to shoot Vargas after he escaped the robbery attempt. Vicente did not relate this exchange, and did not identify a shooter in any of his statements. It is also notable that in Vicente's telling, all three defendants arrived in one car, that driven and owned by Montanez.

<div align="center">(c)    <b>Rankins's Recantation</b></div>

Rankins has stated on multiple occasions that he fabricated the evidence he provided against Montanez, Serrano, and Pacheco. We examine here the ways in which those recantations are consistent and the ways in which they are inconsistent. We also examine potential benefits that may have tainted either his initial statements against the defendants or the subsequent series of recantations.

<div align="center">(1)    <b>Consistency or Inconsistency</b></div>

We begin with consistency. Rankins is consistent in one of his core assertions, that he did not witness Montanez, Serrano, and Pacheco murder Vargas. He has consistently alleged that he was provided the story by police and prosecution personnel—but by an inconsistent cast of characters. In each instance, official personnel offered to dispense with his armed robbery charge in exchange for cooperating, and threatened him with malicious prosecution for the Vargas murder should he not cooperate. But for his initial recantation, Rankins has also consistently stated since then that he was taken to the scene of the Vargas murder and provided the salient details of the murder, although by an inconsistent cast of characters.

Regarding inconsistencies, we continue with Rankins's allegations regarding physical abuse. Notably, there is no such allegation in his 1994 recantation, and the allegations instead first arise five years later, beginning in his first §1983 claim. While it is true that Rankins has alleged abuse in every instance since then, the actual abuse alleged has varied considerably since that time. Similarly, Rankins's recantations implicate a tremendously varied and continuously expanding cast of characters. Notably, he did not name Dets. Guevara and Halvorsen in any of his recantations until speaking with Jennifer Bonjean, Serrano's post conviction counsel, in 2012. Prior to that time, with one exception, he referenced police personnel only anonymously, by the designation "John Doe Detectives 1-3" and "police."[49]

<div align="right">(2)    <b>Potential Benefits for Providing False<br>Evidence or Falsely Recanting</b></div>

---

[49] Within the 3/29/94 recantation, Rankins referred to Sgt. Mingey by name. (3/29/94 Rankins Recantation.)

<div align="center">47</div>

**SIDLEY** SIDLEY AUSTIN LLP

Rankins did not allege specific sentencing benefits discussed with him for cooperating in the investigation, and since he ended his cooperation before the Montanez/Serrano trial and did not testify, unlike in Vicente's case there is no confirmed record of benefits received. He has said, rather, more generally, that CPD and State's Attorney's Office personnel would ensure that he would be provided benefits in connection with his armed robbery charge if he were to cooperate. For instance, in his 3/29/94 recantation, Rankins said that two unnamed officers told him that "you have an arm robbery and we can get it drop," and that "the state maid me an offer I couldn't refuse." Moreover, he spent at least a portion of his pre-trial incarceration in comparative comfort—first in the Witness Protection Quarters known as the "Q," and later at home on electronic monitoring.

Rankins told us that he did not recall the circumstances under which he drafted and executed his initial hand-written recantation. However, student investigators said in emails related to their investigation of Serrano's case that Rankins executed the recantation at the behest of private investigator Julio Lebron, who was at the time working for the Montanez family. (10/20/03 Email; 12/19/03 Email; 5/4/03 Email.) Perhaps bolstering the theory that Montanez's family was involved in procuring Rankins's initial recantation, Rankins wrote a letter to Montanez, which the Montanez family forwarded to the student investigators, indicating that Montanez's father arranged his trip to Puerto Rico, where he stayed at times with Montanez family members.

Regarding financial benefits, Rankins's 1999 § 1983 claim included a prayer for relief of "22.80 billion dollars." In his 2014 §1983 claim, Rankins requests relief in the amount of $3.780 million, with $4.280 million of that [sic] to be given to the Chicago Public Schools, and also makes several non-monetary requests for relief, such as an exemption from registering as a sex offender.

(iii)     **Findings on Vicente and Rankins's Evidence**

We begin with Vicente's evidence. We find it more likely than not that Vicente fabricated the confession he purportedly obtained from Montanez, Serrano, and Pacheco.

First, Vicente did not provide to police verifiable information that had not already been obtained from other sources. Had Montanez, Serrano, and Pacheco confessed to him, we would expect that he would know some accurate information that was unknown to police prior to the reporting of his evidence in the Supp. R. dated 6/2/93.

Second, we find it more likely than not that Wilda, rather than Vicente, introduced the evidence regarding an incident involving several Latino men and the victim on the eve of his murder, thus indicating that Vicente did not have independent knowledge of this critical fact.

Third, the remainder of Vicente's evidence lacks meaningful corroboration. We begin with Wilda. As an initial matter, Vicente described Montanez spotting Vargas's money, but Wilda testified, primarily, that Rodrigo had returned to the van prior to the arrival of the relevant vehicle, thus negating motive. Related to that point, Vicente described Montanez following home the Vargas family but Wilda testified, primarily, that the vehicle did not follow them home, thus

# SIDLEY
SIDLEY AUSTIN LLP

negating opportunity. Wilda also struggled to identify Montanez and Serrano at trial, suggesting that her photo array and lineup identifications of them lack reliability. Finally, Det. Guevara testified and Wilda reportedly has since provided evidence casting doubt on the reliability of her purported identification of Montanez's car.

Vicente's evidence is also difficult to reconcile with the State's theory of the case—i.e., that Vargas was murdered during the course of an attempted robbery. As an initial matter, Vicente described an attempted mugging, but no ear or eyewitness reported hearing such a struggle, although several were in a position to do so. Related to that point, Vicente described the defendants as requiring money in order to procure drugs, but Vargas was discovered with nearly $200 on his person. Also, Velez's evidence, and the analysis of on-scene CPD personnel who reported no evidence of a struggle, suggests that Vargas was warming up his car when he was shot, a detail that is incompatible with the State's theory. Related to that point, we consider it unlikely that Vargas would have evaded his attackers while maintaining control of both a sandwich bag and his radio, all while keeping his scarf and cap in place.

Vicente's evidence regarding Montanez's car's involvement in the murder also lacks meaningful corroboration for reasons beyond the potential misconduct connected with Wilda's reported identification. As an initial matter, although Vicente stated that Montanez crashed his car while fleeing the scene, no witnesses reporting hearing a crash, and Montanez submitted evidence that, if accurate, would tend to indicate that his car was undamaged in mid-February. Additionally, Shoop and other eyewitnesses did not provide a description of the suspected get-away car that is consistent with Montanez's car in any but the most superficial manner.

Fourth, Vicente's evidence regarding Gold Busters and Rick also cannot be corroborated. Regarding the latter, we emphasize here the implausibility that Vicente, as he testified, mentioned Rick to ASA Coghlan during their 9/21/94 meeting, which was attended not only by ASA Coghlan, but also by Investigator Martinez. After the meeting, Investigator Martinez prepared an Investigative Report documenting it, and describing the new evidence that Vicente provided. Investigator Martinez's report did not reference Rick. Since Rick would be another witness to the confession, one would expect the presence of Rick to be mentioned in the report if it were related by Vicente.

Fifth, Vicente provided a significantly altered account of the confession nearly eighteen months after he purportedly received it, which further undermines his credibility. Several of those altered details apportioned blame to Serrano and Pacheco in ways that only Rankins's account had before. Related to this point, Rankins allegedly told Vicente while they were in the witness quarters that he did not plan to cooperate in the matter, which may have provided Vicente the motive and information required to modify his account.

Sixth, the reported circumstances of the receipt of the confession call into question the veracity of Vicente's evidence.

Seventh, if Vicente had this information, it is likely he would have raised it with the police at the same time that he related the Bouto confession since he was trying to get a lower sentence for his armed robberies.

# SIDLEY
### SIDLEY AUSTIN LLP

Eighth, Vicente had a meaningful incentive to provide false evidence. In contrast, he recanted to Tomato without incentive and to students investigating potential wrongful convictions prior to negotiating for benefits in exchange for future testimony. Regarding his recantation, Vicente's belated claim of abuse in this and the Bouto and third defendant cases is incredible. Vicente has demonstrated—more than amply—that sentencing benefits were more than sufficient motivation.

We also give some weight both to the fact that we consider it unlikely that Vicente would have obtained three separate confessions to three unrelated crimes and that we have independently determined that Vicente likely fabricated those other confessions, too.[50]

For all of these reasons, we find that it is likely that Vicente fabricated the evidence he provided against Montanez, Serrano, and Pacheco. The most likely scenario, we find, is that Wilda at some point related the evidence regarding the 2/4/93 incident to Det. Guevara, as Det. Halvorsen told us and as she testified, and perhaps even to other CPD personnel or non-State personnel such as friends or neighbors. Then that aspect of the case was for some reason and by some unknown means related to Vicente during the course of the investigation.

We also find it more likely than not that Rankins fabricated the evidence that he witnessed the Vargas murder.

First, Rankins, like Vicente, did not provide any verifiable evidence that had not already been reported by other sources.

Second, Rankins's account of the Vargas murder is not corroborated. As an initial matter, Rankins's evidence regarding an attempted mugging and exhortations to murder cannot be reconciled with ear and eyewitness accounts of the Vargas murder. Related to that proposition, Rankins's own account of witnessing the murder is not credible, because he described himself— consistently— having witnessed the crime from a vantage point from which he could not have seen or heard what he described. Additionally, Rankins attributed to the defendants nicknames that likely were not associated with them, a mistake he would not have made had he participated with the defendants in a robbery scheme and witnessed the conversations he claimed to have witnessed. Finally, Williams repudiated Rankins's evidence and there is no evidence that police were able to corroborate it with Sabrina.

Third, Rankins had incentives to provide false evidence against Montanez, Serrano, and Pacheco, including the fact that had, like Vicente had, an adversarial history with Serrano, and so a reason to implicate him, given the chance.

---

[50] Although we did not make a finding regarding innocence in the third defendant's case, we did for several reasons determine that the confession to Vicente in that matter, purportedly occurring in the "Bullpen" waiting room at the Cook County Jail while the two were surrounded by other people, was fabricated.

SIDLEY AUSTIN LLP
**SIDLEY**

For these reasons, we find it more likely than not that Rankins's evidence was fabricated. As with Vicente, we find that the most likely scenario is that Rankins learned the facts of the case from some unknown person or persons during the course of the investigation.

Although not dispositive, we also give some weight to the fact that Rankins has consistently recanted the evidence he provided against Montanez, Serrano, and Pacheco. (We note that if Rankins's evidence regarding his temporary incarceration with Montanez is accurate, it is conceivable that Montanez coerced Rankins into recanting. Assuming such a factor motivated his initial recantation, we consider it somewhat unlikely that Rankins would continue to recant to this day. Moreover, any such coercion would not negate the other defects with Rankins's evidence identified above).

Regarding the abuse alleged by Rankins, however, we cannot credit at all his sprawling and lurid tale of a vast conspiracy involving extreme physical coercion at the hands of dozens of police and prosecution personnel from this and several out-of-state jurisdictions. Det. Halvorsen described Rankins to us as "crazy," and we suspect that his assessment is correct.

### b.    The Case Without Vicente's and Rankins's Evidence

Having found it more likely than not that the evidence provided by Vicente and Rankins was fabricated, we turn to the question of what the identification evidence, standing alone, nonetheless may indicate. We begin our analysis with the evidence provided by Wilda. Second, we examine the evidence provided by Shoop.

### (i)    The Evidence Provided By Wilda

First we discuss reasons that Wilda's evidence might tend to indicate that the defendants are guilty. Second, we discuss reasons that Wilda's evidence may not tend to bolster a theory that the defendants committed the murder.

Regarding the former, Dets. Guevara and Halvorsen's Supp. R. dated 6/2/93 indicated that she identified Montanez and Serrano from a black-and-white photo array during a meeting with Det. Guevara at her home on 6/2/93, although we have been unable to locate those photos, which renders us unable to evaluate the photo array. The investigation record also indicates that Wilda identified Serrano and Montanez from lineups in the presence of Dets. Guevara and Halvorsen. Dets. Guevara and Halvorsen's Supp. R. dated 6/2/93 indicated that Wilda identified Montanez's car as the vehicle she saw at the gas station the night before the murder. Finally, an unattributed GPR indicated that Wilda refused Montanez's parents offer to implicate someone other than their son in Vargas's murder, although we have not been able to corroborate the content of that meeting. (As noted above, Montanez confirmed to us that her parents had, in fact, met with Wilda, but stated they did not attempt to bribe her, but merely wanted to know why she had identified their son. (10/17/13 Interview with Jose Montanez.)) Such a refusal would, of course, suggest that Wilda strongly believed Montanez, at least, was guilty.

We now discuss reasons that Wilda's evidence may not indicate guilt, beginning with her identifications of Montanez and Serrano. As an initial matter, as detailed above, Wilda was

**SIDLEY**
SIDLEY AUSTIN LLP

unable to credibly identify Montanez and Serrano at trial. Although this does not necessarily mean that her prior identifications were unreliable, her trial performance does increase the likelihood that her prior identifications lacked reliability. Moreover, Wilda, by her own account, only saw the Latino men at the gas station for approximately three minutes. Related to that point, she did not apparently consider them a sufficiently obvious threat to cause her to focus intently on them, as she initially told investigators that her husband had "no enemies" and she could think of "no reason" for the murder. Additionally, Wilda allegedly first identified Montanez and Serrano from an array of black and white photographs during a private meeting with Det. Guevara four months after the purported gas station sighting. The lineup identifications occurred beginning several days after that, on 6/11/93 for Serrano and 7/10/93 for Montanez—i.e., more than five months after the brief eve-of-murder incident. Recall that Montanez was wearing a jacket with his name emblazoned on the front during the line-up. Also, for reasons we discussed in our analysis of the evidence provided by Vicente and Rankins, Wilda's line-up and photo-array identifications are not bolstered by Vicente's and Rankins's evidence, which we conclude was more likely than not fabricated.

There are also reasons to doubt the reliability of Wilda's identification of Montanez's car, reportedly in June of 1993. First, this identification suffers from one of the same problems that casts her identifications of the defendants themselves into doubt: The length of time (approximately four months) between the gas station incident and the identification of Montanez's car may have made an accurate identification nearly impossible. As well, as detailed above, Wilda allegedly told post conviction counsel for Montanez and Serrano that Det. Guevara pointed Montanez's car out to her, told her that it was the get-away car, and that she then merely told him it was "similar" to the car she recalled from the gas station incident.

Additionally, as noted above, Wilda's evidence suggests that the Latino men she saw at the gas station had neither motive nor opportunity to target Vargas. That is, there is some reason to doubt that the men she saw at the gas station were connected in any way to the murder of her husband.

(ii)      **The Evidence Provided by Shoop**

First we discuss reasons that Shoop's evidence might tend to indicate that the defendants are guilty. Second, we discuss reasons that Shoop's evidence may not suggest that the defendants committed the murder. Regarding the former, Shoop told police in the hours after the shooting that he saw an older, light brown sedan, possibly a two-door vehicle, pulling out of the neighborhood, giving a description of a vehicle style (common at the time) that had some similarities with Montanez's car.

Regarding the latter, as discussed above, Montanez's car was actually a two-toned (brown and tan) four-door sedan with a vinyl roof top, distinctive features that Shoop did not describe in the aftermath of the shooting, and which he may have been unlikely to have omitted had he seen Montanez's car. We note, however, that Shoop testified at trial that Montanez's car was "similar" to the vehicle he saw departing the scene, notwithstanding these differences.

**SIDLEY**
SIDLEY AUSTIN LLP

(iii)   **Finding Regarding the Case Without Vicente's and Rankins's Evidence**

For the reasons detailed above, we find that the identification evidence provided by Wilda and Shoop is, standing alone, unreliable and insignificant. In summary, Wilda's identifications of both the defendants and Montanez's car, for the reasons describe above, are unreliable. Moreover, there is some evidence suggesting that her identification of Montanez's car was improperly suggested by Det. Guevara. As noted above, Wilda reportedly stated that Det. Guevara pointed out the car to her and then provided false evidence regarding bullet holes and body damage linking it to Vargas's murder. Thus, we find it more likely than not that Wilda did not see Montanez or Serrano at the gas station. Related to this finding, we also find it more likely than not that the incident Wilda witnessed on the evening of 2/4/93 was wholly unrelated to Vargas's murder for the reasons explained above regarding lack of motive and lack of opportunity.

As well, neighbor Shoop tendered a very general description of a common style of car during the time period, but did not describe the distinctive features of Montanez's car. Thus, we find it more likely than not that Shoop saw a car other than Montanez's departing the scene of Vargas's murder.

4.   **Conclusion**

a.   **Regarding Allegations of Misconduct**

(i)   **Vicente's and Rankins's Evidence**

Both Vicente and Rankins had knowledge of the crime that someone told them. It was either the perpetrators, the police, someone else, or some combination. It is also possible that the police provided the evidence wittingly, unwittingly, or through some combination. It is also possible that the police provided information to only one of them.

We first turn to facts that make misconduct less likely than it otherwise would be. First, the two informants, Vicente and Rankins, told two stories that contained material differences. First, as discussed above, there is no evidence we are aware of that the three defendants were ever known by the nicknames Rankins provided. If Dets. Guevara and Halvorsen were working in concert to set up these defendants, it is inconceivable that they would supply a completely different set of nicknames to Vicente and Rankins, let alone the wrong ones. Second, Rankins placed two extra people at the scene: Himself and Demond Williams, aka Shorty Folks. Third, Rankins placed an extra vehicle at the scene, a car driven by Pacheco, whereas in Vicente's telling all three defendants traveled in Montanez's vehicle. Fourth, in Rankins's story, Pacheco and Montanez shouted encouragement to Serrano, the shooter. (A shooter was never identified by Vicente.)

Second, as in the Bouto case, where Vicente reportedly first provided confession evidence to someone other than Dets. Guevara or Halvorsen, an informant here made first contact regarding the case with someone other than Dets. Guevara and Halvorsen. Here, the

53

# SIDLEY
SIDLEY AUSTIN LLP

record indicates that Rankins first related the confession to Sgt. Mingey, who then called Dets. Guevara and Halvorsen. Thus according to Sgt. Mingey, Rankins came up with the confession before speaking with Dets. Guevara and Halvorsen.

Third, we note that accusations by the informants of physical coercion by Dets. Guevara and Halvorsen changed over time. In particular, Rankins at first did not allege physical coercion in his first recantation in 1994, but in later recantations included extensive allegations of physical abuse. Upon first telling co-defendant Valentine Gomez about his involvement in the Montanez/Serrano case, Vicente first allegedly only revealed that he participated in exchange for sentencing benefits. Like Rankins, it was only in later iterations that Vicente alleged physical coercion by the detectives. The changing nature of the allegations of misconduct against Dets. Guevara and Halvorsen make misconduct less likely than it otherwise would be—it also makes allegations of misconduct related to physical abuse unlikelier than it otherwise would be.

We next turn to facts that make misconduct more likely. First, on 5/25/93, just one week before the Vicente evidence purportedly broke the case, unknown CPD personnel requested criminal histories of Montanez, Serrano, and Pacheco notwithstanding the fact that they had no contemporary criminal history. Under the circumstances, the most likely reason that this occurred is that the three men had already been targeted as suspects in the Vargas murder. We cannot reconcile this event with Det. Halvorsen's later explanation that he was acting upon a rumor that an unknown "Pistol Pete" had committed the crime, information he considered "useless" until he approached Vicente for information about the murder, reportedly on 6/2/93. In fact, as discussed above, Vicente was not arrested with someone nicknamed "Pistol Pete." We find it a strong possibility that rather than being a cold case at the time of Vicente's initial involvement, Dets. Guevara and Halvorsen had already zeroed in on the defendants as primary suspects.

Related to this point, we also note that it may be significant that in the neighborhood at the time of the Vargas murder lived two brothers, both well-known members of the Imperial Gangsters, named Angel Sanchez and Armando Quinones. The pair were nicknamed "Pistol Pete" and "Mando," respectively. Because the two men share nicknames with Montanez and Serrano, but actually have a substantial connection to one another, unlike Serrano and Montanez, we consider it possible that Dets. Guevara, Halvorsen, or both may have suspected, for some unknown reason, that "Pistol Pete" was involved with the Vargas crime, but then, for another unknown reason, focused their investigation upon the wrong Pistol Pete and, later, the wrong Mando.

Second, although they provided different nicknames of the defendants and Rankins included several extra facts, discussed above, the core narratives of Vicente and Rankins share most of the same key characteristics. That these characteristics, describing an armed robbery, do not align with the untainted evidence, as discussed above, make it more likely than not that the evidence provided by Vicente and Rankins was provided to them. As discussed above, there is no evidence or allegation that Vicente and Rankins knew one another prior to meeting in the witness quarters, after they had already provided evidence in the case. Thus, it is most likely that

SIDLEY AUSTIN LLP
**SIDLEY**

the facts were provided to Vicente and Rankins, intentionally or not, by one or both of the detectives.

Third, there are two instances in which Det. Halvorsen has admitted to us that portions of the informants' story that became key components of the narrative told at trial were fabricated or otherwise not true. Det. Halvorsen told us that he and Det. Guevara knew that Gold Busters did not exist, which we confirmed. Nonetheless, Dets. Guevara and Halvorsen reported it as fact and Vicente testified to its existence. Second, Det. Halvorsen informed us that Rankins did not have "any of the facts" correct. Nonetheless, Det. Halvorsen himself testified at trial to the evidence provided by Rankins, and Det. Guevara did so before the grand jury.

Fourth, it is notable that this is the second of three cases from the summer of 1993 in which Vicente provided confession evidence against defendants in murder cases. Although we above found it more likely than not that Vicente fabricated the Bouto confession on his own, without willful police misconduct, that does not mean that that is the case in this instance, as well. It is unlikely that Vicente would have obtained multiple murder confessions in three cases investigated in the same year by the same two detectives. Also, unlike in Bouto, where Vicente had verified access to the defendant because the two were jailed in the same cell block, here no such verifiable meeting occurred. In fact, we find it unlikely that Vicente would have elected to provide evidence against Bouto immediately upon being incarcerated but withheld the evidence of Montanez and Serrano's guilt for weeks, given that he was incentivized to provide as much evidence as possible to secure sentencing benefits.

Fifth, we find it improbable that Det. Halvorsen did not take notes during his meeting with Vicente, as he testified at trial. Vicente's story about the purported confession was lengthy, taking place over multiple days and multiple locations and involving three defendants and the victim. It seems difficult to believe that he would have been able to accurately transfer the telling of such a story to a report by memory, unless he had a role in developing it.

Sixth, police did not charge Rankins as an accomplice to the Vargas murder, despite his alleged proximity to it and purported confession to agreeing to accompany the men on a drug and gun run. Perhaps even more tellingly, they did not charge or even attempt to discuss the crime with Williams, aka Shorty Folks, who was at the scene according to Rankins's statement, and available to provide evidence because he was incarcerated for the entire relevant period. That Dets. Guevara and Halvorsen did not attempt to speak with Williams makes it possible that they did not believe Rankin's story, but were willing to use it at trial.

Seventh, also related to Rankins's role, we find the one-hour time span reported between Dets. Guevara and Halvorsen's initial meeting with Rankins and the arrest of Serrano to be improbably short, raising the possibility that Rankins's evidence did not actually motivate the arrest of Serrano, contrary to reports in the record. This is particularly true because Dets. Guevara and Halvorsen allegedly drove Rankins to the scene of the shooting in that time frame, as well, to test Rankins's knowledge of the crime. Relatedly, inconsistencies regarding the reported genesis of Rankins's involvement with the case seem to weigh in favor of misconduct. While Dets. Guevara and Halvorsen wrote in their 6/14/93 Supp. R. that Rankins was questioned

55

**SIDLEY** | SIDLEY AUSTIN LLP

by Sgt. Mingey regarding an unrelated murder when Rankins revealed his knowledge about the Vargas murder, in an interview with us Sgt. Mingey said he did not investigate the other crime.

Eighth, and again related to Rankins, Rankins's later statements that he was taken to the scene and Det. Halvorsen's corroboration of that fact, would have offered an easy opportunity to provide Rankins with the facts of the case.

Finally, related to both informants, we find it important that neither provided verifiable information about the crime that was not previously known. Between two informants relating detailed accounts, we would expect that verifiable details would have emerged that were previously unknown about the crime scene. As discussed above in detail, none did, thus making it more likely than it would otherwise be that the facts of the case were shared with the informants by CPD personnel.

Looking at all the facts known to us, we cannot conclude whether or not there was misconduct by the police regarding the alleged confessions. There are too many possibilities, too many inconsistent facts, and a lack of credible witnesses.

Due to inconsistencies in the portion of Vicente's and Rankins's allegations of abuse, we find it more likely than not that neither Dets. Guevara nor Halvorsen engaged in physical abuse of the two informants.

### (ii) **Wilda Vargas's Evidence**

We next turn to possible misconduct related to the participation of Wilda in the investigation. First, we discuss reasons that make it less likely that Dets. Guevara, Halvorsen, or both committed misconduct in their contact with Wilda. Next, we discuss reasons that make it more likely that Dets. Guevara, Halvorsen, or both participated in misconduct in their contact with Wilda.

Regarding the facts that make misconduct more likely, we recall that Wilda told post-conviction counsel for Montanez that she did not independently identify Montanez's vehicle to Det. Guevara, as was argued at trial, but rather that he pointed the car out to her as they drove past it. Relatedly, Wilda allegedly revealed that Det. Guevara told her that the bullet holes in Montanez's car matched ballistics tests from the crime scene, which was not true and was never argued by the State. However, we were not able to interview Wilda for purposes of examining the validity of these allegations.

Regarding facts that make it less likely that Dets. Guevara, Halvorsen, or both committed misconduct related to their contact with Wilda, we first note that Wilda did not allege misconduct at trial, in particular when she was asked about her identifications of a photo array including the defendants, line-ups including Montanez and Serrano, and the identification of Montanez's vehicle.

**SIDLEY** SIDLEY AUSTIN LLP

To conclude, we are unable, based upon the available evidence, to determine whether or not Det. Guevara, Det. Halvorsen, or both, committed misconduct regarding Wilda's identification of Montanez's car.

b. **Regarding Claims of Actual Innocence**

First, for the reasons detailed above, the evidence Vicente and Rankins provided against the defendants is not credible. To recapitulate briefly, neither Vicente nor Rankins provided to police any verifiable information that had not already been obtained from other sources, a circumstance that both undermines the value of their evidence and raises the possibility of official misconduct. In contrast, that evidence which is original to Vicente or Rankins cannot be corroborated by untainted sources or evidence; if Vicente or Rankins possessed legitimate evidence, this would not likely be the case. Vicente and Rankins also had significant incentives to fabricate evidence, but recanted—at least initially—without obvious incentive. Causing us to additionally doubt Vicente's credibility, after Rankins ceased cooperating, Vicente provided to ASA Coghlan a significantly altered account—more than eighteen months after he began to provide evidence against the defendants. Finally, although not dispositive, we give some weight to our finding that the confession evidence Vicente provided against Bouto and the third defendant was also more likely than not fabricated.

Second, as explained above, the identification evidence provided by Wilda and Shoop, considered in isolation from the informant evidence, is neither meaningful nor persuasive. We begin with Wilda. In summary, Wilda's identification of the defendants is unreliable, her identification of Montanez's car not only unreliable but perhaps also predicated on official misconduct. Shoop's evidence is even less consequential. Recall that he merely provided a description of a common vehicle, and that description can be meaningfully distinguished from Montanez's two-toned car.

Third, the remaining evidence is inconsistent with the State's theory of the case. As an initial matter, if Wilda's trial testimony was accurate, the Latino men she spotted at a gas station on the eve of her husband's murder lacked both motive and opportunity to commit the crime because, according to that testimony, the men could not have seen Montanez's money and did not follow them all the way home. Moreover, there is no reason to believe that even if those men had spotted Vargas's money and knew where he lived, they would have known that he departed for work at 5:30 a.m., an unusual hour at which to depart for work. Also, several witnesses had reason to see and/or hear three assailants attempting to mug Vargas, but none did. Indeed, Velez's evidence suggests that Vargas was likely murdered as he sat in his car, warming the engine, a finding consistent with CPD's initial analysis. Finally, had the crime been motivated by the defendants' need to obtain money to procure heroin, the failure to take anything from Vargas—whether the nearly $200 cash or radio on him—despite the opportunity to do so, is illogical.

Moreover, there is also some affirmative evidence of innocence, which we do not consider dispositive, but do take into account.

57

**SIDLEY** SIDLEY AUSTIN LLP

We begin with Serrano. First, in conversation with us, Serrano misstated an important fact regarding the crime scene, an error the perpetrator would not likely have made. Specifically, as detailed above, Serrano told us that Vargas's car radio was playing when his body was discovered. Second, other than common gang membership, there is no significant link between Serrano on the one hand and Pacheco and Montanez on the other hand. Third, Det. Halvorsen's testimony regarding the genesis of his solving the case, implicated Montanez not Serrano. Finally, we found credible Serrano's protestation of innocence when we met with him.

Regarding Montanez, first, Montanez has presented some evidence that his car was not damaged until well after Vargas's murder. Second, Capt. Pena told us that Montanez seemed genuinely shocked when he was arrested for Vargas's murder. Third, we also found credible Montanez's protestation of innocence when we met with him.

There is also some additional affirmative evidence of innocence. First, Vicente and Rankins both maintain that Montanez and Serrano are actually innocent. Second, CPD reported that the Vargas murder appeared to be similar to the crime perpetrated against Rojo and Salazar, and that crime was committed by African-American men. Third, no physical evidence links the defendants to the crime: (1) no weapon was recovered; (2) Montanez's car either tested negative for gun shot residue or was not tested for it; (3) the radio either tested negative for Serrano's fingerprints or it was not tested for them; and (4) the medical examiner did not report defensive wounds that might point to an attempted mugging. Fourth, the untainted physical evidence suggests that Vargas was murdered in a planned "hit" by someone familiar with his unusual work schedule, and there is no evidence linking Montanez or Serrano to a crime-for-hire scheme.

Having considered these flaws, we conclude that the only remaining potential evidence of guilt is as follows: (1) Montanez and Serrano were members of the Imperial Gangsters street gang, and knew each other; (2) Montanez and Serrano committed crimes, although there is no evidence that they committed crimes together; (3) Montanez and Serrano both committed armed robberies and, indeed, Montanez committed them with some frequency; (4) Montanez and Serrano used drugs and, in fact, Montanez sometimes committed robberies for the purpose of obtaining money to buy heroin; and (5) Serrano stole car radios with some frequency. That evidence, however, may not make Montanez or Serrano meaningfully more likely to have committed this crime than many other members of a Chicago street gang in 1993.

Looking at all the evidence, we conclude that Montanez and Serrano are more likely than not actually innocent.

Exhibit S&

Order Granting Certificate of Innocence                                    CCCR_____

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## CRIMINAL DIVISION

THE PEOPLE OF THE STATE OF ILLINOIS          )
                                             )
                vs.                          )          No.: 1993 CR 1817303
                                             )
_____ Jose Montanez _____                )          DRAFT 06/10/11
Defendant/Petitioner

### ORDER GRANTING CERTIFICATE OF INNOCENCE

This cause comes before the Court on the Defendant/Petitioner's Petition for Certificate of Innocence pursuant to 735 ILCS 5/2-702. The Court being fully advised finds by a preponderance of evidence that:

1. The Defendant/Petitioner was convicted of one or more than one felonies by the State of Illinois in the County of Cook and was subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;

2. ☑ The Defendant/Petitioner's judgment or conviction was reversed or vacated, and the indictment or information dismissed or, ☐ a new trial was ordered and either s/he was found not guilty at the new trial or s/he was not retried and the indictment and information is dismissed; or ☐ the statute or application thereof on which the indictment or information was based violated the Constitution of the United States or the State of Illinois;

3. The Defendant/Petitioner's indictment or information was dismissed or s/he was acquitted, and a Petition was filed within 2 years of the dismissal of the indictment or information or acquittal;

4. ☑ The Defendant/Petitioner is innocent of the offenses charged in the indictment or information or ☐ Defendant/Petitioner's acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State;

5. The Defendant/Petitioner did not his/her own conduct voluntarily cause or bring about his/her conviction.

IT IS THEREFORE ORDERED as follows:

1. That the Petition for Certificate of Innocence is GRANTED.

2. That the Clerk of the Circuit Court shall transmit a copy of the Certificate of Innocence to the Clerk of the Court of Claims, together with the Defendant/Petitioner's current address as indicated on the Petition.

ENTERED:

Dated: _____11-2-16_____                    _____
                                            Judge          Judge's No.

ENTERED
JUDGE LeROY K. MARTIN JR. 1844
NOV 02 2016
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Order Granting Certificate of Innocence                                    CCCR_____

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## CRIMINAL DIVISION

THE PEOPLE OF THE STATE OF ILLINOIS        )
                                           )
            vs.                            )        No.:  1993 CR 1817301
                                           )
___Armando Serrano_____              )        DRAFT 06/10/11
Defendant/Petitioner

### ORDER GRANTING CERTIFICATE OF INNOCENCE

This cause comes before the Court on the Defendant/Petitioner's Petition for Certificate of Innocence pursuant to 735 ILCS 5/2-702. The Court being fully advised finds by a preponderance of evidence that:

1. The Defendant/Petitioner was convicted of one or more than one felonies by the State of Illinois in the County of Cook and was subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;

2. ☒ The Defendant/Petitioner's judgment or conviction was reversed or vacated, and the indictment or information dismissed or, ☐ a new trial was ordered and either s/he was found not guilty at the new trial or s/he was not retried and the indictment and information is dismissed; or ☐ the statute or application thereof on which the indictment or information was based violated the Constitution of the United States or the State of Illinois;

3. The Defendant/Petitioner's indictment or information was dismissed or s/he was acquitted, and a Petition was filed within 2 years of the dismissal of the indictment or information or acquittal;

4. ☒ The Defendant/Petitioner is innocent of the offenses charged in the indictment or information or ☐ Defendant/Petitioner's acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State;

5. The Defendant/Petitioner did not his/~~her~~ own conduct voluntarily cause or bring about his/her conviction.

IT IS THEREFORE ORDERED as follows:

1. That the Petition for Certificate of Innocence is GRANTED.

2. That the Clerk of the Circuit Court shall transmit a copy of the Certificate of Innocence to the Clerk of the Court of Claims, together with the Defendant/Petitioner's current address as indicated on the Petition.

ENTERED:

Dated: __11-2-16_____                _____
                                                              Judge          Judge's No.

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ENTERED
JUDGE LeROY K. MARTIN JR. -1844
NOV 02 2016
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Exhibit S' "

IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS,  )
                                    )
        Plaintiff,  )
                                    )    Circuit Court No. 93 CR 13526
          v.  )
                                    )
ROBERT BOUTO  )
                                    )
        Defendant.  )
                                    )

## **AFFIDAVIT OF REY LOZADA**

1.     My name is Rey Lozada. I am 38 years old, I am of sound mind and competent to give this affidavit.

2.     I witnessed my friend, Salvador Ruvalcaba, be shot and killed on May 14, 1993.

3.     I saw the person who shot Salvador, but I did not get a good look at him because he was wearing a hoodie at the time of the shooting and immediately after the shots were fired, I fell to the ground to avoid the gunfire and turned away from the shooter.

4.     After the shooting, the police brought some people from the neighborhood to the scene. I observed Carl Richmond acting ~~and~~ angry and indicating that it was Bouto who was the shooter. So I agreed with Carl that Bouto was the shooter while I was still at the scene.

5.     I was 15 years old at the time. I was with my older brother, Jacobo, and the other people we were with at the time of the shooting were also older than me. ~~I followed Carl's lead~~ because he was older and I decided to just say what he was saying.

6.     Later on the day of the shooting, we were brought to the police station at Grand & Central. While we were standing by the desks in the open area, we could see Bouto sitting in a room with the door open. The door was not fully open, but it was cracked enough where we could see him.

7.     We were then brought into a room right next to Bouto. We could see Bouto through a one-way mirror sitting in the room next to us while we were standing at a desk in the open area, at the time period referred to in paragraph 6. We saw some loose photographs on the desk in front of us. We looked at the photos together identifying the people we knew and making sure we all knew what Bouto's photograph looked like. Bouto's photograph was one of the photos on the desk.

8.      After we had all seen Bouto's photograph, we all went to view a line-up. I picked out Bouto because I was still following the lead of the older guys I was with, who were saying it was Bouto.

9.      Before the shooting, I had seen Bouto in the neighborhood before, but I did not know his name. I cannot say if he was or was not the shooter because I could not see the shooter's face well enough.

10.     I did not want to testify about Sal's murder. While the case was in court, I was avoiding the State's Attorney's efforts to reach me. Then I was arrested and told there was a bench warrant for contempt of court and I had to sit in jail until testifying in the case. This happened before I was shot on February 16, 1996.

11.     I felt pressure to testify consistently with my identification of Bouto because I feared I would be locked up or retaliated against if I did not.

12.     I was never visited by anyone acting on Bouto's behalf before trial. Had I been interviewed then, I would have told the same facts that are contained in this affidavit.

13.     I have read this affidavit and had it read to me out loud. I have had the opportunity to make any corrections. This affidavit is the truth, and I'm signing it because it's the truth.


Signed under penalty of perjury

_Rey Lozada_

Exhibit S' #

## AFFIDAVIT OF CARL RICHMOND

I, Carl Richmond, do state on oath that the following facts are true to the best of my knowledge:

1.     I was born on December 15, 1973.  I previously testified at Robert Bouto's trial for the murder of Salvador Ruvulcaba.

2.     I understand that this affidavit is being prepared for the case of *People v. Gabriel Solache & Arturo Reyes*, Cook County No. 98 CR 12440, and that this affidavit may be filed in court in that case.

3.     I am making this statement of my own free will.  No one has offered, promised, or given me anything in exchange for making this statement.  No one has threatened me in connection with this statement.

4.     I witnessed the shooting of Salvador Ruvulcaba on May 14, 1993.  At that time, I was a member of the Spanish Cobras gang.  Also present at the shooting were Rey Lozada and Frank Escobar.

5.     I did not want to speak to the police about the shooting, but I had been told by a police officer who knew me personally that if I did not identify the shooter, the police would "put a case on me."  I believed this meant they would implicate me in an unsolved murder case. I had heard of past incidents where other people had cases put on them even though they were not involved with them.

6.     After the shooting, Detective Guevara arrived at the crime scene.  He took Lozada and me to a patrol car.  Robert Bouto and two or three other men were in the back seat.  I knew Bouto was in a gang that was a rival to mine.  Both Lozada and I identified Bouto as the shooter.

-1-

7.    Lozada, Escoabar, and I were taken to the police station at Area 5 later on May 14 to be interviewed by the police and to view a line-up.  Once there, the other witnesses and I were placed in a room all together.  While at the station, and before the line-up, I saw Bouto through what I thought was a two-way mirror.  He was handcuffed in an empty interrogation room a few doors down from the room we were placed in.  From the room we were in, I heard someone whom I assumed was Bouto getting beaten up and screaming.

8.    The other witnesses to the crime and I were given pizza and cigarettes while waiting for the line up to be conducted.  Detective Halvorsen was in the room with us.  Detective Guevara came in and out of the room.  I was not allowed to contact my family or use the phone.  I was also threatened with obstruction of justice if I left.  I was detained by the officers until 9:00 or 10:00 p.m. that evening.

9.    I was asked to view a line-up that evening.  Detective Guevara told the other witnesses and me that they had the shooter, and that all we had to do was identify Bouto as the shooter.  He whispered to each of us what position the suspect would be in.  Detective Guevara then led each of us into the room to view the line-up.  Each witness came back and confirmed to the other witnesses that the suspect was in that position.

10.    While I was at the police station, Detective Guevara told me that he had a lot of pull with street cops, and that he could make my life very uncomfortable.  I had seen how the police made life uncomfortable for other acquaintances of mine and believed that Detective Guevara would follow through with his threat.  I agreed to testify because of Detective Guevara's statement.

11.    After identifying Robert Bouto in the line up, the other witnesses and I were

-2-

dropped off in our neighborhood.

    12.    Prior to signing this three-page affidavit, I have read and initialed each page, and I have made and initialed any necessary corrections to this affidavit.

_____  6 - 7 - 08
Carl Richmond

SUBSCRIBED AND SWORN TO BEFORE ME
this ____ day of June, 2008.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
KIM L. DAUGHTRY
Notary Public State of Illinois
My Commission Expires 06/15/2011

-3-

Exhibit 252

```
 1    STATE OF ILLINOIS   )
                          )  SS:
 2    COUNTY OF C O O K   )

 3        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
             COUNTY DEPARTMENT - CRIMINAL DIVISION
 4
      THE PEOPLE OF THE STATE )
 5    OF ILLINOIS,           )
                             )  Criminal
 6           Plaintiff,      )
                             )  No.  95-CR-18602-01
 7     vs.                   )
                             )
 8    THOMAS SIERRA,         )
                             )
 9           Defendant.      )

10            REPORT OF PROCEEDINGS had at the hearing in

11    the above-entitled cause before the HONORABLE

12    ERICA L. REDDICK, Judge of said court, on the 10th

13    day of February 2022.

14     PRESENT:

15     HONORABLE KIMBERLY M. FOXX,
            State's Attorney of Cook County, by:
16     MS. CHRISTA BOWDEN,
            Assistant State's Attorney,
17          appeared on behalf of the People;

18     MR. JOSHUA TEPFER, MR. ANAND SWAMINATHAN,
       MR. STEVE HART,
19          appeared on behalf of the Defendant.

20

21
      ADRIENNE WHITE CSR #084-004614
22    Official Court Reporter
      2650 South California Room 4CO2
23    Chicago, IL 60608
      773-674-3407
24
```

Guevara-L 000114

1      THE COURT:  Recalling Thomas Sierra.  All

2  right.  Everyone starting with the petitioner and

3  counsel identify yourself and the state.

4      MR. TEPFER:  Good morning, your Honor.

5  Joshua Tepfer, T-e-p-f-e-r, Anand Swaminathan,

6  A-n-a-n-d, S-w-a-m-i-n-a-t-h-a-n, present in court.

7  Our partner Steve Hart (phonetic) is on the Zoom.

8          And Mr. Thomas Sierra, the petitioner, is

9  present in court.

10      THE COURT:  All right.  And then for the state.

11      MS. BOWDEN:  Assistant State's Attorney

12  Christa Bowden.

13      THE COURT:  Okay.  Parties, if you wish to be

14  seated.  Okay.  All right.  I'm going to stop the

15  sheriff just momentarily to adjust the -- okay.

16          All right.  The case is before the Court

17  for ruling on the petition for certificate of

18  innocence.  I do note that in the filing, the

19  petition certainly has been pending for some time as

20  well as the Court wishes to acknowledge the

21  supplemental filing by the petitioner with respect to

22  the time served with respect to the pleadings.

23          The cause comes before the Court on a

24  petitioner's petition for certificate of innocence.

Guevara-L 000115

```
1    The Court after hearing and in consideration of quite

2    a lengthy volume of information, supporting

3    attachments and documents -- really I just observed

4    over time it seems not to aid in the function -- the

5    creation of so many separate transcripts from

6    witnesses who have -- who are -- who spoke to the

7    Court determination overall.

8              I simply make that observation in speaking

9    to the amount of time that it takes to become aware

10   of the facts of which the petition resolution pins

11   and really the whole process of weighing and

12   considering.

13             And I will just simply again note that it

14   seldom gets better with time, the amount of

15   additional information, witnesses speaking to these

16   events over time.

17             I think the record does bear out that

18   memories don't necessarily improve with time.  And

19   I'm quite certain that any expert dealing with this

20   topic would say that a lot more succinctly and

21   definitively.

22             But the Court considers the evidence as it

23   appears before the Court.  And in so doing, the Court

24   after reviewing the petition -- considering the
```

3

1    state's input as well -- that the petitioner has

2    established by a preponderance of the evidence that

3    the petitioner was convicted of one or more felonies

4    in the state of Illinois, in Cook County -- that --

5    and this occurred -- I believe it was a 1997 trial --

6    of the charges.

7            The petitioner was convicted after a jury

8    trial and sentenced to a term of imprisonment of 45

9    years.  And with the supplemental documentation, the

10   petitioner has established that -- and through

11   testimony that he served all or part of that

12   sentence -- well, not all, but a part of that

13   sentence.

14           The petitioner's evidence as well

15   establishes by a preponderance of the evidence that

16   the conviction was ultimately vacated.  The

17   charges -- all -- ultimately dismissed.  There were

18   certain charges; of course, in the initial indictment

19   that were disposed after the jury trial.

20           But ultimately, the state -- I believe,

21   this is January 9th of 2018 -- the evidence shows

22   elected not to oppose the post conviction petition.

23           And then did, in fact, dismiss all charges

24   against Mr. Sierra after those convictions were

Guevara-L 000117

1    vacated along with the sentence.

2          The evidence also shows that the

3    petitioner's petition for a certificate of innocence

4    was timely filed and that -- within the same year of

5    the vacating and dismissal of the charges upon which

6    the petitioner was convicted and served a sentence,

7    the petition was filed within that same year of 2018,

8    so the Court does find it was timely filed.

9          The focus of the Court's consideration and

10   ultimate ruling hangs on the two remaining elements

11   of the petition for certificate of innocence, the law

12   necessary for the petitioner to sustain his burden or

13   for the Court to find that the petitioner has not.

14         And those two remaining elements are that

15   the petitioner is innocent of the offenses charged in

16   the indictment or information.

17         And then second that the petitioner did not

18   by his own conduct voluntarily cause or bring out his

19   or her conviction.  I'll start with the second.  It's

20   a little more simple to dispose.

21         I do find after significant consideration

22   and again weighing of the evidence -- the full

23   evidence before the Court -- that the petitioner has

24   shown by a preponderance of the evidence that the

Guevara-L 000118

1  petitioner did not by his own conduct voluntarily

2  cause or bring about the conviction.

3          I base that on clearly the evidence

4  presented at trial -- consisted of two individuals,

5  Jose Melendez (phonetic), Alberto Rodriguez

6  (phonetic) who from the time the incident occurred --

7  this was back in 1995, I believe, May 23rd, 10:00

8  o'clock -- or after 10:00 o'clock that evening, the

9  first responding officer to the scene testified and

10  questioned both of the individuals who were in the

11  car with the deceased.

12          And they both indicated at that time that

13  they saw two male Hispanics in the front and one male

14  black in the vehicle -- two male Hispanics and one

15  male black.

16          From that initial description it -- the

17  next recording of information -- the detectives

18  arrived on scene and took over the investigation at

19  that point and reported that both persons in the

20  vehicle Mr. Melendez and Ms. Rodriguez said they were

21  unknown male Hispanics.

22          So on the scene it appears that the

23  description varied from the beginning.  From there

24  what unfolded during the trial -- and I will just

Guevara-L 000119

1    stay focused on whether the petitioner by his own

2    conduct voluntarily caused or brought about his

3    conviction.

4         As the evidence developed -- and it came

5    forth that Detective Guevara relying on his claim of

6    having observed a vehicle described by Mr. Melendez

7    and Mr. Rodriguez as being a dark color, blue or

8    black Buick Park Avenue.

9         Detective Guevara then developed

10   information based on a claim of his contact with a

11   women named Esther Rodriguez three days before this

12   shooting incident of May 23rd, 1995, as alleged -- it

13   was shown to have occurred that he, Detective Guevara

14   claims to have seen Thomas Sierra in a vehicle that

15   he claims matched the description provided by the two

16   individuals in the car with the deceased at the date

17   and time of these events.

18        And from there the balance of the case

19   unfolds with the focus on Thomas Sierra as the prime

20   suspect.  Now, there are several other moving parts,

21   but as it pertains to whether the petitioner's own

22   conduct voluntarily caused or brought about his

23   conviction short of being known to Detective Guevara

24   and perhaps other police personnel, short of

7

Guevara-L 000120

1    Thomas Sierra being known to be a member of a gang at

2    the time of these events, and the specific gang that

3    he was known to be a member of -- I believe it was

4    imperial gangsters -- short of those factors the

5    Court can find no evidence within the record that

6    support a showing that petitioner by his own conduct

7    voluntarily caused or brought about the conviction.

8           There is not visible evidence that leads

9    Mr. Sierra to the murder and shooting death of the

10   victim in this case.  There is not a statement

11   alleged to have been made by Thomas Sierra

12   implicating himself.

13         And to the contrary there is evidence that

14   Mr. Sierra claimed to be with a young woman who he

15   was seeing frequently at the time, a Luz Montalvo

16   (phonetic).

17         And as I consider all of the evidence

18   brought forth by the state that resulted in the

19   conviction together with all of the evidence that has

20   developed since including the deposition of the

21   detectives involved, the questioning and

22   re-questioning of the witnesses, the primary

23   witnesses in particular, there is no evidence that

24   petitioner's own conduct voluntarily caused or

Guevara-L 000121

1    brought about the conviction.

2            So the focus of the Court's ruling now

3    turns toward whether the petitioner has established

4    by a preponderance of the evidence that the

5    petitioner is innocent of the offenses charged in the

6    indictment.

7            And this case again without belaboring the

8    point, the Court has considered the multiple

9    statements of the witnesses involved.  The Court

10   looks to the legal standard for determining whether

11   this particular element has been met.

12           And I consider the testimony of

13   Jose Melendez.  I find, again, from the very

14   beginning through the various times he's been

15   questioned under oath that his testimony provides no

16   great contribution to the Court's ultimate

17   determination here.

18           Clearly, he, by the time of trial insists

19   that he did not specifically point out

20   Thomas Sierra.  He is alleged to have made statements

21   to police personnel before that time identifying him.

22           The Court cannot place any reliability or

23   credibility on this surrounding police testimony that

24   supports the claim that Jose Melendez did, in fact,

Guevara-L 000122

1       identify Thomas Sierra as the shooter.

2               But, again, Jose Melendez' testimony has

3       its own problems and issues.  But as the Court

4       considers and weighs; and he, Jose Melendez, cannot

5       be found to have reliably at any time identified

6       Thomas Sierra as the shooter in this incident.

7               When the Court considers the evidence from

8       Alberto Rodriguez, again, right during the trial as

9       he testified under direct examination, he appears to

10      give clear cut testimony that he was able to identify

11      Thomas Sierra.

12              Under cross-examination it again appeared

13      that his story changed right there during the trial.

14      But thereafter, again, not a reliable source with

15      respect to establishing that Thomas Sierra was, in

16      fact, the shooter.

17              To the contrary the physical evidence

18      belies the claim that the two individuals were able

19      to see who, in fact, the shooter was, the time of day

20      that the events happened, that it was dark out.

21              Clearly, there's some lighting in the area

22      as shown.  This area is the Logan Square community.

23      But based on the time during which the amount of time

24      that elapsed from the initial noticing of the vehicle

Guevara-L 000123

```
 1    to the last of the vehicle in which Noel -- was shot

 2    and killed, the tint on the windows that was

 3    described repeatedly by the witnesses, the condition

 4    of the vehicle that was ultimately impounded and

 5    viewed or shown to the witnesses that did not have a

 6    tint, the showing of the descriptions of who the

 7    assailants were, the evidence that was put forth by

 8    the state had problems from the time of the trial,

 9    but certainly after the trial, the wealth of evidence

10    that had been presented with respect to

11    Detective Guevara and other detectives' conduct in

12    both the gathering and development of the evidence in

13    this case severely calls into question whether

14    Thomas Sierra was properly named as a suspect or a

15    participant in the events of this case.

16            The Court ultimately looks to the lack of

17    physical evidence linking Thomas Sierra, the

18    unreliability of the purported eyewitness testimony

19    of the key witnesses who named Thomas Sierra as the

20    shooter, the possibility of the concrete evidence

21    that, in fact, Mr. Sierra was likely with

22    Luz Montalvo during the time that these events are

23    alleged to have occurred.

24            The Court considered at length the various
```

Guevara-L 000124

1    statements -- or these statements attributed to her

2    that was developed by Assistant State's Attorney

3    (inaudible) -- as well as the police personnel.

4           Ms. Montalvo years later during her -- I

5    believe it was 2019 deposition -- I considered her

6    testimony then versus what was presented at being her

7    statement at the time.

8           I considered that after all of these years

9    there is no showing there's been ongoing contact

10   between herself and anyone else involved in the case.

11          What would be her motive to continue to

12   insist that her will may have been influenced or

13   borne by the fact that she was young at the time.

14          When she spoke with police, she insists

15   that Detective Guevara was very insistent in nailing

16   her to the time of 11:00 o'clock as being -- between

17   11:00 and midnight as being the time during which she

18   would page.

19          And that Thomas Sierra, the petitioner,

20   would come to her house almost daily during the

21   timeframe of this shooting.  And they were pursuing a

22   relationship with one other.

23          Ms. Montalvo was insistent that -- she was

24   clear in explaining that her parents worked at I

Guevara-L 000125

1    believe it was KT Industries factory.  That they

2    started at 5:00 or 6:00 a.m. in the morning and

3    worked a full eight hour shift.

4          She recalls herself working there at some

5    point during that time.  And she insisted her parents

6    routinely went to bed at 8:00 or 9:00 o'clock.  She

7    would wait for a period.

8          And then page Mr. Sierra.  He would come to

9    the home often spending the night overnight.  So

10   certainly there is a statement developed close in

11   time to when the events happened that purports to be

12   her statement.

13         She has disavowed having made the

14   statement.  I, again, weigh in considering that

15   against her more recent testimony.  There is quite a

16   bit of evidence presented in the petition for

17   certificate of innocence to support the claim that

18   Thomas Sierra is actually innocent under the legal

19   standards for establishing the same.

20         I have only highlighted a couple of the

21   areas in which I weighed and sifted evidence to

22   determine or reach the ultimate conclusion as to my

23   ruling on this petition.

24         I need not go into great detail about the

Guevara-L 000126

1    ills and harm of Detective Guevara.  That is well

2    supported.  But I did consider pattern and practice

3    evidence.

4           I think the evidence that has come forth in

5    this case alone is sufficient to show that

6    Detective Guevara fashioned -- definitely

7    represented, thumb on the scale, that denied

8    Thomas Sierra a trial that was worthy of any

9    consideration as it pertains to a finding of guilty.

10           I think the evidence is clear that from the

11    beginning based on the actions of Detective Guevara

12    and those with whom he worked that the evidence was

13    tainted in such a fashion that as the Court views it

14    now with the lens of all of these years later with

15    the benefit of considering it now.

16           And, again, the Court did consider a

17    tremendous amount of evidence presented in this case

18    and considered the arguments under the standard of

19    the law.

20           The Court is convinced by a preponderance

21    of the evidence that if this case were to proceed to

22    trial today that, of course, Mr. Sierra would be

23    successful in establishing that he is not guilty of

24    the charges.

14

1           I would also like to spread of record that

2    I do understand that a finding of not guilty does not

3    always equate to a finding of actual innocence.  That

4    is very clear to this Court.

5           In this circumstance giving due

6    consideration to all, it is the Court's decision and

7    finding and ruling that the petition for certificate

8    of innocence is granted.

9           Petitioners, I will need an order

10   submitted.  It should be submitted to the state,

11   Ms. Bowden, for review before my signature.

12        MR. TEPFER:  Thank you very much.

13        THE DEFENDANT:  Thank you, your Honor.

14        MR. TEPFER:  Thank you, your Honor.  I think we

15   will either submit it later this afternoon or

16   tomorrow morning.  Thank you.

17        THE COURT:  Ms. Bowden, they have indicated

18   they'll submit an order later today -- or let me just

19   make you aware the Cook County court system is closed

20   tomorrow.

21        MR. TEPFER:  Oh.

22        THE COURT:  In celebration of the

23   Lincoln Holiday.  And so I think that she -- we all

24   have access to our e-mails.  We're not in the

Guevara-L 000128

```
 1   building, but the court is closed.

 2           So I don't believe our clerk will be

 3   operating, just to be aware, okay.

 4        MR. TEPFER:  Sure.  I have a different court

 5   (inaudible) --

 6        THE COURT:  Okay.  Thank you.

 7        MR. TEPFER:  All right.  Thank you.

 8           (WHICH WERE ALL THE PROCEEDINGS HAD)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

16

Guevara-L 000129

1  STATE OF ILLINOIS  )
                      )
2  COUNTY OF C O O K  )

3

4          I, ADRIENNE WHITE, an Official Court

5  Reporter for the Circuit Court of Cook County, County

6  Department-Criminal Division, do hereby certify that

7  I reported in shorthand the proceedings had at the

8  above-entitled cause; that I thereafter caused the

9  foregoing to be transcribed into typewriting, which I

10  hereby certify to be a true and accurate transcript

11  of the proceedings had before the Honorable

12  ERICA L. REDDICK, Judge of said court.

13

14

15                        _____
                          Official Court Reporter
16                              #084-004614

17

18

19  Dated this 10th day

20  of July 2022.

21

22

23

24

17

**Guevara-L 000130**

Exhibit 57

Support The National Registry of Exonerations — **Donate Now**

A PROJECT OF THE UNIVERSITY OF CALIFORNIA IRVINE NEWKIRK CENTER FOR SCIENCE & SOCIETY,
UNIVERSITY OF MICHIGAN LAW SCHOOL & MICHIGAN STATE UNIVERSITY COLLEGE OF LAW



THE NATIONAL REGISTRY
OF EXONERATIONS

**3,488 EXONERATIONS SINCE 1989
MORE THAN 31,700 YEARS LOST**

BROWSE CASES     ISSUES     REPORTS     RESOURCES     ABOUT US          MAKE A GIFT

# JOSE CRUZ

Other Exonerations with Misconduct by Detective Guevara



Jose Cruz embraces family upon
release (Photo: E. Jason Wambsgans-
Chicago Tribune)

On October 6, 1993, at about 3:30 a.m., 40-year-old Vernon Meadors was waiting at a bus stop at the corner of North and Kedzie Avenues in Chicago, Illinois, when a car pulled up and the engine stopped. The driver, 16-year-old Antwane Douglas, asked where he could get a jump start.

Meadors later said that he suggested Douglas leave the car at the 24-hour gas station adjacent to the bus stop. According to Meadors, as Douglas walked away, another car pulled into the gas station. The front seat passenger asked Douglas if he was a member of the Disciples street gang. When Douglas said he was a Vice Lord, a rival gang, passengers got out of the car and began firing guns. At least 20 shots were fired and Douglas was killed.

Meadors dove to the ground when the shooting began. When it ended, he heard a voice say, "Witness!" Meadors then was shot in the arm. He played dead on the sidewalk until the car drove away. Subsequently, he was taken to a hospital where police interviewed him. He said there were three assailants and said the front seat passenger was a Hispanic male.

When he got home from the hospital that evening, Meadors was visited by detectives Reynaldo Guevara and Ernest Halvorsen and Sgt. Edward Mingey. They showed Meadows a photographic lineup containing about 21 photographs of Hispanic gang members, including 24-year-old Jose Cruz. Meadors did not identify anyone.

The following morning, on October 7, 1993, the Chicago Tribune newspaper published a short article about the shooting that mentioned Meadors by name and identified the block of the street where he lived. He became angry and afraid because he lived within walking distance to the location of the shooting.

On October 8, 1993, Detective Anthony Wojcik visited Meadors. At this time, Meadors said he could identify the shooter, but that he wanted assurances that he and his family would be protected before he would make an identification. The police agreed to relocate the family and put them into a witness protection program. Meadors then was shown a photo array of Latin Kings street gang members, and Meadors identified Cruz as the gunman who was in the front passenger seat. Meadors was then shown the first photographic array, and this time he identified Cruz.

Based on the identification, police arrested Cruz on October 9, 1993. He was charged with first-degree murder and attempted murder. During an interview, Cruz denied any involvement in the crime. He readily admitted to being involved in a previous shooting for which he had been arrested and was out on bond. Cruz said that he got home at about 12:30 a.m. and went to

| | |
|---|---|
| **State:** | Illinois |
| **County:** | Cook |
| **Most Serious Crime:** | Murder |
| **Additional Convictions:** | Attempted Murder |
| **Reported Crime Date:** | 1993 |
| **Convicted:** | 1996 |
| **Exonerated:** | 2022 |
| **Sentence:** | 90 years |
| **Race/Ethnicity:** | Hispanic |
| **Sex:** | Male |
| **Age at the date of reported crime:** | 24 |
| **Contributing Factors:** | Mistaken Witness ID, Official Misconduct, Inadequate Legal Defense |
| **Did DNA evidence contribute to the exoneration?:** | No |

3/15/24, 12:44 PM                                    1836 Federal Nathaniel Gray Northwestern...

Case: 1:20-cv-04156 Document #: 339-18 Filed: 06/10/24 Page 142 of 511 PageID #:50109

bed—three hours before the shooting occurred. He said he was awakened at 5 a.m. by his aunt who was leaving for Puerto Rico.

After Cruz was arrested, he was placed in a live lineup. Meadors identified him a third time.

In January 1996, Cruz went to trial in Cook County Circuit Court. There was no physical or forensic evidence linking him to the crime. Meadors testified and identified Cruz as one of the gunmen. The defense focused on attempting to show that the identification was unreliable because of Meadors's initial failure to make an identification when shown the photographic array that contained Cruz's picture.

On January 30, 1996, the jury convicted Cruz of first-degree murder and attempted murder. He was sentenced to 90 years in prison to be served consecutive to a 15-year term for the unrelated shooting case.

The Illinois Appellate Court for the First District upheld the convictions and sentence in October 1998.

In 2018, Gregory Swygert, an attorney at the Center on Wrongful Convictions at the Bluhm Legal Clinic, Northwestern Pritzker School of Law, filed a post-conviction petition seeking to vacate Cruz's conviction.

The petition said that the detectives in the case, including Guevara, had identified two witnesses shortly after the crime, both of whom said the gunman was a Black man.

One of the witnesses, Pedro Jaramillo, was working as an attendant at the gas station where the shooting occurred. When he was first interviewed, he said the shooter was a Black man. Days later, Jaramillo, a Spanish speaker who did not speak, understand, or read English, signed a statement that was written in English by police. The statement said Jaramillo said the shooter was either an "olive complected Hispanic or light skinned Black." However, when interviewed as part of the Center on Wrongful Convictions reinvestigation, Jaramillo said he never made that statement. "No, it's not possible," he said. "[T]hose words were put on me by the police." He said the police wanted him to change his identification, but he insisted that the shooter was Black.

Jaramillo said he was pressured by Guevara to sign the statement and that Guevara wanted to force Jaramillo to testify that the shooter was Hispanic. Guevara became "furious," Jaramillo recalled. "I felt scared." He said that Guevara wanted him to pick the wrong person [Cruz] as the gunman. In the end, Jaramillo's supervisor found an attorney to represent Jaramillo to keep Guevara at bay.

Evan Rios was a witness at the scene of the shooting. At the time, he told police that the car that fled contained Black males. "I told [police] I saw 3-4 Black men in a car that sped away westbound on North Avenue," Rios told the Center on Wrongful Convictions. "I gave them my contact information. I was not contacted by the police again regarding this case."

Rios said that a police report which stated he spoke to Jaramillo after the shooting, and that he gave Meadors a threatening glare, was false. The report falsely characterized Rios as a "drug dealing gangbanger who intimidated both Jaramillo and Meadors," the petition said.

The petition said that Cruz's trial defense attorney never contacted Jaramillo or Rios to interview them as potential defense witnesses. The petition said the false reports likely discouraged the defense from contacting either Jaramillo or Rios.

The petition cited a mounting number of cases where defendants had been granted new trials based on evidence that Guevara and Halvorsen had forced defendants to falsely confess or forced witnesses to falsely testify.

In 2004, Juan Johnson, whose 30-year prison sentence for a murder conviction had been vacated in 2002, was acquitted at a retrial. A federal jury later awarded Johnson $21 million in damages from the city based on

evidence that the original three eyewitnesses recanted their testimony and revealed that they were coerced by Guevara to identify Johnson.

Seven years later, Jacques Rivera was exonerated of a murder. He later filed a federal civil rights lawsuit accusing Guevara and other officers of burying evidence and pressuring the witness to falsely identify him as the triggerman. In 2018, a jury awarded Rivera $17.175 million.

In 2016, the murder convictions of Jose Montanez and Armando Serrano were vacated and the charges were dismissed. Both had been convicted on false testimony that had been coerced by Guevara.

In April 2017, Roberto Almodovar and William Negron were exonerated after evidence showed that Guevara had improperly influenced witnesses to identify them as the shooter and driver in a drive-by shooting that killed two people and wounded a third.

In November 2017, Jose Maysonet became the seventh person to be exonerated based on misconduct by Guevara. Maysonet, who was serving a sentence of life in prison without parole, falsely confessed after a 17-hour interrogation punctuated by beatings and torture by Guevara.

In December 2017, Gabriel Solache and Arturo DeLeon-Reyes, who claimed that Guevara had beaten them into confessing to a murder they didn't commit, had their murder convictions vacated and the charges dismissed.

On July 12, 2022, the Cook County State's Attorney's Office Conviction Integrity Unit announced that it would no longer contest Cruz's petition. Cook County Circuit Court Judge Tyria Walton vacated his convictions, and the charges were dismissed. Cruz was released that day, after spending more than 26 years in prison.

Cruz was the 18th person to be exonerated based on evidence of misconduct by Guevara or his partners. Others exonerated include: Thomas Sierra, Ariel Gomez, Ricardo Rodriguez, Robert Bouto, Geraldo Iglesias, Demetrius Johnson, Reynaldo Munoz, and Daniel Rodriguez.

On July 21, 2022, the convictions of Juan Hernandez and Rosendo Hernandez were vacated and dismissed.

In July 2023, Cruz filed a federal civil rights suit against the city of Chicago, Guevara and oithers seeking compensation for his wrongful conviction. He also obtained a certificate of innocence and filed a claim for state compensation.

– *Maurice Possley*

Report an error or add more information about this case.

Posting Date: 7/18/2022
Last Updated: 12/13/2023

**ABOUT THE REGISTRY**

The National Registry of Exonerations is a project of the Newkirk Center for Science & Society at University of California Irvine, the University of Michigan Law School and Michigan State University College of Law. It was founded in 2012 in conjunction with the Center on Wrongful Convictions at Northwestern University School of Law. The Registry provides detailed information about every known exoneration in the United States since 1989—cases in which a person was wrongly convicted of a crime and later cleared of all the charges based on new evidence of innocence. The Registry also maintains a more limited database of known exonerations prior to 1989.

Support Our Work

**CONTACT US**

We welcome new information from any source about exonerations already on our list and about cases not in the Registry that might be exonerations.

Tell us about an exoneration that we may have missed

Correct an error or add information about an exoneration on our list

Other information about the Registry

Sign up for our Newsletter

Follow Us:

---

SPONSORED BY

ＡＵＤＩＯＣＨＵＣＫ

Exhibit S &



**ATTORNEY-CLIENT PRIVILEGED AND ATTORNEY WORK PRODUCT**

**<u>MEMORANDUM</u>**

| | |
|---|---|
| TO: | City of Chicago/Guevara Investigation - File |
| FROM: | Kelly Albinak Kribs <br> Michael Doss |
| RE: | Final Report on Roberto Almodovar Case |
| DATE: | February 9, 2015 |

## I.   INTRODUCTION AND SUMMARY CONCLUSIONS

We were retained by the City of Chicago to investigate allegations of misconduct made against former Police Detective Reynaldo Guevara and to evaluate whether the alleged misconduct resulted in convictions of innocent people currently serving prison sentences.  This Memorandum summarizes our conclusions from the investigation of such allegations made by defendant Roberto Almodovar, who is currently serving a life sentence.

Almodovar  was convicted of two counts of first degree murder and two counts of attempted first degree murder.  Almodovar claims that he is innocent and that his conviction was obtained through a suggestive line-up.

In the course of our investigation, we have (i) conducted 11 interviews, including of the defendant, his former counsel and co-defendant Negron, alibi witnesses, and one of the two testifying eyewitnesses to the crime; (ii) reviewed transcripts and court filings of pre-trial, trial, and post-conviction proceedings; and (iii)  reviewed police made available to us that document the investigation of the crimes at issue.

Detective Guevara declined to be interviewed by Sidley, as did one of the two eyewitnesses to the crime, Jackueline Grande.

As explained in more detail below, we have come to the following conclusions based on our investigation:

(i) We are unable to substantiate the allegation that Detective Guevara improperly influenced the selection of Almodovar from a photo array and subsequent line-up.  The evidence on that issue is conflicting and inconclusive and does not provide a basis for us to conclude that it is more likely than not that such improper conduct occurred or that it influenced the subsequent identification.



(ii) We conclude, based on our interviews and other evidence made available to us, that it is more likely than not that Robert Almodovar is in fact innocent of the murders for which he was convicted. We found his alibi evidence (which witnesses continue to support) to be compelling and to outweigh the testimony of the remaining eyewitness who identifies him as the shooter (the second eyewitness, Kennelly Saez, no longer identifies Almodovar as involved in the crime.)

.

## II.    INVESTIGATION SCOPE AND PROCEDURES

### A.    Interviews

Sidley conducted eleven interviews in the course of its investigation of the Almodovar case. Specifically, Sidley interviewed defendant Roberto Almodovar, his former counsel Melissa Power and Judge Matthew Kennelly, and alibi witnesses Mary Rodriguez (Almodovar's aunt), Azalia Carrillo (Almodovar's girlfriend at the time of the murders). Sidley also interviewed one of the two eyewitnesses to the crime, Kennelly Saez. Sidley also met with Detective Halvorsen, who assisted Detective Guevara in the investigation of the shooting. Sidley also met with current counsel for the defendant, Jennifer Bonjean, and current counsel for the State, Assistant State's Attorneys Celeste Stack and Jim Papa. Those who submitted to interviews cooperated fully with the investigation.

Detective Guevara declined to be interviewed. We also attempted to interview eyewitness Jackueline Grande, whose last known residence is in Vancouver, Washington, but were unable to do so despite making calls and sending correspondence. (We understand that Ms. Grande also had declined to be interviewed by current counsel for William Negron during an in-person visit in 2013.).

### B.    Document Review

Sidley's investigation also involved the review of numerous documents received from the State as well as from Almodovar's and Reyes's current counsel. Sidley reviewed transcripts from (1) pre-trial proceedings, including the hearings regarding the defendants' motions to suppress the witness identifications; (2) the trial; (3) the sentencing and other post-trial proceedings; and (4) Almodovar's first post-conviction hearing. Sidley also reviewed a number of police reports and crime scene records related to the case. Additionally, Sidley reviewed various court filings and prior court opinions.

*Privileged & Confidential*



## III.    BACKGROUND FACTS

Unless otherwise indicated, the following background facts are undisputed.

### A.    Almodovar Conviction and Legal Proceedings

In November 1995, Roberto Almodovar and William Negron were each convicted of two counts each of murder and attempted murder and sentenced to life in prison. The convictions were affirmed on appeal. Both have since filed post-conviction petitions challenging their convictions on grounds of alleged misconduct by Detective Guevara. In particular, Almodovar and Negron assert their innocence and contend that eyewitnesses to the shooting were improperly influenced by Detective Guevara to misidentify them.

The defendants post-conviction proceedings are currently pending before Judge Linn in the Cook County Circuit Court.

### B.    Almodovar Background

At the time of the murders, then nineteen year-old Almodovar was working full-time at the Farley Candy Company and taking classes to obtain his G.E.D. Almodovar had gotten the job at Farley's through his aunt, Mary Rodriguez, with whom he lived and who also worked at Farley's. Almodovar typically worked Monday through Saturday from 6:00 a.m. to 6:00 p.m. He also attended G.E.D. classes at Wright Junior College from roughly 6:00 p.m. to 10:00 p.m. on Mondays and Wednesdays.

When we met with him, Almodovar told us that he and co-defendant Negron had been close friends and members of the same gang, but that they went their separate ways; at the time of the shooting, Almodovar contends he had not seen Negron in roughly a year.

Before his convictions in this case, Almodovar had no prior criminal convictions. He reported that he had been arrested on multiple occasions for "mob action," but that those arrests always resulted in his being released on his own recognizance and the charges being dropped. Almodovar admitted that he had been a member of the Insane Dragons street gang, but states that he left the gang in March 1994 when his then-girlfriend, Azalia Carrillo, gave birth to their daughter.

### C.    The Crime

On September 1, 1994, Jackueline Grande, Kennelly Saez, Jorge Rodriguez, and Amy Merkes were talking on the front stoop at 3920 W. Cortland. Saez and Rodriguez were cousins and both members of the Maniac Latin Disciples gang.[1] Around 12:45 a.m., a dark blue, four-door Oldsmobile with three young men inside pulled up. The rear passenger, who had his

---

[1] At times, witnesses have referred to the this gang as the Young Latino Organization Disciples or "YLODs."

*Privileged & Confidential*



window partially rolled down, said, "What's up, folks?" Saez started walking over to the car, and as he asked, "Who's there?", the rear passenger fired a gun at the group on the front stoop.[2]

When the shooting began, Saez dove for the ground and Grande, Rodriguez, and Merkes turned and started running into the building. Grande, Rodriguez, and Merkes were each shot, and both Merkes and Rodriquez were killed. Grande suffered a bullet wound to the shoulder and spent several days in the hospital before being released.

### D. Police Investigation

The first officers on the scene were flagged down by Juan Velez, an off-duty sheriff's deputy who saw the assailants' car pull into his alley and turn around; shortly thereafter, Velez heard the gunshots.[3] The initial police report from the crime scene described the assailants as three males "16-20 yrs old wearing starter jackets," but did not attribute the description to any particular witness. A subsequent report dated September 1, 1994, and prepared by Detective McDonald and Rutherford stated that the assailants were "3 male white Hispanics in their late teens skinny medium to light complexion NFD."[4]

Kennelly Saez was interviewed that same day and described the vehicle as a "dark blue short body Delta 88 4dr." The September 1, 1994 report of his initial interview does not include a physical description of any of the vehicle's occupants. According to the report, Saez also told police that he was member of the Maniac Latin Disciple gang and that his gang was at war with the Dragons and Latin Kings gangs; he also stated the Dragons has been trying to "take over" the corner where the shooting occurred.

Jackie Grande was not interviewed at the scene due to her injuries; she was first interviewed at the hospital on September 1, 1994, by Detective Dombrowski. According to Dombrowski's police report, Grande described the car as a "dark blue older square mid sized car," and described the three occupants of the car as "male white Hispanics;" the driver was "tall and skinny, light complexion with dark hair;" the front passenger was "skinny with a long face[,] light face[,] wearing a black jacket and a red hat," and the rear passenger—the shooter—was "skinny med complexion with dark hair, clean looking."

A subsequent police report dated September 13, 1994,[5] states that assigned Detectives Halvorsen, Guevara, and Troken suspected that the shooting targeted Saez and Rodriguez, members of the Maniac Latin Disciples, and was in retaliation for the shooting of Carlos Olan (nicknamed "Popeye"), a member of the Insane Dragons gang who was killed two days earlier,

---

[2] Some initial police reports also state that the driver was firing a weapon.

[3] A September 1, 1994 report prepared by Detective Rutherford and McDonald states that Velez reported that he "got a good look at the driver of the vehicle and believes that he could identify this person." When Almodovar and Negron were later brought in for a line-up, the police asked Velez to view the line-up. Velez, however, stated that he was misunderstood; he did not get a good look at any of the individuals in the vehicle—only the vehicle itself.

[4] We understand "NFD" to be abbreviation for "no further details."

[5] There are no other reports of the status of the investigation between September 1, 1994, and September 13, 1994, and Officer Guevara admitted in testimony that he did not take any other notes or prepare any other reports.

*Privileged & Confidential*



on August 30, 1994. The detectives believed this incident was part of an ongoing turf war between the Insane Dragons and the Maniac Latin Disciples, and thus focused their investigation on Insane Dragons members.

The detectives learned from Officers Olszewski and Siwa (who worked the district in which the shooting occurred) of their recent arrests of three purported Insane Dragons members in possession of a sawed off shotgun. Olszewski and Siwa provided photos of those three individuals, one of whom Roberto Almodovar. According to the police report, the detectives noted that Almodovar had a rectangular-shaped head with long hair in the back and that "this was the description of one of the offenders provided by gunshot victim Jackueline Grande." (However, the report does not state when or to whom she gave this description and Grande is not otherwise reported as having providing this description; as noted above, a September 1, 1994 report stated that she described the shooter as "skinny med complexion with dark hair, clean looking.") The detectives then learned from Gang Crime Specialists Rodriguez and Wiora that Roberto Almodovar hung around with Willie Negron, another purported Insane Dragons member, and were given a photo of Negron.

On September 5, 1994, Grande was released from the hospital, and Detective Guevara visited her at home. He showed her a 12-photo array and, according to the September 13, 1994 report, Grande identified Almodovar as the shooter in the rear of the car and Negron as the driver of the vehicle who "also fired a gun."

On September 11, 1994, the police separately arrested Almodovar and Negron. When arrested, Negron was driving a 1978 Buick Regal Coupe (as noted above, the car used in the shooting was described as a 1985 Oldsmobile). Both Almodovar and Negron denied any involvement in the shootings.

In his statement to police, Almodovar reportedly admitted to being a member of the Insane Dragons, and acknowledged a war between his gang and the Maniac Latin Disciples.[6] Almodovar stated that on the day of the shooting he had worked at the Farley Candy Company from roughly 6:00 a.m. until leaving to attend a G.E.D. classes at Wright Junior College from 6:00 p.m. until 9:15 p.m. Almodovar said that, after class, he took the bus home and was with his girlfriend for the remainder of the evening. The police telephoned Almodovar's 15-year-old girlfriend, Azalia Carrillo, and asked her to come to the station for questioning, but Carrillo never went in and the police did not follow up with her.[7]

In his statement to police following his arrest, Negron reportedly admitted being an Insane Dragons member and a good friend of Almodovar. Negron similarly acknowledged a gang war between his gang and the Maniac Latin Disciples. Negron stated that, on the night of the shooting, he had gone to the wake of a fellow gang member and then went out "partying"

---

[6] As detailed further below, Almodovar maintains that he told the police he was formerly a member of the Insane Dragons and had left the gang months before when his daughter was born.

[7] As detailed further below, Carrillo explained to us that, after the initial call with the police, Almodovar Aunt, Almodovar's aunt, Mary Rodriguez, persuaded Carrillo her not to go to the station without a parent or lawyer given her age and the nature of the charges.

*Privileged & Confidential*



with fellow gang members. Negron, however, refused to identify the friend with whom he went out or to state where they went.

On September 12, 1994, the police brought Grande and Saez into the station for a line-up. The September 13, 1994 report states that Grande and Saez viewed the line-up separately, and that Saez had not viewed any photos of Almodovar and Negron in advance. Independently, both Grande and Saez identified Almodovar as the shooter in the rear of the car and Negron as the driver and second shooter. On that same day, Saez gave a written statement memorializing his account of the shooting and his identification of Almodovar and Negron.

No weapon or vehicle associated with the shooting was ever recovered, and the third person in the vehicle has never been identified.

### F. The Trial and Subsequent Court Proceedings

Almodovar's and Negron's trial took place in November 1995. Saez and Grande identified Almodovar as the shooter and Negron as the driver of the car. Detective Guevara testified about the photo array that Grande viewed and the subsequent line-up that both Grande and Saez viewed.[8] Guevara further testified that both Saez and Grande described the rear shooter as having a rectangular face with long hair in the back. Guevara acknowledged, however, that no police report attributed any such description to Saez, and the one report that connects this description to Grande provides no supporting detail on when or how this description was made. Guevara testified, however, that he obtained this description from Grande when he called her on the morning of September 5, 1994. Guevara also testified about the police theory that the shooting was in retaliation for the murder of an Insane Dragon who has been killed in a drive-by shooting two days prior. The parties stipulated at trial to the initial description provided police (recounted above) of the assailants.

Negron did not testify at trial. Nor did Negron's counsel offer any alibi witnesses to support his prior statement that, on the evening of the shooting, he had attended a wake and went out with friends.

Almodovar did take the stand, testifying (as he stated to the police) that, on the night of the shooting, he returned home at about 10:45 p.m. after a day of work and an evening of G.E.D. classes. Thereafter, he and his girlfriend, Azalia Carrillo, got into a fight and stayed up arguing until about 1:30 a.m. (The crime occurred around 12:45 a.m.) Almodovar's aunt (with whom he lived), Mary Rodriguez, and Carrillo (his girlfriend) corroborated Almodovar's alibi. Both testified that Almodovar got home after class, Carrillo came home with the baby shortly thereafter, and then an argument ensued. Rodriguez and Carrillo also testified that Amaris and Sergio Almodovar (Carrillo's sister and Almodovar's cousin, who are married) came over around midnight to try and settle the dispute and that they left around 1:30 a.m.

---

[8] Guevara testified that on September 5, 1994, he took the photos of Almodovar and Negron to Grande's house to conduct a photo array. Since Almodovar had long hair, Guevara said, he placed his photo in an array with photos of five other long-haired young men, whereas for Negron, who had short hair, he placed his photo in an array with photos of five other short-haired men. Guevara testified that Grande identified Almodovar as the rear shooter and Negron as the driver.

*Privileged & Confidential*



Both Almodovar and Negron were convicted of two counts and murder and two counts of attempted murder, and sentenced to life in prison The convictions were affirmed on appeal.

Both Almodovar and Negron initiated post-conviction proceedings in 1998. Negron's was denied at the outset, but Almodovar's proceeded to a hearing. Almodovar's counsel at the time, Matthew Kennelly,[9] argued that Detective Guevara had improperly influenced the eyewitness identifications—the sole basis for the convictions. As discussed in greater detail below, Saez then testified that Guevara and Grande showed him a photo array in advance of the line-up and indicated who to identify. Both Guevara and Grande testified that this did not happen. The court dismissed the petition and found Saez's rendition of the photo array "totally incredible."

In April 2010, Almodovar filed a successive post-conviction petition based on new evidence of Guevara's alleged pattern and practice of misconduct. Though the trial court initially denied the petition on procedural grounds, it was reversed on appeal. On remand, evidentiary hearings have recently begun and are ongoing.

## III.    Allegations of Wrongdoing Against Detective Guevara

### A.    Allegations of Misconduct

Almodovar alleges that Detective Guevara improperly influenced the witness identifications by steering Saez and Grande to identify him and his co-defendant Negron. In particular, the Almodovar contends that before his line-up, Guevara showed both Saez and Grande photos of Almodovar and Negron and indicated that they had been involved in the shootings. We discuss the facts related to these allegations in more detail below.

#### 1.    Kennelly Saez

Saez has given different accounts of his identification of Almodovar and Negron over the course of the case.

First, Saez identified Almodovar and Negron in a police line-up on September 12, 1994. This fact is recorded in a Detectives Halvorsen's and Guevara's September 13, 1994 report, which also notes that "Saez had not viewed any photos of [Almodovar and Negron] prior to the line-up."

However, on March 1,1995, Saez went to the offices of then-counsel for Almodovar, Melinda Power, and told Power that his September 12, 1994 identification of Almodovar and Negron was inaccurate. Saez signed an affidavit, prepared by Power and by her sister Margaret Power, who works as Melinda's interpreter, stating that he "told the police that it was Roberto Almodovar and William Negron because [he] believed it was them, but really [he] couldn't see,"

---

[9] Matthew Kennelly is now a federal district court judge for the Northern District of Illinois.

*Privileged & Confidential*



and that he "looked at photographs and picked out a person [he] thought was the shooter, but [he] was wrong." In interviews, both Saez and Melinda Power confirmed this meeting.

Power reported that Saez came to her office with another young man, explaining he brought his friend as a safety precaution because Power's office was in rival gang territory.[10] Power then interviewed Saez, in the presence of her sister Margaret, and Saez answered her questions while his companion remained silent. Saez told Power he was there of his own free will and, after she prepared the affidavit, he reviewed it and signed it. Power's account of her meeting with Saez was consistent with the affidavits she and her sister Margaret gave in connection with Almodovar's first post-conviction petition and with Power's testimony at a 2014 post-conviction hearing.

At the subsequent trial, however, Saez testified that his statement to Power had been coerced by his fellow gang members and that the person who accompanied him was actually a high-ranking member of the gang who came to ensure Saez recanted his identification. As previously noted, Saez then made an in-court identification of Almodovar and Negron.

In February 1996, Saez again changed his story in a statement to an investigator sent by Almodovar's post-trial counsel, Matthew Kennelly. Saez told the investigator that, before he viewed the line-up, an officer showed him pictures of Almodovar and Negron. Kennelly later obtained a sworn statement from Saez in August 1998 in which Saez stated that, three or four days after the shooting, Grande came by his apartment and told him that a police officer wanted to meet with him. Saez said that he went downstairs where he met with a Latino police officer who had two photos in his hand of Almodovar and Negron, and asked "Are these the guys?" According to Saez, Grande then said, "Yes, those are the guys." Saez stated that he didn't know whether Grande had already seen the photos, but he got the impression that she had. The Latino officer told Saez that the men in the pictures were Insane Dragons. Saez stated that he then agreed with Grande, essentially because Grande and the officer seemed so confident that the men in the photos were the assailants and, without their influence, he would not have been able to identify the men as the assailants. (Saez did not identify the Latino officer as Detective Guevara at the time, although there is no dispute that Detective Guevara arranged for Saez's attendance at the line-up.)

Saez stated he then went in the officer's squad car with Grande to view a line-up, and, on the way, the officer told him not to tell anyone that he had seen the photos. Saez also stated that, on the way to the line-up, Grande continued to talk about her confidence that the men in the photos were the assailants. At the line-up, Saez he recognized the two men from the photos he was shown—Almodovar and Negron—and identified them as the shooter and the driver, respectively.

In his sworn statement, Saez explained his trial testimony by contending that he was hoping his testimony would allow him to obtain favorable treatment from the state regarding a pending violation of a parole charge. In particular, he said that the week before the Almodovar-

---

[10] Power's account to Sidley of her meeting with Saez was consistent with the affidavits and testimony she gave in connection with Almodovar's first post-conviction petition.

*Privileged & Confidential*

**SIDLEY** | SIDLEY AUSTIN LLP

Negron trial, he had been arrested on a parole violation and, while in jail, was contacted by ASA Callahan about testifying at the Almodovar-Negron trial. Saez stated that he told the ASA that he would testify if the ASA could get him out of jail. According to Saez, ASA Callahan said he could make no such promises, but Saez nonetheless understood that, if he testified for the state, they would likely obtain his release. Notably, Saez's probation was terminated on November 30, 1995, two days after his November 28, 1995 trial testimony.

Sidley interviewed Saez in July 2014 and he recounted the same core facts reflected in his sworn statement with Kennelly described above. Saez elaborated to explain that the Latino detective spoke Spanish and made Saez feel "cool" with the officer, like he could trust him. When the detective showed him the photo,[11] Grande exclaimed, "That's him! That's him!" Saez said that Grande seemed so sure of her identification he just went along with it, even though he was not himself able to provide an identification. Saez further explained that at the time he was very upset by the murders of his cousin and his girlfriend, and he wanted someone to pay.

In our interview, Saez also stated that when he went to Power's office he was in fact accompanied by a gang leader, Kiki, who was pressuring him to recant his earlier identification. Saez understood that leaders of the Maniac Latin Disciples agreed with leaders of the Insane Dragons that Saez would not testify against Almodovar and Negron. Saez noted that, in pressuring him to recant, the gang was actually encouraging him to testify truthfully because he could not, in fact, identify either Almodovar and Negron. Saez further explained that he ultimately agreed to testify after speaking with ASA Callahan because he saw it as "his ticket out" of jail on the probation violation charge. Saez stated that he was being "selfish," and a "young kid" in offering to testify in exchange for assistance from ASA Callahan. Saez reported that Callahan never promised to get him off but that he "would see what he could do."[12] Saez also stated in our interview that when Kennelly's investigator got in touch with him a few months later after his trial testimony, he "decided to come clean."

In our interview, Saez also gave his view of the reasons for the shooting. He believed he was targeted because he held a leadership role in his gang, which he described as the Young Latino Organization Disciples or YLODs , and thus would be considered a "trophy." He disagreed with the police theory that the shooting was connected with a turf war and, said he had never heard of Carlos Olon or any theory that he was shot at in retaliation for Olon's murder.

Saez told us he did not separately talk with Jackie Grande about her identification of the assailants. He said he distanced himself from her after the shootings.

In sum, since Saez's August 1998 sworn statement to Kennelly, he has consistently maintained that (i) he saw photos of Almodovar and Negron before the line-up, (ii) that his line-up identifications were based on his prior viewing of the photos and the comments made by

---

[11] Saez only had a memory of seeing Negron's photo and identifying him. He remembered going to the line-up and identifying two assailants, but he couldn't really picture Almodovar. He did, however, recall that the defendant that was not Negron had the same nickname as him (Saez)—"Joker." Indeed, both Saez and Almodovar were nicknamed "Joker."

[12] Callahan testified at the post-conviction hearing that he never said anything to Saez to give him the impression that he would try to help him resolve his violation of parole.

*Privileged & Confidential*



Grande and Detective Guevara, (iii) that Guevara told him not to tell anyone he saw the photos, and (iv) that he in fact could not identify any of the assailants. He testified on these points at a 1998 post-conviction hearing for Almodovar, at a June 2008 deposition in connection with the Juan Johnson civil suit, and most recently in our meeting with him in July 2014.

2.    Jackueline Grande

Jackie Grande, however, has disagreed that her identification of Almodovar and Negron was improperly swayed by Detective Guevara. The initial allegation that Guevara influenced Grande's identification comes from Melinda Power, Almodovar's original attorney. In our interview (and previously), Power reports that she and her investigator, Amy Myers, interviewed Grande outside the Jewel grocery store where Grande worked on April 6, 1995 (six months after the shooting). Power recalls, and her notes from the conversation reflect, that Grande told her that, while she was in hospital, two police officers visited her, showed her six to nine photos, and said, "Here are the guys who did it." In our interview, Power said she was never again able to speak with Grande about the murders.

Grande has denied having this conversation with Power. Instead, she has consistently maintained that when she viewed the photo array on September 5, 1994, Guevara did not make any suggestions as to who she should identify and that she identified Almodovar as the shooter and Negron as the driver on her own. For example, at the motion to suppress hearing, Grande testified that while two male officers showed her a photo array in the hospital, they did not say, "These are the guys who did it" or anything similar. Mot. to Suppress Hrg. Tr. 21-25.

We attempted to speak with Grande, sending letters to her last known address (confirmed by counsel for Negron) in Vancouver, Washington and making telephone calls to a number we obtained for her. She did not respond to our letters and we were unable to reach her by telephone. In our interview with Negron's current counsel, Russell Ainsworth, he recounted having appeared at Grande's house in Vancouver and speaking with her briefly at her front door. He stated that she was "hostile" to him once she learned the purpose of his visit, and made clear to him that she "knows what she saw" and would not be changing her identification testimony.

Aside from her interactions with Power, there are some inconsistencies in the record regarding the descriptions of the assailants that Grande reportedly gave to police at various times. For example, as noted above, the initial reports of the three assailants were that they were three males "16-20 yrs old wearing starter jackets," and "3 male white Hispanics in their late teens skinny medium to light complexion NFD." Neither description is attributed to a particular witness, however.

Besides the line-up and photo array issues, counsel for Almodovar has also highlighted apparent discrepancies in the descriptions given by Grande. As noted above, the first description attributed to Grande (by Officer Dombrowski during a hospital visit) describes the driver as "tall and skinny, light complexion with dark hair," the front passenger as "skinny with a long face[,] light face[,] wearing a black jacket and a red hat," and the rear passenger—the shooter—as "skinny med complexion with dark hair, clean looking." Detective Guevara testified that when he telephoned her on September 5, 1994, Grande described the shooter somewhat differently, as

*Privileged & Confidential*



having a rectangular-shaped head with long hair in the back. (As noted above, this description was the stated reason for Guevara initially selecting Almodovar's photo as a possible suspect.)

At trial, these descriptions were raised with Grande, who testified that, while at the hospital, she described the shooter as "light skinned, long curls" and [h]e looked clean and his face was thin and long." When defense counsel confronted her with the descriptions from Dombrowski's report, Grande said that she didn't recall what exactly she told him.

### B. Analysis of Misconduct Allegations.

The evidence regarding the allegation that Guevara improperly influenced the identifications of Almodovar is mixed and inconclusive. Grande has consistently denied that Guevara engaged in any misconduct that led her to identify the assailants. Power's description of Grande's statement about a police hospital visit is credible, especially given her supporting notes prepared immediately afterward that recount Grande's statement that police showed her 6-9 photos and said "Here are the guys who did it." But Power is unable to say that this visit included Detective Guevara (Grande's alleged statement to Power does not say so, and she was visited by other police while in the hospital). Moreover, Power's notes from this meeting further state that Grande "is sure it is them because she had a good opportunity to see them," undercutting a claim that her identification was the result of improper influence.

If believed, Saez's current statement that he was shown only pictures of Almodovar and Negron by Guevara before attending the line-up, and was counseled by Guevara not to mention these photos, would support a finding of misconduct against Guevara. However, Saez's shifting stories over time and under oath leaves us unable to reach a conclusion of misconduct in reliance on Saez's say so. This is not to say that his current description of events is incredible or unbelievable—he in fact has consistently maintained this description of events since 1996, has given believable (but uncorroborated) explanations for his prior statements, and has no apparent motive today to take this position falsely. But despite the fact that Saez's statements today, for those reasons, might reasonably be believed, there is at least equal cause to disbelieve them, given that he has shown himself willing to lie and that Grande's testimony is to the contrary.

For these reasons, we do not find that the evidence renders it more likely than not that Guevara engaged in misconduct in connection with the identification procedures used with Grande and Saez that improperly influenced their identification of Almodovar.

## IV. Actual Innocence Claims

### A. Evidence Supporting The Conviction

As explained above, the only evidence at trial specifically linking Almodovar to the drive-by shooting was the testimony by Grande and Saez identifying Almodovar as the rear shooter. There is no physical evidence connecting Almodovar to the shooting. No weapon used in the shooting was ever recovered, nor was the car used in the shooting. Grande has consistently maintained her identification of Almodovar and has given no indication of any

*Privileged & Confidential*



change of heart. Saez, in contrast, has recanted his trial testimony and has instead stated (since 1996) that he is unable to identify the assailants who shot at him and the others.[13]

### B.   Evidence Of Actual Innocence.

Roberto Almodovar has consistently presented an alibi defense to his conviction, which has been corroborated by others. Significantly, Almodovar's alibi defense continues to be supported by his aunt Mary Rodriguez[14] and his former girlfriend, Azalia Carrillo, as well as other third-party witnesses. We summarize below our investigation of this alibi defense.

**Mary Rodriguez.**   In our interview of Almodovar's aunt, Mary Rodriguez, she recounted the details of this alibi and who had previously testified at trial. In our meeting, Mary Rodriguez stated that on the night of the shooting, Almodovar arrived home at about 10:30 p.m. after working all day and attending his G.E.D. class in the evening[15] and found that his girlfriend was still out with their baby. When Carrillo arrived shortly thereafter, Almodovar and Carrillo went to their room (which was the first floor dining room converted to a bedroom) and began arguing about whether Carrillo should have been out so late with the baby. Rodriguez asked them to keep it down because her son Joey, who slept on the couch in the living room just outside Almodovar's and Carrillo's bedroom, had his first day of school the next day, September 1, 1994.

Mary Rodriguez reported that the argument escalated, prompting her to call Sergio Almodovar, Roberto's cousin, who was married to Carrillo's sister, Amaris Almodovar. Sergio and Amaris came over in an effort to mediate the argument; they all reportedly stayed until roughly 1:30 a.m., when Rodriguez finally demanded that they leave and that everyone go to bed.

Rodriguez stated that she was able to place the date of the argument as the evening/early morning of the shooting (September 1, 1994), because September 1 was the date that her son Joey began school that year. Rodriguez stated (as she also relayed in her earlier affidavit) that the school year actually began on August 30, 1994, but Joey attended a private school and Rodriguez did not have the funds to pay tuition until August 31, 1994. She told us that she took August 31st off from work so she could pay the tuition and go shopping with Joey for other school supplies he needed. An affidavit from the principal of Joey's school, Paula Calvert, that was submitted in support of Almodovar's post-conviction petition, confirms that Joey did not attend school until September 1, 1994, two days after the official start of the school year. Mary's

---

[13] Police reports note witnesses reporting hearing numerous shots with someone repeatedly yelling "Joker." But because both victim Saez and defendant Almodovar acknowledged having had the nickname "Joker" we do not view that evidence as material to question of Almodovar's innocence claim.

[14] Mary Rodriguez reports consistent employment over the past plus-twenty years by Farley's Candy Company (Farley has been acquired and now operates under a different name). She is married and has one son, Joey. She still lives in the same house she shared with Almodovar at the at the time of the shooting.

[15] Almodovar's attendance at both work and school were corroborated by other undisputed evidence submitted in connection with his post-conviction petition.

*Privileged & Confidential*



statements in our interview were consistent with her prior trial testimony and her affidavit submitted in support of Almodovar's 1998 post-conviction petition.

**Azalia Carrillo**. In our interview of Almodovar's former girlfriend, Azalia Carrillo, she recounted the same essential story about the fight she had with Almodovar on the night of the shooting (consistent with her trial testimony). She estimated the time of the fight as 11:00 pm. She also stated that when the fight ended, she and Almodovar went to bed, and he stayed in bed until he got up to go to work the following morning. Carrillo also explained that she had scratched Almodovar on the face during the fight, when he was holding her down, and she recalled that Almodovar later told her he was embarrassed to go to work with the scratch on his face. (Almodovar's scratched face also was corroborated by an affidavit from a co-worker that was prepared in connection with his post-conviction proceedings.)

Carrillo also corroborated Almodovar's claim that he had left the Insane Dragons gang by the time of the shooting. She said she understood he had left the gang around time when they had a baby together approximately three months before the shooting, and that she no longer saw gang members coming around during that period. (She confirmed that Almodovar was a member of the Insane Dragons gang when she first met him.) Carrillo also explained that, after Almodovar's arrest, she spoke with an officer on the phone who and initially agreed to go to the station for questioning, but afterwards Almodovar's aunt, Mary Rodriguez, persuaded her not to go. (Rodriguez separately reported that she was concerned about sending fifteen year-old Carrillo to the police station without a parent or a lawyer.) Carrillo stated that, at Rodriguez's urging, she did not respond to the original police request about Almodovar's whereabouts the night of the shooting, and the police did not separately follow up with her. Carrillo stated further that she long ago ceased having any contact or relationship with Almodovar. However, her daughter (by Almodovar), now twenty, still has some occasional contact.

**Roberto Almodovar**. When we met with him, Almodovar recounted the story of his fight with Carrillo in a manner consistent with both his prior testimony and with his other alibi witnesses. He restated that the day after the fight, he got a ride to work from his neighbor, Jose Sanchez, who told Almodovar that he heard the argument from next door, and that Sanchez teased Almodovar about the scratch on his face and getting beat up by his girlfriend.

Almodovar also told us about an incident that occurred sometime between the shooting and his arrest that, he believes, explains why his photo was presented to the detectives as one of three possible Insane Dragon suspects. He told us that on September 4 or 5, 1994, he was "hanging out" with his cousin Sergio Almodovar after work and Sergio drove to a house he was moving out of "to pick up something" (Almodovar could not recall what). Almodovar reports that, while at Sergio's house, neighborhood friends "Dean" and "Russell" came over. The four were inside the house when officers arrived and accused them of having a gang meeting and proceeded to search the house. One of the officers, Officer Olszewski, found a sawed off shotgun elsewhere in the house and questioned Sergio about it in another room. Almodovar reports overhearing Olszewski hitting Sergio and asking about a drive-by shooting. Almodovar stated that Sergio separately asked him to "take the rap" for the shotgun, but Almodovar refused. All four were taken to the police station where Polaroid pictures were taken of each of them,

*Privileged & Confidential*



including Almodovar. Almodovar stated that although he had previously been arrested for mob action, this was the first time his picture had been taken.

Notably, Almodovar admitted in our interview that each of the men in the house, other than him, were then-current members of the Insane Dragons gang. This arrest for mob action a week before the shootings thus raises a real question as to Almodovar's claim that he had by that time withdrawn from the gang. The police reports we have received confirm this arrest on September 4, 1994, and identifies Almodovar as a member of the Insane Dragons gang; the reports of this arrest further state that the Dragons were at war with the Disciples gang (Saez's gang and noted "shootings in the past week."[16] (The reports we have received do not reflect any further pursuit of claims against Almodovar for this early September arrest.)

**Alibi Corroboration.** Almodovar's alibi is also corroborated by various affidavits and supporting documents obtained by his post-conviction counsel. These include, most significantly, a statement from a school principal confirming the date of Joey Rodriguez's first day of school as on the same date as the shooting (corroborating Mary Rodriguez on this point), and a statement from Jose Sanchez (Almodovar's neighbor) confirming the fight between Carrillo and Almodovar and Sanchez's remarks about the scratch on Almodovar's face the next morning. These affidavits also include statements from Amaris and Sergio Almodovar, who reported having come to the Rodriguez home to mediate the fight between Almodovar and his girlfriend Carrillo.

## IV.    Conclusion.

Regarding the allegation that Detective Guevara improperly influenced the selection of Almodovar from a photo array and subsequent line-up, the evidence is conflicting and inconclusive. Our investigation thus does not provide a basis for us to conclude that it is more likely than not that such improper conduct by Guevara occurred or that it influenced the subsequent identification by victim Jackie Grande. In particular, Grande has never waivered in her testimony that she was not steered by Guevara to identify either defendant. Although she declined to be interviewed by us, we do not view that denial as raising a question as to her prior testimony, and her remarks to Negron's counsel in 2013 indicate that she would likely present the same testimony now if required to do so. Counsel Melinda Power's report regarding Grande's prior statement is credible, especially given Power's contemporaneous notes, but we do not view that as sufficient by itself to find that Grande's identification was based on improper conduct by Guevara. Finally, witness Kennelly Saez's flip-flopping statements in this regard, even though now explained by him in a credible fashion, are insufficient in our view to undermine Grande's contrary position. That said, given Saez's recantation of his own

---

[16] For his part, Almodovar contended that officer Olszewski had "something against him" and had previously arrested him for mob action that Almodovar felt was unfounded. Almodovar reported that Olszewski once threatened him while he was walking down the street with Carrillo and told him, "You'll be going away for a long time." Almodovar suggested officer Olszewski may have somehow improperly influenced the use of his photo in Detective Guevara's photo array, and noted that, after his arrest for these murders, officer Olszewski popped his head in the holding cell, said "Gotcha!" and walked away laughing. However, the records we have reviewed provide no corroboration for Almodovar's suspicions about officer Olszewski's conduct.

*Privileged & Confidential*



identification, we conclude that his prior testimony against Almodovar should be given little weight in our evaluation of their actual innocence claims.

With regard to Almodovar's claim of actual innocence, we conclude that it is more likely than not that he is in fact innocent of the murders for which he was convicted. The evidence linking Almodovar to the shooting is slim—the testimony of one remaining victim-eyewitness (given Saez's recantation) under undisputedly challenging circumstances: the assailants were inside a car; only moments passed between their arrival and shots being fired; and the shootings occurred in the middle of the night. Moreover, Almodovar's alibi evidence is compelling, with multiple witnesses recounting a similar story of a fight between Almodovar and his girlfriend on the night of the shooting. A critical component of this alibi – the date of the fight between Almodovar and his girlfriend – was supported not only by Mary Rodriguez and her son but also the school principal's affidavit and related records. We of course recognize that Almodovar's relatives would have a motive to lie about his alibi, and that both Rodriquez and Carrillo testified at trial and their testimony was apparently rejected by the jury. However, we found Mary Rodriquez (who has been steadily employed and has no apparent criminal record) to be forthcoming and credible in our meeting with her, and her position on the key facts has remained consistent over the years. Similarly, we found Carrillo to be credible, and took note that her lack of any apparent ongoing relationship with Almodovar lessens any incentive she might have to lie on his behalf (for example, she could have simply declined our interview request, as did Jackie Grande). Finally, we note that when the shooting occurred Almodovar appeared to have redirected his life, as confirmed by independent sources—he was working six days a week, attending night classes to obtain his G.E.D., and helping to raise his infant daughter.[17] In sum, we conclude that Almodovar's alibi evidence substantially outweighs the evidence against him by a single credible eyewitness.

---

[17] In reaching this conclusion, however, we did not consider Almodovar's claim that he was no longer a member of the Insane Dragons' gang at the time of the shooting. The evidence of his withdrawal is based largely on his own say so, and his arrest a week before with other admitted gang members raises questions about his claim. We thus believe the evidence of his alleged withdrawal from the gang is inconclusive.

*Privileged & Confidential*

Exhibit 5'  '

## AFFIDAVIT OF MELINDA POWER

STATE OF ILLINOIS    )
                    ) SS:
COUNTY OF COOK     )

MELINDA POWER, being first duly sworn, on oath states:

1.   I am an attorney licensed to practice in Illinois.  I was attorney of record for Roberto Almodovar Jr. along with Scott Frankel until we were replaced as counsel of record by Clarence Burch.

2.   On March 1, 1995, as attorney for Mr. Almodovar, I interviewed Kennelly Saez at my office located at 2048 W. Division in Chicago.  I knew Mr. Saez to be one of the eyewitnesses to the shooting of Amy Merkes, Jorge Rodriguez, and Jacqueline Grande.

3.   Mr. Saez came to my office with another young man.  I asked Mr. Saez why he and the other man had come together.  Mr. Saez told me that because my office was located in a neighborhood controlled by the Latin Kings, a rival gang, he did not want to travel alone.

4.   The interview of Mr. Saez was witnessed by my sister, Margaret Power, who works as a translator in my law office.

5.   Mr. Saez answered all of my questions on his own.  His companion did not pass answers on to him, tell him what to say, or signal answers to him.  To the best of my recollection, Mr. Saez's companion was silent throughout my interview of Mr. Saez.

6.   Mr. Saez told me that he was there of his own free will and had not been pressured or threatened by anyone.

7.   I prepared a statement for Mr. Saez to sign under oath

A42

based upon what he had told me in the interview. I then read it to him out loud, then Mr. Saez read it and signed the statement. A copy of the statement is attached to this Affidavit.

8. During the time that I represented Mr. Almodovar, I also interviewed Jacqueline Grande, on April 6, 1995. Amy Myers accompanied me and was present for the interview. A copy of my notes of the interview are attached to this Affidavit.

9. Ms. Grande informed me that she had been visited in the hospital by a police officer or officers who had shown her photographs of persons and asked her if any of them had been involved in the shooting. This event was not recorded in any police report that was produced to me in discovery. Had I remained Mr. Almodovar's counsel, I would have pursued this matter through the filing of further motions.

10. Ms. Grande also informed me that when she was shown photos by the police, she was told "these are the guys who did it." I felt that this was significant in attempting to refute her apparent identification of Mr. Almodovar as one of the persons who had shot at her and the other victims.

11. As attorney for Mr. Almodovar, I also subpoenaed Ms. Grande's hospital records. These records, copies of which accompany this Affidavit, reflect that Ms. Grande was suspected of suffering from post-traumatic stress disorder ("PTSD"). We interviewed a nurse who had treated Ms. Grande at Mount Sinai Hospital, who informed us that Ms. Grande seemed very upset and depressed and cried a lot during her stay in the hospital. Because of her extreme reaction, it was thought that she might be

A43

suffering from PTSD. It was my belief that these facts tended to undercut Ms. Grande's certainty in her identification, her susceptibility to suggestion at the time of the identification, and her ability to identify her assailants. If I had remained as Mr. Almodovar's attorney, I would have pursued the matter further.

12. When I learned that Mr. Almodovar had retained Mr. Burch as substitute counsel, I attempted to contact Mr. Burch so that I could arrange to speak with him about the case and transfer my files to him. I tried to contact Mr. Burch 3 or 4 times, but he did not return my calls. Eventually he sent someone to pick up the case file, which I turned over to him in its entirety. The file included, among other things, Mr. Saez's sworn statement, the notes of my interview with Ms. Grande and other relevant persons, Ms. Grande's medical records, and the transcript of a pretrial hearing on a motion to suppress identification, at which the facts set forth in Paragraphs 9 and 10 of this Affidavit were disclosed in court.

13. Mr. Burch never spoke with me either in person or by telephone.

Further affiant sayeth not.

_Melinda Power_
Melinda Power

Subscribed and sworn to
before me this 9 day
of February, 1996.

_Carmen Julia Hernandez_
Notary Public

"OFFICIAL SEAL"
CARMEN JULIA HERNANDEZ
Notary Public, State of Illinois
My Commission Expires June 15, 1999

A44

# Exhibit 58

1      THE COURT:  Where you are most comfortable.

2      MR. KENELLY:  If you don't mind, I will pull

3   this out.

4                  KENNELLY SAEZ,

5   called as a witness herein on behalf of the

6   Defendant, having been first duly sworn, was

7   examined and testified as follows:

8              DIRECT EXAMINATION:

9              BY MR. KENELLY:

10     Q    Sir, can you please state your name and

11   spell both your first and last name?

12     A    K-e-n-n-e-l-l-y, S-a-e-z.

13     Q    And Mr. Saez, where do you live?

14     A    1854 North Pulaski.

15     Q    How old are you?

16     A    24.

17     Q    And are you working now?

18     A    Yes, I am.

19     Q    And what type of job do you have?

20     A    I am in sales.

21     Q    Okay.  And it is a job you just started?

22     A    Yes, sir.

23     Q    And I want to ask you some questions about

24   September 1, 1994.  You were a witness to a shooting

```
1        that occurred on this day?

2            A    Yes.

3            Q    And Mr. Saez, at that time, were you a

4        member of a street gang?

5            A    Yes, I was.

6            Q    And what was the street gang that you were

7        a member of at that time?

8            A    Disciples.

9            Q    Are you still a gang member today?

10           A    No, I am not.

11           Q    Now, the shooting that you witnessed that

12       morning, where did it occur?

13           A    It occurred on the 3900 block of Cortland.

14           Q    In the city of Chicago?

15           A    Yes.

16           Q    And who was it that was shot there?

17           A    Two friends of mine; Jorge Rodriguez and

18       Amy Merks.

19           Q    Okay.   Now I want to ask you some questions

20       about your dealings with the police that followed

21       the shooting.   Did the police come to the scene

22       after the people were shot?

23           A    Yes.

24           Q    And did they question you?
```

A8

JR-JJ 031286

```
 1        A     Not at that point.

 2        Q     Okay.  Did they question you at some point

 3    after that?

 4        A     Yes.

 5        Q     Where were you questioned?

 6        A     In the station.

 7        Q     Was it that same night?

 8        A     That same night.

 9        Q     Actually it was in the early morning?

10        A     Yes.

11        MS. STACK:  Objection, your Honor.

12        THE COURT:  Overruled.

13    BY MR. KENELLY:

14        Q     And could you describe the manner in which

15    you were questioned by the police that morning?

16        A     Very.  It was very intense; very intense

17    questioning, you know, what happened, all that.  I

18    was really distraught so I didn't really pay

19    attention.

20        Q     Now, did you have anything to do, Mr. Saez,

21    with the shooting?

22        A     No.

23        Q     Did the police treat you as if you did have

24    something to do with it?
```

A9

1      A      Yes.

2      Q      And you were released at that time?

3      A      For at least in the morning.

4      Q      Okay. How long were you in the police

5   station?

6      A      6, 7 hours maybe.

7      Q      Did there come a time after that when you

8   looked at a line-up. You viewed a line-up in the

9   case?

10      A      Yes.

11      Q      And was this approximately ten or so days

12   later?

13      A      I would say around there.

14      Q      And I want to ask you some questions about

15   that. How did you find out that there was going to

16   be a line-up?

17      A      The detective came over to my house and

18   picked me up.

19      Q      Okay. And do you remember the name of the

20   detective?

21      A      No, I don't.

22      Q      Do you remember anything about him?

23      A      I remember he was in street clothes and he

24   was -- I think he was Latin.

A10

```
 1          Q     He was a Latino?

 2          A     I think so.

 3          Q     And when he came over, where did he come to

 4     your house?

 5          A     Yes.

 6          Q     And where were you living at the time?

 7          A     On the 3900 block of Cortland.

 8          Q     And in other words, right about where the

 9     shooting had occurred?

10          A     Same place.

11          Q     Was anybody with him when he came over that

12     day?

13          A     Yes.

14          Q     And who was with him?

15          A     Jackie Grande.

16          Q     Who is Jackie Grande?

17          A     She was also there when it happened.  She

18     was also shot.

19          Q     So she was also a victim of the shooting,

20     is that correct?

21          A     Yes.

22          Q     And she was also a witness?

23          A     Yes.

24          Q     And she was with him with the detective
```

A11

JR-JJ 031289

1     when he came to pick you up?

2     A    Yes.

3     Q    And who was it?  Did somebody come to your

4     door?

5     A    Actually Jackie came to my door.

6     Q    Okay.  And what did Jackie say when she

7     came to your door?

8     A    She said that a detective was downstairs

9     about the case and they would like to talk to me, so

10    I came down.

11    Q    So you went downstairs?

12    A    Yes.

13    Q    Was the detective down there?

14    A    Yes.

15    Q    And did you then have a conversation with

16    the detective?

17    A    Yes.

18    Q    And can you tell the Court what was said in

19    that conversation?

20    A    Well, he spoke to me about the case and

21    told me that some people were arrested on -- about

22    what happened and I was basically paying attention

23    to him and I got the impression that Jackie had

24    viewed the guys and pointed them out.

A12

```
 1            MS. STACK:   Objection.

 2            THE COURT:   Overruled.  Talking about his own

 3       state of mind.  Go ahead.

 4            THE WITNESS:  And he showed us some pictures.

 5       BY MR. KENELLY:

 6            Q    Okay.  How many pictures did he show you?

 7            A    Two pictures.

 8            Q    And what kinds of pictures were they?

 9            A    Polaroid.

10            Q    Okay.  I don't have any Polaroid here but I

11       am going to hand you what I am going to mark for

12       identification as Defendant's Exhibit 1 and 2.

13            MS. STACK:  What are these from?

14            MR. KENELLY:  Stuff that the State produced.

15            MS. STACK:  Okay.

16       BY MR. KENELLY:

17            Q    First of all, I will hand you what I have

18       marked for identification as Petitioner's  Exhibit

19       No. 1 and 2 and can you identify those pictures?

20            A    Yes.

21            Q    Okay.  Are those the people that you saw in

22       the pictures that the detective showed you?

23            A    Yes.

24            Q    Okay.  And now when the detective showed
```

A13

1      you these pictures, what if anything did he say to

2      you?

3          A     He said that he believed that these

4      people -- these were the guys that did the shooting

5      and that if I was willing to come down to a line-up

6      to point them out.

7          Q     Was Jackie Grande there with you and the

8      detective when he was showing you these pictures?

9          A     Yes.

10         Q     And did she say anything?

11         A     She really didn't say anything.

12         Q     Okay.  Did she say anything at any time

13     regarding these 2 people who were in the pictures?

14         A     She was saying that it was them so --

15         MS. STACK:  Objection; at what point and time.

16         MR. KENELLY:  I was just about to ask you that.

17                 At what point and time did Jackie say

18     that the two people that were in the --

19         A     When I had the picture in my hand and I was

20     looking and then he was saying that these were the

21     guys and all this stuff and I looked at Jackie and

22     she like nodded and she said "yes, that's them," and

23     so I went along with it.

24     BY MR. KENELLY:

A14

1         Q    And before the detective and before Jackie

2     told you that these were the guys, did you know

3     whether they were the guys or not?

4         A    Honestly, no.

5         Q    Why not?

6         A    Because what happened that night happened

7     so fast and I really didn't get a chance to look at

8     anything.  All I saw was the barrel of a gun and a

9     flash in my face in the dirt.

10        Q    Now, when the detective and -- when Jackie

11    said to you that they thought these were the guys,

12    did that affect your own opinion in any way?

13       A    Yes; yes.  I wanted whoever was responsible

14    to pay. I just trusted their judgment, you know, but

15    they could be right; they could be wrong.  I am here

16    to say I don't know.  I cannot say that I can

17    identify these guys.  I can't and I will not.

18       Q    Now, after -- when you were looking at

19    these photographs on the date you went down to the

20    line-up, the Polaroid, were you out standing by the

21    car?

22       A    Yes, I was standing outside.

23       Q    And did you go somewhere from there?

24       A    Yes.  We went to the station.

A15

1    Q    Who went to the station?

2    A    All of us.

3    Q    So you, the detective and Jackie?

4    A    Yes.

5    Q    Who drove?

6    A    The detective.

7    Q    Did you have any further discussion in the

8    car as you were going to the station about what was

9    going to happen?

10   A    Yes.  He was telling me that he was -- he

11   was telling me not to mention that he showed me

12   pictures beforehand.

13   Q    Did you arrive at the police station?

14   A    Yes.

15   Q    And what happened when you got there?

16   A    When we got there, I sat in a room.  Jackie

17   went in there by herself with the detective and to

18   the line-up thing, I guess, and then shortly

19   afterwards, they came and got me and put me in there

20   by myself and I immediately recognize the two in the

21   line-up so I pointed them out.

22   Q    And who were the two that you recognized in

23   the line-up?

24   A    Roberto Montalvern and this guy.

A16

1      Q      So in other words, you are pointing to the
2      photographs there?
3      A      Yes.
4      Q      And you recognize the two people that you
5      had seen in the Polaroid?
6      A      Yes.
7      Q      And did you recognize them as being the
8      same people that you had in fact seen in the
9      Polaroid?
10     A      Yes.
11     Q      Mr. Saez, I am handing you what I have
12     marked as Petition's No. 3 for identification.  Can
13     you tell me what that shows?
14     A      That's the line-up.
15     Q      And does that photograph accurately show
16     the line-up as you saw it on this day?
17     A      Yes.
18     Q      And can you identify -- actually I will
19     give you a pen.  Can you just mark the people that
20     you picked out of the line-up on that date.  Just
21     put an (X) on their shirt.
22            (A pause was had in the proceedings.)
23
24     BY MR. KENELLY:

A₁7

1          Q    And he has marked the person on the left

2     and the third from the right.

3               And again, were those the people that you

4     had been shown in the Polaroid that the detective

5     had shown you?

6          A    Yes.

7          Q    Now, do you recall testifying at the trial

8     of the two men that you had identified from the

9     line-up?

10         A    Yes, I do.

11         Q    And that was back in 1995?

12         A    I believe so.

13         Q    At the time, you testified, Mr. Saez, did

14    you have a case of your own going on in this

15    courtroom?

16         A    Yes.

17         Q    And what kind of case was that?

18         A    I was incarcerated for violation of

19    probation.

20         Q    And you were on probation for some other

21    case, is that right?

22         A    Yes.

23         Q    And what was the type of case you were on

24    probation for?

JR-JJ 031296

```
1          A    I was on probation for strong arm.

2          Q    A robbery?

3          A    Yes.

4          Q    And you had been arrested on a violation of

5     probation?

6          A    Yes.

7          Q    And what was the nature of the violation?

8          A    Not reporting; stuff like that.

9          Q    Okay.  How long -- well, at the time you

10    testified at the trial, were you actually still

11    locked up on the violation of probation?

12         A    Excuse me.

13         Q    At the time that you testified in the trial

14    of these two men, were you still locked up on the

15    V.O.P. at that time?

16         A    Yes.

17         Q    And how long had you been locked up?

18         A    I would say I am -- I would say give a week

19    or two.  I am not really sure; give a week or two.

20         Q    Okay.  Before you testified in the case,

21    did you meet with any state's attorneys to prepare

22    your testimony?

23         A    Yes.  They came down -- well, actually just

24    that day they came down.
```

A19

```
 1        Q      What day?

 2        A      The day of the trial.

 3        Q      Okay.  So the day that you actually

 4    testified in other words?

 5        A      Yes.

 6        Q      And where did you meet with the state's

 7    attorney?

 8        A      They came and brought me down to one of

 9    those bullpens.

10        Q      So you met somewhere around the bullpen and

11    you were taken into a room?

12        A      Yes.  The room right behind the courtroom.

13        Q      Okay.  The courtroom where you actually

14    testified?

15        A      Yes.

16        Q      And how many state's attorney did you meet

17    with?

18        A      There was two there but only one of them

19    was speaking.

20        Q      Okay.  Do you remember the name of that

21    states attorney?

22        A      No, I don't.

23        Q      Man or woman?

24        A      It was a man.
```

JR-JJ 031298

```
 1        Q    And was he white, was he black or was he

 2   Latino?

 3        A    He was white.

 4        Q    Was he the same lawyer that questioned you

 5   in the courtroom?

 6        A    Yes.

 7        Q    And did you have a discussion with the

 8   state's attorney at that time when you were in this

 9   room before you testified. Did you have a discussion

10   with him about testifying in the case?

11        A    Yes.  I was telling him how I was feeling

12   and that I was very nervous and I asked him not to

13   show me any pictures of the victims and he was

14   telling me just to go out there and to testify to

15   what I did in the line-up, who I pointed out and

16   basically that was it.  Jackie was present there and

17   we talked but nothing about the case.  We were

18   talking about, you know, what happened that night.

19        Q    Okay.  Did you have a discussion with him

20   about the fact that you were locked up?

21        A    Yes; that too.

22        Q    And what did -- can you tell the Judge what

23   was said?

24        A    Well, I told him how am I going to go up
```

A21

```
 1         there when I am in D.O.C. outfit.

 2              Q      You were in the D.O.C. coveralls?

 3              A      Yes.

 4              Q      Okay.  Go ahead.

 5              A      And he said -- I told him, well I don't

 6         want to testify because I am in jail and these guys

 7         are in jail and what if something happens and they

 8         meet up with me in jail and I feared for my life and

 9         so he told me, well, I will see what I can do for

10         you.

11              Q      Okay.  Now, did he promise you, Mr. Saez,

12         that you were going to get out?

13              A      He didn't promise me, no.

14              Q      Based on him saying "we will see what we

15         can do", did that give you some comfort in

16         testifying?

17              A      Yes.

18              Q      And why was that?

19              A      Because I figured that he has the power to

20         do something like that.

21              Q      And then, did you go and testify in court?

22              A      Yes.

23              Q      And did you eventually get released from

24         jail?
```

A22

1 A Yes.

2 Q And when was that?

3 A The next day.

4 MR. KENELLY:  Your Honor, could I have one

5 second to check my notes.

6 THE COURT:  Sure.

7 (A pause was had in the proceedings.)

8 MR. KENELLY:  Nothing further.

9 THE COURT:  Government may cross-examine.

10 MR. KENELLY:  Let me collect these and I will.

11 THE COURT:  Government can cross examine.

12 CROSS EXAMINATION

13 BY MS. STACK:

14 Q Mr. Saez, how old are you now?

15 A 24.

16 Q And most of these -- well the murder

17 happened in '94, correct?

18 A Yes.

19 Q This was 4 years ago?

20 A Yes.

21 Q And at the time this happened, you were a

22 member of a gang?

23 A Yes.

24 Q And what was the name of that gang?

A23

```
1        A     The Disciples.

2        Q     Okay.  And the guys that killed your friend

3    that night, they were members of a rival gang,

4    correct?

5        A     That's what I was told.

6        Q     Now, you have testified here in front of

7    Judge Linn that you are no longer a member of the

8    gang, correct?

9        A     Yes.

10       Q     And how long were you a member of the gang

11   before you got out?

12       A     About 4 years.

13       Q     So you had just became a gang member at the

14   time of the trial.  You weren't a gang member prior

15   to the trial?

16       A     From the time it happened prior, I was a

17   gang member until it happened.

18       Q     And how was it that you were able to get

19   out of the gang?

20       A     Well, I was beaten up to get out.

21       Q     Just one beating?

22       A     The beatings lasted five minutes, yes.

23       Q     And you have not had any contact with the

24   Disciples since then?
```

A24

```
 1        A     No.

 2        Q     And the night that this happened, you went

 3   to the station with the police officers, correct?

 4        A     Yes.

 5        Q     And you talked to the police officer at the

 6   station?

 7        A     Yes.

 8        Q     And then a few days later, a Latino

 9   detective came and picked you up at your house with

10   Jackie Grande?

11        A     Yes.

12        Q     And you were taken to see a line-up?

13        A     Yes.

14        Q     And at the time that you viewed the

15   line-up, you also gave a court reported -- excuse

16   me, handwritten statement to a state's attorney, is

17   that correct?

18        A     Yes.

19        Q     And in that statement, you -- well, first

20   of all, have you seen it?  I will mark this as

21   Respondent's or People's 1.  May I approach.

22        THE COURT:  Yes.

23   BY MS STACK:

24        Q     Do you remember the statement, Mr. Saez,
```

JR-JJ 031303

```
 1          that you gave the day that you saw the line-up?

 2               A     Yes.

 3               Q     Do you see your signature on the first

 4          page?

 5               A     Yes; that is my signature.

 6               Q     Your signature on the second page?

 7               A     Yes.

 8               Q     On the third?

 9               A     Yes.

10               Q     Do you remember in that statement saying

11          that you have been treated well by the police and

12          ASA Peter Ferraci?

13               A     Uh huh.

14               Q     Do you remember saying that you had been

15          allowed to use the washroom and you had been given

16          cigarettes to smoke by Mr. Ferraci.  Do you remember

17          that?

18               A     I can't remember I do.

19          MS. STACK:    With the Court's permission, I will

20          give this statement to Mr. Saez.  I ask you to read

21          the last few paragraphs?

22                    (A pause was had in the proceedings.)

23          MS. STACK:  Are you done?

24               A     Yes.
```

A26

1          Q     Do you remember now about the part about

2     being given cigarettes and being allowed to use the

3     washroom?

4          A     Uh huh.

5          Q     Do you remember that you signed the

6     statement saying you had been offered food and drink

7     by the state's attorney but chose to wait until you

8     got home and that you could make any corrections or

9     additions of the statements by asking the state's

10    attorney all that?

11         A     Yes.

12         Q     And at this time, three days after the

13    murder, 3 to 4 days after the murder, you were

14    speaking to the state's attorney.  Do you remember

15    him?

16         A     If you are referring to Michelle Simmons,

17    yes.

18         Q     But you gave the statement to ASA Peter

19    Ferraci.  Do you remember a male A.S.A. that you

20    spoke to?

21         A     I remember a male but I don't remember his

22    name.

23         Q     Do you remember when you signed a statement

24    with the ASA?

1    A    Yes.

2    Q    And when you were talking to this ASA, you

3    never told him that a detective had shown you

4    photographs, is that correct?

5    A    Yes.

6    Q    Yes.  And that you never told anybody?

7    A    I never told anybody.

8    Q    And then you saw another ASA jumping out of

9    court and time wise when you were in the jail for

10   the violation of probation, right?

11   A    Excuse me.

12   Q    When you were picked up for violating

13   robbery probation--

14   A    Yes.

15   Q    You saw an Assistant State's Attorney.  You

16   talked to him right before you testified?

17   A    Yes?

18   Q    And you never told him that you had been

19   shown photographs immediately prior to the line-up?

20   A    Right.  I was told not to.

21   Q    What?

22   A    I was told not to.

23   Q    By the detective?

24   A    Yes.

A28

1        Q    But there are two Assistant State's

2    Attorneys that you spoke to and you didn't tell them

3    that you were unsure, correct?

4        A    Right.

5        Q    You didn't tell either of these Assistant

6    State's Attorneys that you didn't get a good look at

7    their faces, did you?

8        A    Right.

9        Q    You didn't tell either of these Assistant

10   States Attorneys that you did not pick those people

11   out of the line-up because you saw them on the night

12   of the shooting but because a detective had told you

13   to pick him out.  You didn't say that, did you?

14       A    No, I did not.

15       Q    And when you testified at the trial under

16   oath and again incriminated the two defendants, you

17   didn't tell the court at that time while you were

18   under oath at trial that you had been told who did

19   the shooting that night, correct?

20       A    Right.

21       Q    And going back to the statement that you

22   gave at the time of the line-up.  In your statement,

23   you said that you identified the people in the

24   line-up who had done the shooting, correct?

JR-JJ 031307

1      A     Uh huh, yes.

2      Q     And you identified one of the defendants as

3   being the driver and another as being the guy in the

4   back seat?

5      A     Right.

6      Q     And at trial, you testified at length about

7   how you saw this defendant going back and forth and

8   you and your friends who were both interested in

9   cars kept discussing this car and you paid a lot of

10  attention to this car and they pulled up and said

11  what's up and the shooting started?

12     A     Yes.

13     Q     And all that's true, right?

14     A     Yes; that's true.

15     Q     Now, so until basically, you have come to

16  this courtroom today. You never testified in a

17  courtroom that you weren't told or suggested who to

18  pick from that line-up, correct?

19     A     I don't understand the question.

20     Q     Well, you didn't say anything at trial

21  about the fact that you were told who to pick,

22  correct?

23     A     Right.

24     Q     And then before you testified at the trial,

A30

1        you went into a defense attorney office, an attorney

2        who represented one of the defendants, and gave a

3        statement, correct?

4             A    Yes.

5             Q    And in that statement -- bear with me while

6        I get the attorney's name.

7                  (A pause was had in the proceedings.)

8        BY MS. STACK:

9             Q    To defense attorney Melinda Powers you went

10       to her office in April, April of 1995?

11            A    Yes.

12            Q    Under pressure from the gang?

13            A    Yes.

14            Q    But you had been out of the gang since

15       1994?

16            A    But I am still in the neighborhood.

17            Q    So they can still influence you, can't

18       they?

19            A    They can come and get me whenever they

20       want.

21            Q    Where do you live now?

22            A    I live on Cortland Street.

23            Q    Same place?

24            A    Same place.

A31

1     Q    Same gang around?

2     A    Same gang around.

3     Q    Same kind of pressure around Mr. Saez?

4     A    No.

5     Q    Not at all?  They are all gone now, right.

6     THE COURT:  Answer out loud?

7     THE WITNESS:  Yes; they are all gone.

8     MS. STACK:  Thank you, Sir.

9           Now, in April of 1995, you went to

10    Melinda Powers and in the statement that you gave to

11    Melinda Powers defense attorney representing the

12    defendant that you had incriminated, you never said

13    anything about being mistreated in that statement,

14    correct?

15    A    Mistreated in what way.

16    Q    By the police officer at the scene.

17    A    No.

18    THE COURT:  And you never made any mention at

19    all in that statement that you made in the safety of

20    the defense attorney office that the police officer

21    had shown you these photographs immediately prior to

22    the line-up and told you who to pick, did you?

23    A    Right.

24    Q    You never said anything to that defense

JR-JJ 031310

1    attorney correct?

2       A    Right.

3       Q    But in that statement, you said you

4    couldn't see because it was dark and you were high

5    on marijuana?

6       A    Yes.

7       Q    And in that statement you said thank you

8    picked the defendant out of the 4 photos that you

9    saw because you thought they were the right guys,

10    right.

11      THE COURT:  Answer out loud?

12      THE WITNESS:  Yes.

13  BY MS. STACK:

14       Q    And you picked them in that statement to

15    Melinda Powers in April of '95, you said you picked

16    the defendant out of the line-up because you were

17    angry that they had killed your friend and shot at

18    you and your friends, correct?

19       A    Yes.

20       Q    Didn't you get nicked in the ear or

21    something by a bullet?

22       A    Two bullets, actually.

23       Q    And in April of '95, you said you were just

24    not sure who had done the shooting to Melinda

A33

1    Powers?

2        A    Right.

3        Q    And no mention that the police had told you

4    who to pick, right?

5        A    Correct.

6        THE COURT:  Excuse me, Mr. Kenelly.  Is there an

7    affidavit of this witness as part of your petition.

8        MS. STACK:  Exhibit 18, your Honor.

9        MR. KENELLY:  It is a sworn statement, your

10   Honor, for Exhibit 18.

11       THE COURT:  Could you get a copy of it for me.

12       MR. KENELLY:  I can give you mine.

13       THE COURT:  Go ahead.

14       MS. STACK:  Thank you, your Honor.

15           (A pause was had in the proceedings.)

16   BY MS. STACK:

17       Q    Now, on August 8, 1998, you sat with Mr.

18   Kenelly here and a court reporter and gave him a

19   statement, correct?

20       A    Yes.

21       Q    And in that statement regarding the day of

22   the line-up, you said -- this is Exhibit 18 I am

23   referring to.  You described the encounter with the

24   detective and Jackie Grande that you went to view

1       the line-up, correct?

2            A    Yes.

3            Q    And in your affidavit, you said that Jackie

4       Grande came up and knocked on your door?

5            A    Yes.

6            MR. KENELLY:  Page.

7            MS. STACK:  I'm sorry.  It is page 9.  My copy

8       of the numbers are real faint so bear with me.

9                 And you said when you went downstairs,

10      he was standing there with two Polaroid in his hand,

11      right?

12           A    Well, I didn't see them in his hand but

13      sometime when I went downstairs the Polaroid

14      appeared.

15           Q    Okay.  Now today you testified that while

16      the detective was showing you these Polaroids, you

17      got the impression that Jackie thought that these

18      were the guys, right?

19           A    Yes.

20           Q    And then with a little more questioning,

21      you said that she kind of nodded while the detective

22      was showing you the photographs of this -- before

23      the line-up on the street, correct?

24           A    Yes.

A35

JR-JJ 031313

1       Q    Now, Jackie did not say anything to you at
2   that time, did she?
3       A    No.
4       Q    She just nodded?
5       A    She nodded.
6       Q    While the police -- and when the police
7   officer showed you these photographs, you saw them
8   first, correct, as opposed to Jackie?
9       A    Yes.
10      Q    And you didn't see him actually show the
11  photographs to Jackie?
12      A    No.
13      Q    And she just kind of nodded when this
14  happened and that's where you got your impression,
15  correct?
16      A    Yes.
17      Q    Now, in the statement that you gave to Mr.
18  Kenelly, I believe this is page ten:
19          "You were asked by Mr. Kenelly, in other
20          words, he was pointing two fingers with one of
21          his hands at both of the pictures at the same
22          time meaning the police officers.  Right.  Then
23          you -- then you continued.  Are these the
24          guys -- are these the guys I am looking at.  I

A36

1          seen Jackie.  He had asked Jackie first and she

2          said yes, this is the guys, which struck me kind

3          of strange because she was with me when he got

4          there.  So I figured, you know, she is sure.

5          She is sure.  Well, I said well yes these were

6          the guys".

7                    So, in the version that you just gave

8     Mr. Kenelly in August, 1998, you said that he had

9     asked Jackie first about the photographs and then

10    you.  But today you say that didn't happen?

11         A     I guess I did, yes.

12         Q     Also on page 12, it was cleared up a little

13    bit more about exactly what happened in front of

14    your house when this officer showed you those

15    photographs and told you who had done the shooting.

16    You said the car was parked outside your house, the

17    detective car, and it was doubled parked and then

18    Mr. Kenelly asked you these questions when he was

19    showing Jackie the pictures because that was right

20    there.  You could see the detective showing Jackie

21    the pictures and you answered, right.  Do you

22    remember that?

23         A     Yes, I do.

24         Q     And Jackie -- and the next question by Mr.

A37

1       Kenelly was -- and Jackie was saying those are the

2       guys, is that right, and you answered yes.  Do you

3       remember that?

4            A    Yes.

5            Q    And is that what you said.  But today as

6       you testify in front of Judge Linn, Jackie wasn't

7       shown any photographs before you?

8            A    Yes; you can put it that way.

9            Q    Which version are we going with today.

10           MR. KENELLY:  Objection.

11           THE COURT:  Sustained to the form.  Rephrase the

12      question.

13      BY MR. STACK:

14           Q    Mr. Saez, which version is the one that

15      really truly happened?

16           MR. KENELLY:  Objection.

17           THE WITNESS:  Based on what I am trying to say

18      is the whole point was that I got the impression

19      that they knew who it was.

20           Q    You got the impression?

21           A    I got the impression they knew who it was.

22      I trusted Jackie's judgment.  She was there.  She

23      was shot.

24           Q    Please define where -- what impression is

JR-JJ 031316

```
 1     to you.  What do you mean by impression?

 2         A    I mean if they were sure who it was, you

 3     know, I was going to go along with it because I

 4     wanted them to pay.

 5         Q    And you are basing your opinion at that

 6     time that they were surely based on the fact that

 7     Jackie nodded while you were being shown

 8     photographs?

 9         A    Based on everything and body language and

10     everything that I saw, it was awhile back ago.  I

11     have a history of smoking marijuana.  I have smoked

12     marijuana before.

13         Q    Were you stoned when it happened?

14         A    No.

15         MR. KENNELLY:  Objection, your Honor.  He was in

16     the middle of an answer.

17         THE COURT:  Let him finish his answer.

18         THE WITNESS:  I don't do that anymore.  What I

19     am doing here today, I am just trying to make things

20     right.  I did not see what happened that day.

21         MS. STACK:  Objection to the narrative.

22         THE COURT:  Sustained.  Rephrase your question.

23     Get back to where we were.

24     BY MS. STACK:
```

A39

1       Q    The impression that you received that

2    Jackie thought these were the guys were based on a

3    head nod only, correct, is that your testimony

4    today?

5       A    That's what I said today but it could have

6    been something else.  I mean--

7    MS. STACK:  Objection, your Honor.

8    THE COURT:  Let him finish his answer.

9    THE WITNESS:  I don't remember so much details

10    like you guys are trained to do or whatever.  I

11    just -- I am trying to make things right.  That's

12    it.  I mean they could be the guys, they could be

13    guilty.  They could be not.  I am not one to say.  I

14    am not one to say and I don't want to be the one to

15    lie and say --

16    MS. STACK:  Mr. Saez, you did say -- didn't you

17    come in a courtroom and take an oath in a courtroom

18    and tell people those are the guys that did it and

19    you sent two men to jail and now you are not sure?

20       A    Yes, I did; yes and no.  I am not sure.

21       Q    But the oath today means something

22    different than it did 4 years ago.

23    MR. KENNELLY:  Objection.

24    THE COURT:  Overruled.

A40

```
 1              THE WITNESS:  What I am telling you today is I
 2      am not sure; I am not sure.  I never was.  I never
 3      saw these guys.  All I saw, it was a barrel of a
 4      gun.  Have someone point a gun at you, what are you
 5      going to look at?  What are you going to look at?
 6      If I have a gun pointed at you, are you going to
 7      look at his face?
 8              MS. STACK:  I would look at the man with the
 9      gun.
10              THE COURT:  Slow down just a second.  I am
11      talking to the witness.  Wait for a question.  Just
12      answer the question.  Don't get in an argument.
13      Please ask your next question.
14      BY MS. STACK:
15          Q    You are still at Cortland now, right?  You
16      still live in the same area right now?
17          A    Yes.
18          Q    And the same gangs are there, correct?
19          A    They see me, yes.
20          Q    And the same gangs still have their
21      rivalry?
22          A    No; that changes ever so often.
23          Q    What's their status these dates between
24      these 2 gangs that were fighting on the night your
```

A41

1 friend was killed?

2  A Right now, I have no idea.

3  Q Are there a lot of shootings in your

4 neighborhood lately?

5  A Not lately.

6  Q Seems like there might be a truce going on

7 now?

8  A Maybe.

9  Q Now, how many years were you in a gang, Mr.

10 Saez?

11  A 4 years.

12  Q Just 4 years.  In your 4 years as a gang

13 member, did you ever encounter a phenomenon that

14 when rival gang members during their truce would

15 recant their trial testimony as part of the truce

16 agreement?

17  A It has been known to happen, yes.

18  Q Is that what you are doing here today, Mr.

19 Saez.

20  A No, I am not.

21  Q Now, just as an aside, you testified at

22 trial at length about what you observed about your

23 conversation with your friends, about the defendant

24 going back and forth.  Do you remember that

JR-JJ 031320

1     testimony?

2        A    Yes.

3        Q    And you know that the men that were in the

4     car were the ones that killed your friends and shot

5     at you and your other friends, correct?

6        A    Right.

7        Q    There is no doubt in your mind what car the

8     shooters were in?

9        A    Right.

10       Q    And your attention was on the car?

11       A    Yes.

12       Q    And you reaffirmed that when you gave your

13     court-reported statement to Mr. Kenelly, is that

14     correct?

15       A    Yes.

16       Q    And Mr. Saez, before I move on, just so

17     it's clear, until you talked to Mr. Kenelly and your

18     conversation with Mr. Kenelly, the statements that

19     you gave Mr. Kenelly all occurred after this case

20     was tried and after you had testified at the trial,

21     is that correct?

22       A    Uh huh, yes.

23       Q    And prior to talking to Mr. Kenelly and/or

24     his investigator, you never told anybody that a

A43

1  police detective had shown you photographs and told

2  you who to pick out of a line up?

3   A  That's absolutely correct.

4   Q  That's correct.  You never told anybody?

5   A  What?  That I was shown photographs, only

6  Mr. Kenelly.

7   Q  Only Mr. Kenelly.  And only after you

8  testified under oath at the trial of the defendants,

9  correct?

10   A  After the trial.

11   Q  After the trial?

12   A  Yes.

13   THE COURT:  The first time you told anybody

14  about this, correct?

15   THE WITNESS:  Yes.  I felt something wasn't

16  right about that.

17  BY MS. STACK:

18   Q  Now, you pick up a robbery and you get

19  probation, right?

20   A  Yes.

21   Q  And then you were picked up and arrested

22  for violating that probation, right?

23   A  Yes.

24   Q  Now, just so we are clear, May 12, 1993 is

A$_{44}$

1      when you pled guilty and received two years

2      probation for the robbery, correct?

3      A    Yes.

4      Q    An aggravated battery was dropped from that

5      charge, nolle prossed?

6      A    Excuse me.

7      Q    Now -- I will withdraw the question.  And

8      you were sentenced to 200 hours of community

9      service?

10     A    Yes.

11     Q    Did you complete the community services.

12     A    No, I did not.

13     Q    Now, in January, 1994, you were arrested

14     for violation of this probation, right?

15     A    I don't remember.

16     Q    And what was the -- what did you do to

17     violate your probation?

18     A    If I recall, I think it was not going in,

19     reporting.

20     Q    Okay.  Non-reporting?

21     A    And non-community service.

22     Q    Okay.  And then almost two years later in

23     November, late November '95, right when this case

24     was about set to go to trial, you got picked up

JR-JJ 031323

1 again for violating your probation, right?

2  A I don't remember that.

3  Q You didn't remember having two arrests for

4 having violated your probation?

5  A No because when I was picked up for

6 violating probation the first time, I was released

7 the next day after the trial and my probation was

8 terminated unsatisfactory. I was never on probation

9 again.

10  Q You don't remember being -- having two

11 petitions brought against you for violating your

12 probation.

13  A No, I don't. I can't say I do.

14  Q You were only arrested once for violating

15 your probation?

16  A Yes.

17  Q And that a violation was at the end of '95?

18  A I would think so.

19  Q And that's when you spoke to the assistant

20 state's attorney, correct, state's attorney?

21  A Yes; when I was incarcerated, yes.

22  Q And how was it that you came physically to

23 go in the presence of the Assistant State's

24 Attorney?

A46

1       A       They came and got me.

2       Q       Who is they?

3       A       I was in the protective custody division,

4   Cook County Department of Corrections and the guard

5   came and got me down for I thought -- what I thought

6   was the court date but when I got --

7       Q       And they brought you to a courtroom?

8       A       And they brought me to a courtroom.

9       Q       And when you got to the courtroom, did --

10  were you back in the bullpen back in the lock-up?

11      A       At first I am there for like two or three

12  minutes and they came got me and sat me down in a

13  regular little seat.

14      Q       Like in one of these back rooms here?

15      A       Yes.

16      Q       And that's when you met the states

17  attorney, correct?

18      A       Yes.

19      Q       And do you remember what he looked like?

20      A       He was white male, maybe middle thirties.

21      Q       And did he introduce himself to you?

22      A       Yes, he did but I don't remember his name.

23      Q       Do you remember what he told -- did he tell

24  you that he was trying a case?

JR-JJ 031325

1     A     Trying the case and I asked him -- I

2     remember I asked him what happened to Michelle

3     Simmons.  She was the first state's attorney that I

4     spoke with about this case and he said that he took

5     it over and basically he was talking about what I

6     was going to say and everything.

7     Q     And he told you the case was going to

8     trial?

9     A     Was going to trial, right.

10    Q     It was already set for trial, right?

11    A     Right.

12    Q     Now, at that point when you met the state's

13    attorney and in one of the back rooms of the

14    courthouse, the last statement you had given anybody

15    was a statement saying you didn't see who did it,

16    correct, the statement you gave to Melinda Powers in

17    April of '95?

18    A     Uh huh.

19    Q     And in your affidavit that you gave to Mr.

20    Kenelly, the court reported statement, you were

21    asked a series of questions.  The state's attorney

22    had brought you over to the state's attorney office.

23    You responded yes, but you weren't brought to the

24    state's attorney office.  You were brought to a room

A48

1       behind the courthouse, right?

2           A       I figured it was his office.

3           Q       Next question is out of protective custody

4       and you responded -- this is page 25 with the D.O.C.

5       outfit and everything.  "And he spoke to me and told

6       me the trial was right around the corner, the next

7       day or something like that, and so I was tired of

8       being in jail and in a way I was scared because

9       there was so many gang members in there and I was on

10      the verge of getting out.  I was prime choice beef

11      for these guys, so I was like "you can get me out of

12      jail and I will go testify" and he said "okay; I am

13      not going to make you any promises".

14          A       Exactly.

15          Q       Most likely we will get it out and you said

16      "fine; we went and testified and I broke down and

17      that was about it".

18                  So, what you said to the court

19      reporter under oath to Mr. Kenelly, the state's

20      attorney said "I am not going to make you any

21      promises".

22          MR. KENELLY:  Objection, your Honor.  Your

23      Honor, that's not impeaching what he said on direct.

24          THE COURT:  Go ahead.

A49

1     BY MS. STACK:

2        Q    So you have no problem with the fact that

3     the state's attorney didn't make you any promises?

4        A    I have no problem with that.

5        Q    This was your impression again, correct?

6        A    I don't understand what you are trying to

7     say.

8        THE COURT:  She is trying to say did you have an

9     impression that he was going to help you or that he

10    wasn't making any promises about helping you?

11       THE WITNESS:  I had an impression he was going

12    to help me.

13       MS. STACK:  But that was based on nothing that

14    he said, correct.

15       MR. KENELLY:  Objection.

16       THE COURT:  Overruled.

17       THE WITNESS:  He said "I will see what I can do

18    for you."

19    BY MS. STACK:

20        Q    He said I am not going to make you any

21    promises?

22        A    "But I will see what I can do for you".

23    That same day or the next -- yes, same day, I went

24    down and seen the judge in a courtroom downstairs

JR-JJ 031328

1    and the next day I was released.

2        Q    And when you went down to see the judge

3    downstairs, that was the judge that gave you

4    probation originally, correct?

5        A    I was suppose so.

6        Q    And that's the judge that was overseeing

7    your probation case, correct?

8        A    I think so.

9        Q    And that judge terminated your probation?

10        A    Unsatisfactory, yes.

11        Q    Unsatisfactory.  And was the Assistant

12    State's Attorney that you had testified for that you

13    talked to, that didn't make you any promises, was he

14    in the courtroom when your probation was terminated?

15        A    I don't remember.  My probation officer

16    wasn't present in the courtroom.  I think he was.

17        Q    You think he was?

18        A    I think he was.

19        Q    But you have never made any mention of that

20    before, have you, in your statements?

21        A    No.

22        Q    That's new today.

23        MR. KENNELLY:  Objection, your Honor, unless it

24    is a question.

A51

```
 1            THE COURT:  Ask another question.
 2     BY MS. STACK:
 3         Q    Drawing your attention to your trial
 4     testimony.  You were asked on page F-295 of your
 5     trial testimony on redirect examination -- do you
 6     remember testifying at the trial?
 7         A    Yes.
 8         Q    Do you remember the state's attorney asking
 9     you on redirect "at any time, did I make you any
10     promises, any promises as to a disposition and your
11     violation of probation".  Do you remember giving the
12     response no?
13         A    Yes.
14         MR. KENNELLY:  Objection, your Honor, not
15     impeaching.
16         THE COURT:  All right.  Go ahead.  Ask another
17     question.
18     BY MS. STACK:
19         Q    Do you remember being asked "what did I
20     tell you to testify to when you came before this
21     jury today" and you answered "testify to what
22     happened that date, to the truth".
23              Do you remember being asked that
24     question and giving that answer?
```

A52

JR-JJ 031330

```
1              A    Yes.

2              MS. STACK:  May I have a moment, your Honor.

3              THE COURT:  Yes.

4                   (A pause was had in the proceedings.)

5              MS. STACK:  Your Honor, I have nothing further

6       at this time.

7              THE COURT:  Redirect.

8              MR. KENELLY:  Briefly, your Honor.

9                          REDIRECT EXAMINATION

10             Q    Mr. Saez, you remember when you came down

11      to my office and gave a statement with the court

12      reporter?

13             A    Yes.

14             Q    Do you remember how you got to my office?

15             A    Yes.

16             MR. KENELLY:  How did you get to my office.

17             MS. STACK:  Objection; relevance.

18             THE COURT:  Overruled.  Go ahead.

19             THE WITNESS:  John was his name, drove me out

20      there.

21      BY MR. KENELLY:

22             Q    My investigator?

23             A    Yes.

24             Q    And did Mr. Ireman (phonetic) tell you
```

A53

```
 1        to -- what you were suppose to say when you came

 2        down to talk to me?

 3            A    No.

 4            Q    Did he ask you to lie or tell you that you

 5        should tell anything other than the truth?

 6            A    No.

 7            Q    And when you got down to my office, did I

 8        tell you to lie to me?

 9            A    No.

10            Q    Did I ask you to say anything other than

11        the truth?

12            A    No.

13            Q    And Mr. Saez, when you came down to my

14        office, did that have anything at all to do with any

15        gangs or truces or anything like that?

16            A    No.

17            Q    How long have you been out of the gang?

18            A    Since the date.

19            Q    What date?

20            A    Date that the murder took place.

21            Q    That date back in 1994?

22            A    Yes.

23            Q    And when you gave the statement in my

24        office, were you doing anything for any gang
```

A54

```
1       members?

2           A     No.

3           Q     When you testified in here today, are you

4       doing anything for any gang members.

5           A     No.

6           Q     Did any gang members contact you and told

7       you what you should say to me in my office and what

8       you had should testify?

9           A     No, sir.

10          Q     And counsel asked -- you made a point of

11      the fact that you never told the states attorney,

12      either of the states attorneys, the one that you

13      gave the written list to and the one in court, that

14      you never had told them anything about seeing these

15      photographs.  Why didn't you?

16          A     Because I was stuck on believing that these

17      guys were guilty.

18          Q     And had the detective also said for you not

19      to tell?

20          A     Excuse me.

21          Q     Had the detective also said to you not to

22      tell about seeing the photographs?

23          A     Yes.  Yes; not to mention it.

24          MR. KENELLY:  Nothing further.
```

A55

JR-JJ 031333

1          THE COURT:  Recross.

2          MS. STACK:  One question.

3

4                    RECROSS EXAMINATION

5                    BY MS. STACK:

6          Q     The detective told you not to mention it

7     back in '94, correct?

8          A     Uh huh; yes.

9          Q     And for all these years and all the

10    attorneys you spoken to and all the times you have

11    appeared in court, you never told anybody about that

12    until Mr. Kenelly came along, right?

13         A     Yes.

14         MS. STACK:   Nothing further.

15         MR. KENNELLY:  No more questions, your Honor.

16         THE COURT:  Is it all right if I ask him a

17    couple of questions.

18         MR. KENELLY:  Absolutely.

19         THE COURT:  The first time you talk to the

20    police, right after this happened, did you give a

21    description of the people that shot at you and your

22    friends?

23         THE WITNESS:  No, I did not.

24         THE COURT:  No description at all.

A56

1          THE WITNESS:  No.

2          THE COURT:  And you are saying the first time

3     that you did give a description was -- you never

4     gave a description but the first time you made

5     identification was when someone showed you these

6     Polaroids?

7          THE WITNESS:  Yes.

8          THE COURT:  Did you volunteer this new

9     information that all of a sudden you are saying now

10    that you really can't identify anybody.  Did you go

11    to anybody with this information or did somebody

12    come to you?

13         THE WITNESS:  Well, his investigator came saying

14    that these guys --

15         THE COURT:  When?

16         THE WITNESS:  I don't remember.  It was awhile

17    back.

18         THE COURT:  How long ago?

19         THE WITNESS:  About a month before I went to his

20    office.

21         THE COURT:  This is the guy, John, you are

22    talking about?

23         THE WITNESS:  Yes.

24         THE COURT:  He said what to you?

A57

JR-JJ 031335

1            THE WITNESS:  He said that these guys were

2       coming out with an appeal and he wanted to know what

3       it was I said and was it anything that I didn't say

4       and there was, you know, and I told him -- I let

5       loose to him because I wasn't in fear of anything

6       anymore.  I was totally changing myself and it is

7       like a guilty conscious, you know.  I didn't want to

8       be responsible if these guys are innocent.  I don't

9       know really, you know.  I don't know if they were

10      innocent.  I don't know if they were not.  All I

11      know is that I didn't see, what I said I saw and

12      that's when I told him about the pictures and

13      everything else.

14            THE COURT:  Just a second.

15            (A pause was had in the proceedings.)

16            THE COURT:  Page 15 of his statement, let me

17      just run this past you here.  I want you to tell me

18      what you meant when Mr. Kenelly was asking you

19      questions in front the court reporter.  You remember

20      that right?

21            THE WITNESS:  Yes.

22            THE COURT:  You were asked "I was standing" --

23      or you said "I was standing right out on the front

24      step of my front doorstep".

JR-JJ 031336

1          QUESTION:  Was his window rolled down or

2     rolled up?  And you said it was halfway rolled down.

3     I know the Delta back window does not go all the way

4     down.

5          QUESTION:  Back window.

6          ANSWER:  Back window.  Go ahead.  Then you

7     said "so I proceed to walk towards the car.  I

8     figured I knew the guy.  I walked towards the guy

9     and I stopped at the garbage can because he looked

10    kind of suspicious to me because I didn't recognize

11    him off the bat.

12               So you were able to see him and know

13    from that much interaction and in the car with him

14    that you didn't recognize him?

15    THE WITNESS:  Something told me that something

16    was wrong.  He was crouched over like this in the

17    car.  All I can see like the lights of his eyes.

18    THE COURT:  You didn't say "I didn't see him."

19    You said you didn't recognize him.  What did you

20    mean when you said you didn't recognize him.  It was

21    somebody that you realized you didn't know.

22    THE WITNESS:  No; what I was trying to say, I

23    meant was that I didn't recognize him because if it

24    had been somebody I knew, he would have made himself

A59

1    known.  He would have said hi whatever, but instead

2    he was crouched over and like leaning head down and

3    immediately after that, a gun pops up.

4        MR. KENELLY:  Your Honor, if I could call your

5    attention to the testimony beginning at the bottom

6    of 15 and continuing onto 16.

7        THE COURT:  That came afterwards though.  Did

8    you talk with Mr. Kenelly before the court reporter

9    was taking down this statement.  Did you have a

10   conversation first?

11       THE WITNESS:  We were talking, yes.

12       THE COURT:  And then after you talked with him

13   first, then the court reporter got involved?

14       THE WITNESS:  Yes.

15       THE COURT:  So I understand correctly, what you

16   are telling me today is that you are not saying

17   these guys didn't do it.  You are saying you don't

18   know if they did it or didn't do it?

19       THE WITNESS:  Right.

20       THE COURT:  And you told me also that you

21   stopped being a member of the gang the day of the

22   murders?

23       THE WITNESS:  Yes.

24       THE COURT:  Is that the day you were violated

JR-JJ 031338

```
 1      out?

 2          THE WITNESS:  No; that's the day I vowed I was

 3      going to get out.

 4          THE COURT:  How long afterwards were you

 5      violated?

 6          THE WITNESS:  About a week.

 7          THE COURT:  About a week later?

 8          THE WITNESS:  Yes.

 9          THE COURT:  Where did that happen?

10          THE WITNESS:  It happened in an alley on

11      Armitage and Drake, I think it was.

12          THE COURT:  When was the last time you talked to

13      Jackie about this case?

14          THE WITNESS:  I have not spoken to Jackie since

15      I saw her that day of the court date.

16          THE COURT:  Okay.  Any other questions based on

17      the Court's questions.

18          MS. STACK:  No, your Honor.

19          MR. KENNELLY:  No, your Honor.

20          THE COURT:  You can step down.

21          MR. KENELLY:  Your Honor, as I indicated, I

22      think I would call Mr. Callahan who I believe is in

23      the back.

24          THE COURT:  Let's go.
```

A61

Exhibit S )

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT-CRIMINAL DIVISION**

PEOPLE OF THE STATE OF ILLINOIS ... )
                                   )
               **vs.**               ) No: 94CR-24318
                                   )
WILLIAM NEGRON.                  )

### ORDER VACATING JUDGMENT AND SENTENCE

**IT IS HEREBY ORDERED THAT:**

**THE JUDGMENTS AND CONVICTIONS AGAINST ROBERTO ALMODOVAR**

**INMATE # B74073 IN CASE NUMBER 94CR-24318 SHALL BE VACATED;**

**AND,** *ALL CHARGES UNDER THIS INDICTMENT NUMBER 94cr-24318 ARE DISMISSED; And*

**WILLIAM NEGRON IS NO LONGER SERVING A LIFE SENTENE UNDER 94CR 24318** *LIFE*

**IT IS ORDERED:**

**JUDGE JAMES B. LINN**

**APRIL 14, 2017**



ENTERED

APR 14 2017

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

# Exhibit S *

Support The National Registry of Exonerations — **Donate Now**

A PROJECT OF THE UNIVERSITY OF CALIFORNIA IRVINE NEWKIRK CENTER FOR SCIENCE & SOCIETY,
UNIVERSITY OF MICHIGAN LAW SCHOOL & MICHIGAN STATE UNIVERSITY COLLEGE OF LAW



THE NATIONAL REGISTRY
OF EXONERATIONS

**3,488 EXONERATIONS SINCE 1989**
**MORE THAN 31,700 YEARS LOST**

BROWSE CASES    ISSUES    REPORTS    RESOURCES    ABOUT US          MAKE A GIFT

# NELSON GONZALEZ

### Other Exonerations with Misconduct by Detective Guevara



Nelson Gonzalez with his attorney,
Jennifer Bonjean (Photo: Handout)

At about 2 a.m. on June 20, 1993, after a night of drinking, 45-year-old Jose Mendoza was driving home from a bar on the northwest side of Chicago, Illinois. His brother, Ciro, was in the back seat, as was a friend, Raul Moreno. Another friend, Romaldo Alvarez, was in the front passenger seat.

Near the intersection of Cortland Street and Kostner Avenue, the car stalled. As Mendoza attempted to restart the car, five or six men approached. One of them smashed out the rear window, and another shattered the driver's side window and began beating Mendoza with a baseball bat. From the rear passenger seat, Ciro attempted to stop the attack. He managed to rip a Gitano brand wristwatch from the attacker's arm before the men fled in a red car.

Ciro got behind the wheel and began driving to seek help. A police car noticed the car driving erratically and running a red light. The officer's pulled them over and summoned help.

Later that day, Chicago police detective Reynaldo Guevara claimed that an anonymous caller had reported that the attacker was 24-year-old Nelson Gonzalez, who had been arrested hours after the attack on an unrelated charge.

Although Ciro Mendoza's description of the attacker was of a youth 16 to 18 years old with brown skin, Guevara put together a four-person lineup consisting of Gonzalez, who was 24 years old and had light skin, along with three fillers. Ciro selected Gonzalez as the attacker.

Six days later, Mendoza died of head injuries. Gonzalez was charged with first degree murder.

In November 1994, Gonzalez went to trial in Cook County Circuit Court. He was convicted on November 10, 1994 based solely on Ciro's identification. The other two occupants of the car—Moreno and Alvarez—were unable to make any identification. Gonzalez was sentenced to 45 years in prison.

In September 1996, the First District Illinois Appellate Court upheld the conviction and sentence.

In 2002, Gonzalez, acting without a lawyer, filed a motion for DNA testing of the wristwatch. In January 2004, the motion was denied. He appealed, and, in 2005, the Appellate court ordered the testing be performed. In November 2005, the DNA testing revealed a mixture of DNA. Gonzalez was excluded from the DNA found on the watch. The only identifiable DNA was that of the victim.

In 2016, Gonzalez was released on parole after spending nearly 20 years in

| | |
|---|---|
| **State:** | Illinois |
| **County:** | Cook |
| **Most Serious Crime:** | Murder |
| **Additional Convictions:** | |
| **Reported Crime Date:** | 1993 |
| **Convicted:** | 1994 |
| **Exonerated:** | 2022 |
| **Sentence:** | 45 years |
| **Race/Ethnicity:** | Hispanic |
| **Sex:** | Male |
| **Age at the date of reported crime:** | 24 |
| **Contributing Factors:** | Mistaken Witness ID, Official Misconduct |
| **Did DNA evidence contribute to the exoneration?:** | Yes |

prison since his conviction.

During that time, the first evidence of misconduct by Guevara and other detectives began to surface and prompted the undoing of convictions.

In February 2004, Juan Johnson, whose 30-year prison sentence for a murder conviction had been vacated in 2002, had been acquitted at a retrial. A federal jury later awarded Johnson $21 million in damages from the city based on evidence that the original three eyewitnesses recanted their testimony and revealed that they were coerced by Guevara to identify Johnson.

In October 2011, Jacques Rivera was exonerated of a murder. He later filed a federal civil rights lawsuit accusing Guevara and other officers of burying evidence and pressuring the witness to falsely identify him as the triggerman. In 2018, a jury awarded Rivera $17.175 million.

In 2016, the murder convictions of Jose Montanez and Armando Serrano were vacated and the charges were dismissed. Both had been convicted on false testimony that had been coerced by Guevara.

In April 2017, Roberto Almodovar and William Negron were exonerated after evidence showed that Guevara had improperly influenced witnesses to identify them as the shooter and driver in a drive-by shooting that killed two people and wounded a third.

In November 2017, Jose Maysonet became the seventh person to be exonerated based on misconduct by Guevara. Maysonet, who was serving a sentence of life in prison without parole, falsely confessed after a 17-hour interrogation punctuated by beatings and torture by Guevara.

In December 2017, Gabriel Solache and Arturo DeLeon-Reyes, who claimed that Guevara had beaten them into confessing to a murder they didn't commit, had their murder convictions vacated and the charges dismissed.

In August 2019, Gonzalez's attorneys, Jennifer Bonjean and Ashley Cohen, filed an amended post-conviction petition seeking to vacate Gonzalez's conviction. The petition cited the numerous cases in which Guevara's misconduct had been exposed, including the manipulation and coercion of witnesses to falsely identify suspects.

The petition also cited the lineup containing four persons that Guevara had created from which Gonzalez was identified by Ciro Mendoza. The petition noted that when Guevara submitted to a deposition as part of post-conviction proceedings, he invoked his Fifth Amendment protection against self-incrimination when asked about the many cases of misconduct. In regard to Gonzalez's case, he invoked that protection and refused to answer questions about whether he fabricated the claim that an anonymous source had reported that Gonzalez committed the crime. He likewise refused to answer whether he directed Ciro to identify Gonzalez.

"The case against Mr. Gonzalez was razor thin, turning entirely on the testimony of Ciro Mendoza who by his own admission was under the influence of alcohol at the time of the event and who was unable to give any meaningful description of any of the offenders immediately after the event," the petition said.

The petition noted that Ciro and the two others in the car looked at mug shot books at the police station immediately after the attack and identified no one, even though Gonzalez's photo would have been in the books since he had been arrested a dozen times in that police station.

Moreover, the petition said, "The line-up assembled by Guevara was inherently suggestive and violated every law enforcement norm government line-up procedure where it contained only three fillers. The Department of Justice commands that line-ups contain a minimum of five fillers in addition to the suspect."

With just three fillers, the petition noted, "Any witness viewing the line-up

would have a 25 percent chance of identifying the suspect by closing his eyes and randomly pointing at anyone in the line-up."

As the petition was pending, more convictions based on Guevara's misconduct were being dismissed. On July 12, 2022, the prosecution agreed to vacate and dismiss the murder conviction of Jose Cruz, who claimed he was wrongly convicted of murder based on misconduct by Guevara. Others exonerated include: Thomas Sierra, Ariel Gomez, Ricardo Rodriguez, Robert Bouto, Geraldo Iglesias, Demetrius Johnson, Reynaldo Munoz, and Daniel Rodriguez.

On July 21, 2022, the Cook County State's Attorney's office abruptly asked that the convictions of Eruby Abrego and Jeremiah Cain be vacated and dismissed. On that same day, the prosecution also agreed to dismiss the murder convictions of Juan Hernandez and Rosendo Hernandez, two brothers who were falsely convicted by misconduct of Guevara and other detectives.

On August 9, 2022, the Cook County State's attorney's office agreed to vacate Gonzalez's convictions, and the case was dismissed.

In 2023, Gonzalez was granted a certificate of innocence, paving the way for him to apply for compensation from the state of Illinois. In September 2023, Gonzalez was awarded $268,960 in state compensation.

In September 2023, he filed a federal civil rights lawsuit against Guevara and other police officers seeking compensation for his wrongful conviction.

– *Maurice Possley*

Report an error or add more information about this case.

Posting Date: 8/22/2022
Last Updated: 12/13/2023

**ABOUT THE REGISTRY**

The National Registry of Exonerations is a project of the Newkirk Center for Science & Society at University of California Irvine, the University of Michigan Law School and Michigan State University College of Law. It was founded in 2012 in conjunction with the Center on Wrongful Convictions at Northwestern University School of Law. The Registry provides detailed information about every known exoneration in the United States since 1989—cases in which a person was wrongly convicted of a crime and later cleared of all the charges based on new evidence of innocence. The Registry also maintains a more limited database of known exonerations prior to 1989.

Support Our Work

**CONTACT US**

We welcome new information from any source about exonerations already on our list and about cases not in the Registry that might be exonerations.

Tell us about an exoneration that we may have missed

Correct an error or add information about an exoneration on our list

Other information about the Registry

Sign up for our Newsletter

Follow Us:

SPONSORED BY

AUDIOCHUCK

Exhibit S +

Support The National Registry of Exonerations — **Donate Now**

A PROJECT OF THE UNIVERSITY OF CALIFORNIA IRVINE NEWKIRK CENTER FOR SCIENCE & SOCIETY,
UNIVERSITY OF MICHIGAN LAW SCHOOL & MICHIGAN STATE UNIVERSITY COLLEGE OF LAW



THE NATIONAL REGISTRY
OF EXONERATIONS

**3,488 EXONERATIONS SINCE 1989**
**MORE THAN 31,700 YEARS LOST**

BROWSE CASES    ISSUES    REPORTS    RESOURCES    ABOUT US    MAKE A GIFT

# CARLOS ANDINO

### Other Exonerations with Misconduct by Detective Guevara



Shortly before 8 p.m. on April 11, 1994, Mark Dibicki was using a pay telephone near a laundromat in the 3700 block of West Fullerton Avenue in Chicago, Illinois when a man approached and demanded his money and his pager. Dibicki, who was intoxicated, refused and was fatally shot.

Fourteen-year-old Christopher Smith and his sisters, 11-year-old Kimberly and 10-year-old Katherine, who lived in an apartment above the laundromat, were standing on the street. They had rung the doorbell and were waiting for their mother to come down to let them in.

Although all three children witnessed parts of the shooting, only Christopher spoke to police that night. He said that the gunman had a shaved head.

Immediately after the shooting, police looked for two men. And two men were briefly arrested, but were released without being charged.

Theresa Rios was among several people in the laundromat at the time. She told police she heard two gunshots, and then the children came into the laundromat and said someone had been shot. Rios said she saw a man run slowly past the window. She said the man was Puerto Rican, 24 to 25 years old, 5 feet 8 inches tall, weighed 150 pounds, and had a "goatee type of thing, mustache type of thing."

Rios later looked through photographs supplied by police, including by detectives Reynaldo Guevara and Ernest Halvorsen, but did not make any identification.

Three months later, on July 16, 1994, Detective Ronald Koncz reported that he was at Mozart Park, located about a half-mile from the shooting, when an informant said the gunman was nicknamed "Harpo" and had a first name of Carlos. Koncz would later say he consulted a gang member database and found that 21-year-old Carlos Andino had the nickname of "Harpo." Koncz then contacted Rios and showed her a photographic lineup. She picked out Andino's photograph as the man she saw run slowly by the laundromat after the shooting.

Koncz would later admit that he never wrote a report about his conversation with the informant, did not inventory the photographic array, and did not prepare a report of Rios's identification. Koncz said he informed Guevara and Halvorsen, who were the lead detectives on the case. There was no attempt to ask any other people in the laundromat to view the lineup. This included Javier Estrada, who was in the laundromat at the time of the shooting.

On August 14, 1994, Guevara and Halvorsen visited the Smith apartment.

| | |
|---|---|
| **State:** | Illinois |
| **County:** | Cook |
| **Most Serious Crime:** | Murder |
| **Additional Convictions:** | Attempt, Violent |
| **Reported Crime Date:** | 1994 |
| **Convicted:** | 1996 |
| **Exonerated:** | 2022 |
| **Sentence:** | 60 years |
| **Race/Ethnicity:** | Hispanic |
| **Sex:** | Male |
| **Age at the date of reported crime:** | 21 |
| **Contributing Factors:** | Mistaken Witness ID, Perjury or False Accusation, Official Misconduct, Inadequate Legal Defense |
| **Did DNA evidence contribute to the exoneration?:** | No |

The children were taken to the police station. There, all three identified Andino as the gunman.

Andino was arrested on August 18, 1994 and was charged with first-degree murder and attempted armed robbery. In November 1996, he went to trial in Cook County Circuit Court. The prosecution sought the death penalty.

Katherine Smith, who had been 10 years old at the time of the crime, testified she saw two men approach Dibicki. She said the gunman, whom she identified as Andino, was wearing a hoodie that covered most of his face and his head. She said the gunman had a dark complexion—though Andino was light-skinned—and had no facial hair. She said the gunman asked Dibicki for his money and pager. When Dibicki refused, there was a struggle, and she saw a gun in Andino's hand. She got scared and turned away. She heard a shot, and then she and her siblings ran to the door of the laundromat, she said. As they pushed open the door, Katherine said she saw Andino shoot and miss, and then push the gun against Dibicki's body, and shoot him.

From inside the laundromat, Katherine said she saw Dibicki crawling toward a dry cleaners next door. The gunman then ran past the laundromat, she said.

Kimberly gave a similar account, although she said she did not hear the gunman speak to Dibicki.

Christopher testified that the gunman was a male Hispanic between 20 and 25 years of age with a light or dark complexion.

All three children identified Andino as the gunman. Rios testified and identified Andino as the man she saw slowly run past the laundromat window.

A medical examiner testified that Dibicki died of two gunshot wounds to the chest.

Halvorsen testified about the lineup identifications and said that all three children individually viewed a live lineup and identified Andino. He denied showing them any photographs prior to the lineup or telling them who to identify.

Andino testified and denied any involvement in the crime. He told the jury that he was babysitting his six-month old daughter at the time of the crime. The child's mother also testified that Andino was caring for the child at that time.

On November 21, 1996, the jury convicted Andino of first-degree murder and attempted armed robbery. Judge Frank Suria declined to impose the death penalty and sentenced Andino to 60 years in prison.

In 1999, the First District Illinois Appellate Court upheld the convictions and sentence.

In the ensuing years, murder cases handled by Guevara and Halvorsen began to fall apart as evidence was developed showing that through a pattern of threats and physical violence, they coerced false confessions from defendants as well as false witness identifications.

In February 2004, Juan Johnson, whose 30-year prison sentence for a murder conviction had been vacated in 2002, was acquitted at a retrial. A federal jury later awarded Johnson $21 million in damages from the city based on evidence that the original three eyewitnesses recanted their testimony and revealed that they were coerced by Guevara to identify Johnson.

In October 2011, Jacques Rivera was exonerated of a murder. He later filed a federal civil rights lawsuit accusing Guevara and other officers of burying evidence and pressuring the witness to falsely identify him as the triggerman. In 2018, a jury awarded Rivera $17.175 million.

In 2016, the murder convictions of Jose Montanez and Armando Serrano

were vacated and the charges were dismissed. Both had been convicted on false testimony that had been coerced by Guevara.

In April 2017, Roberto Almodovar and William Negron were exonerated after evidence showed that Guevara had improperly influenced witnesses to identify them as the shooter and driver in a drive-by shooting that killed two people and wounded a third.

In November 2017, Jose Maysonet became the seventh person to be exonerated based on misconduct by Guevara. Maysonet, who was serving a sentence of life in prison without parole, falsely confessed after a 17-hour interrogation punctuated by beatings and torture by Guevara.

In December 2017, Gabriel Solache and Arturo DeLeon-Reyes, who claimed that Guevara had beaten them into confessing to a murder they didn't commit, had their murder convictions vacated and the charges dismissed.

In January 2021, attorneys Jennifer Bonjean and Ashley Cohen filed a post-conviction petition seeking to vacate Andino's convictions. The petition said that Katherine and Christopher had told police at the time of the crime that the gunman had a teardrop tattoo on his face. That information had not been disclosed to Andino's defense attorney by the police.

The petition noted that the trial defense lawyers, Richard Bueke and Randy Rueckert, had failed to interview Javier Estrada, who was in the laundromat at the time of the crime. Had they done so, the petition said, they would have learned that Estrada would have testified that Andino was not the gunman.

The petition also said that Bueke and Rueckert failed to disclose that at the time of the trial, they also represented Guevara in unrelated civil matters, including a child support proceeding. Andino, the petition said, is "unquestionably innocent of the murder for which he was convicted, but even if he was not, [Andino] would be entitled to a new trial [because] he was denied his Sixth Amendment right to conflict-free counsel."

The petition noted that the prosecution had previously dismissed the case of Jose Maysonet after discovering that Bueke represented Maysonet at the same time he was representing Guevara. At that time, Assistant State's Attorney Mark Shlifka reported that the relationship between Bueke and Guevara "has spanned, apparently, almost 15 years."

The petition also noted that during a federal investigation of a corrupt police officer, Joseph Miedzianowski, a witness claimed that in two murder cases, Bueke had paid Guevara $20,000, and the cases were dropped.

In addition, Katherine gave a statement to the lawyers saying that Guevara and Halvorsen showed her a photograph of Andino prior to the lineup and told her to pick him because he was the gunman. She acquiesced and did so even though Andino did not have a teardrop tattoo. Christopher gave a statement saying he identified Andino despite seeing that he had no such facial tattoo.

The petition cited the growing list of murder convictions that had been overturned due to misconduct by Guevara and Halvorsen, as well as numerous other cases involving misconduct by the detectives. Both detectives were no longer on the police force, having retired years earlier.

Others who had been exonerated by that time included: Thomas Sierra, Ariel Gomez, Ricardo Rodriguez, Robert Bouto, Geraldo Iglesias, Demetrius Johnson, Reynaldo Munoz, and Daniel Rodriguez.

While Andino's petition was pending, more convictions based on Guevara misconduct were being dismissed. On July 12, 2022, the prosecution agreed to vacate and dismiss the murder conviction of Jose Cruz, who claimed he had been wrongly convicted of murder based on misconduct by Guevara. On July 21, 2022, the Cook County State's Attorney's office abruptly asked that the convictions of four other men be dismissed: Eruby Abrego, Jeremiah Cain, and brothers Juan and Rosendo Hernandez.

On August 9, 2022, the Cook County State's attorney's office agreed to vacate seven more convictions, including Andino's. He was released after serving more than 25 years since the date of his conviction.

In August 2023, Andino was awarded a certificate of innocence, clearing the way for him to seek compensation from the state of Illinois. In September 2023, Andino filed a federal civil rights lawsuit against Guevara and other police officers seeking compensation for his wrongful conviction. In November 2023, Andino was awarded $268,960 in state compensation.

– *Maurice Possley*

Report an error or add more information about this case.

Posting Date: 8/23/2022
Last Updated: 12/12/2023

## ABOUT THE REGISTRY

The National Registry of Exonerations is a project of the Newkirk Center for Science & Society at University of California Irvine, the University of Michigan Law School and Michigan State University College of Law. It was founded in 2012 in conjunction with the Center on Wrongful Convictions at Northwestern University School of Law. The Registry provides detailed information about every known exoneration in the United States since 1989—cases in which a person was wrongly convicted of a crime and later cleared of all the charges based on new evidence of innocence. The Registry also maintains a more limited database of known exonerations prior to 1989.

Support Our Work

## CONTACT US

We welcome new information from any source about exonerations already on our list and about cases not in the Registry that might be exonerations.

Tell us about an exoneration that we may have missed

Correct an error or add information about an exoneration on our list

Other information about the Registry

Sign up for our Newsletter

Follow Us:

SPONSORED BY

AUDIOCHUCK

Exhibit S( "

Case: 1:20-cv-04156 Document #: 339-18 Filed: 06/10/24 Page 234 of 511 PageID #:50201

Support The National Registry of Exonerations — **Donate Now**

A PROJECT OF THE UNIVERSITY OF CALIFORNIA IRVINE NEWKIRK CENTER FOR SCIENCE & SOCIETY,
UNIVERSITY OF MICHIGAN LAW SCHOOL & MICHIGAN STATE UNIVERSITY COLLEGE OF LAW



**THE NATIONAL REGISTRY OF EXONERATIONS**

**3,488 EXONERATIONS SINCE 1989
MORE THAN 31,700 YEARS LOST**

BROWSE CASES     ISSUES     REPORTS     RESOURCES     ABOUT US     MAKE A GIFT

# EDWIN DAVILA

### Exonerations with misconduct by Detective Guevara



Edwin Davila (Photo: Antonio Perez/Chicago Tribune)

In the early morning hours of July 2, 1995, 17-year-old Jaime Alvarez, 28-year-old Michael Ybarra, and 20-year-old Ivar Velasco were driving near Pulaski Park in Chicago, Illinois, looking for marijuana. Ybarra was driving, Alvarez was in the front passenger seat, and Velasco was in the back seat. At about 2 a.m., another vehicle, described as a white Buick, pulled up alongside. Words were exchanged, and a bottle was thrown from the white car, which then sped off.

| | |
|---|---|
| **State:** | Illinois |
| **County:** | Cook |
| **Most Serious Crime:** | Murder |
| **Additional Convictions:** | Attempted Murder |
| **Reported Crime Date:** | 1995 |
| **Convicted:** | 1996 |
| **Exonerated:** | 2022 |
| **Sentence:** | 50 years |
| **Race/Ethnicity:** | Hispanic |
| **Sex:** | Male |
| **Age at the date of reported crime:** | 21 |
| **Contributing Factors:** | Mistaken Witness ID, Official Misconduct |
| **Did DNA evidence contribute to the exoneration?:** | No |

Ybarra sped after the vehicle until it stopped near 1719 West Pierce Avenue. Ybarra would later testify that the passenger of the Buick ran to the sidewalk where several other people were gathered. Ybarra said the passenger got a gun and shot at them from about 10 feet away. Ybarra was struck in the leg, and Alvarez was shot in the head. Ybarra immediately backed up and sped to St. Mary's Hospital. Ybarra was treated for his wound. Alvarez died four days later without regaining consciousness.

When first questioned by the police at St. Mary's, Ybarra and Velasco reported that they were not able to see who shot them. Police reports indicated Velasco believed the gunman was among the people gathered on the street. Neither of them said the gunman was the passenger in the Buick.

Ybarra was interviewed for a second time that same day after he was transferred to Cook County Hospital. He told Detective Ernest Halvorsen that he did not see who fired the shots. Ybarra said two males were in the Buick.

On July 9, Halvorsen and his partner, Detective Reynaldo Guevara, were assigned to investigate the crime. They drove around the neighborhood where the shooting occurred. They later reported that some young kids told them they had heard that someone from the "Jivers" street gang had shot a Latin Kings gang member. They told the detectives that members of the Jivers hung out near Pierce Avenue and Paulina Street less than a block from the shooting.

Later that day, according to Guevara, they saw 21-year-old Edwin Davila and another man installing a stereo in a car parked at 1750 West Pierce Avenue. Davila gave Guevara his address, which was about a mile away. Guevara later said that Davila was wearing an Italian tee shirt and that he saw a "J" [for Jiver] tattooed on his back.

Although Guevara would later say he spoke to four other people in the area and obtained photographs of all of them, including Davila, Guevara did not put any of that information in a report or document the interviews.

Two days later, on July 11, 1995, Guevara and Halvorsen put together a photographic lineup including Davila's picture and showed it to Ybarra at

Isauro Davila - National Registry of Exonerations

the hospital. The detectives reported that Ybarra picked Davila as the gunman. On July 13, 1995, Velasco was shown the same photographic lineup, and, according to Guevara, Velasco picked Davila.

On July 29, 1995, Davila was arrested. The following day, Ybarra and Velasco viewed a live lineup and both picked out Davila. In their police report, Guevara and Halvorsen said, "Latin Jivers provoked strangers who were driving through their turf by throwing a bottle at the strangers' car." The report said that when Ybarra pulled up at 1719 West Pierce Avenue, the passenger of the Buick got out "and walked into a gangway and came out with a handgun shooting at the strangers...motive: set-up gang retaliation."

In 1996, Davila went to trial in Cook County Circuit Court and chose to have the judge decide the case without a jury.

Ybarra and Velasco both testified and identified Davila in court. They recounted how they had identified him in photographic and live lineups. Both testified that they heard people yelling at them, "King Killer," and identifying themselves as members of the Disciples street gang. The prosecution argued that Ybarra and Velasco did not come forward immediately because they were afraid.

Guevara testified about creating the photographic array and conducting the live lineup.

The defense presented no witnesses. On March 20, 1996, the judge convicted Davila of first-degree murder and attempted murder, declaring that "the witnesses in this case were credible in their identification."

Prior to sentencing, the defense filed a motion for a new trial based on affidavits from Christopher Lorenzi and Carlos Cotto. Cotto said he saw the shooting and identified the gunman as Philip Willis. Lorenzi said he saw the car chase and saw Willis come out from a gangway and shoot at the car containing Ybarra, Velasco and Alvarez.

The motion was denied. Davila was sentenced to 50 years in prison on the murder conviction and 10 years on the attempted murder conviction with the sentences to be served concurrently.

In 1997, the First District Illinois Appellate Court upheld his convictions. Davila then filed a post-conviction petition based on the affidavits from Cotto and Lorenzi as well as an affidavit from Davila's girlfriend, Myrian Porras. She said that Davila was on the phone with her at the time of the shooting and was about a mile away.

The petition was denied without a hearing in 1998. Davila appealed, and the dismissal was upheld.

In 2000, Davila filed another post-conviction petition that included affidavits of Pedro Carmona and Samuel Matias. Carmona and Matias implicated Willis in the shooting. They said that on the same day as the crime, July 2, 1995, they were chased while driving their car.

Carmona was the driver, and Matias was in the passenger's seat. They were chased by another car, which pulled up to the right side of their car. They saw four Hispanic males flashing gang signs and yelling "King love." A bottle was thrown at Carmona's car. The second car rammed their car, and they got out of their car on Pierce Avenue.

At that point, both Carmona and Matias saw Willis, whom they knew from the neighborhood, appear and cover his head with a hoodie. Willis held a gun while yelling and started to shoot at them. Carmona and Matias got back in their car and drove off – they only found out months later that someone had died. Both stated that Davila was not present at the shooting.

This petition was dismissed in November 2000. Davila appealed and the dismissal was upheld.

On February 7, 2020, Davila was released on parole.

3/15/24, 12:34 PM
Case: 1:20-cv-04156 Document #: 339-18 Filed: 06/10/24 Page 236 of 511 PageID #:50203
Exoneration... of misregistered exonerations

In August 2022, Russell Ainsworth, an attorney with the Exoneration Project at the University of Chicago Law School, filed another petition seeking to vacate Davila's conviction.

In addition to the prior affidavits pointing to Willis as the gunman, the petition cited dozens of murder convictions that had been overturned based on misconduct by Guevara, including physically abusing suspects and witness to coerce false confessions and false identifications by witnesses.

The petition said that when Davila was first taken to the police station, Guevara came in to talk to him, and told Davila he was going to go into a lineup and that "the witnesses will point him out, and it did not matter if he did it." Davila also said that he was the only person in the line-up made to turn his back to the mirror. He was wearing a Chicago Bulls basketball team jersey, and his large Jivers tattoo on his back was visible to anyone viewing the lineup.

Davila also said that Guevara showed him two pictures before the lineup of Jivers gang members and falsely claimed that they were Davila's friends and that they had made statements against him.

The petition said that Dr. Deryn Strange, an expert in eyewitness identification, had reviewed the evidence. Dr. Strange, a professor of psychology at John Jay College of Criminal Justice, opined that there were numerous factors that called into question the reliability of the identifications by Ybarra and Velasco, including that the lighting conditions were poor, that Ybarra and Velasco were likely focused on the gun, not the face, of the gunman, and that the incident happened in a short period of time.

The petition said, "Dr. Strange concluded that she was 'confident that the factors...are evident in this case. Importantly, these factors can and do have a cumulative effect on identification performance to a reasonable degree of scientific certainty.'"

The petition noted that until Guevara began working on the case, there were no suspects and both Ybarra and Velasco said they could not identify the gunman. And neither of them said the passenger of the white Buick was the gunman until they testified at the trial.

"Suddenly, and rather miraculously, Guevara chanced upon Davila (with no reason to suspect him), and then two days later identifications were made from the photo arrays," the petition said. "The expert evidence explains just how dubious the identifications were; indeed, the shooting was an extremely chaotic and quick event that took place late at night."

"Davila's trial theory was that the victims were pinning a murder on Davila as revenge," the petition said. "He had no way to know that the lead detective on his case was the most corrupt police officer in Chicago's history. Now—with overwhelming newly presented evidence entirely discrediting the identifications and demonstrating Detective Guevara's pervasive misconduct, and supported by dispassionate scientific evidence –Davila's convictions cannot stand."

On November 15, 2022, the Cook County State's Attorney's post-conviction unit agreed that Davila's conviction should be vacated. The charges were then dismissed.

In March 2023, Davila filed a federal civil rights lawsuit against the city of Chicago and Guevara seeking compensation for his wrongful conviction. He also obtained a certificate of innocence and filed a claim for state compensation.

– *Maurice Possley*

Report an error or add more information about this case.

Posting Date: 12/19/2022
Last Updated: 12/13/2023

**ABOUT THE REGISTRY**

The National Registry of Exonerations is a project of the Newkirk Center for Science & Society at University of California Irvine, the University of Michigan Law School and Michigan State University College of Law. It was founded in 2012 in conjunction with the Center on Wrongful Convictions at Northwestern University School of Law. The Registry provides detailed information about every known exoneration in the United States since 1989—cases in which a person was wrongly convicted of a crime and later cleared of all the charges based on new evidence of innocence. The Registry also maintains a more limited database of known exonerations prior to 1989.

Support Our Work

**CONTACT US**

We welcome new information from any source about exonerations already on our list and about cases not in the Registry that might be exonerations.

Tell us about an exoneration that we may have missed

Correct an error or add information about an exoneration on our list

Other information about the Registry

Sign up for our Newsletter

Follow Us:

SPONSORED BY

AUDIOCHUCK

Exhibit S( #

Support The National Registry of Exonerations — **Donate Now**

A PROJECT OF THE UNIVERSITY OF CALIFORNIA IRVINE NEWKIRK CENTER FOR SCIENCE & SOCIETY,
UNIVERSITY OF MICHIGAN LAW SCHOOL & MICHIGAN STATE UNIVERSITY COLLEGE OF LAW



**THE NATIONAL REGISTRY
OF EXONERATIONS**

**3,488 EXONERATIONS SINCE 1989
MORE THAN 31,700 YEARS LOST**

BROWSE CASES    ISSUES    REPORTS    RESOURCES    ABOUT US    MAKE A GIFT

# GAMALIER RIVERA

Other Exonerations with Misconduct by Detective Guevara



Gamalier Rivera and his partner
(Photo: Exoneration Project)

At about 11:30 p.m. on April 22, 1996, 39-year-old Antonio Diaz, his wife, Maria, and their friend, Richardini Lopez, pulled their red Cadillac into an alley near Grand and Karlov Avenues in Chicago, Illinois, in search of cocaine. They pulled up behind a Dodge Colt containing Javier Cruz and 14-year-old Jesus Ramos.

Antonio Diaz got out of the passenger seat, leaving his wife in the back seat and Lopez behind the steering wheel. He walked toward Cruz, who had gotten out of his car to get the drugs, which were stashed nearby. At that moment, a white four-door Chevy Blazer with tinted windows drove down the alley. As it got close, a man leaned out of the passenger side, yelled "Disciple killer," and fired four or five shots from a pistol. The Blazer then sped off.

Antonio Diaz was wounded in the abdomen and right leg. Ramos, who was sitting in the Dodge Colt, was shot in the back. Diaz survived. Ramos died in surgery.

Maria Diaz admitted they were in the alley to purchase drugs and had bought them from Cruz in the past. She said she believed there were three men in the Blazer. The only description of the gunman she could provide was that he wore "dark clothing" and leaned out of the rear passenger window. She said she ducked down when the shots were fired.

Lopez, the owner of the Cadillac, also confirmed they were trying to buy drugs. He said the gunman leaned out of the front passenger window. He said the man was in his early 20s, had short hair shaved on the sides, and wore dark clothing. He said he ducked down as well when the shooting began.

Detectives talked to Cruz, who denied selling drugs. He said he and Ramos were in the Dodge Colt in the alley. When they saw Antonio and Maria Diaz walking in the alley, the Blazer drove by and shots were fired. Cruz gave no description of the gunman.

Police interviewed Antonio Diaz at the hospital. He said that Ramos was on foot, not in the Dodge Colt, when the Blazer came down the alley. Diaz gave no description of the gunman. Diaz said that immediately after the shooting, Ramos, while still conscious, said that the gunman was the same person who had fired a gun at him and Cruz in a prior incident. Police spoke with Ramos before he went into surgery, and he repeated that claim.

Ramos's brother, Miguel Gonzalez, told the police that Ramos was a member of the Spanish Cobras street gang. Gonzalez said he believed a high-ranking member of the Insane Unknowns street gang was responsible for the shooting. Another of Ramos's brothers, Santos Villa, told the police

| | |
|---|---|
| **State:** | Illinois |
| **County:** | Cook |
| **Most Serious Crime:** | Murder |
| **Additional Convictions:** | Attempted Murder, Illegal Use of a Weapon |
| **Reported Crime Date:** | 1996 |
| **Convicted:** | 1998 |
| **Exonerated:** | 2022 |
| **Sentence:** | 45 years |
| **Race/Ethnicity:** | Hispanic |
| **Sex:** | Male |
| **Age at the date of reported crime:** | 21 |
| **Contributing Factors:** | Mistaken Witness ID, Perjury or False Accusation, Official Misconduct, Inadequate Legal Defense |
| **Did DNA evidence contribute to the exoneration?:** | No |

that Ramos had a "beef" with Reinaldo "Butchie" Dejesus, a leader of the Insane Unknowns.

Gonzalez said he witnessed the earlier shooting that Ramos had spoken of before he died. Gonzalez said that Ramos and Cruz were near the same intersection—Grand and Karlov. A police report from a security officer at a nearby school confirmed that Butchie was seen near that shooting. Gonzalez also said that another Insane Unknown, 14-year-old Valerio Gomez, had been threatening Ramos. Police found reports that a juvenile previously had been arrested near Grand and Karlov on a charge of unlawful use of a weapon after Ramos told a police officer that a member of the Insane Unknowns was in a car with a gun.

On April 24, 1996, detectives Reynaldo Guevara and Ernest Halvorsen showed photographs of Insane Unknown gang members to Lopez. Although Butchie was in the photos, Lopez did not make an identification.

On June 8, 1996, a police officer handed Guevara a photograph of 21-year-old Gamalier Rivera, a member of the Insane Unknowns who had been arrested on May 6 on a charge of possession of marijuana. Guevara created a photo lineup that included Rivera's photograph and took it to Lopez's house on June 10, 1996. Guevara said Lopez identified Rivera as the gunman.

On June 17, Rivera was placed in a live lineup conducted by Guevara and Halvorsen. Lopez identified Rivera again. On June 18, Rivera was arrested and charged with the shooting.

On June 18, Guevara picked up Antonio Diaz and Javier Cruz, who were in the Cook County Jail on unrelated charges. Guevara took them to the police station where they individually viewed a live lineup. Both identified Rivera as the gunman, although Antonio said he was "not sure."

A week later, on June 27, 1996, Guevara brought Maria Diaz to the station where she viewed a live lineup and also identified Rivera as the gunman.

Prior to trial, Rivera's defense lawyer filed a motion to suppress the identifications. Guevara testified that he allowed Rivera to pick the lineup seat he wanted. Rivera testified that was false. He said that in all of the lineups, Guevara and Halvorsen ordered him where to sit and did not give him any choice. Rivera also testified that for the Maria Diaz lineup, a public defender was present, but the detectives waited until the public defender went to lunch, and then told him where to sit. When the defender returned, Rivera was in the spot where he had been ordered to sit. A photograph of that lineup taken by police had disappeared by the time of the hearing.

The defense also argued the lineups were suggestive because Rivera wore yellow shorts and a solid blue shirt in all of them, while the remainder of the men in the lineup wore blue pants and various shirts. In one lineup, one of the other men wore red sweatpants and a Chicago Bulls jersey.

The motion to suppress the identifications was denied.

In January 1998, Rivera went to trial in Cook County Circuit Court. He was charged with first-degree murder, attempted murder, and aggravated discharge of a firearm. The Cook County State's Attorney's Office sought the death penalty.

The case rested almost entirely on the four witnesses—Antonio and Maria Diaz, Lopez, and Cruz—who all identified Rivera as the gunman.

Although Rivera had identified three witnesses who were prepared to testify that he was elsewhere at the time of the shooting, the defense did not call them to testify.

During closing arguments, the prosecution told the jury the shooting was the product of a struggle for control of drug turf between the Spanish Cobras and the Insane Unknowns.

"You know what control means to the Insane Unknowns, you know what it means to Gamalier Rivera, and what control means is that he'll do anything

at all cost," the prosecutor declared. "The evidence showed you that that there was dealing of drugs by members of possible Spanish Cobras in the area [controlled] by the Insane Unknowns, and you don't do that to Gamalier Rivera, and you don't do that to his gang because that's their territory, they'll fight for it and they'll do anything to control it."

On January 28, 1998, the jury convicted Rivera of first-degree murder, attempted murder, and aggravated discharge of a firearm. The judge declined to impose the death penalty and sentenced Rivera to 45 years in prison.

In May 2000, the First District Illinois Appellate Court rejected defense arguments that the prosecution had improperly argued facts that were not in evidence by characterizing the shooting as a battle for drug turf between gangs. And the court declined to find that the lineups were suggestive. The court did order the charge of aggravated discharge of a firearm to be dismissed. The ruling did not affect Rivera's 45-year sentence.

Acting without a lawyer, River filed a post-conviction petition in 2001. It was denied without a hearing.

Rivera was released on parole in October 2019, having served more than 21 years in prison since his conviction. By that time, numerous other defendants convicted of murder based on investigations conducted by Guevara and Halvorsen had been exonerated based on evidence that the detectives physically abused defendants and witnesses to obtain false confessions or false statements implicating the defendants.

In February 2004, Juan Johnson, whose 30-year prison sentence for a murder conviction had been vacated in 2002, was acquitted at a retrial. A federal jury later awarded Johnson $21 million in damages from the city based on evidence that the original three eyewitnesses recanted their testimony and revealed that they were coerced by Guevara to identify Johnson.

Seven years later, in October 2011, Jacques Rivera was exonerated of a murder. He later filed a federal civil rights lawsuit accusing Guevara and other officers of burying evidence and pressuring the witness to falsely identify him as the triggerman. In 2018, a jury awarded Rivera $17.175 million.

In 2016, the murder convictions of Jose Montanez and Armando Serrano were vacated and the charges were dismissed. Both had been convicted on false testimony that had been coerced by Guevara.

In April 2017, Robert Almodovar and William Negron were exonerated after evidence showed that Guevara had improperly influenced witnesses to identify them as the shooter and driver in a drive-by shooting that killed two people and wounded a third.

In November 2017, Jose Maysonet became the seventh person to be exonerated based on misconduct by Guevara. Maysonet, who was serving a sentence of life in prison without parole, falsely confessed after a 17-hour interrogation punctuated by beatings and torture by Guevara.

In December 2017, Gabriel Solache and Arturo Deleon-Reyes, who claimed that Guevara had beaten them into confessing to a murder they didn't commit, had their murder convictions vacated and the charges dismissed.

In August 2020, Joshua Tepfer and Anand Swaminathan, attorneys from the Exoneration Project at the University of Chicago Law School, filed a successive petition for post-conviction relief on behalf of Rivera. The 42-page pleading outlined dozens of cases involving misconduct by Guevara and Halvorsen.

"The evidence supporting this murder conviction begins and ends with the testimony of victim eyewitnesses who only had a chance to view the shooter for mere seconds late at night, in a dark alleyway, while the perpetrator was shooting at them from a moving car with tinted windows," the petition said.

"And the witnesses stated the obvious—they ducked immediately when they heard the shots, undermining their ability to view and identify the shooter."

Despite "minimal and inconsistent descriptions, in a troubling but familiar pattern, now-disgraced Detective Reynaldo Guevara stepped into the investigation and suddenly 'solved' the case, obtaining lineup identifications of Gamalier Rivera from these same eyewitness victims two months after the shooting," the petition said. "Their identifications were of a stranger they had never met."

The petition cited expert testimony from an eyewitness identification expert, Dr. Nancy Franklin that, given the conditions at the time and the witnesses's reactions, their identifications were "unreliable and were at high risk of being erroneous."

The petition said, "Given the overwhelming evidence of Detective Guevara's pattern of rigging lineups, coercing eyewitness identifications, and blatant lying and perjury, this conviction cannot stand."

In July, 2022, the Cook County State's Attorney's Office agreed to dismiss murder convictions of Jose Cruz, Eruby Abrego, and Jeremiah Cain. On July 14, 2022, following a contentious hearing, Cook County Circuit Court Judge Joanne Rosado vacated the convictions of brothers Juan and Rosendo Hernandez. She called Guevara a "lying, scheming person." On July 21, the prosecution dismissed those cases as well.

By that time, others exonerated based on misconduct by Guevara included Thomas Sierra, Ariel Gomez, Ricardo Rodriguez, Robert Bouto, Geraldo Iglesias, Demetrius Johnson Reynaldo Munoz, and Daniel Rodriguez.

On August 9, 2022, the State's Attorney's Office dismissed the convictions of six more men and one woman who had been victimized by Guevara.

On August 16, 2022, Cook County Circuit Court Judge Vincent Gaughan granted a motion by the prosecution to vacate Rivera's convictions and to dismiss the case. Rivera was the 31st person whose conviction was dismissed based on Guevara's misconduct.

In March 2023, Rivera filed a federal civil rights lawsuit against the city of Chicago and Guevara seeking compensation for his wrongful conviction. He also obtained a certificate of innocence and filed a claim for state compensation.

– *Maurice Possley*

Report an error or add more information about this case.

Posting Date: 9/6/2022
Last Updated: 12/13/2023

Case: 1:20-cv-04156 Document #: 339-18 Filed: 06/10/24 Page 243 of 511 PageID #:50210

**ABOUT THE REGISTRY**

The National Registry of Exonerations is a project of the Newkirk Center for Science & Society at University of California Irvine, the University of Michigan Law School and Michigan State University College of Law. It was founded in 2012 in conjunction with the Center on Wrongful Convictions at Northwestern University School of Law. The Registry provides detailed information about every known exoneration in the United States since 1989—cases in which a person was wrongly convicted of a crime and later cleared of all the charges based on new evidence of innocence. The Registry also maintains a more limited database of known exonerations prior to 1989.

Support Our Work

**CONTACT US**

We welcome new information from any source about exonerations already on our list and about cases not in the Registry that might be exonerations.

Tell us about an exoneration that we may have missed

Correct an error or add information about an exoneration on our list

Other information about the Registry

Sign up for our Newsletter

Follow Us:

**SPONSORED BY**



AUDIOCHUCK

Exhibit S( S

Support The National Registry of Exonerations — **Donate Now**

A PROJECT OF THE UNIVERSITY OF CALIFORNIA IRVINE NEWKIRK CENTER FOR SCIENCE & SOCIETY,
UNIVERSITY OF MICHIGAN LAW SCHOOL & MICHIGAN STATE UNIVERSITY COLLEGE OF LAW



**THE NATIONAL REGISTRY OF EXONERATIONS**

**3,488 EXONERATIONS SINCE 1989**
**MORE THAN 31,700 YEARS LOST**

BROWSE CASES     ISSUES     REPORTS     RESOURCES     ABOUT US          MAKE A GIFT

# LOUIS ROBINSON

Other Exonerations with Misconduct by Detective Guevara



Louis Robinson was greeted by his daughters, Louisha (left) and Zapria (Photo: The Exoneration Project)

On the night of June 20, 1996, 17-year-old Kelly Velez drove with a friend from her home in Schaumburg, Illinois, to see her boyfriend, Oscar Betancourt, with whom she had gone to the prom just weeks earlier at Hoffman Estates High School northwest of Chicago. At 11:20 p.m., as they chatted outside their cars at a gas station at 3057 North Kedzie Avenue, a maroon car drove by and the driver fired several shots.

Velez was struck twice and died.

| | |
|---|---|
| State: | Illinois |
| County: | Cook |
| Most Serious Crime: | Murder |
| Additional Convictions: | Illegal Use of a Weapon |
| Reported Crime Date: | 1996 |
| Convicted: | 1997 |
| Exonerated: | 2023 |
| Sentence: | 60 years |
| Race/Ethnicity: | Black |
| Sex: | Male |
| Age at the date of reported crime: | 28 |
| Contributing Factors: | Perjury or False Accusation, Official Misconduct |
| Did DNA evidence contribute to the exoneration?: | No |

Betancourt, who was a member of the Maniac Latin Disciples street gang, told police that the shooter was a male in his early twenties, who was a dark-skinned Black Hispanic. He said there might have been two others in the car.

Francisco Rocha, who lived on the second floor of a building at 3045 North Kedzie Avenue, told the police he heard gunshots and looked out his front window. He said he saw the driver's arm being pulled back into the car. He said the driver was a white male with a dark complexion or a light-skinned Black male with a thin build. He said the driver was wearing a dark-colored athletic t-shirt. The second person was a white male, Rocha said.

The initial police report said there were three male suspects, one described as a white Hispanic. The other two were not described. A supplementary report written up the day after the shooting expanded the descriptions to a white male Hispanic in his early twenties and a white Hispanic male. This report was based on Rocha's descriptions. At the time, Rocha did not mention any distinctive jewelry worn by the driver.

A friend of Velez's who had accompanied her to the gas station was sitting in Velez's car at the time of the shooting. She did not see who fired the shots. Three of Betancourt's fellow gang members who had accompanied him to the station said they did not see the shooter.

The shooting of Velez was among a number of drive-by shootings during that summer in Chicago. The same night that Velez was shot, another shooting in a different area but in the same general neighborhood wounded Rogelio Barnes.

The lead detectives, Reynaldo Guevara and Ernest Halvorsen, believed that the shootings were the result of internal conflicts between two factions of the Latin Maniac Disciples—the Talman-Wabansia faction and the Kedzie-Barry faction, so called because of the streets demarking their territories. Although most of the gang members in these factions were Hispanic, police knew that some members of the Talman-Wabansia faction were Black. One of those was 28-year-old Louis Robinson, who was known as an "enforcer." Police focused on Robinson after learning that Barnes was Robinson's cousin and suspected that the shooting at Betancourt, who was in the Kedzie-Barry faction, was in retaliation for the shooting of Barnes.

On June 25, 1996, Betancourt came to the police station to view a photographic lineup that included a photograph of Robinson, who was a dark-skinned Black man with a stock build. Police would later testify that Betancourt identified Robinson in the photographic lineup at about 8 p.m. and then, shortly after midnight, he identified Robinson in a live lineup.

On June 26, Robinson was charged with murder and aggravated discharge of a firearm.

He went to trial in August 1997 and chose to have the case decided by Cook County Circuit Court Judge Mary Ellen Coghlan without a jury.

Betancourt testified and identified Robinson as the gunman. Rocha testified that although he was unable to identify Robinson as the driver, he saw that the driver had a gold medallion around his neck.

Officer Asvaldo Valdez testified that when he arrested Robinson to bring him in for the live lineup, Robinson was wearing a gold medallion and gold jewelry.

The defense and prosecution presented a joint stipulation, which said that at 3 a.m., Robinson was with Guevara at the station and gave a statement. Robinson said he was with his cousin, Barnes, when Barnes was shot. He said he went to his grandmother's house where he met Barnes's father. Together they went to St. Elizabeth's hospital to visit Barnes. Robinson said that after the visit, he went to his girlfriend's house where he spent the night.

Officer Kristine Carabello testified that she was assigned to investigate the shooting of Barnes. At the time, she did not know the identity of the person who had been wounded. She said she went to different hospitals looking for the victim. Carabello said she encountered Robinson at St. Mary's Hospital, and he said, "My cousin is not here." Carabello said that Robinson was wearing a medallion in the shape of a machine gun. Carabello said that after confirming that Barnes was not there, she went to St. Elizabeth's hospital. There, she learned that Rogelio Barnes was being treated for a gunshot wound.

While she was interviewing Barnes, Carabello said she heard over her police radio of the shooting on Kedzie Avenue that killed Velez. Carabello said that she did not see Robinson at St. Elizabeth's. She also testified that when she saw Robinson after he was arrested, he was wearing the same gold medallion he had been wearing when she saw him at St. Mary's.

On August 26, 1997, Judge Coghlan convicted Robinson of first-degree murder and aggravated discharge of a firearm. She said that Betancourt was the "linchpin" of the prosecution's case. She said that the other prosecution witnesses created "the fabric around which Mr. Betancourt's testimony could sit."

Judge Coghlan sentenced Robinson to 60 years in prison.

In October 2000, the First District Illinois Appellate Court affirmed the conviction and sentence.

In October 2019, while his direct appeal was pending, Robinson, acting without a lawyer, filed a post-conviction petition. In the petition, Robinson claimed that Betancourt had been coerced to falsely identify him as the gunman. He said that when it was his turn to stand up during the live lineup, he heard Detective Guevara ask, "Is that him?"

Robinson said he heard a voice say in response, "That's not him."

He then heard detectives—he couldn't say who—say: "If you don't say that's him, we'll give you the murder because we think they was {sic} trying to kill you. So far as we're concerned, you're the reason why your girlfriend is dead."

Robinson said in the petition that he spoke up at that point, saying, "Please don't do that."

Shortly thereafter, an officer came into the lineup room and told Robinson he was under arrest.

In the petition, Robinson said he told his trial defense attorney about this, but the defense lawyer did not investigate the claim because he didn't believe Robinson's story.

The petition also noted that Robinson had no other evidence to back his claim until he learned about news accounts detailing "a litany of articles" that substantiated his claim that "Guevara was fully capable of doing what his [trial] defense attorney did not believe."

Robinson said in the petition that he believed Guevara and Halvorsen had targeted him because he had had several run-ins with the officers in the past.

On January 17, 2020, Judge Domenica Stephenson, who was overseeing the case, dismissed the petition without a hearing, ruling that the claims were frivolous or without merit. The judge said that the claims of police misconduct were "lacking independent or objective corroboration."

Robinson appealed. On January 21, 2022, the First District Illinois Appellate Court reversed the dismissal and remanded the case back to Judge Stephenson for an evidentiary hearing.

The court noted that the prosecution conceded that Guevara had an extensive history of misconduct, including influencing witnesses to obtain false identifications. The court cited a decision in another case which described Guevara as "a malignant blight on the Chicago Police Department and the judicial system."

"Rather, the state maintains that [Robinson's] petition should be summarily dismissed because the newly discovered evidence of Detective Guevara's misconduct is not arguably material or so conclusive as to change the result on retrial," the court said. "We disagree."

"Certainly, evidence that Betancourt's identification was coerced by a detective with a history of coercing witnesses to obtain convictions would be arguably relevant and probative of the defendant's innocence," the court ruled.

In August 2022, the prosecution filed an answer to the petition saying it would not oppose the claims related to Guevara's misconduct. Moreover, the prosecution said that if the petition was granted, it would dismiss the charges.

On August 9, 2022, when the petition came up in court, Robinson's attorney, Joshua Tepfer, from the Exoneration Project at the University of Chicago Law School, requested that the petition be granted. Judge Stephenson asked for arguments to be made in writing.

Tepfer filed a 99-page motion, including exhibits, the following day. "The State has now conceded the facts...relief is therefore proper," Tepfer declared.

Stephen refused to grant the motion despite the prosecution's concession and ordered that a hearing be held.

On September 12, 2022, Tepfer filed an amended post-conviction petition. The petition asserted that:

—Rocha had recanted his trial testimony. In an affidavit dated September 2, 2022, Rocha said, "It was dark and the car was moving, so I had very little time to see anything...I did not see the face of anyone in the car, and so I could not identify someone. I did not make out any distinct features or jewelry [sic]. It was too dark and the car had already passed my window."

—Guevara and Halvorsen filed a false report saying that Robinson had denied going to St. Mary's or meeting with officer Carabello. "This was a lie."

—Guevara targeted Robinson because Robinson had refused a demand by

Guevara to falsely implicate another man in an unrelated crime.

—Robinson did not own or have access to a maroon car. "[P]olice officers immediately identified a red Toyota Camry that they believed may have been used in the crime and that was registered to Jose Castillo." At the time, Rocha had told police that the Toyota "looked like the car." However, there were no indications in the police records that this lead was ever followed.

The petition also laid out Guevara's "well-documented history of influencing and manipulating witnesses." By 2023, dozens of murder convictions had been vacated and the charges dismissed based on misconduct by Guevara, some with Halvorsen as his partner.

Tepfer also filed a report by Dr. Caren Rotello, an eyewitness identification expert. Rotello had reviewed the transcript of the trial and the police reports and declared that in light of the factors undermining both eyewitnesses' opportunity to observe the perpetrator, the inconsistency between the witnesses' initial descriptions and the suspect Betancourt identified, combined with the repeated identification procedures, she concluded that "Mr. Betancourt's identification of Mr. Robinson was unreliable."

In November 2022, Betancourt provided a sworn affidavit saying that if he were called to testify about his identification testimony and the lineup procedures, he would assert his Fifth Amendment protection against self-incrimination.

Ultimately, on March 22, 2023, a hearing was held, and Tepfer and attorney Anand Swaminathan of the law firm of Loevy & Loevy presented the evidence outlined in the post-conviction petition.

On August 10, 2023, Judge Stephenson granted the petition and vacated Robinson's convictions. The prosecution then dismissed the charges and Robinson was released nearly 26 years after his conviction in 1997.

– *Maurice Possley*

Report an error or add more information about this case.

Posting Date: 8/25/2023
Last Updated: 8/25/2023

Case: 1:20-cv-04156 Document #: 339-18 Filed: 06/10/24 Page 249 of 511 PageID #:50216

**ABOUT THE REGISTRY**

The National Registry of Exonerations is a project of the Newkirk Center for Science & Society at University of California Irvine, the University of Michigan Law School and Michigan State University College of Law. It was founded in 2012 in conjunction with the Center on Wrongful Convictions at Northwestern University School of Law. The Registry provides detailed information about every known exoneration in the United States since 1989—cases in which a person was wrongly convicted of a crime and later cleared of all the charges based on new evidence of innocence. The Registry also maintains a more limited database of known exonerations prior to 1989.

Support Our Work

**CONTACT US**

We welcome new information from any source about exonerations already on our list and about cases not in the Registry that might be exonerations.

Tell us about an exoneration that we may have missed

Correct an error or add information about an exoneration on our list

Other information about the Registry

Sign up for our Newsletter

Follow Us:

SPONSORED BY

AUDIOCHUCK

Exhibit S(%

Order Granting Certificate of Innocence                                    (12/01/20) CCCR 0709

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS

v.                                                        No.: 97 CR 21329(01)

_Juan Hernandez_
                        Defendant/Petitioner

## ORDER GRANTING CERTIFICATE OF INNOCENCE

This cause comes before the Court on the Defendant/Petitioner's Petition for Certificate of Innocence pursuant to 735 ILCS 5/2-702. The Court being fully advised finds by a preponderance of evidence that:

1. ☑ The Defendant/Petitioner was convicted of one or more than one felony by the State of Illinois in the County of Cook and was subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;

2. ☑ The Defendant/Petitioner's judgment or conviction was reversed or vacated and the indictment or information dismissed or, ☐ a new trial was ordered and either s/he was found not guilty at the new trial or s/he was not retried and the indictment or information is dismissed; or ☐ the statute, or application thereof, on which the indictment or information was based violated the Constitution of the United States or the State of Illinois;

3. ☑ The Defendant/Petitioner's indictment or information was dismissed or s/he was acquitted and a Petition was filed within 2 years of the dismissal of the indictment or information or acquittal;

4. ☑ The Defendant/Petitioner is innocent of the offenses charged in the indictment or information or ☐ Defendant/Petitioner's acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State;

5. ☑ The Defendant/Petitioner did not by his/her own conduct voluntarily cause or bring about his/her conviction.

IT IS THERFORE ORDERED as follows:

1. That the Petition for a Certificate of Innocence is GRANTED.

2. That the Clerk of the Circuit Court shall transmit a copy of the Certificate of Innocence to the Clerk of the Court of Claims, together with the Defendant/Petitioner's current address as indicated on the Petition.

3. Sentencing/custody information at Ex. E of Petition

ENTERED:

Dated: _31 May_, _20___  ___ENTERED___ _____ _208_
                                        Judge                            Judge's No.

ENTERED
MAY 31 2023
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Guevara-L 027100

Exhibit 56

Order Granting Certificate of Innocence          (12/01/20) CCCR 0709

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS

v.

No.: 97 CR 21329(02)

Rosendo Hacnandez aka Hernandez

Defendant/Petitioner

## ORDER GRANTING CERTIFICATE OF INNOCENCE

This cause comes before the Court on the Defendant/Petitioner's Petition for Certificate of Innocence pursuant to 735 ILCS 5/2-702. The Court being fully advised finds by a preponderance of evidence that:

1. ☑ The Defendant/Petitioner was convicted of one or more than one felony by the State of Illinois in the County of Cook and was subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;

2. ☑ The Defendant/Petitioner's judgment or conviction was reversed or vacated and the indictment or information dismissed or, ☐ a new trial was ordered and either s/he was found not guilty at the new trial or s/he was not retried and the indictment or information is dismissed; or ☐ the statute, or application thereof, on which the indictment or information was based violated the Constitution of the United States or the State of Illinois;

3. ☑ The Defendant/Petitioner's indictment or information was dismissed or s/he was acquitted and a Petition was filed within 2 years of the dismissal of the indictment or information or acquittal;

4. ☑ The Defendant/Petitioner is innocent of the offenses charged in the indictment or information or ☐ Defendant/Petitioner's acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State;

5. ☑ The Defendant/Petitioner did not by his/her own conduct voluntarily cause or bring about his/her conviction.

IT IS THERFORE ORDERED as follows:

1. That the Petition for a Certificate of Innocence is GRANTED;

2. That the Clerk of the Circuit Court shall transmit a copy of the Certificate of Innocence to the Clerk of the Court of Claims, together with the Defendant/Petitioner's current address as indicated on the Petition.

3. Sentencing/custody information at Ex. F of Petition.

ENTERED:

Dated: 31 May , 2023      Judge       Judge's No.

ENTERED

MAY 31 2023

IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT

IRIS Y. MARTINEZ, CLERK OF THE COURT OF COOK COUNTY, ILLINOIS

Guevara-L 020799

Exhibit S( '

Case: 1:20-cv-04156 Document #: 339-18 Filed: 06/10/84 Page 255 of 511 PageID #:50222

Support The National Registry of Exonerations — **Donate Now**

A PROJECT OF THE UNIVERSITY OF CALIFORNIA IRVINE NEWKIRK CENTER FOR SCIENCE & SOCIETY,
UNIVERSITY OF MICHIGAN LAW SCHOOL & MICHIGAN STATE UNIVERSITY COLLEGE OF LAW



THE NATIONAL REGISTRY
OF EXONERATIONS

**3,488 EXONERATIONS SINCE 1989
MORE THAN 31,700 YEARS LOST**

BROWSE CASES    ISSUES    REPORTS    RESOURCES    ABOUT US    MAKE A GIFT

# JOHN MARTINEZ

Other Exonerations with Misconduct by Detective Guevara



John Martinez with children and grandchildren (Photo:Exoneration Project)

On October 11, 1998, Manuel Rodriguez drove 24-year-old Daniel Garcia to an alley near West Armitage Avenue and North Whipple Street in Chicago, Illinois to buy narcotics. Garcia got out of the car and walked into the alley. Not long after, Garcia came running out and jumped into the car, saying, "Step on it!" As they sped away, Garcia was holding a bag of cocaine.

At about 1:30 a.m. on October 12 , Garcia returned to the area near Whipple and Armitage with Jesus Fuentes and Esteban Rodriguez (Manuel Rodriguez's brother). They had been drinking since about 10 p.m. Fuentes was driving a van, and they dropped Garcia off close to the same alley and waited. About 15 minutes later, Fuentes drove the van around the block looking for Garcia.

After circling the block a second time, Fuentes pulled into the alley. There he saw a group of five or six men further down the alley who looked like they were pushing or shoving each other. Fuentes later said he was able to see some of the young men's faces. Rodriguez also saw the group of young men.

After their third drive around the block, Rodriguez and Fuentes went down the alley where they had seen the group of men. They saw Garcia lying in a parking lot at the edge of the alley, beaten and covered in blood, in the same spot where Fuentes and Rodriguez had seen the group of men. Garcia was unconscious. Rodriguez tried to lift Garcia into the van, but he was too heavy. Fuentes and Rodriguez flagged down a police car, but were unable to communicate with the officers because Fuentes and Rodriguez only spoke Spanish, and the officers could not understand them.

Rodriguez and Fuentes then went to tell Garcia's family what had happened. Garcia was eventually taken to the hospital, where he was treated but was in critical condition.

On October 16, Esteban told a Chicago police detective that he "saw no one on the street" prior to discovering Garcia on the ground.

On December 10, 1998, Garcia died of his injuries, and the case was reclassified as a homicide. Detective Reynaldo Guevara was assigned to the case. That same day, Guevara would later claim, he re-interviewed Esteban and also interviewed Fuentes at Esteban's home. Esteban would later claim the interview never took place, and Fuentes would later assert that he and Esteban were elsewhere on that day. According to Guevara, both men said they "heard some voices" in the alley.

On December 28, 1998, Guevara reported that he was at a police station interviewing Margarita Casiano, who was a witness to an unrelated shooting. Casiano, a self-described daily drug user, told Guevara that sometime in

| | |
|---|---|
| State: | Illinois |
| County: | Cook |
| Most Serious Crime: | Murder |
| Additional Convictions: | |
| Reported Crime Date: | 1998 |
| Convicted: | 2001 |
| Exonerated: | 2023 |
| Sentence: | 25 years |
| Race/Ethnicity: | Hispanic |
| Sex: | Male |
| Age at the date of reported crime: | 18 |
| Contributing Factors: | False Confession, Perjury or False Accusation, Official Misconduct |
| Did DNA evidence contribute to the exoneration?: | No |

October 1998, she went to buy drugs in the alley at Whipple and Armitage and saw the beating. She said she saw some members of the Latin Kings street gang who were "laughing and giggling about some Mexican dude they had beaten up and left in the alley."

Casiano said she knew them as Toy, Johnny, Rabbit, and Snoopy. She identified a photograph of 19-year-old Jose Tinajero as Toy. On January 24, 1999, Casiano was shown more photos and identified Johnny as 18-year-old John Martinez, Rabbit as Angel Serrano, and 17-year-old Thomas Kelly as Snoopy.

That same day, Guevara went to interview Mellony Parker, who lived in a third-floor apartment on Whipple near Armitage. Guevara had concluded that Parker had made a 911 call at 1:55 a.m. about a fight in the alley. She later testified that she looked out of her living room window, which had a tree in front of it, and saw a Hispanic man walk into the alley and approach a group of men. She said she heard one of the group say, "Where's my money?" and then saw that person punch the Hispanic man. She said a brawl ensued, and the Hispanic man was beaten and left on the ground. According to Guevara's report of the interview, Parker said she "recognized" the person who yelled about the money as a local "gang banger" who drove a gray car. She did not identify him by name.

Guevara reported that he showed Parker a photographic lineup, and she identified Tinajero as the person who demanded money and initiated the brawl. Two weeks later, on February 6, 1999, Guevara visited Parker's apartment with additional photographs, but Parker said she would not make any more identifications. Two days later, on February 8, 1999, at 9:15 p.m., Guevara conducted a lineup at the police station, and Parker was there. She identified Tinajero and Martinez as two of those involved in the beating. Kelly and Serrano were in the lineup, but she did not identify them.

Two hours later, Parker signed a handwritten statement written by a prosecutor. In the statement, Parker said she saw Tinajero holding a chair and chasing a van down the alley. She said she hit the van with the chair. Seconds later, another van approached, and Tinajero hit that van as well. She said she remembered Martinez punching Garcia, but not how many times. The statement said that after the beating stopped, Tinajero returned twice to resume beating him. Finally, she said Tinajero just "pushed or prod[ded]" Garcia with his foot and then drove off in his gray car.

At 5 a.m. on February 7, two detectives arrested Tinajero. He denied any knowledge of the beating. That evening, police arrested Martinez, Kelly, and Serrano. Guevara interviewed them. None made any admissions.

The next day, at 3 p.m., Guevara came on duty, and almost immediately, Guevara later said, Tinajero not only admitted his involvement, but also implicated Martinez, Kelly, and Serrano in the beating. In a statement transcribed by a court reporter, Tinajero claimed he punched Garcia, stole his wallet, and left, but could see Martinez, Kelly, and Serrano beating on him.

Guevara also interviewed Esteban on February 8, 1999. Guevara reported that Esteban admitted he "forgot" to tell the detectives everything that he knew. Guevara said Esteban told him that after discovering Garcia's body, he saw four Hispanic men at the mouth of the alley. The men started throwing bottles at the van and told them to leave Garcia alone. When the men began running toward them, Esteban and Fuentes left. Esteban would later say he didn't recall saying anything of the kind to Guevara and that this second interview did not take place either.

Guevara brought Esteban to the police station to view a live lineup. According to the lineup report, Esteban identified Martinez, Tinajero, and Kelly as among those who were beating Garcia. Esteban did not identify Serrano. Prior to this time, Esteban had never said he saw anyone beating Garcia.

Guevara told Martinez and Kelly that they had been identified by witnesses, but neither would admit involvement.

However, at 6:45 a.m. on February 9, Martinez signed a handwritten statement claiming he heard a commotion and went to the alley where he saw Garcia on the ground. Tinajero, Serrano, and Kelly were standing around him. In the statement, Martinez said he gave Garcia two kicks in the side and then used his foot to roll Garcia onto his back, before driving away.

More than 12 hours later, Guevara re-interrogated Kelly. At 8:40 p.m., more than 48 hours after he was arrested, Kelly signed a handwritten statement saying he saw Tinajero punch Garcia and then joined in the beating. According to the statement, Kelly drove away when he heard police sirens. Despite the statements, Serrano was released and never charged.

Two weeks later, on February 23, 1999, Fuentes viewed a lineup conducted by Guevara. Fuentes, Guevara reported, also identified Martinez, Tinajero, and Kelly.

On March 5, based on the testimony of Guevara, a Cook County grand jury indicted Martinez, Kelly, and Tinajero on charges of first-degree murder and robbery.

Prior to trial, Tinajero's defense lawyer filed a motion seeking to suppress his statement. During a hearing on the motion, Tinajero recanted his statement. He said he agreed to the false statement after Guevara told him, "[Y]ou had better tell me a story when I come back in 10 minutes, or I am going to charge you with first-degree murder." Tinajero said he gave the statement to avoid being charged with murder and because Guevara caused him to believe he would go home after he gave the statement. The motion to suppress was denied.

In August 2001, Martinez, Kelly, and Tinajero went to trial together in Cook County Circuit Court before Judge Marcus Salone. Tinajero chose to have his case decided by a jury, while Martinez and Kelly chose to have their case decided by Salone.

Esteban and Fuentes testified to an entirely different version—a version not detailed in any police reports or recounted by any police officers. They testified that when they were driving around looking for Garcia, they saw five or six men in the alley shoving each other in a playful manner. Garcia was not among them. Esteban and Fuentes said they had never seen these men before. Esteban said he saw them for only about 10 seconds, and he was too far away to see if they had facial hair or describe their haircuts. He said he was not able to see anything very well. Fuentes said he only saw them for "just a moment. It was seconds." He also said he could not identify them. Fuentes and Esteban said their lineup identifications were only of the individuals they saw play fighting while they were looking for Garcia. They denied anyone threw bottles at the van, and neither testified—contrary to Guevara's reports—that they saw anyone beat Garcia.

Casiano's testimony was shaky. She said the crime occurred either on October 13 or October 14, not October 12. She said that when she heard the gang members laughing about the beating of the "Mexican dude," she also heard them say that the "Mexican had ripped off the girl for rocks the night before." She identified Martinez, Kelly, and Tinajero as among the gang members. Esteban identified Martinez, Kelly, and Tinajero as three of the people he saw on the night of October 12, 1998. She said Martinez was one of those pushing and kicking Garcia.

Parker testified that she did not see any of the faces of those who were beating Garcia. She identified Martinez being present prior to the brawl erupting. She also said that she had not identified anyone at her apartment as Guevara had reported. Her testimony was confusing. She said Tinajero and Martinez looked alike and then said photos of them were actually of Kelly. Eventually, she identified Kelly, but not Tinajero, as being involved. At one point, when shown a photograph of Martinez, she said she never saw him in the alley.

Guevara testified and contradicted Parker's testimony. He said that she had initially declined to look at photos, but eventually identified Tinajero while looking at photos in her apartment.

The prosecution was allowed to introduce the handwritten statement that Parker had given after the lineup.

Martinez testified that he was the person that Parker had said she saw go over to look at the victim on the ground. He testified that he was near the alley, speaking to a girl when he heard noises and went to investigate. He said that when he got there, Garcia was lying face down, and Tinajero was walking away. Martinez said he walked up and nudged Garcia with his foot in an attempt to see his face. He said Garcia was having difficulty breathing, and he left.

Martinez denied assaulting Garcia or giving him a hard kick. He said the only person he saw in the alley was Tinajero.

Martinez said that during the two days he was in custody, every time he tried to sleep, detectives came in and woke him up. After two nights, during which he only ate some chips and drank water from the tap when he went to the bathroom, Detective Randy Troche told him that a prosecutor was going to come in and that all Martinez had to do was sign some papers, and he would be released.

Martinez said Troche told him since he just "nudged him with your foot" and "didn't kill anyone," Martinez would be used as a witness against Tinajero. Martinez said he signed the statement without reading it.

The defense and prosecution stipulated that Detective Troche, if called to testify, would deny that he ever told Martinez he would only be a witness, and would testify that Martinez slept the entire night while in custody.

On August 7, 2001, the jury convicted Tinajero of first-degree murder and robbery. Judge Salone convicted Martinez and Kelly of first-degree murder and acquitted them of robbery. The judge said his verdicts were "based primarily on what I believe to be the clear, credible and convincing testimony of Miss Parker."

Judge Salone acknowledged Parker's testimony was at times equivocal, but he gave credence to her statement to Guevara and noted she had named Kelly as a participant—although the report did not state that at all.

Prior to sentencing, John Byrne, a defense investigator, interviewed Parker, who said Guevara had used an outstanding arrest warrant against her to pressure her to make identifications. Parker testified at a hearing on a motion for a new trial that when Guevara first came to her, he told her she had an outstanding warrant for possession of stolen property. She said she had not been aware of its existence. He took her to the police station where he told her the warrant would be quashed if she would help in the investigation of Garcia's death. She said she had not seen the victim but signed a photograph of Garcia because Guevara told her it was a photo of the victim. Parker denied that Guevara threatened her and told her to make identifications of the defendants.

Martinez's trial lawyer argued that Parker had "fudged" her identification of Martinez because she was promised help with the warrant. Judge Salone denied the motion for a new trial. Martinez and Kelly were sentenced to 25 years in prison. Tinajero was sentenced to 30 years in prison.

All of their convictions were upheld on appeal.

In October 2014, the Exoneration Project at the University of Chicago Law School began representing Martinez and subpoenaed records in the case from the Chicago police department. In June 2016, attorneys Joshua Tepfer and David Owens filed an amended petition for post-conviction relief.

The petition cited a lengthy list of murder cases that had been vacated and dismissed based on findings of misconduct by Guevara. The allegations of misconduct against Guevara involved physical abuse of suspects and witnesses that resulted in false confessions and false witness identifications.

In November 2016, Martinez's lawyers filed a supplement to the petition.

Jim Saltouros, a former assistant public defender whom Guevara listed as "present" for the lineup "in this case," said in an affidavit that, in fact, Guevara had refused to allow him to be present.

The supplement also said that during a subsequent interview, Parker said that she believed Guevara was going to arrest her on the outstanding warrant unless she cooperated. Prior to the lineup, Guevara told her that "the people who did [the] beating were in the lineup," Parker said. She recalled that he told her that he knew that was true because "they had searched their apartments and found bloody boots that [had been] used to stomp the victim."

Parker said she picked people she had seen in the alley that night although she had not seen faces of those involved in the beating.

The supplement also included an opinion from Dr. Geoffrey Loftus, an expert in the frailties of eyewitness identification. He said that there were numerous factors which weighed against Parker's ability to accurately identify anyone that night. These included that she was far away from the alley—at least 65 feet, a tree obstructed her view, it was at night and the lighting was poor. In addition, Loftus said that "her attention was likely not on the assailants' appearance, and she was of a different race [Parker was Black] from the assailants."

Dr. Loftus also criticized the live lineups that Guevara conducted—12 people were assembled, and all three of the defendants were included. The petition noted that "this bizarre method" increased the chances of a false identification.

The prosecution filed a motion to dismiss, contending that the "litany of misconduct" by Guevara was not relevant to the Martinez case. The motion was granted, and the defense petition was denied. Martinez appealed.

In June 2021, the First District Illinois Appellate Court reversed the denial and ordered a hearing on the petition for post-conviction relief. The court eviscerated the prosecution's claims, including the claim that Parker's statements did not constitute newly discovered evidence. "We find this contention to be entirely disingenuous," the court said.

"Contrary to the State's assertion and the trial court's finding, the defendant's petition clearly presented evidence that Detective Guevara engaged in misconduct in this case," the court declared. The court said Martinez had made a "substantial showing of actual innocence."

The court also said that Martinez's lawyers had made a "substantial showing that Detective Guevara's misconduct violated [Martinez's] right to due process."

On January 17, 2023, Martinez's conviction was vacated. On February 9, 2023, the prosecution dismissed the case, and Martinez was released, more than 20 years after his conviction. Kelly and Tinajero remained in prison.

In March 2023, Martinez filed a federal civil rights lawsuit against the city of Chicago and Guevara seeking compensation for his wrongful conviction.

In July 2023, attorney Joel Flaxman filed a post-conviction petition on behalf of Tinajero based on Guevara's misconduct.

In November 2023, Gregory Swygert, an attorney at the Center on Wrongful Convictions at Northwestern University, along with law students Chelsea Blake and Zachary Furlin, filed a post-conviction petition on behalf of Kelly seeking to vacate his conviction based on Guevara's misconduct.

On January 17, 2024, Kelly was released on parole.

On January 31, ,2024, the Cook County State's Attorney's Office agreed that Kelly's and Tinajero's convictions should be vacated. After the convictions were vacated, the prosecution dismissed the charges in both cases. Tinajero was ordered released.

Case: 1:20-cv-04156 Document #: 339-18 Filed: 06/10/24 Page 260 of 511 PageID #:50227

After the hearing, Kelly declared, "Justice prevailed. It's been a long road for me. It's been 25 years in prison for this case I had nothing to do with."

– *Maurice Possley*

Report an error or add more information about this case.

Posting Date: 3/3/2023
Last Updated: 3/23/2023

**ABOUT THE REGISTRY**

The National Registry of Exonerations is a project of the Newkirk Center for Science & Society at University of California Irvine, the University of Michigan Law School and Michigan State University College of Law. It was founded in 2012 in conjunction with the Center on Wrongful Convictions at Northwestern University School of Law. The Registry provides detailed information about every known exoneration in the United States since 1989—cases in which a person was wrongly convicted of a crime and later cleared of all the charges based on new evidence of innocence. The Registry also maintains a more limited database of known exonerations prior to 1989.

Support Our Work

**CONTACT US**

We welcome new information from any source about exonerations already on our list and about cases not in the Registry that might be exonerations.

Tell us about an exoneration that we may have missed

Correct an error or add information about an exoneration on our list

Other information about the Registry

Sign up for our Newsletter

Follow Us:

SPONSORED BY

AUDIOCHUCK

Exhibit 88



Peter J. Birnbaum
Chief Justice

STATE OF ILLINOIS

# COURT OF CLAIMS

630 SOUTH COLLEGE
SPRINGFIELD, ILLINOIS 62756

217/782-7101

Alexi Giannoulias
Secretary of State
and Ex Officio Clerk
of The Court of Claims

Erica L. Katava
Deputy Clerk

OCTOBER 13, 2023


EXONERATION PROJECT
ATTN: JOSHUA TEPFER
311 N ABERDEEN ST 3RD FLR
CHICAGO   IL   60607-0000

RE: 23CC1992 - GECHT, DAVID


    Enclosed is a copy of an order in the above-entitled cause
handed down by the Court of Claims. An award was allowed and an invoice
voucher was submitted to the office of the Comptroller for payment.

    If you have any questions regarding the above award, please do not
hesitate to contact this office.

            Sincerely,

            Illinois Court of Claims

EK: AP
CC: ATTORNEY GENERAL - CHICAGO

IN THE COURT OF CLAIMS
OF THE STATE OF ILLINOIS

**FILED**
COURT OF CLAIMS

OCT 1 3 2023

Secretary of State and
Ex-Officio Clerk Court of Claims

David Gecht,                           )
      Claimant                        )
                          )
      V.                              )     23-CC-1992
                          )
State of Illinois,                     )
      Respondent                      )

OPINION AND ORDER

The Illinois Court of Claims is an administrative body within the legislative branch, not a court of law within the judicial branch. In addition to Certificate of Innocence cases, it serves any citizen with a claim of money damages or personal injury against a state agency or state employee. The Court's jurisdiction and compensation guidelines for Certificate of Innocence cases is derived from 705 ILCS 505/8 (c), stating that the amount of the award is at the discretion of the court; and provided, the court shall make no award in excess of the following amounts: for imprisonment of 5 years or less, not more than $85,350, adjusted annually to account for an increase in the cost of living.

Because the legislature has granted discretion to the Court, we review each case *de novo* based upon the facts of the particular case. This includes the amount of time served (including pretrial custody), whether that time ran concurrent with a different conviction, the nature of the arrest and conviction and the impact the conviction had on the individual and the surrounding community. Awards can be enhanced or reduced within the statutory ranges based upon the facts of the case.

**Guevara-L - 027314**

Claimant Gecht was convicted of murder under case number 99CR722701, in Cook County. He was sentenced to 45 years in the Illinois Department of Corrections (IDOC). Claimant Gecht was first arrested on March 2, 1999 for this matter. Claimant was released from IDOC custody on June 13, 2022 and remanded to Electronic Monitoring through Cook County. After years of seeking post-conviction relief, the state dismissed the charges against him in July, 2022. On November 18, 2022, Claimant was granted a Certificate of Innocence by the Circuit Court of Cook County. Claimant spent more than 23 years and 4 months in custody, served in pretrial custody and the sentence he served.

Claimant was a victim of now-disgraced and former Detective Reynaldo Guevara's pattern and practice of misconduct and framing innocent persons.

Claimant unjustly served more than 23 years incarcerated for this case between the time he served awaiting trial and the time he spent in IDOC. A review of the record clearly demonstrates that Claimant paid the ultimate price for the failures of an unjust system. No amount of money can make up for the lost time, the trauma of being wrongfully imprisoned, and the egregious experience of being wrongfully accused, nor the devastating impact this case had on Claimant, his family, and his community. The Court's remedy is to award Claimant the maximum of $268,960.00.

**IT IS HEREBY ORDERED** that Claimant is awarded $268,960.00 in final disposition of this claim.

ENTER:

CONCURRING:

_____
JUDGE

_____ J.

**Guevara-L - 027315**

_____ J.

_____ J.

The date stamped hereon is the filing date of this order.

Guevara-L - 027316

Exhibit S()

Order Granting Certificate of Innocence                                        (12/01/20) CCCR 0709

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS

v.                                                    No.: _99 CR 07 227(03)_

_Richard Kwil_ ,

Defendant/Petitioner

### ORDER GRANTING CERTIFICATE OF INNOCENCE

This cause comes before the Court on the Defendant/Petitioner's Petition for Certificate of Innocence pursuant to 735 ILCS 5/2-702. The Court being fully advised finds by a preponderance of evidence that:

1. ☑ The Defendant/Petitioner was convicted of one or more than one felony by the State of Illinois in the County of Cook and was subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;

2. ☑ The Defendant/Petitioner's judgment or conviction was reversed or vacated and the indictment or information dismissed or, ☐ a new trial was ordered and either s/he was found not guilty at the new trial or s/he was not retried and the indictment or information is dismissed; or ☐ the statute, or application thereof, on which the indictment or information was based violated the Constitution of the United States or the State of Illinois;

3. ☑ The Defendant/Petitioner's indictment or information was dismissed or s/he was acquitted and a Petition was filed within 2 years of the dismissal of the indictment or information or acquittal;

4. ☑ The Defendant/Petitioner is innocent of the offenses charged in the indictment or information or ☐ Defendant/Petitioner's acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State;

5. ☑ The Defendant/Petitioner did not by his/her own conduct voluntarily cause or bring about his/her conviction.

IT IS THERFORE ORDERED as follows:

1. That the Petition for a Certificate of Innocence is GRANTED.

2. That the Clerk of the Circuit Court shall transmit a copy of the Certificate of Innocence to the Clerk of the Court of Claims, together with the Defendant/Petitioner's current address as indicated on the Petition.

3. Custody information included in Ex. H of petition

ENTERED:

Dated: _18 October_ , _2023_          _[signature]_ Judge        _2038_ Judge's No.

ENTERED

OCT 18 2023

CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

Guevara-L - 027308

Exhibit S(*

Support The National Registry of Exonerations — **Donate Now**

A PROJECT OF THE UNIVERSITY OF CALIFORNIA IRVINE NEWKIRK CENTER FOR SCIENCE & SOCIETY,
UNIVERSITY OF MICHIGAN LAW SCHOOL & MICHIGAN STATE UNIVERSITY COLLEGE OF LAW



THE NATIONAL REGISTRY
OF EXONERATIONS

**3,488 EXONERATIONS SINCE 1989
MORE THAN 31,700 YEARS LOST**

BROWSE CASES     ISSUES     REPORTS     RESOURCES     ABOUT US          MAKE A GIFT

# ERUBY ABREGO

Other Exonerations with Misconduct by Detective Guevara



Eruby Abrego embraces a family member upon release (Photo: Family)

At about 5:45 p.m. on March 22, 1999, 46-year-old Jose Garcia and his 32-year-old nephew Ramon Torres were sitting in a parked car near the intersection of Monticello and Belmont Avenues in Chicago, Illinois. They were talking to 20-year-old Julio Lugo, who was with his 10-year-old cousin, Isidro Quinones.

As they were talking, a man wearing a sweatshirt with a hood pulled over his head shouted gang slogans from across the street while holding a handgun. Garcia, who was sitting in the passenger seat, was struck in the head. Torres, who was in the driver's seat, ducked and then sped off.

Lugo shielded his cousin, who escaped injury. Lugo was shot once in the shoulder and once in the buttock. Torres, meanwhile, pulled over several blocks away and summoned help. But Garcia was dead by the time he arrived at the hospital. Lugo was released from the hospital several days later.

Lugo was a member of the Latin Kings street gang. The gunman was suspected to be a member of the rival Orchestra Albany (OA) street gang because he shouted, "OA Love" and "King killer" before opening fire.

Police reported varying descriptions of the gunman. Witnesses who were nearby said the gunman was a dark-skinned Hispanic male who was 5 feet 7 inches tall and heavy-set—about 200 pounds—with curly dark hair and a mustache.

Torres said the shooter was 19-22 years old, 6 feet tall, and 180 pounds. Lugo said the shooter was in his twenties, 5 feet 8 inches tall, 200 pounds, and had a dark complexion.

Fred Marrero, who was a friend of Lugo and was nearby at the time, said the shooter was heavy set and 5 feet 7 inches tall. Detective Reynaldo Guevara, who was one of several detectives assigned to the case, prepared a report saying the shooter was 20-25 years old, 5 feet 8 inches to 5 feet 10 inches tall, with a medium build and a medium complexion.

Ultimately, police charged 20-year-old Eruby Abrego with the shooting. He was 5 feet 4 inches tall with a light complexion. In addition, 23-year-old Jeremiah Cain, who was accused of supplying the gun used in the shooting, was also charged.

Their charges and ultimate convictions were a product of false confessions and false witness identifications coerced by threats and physical abuse, as well as from gang members who hoped the real killer would remain free to face street justice.

| | |
|---|---|
| **State:** | Illinois |
| **County:** | Cook |
| **Most Serious Crime:** | Murder |
| **Additional Convictions:** | Assault |
| **Reported Crime Date:** | 1999 |
| **Convicted:** | 2004 |
| **Exonerated:** | 2022 |
| **Sentence:** | 90 years |
| **Race/Ethnicity:** | Hispanic |
| **Sex:** | Male |
| **Age at the date of reported crime:** | 20 |
| **Contributing Factors:** | Mistaken Witness ID, False Confession, Perjury or False Accusation, Official Misconduct |
| **Did DNA evidence contribute to the exoneration?:** | No |

Shortly before the shooting, Lugo and Quinones were riding in a car with
Marrero, who police said was a former Latin King gang member. At one
point, they were confronted by OA gang members in a gold-colored
Chevrolet Caprice. The Caprice had pulled over, and its occupants shouted
gang slogans and tossed bottles at Marrero's car before Marrero sped away.

Detectives decided that the key to solving the case was finding the Caprice.
Within hours, police found one parked in the area and determined it
belonged to 20-year Juan Parra, an OA member. Guevara and his partner,
William Halvorsen, showed a photographic lineup containing Parra to Lugo
and Torres, but they did not make an identification.

Parra was brought to the police station about 1:30 a.m. on March 23, 1999.
He denied any involvement and offered several alibis for his whereabouts.
He was kept at the station until the following morning, when he agreed to
submit to a polygraph examination. After police told him the examiner
concluded Parra had been deceptive, Parra was questioned by Detective
Anthony Wojcik. When Parra was told that his alibis were not panning out,
Parra "agreed to tell the truth," Wojcik later testified.

Wojcik said Parra said that Abrego, who was an OA that he knew as "Sef," had
complained about Latin Kings causing trouble. Abrego and another OA
nicknamed "Peewee" had recently engaged in a physical fight with some
Latin Kings. Wojcik said Parra claimed that on the afternoon of the shooting,
he went to Kosciuszko Park where he met Abrego, Peewee, and Cain. Parra
said they drove to Latin King territory where they saw a car containing Latin
Kings. According to Wojcik, Parra said he pulled over, and Abrego, Peewee,
and Cain got out. However, the car with the Latin Kings sped away.

Parra said Peewee and Cain returned to the car, but Abrego did not. Parra
said he pulled into an alley and waited. He then heard several shots and saw
Abrego running back to the car holding a pistol. Parra said he drove back to
near the park, and everyone split up.

Wojcik said he consulted a police database of gang members and learned
that 20-year-old Nicascio Santiago lived near the park and was known as
Peewee.

Parra was then charged with murder.

On March 24, 1999, police went to Cain's home where they arrested him and
confiscated a handgun in his bedroom. The Illinois State Police crime
laboratory would later conclude that the gun was the weapon used in the
shooting.

Detectives Raymond Schalk and Jerome Bogucki initially interrogated Cain.
Cain told them that he was in a car with Peewee and another he knew
as "Gilbert," and that they threw bottles at a car containing Latin Kings. Cain
said Peewee and Gilbert dropped him off and said they were going to "take
care of it." Later, Peewee and Gilbert returned and told Cain they "took care
of business." They handed Cain a handgun and asked him to hold on to it.
That was the gun police found in Cain's bedroom.

That version did not match what Wojcik believed had happened. So Wojcik
began interrogating Cain. According to Wojcik, Cain changed his story to say
that after he met with Abrego, Santiago and Parra in the park, he went home
to retrieve the gun he kept in his bedroom. Wojcik said Cain now said he was
riding with Abrego and Santiago in Parra's car, and after the bottle throwing
incident, Abrego got out of the car to find Latin Kings while the rest of them
waited in the alley.

Cain would later claim that none of the detectives read him his Miranda
warnings. He said that Wojcik slapped him in the face and punched him in
the chest. Cain said Wojcik said that if he confessed, he would only be
charged with supplying the gun and that if he refused to confess, the police
would "put the whole case" on him.

Later that day, police arrested Abrego and Santiago at Abrego's sister's home.
Abrego said Wojcik forced his way in by prying open the door with a

screwdriver. Officers entered with guns drawn. There was no warrant. Everyone in the home was ordered to get on the floor and put their hands behind their heads. Wojcik told Abrego, "You know what you did." When Abrego said he didn't know what Wojick was talking about, Wojick punched Abrego twice in the face. Abrego and Santiago then were taken to the police station.

There, Abrego told other detectives that he was not involved in the shooting. The detectives left and Wojcik came into the interrogation room. He spent about 15 minutes demanding that Abrego confess and then "started swinging...like I was a punching bag," Abrego later testified. Wojcik punched him in the ribs, back, and chest about 20 to 25 times and then left.

Wojcik returned a few hours later and told Abrego he would rot in jail because his friends had confessed and implicated him. Wojcik showed him statements from Cain and Parra and walked out.

Meanwhile the police put together a live lineup of five people—one filler and four suspects: Abrego, Santiago, Roger Somarreba (who had been arrested with Abrego and Santiago) and Gilbert Daniels, whom police had concluded was the person Cain referred to as "Gilbert." Marrero, Quinones, and Torres viewed the lineup. Marrero said Abrego looked like one of the people who had thrown a bottle, but he was not positive. Quinones and Torres both identified Abrego as the gunman.

Lugo viewed a lineup after he was released from the hospital, but he was unable to identify Abrego.

After the lineup, Abrego was left overnight chained to the wall in the interrogation room. He had been given no food. When he yelled that he needed to use a bathroom, he was ignored and eventually urinated on the floor. Abrego later said that when Wojcik returned and saw the urine, he "snapped." Abrego said Wojcik hit him about 20 times and left.

Abrego said that in the early morning hours of March 25, 1999, Wojcik returned. Abrego later testified that he was in pain and asked for medical attention. Wojcik took him to the bathroom where Abrego vomited blood. He showed it to Wojcik and asked to go to the hospital.

"Just tell me whatever I want to hear, and I'll take you wherever you want to go," Wojcik replied.

Abrego decided to cooperate. "I told him whatever he wanted to hear," Abrego later testified, "I thought he was going to beat on me some more."

Abrego then gave a court-reported statement. It consisted of a prosecutor reciting Wojcik's version of events and asking Abrego to confirm it.

The statement was false. Abrego added details that were not true in the hope of raising a red flag. For example, Abrego said he wanted to go to Latin King territory on the day of the shooting because some Kings had "got me and my nephew and my little sister." However, Abrego's sister was 12 years older than him.

His sister was allowed to visit him after he gave the statement. She later said his bruises were starting to show. He asked for clean underwear because he had urinated on himself.

The following day, at a bond hearing, his defense attorney reported to the judge that Abrego had been beaten by police. Abrego had visible cuts and bruises and he said he was coughing up blood. Following the hearing, Abrego was taken to Cook County Jail. An intake report created at the time reported Abrego said he was vomiting blood, but also, inexplicably, said that Abrego denied any medical problems and had no complaint. There was no report of bruises or cuts or swelling. A physician's assistant who was summoned to see Abrego in jail separately reported "[t]here was vomiting two days ago, one episode" and Abrego "feels fine."

During this time, Santiago was being interrogated separately. He told Detective Schalk that he was not involved in the shooting, but he had heard

that an OA called "Spirit" was the gunman. Wojcik then took over the interrogation and, according to Wojcik, Santiago decided to tell the truth. Santiago later signed a statement implicating Abrego as the gunman. He also said that Cain provided the gun and after the shooting, he gave the gun back to Cain who took it home.

Santiago later said that Wojcik repeatedly hit and choked him. He said Wojcik showed him statements from others and told him, "This is the story." Santiago said that when he denied any knowledge of the shooting, Wojcik "grabbed me by my throat and put a pen right underneath my chin like he was trying to stab me.'

Santiago also included false information in his statement. He said he went to Wright Junior College, that his nickname was "Pistol," and that he had a nephew named Josh—all false facts.

Santiago, like Abrego, Cain, and Parra, was charged with murder and aggravated battery with a firearm.

In 2001, Cain, Parra, and Santiago went to trial in Cook County Circuit Court and requested that their cases be decided by a judge without a jury. Cain's motion to suppress his confession had been denied. On August 28, 2001, Judge Kenneth Wadas acquitted Parra and Santiago. The judge convicted Cain of first-degree murder and aggravated battery with a firearm based on the legal ground that he was accountable for the acts of Abrego, who witnesses said was the gunman. Cain was sentenced to 25 years in prison.

Abrego went to trial in September 2004. Prior to the trial, he had filed a motion to suppress his statement because he had been physically abused. Wojcik denied both physically abusing Abrego and striking Cain and Santiago. Judge Wadas, who presided over the hearing, said he relied in part on the jail intake record, which did not indicate any bruises. But Judge Wadas also said, "Wojcik's testimony is in my view believable. I do not believe the defendant...I believe [Abrego] was treated humanely, fairly, and the statement was not coerced."

Torres, Lugo, and Quinones each identified Abrego as the gunman. Antonio Vasquez testified that he was a security guard and had purchased the gun used in the shooting. He said he sold it to Santiago for five rocks of crack cocaine.

A forensic analyst from the Illinois State Police crime lab testified that based on the comparison of the bullet from Gonzalez's head with bullets test-fired by the gun recovered from Cain's bedroom, he concluded the recovered gun was the murder weapon. Another forensic analyst testified that Abrego was excluded as the source of a latent fingerprint.

On September 22, 2004, the jury convicted Abrego of first-degree murder and aggravated battery with a firearm. He was sentenced to 90 years in prison.

Both men's direct appeals were rejected by the First District Illinois Appellate Court.

By the time Abrego was convicted, the first of what would become dozens of cases investigated by Guevara, Halvorsen, and other detectives had begun to unravel.

In February 2004, Juan Johnson, whose 30-year prison sentence for a murder conviction had been vacated in 2002, was acquitted at a retrial. A federal jury later awarded Johnson $21 million in damages from the city based on evidence that the original three eyewitnesses recanted their testimony and revealed that they were coerced by Guevara to identify Johnson.

Seven years later, in October 2011, Jacques Rivera was exonerated of a murder. He later filed a federal civil rights lawsuit accusing Guevara and other officers of burying evidence and pressuring the witness to falsely

identify him as the triggerman. In 2018, a jury awarded Rivera $17.175 million.

In 2016, the murder convictions of Jose Montanez and Armando Serrano were vacated and the charges were dismissed. Both had been convicted on false testimony that Guevara had coerced.

In April 2017, Roberto Almodovar and William Negron were exonerated after evidence showed that Guevara had improperly influenced witnesses to identify them as the shooter and driver in a drive-by shooting that killed two people and wounded a third.

In November 2017, Jose Maysonet became the seventh person to be exonerated based on misconduct by Guevara. Maysonet, who was serving a sentence of life in prison without parole, falsely confessed after a 17-hour interrogation punctuated by beatings and torture by Guevara.

In December 2017, Gabriel Solache and Arturo DeLeon-Reyes, who claimed that Guevara had beaten them into confessing to a murder they didn't commit, had their murder convictions vacated and the charges dismissed.

In 2018 and 2019, lawyers Karl Leonard and David Owens at the Exoneration Project at the University of Chicago Law School, representing Abrego, and attorneys Jennifer Bonjean and Ashley Cohen, representing Cain, filed post-conviction petitions outlining an array of evidence pointing to the innocence of Abrego and Cain.

In 2017, Torres and Lugo had recanted their identifications of Abrego and said they had been coerced by Guevara. Torres said Guevara told him to pick Abrego in the lineup. In addition, Torres said he wanted the real killer to remain on the streets so that family and friends of the victims could exact their own revenge.

Lugo said the detectives told him that Abrego was the gunman. "I really didn't know who did it," Lugo said. He said he didn't care who did it. "They're all in the same gang and they all know something about who did it. Whoever really did it…God will punish them."

The petitions for post-conviction relief recited a lengthy list of cases in which Guevara and other detectives, including Wojcik, had been accused of physically abusing witnesses to falsely implicate defendants and physically abusing defendants to obtain false confessions.

Wojcik also had come under fire following the controversial fatal shooting by police of Laquan McDonald in Chicago in 2014. An investigation showed that Wojcik rewrote and approved false reports to exaggerate the threat that McDonald posed before he was shot in an effort to justify the police shooting. Officer Jason Van Dyke was convicted of the shooting and sentenced to seven years in prison. Wojcik retired before he could be fired. Likewise, by then, Guevara and Halvorsen had retired.

In August 2019, Abrego's attorneys filed an additional petition detailing how, in 2012, a journalism student at Northwestern University's Medill School of Journalism had interviewed Santiago as part of her work in the Medill Justice Project. During the interview, which was electronically recorded, Santiago admitted that he was the gunman—not Abrego.

At the time, the student, Lorraine Ma, did not know what to do with the recording. She had told Santiago that the confession would be "off the record" and she felt bound to honor that promise. She did not seek advice from her professor because they had a bad relationship due to what she perceived as his sexual harassment and sexual misconduct toward students. (In 2018, the professor, Alex Klein, was accused by multiple students of sexual harassment. He denied the accusations and resigned.)

Ma eventually left journalism and went to business school at Stanford University. She subsequently contacted a fellow former Medill student who knew Abrego's lawyers and connected Ma with them. In May 2019, Santiago provided a sworn affidavit confessing to the murder and exonerating

Abrego. "Even though I was acquitted, I actually committed the crime," Santiago said.

In 2020, Santiago gave another statement saying that Cain did not provide the weapon to carry out the shooting. As a member of the gang at the time, one of Cain's responsibilities was to keep track of gang weaponry. Santiago said that Cain had no knowledge before, during, or after the shooting that Santiago was going to shoot at the Latin Kings.

At a hearing on the petitions in 2022, Santiago testified and admitted he was the gunman. He said Abrego and Cain were not involved. Torres testified and admitted that after Guevara told him to pick Abrego as the gunman, he did so knowing that Abrego was innocent.

On July 21, 2022, the Cook County State's Attorney's office abruptly asked that the convictions of Abrego and Cain be vacated. The motion was granted. The charges were dismissed and both men were released from prison. On that same day, the prosecution also agreed to dismiss the murder convictions of Juan and Rosendo Hernandez, two brothers falsely convicted by misconduct of Guevara and other detectives.

Just days earlier, on July 12, 2022, the prosecution had agreed to vacate and dismiss the murder conviction of Jose Cruz, who claimed he was wrongly convicted of murder based on misconduct by Guevara. Others previously exonerated include: Thomas Sierra, Ariel Gomez, Ricardo Rodriguez, Robert Bouto, Geraldo Iglesias, Demetrius Johnson, Reynaldo Munoz, and Daniel Rodriguez.

In March 2023, Abrego filed a federal civil rights lawsuit against the city of Chicago and Guevara seeking compensation for his wrongful conviction.

– *Maurice Possley*

---

Report an error or add more information about this case.

---

Posting Date: 8/25/2022
Last Updated: 3/23/2023

---

## ABOUT THE REGISTRY

The National Registry of Exonerations is a project of the Newkirk Center for Science & Society at University of California Irvine, the University of Michigan Law School and Michigan State University College of Law. It was founded in 2012 in conjunction with the Center on Wrongful Convictions at Northwestern University School of Law. The Registry provides detailed information about every known exoneration in the United States since 1989—cases in which a person was wrongly convicted of a crime and later cleared of all the charges based on new evidence of innocence. The Registry also maintains a more limited database of known exonerations prior to 1989.

Support Our Work

## CONTACT US

We welcome new information from any source about exonerations already on our list and about cases not in the Registry that might be exonerations.

Tell us about an exoneration that we may have missed

Correct an error or add information about an exoneration on our list

Other information about the Registry

Sign up for our Newsletter

Follow Us:

SPONSORED BY

AUDIOCHUCK

Exhibit S(+

**CIRCUIT COURT OF COOK COUNTY ILLINOIS**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| People of the State of Illinois, | ) | |
| | ) | |
| Respondent, | ) | |
| v. | ) | |
| | ) | |
| Jayson Aguiar aka Aguilar, | ) | 90 CR 27093(01) |
| | ) | |
| Petitioner. | ) | |
| | ) | |

---

**PETITION FOR RELIEF FROM JUDGEMENT AND TO VACATE CONVICTIONS
PURSUANT TO 735 ILCS 5/2-1401**

---

The above-captioned Petitioner files this consolidated petition for relief from judgement and to vacate his convictions pursuant to 735 ILCS 5/2-1401. In support of this request, Petitioner states as follows:

**INTRODUCTION**

1.     After decades of advocacy and litigation in Illinois Courts, there is no longer a viable dispute: Former Chicago police detective Reynaldo Guevara was a corrupt police officer who routinely violated citizens constitutional rights when conducting homicide investigations.

2.     Courts and juries alike have concluded that during his lengthy career Guevara engaged in a range of abhorrent and unconstitutional misconduct, including manipulating, threatening, and psychologically and physically coercing witnesses and accused suspects; perjury; and the outright fabrication of statements, police reports, and other evidence. *See People v. Martinez*, 2021 IL App (1st) 190490, ¶ 47 ("Given the staggering breadth of the materials regarding Detective Guevara's involvement in other cases, we succinctly state that those materials reflected a penchant for manipulating witness identifications. Many of his victims were eventually

1

exonerated."); *see id.* at ¶¶ 64, 80 ("Detective Guevara is a malignant blight on the Chicago Police Department and the judicial system" whose "toolbox of coercion was well-stocked with a wide variety of tools"); Ex. 2 (*People v. Demetrius Johnson*, 21 CC 3482 (July 27, 2021)), at 1 ("Mr. Johnson's conviction was based upon evidence both fabricated and concealed by notorious homicide detective Reynaldo Guevara," which at the time the court noted was the "21st conviction vacated owing to the misconduct of Guevara."); Ex. 3 (*People v. Solache/Reyes*, 98 CR 12440, Dec. 13, 2017), at 40-46 (Judge Obbish, the last judicial officer to hear substantive testimony from Guevara after the State granted Guevara immunity in 2017, concluding that Guevara's testimony was replete with "bald faced lies" and his "weak" general denials of physically coercing the Defendants confessions and feigned lack of memory were "not the testimony of a credible witness"); Ex. 4 (*Jacques Rivera v. Reynaldo Guevara et al.*, 12 C 4428) (civil jury finding Guevara liable for violating Jacques Rivera's due process rights, conspiracy in doing so, and intentional inflicting of emotional distress and awarding $17 million in compensatory damages and an additional $75,000 in punitive damages against Guevara).

3.      Since 2017, Guevara himself refuses to defend his own investigations, asserting his Fifth Amendment rights not to incriminate himself when asked any questions relating to his police work. Following well-established legal principles, courts, in turn, routinely have drawn adverse inferences against him and concluded Guevara did, in fact, do what he refused to deny. *See People v. Gibson,* 2018 IL App (1st) 162177, ¶ 5 (courts must draw an adverse inference when a police officer pleads the Fifth and refuses to defend his investigation unless there is a credible reason not to do so). *See e.g.*, Ex. 5 (*People v. David Gecht*, May 25, 2022), at 27 ("The fact that Guevara refused to answer and was nonresponsive to questions, suggests that his investigation in this case

was infected with the same pattern and practice of misconduct. Otherwise, he would have provided substantive answers to deposition questions regarding his investigation.").

4.    In turn, as a matter of due process, courts have repeatedly vacated convictions or granted other relief where Guevara-led investigations led to the ultimate convictions. *See e.gs.*, *id.* at 15, 24, 27 (Judge Kenworthy finding that "Detective Guevara engaged in a pattern and practice of intimidating, threatening, and influencing witnesses in prior homicide investigations, . . . [and Guevara's] pattern and practice of misconduct demonstrates [petitioner's] due process claim"); Ex. 6 (*People v. David Colon*, July 8, 2022), at 31-32 (Judge Atcherson holding that relief was required as a matter of due process because "[i]t is now undisputed that former Detective Guevara, motivated by a desire to close cases regardless of whether he had found the actual perpetrator, engaged in multiple and repeated instances of police misconduct which took carious forms"); Ex. 7 (*People v. Juan & Rosendo Hernandez*, 97 CR 21329, July 14, 2022) at 3-13 (Judge Rosado finding that Guevara conspired with Joseph Miedzianowski to violate the Hernandez brothers due process rights in a multitude of ways, including by manipulating witness identifications, fabricating police reports by intentionally misreporting alibi and other police statements, and committing perjury by falsely testifying about those same alibi statements); Ex. 8 (*People v. Gabriel Solache and Arturo Reyes*, 98 CR 122440, June 29, 2016), at 36 (Judge Obbish finding that "petitioners have made a substantial showing they were denied their constitutional right to due process").

5.    In total, Petitioner is aware of 44 individuals whose overturned convictions were tied to Guevara. Courts have granted relief from convictions in trials and pleas, alike, and whether the claims invoked the Post-Conviction Hearing Act or section 2-1401 of the Code of Civil Procedure, 735 ILCS 5/2-1401. *See e.gs.*, Exs. 9-10 (*People v Marilyn Mulero & Madeline*

*Mendoza*, 92CR13088(02), (03) (Orders vacating convictions and pleas, including Mendoza's via section 2-1401); Ex. 11 (*People v. Daniel Rodriguez*, 91 CR 13938. April 25, 2022) (Order granting section 2-1401 petition following trial conviction based on new evidence of Guevara's misconduct); Ex. 13 (*People v. Thomas Kelly & Jose Tinajero*, 99 CR 06197, Jan. 31, 2024) (most recent Orders granting relief to Guevara victims, one of which was via 2-1401 and one via the Post-Conviction Hearing Act).

6.      Since August 2022, the Cook County State's Attorney's Office has agreed that convictions tied to Guevara's investigations are unreliable and should be vacated.[1] Petitioner is unaware of a single Guevara-related collateral petition the State has contested since August 2022, or that any court has ultimately refused to overturn. Well over a majority of those individuals were later awarded certificates of innocence. *See* Exs. 12, 14 (identifying 25 COIs in Guevara-related overturned convictions).

---

[1] On August 9, 2022, the Cook County State's Attorney appeared in court and withdrew their objection to eight pending post-conviction matters in cases Guevara investigated. State's Attorney Foxx noted as follows:

"[W]e cannot stand by these convictions based on the serious allegations of misconduct and findings of credibility against Detective Guevara." *See* Dana Kozlov, Marissa Parra, *7 murder convictions linked to disgraced CPD Det. Reynaldo Guevara thrown out*, CBS2, Aug. 9, 2022, at https://www.cbsnews.com/chicago/news/eight-murder-convictions-vacated-chicago-police-detective-reynaldo-guevara-cook-county-states-attorney-kim-foxx/

"Even in cases where we still have questions about guilt, where we are not affirming actual innocence, the taint of detective Guevara is such that we cannot stand behind them any further." *See* Melissa Segura, *Seven People Who've Served Decade In Prison Had Their Murder Convictions Over Alleged Abuse By a Chicago Cop*, BuzzFeed News, Aug. 9, 2022, at https://www.buzzfeednews.com/article/melissasegura/guevara-chicago-murder-exoneration.

"When it became clear that the allegations of misconduct against Guevara had significant merit, we could no longer stand behind these convictions where individuals spent decades incarcerated, devastating families and communities in Chicago. The Cook County State's Attorney's Office . . . will continue to address and investigate claims of wrongful convictions based on the evidence and the law." *See* Press Release, *Cook County State's Attorney Kimberly Foxx Announces Dismissal of Murder Cases Tied to Former Chicago Police Detective Reynaldo Guevara*, Aug. 9, 2022, at https://www.cookcountystatesattorney.org/news/cook-county-state-s-attorney-kimberly-foxx-announces-dismissal-murder-cases-tied-former-chicago

7.      Like the others before him, Petitioner, too, deserves the same relief, as his arrest and subsequent conviction is clearly tied to a Guevara-led corrupt investigation. Guevara's role in securing the inculpatory testimony is clear from the police reports and testimony, yet Guevara now refuses to defend this very same investigation, asserting the Fifth Amendment. Ex. 1.

8.      Given the supporting facts of this case, Petitioner is entitled to relief as a matter of due process like the dozens of Guevara-victims before them. This Court should vacate Petitioner's conviction.

## FACTUAL BACKGROUND

### A. Brief overview of the evidence of Guevara's pattern of misconduct

9.      Many of the court decisions cited above document the conclusions about Guevara's range of misconduct. These conclusions, of course, are not in the abstract and are based upon overwhelming documentary and testimonial evidence, a portion of which is attached as exhibits to this pleading.

10.     Guevara manipulates, threatens, coerces, and physically harms witnesses and accused suspects to give false statements and testimony. Exs. 15-41 (sworn testimony and affidavits alleging precisely that).

11.     Guevara creates false police reports out of whole cloth and hides the real, accurate ones. *See* Ex. 42 (various materials in the Demetrius Johnson matter, showing that Guevara literally drafted a fake/false lineup report and hid the true, exculpatory lineup report to frame the 15-year-old Johnson, who has since been certified innocent).

12.     Guevara fabricates witness and suspect statements, particularly as it relates to alibi evidence so that accused defendants cannot later defend against the false allegations in court. *See* Exs. 42-48 (examples of witness testimony and supporting materials showing that Guevara

5

fabricated police reports by purposefully mis-documenting alibi or other statements, thereby ensuring the accused cannot defend against Guevara's false charges—each of these examples are in cases of individuals who have been exonerated).

13.     Guevara uses fake informants. Ex. 49 (statement and testimony of Francisco Vicente, who has now sworn under oath multiple times that Guevara manipulated and forced him to falsely implicate five different innocent individuals (Geraldo Iglesias, Robert Bouto, Jose Montanez, Armando Serrano, and George Pacheco), each of whom has been exonerated and/or received certificates of innocence).

14.     Guevara conspires with notorious corrupt police officers like Joseph Miedzianowski, Ex. 7, or his long-time partner Ernest Halvorsen—the latter of which courts have also found has his own pattern of misconduct—to frame perceived threats to his corrupt police activities. Ex. 11; *see also* Ex. 64 (*People v. Reynaldo Munoz*, 85 C 12403, Feb. 22, 2022) (Judge Atcherson finding that Halvorsen has his own pattern of unconstitutional misconduct in a case Guevara is otherwise uninvolved). *See also* Exs. 50-51 (testimony from Fred Rock and Jondalyn Fields showing how Guevara conspired with Miedzianowski to frame Juan and Rosendo Hernandez, both of whom have been certified innocent); Ex. 52 (FBI Report documenting statement of Mohamed Omar, connecting Guevara and Miedzianowski); Ex. 53 (testimony of George Laureano, describing Guevara conspiring with Miedzianowski in a criminal conspiracy).

15.     Accused suspects have repeatedly asserted these horrific allegations. *See e.g.* Exs. 15-21 (sworn testimony from seven men—all wrongfully convicted and six of whom have certificates of innocence—describing Guevara coercing their false confessions).

16.     Victims and innocent third party witnesses corroborate it. *See* Exs. 22-32 (various sworn statements and testimony showing Guevara's manipulation of witness identifications, all in

cases where the accused was later exonerated, including, for example, Jose E. Melendez (Ex. 24), who was a crime victim yet contemporaneously insisted Guevara repeatedly tried to force him to implicate an innocent person); Exs. 33-41 (various other sworn statements corroborating Guevara's coercive questioning, threats, manipulation, and unconstitutional investigations in other cases).

17.     Respected defense attorneys have witnessed it. Ex. 54 (testimony of attorney Kent Brody describing Guevara's manipulation and lies during lineup procedures in the Juan and Rosendo Hernandez matter—both certified innocent); Ex. 55 (testimony of James Saltouros indicating the same in the matter of John Martinez, who has been exonerated); Ex. 56 (testimony of John Deleon describing the lies and manipulation of Guevara in the Iglesias and Martinez matters—both of whom have been exonerated).

18.     Felony review prosecutors' testimony has confirmed it. *See* Ex. 7, at 12 (court ruling in Hernandez case describing how felony review ASA testimony contemporaneously confirmed Guevara fabricated reports regarding the accused's alibis).

19.     Whistleblowing police officers have testified and spoken up about it. Ex. 57 (testimony of former CPD detective Bill Dorsch describing Guevara's manipulation of witness identifications that he personally witnessed); Ex. 58, at 194-96 (testimony of Ron Malczyk confirming that Guevara fabricated or lied in a report).

20.     City of Chicago investigations have confirmed it. Ex. 59 (three reports by former U.S. Attorney Scott Lassar commissioned by the City of Chicago concluding that Guevara fabricated evidence and committed misconduct in multiple cases).

21.     The Office of Professional Standards (OPS) has concluded Guevara lies. Ex. 60-63 (a series of OPS reports and sustained findings against Guevara spanning from 1986-2000

concluding that Guevara's denials of allegations of various forms of misconduct were not credible).

22.     Judges and juries have adjudicated it. Exs. 2-14; *Martinez*, 2021 IL App (1st) 190490; *People v. Gomez*, 2021 IL App (1st) 192020, ¶ 58; *People v. Gonzalez*, 2016 IL App (1st) 141660, ¶¶ 34, 57; *People v. Serrano*, 2016 IL App (1st) 133493, ¶ 18; *People v. Montanez*, 2016 IL App (1st) 133726; *People v. Almodovar*, 2013 IL App (1st) 101476; *People v. Reyes*, 369 Ill. App. 3d 1, 21 (1st Dist. 2006) (all commenting on Guevara's pattern of unconstitutional misconduct).

23.     And Guevara never denies it. *See, e.g.*, Ex. 1 (Guevara asserting the Fifth Amendment when questioned about his investigations).

**B.  Factual Background of Petitioner's Case[2]**

24.     Initially, Guevara has been asked direct and pointed questions about his investigation of Petitioner's case and allegations of his misconduct in this investigation: Guevara has refused to answer the questions, invoking his Fifth Amendment privilege against self-incrimination. Ex. 1.

25.     This case concerns the murder of Rosalio Franco on July 28, 1990.

26.     Jayson Aguiar was convicted at a short jury trial on the basis of a single witness, Michael Martinez. R. C54 (Court saying "this is a case where [the jury] either believe Mr. Martinez beyond a reasonable doubt or they don't. . . If they believe Martinez it is over, if they don't, it is over."). Martinez testified that Aguiar was amongst a group that solicited him to go harass or beat up rival gang members. Martinez and others then supposedly followed Aguiar and Ernest Berrios in a separate car and witnessed Aguiar shoot from his car. Martinez testified he told his girlfriend,

---

[2] The appellate record is included on a jump drive attached to this petition.

Maria Cartagena,[3] that he witnessed Aguiar shoot someone. Martinez further testified that Aguiar bragged to Martinez about the shooting the next day.

27.     Police records make clear that Guevara and his partner Halvorsen were the lead detectives and closed the case two months later in October with statements implicating Aguiar from Martinez and Berrios—the latter of whom did not testify. Guevara's police reports also note that Cartagena supposedly corroborated that Martinez told her immediately after the shooting that Aguiar and Berrios had just shot and killed a guy. Ex. 100a (Supp Report); Ex. 100b (Martinez handwritten statement).

28.     Aguiar testified at a pre-trial hearing and explained he was duped by Guevara to come to the station at all in October, as Guevara falsely told him they were investigating an October 6, 1990 shooting for which Aguiar was the victim. Ex. 100c. He repeated the same post-trial in statements to the probation department. Ex. 100d. Aguiar adamantly maintained his innocence at sentencing. Ex. 100e. (Allocution, Aguiar reading a prepared letter stating, "It was kind of hard to express my true feelings about my conviction because I haven't accepted the reality yet that I have been found guilty for a crime I didn't commit.")

29.     In a sworn affidavit, Berrios explains why he did not testify at trial. Berrios was with Aguiar in a car when the shooting occurred. They both heard the shooting but neither of them were involved with it, and the shooting did not come from their car. Berrios notes that in October 1990, Guevara took him to the station, and while there, he saw both Martinez and Aguiar there as well. Guevara physically beat and threatened Berrios until he signed a statement implicating Aguiar. After Berrios signed a false statement, he skipped town because he did not want to testify against Aguiar and be forced to commit perjury in court. Ex. 100f.

---

[3] Martinez repeatedly referred to Ms. Cartagena as his common law wife in his testimony. R. B62, B83, B91.

9

30.     Cartagena, too, corroborates Guevara's fabrication. She swears in an affidavit that she remembers the July 1990 day and learning about the shooting at the park but that Martinez never told her that Aguiar had shot and killed a guy. "I never told the police this and if the police reported this it is a lie," Cartagena swears. Ex. 100g.

31.     As far as Martinez himself, he has refused counsel's repeated attempts to speak to him substantively about the matter. Ex. 100h.

## ARGUMENT

**In light of the extraordinary evidence of the corruption of Reynaldo Guevara and his tactical team, this Court must vacate Petitioner's conviction pursuant to 735 ILCS 5/2-1401**

### A.  Legal Standard

29.     A petition filed pursuant to 735 ILCS 5/2-1401 seeks to bring facts to the attention of the trial court that would have precluded entry of a final judgment had the facts been known at the time of entry of the judgment. *People v. Haynes*, 192 Ill. 2d 437 (2000).

30.     Although the petition must be filed in the same proceeding as the original judgment, the petition is a separate action. 735 ILCS 5/2-1401(b).

31.     The burden of proof for a section 2-1401 petition is a preponderance of the evidence. *Smith v. Airoom, Inc.,* 114 Ill. 2d 209, 221 (1986).

32.     Although section 2-1401 is a civil remedy, its remedial powers extend to criminal matters. *People v. Pinkonsly*, 207 Ill. 2d 555, 562 (2003).

33.     A section 2-1401 petitioner is entitled to relief if (1) a meritorious defense or claim exists, and (2) the petitioner exercised due diligence in both presenting the defense or claim the original action and in filing the section 2-1401 petition. *Smith*, 114 Ill. 2d at 221. Ultimately, "[r]elief should be granted under section 2-1401 when necessary to achieve justice." *People v.*

*Lawton*, 212 Ill. 2d 285, 298 (2004). It is a "versatile and effective means of pursuing justice" for criminal defendants where the Post-Conviction Hearing Act is unavailable. *Id.* at 299.

34.     Illinois law recognizes that a conviction may be vacated under 2-1401 as a result of a claim of actual innocence based on newly discovered evidence. 730 ILCS 5-5-4(c).

35.     Applying *Lawton*, the Illinois Appellate Court has held that a section 2-1401 petition is the proper vehicle for a petitioner to seek to vacate an unconstitutional conviction if he has already completed his sentence or the interests of justice demand relief. *People v. Mathis*, 357 Ill. App. 3d 45, 50 (1st Dist. 2005).

36.     In practice, and in the context of blatant and systemic issues of police misconduct, Illinois courts have routinely granted section 2-1401 petitions filed more than two years after conviction—both at the request of the petitioner and the State. For example, section 2-1401 has been the vehicle used to vacate more than 230 convictions connected to the misconduct of former Chicago Police Sergeant Ronald Watts and his team. It has also been used to vacate convictions of Guevara's victims. *See E.g., People v. Demetrius Johnson,* 91 CR 19833 (Ex. 42); *People v. Rodriguez*, 91-CR-13938 (Ex. 11); *People v. Rios*, 89-CR-16525; *People v. Kelly*, 99 CR 06197(03) (Ex. 13).

**B.  Petitioner's pleading is timely**

37.     While a section 2-1401 petition normally must be filed within two years of the conviction in a criminal case, time during which the opposing party (or the police) fraudulently conceal the claim tolls the limitation period. *See People v. McLaughlin*, 324 Ill. App. 3d 909, 918-19 (1st Dist. 2001); 735 ILCS 5/2-1401(c). Time limitations in both post-conviction and civil matters are affirmative defenses that can and should be waived by the State or opposing party when justice warrants. *People v. Boclair*, 202 Ill. 2d 89, 101 (2002); *Dever v. Simmons*, 292 Ill. App. 3d 70, 73 (1st Dist. 1997); *see also supra* page n.1 (State's Attorney Foxx's noting her commitment

11

to rectifying Guevara-related wrongful convictions). Moreover, irrespective of timeliness, section 2-1401 is "versatile and effective means of pursuing justice." *Lawton*, 212 Ill. 2d at 299. It has been repeatedly used to vacate convictions—even those secured by guilty plea—in the interests of justice or when circumstances change long after the statute of limitations ran. *See Davis*, 145 Ill. 2d at 244.

38.     It is now widely accepted and understood that Guevara engaged in decades of corruption, but that corruption was hidden from criminal defendants, like the Petitioner herein. Accordingly, any and all of the allegations detailed in the attached exhibits that pre-dated the Petitioner's trial in this case were *Brady* material that was required to be disclosed. *See People v. Mitchell*, 2012 IL App (1st) 100907, ¶¶ 71-72 (explaining that under *Kyles v. Whitley*, 514 U.S. 419 (1995), knowledge by any agents of the State, such as police officers, is imputed to the State). This is particularly true of the adverse credibility findings by the Office of Professional Standards (OPS) that predate any of the Petitioner's trials. *See People v. Martinez*, 2021 IL App (1st) 190490, ¶¶ 90-92 (explaining that undisclosed, material documents relating to police misconduct that predate the cases are *Brady* material); *People v. Mack*, 2018 IL App (2d) 170641-U, ¶ 15 (highlighting the "analytical link" between *Brady* and section 2-1401 fraudulent concealment).

39.     All of this information, however, was never provided to the Petitioner and therefore fraudulently concealed from them. *See McLauglin*, 324 Ill. App. 3d at 918-19; 735 ILCS 5/2-1401(c). Any delay in filing, therefore, is tolled. Petitioner cannot be penalized for failing to present these claims in the original action where the facts were withheld from him.

40.     Petitioner, moreover, is bringing this petition not long after the State has publicly announced it no longer stands by Guevara-related convictions. This information provides a new basis to bring a claim.

### C.  Petitioner has a meritorious defense in the original action

41.     When the Petitioner's case was adjudicated decades ago, Guevara successfully concealed his corruption. It has now come forth, making Petitioner eligible for relief under 735 ILCS 5/2-1401(c). *See People v. McLaughlin*, 324 Ill. App. 3d 909, 918-19 (1st Dist. 2001).

42.     Similarly, Guevara's acts of coercing false statements and fabricating evidence in Petitioner's case made it impossible for Petitioner to fairly present evidence of their innocence.

43.     The new evidence affixed to this Petition—particularly Guevara's pattern of similar misconduct, demonstrated acts of misconduct in this individual case (such as coercing Berrios' false statement and fabricating Cartagena's statement), and Guevara's assertion of the Fifth Amendment when asked about this investigation—provide a meritorious defense.

44.     In addition, the suppression of the evidence violated Petitioner's rights to due process of law pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). The rule of *Brady* "encompasses evidence known to police investigators, but not to the prosecutor," and withheld impeachment evidence. *People v. Beaman*, 229 Ill. 2d 56, 73 (2008) (citing *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)).

45.     A *Brady* violation is a constitutional error that is never harmless, *People v. Beaman*, 229 Ill. 2d 56, 74 (2008), and a Section 2-1401 petition may "be used to challenge judgments claimed to be defective for legal reasons." *People v. Lawton*, 212 Ill. 2d 285, 297 (2004).

46.     All of the pattern exhibits attached to this Petition is impeachment of Guevara, and the scope of it would more likely than not have led to a different result in all of these cases.

## CONCLUSION

For these reasons, Petitioner respectfully requests this Court grant this petition and vacate his conviction.

<div style="margin-left: 50%;">

Respectfully Submitted,

/s/ Joshua A. Tepfer____
Attorney for Petitioner

</div>

Joshua Tepfer
Fadya Salem
The Exoneration Project (Atty No. 44407)
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 789-4955
josh@exonerationproject.org
fadya@exonerationproject.org

Anand Swaminathan
Loevy & Loevy
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900
anand@loevy.com

Exhibit S) "

**CIRCUIT COURT OF COOK COUNTY ILLINOIS**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| People of the State of Illinois, | ) | |
| | ) | |
| Respondent, | ) | |
| v. | ) | |
| | ) | |
| David Kruger, | ) | 87 CR 07912(01) |
| | ) | |
| Petitioner. | ) | |
| | ) | |

---

**PETITION FOR RELIEF FROM JUDGEMENT AND TO VACATE CONVICTIONS**
**PURSUANT TO 735 ILCS 5/2-1401**

---

The above-captioned Petitioner files this consolidated petition for relief from judgement and to vacate his convictions pursuant to 735 ILCS 5/2-1401. In support of this request, Petitioner states as follows:

**INTRODUCTION**

1. After decades of advocacy and litigation in Illinois Courts, there is no longer a viable dispute: Former Chicago police detective Reynaldo Guevara was a corrupt police officer who routinely violated citizens constitutional rights when conducting homicide investigations.

2. Courts and juries alike have concluded that during his lengthy career Guevara engaged in a range of abhorrent and unconstitutional misconduct, including manipulating, threatening, and psychologically and physically coercing witnesses and accused suspects; perjury; and the outright fabrication of statements, police reports, and other evidence. *See People v. Martinez*, 2021 IL App (1st) 190490, ¶ 47 ("Given the staggering breadth of the materials regarding Detective Guevara's involvement in other cases, we succinctly state that those materials reflected a penchant for manipulating witness identifications. Many of his victims were eventually

1

exonerated."); *see id.* at ¶¶ 64, 80 ("Detective Guevara is a malignant blight on the Chicago Police Department and the judicial system" whose "toolbox of coercion was well-stocked with a wide variety of tools"); Ex. 2 (*People v. Demetrius Johnson*, 21 CC 3482 (July 27, 2021)), at 1 ("Mr. Johnson's conviction was based upon evidence both fabricated and concealed by notorious homicide detective Reynaldo Guevara," which at the time the court noted was the "21st conviction vacated owing to the misconduct of Guevara."); Ex. 3 (*People v. Solache/Reyes*, 98 CR 12440, Dec. 13, 2017), at 40-46 (Judge Obbish, the last judicial officer to hear substantive testimony from Guevara after the State granted Guevara immunity in 2017, concluding that Guevara's testimony was replete with "bald faced lies" and his "weak" general denials of physically coercing the Defendants confessions and feigned lack of memory were "not the testimony of a credible witness"); Ex. 4 (*Jacques Rivera v. Reynaldo Guevara et al.*, 12 C 4428) (civil jury finding Guevara liable for violating Jacques Rivera's due process rights, conspiracy in doing so, and intentional inflicting of emotional distress and awarding $17 million in compensatory damages and an additional $75,000 in punitive damages against Guevara).

3.      Since 2017, Guevara himself refuses to defend his own investigations, asserting his Fifth Amendment rights not to incriminate himself when asked any questions relating to his police work. Following well-established legal principles, courts, in turn, routinely have drawn adverse inferences against him and concluded Guevara did, in fact, do what he refused to deny. *See People v. Gibson,* 2018 IL App (1st) 162177, ¶ 5 (courts must draw an adverse inference when a police officer pleads the Fifth and refuses to defend his investigation unless there is a credible reason not to do so). *See e.g.*, Ex. 5 (*People v. David Gecht*, May 25, 2022), at 27 ("The fact that Guevara refused to answer and was nonresponsive to questions, suggests that his investigation in this case

was infected with the same pattern and practice of misconduct. Otherwise, he would have provided substantive answers to deposition questions regarding his investigation.").

4.      In turn, as a matter of due process, courts have repeatedly vacated convictions or granted other relief where Guevara-led investigations led to the ultimate convictions. *See e.gs.*, *id.* at 15, 24, 27 (Judge Kenworthy finding that "Detective Guevara engaged in a pattern and practice of intimidating, threatening, and influencing witnesses in prior homicide investigations, . . . [and Guevara's] pattern and practice of misconduct demonstrates [petitioner's] due process claim"); Ex. 6 (*People v. David Colon*, July 8, 2022), at 31-32 (Judge Atcherson holding that relief was required as a matter of due process because "[i]t is now undisputed that former Detective Guevara, motivated by a desire to close cases regardless of whether he had found the actual perpetrator, engaged in multiple and repeated instances of police misconduct which took carious forms"); Ex. 7 (*People v. Juan & Rosendo Hernandez*, 97 CR 21329, July 14, 2022) at 3-13 (Judge Rosado finding that Guevara conspired with Joseph Miedzianowski to violate the Hernandez brothers due process rights in a multitude of ways, including by manipulating witness identifications, fabricating police reports by intentionally misreporting alibi and other police statements, and committing perjury by falsely testifying about those same alibi statements); Ex. 8 (*People v. Gabriel Solache and Arturo Reyes*, 98 CR 122440, June 29, 2016), at 36 (Judge Obbish finding that "petitioners have made a substantial showing they were denied their constitutional right to due process").

5.      In total, Petitioner is aware of 44 individuals whose overturned convictions were tied to Guevara. Courts have granted relief from convictions in trials and pleas, alike, and whether the claims invoked the Post-Conviction Hearing Act or section 2-1401 of the Code of Civil Procedure, 735 ILCS 5/2-1401. *See e.gs.*, Exs. 9-10 (*People v Marilyn Mulero & Madeline*

3

*Mendoza*, 92CR13088(02), (03) (Orders vacating convictions and pleas, including Mendoza's via section 2-1401); Ex. 11 (*People v. Daniel Rodriguez*, 91 CR 13938. April 25, 2022) (Order granting section 2-1401 petition following trial conviction based on new evidence of Guevara's misconduct); Ex. 13 (*People v. Thomas Kelly & Jose Tinajero*, 99 CR 06197, Jan. 31, 2024) (most recent Orders granting relief to Guevara victims, one of which was via 2-1401 and one via the Post-Conviction Hearing Act).

6.     Since August 2022, the Cook County State's Attorney's Office has agreed that convictions tied to Guevara's investigations are unreliable and should be vacated.[1] Petitioner is unaware of a single Guevara-related collateral petition the State has contested since August 2022, or that any court has ultimately refused to overturn. Well over a majority of those individuals were later awarded certificates of innocence. *See* Exs. 12, 14 (identifying 25 COIs in Guevara-related overturned convictions).

---

[1] On August 9, 2022, the Cook County State's Attorney appeared in court and withdrew their objection to eight pending post-conviction matters in cases Guevara investigated. State's Attorney Foxx noted as follows:

"[W]e cannot stand by these convictions based on the serious allegations of misconduct and findings of credibility against Detective Guevara." *See* Dana Kozlov, Marissa Parra, *7 murder convictions linked to disgraced CPD Det. Reynaldo Guevara thrown out*, CBS2, Aug. 9, 2022, at https://www.cbsnews.com/chicago/news/eight-murder-convictions-vacated-chicago-police-detective-reynaldo-guevara-cook-county-states-attorney-kim-foxx/

"Even in cases where we still have questions about guilt, where we are not affirming actual innocence, the taint of detective Guevara is such that we cannot stand behind them any further." *See* Melissa Segura, *Seven People Who've Served Decade In Prison Had Their Murder Convictions Over Alleged Abuse By a Chicago Cop*, BuzzFeed News, Aug. 9, 2022, at https://www.buzzfeednews.com/article/melissasegura/guevara-chicago-murder-exoneration.

"When it became clear that the allegations of misconduct against Guevara had significant merit, we could no longer stand behind these convictions where individuals spent decades incarcerated, devastating families and communities in Chicago. The Cook County State's Attorney's Office . . . will continue to address and investigate claims of wrongful convictions based on the evidence and the law." *See* Press Release, *Cook County State's Attorney Kimberly Foxx Announces Dismissal of Murder Cases Tied to Former Chicago Police Detective Reynaldo Guevara*, Aug. 9, 2022, at https://www.cookcountystatesattorney.org/news/cook-county-state-s-attorney-kimberly-foxx-announces-dismissal-murder-cases-tied-former-chicago

7.      Like the others before him, Petitioner, too, deserves the same relief, as his arrest and subsequent conviction is clearly tied to a Guevara-led corrupt investigation. Guevara's role in securing the inculpatory testimony is clear from the police reports and testimony, yet Guevara now refuses to defend this very same investigation, asserting the Fifth Amendment. Ex. 1.

8.      Given the supporting facts of this case, Petitioner is entitled to relief as a matter of due process like the dozens of Guevara-victims before them. This Court should vacate Petitioner's conviction.

## FACTUAL BACKGROUND

### A.  Brief overview of the evidence of Guevara's pattern of misconduct

9.      Many of the court decisions cited above document the conclusions about Guevara's range of misconduct. These conclusions, of course, are not in the abstract and are based upon overwhelming documentary and testimonial evidence, a portion of which is attached as exhibits to this pleading.

10.     Guevara manipulates, threatens, coerces, and physically harms witnesses and accused suspects to give false statements and testimony. Exs. 15-41 (sworn testimony and affidavits alleging precisely that).

11.     Guevara creates false police reports out of whole cloth and hides the real, accurate ones. *See* Ex. 42 (various materials in the Demetrius Johnson matter, showing that Guevara literally drafted a fake/false lineup report and hid the true, exculpatory lineup report to frame the 15-year-old Johnson, who has since been certified innocent).

12.     Guevara fabricates witness and suspect statements, particularly as it relates to alibi evidence so that accused defendants cannot later defend against the false allegations in court. *See* Exs. 42-48 (examples of witness testimony and supporting materials showing that Guevara

fabricated police reports by purposefully mis-documenting alibi or other statements, thereby ensuring the accused cannot defend against Guevara's false charges—each of these examples are in cases of individuals who have been exonerated).

13. Guevara uses fake informants. Ex. 49 (statement and testimony of Francisco Vicente, who has now sworn under oath multiple times that Guevara manipulated and forced him to falsely implicate five different innocent individuals (Geraldo Iglesias, Robert Bouto, Jose Montanez, Armando Serrano, and George Pacheco), each of whom has been exonerated and/or received certificates of innocence).

14. Guevara conspires with notorious corrupt police officers like Joseph Miedzianowski, Ex. 7, or his long-time partner Ernest Halvorsen—the latter of which courts have also found has his own pattern of misconduct—to frame perceived threats to his corrupt police activities. Ex. 11; *see also* Ex. 64 (*People v. Reynaldo Munoz*, 85 C 12403, Feb. 22, 2022) (Judge Atcherson finding that Halvorsen has his own pattern of unconstitutional misconduct in a case Guevara is otherwise uninvolved). *See also* Exs. 50-51 (testimony from Fred Rock and Jondalyn Fields showing how Guevara conspired with Miedzianowski to frame Juan and Rosendo Hernandez, both of whom have been certified innocent); Ex. 52 (FBI Report documenting statement of Mohamed Omar, connecting Guevara and Miedzianowski); Ex. 53 (testimony of George Laureano, describing Guevara conspiring with Miedzianowski in a criminal conspiracy).

15. Accused suspects have repeatedly asserted these horrific allegations. *See e.g.* Exs. 15-21 (sworn testimony from seven men—all wrongfully convicted and six of whom have certificates of innocence—describing Guevara coercing their false confessions).

16. Victims and innocent third party witnesses corroborate it. *See* Exs. 22-32 (various sworn statements and testimony showing Guevara's manipulation of witness identifications, all in

6

cases where the accused was later exonerated, including, for example, Jose E. Melendez (Ex. 24), who was a crime victim yet contemporaneously insisted Guevara repeatedly tried to force him to implicate an innocent person); Exs. 33-41 (various other sworn statements corroborating Guevara's coercive questioning, threats, manipulation, and unconstitutional investigations in other cases).

17.     Respected defense attorneys have witnessed it. Ex. 54 (testimony of attorney Kent Brody describing Guevara's manipulation and lies during lineup procedures in the Juan and Rosendo Hernandez matter—both certified innocent); Ex. 55 (testimony of James Saltouros indicating the same in the matter of John Martinez, who has been exonerated); Ex. 56 (testimony of John Deleon describing the lies and manipulation of Guevara in the Iglesias and Martinez matters—both of whom have been exonerated).

18.     Felony review prosecutors' testimony has confirmed it. *See* Ex. 7, at 12 (court ruling in Hernandez case describing how felony review ASA testimony contemporaneously confirmed Guevara fabricated reports regarding the accused's alibis).

19.     Whistleblowing police officers have testified and spoken up about it. Ex. 57 (testimony of former CPD detective Bill Dorsch describing Guevara's manipulation of witness identifications that he personally witnessed); Ex. 58, at 194-96 (testimony of Ron Malczyk confirming that Guevara fabricated or lied in a report).

20.     City of Chicago investigations have confirmed it. Ex. 59 (three reports by former U.S. Attorney Scott Lassar commissioned by the City of Chicago concluding that Guevara fabricated evidence and committed misconduct in multiple cases).

21.     The Office of Professional Standards (OPS) has concluded Guevara lies. Ex. 60-63 (a series of OPS reports and sustained findings against Guevara spanning from 1986-2000

concluding that Guevara's denials of allegations of various forms of misconduct were not credible).

22.     Judges and juries have adjudicated it. Exs. 2-14; *Martinez*, 2021 IL App (1st) 190490; *People v. Gomez*, 2021 IL App (1st) 192020, ¶ 58; *People v. Gonzalez*, 2016 IL App (1st) 141660, ¶¶ 34, 57; *People v. Serrano*, 2016 IL App (1st) 133493, ¶ 18; *People v. Montanez*, 2016 IL App (1st) 133726; *People v. Almodovar*, 2013 IL App (1st) 101476; *People v. Reyes*, 369 Ill. App. 3d 1, 21 (1st Dist. 2006) (all commenting on Guevara's pattern of unconstitutional misconduct).

23.     And Guevara never denies it. *See, e.g.*, Ex. 1 (Guevara asserting the Fifth Amendment when questioned about his investigations).

**B.  Factual Background of Petitioner's Case[2]**

24.     Initially, Guevara has been asked direct and pointed questions about his investigation of Petitioner's case and allegations of his misconduct in this investigation: Guevara has refused to answer the questions, invoking his Fifth Amendment privilege against self-incrimination. Ex. 1.

25.     A shooting occurred at Keystone and Cortland on May 23, 1987. Kruger testified at his bench trial that he was present hanging out on a porch in the area with Cheo (Jose Claudio) and Moises Perez. Shortly after Cheo left the porch, Cheo and a Mexican man (victim Fernando Delgado) got in a scuffle, which ended with Delgado shooting and wounding Cheo. Startled, Kruger ran to the home of three sisters: Carmen, Evelyn, and Maria Rivera to take cover. While knocking on the door, he heard two more gunshots, and he later learned Moises had been shot as

---

[2] The appellate record is included on a jump drive attached to this petition.

well. The Rivera family eventually let Kruger in the door and stay for an hour. At some point, Evelyn told him that she learned the Mexican man got shot and was dead. Ex. 101a.

26.    Statements from Cheo and Perez in initial, non-Guevara police reports within a day of the shooting largely corroborate this testimony. Exs. 101b, 101c. Perez, too, testified at Kruger's trial consistent with these events. R. 120-36. Cheo was deceased by the time of trial. R. 145.

27.    Weeks later, after Guevara became involved in the investigation, each of the three Rivera sisters gave police statements indicating that Kruger confessed to the shooting at the Rivera home, Ex. 101d, 101e, and Carmen and Evelyn testified to the same. R. 43, 91. Unlike the Guevara police report, Maria did not testify to Kruger confessing, but did claim that Kruger gave her a medallion—which she subsequently lost. R. 106-08. The police report documenting this exchange claims that Guevara told Maria the medallion was stolen from the victim. Ex. 101f, at 2 (noted, in all caps, that Maria believed the charm belong to Kruger UNTIL GCSP GUEVARA INFORMED HER DIFFERENTLY"). Kruger denied confessing and maintains his innocence of shooting or robbing Delgado. Ex. 101a.

28.    The only occurrence witness, Edgardo DeValle, also supposedly implicated Kruger weeks later once Guevara got involved in the investigation; the report claims Del Valle was sitting on the front porch of Victor Resto's house with Victor and "Carmen" when he witnessed the events unfold, beginning with the argument between the Cheo and Delgado, followed by the chase with Delgado and Moises Perez, and culminating with Kruger shooting Delgado. Ex. 101g. However, in the initial police report in the day after the shooting—when Guevara was *not* involved in the case—Victor Resto was interviewed and said he was watching television inside his home when they heard the gunshots and looked out the front window, but they did not see any shooting. Ex. 101b. Two other individuals, Luis Resto, and Maria Rodriguez, said the same, and none of them

mentioned Edgar Del Valle was present with them. Ex. 101b. The Guevara-inclusive report also claims Del Valle told police that Kruger confessed to the killing days later and then, in a different conversation, told him he sold the gun. Ex. 101g.

29.    Ultimately Del Valle also testified he witnessed Kruger shoot the victim. However, before his testimony inculpating Kruger, DeValle testified that the police "forced [him] to come to court," Supp. R. 4, and he denied that he told investigators at the police station that he saw Kruger shoot the victim. Supp. R. 8-14. Indeed, Del Valle denied he was out on the street at all or witnessed any part of the events, Supp. R. 3-4, which is more consistent the initial police investigation. However, in the middle of the Friday direct examination, the court, *sua sponte*, suspended the case and admonished Del Valle he could be prosecuted for perjury if he did not tell the truth. Supp. R. 14-18. The court instructed Del Valle to consult with a lawyer over the weekend, and Del Valle's testimony was suspended and picked up after a weekend break.

30.    The following Monday the court learned that Del Valle never spoke to a lawyer, but the prosecutor instructed the court that Del Valle was no longer going to be testifying inconsistently with his prior statements. R. 52-53. Only then did Del Valle resume his testimony on Monday morning and switch his testimony to coincide with his statements in police custody and implicate Kruger. R. 57-86. However, even then, he denied certain aspects of the police report, such as ever saying he was with "Carmen" on the porch at the Resto residence. R. 71, 84; *see also* Ex. 101g, at 2.

31.    All of the Rivera sisters, ███████████, are deceased. ██████ told investigator Cindy Chekingo that prior to May 1987, ████████████████████████████████ ████████████████████ She was terrified and paralyzed of Guevara. She remembers the day she heard a series of gunshot, a knock on the door, and letting Kruger in. ██████ denied that

Kruger ever made any admissions to her or even talking to him substantively that night. ▮▮▮▮ recalls Guevara coming to her home at times after the shooting; she recalls little of these interactions, nor even testifying in court, but noted that she was absolutely terrified of Guevara and would have done anything he told her to do. Ex. 101e (redacted in part).

## ARGUMENT

**In light of the extraordinary evidence of the corruption of Reynaldo Guevara and his tactical team, this Court must vacate Petitioner's conviction pursuant to 735 ILCS 5/2-1401**

### A. Legal Standard

29.     A petition filed pursuant to 735 ILCS 5/2-1401 seeks to bring facts to the attention of the trial court that would have precluded entry of a final judgment had the facts been known at the time of entry of the judgment. *People v. Haynes*, 192 Ill. 2d 437 (2000).

30.     Although the petition must be filed in the same proceeding as the original judgment, the petition is a separate action. 735 ILCS 5/2-1401(b).

31.     The burden of proof for a section 2-1401 petition is a preponderance of the evidence. *Smith v. Airoom, Inc.,* 114 Ill. 2d 209, 221 (1986).

32.     Although section 2-1401 is a civil remedy, its remedial powers extend to criminal matters. *People v. Pinkonsly*, 207 Ill. 2d 555, 562 (2003).

33.     A section 2-1401 petitioner is entitled to relief if (1) a meritorious defense or claim exists, and (2) the petitioner exercised due diligence in both presenting the defense or claim the original action and in filing the section 2-1401 petition. *Smith*, 114 Ill. 2d at 221. Ultimately, "[r]elief should be granted under section 2-1401 when necessary to achieve justice." *People v. Lawton*, 212 Ill. 2d 285, 298 (2004). It is a "versatile and effective means of pursuing justice" for criminal defendants where the Post-Conviction Hearing Act is unavailable. *Id.* at 299.

11

34.     Illinois law recognizes that a conviction may be vacated under 2-1401 as a result of a claim of actual innocence based on newly discovered evidence. 730 ILCS 5-5-4(c).

35.     Applying *Lawton*, the Illinois Appellate Court has held that a section 2-1401 petition is the proper vehicle for a petitioner to seek to vacate an unconstitutional conviction if he has already completed his sentence or the interests of justice demand relief. *People v. Mathis*, 357 Ill. App. 3d 45, 50 (1st Dist. 2005).

36.     In practice, and in the context of blatant and systemic issues of police misconduct, Illinois courts have routinely granted section 2-1401 petitions filed more than two years after conviction—both at the request of the petitioner and the State. For example, section 2-1401 has been the vehicle used to vacate more than 230 convictions connected to the misconduct of former Chicago Police Sergeant Ronald Watts and his team. It has also been used to vacate convictions of Guevara's victims. *See E.g., People v. Demetrius Johnson,* 91 CR 19833 (Ex. 42); *People v. Rodriguez*, 91-CR-13938 (Ex. 11); *People v. Rios*, 89-CR-16525; *People v. Kelly*, 99 CR 06197(03) (Ex. 13).

**B. Petitioner's pleading is timely**

37.     While a section 2-1401 petition normally must be filed within two years of the conviction in a criminal case, time during which the opposing party (or the police) fraudulently conceal the claim tolls the limitation period. *See People v. McLaughlin*, 324 Ill. App. 3d 909, 918-19 (1st Dist. 2001); 735 ILCS 5/2-1401(c). Time limitations in both post-conviction and civil matters are affirmative defenses that can and should be waived by the State or opposing party when justice warrants. *People v. Boclair*, 202 Ill. 2d 89, 101 (2002); *Dever v. Simmons*, 292 Ill. App. 3d 70, 73 (1st Dist. 1997); *see also supra* page n.1 (State's Attorney Foxx's noting her commitment to rectifying Guevara-related wrongful convictions). Moreover, irrespective of timeliness, section 2-1401 is "versatile and effective means of pursuing justice." *Lawton*, 212 Ill. 2d at 299. It has

been repeatedly used to vacate convictions—even those secured by guilty plea—in the interests of justice or when circumstances change long after the statute of limitations ran. *See Davis*, 145 Ill. 2d at 244.

38.    It is now widely accepted and understood that Guevara engaged in decades of corruption, but that corruption was hidden from criminal defendants, like the Petitioner herein. Accordingly, any and all of the allegations detailed in the attached exhibits that pre-dated the Petitioner's trial in this case were *Brady* material that was required to be disclosed. *See People v. Mitchell*, 2012 IL App (1st) 100907, ¶¶ 71-72 (explaining that under *Kyles v. Whitley*, 514 U.S. 419 (1995), knowledge by any agents of the State, such as police officers, is imputed to the State). This is particularly true of the adverse credibility findings by the Office of Professional Standards (OPS) that predate any of the Petitioner's trials. *See People v. Martinez*, 2021 IL App (1st) 190490, ¶¶ 90-92 (explaining that undisclosed, material documents relating to police misconduct that predate the cases are *Brady* material); *People v. Mack*, 2018 IL App (2d) 170641-U, ¶ 15 (highlighting the "analytical link" between *Brady* and section 2-1401 fraudulent concealment).

39.    All of this information, however, was never provided to the Petitioner and therefore fraudulently concealed from them. *See McLauglin*, 324 Ill. App. 3d at 918-19; 735 ILCS 5/2-1401(c). Any delay in filing, therefore, is tolled. Petitioner cannot be penalized for failing to present these claims in the original action where the facts were withheld from him.

40.    Petitioner, moreover, is bringing this petition not long after the State has publicly announced it no longer stands by Guevara-related convictions. This information provides a new basis to bring a claim.

13

### C.  Petitioner has a meritorious defense in the original action

41.     When the Petitioner's case was adjudicated decades ago, Guevara successfully concealed his corruption. It has now come forth, making Petitioner eligible for relief under 735 ILCS 5/2-1401(c). *See People v. McLaughlin*, 324 Ill. App. 3d 909, 918-19 (1st Dist. 2001).

42.     Similarly, Guevara's acts of coercing false statements and fabricating evidence in Petitioner's case made it impossible for Petitioner to fairly present evidence of their innocence.

43.     The new evidence affixed to this Petition—particularly Guevara's pattern of similar misconduct, demonstrated acts of misconduct in this individual case (such as the horrific misconduct described by ██████████ and the contemporaneous allegations that by Del Valle that police "forced him" to implicate Kruger), and Guevara's assertion of the Fifth Amendment when asked about this investigation—provide a meritorious defense.

44.     In addition, the suppression of the evidence violated Petitioner's rights to due process of law pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). The rule of *Brady* "encompasses evidence known to police investigators, but not to the prosecutor," and withheld impeachment evidence. *People v. Beaman*, 229 Ill. 2d 56, 73 (2008) (citing *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)).

45.     A *Brady* violation is a constitutional error that is never harmless, *People v. Beaman*, 229 Ill. 2d 56, 74 (2008), and a Section 2-1401 petition may "be used to challenge judgments claimed to be defective for legal reasons." *People v. Lawton*, 212 Ill. 2d 285, 297 (2004).

46.     All of the pattern exhibits attached to this Petition is impeachment of Guevara, and the scope of it would more likely than not have led to a different result in all of these cases.

**CONCLUSION**

For these reasons, Petitioner respectfully requests this Court grant this petition and vacate

his conviction.

Respectfully Submitted,

/s/ Joshua A. Tepfer___
Attorney for Petitioner

Joshua Tepfer
Fadya Salem
The Exoneration Project (Atty No. 44407)
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 789-4955
josh@exonerationproject.org
fadya@exonerationproject.org

Anand Swaminathan
Loevy & Loevy
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900
anand@loevy.com

Exhibit S) #

**CIRCUIT COURT OF COOK COUNTY ILLINOIS**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| People of the State of Illinois, | ) | |
| | ) | |
| Respondent, | ) | |
| v. | ) | |
| | ) | |
| Juan Molina, | ) | 96 CR 11502(01) |
| | ) | |
| Petitioner. | ) | |
| | ) | |

---

**PETITION FOR RELIEF FROM JUDGEMENT AND TO VACATE CONVICTIONS
PURSUANT TO 735 ILCS 5/2-1401**

---

The above-captioned Petitioner files this consolidated petition for relief from judgement and to vacate his convictions pursuant to 735 ILCS 5/2-1401. In support of this request, Petitioner states as follows:

**INTRODUCTION**

1.      After decades of advocacy and litigation in Illinois Courts, there is no longer a viable dispute: Former Chicago police detective Reynaldo Guevara was a corrupt police officer who routinely violated citizens constitutional rights when conducting homicide investigations.

2.      Courts and juries alike have concluded that during his lengthy career Guevara engaged in a range of abhorrent and unconstitutional misconduct, including manipulating, threatening, and psychologically and physically coercing witnesses and accused suspects; perjury; and the outright fabrication of statements, police reports, and other evidence. *See People v. Martinez*, 2021 IL App (1st) 190490, ¶ 47 ("Given the staggering breadth of the materials regarding Detective Guevara's involvement in other cases, we succinctly state that those materials reflected a penchant for manipulating witness identifications. Many of his victims were eventually

1

exonerated."); *see id.* at ¶¶ 64, 80 ("Detective Guevara is a malignant blight on the Chicago Police Department and the judicial system" whose "toolbox of coercion was well-stocked with a wide variety of tools"); Ex. 2 (*People v. Demetrius Johnson*, 21 CC 3482 (July 27, 2021)), at 1 ("Mr. Johnson's conviction was based upon evidence both fabricated and concealed by notorious homicide detective Reynaldo Guevara," which at the time the court noted was the "21st conviction vacated owing to the misconduct of Guevara."); Ex. 3 (*People v. Solache/Reyes*, 98 CR 12440, Dec. 13, 2017), at 40-46 (Judge Obbish, the last judicial officer to hear substantive testimony from Guevara after the State granted Guevara immunity in 2017, concluding that Guevara's testimony was replete with "bald faced lies" and his "weak" general denials of physically coercing the Defendants confessions and feigned lack of memory were "not the testimony of a credible witness"); Ex. 4 (*Jacques Rivera v. Reynaldo Guevara et al.*, 12 C 4428) (civil jury finding Guevara liable for violating Jacques Rivera's due process rights, conspiracy in doing so, and intentional inflicting of emotional distress and awarding $17 million in compensatory damages and an additional $75,000 in punitive damages against Guevara).

3.    Since 2017, Guevara himself refuses to defend his own investigations, asserting his Fifth Amendment rights not to incriminate himself when asked any questions relating to his police work. Following well-established legal principles, courts, in turn, routinely have drawn adverse inferences against him and concluded Guevara did, in fact, do what he refused to deny. *See People v. Gibson,* 2018 IL App (1st) 162177, ¶ 5 (courts must draw an adverse inference when a police officer pleads the Fifth and refuses to defend his investigation unless there is a credible reason not to do so). *See e.g.,* Ex. 5 (*People v. David Gecht*, May 25, 2022), at 27 ("The fact that Guevara refused to answer and was nonresponsive to questions, suggests that his investigation in this case

was infected with the same pattern and practice of misconduct. Otherwise, he would have provided substantive answers to deposition questions regarding his investigation.").

4.    In turn, as a matter of due process, courts have repeatedly vacated convictions or granted other relief where Guevara-led investigations led to the ultimate convictions. *See e.gs.*, *id.* at 15, 24, 27 (Judge Kenworthy finding that "Detective Guevara engaged in a pattern and practice of intimidating, threatening, and influencing witnesses in prior homicide investigations, . . . [and Guevara's] pattern and practice of misconduct demonstrates [petitioner's] due process claim"); Ex. 6 (*People v. David Colon*, July 8, 2022), at 31-32 (Judge Atcherson holding that relief was required as a matter of due process because "[i]t is now undisputed that former Detective Guevara, motivated by a desire to close cases regardless of whether he had found the actual perpetrator, engaged in multiple and repeated instances of police misconduct which took carious forms"); Ex. 7 (*People v. Juan & Rosendo Hernandez*, 97 CR 21329, July 14, 2022) at 3-13 (Judge Rosado finding that Guevara conspired with Joseph Miedzianowski to violate the Hernandez brothers due process rights in a multitude of ways, including by manipulating witness identifications, fabricating police reports by intentionally misreporting alibi and other police statements, and committing perjury by falsely testifying about those same alibi statements); Ex. 8 (*People v. Gabriel Solache and Arturo Reyes*, 98 CR 122440, June 29, 2016), at 36 (Judge Obbish finding that "petitioners have made a substantial showing they were denied their constitutional right to due process").

5.    In total, Petitioner is aware of 44 individuals whose overturned convictions were tied to Guevara. Courts have granted relief from convictions in trials and pleas, alike, and whether the claims invoked the Post-Conviction Hearing Act or section 2-1401 of the Code of Civil Procedure, 735 ILCS 5/2-1401. *See e.gs.*, Exs. 9-10 (*People v Marilyn Mulero & Madeline*

*Mendoza*, 92CR13088(02), (03) (Orders vacating convictions and pleas, including Mendoza's via section 2-1401); Ex. 11 (*People v. Daniel Rodriguez*, 91 CR 13938. April 25, 2022) (Order granting section 2-1401 petition following trial conviction based on new evidence of Guevara's misconduct); Ex. 13 (*People v. Thomas Kelly & Jose Tinajero*, 99 CR 06197, Jan. 31, 2024) (most recent Orders granting relief to Guevara victims, one of which was via 2-1401 and one via the Post-Conviction Hearing Act).

6.      Since August 2022, the Cook County State's Attorney's Office has agreed that convictions tied to Guevara's investigations are unreliable and should be vacated.[1] Petitioner is unaware of a single Guevara-related collateral petition the State has contested since August 2022, or that any court has ultimately refused to overturn. Well over a majority of those individuals were later awarded certificates of innocence. *See* Exs. 12, 14 (identifying 25 COIs in Guevara-related overturned convictions).

---

[1] On August 9, 2022, the Cook County State's Attorney appeared in court and withdrew their objection to eight pending post-conviction matters in cases Guevara investigated. State's Attorney Foxx noted as follows:

"[W]e cannot stand by these convictions based on the serious allegations of misconduct and findings of credibility against Detective Guevara." *See* Dana Kozlov, Marissa Parra, *7 murder convictions linked to disgraced CPD Det. Reynaldo Guevara thrown out*, CBS2, Aug. 9, 2022, at https://www.cbsnews.com/chicago/news/eight-murder-convictions-vacated-chicago-police-detective-reynaldo-guevara-cook-county-states-attorney-kim-foxx/

"Even in cases where we still have questions about guilt, where we are not affirming actual innocence, the taint of detective Guevara is such that we cannot stand behind them any further." *See* Melissa Segura, *Seven People Who've Served Decade In Prison Had Their Murder Convictions Over Alleged Abuse By a Chicago Cop*, BuzzFeed News, Aug. 9, 2022, at https://www.buzzfeednews.com/article/melissasegura/guevara-chicago-murder-exoneration.

"When it became clear that the allegations of misconduct against Guevara had significant merit, we could no longer stand behind these convictions where individuals spent decades incarcerated, devastating families and communities in Chicago. The Cook County State's Attorney's Office . . . will continue to address and investigate claims of wrongful convictions based on the evidence and the law." *See* Press Release, *Cook County State's Attorney Kimberly Foxx Announces Dismissal of Murder Cases Tied to Former Chicago Police Detective Reynaldo Guevara*, Aug. 9, 2022, at https://www.cookcountystatesattorney.org/news/cook-county-state-s-attorney-kimberly-foxx-announces-dismissal-murder-cases-tied-former-chicago

7.     Like the others before him, Petitioner, too, deserves the same relief, as his arrest and subsequent conviction is clearly tied to a Guevara-led corrupt investigation. Guevara's role in securing the inculpatory testimony is clear from the police reports and testimony, yet Guevara now refuses to defend this very same investigation, asserting the Fifth Amendment. Ex. 1.

8.     Given the supporting facts of this case, Petitioner is entitled to relief as a matter of due process like the dozens of Guevara-victims before them. This Court should vacate Petitioner's conviction.

## FACTUAL BACKGROUND

### A.  Brief overview of the evidence of Guevara's pattern of misconduct

9.     Many of the court decisions cited above document the conclusions about Guevara's range of misconduct. These conclusions, of course, are not in the abstract and are based upon overwhelming documentary and testimonial evidence, a portion of which is attached as exhibits to this pleading.

10.     Guevara manipulates, threatens, coerces, and physically harms witnesses and accused suspects to give false statements and testimony. Exs. 15-41 (sworn testimony and affidavits alleging precisely that).

11.     Guevara creates false police reports out of whole cloth and hides the real, accurate ones. *See* Ex. 42 (various materials in the Demetrius Johnson matter, showing that Guevara literally drafted a fake/false lineup report and hid the true, exculpatory lineup report to frame the 15-year-old Johnson, who has since been certified innocent).

12.     Guevara fabricates witness and suspect statements, particularly as it relates to alibi evidence so that accused defendants cannot later defend against the false allegations in court. *See* Exs. 42-48 (examples of witness testimony and supporting materials showing that Guevara

5

fabricated police reports by purposefully mis-documenting alibi or other statements, thereby ensuring the accused cannot defend against Guevara's false charges—each of these examples are in cases of individuals who have been exonerated).

13. Guevara uses fake informants. Ex. 49 (statement and testimony of Francisco Vicente, who has now sworn under oath multiple times that Guevara manipulated and forced him to falsely implicate five different innocent individuals (Geraldo Iglesias, Robert Bouto, Jose Montanez, Armando Serrano, and George Pacheco), each of whom has been exonerated and/or received certificates of innocence).

14. Guevara conspires with notorious corrupt police officers like Joseph Miedzianowski, Ex. 7, or his long-time partner Ernest Halvorsen—the latter of which courts have also found has his own pattern of misconduct—to frame perceived threats to his corrupt police activities. Ex. 11; *see also* Ex. 64 (*People v. Reynaldo Munoz*, 85 C 12403, Feb. 22, 2022) (Judge Atcherson finding that Halvorsen has his own pattern of unconstitutional misconduct in a case Guevara is otherwise uninvolved). *See also* Exs. 50-51 (testimony from Fred Rock and Jondalyn Fields showing how Guevara conspired with Miedzianowski to frame Juan and Rosendo Hernandez, both of whom have been certified innocent); Ex. 52 (FBI Report documenting statement of Mohamed Omar, connecting Guevara and Miedzianowski); Ex. 53 (testimony of George Laureano, describing Guevara conspiring with Miedzianowski in a criminal conspiracy).

15. Accused suspects have repeatedly asserted these horrific allegations. *See e.g.* Exs. 15-21 (sworn testimony from seven men—all wrongfully convicted and six of whom have certificates of innocence—describing Guevara coercing their false confessions).

16. Victims and innocent third party witnesses corroborate it. *See* Exs. 22-32 (various sworn statements and testimony showing Guevara's manipulation of witness identifications, all in

6

cases where the accused was later exonerated, including, for example, Jose E. Melendez (Ex. 24), who was a crime victim yet contemporaneously insisted Guevara repeatedly tried to force him to implicate an innocent person); Exs. 33-41 (various other sworn statements corroborating Guevara's coercive questioning, threats, manipulation, and unconstitutional investigations in other cases).

17.     Respected defense attorneys have witnessed it. Ex. 54 (testimony of attorney Kent Brody describing Guevara's manipulation and lies during lineup procedures in the Juan and Rosendo Hernandez matter—both certified innocent); Ex. 55 (testimony of James Saltouros indicating the same in the matter of John Martinez, who has been exonerated); Ex. 56 (testimony of John Deleon describing the lies and manipulation of Guevara in the Iglesias and Martinez matters—both of whom have been exonerated).

18.     Felony review prosecutors' testimony has confirmed it. *See* Ex. 7, at 12 (court ruling in Hernandez case describing how felony review ASA testimony contemporaneously confirmed Guevara fabricated reports regarding the accused's alibis).

19.     Whistleblowing police officers have testified and spoken up about it. Ex. 57 (testimony of former CPD detective Bill Dorsch describing Guevara's manipulation of witness identifications that he personally witnessed); Ex. 58, at 194-96 (testimony of Ron Malczyk confirming that Guevara fabricated or lied in a report).

20.     City of Chicago investigations have confirmed it. Ex. 59 (three reports by former U.S. Attorney Scott Lassar commissioned by the City of Chicago concluding that Guevara fabricated evidence and committed misconduct in multiple cases).

21.     The Office of Professional Standards (OPS) has concluded Guevara lies. Ex. 60-63 (a series of OPS reports and sustained findings against Guevara spanning from 1986-2000

concluding that Guevara's denials of allegations of various forms of misconduct were not credible).

22. Judges and juries have adjudicated it. Exs. 2-14; *Martinez*, 2021 IL App (1st) 190490; *People v. Gomez*, 2021 IL App (1st) 192020, ¶ 58; *People v. Gonzalez*, 2016 IL App (1st) 141660, ¶¶ 34, 57; *People v. Serrano*, 2016 IL App (1st) 133493, ¶ 18; *People v. Montanez*, 2016 IL App (1st) 133726; *People v. Almodovar*, 2013 IL App (1st) 101476; *People v. Reyes*, 369 Ill. App. 3d 1, 21 (1st Dist. 2006) (all commenting on Guevara's pattern of unconstitutional misconduct).

23. And Guevara never denies it. *See, e.g.*, Ex. 1 (Guevara asserting the Fifth Amendment when questioned about his investigations).

## B. Factual Background of Petitioner's Case

24. On March 16, 1996, William de Jesus (a.k.a. Billy) was murdered. Billy was not a gang member but associated with members of the Latin Kings. Two weeks later, on March 30, 1996, Aaron Love, a Spanish Cobra, was shot and killed in what police suspected was retaliation for Billy's murder. Ex. 102a.

25. Detectives Guevara and Halvorsen were assigned to investigate both cases. *Id*. The case against Molina for the murder of Aaron Love was riddled with Guevara at every stage—initial investigation, arrest, lineup identification, interrogation, and testimony at a pretrial motion to suppress hearing. When confronted about his misconduct in this case, Guevara refused to answer questions and asserted his fifth amendment right against self-incrimination in response to every question, including questions about manipulating witnesses and fabricating evidence against Molina. Ex. 1.

26.     Guevara had interviewed Molina as a witness to Billy's murder and knew Molina and Billy were friends. Ex. 102a. In a familiar pattern, Guevara claimed there was an "anonymous tip"—a now well-established *modus operandi* of Guevara—that "word in the neighborhood was that Juan Molina had killed a Cobra." *Id.*

27.     Guevara used false pretenses to get Molina to the station by saying he had more questions about Billy. Molina testified at a pretrial hearing that while at the station, Guevara again tricked Molina into agreeing to be photographed by claiming that the judge and other detectives working on Billy's case would know who he was with his photograph. Exs. 102b, 102c. Molina was released.

28.     Guevara then showed Molina's photograph to Nector Hernandez, a Spanish Cobra, who supposedly identified Molina in photo array. Ex. 102a. The next day, Guevara arrested Molina, and Hernandez identified Molina in a lineup that Guevara orchestrated. Ex. 102e.

29.     Just days earlier in the Love investigation, Hernandez identified a different person—a Latin King named Robert Rodriguez—in a photo array after police learned from Billy's mother that Rodriguez may have been the intended target of the shooting that killed Billy. Ex. 102d.

30.     The only other eyewitness to Love's murder, Gabriel Ruiz, did not make any identification. *Id.*

31.     Multiple attempts by post-conviction counsel to speak with Hernandez, Ruiz, and Adan Najera, Molina's co-defendant, have been unsuccessful. Exs. 102k, 102l. According to the online court docket, a warrant was issued for Najera on November 12, 1997, and this case against him remains active. Ex. 102f.

32.     At the time of Molina's custody, the sole evidence against him was the single eyewitness identification by Hernandez, who had already documented an identification of a different person. No physical or forensic evidence pointed to Molina. Likely recognizing the weaknesses in the case, Guevara physically and psychologically coerced a confession from Molina.

33.     Indeed, Molina said precisely that three decades ago. In multiple pretrial pleadings, Molina documented Guevara's abuse during the interrogation: Guevara hit him and threatened further physical violence; Molina asked for an attorney and was not afforded one; Molina was threatened that he would get 20 years to life if he did not cooperate; and Molina was promised he would get an I-Bond and could go home to see his mother if he cooperated. Exs. 102c, 102g, 102h.

34.     Molina, who was only 17 years old at the time, succumbed to Guevara's abuse and coercion and gave a false confession. Ex. 102i.

35.     After litigating and losing multiple pretrial motions related to Guevara's misconduct, Molina made the impossible decision to accept a plea offer of 25 years for a crime he did not commit to avoid the risk of spending the rest of his life in prison. Ex. 102j.

## ARGUMENT

**In light of the extraordinary evidence of the corruption of Reynaldo Guevara and his tactical team, this Court must vacate Petitioner's conviction pursuant to 735 ILCS 5/2-1401**

### A.  Legal Standard

36.     A petition filed pursuant to 735 ILCS 5/2-1401 seeks to bring facts to the attention of the trial court that would have precluded entry of a final judgment had the facts been known at the time of entry of the judgment. *People v. Haynes*, 192 Ill. 2d 437 (2000).

37.     Although the petition must be filed in the same proceeding as the original judgment, the petition is a separate action. 735 ILCS 5/2-1401(b).

10

38.    The burden of proof for a section 2-1401 petition is a preponderance of the evidence. *Smith v. Airoom, Inc.,* 114 Ill. 2d 209, 221 (1986).

39.    Although section 2-1401 is a civil remedy, its remedial powers extend to criminal matters. *People v. Pinkonsly*, 207 Ill. 2d 555, 562 (2003).

40.    A section 2-1401 petitioner is entitled to relief if (1) a meritorious defense or claim exists, and (2) the petitioner exercised due diligence in both presenting the defense or claim the original action and in filing the section 2-1401 petition. *Smith*, 114 Ill. 2d at 221. Ultimately, "[r]elief should be granted under section 2-1401 when necessary to achieve justice." *People v. Lawton*, 212 Ill. 2d 285, 298 (2004). It is a "versatile and effective means of pursuing justice" for criminal defendants where the Post-Conviction Hearing Act is unavailable. *Id.* at 299.

41.    Illinois law recognizes that a conviction may be vacated under 2-1401 as a result of a claim of actual innocence based on newly discovered evidence. 730 ILCS 5-5-4(c).

42.    Applying *Lawton*, the Illinois Appellate Court has held that a section 2-1401 petition is the proper vehicle for a petitioner to seek to vacate an unconstitutional conviction if he has already completed his sentence or the interests of justice demand relief. *People v. Mathis*, 357 Ill. App. 3d 45, 50 (1st Dist. 2005).

43.    In practice, and in the context of blatant and systemic issues of police misconduct, Illinois courts have routinely granted section 2-1401 petitions filed more than two years after conviction—both at the request of the petitioner and the State. For example, section 2-1401 has been the vehicle used to vacate more than 230 convictions connected to the misconduct of former Chicago Police Sergeant Ronald Watts and his team. It has also been used to vacate convictions of Guevara's victims. *See E.g., People v. Demetrius Johnson,* 91 CR 19833 (Ex. 42); *People v.*

*Rodriguez*, 91-CR-13938 (Ex. 11); *People v. Rios*, 89-CR-16525; *People v. Kelly*, 99 CR 06197(03) (Ex. 13).

### B. Petitioner's pleading is timely

44.     While a section 2-1401 petition normally must be filed within two years of the conviction in a criminal case, time during which the opposing party (or the police) fraudulently conceal the claim tolls the limitation period. *See People v. McLaughlin*, 324 Ill. App. 3d 909, 918-19 (1st Dist. 2001); 735 ILCS 5/2-1401(c). Time limitations in both post-conviction and civil matters are affirmative defenses that can and should be waived by the State or opposing party when justice warrants. *People v. Boclair*, 202 Ill. 2d 89, 101 (2002); *Dever v. Simmons*, 292 Ill. App. 3d 70, 73 (1st Dist. 1997); *see also supra* page n.1 (State's Attorney Foxx's noting her commitment to rectifying Guevara-related wrongful convictions). Moreover, irrespective of timeliness, section 2-1401 is "versatile and effective means of pursuing justice." *Lawton*, 212 Ill. 2d at 299. It has been repeatedly used to vacate convictions—even those secured by guilty plea—in the interests of justice or when circumstances change long after the statute of limitations ran. *See Davis*, 145 Ill. 2d at 244.

45.     It is now widely accepted and understood that Guevara engaged in decades of corruption, but that corruption was hidden from criminal defendants, like the Petitioner herein. Accordingly, any and all of the allegations detailed in the attached exhibits that pre-dated the Petitioner's trial in this case were *Brady* material that was required to be disclosed. *See People v. Mitchell*, 2012 IL App (1st) 100907, ¶¶ 71-72 (explaining that under *Kyles v. Whitley*, 514 U.S. 419 (1995), knowledge by any agents of the State, such as police officers, is imputed to the State). This is particularly true of the adverse credibility findings by the Office of Professional Standards (OPS) that predate any of the Petitioner's trials. *See People v. Martinez*, 2021 IL App (1st) 190490, ¶¶ 90-92 (explaining that undisclosed, material documents relating to police misconduct that

predate the cases are *Brady* material); *People v. Mack*, 2018 IL App (2d) 170641-U, ¶ 15 (highlighting the "analytical link" between *Brady* and section 2-1401 fraudulent concealment).

46.     All of this information, however, was never provided to the Petitioner and therefore fraudulently concealed from him. *See McLauglin*, 324 Ill. App. 3d at 918-19; 735 ILCS 5/2-1401(c). Any delay in filing, therefore, is tolled. Petitioner cannot be penalized for failing to present these claims in the original action where the facts were withheld from him.

47.     Petitioner, moreover, is bringing this petition not long after the State has publicly announced it no longer stands by Guevara-related convictions. This information provides a new basis to bring a claim.

### C. Petitioner has a meritorious defense in the original action

48.     When the Petitioner's case was adjudicated decades ago, Guevara successfully concealed his corruption. It has now come forth, making Petitioner eligible for relief under 735 ILCS 5/2-1401(c). *See People v. McLaughlin*, 324 Ill. App. 3d 909, 918-19 (1st Dist. 2001).

49.     Similarly, Guevara's acts of coercing false statements and fabricating evidence in Petitioner's case made it impossible for Petitioner to fairly present evidence of his innocence.

50.     The new evidence affixed to this Petition—particularly Guevara's pattern of similar misconduct and Guevara's assertion of the Fifth Amendment when asked about this investigation—provide a meritorious defense. The new evidence of the pattern of Guevara's misconduct is particularly probative here given the fact that Molina contemporaneously alleged Guevara's unconstitutional misconduct during interrogation—and litigated the claim in a pretrial hearing. Had the trier-of-fact heard the evidence of Guevara's practice of engaging in exactly the type of unconstitutional misconduct Molina alleged, his confession would have been suppressed and he would have been entitled to relief. *See e.g.*, Exs. 15-21 (exonerated Guevara victims who

13

all alleged that Guevara coerced their confessions); *see also* Exs. 3, 8 (Judge Obbish orders pertaining to the pattern of Guevara's misconduct in coercing confessions and suppressing the confessions of Gabriel Solache and Arturo Reyes).

36.     Furthermore, the new evidence of Guevara's pattern of fabricating police reports by falsely documenting alibis, like he did in Petitioner's case (*see* ex. 102j), provides evidence that undermines Petitioner's conviction. *See* Exs. 42-48 (examples of cases of exonerated individuals where Guevara fabricated police reports by purposefully mis-documenting alibi or other statements, thereby ensuring the accused cannot defend against Guevara's false charges).

51.     In addition, the suppression of the evidence violated Petitioner's rights to due process of law pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). The rule of *Brady* "encompasses evidence known to police investigators, but not to the prosecutor," and withheld impeachment evidence. *People v. Beaman*, 229 Ill. 2d 56, 73 (2008) (citing *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)).

52.     A *Brady* violation is a constitutional error that is never harmless, *People v. Beaman*, 229 Ill. 2d 56, 74 (2008), and a Section 2-1401 petition may "be used to challenge judgments claimed to be defective for legal reasons." *People v. Lawton*, 212 Ill. 2d 285, 297 (2004).

53.     All of the pattern exhibits attached to this Petition is impeachment of Guevara, and the scope of it would more likely than not have led to a different result in all of these cases.

## CONCLUSION

For these reasons, Petitioner respectfully requests this Court grant this petition and vacate his conviction.

Respectfully Submitted,

/s/ Fadya Salem___
Attorney for Petitioner

Joshua Tepfer
Fadya Salem
The Exoneration Project (Atty No. 44407)
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 789-4955
josh@exonerationproject.org
fadya@exonerationproject.org

Anand Swaminathan
Loevy & Loevy
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900
anand@loevy.com

Exhibit SS

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT-CRIMINAL DIVISION**

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| | ) | |
| | ) | |
| vs. | ) | Case No. 89 CR 23080(01) |
| | ) | |
| | ) | |
| EDWIN ORTIZ, | ) | |
| Defendant. | ) | |
| | ) | |

---

**PETITION FOR RELIEF FROM JUDGEMENT AND TO VACATE CONVICTIONS**
**PURSUANT TO 735 ILCS 5/2-1401**

---

The above-captioned Petitioner files this consolidated petition for relief from judgement and to vacate his convictions pursuant to 735 ILCS 5/2-1401. In support of this request, Petitioner states as follows:

**INTRODUCTION**

1. After decades of advocacy and litigation in Illinois Courts, there is no longer a viable dispute: Former Chicago police detective Reynaldo Guevara was a corrupt police officer who routinely violated citizens constitutional rights when conducting homicide investigations.

2. Courts and juries alike have concluded that during his lengthy career Guevara engaged in a range of abhorrent and unconstitutional misconduct, including manipulating, threatening, and psychologically and physically coercing witnesses and accused suspects; perjury; and the outright fabrication of statements, police reports, and other evidence. *See People v. Martinez*, 2021 IL App (1st) 190490, ¶ 47 ("Given the staggering breadth of the materials regarding Detective Guevara's involvement in other cases, we succinctly state that those materials reflected a penchant for manipulating witness identifications. Many of his victims were eventually

1

exonerated."); *see id.* at ¶¶ 64, 80 ("Detective Guevara is a malignant blight on the Chicago Police Department and the judicial system" whose "toolbox of coercion was well-stocked with a wide variety of tools"); Ex. 2 (*People v. Demetrius Johnson*, 21 CC 3482 (July 27, 2021)), at 1 ("Mr. Johnson's conviction was based upon evidence both fabricated and concealed by notorious homicide detective Reynaldo Guevara," which at the time the court noted was the "21st conviction vacated owing to the misconduct of Guevara."); Ex. 3 (*People v. Solache/Reyes*, 98 CR 12440, Dec. 13, 2017), at 40-46 (Judge Obbish, the last judicial officer to hear substantive testimony from Guevara after the State granted Guevara immunity in 2017, concluding that Guevara's testimony was replete with "bald faced lies" and his "weak" general denials of physically coercing the Defendants confessions and feigned lack of memory were "not the testimony of a credible witness"); Ex. 4 (*Jacques Rivera v. Reynaldo Guevara et al.*, 12 C 4428) (civil jury finding Guevara liable for violating Jacques Rivera's due process rights, conspiracy in doing so, and intentional inflicting of emotional distress and awarding $17 million in compensatory damages and an additional $75,000 in punitive damages against Guevara).

3. Since 2017, Guevara himself refuses to defend his own investigations, asserting his Fifth Amendment rights not to incriminate himself when asked any questions relating to his police work. Following well-established legal principles, courts, in turn, routinely have drawn adverse inferences against him and concluded Guevara did, in fact, do what he refused to deny. *See People v. Gibson,* 2018 IL App (1st) 162177, ¶ 5 (courts must draw an adverse inference when a police officer pleads the Fifth and refuses to defend his investigation unless there is a credible reason not to do so). *See e.g.*, Ex. 5 (*People v. David Gecht*, May 25, 2022), at 27 ("The fact that Guevara refused to answer and was nonresponsive to questions, suggests that his investigation in

this case was infected with the same pattern and practice of misconduct. Otherwise, he would have provided substantive answers to deposition questions regarding his investigation.").

4.   In turn, as a matter of due process, courts have repeatedly vacated convictions or granted other relief where Guevara-led investigations led to the ultimate convictions. *See e.gs.*, *id.* at 15, 24, 27 (Judge Kenworthy finding that "Detective Guevara engaged in a pattern and practice of intimidating, threatening, and influencing witnesses in prior homicide investigations, . . . [and Guevara's] pattern and practice of misconduct demonstrates [petitioner's] due process claim"); Ex. 6 (*People v. David Colon*, July 8, 2022), at 31-32 (Judge Atcherson holding that relief was required as a matter of due process because "[i]t is now undisputed that former Detective Guevara, motivated by a desire to close cases regardless of whether he had found the actual perpetrator, engaged in multiple and repeated instances of police misconduct which took carious forms"); Ex. 7 (*People v. Juan & Rosendo Hernandez*, 97 CR 21329, July 14, 2022) at 3-13 (Judge Rosado finding that Guevara conspired with Joseph Miedzianowski to violate the Hernandez brothers due process rights in a multitude of ways, including by manipulating witness identifications, fabricating police reports by intentionally misreporting alibi and other police statements, and committing perjury by falsely testifying about those same alibi statements); Ex. 8 (*People v. Gabriel Solache and Arturo Reyes*, 98 CR 122440, June 29, 2016), at 36 (Judge Obbish finding that "petitioners have made a substantial showing they were denied their constitutional right to due process").

5.   In total, Petitioners are aware of 44 individuals whose overturned convictions were tied to Guevara. Courts have granted relief from convictions in trials and pleas, alike, and whether the claims invoked the Post-Conviction Hearing Act or section 2-1401 of the Code of Civil Procedure, 735 ILCS 5/2-1401. *See e.gs.*, Exs. 9-10 (*People v Marilyn Mulero & Madeline*

3

*Mendoza*, 92CR13088(02), (03) (Orders vacating convictions and pleas, including Mendoza's via section 2-1401); Ex. 11 (*People v. Daniel Rodriguez*, 91 CR 13938. April 25, 2022) (Order granting section 2-1401 position following trial conviction based on new evidence of Guevara's misconduct); Ex. 13 (*People v. Thomas Kelly & Jose Tinajero*, 99 CR 06197, Jan. 31, 2024) (most recent Orders granting relief to Guevara victims, one of which was via 2-1401 and one via the Post-Conviction Hearing Act).

6.   Since August 2022, the Cook County State's Attorney's Office has agreed that convictions tied to Guevara's investigations are unreliable and should be vacated.[1] Petitioners are unaware of a single Guevara-related collateral petition the State has contested since August 2022, or that any court has ultimately refused to overturn. Well over a majority of those individuals were later awarded certificates of innocence. *See* Exs. 12, 14 (identifying 25 COIs in Guevara-related overturned convictions).

---

[1] On August 9, 2022, the Cook County State's Attorney appeared in court and withdrew their objection to eight pending post-conviction matters in cases Guevara investigate. State's Attorney Foxx noted as follows:

"[W]e cannot stand by these convictions based on the serious allegations of misconduct and findings of credibility against Detective Guevara."  *See* Dana Kozlov, Marissa Parra, *7 murder convictions linked to disgraced CPD Det. Reynaldo Guevara thrown out*, CBS2, Aug. 9, 2022, at https://www.cbsnews.com/chicago/news/eight-murder-convictions-vacated-chicago-police-detective-reynaldo-guevara-cook-county-states-attorney-kim-foxx/

"Even in cases where we still have questions about guilt, where we are not affirming actual innocence, the taint of detective Guevara is such that we cannot stand behind them any further." *See* Melissa Segura, *Seven People Who've Served Decade In Prison Had Their Murder Convictions Over Alleged Abuse By a Chicago Cop*, BuzzFeed News, Aug. 9, 2022, at https://www.buzzfeednews.com/article/melissasegura/guevara-chicago-murder-exoneration.

"When it became clear that the allegations of misconduct against Guevara had significant merit, we could no longer stand behind these convictions where individuals spent decades incarcerated, devastating families and communities in Chicago. The Cook County State's Attorney's Office . . . will continue to address and investigate claims of wrongful convictions based on the evidence and the law." *See* Press Release, *Cook County State's Attorney Kimberly Foxx Announces Dismissal of Murder Cases Tied to Former Chicago Police Detective Reynaldo Guevara*, Aug. 9, 2022, at https://www.cookcountystatesattorney.org/news/cook-county-state-s-attorney-kimberly-foxx-announces-dismissal-murder-cases-tied-former-chicago

7.   Like the others before him, Petitioner, too, deserves the same relief, as his arrest and subsequent conviction is clearly tied to a Guevara-led corrupt investigation. Guevara's role in securing the inculpatory testimony is clear from the police reports and testimony, yet Guevara now refuses to defend this very same investigation, asserting the Fifth Amendment. Ex. 106a at 75-85.

8.   Indeed, the very same pattern of misconduct acknowledged by numerous courts and by the Cook County State's Attorney's Office, was used to frame Edwin Ortiz. He was convicted of a 1988 murder based solely on two eyewitness identifications that were dubious from the get-go. The crime occurred at night, and the two witnesses had no more than a few seconds to view the shooter, whose face was partially blocked by a hood. On top of that, both eyewitnesses were attempting to identify a stranger—someone they had no familiarity with—during photo arrays and lineups *that occurred more than a year after the shooting*.

9.   At Edwin Ortiz's bench trial, his attorney tried to highlight the unreliability of the identifications, arguing that Ortiz was the victim of mistaken identifications. But because Guevara's pattern of manipulating eyewitnesses during photo arrays and lineups was not known at the time, the trial court disregarded Ortiz's claims and believed the inculpatory testimony of the two eyewitnesses, Marvin Taylor and Santiago Pagan.

10. In addition, new facts have surfaced that entitle Edwin Ortiz to a new trial. On May 5, 2022, one of the two eyewitnesses, Santiago Pagan, gave a sworn statement revealing that, lo an behold, Guevara had employed his now-established pattern of misconduct in this case. Pagan states that he told Guevara repeatedly that he could not see the perpetrator's face and so he could not identify anyone. Guevara then pointed to Edwin Ortiz and told Pagan to identify him,

pressuring him and even bribing him with money. Pagan swears that when he relented and agreed to identify Ortiz, Guevara paid him. *See* Ex. 106b (Pagan Affidavit).

11. Had these facts not been fraudulently concealed from Ortiz, he would have never been convicted of this crime.

12. For these reasons, and those set forth below, Petitioner Ortiz respectfully asks this Court to vacate his conviction.

## FACTUAL BACKGROUND

### A. The Murder of Jose Morales

13. At 9:30 pm on July 31, 1988, Jose Morales, Marvin Taylor, and Santiago Pagan were in an alley off N. Avers Street, near 1145 N. Avers Street in Chicago, IL, just a few doors away from where Taylor lived. They were sitting in the alley drinking malt liquor.

14. A man walked up and asked them if they knew a person named Chino. A moment later he pulled out a gun. Morales, Taylor and Pagan immediately got up and started running out of the alley to Avers Street.

15. The gunman started shooting, killing Morales. Taylor was hit in his right midsection but survived, and Pagan was not hit.

### B. The Initial Police Investigation[2]

16. When the police interviewed Marvin Taylor at the hospital in the hours after the shooting, Taylor initially provided a description of the shooter, as follows: approximately 20 years old, 5'8"-5'9" (Taylor was 5'6" at the time, and described the shooter as two to three inches taller than him), with black hair and light complexion. R. B-41, 44-45. By his own admission, when

---

[2] The appellate records is included on a jump drive attached to this petition. Citations to the record of the criminal proceedings are presented below as "R. ___."

the shooter approached he was wearing a hoodie over his head and "had his face covered," "trying to hide his face." R. B-37, 48-49.

17. Santiago Pagan was also interviewed by police. He also described the shooter as having a hoodie over his head, and blue corduroy pants. R. B-75, 77. Pagan described the shooter as approximately 18-20 years old, and 5'6"-5'7", with a light complexion and a mustache. R. B-75-76.

18. Edwin Ortiz in no way fit these descriptions. At the time of the crime, he was **fourteen years old**, and was known by the nickname "Pee Wee" because of his small stature. R. D-16-19. According to an arrest report from February 1989, approximately seven months after the crime, Ortiz is listed as 5'2", with brown complexion. Ex. 106c (Ortiz Arrest Report); R. D-21 (stipulated at trial that Ortiz was 5'2" in February 1989, more than four months after the Morales shooting). Ortiz's sister, Maria Sanchez, testified at trial that in July 1988, he was 5'1"-5'2". R. D-13-15. Another witness, Pedro Aponte, testified that in July 1988 Ortiz was approximately 5 feet tall.

19. Taylor remained in the hospital for several months and then eventually discharged. B-53. Shortly after his release, officers came to his residence and showed him fifteen books of photos to see if he could identify anyone as the perpetrator. Taylor looked through some of the books but was not able to make any identification. R. B-55-56. The police stopped and did not have him finish going through all the books because of his physical condition at the time. *Id.*

20. The gangbook identification procedure the police conducted with Taylor in or around September or October 1988 was not documented in any police reports or notes. Thus, it is unknown whether Ortiz's photo was included among the photos Taylor was shown. *Id.*; *see also* R. B-56.

21. With no leads, the investigation went dormant for almost a year.

### C. Reinvestigation by Gang Crimes Officer Points to Alternate Suspect, Pedro Aponte

22. On July 11, 1989, Gang Crimes Officers Joseph Sparks and Joseph Fallon visited Marvin Taylor to show him a photo array containing a suspect in the Morales murder investigation, Pedro Aponte.

23. Aponte became a suspect based on the initial investigation indicating that the perpetrator referenced a person named Chino just before firing shots. Gang crimes officers knew who Chino was, and knew him to be an associate of Pedro Aponte, and that Chino and Aponte were both in custody for a different murder at the time. Ex. 106d (Vucko July 11, 1988 Report).

24. Officers Sparks and Fallon showed Taylor a set of six photos, from which Taylor identified Pedro Aponte, the suspect, as the shooter. *Id.*

25. Aponte fit the descriptions initially provided by Taylor and Pagan. At the time of the Morales shooting, Aponte was 18 years old. In a March 17, 1988 arrest report, just a few months before the shooting, Aponte is described as 5'9", 150 pounds, with black hair and light complexion. Ex. 106e (Aponte Arrest Report).

26. Despite this lead, the case took a very different turn when Reynaldo Guevara entered the picture.

### D. Guevara Suddenly Enters the Picture, and The Investigation Shifts to Ortiz

27. On September 6, 1989, Guevara—at that time, still a Gang Crimes Specialist before his promotion to detective—drove to Marvin Taylor's house and showed him a set of photos including Edwin Ortiz. According to Guevara, Taylor went through the photos and now identified Ortiz as the shooter. Ex. 106f (Guevara Sept. 6 Report).

28. There is no explanation provided for why Guevara got involved in the case on September 6, 1989, or how Taylor went from identifying 18-year old Pedro Aponte to now identifying 14-year old Edwin Ortiz. *Id.*

29. According to the cleared closed report, Ortiz was included in the photos shown to Taylor because he was known to associate with a person who went by the nickname Chino, the name the perpetrator mentioned before pulling out a gun and shooting Morales and Taylor. Ex. 106g (Cleared Closed Report).

30. However, at trial Guevara provided a very different explanation. According to Guevara, he brought a book of photos containing juvenile members of the Latin Disciples and Folks. R. B-93. Ortiz was associated with the Latin Disciples, and included in the book. His explanation for why he brought that particular book of photos was not that Ortiz had any known connection to a person named Chino; it was simply because the crime was committed in an area controlled by Folks gangs, to which the Latin Disciples belonged. R. B-95. Guevara provided no explanation for the contradiction between his testimony and the cleared closed report; or why, of all the Folks-affiliated gangs, he chose the Latin Disciples; or why he chose a book of juvenile photos, given that the eyewitnesses Taylor and Pagan had described the shooter as 18-20 years old.

31. There are several other highly suspicious aspects of Guevara's sudden decision to switch the focus of the investigation from Aponte to Edwin Ortiz.

    a. Remarkably, on September 7, 1989, **one day after** Guevara got Taylor's purported identification of Ortiz, detectives Vucko and Kato wrote a report claiming that **back on July 27, 1989**, Pedro Aponte had been brought to the police station and placed in live lineups viewed by Taylor and Pagan. According

to the report, both witnesses failed to identify Pagan. Ex. 106h (Vucko Sept. 7, 1989 Supp. Report).

    b.    No explanation is contained in the police record, or at the trial, for why it took a month and a half to write a report regarding the negative identification of Aponte, or why it conveniently came one day after Ortiz had purportedly been identified. In addition, there is no evidence of a lineup report, or lineup photos, related to the purported July 27, 1989 lineups excluding Aponte.

32. With Aponte now out of the story, Guevara quickly closed the case against Ortiz. On September 29, 1989, Ortiz was brought to Area 4 for an in-person lineup. Guevara picked up Pagan and Taylor from their homes to view the lineups. R. B-110. According to police reports, Taylor and Pagan both positively identified Ortiz from separate lineups.

33. Based only on the identifications of Pagan and Taylor fifteen months after the shooting, Ortiz was arrested and charged with murder.

34. There was no physical evidence, or any other evidence of any kind, connecting Ortiz to the shooting of Morales.

35. Nor is there any explanation for how Marvin Taylor went from identifying Santiago Pagan in July 1989, to identifying Edwin Ortiz two months later.

36. Below is Aponte's picture from September 1988. Ex. 106i (Aponte arrest photo).

10



37. Indeed, Ortiz did not look anything like Aponte. Below is a photo CPD officers took of Ortiz when he was arrested in February 1989. Ex. 106j (Ortiz arrest photo). Aponte could not possibly have been mistaken for 14-year old Edwin Ortiz.



38. Guevara and Detectives Vucko and Kato appeared to recognize the problem with Taylor's earlier identification of Aponte. At trial detective Vucko testified that Taylor's July 1989 identification of Apointe had been a tentative identification. R. B-102.

39. But this testimony is contradicted by contemporaneous police records. In Vucko's own July 11 police report, written the same day that Sparks obtained the photo array identification of Aponte, Vucko made no mention of Taylor's identification having been tentative. Instead, he described it as follows: "Taylor was shown a group of 6 C.P.D. photos including a photo of

Pedro Aponte*. **From these photos Marvin Taylor identified Pedro Aponte as the offender wanted for this offense**, arrangements will be made to have witnesses of this homicide view subject Pedro Aponte." Ex. 106d (Vucko July 11 Report).

40. The police record for this homicide contains no notes, reports, or other documentation from Sparks or Fallon indicating that Taylor's identification of Aponte had been tentative.

41. Remarkably, but all too common in cases involving Guevara, the homicide investigation in this case is devoid of any general progress reports or other forms of handwritten notes contemporaneously documenting the police investigation. Relatedly, there is no documentation of the typical efforts to pursue a lead, such as an interview of Aponte, efforts to collect physical evidence connecting Aponte to the crime, or efforts to corroborate (or disprove) his alibi.

## PROCEDURAL HISTORY

### A. Pre-Trial Proceedings

42. The defense moved to suppress the identifications of Ortiz by Taylor and Pagan, which were denied after the Court's finding of guilt. R. F-32.

### B. Benitez's Criminal Trial

43. At trial, the State's case hinged on the reliability of the eyewitness identifications of Marvin Taylor and Santiago Pagan. Plaintiff's attorney Jospeh Lopez argued that the two witnesses' identifications of Ortiz were unreliable, given the circumstances of the crime, the initial descriptions that described someone significantly older and heavier than Ortiz, and the passage of more than a year from the crime to the identifications.

44. There was no weapon, crime scene, or other physical or forensic evidence whatsoever connecting Ortiz to the crime.

45. The State's witnesses were Marvin Taylor, Santiago Pagan, Robert T. Baikie (police forensic investigator who worked on the shooting), Reynaldo Guevara, Ralph Vucko (Area 4 Violent Crimes Unit for CPD), and Officer Joseph Sparks.

46. As explained above, Taylor and Pagan each identified Edwin Ortiz.

47. Reynaldo Guevara testified to his central role in building the case against Ortiz. Guevara testified that on September 6, 1989, he took photographs from a juvenile book of Latin Disciples and Folks to Marvin Taylor, who positively identified Ortiz. R. B-93-94.

48. Detective Vucko testified to his role in obtaining the lineup identifications of Ortiz by Pagan and Taylor in September 1989. R. B-103-106. He further acknowledged that before the lineups, it was Guevara who brought both Taylor and Pagan to Area 4 for the lineups. R. B-110.

49. Witnesses for the Defense were Frank Tobin, Maria Sanchez, and Pedro Aponte. All three witnesses testified to Ortiz's small stature. Frank Tobin worked at the Cook County Juvenile Temporary Detention Center school and testified that Ortiz was called Pee Wee because he was so physically small. R. D-11-12. Maria Sanchez, Ortiz's sister, testified that in July 1988 he was 5'1"or 5'2" tall. R. D-14. And Pedro Aponte testified that Ortiz was approximately 5 feet tall in July 1988, and was called Pee Wee because he was so small. R D-17-18.

**C. Conviction, Sentence, and Direct Appeal**

50. On May 3, 1993, the Judge found Ortiz guilty of first-degree murder and attempted murder. R. F-31.

51. On June 9, 1993, Ortiz was sentenced to 40 years for first degree murder, running concurrently with 15 years for attempted first degree murder. R. G-14.

52. On June 9, 1993, directly after sentencing, Ortiz moved for a new trial or judgment of acquittal. This motion for a new trial was denied.

14

53. On March 4, 1994, Ortiz filed a Brief and Argument for direct appeal in the Appellate Court of Illinois in the First Judicial District, Fourth Division. On September 15, 1994, Ortiz's conviction was affirmed by the Appellate Court of Illinois, First Judicial District, Fourth Division.

## NEW EVIDENCE SINCE ORTIZ'S CONVICTION

### A. Sworn Statement of Santiago Pagan Regarding Guevara's Misconduct in Obtaining Identification of Ortiz

54. On May 5, 2022, Santiago Pagan provided a sworn and notarized declaration regarding his interactions with Guevara, describing the exact same pattern of misconduct used by Guevara to manipulate eyewitnesses into falsely identifying his chosen suspect. Ex. 106b.

55. In his May 5, 2022 affidavit, Pagan explained that it was "very dark that night and the shooter was wearing a mask and had a hood over his face, so I was not able to see his face." *Id.* at ¶5.

56. Pagan first viewed a book of photos but could not identify anyone. *Id.* at ¶6.

57. Pagan was then taken to the police station to view a lineup. Pagan repeatedly stated that he could not identify anyone because he could not see the shooter's face. *Id.* at ¶7.

58. Pagan stated that Guevara, who he described as a "Hispanic" or "Puerto Rican" officer, then pressured him to choose Edwin Ortiz out of the lineup, saying that Guevara "then pointed to Edwin Ortiz and told me that I should pick him." *Id.* at ¶8.

59. Pagan stated that Guevara continued to pressure him and offered him money to choose Ortiz. After Ortiz succumbed and identified Ortiz, Guevara gave Pagan money for choosing Ortiz out of the lineup. *Id.* at ¶¶9-10.[3]

### B. Guevara's Pattern of Misconduct

---

[3] Based on investigative efforts, it appears Marvin Taylor is deceased.

60. Many of the court decisions cited above document the conclusions about Guevara's range of misconduct. These conclusions, of course, are not in the abstract and are based upon overwhelming documentary and testimonial evidence, a portion of which is attached as exhibits to this pleading.

61. Guevara manipulates, threatens, coerces, and physically harms witnesses and accused suspects to give false statements and testimony. Exs. 15-41 (sworn testimony and affidavits alleging precisely that).

62. Guevara creates false police reports out of whole cloth and hides the real, accurate ones. *See* Ex. 42 (various materials in the Demetrius Johnson matter, showing that Guevara literally drafted a fake/false lineup report and hid the true, exculpatory lineup report to frame the 15-year-old Johnson, who has since been certified innocent).

63. Guevara fabricates witness and suspect statements, particularly as it relates to alibi evidence so that accused defendants cannot later defend against the false allegations in court. *See* Exs. 42-48 (examples of witness testimony and supporting materials showing that Guevara fabricated police reports by purposefully mis-documenting alibi or other statements, thereby ensuring the accused cannot defend against Guevara's false charges—each of these examples are in cases of individuals who have been exonerated).

64. Guevara uses fake informants. Ex. 49 (statement and testimony of Francisco Vicente, who has now sworn under oath multiple times that Guevara manipulated and forced him to falsely implicate five different innocent individuals (Geraldo Iglesias, Robert Bouto, Jose Montanez, Armando Serrano, and George Pacheco), each of whom has been exonerated and/or received certificates of innocence).

16

65. Guevara conspires with notorious corrupt police officers like Joseph Miedzianowski, Ex. 7, or his long-time partner Ernest Halvorsen—the latter of which courts have also found has his own pattern of misconduct—to frame perceived threats to his corrupt police activities. Ex. 11; *see also* Ex. 64 (*People v. Reynaldo Munoz*, 85 C 12403, Feb. 22, 2022) (Judge Atcherson finding that Halvorsen has his own pattern of unconstitutional misconduct in a case Guevara is otherwise uninvolved). *See also* Exs. 50-51 (testimony from Fred Rock and Jondalyn Fields showing how Guevara conspired with Miedzianowski to frame Juan and Rosendo Hernandez, both of whom have been certified innocent); Ex. 52 (FBI Report documenting statement of Mohamed Omar, connecting Guevara and Miedzianowski); Ex. 53 (testimony of George Laureano, describing Guevara conspiring with Miedzianowski in a criminal conspiracy).

66. Accused suspects have repeatedly asserted these horrific allegations. *See e.g.* Exs. 15-21 (sworn testimony from seven men—all wrongfully convicted and six of whom have certificates of innocence—describing Guevara coercing their false confessions).

67. Victims and innocent third party witnesses corroborate it. *See* Exs. 22-32 (various sworn statements and testimony showing Guevara's manipulation of witness identifications, all in cases where the accused was later exonerated, including, for example, Jose E. Melendez (Ex. 24), who was a crime victim yet contemporaneously insisted Guevara repeatedly tried to force him to implicate an innocent person); Exs. 33-41 (various other sworn statements corroborating Guevara's coercive questioning, threats, manipulation, and unconstitutional investigations in other cases).

68. Respected defense attorneys have witnessed it. Ex. 54 (testimony of attorney Kent Brody describing Guevara's manipulation and lies during lineup procedures in the Juan and Rosendo Hernandez matter—both certified innocent); Ex. 55 (testimony of James Saltouros indicating the

17

same in the matter of John Martinez, who has been exonerated); Ex. 56 (testimony of John

Deleon describing the lies and manipulation of Guevara in the Iglesias and Martinez matters—

both of whom have been exonerated).

69. Felony review prosecutors' testimony has confirmed it. *See* Ex. 7, at 12 (court ruling in

Hernandez case describing how felony review ASA testimony contemporaneously confirmed

Guevara fabricated reports regarding the accused's alibis).

70. Whistleblowing police officers have testified and spoken up about it. Ex. 57 (testimony

of former CPD detective Bill Dorsch describing Guevara's manipulation of witness

identifications that he personally witnessed); Ex. 58, at 194-96 (testimony of Ron Malczyk

confirming that Guevara fabricated or lied in a report where he falsely documented).

71. City of Chicago investigations have confirmed it. Ex. 59 (three reports by former U.S.

Attorney Scott Lassar commissioned by City of Chicago concluded that Guevara fabricated

evidence and committed misconduct in multiple cases).

72. The Office of Professional Standards (OPS) has concluded Guevara lies. Ex. 60-63 (a

series of OPS reports and sustained findings against Guevara spanning from 1986-2000

concluding that Guevara's denials of allegations of various forms of misconduct were not

credible).

73. Judges and juries have adjudicated it. Exs. 2-14; *Martinez*, 2021 IL App (1st) 190490;

*People v. Gomez*, 2021 IL App (1st) 192020, ¶ 58; *People v. Gonzalez*, 2016 IL App (1st)

141660, ¶¶ 34, 57; *People v. Serrano*, 2016 IL App (1st) 133493, ¶ 18; *People v. Montanez*,

2016 IL App (1st) 133726; *People v. Almodovar*, 2013 IL App (1st) 101476; *People v. Reyes*,

369 Ill. App. 3d 1, 21 (1st Dist. 2006) (all commenting on Guevara's pattern of unconstitutional

misconduct).

74. For his part, Guevara does not deny any of it. *See, e.g.*, Ex. 106a.

## ARGUMENT

**In light of the extraordinary evidence of the corruption of Reynaldo Guevara and his tactical team, this Court must vacate Petitioner's conviction pursuant to 735 ILCS 5/2-1401**

### A. Legal standard

75. A petition filed pursuant to 735 ILCS 5/2-1401 seeks to bring facts to the attention of the trial court that would have precluded entry of a final judgment had the facts been known at the time of entry of the judgment. *People v. Haynes*, 192 Ill. 2d 437 (2000).

76. Although the petition must be filed in the same proceeding as the original judgment, the petition is a separate action. 735 ILCS 5/2-1401(b).

77. The burden of proof for a section 2-1401 petition is a preponderance of the evidence. *Smith v. Airoom, Inc.,* 114 Ill. 2d 209, 221 (1986).

78. Although section 2-1401 is a civil remedy, its remedial powers extend to criminal matters. *People v. Pinkonsly*, 207 Ill. 2d 555, 562 (2003).

79. A section 2-1401 petitioner is entitled to relief if (1) a meritorious defense or claim exists, and (2) the petitioner exercised due diligence in both presenting the defense or claim the original action and in filing the section 2-1401 petition. *Smith*, 114 Ill. 2d at 221. Ultimately, "[r]elief should be granted under section 2-1401 when necessary to achieve justice." *People v. Lawton*, 212 Ill. 2d 285, 298 (2004). It is a "versatile and effective means of pursuing justice" for criminal defendants where the Post-Conviction Hearing Act is unavailable. *Id.* at 299.

80. Illinois law recognizes that a conviction may be vacated under 2-1401 as a result of a claim of actual innocence based on newly discovered evidence. 730 ILCS 5-5-4(c).

81. Applying *Lawton*, the Illinois Appellate Court has held that a section 2-1401 petition is the proper vehicle for a petitioner to seek to vacate an unconstitutional conviction if he has

19

already completed his sentence or the interests of justice demand relief. *People v. Mathis*, 357 Ill. App. 3d 45, 50 (1st Dist. 2005).

82. In practice, and in the context of blatant and systemic issues of police misconduct, Illinois courts have routinely granted section 2-1401 petitions filed more than two years after conviction—both at the request of the petitioner and the State. For example, section 2-1401 has been the vehicle used to vacate more than 230 convictions connected to the misconduct of former Chicago Police Sergeant Ronald Watts and his team. It has also been used to vacate convictions of Guevara's victims. *See E.g., People v. Demetrius Johnson,* 91 CR 19833 (Ex. 42); *People v. Rodriguez*, 91-CR-13938 (Ex. 11); *People v. Rios*, 89-CR-16525; *People v. Kelly*, 99 CR 06197(03) (Ex. 13).[4]

## B. Petitioners' pleadings are timely

83. While a section 2-1401 petition normally must be filed within two years of the conviction in a criminal case, time during which the opposing party (or the police) fraudulently conceal the claim tolls the limitation period. *See People v. McLaughlin*, 324 Ill. App. 3d 909, 918-19 (1st Dist. 2001); 735 ILCS 5/2-1401(c). Time limitations in both post-conviction and civil matters are affirmative defenses that can and should be waived by the State or opposing party when justice warrants. *People v. Boclair*, 202 Ill. 2d 89, 101 (2002); *Dever v. Simmons*, 292 Ill. App. 3d 70,

---

[4] *See, e.g.,* Demetrius Adams, 04CR17884, Chauncy Ali, 07CR421(03), Landon Allen, 04CR5700(01), George Almond, 06CR19708(01), Ben Baker, 05CR8982(01) & 06CR810(01), Deandre Bell, 06CR22073(01) & 07CR11499(01), Harvey Blair, 04CR18641, Darron Byrd, 07CR10335(02), Raynard Carter, 07CR10335(01) & 06CR6565(02), William Carter, 04CR9579, 04CR17677, & 06CR13571, Bobby Coleman, 03CR2644(01), Jermain Coleman, 06CR12908(01), Craig Colvin, 04CR14263(01), Milton Delaney, 07CR6264(01), Gregor Dobbins, 04CR8728(01), Christopher Farris, 04CR18418(01), Robert Forney, 07CR3834, Marcus Gibbs, 07CR3741(01), Leonard Gipson, 03CR2644, 03CR12414 & 07CR20496, Clariss Glenn, 06CR810(02), Cleon Glover, 06CR15063(01), Stefon Harrison, 06CR24269(01) & 07CR421(02), Sydney Harvey, 06CR25232(01), Rickey Henderson, 02CR19048, 03CR21058, 05CR7952 & 06CR18229, Kenneth Hicks, 07CR2269(01), Brian Hunt, 08CR5302(01), Allen Jackson, 06CR33575(01), Shaun James, 04CR10615(01), Goleather Jefferson, 06CR23620, Thomas Jefferson, 05CR17856 & 07CR22093(01).

73 (1st Dist. 1997); *see also supra* page n.1 (State's Attorney Foxx's noting her commitment to rectifying Guevara-related wrongful convictions). Moreover, irrespective of timeliness, section 2-1401 is "versatile and effective means of pursuing justice." *Lawton*, 212 Ill. 2d at 299. It has been repeatedly used to vacate convictions—even those secured by guilty plea—in the interests of justice or when circumstances change long after the statute of limitations ran. *See Davis*, 145 Ill. 2d at 244.

84. It is now widely accepted and understood that Guevara engaged in decades of corruption, but that corruption was hidden from criminal defendants, like the Petitioner herein. Accordingly, any and all of the allegations detailed in the attached exhibits that pre-dated the Petitioner's trial in this case were *Brady* material that was required to be disclosed. *See People v. Mitchell*, 2012 IL App (1st) 100907, ¶¶ 71-72 (explaining that under *Kyles v. Whitley*, 514 U.S. 419 (1995), knowledge by any agents of the State, such as police officers, is imputed to the State). This is particularly true of the adverse credibility findings by the Office of Professional Standards (OPS) that predate any of the Petitioner's trials. *See People v. Martinez*, 2021 IL App (1st) 190490, ¶¶ 90-92 (explaining that undisclosed, material documents relating to police misconduct that predate the cases are *Brady* material); *People v. Mack*, 2018 IL App (2d) 170641-U, ¶ 15 (highlighting the "analytical link" between *Brady* and section 2-1401 fraudulent concealment).

85. All of this information, however, was never provided to the Petitioner and therefore fraudulently concealed from them. *See McLauglin*, 324 Ill. App. 3d at 918-19; 735 ILCS 5/2-1401(c). Any delay in filing, therefore, is tolled. Petitioner cannot be penalized for failing to present these claims in the original action where the facts were withheld from him.

86. Petitioner, moreover, is bringing this petition not long after the State has publicly announced it no longer stands by Guevara-related convictions. This information provides a new basis to bring a claim.

### C. Petitioner has a meritorious defense in the original action

87. When the Petitioner's case was adjudicated decades ago, Guevara successfully concealed his corruption. It has now come forth, making Petitioner eligible for relief under 735 ILCS 5/2-1401(c). *See People v. McLaughlin*, 324 Ill. App. 3d 909, 918-19 (1st Dist. 2001).

88. Similarly, Guevara's acts of coercing false statements and fabricating evidence in Petitioner's case made it impossible for Petitioner to fairly present evidence of his innocence.

89. The new evidence affixed to this Petition—particularly Guevara's pattern of similar misconduct, demonstrated acts of misconduct in this individual case (such as suppressing the fact that Santiago Pagan told Guevara that he could not see the shooter's face and could not make an identification, and using pressure and payments to secure a fabricated identification of Ortiz from Pagan), and Guevara's assertion of the Fifth Amendment when asked about this investigation—provide a meritorious defense.

90. In addition, the suppression of the evidence violated Petitioner's rights to due process of law pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). The rule of *Brady* "encompasses evidence known to police investigators, but not to the prosecutor," and withheld impeachment evidence. *People v. Beaman*, 229 Ill. 2d 56, 73 (2008) (citing *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)).

91. A *Brady* violation is a constitutional error that is never harmless, *People v. Beaman*, 229 Ill. 2d 56, 74 (2008), and a Section 2-1401 petition may "be used to challenge judgments claimed to be defective for legal reasons." *People v. Lawton*, 212 Ill. 2d 285, 297 (2004).

92. All of the pattern exhibits attached to this Petition is impeachment of Guevara, and the scope of it would more likely than not have led to a different result in all of these cases.

## CONCLUSION

For these reasons, Petitioner respectfully requests this Court grant this petition and vacate his conviction.

Respectfully Submitted,

/s/ Anand Swaminathan
Attorney for Edwin Ortiz

Joshua Tepfer
Fadya Salem
The Exoneration Project (Atty No. 44407)
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 789-4955
josh@exonerationproject.org
fadya@exonerationproject.org

Anand Swaminathan
Loevy & Loevy
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900
anand@loevy.com

# Exhibit S) %

**CIRCUIT COURT OF COOK COUNTY ILLINOIS**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| People of the State of Illinois, | ) | |
| | ) | |
| Respondent, | ) | |
| v. | ) | |
| | ) | |
| Oscar Soto, | ) | 97 CR 23347(01) |
| | ) | |
| Petitioner. | ) | |
| | ) | |

---

**PETITION FOR RELIEF FROM JUDGEMENT AND TO VACATE CONVICTIONS
PURSUANT TO 735 ILCS 5/2-1401**

---

The above-captioned Petitioner files this consolidated petition for relief from judgement and to vacate his convictions pursuant to 735 ILCS 5/2-1401. In support of this request, Petitioner states as follows:

**INTRODUCTION**

1.　　After decades of advocacy and litigation in Illinois Courts, there is no longer a viable dispute: Former Chicago police detective Reynaldo Guevara was a corrupt police officer who routinely violated citizens constitutional rights when conducting homicide investigations.

2.　　Courts and juries alike have concluded that during his lengthy career Guevara engaged in a range of abhorrent and unconstitutional misconduct, including manipulating, threatening, and psychologically and physically coercing witnesses and accused suspects; perjury; and the outright fabrication of statements, police reports, and other evidence. *See People v. Martinez*, 2021 IL App (1st) 190490, ¶ 47 ("Given the staggering breadth of the materials regarding Detective Guevara's involvement in other cases, we succinctly state that those materials reflected a penchant for manipulating witness identifications. Many of his victims were eventually

1

exonerated."); *see id.* at ¶¶ 64, 80 ("Detective Guevara is a malignant blight on the Chicago Police Department and the judicial system" whose "toolbox of coercion was well-stocked with a wide variety of tools"); Ex. 2 (*People v. Demetrius Johnson*, 21 CC 3482 (July 27, 2021)), at 1 ("Mr. Johnson's conviction was based upon evidence both fabricated and concealed by notorious homicide detective Reynaldo Guevara," which at the time the court noted was the "21st conviction vacated owing to the misconduct of Guevara."); Ex. 3 (*People v. Solache/Reyes*, 98 CR 12440, Dec. 13, 2017), at 40-46 (Judge Obbish, the last judicial officer to hear substantive testimony from Guevara after the State granted Guevara immunity in 2017, concluding that Guevara's testimony was replete with "bald faced lies" and his "weak" general denials of physically coercing the Defendants confessions and feigned lack of memory were "not the testimony of a credible witness"); Ex. 4 (*Jacques Rivera v. Reynaldo Guevara et al.*, 12 C 4428) (civil jury finding Guevara liable for violating Jacques Rivera's due process rights, conspiracy in doing so, and intentional inflicting of emotional distress and awarding $17 million in compensatory damages and an additional $75,000 in punitive damages against Guevara).

3. Since 2017, Guevara himself refuses to defend his own investigations, asserting his Fifth Amendment rights not to incriminate himself when asked any questions relating to his police work. Following well-established legal principles, courts, in turn, routinely have drawn adverse inferences against him and concluded Guevara did, in fact, do what he refused to deny. *See People v. Gibson,* 2018 IL App (1st) 162177, ¶ 5 (courts must draw an adverse inference when a police officer pleads the Fifth and refuses to defend his investigation unless there is a credible reason not to do so). *See e.g.*, Ex. 5 (*People v. David Gecht*, May 25, 2022), at 27 ("The fact that Guevara refused to answer and was nonresponsive to questions, suggests that his investigation in this case

was infected with the same pattern and practice of misconduct. Otherwise, he would have provided substantive answers to deposition questions regarding his investigation.").

4.      In turn, as a matter of due process, courts have repeatedly vacated convictions or granted other relief where Guevara-led investigations led to the ultimate convictions. *See e.gs.*, *id.* at 15, 24, 27 (Judge Kenworthy finding that "Detective Guevara engaged in a pattern and practice of intimidating, threatening, and influencing witnesses in prior homicide investigations, . . . [and Guevara's] pattern and practice of misconduct demonstrates [petitioner's] due process claim"); Ex. 6 (*People v. David Colon*, July 8, 2022), at 31-32 (Judge Atcherson holding that relief was required as a matter of due process because "[i]t is now undisputed that former Detective Guevara, motivated by a desire to close cases regardless of whether he had found the actual perpetrator, engaged in multiple and repeated instances of police misconduct which took carious forms"); Ex. 7 (*People v. Juan & Rosendo Hernandez*, 97 CR 21329, July 14, 2022) at 3-13 (Judge Rosado finding that Guevara conspired with Joseph Miedzianowski to violate the Hernandez brothers due process rights in a multitude of ways, including by manipulating witness identifications, fabricating police reports by intentionally misreporting alibi and other police statements, and committing perjury by falsely testifying about those same alibi statements); Ex. 8 (*People v. Gabriel Solache and Arturo Reyes*, 98 CR 122440, June 29, 2016), at 36 (Judge Obbish finding that "petitioners have made a substantial showing they were denied their constitutional right to due process").

5.      In total, Petitioner is aware of 44 individuals whose overturned convictions were tied to Guevara. Courts have granted relief from convictions in trials and pleas, alike, and whether the claims invoked the Post-Conviction Hearing Act or section 2-1401 of the Code of Civil Procedure, 735 ILCS 5/2-1401. *See e.gs.*, Exs. 9-10 (*People v Marilyn Mulero & Madeline*

3

*Mendoza*, 92CR13088(02), (03) (Orders vacating convictions and pleas, including Mendoza's via section 2-1401); Ex. 11 (*People v. Daniel Rodriguez*, 91 CR 13938. April 25, 2022) (Order granting section 2-1401 petition following trial conviction based on new evidence of Guevara's misconduct); Ex. 13 (*People v. Thomas Kelly & Jose Tinajero*, 99 CR 06197, Jan. 31, 2024) (most recent Orders granting relief to Guevara victims, one of which was via 2-1401 and one via the Post-Conviction Hearing Act).

6. Since August 2022, the Cook County State's Attorney's Office has agreed that convictions tied to Guevara's investigations are unreliable and should be vacated.[1] Petitioner is unaware of a single Guevara-related collateral petition the State has contested since August 2022, or that any court has ultimately refused to overturn. Well over a majority of those individuals were later awarded certificates of innocence. *See* Exs. 12, 14 (identifying 25 COIs in Guevara-related overturned convictions).

---

[1] On August 9, 2022, the Cook County State's Attorney appeared in court and withdrew their objection to eight pending post-conviction matters in cases Guevara investigated. State's Attorney Foxx noted as follows:

"[W]e cannot stand by these convictions based on the serious allegations of misconduct and findings of credibility against Detective Guevara." *See* Dana Kozlov, Marissa Parra, *7 murder convictions linked to disgraced CPD Det. Reynaldo Guevara thrown out*, CBS2, Aug. 9, 2022, at https://www.cbsnews.com/chicago/news/eight-murder-convictions-vacated-chicago-police-detective-reynaldo-guevara-cook-county-states-attorney-kim-foxx/

"Even in cases where we still have questions about guilt, where we are not affirming actual innocence, the taint of detective Guevara is such that we cannot stand behind them any further." *See* Melissa Segura, *Seven People Who've Served Decade In Prison Had Their Murder Convictions Over Alleged Abuse By a Chicago Cop*, BuzzFeed News, Aug. 9, 2022, at https://www.buzzfeednews.com/article/melissasegura/guevara-chicago-murder-exoneration.

"When it became clear that the allegations of misconduct against Guevara had significant merit, we could no longer stand behind these convictions where individuals spent decades incarcerated, devastating families and communities in Chicago. The Cook County State's Attorney's Office . . . will continue to address and investigate claims of wrongful convictions based on the evidence and the law." *See* Press Release, *Cook County State's Attorney Kimberly Foxx Announces Dismissal of Murder Cases Tied to Former Chicago Police Detective Reynaldo Guevara*, Aug. 9, 2022, at https://www.cookcountystatesattorney.org/news/cook-county-state-s-attorney-kimberly-foxx-announces-dismissal-murder-cases-tied-former-chicago

7.      Like the others before him, Petitioner, too, deserves the same relief, as his arrest and subsequent conviction is clearly tied to a Guevara-led corrupt investigation. Guevara's role in securing the inculpatory testimony is clear from the police reports and testimony, yet Guevara now refuses to defend this very same investigation, asserting the Fifth Amendment. Ex. 1.

8.      Given the supporting facts of this case, Petitioner is entitled to relief as a matter of due process like the dozens of Guevara-victims before them. This Court should vacate Petitioner's conviction.

## FACTUAL BACKGROUND

### A.  Brief overview of the evidence of Guevara's pattern of misconduct

9.      Many of the court decisions cited above document the conclusions about Guevara's range of misconduct. These conclusions, of course, are not in the abstract and are based upon overwhelming documentary and testimonial evidence, a portion of which is attached as exhibits to this pleading.

10.     Guevara manipulates, threatens, coerces, and physically harms witnesses and accused suspects to give false statements and testimony. Exs. 15-41 (sworn testimony and affidavits alleging precisely that).

11.     Guevara creates false police reports out of whole cloth and hides the real, accurate ones. *See* Ex. 42 (various materials in the Demetrius Johnson matter, showing that Guevara literally drafted a fake/false lineup report and hid the true, exculpatory lineup report to frame the 15-year-old Johnson, who has since been certified innocent).

12.     Guevara fabricates witness and suspect statements, particularly as it relates to alibi evidence so that accused defendants cannot later defend against the false allegations in court. *See* Exs. 42-48 (examples of witness testimony and supporting materials showing that Guevara

fabricated police reports by purposefully mis-documenting alibi or other statements, thereby ensuring the accused cannot defend against Guevara's false charges—each of these examples are in cases of individuals who have been exonerated).

13. Guevara uses fake informants. Ex. 49 (statement and testimony of Francisco Vicente, who has now sworn under oath multiple times that Guevara manipulated and forced him to falsely implicate five different innocent individuals (Geraldo Iglesias, Robert Bouto, Jose Montanez, Armando Serrano, and George Pacheco), each of whom has been exonerated and/or received certificates of innocence).

14. Guevara conspires with notorious corrupt police officers like Joseph Miedzianowski, Ex. 7, or his long-time partner Ernest Halvorsen—the latter of which courts have also found has his own pattern of misconduct—to frame perceived threats to his corrupt police activities. Ex. 11; *see also* Ex. 64 (*People v. Reynaldo Munoz*, 85 C 12403, Feb. 22, 2022) (Judge Atcherson finding that Halvorsen has his own pattern of unconstitutional misconduct in a case Guevara is otherwise uninvolved). *See also* Exs. 50-51 (testimony from Fred Rock and Jondalyn Fields showing how Guevara conspired with Miedzianowski to frame Juan and Rosendo Hernandez, both of whom have been certified innocent); Ex. 52 (FBI Report documenting statement of Mohamed Omar, connecting Guevara and Miedzianowski); Ex. 53 (testimony of George Laureano, describing Guevara conspiring with Miedzianowski in a criminal conspiracy).

15. Accused suspects have repeatedly asserted these horrific allegations. *See e.g.* Exs. 15-21 (sworn testimony from seven men—all wrongfully convicted and six of whom have certificates of innocence—describing Guevara coercing their false confessions).

16. Victims and innocent third party witnesses corroborate it. *See* Exs. 22-32 (various sworn statements and testimony showing Guevara's manipulation of witness identifications, all in

cases where the accused was later exonerated, including, for example, Jose E. Melendez (Ex. 24), who was a crime victim yet contemporaneously insisted Guevara repeatedly tried to force him to implicate an innocent person); Exs. 33-41 (various other sworn statements corroborating Guevara's coercive questioning, threats, manipulation, and unconstitutional investigations in other cases).

17.     Respected defense attorneys have witnessed it. Ex. 54 (testimony of attorney Kent Brody describing Guevara's manipulation and lies during lineup procedures in the Juan and Rosendo Hernandez matter—both certified innocent); Ex. 55 (testimony of James Saltouros indicating the same in the matter of John Martinez, who has been exonerated); Ex. 56 (testimony of John Deleon describing the lies and manipulation of Guevara in the Iglesias and Martinez matters—both of whom have been exonerated).

18.     Felony review prosecutors' testimony has confirmed it. *See* Ex. 7, at 12 (court ruling in Hernandez case describing how felony review ASA testimony contemporaneously confirmed Guevara fabricated reports regarding the accused's alibis).

19.     Whistleblowing police officers have testified and spoken up about it. Ex. 57 (testimony of former CPD detective Bill Dorsch describing Guevara's manipulation of witness identifications that he personally witnessed); Ex. 58, at 194-96 (testimony of Ron Malczyk confirming that Guevara fabricated or lied in a report).

20.     City of Chicago investigations have confirmed it. Ex. 59 (three reports by former U.S. Attorney Scott Lassar commissioned by the City of Chicago concluding that Guevara fabricated evidence and committed misconduct in multiple cases).

21.     The Office of Professional Standards (OPS) has concluded Guevara lies. Ex. 60-63 (a series of OPS reports and sustained findings against Guevara spanning from 1986-2000

concluding that Guevara's denials of allegations of various forms of misconduct were not credible).

22.     Judges and juries have adjudicated it. Exs. 2-14; *Martinez*, 2021 IL App (1st) 190490; *People v. Gomez*, 2021 IL App (1st) 192020, ¶ 58; *People v. Gonzalez*, 2016 IL App (1st) 141660, ¶¶ 34, 57; *People v. Serrano*, 2016 IL App (1st) 133493, ¶ 18; *People v. Montanez*, 2016 IL App (1st) 133726; *People v. Almodovar*, 2013 IL App (1st) 101476; *People v. Reyes*, 369 Ill. App. 3d 1, 21 (1st Dist. 2006) (all commenting on Guevara's pattern of unconstitutional misconduct).

23.     And Guevara never denies it. *See, e.g.*, Ex. 1 (Guevara asserting the Fifth Amendment when questioned about his investigations).

**B. Factual Background of Petitioner's Case**

24.     In July 1997 Guevara ensnared Oscar Soto in two different shootings. Chronologically, the first shooting occurred on July 5, 1997 and Oscar Arroya was the victim. Twelve days later, on July 17, 1997, Miguel Salas was shot and killed. Guevara arrested Oscar Soto for both cases on July 31, 1997, even though two other individuals (Alex Razo and Julio D. Gonzalez), had been identified as Salas' killers ten days earlier in procedures conducted by other officers before Guevara was ever involved. Ex. 104a (arrest reports for Razo and Gonzalez for Salas murder). The closed report for the Salas murder stated, without explanation, that the "investigation disclosed" that the same person may have been the offender in both cases. Ex. 104b (Salas closed report).

25.     Soto voluntarily turned himself in, *id.* at 4, and then, according to reports, three witnesses (Jaimmy Guzman, Enrique Borjas, and Jose Vera) identified Soto in a lineup as Salas' killer; ten minutes later, a witness (Dalinda Bahena) identified Soto as Arroyo's shooter in a lineup

ten minutes later. Exs. 104b; 104c (Bahena lineup in Arroyo); 104d (lineup report in Soto). Guevara was present conducting each one of the lineups. Exs. 104c, 104d.

26. There are some troubling "overlaps" and contradictions between the investigations. For one, both Jaimmy Guzman, Dalina Bahena, and Migdalia Morales supposedly were witnesses in both cases, 12 days apart. Exs. 104b, 104e. Guzman, in fact, was a victim in the Salas case as he was in the car with Salas when the shooting happened. Exs. 104b, 104e. And although Guzman supposedly identified Soto as Salas' killer on July 31, 1997 in a lineup conducted by Guevara, Ex. 104b, (again, long after two other men were identified as the assailants), Soto was acquitted of that case.

27. Further, Morales made no identifications in either case, although she viewed the lineup in the Salas murder. Ex. 104d.

28. As far as the case at issue here, Bahena—seemingly the only individual inculpating Soto—only made an identification in the Arroyo shooting lineup after not making any identifications in the Salas murder lineup minutes before. Exs. 104c, 104d. Further, Bahena told initial, non-Guevara offices that the shooter was bald and dark complected, Ex. 104e, which does not describe Soto in any way. Ex. 104f (photos of Soto on July 31 showing him as a light-complected man with a full head of hair).

29. The State tried Soto for the Salas murder first, and Soto was acquitted. But this was after he spent two years in custody, so when the State offered him a plea deal for the Arroyo murder that would get him out of county jail in 9 months, Soto, reluctantly, pled guilty to a crime he did not commit. Ex. 104g (Affidavit of Soto).

30. Morales and Guzman refused any attempts to speak with post-conviction counsel about this case. Exs. 104h, 104i. Post-conviction counsel could not locate Bahena. Ex. 104j.

9

## ARGUMENT

**In light of the extraordinary evidence of the corruption of Reynaldo Guevara and his tactical team, this Court must vacate Petitioner's conviction pursuant to 735 ILCS 5/2-1401**

### A. Legal Standard

29.     A petition filed pursuant to 735 ILCS 5/2-1401 seeks to bring facts to the attention of the trial court that would have precluded entry of a final judgment had the facts been known at the time of entry of the judgment. *People v. Haynes*, 192 Ill. 2d 437 (2000).

30.     Although the petition must be filed in the same proceeding as the original judgment, the petition is a separate action. 735 ILCS 5/2-1401(b).

31.     The burden of proof for a section 2-1401 petition is a preponderance of the evidence. *Smith v. Airoom, Inc.,* 114 Ill. 2d 209, 221 (1986).

32.     Although section 2-1401 is a civil remedy, its remedial powers extend to criminal matters. *People v. Pinkonsly*, 207 Ill. 2d 555, 562 (2003).

33.     A section 2-1401 petitioner is entitled to relief if (1) a meritorious defense or claim exists, and (2) the petitioner exercised due diligence in both presenting the defense or claim the original action and in filing the section 2-1401 petition. *Smith*, 114 Ill. 2d at 221. Ultimately, "[r]elief should be granted under section 2-1401 when necessary to achieve justice." *People v. Lawton*, 212 Ill. 2d 285, 298 (2004). It is a "versatile and effective means of pursuing justice" for criminal defendants where the Post-Conviction Hearing Act is unavailable. *Id.* at 299.

34.     Illinois law recognizes that a conviction may be vacated under 2-1401 as a result of a claim of actual innocence based on newly discovered evidence. 730 ILCS 5-5-4(c).

35.     Applying *Lawton*, the Illinois Appellate Court has held that a section 2-1401 petition is the proper vehicle for a petitioner to seek to vacate an unconstitutional conviction if he

10

has already completed his sentence or the interests of justice demand relief. *People v. Mathis*, 357 Ill. App. 3d 45, 50 (1st Dist. 2005).

36.     In practice, and in the context of blatant and systemic issues of police misconduct, Illinois courts have routinely granted section 2-1401 petitions filed more than two years after conviction—both at the request of the petitioner and the State. For example, section 2-1401 has been the vehicle used to vacate more than 230 convictions connected to the misconduct of former Chicago Police Sergeant Ronald Watts and his team. It has also been used to vacate convictions of Guevara's victims. *See E.g., People v. Demetrius Johnson,* 91 CR 19833 (Ex. 42); *People v. Rodriguez*, 91-CR-13938 (Ex. 11); *People v. Rios*, 89-CR-16525; *People v. Kelly*, 99 CR 06197(03) (Ex. 13).

**B.  Petitioner's pleading is timely**

37.     While a section 2-1401 petition normally must be filed within two years of the conviction in a criminal case, time during which the opposing party (or the police) fraudulently conceal the claim tolls the limitation period. *See People v. McLaughlin*, 324 Ill. App. 3d 909, 918-19 (1st Dist. 2001); 735 ILCS 5/2-1401(c). Time limitations in both post-conviction and civil matters are affirmative defenses that can and should be waived by the State or opposing party when justice warrants. *People v. Boclair*, 202 Ill. 2d 89, 101 (2002); *Dever v. Simmons*, 292 Ill. App. 3d 70, 73 (1st Dist. 1997); *see also supra* page n.1 (State's Attorney Foxx's noting her commitment to rectifying Guevara-related wrongful convictions). Moreover, irrespective of timeliness, section 2-1401 is "versatile and effective means of pursuing justice." *Lawton*, 212 Ill. 2d at 299. It has been repeatedly used to vacate convictions—even those secured by guilty plea—in the interests of justice or when circumstances change long after the statute of limitations ran. *See Davis*, 145 Ill. 2d at 244.

38.     It is now widely accepted and understood that Guevara engaged in decades of corruption, but that corruption was hidden from criminal defendants, like the Petitioner herein. Accordingly, any and all of the allegations detailed in the attached exhibits that pre-dated the Petitioner's trial in this case were *Brady* material that was required to be disclosed. *See People v. Mitchell*, 2012 IL App (1st) 100907, ¶¶ 71-72 (explaining that under *Kyles v. Whitley*, 514 U.S. 419 (1995), knowledge by any agents of the State, such as police officers, is imputed to the State). This is particularly true of the adverse credibility findings by the Office of Professional Standards (OPS) that predate any of the Petitioner's trials. *See People v. Martinez*, 2021 IL App (1st) 190490, ¶¶ 90-92 (explaining that undisclosed, material documents relating to police misconduct that predate the cases are *Brady* material); *People v. Mack*, 2018 IL App (2d) 170641-U, ¶ 15 (highlighting the "analytical link" between *Brady* and section 2-1401 fraudulent concealment).

39.     All of this information, however, was never provided to the Petitioner and therefore fraudulently concealed from them. *See McLauglin*, 324 Ill. App. 3d at 918-19; 735 ILCS 5/2-1401(c). Any delay in filing, therefore, is tolled. Petitioner cannot be penalized for failing to present these claims in the original action where the facts were withheld from him.

40.     Petitioner, moreover, is bringing this petition not long after the State has publicly announced it no longer stands by Guevara-related convictions. This information provides a new basis to bring a claim.

**C.  Petitioner has a meritorious defense in the original action**

41.     When the Petitioner's case was adjudicated decades ago, Guevara successfully concealed his corruption. It has now come forth, making Petitioner eligible for relief under 735 ILCS 5/2-1401(c). *See People v. McLaughlin*, 324 Ill. App. 3d 909, 918-19 (1st Dist. 2001).

42.     Similarly, Guevara's acts of coercing false statements and fabricating evidence in Petitioner's case made it impossible for Petitioner to fairly present evidence of their innocence.

43.     The new evidence affixed to this Petition—particularly Guevara's pattern of similar misconduct and Guevara's assertion of the Fifth Amendment when asked about this investigation—provide a meritorious defense. Given that this case rests solely on a single eyewitness identification, Petitioner would be able to present scores of witnesses to corroborate the theory that Guevera manipulated the eyewitness identification in this case. *See Martinez*, 2021 IL App (1st) 190490, at ¶ 47 ("Given the staggering breadth of materials regarding Detective Guevara's involvement in other cases, we succinctly state that those materials reflected a penchant for manipulating witness identification.").

44.     In addition, the suppression of the evidence violated Petitioner's rights to due process of law pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). The rule of *Brady* "encompasses evidence known to police investigators, but not to the prosecutor," and withheld impeachment evidence. *People v. Beaman*, 229 Ill. 2d 56, 73 (2008) (citing *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)).

45.     A *Brady* violation is a constitutional error that is never harmless, *People v. Beaman*, 229 Ill. 2d 56, 74 (2008), and a Section 2-1401 petition may "be used to challenge judgments claimed to be defective for legal reasons." *People v. Lawton*, 212 Ill. 2d 285, 297 (2004).

46.     All of the pattern exhibits attached to this Petition is impeachment of Guevara, and the scope of it would more likely than not have led to a different result in all of these cases.

## CONCLUSION

For these reasons, Petitioner respectfully requests this Court grant this petition and vacate his conviction.

13

Respectfully Submitted,

/s/ Joshua A. Tepfer
Attorney for Petitioner

Joshua Tepfer
Fadya Salem
The Exoneration Project (Atty No. 44407)
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 789-4955
josh@exonerationproject.org
fadya@exonerationproject.org

Anand Swaminathan
Loevy & Loevy
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900
anand@loevy.com

Exhibit S) &

**CIRCUIT COURT OF COOK COUNTY ILLINOIS**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| People of the State of Illinois, | ) | |
| | ) | |
| Respondent, | ) | |
| v. | ) | |
| | ) | |
| Victor Vera, | ) | 89 CR 11039(04) |
| | ) | |
| Petitioner. | ) | |
| | ) | |

---

**PETITION FOR RELIEF FROM JUDGEMENT AND TO VACATE CONVICTIONS**
**PURSUANT TO 735 ILCS 5/2-1401**

---

The above-captioned Petitioner files this consolidated petition for relief from judgement and to vacate his convictions pursuant to 735 ILCS 5/2-1401. In support of this request, Petitioner states as follows:

**INTRODUCTION**

1.     After decades of advocacy and litigation in Illinois Courts, there is no longer a viable dispute: Former Chicago police detective Reynaldo Guevara was a corrupt police officer who routinely violated citizens constitutional rights when conducting homicide investigations.

2.     Courts and juries alike have concluded that during his lengthy career Guevara engaged in a range of abhorrent and unconstitutional misconduct, including manipulating, threatening, and psychologically and physically coercing witnesses and accused suspects; perjury; and the outright fabrication of statements, police reports, and other evidence. *See People v. Martinez*, 2021 IL App (1st) 190490, ¶ 47 ("Given the staggering breadth of the materials regarding Detective Guevara's involvement in other cases, we succinctly state that those materials reflected a penchant for manipulating witness identifications. Many of his victims were eventually

1

exonerated."); *see id.* at ¶¶ 64, 80 ("Detective Guevara is a malignant blight on the Chicago Police Department and the judicial system" whose "toolbox of coercion was well-stocked with a wide variety of tools"); Ex. 2 (*People v. Demetrius Johnson*, 21 CC 3482 (July 27, 2021)), at 1 ("Mr. Johnson's conviction was based upon evidence both fabricated and concealed by notorious homicide detective Reynaldo Guevara," which at the time the court noted was the "21st conviction vacated owing to the misconduct of Guevara."); Ex. 3 (*People v. Solache/Reyes*, 98 CR 12440, Dec. 13, 2017), at 40-46 (Judge Obbish, the last judicial officer to hear substantive testimony from Guevara after the State granted Guevara immunity in 2017, concluding that Guevara's testimony was replete with "bald faced lies" and his "weak" general denials of physically coercing the Defendants confessions and feigned lack of memory were "not the testimony of a credible witness"); Ex. 4 (*Jacques Rivera v. Reynaldo Guevara et al.*, 12 C 4428) (civil jury finding Guevara liable for violating Jacques Rivera's due process rights, conspiracy in doing so, and intentional inflicting of emotional distress and awarding $17 million in compensatory damages and an additional $75,000 in punitive damages against Guevara).

3.      Since 2017, Guevara himself refuses to defend his own investigations, asserting his Fifth Amendment rights not to incriminate himself when asked any questions relating to his police work. Following well-established legal principles, courts, in turn, routinely have drawn adverse inferences against him and concluded Guevara did, in fact, do what he refused to deny. *See People v. Gibson,* 2018 IL App (1st) 162177, ¶ 5 (courts must draw an adverse inference when a police officer pleads the Fifth and refuses to defend his investigation unless there is a credible reason not to do so). *See e.g.*, Ex. 5 (*People v. David Gecht*, May 25, 2022), at 27 ("The fact that Guevara refused to answer and was nonresponsive to questions, suggests that his investigation in this case

was infected with the same pattern and practice of misconduct. Otherwise, he would have provided substantive answers to deposition questions regarding his investigation.").

4.      In turn, as a matter of due process, courts have repeatedly vacated convictions or granted other relief where Guevara-led investigations led to the ultimate convictions. *See e.gs.*, *id.* at 15, 24, 27 (Judge Kenworthy finding that "Detective Guevara engaged in a pattern and practice of intimidating, threatening, and influencing witnesses in prior homicide investigations, . . . [and Guevara's] pattern and practice of misconduct demonstrates [petitioner's] due process claim"); Ex. 6 (*People v. David Colon*, July 8, 2022), at 31-32 (Judge Atcherson holding that relief was required as a matter of due process because "[i]t is now undisputed that former Detective Guevara, motivated by a desire to close cases regardless of whether he had found the actual perpetrator, engaged in multiple and repeated instances of police misconduct which took carious forms"); Ex. 7 (*People v. Juan & Rosendo Hernandez*, 97 CR 21329, July 14, 2022) at 3-13 (Judge Rosado finding that Guevara conspired with Joseph Miedzianowski to violate the Hernandez brothers due process rights in a multitude of ways, including by manipulating witness identifications, fabricating police reports by intentionally misreporting alibi and other police statements, and committing perjury by falsely testifying about those same alibi statements); Ex. 8 (*People v. Gabriel Solache and Arturo Reyes*, 98 CR 122440, June 29, 2016), at 36 (Judge Obbish finding that "petitioners have made a substantial showing they were denied their constitutional right to due process").

5.      In total, Petitioner is aware of 44 individuals whose overturned convictions were tied to Guevara. Courts have granted relief from convictions in trials and pleas, alike, and whether the claims invoked the Post-Conviction Hearing Act or section 2-1401 of the Code of Civil Procedure, 735 ILCS 5/2-1401. *See e.gs.*, Exs. 9-10 (*People v Marilyn Mulero & Madeline*

*Mendoza*, 92CR13088(02), (03) (Orders vacating convictions and pleas, including Mendoza's via section 2-1401); Ex. 11 (*People v. Daniel Rodriguez*, 91 CR 13938. April 25, 2022) (Order granting section 2-1401 petition following trial conviction based on new evidence of Guevara's misconduct); Ex. 13 (*People v. Thomas Kelly & Jose Tinajero*, 99 CR 06197, Jan. 31, 2024) (most recent Orders granting relief to Guevara victims, one of which was via 2-1401 and one via the Post-Conviction Hearing Act).

6. Since August 2022, the Cook County State's Attorney's Office has agreed that convictions tied to Guevara's investigations are unreliable and should be vacated.[1] Petitioner is unaware of a single Guevara-related collateral petition the State has contested since August 2022, or that any court has ultimately refused to overturn. Well over a majority of those individuals were later awarded certificates of innocence. *See* Exs. 12, 14 (identifying 25 COIs in Guevara-related overturned convictions).

---

[1] On August 9, 2022, the Cook County State's Attorney appeared in court and withdrew their objection to eight pending post-conviction matters in cases Guevara investigated. State's Attorney Foxx noted as follows:

"[W]e cannot stand by these convictions based on the serious allegations of misconduct and findings of credibility against Detective Guevara." *See* Dana Kozlov, Marissa Parra, *7 murder convictions linked to disgraced CPD Det. Reynaldo Guevara thrown out*, CBS2, Aug. 9, 2022, at https://www.cbsnews.com/chicago/news/eight-murder-convictions-vacated-chicago-police-detective-reynaldo-guevara-cook-county-states-attorney-kim-foxx/

"Even in cases where we still have questions about guilt, where we are not affirming actual innocence, the taint of detective Guevara is such that we cannot stand behind them any further." *See* Melissa Segura, *Seven People Who've Served Decade In Prison Had Their Murder Convictions Over Alleged Abuse By a Chicago Cop*, BuzzFeed News, Aug. 9, 2022, at https://www.buzzfeednews.com/article/melissasegura/guevara-chicago-murder-exoneration.

"When it became clear that the allegations of misconduct against Guevara had significant merit, we could no longer stand behind these convictions where individuals spent decades incarcerated, devastating families and communities in Chicago. The Cook County State's Attorney's Office . . . will continue to address and investigate claims of wrongful convictions based on the evidence and the law." *See* Press Release, *Cook County State's Attorney Kimberly Foxx Announces Dismissal of Murder Cases Tied to Former Chicago Police Detective Reynaldo Guevara*, Aug. 9, 2022, at https://www.cookcountystatesattorney.org/news/cook-county-state-s-attorney-kimberly-foxx-announces-dismissal-murder-cases-tied-former-chicago

7.     Like the others before him, Petitioner, too, deserves the same relief, as his arrest and subsequent conviction is clearly tied to a Guevara-led corrupt investigation. Guevara's role in securing the inculpatory testimony is clear from the police reports and testimony, yet Guevara now refuses to defend this very same investigation, asserting the Fifth Amendment. Ex. 1.

8.     Given the supporting facts of this case, Petitioner is entitled to relief as a matter of due process like the dozens of Guevara-victims before them. This Court should vacate Petitioner's conviction.

## FACTUAL BACKGROUND

### A.  Brief overview of the evidence of Guevara's pattern of misconduct

9.     Many of the court decisions cited above document the conclusions about Guevara's range of misconduct. These conclusions, of course, are not in the abstract and are based upon overwhelming documentary and testimonial evidence, a portion of which is attached as exhibits to this pleading.

10.    Guevara manipulates, threatens, coerces, and physically harms witnesses and accused suspects to give false statements and testimony. Exs. 15-41 (sworn testimony and affidavits alleging precisely that).

11.    Guevara creates false police reports out of whole cloth and hides the real, accurate ones. *See* Ex. 42 (various materials in the Demetrius Johnson matter, showing that Guevara literally drafted a fake/false lineup report and hid the true, exculpatory lineup report to frame the 15-year-old Johnson, who has since been certified innocent).

12.    Guevara fabricates witness and suspect statements, particularly as it relates to alibi evidence so that accused defendants cannot later defend against the false allegations in court. *See* Exs. 42-48 (examples of witness testimony and supporting materials showing that Guevara

fabricated police reports by purposefully mis-documenting alibi or other statements, thereby ensuring the accused cannot defend against Guevara's false charges—each of these examples are in cases of individuals who have been exonerated).

13.     Guevara uses fake informants. Ex. 49 (statement and testimony of Francisco Vicente, who has now sworn under oath multiple times that Guevara manipulated and forced him to falsely implicate five different innocent individuals (Geraldo Iglesias, Robert Bouto, Jose Montanez, Armando Serrano, and George Pacheco), each of whom has been exonerated and/or received certificates of innocence).

14.     Guevara conspires with notorious corrupt police officers like Joseph Miedzianowski, Ex. 7, or his long-time partner Ernest Halvorsen—the latter of which courts have also found has his own pattern of misconduct—to frame perceived threats to his corrupt police activities. Ex. 11; *see also* Ex. 64 (*People v. Reynaldo Munoz*, 85 C 12403, Feb. 22, 2022) (Judge Atcherson finding that Halvorsen has his own pattern of unconstitutional misconduct in a case Guevara is otherwise uninvolved). *See also* Exs. 50-51 (testimony from Fred Rock and Jondalyn Fields showing how Guevara conspired with Miedzianowski to frame Juan and Rosendo Hernandez, both of whom have been certified innocent); Ex. 52 (FBI Report documenting statement of Mohamed Omar, connecting Guevara and Miedzianowski); Ex. 53 (testimony of George Laureano, describing Guevara conspiring with Miedzianowski in a criminal conspiracy).

15.     Accused suspects have repeatedly asserted these horrific allegations. *See e.g.* Exs. 15-21 (sworn testimony from seven men—all wrongfully convicted and six of whom have certificates of innocence—describing Guevara coercing their false confessions).

16.     Victims and innocent third party witnesses corroborate it. *See* Exs. 22-32 (various sworn statements and testimony showing Guevara's manipulation of witness identifications, all in

6

cases where the accused was later exonerated, including, for example, Jose E. Melendez (Ex. 24), who was a crime victim yet contemporaneously insisted Guevara repeatedly tried to force him to implicate an innocent person); Exs. 33-41 (various other sworn statements corroborating Guevara's coercive questioning, threats, manipulation, and unconstitutional investigations in other cases).

17.     Respected defense attorneys have witnessed it. Ex. 54 (testimony of attorney Kent Brody describing Guevara's manipulation and lies during lineup procedures in the Juan and Rosendo Hernandez matter—both certified innocent); Ex. 55 (testimony of James Saltouros indicating the same in the matter of John Martinez, who has been exonerated); Ex. 56 (testimony of John Deleon describing the lies and manipulation of Guevara in the Iglesias and Martinez matters—both of whom have been exonerated).

18.     Felony review prosecutors' testimony has confirmed it. *See* Ex. 7, at 12 (court ruling in Hernandez case describing how felony review ASA testimony contemporaneously confirmed Guevara fabricated reports regarding the accused's alibis).

19.     Whistleblowing police officers have testified and spoken up about it. Ex. 57 (testimony of former CPD detective William Dorsch, one of Guevara's partners in this very case, describing Guevara's manipulation of witness identifications that he personally witnessed); Ex. 58, at 194-96 (testimony of Ron Malczyk confirming that Guevara fabricated or lied in a report).

20.     City of Chicago investigations have confirmed it. Ex. 59 (three reports by former U.S. Attorney Scott Lassar commissioned by the City of Chicago concluding that Guevara fabricated evidence and committed misconduct in multiple cases).

21.     The Office of Professional Standards (OPS) has concluded Guevara lies. Ex. 60-63 (a series of OPS reports and sustained findings against Guevara spanning from 1986-2000

concluding that Guevara's denials of allegations of various forms of misconduct were not credible).

22.    Judges and juries have adjudicated it. Exs. 2-14; *Martinez*, 2021 IL App (1st) 190490; *People v. Gomez*, 2021 IL App (1st) 192020, ¶ 58; *People v. Gonzalez*, 2016 IL App (1st) 141660, ¶¶ 34, 57; *People v. Serrano*, 2016 IL App (1st) 133493, ¶ 18; *People v. Montanez*, 2016 IL App (1st) 133726; *People v. Almodovar*, 2013 IL App (1st) 101476; *People v. Reyes*, 369 Ill. App. 3d 1, 21 (1st Dist. 2006) (all commenting on Guevara's pattern of unconstitutional misconduct).

23.    And Guevara never denies it. *See, e.g.*, Ex. 1 (Guevara asserting the Fifth Amendment when questioned about his investigations).

### B.  Factual Background of Petitioner's Case[2]

24.    On April 23, 1989, Edwin Castaneda,[3] a member of the Latin Kings, was beaten to death by a group of people near Lawrence and Sawyer in Chicago.

25.    Detective Guevara was assigned to investigate the case the same night. Ex. 105a at 71. Guevara tainted the case against Vera at every stage, including the investigation, arrest, orchestrating the line-up identification, and coercing Vera's confession. The State also relied on Guevara's testimony during a pretrial motion to quash arrest and during Vera's jury trial. When confronted about his misconduct in this case, Guevara refused to answer questions and asserted his fifth amendment right against self-incrimination in response to every question, including questions about rigging the identification of Vera and conspiring with other officers to coerce his false confession. Ex. 1.

---

[2] The appellate record is included on a USB drive attached to this petition.
[3] The indictment lists the victim's name as Edwin Castaneda. The victim is also referred to as Alvin Castaneda or Elvin Castaneda throughout the record.

26.     Right before Guevara started focusing on Vera, James Alzate told other detectives that members of the imperial gangster street gang named Lucky, Ricky G., Slick, and Papo were involved in the murder. Ex. 105b at 2.

27.     None of nicknames Alzate provided to police belong to Vera. Slick is the nickname of John M. Hernandez, one of Vera's co-defendants, who was convicted in a separate bench trial. Ex. 105d. In 1998, Hernandez wrote an affidavit stating Vera was not involved in the murder. Ex. 105e. Hernandez's affidavit is consistent with the confession he gave to police where he made no mention of Vera but named others involved, including Gabriel Flores and Edwin Alicea, the two other co-defendants in this case. Ex. 105f. Alicia pled guilty and was sentenced to 20 years in prison. Ex. 105g.  The case against Flores was nolled. Ex. 105h.

28.     Despite the lead from Alzate, Guevara claimed he received information from Virgilio Muniz, a member of the same gang as the victim, that the suspect was named "Green Eyes". R. D-128. Vera has light-colored eyes.

29.     Muniz, who was the subject of a pretrial hearing due to his reluctance to testify, was the only witness to identify Vera at his trial. R. D-57.

30.     At trial, Muniz testified that Guevara and his partner took Muniz to the station for the line-up. R. D-48-49.  Muniz admitted that he picked out Vera, who he was familiar with from around the neighborhood, not because he was there but because Vera was a member of a rival gang. R. D-53, 63-64. According to Muniz's own testimony, Muniz was untruthful to police when he implicated Vera. R. D-65.

31.     In addition to orchestrating the identification of Vera, Guevara also falsely documented that Vera's father did not confirm his alibi, effectively thwarting Vera's ability to

present an alibi at trial. *See* Exs. 105b at 4; 105k at 54. When asked directly about this misconduct, Guevara asserted the fifth amendment. Ex. 1 at 253-55.

32.     In 1996, Juan Aguilar, who was with Vera at the time they both learned of the Castaneda murder, was prepared to testify but was never called. *See* R. E-87; Ex. 105i (Aguilar affidavit).

33.     Vera made contemporaneous allegations of the troubling events that led to his false confession. In a motion to suppress statements filed February 27, 1991, Vera outlined the police coercion: police threatened to prosecute his parents if he did not cooperate; Vera asked for an attorney and was not afforded one because his "only hope was to cooperate"; and police threatened to place him in imminent harm by putting him in a cell with rival gang members. Ex. 105j. On May 15, 1991, at the motion to suppress hearing, Vera testified that Guevara was one of the officers who interrogated and threatened to place him in a cell with a rival gang member. Ex. 105k at 51, 61.

34.     In 2007, Vera further detailed Guevara's abuse in an affidavit submitted in the case of *People v. Gabriel Solache*. Ex. 105l; *see also* Exs. 3, 8 (Solache's confession was suppressed due to Guevara's pattern of misconduct in coercing confessions). In his affidavit, Vera outlined that after Guevara orchestrated the false line-up identifications of Vera, police officers took Vera to the rival gang territory of the Latin Kings. Vera described Guevara sitting in the back of the police car with him, which is consistent with Vera's testimony at trial where he described Guevara and other officers forcing him to "take a ride". R. E-89.

35.     While in the car, Guevara attempted to extract information about suspects in the murder by telling Vera nothing would come back on him. When Vera continued to deny any involvement, the police took Vera to an intersection known to have Latin King gang members and

announced on the bullhorn that Vera was in the car. The Latin Kings had a "contract" out for Vera's death because, due to Muniz's false identification, they mistakenly believed he was responsible for Castaneda's murder. The Latin King gang members surrounded the police car while an officer opened the car door and attempted to force Vera out and into the hands of the Latin Kings. Vera was able to successfully remain in the car. Ex. 105l.

36.     After the harrowing event and out of fear for his life, Vera falsely confessed.

37.     Vera attempted to assert his innocence through multiple pretrial motions and during his testimony at trial. Vera's motion to suppress statements was denied and his false confession was used against him at trial. Despite no physical or forensic evidence pointing to Vera, and despite Muniz attempting to retract his identification of Vera, Vera's false confession and the testimony of Guevara and other officers convinced a jury to convict Vera.

38.     Multiple attempts by post-conviction counsel to speak with James Alzate and other witnesses identified during the police investigation, including Keith Fells and Angel Lauzurique, have been unsuccessful to this point. Ex. 105c.

## ARGUMENT

**In light of the extraordinary evidence of the corruption of Reynaldo Guevara and his tactical team, this Court must vacate Petitioner's conviction pursuant to 735 ILCS 5/2-1401**

### A. Legal Standard

39.     A petition filed pursuant to 735 ILCS 5/2-1401 seeks to bring facts to the attention of the trial court that would have precluded entry of a final judgment had the facts been known at the time of entry of the judgment. *People v. Haynes*, 192 Ill. 2d 437 (2000). Although the petition must be filed in the same proceeding as the original judgment, the petition is a separate action. 735 ILCS 5/2-1401(b).

40.     The burden of proof for a section 2-1401 petition is a preponderance of the evidence. *Smith v. Airoom, Inc.,* 114 Ill. 2d 209, 221 (1986).

41.     Although section 2-1401 is a civil remedy, its remedial powers extend to criminal matters. *People v. Pinkonsly*, 207 Ill. 2d 555, 562 (2003).

A section 2-1401 petitioner is entitled to relief if (1) a meritorious defense or claim exists, and (2) the petitioner exercised due diligence in both presenting the defense or claim the original action and in filing the section 2-1401 petition. *Smith*, 114 Ill. 2d at 221. Ultimately, "[r]elief should be granted under section 2-1401 when necessary to achieve justice." *People v. Lawton*, 212 Ill. 2d 285, 298 (2004). It is a "versatile and effective means of pursuing justice" for criminal defendants where the Post-Conviction Hearing Act is unavailable. *Id.* at 299.

42.     Illinois law recognizes that a conviction may be vacated under 2-1401 as a result of a claim of actual innocence based on newly discovered evidence. 730 ILCS 5-5-4(c).

43.     Applying *Lawton*, the Illinois Appellate Court has held that a section 2-1401 petition is the proper vehicle for a petitioner to seek to vacate an unconstitutional conviction if he has already completed his sentence or the interests of justice demand relief. *People v. Mathis*, 357 Ill. App. 3d 45, 50 (1st Dist. 2005).

44.     In practice, and in the context of blatant and systemic issues of police misconduct, Illinois courts have routinely granted section 2-1401 petitions filed more than two years after conviction—both at the request of the petitioner and the State. For example, section 2-1401 has been the vehicle used to vacate more than 230 convictions connected to the misconduct of former Chicago Police Sergeant Ronald Watts and his team. It has also been used to vacate convictions of Guevara's victims. *See E.g., People v. Demetrius Johnson,* 91 CR 19833 (Ex. 42); *People v.*

12

*Rodriguez*, 91-CR-13938 (Ex. 11); *People v. Rios*, 89-CR-16525; *People v. Kelly*, 99 CR 06197(03) (Ex. 13).

**B. Petitioner's pleading is timely**

45.     While a section 2-1401 petition normally must be filed within two years of the conviction in a criminal case, time during which the opposing party (or the police) fraudulently conceal the claim tolls the limitation period. *See People v. McLaughlin*, 324 Ill. App. 3d 909, 918-19 (1st Dist. 2001); 735 ILCS 5/2-1401(c). Time limitations in both post-conviction and civil matters are affirmative defenses that can and should be waived by the State or opposing party when justice warrants. *People v. Boclair*, 202 Ill. 2d 89, 101 (2002); *Dever v. Simmons*, 292 Ill. App. 3d 70, 73 (1st Dist. 1997); *see also supra* page n.1 (State's Attorney Foxx's noting her commitment to rectifying Guevara-related wrongful convictions). Moreover, irrespective of timeliness, section 2-1401 is "versatile and effective means of pursuing justice." *Lawton*, 212 Ill. 2d at 299. It has been repeatedly used to vacate convictions—even those secured by guilty plea—in the interests of justice or when circumstances change long after the statute of limitations ran. *See Davis*, 145 Ill. 2d at 244.

46.     It is now widely accepted and understood that Guevara engaged in decades of corruption, but that corruption was hidden from criminal defendants, like the Petitioner herein. Accordingly, any and all of the allegations detailed in the attached exhibits that pre-dated the Petitioner's trial in this case were *Brady* material that was required to be disclosed. *See People v. Mitchell*, 2012 IL App (1st) 100907, ¶¶ 71-72 (explaining that under *Kyles v. Whitley*, 514 U.S. 419 (1995), knowledge by any agents of the State, such as police officers, is imputed to the State). This is particularly true of the adverse credibility findings by the Office of Professional Standards (OPS) that predate any of the Petitioner's trials. *See People v. Martinez*, 2021 IL App (1st) 190490, ¶¶ 90-92 (explaining that undisclosed, material documents relating to police misconduct that

13

predate the cases are *Brady* material); *People v. Mack*, 2018 IL App (2d) 170641-U, ¶ 15 (highlighting the "analytical link" between *Brady* and section 2-1401 fraudulent concealment).

47.     All of this information, however, was never provided to the Petitioner and therefore fraudulently concealed from him. *See McLauglin*, 324 Ill. App. 3d at 918-19; 735 ILCS 5/2-1401(c). Any delay in filing, therefore, is tolled. Petitioner cannot be penalized for failing to present these claims in the original action where the facts were withheld from him.

48.     Petitioner, moreover, is bringing this petition not long after the State has publicly announced it no longer stands by Guevara-related convictions. This information provides a new basis to bring a claim.

**C.  Petitioner has a meritorious defense in the original action**

49.     When the Petitioner's case was adjudicated decades ago, Guevara successfully concealed his corruption. It has now come forth, making Petitioner eligible for relief under 735 ILCS 5/2-1401(c). *See People v. McLaughlin*, 324 Ill. App. 3d 909, 918-19 (1st Dist. 2001).

50.     Similarly, Guevara's acts of coercing false statements and fabricating evidence in Petitioner's case made it impossible for Petitioner to fairly present evidence of his innocence.

51.     The new evidence affixed to this Petition—particularly Guevara's pattern of similar misconduct and Guevara's assertion of the Fifth Amendment when asked about this investigation—provide a meritorious defense. The new evidence of the pattern of Guevara's misconduct is particularly probative here given the fact that Vera contemporaneously alleged Guevara's unconstitutional misconduct during pretrial hearings and at trial, and that the State's sole testifying eyewitness denied on the stand that he could identify Vera as the shooter. Had the trier-of-fact heard the evidence of Guevara's practice of engaging in exactly the type of unconstitutional misconduct Vera alleged, his confession would have been suppressed and he

14

would have been entitled to relief. *See e.g.*, Exs. 15-21 (exonerated Guevara victims who all alleged that Guevara coerced their confessions); *see also* Exs. 3, 8 (Judge Obbish orders pertaining to the pattern of Guevara's misconduct in coercing confessions and suppressing the confessions of Gabriel Solache and Arturo Reyes).

52.     Furthermore, the new evidence of Guevara's pattern of fabricating police reports by falsely documenting alibis, like he did in Petitioner's case, provides evidence that undermines Petitioner's conviction. *See* Exs. 42-48 (examples of cases of exonerated individuals where Guevara fabricated police reports by purposefully mis-documenting alibi or other statements, thereby ensuring the accused cannot defend against Guevara's false charges).

53.     In addition, the suppression of the evidence violated Petitioner's rights to due process of law pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). The rule of *Brady* "encompasses evidence known to police investigators, but not to the prosecutor," and withheld impeachment evidence. *People v. Beaman*, 229 Ill. 2d 56, 73 (2008) (citing *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)).

54.     A *Brady* violation is a constitutional error that is never harmless, *People v. Beaman*, 229 Ill. 2d 56, 74 (2008), and a Section 2-1401 petition may "be used to challenge judgments claimed to be defective for legal reasons." *People v. Lawton*, 212 Ill. 2d 285, 297 (2004).

55.     All of the pattern exhibits attached to this Petition is impeachment of Guevara, and the scope of it would more likely than not have led to a different result in all of these cases.

## CONCLUSION

For these reasons, Petitioner respectfully requests this Court grant this petition and vacate his conviction.

Respectfully Submitted,

/s/ Fadya Salem___
Attorney for Petitioner

Joshua Tepfer
Fadya Salem
The Exoneration Project (Atty No. 44407)
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 789-4955
josh@exonerationproject.org
fadya@exonerationproject.org

Anand Swaminathan
Loevy & Loevy
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900
anand@loevy.com

16

Exhibit S) '

**CIRCUIT COURT OF COOK COUNTY ILLINOIS**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| People of the State of Illinois, | ) | |
| | ) | |
| Respondent, | ) | |
| v. | ) | |
| | ) | |
| Tyrece Williams, | ) | 90 CR 13614(01) |
| | ) | |
| Petitioner. | ) | |
| | ) | |

---

**PETITION FOR RELIEF FROM JUDGEMENT AND TO VACATE CONVICTIONS**
**PURSUANT TO 735 ILCS 5/2-1401**

---

The above-captioned Petitioner files this consolidated petition for relief from judgement and to vacate his convictions pursuant to 735 ILCS 5/2-1401. In support of this request, Petitioner states as follows:

**INTRODUCTION**

1.      After decades of advocacy and litigation in Illinois Courts, there is no longer a viable dispute: Former Chicago police detective Reynaldo Guevara was a corrupt police officer who routinely violated citizens constitutional rights when conducting homicide investigations.

2.      Courts and juries alike have concluded that during his lengthy career Guevara engaged in a range of abhorrent and unconstitutional misconduct, including manipulating, threatening, and psychologically and physically coercing witnesses and accused suspects; perjury; and the outright fabrication of statements, police reports, and other evidence. *See People v. Martinez*, 2021 IL App (1st) 190490, ¶ 47 ("Given the staggering breadth of the materials regarding Detective Guevara's involvement in other cases, we succinctly state that those materials reflected a penchant for manipulating witness identifications. Many of his victims were eventually

1

exonerated."); *see id.* at ¶¶ 64, 80 ("Detective Guevara is a malignant blight on the Chicago Police Department and the judicial system" whose "toolbox of coercion was well-stocked with a wide variety of tools"); Ex. 2 (*People v. Demetrius Johnson*, 21 CC 3482 (July 27, 2021)), at 1 ("Mr. Johnson's conviction was based upon evidence both fabricated and concealed by notorious homicide detective Reynaldo Guevara," which at the time the court noted was the "21st conviction vacated owing to the misconduct of Guevara."); Ex. 3 (*People v. Solache/Reyes*, 98 CR 12440, Dec. 13, 2017), at 40-46 (Judge Obbish, the last judicial officer to hear substantive testimony from Guevara after the State granted Guevara immunity in 2017, concluding that Guevara's testimony was replete with "bald faced lies" and his "weak" general denials of physically coercing the Defendants confessions and feigned lack of memory were "not the testimony of a credible witness"); Ex. 4 (*Jacques Rivera v. Reynaldo Guevara et al.*, 12 C 4428) (civil jury finding Guevara liable for violating Jacques Rivera's due process rights, conspiracy in doing so, and intentional inflicting of emotional distress and awarding $17 million in compensatory damages and an additional $75,000 in punitive damages against Guevara).

3.      Since 2017, Guevara himself refuses to defend his own investigations, asserting his Fifth Amendment rights not to incriminate himself when asked any questions relating to his police work. Following well-established legal principles, courts, in turn, routinely have drawn adverse inferences against him and concluded Guevara did, in fact, do what he refused to deny. *See People v. Gibson,* 2018 IL App (1st) 162177, ¶ 5 (courts must draw an adverse inference when a police officer pleads the Fifth and refuses to defend his investigation unless there is a credible reason not to do so). *See e.g.*, Ex. 5 (*People v. David Gecht*, May 25, 2022), at 27 ("The fact that Guevara refused to answer and was nonresponsive to questions, suggests that his investigation in this case

was infected with the same pattern and practice of misconduct. Otherwise, he would have provided substantive answers to deposition questions regarding his investigation.").

4.  In turn, as a matter of due process, courts have repeatedly vacated convictions or granted other relief where Guevara-led investigations led to the ultimate convictions. *See e.gs.*, *id.* at 15, 24, 27 (Judge Kenworthy finding that "Detective Guevara engaged in a pattern and practice of intimidating, threatening, and influencing witnesses in prior homicide investigations, . . . [and Guevara's] pattern and practice of misconduct demonstrates [petitioner's] due process claim"); Ex. 6 (*People v. David Colon*, July 8, 2022), at 31-32 (Judge Atcherson holding that relief was required as a matter of due process because "[i]t is now undisputed that former Detective Guevara, motivated by a desire to close cases regardless of whether he had found the actual perpetrator, engaged in multiple and repeated instances of police misconduct which took carious forms"); Ex. 7 (*People v. Juan & Rosendo Hernandez*, 97 CR 21329, July 14, 2022) at 3-13 (Judge Rosado finding that Guevara conspired with Joseph Miedzianowski to violate the Hernandez brothers due process rights in a multitude of ways, including by manipulating witness identifications, fabricating police reports by intentionally misreporting alibi and other police statements, and committing perjury by falsely testifying about those same alibi statements); Ex. 8 (*People v. Gabriel Solache and Arturo Reyes*, 98 CR 122440, June 29, 2016), at 36 (Judge Obbish finding that "petitioners have made a substantial showing they were denied their constitutional right to due process").

5.  In total, Petitioner is aware of 44 individuals whose overturned convictions were tied to Guevara. Courts have granted relief from convictions in trials and pleas, alike, and whether the claims invoked the Post-Conviction Hearing Act or section 2-1401 of the Code of Civil Procedure, 735 ILCS 5/2-1401. *See e.gs.*, Exs. 9-10 (*People v Marilyn Mulero & Madeline*

3

*Mendoza*, 92CR13088(02), (03) (Orders vacating convictions and pleas, including Mendoza's via section 2-1401); Ex. 11 (*People v. Daniel Rodriguez*, 91 CR 13938. April 25, 2022) (Order granting section 2-1401 petition following trial conviction based on new evidence of Guevara's misconduct); Ex. 13 (*People v. Thomas Kelly & Jose Tinajero*, 99 CR 06197, Jan. 31, 2024) (most recent Orders granting relief to Guevara victims, one of which was via 2-1401 and one via the Post-Conviction Hearing Act).

6.      Since August 2022, the Cook County State's Attorney's Office has agreed that convictions tied to Guevara's investigations are unreliable and should be vacated.[1] Petitioner is unaware of a single Guevara-related collateral petition the State has contested since August 2022, or that any court has ultimately refused to overturn. Well over a majority of those individuals were later awarded certificates of innocence. *See* Exs. 12, 14 (identifying 25 COIs in Guevara-related overturned convictions).

---

[1] On August 9, 2022, the Cook County State's Attorney appeared in court and withdrew their objection to eight pending post-conviction matters in cases Guevara investigated. State's Attorney Foxx noted as follows:

"[W]e cannot stand by these convictions based on the serious allegations of misconduct and findings of credibility against Detective Guevara." *See* Dana Kozlov, Marissa Parra, *7 murder convictions linked to disgraced CPD Det. Reynaldo Guevara thrown out*, CBS2, Aug. 9, 2022, at https://www.cbsnews.com/chicago/news/eight-murder-convictions-vacated-chicago-police-detective-reynaldo-guevara-cook-county-states-attorney-kim-foxx/

"Even in cases where we still have questions about guilt, where we are not affirming actual innocence, the taint of detective Guevara is such that we cannot stand behind them any further." *See* Melissa Segura, *Seven People Who've Served Decade In Prison Had Their Murder Convictions Over Alleged Abuse By a Chicago Cop*, BuzzFeed News, Aug. 9, 2022, at https://www.buzzfeednews.com/article/melissasegura/guevara-chicago-murder-exoneration.

"When it became clear that the allegations of misconduct against Guevara had significant merit, we could no longer stand behind these convictions where individuals spent decades incarcerated, devastating families and communities in Chicago. The Cook County State's Attorney's Office . . . will continue to address and investigate claims of wrongful convictions based on the evidence and the law." *See* Press Release, *Cook County State's Attorney Kimberly Foxx Announces Dismissal of Murder Cases Tied to Former Chicago Police Detective Reynaldo Guevara*, Aug. 9, 2022, at https://www.cookcountystatesattorney.org/news/cook-county-state-s-attorney-kimberly-foxx-announces-dismissal-murder-cases-tied-former-chicago

7. Like the others before him, Petitioner, too, deserves the same relief, as his arrest and subsequent conviction is clearly tied to a Guevara-led corrupt investigation. Guevara's role in securing the inculpatory testimony is clear from the police reports and testimony, yet Guevara now refuses to defend this very same investigation, asserting the Fifth Amendment. Ex. 1.

8. Given the supporting facts of this case, Petitioner is entitled to relief as a matter of due process like the dozens of Guevara-victims before them. This Court should vacate Petitioner's conviction.

## FACTUAL BACKGROUND

### A. Brief overview of the evidence of Guevara's pattern of misconduct

9. Many of the court decisions cited above document the conclusions about Guevara's range of misconduct. These conclusions, of course, are not in the abstract and are based upon overwhelming documentary and testimonial evidence, a portion of which is attached as exhibits to this pleading.

10. Guevara manipulates, threatens, coerces, and physically harms witnesses and accused suspects to give false statements and testimony. Exs. 15-41 (sworn testimony and affidavits alleging precisely that).

11. Guevara creates false police reports out of whole cloth and hides the real, accurate ones. *See* Ex. 42 (various materials in the Demetrius Johnson matter, showing that Guevara literally drafted a fake/false lineup report and hid the true, exculpatory lineup report to frame the 15-year-old Johnson, who has since been certified innocent).

12. Guevara fabricates witness and suspect statements, particularly as it relates to alibi evidence so that accused defendants cannot later defend against the false allegations in court. *See* Exs. 42-48 (examples of witness testimony and supporting materials showing that Guevara

fabricated police reports by purposefully mis-documenting alibi or other statements, thereby ensuring the accused cannot defend against Guevara's false charges—each of these examples are in cases of individuals who have been exonerated).

13.     Guevara uses fake informants. Ex. 49 (statement and testimony of Francisco Vicente, who has now sworn under oath multiple times that Guevara manipulated and forced him to falsely implicate five different innocent individuals (Geraldo Iglesias, Robert Bouto, Jose Montanez, Armando Serrano, and George Pacheco), each of whom has been exonerated and/or received certificates of innocence).

14.     Guevara conspires with notorious corrupt police officers like Joseph Miedzianowski, Ex. 7, or his long-time partner Ernest Halvorsen—the latter of which courts have also found has his own pattern of misconduct—to frame perceived threats to his corrupt police activities. Ex. 11; *see also* Ex. 64 (*People v. Reynaldo Munoz*, 85 C 12403, Feb. 22, 2022) (Judge Atcherson finding that Halvorsen has his own pattern of unconstitutional misconduct in a case Guevara is otherwise uninvolved). *See also* Exs. 50-51 (testimony from Fred Rock and Jondalyn Fields showing how Guevara conspired with Miedzianowski to frame Juan and Rosendo Hernandez, both of whom have been certified innocent); Ex. 52 (FBI Report documenting statement of Mohamed Omar, connecting Guevara and Miedzianowski); Ex. 53 (testimony of George Laureano, describing Guevara conspiring with Miedzianowski in a criminal conspiracy).

15.     Accused suspects have repeatedly asserted these horrific allegations. *See e.g.* Exs. 15-21 (sworn testimony from seven men—all wrongfully convicted and six of whom have certificates of innocence—describing Guevara coercing their false confessions).

16.     Victims and innocent third party witnesses corroborate it. *See* Exs. 22-32 (various sworn statements and testimony showing Guevara's manipulation of witness identifications, all in

6

cases where the accused was later exonerated, including, for example, Jose E. Melendez (Ex. 24), who was a crime victim yet contemporaneously insisted Guevara repeatedly tried to force him to implicate an innocent person); Exs. 33-41 (various other sworn statements corroborating Guevara's coercive questioning, threats, manipulation, and unconstitutional investigations in other cases).

17.     Respected defense attorneys have witnessed it. Ex. 54 (testimony of attorney Kent Brody describing Guevara's manipulation and lies during lineup procedures in the Juan and Rosendo Hernandez matter—both certified innocent); Ex. 55 (testimony of James Saltouros indicating the same in the matter of John Martinez, who has been exonerated); Ex. 56 (testimony of John Deleon describing the lies and manipulation of Guevara in the Iglesias and Martinez matters—both of whom have been exonerated).

18.     Felony review prosecutors' testimony has confirmed it. *See* Ex. 7, at 12 (court ruling in Hernandez case describing how felony review ASA testimony contemporaneously confirmed Guevara fabricated reports regarding the accused's alibis).

19.     Whistleblowing police officers have testified and spoken up about it. Ex. 57 (testimony of former CPD detective Bill Dorsch describing Guevara's manipulation of witness identifications that he personally witnessed); Ex. 58, at 194-96 (testimony of Ron Malczyk confirming that Guevara fabricated or lied in a report).

20.     City of Chicago investigations have confirmed it. Ex. 59 (three reports by former U.S. Attorney Scott Lassar commissioned by the City of Chicago concluding that Guevara fabricated evidence and committed misconduct in multiple cases).

21.     The Office of Professional Standards (OPS) has concluded Guevara lies. Ex. 60-63 (a series of OPS reports and sustained findings against Guevara spanning from 1986-2000

concluding that Guevara's denials of allegations of various forms of misconduct were not credible).

22.     Judges and juries have adjudicated it. Exs. 2-14; *Martinez*, 2021 IL App (1st) 190490; *People v. Gomez*, 2021 IL App (1st) 192020, ¶ 58; *People v. Gonzalez*, 2016 IL App (1st) 141660, ¶¶ 34, 57; *People v. Serrano*, 2016 IL App (1st) 133493, ¶ 18; *People v. Montanez*, 2016 IL App (1st) 133726; *People v. Almodovar*, 2013 IL App (1st) 101476; *People v. Reyes*, 369 Ill. App. 3d 1, 21 (1st Dist. 2006) (all commenting on Guevara's pattern of unconstitutional misconduct).

23.     And Guevara never denies it. *See, e.g.*, Ex. 1 (Guevara asserting the Fifth Amendment when questioned about his investigations).

**B.  Factual Background of Petitioner's Case[2]**

24.     On April 20, 1990, near the corner of Drake and Palmer Streets, the victim Peter Cruz got into an altercation with an individual with a pit bull. During the altercation, the man with the pit bull pulled out a gun and shot Cruz.

25.     At a short bench trial, four witnesses who viewed portions of the event testified: Wilfredo Torres, James Biedron, and Edwina Hawk identified Williams as Cruz's shooter. R. 5-98. Edwin Garcia testified that he witnessed it as well; he got a good, straight face-to-face look at the man who was tussling with Cruz; and that person was not Williams. R. 113-15.

26.     Williams has and does maintain his innocence. Ex. 103a at 4 (Sentencing hearing by Counsel: "Mr. Williams still maintains his innocence."); *id.* at 4-5 (Allocution: "I did not kill this person, your Honor, I never this person in my life.").

---

[2] The appellate record is included on a jump drive attached to this petition.

8

27.     The police reports describe how Williams came to be arrested three weeks after the murder: Without further explanation, arresting officers, including Guevara, reported that they "learned from sources on the street that a subject by the name of Tyrece Williams was responsible for this homicide." Ex. 103b at 3. Guevara then initiated a "photo show-up" with 15-year-old Torres, Ex. 103b at 2, who supposedly identified Williams. Ex. 103c; *see also* Ex. 103b at 3. Lineup identifications of Williams by Torres, Bigdron, and Hawk followed; Guevara conducted the Hawk lineup. Ex. 5d. None of the witnesses had ever seen Williams before. *See* R. 22-23, 58, 89.

28.     Edwin Hawk and James Biedron are deceased. Petitioner is continuing attempts to locate and speak to Wilfredo Torres. Ex. 103e.

## ARGUMENT

**In light of the extraordinary evidence of the corruption of Reynaldo Guevara and his tactical team, this Court must vacate Petitioner's conviction pursuant to 735 ILCS 5/2-1401**

### A. Legal Standard

29.     A petition filed pursuant to 735 ILCS 5/2-1401 seeks to bring facts to the attention of the trial court that would have precluded entry of a final judgment had the facts been known at the time of entry of the judgment. *People v. Haynes*, 192 Ill. 2d 437 (2000).

30.     Although the petition must be filed in the same proceeding as the original judgment, the petition is a separate action. 735 ILCS 5/2-1401(b).

31.     The burden of proof for a section 2-1401 petition is a preponderance of the evidence. *Smith v. Airoom, Inc.,* 114 Ill. 2d 209, 221 (1986).

32.     Although section 2-1401 is a civil remedy, its remedial powers extend to criminal matters. *People v. Pinkonsly*, 207 Ill. 2d 555, 562 (2003).

33.     A section 2-1401 petitioner is entitled to relief if (1) a meritorious defense or claim exists, and (2) the petitioner exercised due diligence in both presenting the defense or claim the original action and in filing the section 2-1401 petition. *Smith*, 114 Ill. 2d at 221. Ultimately, "[r]elief should be granted under section 2-1401 when necessary to achieve justice." *People v. Lawton*, 212 Ill. 2d 285, 298 (2004). It is a "versatile and effective means of pursuing justice" for criminal defendants where the Post-Conviction Hearing Act is unavailable. *Id.* at 299.

34.     Illinois law recognizes that a conviction may be vacated under 2-1401 as a result of a claim of actual innocence based on newly discovered evidence. 730 ILCS 5-5-4(c).

35.     Applying *Lawton*, the Illinois Appellate Court has held that a section 2-1401 petition is the proper vehicle for a petitioner to seek to vacate an unconstitutional conviction if he has already completed his sentence or the interests of justice demand relief. *People v. Mathis*, 357 Ill. App. 3d 45, 50 (1st Dist. 2005).

36.     In practice, and in the context of blatant and systemic issues of police misconduct, Illinois courts have routinely granted section 2-1401 petitions filed more than two years after conviction—both at the request of the petitioner and the State. For example, section 2-1401 has been the vehicle used to vacate more than 230 convictions connected to the misconduct of former Chicago Police Sergeant Ronald Watts and his team. It has also been used to vacate convictions of Guevara's victims. *See E.g., People v. Demetrius Johnson,* 91 CR 19833 (Ex. 42); *People v. Rodriguez*, 91-CR-13938 (Ex. 11); *People v. Rios*, 89-CR-16525; *People v. Kelly*, 99 CR 06197(03) (Ex. 13).

**B. Petitioner's pleading is timely**

37.     While a section 2-1401 petition normally must be filed within two years of the conviction in a criminal case, time during which the opposing party (or the police) fraudulently conceal the claim tolls the limitation period. *See People v. McLaughlin*, 324 Ill. App. 3d 909, 918-

19 (1st Dist. 2001); 735 ILCS 5/2-1401(c). Time limitations in both post-conviction and civil matters are affirmative defenses that can and should be waived by the State or opposing party when justice warrants. *People v. Boclair*, 202 Ill. 2d 89, 101 (2002); *Dever v. Simmons*, 292 Ill. App. 3d 70, 73 (1st Dist. 1997); *see also supra* page n.1 (State's Attorney Foxx's noting her commitment to rectifying Guevara-related wrongful convictions). Moreover, irrespective of timeliness, section 2-1401 is "versatile and effective means of pursuing justice." *Lawton*, 212 Ill. 2d at 299. It has been repeatedly used to vacate convictions—even those secured by guilty plea—in the interests of justice or when circumstances change long after the statute of limitations ran. *See Davis*, 145 Ill. 2d at 244.

38.     It is now widely accepted and understood that Guevara engaged in decades of corruption, but that corruption was hidden from criminal defendants, like the Petitioner herein. Accordingly, any and all of the allegations detailed in the attached exhibits that pre-dated the Petitioner's trial in this case were *Brady* material that was required to be disclosed. *See People v. Mitchell*, 2012 IL App (1st) 100907, ¶¶ 71-72 (explaining that under *Kyles v. Whitley*, 514 U.S. 419 (1995), knowledge by any agents of the State, such as police officers, is imputed to the State). This is particularly true of the adverse credibility findings by the Office of Professional Standards (OPS) that predate any of the Petitioner's trials. *See People v. Martinez*, 2021 IL App (1st) 190490, ¶¶ 90-92 (explaining that undisclosed, material documents relating to police misconduct that predate the cases are *Brady* material); *People v. Mack*, 2018 IL App (2d) 170641-U, ¶ 15 (highlighting the "analytical link" between *Brady* and section 2-1401 fraudulent concealment).

39.     All of this information, however, was never provided to the Petitioner and therefore fraudulently concealed from them. *See McLauglin*, 324 Ill. App. 3d at 918-19; 735 ILCS 5/2-

11

1401(c). Any delay in filing, therefore, is tolled. Petitioner cannot be penalized for failing to present these claims in the original action where the facts were withheld from him.

40. Petitioner, moreover, is bringing this petition not long after the State has publicly announced it no longer stands by Guevara-related convictions. This information provides a new basis to bring a claim.

### C. Petitioner has a meritorious defense in the original action

41. When the Petitioner's case was adjudicated decades ago, Guevara successfully concealed his corruption. It has now come forth, making Petitioner eligible for relief under 735 ILCS 5/2-1401(c). *See People v. McLaughlin*, 324 Ill. App. 3d 909, 918-19 (1st Dist. 2001).

42. Similarly, Guevara's acts of coercing false statements and fabricating evidence in Petitioner's case made it impossible for Petitioner to fairly present evidence of their innocence.

43. The new evidence affixed to this Petition—particularly Guevara's pattern of similar misconduct and Guevara's assertion of the Fifth Amendment when asked about this investigation—provide a meritorious defense. Given that this case rests solely on eyewitness testimony, Petitioner would be able to present scores of witnesses to corroborate the theory that Guevera manipulated the eyewitness identifications in this case. *See Martinez*, 2021 IL App (1st) 190490, at ¶ 47 ("Given the staggering breadth of materials regarding Detective Guevara's involvement in other cases, we succinctly state that those materials reflected a penchant for manipulating witness identification.").

44. In addition, the suppression of the evidence violated Petitioner's rights to due process of law pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). The rule of *Brady* "encompasses evidence known to police investigators, but not to the prosecutor," and withheld

impeachment evidence. *People v. Beaman*, 229 Ill. 2d 56, 73 (2008) (citing *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)).

45.     A *Brady* violation is a constitutional error that is never harmless, *People v. Beaman*, 229 Ill. 2d 56, 74 (2008), and a Section 2-1401 petition may "be used to challenge judgments claimed to be defective for legal reasons." *People v. Lawton*, 212 Ill. 2d 285, 297 (2004).

46.     All of the pattern exhibits attached to this Petition is impeachment of Guevara, and the scope of it would more likely than not have led to a different result in all of these cases.

## CONCLUSION

For these reasons, Petitioner respectfully requests this Court grant this petition and vacate his conviction.

Respectfully Submitted,

/s/ Joshua A. Tepfer____
Attorney for Petitioner

Joshua Tepfer
Fadya Salem
The Exoneration Project (Atty No. 44407)
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 789-4955
josh@exonerationproject.org
fadya@exonerationproject.org

Anand Swaminathan
Loevy & Loevy
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900
anand@loevy.com

Exhibit (S)

# Steblay Area Five Homicide File Data, 1991-1995

Area Five Homicide Files 1991-1992 — Steblay Data 9-16-2022

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? (Y/N) | Had the witness seen the suspect in a prior identification procedure? (Y/N) | If so, Bates number of the report of that prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P015036 | 0 | | | | | | | | | | | | | | | | | | |
| P018275 | 0 | | | | | | | | | | | | | | | | | | |
| P023938 | 0 | | | | | | | | | | | | | | | | | | |
| P025834 | 7 | P025834-A | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 1/28/91 | | 68236 | NO | N | N | | |
| P025834 | 7 | P025834-B | 1 | 1 | No | 5 | 4 | 4 | 4 | PHOTO | NO | 1/30/91 | | 68194 | NO | N | N | | |
| P025834 | 7 | P025834-C | 1 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 1/30/91 | 15:00 | 68196 | NO | N | N | | |
| P025834 | 7 | P025834-D | 1 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 1/30/91 | 13:20 | 68140 | NO | N | N | | |
| P025834 | 7 | P025834-E | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 1/30/91 | | 68143 | NO | N | N | | |
| P025834 | 7 | P025834-F | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 4/1/91 | | 68161 | NO | N | Y | 68194 | N |
| P025834 | 7 | P025834-G | 1 | 1 | No | 6 | 4 | 2 | 2 | LIVE | YES | 4/18/91 | 18:00 | 68128 | NO | N | N | | |
| P025950 | 1 | P025950-A | 3 | 1 | No | 8 | 4 | 2 | 4 | LIVE | YES | 1/19/91 | 5:00 | 45138 | NO | N | N | | |
| P037621 | 2 | P037621-A | 2 | 2 | Yes | 4 | 2 | 1.5 | 3 | LIVE | YES | 1/1/01 | 11:00 | 45158 | NO | N | N | | |
| P042453 | 2 | P042453-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 1/31/91 | 10:00 | 45181 | YES | N | N | | |
| P042453 | 2 | P042453-B | 2 | 2 | Yes | 5 | 3 | 1.5 | 4 | LIVE | YES | 1/31/91 | 23:00 | 45189 | NO | N | N | | |
| P049272 | 3 | P049272-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 5/12/91 | UNK | 142574 | YES | N | N | | |
| P049272 | 3 | P049272-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 5/13/91 | 21:00 | 142574 | NO | Y | Y | 142572 | UNK |
| P049272 | 3 | P049272-C | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 6/14/91 | 17:00 | 142583 | NO | N | N | | |
| P051734 | 1 | P051734-A | 3 | 1 | No | 3 | 2 | 2 | 3 | LIVE | YES | 2/21/91 | 6:00 | 142625 | NO | N | N | | |
| P054396 | 6 | P054396-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 2/7/91 | 22:30 | 128679 | NO | N | N | | |
| P054396 | 6 | P054396-B | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 2/7/91 | 22:30 | 128679 | YES | N | N | | |
| P054396 | 6 | P054396-C | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 11/21/91 | | 128671 | YES | N | N | | |
| P054396 | 6 | P054396-D | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 1/12/92 | 21:00 | 128629 | NO | N | N | | |
| P054396 | 6 | P054396-E | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 1/12/92 | 23:00 | 128631 | NO | N | Y | 128624 | UNK |
| P054396 | 6 | P054396-F | 2 | 1 | No | 5 | 4 | 2 | 2 | PHOTO | NO | 1/12/92 | | 128646 | YES | N | N | | |
| P060434 | 2 | P060434-A | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 2/9/91 | 10:00 | 128728 | NO | N | N | | |
| P060434 | 2 | P060434-B | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | NO | 2/9/91 | 14:00 | 128739 | YES | N | N | | |
| P090216 | 1 | | | | | | | | | | | 3/11/91 | 6:00 | 45319 | | N | N | | |
| P096838 | 6 | P096838-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/21/91 | 0:30 | 45340 | NO | N | N | | |
| P096838 | 6 | P096838-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 2/9/97 | 23:30 | 45356 | NO | N | N | | |
| P096838 | 6 | P096838-C | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 6/14/97 | 22:00 | 45347 | NO | N | N | | |
| P096838 | 6 | P096838-D | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 6/14/97 | 22:00 | 45347 | NO | N | Y | 45347 | Y |
| P096838 | 6 | P096838-E | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 4/20/98 | 8:33 | 45354 | NO | N | N | | |
| P096838 | 6 | P096838-F | 1 | 1 | No | 7 | 6 | 6 | 1 | LIVE | YES | 11/17/99 | 19:40 | 69456 | NO | N | Y | 45351 | UNK |
| P105533 | 0 | | | | | | | | | | | | | | | | | | |
| P117631 | 0 | | | | | | | | | | | | 3/26/91 | 23:55 | 69613 | | Y | N | | |
| P118133 | 2 | P118133-A | 1 | 1 | No | 2 | 1 | 1 | 1 | PHOTO | NO | 5/10/91 | 23:00 | 45434 | NO | Y | N | | |
| P118133 | 2 | P118133-B | 1 | 1 | No | 2 | 1 | 1 | 1 | LIVE | YES | 3/17/91 | 23:55 | 69758 | YES | N | N | | |
| P120997 | 0 | | | | | | | | | | | | | | | | | | |
| P124971 | 0 | | | | | | | | | | | | 3/26/91 | 23:00 | 45506 | | N | N | | |
| P124971 | 0 | | | | | | | | | | | | 4/3/91 | 23:55 | 45517 | | Y | N | | |
| P127109 | 0 | | | | | | | | | | | | | | | | | | |
| P128067 | 4 | P128067-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 1/22/91 | 14:00 | 70223 | NO | N | N | | |
| P128067 | 4 | P128067-B | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 4/14/91 | 17:00 | 45552 | YES | N | N | | |
| P128067 | 4 | P128067-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 4/14/91 | 17:00 | 45552 | YES | N | Y | 45551 | Y |
| P128067 | 4 | P128067-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/23/91 | 13:00 | 45566 | YES | Y | N | | |
| P128067 | 4 | | | | | | | | | | | | 8/23/91 | 13:00 | | | | | | |
| P128067 | 4 | | | | | | | | | | | | 8/24/91 | 21:00 | 45559 | | N | N | | |
| P128067 | 4 | P128067-D | 1 | 1 | No | 7 | 6 | 6 | 1 | LIVE | YES | 9/11/91 | 22:00 | 45560 | NO | N | N | | |
| P128067 | 4 | | | | | | | | | | | | 9/11/91 | 22:00 | 45565 | | | | | |
| P128067 | 4 | | | | | | | | | | | | 9/18/91 | | 45628 | | | | | |
| P129569 | 3 | P129569-A | 5 | 1 | No | 8 | 5 | 5 | 5 | LIVE | YES | 3/23/91 | 23:55 | 45587 | NO | N | N | | |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P015036 | 0 | | | | | | | | | | | | | | | | | |
| P018275 | 0 | | | | | | | | | | | | | | | | | |
| P023938 | 0 | | | | | | | | | | | | | | | | | |
| P025834 | 7 | P025834-A | Unfamiliar | | 3 | 4 | 1 | 3 | 1 | 0 | 2 | 0 | 0 | 3 | N | - | N | N |
| P025834 | 7 | P025834-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P025834 | 7 | P025834-C | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P025834 | 7 | P025834-D | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P025834 | 7 | P025834-E | Unfamiliar | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| P025834 | 7 | P025834-F | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P025834 | 7 | P025834-G | Unfamiliar | | 1 | 6 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| P025950 | 1 | P025950-A | Unfamiliar | | 3 | 8 | 2 | 6 | 6 | 0 | 0 | 0 | 0 | 6 | N | - | N | N |
| P037621 | 1 | P037621-A | Familiar Perp | | | | | | | | | | | | | Y | | N | N |
| *P042450 (top##) | 2 | P042453-A | Unfamiliar | | 2 | UNK | 1 | 2 | 0 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| *P042450 (top##) | 2 | P042453-B | Unfamiliar | | 2 | 5 | 2 | 4 | 3 | 0 | 1 | 0 | 0 | 4 | N | - | N | N |
| P049272 | 3 | P049272-A | Unfamiliar | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | Y | N | Y | Y |
| P049272 | 3 | P049272-B | Previous ID | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| P049272 | 3 | P049272-C | Unfamiliar | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| P051659 | 1 | | Familiar Perp | | | | | | | | | | | | | Y | | N | N |
| P051734 | 1 | P051734-A | Unfamiliar | | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| P054396 | 6 | P054396-A | Unfamiliar | | 4 | UNK | 1 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | N | - | Y | N |
| P054396 | 6 | P054396-B | Unfamiliar | | 3 | 5 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | Y | N |
| P054396 | 6 | P054396-C | Unfamiliar | | 2 | UNK | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | N |
| P054396 | 6 | P054396-D | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| P054396 | 6 | P054396-E | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| P054396 | 6 | P054396-F | Unfamiliar | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| P060434 | 2 | P060434-A | Unfamiliar | | 2 | 5 | 1 | 2 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P060434 | 2 | P060434-B | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P090216 | 0 | | | | | | | | | | | | | | | | | |
| P096838 | 6 | P096838-A | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| P096838 | 6 | P096838-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P096838 | 6 | P096838-C | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P096838 | 6 | P096838-D | Previous ID | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P096838 | 6 | P096838-E | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P096838 | 6 | P096838-F | Previous ID | | | | | | | | | | | | | N | | N | N |
| P105533 | 0 | | | | | | | | | | | | | | | | | |
| P117631 | 0 | | | | | | | | | | | | | | | Y | | N | N |
| P118133 | 2 | P118133-A | Familiar Perp | | | | | | | | | | | | | Y | | N | N |
| P118133 | 2 | P118133-B | Unfamiliar | | | UNK | | | | | | | | | | Y | | N | N |
| P120997 | 0 | | | | | | | | | | | | | | | | | |
| P124971 | 0 | | | | | | | | | | | | | | | Y | | N | N |
| P124971 | | | Familiar Perp | | | | | | | | | | | | | Y | | N | N |
| P127109 | 0 | | | | | | | | | | | | | | | | | |
| P128067 | 4 | P128067-A | Unfamiliar | | 2 | 4 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | Y | Y | Y | Y |
| P128067 | 4 | P128067-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | Y |
| P128067 | 4 | P128067-C | Familiar Perp | | 1 | UNK | UNK | UNK | 0 | 0 | 0 | 1 | 0 | | | Y | | Y | Y |
| P128067 | 4 | | Unfamiliar | | | | | | | | | | | | | Y | | Y | Y |
| P128067 | 4 | P128067-D | Unfamiliar | | | | | | | | | | | | | Y | | Y | Y |
| P128067 | 4 | | Familiar Perp | | | | | | | | | | | | | Y | | Y | Y |
| P128067 | 4 | | Unfamiliar | | | | | | | | | | | | | N | | Y | Y |
| P129569 | 3 | P129569-A | Unfamiliar | | 5 | 8 | 1 | 5 | 1 | 0 | 4 | 0 | 0 | 5 | N | - | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or a Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P129569 | 3 | P129569-B | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 3/29/91 | . | 45600 | NO | . | N | . | . |
| P129569 | 3 | P129569-C | 1 | 1 | No | 3 | 2 | 2 | 1 | LIVE | YES | 11/8/93 | 23:45 | 45613 | NO | Y | N | . | . |
| P129746 | 3 | . | . | . | . | . | . | . | . | . | . | . | . | . | . | . | . | . | . |
| P129746 | 0 | | | | | | | | | | | | | | | | | | |
| P130080 | 0 | | | | | | | | | | | | | | | | | | |
| P141860 | 2 | P141860-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 5/4/91 | 21:00 | 45665 | NO | Y | Y | 45657 | . |
| P144513 | 0 | | | | | | | | | | | | | | | | | | |
| P162718 | 0 | | | | | | | | | | | | | | | | | | |
| P175665 | 4 | P175665-A | 6 | 2 | Yes | 7 | 5 | 2.5 | 12 | LIVE | YES | 4/20/91 | 3:30 | 142647 | NO | N | N | . | . |
| P175665 | 4 | P175665-A | . | . | Yes | . | . | . | . | LIVE | YES | 4/20/91 | 3:30 | 142647 | NO | N | N | 142645 | . |
| P175665 | 1 | P175665-A | . | . | Yes | . | . | . | . | LIVE | YES | 4/20/91 | 3:30 | 142647 | NO | N | N | . | . |
| P175665 | 1 | P175665-A | . | . | Yes | . | . | . | . | LIVE | YES | 4/20/91 | 3:30 | 142647 | NO | N | N | 142645 | N |
| P175665 | 1 | P175665-A | . | . | Yes | . | . | . | . | LIVE | YES | 4/20/91 | 3:30 | 142647 | NO | N | N | . | . |
| P182708 | 0 | | | | | | | | | | | | | | | | | | |
| P190627 | 2 | P190627-A | 4 | 1 | No | 6 | 5 | 5 | 4 | LIVE | YES | 5/17/91 | 16:00 | 45806 | NO | N | N | . | . |
| P190627 | 2 | P190627-A | . | . | No | . | . | . | . | LIVE | YES | 5/17/91 | 16:00 | 45806 | NO | Y | N | . | . |
| P190627 | 2 | P190627-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/21/92 | . | 45815 | NO | N | N | . | . |
| P190627 | 3 | P190627-C | . | . | No | UNK | UNK | UNK | 1 | PHOTO | NO | 1/21/92 | . | 45821 | NO | N | N | . | . |
| P209994 | 0 | | | | | | | | | | | | | | | | | | |
| P218019 | 0 | | | | | | | | | | | | | | | | | | |
| P237402 | 0 | | | | | | | | | | | | | | | | | | |
| P239485 | 0 | | | | | | | | | | | | | | | | | | |
| P246193 | 0 | | | | | | | | | | | | | | | | | | |
| P246443 | 0 | | | | | | | | | | | | | | | | | | |
| P251800 | 3 | P251800-A | 2 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 6/6/91 | 23:30 | 45950 | NO | N | N | . | . |
| P251800 | 3 | P251800-A | 1 | 1 | No | . | . | . | . | LIVE | YES | 6/6/91 | 23:30 | 45950 | NO | N | N | 45953 | . |
| P251800 | 3 | P251800-B | 3 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 6/7/91 | . | 45953 | NO | N | N | . | . |
| P251800 | 3 | P251800-C | 2 | 1 | No | 7 | 6 | 6 | 2 | LIVE | YES | 6/9/91 | . | 45956 | NO | N | N | . | . |
| P272087 | 4 | P272087-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/17/91 | 17:00 | 142660 | NO | N | N | . | . |
| P272087 | 4 | P272087-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 7/17/91 | 22:00 | 142681 | NO | N | N | . | . |
| P272087 | 2 | P272087-C | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 7/17/91 | 22:00 | 142681 | NO | N | N | . | . |
| P272087 | 4 | P272087-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/22/91 | 22:00 | 142682 | NO | N | N | 142681 | . |
| P272087 | 4 | P272087-D | . | . | No | . | . | . | . | LIVE | YES | 7/22/91 | 22:00 | 142682 | NO | Y | N | . | . |
| P290243 | 0 | | | | | | | | | | | | | | | | | | |
| P308711 | 0 | | | | | | | | | | | | | | | | | | |
| P310244 | 0 | | | | | | | | | | | | | | | | | | |
| P310965 | 3 | P310965-A | 1 | 1 | No | 3 | 2 | 2 | 1 | LIVE | YES | 7/14/91 | 11:30 | 46064 | NO | N | N | . | . |
| P310965 | 3 | P310965-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/6/97 | 3:00 | 46083 | NO | N | N | 72883 | . |
| P310965 | 3 | P310965-C | 1 | UNK | UNK | UNK | UNK | UNK | 1 | PHOTO | NO | 4/11/97 | 15:00 | 72883 | YES | N | N | . | . |
| P312598 | 0 | | | | | | | | | | | | | | | | | | |
| P317758 | 3 | P317758-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 7/16/91 | 22:00 | 46124 | NO | N | N | . | . |
| P317758 | 3 | P317758-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/27/91 | . | 46130 | NO | N | N | 46124 | . |
| P317758 | 3 | P317758-B | . | . | No | . | . | . | . | LIVE | YES | 7/27/91 | . | 46130 | NO | N | N | . | . |
| P317758 | 3 | P317758-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/27/91 | . | 46124 | NO | N | N | 46124 | . |
| P318434 | 2 | P318434-A | 1 | UNK | UNK | UNK | UNK | UNK | 1 | LIVE | YES | 12/13/91 | . | 45156 | YES | Y | N | . | . |
| P318434 | 2 | P318434-B | 1 | UNK | UNK | UNK | UNK | UNK | 1 | PHOTO | NO | 4/12/92 | 13:00 | 46169 | YES | N | N | . | . |
| P327313 | 0 | | | | | | | | | | | | | | | | | | |
| P342296 | 2 | P342296-A | 2 | 1 | No | 4 | 3 | 3 | 2 | PHOTO | NO | 7/20/91 | 16:00 | 46222 | NO | N | N | . | . |
| P342296 | 2 | P342296-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 9/8/91 | 21:30 | 73508 | NO | N | N | . | . |
| P343428 | 1 | P343428-A | 6 | 1 | No | 5 | 4 | 4 | 6 | LIVE | YES | 7/20/91 | 18:00 | 46251 | NO | N | N | . | . |
| P348565 | 1 | P348565-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 7/23/91 | 11:30 | 46266 | NO | N | N | . | . |
| P359579 | 3 | P359579-A | 2 | 1 | No | 6 | 3 | 1 | 2 | LIVE | YES | 7/29/91 | 21:00 | 142723/46281 | NO | N | Y | 142727 | . |
| P359579 | 3 | P359579-A | 3 | 3 | Yes | 6 | 3 | 1 | . | LIVE | YES | 7/29/91 | 21:00 | 142723/46281 | NO | N | N | . | . |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup in File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P129569 | 3 | P129569-B | Unfamiliar | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| P129569 | 3 | P129569-C | Familiar Perp | - | 1 | 3 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P129746 | 0 | | | - | | - | | | | | | | | | | - | | |
| P130080 | 0 | | | | | | | | | | | | | | | | | |
| P141860 | 1 | P141860-A | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | N | N | N |
| P144513 | 0 | | | | | | | | | | | | | | | | | |
| P162718 | 0 | | | | | | | | | | | | | | | | | |
| P175665 | 1 | P175665-A | Both | Witness A | 2 | 7 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| P175665 | 1 | P175665-A | Unfamiliar | Witness A | | 7 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| P175665 | 1 | P175665-A | Previous ID | Witness B | | 7 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | N | - | N | N |
| P175665 | 1 | P175665-A | Unfamiliar | Witness B | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P175665 | 1 | P175665-A | Unfamiliar | | | 7 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| P182708 | 0 | | | | | | | | | | | | | | | | | |
| P190627 | 3 | P190627-A | Unfamiliar | - | 3 | 6 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| P190627 | 3 | P190627-A | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P190627 | 3 | P190627-B | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| P190627 | 3 | P190627-C | Unfamiliar | - | 1 | UNK | 1 | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P209994 | 0 | | | | | | | | | | | | | | | | | |
| P218019 | 0 | | | | | | | | | | | | | | | | | |
| P237402 | 0 | | | | | | | | | | | | | | | | | |
| P239485 | 0 | | | | | | | | | | | | | | | | | |
| P246193 | 0 | | | | | | | | | | | | | | | | | Y |
| P246443 | 0 | | | | | | | | | | | | | | | | | |
| P251800 | 3 | P251800-A | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P251800 | 3 | P251800-A | Previous ID | - | 1 | 4 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | N | - | Y | Y |
| P251800 | 3 | P251800-B | Unfamiliar | - | 3 | UNK | 1 | UNK | 3 | 0 | 0 | 0 | 0 | 3 | N | - | Y | Y |
| P251800 | 3 | P251800-C | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| P272087 | 4 | P272087-A | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P272087 | 4 | P272087-B | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P272087 | 4 | P272087-C | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| P272087 | 4 | P272087-D | Unfamiliar | - | 3 | 5 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | Y | Y |
| P272087 | 4 | P272087-D | Previous ID | - | 1 | 5 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | N | - | Y | Y |
| P290243 | 0 | | | | | | | | | | | | | | | | | |
| P308711 | 0 | | | | | | | | | | | | | | | | | |
| P310244 | 0 | | | | | | | | | | | | | | | | | |
| P310965 | 3 | P310965-A | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P310965 | 3 | P310965-B | Previous ID | - | 1 | 5 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | N | - | Y | Y |
| P310965 | 3 | P310965-C | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P312598 | 0 | | | | | | | | | | | | | | | | | |
| P317758 | 3 | P317758-A | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| P317758 | 3 | P317758-B | Previous ID | - | 1 | 5 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | N | - | Y | Y |
| P317758 | 3 | P317758-C | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P318434 | 2 | P318434-A | Familiar Perp | - | 1 | UNK | UNK | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P318434 | 2 | P318434-B | Familiar Perp | - | 1 | UNK | UNK | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P327313 | | | | | | | | | | | | | | | | | | |
| P342256 | 2 | P342256-A | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P342256 | 2 | P342256-B | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P343428 | 1 | P343428-A | Unfamiliar | - | 6 | 5 | 1 | 6 | 5 | 1 | 0 | 0 | 0 | 6 | N | - | Y | Y |
| P348565 | 2 | P348565-A | Unfamiliar | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| P359579 | 3 | P359579-A | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| P359579 | 3 | P359579-A | Unfamiliar | - | 1 | 6 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number of Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in array ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P359579 | 3 | P359579-A | 3 | 1 | Yes | | | | | LIVE | YES | 7/29/91 | 21:00 | 142723/46281 | NO | N | N | - | - |
| P359579 | 3 | P359579-B | 3 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 7/29/91 | | 142730 | NO | N | N | - | - |
| P359579 | 3 | P359579-B | | | No | 5 | 4 | 4 | 2 | PHOTO | NO | 7/29/91 | | 142730 | NO | | | | |
| P359579 | 3 | P359579-C | 2 | | No | 5 | 4 | 4 | 2 | PHOTO | NO | 8/5/91 | 23:30 | 142733 | NO | | | | |
| P359579 | 3 | P359579-C | | | No | 5 | 4 | 4 | 2 | PHOTO | NO | 8/5/91 | 23:30 | 142733 | NO | N | N | - | - |
| P362024 | 0 | | | | | | | | | | | | | | | | | | |
| P372509 | 4 | P372509-A | 1 | 2 | Yes | 6 | 4 | 2 | 2 | PHOTO | NO | 8/16/91 | | 46349 | NO | Y | N | - | - |
| P372509 | 4 | P372509-B | 1 | | No | 5 | 4 | 4 | 1 | PHOTO | NO | 8/21/91 | | 46353 | NO | | | | |
| P372509 | 4 | P372509-B | | | No | | | | | PHOTO | NO | 8/21/91 | | 46353 | NO | N | N | 46349 | - |
| P372509 | 4 | P372509-C | 1 | | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/27/92 | 20:00 | 74116 | NO | Y | Y | "46349" | - |
| P372509 | 4 | P372509-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 3/4/93 | 22:00 | 46370 | YES | N | N | - | - |
| P402641 | 2 | P402641-A | 1 | | No | 5 | 4 | 4 | 2 | LIVE | YES | 9/4/91 | 18:00 | 142784 | NO | N | N | - | - |
| P402641 | 2 | P402641-A | | | No | 5 | 4 | 4 | 2 | LIVE | YES | 9/4/91 | 18:00 | 142784 | NO | | | | |
| P402641 | 2 | P402641-B | 1 | | No | 5 | 4 | 4 | 2 | LIVE | YES | 9/8/91 | 20:45 | 142788 | NO | N | N | 142787 | N |
| P407949 | 0 | | | | | | | | | | | | | | | | | | |
| P420574 | 0 | | | | | | | | | | | | | | | | | | |
| P425933 | 0 | | | | | | | | | | | | | | | | | | |
| P438649 | 0 | | | | | | | | | | | | | | | | | | |
| P442262 | 1 | P442262-A | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 9/9/91 | 23:30 | 142797 | NO | N | N | - | - |
| P452272 | 4 | P452272-A | 1 | | No | UNK | UNK | UNK | 4 | LIVE | YES | 9/15/91 | 23:30 | 46559 | YES | N | Y | | |
| P452272 | 4 | P452272-A | | | No | | | | | PHOTO | NO | 9/15/91 | 23:30 | 46559 | NO | | | | |
| P452272 | 4 | P452272-B | 1 | | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/18/91 | 18:30 | 46569 | NO | | | | |
| P452272 | 4 | P452272-B | | | No | 5 | 4 | 4 | 1 | PHOTO | NO | 9/18/91 | 18:30 | 46569 | NO | N | N | 46563 | - |
| P452272 | 4 | P452272-C | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 9/18/91 | 23:00 | 46571 | NO | | | | |
| P454432 | 1 | P454432-A | 1 | UNK | No | UNK | UNK | UNK | UNK | LIVE | YES | 9/28/91 | 23:00 | 46623 | YES | N | Y | 46607 | N |
| P455978 | 0 | | | | | | | | | | | | | | | | | | |
| P474894 | | | | | | | | | | LIVE | | 10/8/91 | | 46704 | | | | | |
| P474894 | 1 | P474894-A | | | | | | | | LIVE | | 10/8/91 | | 46702 | | | | | |
| P474894 | 1 | P474894-A | 5 | 5 | No | 10 | 5 | 1 | 25 | LIVE | YES | 10/10/91 | 13:30 | 46716 | NO | N | N | - | - |
| P474894 | 1 | P474894-A | | | | | | | | LIVE | | 10/10/91 | 13:30 | 46716 | NO | | | | |
| P487544 | 3 | P487544-A | 1 | 4 | Yes | 7 | 3 | 0.75 | 4 | LIVE | YES | 10/30/91 | 21:00 | 75922 | NO | N | N | - | - |
| P487544 | 3 | P487544-B | 1 | | No | 4 | 3 | 3 | 1 | LIVE | YES | 5/31/95 | 17:30 | 75916 | NO | | | | |
| P487544 | 3 | P487544-C | 1 | | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/4/95 | 17:00 | 75918 | NO | N | N | - | - |
| P500651 | | | | | | | | | | | | | | | | | | | |
| P500651 | 0 | | | | | | | | | | | | | | | | | | |
| P500893 | 2 | P500893-A | 1 | | No | 5 | 4 | 4 | 1 | LIVE | YES | 10/17/91 | 15:00 | 46798 | NO | N | N | - | - |
| P500893 | 2 | P500893-B | 1 | | No | 5 | 4 | 4 | 1 | LIVE | YES | 10/17/91 | 13:30 | 46804 | NO | | | 46804 | |
| P524552 | 0 | | | | | | | | | | | | | | | | | | |
| P526822 | 2 | P526822-A | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 10/27/91 | 23:30 | 46838 | NO | N | N | - | - |
| P526822 | 2 | P526822-A | | | No | 5 | 4 | 4 | 3 | PHOTO | NO | 10/27/91 | | 46844 | NO | N | Y | 46845 | N |
| P526822 | 2 | P526822-B | 1 | | No | 6 | 5 | 5 | 1 | PHOTO | NO | 10/28/91 | 17:00 | 46845 | NO | | | | |
| P528578 | 1 | P528578 | 1 | | No | 5 | 4 | 4 | 1 | PHOTO | NO | 10/30/91 | | 46872 | NO | | | | |
| P528578 | 1 | P528578 | | | No | 5 | 4 | 4 | 1 | PHOTO | NO | 10/30/91 | | 46872 | NO | N | N | - | - |
| P530576 | 8 | P530576-A | 4 | 4 | Yes | 9 | 5 | 1 | 26 | LIVE | YES | 8/24/91 | 22:00 | 77001 | NO | | | | |
| P530576 | 8 | P530576-A | | | Yes | | | | | LIVE | | 8/24/91 | 22:00 | 77001 | NO | | | | |
| P530576 | 8 | P530576-B | 2 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 9/30/91 | 18:30 | 46903 | YES | N | N | - | - |
| P530576 | 8 | P530576-C | UNK | 2 | Yes | UNK | UNK | UNK | UNK | PHOTO | NO | 11/6/91 | 14:30 | 46908 | YES | | | | |
| P530576 | 8 | P530576-D | 1 | | No | 6 | 5 | 5 | 1 | PHOTO | NO | 11/10/91 | 16:00 | 46910 | NO | | | | |
| P530576 | 8 | P530576-E | 1 | | No | 6 | 5 | 5 | 1 | PHOTO | NO | 11/10/91 | 16:00 | 46910 | NO | | | | |
| P530576 | 8 | P530576-E | | | No | | | | | LIVE | YES | 3/24/92 | 22:00 | "46974"/46910 | NO | | | | |
| P530576 | 8 | P530576-F | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | NO | 4/30/02 | 15:55 | 76958 | NO | | | | |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P359579 | 3 | P359579-A | Unfamiliar | | 1 | 6 | 3 | 3 | 2 | 0 | 0 | 0 | 1 | 3 | N | - | N | N |
| P359579 | 3 | P359579-B | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P359579 | 3 | P359579-B | Familiar Perp | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P359579 | 3 | P359579-C | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P359579 | 3 | P359579-C | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P362024 | 0 | | | | | | | | | | | | | | | | | |
| P372509 | 4 | P372509-A | Unfamiliar | | 1 | 6 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | Y | N |
| P372509 | 4 | P372509-B | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| P372509 | 4 | P372509-B | Both | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| P372509 | 4 | P372509-C | Both | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| P372509 | 4 | P372509-D | Unfamiliar | | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| P402641 | 2 | P402641-A | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| P402641 | 2 | P402641-A | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P402641 | 2 | P402641-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P407949 | 0 | | | | | | | | | | | | | | | | | |
| P420574 | 0 | | | | | | | | | | | | | | | | | |
| P425933 | 0 | | | | | | | | | | | | | | | | | |
| P438649 | 0 | | | | | | | | | | | | | | | | | |
| P442262 | 1 | P442262-A | Unfamiliar | - | 3 | 5 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| P452272 | 3 | P452272-A | Familiar Perp | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P452272 | 3 | P452272-A | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P452272 | 3 | P452272-B | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | N | N | N |
| P452272 | 3 | P452272-B | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P452272 | 3 | P452272-C | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| P454432 | 1 | P454432-A | Familiar ID | | 1 | UNK | UNK | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P455978 | 0 | | | | | | | | | | | | | | | | | |
| P474894 | 1 | | Familiar Perp | | | | | | | | | | | | Y | Y | Y | N |
| P474894 | 1 | | Familiar Perp | | | | | | | | | | | | Y | Y | Y | N |
| P474894 | 1 | P474894-A | Unfamiliar | | 4 | 10 | 5 | 20 | 0 | 0 | 20 | 0 | 0 | 20 | N | - | Y | N |
| P474894 | 1 | P474894-A | Unfamiliar | | 4 | 10 | 5 | 5 | 5 | 0 | 0 | 0 | 0 | 5 | N | - | Y | N |
| P487544 | 3 | P487544-A | Unfamiliar | | 1 | 7 | 4 | 4 | 0 | 0 | 4 | 0 | 0 | 4 | N | - | N | N |
| P487544 | 3 | P487544-B | Familiar Perp | | 1 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | N | - | N | N |
| P487544 | 3 | P487544-C | Unfamiliar | | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| P500243 | 0 | | | | | | | | | | | | | | | | | |
| P500651 | 0 | | | | | | | | | | | | | | | | | |
| P500893 | 2 | P500893-A | Both | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P500893 | 2 | P500893-B | Familiar Perp | | 1 | 4 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | 4 | N | - | N | N |
| P524552 | 0 | | | | | | | | | | | | | | | | | |
| P526822 | 2 | P526822-A | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| P526822 | 2 | P526822-A | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P526822 | 2 | P526822-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P528578 | 1 | P528578 | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P528578 | 1 | P528578 | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P530576 | 8 | P530576-A | Unfamiliar | | 4 | 9 | 5 | 12 | 4 | 0 | 8 | 0 | 0 | 12 | N | - | Y | N |
| P530576 | 8 | P530576-A | Unfamiliar | | 4 | 9 | 5 | 8 | 8 | 0 | 0 | 0 | 0 | 8 | N | - | Y | N |
| P530576 | 8 | P530576-B | Unfamiliar | | 2 | UNK | UNK | UNK | 0 | 1 | 1 | 0 | 0 | 2 | N | - | Y | N |
| P530576 | 8 | P530576-C | Unfamiliar | | UNK | UNK | 2 | UNK | 0 | 0 | UNK | 0 | 0 | 0 | N | - | Y | N |
| P530576 | 8 | P530576-C | Familiar Perp | Witness A | 1 | UNK | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| P530576 | 8 | P530576-D | Unfamiliar | | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| P530576 | 8 | P530576-E | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| P530576 | 8 | P530576-F | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in lineup/photo array, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P530576 | 8 | P530576-G | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 4/29/03 | - | 76960 | YES | | N | | |
| P530576 | 8 | P530576-H | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 7/1/03 | 14:26 | 76904 | YES | | Y | N | |
| P540828 | 0 | | | | | | | | | | | | | | | | | | |
| P560732 | 3 | P560732 | 1 | | No | 6 | 5 | 5 | 1 | PHOTO | NO | 12/10/91 | 9:00 | 46964 | NO | | N | N | |
| P560732 | 3 | P560732 | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 12/10/91 | 9:00 | 46964 | NO | | N | N | |
| P560732 | 3 | | | | | | | | | PHOTO | NO | 12/10/91 | 9:00 | 46962 | NO | | N | N | |
| P560732 | 3 | P560732 | 1 | | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/10/91 | 9:00 | 46964 | NO | | N | N | 46964 | N |
| P591622 | 0 | | | | | | | | | | | | | | | | | | |
| P601562 | 2 | P601562-A | 1 | | No | 5 | 4 | 4 | 1 | PHOTO | NO | 12/15/91 | 22:00 | 47079 | YES | | N | N | |
| P601562 | 2 | P601562-B | 2 | 1 | No | | | | | LIVE | YES | 12/19/91 | 20:00 | 47081 | NO | | N | Y | 47079 | |
| P601562 | 2 | P601562-B | 2 | | No | | | | | LIVE | YES | 12/19/91 | 20:00 | 47081 | NO | | N | N | |
| P612885 | 2 | | | | | | | | | | | | | | | | | | |
| P612885 | 2 | P612885-A | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 12/21/91 | 16:30 | 47117 | | | N | N | |
| P612885 | 2 | P612885-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 1/23/92 | 14:06 | 47125 | NO | | N | Y | 47128 | UNK |
| T005788 | 0 | | | | | | | | | | | | | | | | | | |
| T007661 | 0 | | | | | | | | | | | | | | | | | | |
| T016194 | 1 | T016194-A | 2 | | No | | | | | LIVE | YES | 1/13/92 | 22:30 | 47204 | NO | | N | N | |
| T016194 | 1 | T016194-A | 2 | | No | | | | | LIVE | YES | 1/13/92 | 22:30 | 47204 | NO | | N | N | |
| T017163 | 0 | | | | | | | | | | | | | | | | | | |
| T019115 | 0 | | | | | | | | | | | | | | | | | | |
| T019692 | 0 | | | | | | | | | | | | | | | | | | |
| T027570 | 9 | T027570-A | 1 | | No | UNK | UNK | UNK | | PHOTO | NO | 1/17/92 | | 47316 | YES | | N | N | |
| T027570 | 9 | T027570-B | 6 | UNK | UNK | UNK | UNK | UNK | | PHOTO | NO | 1/19/92 | | 47345 | YES | | N | N | |
| T027570 | 9 | T027570-B | | UNK | | | | | | PHOTO | NO | 1/19/92 | | 47345 | YES | | N | N | |
| T027570 | 9 | | | UNK | | | | | | PHOTO | NO | 1/19/92 | 0:06 | 47333 | | | N | N | |
| T027570 | 9 | T027570-C | 1 | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 1/20/92 | | 47363 | YES | | N | N | |
| T027570 | 9 | T027570-D | 1 | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 1/21/94 | | 47498 | YES | | N | N | |
| T027570 | 9 | T027570-E | 2 | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 2/15/92 | | 47429 | YES | | N | N | |
| T027570 | 9 | T027570-F | 3 | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 2/15/92 | | 47431 | YES | | N | N | |
| T027570 | 9 | T027570-G | 2 | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 2/20/92 | 23:00 | 47437 | YES | | N | N | |
| T027570 | 9 | | | | | | | | | | | | | | | | | | |
| T027570 | 9 | T027570-H | 1 | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 2/21/92 | 22:45 | 47447 | YES | | N | N | |
| T027570 | 9 | T027570-I | | | No | | | | | LIVE | YES | 3/29/92 | | 47462 | NO | | N | N | |
| T028670 | 1 | T028670-A | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 1/25/92 | 22:00 | 47548 | NO | | N | N | |
| T041562 | 0 | | | | | | | | | | | | | | | | | | |
| T043710 | 0 | | | | | | | | | | | | | | | | | | |
| T045095 | 0 | | | | | | | | | | | | | | | | | | |
| T048539 | 0 | | | | | | | | | | | | | | | | | | |
| T049854 | 2 | T049854-A | 5 | 1 | No | 5 | 4 | 4 | 5 | PHOTO | NO | 2/10/92 | | 47745 | NO | | N | Y | 47745 | N |
| T049854 | 2 | T049854-A | | | No | | | | | PHOTO | NO | 2/10/92 | | 47753 | NO | | N | N | |
| T049854 | 2 | T049854-B | 1 | | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/10/92 | | 47743 | NO | | N | Y | 47745 | UNK |
| T055635 | 1 | T055635-A | 1 | | No | UNK | UNK | UNK | | PHOTO | NO | 12/23/92 | 12:00 | 104637 | YES | | N | N | |
| T055635 | 1 | T055635-B | 1 | | No | 4 | | 4 | | LIVE | YES | 3/24/93 | 23:50 | 47788 | NO | | N | N | |
| T060326 | 2 | T060326-A | 1 | | No | 4 | 4 | 4 | 1 | PHOTO | NO | 2/9/92 | 23:30 | 104825 | YES | | N | N | |
| T060326 | 2 | T060326-B | 1 | 2 | Yes | UNK | UNK | UNK | 2 | PHOTO | NO | 2/16/92 | | 47827 | YES | | Y | N | |
| T063850 | 0 | | | | | | | | | | | | | | | | | | |
| T069785 | 2 | T069785-A | 1 | | No | 6 | 5 | 5 | 2 | LIVE | YES | 2/15/92 | 3:00 | 47882 | NO | | N | N | |
| T069785 | 2 | T069785-A | 1 | | No | 6 | 5 | 5 | 2 | LIVE | YES | 2/15/92 | 3:00 | 47882 | NO | | N | N | |
| T069785 | 2 | T069785-B | 1 | | No | 5 | | | | LIVE | YES | 2/17/92 | 20:40 | 47934 | NO | | N | N | |
| T070844 | 0 | | | | | | | | | | | | | | | | | | |
| T074332 | 0 | | | | | | | | | | | | | | | | | | |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed Who But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P530576 | 8 | P530576-G | Unfamiliar | | 1 | UNK | UNK | UNK | 0 | 0 | | 0 | | UNK | N | - | Y | N |
| P530576 | 8 | P530576-H | Familiar Perp | | 1 | UNK | UNK | UNK | 3 | 0 | | 0 | | UNK | N | - | Y | N |
| P540828 | 0 | | | | | | | | | | | | | | | | | |
| P560732 | 3 | P560732 | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | | 0 | | | N | | Y | Y |
| P560732 | 3 | P560732 | Unfamiliar | | 1 | 6 | 1 | 1 | 0 | 0 | | 1 | | 0 | N | | Y | Y |
| P560732 | 3 | P560732 | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | | 0 | | 1 | N | | Y | Y |
| P591622 | 0 | | | | | | | | | | | | | | | | | |
| P601562 | 2 | P601562-A | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | | 0 | | 0 | N | | Y | N |
| P601562 | 2 | P601562-B | Unfamiliar | | 1 | 5 | 1 | 1 | 2 | 0 | | 0 | | 2 | N | | Y | N |
| P601562 | 2 | P601562-B | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | | 0 | | 0 | N | | Y | N |
| P612885 | 2 | | | | | | | | | | | | | | | | | |
| P612885 | 2 | P612885-A | Unfamiliar | | 2 | 5 | 1 | 2 | 1 | 0 | | 0 | | 1 | N | | Y | N |
| P612885 | 2 | P612885-B | Previous ID | | 2 | 5 | 1 | 2 | 2 | 0 | | 0 | | 2 | N | | Y | N |
| T005788 | 0 | | | | | | | | | | | | | | | | | |
| T007661 | 0 | | | | | | | | | | | | | | | | | |
| T016194 | 1 | T016194-A | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | | 0 | | 0 | N | | N | N |
| T016194 | 1 | T016194-A | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | | 0 | | 1 | N | | N | N |
| T017163 | 0 | | | | | | | | | | | | | | | | | |
| T019115 | 0 | | | | | | | | | | | | | | | | | |
| T019692 | 0 | | | | | | | | | | | | | | | | | |
| T027570 | 9 | T027570-A | Unfamiliar | | 1 | UNK | UNK | UNK | 4 | 0 | | 0 | | | N | | N | N |
| T027570 | 9 | T027570-B | Unfamiliar | | 5 | UNK | UNK | UNK | 0 | 0 | | 1 | | 5 | N | | N | N |
| T027570 | 9 | T027570-B | Familiar Perp | | 1 | UNK | UNK | UNK | 1 | 0 | | 0 | | 1 | N | | N | N |
| T027570 | 9 | T027570-C | Unfamiliar | | | UNK | UNK | UNK | 0 | 0 | | UNK | | | N | | N | N |
| T027570 | 9 | T027570-D | Unfamiliar | | 1 | UNK | UNK | UNK | 0 | 0 | | UNK | | 0 | N | | N | N |
| T027570 | 9 | T027570-E | Unfamiliar | | 1 | UNK | UNK | UNK | 2 | 0 | | 0 | | 2 | N | | N | N |
| T027570 | 9 | T027570-F | Unfamiliar | | 3 | UNK | UNK | UNK | 16 | 0 | | UNK | | 0 | N | | N | N |
| T027570 | 9 | T027570-G | Unfamiliar | | | UNK | UNK | UNK | 0 | 0 | | UNK | | 0 | N | | Y | N |
| T027570 | 9 | T027570-H | Familiar Perp | | 1 | UNK | UNK | UNK | 3 | 0 | | UNK | | 0 | N | | N | N |
| T027570 | 9 | T027570-I | Unfamiliar | | | 4 | | 1 | 1 | 0 | | 0 | | 0 | N | | N | N |
| T028670 | 1 | T028670-A | Unfamiliar | | 3 | 5 | 1 | 1 | 1 | 0 | | 0 | | 3 | N | | N | N |
| T041562 | 0 | | | | | | | | | | | | | | | | | |
| T043710 | 0 | | | | | | | | | | | | | | | | | |
| T045095 | 0 | | | | | | | | | | | | | | | | | |
| T048539 | 0 | | | | | | | | | | | | | | | | | |
| T049854 | 2 | T049854-A | Previous ID | | 4 | 5 | 1 | 4 | 4 | 0 | | 0 | | 4 | N | | Y | Y |
| T049854 | 2 | T049854-A | Unfamiliar | | 4 | 5 | 1 | 1 | 1 | 0 | | 0 | | 1 | N | | Y | Y |
| T049854 | 2 | T049854-B | Unfamiliar | | 4 | 5 | 1 | 1 | 0 | 0 | | 0 | | 0 | N | | Y | Y |
| T049854 | 2 | T049854-B | Unfamiliar | | 4 | 5 | 1 | 1 | 0 | 0 | | 0 | | 0 | N | | Y | Y |
| T056635 | 1 | T056635-A | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | | 0 | | 0 | N | | N | N |
| T056635 | 1 | T056635-A | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | | 0 | | 1 | N | | N | N |
| T060326 | 2 | T060326-A | Unfamiliar | | 1 | UNK | 1 | 1 | 2 | 0 | | 0 | | 2 | N | | N | N |
| T060326 | 2 | T060326-B | Familiar Perp | | | UNK | 1 | 2 | 2 | 0 | | 0 | | 2 | N | - | N | N |
| T068350 | 0 | | | | | | | | | | | | | | | | | |
| T069785 | 2 | T069785-A | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | | 0 | | 1 | N | | N | N |
| T069785 | 2 | T069785-B | Familiar Perp | | | 5 | 1 | 1 | 1 | 0 | | 0 | | 1 | N | | N | N |
| T069785 | 2 | T069785-B | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | | 0 | | 0 | N | | N | N |
| T070584 | 0 | | | | | | | | | | | | | | | | | |
| T074332 | 0 | | | | | | | | | | | | | | | | | |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T082923 | 0 | | | | | | | | | | | | | | | | | | |
| T084561 | 2 | T084561-A | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 3/23/92 | 20:30 | 48062 | NO | N | Y | 48068 | UNK |
| T084561 | 2 | T084561-A | - | - | No | - | - | - | - | LIVE | YES | 3/23/92 | 20:30 | 48068 | NO | N | N | | |
| T084561 | 2 | T084561-B | 2 | - | No | 6 | 5 | 5 | 2 | PHOTO | YES | 3/23/92 | 23:30 | 48068 | NO | N | N | | |
| T103291 | 1 | T103291-A | 5 | 2 | Yes | 5 | 3 | 1.5 | 10 | LIVE | YES | 11/19/92 | 9:00 | 48192 | NO | N | Y | 48188 | N |
| T103291 | 1 | T103291-A | - | - | Yes | - | - | - | - | LIVE | YES | 11/19/92 | 9:00 | 48192 | NO | N | Y | 48188 | N |
| T103291 | 1 | T103291-A | - | - | Yes | - | - | - | - | LIVE | YES | 11/19/92 | 9:00 | 48192 | NO | N | Y | 48186 | N |
| T103291 | 1 | T103291-A | - | - | Yes | - | - | - | - | LIVE | YES | 11/19/92 | 9:00 | 48192 | NO | N | N | | |
| T103291 | 1 | T103291-A | - | - | Yes | - | - | - | - | LIVE | YES | 11/19/92 | 9:00 | 48192 | NO | N | Y | 48186 | N |
| T103291 | 1 | T103291-A | - | - | Yes | - | - | - | - | LIVE | YES | 11/19/92 | 9:00 | 48192 | NO | N | N | | |
| T103291 | 1 | | | | | | | | | | | | | 48188; 48170; 48... | | | N | | |
| T109596 | 0 | | | | | | | | | | | | | | | | | | |
| T132315 | 2 | | | | | | | | | | | 3/25/92 | | 48255 | | | Y | N | |
| T132315 | 2 | T132315-A | 2 | 1 | No | | | | | LIVE | YES | 3/27/92 | 15:30 | 48260 | | N | Y | | |
| T132315 | 2 | T132315-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/30/92 | 21:10 | 48267 | NO | N | N | | |
| T144003 | 2 | T144003-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 4/2/92 | | 48330 | NO | N | N | | |
| T144003 | 2 | T144003-A | 3 | 2 | No | 4 | 3 | 1.5 | 6 | LIVE | YES | 4/2/92 | | 48334 | NO | N | N | | |
| T145942 | 0 | | | | | | | | | | | | | | | | | | |
| T150582 | 2 | T150582-A | 10 | 1 | No | 7 | 6 | 6 | 10 | LIVE | YES | 4/5/92 | 10:00 | 142922 | NO | N | N | | |
| T155315 | 4 | T155315-A | 4 | 1 | No | 6 | 5 | 5 | 4 | LIVE | YES | 4/9/92 | 18:25 | 48446 | NO | N | N | | |
| T155315 | 4 | T155315-A | - | - | No | - | - | - | - | LIVE | YES | 4/9/92 | 18:25 | 48446 | NO | N | N | | |
| T155315 | 4 | T155315-B | 1 | 1 | No | | | | | LIVE | YES | 4/9/92 | 18:25 | 48446 | NO | N | Y | 106425 | UNK |
| T168883 | 1 | T168883-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 4/10/92 | | 106425 | NO | N | N | | |
| T168883 | 1 | T168883-A | - | - | No | 5 | 4 | 4 | 1 | LIVE | YES | 4/27/92 | 17:30 | 48500 | NO | N | N | | |
| T170436 | 0 | | | | | | | | | | | | | | | | | | |
| T175541 | 0 | | | | | | | | | | | | | | | | | | |
| T178843 | 0 | | | | | | | | | | | | | | | | | | |
| T185940 | 1 | T185940-A | 3 | 1 | No | 5 | 4 | 4 | 3 | PHOTO | NO | 5/5/92 | 21:00 | 48641 | NO | N | N | | |
| T190453 | 1 | T190453 | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 5/15/92 | 2:55 | 48686/48660 | NO | N | N | | |
| T191912 | 2 | T191912 | 2 | UNK | No | 5 | 4 | 4 | 2 | PHOTO | NO | 5/15/92 | | 48745 | NO | N | N | | |
| T194690 | 2 | T194690-A | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 5/2/92 | 14:00 | 149265 | NO | Y | N | | |
| T194690 | 2 | T194690-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 7/23/92 | 20:00 | 143001 | NO | N | N | | |
| T200644 | 1 | T200644-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/20/92 | 16:25 | 143040 | NO | N | N | | |
| T200644 | 1 | T200644-A | - | - | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/20/92 | 16:25 | 143040 | NO | N | N | | |
| T200644 | 1 | T200644-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/20/92 | 23:00 | 143052 | YES | N | N | | |
| T203953 | 2 | T203953-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 5/10/92 | 22:30 | 48879 | NO | N | N | | |
| T203953 | 2 | T203953-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/10/92 | 23:50 | 48885 | NO | N | N | | |
| T209350 | 0 | | | | | | | | | | | | | | | | | | |
| T210205 | 0 | | | | | | | | | | | | | | | | | | |
| T212815 | 2 | T212815-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 5/14/92 | 19:00 | 143149 | NO | N | N | | |
| T214666 | 2 | T214666-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/19/92 | | 143188 | NO | N | N | | |
| T214666 | 2 | T214666-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/19/92 | | 143189 | YES | N | Y | 143191 | UNK |
| T216491 | 1 | T216491-A | 1 | UNK | No | UNK | UNK | UNK | UNK | PHOTO | NO | 5/17/92 | | 108135 | NO | N | N | | |
| T216491 | 1 | | | | | | | | | | | 5/17/92 | | 108135 | | | | | |
| T230062 | 0 | | | | | | | | | | | | | | | | | | |
| T238571 | 0 | | | | | | | | | | | | | | | | | | |
| T243651 | 2 | T243651-A | 6 | 1 | No | 5 | 4 | 4 | 6 | PHOTO | NO | 5/31/92 | | 49221 | NO | N | N | | |
| T243651 | 2 | T243651-B | 3 | 1 | No | 11 | 10 | 10 | 3 | PHOTO | NO | 5/31/92 | | 49221 | NO | N | N | | |
| T243651 | 2 | T243651-B | - | - | No | - | - | - | - | PHOTO | NO | 5/31/92 | | 49221 | NO | N | N | | |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed Who But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup in File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T082923 | 0 | | | | | | | | | | | | | | | | | |
| T084561 | 2 | | | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T084561 | | T084561-A | Unfamiliar | | 2 | 5 | 1 | 2 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T084561 | | T084561-B | Unfamiliar | | 2 | 6 | 1 | 2 | 1 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T103291 | 2 | T103291-A | Both | Witness A | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 2 | Y | Y | N | N |
| T103291 | 1 | T103291-A | Previous ID | Witness A | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| T103291 | 1 | T103291-A | Previous ID | | 1 | 5 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | Y | | N | N |
| T103291 | 1 | T103291-A | Previous ID | | 1 | 5 | 1 | 2 | 2 | 0 | 1 | 0 | 0 | 2 | Y | | N | N |
| T103291 | 1 | T103291-A | Familiar Perp | Witness B | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 2 | Y | | N | N |
| T103291 | 1 | T103291-A | Unfamiliar | Witness B | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | | N | N |
| T103291 | 1 | T103291-A | Previous ID | | 1 | 5 | 2 | 2 | 1 | 0 | 0 | 0 | 1 | 2 | Y | | N | N |
| T103291 | | | | | | | | | | | | | | | Y | | N | N |
| T109596 | 0 | | | | | | | | | | | | | | | | | |
| T132315 | 2 | | Familiar Perp | | | | | | | | | | | | | | | |
| T132315 | 2 | T132315-A | Unfamiliar | | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T132315 | 2 | T132315-B | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T144003 | 2 | T144003-A | Unfamiliar | | 3 | 4 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | | N | N |
| T144003 | 2 | T144003-B | Unfamiliar | | 3 | 5 | 2 | 6 | 6 | 0 | 0 | 0 | 0 | 6 | N | | N | N |
| T145942 | 0 | | | | | | | | | | | | | | | | | |
| T150582 | 1 | T150582-A | Unfamiliar | | 10 | 7 | 1 | 10 | 8 | 0 | 0 | 2 | 0 | 10 | N | | N | N |
| T155315 | 2 | T155315-A | Familiar Perp | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T155315 | 2 | T155315-A | Both | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T155315 | 2 | T155315-A | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | N | | N | N |
| T155315 | 2 | T155315-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T168883 | 1 | T168883-A | Unfamiliar | | 3 | 4 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | | N | N |
| T170436 | 0 | | | | | | | | | | | | | | | | | |
| T175541 | 0 | | | | | | | | | | | | | | | | | |
| T178543 | 0 | | | | | | | | | | | | | | | | | |
| T185940 | 1 | T185940-A | Familiar Perp | | 3 | 5 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | | N | N |
| T190453 | 1 | T190453 | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T191912 | 1 | T191912 | Unfamiliar | | 2 | UNK | UNK | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T194690 | 2 | T194690-A | Familiar Perp | | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| T194690 | 2 | T194690-B | Previous ID | | | | | | | | | | | | N | | N | N |
| T194690 | 2 | T194690-B | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T200644 | 2 | T200644-A | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T200644 | 2 | T200644-A | Familiar Perp | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T200644 | 2 | T200644-B | Familiar Perp | | 1 | UNK | | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T203953 | 2 | T203953-A | Unfamiliar | | 6 | 6 | 1 | 6 | 6 | 0 | 0 | 0 | 0 | 6 | N | | N | N |
| T203953 | 2 | T203953-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T209350 | 0 | | | | | | | | | | | | | | | Y | | |
| T210205 | 0 | | | | | | | | | | | | | | | | | |
| T212815 | 1 | T212815-A | Familiar Perp | | 2 | 4 | 1 | 2 | 1 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T214666 | 2 | T214666-A | Unfamiliar | | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T214666 | 2 | T214666-A | Previous ID | | | | | | | | | | | | N | | N | N |
| T214666 | 2 | T214666-B | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T216491 | 1 | T216491-A | Unfamiliar | | - | UNK | UNK | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | Y | N | N |
| T216491 | 1 | | Unfamiliar | | | | | | | | | | | | N | | N | N |
| T230062 | 0 | | | | | | | | | | | | | | | | | |
| T238571 | 0 | | | | | | | | | | | | | | | | | |
| T243651 | 2 | T243651-A | Familiar Perp | | 11 | 11 | | 11 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T243651 | 2 | T243651-B | Unfamiliar | | 2 | 11 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T243651 | 2 | T243651-B | Familiar Perp | | 2 | 11 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |

Area Five Homicide Files 1991-1992     Steblay Data 9-16-2022

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or a Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in lineup/photo array, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T250344 | 0 | | | | | | | | | | | | | | | | | | |
| T252235 | 3 | T252235-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 6/4/92 | 7:00 | 49279 | NO | Y | N | | |
| T252235 | | T252235-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/4/92 | 23:00 | 49282 | NO | Y | N | | |
| T252235 | | T252235-C | 2 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 6/7/92 | 14:00 | 49286 | NO | Y | Y | *49279 | UNK |
| T252235 | | T252235-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/7/92 | 14:00 | 49288 | NO | Y | N | | |
| T261332 | 0 | | | | | | | | | | | | | | | | | | |
| T261570 | 0 | | | | | | | | | | | | | | | | | | |
| T263381 | 0 | | | | | | | | | | | | | | | | | | |
| T264377 | 2 | T264377-A | 4 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 6/18/92 | 0:30 | 49429 | NO | N | N | | |
| T264377 | | T264377-B | 1 | | No | | | | | LIVE | YES | 6/13/92 | 17:00 | 49425 | | | | | |
| T269237 | 0 | | | | | | | | | | | | | | | | | | |
| T280749 | 6 | T280749-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 6/19/92 | 20:00 | 49499 | NO | Y | N | | |
| T280749 | | T280749-B | 1 | 1 | No | 6 | 4 | 4 | 1 | PHOTO | NO | 6/19/92 | 20:00 | 49499 | NO | N | N | | |
| T280749 | | T280749-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/19/92 | 20:00 | 49501 | NO | N | N | | |
| T280749 | | T280749-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/19/92 | 20:00 | 49501 | NO | N | N | | |
| T280749 | | T280749-E | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 10/26/93 | 13:00 | 49512 | NO | N | N | | |
| T282523 | | T282523-A | | | No | 6 | 5 | 5 | 1 | LIVE | YES | 1/9/93 | | 49549 | NO | N | N | 109812 | |
| T290460 | 2 | T290460-A | 3 | 1 | Yes | 4 | 3 | 3 | 3 | LIVE | YES | 6/27/92 | 6:00 | 49588 | NO | N | N | | |
| T290460 | | T290460-B | 3 | 2 | Yes | 7 | 5 | 2.5 | 6 | LIVE | YES | 6/27/92 | 6:00 | 49616 | NO | N | N | | |
| T290460 | | T290460-B | 2 | | Yes | | | | | LIVE | YES | 6/27/92 | 6:00 | 49616 | NO | N | N | | |
| T299761 | 0 | | | | | | | | | | | | | | | | | | |
| T306202 | 0 | | | | | | | | | | | | | | | | | | |
| T308480 | 4 | T308480-A | 1 | 2 | Yes | 5 | 3 | 1.5 | 2 | LIVE | Yes | 7/25/92 | 14:00 | 49709 | NO | N | N | | N |
| T308480 | | T308480-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | No | 10/30/92 | 11:00 | 49721 | NO | N | N | | |
| T308480 | | T308480-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/13/92 | 13:00 | 49725 | NO | N | Y | 49721 | N |
| T308480 | | T308480-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/4/92 | 12:30 | 49713 | NO | N | Y | 49725 | N |
| T311746 | | T311746-A | | 2 | No | | | | 2 | LIVE | YES | 7/8/92 | | 143324 | NO | N | N | | |
| T313079 | 0 | | | | | | | | | | | | | | | | | | |
| T313515 | 4 | T313515-A | 2 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/8/92 | 12:30 | 110767 | NO | N | Y | 143360 | |
| T313515 | | T313515-B | 2 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/8/92 | 23:30 | 143374 | NO | N | Y | 143360 | |
| T313515 | | T313515-C | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 7/9/92 | | 143360 | NO | N | N | | |
| T313515 | | T313515-D | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 7/9/92 | | 143360 | NO | N | N | | |
| T317203 | 0 | | | | | | | | | | | | | | | | | | |
| T319482 | 2 | T319482-A | | | No | 5 | | | | LIVE | YES | 9/30/92 | | 143349 | NO | N | N | | |
| T319482 | | T319482-B | 2 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 10/20/92 | 5:00 | 143421 | NO | N | N | | |
| T343019 | 0 | | | | | | | | | | | | | | | | | | |
| T352657 | 1 | T352657-A | 5 | 5 | Yes | 5 | 0 | | 2.5 | LIVE | YES | 8/1/92 | 18:00 | 117206 | NO | N | N | | |
| T352617 | | | | | | 5 | | | | LIVE | YES | 8/2/92 | 23:45 | 50074 | NO | | | | |
| T358064 | 0 | | | | | | | | | | | | | | | | | | |
| T360984 | 1 | T360984-A | 4 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 8/4/92 | 22:00 | 143464 | NO | N | N | | |
| T360984 | | T360984-A | | | | 5 | | | | LIVE | YES | 8/4/92 | 22:00 | 143464 | NO | | | | |
| T362346 | 0 | | | | | | | | | | | | | | | | | | |
| T366726 | 3 | T366726-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 8/7/92 | 19:45 | 143021 | NO | N | N | | |
| T366726 | | T366726-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 8/7/92 | 21:00 | 143026 | NO | N | N | | |
| T366726 | | T366726-C | | | No | 4 | | | | LIVE | YES | 8/7/92 | 21:00 | 143526 | NO | N | N | | |
| T370421 | 2 | T370421-A | UNK | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 8/7/92 | 20:00 | | NO | Y | N | | |
| T370421 | | T370421-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/7/94 | 3:05 | 50335 | NO | N | N | | |
| T374032 | 1 | T374032-A | 1 | 5 | Yes | 5 | 0 | | 5 | LIVE | YES | 8/24/92 | 7:00 | 50375 | NO | N | N | | |
| T376417 | 1 | T376417-A | UNK | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 8/14/92 | 22:30 | 50418 | NO | YES | N | | |
| T376749 | 0 | | | | | | | | | | | | | | | | | | |
| T379028 | 0 | | | | | | | | | | | | | | | | | | |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup in File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T250344 | 0 | | | | | | | | | | | | | | | | | |
| T252235 | 3 | | | | | | | | | | | | | | | | | |
| T252235 | 3 | T252235-A | Familiar Perp | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | | Y | N |
| T252235 | 3 | T252235-B | Familiar Perp | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | | Y | N |
| T252235 | 3 | T252235-B | Both | | 1 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | | Y | N |
| T252235 | 3 | T252235-C | | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | | Y | N |
| T261332 | 0 | | | | | | | | | | | | | | | | | |
| T261570 | 0 | | | | | | | | | | | | | | | | | |
| T263381 | 0 | | | | | | | | | | | | | | | | | |
| T264377 | 2 | | | | | | | | | | | | | | | | | |
| T264377 | 2 | T264377-A | Familiar Perp | | 4 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | N | | | Y | N |
| T264377 | 1 | T264377 | | | | | | | | | | | | | N | | | Y | N |
| T269237 | 1 | | | | | | | | | | | | | | | | | |
| T280749 | 5 | | | | | | | | | | | | | | | | | |
| T280749 | 5 | T280749-A | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | | N | N |
| T280749 | 5 | T280749-B | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | | N | N |
| T280749 | 5 | T280749-C | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | | N | N |
| T280749 | 5 | T280749-D | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | | N | N |
| T280749 | 5 | T280749-E | Familiar Perp | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | | N | N |
| T282523 | 1 | | | | | | | | | | | | | | | | | |
| T282523 | 1 | T282523-A | Both | | 1 | 6 | | | | | | | | | N | | | N | N |
| T290460 | 2 | | | | | | | | | | | | | | | | | |
| T290460 | 2 | T290460-A | Unfamiliar | | 1 | 7 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | | N | N |
| T290460 | 2 | T290460-B | Familiar Perp | | 2 | 7 | 2 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | N | | | N | N |
| T299761 | 0 | | | | | | | | | | | | | | | | | |
| T306202 | 0 | | | | | | | | | | | | | | | | | |
| T308480 | 4 | | | | | | | | | | | | | | | | | |
| T308480 | 4 | T308480-A | Unfamiliar | | 1 | 5 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 2 | N | N | | Y | Y |
| T308480 | 4 | T308480-B | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | N | | Y | Y |
| T308480 | 4 | T308480-C | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | | Y | N |
| T308480 | 4 | T308480-D | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | | Y | N |
| T311746 | 0 | | | | | | | | | | | | | | | | | |
| T311746 | 1 | T311746-A | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | | | N | N |
| T313079 | 0 | | | | | | | | | | | | | | | | | |
| T313515 | 4 | | | | | | | | | | | | | | | | | |
| T313515 | 4 | T313515-A | Previous ID | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | | N | N |
| T313515 | 4 | T313515-B | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | | N | N |
| T313515 | 4 | T313515-C | Unfamiliar | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | | N | N |
| T313515 | 4 | T313515-D | Unfamiliar | | 1 | 5 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | | N | N |
| T317203 | 0 | | | | | | | | | | | | | | | | | |
| T319462 | 2 | | | | | | | | | | | | | | | | | |
| T319462 | 2 | T319462-A | Unfamiliar | | 1 | 5 | | | | | | | | | N | | | N | N |
| T319462 | 2 | T319462-B | Unfamiliar | | 1 | 5 | | | | | | | | | N | | | N | N |
| T343919 | 0 | | | | | | | | | | | | | | | | | |
| T352657 | 1 | | | | | | | | | | | | | | | | | |
| T352657 | 1 | T352657-A | Unfamiliar | | 1 | 5 | | | | | | | | | N | | | N | N |
| T358064 | 0 | | | | | | | | | | | | | | | | | |
| T358064 | | | Familiar Perp | | | | | | | | | | | | | | | Y | N |
| T360984 | 1 | | | | | | | | | | | | | | | | | |
| T360984 | 1 | T360984-A | Unfamiliar | | 3 | 5 | | | | | | | | | N | | | N | N |
| T360984 | 1 | T360984-A | Familiar Perp | | 3 | | | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | | | N | N |
| T362346 | 0 | | | | | | | | | | | | | | | | | |
| T366726 | 3 | | | | | | | | | | | | | | | | | |
| T366726 | 3 | T366726-A | Unfamiliar | | | | | | | | | | | | N | | | N | N |
| T366726 | 3 | T366726-B | Familiar Perp | | | | | | | | | | | | N | | | N | N |
| T366726 | 3 | T366726-C | | | 3 | 5 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | | | N | N |
| T366726 | 3 | T366726-C | Familiar Perp | | 3 | | | | | | | | | | N | | | N | N |
| T370421 | 2 | | | | | | | | | | | | | | | | | |
| T370421 | 2 | T370421-A | Unfamiliar | | 1 | UNK | 1 | UNK | UNK | | | | | | N | N | | Y | UNK |
| T370421 | 2 | T370421-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | | Y | N |
| T374032 | 1 | | | | | | | | | | | | | | | | | |
| T374032 | 1 | T374032-A | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | | Y | N |
| T376417 | 1 | | | | | | | | | | | | | | | | | |
| T376417 | 1 | T376417-A | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | | | | | | N | Y | | Y | N |
| T376749 | 0 | | | | | | | | | | | | | | | | | |
| T379028 | 0 | | | | | | | | | | | | | | | | | |

| RD# of Homicide Files | Number of Identification Events Reported to RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Photo Array or Lineup Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in a prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T390473 | 4 | T390473-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/2/92 | 16:00 | 50535 | NO | N | N | - | - |
| T390473 | | T390473-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 9/4/92 | 18:00 | 50543 | YES | N | N | - | - |
| T390473 | | T390473-C | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 9/4/92 | 18:00 | 50543 | NO | N | N | - | - |
| T390473 | | T390473-D | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/6/92 | 14:00 | 112531 | NO | N | N | - | - |
| T399427 | 3 | T399427-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 8/27/92 | 17:00 | 143560 | NO | N | Y | 50543 | UNK |
| T399427 | | T399427-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 8/27/92 | 17:00 | 143560 | NO | N | Y | 143564 | N |
| T399427 | | T399427-B | 1 | 1 | No | 7 | 6 | 6 | 1 | PHOTO | NO | 8/27/92 | 22:30 | 143564 | NO | N | N | - | - |
| T399427 | | T399427-C | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 8/29/92 | 22:30 | 143566 | NO | N | N | - | - |
| T399427 | | T399427-C | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 8/29/92 | 22:30 | 143566 | NO | N | Y | 143561 | N |
| T401341 | 5 | T401341-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/26/92 | 18:00 | 50628 | YES | N | N | - | - |
| T401341 | | T401341-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 8/27/92 | 22:50 | 112762 | NO | N | N | - | - |
| T401341 | | T401341-C | 1 | 1 | No | 8 | 7 | 7 | 1 | PHOTO | NO | 8/28/92 | | 50616 | NO | N | Y | - | - |
| T401341 | | T401341-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/31/92 | 6:00 | 112745 | YES | N | N | - | - |
| T401341 | | T401341-D | 1 | 1 | No | - | - | - | - | PHOTO | NO | 8/31/92 | 6:00 | 112745 | YES | Y | Y | 50628 | UNK |
| T401341 | | T401341-D | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 9/1/92 | 16:00 | 50648 | NO | N | Y | 50616 | UNK |
| T404414 | 0 | | | | | | | | | | | | | | | | | | |
| T412547 | 3 | T412547-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | | 10/25/92 | 23:50 | 50754 | | | | - | - |
| T412547 | | T412547-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | YES | 4/30/93 | 22:00 | 50762 | NO | N | N | - | - |
| T412547 | | T412547-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 6/2/93 | 21:00 | 50777 | NO | N | Y | 50754 | N |
| T419317 | 1 | T419317-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/5/92 | 3:00 | 143576 | NO | N | N | - | - |
| T420857 | 3 | T420857-A | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 9/6/92 | 6:00 | 143605 | NO | N | N | - | - |
| T420857 | | T420857-B | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 9/6/92 | 18:45 | 143597 | NO | N | N | - | - |
| T420857 | | T420857-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/6/92 | 18:45 | 143597 | NO | N | Y | 143605 | N |
| T420857 | | T420857-C | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 9/7/92 | 20:30 | 143615 | NO | N | N | - | - |
| T428093 | 0 | | | | | | | | | | | | | | | | | | |
| T431927 | 1 | T431927-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/13/92 | 22:00 | 50911 | NO | N | N | - | - |
| T435041 | 1 | T435041-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 5/4/97 | | 50990 | YES | N | N | - | - |
| T438238 | 3 | T438238-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 3/10/92 | 3:00 | 51092 | NO | N | N | - | - |
| T438238 | | T438238-B | | | | | | | | | | 11/27/92 | 21:00 | 51119 | | | Y | | |
| T438238 | | T438238-B | 4 | 1 | No | 4 | 3 | 3 | 4 | LIVE | YES | 3/24/93 | 21:45 | 51182 | NO | N | N | - | - |
| T438238 | | T438238-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 3/24/93 | 21:45 | 51182 | NO | N | N | - | - |
| T438238 | | T438238-C | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 3/25/93 | 16:15 | 51172 | NO | N | N | - | - |
| T443724 | 1 | T443724-A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 9/19/92 | | 51210 | NO | N | N | - | - |
| T443724 | | | | | | | | | | | | 3/8/93 | 11:00 | 51238 | | | | - | - |
| T444461 | 4 | T444461-A | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 9/22/92 | 22:00 | 51294 | NO | N | Y | 51302 | N |
| T444461 | | T444461-A | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 9/22/92 | 22:00 | 51294 | NO | N | N | - | - |
| T444461 | | T444461-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 9/22/92 | | 51302 | NO | N | N | - | - |
| T444461 | | T444461-C | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 9/22/92 | 22:00 | 51308 | NO | N | Y | 51316 | N |
| T444461 | | T444461-C | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 10/6/92 | 22:00 | 51308 | NO | N | Y | 51316 | N |
| T444461 | | T444461-C | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 10/6/92 | | 51316 | NO | N | N | - | - |
| T444461 | | T444461-D | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 10/6/92 | | 51316 | NO | N | N | - | - |
| T485112 | 2 | T485112-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 10/16/92 | 3:00 | 51368 | NO | N | Y | 51378 | N |
| T485112 | | T485112-B | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 10/16/92 | 3:00 | 51378 | NO | N | N | - | - |
| T485389 | 0 | | | | | | | | | | | | | | | | | | |
| T491678 | 5 | T491678-A | 4 | 1 | No | 6 | 5 | 5 | 4 | LIVE | YES | 10/16/92 | 23:55 | 51429 | NO | N | N | - | - |
| T491678 | | T491678-B | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 10/17/92 | 21:05 | 51463 | NO | N | N | - | - |
| T491678 | | T491678-C | 1 | 2 | Yes | 7 | 5 | 2.5 | 2 | PHOTO | NO | 10/18/92 | 21:05 | 114528 | NO | N | N | - | - |
| T491678 | | T491678-D | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 10/19/92 | 21:05 | 51469 | NO | N | N | - | - |
| T491678 | | T491678-E | 3 | 2 | Yes | 6 | 4 | 2 | 6 | LIVE | YES | 10/24/92 | 9:00 | 114644 | NO | Y | Y | 51469 | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T390473 | 4 | T390473-A | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T390473 | 4 | T390473-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T390473 | 4 | T390473-C | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T390473 | 4 | T390473-D | Previous ID | | 1 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | | N | | N | N |
| T399427 | 3 | T399427-A | Previous ID | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T399427 | 3 | T399427-B | Unfamiliar | | 1 | 4 | 1 | 2 | 1 | 1 | 0 | 0 | 0 | 2 | N | | N | N |
| T399427 | 3 | T399427-B | Unfamiliar | | 1 | 7 | 1 | 1 | 1 | 0 | 1 | 0 | 0 | 2 | N | | N | N |
| T399427 | 3 | T399427-C | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T399427 | 3 | T399427-C | Previous ID | | 2 | | | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T401341 | 5 | T401341-A | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T401341 | 5 | T401341-B | Unfamiliar | | 2 | 5 | 1 | 2 | 1 | 1 | 0 | 0 | 0 | 2 | N | | N | N |
| T401341 | 5 | T401341-B | Familiar Perp | | 1 | | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| T401341 | 5 | T401341-C | Familiar Perp | | 2 | UNK | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | Y | Y | N | N |
| T401341 | 5 | T401341-D | Unfamiliar | | 1 | UNK | 1 | 1 | 0 | 0 | 0 | 0 | 0 | | N | | N | N |
| T401341 | 5 | T401341-D | Previous ID | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T401341 | 5 | T401341-E | Both | | 2 | | | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T404414 | 0 | | | | | | | | | | | | | | | | | |
| T412547 | 3 | T412547-A | Familiar Perp | | 1 | | | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| T412547 | 3 | T412547-A | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T412547 | 3 | T412547-B | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T412547 | 3 | T412547-C | Previous ID | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T419317 | 1 | T419317-A | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T420857 | 3 | T420857-A | Familiar Perp | | 1 | 2 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T420857 | 3 | T420857-B | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T420857 | 3 | T420857-B | Both | | 2 | | | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T420857 | 3 | T420857-C | Unfamiliar | | 1 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T426093 | 0 | | | | | | | | | | | | | | | | | |
| T431927 | 1 | T431927-A | Familiar Perp | | 1 | | | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T435041 | 1 | T435041-A | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T438238 | 3 | T438238-A | Unfamiliar | | 2 | UNK | 1 | 2 | 1 | 1 | 0 | 0 | 0 | 2 | N | | N | N |
| T438238 | 3 | T438238-A | Familiar Perp | | 1 | | | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| T438238 | 3 | T438238-B | Unfamiliar | | 2 | 4 | 1 | 2 | 1 | 1 | 0 | 0 | 0 | 2 | N | | N | N |
| T438238 | 3 | T438238-B | Previous ID | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T438238 | 3 | T438238-C | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T443724 | 1 | T443724-A | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T443724 | 1 | T443724-A | Unfamiliar | | 1 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T444461 | 4 | T444461-A | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | Y |
| T444461 | 4 | T444461-A | Previous ID | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | Y |
| T444461 | 4 | T444461-B | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | Y |
| T444461 | 4 | T444461-C | Unfamiliar | | 3 | 5 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | Y | Y | Y | Y |
| T444461 | 4 | T444461-C | Both | | 1 | | | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | Y |
| T444461 | 4 | T444461-D | Familiar Perp | | 1 | | | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | Y |
| T444461 | 4 | T444461-D | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | Y |
| T485112 | 2 | T485112-A | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T485112 | 2 | T485112-B | Previous ID | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T485389 | 0 | | | | | | | | | | | | | | | | | |
| T491678 | 5 | T491678-A | Unfamiliar | | 4 | 6 | 1 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | N | | N | N |
| T491678 | 5 | T491678-B | Unfamiliar | | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T491678 | 5 | T491678-C | Unfamiliar | | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T491678 | 5 | T491678-D | Unfamiliar | | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T491678 | 5 | T491678-E | Familiar Perp | | 1 | | | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T491678 | 5 | T491678-E | Both | | 2 | 6 | 1 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | N | | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Photo Array or Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in lineup/photo array, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T491678 | 5 | T491678-E | - | - | Yes | - | - | - | - | LIVE | YES | 10/24/92 | 9:00 | 114644 | NO | N | N | - | - |
| T505293 | 0 | | | | | | | | | | | 10/30/92 | UNK | 51567 | | Y | N | | |
| T505293 | 1 | T505293-A | 4 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/14/92 | 20:30 | 51569 | NO | N | N | | |
| T517282 | 5 | T517282-A | 2 | 1 | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 12/9/92 | 22:00 | 143676 | NO | YES | N | | |
| T517282 | 5 | T517282-B | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 2/19/93 | 21:00 | 143684 | NO | Y | N | | |
| T517282 | 5 | T517282-C | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 2/19/93 | 21:00 | 143684 | NO | Y | N | | |
| T517282 | 5 | T517282-D | 1 | 1 | No | 5 | 4 | 3 | 1 | LIVE | YES | 2/21/93 | 20:00 | 143694 | NO | N | Y | 143686 | N |
| T517282 | 5 | T517282-E | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 3/24/94 | 12:00 | 143705 | NO | Y | N | | |
| T518791 | 0 | | | | | | | | | | | | | | | | | | |
| T520448 | 2 | T520448-A | 1 | 1 | No | 5 | 5 | 5 | 1 | PHOTO | NO | 11/3/92 | UNK | 51722 | NO | N | N | | |
| T520448 | 2 | T520448-B | 3 | 1 | No | 5 | 4 | 4 | 1 | LIVE | NO | 2/26/93 | 20:13 | 51744 | NO | Y | Y | 51722 | N |
| T520448 | 2 | T520448-B | | | | 5 | | | | LIVE | NO | 2/26/93 | 20:13 | 51744 | NO | Y | N | | |
| T522834 | 1 | T522834-A | 6 | 2 | Yes | 7 | 5 | 2.5 | 12 | LIVE | YES | 1/14/92 | 21:00 | 143719 | NO | Y | N | | |
| T523490 | 1 | T523490-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/17/92 | 13:00 | 115293 | NO | Y | N | | |
| T526720 | 0 | | | | | | | | | | | | | | | | | | |
| T538675 | 0 | | | | | | | | | | | | | | | | | | |
| T540285 | 2 | T540285-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 11/16/92 | 20:45 | 143795 | NO | N | N | | |
| T540285 | 2 | T540285-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/17/92 | 15:55 | 143799 | NO | Y | N | | |
| T541671 | 5 | T541671-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 11/28/92 | 22:00 | 51975 | NO | Y | N | | UNK |
| T541671 | 5 | T541671-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/8/92 | 18:00 | 51949 | NO | Y | Y | 51963 | UNK |
| T541671 | 5 | T541671-C | | | | 5 | | | | LIVE | YES | 12/8/92 | 12:00 | 51953 | NO | Y | Y | 51975 | UNK |
| T541671 | 5 | T541671-D | 1 | 1 | No | 6 | 4 | 4 | 1 | LIVE | YES | 12/9/92 | 21:00 | 51963 | NO | Y | N | | UNK |
| T541671 | 5 | T541671-E | 2 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 4/10/95 | | 51987 | NO | Y | N | | |
| T542586 | 0 | | | | | | | | | | | | | | | | | | |
| T547337 | 2 | T547337-A | 3 | 1 | No | UNK | UNK | UNK | 3 | PHOTO | NO | 1/1/93 | 23:50 | 52097 | NO | N | N | | |
| T547337 | 2 | T547337-B | 1 | 1 | No | UNK | UNK | UNK | 3 | LIVE | NO | 10/6/93 | 20:00 | 115931 | NO | N | Y | 52097 | UNK |
| T547337 | | | | | | | | | | LIVE | | 1/1/93 | 23:50 | 52097 | | | | | |
| T555032 | 0 | | | | | | | | | | | | | | | | | | |
| T568121 | 0 | | | | | | | | | | | | | | | | | | |
| T579053 | 1 | T579053-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/15/92 | 22:30 | 52230 | NO | N | Y | 52214 | UNK |
| T579053 | 1 | T579053-A | | | | 5 | | | | LIVE | YES | 12/15/92 | 22:30 | 52230 | NO | N | N | | |
| T586556 | 6 | T586556-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 6/19/01 | UNK | 116332 | NO | N | N | | |
| T586556 | 6 | T586556-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 6/19/01 | UNK | 116332 | NO | N | N | | |
| T586556 | 6 | T586556-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 7/2/02 | UNK | 116334 | NO | N | N | | |
| T586556 | 6 | T586556-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 7/2/02 | UNK | 116334 | NO | N | N | | |
| T586556 | 6 | T586556-E | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 3/28/04 | UNK | 116335 | NO | N | N | | |
| T586556 | 6 | T586556-F | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 3/26/04 | UNK | 116335 | NO | N | N | | |
| T589343 | 0 | | | | | | | | | | | | | | | | | | |
| T594485 | 0 | | | | | | | | | | | | | | | | | | |
| T603038 | 1 | T603038-A | 1 | 1 | No | 5 | 5 | 5 | 1 | LIVE | NO | 1/15/96 | 0:30 | 52442 | NO | Y | Y | 52440 | UNK |
| T606326 | 0 | | | | | | | | | | | | | | | | | | |
| T610024 | 1 | T610024-A | 1 | 1 | No | 4 | 5 | 5 | 1 | LIVE | YES | 1/4/93 | 23:45 | 52496 | NO | Y | N | | |
| T612545 | 0 | | | | | | | | | | | | | 2/19/93 | 13:45 | 52541 | | Y | N | | |
| X000396 | 0 | | | | | | | | | | | | | | | | | | |
| X001081 | 3 | X001081-A | 4 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 1/1/93 | 22:00 | 52602-6 | NO | N | N | | |
| X001081 | 3 | X001081-B | 4 | 1 | No | 5 | 5 | 5 | 1 | PHOTO | NO | 1/1/93 | 22:00 | 52602-6 | NO | Y | N | | |
| X001081 | 3 | X001081-B | | 1 | No | | | | 1 | LIVE | YES | 1/3/93 | 12:20 | 52616 | NO | N | Y | 52602-4 | UNK |
| X001081 | 3 | X001081-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/3/93 | 12:20 | 52616 | NO | N | N | | |
| X001081 | 3 | X001081-C | | 1 | No | 5 | 5 | 5 | 1 | LIVE | YES | 1/4/93 | 23:30 | 52632 | NO | N | N | | |
| X001926 | 0 | | | | | | | | | | | | | 2/3/93 | 23:45 | 52669-71 | | Y | N | | |
| X022831 | 4 | X022831-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/22/93 | 13:00 | 52794 | NO | N | N | | |
| X022831 | 4 | X022831-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/22/93 | 13:00 | 52788 | NO | N | N | | |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T491678 | 5 | T491678-E | Unfamiliar | - | 1 | 6 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | | N | N |
| T505293 | 1 | | Unfamiliar | | | | | | | | | | | | N | Y | N | N |
| T505293 | 1 | T505293-A | Unfamiliar | - | 5 | 4 | 4 | 4 | 0 | 0 | 4 | 0 | 0 | 4 | N | | N | N |
| T517282 | 5 | T517282-A | Unfamiliar | - | 2 | UNK | 1 | UNK | 0 | 1 | 0 | 0 | 0 | 2 | N | | Y | Y |
| T517282 | 5 | T517282-B | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| T517282 | 5 | T517282-C | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| T517282 | 5 | T517282-D | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| T517282 | 5 | T517282-E | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| T518791 | 0 | | | | | | | | | | | | | | | | | |
| T520448 | 2 | T520448-A | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T520448 | 2 | T520448-B | Familiar Perp | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T520448 | 2 | T520448-B | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T523034 | 1 | T523034-A | Unfamiliar | - | 6 | 7 | 1 | 12 | 10 | 0 | 2 | 0 | 0 | 12 | N | | N | N |
| T523490 | 1 | T523490-A | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T526720 | 0 | | | | | | | | | | | | | | | | | |
| T538675 | 0 | | | | | | | | | | | | | | | | | |
| T540285 | 2 | T540285-A | Unfamiliar | - | 3 | 4 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | | N | N |
| T540285 | 2 | T540285-B | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T541671 | 5 | T541671-A | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| T541671 | 5 | T541671-B | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | Y | N | N |
| T541671 | 5 | T541671-C | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T541671 | 5 | T541671-D | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T541671 | 5 | T541671-E | Familiar Perp | - | 2 | UNK | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T542586 | 0 | | | | | | | | | | | | | | | | | |
| T547337 | 2 | T547337-A | Unfamiliar | - | 3 | UNK | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | | N | N |
| T547337 | 2 | T547337-B | Previous ID | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| T547337 | 2 | T547337 | | | | | | | | | | | | | | Y | Y | Y | Y |
| T555032 | 0 | | | | | | | | | | | | | | | | | |
| T568121 | 0 | | | | | | | | | | | | | | | | | |
| T579053 | 1 | T579053-A | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | Y | N |
| T579053 | 1 | T579053-A | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | Y | N |
| T586556 | 6 | T586556-A | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T586556 | 6 | T586556-B | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T586556 | 6 | T586556-C | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T586556 | 6 | T586556-D | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T586556 | 6 | T586556-E | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T586556 | 6 | T586556-F | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T589343 | 0 | | | | | | | | | | | | | | | | | |
| T594485 | 0 | | | | | | | | | | | | | | | | | |
| T600038 | 1 | T600038-A | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| T608326 | 0 | | | | | | | | | | | | | | | | | |
| T610024 | 1 | T610024-A | Familiar Perp | - | 1 | 5 | 1 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | N | | Y | N |
| T612545 | 0 | | | | | | | | | | | | | | | | | |
| X000398 | 0 | | | | | | | | | | | | | | | | | |
| X001081 | 3 | X001081-A | Unfamiliar | - | 1 | 5 | 1 | 3 | 2 | 0 | 0 | 0 | 0 | 3 | N | | N | N |
| X001081 | 3 | X001081-A | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X001081 | 3 | X001081-B | Both | - | 3 | 5 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | | N | N |
| X001081 | 3 | X001081-C | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X001926 | 0 | | | | | | | | | | | | | | | | | |
| X022831 | 4 | X022831-A | Unfamiliar | - | 5 | | 1 | 1 | 0 | 0 | 0 | 0 | 0 | | N | | N | N |
| X022831 | 4 | X022831-B | Unfamiliar | - | 5 | | 1 | 1 | 0 | 0 | 0 | 0 | 0 | | N | | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X022831 | 4 | X022831-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/22/93 | 13:00 | 52792 | NO | N | N | - | - |
| X022831 | 4 | X022831-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/22/93 | 13:00 | 52796 | NO | N | N | - | - |
| X035362 | 2 | X035362-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 1/29/93 | 20:00 | 52831 | NO | N | N | - | - |
| X035362 | 2 | X035362-B | 2 | - | No | 5 | 4 | 4 | 2 | LIVE | YES | 2/4/93 | 22:00 | 52839 | NO | N | N | - | - |
| X035362 | | X035362-B | | | No | 5 | 4 | 4 | | LIVE | YES | 2/4/93 | 22:00 | 52839 | NO | N | Y | 52831 | N |
| X048173 | 0 | | | | | | | | | | | | | | | | | | |
| X050797 | 3 | | | | | | | | | | | 2/10/93 | 3:00 | 52883 | | | | | |
| X050797 | 3 | X050797-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 2/28/93 | 20:00 | 52891 | NO | N | N | - | - |
| X050797 | 3 | X050797-B | 1 | 1 | No | UNK | 4 | UNK | 2 | PHOTO | NO | 3/1/93 | 12:00 | 52899 | NO | N | N | - | - |
| X050797 | 3 | X050797-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/8/95 | UNK | 52909 | NO | N | Y | 52899 | UNK |
| X051839 | 4 | X051839-A | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 2/4/93 | | 52917 | NO | N | N | - | - |
| X051839 | 4 | X051839-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/4/93 | | 52917 | NO | N | N | - | - |
| X051839 | 4 | X051839-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | YES | 2/10/93 | 11:00 | 52949 | NO | N | N | - | - |
| X054183 | | | | | | 5 | 4 | 4 | | | | 6/2/93 | 23:00 | 53013 | | | | - | - |
| X054183 | 5 | X054183-A | 1 | 3 | Yes | 8 | 5 | 1.666666667 | 3 | PHOTO | NO | 6/2/93 | 23:00 | 53015 | NO | N | N | - | - |
| X054183 | 5 | X054183-B | | 3 | Yes | 8 | 5 | 1.666666667 | | PHOTO | NO | 6/11/93 | 14:00 | 53027-9 | NO | N | N | - | - |
| X054183 | 5 | X054183-C | 1 | 3 | Yes | 8 | 5 | 1.666666667 | 3 | LIVE | YES | 6/11/93 | 18:45 | 53053 | NO | N | N | - | - |
| X054183 | 5 | X054183-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/11/93 | 18:45 | 53017 | NO | N | Y | 53015 | UNK |
| X054183 | 5 | X054183-E | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/9/93 | 19:30 | 53043 | NO | N | Y | 53015 | UNK |
| X057161 | 0 | | | | | | | | | | | | | | | | | | |
| X066005 | 0 | | | | | | | | | | | | | | | | | | |
| X078890 | 0 | | | | | | | | | | | | | | | | | | |
| X098203 | 0 | | | | | | | | | | | | | | | | | | |
| X123480 | 2 | X123480-A | 3 | 1 | No | 6 | 5 | 5 | 3 | LIVE | YES | 3/25/93 | 21:30 | 79479 | NO | N | N | - | - |
| X123480 | 2 | X123480-B | 1 | 1 | No | 6 | 5 | 1.5 | 1 | LIVE | YES | 3/25/93 | 23:00 | 79477 | NO | N | N | - | - |
| X129413 | 0 | | | | | | | | | | | | | | | | | | |
| X134034 | 3 | X134034-A | 1 | | No | 6 | 4 | | | PHOTO | NO | 5/5/93 | 16:30 | 79855 | NO | N | N | - | - |
| X134034 | 3 | X134034-B | 2 | | No | 5 | 4 | 4 | 2 | LIVE | YES | 5/5/93 | 22:00 | 79857 | NO | N | N | - | - |
| X134034 | 3 | X134034-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/5/93 | 21:00 | 79857 | NO | N | Y | 79855 | UNK |
| X135632 | 0 | | | | | | | | | | | | | | | | | | |
| X148140 | 3 | X148140-A | 3 | 2 | Yes | 6 | 4 | 2 | 6 | LIVE | YES | 4/8/93 | | 80112 | YES | N | N | - | - |
| X148140 | 3 | X148140-A | | | Yes | 6 | 4 | 2 | | LIVE | YES | 4/8/93 | | 80112 | YES | N | Y | 80100 | N |
| X148140 | 3 | X148140-A | | | Yes | 6 | 4 | 2 | | LIVE | YES | 4/8/93 | | 80112 | YES | N | N | - | - |
| X148140 | 3 | X148140-A | | | Yes | 6 | 4 | 2 | | LIVE | YES | 4/8/93 | | 80112 | YES | N | N | - | - |
| X153174 | 3 | X153174-A | 1 | | No | UNK | 4 | UNK | 1 | PHOTO | NO | 4/11/93 | 23:30 | 80321 | NO | N | N | - | - |
| X153174 | 3 | X153174-A | 1 | 1 | No | UNK | 4 | UNK | 1 | PHOTO | NO | 4/11/93 | 23:30 | 80321 | NO | N | N | - | - |
| X153174 | 3 | X153174-B | 1 | 1 | No | UNK | 4 | UNK | 1 | PHOTO | NO | 4/13/93 | 17:00 | 80233 | NO | N | N | - | - |
| X153174 | 3 | X153174-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 6/1/93 | 21:50 | 80268 | NO | N | Y | 80233 | N |
| X158148 | 0 | | | | | | | | | | | | | | | | | | |
| X165075 | 2 | X165075-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 4/19/93 | | 80536 | NO | N | N | - | - |
| X166506 | 0 | | | | | | | | | | | | | | | | | | |
| X167593 | 1 | X167593-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 4/21/93 | 23:26 | 80723 | NO | N | Y | 80730 | N |
| X168336 | 0 | | | | | | | | | | | | | | | | | | |
| X184686 | 0 | | | | | | | | | | | | | | | | | | |
| X198617 | 0 | | | | | | | | | | | | | | | | | | |
| X198859 | 2 | | | | | | | | | | | 7/27/95 | 21:30 | 53353 | | | Y | | |
| X198859 | 2 | X198859-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/1/97 | 22:00 | 53245 | YES | Y | Y | 53243 | UNK |
| X198959 | | X198959-B | 1 | | No | UNK | UNK | UNK | | PHOTO | NO | 8/4/98 | 19:00 | 53243 | YES | Y | N | - | - |
| X198597 | 0 | | | | | | | | | | | | | | | | | | |
| X201908 | 0 | | | | | | | | | | | | | | | | | | |
| X202066 | 8 | X202066-A | 1 | 1 | Yes | UNK | UNK | UNK | 1 | PHOTO | NO | 5/11/93 | 20:30 | 144217 | YES | N | Y | 144229 | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup in File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X022831 | 4 | X022831-C | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | N | N |
| X022831 | | X022831-D | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X035362 | 1 | X035362-A | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| X035362 | 2 | X035362-B | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | Y | Y |
| X035362 | 2 | X035362-B | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | Y | Y |
| X048173 | 0 | | | | | | | | | | | | | | | Y | | |
| X050797 | 3 | | | | | | | | | | | | | | | Y | N | Y | Y |
| X050797 | | X050797-A | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | Y | Y |
| X050797 | 3 | X050797-B | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | Y | Y |
| X050797 | | X050797-C | Unfamiliar | | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | Y | Y |
| X051839 | 2 | X051839-A | Unfamiliar | | 3 | 5 | 1 | 3 | 2 | 1 | 0 | 0 | 0 | 3 | N | | N | N |
| X051839 | 2 | X051839-B | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X051839 | | X051839-B | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | N | N |
| X054183 | 5 | | Familiar Perp | | | | | | | | | | | | Y | Y | Y | Y |
| X054183 | | X054183-A | Unfamiliar | | 1 | 8 | 3 | 3 | 3 | 2 | 0 | 0 | 0 | 3 | N | | Y | Y |
| X054183 | 5 | X054183-B | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| X054183 | | X054183-C | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | Y | Y |
| X054183 | | X054183-D | Both | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| X054183 | | X054183-E | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | Y | Y |
| X057161 | 0 | | | | | | | | | | | | | | | Y | | |
| X066005 | 0 | | | | | | | | | | | | | | | | | |
| X078890 | 0 | | | | | | | | | | | | | | | Y | | |
| X098203 | 0 | | | | | | | | | | | | | | | | | |
| X123480 | 2 | X123480-A | Unfamiliar | | 3 | 6 | 1 | 3 | 2 | 1 | 0 | 0 | 0 | 3 | N | | Y | Y |
| X123480 | 2 | X123480-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| X129413 | 0 | | | | | | | | | | | | | | | | | |
| X134034 | 2 | X134034-A | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| X134034 | 2 | X134034-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | Y | Y |
| X134034 | | X134034-B | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | Y | Y |
| X135632 | 0 | | | | | | | | | | | | | | | | | |
| X148140 | 1 | X148140-A | Previous ID | | 1 | 6 | UNK | UNK | 1 | 0 | 5 | 0 | 0 | 6 | N | | N | N |
| X148140 | 1 | X148140-A | Unfamiliar | | 1 | 6 | UNK | UNK | 1 | 0 | 5 | 0 | 0 | 6 | N | Y | N | N |
| X148140 | | X148140-A | Previous ID | | 1 | 6 | UNK | UNK | 1 | 0 | 5 | 0 | 0 | 6 | N | | N | N |
| X148140 | 1 | X148140-A | Unfamiliar | | 1 | 6 | UNK | UNK | 1 | 0 | 5 | 0 | 0 | 6 | N | | N | N |
| X153174 | 3 | X153174-A | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | Y | Y |
| X153174 | 3 | X153174-B | Familiar Perp | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| X153174 | | X153174-C | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| X153174 | 3 | X153174-C | Previous ID | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | Y | Y |
| X158148 | 0 | | | | | | | | | | | | | | | | | |
| X165075 | 1 | X165075-A | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X166506 | 0 | | | | | | | | | | | | | | | | | |
| X167593 | 1 | X167593-A | Both | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| X168336 | 0 | | | | | | | | | | | | | | | | | |
| X184686 | 0 | | | | | | | | | | | | | | | | | |
| X198617 | 0 | | | | | | | | | | | | | | | | | |
| X198959 | 2 | | Familiar Perp | | | | | | | | | | | | | Y | Y | N |
| X198959 | 2 | X198959-A | Familiar Perp | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | N |
| X198959 | | X198959-B | Familiar Perp | | 1 | UNK | UNK | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | N |
| X201908 | 0 | | | | | | | | | | | | | | | | | |
| X202066 | 8 | X202066-A | Both | | 1 | UNK | 3 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | | N | N |

| RD# of Homicide Files | Number of Identification Events Reported to RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in lineup/photo array the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X202066 | 8 | X202066-B | 1 | 3 | Yes | UNK | UNK | UNK | 3 | PHOTO | NO | 5/13/93 | 18:00 | 144223 | YES | Y | N | - | - |
| X202066 | | X202066-C | 1 | 3 | Yes | UNK | UNK | UNK | 3 | PHOTO | NO | 5/13/93 | 18:00 | 144223 | YES | Y | N | - | - |
| X202066 | 8 | X202066-D | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | YES | 5/29/93 | 14:00 | 144229 | YES | Y | Y | *144211* | - |
| X202066 | | X202066-E | UNK | UNK | UNK | 5 | UNK | UNK | UNK | LIVE | YES | 8/29/94 | 20:00 | 81503 | YES | UNK | UNK | *144211* | UNK |
| X202066 | 8 | X202066-F | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 3/5/97 | 17:00 | 144289 | NO | Y | Y | UNK | - |
| X202066 | | X202066-G | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 3/27/97 | 15:00 | 144301 | NO | Y | Y | 17, 144229, 14 | UNK |
| X202066 | 8 | X202066-H | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 3/19/99 | 21:59 | 144307 | NO | Y | Y | UNK | - |
| X205217 | 0 | | | | | | | | | | | | | | | | | | |
| X205684 | 0 | | | | | | | | | | | | | | | | | | |
| X209946 | 1 | X209946-A | 6 | 4 | Yes | 8 | 4 | 1 | 24 | LIVE | YES | 5/16/93 | 18:00 | 53890 | NO | N | N | - | - |
| X222336 | 0 | | | | | | | | | | | | | | | | | | |
| X232716 | 1 | X232716-A | 3 | 1 | No | 7 | 6 | 6 | 3 | LIVE | YES | 5/28/93 | 9:00 | 53746 | NO | N | N | - | - |
| X232716 | | | | | | | | | | | | 5/26/93 | | 14441 | | | | | |
| X238408 | 0 | | | | | | | | | | | 6/1/93 | 10:00 | 53837 | | | | | |
| X240550 | 2 | X240550-A | 2 | 1 | No | 5 | 3 | 1.5 | 4 | LIVE | YES | 6/2/93 | 6:00 | 144489 | NO | Y | N | - | - |
| X247759 | 2 | X247759-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 6/9/93 | 8:00 | 53951 | NO | N | N | - | - |
| X247759 | | X247759-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 6/9/93 | 8:00 | 53951 | NO | N | Y | 53973 | N |
| X247759 | 2 | X247759-B | 1 | 1 | No | 8 | 7 | 7 | 1 | PHOTO | NO | 6/22/93 | | 53973 | NO | N | N | - | - |
| X250303 | 3 | X250303-A | 1 | 1 | No | 8 | 7 | 7 | 2 | LIVE | YES | 6/23/93 | 20:00 | 54005 | NO | N | N | - | - |
| X250303 | | X250303-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/24/93 | 1:25 | 54009 | NO | N | Y | 53995 | N |
| X250303 | 3 | X250303-C | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 6/24/93 | 1:25 | 54009 | NO | N | Y | 53995 | N |
| X253411 | 0 | | | | | | | | | | | | | | | | | | |
| X268496 | 0 | | | | | | | | | | | | | | | | | | |
| X273883 | 3 | X273883-A | 4 | 2 | Yes | 7 | 5 | 2.5 | 8 | LIVE | YES | 6/25/93 | 4:00 | 54198 | NO | N | N | - | - |
| X273883 | | X273883-B | 4 | 2 | Yes | 7 | 5 | 0.5 | 16 | LIVE | YES | 6/25/93 | 3:15 | 54218 | NO | N | N | - | - |
| X273883 | 3 | X273883-B | | | Yes | | | | | LIVE | YES | 6/25/93 | 3:15 | 54218 | NO | N | N | - | - |
| X276829 | | | | | | | | | | | | 6/26/93 | 23:30 | 144599 | | | | | |
| X276829 | 0 | | | | | | | | | | | | | | | | | | |
| X280775 | 1 | X280775-A | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | YES | 7/3/93 | 16:00 | 54257 | YES | N | N | - | - |
| X284719 | 1 | X284719-A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 7/14/93 | 16:30 | 54347 | NO | N | N | - | - |
| X294894 | 4 | X294894-A | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 7/16/93 | UNK | 54405 | NO | N | N | - | - |
| X294894 | | X294894-B | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 7/16/93 | UNK | 54405 | NO | N | N | - | - |
| X294894 | 4 | X294894-C | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 7/16/93 | 22:45 | 54365 | NO | N | Y | 54405 | N |
| X294894 | | X294894-D | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 6/12/93 | 17:00 | 54421 | NO | N | Y | 54405 | UNK |
| X310091 | 0 | | | | | | | | | | | | | | | | | | |
| X310333 | 0 | | | | | | | | | | | | | | | | | | |
| X318386 | 5 | X318386-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 4/20/96 | UNK | 54577 | NO | N | N | - | - |
| X318386 | | X318386-B | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 9/28/96 | 17:50 | 54591 | NO | N | N | - | - |
| X318386 | 5 | X318386-B | | | No | | | | | LIVE | YES | 9/28/96 | 20:30 | 54591 | NO | N | Y | 54577 | N |
| X318386 | | X318386-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 10/20/96 | 20:36 | 54403 | NO | N | N | - | - |
| X326711 | 1 | X326711-A | 3 | 1 | No | 6 | 4 | 4 | 3 | LIVE | YES | 10/24/93 | UNK | 54638 | NO | N | Y | - | - |
| X326711 | | X326711-B | 4 | 1 | No | 6 | 5 | 5 | 4 | LIVE | YES | 10/18/93 | 21:45 | 54622 | NO | N | Y | - | - |
| X326711 | 1 | X326711-B | | | No | | | | | LIVE | YES | 10/11/93 | 21:45 | 54622 | NO | N | Y | 54638 | UNK |
| X330715 | 0 | | | | | | | | | | | | | | | | | | |
| X353707 | 2 | X353707-A | 2 | 2 | Yes | 5 | 3 | 1.5 | 4 | LIVE | YES | 8/4/93 | 6:00 | 54779 | NO | N | N | - | - |
| X353707 | | X353707-B | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 11/23/93 | UNK | 54795 | NO | N | N | - | - |
| X358457 | 2 | X358457-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 8/6/93 | | 54829 | NO | N | N | - | - |
| X358457 | | | | | | | | | | | | 8/6/93 | | 54829 | | | | | |
| X358457 | 2 | X358457-B | 2 | 1 | No | 6 | 5 | 5 | 4 | LIVE | YES | 8/6/93 | 19:10 | 54801 | NO | N | N | - | - |
| X358457 | | X358457-B | | | Yes | | | | | LIVE | YES | 8/6/93 | 19:10 | 54801 | NO | N | Y | 54829 | N |
| X358457 | 2 | X358457-E | | | Yes | | | | | LIVE | YES | 8/6/93 | 19:10 | 54801 | NO | N | N | - | - |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup in File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X202066 | 8 | X202066-B | Familiar Perp | | 1 | UNK | 3 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| X202066 | 8 | X202066-C | Familiar Perp | | 1 | UNK | 3 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| X202066 | 8 | X202066-E | Both | | UNK | 5 | UNK | 1 | 1 | 0 | 0 | 0 | 0 | UNK | N | | N | N |
| X202066 | 8 | X202066-E | Both | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X202066 | 8 | X202066-F | | | UNK | 5 | UNK | 1 | UNK | UNK | UNK | UNK | UNK | | N | | N | N |
| X202066 | 8 | X202066-G | Both | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X202066 | 8 | X202066-H | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X205217 | 0 | | | | | | | | | | | | | | | | | |
| X205604 | 0 | | | | | | | | | | | | | | | | | |
| X209946 | 1 | X209946-A | Unfamiliar | | 6 | 8 | 4 | 24 | 3 | 3 | 0 | 0 | 0 | 18 | 24 | N | | N | Y |
| X222336 | 0 | | | | | | | | | | | | | | | | | |
| X232716 | 1 | X232716-A | Unfamiliar | | 3 | 7 | 1 | 3 | 0 | 1 | 1 | 2 | 0 | 0 | 3 | N | | N | Y |
| X232716 | 1 | | | | | | | | | | | | | | | | Y | |
| X238408 | 0 | | Familiar Perp | | | | | | | | | | | | | Y | Y | N | N |
| X240550 | 1 | X240550-A | Familiar Perp | | 2 | 4 | 2 | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | N | | N | N |
| X247759 | 3 | X247759-A | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| X247759 | 3 | X247759-A | Both | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X247759 | 3 | X247759-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X250303 | 3 | X250303-A | Unfamiliar | | 2 | 8 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | Y | Y |
| X250303 | 3 | X250303-B | Previous ID | | 2 | 8 | 1 | 2 | 1 | 0 | 0 | 0 | 0 | 2 | N | | Y | Y |
| X250303 | 3 | X250303-C | Unfamiliar | | 2 | 8 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| X250303 | 3 | X250303-C | Previous ID | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X253411 | 0 | | | | | | | | | | | | | | | | | |
| X268496 | 0 | | | | | | | | | | | | | | | Y | | |
| X273883 | 2 | X273883-A | Unfamiliar | | 4 | 7 | 4 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | N | | N | N |
| X273883 | 2 | X273883-B | Unfamiliar | | 6 | 4 | 4 | 12 | 6 | 0 | 0 | 0 | 0 | 6 | 12 | N | | N | N |
| X273883 | 2 | X273883-B | Unfamiliar | | 1 | 6 | 4 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | N | | N | N |
| X276829 | 0 | | | | | | | | | | | | | | | Y | Y | N | N |
| X280775 | 1 | X280775-A | Unfamiliar | | 1 | UNK | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| X284719 | 1 | X284719-A | Unfamiliar | | 2 | 4 | 1 | 2 | 1 | 1 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| X294894 | 4 | X294894-A | Unfamiliar | | 6 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| X294894 | 4 | X294894-B | Unfamiliar | | 1 | 6 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| X294894 | 4 | X294894-C | Previous ID | | 2 | 8 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| X294894 | 4 | X294894-D | Previous ID | | 1 | 6 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| X310091 | 0 | | | | | | | | | | | | | | | | | |
| X310333 | 0 | | | | | | | | | | | | | | | | | |
| X318386 | 3 | X318386-A | Unfamiliar | | 6 | 1 | 1 | 6 | 1 | 0 | 0 | 0 | 0 | 0 | 6 | N | | N | N |
| X318386 | 3 | X318386-B | Unfamiliar | | 5 | 1 | 1 | 3 | 1 | 1 | 1 | 0 | 0 | 0 | 3 | N | | N | N |
| X318386 | 3 | X318386-B | Previous ID | | 5 | 1 | 1 | 5 | 1 | 0 | 0 | 0 | 0 | 5 | N | | N | N |
| X326711 | 3 | X326711-A | Unfamiliar | | 8 | 4 | 1 | 8 | 1 | 0 | 0 | 0 | 0 | 0 | 8 | N | | N | N |
| X326711 | 3 | X326711-B | Unfamiliar | | 6 | 1 | 1 | 6 | 1 | 0 | 0 | 0 | 0 | 6 | N | | N | N |
| X326711 | 3 | X326711-B | Previous ID | | 5 | 1 | 1 | 5 | 1 | 0 | 0 | 0 | 0 | 5 | N | | N | N |
| X330715 | 0 | | | | | | | | | | | | | | | | | |
| X353707 | 2 | X353707-A | Unfamiliar | | 2 | 3 | 1 | 2 | 4 | 1 | 0 | 2 | 0 | 1 | N | - | N | N |
| X353707 | 2 | X353707-B | Unfamiliar | | 3 | 4 | 1 | 3 | 1 | 3 | 0 | 0 | 0 | 3 | N | | N | N |
| X358457 | 2 | X358457-A | Unfamiliar | | 5 | 5 | 1 | 5 | 1 | 0 | 0 | 0 | 0 | 5 | N | | N | N |
| X358457 | 2 | X358457-A | Familiar Perp | | | | | | | | | | | | | Y | Y | N | N |
| X358457 | 2 | X358457-B | Unfamiliar | Witness A | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X358457 | 2 | X358457-B | Previous ID | Witness A | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |

Area Five Homicide Files 1991-1992 — Steblay Data 9-16-2022

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in column R to the left, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X363943 | 0 | | | | | | | | | | | | | | | | | | |
| X369525 | 2 | X369525-A | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 8/12/93 | UNK | 54889 | NO | | N | | N |
| X369525 | | X369525-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 8/12/93 | 18:00 | 54913 | NO | | N | | N |
| X369525 | 2 | X369525-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 8/12/93 | 18:00 | 54913 | NO | | N | | N |
| X373084 | 1 | X373084-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 7/26/96 | 21:00 | 54959 | YES | Y | N | | |
| X396851 | 4 | X396851-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 9/2/93 | 22:00 | 54969 | YES | | N | | N |
| X396851 | 4 | X396851-B | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 9/2/93 | 22:00 | 54969 | YES | | N | | N |
| X396851 | | X396851-C | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 9/2/93 | 16:00 | 55005 | NO | Y | Y | 54969 | |
| X396851 | | X396851-D | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 9/15/93 | 14:00 | 54995 | NO | Y | Y | 54969 | UNK |
| X399302 | 0 | | | | | | | | | | | | | | | | | | |
| X401936 | 3 | X401936-A | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 9/1/93 | 2:00 | 55081 | NO | | | | |
| X401936 | | | | | | | | | | | | 9/1/93 | 2:00 | 55081 | | | | | |
| X401936 | 3 | X401936-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 9/2/93 | 13:00 | 55089 | NO | Y | N | | |
| X401936 | | X401936-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/1/93 | 14:30 | 55097 | NO | Y | Y | 55089 | UNK |
| X404224 | 1 | X404224-A | 1 | 1 | Yes | 5 | 3 | 1.5 | 2 | PHOTO | NO | 8/31/93 | 13:00 | 55117 | NO | N | N | | |
| X407041 | 3 | X407041-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 9/3/93 | 23:00 | 55191 | NO | N | N | | |
| X407041 | | X407041-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/4/93 | 10:00 | 55229 | NO | N | N | | |
| X407041 | 3 | X407041-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/17/93 | 17:00 | 55211 | NO | N | N | | |
| X432328 | 1 | X432328-A | 4 | 3 | Yes | 6 | 3 | 1 | 12 | LIVE | YES | 9/17/93 | 4:00 | 55285 | NO | N | N | | |
| X434906 | 2 | X434906-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 10/5/93 | 21:00 | 55326 | NO | N | N | | |
| X434906 | 2 | X434906-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 10/5/93 | 21:00 | 55304 | NO | Y | N | | |
| X446029 | 2 | X446029-A | 1 | 1 | No | 4 | 4 | 4 | 1 | LIVE | YES | 9/25/93 | 16:00 | 55392 | NO | N | N | | |
| X446029 | 2 | X446029-B | 2 | 1 | No | 5 | 4 | 2.5 | 2 | LIVE | | | | | | Y | N | | |
| X446029 | | | | | | | | | | | | 9/26/93 | | 55366 | | Y | N | | |
| X446029 | | | | | | | | | | | | 10/6/93 | 13:45 | 55376 | | Y | N | | |
| X447871 | 0 | | | | | | | | | | | | | | | | | | |
| X448218 | 0 | | | | | | | | | | | | | | | | | | |
| X453866 | 0 | | | | | | | | | | | | | | | | | | |
| X458257 | 3 | X458257-A | 3 | 1 | No | 6 | 5 | 5 | 3 | PHOTO | NO | 11/3/93 | | 55625 | NO | N | Y | 55639 | N |
| X458257 | 3 | X458257-B | 3 | 1 | No | 6 | 5 | 5 | 3 | LIVE | YES | 11/4/93 | | 55625 | NO | N | Y | 55625 | N |
| X458257 | | X458257-C | 3 | 1 | No | 6 | 5 | 5 | 3 | LIVE | YES | 11/4/93 | 22:50 | 55625 | NO | N | Y | 55625 | N |
| X458552 | 0 | | | | | | | | | | | | | | | | | | |
| X458554 | 5 | | | | | | | | | | | 10/22/93 | UNK | 55688 | NO | Y | N | | |
| X458554 | 5 | X458554-A | 2 | 1 | No | 4 | 3 | 3 | 2 | PHOTO | NO | 10/22/93 | UNK | 55688 | NO | Y | N | | |
| X458554 | | X458554-B | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 10/23/93 | 1:30 | 55696 | NO | Y | N | | |
| X458554 | | X458554-C | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 10/29/93 | 1:30 | 55696 | NO | Y | N | 55688 | |
| X458554 | | X458554-D | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 11/1/93 | 22:45 | 55708 | NO | Y | N | 55688 | UNK |
| X458554 | | X458554-E | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/15/94 | 16:30 | 55746 | NO | Y | N | 55688 | |
| X460949 | 0 | | | | | | | | | | | | | | | | | | |
| X461578 | 1 | X461578-A | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | YES | 11/2/93 | 16:00 | 55804 | YES | Y | Y | | |
| X465215 | 2 | X465215-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 10/9/93 | 15:00 | 55868 | NO | N | N | | |
| X465215 | 2 | X465215-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 10/9/93 | 17:45 | 55868 | NO | N | Y | 558552 | N |
| X469989 | 1 | X469989-A | 6 | 5 | Yes | 6 | 5 | 5 | 5 | PHOTO | NO | 11/3/93 | 18:16 | 55935 | NO | N | N | | |
| X469989 | 1 | X469989-B | 5 | 5 | Yes | 5 | 4 | 4 | 4 | LIVE | YES | 11/1/93 | 18:16 | 55608 | NO | N | Y | 55935 | N |
| X472001 | 0 | | | | | | | | | | | | | | | | | | |
| X472905 | 0 | | | | | | | | | | | | | | | | | | |
| X476307 | 0 | | | | | | | | | | | | | | | | | | |
| X482035 | 1 | X482035-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 10/16/93 | 23:30 | 56078 | NO | N | N | | |
| X482159 | 0 | | | | | | | | | | | | | | | | | | |
| X485331 | 0 | | | | | | | | | | | | | | | | | | |
| X499505 | 2 | X499505-A | 2 | 1 | No | 12 | 11 | 11 | 2 | PHOTO | NO | 11/1/93 | 6:00 | 56222 | NO | Y | N | | |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X363943 | 0 | | | | | | | | | | | | | | | | | |
| X369525 | 2 | X369525-A | Unfamiliar | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| X369525 | | X369525-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X369525 | 2 | X369525-B | Previous ID | | | 5 | | | | | 0 | 0 | 0 | 0 | | N | | N | N |
| X373084 | 1 | X373084-A | Familiar Perp | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X396851 | 4 | X396851-A | Familiar Perp | | 2 | UNK | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| X396851 | 4 | X396851-B | Unfamiliar | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| X396851 | 4 | X396851-C | Both | | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| X396851 | 4 | X396851-D | Unfamiliar | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| X399302 | 0 | | | | | | | | | | | | | | | | | |
| X401936 | 3 | X401936-A | Familiar Perp | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| X401936 | 3 | | Familiar Perp | | | | | | | | | | | | N | Y | N | N |
| X401936 | 3 | X401936-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | Y | N | N |
| X401936 | 3 | X401936-C | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | Y | N | N |
| X401936 | 3 | X401936-C | Both | | | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X404224 | 1 | X404224-A | Unfamiliar | | 1 | 5 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | N | N | Y |
| X407041 | 3 | X407041-A | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X407041 | 3 | X407041-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X407041 | 3 | X407041-C | Previous ID | | | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X432328 | 1 | X432328-A | Unfamiliar | | 4 | 6 | 3 | 12 | 4 | 0 | 0 | 0 | 8 | 12 | N | | N | Y |
| X434906 | 2 | X434906-A | Familiar Perp | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| X434906 | 2 | X434906-B | Familiar Perp | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | Y | Y |
| X446029 | 1 | X446029-A | Unfamiliar | | 1 | 4 | 2 | 4 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| X446029 | 1 | | Familiar Perp | | | | | | | | | | | | Y | Y | | |
| X446029 | 1 | | Familiar Perp | | | | | | | | | | | | Y | Y | | |
| X447871 | 0 | | | | | | | | | | | | | | | | | |
| X448218 | 0 | | | | | | | | | | | | | | | Y | | |
| X453866 | 0 | | | | | | | | | | | | | | | | | |
| X458257 | 3 | X458257-A | Previous ID | | 3 | 6 | 1 | 3 | 0 | 0 | 0 | 0 | 3 | N | | N | N |
| X458257 | 3 | X458257-B | Unfamiliar | | 3 | 6 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | | N | N |
| X458257 | 3 | X458257-C | Unfamiliar | | 3 | 6 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | | N | N |
| X458521 | 0 | | | | | | | | | | | | | | | | | |
| X458554 | 5 | | Familiar Perp | | | | | | | | | | | | | Y | Y | N |
| X458554 | 5 | X458554-A | Unfamiliar | | | 6 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| X458554 | 5 | X458554-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X458554 | 5 | X458554-C | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X458554 | 5 | X458554-D | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X458554 | 5 | X458554-E | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X460949 | 0 | | | | | | | | | | | | | | | | | |
| X461578 | 1 | X461578-A | Familiar Perp | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X465215 | 2 | X465215-A | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X465215 | 2 | X465215-B | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X465215 | 2 | X465215-B | Previous ID | | | 4 | | | | | | | | | N | | N | N |
| X469989 | 4 | X469989-A | Unfamiliar | 1 | | 4 | | | | | | | | | N | | N | N |
| X469989 | 4 | X469989-B | Previous ID | | | | | | | | | | | | N | | N | N |
| X469989 | 4 | X469989-B | Unfamiliar | | 4 | 4 | 5 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | N | | N | N |
| X472001 | 0 | | | | | | | | | | | | | | | | | |
| X472905 | 0 | | | | | | | | | | | | | | | | Y | |
| X478307 | 0 | | | | | | | | | | | | | | | | | |
| X482035 | 1 | X482035-A | Unfamiliar | | 1 | 4 | | | | | | | | | N | | N | N |
| X482159 | 0 | | | | | | | | | | | | | | | | | |
| X483331 | 0 | | | | | | | | | | | | | | | | | |
| X499505 | 2 | X499505-A | Familiar Perp | | 2 | 12 | | | | | | | | | N | | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X499505 | 2 | | | | | | | | | | | 10/30/93 | | 56230 | | | Y | | Y |
| X499505 | | X499505-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 10/30/93 | 18:00 | 56242 | NO | | Y | | Y | 56222 | N |
| X499594 | 1 | X499594-A | 4 | | No | | | | | LIVE | YES | 10/26/93 | 13:00 | 56306 | NO | | N | | N |
| X501086 | 0 | | | | | | | | | | | | | | | | | | |
| X506880 | 2 | X506880-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | NO | 11/7/93 | 0:00 | 56386 | NO | | N | | N |
| X506880 | | X506880-B | 1 | 1 | No | 8 | 7 | 7 | 1 | LIVE | NO | 11/11/93 | 23:00 | 56374 | NO | N | | N | 56374 |
| X509163 | 5 | X509163-A | 2 | 2 | Yes | 6 | 4 | 2 | 4 | PHOTO | NO | 1/18/96 | UNK | 145034 | NO | | N |
| X509163 | | X509163-A | | | Yes | | | | | PHOTO | NO | 1/18/96 | UNK | 145034 | NO | |
| X509163 | | X509163-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 1/18/96 | UNK | 145034 | NO | | N | | N |
| X509163 | | X509163-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/2/96 | UNK | 145038 | NO | | Y | | N |
| X509163 | | X509163-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/2/96 | UNK | 145038 | NO | | Y | | N |
| X509163 | 5 | X509163-E | 3 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/9/97 | UNK | 145042 | NO | | Y | | Y | 145038 | UNK |
| X512953 | 0 | | | | | | | | | | | | | | | | | | |
| X518897 | 2 | X518897-A | UNK | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 11/6/93 | UNK | 56608 | YES | | N | | N | 56608 |
| X518897 | | X518897-B | 3 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/21/97 | UNK | 56620 | NO | | N | | N | 56685 |
| X519377 | 2 | X519377-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/29/93 | 20:00 | 56657 | NO | | N |
| X519377 | | X519377-B | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 11/30/93 | 2:00 | 56665 | NO | | N |
| X521776 | 0 | | | | | | | | | | | | | | | | | | |
| X524372 | 4 | X524372-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 11/23/93 | 19:30 | 56717 | NO | | Y | | N | 56725 |
| X524372 | | X524372-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 11/23/93 | 19:30 | 56717 | NO | | Y |
| X524372 | | X524372-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 11/23/93 | | 56719 | NO | | N |
| X524372 | | X524372-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/24/93 | UNK | 56725 | NO | | Y | | N |
| X526458 | 0 | | | | | | | | | | | | | | | | | | |
| X529824 | 2 | X529824-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/22/94 | UNK | 56815 | NO | | Y |
| X529824 | | X529824-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/30/94 | 9:30 | 87653 | NO | | Y | | N |
| X532566 | 0 | | | | | | | | | | | | | | | | | | |
| X536749 | 3 | X536749-A | 2 | | No | UNK | UNK | UNK | 2 | LIVE | NO | 11/18/93 | 5:00 | 145160 | YES | UNK | UNK | | UNK |
| X536749 | | X536749-B | UNK | UNK | UNK | 4 | UNK | UNK | UNK | LIVE | NO | 11/17/93 | | 145134 | YES | UNK | UNK | | UNK |
| X536749 | | X536749-C | 6 | 3 | Yes | 7 | 4 | 1.333333333 | 18 | LIVE | NO | 11/18/93 | 22:00 | 145140 | NO | | N | | N |
| X539943 | 2 | X539943-A | 2 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 12/8/93 | 22:00 | 88001 | NO | | N |
| X539943 | | X539943-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/21/95 | 23:30 | 87998 | NO | | N | | Y | 88001 | UNK |
| X541123 | 0 | | | | | | | | | | | | | | | | | | |
| X545568 | 4 | X545568-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 11/23/93 | 23:55 | 57027 | NO | | N |
| X545568 | | X545568-B | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 3/6/94 | | 57021 | NO | | Y |
| X545568 | | X545568-C | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 3/6/94 | | 57023 | NO | | N |
| X545568 | | X545568-D | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 3/6/94 | | 57023 | NO | | Y | | Y | 57031 | N |
| X545568 | 4 | X545568-E | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 3/6/94 | | 57009 | NO | | Y | | Y | 57031 | N |
| X552814 | 1 | X552814-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 1/14/95 | | 57086 | NO | | Y |
| X554075 | 0 | | | | | | | | | | | | | | | | | | |
| X557163 | 0 | | | | | | | | | | | | | | | | | | |
| X563460 | 2 | X563460-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/6/93 | 22:00 | 57284 | NO | | N |
| X563460 | | X563460-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/6/93 | 22:00 | 57284 | NO | | N |
| X566418 | 2 | X566418-A | 1 | 1 | No | 4 | UNK | UNK | 1 | LIVE | YES | 12/10/93 | 22:00 | 57345 | NO | | Y | | Y | 57331 | - |
| X566418 | | X566418-B | 2 | UNK | No | 4 | UNK | UNK | UNK | LIVE | YES | 12/10/93 | 22:00 | 57310 | YES | | N | | N |
| X573832 | 0 | | | | | | | | | | | | | | | | | | |
| X573432 | 0 | | | | | | | | | | | | | | | | | | |
| X597535 | 0 | | | | | | | | | | | | | | | | | | |
| X598197 | 0 | | | | | | | | | | | | | | | | | | |
| X600653 | 0 | | | | | | | | | | | | | | | | | | |
| X600830 | 0 | | | | | | | | | | | | | | | | | | |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup in File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X499505 | 2 | | Familiar Perp | | | | | | | | | | | | Y | Y | N | N |
| X499505 | | X499505-B | Both | | 2 | 5 | 1 | 2 | 1 | | 0 | 0 | 0 | 2 | N | | N | N |
| X499594 | 1 | X499594-A | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X501086 | 0 | | | | | | | | | | | | | | N | | N | N |
| X506880 | 2 | X506880-A | Previous ID | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X506880 | 2 | X506880-B | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X509163 | 5 | X509163-A | Unfamiliar | | 1 | 6 | 2 | 2 | 2 | 0 | 0 | 0 | 2 | 0 | 2 | N | | N | N |
| X509163 | 5 | X509163-A | Unfamiliar | Witness B | 1 | | | | | 0 | 0 | 0 | 0 | | N | | N | N |
| X509163 | 5 | X509163-A | Familiar Perp | Witness B | | | | | | 0 | 0 | 0 | 0 | | N | | N | N |
| X509163 | 5 | X509163-B | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X509163 | 5 | X509163-C | Familiar Perp | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X509163 | 5 | X509163-D | Familiar Perp | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X509163 | 5 | X509163-E | Familiar Perp | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X512953 | 0 | | | | | | | | | | | | | | N | | N | N |
| X518897 | 2 | X518897-A | Unfamiliar | | UNK | 5 | 1 | 1 | UNK | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| X518897 | 2 | X518897-B | Previous ID | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X519377 | 2 | X519377-A | Previous ID | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X519377 | 2 | X519377-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X521776 | 0 | | | | | | | | | | | | | | N | | N | N |
| X524372 | 3 | X524372-A | Both | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X524372 | 3 | X524372-A | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X524372 | 3 | X524372-B | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X524372 | 3 | X524372-C | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X526458 | 0 | | | | | | | | | | | | | | N | | N | N |
| X529824 | 2 | X529824-A | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| X529824 | 2 | X529824-B | Familiar Perp | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| X532566 | 0 | | | | | | | | | | | | | | N | | N | N |
| X536749 | 3 | X536749-A | - | | | UNK | | 2 | | 2 | 0 | 2 | 0 | | N | | N | N |
| X536749 | 3 | X536749-B | - | | UNK | 4 | UNK | | UNK | UNK | UNK | 0 | UNK | | N | | N | N |
| X536749 | 3 | X536749-C | - | | | 5 | | | | | | | 0 | | N | | N | N |
| X539943 | 3 | X539943-A | - | | 2 | 6 | 1 | 18 | 9 | 1 | 1 | 0 | 0 | 18 | N | | Y | Y |
| X539943 | 3 | X539943-B | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 1 | 0 | 0 | 2 | N | | Y | Y |
| X541123 | 0 | | | | | | | | | | | | | | N | | N | N |
| X545568 | 4 | X545568-A | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X545568 | 4 | X545568-B | Familiar Perp | | 1 | 3 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X545568 | 4 | X545568-C | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X545568 | 4 | X545568-C | Familiar Perp | | 1 | 3 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| X545568 | 4 | X545568-D | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X545568 | 4 | X545568-D | Familiar Perp | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X552814 | 1 | X552814-A | Familiar Perp | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X554075 | 0 | | | | | | | | | | | | | | N | | N | N |
| X557163 | 0 | | | | | | | | | | | | | | N | | N | N |
| X563460 | 2 | X563460-A | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | N | N | N |
| X563460 | 2 | X563460-B | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X566418 | 2 | X566418-A | Both | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | N |
| X566418 | 2 | X566418-B | Unfamiliar | | 2 | 4 | UNK | UNK | UNK | 0 | 0 | 0 | 0 | 0 | N | | Y | N |
| X573832 | 0 | | | | | | | | | | | | | | N | | N | N |
| X575422 | 0 | | | | | | | | | | | | | | N | | N | N |
| X597535 | 0 | | | | | | | | | | | | | | N | | N | N |
| X598197 | 0 | | | | | | | | | | | | | | N | | N | N |
| A600653 | 0 | | | | | | | | | | | | | | N | | N | N |
| X600830 | 0 | | | | | | | | | | | | | | N | | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in lineup/photo array, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X606647 | 0 | | | | | | | | | | | | | | | | | | |
| Y002633 | 0 | | | | | | | | | | | | | | | | | | |
| Y004345 | 5 | Y004345-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 3/25/94 | 18:00 | 57791 | YES | | Y | N | |
| Y004345 | 3 | Y004345-B | 2 | | No | UNK | UNK | UNK | 2 | LIVE | NO | 3/25/94 | 18:00 | 57793 | YES | N | N | 55791 | N |
| Y004345 | 3 | Y004345-B | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | NO | 3/25/94 | 18:00 | 57793 | YES | N | N | | |
| Y004345 | 3 | Y004345-C | 1 | | No | 5 | 4 | 4 | 1 | LIVE | NO | 4/1/94 | 11:00 | 57755 | NO | N | N | | |
| Y012213 | 0 | | | | | | | | | | | | | | | | | | |
| Y017923 | 0 | | | | | | | | | | | | | | | | | | |
| Y024794 | 0 | | | | | | | | | | | | | | | | | | |
| Y043873 | 5 | Y043873-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 2/1/94 | 4:00 | 117971 | YES | N | N | | |
| Y043873 | 3 | Y043873-B | 1 | | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/2/94 | 17:30 | 117962 | NO | N | N | | |
| Y043873 | 3 | Y043873-C | 2 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/2/94 | 17:30 | 117960 | NO | N | N | | |
| Y043873 | 3 | Y043873-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/2/94 | 17:30 | 117960 | NO | N | Y | 117862 | |
| Y047471 | 0 | | | | | | | | | | | | | | | | | | |
| Y048735 | 0 | | | | | | | | | | | | | | | | | | |
| Y060823 | 0 | | | | | | | | | | | | | | | | | | |
| Y065739 | 6 | Y065739-A | 3 | | No | 6 | 5 | 5 | 1 | LIVE | YES | 3/25/94 | | 58068 | NO | N | N | | |
| Y065739 | 6 | Y065739-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 4/12/94 | 23:00 | 118196 | NO | N | N | | |
| Y065739 | 6 | Y065739-C | 1 | | No | 6 | 5 | 5 | 1 | LIVE | YES | 4/21/94 | 23:30 | 58138 | NO | N | N | | |
| Y065739 | 6 | Y065739-D | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 6/26/94 | 23:30 | 58128 | NO | N | Y | | |
| Y065739 | 6 | Y065739-E | 4 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 9/29/94 | 23:45 | 58150 | NO | N | N | | |
| Y065739 | 6 | Y065739-E | 1 | | No | 6 | 5 | 5 | 1 | LIVE | YES | 9/29/94 | 23:45 | 58150 | NO | N | Y | 58128 | N |
| Y065739 | 6 | Y065739-E | 1 | | No | 6 | 5 | 5 | 1 | LIVE | YES | 9/29/94 | 23:45 | 58165 | NO | N | Y | 58138 | N |
| Y065739 | 6 | Y065739-F | 1 | 1 | No | 4 | | | 1 | LIVE | YES | 9/29/94 | 23:50 | 58150 | NO | N | N | | |
| Y092765 | 0 | | | | | | | | | | | | | | | | | | |
| Y100198 | 4 | Y100198-A | 2 | | No | | | | 1 | LIVE | YES | 3/12/94 | | 118327 | NO | N | N | | |
| Y102524 | 0 | | | | | | | | | | | | | | | | | | |
| Y103853 | 0 | | | | | | | | | | | | | | | | | | |
| Y105717 | 4 | Y105717-A | | | No | | | | | PHOTO | NO | 6/7/94 | 23:30 | 58402 | NO | N | N | | |
| Y105717 | 4 | Y105717-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 6/9/94 | | 58394 | NO | N | Y | 58402 | N |
| Y105717 | 4 | Y105717-C | 1 | | No | 4 | 3 | 3 | 1 | LIVE | YES | 6/27/94 | 20:00 | 58386 | NO | N | N | | |
| Y105717 | 4 | Y105717-D | 2 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 6/28/94 | 19:00 | 58383 | NO | N | N | | |
| Y116188 | 3 | Y116188-A | 2 | | No | 5 | 4 | 4 | 1 | LIVE | YES | 3/20/94 | 13:00 | 58466 | NO | N | N | | |
| Y117102 | 3 | Y117102-A | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 3/21/94 | UNK | 58512 | NO | N | N | | |
| Y117102 | 3 | Y117102-B | 1 | | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/22/94 | UNK | 58504 | NO | N | N | | |
| Y117102 | 3 | Y117102-C | 1 | | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/23/94 | 20:00 | 58538 | NO | N | N | | |
| Y126245 | 0 | | | | | | | | | | | | | | | | | | |
| Y128262 | 1 | Y128262-A | 1 | 1 | No | 4 | 4 | 4 | 1 | LIVE | YES | 4/6/94 | 6:00 | 58636 | NO | N | N | | |
| Y132533 | 0 | | | | | | | | | | | | | | | | | | |
| Y142084 | 3 | | | | | | | | | | | 4/1/99 | UNK | 58731 | | | | | |
| Y142082 | 3 | Y142082-A | 2 | | No | | | | 1 | PHOTO | NO | 4/19/94 | 18:00 | 58759 | NO | N | N | | |
| Y142082 | 3 | | | | | | | | | | | 4/19/94 | | 58731 | | | | | |
| Y145485 | 3 | Y145485-A | 1 | | No | 6 | 5 | 5 | 1 | LIVE | YES | 4/7/94 | | 58609 | NO | N | N | | |
| Y148888 | 3 | Y148888-A | 4 | 2 | Yes | 6 | 4 | 2 | 2 | LIVE | YES | 4/8/94 | 22:30 | 145507, 145513 | NO | N | N | | |
| Y148888 | 3 | Y148888-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 4/9/94 | 0:30 | 145531 | NO | N | N | | |
| Y148888 | 3 | Y148888-C | 1 | 2 | No | 5 | 4 | 2 | 2 | LIVE | YES | 8/16/94 | | 145509-11 | NO | N | Y | 145531 | UNK |
| Y153936 | 3 | Y153936-A | 5 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 8/18/94 | 20:00 | 58911 | NO | N | N | | |
| Y153936 | 3 | Y153936-A | 1 | | No | 5 | 4 | 4 | 1 | LIVE | YES | 8/18/94 | 20:00 | 58911 | NO | N | Y | 58943 | N |
| Y153936 | 3 | Y153936-B | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 8/18/94 | 21:00 | 58943 | NO | N | N | | |
| Y155969 | 5 | Y155969-A | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 4/11/94 | | 58971 | NO | N | N | | |
| Y155969 | 5 | Y155969-B | 3 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 4/26/94 | 17:00 | 58965 | NO | N | Y | 58971 | UNK |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individual Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed Who But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X606647 | 0 | | | | | | | | | | | | | | | | | |
| Y002633 | 0 | | | | | | | | | | | | | | Y | | Y | N |
| Y004345 | 3 | Y004345-A | Familiar Perp | Unfamiliar | | | | | | | | | | | | | N | N |
| Y004345 | 3 | Y004345-A | Previous ID | | 1 | UNK | | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| Y004345 | 3 | Y004345-B | Unfamiliar | | 1 | UNK | | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| Y004345 | 3 | Y004345-C | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| Y012213 | 0 | | | | | | | | | | | | | | | | | |
| Y017923 | 0 | | | | | | | | | | | | | | | | | |
| Y024794 | 0 | | | | | | | | | | | | | | | | | |
| Y043873 | 3 | Y043873-A | Unfamiliar | | 1 | UNK | | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y043873 | 3 | Y043873-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y043873 | 3 | Y043873-C | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y043873 | 3 | Y043873-C | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y047471 | 0 | | | | | | | | | | | | | | | | | |
| Y048735 | 0 | | | | | | | | | | | | | | | | | |
| Y060823 | 0 | | | | | | | | | | | | | | | | | |
| Y065739 | 6 | Y065739-A | Unfamiliar | | 3 | 6 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | | Y | N |
| Y065739 | 6 | Y065739-B | Familiar Perp | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | N |
| Y065739 | 6 | Y065739-C | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | N |
| Y065739 | 6 | Y065739-D | Familiar Perp | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | N |
| Y065739 | 6 | Y065739-E | Unfamiliar | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | Y | N |
| Y065739 | 6 | Y065739-E | Both | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | N |
| Y065739 | 6 | Y065739-E | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | N |
| Y065739 | 6 | Y065739-E | Unfamiliar | | 4 | | | | | | | | | | N | | Y | Y |
| Y065739 | 6 | Y065739-F | Unfamiliar | | 1 | | | | | | | | | | N | | Y | N |
| Y092765 | 0 | | | | | | | | | | | | | | | | | |
| Y100198 | 1 | Y100198-A | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y102524 | 0 | | | | | | | | | | | | | | | | | |
| Y103853 | 0 | | | | | | | | | | | | | | | | | |
| Y105717 | 4 | Y105717-A | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y105717 | 4 | Y105717-B | Both | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y105717 | 4 | Y105717-C | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y105717 | 4 | Y105717-D | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y116188 | 3 | Y116188-A | Unfamiliar | | 1 | 5 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| Y117102 | 3 | Y117102-A | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y117102 | 3 | Y117102-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y117102 | 3 | Y117102-C | Unfamiliar | | 1 | 5 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| Y126245 | 0 | | | | | | | | | | | | | | | | | |
| Y128262 | 1 | Y128262-A | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y132533 | 0 | | | | | | | | | | | | | | | | | |
| Y140394 | 0 | | | Familiar Perp | | | | | | | | | | | | | | | |
| Y142082 | 1 | Y142082-A | Familiar Perp | | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | Y | N |
| Y142082 | | | Familiar Perp | | | | | | | | | | | | | | | |
| Y145485 | 1 | Y145485-A | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y148888 | 3 | Y148888-A | Unfamiliar | | 1 | 6 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | Y | Y |
| Y148888 | 3 | Y148888-B | Unfamiliar | | 4 | 6 | 2 | 8 | 2 | 0 | 0 | 0 | 0 | 2 | N | | Y | Y |
| Y148888 | 3 | Y148888-C | Previous ID | | 4 | 5 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | Y | Y |
| Y153936 | 2 | Y153936-A | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y153936 | 2 | Y153936-A | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y153936 | 2 | Y153936-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y155969 | 5 | Y155969-A | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y155969 | 5 | Y155969-B | Previous ID | | 1 | 5 | | | | | | | | | N | | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in lineup/photo array are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Y155969 | 5 | Y155969-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 4/26/94 | 17:00 | 58965 | NO | N | N | | |
| Y155969 | 5 | Y155969-B | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 5/18/94 | 23:30 | 59010 | NO | N | N | | |
| Y155969 | 5 | Y155969-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/18/94 | 23:30 | 59010 | NO | N | Y | 59002 | N |
| Y155969 | 5 | Y155969-D | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 5/19/94 | 10:00 | 59006 | NO | N | Y | 58965 | N |
| Y155969 | 5 | Y-155969-E | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 5/19/94 | | 59002 | YES | N | N | | |
| Y165913 | 0 | | | | | | | | | | | 4/19/94 | | 59018 | | | | | |
| Y165913 | 0 | | | | | | | | | | | 4/19/94 | | 59018 | | | | | |
| Y166365 | 1 | Y166365-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 4/25/94 | | 59066 | NO | N | N | | |
| Y167929 | 2 | Y167929-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/10/94 | 14:00 | 59132 | NO | Y | Y | 59124 | N |
| Y167929 | 2 | Y167929-B | 1 | 1 | Yes | 9 | 7 | 3.5 | 2 | PHOTO | NO | 7/12/94 | 17:00 | 59124 | NO | Y | N | | |
| Y179819 | 1 | Y179819-A | 14 | 1 | No | 6 | 5 | 5 | 14 | LIVE | YES | 5/5/94 | 14:00 | 59142 & 59151 | NO | N | N | | |
| Y182673 | 4 | Y182673-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 4/29/94 | 6:00 | 59219 | NO | N | N | | |
| Y182673 | 4 | Y182673-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 4/29/94 | 6:00 | 59219 | NO | N | N | | |
| Y182673 | 4 | Y182673-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 5/3/94 | 1545 | 59215 | NO | N | N | | |
| Y182859 | 3 | Y182859-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 5/14/94 | 6:00 | 59295 | NO | N | N | | |
| Y182859 | 3 | Y182859-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/14/94 | 18:00 | 59301 | NO | N | N | | |
| Y182859 | 3 | Y182859-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/14/94 | 18:00 | 59301 | NO | N | Y | 59295 | N |
| Y183844 | 1 | Y183844-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 5/8/94 | | 59347 | NO | N | N | | |
| Y183844 | 1 | Y183844-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 5/8/94 | 1630 | 59335 | NO | N | N | | |
| Y191409 | 0 | | | | | | | | | | | | | | | | | | |
| Y219275 | 0 | | | | | | | | | | | | | | | | | | |
| Y220921 | 0 | | | | | | | | | | | | | | | | | | |
| Y233745 | 0 | | | | | | | | | | | | | | | | | | |
| Y240898 | 0 | | | | | | | | | | | | | | | | | | |
| Y246941 | 1 | Y246941-A | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 5/2/95 | 23:00 | 121430 | NO | N | N | | |
| Y261996 | 5 | Y261996-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 5/31/95 | 17:30 | 121683 | NO | N | N | | |
| Y261996 | 5 | Y261996-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 7/3/95 | | 121528 | NO | N | N | | |
| Y261996 | 5 | Y261996-C | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 7/3/95 | | 121529 | NO | N | Y | 121683 | |
| Y261996 | 5 | Y261996-D | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 7/3/95 | | 121529 | NO | N | N | | |
| Y261996 | 5 | Y261996-E | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 7/3/95 | 12:00 | 121535 | NO | N | Y | 121529 | |
| Y266676 | 1 | Y266676-A | 4 | 1 | No | 7 | 6 | 6 | 4 | LIVE | YES | 6/18/94 | 2:00 | 121812 | NO | N | N | | |
| Y266676 | 1 | Y266676-A | | | | | | | | LIVE | YES | 6/18/94 | 2:00 | 121812 | NO | N | N | | |
| Y269778 | 2 | Y269778-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/24/94 | 11:00 | 121955 | NO | N | N | | |
| Y269778 | 2 | Y269778-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/21/94 | 11:00 | 121900 | NO | N | N | | |
| Y293539 | 1 | Y293539-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 10/21/94 | | 121966 | NO | N | N | | |
| Y293771 | 0 | | | | | | | | | | | | | | | | | | |
| Y307170 | 2 | Y307170-A | 1 | 1 | No | 7 | 6 | 6 | 1 | PHOTO | NO | 7/24/94 | | 122141 | NO | N | N | | |
| Y307170 | 2 | Y307170-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/24/94 | 23:45 | 122130 | NO | N | N | | |
| Y309700 | 4 | Y309700-A | 2 | 1 | No | 4 | 3 | 3 | 2 | PHOTO | NO | 7/11/94 | | 59934 | NO | N | N | | |
| Y309700 | 4 | Y309700-B | 1 | 1 | Yes | UNK | UNK | UNK | 1 | PHOTO | NO | 7/13/94 | | 59931 | NO | N | N | | |
| Y309700 | 4 | Y309700-C | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 11/5/94 | | 59989 | NO | N | N | | |
| Y309700 | 4 | Y309700-D | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 1/27/95 | 0:45 | 59969 | NO | N | Y | 59945 | N |
| Y313353 | 0 | | | | | | | | | | | | | | | | | | |
| Y340165 | 0 | | | | | | | | | | | | | | | | | | |
| Y342382 | 0 | | | | | | | | | | | | | | | | | | |
| Y360938 | 6 | Y360938-A | 5 | 1 | No | 5 | 4 | 4 | 5 | LIVE | YES | 8/8/94 | 2329 | 123107 | NO | N | N | | |
| Y360938 | 6 | Y360938-A | 5 | 1 | No | 5 | 4 | 4 | 5 | LIVE | YES | 8/8/94 | 2329 | 123107 | NO | N | N | | |
| Y360938 | 6 | Y360938-B | 5 | 1 | No | 4 | 3 | 3 | 5 | LIVE | YES | 8/8/94 | 2329 | 123124 | NO | N | N | | |
| Y360938 | 6 | Y360938-B | 5 | 1 | Yes | | | | | LIVE | YES | 8/8/94 | 2329 | 123124 | NO | N | Y | 123133 | UNK |
| Y360938 | 6 | Y360938-B | | | Yes | | | | | LIVE | YES | 8/8/94 | 2329 | 123124 | NO | N | N | | |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup in File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Y155969 | 5 | Y155969-B | Unfamiliar | | 2 | 5 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| Y155969 | 5 | Y155969-C | Unfamiliar | | 2 | 5 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| Y155969 | 5 | Y155969-D | Previous ID | | 1 | | | | | | | | | | N | | N | N |
| Y155969 | 5 | Y155969-D | Unfamiliar | | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | N | N |
| Y155969 | 5 | Y155969-E | Unfamiliar | | 6 | 1 | 1 | UNK | UNK | 0 | 0 | 0 | 0 | UNK | N | | N | N |
| Y165913 | 0 | | | | - | | | | | | | | | | | | Y | Y |
| Y165913 | 0 | | | | - | | | | | | | | | | | | Y | Y |
| Y166365 | 1 | Y166365-A | Familiar Perp | | 1 | 4 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | | N | N |
| Y167929 | 2 | Y167929-A | Unfamiliar | | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | N | N |
| Y167929 | 2 | Y167929-B | Both | | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | N | N |
| Y179819 | 1 | Y179819-A | Unfamiliar | | 14 | 6 | 1 | 14 | 8 | 2 | 4 | 0 | 0 | 14 | N | N | N | N |
| Y182673 | 2 | Y182673-A | Unfamiliar | | 3 | 6 | 1 | 3 | 1 | 0 | 2 | 0 | 0 | 3 | N | N | N | N |
| Y182673 | 2 | Y182673-A | Familiar Perp | | 1 | | | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y182673 | 2 | Y182673-B | Familiar Perp | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y182859 | 2 | Y182859-A | Unfamiliar | | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | Y | Y |
| Y182859 | 2 | Y182859-B | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | Y | Y |
| Y182859 | 2 | Y182859-B | Previous ID | | 1 | | | | | | | | | | N | | Y | Y |
| Y183844 | 1 | Y183844-A | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Y183844 | 1 | Y183844-A | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Y183844 | 1 | | | | | | | | | | | | | | | Y | Y | N |
| Y191409 | 0 | | | | - | | | | | | | | | | | | N | N |
| Y219275 | 0 | | | | - | | | | | | | | | | | | N | N |
| Y220921 | 0 | | | | - | | | | | | | | | | | | N | N |
| Y233745 | 0 | | | | - | | | | | | | | | | | | N | N |
| Y240898 | 0 | | | | - | | | | | | | | | | | | N | N |
| Y246941 | 1 | Y246941-A | Familiar Perp | | 1 | 4 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | | N | N |
| Y261996 | 5 | Y261996-A | Unfamiliar | | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | Y | N |
| Y261996 | 5 | Y261996-B | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | Y | Y | N |
| Y261996 | 5 | Y261996-C | Previous ID | | 1 | | | | | | | | | | N | | Y | N |
| Y261996 | 5 | Y261996-D | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | N |
| Y261996 | 5 | Y261996-E | Both | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | Y | Y | N |
| Y266676 | 1 | Y266676-A | Unfamiliar | | 7 | 7 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 3 | N | | N | N |
| Y266676 | 1 | Y266676-A | Familiar Perp | | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y269778 | 2 | Y269778-A | Familiar Perp | | 2 | 5 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | | N | N |
| Y269778 | 2 | Y269778-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y290539 | 1 | Y290539-A | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | N | N |
| Y293771 | 0 | | | | - | | | | | | | | | | | | N | N |
| Y307170 | 2 | Y307170-A | Familiar Perp | | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y307170 | 2 | Y307170-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Y309700 | 4 | Y309700-A | Unfamiliar | | 2 | UNK | 2 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | | N | N |
| Y309700 | 4 | Y309700-B | Unfamiliar | | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | N | N |
| Y309700 | 4 | Y309700-C | Unfamiliar | | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | N | N |
| Y309700 | 4 | Y309700-D | Previous ID | | 1 | | | | | | | | | | N | | N | N |
| Y313353 | 0 | | | | - | | | | | | | | | | | | N | N |
| Y340165 | 0 | | | | - | | | | | | | | | | | | Y | Y |
| Y342382 | 0 | | | | - | | | | | | | | | | | | N | N |
| Y359808 | 0 | | | | - | | | | | | | | | | | | N | N |
| Y360938 | 6 | Y360938-A | Unfamiliar | | 4 | 5 | 1 | 4 | 0 | 0 | 4 | 0 | 0 | 4 | N | | Y | Y |
| Y360938 | 6 | Y360938-B | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | Y | Y |
| Y360938 | 6 | Y360938-B | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | Y | Y |
| Y360938 | 6 | Y360938-B | Both | | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | Y | Y |
| Y360938 | 6 | Y360938-B | Unfamiliar | | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | | Y | Y |

Case: 1:20-cv-04156 Document #: 339-18 Filed: 06/10/24 Page 424 of 511 PageID #:50391

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals (suspects plus witnesses) in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Y360938 | 6 | Y360938-C | 1 | 2 | Yes | 7 | 5 | 2.5 | 2 | LIVE | YES | 8/8/94 | 1300 | 123126 | NO | N | N | - | - |
| Y360938 | 6 | Y360938-D | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | NO | 8/9/94 | 2330 | 123177 | YES | N | N | - | - |
| Y360938 | 6 | Y360938-B | 2 | 1 | No | 5 | 4 | 4 | 1 | LIVE | NO | 8/9/94 | 2330 | 123177 | YES | N | N | - | - |
| Y360938 | 6 | Y360938-E | 3 | 2 | Yes | 7 | 5 | 2.5 | 6 | PHOTO | NO | 10/7/94 | 400 | 123177 | NO | N | N | - | - |
| Y360938 | 6 | Y360938-F | 1 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 10/7/94 | 400 | 123180 | NO | N | N | - | - |
| Y362244 | 10 | Y362244-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 4/4/90 | 16:30 | 123372 | NO | N | N | - | - |
| Y362244 | 10 | Y362244-B | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 4/4/90 | 16:30 | 123377 | NO | N | N | - | - |
| Y362244 | 10 | Y362244-C | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 1/12/94 | | 123377, 123379 | NO | | N | | N |
| Y362244 | 10 | Y362244-D | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 8/11/94 | 20:00 | 123376 | NO | N | N | | |
| Y362244 | 10 | Y362244-E | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/11/94 | 20:00 | 123373 | YES | N | Y | | |
| Y362244 | 10 | Y362244-F | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/7/94 | 18:00 | 123334 | NO | N | Y | | |
| Y362244 | 10 | Y362244-G | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/7/94 | 0:00 | 60222/60254 | NO | N | N | | |
| Y362244 | 10 | Y362244-H | UNK | 1 | No | 5 | 4 | 4 | UNK | PHOTO | YES | 9/18/94 | | 123340 | YES | N | UNK | | UNK |
| Y362244 | 10 | Y362244-I | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 1/15/95 | 14:00 | 123308 | NO | N | N | | |
| Y362244 | 10 | Y362244-J | 1 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 1/22/95 | | 123317 | NO | N | N | | |
| Y363376 | 4 | Y363376-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 8/16/94 | 7:30 | 123701 | NO | N | Y | 60310 | N |
| Y363376 | 4 | Y363376-B | 2 | UNK | UNK | UNK | UNK | UNK | 1 | LIVE | YES | 1/10/95 | 23:50 | 123698 | YES | N | N | | |
| Y363376 | 4 | Y363376-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/10/95 | 23:50 | 123698 | YES | N | N | 60310 | |
| Y363376 | 4 | Y363376-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/2/95 | 18:30 | 123696 | NO | N | N | | |
| Y363376 | 4 | Y363376-D | 2 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/31/95 | 18:00 | 123687 | NO | N | N | | |
| Y368432 | 0 | | | | | | | | | | | | | | | | | | |
| Y370437 | 5 | Y370437-A | 2 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 8/13/94 | | 123927 | NO | N | N | | |
| Y370437 | 5 | Y370437-B | 2 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 8/22/94 | | 123915 | NO | N | N | | |
| Y370437 | 5 | Y370437-C | 3 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 10/2/94 | | 123904 | NO | N | N | 123915 | |
| Y370437 | 5 | Y370437-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 10/2/94 | | 123904 | NO | N | N | | |
| Y379362 | 1 | Y379362-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/19/94 | 0:15 | 124110 | NO | N | N | | |
| Y381571 | 5 | Y381571-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 6/15/95 | 3:30 | 124248 | NO | N | N | | |
| Y381571 | 5 | Y381571-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | YES | 8/20/95 | 22:00 | 124243 | YES | N | N | | |
| Y381571 | 5 | Y381571-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | YES | 8/30/95 | 22:00 | 124240 | YES | N | N | | |
| Y381571 | 5 | Y381571-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/30/95 | 22:00 | 124240 | YES | N | N | | |
| Y381571 | 5 | Y381571-E | 3 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 9/21/95 | 22:00 | 124217 | NO | N | Y | 124240,124243 | UNK |
| Y381724 | 0 | | | | | | | | | | | | | | | | | | |
| Y383567 | 4 | Y383567-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 10/19/94 | | 124428 | NO | N | N | | |
| Y383567 | 4 | Y383567-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 10/4/94 | 23:45 | 124446 | NO | N | N | | |
| Y383567 | 4 | Y383567-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 10/4/94 | 23:45 | 124446 | NO | N | N | | |
| Y383625 | 0 | | | | | | | | | | | | | | | | | | |
| Y385792 | 1 | Y385792-A | 1 | 1 | No | 7 | 6 | 6 | 1 | LIVE | YES | 8/28/94 | 23:55 | 60872 | NO | N | N | | |
| Y398673 | 0 | | | | | | | | | | | | | | | | | | |
| Y398709 | 0 | | | | | | | | | | | | | | | | | | |
| Y400403 | 0 | | | | | | | | | | | | | | | | | | |
| Y402319 | 3 | Y402319-A | 2 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/2/94 | 23:30 | 125003 | NO | N | N | | |
| Y402319 | 3 | Y402319-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/2/94 | 23:30 | 125003 | NO | N | N | | |
| Y402319 | 3 | Y402319-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | YES | 9/3/94 | 8:00 | 125000 | NO | N | Y | 125003 | |
| Y405585 | 3 | Y405585-A | 1 | 1 | No | 12 | 11 | 11 | 1 | LIVE | NO | 9/13/94 | 21:00 | 125159 | NO | N | N | | |
| Y405585 | 3 | Y405585-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/14/94 | | 125165 | NO | N | N | | |
| Y405585 | 3 | Y405585-B | 2 | 2 | Yes | 7 | 5 | 2.5 | 2 | LIVE | YES | 9/14/94 | | 125165 | NO | N | Y | 125159 | |
| Y422678 | 0 | | | | | | | | | | | | | | | | | | |
| Y424508 | 0 | | | | | | | | | | | | | | | | | | |
| Y425473 | 1 | Y425473-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/13/94 | | 125453 | NO | N | N | | |
| Y429271 | 0 | | | | | | | | | | | | | | | | | | |
| Y439687 | 1 | Y439687-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 3/2/95 | 20:00 | 125614 | NO | N | N | | |
| Y439522 | 1 | Y439522-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/21/94 | 11:00 | 61461 | NO | N | N | | |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup in File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Y360938 | 6 | Y360938-C | Unfamiliar | | 1 | 7 | 2 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | Y |
| Y360938 | 6 | Y360938-D | Unfamiliar | | 3 | UNK | 1 | 3 | 0 | 0 | 3 | 0 | 0 | 3 | N | - | Y | Y |
| Y360938 | 6 | Y360938-E | Unfamiliar | | 3 | 18 | 1 | 3 | 0 | 0 | 3 | 0 | 0 | 3 | N | - | Y | Y |
| Y360938 | 6 | Y360938-F | Unfamiliar | | 3 | 7 | 2 | 6 | 2 | 1 | 0 | 0 | 0 | 6 | N | - | Y | Y |
| Y360938 | 6 | Y360938-F | Unfamiliar | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| Y362244 | 10 | Y362244-A | Unfamiliar | | 4 | 5 | 1 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | N | N | N | N |
| Y362244 | 10 | Y362244-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y362244 | 10 | Y362244-C | Unfamiliar | | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | N | N | N |
| Y362244 | 10 | Y362244-D | Previous ID | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | N | N | N |
| Y362244 | 10 | Y362244-E | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| Y362244 | 10 | Y362244-F | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| Y362244 | 10 | Y362244-G | Unfamiliar | | 5 | UNK | 1 | 5 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| Y362244 | 10 | Y362244-H | Unfamiliar | | UNK | UNK | 1 | UNK | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| Y362244 | 10 | Y362244-I | Previous ID | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | N | N | N |
| Y362244 | 10 | Y362244-J | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y363376 | 4 | Y363376-A | Previous ID | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | N | N | N |
| Y363376 | 4 | Y363376-B | Unfamiliar | | 1 | UNK | 1 | 1 | UNK | 0 | 0 | 0 | 0 | 0 | N | N | N | N |
| Y363376 | 4 | Y363376-B | Unfamiliar | | 1 | UNK | UNK | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y363376 | 4 | Y363376-C | Unfamiliar | | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | N | N |
| Y363376 | 4 | Y363376-D | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y368432 | 0 | | | | | | | | | | | | | | | | N | N |
| Y370437 | 3 | Y370437-A | Unfamiliar | | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | N | N | N |
| Y370437 | 3 | Y370437-B | Unfamiliar | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | N | N | N |
| Y370437 | 3 | Y370437-C | Previous ID | | 2 | 7 | 2 | 4 | 2 | 0 | 0 | 0 | 0 | 2 | N | N | N | N |
| Y370437 | 3 | Y370437-C | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y379362 | 1 | Y379362-A | Unfamiliar | | 2 | 5 | 1 | 2 | 0 | 0 | 0 | 0 | 2 | 2 | N | N | N | N |
| Y381571 | 5 | Y381571-A | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y381571 | 5 | Y381571-B | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y381571 | 5 | Y381571-C | Familiar Perp | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y381571 | 5 | Y381571-D | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y381571 | 5 | Y381571-E | Previous ID | | 3 | 6 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | N | N | N |
| Y381724 | 0 | | | | | | | | | | | | | | | | | |
| Y383567 | 2 | Y383567-A | Familiar Perp | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y383567 | 2 | Y383567-B | Familiar Perp | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y383567 | 2 | Y383567-B | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y383625 | 0 | | | | | | | | | | | | | | | | | |
| Y385792 | 1 | Y385792-A | Unfamiliar | | 1 | 7 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | N | N | N |
| Y398673 | 0 | | | | | | | | | | | | | | | | | |
| Y398709 | 0 | | | | | | | | | | | | | | | | | |
| Y400403 | 0 | | | | | | | | | | | | | | | | | |
| Y402319 | 2 | Y402319-A | Unfamiliar | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | N | N | N |
| Y402319 | 2 | Y402319-A | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y402319 | 2 | Y402319-B | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y405585 | 2 | Y405585-A | Unfamiliar | | 12 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y405585 | 2 | Y405585-B | Unfamiliar | | 2 | UNK | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | N | Y | Y |
| Y405585 | 2 | Y405585-B | Unfamiliar | | 1 | 7 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | N | Y | Y |
| Y422678 | 0 | | | | | | | | | | | | | | | | | |
| Y424508 | 0 | | | | | | | | | | | | | | | | | |
| Y425473 | 1 | Y425473-A | Familiar Perp | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y428174 | 0 | | | | | | | | | | | | | | | | | |
| Y429687 | 1 | Y429687-A | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |
| Y439522 | 1 | Y439522-A | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | N | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Y440710 | 7 | | | | | | | | | | | 9/20/94 | 22:30 | 125816 | | | Y | | |
| Y440710 | 7 | Y440710-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | YES | 9/20/94 | 22:30 | 125816 | NO | N | N | | |
| Y440710 | 7 | Y440710-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | YES | 10/3/94 | 22:00 | 125799 | NO | N | Y | 125816 | UNK |
| Y440710 | 7 | Y440710-C | 1 | 1 | No | 6 | 4 | 4 | 1 | PHOTO | YES | 10/12/94 | 22:00 | 125794 | NO | N | N | | |
| Y440710 | 7 | Y440710-D | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | YES | 9/15/95 | 22:00 | 125781 | NO | N | N | | |
| Y440710 | 7 | Y440710-E | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | YES | 10/16/95 | 22:00 | 125779 | NO | N | Y | 125799 | UNK |
| Y440710 | 7 | Y440710-F | 2 | 1 | No | 7 | 6 | 6 | 2 | PHOTO | YES | 11/6/94 | 23:45 | 125789 | NO | N | Y | 125794 | UNK |
| Y440710 | 7 | Y440710-G | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | YES | 10/15/10 | 1:15 | 125770 | NO | N | N | | |
| Y444604 | 1 | Y444604-A | 1 | 1 | UNK | UNK | UNK | UNK | UNK | PHOTO | YES | 11/28/95 | 15:20 | 61621 | YES | Y | N | | |
| Y447696 | 1 | Y447696-A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 9/24/94 | 21:15 | 125963 | NO | N | N | | |
| Y449782 | 2 | Y449782-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 5/26/95 | 23:00 | 61698 | NO | Y | N | | |
| Y449782 | 2 | Y449782-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 6/22/85 | 23:50 | 61704 | NO | N | N | | |
| Y450228 | 0 | | | | | | | | | | | | | | | | | | |
| Y455131 | 0 | | | | | | | | | | | 9/29/94 | | 61756 | | Y | N | | |
| Y462577 | 2 | Y462577-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 10/3/94 | | 126266 | NO | N | N | | |
| Y462577 | 2 | Y462577-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 12/12/94 | 15:25 | 126261 | NO | Y | Y | 126266 | N |
| Y469655 | 0 | | | | | | | | | | | | | | | | | | |
| Y479557 | 3 | Y479557-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 10/15/94 | | 126401 | NO | N | N | | |
| Y479557 | 3 | Y479557-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 10/15/94 | | 126401 | NO | N | N | | |
| Y479557 | 3 | Y479557 - C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 10/16/94 | 22:00 | 126404 | NO | N | Y | 126401 | UNK |
| Y479557 | 3 | Y479557 - D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 10/18/94 | | 126396 | NO | Y | Y | 126401 | UNK |
| Y481076 | 4 | Y481076-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 10/24/94 | 22:30 | 126549 | NO | N | N | | |
| Y481076 | 4 | Y481076-B | 1 | 1 | No | 6 | 6 | 6 | 1 | PHOTO | YES | 10/24/94 | 22:30 | 126683 | NO | N | N | | |
| Y481076 | 4 | Y481076-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/4/95 | | 126533 | NO | Y | Y | 126550 | N |
| Y481076 | 4 | Y481076-G | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | YES | 4/20/96 | 22:00 | 126521 | NO | N | N | | |
| Y481076 | 4 | Y481076-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 4/20/96 | 20:00 | 126512 | NO | N | N | | |
| Y498057 | 0 | | | | | | | | | | | | | | | | | | |
| Y498885 | 0 | | | | | | | | | | | | | | | | | | |
| Y508761 | 5 | Y508761-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/4/95 | 22:00 | 126842 | YES | Y | N | | |
| Y508761 | 5 | Y508761-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 2/6/95 | 7:00 | 126835 | NO | N | N | | |
| Y508761 | 5 | Y508761-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/6/95 | 23:00 | 126840 | NO | Y | Y | | |
| Y508761 | 5 | Y508761-D | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 2/6/95 | 18:00 | 126838 | NO | N | N | | |
| Y508761 | 5 | Y508761-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/6/95 | 18:10 | 126838 | NO | N | Y | 126835 | N |
| Y508761 | 5 | Y508761-D | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 2/6/95 | 18:00 | 126838 | NO | N | N | | |
| Y514993 | 1 | Y514993-A | 1 | 1 | No | 7 | 6 | 6 | 1 | LIVE | YES | 12/3/94 | 20:00 | 127013 | NO | N | N | | |
| Y518671 | 2 | Y518671-A | 1 | 1 | No | 8 | 7 | 7 | 1 | LIVE | YES | 12/13/94 | 22:00 | 127078 | NO | N | N | | |
| Y518671 | 2 | Y518671-B | 1 | 1 | No | 8 | 7 | 7 | 1 | LIVE | YES | 12/13/94 | 23:00 | 127083 | NO | N | Y | 127078 | N |
| Y521187 | 0 | | | | | | | | | | | | | | | | | | |
| Y525986 | 0 | | | | | | | | | | | | | | | | | | |
| Y552525 | 0 | | | | | | | | | | | | | | | | | | |
| Y565120 | 0 | | | | | | | | | | | | | | | | | | |
| Y567762 | 0 | | | | | | | | | | | | | | | | | | |
| Y571509 | 0 | | | | | | | | | | | | | | | | | | |
| Y581487 | 0 | | | | | | | | | | | | | | | | | | |
| Y588876 | 5 | | | | | | | | | | | 12/16/94 | 12:00 | 62561 | | Y | | | |
| Y588876 | 5 | Y588876-A | 1 | 2 | Yes | 5 | 3 | 1.5 | 2 | LIVE | YES | 12/17/94 | 22:00 | 62561 | NO | N | N | | |
| Y588876 | 5 | Y588876-B | 1 | 1 | No | 8 | 7 | 7 | 1 | PHOTO | YES | 1/2/95 | | 62517 | NO | N | N | | |
| Y588876 | 5 | Y588876-C | 1 | 1 | No | 7 | 6 | 6 | 1 | LIVE | YES | 1/2/95 | 22:00 | 62525 | NO | N | Y | 62517 | N |
| Y588876 | 5 | Y588876-D | 1 | 1 | No | 7 | 6 | 6 | 1 | LIVE | YES | 1/4/95 | 21:00 | 62533 | NO | N | N | | |
| Y599412 | 0 | | | | | | | | | | | | | | | | | | |
| Y603202 | 3 | Y603202-A | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 12/31/94 | 16:00 | 14623 | NO | N | N | | |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individual Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup in File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Y440710 | 7 | | Familiar Perp | | | | | | | | | | | | | | Y | Y |
| Y440710 | 7 | Y440710-A | Unfamiliar | | 1 | 6 | 1 | | 1 | | 0 | | 0 | 0 | 0 | | 1 | Y | N | Y | Y |
| Y440710 | 7 | Y440710-B | Previous ID | | 1 | 6 | 1 | | 1 | | 0 | | 0 | 0 | 1 | | N | N | Y | Y |
| Y440710 | 7 | Y440710-C | Unfamiliar | | 1 | 5 | 1 | | 1 | | 0 | | 0 | 1 | 0 | | N | N | N | N |
| Y440710 | 7 | Y440710-D | Unfamiliar | | 1 | 5 | 1 | | 1 | | 0 | | 1 | 0 | 0 | | N | N | N | N |
| Y440710 | 7 | Y440710-E | Previous ID | | 1 | 5 | 1 | | 1 | | 0 | | 0 | 0 | 1 | | N | N | N | N |
| Y440710 | 7 | Y440710-F | Familiar Perp | | 2 | 7 | 1 | | 2 | | 1 | | 0 | 0 | 0 | | 2 | N | N | Y | Y |
| Y440710 | 7 | Y440710-G | Unfamiliar | | 1 | 6 | 1 | | 1 | | 1 | | 0 | 0 | 0 | | N | N | N | N |
| Y444604 | 1 | Y444604-A | Familiar Perp | | 1 | UNK | UNK | | 1 | | 1 | | 0 | | 0 | | N | N | N | N |
| Y447096 | 1 | Y447096-A | Familiar Perp | | 2 | 4 | 1 | | 2 | | 2 | | 0 | 0 | 0 | | N | N | N | N |
| Y449782 | 2 | Y449782-A | Familiar Perp | | 1 | 6 | 1 | | 1 | | 1 | | 0 | 0 | 0 | | 1 | N | N | N |
| Y449782 | 2 | Y449782-B | Familiar Perp | | 1 | 6 | 1 | | 1 | | 1 | | 0 | 0 | 0 | | 1 | N | N | N |
| Y450228 | 0 | | | | | | | | | | | | | | | | | |
| Y455131 | 0 | | Familiar Perp | | | | | | | | | | | | Y | | Y | N |
| Y462577 | 2 | Y462577-A | Familiar Perp | | 2 | 5 | 1 | | 2 | | 2 | | 0 | 0 | 0 | | 2 | N | N | N |
| Y462577 | 2 | Y462577-B | Both | | 2 | 4 | 1 | | 2 | | 2 | | 0 | 0 | 0 | | 2 | N | N | N |
| Y469655 | 0 | | | | | | | | | | | | | | | | | |
| Y479557 | 3 | Y479557-A | Familiar Perp | | 1 | UNK | 1 | | 1 | | 1 | | 0 | 0 | 0 | | N | N | N | N |
| Y479557 | 3 | Y479557-C | Previous ID | | 1 | 5 | 1 | | 1 | | 0 | | 0 | 0 | 1 | | N | N | N | N |
| Y479557 | 3 | Y479557-D | Both | | 1 | 5 | 1 | | 1 | | 1 | | 0 | 0 | 0 | | N | N | N | N |
| Y481076 | 4 | | Familiar Perp | | | | | | | | | | | | | | Y | N |
| Y481076 | 4 | Y481076-A | Unfamiliar | | 1 | 6 | 1 | | 1 | | 1 | | 0 | 0 | 0 | | N | N | N | N |
| Y481076 | 4 | Y481076-B | Previous ID | | 1 | 5 | 1 | | 1 | | 0 | | 0 | 1 | 0 | | N | N | N | N |
| Y481076 | 4 | Y481076-C | Unfamiliar | | 1 | 5 | 1 | | 1 | | 0 | | 0 | 1 | 0 | | N | N | N | N |
| Y481076 | 4 | Y481076-D | Unfamiliar | | 1 | 5 | 1 | | 1 | | 1 | | 0 | 0 | 0 | | Y | N | N | N |
| Y498057 | 0 | | | | | | | | | | | | | | | | | |
| Y498885 | 0 | | | | | | | | | | | | | | | | | |
| Y508761 | 4 | Y508761-A | Unfamiliar | | 1 | 5 | 1 | | 1 | | 1 | | 0 | 0 | 0 | | N | N | N | N |
| Y508761 | 4 | Y508761-B | Familiar Perp | | 1 | 5 | 1 | | 1 | | 1 | | 0 | 0 | 0 | | N | N | N | N |
| Y508761 | 4 | Y508761-C | Familiar Perp | | 1 | 4 | | | | | | | | | | | N | N | N | N |
| Y508761 | 4 | Y508761-D | Both | | 1 | 4 | 1 | | 1 | | 1 | | 0 | 0 | 0 | | N | N | N | N |
| Y514993 | 1 | Y514993-A | Unfamiliar | | 1 | 5 | 1 | | 1 | | 1 | | 0 | 0 | 0 | | N | N | N | N |
| Y518671 | 2 | Y518671-A | Familiar Perp | | 1 | 5 | 1 | | 1 | | 1 | | 0 | 0 | 0 | | N | N | N | N |
| Y518671 | 2 | Y518671-B | Both | | 2 | 5 | 1 | | 2 | | 2 | | 0 | 0 | 0 | | N | N | N | N |
| Y521187 | 0 | | | | | | | | | | | | | | | | | |
| Y525986 | 0 | | | | | | | | | | | | | | | | | |
| Y552525 | 0 | | | | | | | | | | | | | | | | | |
| Y565120 | 0 | | | | | | | | | | | | | | | | | |
| Y567252 | 0 | | | | | | | | | | | | | | | | | |
| Y571509 | 0 | | | | | | | | | | | | | | | | | |
| Y581487 | 0 | | | | | | | | | | | | | | | | | |
| Y588876 | 4 | | Familiar Perp | | | | | | | | | | | | Y | | Y | N |
| Y588876 | 4 | Y588876-A | Unfamiliar | | 1 | 5 | 2 | | 2 | | 0 | | 2 | 0 | 0 | | N | N | N | N |
| Y588876 | 4 | Y588876-B | Unfamiliar | | 1 | 8 | 1 | | 1 | | 1 | | 0 | 0 | 0 | | N | N | Y | N |
| Y588876 | 4 | Y588876-C | Previous ID | | 1 | 5 | 1 | | 1 | | 1 | | 0 | 0 | 0 | | N | N | N | N |
| Y588876 | 4 | Y588876-D | Unfamiliar | | 1 | 5 | 1 | | 1 | | 1 | | 0 | 0 | 0 | | N | N | N | N |
| Y599412 | 0 | | | | | | | | | | | | | | | | | |
| Y603202 | 1 | Y603202-A | Unfamiliar | | 3 | 5 | 1 | | 3 | | 1 | | 0 | 2 | 0 | | N | N | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in lineup/photo array procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Y607826 | 1 | Y607826-A | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 12/28/94 | | 62671 | NO | N | N | - | - |
| Y609104 | 0 | | | | | | | | | | | | | | | | | | |
| Y611062 | 2 | Y611062-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 3/28/95 | 19:30 | 128282 | NO | N | Y | 128286 | N |
| Y611062 | 2 | Y611062-A | 1 | 1 | No | | | | | LIVE | YES | 3/28/95 | 23:30 | 128282 | NO | N | N | - | - |
| Y611062 | 2 | Y611062-B | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 3/28/95 | 23:30 | 128284 | NO | N | N | - | - |
| Y613887 | 5 | Y613887-A | 1 | 1 | Yes | UNK | UNK | UNK | 2 | PHOTO | NO | 2/8/95 | 8:05 | 128370; 62833 | YES | Y | N | - | - |
| Y613887 | 5 | Y613887-C | 1 | 1 | Yes | UNK | UNK | UNK | 2 | PHOTO | NO | 2/11/95 | 16:30 | 62837 | YES | Y | N | - | - |
| Y613887 | 5 | Y613887-D | 1 | 1 | Yes | UNK | UNK | UNK | 2 | PHOTO | NO | 4/17/95 | | 62851 | YES | Y | N | - | - |
| Y613887 | 5 | Y613887-E | 2 | 1 | Yes | 4 | 3 | 3 | 2.5 | LIVE | YES | 5/16/95 | 4:00 | 62861 | NO | Y | Y | 62837 | Y |
| Y613887 | 5 | Y613887-E | 2 | 1 | Yes | | | | | LIVE | YES | 5/16/95 | 4:00 | 62861 | NO | Y | Y | 62835 | N |
| Z000273 | 0 | | | | | | | | | | | | | | | | | | |
| Z013243 | 0 | | | | | | | | | | | | | | | | | | |
| Z014126 | 0 | | | | | | | | | | | | | | | | | | |
| Z020787 | 0 | | | | | | | | | | | | | | | | | | |
| Z022047 | 3 | Z022047-A | 3 | 1 | No | UNK | UNK | UNK | 3 | PHOTO | NO | 1/22/95 | 20:30 | 63052 | YES | N | N | - | - |
| Z022047 | 3 | Z022047-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 1/26/95 | | 63066 | YES | N | N | - | - |
| Z022047 | 3 | Z022047-C | 1 | 1 | Yes | 5 | 4 | 4 | 1 | LIVE | YES | 1/26/95 | 2:00 | 63056 | NO | N | N | - | - |
| Z037779 | 2 | Z037779-A | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 1/31/95 | | 91467 | NO | N | Y | | N |
| Z037779 | 2 | Z037779-A | 3 | 1 | No | | | | | LIVE | YES | 1/31/95 | | 91467 | NO | N | N | - | - |
| Z037779 | 2 | Z037779-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 1/31/95 | | 91465 | NO | N | N | - | - |
| Z040646 | 2 | Z040646-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 2/6/95 | 23:00 | 91530 | NO | N | Y | 91535 | N |
| Z040646 | 2 | Z040646-B | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 2/6/95 | 23:00 | 91530 | NO | N | N | - | - |
| Z042975 | 0 | | | | | | | | | | | | | | | | | | |
| Z045057 | 2 | Z045057-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/4/95 | 23:00 | 91774 | NO | N | N | - | - |
| Z045057 | 2 | Z045057-B | 2 | 1 | Yes | 8 | 7 | 7 | 1.666666667 | LIVE | YES | 2/15/95 | 9:30 | 91726 | NO | N | N | - | - |
| Z045057 | 2 | | | | | | | | | | | | | | | | | | |
| Z054234 | 0 | | | | | | | | | | | | | | | | | | |
| Z054355 | 0 | | | | | | | | | | | | | | | | | | |
| Z069168 | 2 | Z069168-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 7/9/95 | 3:00 | 92022 | YES | N | Y | 92022 | N |
| Z069168 | 2 | Z069168-B | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 7/9/95 | 3:00 | 92026 | NO | N | N | - | - |
| Z069168 | 2 | | | | | | | | | | | | | | | | | | |
| Z084117 | 0 | | | | | | | | | | | | | | | | | | |
| Z085582 | 0 | | | | | | | | | | | | | | | | | | |
| Z093141 | 0 | | | | | | | | | | | | | | | | | | |
| Z101225 | 1 | | | | | | | | | | | | 3/10/95 | | 63367 | | Y | N | - | - |
| Z114985 | 1 | | | | | | | | | | LIVE | | 3/18/95 | 1:00 | 63944 | | Y | N | - | - |
| Z130680 | 1 | Z130680-A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | | 3/29/95 | 19:30 | 92896 | NO | N | N | - | - |
| Z133925 | 0 | | | | | | | | | | | | | | | | | | |
| Z141305 | 3 | Z141305-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 4/5/95 | | 64068 | NO | N | N | - | - |
| Z141305 | 3 | Z141305-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 4/11/95 | 4:00 | 64072 | YES | N | N | - | - |
| Z141305 | 3 | Z141305-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 4/11/95 | 4:00 | 64072 | YES | N | N | - | - |
| Z142552 | 3 | Z142552-A | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | YES | 6/14/95 | 12:00 | 64146 | YES | N | Y | 64146 | N |
| Z142552 | 3 | Z142552-B | 1 | 1 | No | 13 | 12 | 12 | 1 | PHOTO | NO | 6/20/95 | | 64146 | NO | N | N | - | - |
| Z142552 | 3 | Z142552-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 6/20/95 | | 64146 | YES | N | N | - | - |
| Z142552 | 3 | | | | | | | | | | | | 6/20/95 | | 64152 | | N | Y | | N |
| Z152799 | 0 | | | | | | | | | | | | | | | | | | |
| Z160178 | 2 | | | | | | | | | | | | 4/24/95 | 2100 | 93466 | | | | | |
| Z160178 | 2 | | | | | | | | | | | | 4/11/95 | | 93589 | | | | | |
| Z160497 | 3 | Z160497-A | 8 | 1 | No | 4 | 3 | 3 | 8 | PHOTO | NO | 4/14/95 | | 64325 | YES | N | N | - | - |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup in File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Y607826 | 1 | Y607826-A | Unfamiliar | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| Y609104 | 0 | | | | | | | | | | | | | | | | | |
| Y611062 | 2 | Y611062-A | Previous ID | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | | N | | Y | Y |
| Y611062 | 2 | Y611062-B | Familiar Perp | | | 6 | | 1 | 1 | 0 | 0 | 0 | 0 | | N | | Y | Y |
| Y611062 | 2 | Y611062-B | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | | N | | Y | Y |
| Y613887 | 5 | Y613887-A | Familiar Perp | | 1 | UNK | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| Y613887 | 5 | Y613887-B | Familiar Perp | | 1 | UNK | 3 | 3 | 3 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| Y613887 | 5 | Y613887-C | Unfamiliar | | 1 | UNK | 2 | 2 | 2 | 0 | 0 | 0 | 0 | | N | | N | N |
| Y613887 | 5 | Y613887-D | Familiar Perp | | 1 | UNK | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| Y613887 | 5 | Y613887-E | Previous ID | | 1 | 7 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| Y613887 | 5 | Y613887-E | Both | | 1 | 7 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | | N | N |
| Z000273 | 0 | | | | | | | | | | | | | | | | | |
| Z013243 | 0 | | | | | | | | | | | | | | | | | |
| Z014126 | 0 | | | | | | | | | | | | | | | | | |
| Z020787 | 0 | | | | | | | | | | | | | | | | | |
| Z022047 | 3 | Z022047-A | Unfamiliar | | 3 | UNK | 1 | 3 | 1 | 0 | 2 | 0 | 0 | 3 | N | | N | N |
| Z022047 | 3 | Z022047-B | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | | N | | N | N |
| Z022047 | 3 | Z022047-C | Previous ID | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | | N | | N | N |
| Z037779 | 2 | Z037779 - A | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | | Y | Y | N | N |
| Z037779 | 2 | Z037779 - B | Familiar Perp | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | | Y | Y | N | N |
| Z040646 | 2 | Z040646 - A | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | | N | | Y | Y |
| Z040646 | 2 | Z040646 - B | Both | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | | N | | Y | Y |
| Z040646 | 2 | Z040646 - B | Familiar Perp | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | | N | | Y | Y |
| Z042975 | 0 | | | | | | | | | | | | | | | | | |
| Z045057 | 2 | Z045057-A | Unfamiliar | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | | N | | N | N |
| Z045057 | 2 | Z045057-B | Familiar Perp | | 2 | 8 | 3 | 6 | 3 | 0 | 0 | 0 | 0 | | N | | N | N |
| Z045057 | 2 | | Familiar Perp | | | | | | | | | | | | Y | Y | N | N |
| Z045234 | 0 | | | | | | | | | | | | | | | | | |
| Z054355 | 0 | | | | | | | | | | | | | | | | | |
| Z069168 | 2 | Z069168-A | Unfamiliar | | 2 | UNK | 1 | 2 | 2 | 0 | 0 | 0 | 0 | | N | | N | N |
| Z069168 | 2 | Z069168-B | Previous ID | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| Z069168 | 2 | Z069168-B | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | | N | | N | N |
| Z084117 | 0 | | | | | | | | | | | | | | | | | |
| Z085582 | 0 | | | | | | | | | | | | | | | | | |
| Z093141 | 0 | | Familiar Perp | | | | | | | | | | | | | | | |
| Z101225 | 0 | | Familiar Perp | | | | | | | | | | | | | | | |
| Z114965 | 0 | | Familiar Perp | | | | | | | | | | | | | | | |
| Z130680 | 1 | Z130680-A | Unfamiliar | | 1 | 7 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| Z133925 | 0 | | | | | | | | | | | | | | | | | |
| Z141305 | 3 | Z141305-A | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | | N | | N | N |
| Z141305 | 3 | Z141305-B | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | | N | | N | N |
| Z141305 | 3 | Z141305-C | Familiar Perp | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | | N | | N | N |
| Z142552 | 3 | Z142552-A | Previous ID | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | | N | | N | N |
| Z142552 | 3 | Z142552-B | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | | N | | N | N |
| Z142552 | 3 | Z142552-C | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | | N | | N | N |
| Z142552 | 3 | | Familiar Perp | | | | | | | | | | | | | | | |
| Z142552 | 3 | | Familiar Perp | | | | | | | | | | | | Y | Y | N | N |
| Z152799 | 0 | | | | | | | | | | | | | | | | | |
| Z160178 | 0 | | | | | | | | | | | | | | | | | |
| Z160178 | 0 | | | | | | | | | | | | | | | | | |
| Z160497 | 3 | Z160497-A | Unfamiliar | | 3 | 4 | 3 | 5 | 0 | 0 | 0 | 0 | 0 | | N | | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Z160497 | 3 | Z160497-A | 1 | 1 | No | 1 | 1 | 1 | 1 | PHOTO | NO | 4/14/95 | | 64325 | YES | | Y | N | |
| Z160497 | 3 | Z160497-B | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 4/15/95 | 20:00 | 64297 | YES | | N | | |
| Z160497 | 3 | Z160497-C | 6 | 1 | No | 4 | 3 | 3 | 6 | #DIV/0! | YES | 4/15/95 | 20:00 | 64337 | NO | | N | Y | 64297 |
| Z160497 | 3 | Z160497-C | 2 | 1 | No | 5 | 5 | 5 | #DIV/0! | LIVE | YES | 4/15/95 | 20:00 | 64337 | NO | | N | Y | 64325 |
| Z182739 | 0 | | | | | | | | | | | | | | | | | | |
| Z196528 | 2 | Z196528-A | 1 | UNK | UNK | 5 | UNK | UNK | UNK | PHOTO | NO | 5/6/95 | | 94054 | YES | | N | N | |
| Z196528 | 2 | Z196528-B | 3 | UNK | UNK | 5 | UNK | UNK | UNK | PHOTO | NO | 5/7/95 | 2:30 | 94038 | YES | | N | N | |
| Z196528 | 2 | | | | | | | | | | | 5/13/95 | | 37838 | | | Y | N | |
| Z211082 | 3 | Z211082-A | 1 | 1 | No | 3 | 3 | 3 | 2 | LIVE | YES | 5/16/95 | 21:30 | 94209 | NO | | N | Y | 94200 |
| Z211082 | 3 | Z211082-A | 1 | | No | | | | | LIVE | YES | 5/16/95 | 21:30 | 94209 | NO | | N | N | |
| Z211082 | 3 | Z211082-B | 1 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 5/16/95 | 21:30 | 94207 | NO | | N | N | |
| Z211082 | 3 | Z211082-C | 1 | 1 | No | 5 | UNK | UNK | UNK | LIVE | YES | 5/30/95 | | 94200 | YES | | N | N | |
| Z211983 | 1 | | | | | | | | | | | | | | | | | | |
| Z214724 | 0 | | | | | | | | | | | | | | | | | | |
| Z218253 | 0 | | | | | | | | | | | | | | | | | | |
| Z219872 | 1 | | | | | | | | | | | | | 11/9/00 | | 94665 | | | | |
| Z220314 | 2 | Z220314-A | 1 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 8/9/95 | 21:00 | 94795 | NO | | N | N | |
| Z220314 | 2 | | | | | | | | | | | 7/1/95 | 18:00 | 38603 | | | N | N | |
| Z221731 | 0 | | | | | | | | | | | | | | | | N | N | |
| Z226760 | 2 | Z226760-A | 2 | UNK | UNK | 6 | UNK | UNK | UNK | PHOTO | NO | 5/30/95 | 23:00 | 95083 | YES | | N | N | |
| Z226760 | 2 | Z226760-B | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 5/30/95 | 23:00 | 95091 | NO | | N | Y | 95083 |
| Z226760 | 2 | | | | | | | | | | | 5/30/95 | 23:00 | 95083 | | | N | N | |
| Z232060 | 2 | | | | | | | | | | | | | | | | | | |
| Z232205 | 2 | Z232205-A | 2 | 1 | No | 8 | 7 | 7 | 2 | LIVE | YES | 5/28/95 | 4:00 | 95388 | NO | | N | Y | 95271 |
| Z232205 | 2 | Z232205-A | 1 | | No | 8 | 5 | 5 | | LIVE | YES | 5/28/95 | 4:00 | 95388 | NO | | N | N | |
| Z232205 | 2 | Z232205-B | 1 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 5/29/95 | 0:00 | 95297 | NO | | N | N | |
| Z240841 | 1 | Z240841-A | 1 | 1 | No | 7 | 6 | 6 | 1 | PHOTO | NO | 6/2/95 | | 95473 | NO | | N | N | |
| Z240841 | 1 | Z240841-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/2/95 | 3:30 | 95480 | NO | | N | N | |
| Z243035 | 0 | | | | | | | | | | | 6/6/95 | | 95514 | | | N | N | |
| Z243035 | 0 | | | | | | | | | | | 6/6/95 | | 95514 | | | | | |
| Z245491 | 0 | | | | | | | | | | | | | | | | | | |
| Z246138 | 2 | Z246138-A | 1 | 1 | No | 12 | 11 | 11 | 1 | LIVE | YES | 6/4/95 | 11:00 | 146598 and 146612 | NO | | N | N | |
| Z246138 | 2 | Z246138-B | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 6/5/95 | 5:00 | 146612 | NO | | N | Y | 146598 |
| Z246138 | 2 | Z246138-B | 1 | | No | 6 | 5 | 5 | | LIVE | YES | 6/5/95 | 5:00 | 146612 | NO | | N | N | |
| Z247898 | 0 | | | | | | | | | | | | | | | | | | |
| Z256229 | 0 | | | | | | | | | | | | | | | | | | |
| Z257355 | 2 | Z257355-A | 3 | 1 | No | 6 | 5 | 5 | 3 | LIVE | YES | 6/13/95 | | 146668 | NO | | N | N | |
| Z257355 | 2 | Z257355-B | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 6/13/95 | | 146668 | NO | | N | N | |
| Z263920 | 0 | | | | | | | | | | | | | | | | | | |
| Z272704 | 0 | | | | | | | | | | | | | | | | | | |
| Z273605 | 2 | Z273605-A | 1 | UNK | UNK | 6 | UNK | UNK | UNK | PHOTO | NO | 7/21/95 | 23:00 | 96265 | YES | | N | N | |
| Z273605 | 2 | | | | | | | | | | | 7/21/95 | 23:00 | 96265 | | | | | |
| Z273605 | 2 | | | | | | | | | | | 7/24/95 | | 96250 | | | | | |
| Z273605 | 2 | | | | | | | | | | | 7/24/95 | | 40075 | | | | | |
| Z278410 | 1 | Z278410-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 6/22/95 | | 96809 | NO | | N | N | N |
| Z281407 | 0 | | | | | | | | | | | | | | | | | | |
| Z281479 | 0 | | | | | | | | | | | | | | | | | | |
| Z295920 | 2 | Z295920-A | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 7/11/95 | | 97266 | YES | | N | N | |
| Z295920 | 2 | Z295920-B | 2 | 1 | No | 5 | 5 | 5 | 2 | LIVE | YES | 7/30/95 | | 97237 | NO | | N | Y | 97266 | UNK |
| Z302913 | 0 | | | | | | | | | | | | | | | | | | |
| Z309421 | 2 | Z309421-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 10/27/95 | 23:45 | 97321 | NO | | N | N | |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup in File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Z160497 | 3 | Z160497-A | Familiar Perp | | 3 | 4 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | | N | N |
| Z160497 | 3 | Z160497-A | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z160497 | 3 | Z160497-B | Unfamiliar | | 6 | 5 | 1 | 6 | 4 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Z160497 | 3 | Z160497-C | Both | | 2 | 5 | 1 | 2 | | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Z182739 | 0 | - | - | | | | | | | | | | | | N | | N | N |
| Z196528 | 2 | Z196528-A | Unfamiliar | | 1 | 5 | UNK | UNK | 0 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Z196528 | 2 | Z196528-B | Unfamiliar | | 3 | 5 | UNK | UNK | 3 | 0 | 0 | 0 | 0 | 3 | N | | N | N |
| Z196528 | 2 | | Familiar Perp | | | | | | | | | | | | Y | Y | N | N |
| Z211082 | 3 | Z211082-A | Previous ID | | 1 | | | | | | | | | | N | | N | N |
| Z211082 | 3 | Z211082-A | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z211082 | 3 | Z211082-B | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z211082 | 3 | Z211082-C | Unfamiliar | | 1 | UNK | UNK | UNK | 1 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Z211983 | 0 | - | - | | | | | | | | | | | | N | | N | N |
| Z214724 | 0 | - | - | | | | | | | | | | | | N | | N | N |
| Z218253 | 0 | - | | | | | | | | | | | | | N | | N | N |
| Z219872 | 2 | Z219872-A | Familiar Perp | | | | | | | | | | | | Y | Y | Y | Y |
| Z220314 | 2 | Z220314-A | Familiar Perp | | | | | | | | | | | | Y | | Y | Y |
| Z220314 | 2 | | Familiar Perp | | | | | | | | | | | | N | | Y | N |
| Z221731 | 0 | - | | | | | | | | | | | | | N | | Y | N |
| Z226760 | 2 | Z226760-A | Unfamiliar | | 2 | 6 | UNK | UNK | 2 | 0 | 0 | 0 | 0 | 0 | N | | Y | Y |
| Z226760 | 2 | Z226760-B | Previous ID | | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | N | | Y | Y |
| Z226760 | 2 | | | | | | | | | | | | | | N | | Y | N |
| Z232060 | 0 | - | | | | | | | | | | | | | N | | N | N |
| Z232205 | 4 | Z232205-A | Previous ID | | 1 | 8 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Z232205 | 4 | Z232205-A | Unfamiliar | | 1 | 8 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Z232205 | 4 | Z232205-B | Unfamiliar | | 1 | 6 | 1 | 1 | 2 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Z240841 | 2 | Z240841-A | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Z240841 | 2 | Z240841-B | Familiar Perp | | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Z243035 | 0 | | Familiar Perp | | | | | | | | | | | | Y | Y | Y | N |
| Z243035 | 0 | | Familiar Perp | | | | | | | | | | | | Y | | Y | Y |
| Z245491 | 0 | | | | | | | | | | | | | | N | | N | N |
| Z246138 | 2 | Z246138-A | Familiar Perp | | 1 | 12 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Z246138 | 2 | Z246138-B | Both | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Z246138 | 2 | Z246138-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Z247898 | 0 | | | | | | | | | | | | | | N | | N | N |
| Z256229 | 0 | | | | | | | | | | | | | | N | | N | N |
| Z257355 | 2 | Z257355-A | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Z257355 | 2 | Z257355-B | | | | | | | | | | | | | N | | N | N |
| Z263920 | 0 | | | | | | | | | | | | | | N | | N | N |
| Z272704 | 0 | | | | | | | | | | | | | | N | | N | N |
| Z273605 | 3 | Z273605-A | Familiar Perp | | | UNK | | | | | | | | | N | | N | N |
| Z273605 | 3 | | Familiar Perp | | | | | | | | | | | | Y | | N | N |
| Z273605 | 3 | | Unfamiliar | | | | | | | | | | | | Y | | N | N |
| Z278410 | 1 | Z278410-A | Unfamiliar | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Z281407 | 0 | | | | | | | | | | | | | | N | | N | N |
| Z291479 | 0 | | | | | | | | | | | | | | N | | N | N |
| Z295920 | 2 | Z295920-A | Unfamiliar | | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Z295920 | 2 | Z295920-B | Unfamiliar | | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | N | | N | N |
| Z302913 | 0 | | Unfamiliar | | | | | | | | | | | | N | | N | N |
| Z309421 | 2 | Z309421-A | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | N | | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Photo Array or Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Z309421 | 2 | Z309421-B | 1 | UNK | UNK | UNK | UNK | UNK | | PHOTO | NO | 11/17/95 | 23:45 | 65613 | YES | N | N | - | - |
| Z311935 | 0 | | | | | | | | | | | | | | | | | | |
| Z313984 | 2 | Z313984-A | 1 | | No | UNK | UNK | UNK | UNK | | PHOTO | NO | 11/29/95 | 21:00 | 97470 | YES | N | N | | |
| Z313984 | 2 | Z313984-A-B | 3 | | No | 4 | 3 | 3 | 1 | | LIVE | YES | 11/30/95 | | 97468 | NO | N | Y | 97470 | UNK |
| Z313984 | 2 | Z313984-B | | | No | | | | | | LIVE | YES | 11/30/95 | | 97468 | NO | N | N | | |
| Z316710 | 1 | Z316710-A | 3 | 1 | No | 7 | 6 | 6 | 3 | | LIVE | YES | 7/17/95 | 20:00 | 97528 | NO | Y | N | | |
| Z316710 | 1 | Z316710-A | | | No | | | | | | LIVE | YES | 7/17/95 | 20:00 | 97528 | NO | Y | N | | |
| Z325455 | 1 | Z325455-A | 3 | | No | 5 | 4 | 4 | 3 | | LIVE | YES | 7/18/95 | 6:00 | 97693 | NO | Y | N | | |
| Z324702 | 0 | | | | | | | | | | | | | | | | | | | |
| Z347852 | 3 | Z347852-A | 2 | 1 | No | 5 | 4 | 4 | 2 | | PHOTO | NO | 7/31/95 | 9:00 | 97798 | NO | | | | |
| Z347852 | 3 | Z347852-A | | | No | 5 | 4 | 4 | | | LIVE | YES | 7/31/95 | 9:00 | 97798 | NO | | | | |
| Z347852 | 3 | Z347852-B | 1 | 1 | No | 5 | 4 | 4 | 1 | | LIVE | YES | 7/31/95 | 9:00 | 97798 | NO | N | Y | 97798 | |
| Z347852 | 3 | Z347852-C | 1 | 1 | No | 5 | 4 | 4 | 1 | | LIVE | YES | 7/31/95 | 2:13 | 97801 | NO | N | N | | |
| Z347852 | | | | | | | | | | | | | 8/2/95 | | 41604 | | | Y | | |
| Z364562 | 4 | Z364562-A | 1 | 4 | Yes | 5 | 1 | 0.75 | 4 | | LIVE | YES | 8/17/95 | 4:00 | 97860 | NO | N | N | | |
| Z364562 | 4 | Z364562-B | 1 | 4 | Yes | UNK | UNK | UNK | 4 | | LIVE | YES | 8/18/95 | 4:00 | 97887 | YES | N | N | | |
| Z364562 | 4 | Z364562-C | 1 | 5 | | UNK | 4 | | 4 | | LIVE | YES | 8/20/95 | 4:00 | 97884 | NO | N | Y | 97860 | UNK |
| Z364562 | 4 | Z364562-C | 1 | | No | | | | | | LIVE | YES | 8/20/95 | 4:00 | 97884 | NO | N | N | | |
| Z372589 | 0 | | | | | | | | | | | | | | | | | | | |
| Z372589 | | | | | | | | | | | | | | | 98061 | | | N | | |
| Z380862 | | | | | | | | | | | | | | | 98061 | | | N | | |
| Z380862 | 2 | Z380862-A | 1 | | No | UNK | UNK | UNK | UNK | | PHOTO | NO | 8/18/95 | | 42067 | YES | N | N | | |
| Z380862 | 2 | Z380862-B | | | No | | | | | | PHOTO | NO | 8/28/95 | | 42097 | | | N | | |
| Z385835 | 2 | Z385835-A | 2 | | UNK | UNK | UNK | 6 | UNK | | LIVE | YES | 8/22/95 | 21:00 | 42140 | YES | N | N | | |
| Z385835 | 2 | Z385835-B | 3 | 1 | No | 5 | 4 | 4 | 1 | | LIVE | YES | 11/10/95 | 18:00 | 42126 | NO | N | Y | 42140 | UNK |
| Z388983 | 2 | Z388983-A | 1 | 1 | No | 5 | 4 | 4 | 1 | | LIVE | YES | 8/22/95 | | 146755 | NO | N | N | | |
| Z388983 | 2 | Z388983-B | 2 | 1 | Yes | 5 | 1 | 1.5 | 6 | | LIVE | YES | 8/22/95 | | 146751 | NO | N | N | | |
| Z392919 | 1 | Z392919-A | 1 | | No | 5 | 4 | 4 | 1 | | LIVE | YES | 8/29/95 | 1:45 | 42360 | NO | N | N | | |
| Z392919 | 1 | Z392919-B | 3 | | No | 5 | 4 | 4 | 3 | | LIVE | YES | 8/29/95 | | 42355 | YES | N | N | | |
| Z405104 | 7 | Z405104-A | 1 | | No | 5 | 4 | 4 | 1 | | LIVE | YES | 8/29/95 | 22:00 | 98659 | NO | Y | N | | |
| Z405104 | 7 | Z405104-B | 1 | | No | 5 | 4 | 4 | 1 | | LIVE | YES | 8/30/95 | 16:20 | 98657 | NO | Y | N | | |
| Z405104 | 7 | Z405104-C | 1 | | No | 5 | 4 | 4 | 1 | | LIVE | YES | 8/30/95 | 18:00 | 98655 | NO | Y | N | | |
| Z405104 | 7 | Z405104-D | UNK | | UNK | UNK | UNK | UNK | UNK | | PHOTO | NO | 8/31/95 | | 98667 | YES | N | N | | |
| Z405104 | 7 | Z405104-E | 1 | | No | 5 | 4 | 4 | 1 | | PHOTO | NO | 9/2/95 | 21:00 | 98638 | NO | N | N | | |
| Z405104 | 7 | Z405104-F | 2 | | No | 5 | 4 | 4 | 2 | | LIVE | YES | 7/17/95 | 1:15 | 98636 | NO | N | N | | |
| Z405104 | 7 | Z405104-G | 2 | | No | 5 | 4 | 4 | 2 | | LIVE | YES | 6/26/97 | 22:50 | 98724 | NO | N | N | | |
| Z410758 | 0 | | | | | | | | | | | | | | | | | N | | |
| Z412986 | 0 | | | | | | | | | | | | | | | | | N | | |
| Z424672 | 0 | | | | | | | | | | | | | | | | | N | | |
| Z425000 | 0 | | | | | | | | | | | | | | | | | N | | |
| Z425000 | | | | | | | | | | | | | 9/10/95 | | 99167 | | | N | | |
| Z425000 | | | | | | | | | | | | LIVE | 9/13/95 | 18:30 | 99097 | NO | Y | N | | |
| Z425000 | | | | | | | | | | | | LIVE | 9/13/95 | 18:30 | 99097 | NO | Y | N | | |
| Z425000 | | | | | | | | | | | | LIVE | 9/28/95 | 22:30 | 99091 | | Y | N | | |
| Z425000 | | | | | | | | | | | | LIVE | 9/13/95 | 19:30 | 99094 | | Y | N | | |
| Z432014 | 2 | Z432014-A | 4 | | No | UNK | UNK | UNK | UNK | | LIVE | YES | 9/14/95 | | 99384 | NO | N | N | | |
| Z437276 | 4 | Z437276-A | 1 | | No | 6 | 5 | 5 | 1 | | LIVE | YES | 10/1/95 | 6:00 | 99416 | YES | N | Y | 99379 | N |
| Z437276 | 4 | Z437276-B | 3 | 1 | No | 6 | 5 | 5 | 3 | | LIVE | YES | 10/1/95 | 6:00 | 99382 | YES | N | Y | 99379 | UNK |
| Z437276 | 4 | Z437276-B | | | No | | | | | | LIVE | YES | 10/1/95 | 6:00 | 99382 | NO | N | N | | |
| Z459499 | 0 | | | | | | | | | | | | | | | | | N | | |
| Z459028 | 4 | Z459028-A | 1 | | No | UNK | UNK | UNK | UNK | | PHOTO | NO | 8/15/99 | 1:30 | 146934 | NO | N | N | | |
| Z459028 | 4 | Z459028-B | 1 | | No | UNK | UNK | UNK | UNK | | PHOTO | NO | 8/15/99 | 1:30 | 146934 | NO | N | N | | |
| Z459028 | 4 | Z459028-C | 1 | | No | UNK | UNK | UNK | UNK | | PHOTO | NO | 8/15/99 | 1:30 | 146934 | NO | N | N | | |
| Z459028 | 4 | Z459028-D | 1 | | No | UNK | UNK | UNK | UNK | | PHOTO | NO | 8/15/99 | 1:30 | 146934 | NO | N | N | | |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed Who But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Z309421 | 2 | Z309421-B | Unfamiliar | | 1 | UNK | UNK | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z311935 | 2 | | | | | | | | | | | | | | N | | N | N |
| Z313984 | 2 | Z313984-A | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Z313984 | 2 | Z313984-B | Previous ID | | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | N |
| Z313984 | 2 | Z313984-B | Unfamiliar | | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | | Y | N |
| Z316710 | 1 | Z316710-A | Both | | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 2 | N | Y | Y | Y |
| Z316710 | 1 | Z316710-A | Unfamiliar | | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | Y | Y | Y |
| Z325455 | 1 | Z325455-A | Familiar | | 3 | 4 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| Z334702 | 0 | | | | | | | | | | | | | | N | | N | N |
| Z334702 | 0 | | | | | | | | | | | | | | N | | N | N |
| Z347652 | 3 | Z347652-A | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| Z347652 | 3 | Z347652-A | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| Z347852 | 3 | Z347852-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| Z347852 | 3 | Z347852-C | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| Z347852 | 3 | | | | | | | | | | | | | | Y | | Y | Y |
| Z347852 | 3 | | | | | | | | | | | | | | N | | Y | Y |
| Z364562 | 3 | Z364562-A | Unfamiliar | | 1 | 7 | 4 | 4 | 4 | 0 | 0 | 0 | 0 | 3 | N | | N | N |
| Z364562 | 3 | Z364562-B | Unfamiliar | | 1 | UNK | 3 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | | N | N |
| Z364562 | 3 | Z364562-C | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z364562 | 3 | Z364562-C | | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z372589 | 0 | | Familiar Perp | | | | | | | | | | | | Y | Y | N | N |
| Z372589 | 0 | | Unfamiliar | | | | | | | | | | | | Y | Y | N | N |
| Z380862 | 1 | Z380862-A | Unfamiliar | | 2 | UNK | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| Z380862 | 1 | | | | | | | | | | | | | | N | | N | N |
| Z385835 | 2 | Z385835-A | Unfamiliar | | 2 | 6 | UNK | UNK | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| Z385835 | 2 | Z385835-B | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z388983 | 2 | Z388983-A | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z388983 | 2 | Z388983-B | Unfamiliar | | 1 | 5 | 4 | 4 | 4 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z392919 | 2 | Z392919-A | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z392919 | 2 | Z392919-B | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z405104 | 7 | Z405104-A | Familiar Perp | | 3 | 3 | 3 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| Z405104 | 7 | Z405104-B | Familiar Perp | | 6 | 6 | 1 | 6 | 6 | 0 | 0 | 0 | 0 | 6 | N | | N | N |
| Z405104 | 7 | Z405104-C | Familiar Perp | | UNK | UNK | UNK | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z405104 | 7 | Z405104-D | | | UNK | UNK | UNK | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z405104 | 7 | Z405104-E | Familiar Perp | | 6 | 6 | 1 | 6 | 6 | 0 | 0 | 0 | 0 | 6 | N | | N | N |
| Z405104 | 7 | Z405104-F | Familiar Perp | | 2 | UNK | UNK | UNK | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| Z405104 | 7 | Z405104-G | Familiar Perp | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z410758 | 0 | | Unfamiliar | | | | | | | | | | | | N | | N | N |
| Z412986 | 0 | | Unfamiliar | | | | | | | | | | | | N | | N | N |
| Z424672 | 1 | | Unfamiliar | | | | | | | | | | | | N | - | N | N |
| Z425000 | 1 | | Familiar Perp | | | | | | | | | | | | Y | N | N | N |
| Z425000 | 1 | | | | | | | | | | | | | | Y | N | N | N |
| Z425000 | 1 | | Familiar Perp | | | | | | | | | | | | | | N | N |
| Z425000 | 1 | | Familiar Perp | | | | | | | | | | | | | | N | N |
| Z432014 | 2 | Z432014-A | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z437276 | 2 | Z437276-A | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z437276 | 2 | Z437276-B | Previous ID | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| Z437276 | 2 | Z437276-B | | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | Y | Y |
| Z451499 | 0 | | Unfamiliar | | | | | | | | | | | | N | - | N | N |
| Z459028 | 4 | Z459028-A | Familiar Perp | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z459028 | 4 | Z459028-B | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z459028 | 4 | Z459028-C | Unfamiliar | | 1 | UNK | UNK | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z459028 | 4 | Z459028-D | Unfamiliar | | 1 | UNK | UNK | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior lineup/photo array, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Z459175 | 2 | Z459175-A | 2 | 2 | Yes | 5 | 3 | 1.5 | 4 | LIVE | YES | 9/29/95 | | 99651 | NO | Y | N | - | - |
| Z459175 | 2 | Z459175-A | 1 | | Yes | | | | | LIVE | YES | 9/29/95 | | 99651 | NO | Y | N | - | - |
| Z459984 | 0 | | | | | | | | | | | | | | | | | | |
| Z462709 | 2 | Z462709-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 10/1/95 | | 99928 | NO | Y | N | - | - |
| Z462709 | 2 | Z462709-B | 1 | 1 | No | 7 | 6 | 6 | 1 | PHOTO | NO | 10/1/95 | | 99928 | NO | Y | N | - | - |
| Z462709 | 2 | | | | | | | | | | | | | | | | | | |
| Z471485 | 1 | | | | | | | | | | | 12/20/95 | | 100038 | | | | | |
| Z472960 | 2 | Z472960-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 10/5/95 | 9:00 | 100229 | NO | N | Y | 100220 | N |
| Z472960 | 2 | Z472960-A | 1 | | No | | | | | LIVE | YES | 10/5/95 | 9:00 | 100229 | NO | N | Y | 100220 | N |
| Z472960 | 2 | Z472960-B | 1 | 1 | No | UNK | UNK | 2 | 1 | PHOTO | NO | 10/5/95 | 5:00 | 100220 | YES | N | N | - | - |
| Z475236 | 1 | Z475236-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/8/95 | 5:00 | 66888 | NO | N | N | - | - |
| Z479160 | 2 | | | | | | | | | | | | | | | | | | |
| Z486489 | 4 | Z486489-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 10/14/95 | 5:00 | 100582 | NO | N | N | - | - |
| Z486489 | 4 | Z486489-B | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 10/14/95 | 5:00 | 100580 | NO | N | N | - | - |
| Z486489 | 4 | Z486489-C | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 10/14/95 | 5:00 | 100576 | NO | N | N | - | - |
| Z486489 | 4 | Z486489-C | - | | Yes | | | | | LIVE | YES | 10/14/95 | 5:00 | 100576 | NO | N | N | - | - |
| Z486489 | 4 | Z486489-D | 1 | 4 | Yes | 5 | 1 | 0 | 4 | LIVE | YES | 10/14/95 | 5:00 | 100578 | NO | N | N | - | - |
| Z492864 | 2 | Z492864-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | | | | 100556 | NO | N | N | - | - |
| Z492864 | 2 | Z492864-A | 1 | | No | | | | | PHOTO | NO | 10/19/95 | 23:50 | 100711 | NO | N | N | - | - |
| Z492864 | 2 | Z492864-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 12/22/95 | 23:00 | 10670 | NO | N | N | - | - |
| Z492864 | 2 | Z492864-B | 1 | | No | | | | | PHOTO | NO | 12/22/95 | 23:00 | 10670 | NO | N | N | 100711 | N |
| Z502022 | 2 | Z502022-A | 2 | 2 | Yes | 5 | 4 | 2 | 2 | PHOTO | NO | 11/17/95 | | 100759 | NO | N | N | - | - |
| Z502022 | 2 | Z502022-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 11/17/95 | | 100758 | NO | N | N | - | - |
| Z502022 | 2 | | | | | | | | | | | 11/17/95 | | 100756 | NO | N | N | - | - |
| Z502239 | 2 | | | | | | | | | | | 10/25/95 | | 100761 | | | | | |
| Z502239 | 2 | | | | | | | | | | | 10/25/95 | | 67139 | | | | | |
| Z502239 | 2 | | | | | | | | | | | 10/25/95 | | 67145 | | | | | |
| Z515330 | 0 | | | | | | | | | | | | | | | | | | |
| Z533574 | 2 | Z533574-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/28/95 | | 101071 | NO | N | N | - | - |
| Z533574 | 2 | Z533574-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 12/28/95 | | 101069 | NO | N | N | 101071 | N |
| Z534338 | 2 | Z534338-A | 1 | 1 | No | UNK | UNK | 3 | 1 | LIVE | YES | 11/29/95 | | 101269 | NO | N | N | - | - |
| Z534338 | 2 | Z534338-B | 1 | | Yes | | | | | LIVE | YES | 12/22/95 | 2:00 | 101268 | NO | N | N | - | - |
| Z534369 | 2 | Z534369-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 11/29/95 | | 67336 | NO | N | N | 67332 | N |
| Z534369 | 2 | Z534369-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 11/29/95 | | 67332 | NO | N | Y | 67324 | N |
| Z536442 | 2 | Z536442-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | | 11/24/95 | 15:00 | 101638 | NO | | Y | | |
| Z536442 | 2 | Z536442-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/11/96 | | 101615 | NO | N | Y | 101647 | N |
| Z536442 | 2 | Z536442-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/11/96 | | 101612 | NO | N | Y | 101647 | N |
| Z537749 | 0 | | | | | | | | | | | | | | | | N | | |
| Z565629 | 2 | | | | | | | | | | | 11/28/95 | 23:00 | 101808 | | | N | | |
| Z565629 | 2 | Z565629-A | 1 | 1 | No | UNK | UNK | 3 | 1 | LIVE | YES | 12/11/95 | 23:00 | 101800 | YES | N | N | - | - |
| Z565629 | 2 | Z565629-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 12/11/95 | 23:00 | 101800 | YES | N | N | - | - |
| Z640335 | 0 | | | | | | | | | | | 12/14/95 | 2300 | 102051 | | | N | | |
| Z644617 | 0 | | | | | | | | | | | 12/14/95 | 1400 | 102113 | | | N | | |
| Z644617 | 0 | | | | | | | | | | | 12/14/95 | 1400 | 102113 | | | N | | |
| Z646708 | 0 | | | | | | | | | | | | | | | | N | | |
| Z648125 | 3 | Z648125-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 12/30/95 | 23:30 | 102354 | NO | N | N | - | - |
| Z648125 | 3 | Z648125-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 12/30/95 | 22:30 | 102352 | NO | N | Y | 102354 | N |
| Z648125 | 3 | Z648125-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/19/96 | 13:00 | 102350 | NO | N | N | - | - |
| Z653408 | 1 | Z653408-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/17/96 | | 102443 | NO | N | N | - | - |
| Z654272 | 1 | Z654272-A | 1 | 1 | No | UNK | UNK | 4 | 1 | LIVE | NO | 8/26/95 | | 102825 | YES | N | N | - | - |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed Who But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Z459175 | 1 | Z459175-A | Familiar Perp | - | 1 | 5 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| Z459175 | 1 | Z459175-A | Familiar | | | | | | | | | | | | N | | N | N |
| Z459984 | | | Unfamiliar | | | | | | | | | | | | N | | N | N |
| Z459984 | 1 | Z459984-A | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z462709 | 2 | Z462709-A | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z462709 | 2 | Z462709-B | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z462709 | 2 | | Familiar Perp | | | | | | | | | | | | N | | N | N |
| Z471485 | 0 | | Unfamiliar | | | | | | | | | | | | Y | Y | N | N |
| Z472960 | 2 | Z472960-A | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z472960 | 2 | Z472960-B | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z472960 | 2 | Z472960-B | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z475236 | 1 | Z475236-A | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z479160 | 0 | | Unfamiliar | | | | | | | | | | | | N | | N | N |
| Z486489 | 4 | Z486489-A | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z486489 | 4 | Z486489-B | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z486489 | 4 | Z486489-C | Unfamiliar | - | 1 | 6 | 5 | 5 | 5 | 0 | 0 | 0 | 0 | 5 | N | - | N | N |
| Z486489 | 4 | Z486489-C | Familiar Perp | Witness A | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z486489 | 4 | Z486489-D | Familiar Perp | Witness A | 1 | 8 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | 4 | N | - | N | N |
| Z486489 | 4 | Z486489-D | Unfamiliar | | | | | | | | | | | | N | | N | N |
| Z492864 | 2 | Z492864-A | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| Z492864 | 2 | Z492864-B | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z492864 | 2 | Z492864-B | Previous ID | - | 1 | 7 | 3 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| Z502022 | 2 | Z502022-A | Familiar Perp | - | 1 | 6 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| Z502022 | 2 | Z502022-B | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| Z502022 | 2 | | Familiar Perp | | | | | | | | | | | | Y | Y | N | N |
| Z502239 | 2 | | Familiar Perp | | | | | | | | | | | | Y | Y | N | N |
| Z502239 | 2 | | Familiar Perp | | | | | | | | | | | | Y | Y | N | N |
| Z502239 | 0 | | Familiar Perp | | | | | | | | | | | | Y | Y | N | N |
| Z515101 | | | Unfamiliar | | | | | | | | | | | | Y | Y | N | N |
| Z533574 | 2 | Z533574-A | Familiar Perp | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| Z533574 | 2 | Z533574-B | Both | - | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| Z534338 | 2 | Z534338-A | Unfamiliar | - | 5 | UNK | 1 | 5 | 5 | 0 | 0 | 0 | 0 | 5 | N | - | N | N |
| Z534338 | 2 | Z534338-B | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z534369 | 2 | Z534369-A | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z534369 | 2 | Z534369-B | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z536442 | 2 | Z536442-A | Unfamiliar | - | | | | | | | | | | | Y | Y | N | N |
| Z536442 | 2 | Z536442-B | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| Z536442 | 2 | Z536442-B | Familiar Perp | - | 1 | 5 | 1 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | Y | Y | N | N |
| Z537749 | 0 | | Unfamiliar | | | | | | | | | | | | N | | N | N |
| Z565629 | 2 | Z565629-A | Familiar Perp | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| Z565629 | 2 | Z565629-B | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z565629 | 2 | | Unfamiliar | | | | | | | | | | | | Y | N | N | N |
| Z565629 | 2 | | Familiar Perp | | | | | | | | | | | | Y | N | N | N |
| Z640335 | 0 | | Familiar Perp | | | | | | | | | | | | Y | N | N | N |
| Z646617 | 0 | | Unfamiliar | | | | | | | | | | | | Y | Y | Y | Y |
| Z646617 | | | Unfamiliar | | | | | | | | | | | | Y | Y | Y | Y |
| Z646708 | | | Unfamiliar | | | | | | | | | | | | Y | Y | Y | Y |
| Z648125 | 3 | Z648125-A | Unfamiliar | - | 2 | 5 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| Z648125 | 3 | Z648125-B | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z648125 | 3 | Z648125-C | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z653408 | 3 | Z653408-A | Unfamiliar | - | 1 | 5 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| Z653408 | 2 | Z653408-B | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z654272 | 4 | Z654272-A | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| This column documents the RD number assigned by the Chicago Police Department to a homicide investigation | This column documents the total number of identification events (live lineups and photo array identification procedures) reported in the homicide files for the homicide investigation bearing the RD number documented in the column to the left | This column assigns a unique identifier to each identification event (it is the RD, then a dash, and then A, B, C, D, etc.–e.g., A000111-A). The events are ordered chronologically based on date and time that the event was reported. | This column reports the number of witnesses viewing the identification event | This column reports the number of suspects participating in the identification event | This column reports whether the identification event included multiple suspects | This column reports the number of individuals (suspects plus witnesses) participating in the identification event | This column reports the number of fillers participating in the identification event | This column reports how many fillers are included in the lineup event per each suspect | This column reports the total number of possible positive IDs for the identification event, which is the number of witnesses viewing the identification event multiplied by the number of suspects participating in the identification event | This column reports whether the event reported is a live lineup or a photo array identification procedure. Typically, but not always, a live lineup is reported in an official lineup report, while a photo array identification procedure is reported in a different type of report. | This column reports whether the lineup is reported in a CPD supp report titled "Lineup Report" | This column reports the date of the report. | This column reports the time of the report. | This column reports the bates stamp appearing on the report in the Area Five files provided | This column reports whether the homicide files reviewed are missing information necessary to code each of the variables in this row of data. Where information is missing from the homicide file, a column to the right will have the abbreviation "UNK" in a cell. | This column reports whether documents in the homicide files for the RD# state that the witness was familiar with the suspect prior to the first document identification procedure event in the homicide investigation. (Y/N) | This column reports whether documents in the homicide files for the RD# state that the witness had seen the suspect in a prior identification procedure event in the same homicide investigation. (Y/N) | Where a "Y" appears in column R to the left, indicating that the witness had seen the suspect in a prior identification procedure, this column reports the bates number of the report of that prior identification procedure. | Where a "Y" appears in column R to the left, indicating that the witness had seen the suspect in a prior identification procedure, this column reports whether the fillers in the prior identification procedure event are the same as in the identification procedure event reported in this row. |
| Z654272 | 4 | Z654272-B | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | NO | 8/26/95 | 21:30 | 102825 | YES | N | N | | |
| Z654272 | 4 | Z654272-C | 1 | | No | 5 | 4 | 4 | 1 | PHOTO | NO | 4/7/96 | 21:30 | 102632 | NO | N | N | | |
| Z654272 | 4 | Z654272-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 4/7/96 | 21:30 | 102632 | YES | Y | N | | |
| Z699822 | 3 | Z699822-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 1/3/96 | | 103053 | YES | N | N | | |
| Z699822 | 3 | Z699822-B | 1 | | Yes | UNK | UNK | UNK | 2 | PHOTO | NO | 9/9/96 | 17:00 | 103011 | YES | N | N | | |
| Z699822 | 3 | Z699822-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/11/96 | 23:00 | 103013 | NO | Y | Y | 103005 | N |
| Z699822 | 3 | Z699822-C | | | No | | | | | LIVE | YES | 9/11/96 | 23:00 | 103013 | NO | Y | N | | |
| Z699822 | 3 | Z699822-C | | | No | | | | | LIVE | YES | 9/11/96 | 23:00 | 103013 | NO | Y | N | | |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Z654272 | 4 | Z654272-B | Unfamiliar | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z654272 | 4 | Z654272-C | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z654272 | 4 | Z654272-D | Familiar Perp | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z699822 | 3 | Z699822-A | Familiar Perp | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z699822 | 3 | Z699822-B | Familiar Perp | | 1 | UNK | 1 | 1 | 2 | 0 | 0 | 0 | 0 | 2 | N | | N | N |
| Z699822 | 3 | Z699822-C | Both | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z699822 | 3 | Z699822-C | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| Z699822 | 3 | Z699822-C | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |

Exhibit S) )

# Steblay Area Five Homicide File Data, 1989-1998

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect prior a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| M005560 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M009144 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M011982 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M019058 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M020288 | 2 | M020288-A | 3 | 1 | No | 5 | 4 | 4 | 3 | PHOTO | NO | 1/19/1989 | 26593 | 22:30 | NO | N | N | - | - |
| M020288 | 2 | M020288-B | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 5/27/1989 | 26596 | 17:00 | NO | N | Y | 26593 | NO |
| M020288 | 2 | M020288-B | - | - | No | - | - | - | - | LIVE | YES | 5/27/1989 | 26596 | 17:00 | NO | N | Y | 26593 | NO |
| M020288 | 2 | M020288-B | - | - | No | - | - | - | - | LIVE | YES | 5/27/1989 | 26596 | 17:00 | NO | N | N | - | - |
| M027036 | 3 | M027036-A | 4 | 1 | No | 5 | 4 | 4 | 4 | PHOTO | NO | 1/18/1989 | 26630 | 8:00 | NO | Y | N | - | - |
| M027036 | 3 | M027036-A | - | - | No | - | - | - | - | PHOTO | NO | 1/18/1989 | 26630 | 8:00 | NO | Y | N | - | - |
| M027036 | 3 | M027036-A | - | - | No | - | - | - | - | PHOTO | NO | 1/18/1989 | 26630 | 8:00 | NO | Y | N | - | - |
| M027036 | 3 | M027036-A | - | - | No | - | - | - | - | PHOTO | NO | 1/18/1989 | 26630 | 8:00 | NO | N | N | - | - |
| M027036 | 3 | M027036-B | 2 | 2 | Yes | 5 | 3 | 1.5 | 4 | LIVE | YES | 1/23/1989 | 26635 | - | NO | Y | Y | 26634 | NO |
| M027036 | 3 | M027036-B | - | - | Yes | - | - | - | - | LIVE | YES | 1/23/1989 | 26635 | - | NO | Y | Y | 26630 | UNK |
| M027036 | 3 | M027036-B | - | - | Yes | - | - | - | - | LIVE | YES | 1/23/1989 | 26635 | - | NO | Y | Y | 26630 | UNK |
| M027036 | 3 | M027036-B | - | - | Yes | - | - | - | - | LIVE | YES | 1/23/1989 | 26635 | - | NO | Y | N | - | - |
| M027036 | 3 | M027036-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 1/26/1989 | 26641 | 22:30 | NO | Y | N | - | - |
| M028533 | 2 | M028533-A | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 1/23/1989 | 26679 | 4:00 | NO | N | N | - | - |
| M028533 | 2 | M028533-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 3/2/1989 | 26685 | 15:35 | NO | N | Y | 26679 | NO |
| M028977 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M036690 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M043368 | 0 | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M045734 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M050078 | 0 | - | - | - | - | - | - | - | - | - | - | 2/1/1989 | 26786 | 7:15 | - | N | N | - | - |
| M050078 | 0 | - | - | - | - | - | - | - | - | - | - | 2/2/1989 | 26791 | 6:00 | - | Y | N | - | - |
| M050078 | 0 | - | - | - | - | - | - | - | - | - | - | 2/2/1989 | 26791 | 6:00 | - | N | N | - | - |
| M050078 | 0 | - | - | - | - | - | - | - | - | - | - | 2/2/1989 | 26791 | 6:00 | - | N | N | - | - |
| M055474 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M068136 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M074820 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M079435 | 4 | M079435-A | 2 | 2 | Yes | 7 | 5 | 2.5 | 4 | LIVE | YES | 2/23/1989 | 26878 | 2130 | NO | N | N | - | - |
| M079435 | 4 | M079435-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 2/24/1989 | 26884 | 2100 | NO | N | N | - | - |
| M079435 | 4 | M079435-C | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 3/13/1989 | 26902 | 23:00 | NO | N | Y | 26883 | N |
| M079435 | 4 | M079435-C | - | - | No | - | - | - | - | LIVE | YES | 3/13/1989 | 26902 | 23:00 | NO | N | N | - | - |
| M081013 | 2 | M081013-A | 3 | 1 | No | UNK | UNK | UNK | 3 | PHOTO | NO | 02/22/1989 | 26945 | UNK | NO | N | N | - | - |
| M081013 | 2 | M081013-A | - | - | No | - | - | - | - | PHOTO | NO | 02/22/1989 | 26945 | UNK | NO | Y | N | - | - |
| M081013 | 2 | M081013-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 05/15/1989 | 26961 | 15:00 | NO | N | Y | 26935 | UNK |
| M082769 | 0 | - | - | - | - | - | - | - | - | - | - | 2/23/1989 | 26965 | 8:00 | - | - | - | - | - |
| M100316 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M107777 | 0 | | | | | 0 | | | | | | | | | | | | | |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| M005560 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| M006144 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| M011982 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| M019058 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| M020288 | Unfamiliar | - | 3 | 5 | 1 | 3 | 0 | 0 | 3 | 0 | 0 | 3 | N | - | N | N |
| M020288 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M020288 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M020288 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M027036 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M027036 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M027036 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M027036 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M027036 | Both | Witness A | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M027036 | Both | Witness A | | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M027036 | Both | Witness B | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M027036 | Familiar Perp | Witness B | | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M027036 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M028533 | Unfamiliar | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| M028533 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| M028977 | N/A | | | | | | | | | | | | | | N | - |
| M036890 | N/A | | | | | | | | | | | | | | N | - |
| M043366 | N/A | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| M045734 | N/A | | | | | | | | | | | | | | N | - |
| M050978 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M050978 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M050978 | Previous ID | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M050978 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | - | N | N |
| M055474 | N/A | | | | | | | | | | | | | | N | |
| M066136 | N/A | | | | | | | | | | | | | | N | - |
| M074820 | N/A | | | | | | | | | | | 0 | | | N | - |
| M079435 | Unfamiliar | - | 2 | 7 | 2 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | N | - | Y | N |
| M079435 | Unfamiliar | - | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| M079435 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| M079435 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| M081013 | Unfamiliar | - | 2 | UNK | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| M081013 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| M081013 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| M082769 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M100316 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| M107777 | N/A | | | | | 0 | | | | | | 0 | | | | |

Area Five Homicide Files, 1989-1996 — Steblay Data 10-19-2022

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number of Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| M111004 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M111323 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M112483 | 0 | | | | | | | | | | | | | | | | | | |
| M128394 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M128788 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M165445 | 2 | M165445-A | 4 | 3 | Yes | 7 | 4 | 1.333333333 | 12 | LIVE | YES | 5/4/1989 | 82570 | 23:00 | NO | N | N | - | - |
| M165445 | 2 | M165445-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/30/1989 | 82555 | 9:00 | NO | N | N | - | - |
| M169829 | 2 | M169829-A | 2 | 1 | No | 7 | 6 | 6 | 2 | PHOTO | NO | 04/20/1989 | 27237 | 5:30 | YES | N | N | - | - |
| M169829 | 2 | M169829-B | 1 | 1 | No | 6 | 5 | 5 | 2 | LIVE | NO | 04/21/1989 | 27230 | 23:00 | NO | N | Y | 27237 | N |
| M169829 | 2 | M169829-B | - | - | No | - | - | - | - | LIVE | NO | 04/21/1989 | 27230 | 23:00 | NO | N | N | - | - |
| M175015 | 3 | M175015-A | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 04/25/1989 | 27283 | 23:30 | NO | Y | N | - | - |
| M175015 | 3 | M175015-A | - | - | No | - | - | - | - | LIVE | YES | 04/25/1989 | 27283 | 23:30 | NO | Y | N | - | - |
| M175015 | 3 | M175015-A | - | - | No | - | - | - | - | LIVE | YES | 04/25/1989 | 27283 | 23:30 | NO | Y | Y | 27205 | N |
| M175015 | 3 | M175015-B | 2 | 2 | Yes | 5 | 3 | 1.5 | 4 | LIVE | YES | 04/26/1989 | 27287 | 23:00 | NO | N | N | - | - |
| M175015 | 3 | M175015-C | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | NO | 04/26/1989 | 27283 | 23:00 | YES | N | N | - | - |
| M175015 | 3 | | - | - | - | - | - | - | - | - | - | 04/26/1989 | 27265 | 3:00 | - | Y | N | - | - |
| M175015 | 3 | | - | - | - | - | - | - | - | - | - | 04/27/1989 | 27273 | - | - | Y | N | - | - |
| M183738 | 0 | | - | - | - | - | - | - | - | - | - | 4/28/1989 | 27302, 27311 | 11:30 | - | N | N | - | - |
| M184949 | 2 | M184949-A | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 04/30/89 | 27346 | 22:00 | NO | Y | N | - | - |
| M184949 | 2 | M184949-A | - | - | No | - | - | - | - | PHOTO | NO | 04/30/89 | 27345 | 22:00 | NO | N | N | - | - |
| M184949 | 2 | M184949-B | 2 | 2 | Yes | 5 | 3 | 1.5 | 4 | LIVE | YES | 04/30/89 | 27348 | 23:00 | NO | Y | Y | 27345 | NO |
| M184949 | 2 | M184949-B | - | - | Yes | - | - | - | - | LIVE | YES | 04/30/89 | 27348 | 23:00 | NO | N | N | - | - |
| M184949 | 2 | M184949-B | - | - | Yes | - | - | - | - | LIVE | YES | 4/30/1989 | 27348 | 23:00 | NO | N | Y | 27345 | NO |
| M184949 | 2 | M184949-B | - | - | Yes | - | - | - | - | LIVE | YES | 4/30/1989 | 27348 | 23:00 | NO | N | N | - | - |
| M186174 | 0 | | | | | | | | | | | | | | | | | | |
| M186968 | 0 | | - | - | - | - | - | - | - | - | - | 5/2/1989 | 27388 | - | - | N | N | - | - |
| M186888 | 0 | | | | | | | | | | | | | | | | | | |
| M211748 | 2 | M211748-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 05/23/1989 | 27443 | UNK | NO | N | N | - | - |
| M211748 | 2 | M211748-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 06/10/1989 | 27448-9 | 1220 | NO | N | Y | 27443 | UNK |
| M222366 | 0 | | | | | | | | | | | | | | | | | | |
| M225807 | 0 | | | | | | | | | | | | | | | | | | |
| M244605 | 0 | | - | - | - | - | - | - | - | - | - | | | - | - | N | N | - | - |
| M245807 | 2 | M245807-A | 3 | 2 | Yes | 5 | 3 | 1.5 | 6 | LIVE | YES | 6/5/1989 | 27552 | 19:00 | NO | N | N | - | - |
| M245807 | 2 | M245807-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/10/1990 | 27563 | - | NO | N | N | - | - |
| M264219 | 5 | M264219-A | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | NO | 6/22/1989 | 27612 | - | YES | N | N | - | - |
| M264219 | 5 | | - | - | - | - | - | - | - | - | - | 8/3/1989 | 27624 | - | - | Y | N | - | - |
| M264219 | 5 | | - | - | - | - | - | - | - | - | - | 8/3/1989 | 27627 | - | - | Y | N | - | - |
| M264219 | 5 | M264219-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 8/3/1989 | 27619 | 23:00 | NO | N | N | - | - |
| M264219 | 5 | M264219-C | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 8/3/1989 | 27628 | - | YES | N | N | - | - |
| M264219 | 5 | M264219-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/6/1989 | 27632 | 23:30 | NO | N | Y | 27628 | N |
| M264219 | 5 | M264219-E | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 1/18/1990 | 27636 | 17:00 | NO | N | N | - | - |
| M264219 | 5 | | - | - | - | - | - | - | - | - | - | 4/14/1990 | 27639 | 13:00 | - | N | N | - | - |
| M284728 | 3 | M284728-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 6/26/1989 | 27672 | 21:00 | NO | N | N | - | - |
| M284728 | 3 | M284728-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 7/7/1989 | 27679 | 18:00 | NO | N | N | - | - |
| M284728 | 3 | M284728-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 7/29/1989 | 27685 | 14:00 | NO | N | N | - | - |
| M285731 | 2 | M285731-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 10/21/1989 | 27718 | - | YES | N | N | - | - |
| M285731 | 2 | M285731-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 10/28/1989 | 27719 | 20:30 | NO | N | Y | 27718 | UNK |
| M287641 | 4 | M287641-A | 4 | 1 | No | UNK | UNK | UNK | 4 | PHOTO | NO | 6/30/1989 | 27732 | 1:00 | YES | N | N | - | - |
| M287641 | 4 | M287641-B | 4 | 1 | No | UNK | UNK | UNK | 4 | PHOTO | NO | 7/15/1989 | 27735 | 19:30 | YES | N | N | - | - |
| M287641 | 4 | M287641-C | 1 | 1 | No | 3 | 2 | 2 | 1 | LIVE | YES | 7/23/1989 | 27736 | 20:00 | NO | N | N | - | - |
| M287641 | 4 | M287641-D | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 9/18/1989 | 27743 | 20:00 | NO | N | N | - | - |
| M289100 | 0 | | - | - | - | - | - | - | - | - | - | 6/30/1989 | 27769 | 23:00 | - | N | Y | - | - |
| M298015 | 0 | | | | | | | | | | | | | | | | | | |
| M299308 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M305421 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M307151 | 4 | | - | - | - | - | - | - | - | - | - | 7/11/1989 | 27835 | - | - | N | N | - | - |
| M307151 | 4 | | - | - | - | - | - | - | - | - | - | 7/11/1989 | 27837 | - | - | N | N | - | - |
| M307151 | 4 | | - | - | - | - | - | - | - | - | - | 7/11/1989 | 27844 | - | - | Y | N | - | - |
| M307151 | 4 | M307151-A | 2 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 7/11/1989 | 27844 | UNK | YES | Y | N | - | - |
| M307151 | 4 | M307151-A | - | - | - | - | - | - | - | PHOTO | NO | 7/11/1989 | 27844 | UNK | YES | N | N | - | - |
| M307151 | 4 | M307151-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 7/11/1989 | 27844 | UNK | NO | N | N | - | - |
| M307151 | 4 | M307151-C | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 7/12/1989 | 27846 | UNK | NO | N | Y | 27845 | NO |
| M307151 | 4 | M307151-C | - | - | No | - | - | - | - | PHOTO | NO | 7/12/1989 | 27846 | UNK | NO | N | Y | 27845 | NO |
| M307151 | 4 | M307151-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 7/13/1989 | 27848 | UNK | NO | N | N | - | - |
| M307151 | 4 | | - | - | - | - | - | - | - | - | - | 8/9/1989 | 27866 | 12:45 | - | N | N | - | - |
| M307151 | 4 | | - | - | - | - | - | - | - | - | - | 8/9/1989 | 27866 | 12:45 | - | N | Y | 27845, 27849 | N |
| M342699 | 0 | | - | - | - | - | - | - | - | - | - | 8/20/1989 | 27887 | 23:00 | - | N | N | - | - |
| M351455 | 0 | | | | | | | | | | | | | | | | | | |
| M354042 | 0 | | - | - | - | - | - | - | - | - | - | 8/7/1989 | 27951 | - | - | N | N | - | - |
| M356531 | 1 | M356531-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 08/17/89 | 28000 | 1:00 | NO | N | N | - | - |
| M364113 | 0 | | | | | | | | | | | | | | | | | | |
| M366338 | 0 | | | | | | | | | | | | | | | | | | |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| M111004 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| M111323 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| M112483 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| M128394 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| M128788 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| M165445 | Unfamiliar | - | 4 | 7 | 3 | 12 | 4 | 0 | 0 | 0 | 8 | 12 | N | - | N | N |
| M165445 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| M169629 | Unfamiliar | - | 2 | 7 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| M169629 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M169629 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M175015 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| M175015 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| M175015 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | N |
| M175015 | Unfamiliar | - | 2 | 5 | 2 | 4 | 2 | 0 | 0 | 0 | 2 | 4 | N | - | Y | N |
| M175015 | Unfamiliar | - | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| M175015 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| M175015 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| M183738 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M184949 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M184949 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M184949 | Both | Witness A | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M184949 | Unfamiliar | Witness A | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | N | - | N | N |
| M184949 | Previous ID | Witness B | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M184949 | Unfamiliar | Witness B | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | N | - | N | N |
| M185174 | N/A | | | | | | | | | | | | | | N | - |
| M189668 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M189688 | N/A | | | | | | | | | | | | | | N | - |
| M211748 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M211748 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M222366 | N/A | | | | | | | | | | | | | | N | - |
| M225807 | N/A | | | | | | | | | | | | | | N | - |
| M244905 | N/A | - | - | - | - | - | - | - | - | - | - | - | - | - | N | Y |
| M245807 | Unfamiliar | - | 3 | 5 | 2 | 6 | 2 | 0 | 0 | 1 | 3 | 6 | N | - | Y | N |
| M245807 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| M204219 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| M204219 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M204219 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M204219 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M204219 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M204219 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M204219 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M204219 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | - | N | N |
| M284728 | Unfamiliar | - | 2 | 5 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | N |
| M284728 | Unfamiliar | - | 2 | 5 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | Y | N |
| M284728 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| M285731 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M285731 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M287641 | Unfamiliar | - | 4 | UNK | UNK | 4 | 0 | 0 | 4 | 0 | 0 | 4 | N | - | N | N |
| M287641 | Unfamiliar | - | 4 | UNK | UNK | 4 | 0 | 0 | 4 | 0 | 0 | 4 | N | - | N | N |
| M287641 | Unfamiliar | - | 1 | 3 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M287641 | Unfamiliar | - | 3 | 4 | 1 | 3 | 0 | 1 | 0 | 0 | 2 | 3 | N | - | N | N |
| M289100 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M296015 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| M296308 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| M305421 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| M307151 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M307151 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| M307151 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M307151 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M307151 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M307151 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M307151 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M307151 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M307151 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M307151 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| M307151 | Previous ID | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M324200 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M351455 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| M354942 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M359531 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M364113 | N/A | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| M366338 | N/A | | - | - | - | - | - | - | - | - | - | - | - | | N | - |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the Witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence witness saw the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| M366806 | 0 | - | - | - | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M370020 | 2 | M370020-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/16/1989 | 28085 | - | | YES | Y | N | - | - |
| M370020 | 2 | M370020-B | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 8/17/1989 | 28097 | 3:00 | NO | Y | N | - | - |
| M370020 | 2 | M370020-B | - | - | No | - | - | - | - | LIVE | YES | 8/17/1989 | 28097 | 3:00 | NO | Y | N | - | - |
| M370020 | 2 | M370020-B | - | - | No | - | - | - | - | LIVE | YES | 8/17/1989 | 28097 | 3:00 | - | Y | Y | 28083 | UNK |
| M381429 | 4 | M381429-A | 2 | 1 | No | UNK | UNK | UNK | 2 | LIVE | NO | 8/22/1989 | 28119 | 16:00 | YES | N | N | - | - |
| M381429 | 4 | M381429-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/23/1989 | 28125 | 22:00 | YES | N | N | - | - |
| M381429 | 4 | M381429-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 8/29/1989 | 84220 | 13:00 | NO | N | N | - | - |
| M381429 | 4 | M381429-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 8/29/1989 | 28130 | 15:30 | NO | N | Y | 28134 | UNK |
| M381429 | 4 | | - | - | | - | - | - | - | - | - | 8/29/1989 | 84206 | 21:00 | - | N | N | - | - |
| M386137 | 1 | M386137-A | 1 | 2 | Yes | 6 | 4 | 2 | 2 | LIVE | YES | 8/25/1989 | 28164 | 3:00 | NO | N | N | - | - |
| M387785 | 1 | - | - | - | | - | - | - | - | - | - | 8/26/1989 | 28200 | 2345 | - | N | N | - | - |
| M387785 | 1 | - | - | - | | - | - | - | - | - | - | 8/26/1989 | 28200 | 2345 | - | Y | N | - | - |
| M387785 | 1 | M387785-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/28/1989 | 28205 | 2345 | YES | Y | N | - | - |
| M387785 | 1 | - | - | - | | - | - | - | - | - | - | 8/26/1989 | 28199 | 500 | - | Y | N | - | - |
| M387785 | 1 | - | - | - | | - | - | - | - | - | - | 8/27/1989 | 28203 | 15:30 | - | Y | N | - | - |
| M387785 | 1 | - | - | - | | - | - | - | - | - | - | 9/5/1989 | 28207 | 16:00 | - | Y | N | - | - |
| M387785 | 1 | - | - | - | | - | - | - | - | - | - | 9/5/1989 | 28207 | 16:00 | - | N | N | - | - |
| M392507 | 0 | | - | - | | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M400227 | 1 | M400227-A | 4 | 2 | Yes | 5 | 3 | 1.5 | 8 | LIVE | YES | 09/03/89 | 84465-66 | 1:00 | NO | Y | Y | 28284 | UNK |
| M400227 | 1 | M400227-A | - | - | Yes | - | - | - | - | LIVE | YES | 09/03/89 | 84465-66 | 1:00 | NO | Y | N | - | - |
| M400227 | 1 | M400227-A | - | - | Yes | - | - | - | - | LIVE | YES | 09/03/89 | 84465-66 | 1:00 | NO | N | Y | 28284 | UNK |
| M400227 | 1 | M400227-A | - | - | Yes | - | - | - | - | LIVE | YES | 09/03/89 | 84465-66 | 1:00 | NO | N | N | - | - |
| M408612 | 0 | - | - | - | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M413241 | 0 | - | - | - | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M414099 | 4 | M414099-A | 5 | 2 | Yes | 6 | 4 | 2 | 10 | LIVE | YES | 9/10/1989 | 28361 | 2200 | NO | N | N | - | - |
| M414099 | 4 | M414099-A | - | - | Yes | - | - | - | - | LIVE | YES | 9/10/1989 | 28361 | 2200 | NO | N | N | - | - |
| M414099 | 4 | M414099-A | - | - | Yes | - | - | - | - | LIVE | YES | 9/10/1989 | 28361 | 2200 | NO | N | Y | 28365 | UNK |
| M414099 | 4 | M414099-A | - | - | Yes | - | - | - | - | LIVE | YES | 9/10/1989 | 28361 | 2200 | NO | N | N | - | - |
| M414099 | 4 | M414099-A | - | - | Yes | - | - | - | - | LIVE | YES | 9/10/1989 | 28361 | 2200 | NO | N | Y | 28365 | UNK |
| M414099 | 4 | M414099-A | - | - | Yes | - | - | - | - | LIVE | YES | 9/10/1989 | 28361 | 2200 | NO | N | N | - | - |
| M414099 | 4 | M414099-A | - | - | Yes | - | - | - | - | LIVE | YES | 9/10/1989 | 28361 | 2200 | NO | N | Y | 28365 | UNK |
| M414099 | 4 | M414099-B | 5 | 1 | No | 4 | 3 | 3 | 5 | LIVE | YES | 9/10/1989 | 28363 | 2300 | NO | N | Y | 28365 | UNK |
| M414099 | 4 | M414099-B | - | - | No | - | - | - | - | LIVE | YES | 9/10/1989 | 28363 | 2300 | NO | N | Y | 28365 | UNK |
| M414099 | 4 | M414099-B | - | - | No | - | - | - | - | LIVE | YES | 9/10/1989 | 28363 | 2300 | NO | N | Y | 28365 | UNK |
| M414099 | 4 | M414099-B | - | - | No | - | - | - | - | LIVE | YES | 9/10/1989 | 28363 | 2300 | NO | N | Y | 28365 | UNK |
| M414099 | 4 | M414099-B | - | - | No | - | - | - | - | LIVE | YES | 9/10/1989 | 28363 | 2300 | NO | N | Y | 28365 | UNK |
| M414099 | 4 | M414099-C | 3 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 9/11/1989 | 28365 | 400 | YES | N | N | - | - |
| M414099 | 4 | M414099-D | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 9/28/1989 | 28376 | 2300 | NO | N | N | - | - |
| M414099 | 4 | M414099-D | - | - | No | - | - | - | - | LIVE | YES | 9/28/1989 | 28376 | 2300 | NO | N | Y | 28365 | UNK |
| M414099 | 4 | M414099-D | - | - | No | - | - | - | - | LIVE | YES | 9/28/1989 | 28376 | 2300 | NO | N | Y | 28365 | UNK |
| M423870 | 0 | - | - | - | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M442913 | 0 | - | - | - | | - | - | - | - | - | - | 9/30/1989 | 28447 | 18:00 | - | Y | N | - | - |
| M462433 | 0 | - | - | - | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M473320 | 0 | - | - | - | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M476526 | 2 | M476526-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/7/1989 | 28553 | 18:00 | NO | N | Y | 28558, 28557 | N |
| M476526 | 2 | M476526-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 11/8/1989 | 28555 | - | NO | N | Y | 28557 | N |
| M476526 | 2 | M476526-B | - | - | No | - | - | - | - | - | - | 11/8/1989 | 28555 | - | - | Y | N | - | - |
| M498566 | 0 | - | - | - | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M488087 | 0 | - | - | - | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M491703 | 0 | - | - | - | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M494713 | 0 | - | - | - | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M505164 | 0 | - | - | - | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M511803 | 0 | - | - | - | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M513528 | 1 | M513528-A | 1 | 2 | Yes | 5 | 3 | 1.5 | 2 | LIVE | NO | 11/8/1989 | 85296 | 9:00 | NO | Y | N | - | - |
| M531098 | 4 | M531098-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 2/5/1990 | 28786-7 | - | NO | Y | Y | 28792 | UNK |
| M531098 | 4 | M531098-A | - | - | No | - | - | - | - | LIVE | YES | 2/5/1990 | 28786-7 | - | NO | Y | Y | 28792 | UNK |
| M531098 | 4 | M531098-B | 1 | 2 | Yes | UNK | UNK | UNK | 2 | PHOTO | NO | 2/6/1990 | 28791 | 21:00 | NO | N | Y | - | - |
| M531098 | 4 | M531098-C | 2 | 2 | Yes | UNK | UNK | UNK | 4 | PHOTO | NO | 2/6/1990 | 28792 | 22:00 | YES | Y | N | - | - |
| M531098 | 4 | M531098-C | - | - | Yes | - | - | - | - | PHOTO | NO | 2/6/1990 | 28792 | 22:00 | YES | Y | N | - | - |
| M531098 | 4 | M531098-D | 2 | 1 | No | UNK | UNK | UNK | 2 | LIVE | NO | 2/26/1990 | 28798 | 18:00 | YES | Y | Y | 28792 | UNK |
| M531098 | 4 | M531098-D | - | - | No | - | - | - | - | LIVE | NO | 2/26/1990 | 28798 | 18:00 | YES | Y | N | - | - |
| M535262 | 0 | | - | - | | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M536404 | 0 | | - | - | | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M538914 | 1 | M538914-A | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 11/21/1989 | 85466 | 3:00 | NO | N | N | - | - |
| M538914 | 1 | M538914-A | - | - | No | - | - | - | - | LIVE | YES | 11/21/1989 | 85466 | 3:00 | NO | Y | N | - | - |
| M541953 | 3 | M541953-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/31/1990 | 28881 | 21:00 | NO | N | Y | 28885 | N |
| M541953 | 3 | M541953-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 4/3/1990 | 28883 | 19:00 | NO | N | Y | 28885, 28881 | N |
| M541953 | 3 | M541953-C | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 4/4/1990 | 28885 | 8:00 | NO | N | N | - | - |
| M546433 | 0 | | - | - | | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M546558 | 1 | M546558-A | 5 | 1 | No | 5 | 4 | 4 | 5 | LIVE | YES | 11/26/1989 | 28927 | 11:00 | NO | N | N | - | - |
| M546558 | 1 | M546558-A | - | - | No | - | - | - | - | LIVE | YES | 11/26/1989 | 28927 | 11:00 | NO | N | Y | 28923 | N |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| M366806 | N/A | - | - | - | - | - | - | - | - | - | - | - | - | - | Y | N |
| M370020 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M370020 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M370020 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M370020 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| M381429 | Unfamiliar | - | 2 | UNK | 1 | 2 | 0 | 0 | 0 | 2 | 0 | 2 | N | - | N | N |
| M381429 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| M381429 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M381429 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| M381429 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M386137 | Unfamiliar | - | 1 | 6 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| M387785 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M387785 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M387785 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M387785 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M387785 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M387785 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M387785 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| M392507 | N/A | | | | | | 0 | | | | | | 0 | | | N | - |
| M400227 | Both | - | 1 | 5 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | Y | Y | N | N |
| M400227 | Familiar Perp | - | 1 | 5 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| M400227 | Previous ID | - | 1 | 5 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | Y | Y | N | N |
| M400227 | Unfamiliar | - | 1 | 5 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| M409812 | N/A | - | - | - | - | #VALUE! | - | - | - | - | - | #VALUE! | - | - | N | - |
| M413241 | N/A | - | - | - | - | #VALUE! | - | - | - | - | - | #VALUE! | - | - | N | - |
| M414099 | Unfamiliar | | 2 | 6 | 2 | 4 | 3 | 0 | 1 | 0 | 0 | 4 | N | - | Y | Y |
| M414099 | Unfamiliar | Witness A | | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| M414099 | Previous ID | Witness A | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| M414099 | Unfamiliar | Witness B | | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| M414099 | Previous ID | Witness B | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| M414099 | Unfamiliar | Witness C | | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| M414099 | Previous ID | Witness C | | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| M414099 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| M414099 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| M414099 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| M414099 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| M414099 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| M414099 | Unfamiliar | - | 3 | UNK | UNK | #VALUE! | 9 | 0 | 0 | 0 | 0 | 9 | N | - | Y | Y |
| M414099 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| M414099 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| M414099 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| M423870 | N/A | - | - | - | - | #VALUE! | - | - | - | - | - | #VALUE! | - | - | N | - |
| M442913 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| M462433 | N/A | - | - | - | - | #VALUE! | - | - | - | - | - | #VALUE! | - | - | N | - |
| M473320 | N/A | - | - | - | - | #VALUE! | - | - | - | - | - | #VALUE! | - | - | N | - |
| M478526 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| M478526 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| M478526 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| M488568 | N/A | - | - | - | - | #VALUE! | - | - | - | - | - | #VALUE! | - | - | N | - |
| M488087 | N/A | - | - | - | - | #VALUE! | - | - | - | - | - | #VALUE! | - | - | N | - |
| M491703 | N/A | - | - | - | - | #VALUE! | - | - | - | - | - | #VALUE! | - | - | Y | N |
| M494713 | N/A | - | - | - | - | #VALUE! | - | - | - | - | - | #VALUE! | - | - | N | - |
| M505164 | N/A | - | - | - | - | #VALUE! | - | - | - | - | - | #VALUE! | - | - | N | - |
| M511603 | N/A | - | - | - | - | #VALUE! | - | - | - | - | - | #VALUE! | - | - | N | - |
| M513528 | Familiar Perp | - | 1 | 5 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| M531098 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| M531098 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| M531098 | Familiar Perp | - | 1 | UNK | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| M531098 | Familiar Perp | - | 1 | UNK | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| M531098 | Familiar Perp | - | 1 | UNK | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| M531098 | Both | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| M531098 | Both | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| M535262 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| M538404 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| M538914 | Unfamiliar | - | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| M538914 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M541953 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| M541953 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| M541953 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| M546433 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| M546558 | Unfamiliar | - | 3 | 5 | 1 | 3 | 2 | 0 | 1 | 0 | 0 | 3 | N | - | N | N |
| M546558 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| M546558 | 1 | M546558-A | - | - | No | - | - | - | - | LIVE | YES | 11/26/1989 | 28927 | 11:00 | NO | N | Y | 28923 | N |
| M547804 | 0 | | | | | 0 | | | | | | | | | | | | | |
| M551461 | 1 | M551461-C | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 1/28/1990 | 85946 | 15:25 | YES | N | N | - | - |
| M551461 | 1 | M551461-A | - | - | No | - | - | - | - | LIVE | YES | 1/28/1990 | 85946 | 15:25 | YES | Y | N | - | - |
| M556260 | 3 | M556260-A | 5 | 1 | No | 5 | 4 | 4 | 5 | LIVE | YES | 12/2/1989 | 29005 | 19:30 | NO | Y | N | - | - |
| M556260 | 3 | M556260-A | - | - | No | - | - | - | - | LIVE | - | 12/2/1989 | 29005 | 19:30 | NO | N | N | - | - |
| M556260 | 3 | M556260-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 4/9/1990 | 29014 | 22:00 | NO | N | N | - | - |
| M556260 | 3 | M556260-C | 4 | 1 | No | 4 | 3 | 3 | 4 | LIVE | YES | 4/16/1990 | 29017 | 20:00 | NO | N | N | - | - |
| M567804 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M566615 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M579697 | 2 | M579697-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 12/17/1989 | 29077 | 9:00 | NO | N | N | - | - |
| M579697 | 2 | M579697-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 12/17/1989 | 29078 | UNK | NO | N | Y | 29077 | N |
| M579697 | 2 | M579697-B | - | - | No | - | - | - | - | LIVE | YES | 12/17/1989 | 29078 | UNK | NO | N | N | - | - |
| M580304 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M595074 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M596533 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| M599001 | 1 | M599001-A | 2 | 3 | Yes | 6 | 3 | 1 | 6 | LIVE | YES | 12/31/1989 | 29182 | 3:00 | NO | N | N | - | - |
| M599175 | 0 | | | | Yes | | | | | | | | | | | | | | |
| N016505 | 1 | N016505-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/12/1990 | 78931-2 | 1:30 | NO | N | Y | 78921 | UNK |
| N018105 | 1 | N018105-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/5/1990 | 78971-2 | 23:00 | NO | N | Y | 78972; 78967 | UNK |
| N022849 | 2 | N022849-A | 5 | 1 | No | 4 | 3 | 3 | 5 | LIVE | YES | 1/15/1990 | 78995; 78999 | 6:30 | NO | N | N | - | - |
| N022849 | 2 | N022849-A | - | - | No | - | - | - | - | LIVE | YES | 1/15/1990 | 78996; 78999 | 6:30 | NO | Y | N | - | - |
| N022849 | 2 | N022849-B | 6 | 2 | Yes | 5 | 3 | 1.5 | 12 | LIVE | YES | 1/15/1990 | 78997-8 | 4:10 | NO | Y | N | - | - |
| N022849 | 2 | N022849-B | - | - | Yes | - | - | - | - | LIVE | YES | 1/15/1990 | 78997-8 | 4:10 | NO | N | N | - | - |
| N023466 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| N033639 | 2 | N033639-A | 1 | 1 | No | 10 | 9 | 9 | 1 | PHOTO | NO | UNK | 79208 | UNK | NO | N | N | - | - |
| N033639 | 2 | N033639-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 1/22/1990 | 79078-9 | 22:30 | NO | N | N | - | - |
| N033639 | 2 | N033639-B | - | - | No | - | - | - | - | LIVE | YES | 1/22/1990 | 79078-9 | 22:30 | NO | N | Y | 79086 | N |
| N033855 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| N039007 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| N048293 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| N050133 | 1 | N050133-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/13/1990 | 79190 | 17:00 | NO | N | N | - | - |
| N051127 | 0 | - | - | - | No | - | - | - | - | - | - | 1/31/1990 | 79215 | 22:00 | - | N | N | - | - |
| N053000 | 3 | N053000-A | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 2/2/1990 | 79238 | 5:00 | NO | N | N | - | - |
| N053000 | 3 | N053000-A | - | - | No | - | - | - | - | LIVE | YES | 2/2/1990 | 79238 | 5:00 | NO | Y | N | - | - |
| N053551 | 0 | | | | | 0 | | | | | | | | | | | | | |
| N071698 | 0 | | | | | 0 | | | | | | | | | | | | | |
| N074081 | 1 | N074081-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 2/15/1990 | 79304 | 15:30 | YES | Y | N | - | - |
| N074098 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| N075240 | 2 | N075240-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 4/24/1990 | 79370 | 17:45 | NO | N | Y | 79372 | N |
| N075240 | 2 | N075240-B | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 4/25/1990 | 79372 | 5:00 | NO | N | N | - | - |
| N088715 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| N114280 | 1 | N114280-A | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 3/15/1990 | 79420-1 | 22:45 | NO | N | N | - | - |
| N131559 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| N133837 | 2 | N133837-A | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 3/24/1990 | 79498; 79505 | 23:30 | NO | N | N | - | - |
| N133837 | 2 | N133837-B | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 3/25/1990 | 79503 | 15:30 | NO | N | N | - | - |
| N133837 | 2 | N133837-B | - | - | No | - | - | - | - | PHOTO | NO | 3/25/1990 | 79503 | 15:30 | NO | Y | N | - | - |
| N133837 | 2 | N133837-C | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 4/1/1990 | 79508 | 23:00 | NO | N | Y | 79498; 79505 | UNK |
| N133837 | 2 | N133837-C | - | - | No | - | - | - | - | LIVE | YES | 4/1/1990 | 79508 | 23:00 | NO | N | Y | 79505 | UNK |
| N133837 | 2 | N133837-C | - | - | No | - | - | - | - | LIVE | YES | 4/1/1990 | 79508 | 23:00 | NO | N | Y | 79503 | UNK |
| N176796 | 3 | N176796-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 5/13/1990 | 79534 | 1:00 | NO | N | Y | 79536; 79541 | N |
| N176796 | 3 | N176796-A | - | - | No | - | - | - | - | LIVE | YES | 5/13/1990 | 79534 | 1:00 | NO | N | N | - | - |
| N176796 | 3 | N176796-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 5/13/1990 | 79538 | 18:00 | NO | N | N | - | - |
| N176796 | 3 | N176796-C | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 5/13/1990 | 79541 | 20:05 | NO | N | N | - | - |
| N192214 | 1 | N192214-A | 3 | 2 | Yes | 4 | 2 | 1 | 6 | LIVE | YES | 5/8/1990 | 79565 | 2:15 | NO | N | N | - | - |
| N192813 | 0 | - | - | - | - | - | - | - | - | - | - | 5/1/1990 | 79563 | 4:00 | - | Y | N | - | - |
| N201263 | 3 | - | - | - | - | - | - | - | - | - | - | 5/6/1990 | 89335 | 7:00 | - | N | N | - | - |
| N201263 | 3 | - | - | - | - | - | - | - | - | - | - | 5/7/1990 | 89326 | 22:08 | - | Y | N | - | - |
| N201263 | 3 | N201263-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 5/7/1990 | 89324 | 22:08 | YES | N | N | - | - |
| N201263 | 3 | N201263-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 5/9/1990 | 89321 | 23:50 | YES | Y | N | - | - |
| N201263 | 3 | N201263-C | 1 | 2 | Yes | 4 | 2 | 1 | 2 | LIVE | YES | 5/18/1990 | 89311 | 18:00 | NO | N | N | - | - |
| N201263 | 3 | N201263-C | - | - | Yes | - | - | - | - | LIVE | YES | 5/18/1990 | 89311 | 18:00 | NO | N | Y | 89324 | UNK |
| N203334 | 1 | N203334-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/7/1990 | 89430 | 14:00 | NO | N | N | - | - |
| N206335 | 2 | N206335-A | 1 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 5/25/1990 | 79692 | - | NO | N | Y | 79687 | UNK |
| N206335 | 2 | N206335-A | - | - | No | - | - | - | - | LIVE | YES | 5/25/1990 | 79692 | - | NO | N | Y | 79687 | UNK |
| N206335 | 2 | N206335-B | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 5/25/1990 | 79689 | - | NO | N | N | - | - |
| N206335 | 2 | - | - | - | - | - | - | - | - | - | - | 5/25/1990 | 79694-5 | 2:00 | - | N | N | - | - |
| N214730 | 0 | - | - | - | No | 0 | | | | | | | | | | | | | |
| N217008 | 0 | - | - | - | No | 0 | | | | | | | | | | | | | |
| N220051 | 0 | - | - | - | - | - | - | - | - | - | - | 5/17/1990 | 79808 | 5:00 | - | Y | N | - | - |
| N220051 | 0 | - | - | - | - | - | - | - | - | - | - | 5/18/1990 | 79813 | 3:30 | - | Y | Y | 79808 | N |
| N234297 | 0 | - | - | - | - | - | - | - | - | - | - | 8/23/1990 | 79840 | - | - | - | - | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| M546558 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| M547604 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| M551481 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| M551481 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| M556260 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| M556260 | Unfamiliar | - | 4 | 5 | 1 | 4 | 0 | 0 | 0 | 4 | 0 | 4 | N | - | N | N |
| M556260 | Unfamiliar | - | 2 | 4 | 1 | 2 | 1 | 1 | 0 | 0 | 0 | 2 | N | - | N | N |
| M556260 | Unfamiliar | - | 4 | 4 | 1 | 4 | 3 | 0 | 1 | 0 | 0 | 4 | N | - | N | N |
| M567604 | N/A | - | - | - | - | #VALUE! | - | - | - | - | - | #VALUE! | N | - | N | - |
| M569615 | N/A | - | - | - | - | #VALUE! | - | - | - | - | - | #VALUE! | - | - | N | - |
| M579697 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| M579697 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| M579697 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| M580364 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| M596674 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| M596533 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| M596001 | Unfamiliar | - | 2 | 6 | 3 | 6 | 2 | 0 | 1 | 0 | 3 | 6 | N | - | N | N |
| M599175 | N/A | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| N016505 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N018105 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| N022849 | Unfamiliar | - | 4 | 4 | 1 | 4 | 1 | 0 | 3 | 0 | 0 | 4 | N | - | Y | N |
| N022849 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| N022849 | Familiar Perp | - | 1 | 5 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | Y | N |
| N022849 | Unfamiliar | - | 5 | 5 | 2 | 10 | 4 | 0 | 6 | 0 | 0 | 10 | N | - | Y | N |
| N023406 | N/A | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| N033639 | Unfamiliar | - | 1 | 10 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N033639 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N033639 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N038855 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| N039007 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| N048293 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| N050133 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| N051127 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| N053000 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| N053000 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N053551 | N/A | | | | | 0 | | | | | | 0 | | | Y | N |
| N071698 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| N074081 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N074096 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| N075240 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N075240 | Unfamiliar | - | 2 | 5 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| N086715 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| N114280 | Unfamiliar | - | 2 | 6 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | N |
| N131559 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| N133637 | Unfamiliar | - | 2 | 6 | 1 | 2 | 1 | 0 | 0 | 0 | 1 | 2 | N | - | N | N |
| N133637 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N133637 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N133637 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N133637 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N133637 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| N176796 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | N |
| N176796 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| N176796 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| N176796 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| N192214 | Unfamiliar | - | 3 | 4 | 2 | 6 | 6 | 0 | 0 | 0 | 0 | 6 | N | - | Y | Y |
| N192813 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| N201263 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| N201263 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| N201263 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N201263 | Familiar Perp | - | 1 | UNK | 4 | 4 | 2 | 0 | 2 | 0 | 0 | 4 | N | - | N | N |
| N201263 | Unfamiliar | Witness A | | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N201263 | Previous ID | Witness A | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N203334 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N208335 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| N208335 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| N208335 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| N208335 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| N214730 | N/A | | | | | 0 | | | | | | 0 | | | Y | N |
| N217008 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| N220051 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| N220051 | Both | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| N234297 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N235038 | 0 | | | | No | 0 | | | | | | | | | | | | | |
| N237529 | 4 | N237529-A | 5 | 2 | Yes | 5 | 3 | 1.5 | 10 | LIVE | YES | 5/27/1990 | 79914-5 | 2:50 | NO | N | N | - | - |
| N237529 | 4 | N237529-D | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 5/29/1990 | 79931-2 | 1:20 | NO | N | N | - | - |
| N237529 | 4 | N237529-C | 7 | 1 | No | 5 | 4 | 4 | 7 | LIVE | YES | 6/1/1990 | 79941-2 | 9:00 | NO | N | Y | 79931 | N |
| N237529 | 4 | N237529-C | - | - | No | - | - | - | - | LIVE | YES | 6/1/1990 | 79941 | 9:00 | NO | N | Y | 79914 | UNK |
| N237529 | 4 | N237529-C | - | - | No | - | - | - | - | LIVE | YES | 6/1/1990 | 79941 | 9:00 | NO | N | Y | 79914 | UNK |
| N237529 | 4 | N237529-C | - | - | No | - | - | - | - | LIVE | YES | 6/1/1990 | 79941 | 9:00 | NO | N | Y | 79914 | UNK |
| N237529 | 4 | N237529-C | - | - | No | - | - | - | - | LIVE | YES | 6/1/1990 | 79941 | 9:00 | NO | N | N | - | - |
| N237529 | 4 | N237529-D | - | - | No | - | - | - | - | LIVE | YES | 6/1/1990 | 79941 | 9:00 | NO | N | Y | 79925 | UNK |
| N237529 | 4 | N237529-D | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 6/1/1990 | 79939 | 9:00 | NO | N | N | - | - |
| N246119 | 0 | | | | | | | | | | | | | | | | | | |
| N249047 | 6 | N249047-A | 2 | 2 | Yes | 6 | 4 | 2 | 4 | LIVE | YES | 6/4/1990 | 90730 | 2:30 | NO | N | N | - | - |
| N249047 | 6 | N249047-B | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 6/5/1990 | 90726 | 8:30 | YES | N | N | - | - |
| N249047 | 6 | N249047-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 6/5/1990 | 90726 | 8:30 | YES | N | N | - | - |
| N249047 | 6 | N249047-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 6/5/1990 | 90726 | 8:30 | YES | Y | N | - | - |
| N249047 | 6 | N249047-E | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 6/5/1990 | 90726 | 8:30 | YES | N | N | - | - |
| N249047 | 6 | N249047-F | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 6/22/1990 | 90721 | 0:45 | NO | N | Y | 90728 | Y |
| N249047 | 6 | N249047-F | - | - | Yes | 5 | - | - | - | LIVE | YES | 6/22/1990 | 90721 | 0:45 | NO | N | Y | 90728 | Y |
| N249047 | 6 | N249047-F | - | - | No | 5 | - | - | - | LIVE | YES | 6/22/1990 | 90721 | 0:45 | NO | N | Y | 90760 | Y |
| N253258 | 4 | N253258-A | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 6/5/1990 | 80037 | 23:30 | NO | Y | N | - | - |
| N253258 | 4 | N253258-A | - | - | No | - | - | - | - | PHOTO | NO | 6/5/1990 | 80037 | 23:30 | NO | N | N | - | - |
| N253258 | 4 | N253258-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 6/6/1990 | 80040 | 23:00 | NO | Y | Y | 80037 | UNK |
| N253258 | 4 | N253258-B | - | - | No | - | - | - | - | LIVE | YES | 6/6/1990 | 80040 | 23:00 | NO | N | Y | 80037 | UNK |
| N253258 | 4 | N253258-C | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 6/6/1990 | 80042 | 23:30 | NO | N | Y | 80047 | NO |
| N253258 | 4 | N253258-C | - | - | No | - | - | - | - | LIVE | YES | 6/6/1990 | 80042 | 23:30 | NO | N | Y | 80047 | NO |
| N253258 | 4 | N253258-D | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 6/7/1990 | 80047 | 12:00 | NO | N | N | - | - |
| N256553 | 0 | - | - | - | - | - | - | - | - | - | - | 6/11/1990 | 80079 | 16:00 | - | Y | N | - | - |
| N262285 | 7 | N262285-A | 1 | 2 | Yes | 7 | 5 | 2.5 | 2 | LIVE | YES | 6/17/1990 | 80096 | 2:15 | NO | N | Y | 80096 | N |
| N262285 | 7 | N262285-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/24/1990 | 80102 | 7:30 | NO | Y | Y | 80096; 80106 | N |
| N262285 | 7 | N262285-C | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 6/24/1990 | 80106 | 21:15 | NO | Y | Y | 80096 | N |
| N262285 | 7 | N262285-D | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 6/24/1990 | 80107 | 21:15 | NO | N | N | - | - |
| N262285 | 7 | N262285-E | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/28/1990 | 80112 | - | NO | N | Y | 80107 | UNK |
| N262285 | 7 | N262285-F | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 6/28/1990 | 80114 | - | NO | N | N | - | - |
| N262285 | 7 | N262285-G | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 6/28/1990 | 80117 | - | NO | N | N | - | - |
| N263886 | 0 | - | - | - | - | - | - | - | - | - | - | | | | | | | | |
| N267450 | 4 | N267450-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 6/13/1990 | 80164 | - | YES | N | N | - | - |
| N267450 | 4 | N267450-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 7/2/1990 | 80168 | 17:00 | NO | N | Y | 80171 | N |
| N267450 | 4 | N267450-B | - | - | No | - | - | - | - | LIVE | YES | 7/2/1990 | 80168 | 17:00 | NO | N | Y | 80171 | N |
| N267450 | 4 | N267450-C | 2 | 1 | No | 4 | 3 | 3 | 2 | PHOTO | NO | 7/2/1990 | 80171 | 2:00 | NO | N | N | - | - |
| N267450 | 4 | N267450-C | - | - | No | - | - | - | - | PHOTO | NO | 7/2/1990 | 80171 | 2:00 | NO | N | N | - | - |
| N267450 | 4 | N267450-D | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | YES | 7/2/1990 | 80171 | 2:00 | YES | N | N | - | - |
| N276459 | 0 | - | - | - | - | - | - | - | - | - | - | | | | | | | | |
| N283686 | 0 | - | - | - | - | - | - | - | - | - | - | | | | | | | | |
| N346909 | 0 | - | - | - | - | - | - | - | - | - | - | 10/12/1990 | 80323 | - | - | Y | N | - | - |
| N352477 | 0 | - | - | - | - | - | - | - | - | - | - | 7/31/1990 | 91815 | 15:00 | - | N | N | - | - |
| N355608 | 0 | - | - | - | - | - | - | - | - | - | - | | | | | | | | |
| N350201 | 4 | N350201-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 8/9/1990 | 80376 | 22:30 | YES | N | N | - | - |
| N350201 | 4 | N350201-B | 5 | 2 | Yes | UNK | UNK | UNK | 10 | PHOTO | NO | 8/9/1990 | 80376 | 22:30 | YES | N | N | - | - |
| N350201 | 4 | N350201-B | - | - | Yes | - | - | - | - | PHOTO | NO | 8/9/1990 | 80376 | 22:30 | YES | N | Y | 80376 | UNK |
| N350201 | 4 | N350201-B | - | - | Yes | - | - | - | - | PHOTO | NO | 8/9/1990 | 80376 | 22:30 | YES | N | N | - | - |
| N350201 | 4 | N350201-B | - | - | Yes | - | - | - | - | PHOTO | NO | 8/9/1990 | 80380 | 23:30 | YES | N | N | - | - |
| N350201 | 4 | N350201-C | 3 | 2 | Yes | UNK | UNK | UNK | 6 | PHOTO | NO | 8/20/1990 | 80404 | 16:00 | YES | Y | Y | - | - |
| N350201 | 4 | N350201-C | - | - | Yes | - | - | - | - | PHOTO | NO | 8/20/1990 | 80404 | 16:00 | YES | Y | N | - | - |
| N350201 | 4 | N350201-C | - | - | Yes | - | - | - | - | PHOTO | NO | 8/20/1990 | 80405 | 16:00 | YES | Y | N | - | - |
| N350201 | 4 | N350201-D | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 8/22/1990 | 80407 | 21:35 | NO | N | N | - | - |
| N350201 | 4 | N350201-D | - | - | No | - | - | - | - | LIVE | YES | 8/22/1990 | 80407 | 21:35 | NO | N | Y | 80380 | N |
| N350201 | 4 | N350201-D | - | - | No | - | - | - | - | LIVE | YES | 8/22/1990 | 80407 | 21:35 | NO | N | Y | 80404 | N |
| N356285 | 0 | | | | | 0 | | | | | | | | | | | | | |
| N361224 | 0 | | | | | 0 | | | | | | | | | | | | | |
| N363181 | 1 | N363181-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 8/6/1990 | 92257 | 19:00 | NO | N | N | - | - |
| N363181 | 1 | - | - | - | - | - | - | - | - | - | - | 8/7/1990 | 92259 | - | - | N | N | - | - |
| N390185 | 0 | - | - | - | - | - | - | - | - | - | - | 08/24/1990 | 80543 | UNK | - | Y | N | - | - |
| N382324 | 0 | | | | | 0 | | | | | | | | | | | | | |
| N387262 | 0 | | | | | | | | | | | | | | | | | | |
| N388490 | 0 | | | | | 0 | | | | | | | | | | | | | |
| N409055 | 3 | N409055-A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 9/4/1990 | 92625 | 23:00 | NO | Y | N | - | - |
| N409055 | 3 | N409055-A | - | - | No | - | - | - | - | LIVE | YES | 9/4/1990 | 92625 | 23:00 | NO | N | N | - | - |
| N409055 | 3 | N409055-B | 3 | 1 | No | UNK | UNK | UNK | 3 | PHOTO | NO | 9/10/1990 | 92664 | 2:30 | YES | Y | N | - | - |
| N409055 | 3 | N409055-B | - | - | No | UNK | UNK | UNK | - | PHOTO | NO | 9/10/1990 | 92664 | 2:30 | YES | N | N | - | - |
| N409055 | 3 | N409055-C | - | - | No | - | - | - | - | PHOTO | NO | 9/10/1990 | 92664 | 2:30 | YES | N | N | - | - |
| N409055 | 3 | N409055-C | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 4/9/1991 | 92681 | 19:00 | NO | Y | Y | 92664 | UNK |

Case: 1:20-cv-04156 Document #: 339-18 Filed: 06/10/24 Page 449 of 511 PageID #:50416

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N235038 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| N237529 | Unfamiliar | - | 5 | 5 | 2 | 10 | 0 | 0 | 10 | 0 | 0 | 10 | N | - | N | N |
| N237529 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N237529 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N237529 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| N237529 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| N237529 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| N237529 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| N237529 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N237529 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N237529 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N246119 | N/A | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| N249047 | Unfamiliar | - | 2 | 6 | 2 | 4 | 2 | 0 | 2 | 0 | 0 | 4 | N | - | N | N |
| N249047 | Unfamiliar | - | 2 | UNK | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| N249047 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N249047 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N249047 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| N249047 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N249047 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N249047 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | N | - | N | N |
| N253258 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| N253258 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| N253258 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| N253258 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| N253258 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| N253258 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| N253258 | Unfamiliar | - | 2 | 5 | 1 | 2 | 0 | 2 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| N256553 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | N | Y | N | N |
| N256553 | Previous ID | - | 1 | 7 | 2 | 2 | 1 | 0 | 0 | 0 | 1 | 2 | N | - | N | N |
| N262285 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N262285 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N262285 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N262285 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N262285 | Unfamiliar | - | 2 | 4 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| N262285 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N263896 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| N267450 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N267450 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N267450 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| N267450 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N267450 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| N267450 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N276459 | N/A | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| N283696 | N/A | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| N345969 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | - | - | Y | Y |
| N352477 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| N355698 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| N356201 | Unfamiliar | - | 2 | UNK | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| N356201 | Unfamiliar | - | 3 | UNK | 2 | 6 | 0 | 0 | 6 | 0 | 0 | 6 | N | - | N | N |
| N356201 | Previous ID | Witness A | | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N356201 | Unfamiliar | Witness A | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| N356201 | Unfamiliar | - | 1 | UNK | 2 | 2 | 0 | 1 | 1 | 0 | 0 | 2 | N | - | N | N |
| N356201 | Familiar Perp | - | 1 | UNK | 2 | 2 | 1 | 0 | 0 | 0 | 1 | 2 | N | - | N | N |
| N356201 | Unfamiliar | - | 1 | UNK | 2 | 2 | 1 | 0 | 0 | 0 | 1 | 2 | N | - | N | N |
| N356201 | Familiar Perp | - | 1 | UNK | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| N356201 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| N356201 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N356201 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N356285 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| N361224 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| N363181 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| N363181 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| N390185 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| N382324 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| N387262 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| N388460 | N/A | | | | | 0 | | | | | | 0 | | | Y | N |
| N400055 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N400055 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N400055 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N400055 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N400055 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| N400055 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N409055 | 3 | N409055-C | - | - | No | - | - | - | - | LIVE | YES | 4/9/1991 | 92681 | 19:00 | NO | N | Y | 92664 | UNK |
| N413779 | 2 | N413779-A | 2 | 2 | Yes | UNK | UNK | UNK | 4 | PHOTO | NO | 9/5/1990 | 80600 | - | YES | N | N | - | - |
| N413779 | 2 | N413779-B | 3 | 1 | No | 6 | 5 | 5 | 3 | LIVE | YES | 9/5/1990 | 80606 | 22:00 | NO | N | N | - | - |
| N413779 | 2 | N413779-B | - | - | No | - | - | - | - | LIVE | YES | 9/5/1990 | 80606 | 22:00 | NO | N | Y | - | - |
| N414150 | 2 | N414150-A | 5 | 1 | No | 4 | 3 | 3 | 5 | LIVE | YES | 9/4/1990 | 80625 | - | NO | N | N | - | - |
| N414150 | 2 | N414150-B | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 9/5/1990 | 80627 | - | NO | N | N | - | - |
| N423181 | 0 | | | | | 0 | | | | | | | | | | | | | |
| N442470 | 4 | - | - | - | - | - | - | - | - | - | - | 9/21/1990 | 80697 | 4:30 | - | Y | N | - | - |
| N442470 | 4 | - | - | - | - | - | - | - | - | - | - | 9/21/1990 | 80697 | 4:30 | - | Y | N | - | - |
| N442470 | 4 | - | - | - | - | - | - | - | - | - | - | 9/21/1990 | 80697 | 4:30 | - | Y | N | - | - |
| N442470 | 4 | - | - | - | - | - | - | - | - | - | - | 9/21/1990 | 80698 | 4:30 | - | N | N | - | - |
| N442470 | 4 | N442470-A | 1 | 2 | Yes | UNK | UNK | UNK | 2 | PHOTO | NO | 9/21/1990 | 80698 | 4:30 | YES | N | N | - | - |
| N442470 | 4 | N442470-B | 3 | 3 | Yes | UNK | UNK | UNK | 9 | PHOTO | NO | 9/22/1990 | 80700 | 22:00 | YES | N | N | - | - |
| N442470 | 4 | - | - | - | - | - | - | - | - | - | - | 9/25/1990 | 80707 | - | - | Y | N | - | - |
| N442470 | 4 | N442470-C | 2 | 2 | Yes | 6 | 4 | 2 | 4 | LIVE | YES | 9/26/1990 | 80709 | 18:00 | NO | N | Y | 80700 | UNK |
| N442470 | 4 | N442470-C | - | - | Yes | - | - | - | - | LIVE | YES | 9/26/1990 | 80709 | 18:00 | NO | N | Y | 80700 | UNK |
| N442470 | 4 | - | - | - | - | - | - | - | - | - | - | 10/14/1990 | 80713 | 7:00 | - | Y | N | - | - |
| N442470 | 4 | N442470-D | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 12/17/1990 | 80718 | 23:50 | NO | N | Y | 80700 | N |
| N442470 | 4 | N442470-D | - | - | No | - | - | - | - | LIVE | YES | 12/17/1990 | 80718 | 23:50 | NO | N | Y | 80700 | N |
| N442470 | 4 | - | - | - | - | - | - | - | - | - | - | 12/17/1990 | 80717 | 23:00 | - | Y | N | - | - |
| N440089 | 0 | - | - | - | - | - | - | - | - | - | - | 9/24/1990 | 93467 | 1:00 | - | N | N | - | - |
| N458310 | 0 | | | | | 0 | | | | | | | | | | | | | |
| N475910 | 2 | - | - | - | - | - | - | - | - | - | - | 10/30/1990 | 80789 | 9:00 | - | Y | N | - | - |
| N475910 | 2 | N475910-A | 1 | 2 | Yes | 6 | 4 | 2 | 2 | PHOTO | NO | 10/30/1990 | 80789 | 9:00 | YES | N | N | - | - |
| N475910 | 2 | N475910-B | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 10/30/1990 | 80791 | 21:00 | NO | N | N | - | - |
| N475910 | 2 | N475910-B | - | - | No | - | - | - | - | LIVE | YES | 10/30/1990 | 80791 | 21:00 | NO | N | Y | 80789 | N |
| N475910 | 2 | - | - | - | - | - | - | - | - | - | - | 10/31/1990 | 80794 | - | - | Y | N | - | - |
| N498333 | 0 | | | | | 0 | | | | | | | | | | | | | |
| N513129 | 1 | N513129-A | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 11/4/1990 | 80841 | 21:00 | NO | N | N | - | - |
| N515329 | 0 | | | | | 0 | | | | | | | | | | | | | |
| N517875 | 6 | N517875-A | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 11/3/1990 | 80898 | 23:50 | NO | N | N | - | - |
| N517875 | 6 | N517875-B | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 11/3/1990 | 80899 | 23:50 | YES | N | N | - | N |
| N517875 | 6 | N517875-C | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 11/3/1990 | 80899 | 23:50 | YES | N | N | - | N |
| N517875 | 6 | N517875-D | 7 | 1 | No | 4 | 3 | 3 | 7 | LIVE | YES | 11/14/1990 | 80909 | 20:30 | NO | N | N | - | - |
| N517875 | 6 | N517875-D | - | - | No | - | - | - | - | LIVE | YES | 11/14/1990 | 80909 | 20:30 | NO | N | Y | 80898 | UNK |
| N517875 | 6 | N517875-D | - | - | No | - | - | - | - | LIVE | YES | 11/14/1990 | 80909 | 20:30 | NO | N | Y | 80898 | UNK |
| N517875 | 6 | N517875-D | - | - | No | - | - | - | - | LIVE | YES | 11/14/1990 | 80909 | 20:30 | NO | N | Y | 80898 | UNK |
| N517875 | 6 | N517875-D | - | - | No | - | - | - | - | LIVE | YES | 11/14/1990 | 80909 | 20:30 | NO | N | Y | 80898 | UNK |
| N517875 | 6 | N517875-E | 4 | 1 | No | 4 | 3 | 3 | 4 | LIVE | YES | 12/13/1990 | 80919 | 23:55 | NO | N | N | - | N |
| N517875 | 6 | N517875-F | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 12/19/1990 | 80921 | 22:00 | NO | N | N | - | N |
| N517875 | 6 | - | - | - | - | - | - | - | - | - | - | 12/28/1990 | 80925 | 18:00 | - | Y | N | - | - |
| N541406 | 0 | | | | | 0 | | | | | | | | | | | | | |
| N581836 | 4 | N581836-A | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 12/12/1990 | 94585 | - | NO | N | Y | 94575 | N |
| N581836 | 4 | N581836-A | - | - | No | - | - | - | - | LIVE | YES | 12/12/1990 | 94585 | - | NO | N | N | - | - |
| N581836 | 4 | N581836-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 12/13/1990 | 94579 | 17:00 | YES | N | N | - | - |
| N581836 | 4 | N581836-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 4/7/1991 | 94575 | - | NO | N | N | - | - |
| N581836 | 4 | N581836-D | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 4/7/1991 | 94577 | - | NO | N | N | - | - |
| N595821 | 0 | | | | | 0 | | | | | | | | | | | | | |
| N601834 | 0 | | | | | 0 | | | | | | | | | | | | | |
| P015036 | 0 | | | | | | | | | | - | - | - | - | - | - | - | - | - | - |
| P018275 | 0 | | | | | | | | | | - | - | - | - | - | - | - | - | - | - |
| P023938 | 0 | | | | | | | | | | - | - | - | - | - | - | - | - | - | - |
| P025834 | 4 | P025834-A | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 1/28/1991 | 68236 | - | NO | N | N | - | - |
| P025834 | 4 | P025834-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 1/30/1991 | 68104 | - | NO | N | N | - | - |
| P025834 | 4 | P025834-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/30/1991 | 68106 | - | NO | N | N | - | - |
| P025834 | 4 | P025834-D | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 4/1/1991 | 68161 | - | NO | N | Y | 68194 | N |
| P025050 | 1 | P025050-A | 3 | 2 | Yes | 8 | 6 | 3 | 6 | LIVE | YES | 1/19/1991 | 45138 | 5:00 | NO | N | N | - | - |
| P025050 | 1 | P025050-A | - | - | Yes | - | - | - | - | LIVE | YES | 1/19/1991 | 45138 | 5:00 | NO | N | Y | - | - |
| P037621 | 1 | P037621-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/29/1991 | 45158 | 1:00 | NO | Y | N | - | - |
| P042453 (open file) | 2 | P042453-A | 1 | 2 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 1/31/1991 | 45181 | 10:00 | YES | N | N | - | - |
| P042453 (open file) | 2 | P042453-B | 2 | 2 | Yes | 5 | 3 | 1.5 | 4 | LIVE | YES | 1/31/1991 | 45189 | 23:00 | NO | N | N | - | - |
| P049272 | 3 | - | - | - | - | - | - | - | - | - | - | 2/6/1991 | 68781 | - | - | N | N | - | - |
| P049272 | 3 | P049272-A | 2 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 5/13/1991 | 142574 | 21:00 | YES | N | N | - | - |
| P049272 | 3 | P049272-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 5/13/1991 | 142574 | 21:00 | NO | N | Y | 142574 | UNK |
| P049272 | 3 | P049272-B | - | - | No | - | - | - | - | LIVE | YES | 5/13/1991 | 142574 | 21:00 | NO | N | Y | 142574 | UNK |
| P049272 | 3 | P049272-C | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 6/14/1991 | 142583 | 17:00 | NO | N | N | - | - |
| P015059 | 0 | - | - | - | - | - | - | - | - | - | - | 2/27/1991 | 142625 | - | - | N | N | - | - |
| P051734 | 3 | P051734-A | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 2/19/1991 | 45298 | 9:00 | YES | Y | N | - | - |
| P051734 | 3 | P051734-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 2/21/1991 | 69084 | 6:00 | NO | N | N | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N409055 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N413779 | Unfamiliar | - | 2 | UNK | 2 | 4 | 0 | 0 | 4 | 0 | 0 | 4 | N | - | N | N |
| N413779 | Unfamiliar | - | 2 | 6 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| N413779 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N414150 | Unfamiliar | - | 5 | 4 | 1 | 5 | 3 | 0 | 2 | 0 | 0 | 5 | N | - | N | N |
| N414150 | Unfamiliar | - | 4 | 5 | 1 | 4 | 3 | 0 | 1 | 0 | 0 | 4 | N | - | N | N |
| N423181 | N/A | | | | | 0 | | | | | | 0 | | | Y | N |
| N442470 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| N442470 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| N442470 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| N442470 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| N442470 | Unfamiliar | - | 1 | UNK | 2 | 2 | 0 | 2 | 0 | 0 | 0 | 2 | N | - | N | N |
| N442470 | Unfamiliar | - | 3 | UNK | 3 | 9 | 0 | 0 | 9 | 0 | 0 | 9 | N | - | N | N |
| N442470 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| N442470 | Previous ID | - | 1 | 6 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| N442470 | Previous ID | - | 1 | 6 | 2 | 2 | 0 | 0 | 1 | 0 | 1 | 2 | N | - | N | N |
| N442470 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| N442470 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| N442470 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| N442470 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| N449089 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| N458310 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| N475910 | Familiar Perp | - | | - | | - | | - | - | - | - | - | Y | Y | Y | Y |
| N475910 | Unfamiliar | - | 1 | 6 | 2 | 2 | 1 | 0 | 0 | 0 | 1 | 2 | N | - | Y | Y |
| N475910 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| N475910 | Previous ID | - | 1 | 6 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| N475910 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| N498333 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| N513129 | Unfamiliar | - | 3 | 5 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | Y | Y |
| N515329 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| N517875 | Unfamiliar | - | 2 | 5 | 1 | 2 | 0 | 2 | 0 | 0 | 0 | 2 | N | - | N | N |
| N517875 | Unfamiliar | - | 2 | UNK | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| N517875 | Unfamiliar | - | 2 | UNK | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| N517875 | Unfamiliar | - | 2 | 4 | 1 | 2 | 0 | 0 | 0 | 0 | 2 | 2 | N | - | N | N |
| N517875 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | N | - | N | N |
| N517875 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | N | - | N | N |
| N517875 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | N | - | N | N |
| N517875 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| N517875 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | N | - | N | N |
| N517875 | Unfamiliar | - | 4 | 4 | 1 | 4 | 2 | 2 | 0 | 0 | 0 | 4 | N | - | N | N |
| N517875 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| N517875 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| N541406 | N/A | | | | | 0 | | | | | | 0 | | | Y | N |
| N581836 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N581836 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N581836 | Unfamiliar | - | 1 | UNK | UNK | #VALUE! | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N581836 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N581836 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| N595621 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| N601834 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| P015036 | - | - | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| P018275 | - | - | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| P023698 | - | - | - | - | - | - | - | - | - | - | - | - | - | | Y | - |
| P025834 | Unfamiliar | - | 3 | 4 | 1 | 3 | 1 | 0 | 2 | 0 | 0 | 3 | N | - | N | N |
| P025834 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P025834 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P025834 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P025960 | Unfamiliar | - | 2 | 8 | 2 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | N | - | N | N |
| P025960 | Familiar Perp | - | 1 | 8 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| P037621 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P042453 (open file) | Unfamiliar | - | 2 | UNK | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| P042453 (open file) | Unfamiliar | - | 2 | 5 | 2 | 4 | 3 | 0 | 1 | 0 | 0 | 4 | N | - | N | N |
| P040272 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | Y | Y |
| P040272 | Unfamiliar | - | 2 | UNK | UNK | #VALUE! | 0 | 2 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| P040272 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| P040272 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| P040272 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| P051656 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| P051734 | Familiar Perp | - | 1 | UNK | UNK | #VALUE! | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| P051734 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P051734 | 3 | P051734-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 2/21/1991 | 14:00 | 69082 | NO | Y | N | - | - |
| P054306 | 6 | P054306-A | 4 | 1 | No | UNK | UNK | UNK | 4 | PHOTO | NO | 2/7/1991 | 22:30 | 128679 | YES | N | N | - | - |
| P054306 | 6 | P054306-A | - | - | No | - | - | - | - | PHOTO | NO | 2/7/1991 | 22:30 | 128679 | YES | Y | N | - | - |
| P054306 | 6 | P054306-A | - | - | No | - | - | - | - | PHOTO | NO | 2/7/1991 | 22:30 | 128679 | YES | Y | N | - | - |
| P054306 | 6 | P054306-B | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | NO | 2/7/1991 | 22:30 | 128679 | NO | N | Y | 128679 | N |
| P054306 | 6 | P054306-B | - | - | No | - | - | - | - | LIVE | NO | 2/7/1991 | 22:30 | 128679 | NO | Y | Y | 128679 | N |
| P054306 | 6 | P054306-B | - | - | No | - | - | - | - | LIVE | NO | 2/7/1991 | 22:30 | 128679 | NO | Y | Y | 128679 | N |
| P054306 | 6 | P054306-C | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 11/21/1991 | - | 128671 | YES | N | N | - | - |
| P054306 | 6 | P054306-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/12/1992 | 21:00 | 128679 | NO | N | N | - | - |
| P054306 | 6 | P054306-E | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/12/1992 | 23:00 | 128631 | NO | N | Y | 128624 | UNK |
| P054306 | 6 | P054306-F | 1 | 2 | Yes | 5 | 3 | 1.5 | 2 | PHOTO | NO | 1/12/1992 | - | 128646 | NO | N | N | - | - |
| P060434 | 2 | P060434-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 2/9/1991 | 10:00 | 128728 | NO | N | N | - | - |
| P060434 | 2 | P060434-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 2/9/1991 | 14:00 | 128739 | NO | Y | N | - | - |
| P060216 | 0 | - | - | - | - | - | - | - | - | - | - | 3/11/1991 | 6:00 | 45319 | - | Y | N | - | - |
| P096838 | 4 | P096838-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/21/1991 | 0:30 | 45340 | NO | N | N | - | - |
| P096838 | 4 | P096838-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 6/14/1997 | 22:00 | 45347 | NO | N | N | - | - |
| P096838 | 4 | P096838-C | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 6/14/1997 | 22:00 | 45347 | NO | N | Y | 45347 | Y |
| P096838 | 4 | P096838-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/17/1999 | 19:40 | 69456 | NO | N | Y | 45351; 45347 | N |
| P105533 | 0 | | | | | | | | | | | - | - | - | - | - | - | - | - |
| P117631 | 0 | - | - | - | - | - | - | - | - | - | - | 3/26/1991 | 23:55 | 69613 | - | Y | N | - | - |
| P118133 | 1 | P118133-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 3/17/1991 | 23:55 | 69758 | YES | N | N | - | - |
| P118133 | 1 | - | - | - | - | - | - | - | - | - | - | 5/10/1991 | 23:00 | 45434 | - | Y | N | - | - |
| P118133 | 1 | - | - | - | - | - | - | - | - | - | - | 11/20/1991 | 23:30 | 45443 | - | Y | Y | 45434 | N |
| P120907 | 0 | | | | | | | | | | | - | - | - | - | - | - | - | - |
| P124971 | 0 | - | - | - | - | - | - | - | - | - | - | 3/26/1991 | 23:30 | 45508 | - | N | N | - | - |
| P124971 | 0 | - | - | - | - | - | - | - | - | - | - | 4/3/1991 | 23:55 | 45511 | - | Y | N | - | - |
| P127109 | 0 | | | | | | | | | | | - | - | - | - | - | - | - | - |
| P128067 | 3 | P128067-A | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 4/14/1991 | 17:00 | 45552 | NO | N | N | - | - |
| P128067 | 3 | P128067-A | - | - | No | - | - | - | - | LIVE | YES | 4/14/1991 | 17:00 | 45552 | NO | N | Y | 45551 | Y |
| P128067 | 3 | P128067-A | - | - | No | - | - | - | - | LIVE | YES | 4/14/1991 | 17:00 | 45552 | NO | N | Y | 45551 | Y |
| P128067 | 3 | - | - | - | - | - | - | - | - | - | - | 8/23/1991 | 13:00 | 45556 | - | N | N | - | - |
| P128067 | 3 | - | - | - | - | - | - | - | - | - | - | 8/24/1991 | 23:00 | 45558 | - | Y | N | - | - |
| P128067 | 3 | P128067-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/11/1991 | 22:00 | 45560 | NO | N | N | - | - |
| P128067 | 3 | P128067-C | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 9/14/1991 | - | 45562 | YES | N | N | - | - |
| P128067 | 3 | - | - | - | - | - | - | - | - | - | - | 9/14/1991 | - | 45565 | - | Y | N | - | - |
| P128067 | 3 | - | - | - | - | - | - | - | - | - | - | 9/18/1991 | - | 45578 | - | Y | N | - | - |
| P129569 | 5 | P129569-A | 5 | 2 | Yes | 8 | 6 | 3 | 10 | LIVE | YES | 3/23/1991 | 23:55 | 45587 | NO | N | N | - | - |
| P129569 | 5 | P129569-B | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 3/20/1991 | - | 45560 | NO | N | N | - | - |
| P129569 | 5 | P129569-C | 1 | 1 | No | 3 | 2 | 2 | 1 | LIVE | YES | 11/8/1993 | 23:45 | 45613 | NO | Y | N | - | - |
| P129569 | 5 | P129569-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/20/2002 | 13:08 | 70386 | NO | N | Y | 45600 | N |
| P129569 | 5 | P129569-E | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 7/7/2002 | 17:34 | 70382 | NO | N | Y | 45600 | N |
| P129746 | 0 | | | | | | | | | | | - | - | - | - | - | - | - | - |
| P130080 | 0 | | | | | | | | | | | - | - | - | - | - | - | - | - |
| P141860 | 1 | - | - | - | - | - | - | - | - | - | - | 4/22/1991 | 23:00 | 45655 | - | Y | N | - | - |
| P141860 | 1 | P141860-A | 1 | 2 | Yes | 6 | 4 | 2 | 2 | LIVE | YES | 5/4/1991 | 21:00 | 45665 | NO | N | N | - | - |
| P141860 | 1 | P141860-A | - | - | Yes | - | - | - | - | LIVE | YES | 5/4/1991 | 21:00 | 45665 | NO | Y | Y | 45663 | UNK |
| P141860 | 1 | - | - | - | - | - | - | - | - | - | - | 5/4/1991 | 22:00 | 45668 | - | N | N | - | - |
| P144513 | 0 | | | | | | | | | | | - | - | - | - | - | - | - | - |
| P162718 | 0 | | | | | | | | | | | - | - | - | - | - | - | - | - |
| P175665 | 1 | P175665-A | 6 | 2 | Yes | 7 | 5 | 2.5 | 12 | LIVE | YES | 4/20/1991 | 3:30 | 142847 | NO | Y | Y | 142845 | N |
| P175665 | 1 | P175665-A | - | - | Yes | - | - | - | - | LIVE | YES | 4/20/1991 | 3:30 | 142847 | NO | N | N | - | - |
| P175665 | 1 | P175665-A | - | - | Yes | - | - | - | - | LIVE | YES | 4/20/1991 | 3:30 | 142847 | NO | Y | Y | 142845 | N |
| P175665 | 1 | P175665-A | - | - | Yes | - | - | - | - | LIVE | YES | 4/20/1991 | 3:30 | 142847 | NO | N | N | - | - |
| P175665 | 1 | P175665-A | - | - | Yes | - | - | - | - | LIVE | YES | 4/20/1991 | 3:30 | 142847 | NO | Y | Y | 142845 | N |
| P175665 | 1 | P175665-A | - | - | Yes | - | - | - | - | LIVE | YES | 4/20/1991 | 3:30 | 142847 | NO | N | N | - | - |
| P175665 | 1 | P175665-A | - | - | Yes | - | - | - | - | LIVE | YES | 4/20/1991 | 3:30 | 142847 | NO | N | N | - | - |
| P182708 | 0 | | | | | | | | | | | - | - | - | - | - | - | - | - |
| P190027 | 4 | P190027-A | 4 | 1 | No | 6 | 5 | 5 | 4 | LIVE | YES | 5/17/1991 | 16:00 | 45806 | NO | N | N | - | - |
| P190027 | 4 | P190027-A | - | - | No | - | - | - | - | LIVE | YES | 5/17/1991 | 16:00 | 45806 | NO | Y | N | - | - |
| P190027 | 4 | P190027-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 1/7/1992 | - | 71238 | YES | N | N | - | - |
| P190027 | 4 | P190027-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/21/1992 | - | 45815 | NO | N | Y | 71238 | N |
| P190027 | 4 | P190027-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 1/21/1992 | - | 45821 | YES | N | Y | 45806 | N |
| P209994 | 0 | | | | | | | | | | | - | - | - | - | - | - | - | - |
| P218019 | 0 | | | | | | | | | | | - | - | - | - | - | - | - | - |
| P237402 | 0 | | | | | | | | | | | - | - | - | - | - | - | - | - |
| P239485 | 0 | | | | | | | | | | | - | - | - | - | - | - | - | - |
| P246193 | 0 | | | | | | | | | | | - | - | - | - | - | - | - | - |
| P246443 | 0 | | | | | | | | | | | - | - | - | - | - | - | - | - |
| P251800 | 3 | P251800-A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 6/9/1991 | 23:30 | 45950 | NO | N | N | - | - |
| P251800 | 3 | P251800-A | - | - | No | - | - | - | - | LIVE | YES | 6/9/1991 | 23:30 | 45950 | NO | N | Y | 45953 | N |
| P251800 | 3 | P251800-B | 3 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 6/7/1991 | - | 45953 | YES | N | N | - | - |
| P251800 | 3 | P251800-C | 2 | 1 | No | 7 | 6 | 6 | 2 | PHOTO | NO | 6/9/1991 | - | 45956 | NO | N | N | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P051734 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| P054396 | Unfamiliar | - | 2 | UNK | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| P054396 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| P054396 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| P054396 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| P054396 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| P054396 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| P054396 | Unfamiliar | - | 2 | UNK | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | N |
| P054396 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P054396 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P054396 | Unfamiliar | - | 1 | 5 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | Y | N |
| P060434 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| P060434 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P090216 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| P096838 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| P096838 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P096838 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P096838 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P105533 | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - | - |
| P117631 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| P118133 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P118133 | Familiar Perp | - | - | - | - | #VALUE! | - | - | - | - | - | #VALUE! | Y | Y | Y | Y |
| P118133 | Both | - | - | - | - | #VALUE! | - | - | - | - | - | #VALUE! | Y | Y | Y | Y |
| P120567 | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - | - |
| P124671 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | - |
| P124671 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | - |
| P127109 | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - | - |
| P128067 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| P128067 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | Y | Y | Y | N |
| P128067 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | Y | Y | Y | N |
| P128067 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | Y | N |
| P128067 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| P128067 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P128067 | Unfamiliar | - | 1 | UNK | UNK | #VALUE! | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| P128067 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| P128067 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| P129569 | Unfamiliar | - | 5 | 8 | 2 | 10 | 2 | 0 | 8 | 0 | 0 | 10 | N | - | N | N |
| P129569 | Unfamiliar | - | 2 | 8 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| P129569 | Familiar Perp | - | 1 | 3 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P129569 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P129569 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P129746 | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - | - |
| P130080 | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - | - |
| P141860 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| P141860 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| P141860 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| P141860 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| P144513 | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - | - |
| P162718 | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - | - |
| P175665 | Both | Witness A | - | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P175665 | Unfamiliar | Witness A | 1 | 7 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| P175665 | Both | Witness B | - | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P175665 | Unfamiliar | Witness B | 1 | 7 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| P175665 | Previous ID | Witness C | - | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P175665 | Previous ID | Witness C | 1 | 7 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| P175665 | Unfamiliar | - | 3 | 7 | 2 | 6 | 4 | 0 | 2 | 0 | 0 | 6 | N | - | N | N |
| P182708 | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - | - |
| P190627 | Unfamiliar | - | 3 | 6 | 1 | 3 | 0 | 0 | 3 | 0 | 0 | 3 | N | - | N | N |
| P190627 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P190627 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P190627 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P190627 | Previous ID | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P209994 | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - | - |
| P218019 | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - | - |
| P237402 | - | - | - | - | - | - | - | - | - | - | - | - | - | Y | N | | |
| P239485 | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - | - |
| P246193 | - | - | - | - | - | - | - | - | - | - | - | - | - | Y | N | | |
| P246443 | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - | - |
| P251800 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P251800 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| P251800 | Unfamiliar | - | 3 | UNK | UNK | #VALUE! | 0 | 2 | 1 | 0 | 0 | 3 | N | - | Y | Y |
| P251800 | Unfamiliar | - | 2 | 7 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P272087 | 4 | P272087-A | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 6/12/1991 | 142666 | 23:00 | NO | N | N | – | – |
| P272087 | 4 | P272087-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 7/17/91 | 142681 | 22:00 | NO | N | N | – | – |
| P272087 | 4 | P272087-C | 2 | 1 | No | 3 | 2 | 2 | 2 | PHOTO | NO | 7/17/91 | 142681 | 22:00 | NO | N | N | – | – |
| P272087 | 4 | P272087-D | 5 | 1 | No | 5 | 4 | 4 | 5 | LIVE | YES | 7/22/91 | 142682 | 22:00 | NO | N | N | – | – |
| P272087 | 4 | P272087-D | – | – | No | – | – | – | – | LIVE | YES | 7/22/91 | 142682 | 22:00 | NO | N | Y | 142681 | N |
| P272087 | 4 | P272087-D | – | – | No | – | – | – | – | LIVE | YES | 7/22/91 | 142682 | 22:00 | NO | N | Y | 142681 | N |
| P290243 | 0 | | | | | – | – | – | – | – | – | – | – | – | – | – | | | |
| P308711 | 0 | | | | | – | – | – | – | – | – | – | – | – | – | – | | | |
| P310244 | 0 | | | | | – | – | – | – | – | – | – | – | – | – | – | | | |
| P310965 | 3 | P310965-A | 1 | 1 | No | 3 | 2 | 2 | 1 | LIVE | YES | 7/14/1991 | 46064 | 11:30 | NO | N | Y | 46062, 46068 | N |
| P310965 | 3 | P310965-B | 1 | UNK | UNK | 5 | UNK | UNK | UNK | LIVE | YES | 2/9/1997 | 46083 | 3:00 | NO | N | Y | 72883 | N |
| P310965 | 3 | P310965-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 4/11/1997 | 72883 | 15:00 | YES | N | N | – | – |
| P312568 | 0 | | | | | – | – | – | – | – | – | – | – | – | – | – | | | |
| P317758 | 3 | P317758-A | 3 | 1 | No | 6 | 5 | 5 | 3 | PHOTO | NO | 7/16/1991 | 46124 | 22:00 | NO | N | Y | 46124 | N |
| P317758 | 3 | P317758-A | – | – | No | – | – | – | – | PHOTO | NO | 7/16/1991 | 46124 | 22:00 | NO | N | N | – | – |
| P317758 | 3 | P317758-B | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 7/27/1991 | 46130 | – | NO | N | Y | 46124 | N |
| P317758 | 3 | P317758-B | – | – | No | – | – | – | – | LIVE | YES | 7/27/1991 | 46130 | – | NO | N | N | – | – |
| P317758 | 3 | P317758-B | – | – | No | – | – | – | – | LIVE | YES | 7/27/1991 | 46130 | – | NO | N | N | – | – |
| P317758 | 3 | P317758-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/27/1991 | 46128 | – | NO | N | Y | 46124 | N |
| P318434 | 1 | P318434-A | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 12/13/1991 | 46153 | – | YES | Y | N | – | – |
| P318434 | 3 | P318434-B | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 12/13/1991 | 46153 | – | YES | Y | N | – | – |
| P318434 | 3 | P318434-C | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 4/12/1902 | 46169 | 13:00 | YES | Y | N | – | – |
| P327313 | 0 | | | | | – | – | – | – | – | – | – | – | – | – | – | | | |
| P342256 | 2 | P342256-A | 3 | 1 | No | 4 | 3 | 3 | 3 | PHOTO | NO | 7/20/1991 | 46222 | 16:00 | NO | N | N | – | – |
| P342256 | 2 | P342256-A | – | – | No | – | – | – | – | PHOTO | NO | 7/20/1991 | 46222 | 16:00 | NO | N | Y | N | – |
| P342256 | 2 | P342256-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 9/8/1991 | 73508 | 21:30 | NO | N | Y | 46222 | N |
| P342256 | 2 | P342256-B | – | – | No | – | – | – | – | LIVE | YES | 9/8/1991 | 73508 | 21:30 | NO | N | Y | 46222 | N |
| P343428 | 1 | P343428-A | 6 | 1 | No | 5 | 4 | 4 | 6 | LIVE | YES | 7/20/1991 | 46251 | 18:00 | NO | N | N | – | – |
| P348565 | 1 | P348565-A | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 7/23/1991 | 46296 | 11:30 | NO | N | N | – | – |
| P359679 | 3 | P359679-A | 3 | 3 | Yes | 6 | 3 | 1 | 9 | LIVE | YES | 7/29/1991 | 142723/46261 | 21:00 | NO | Y | Y | 142727 | UNK |
| P359679 | 3 | P359679-A | – | – | Yes | – | – | – | – | LIVE | YES | 7/29/1991 | 142723/46261 | 21:00 | NO | N | N | – | – |
| P359679 | 3 | P359679-A | – | – | Yes | – | – | – | – | LIVE | YES | 7/29/1991 | 142723/46261 | 21:00 | NO | N | N | – | – |
| P359679 | 3 | P359679-B | 3 | 1 | No | 6 | 5 | 5 | 3 | PHOTO | NO | 7/29/1991 | 142730 | – | YES | N | N | – | – |
| P359679 | 3 | P359679-B | – | – | No | – | – | – | – | PHOTO | NO | 7/29/1991 | 142730 | – | YES | Y | N | – | – |
| P359679 | 3 | P359679-B | – | – | No | – | – | – | – | PHOTO | NO | 7/29/1991 | 142730 | – | YES | Y | N | – | – |
| P359679 | 3 | P359679-C | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 8/5/1991 | 142733 | 23:30 | NO | N | N | – | – |
| P359679 | 3 | P359679-C | – | – | No | – | – | – | – | LIVE | YES | 8/5/1991 | 142733 | 23:30 | NO | Y | N | – | – |
| P360224 | 0 | | | | | – | – | – | – | – | – | – | – | – | – | – | | | |
| P372509 | 4 | P372509-A | 1 | 2 | Yes | 6 | 4 | 2 | 2 | PHOTO | NO | 8/16/1991 | 46349 | – | NO | N | N | – | – |
| P372509 | 4 | P372509-B | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 8/21/1991 | 46353 | – | NO | N | N | – | – |
| P372509 | 4 | P372509-B | – | – | No | – | – | – | – | PHOTO | NO | 8/21/1991 | 46353 | – | NO | N | Y | 46349 | N |
| P372509 | 4 | P372509-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/27/1992 | 74116 | 20:00 | NO | N | Y | 46349; 46353 | N |
| P372509 | 4 | P372509-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 3/4/1993 | 46370 | 22:00 | YES | N | N | – | – |
| P402841 | 2 | P402841-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 9/4/1991 | 142784 | 18:00 | NO | N | N | – | – |
| P402841 | 2 | P402841-A | – | – | No | – | – | – | – | LIVE | YES | 9/4/1991 | 142784 | 18:00 | NO | N | Y | 142787 | N |
| P402841 | 2 | P402841-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/8/1991 | 142788 | 20:45 | NO | N | N | – | – |
| P407949 | 0 | | | | | – | – | – | – | – | – | – | – | – | – | – | | | |
| P420574 | 0 | | | | | – | – | – | – | – | – | – | – | – | – | – | | | |
| P425933 | 0 | | | | | – | – | – | – | – | – | – | – | – | – | – | | | |
| P438549 | 0 | | | | | – | – | – | – | – | – | – | – | – | – | – | | | |
| P442262 | 1 | P442262-A | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 9/9/1991 | 142797 | – | NO | Y | N | – | – |
| P442262 | 1 | P442262-A | – | – | No | – | – | – | – | LIVE | YES | 9/9/1991 | 142797 | – | NO | Y | N | – | – |
| P442262 | 1 | P442262-A | – | – | No | – | – | – | – | LIVE | YES | 9/9/1991 | 142797 | – | NO | Y | N | – | – |
| P452272 | 3 | P452272-A | 4 | 1 | No | UNK | UNK | UNK | 4 | PHOTO | NO | 9/15/1991 | 46559 | 23:30 | YES | N | N | – | – |
| P452272 | 3 | P452272-A | – | – | No | – | – | – | – | PHOTO | NO | 9/15/1991 | 46559 | 23:30 | YES | N | N | – | – |
| P452272 | 3 | P452272-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 9/18/1991 | 46569 | 18:30 | NO | Y | N | – | – |
| P452272 | 3 | P452272-B | – | – | No | – | – | – | – | LIVE | YES | 9/18/1991 | 46569 | 18:30 | NO | N | Y | 46563 | N |
| P452272 | 3 | P452272-C | 1 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 9/18/1991 | 46571 | 23:30 | NO | N | N | – | – |
| P452272 | 3 | | – | – | No | – | – | – | – | – | – | 9/18/1991 | 46565 | – | – | Y | N | – | – |
| P454432 | 1 | | – | – | No | – | – | – | – | – | – | 9/18/1991 | 46604 | 8:00 | – | Y | N | – | – |
| P454432 | 1 | P454432-A | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 9/28/1991 | 46623 | 23:00 | YES | N | N | – | – |
| P455978 | 0 | | | | | – | – | – | – | – | – | – | – | – | – | – | | | |
| P474894 | 1 | | – | – | No | – | – | – | – | – | – | 10/8/1991 | 46704 | – | – | Y | N | – | – |
| P474894 | 1 | | – | – | No | – | – | – | – | – | – | 10/8/1991 | 46702 | – | – | Y | N | – | – |
| P474894 | 1 | P474894-A | 5 | 1 | Yes | 10 | 5 | 1 | 25 | LIVE | YES | 10/10/1991 | 46716 | 13:30 | NO | N | N | – | – |
| P487544 | 3 | P487544-A | 1 | 4 | Yes | 7 | 3 | 0.75 | 4 | PHOTO | NO | 4/30/1995 | 75922 | 21:00 | NO | N | N | – | – |
| P487544 | 3 | P487544-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 5/31/1995 | 75916 | 17:30 | NO | N | Y | – | – |
| P487544 | 3 | P487544-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 6/4/1995 | 75918 | 17:00 | NO | N | Y | 75922 | N |
| P500243 | 0 | | | | | – | – | – | – | – | – | – | – | – | – | – | | | |
| P500651 | 0 | | | | | – | – | – | – | – | – | – | – | – | – | – | | | |
| P500893 | 2 | P500893-A | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 10/17/1991 | 46798 | 15:00 | NO | Y | Y | 46804 | UNK |
| P500893 | 2 | P500893-A | – | – | No | – | – | – | – | LIVE | YES | 10/17/1991 | 46798 | 15:00 | NO | N | Y | 46804 | UNK |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses in Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P272087 | Unfamiliar | - | 4 | 5 | 1 | 4 | 0 | 0 | 4 | 0 | 0 | 4 | N | - | Y | Y |
| P272087 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| P272087 | Unfamiliar | - | 2 | 3 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| P272087 | Unfamiliar | - | 3 | 5 | 1 | 3 | 2 | 0 | 0 | 0 | 1 | 3 | N | - | Y | Y |
| P272087 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P272087 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | N | - | Y | Y |
| P290243 | - | | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| P308711 | - | | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| P310244 | - | | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| P310965 | Previous ID | - | 1 | 3 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| P310965 | Previous ID | - | 1 | 5 | UNK | #VALUE! | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P310965 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P312596 | - | | - | - | - | - | - | - | - | - | - | - | - | - | Y | N |
| P317758 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P317758 | Unfamiliar | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| P317758 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P317758 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P317758 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P317758 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P318434 | Familiar Perp | - | 1 | UNK | UNK | #VALUE! | 4 | 0 | 0 | 0 | 0 | 4 | N | - | N | N |
| P318434 | Familiar Perp | - | 1 | UNK | UNK | #VALUE! | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| P318434 | Familiar Perp | - | 1 | UNK | UNK | #VALUE! | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| P327313 | - | | - | - | - | - | - | - | - | - | - | - | - | - | N | N |
| P342256 | Unfamiliar | - | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| P342256 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| P342256 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P342256 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P343428 | Unfamiliar | - | 6 | 5 | 1 | 6 | 5 | 1 | 0 | 0 | 0 | 6 | N | - | N | N |
| P348565 | Unfamiliar | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| P359579 | Both | - | 1 | 6 | 3 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | Y | Y | N | N |
| P359579 | Unfamiliar | - | 1 | 6 | 3 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| P359579 | Unfamiliar | - | 1 | 6 | 3 | 3 | 2 | 0 | 0 | 0 | 1 | 3 | N | - | N | N |
| P359579 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P359579 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P359579 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P359579 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| P359579 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P362024 | - | | - | - | - | - | - | - | - | - | - | - | - | - | N | N |
| P372509 | Familiar Perp | - | 1 | 6 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | Y | N |
| P372509 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| P372509 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| P372509 | Both | - | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| P372509 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| P402641 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| P402641 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| P402641 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| P407949 | - | | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| P420574 | - | | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| P425933 | - | | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| P438540 | - | | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| P442282 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P442282 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P442282 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P452272 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P452272 | Unfamiliar | - | 3 | UNK | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| P452272 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P452272 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P452272 | Unfamiliar | - | 2 | 5 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| P452272 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| P454432 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| P454432 | Unfamiliar | - | 1 | UNK | UNK | #VALUE! | 2 | 0 | 0 | 0 | 0 | 2 | Y | Y | Y | Y |
| P455078 | - | | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| P474894 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| P474894 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| P474894 | Unfamiliar | - | 5 | 10 | 5 | 25 | 5 | 0 | 20 | 0 | 0 | 25 | N | - | Y | Y |
| P487544 | Unfamiliar | - | 1 | 7 | 4 | 4 | 0 | 0 | 4 | 0 | 0 | 4 | N | - | N | N |
| P487544 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P487544 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P500243 | - | | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| P500551 | - | | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| P500893 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P500893 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P500893 | 2 | P500893-A | - | - | No | - | - | - | - | LIVE | YES | 10/17/1991 | 46798 | 15:00 | NO | Y | Y | 46804 | UNK |
| P500893 | 2 | P500893-B | 4 | 1 | No | 4 | 3 | 3 | 4 | PHOTO | NO | 10/17/1991 | 46804 | 23:30 | NO | Y | N | - | - |
| P500893 | 2 | P500893-B | - | - | No | - | - | - | - | PHOTO | NO | 10/17/1991 | 46804 | 23:30 | NO | Y | N | - | - |
| P500893 | 2 | P500893-B | - | - | No | - | - | - | - | PHOTO | NO | 10/17/1991 | 46804 | 23:30 | NO | Y | N | - | - |
| P500893 | 2 | P500893-B | - | - | No | - | - | - | - | PHOTO | NO | 10/17/1991 | 46804 | 23:30 | NO | Y | N | - | - |
| P524562 | 0 | | | | | - | - | - | - | | | | | | - | | | | |
| P526822 | 2 | P526822-A | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 10/27/1991 | 46838 | 23:30 | NO | N | N | - | - |
| P526822 | 2 | P526822-A | - | - | No | - | - | - | - | LIVE | YES | 10/27/1991 | 46838 | 23:30 | NO | N | Y | 46845 | N |
| P526822 | 2 | P526822-B | 1 | 1 | No | 7 | 6 | 6 | 1 | PHOTO | NO | 10/28/1991 | 46845 | 7:00 | NO | N | N | - | - |
| P528578 | 1 | P528578-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 10/30/1991 | 46872 | - | NO | N | N | - | - |
| P528578 | 1 | | - | - | No | - | - | - | - | | | 11/27/1991 | 46882 | 20:00 | - | N | N | - | - |
| P530576 | 9 | P530576-A | 4 | 4 | Yes | 9 | 5 | 1.25 | 16 | LIVE | YES | 8/24/1991 | 77001 | 22:00 | NO | N | N | - | - |
| P530576 | 9 | P530576-A | - | - | Yes | - | - | - | - | LIVE | YES | 8/24/1991 | 77001 | 22:00 | NO | Y | N | - | - |
| P530576 | 9 | P530576-B | UNK | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 10/29/1991 | 46901 | - | YES | N | N | - | - |
| P530576 | 9 | P530576-C | 2 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 10/30/1991 | 46903 | 18:30 | YES | N | N | - | - |
| P530576 | 9 | P530576-D | UNK | 1 | No | UNK | UNK | UNK | UNK | PHOTO | NO | 11/6/1991 | 46908 | 14:30 | YES | N | N | - | - |
| P530576 | 9 | P530576-E | UNK | 1 | No | UNK | UNK | UNK | UNK | PHOTO | NO | 11/6/1991 | 46908 | 14:30 | YES | Y | N | - | - |
| P530576 | 9 | P530576-E | - | - | No | - | - | - | - | PHOTO | NO | 11/6/1991 | 46908 | 14:30 | YES | Y | N | - | - |
| P530576 | 9 | P530576-F | 3 | 1 | No | UNK | UNK | UNK | 3 | PHOTO | NO | 11/10/1991 | 46910 | 16:00 | YES | N | N | - | - |
| P530576 | 9 | P530576-F | - | - | No | - | - | - | - | PHOTO | NO | 11/10/1991 | 46910 | 16:00 | YES | Y | N | - | - |
| P530576 | 9 | P530576-G | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 3/24/1992 | 46919 46914 and | 23:00 | NO | N | N | - | - |
| P530576 | 9 | P530576-H | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 4/29/2003 | 76960 | - | YES | N | N | - | - |
| P530576 | 9 | P530576-I | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 4/30/2002 | 76958 | 15:55 | NO | N | N | - | - |
| P540628 | 0 | | | | | - | - | - | - | | | | | | - | | | | |
| P560732 | 3 | P560732-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 12/10/1991 | 46954 | 9:00 | NO | N | N | - | - |
| P560732 | 3 | P560732-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 12/10/1991 | 46954 | 9:00 | NO | N | N | - | - |
| P560732 | 3 | | - | - | No | - | - | - | - | | | 12/10/1991 | 46962 | 9:00 | - | Y | N | - | - |
| P560732 | 3 | P560732-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/10/1991 | 46954 | 9:00 | NO | N | Y | 46904 | N |
| P591622 | 0 | | - | - | | - | - | - | - | | | | | | - | | | | |
| P601562 | 2 | | - | - | | - | - | - | - | | | 12/12/1991 | 47059 | 23:00 | - | N | N | - | - |
| P601562 | 2 | P601562-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 12/15/1991 | 47079 | 22:00 | YES | N | N | - | - |
| P601562 | 2 | P601562-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 12/19/1991 | 47081 | 20:00 | NO | N | Y | 47079 | UNK |
| P601562 | 2 | P601562-B | - | - | No | - | - | - | - | LIVE | YES | 12/19/1991 | 47081 | 20:00 | NO | N | N | - | - |
| P612885 | 2 | P612885-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 1/23/1992 | 47128 | 14:00 | NO | N | N | - | - |
| P612885 | 2 | P612885-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 1/23/1992 | 47125 | - | NO | N | Y | 47128 | UNK |
| P612885 | 2 | P612885-B | - | - | No | - | - | - | - | LIVE | YES | 1/23/1992 | 47125 | - | NO | N | Y | 47128 | UNK |
| T005788 | 0 | | - | - | | - | - | - | - | | | | | | - | | | | |
| T007861 | 0 | | | | | - | - | - | - | | | | | | - | | | | |
| T016194 | 1 | T016194-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 1/13/1992 | 47204 | 22:30 | NO | N | N | - | - |
| T016194 | 1 | T016194-A | - | - | No | - | - | - | - | LIVE | YES | 1/13/1992 | 47204 | 22:30 | NO | Y | N | - | - |
| T017163 | 0 | | - | - | | - | - | - | - | | | | | | - | | | | |
| T019115 | 0 | | - | - | | - | - | - | - | | | | | | - | | | | |
| T019692 | 0 | | - | - | | - | - | - | - | | | | | | - | | | | |
| T027570 | 9 | T027570-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 1/17/1992 | 47316 | | YES | N | N | - | - |
| T027570 | 9 | T027570-B | 6 | UNK | Yes | UNK | UNK | UNK | UNK | PHOTO | NO | 1/19/1992 | 47343 and 47345 | | YES | N | N | - | - |
| T027570 | 9 | T027570-B | - | - | Yes | - | - | - | - | PHOTO | NO | 1/19/1992 | 47343 and 47345 | | YES | Y | N | - | - |
| T027570 | 9 | | - | - | | - | - | - | - | | | 1/19/1992 | 47333 | 0:00 | - | Y | N | - | - |
| T027570 | 9 | T027570-C | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 1/20/1992 | 47363 | | YES | N | N | - | - |
| T027570 | 9 | T027570-D | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 1/21/1994 | 47408 | | YES | N | N | - | - |
| T027570 | 9 | T027570-E | 2 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 2/15/1992 | 47429 | | YES | N | N | - | - |
| T027570 | 9 | T027570-F | 3 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 2/15/1992 | 47431 | | YES | N | N | - | - |
| T027570 | 9 | T027570-G | 2 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 2/16/1992 | 47435 and 47432 | 23:00 | YES | N | N | - | - |
| T027570 | 9 | | - | - | | - | - | - | - | | | 2/20/1992 | 47441 | | - | N | N | - | - |
| T027570 | 9 | T027570-H | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 2/21/1992 | 47447 | 22:45 | YES | Y | N | - | - |
| T027570 | 9 | T027570-I | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/29/1992 | 47462 | | NO | N | N | - | - |
| T028670 | 1 | T028670-A | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 1/25/1992 | 47548 | 22:00 | NO | N | N | - | - |
| T041562 | 0 | | | | | - | - | - | - | | | | | | - | | | | |
| T043710 | 0 | | | | | - | - | - | - | | | | | | | | | | |
| T045095 | 0 | | | | | - | - | - | - | | | - | - | - | - | | | | |
| T046539 | 0 | | | | | - | - | - | - | | | | | | - | | | | |
| T049854 | 2 | T049854-A | 5 | 1 | No | 5 | 4 | 4 | 5 | PHOTO | NO | 2/10/1992 | 47745 | - | NO | N | Y | 47745 | N |
| T049854 | 2 | T049854-A | - | - | No | - | - | - | - | PHOTO | NO | 2/10/1992 | 47745 | - | NO | N | Y | 47745 | N |
| T049854 | 2 | T049854-A | - | - | No | - | - | - | - | PHOTO | NO | 2/10/1992 | 47745 | - | NO | N | Y | 47745 | N |
| T049854 | 2 | T049854-A | - | - | No | - | - | - | - | PHOTO | NO | 2/10/1992 | 47745 | - | NO | N | N | - | - |
| T049854 | 2 | T049854-B | 7 | 1 | No | 5 | 4 | 4 | 7 | LIVE | YES | 2/10/1992 | 47753 | - | NO | N | Y | 47745 | UNK |
| T049854 | 2 | T049854-B | - | - | No | - | - | - | - | LIVE | YES | 2/10/1992 | 47753 | - | NO | N | Y | 47745 | UNK |
| T049854 | 2 | T049854-B | - | - | No | - | - | - | - | LIVE | YES | 2/10/1992 | 47753 | - | NO | N | Y | 47745 | UNK |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P500893 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P500893 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P500893 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P500893 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P500893 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P524552 | - | | - | - | - | - | - | - | - | - | - | - | - | N | - | |
| P526822 | Unfamiliar | - | 2 | 5 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | Y | N |
| P526822 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| P526822 | Unfamiliar | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P526578 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P526578 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | Y | N |
| P530576 | Unfamiliar | - | 3 | 9 | 4 | 12 | 6 | 0 | 6 | 0 | 0 | 12 | N | - | Y | N |
| P530576 | Familiar Perp | - | 1 | 9 | 4 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | N | - | Y | N |
| P530576 | Unfamiliar | - | UNK | UNK | UNK | UNK | 0 | 0 | 0 | 0 | 0 | 0 | N | - | Y | N |
| P530576 | Unfamiliar | - | 2 | UNK | UNK | UNK | 0 | 1 | 1 | 0 | 0 | 2 | N | - | Y | N |
| P530576 | Unfamiliar | - | UNK | UNK | 2 | UNK | 0 | 0 | UNK | 0 | 0 | - | N | - | Y | N |
| P530576 | Unfamiliar | - | UNK | UNK | 1 | UNK | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| P530576 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| P530576 | Unfamiliar | - | 2 | UNK | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | N |
| P530576 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| P530576 | Unfamiliar | - | 2 | 5 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | Y |
| P530576 | Unfamiliar | - | 1 | UNK | UNK | UNK | 0 | 0 | UNK | 0 | 0 | UNK | N | - | Y | N |
| P530576 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | Y | N |
| P540628 | - | | - | - | - | - | - | - | - | - | - | - | - | N | - | |
| P560732 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P560732 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| P560732 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| P560732 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| P591622 | - | | - | - | - | - | - | - | - | - | - | - | - | N | - | |
| P601562 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| P601562 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| P601562 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| P601562 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| P612885 | Unfamiliar | - | 2 | UNK | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| P612885 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| P612885 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| T005788 | - | | - | - | - | - | - | - | - | - | - | - | - | N | - | |
| T007661 | - | | - | - | - | - | - | - | - | - | - | - | - | N | - | |
| T016194 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T016194 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T017163 | - | | - | - | - | - | - | - | - | - | - | - | - | N | - | |
| T019115 | - | | - | - | - | - | - | - | - | - | - | - | - | N | - | |
| T019692 | - | | - | - | - | - | - | - | - | - | - | - | - | N | - | |
| T027570 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T027570 | Unfamiliar | - | 5 | UNK | UNK | #VALUE! | 10 | 0 | 4 | 0 | 0 | 14 | N | - | N | N |
| T027570 | Familiar Perp | - | 1 | UNK | UNK | #VALUE! | 0 | 0 | UNK | 0 | 0 | #VALUE! | N | - | N | N |
| T027570 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| T027570 | Unfamiliar | - | 1 | UNK | UNK | #VALUE! | 1 | 0 | UNK | 0 | 0 | #VALUE! | N | - | N | N |
| T027570 | Unfamiliar | - | 1 | UNK | UNK | #VALUE! | 2 | 0 | UNK | 0 | 0 | #VALUE! | N | - | N | N |
| T027570 | Unfamiliar | - | 2 | UNK | UNK | #VALUE! | 6 | 0 | UNK | 0 | 0 | #VALUE! | N | - | N | N |
| T027570 | Unfamiliar | - | 3 | UNK | UNK | #VALUE! | 14 | 0 | UNK | 0 | 0 | #VALUE! | N | - | N | N |
| T027570 | Unfamiliar | - | 2 | UNK | UNK | #VALUE! | 5 | 0 | UNK | 0 | 0 | #VALUE! | N | - | N | N |
| T027570 | Unfamiliar | - | - | - | -/ | - | - | - | - | - | - | - | Y | Y | N | N |
| T027570 | Familiar Perp | - | 1 | UNK | UNK | #VALUE! | 3 | 0 | UNK | 0 | 0 | #VALUE! | N | - | N | N |
| T027570 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T028670 | Unfamiliar | - | 3 | 5 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | Y | Y |
| T041562 | - | | - | - | - | - | - | - | - | - | - | - | - | Y | N | |
| T043710 | - | | - | - | - | - | - | - | - | - | - | - | - | Y | N | |
| T045095 | - | | - | - | - | - | - | - | - | - | - | - | - | N | - | |
| T048539 | - | | - | - | - | - | - | - | - | - | - | - | - | N | - | |
| T049854 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T049854 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T049854 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T049854 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T049854 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T049854 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T049854 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T049854 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number of Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T049854 | 2 | T049854-B | - | - | No | - | - | - | - | LIVE | YES | 2/10/1992 | 47753 | - | NO | N | Y | 47745 | UNK |
| T049854 | 2 | T049854-B | - | - | No | - | - | - | - | LIVE | YES | 2/10/1992 | 47753 | - | NO | N | Y | 47745 | UNK |
| T049854 | 2 | T049854-B | - | - | No | - | - | - | - | LIVE | YES | 2/10/1992 | 47753 | - | NO | N | N | - | - |
| T055635 | 1 | T055635-A | 1 | UNK | UNK | 8 | UNK | UNK | UNK | PHOTO | NO | 12/23/1992 | 104637 | 12:00 | YES | N | N | - | - |
| T055635 | 1 | T055635-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/24/1993 | 47788 | 23:50 | NO | N | Y | 104637 | N |
| T060326 | 2 | T060326-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 2/9/1992 | 104625 | 23:30 | YES | N | N | - | - |
| T060326 | 2 | T060326-B | 1 | 2 | Yes | UNK | UNK | UNK | 2 | PHOTO | NO | 2/15/1992 | 47827 | - | YES | Y | N | - | - |
| T068350 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| T069785 | 2 | T069785-A | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 2/15/1992 | 105087 | 0:45 | NO | N | N | - | - |
| T069785 | 2 | T069785-B | - | - | No | - | - | - | - | LIVE | YES | 2/15/1992 | 105087 | 0:45 | NO | Y | N | - | - |
| T069785 | 2 | T069785-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/17/1992 | 105074 | 20:40 | NO | Y | N | - | - |
| T070564 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| T074332 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| T082923 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| T084561 | 2 | T084561-A | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 3/23/1992 | 48062 | 20:30 | NO | N | Y | 48068 | UNK |
| T084561 | 2 | T084561-A | - | - | No | - | - | - | - | LIVE | YES | 3/23/1992 | 48062 | 20:30 | NO | N | Y | 48068 | UNK |
| T084561 | 2 | T084561-A | - | - | No | - | - | - | - | LIVE | YES | 3/23/1992 | 48062 | 20:30 | NO | N | N | - | - |
| T084561 | 2 | T084561-B | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 3/23/1992 | 48068 | 23:30 | NO | N | N | - | - |
| T103291 | 2 | T103291-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 4/1/1992 | 48172 | 18:00 | YES | N | N | - | - |
| T103291 | 2 | - | - | - | - | - | - | - | - | - | - | 4/1/1992 | 48170 | - | - | N | N | - | - |
| T103291 | 2 | - | - | - | - | - | - | - | - | - | - | 11/19/1992 | 48188 | 9:00 | - | N | N | - | - |
| T103291 | 2 | T103291-B | 5 | 2 | Yes | 5 | 3 | 1.5 | 10 | LIVE | YES | 11/19/1992 | 48192 | 9:00 | NO | Y | Y | 48188 | N |
| T103291 | 2 | T103291-B | - | - | Yes | - | - | - | - | LIVE | YES | 11/19/1992 | 48192 | 9:00 | NO | N | Y | 48188 | N |
| T103291 | 2 | T103291-B | - | - | Yes | - | - | - | - | LIVE | YES | 11/19/1992 | 48192 | 9:00 | NO | N | Y | 48188 | N |
| T103291 | 2 | T103291-B | - | - | Yes | - | - | - | - | LIVE | YES | 11/19/1992 | 48192 | 9:00 | NO | N | Y | 48188 | N |
| T103291 | 2 | T103291-B | - | - | Yes | - | - | - | - | LIVE | YES | 11/19/1992 | 48192 | 9:00 | NO | Y | N | - | - |
| T103291 | 2 | T103291-B | - | - | Yes | - | - | - | - | LIVE | YES | 11/19/1992 | 48192 | 9:00 | NO | N | N | - | - |
| T103291 | 2 | T103291-B | - | - | Yes | - | - | - | - | LIVE | YES | 11/19/1992 | 48192 | 9:00 | NO | N | Y | 48188 | N |
| T106506 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| T132315 | 2 | - | - | - | - | - | - | - | - | - | - | 3/25/1992 | 48255 | - | - | Y | N | - | - |
| T132315 | 2 | T132315-A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 3/27/1992 | 48288 | 15:30 | NO | N | N | - | - |
| T132315 | 2 | T132315-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/30/1992 | 48287 | 21:50 | NO | N | N | - | - |
| T144003 | 2 | T144003-A | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 4/2/1992 | 48330 | 5:00 | NO | N | N | - | - |
| T144003 | 2 | T144003-B | 3 | 2 | Yes | 5 | 3 | 1.5 | 6 | LIVE | YES | 4/2/1992 | 48334 | 5:00 | NO | N | N | - | - |
| T145042 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| T150082 | 1 | T150082-A | 10 | 1 | No | 7 | 6 | 6 | 10 | LIVE | YES | 4/5/1992 | 142922 | 10:00 | NO | N | N | - | - |
| T155315 | 2 | T155315-A | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 4/9/1992 | 48446 | 18:25 | NO | Y | N | - | - |
| T155315 | 2 | T155315-A | - | - | No | - | - | - | - | LIVE | YES | 4/9/1992 | 48446 | 18:25 | NO | Y | Y | 106425 | UNK |
| T155315 | 2 | T155315-A | - | - | No | - | - | - | - | LIVE | YES | 4/9/1992 | 48446 | 18:25 | NO | N | N | - | - |
| T155315 | 2 | T155315-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 4/10/1992 | 106425 | - | NO | Y | N | - | - |
| T168883 | 1 | T168883-A | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 4/27/1992 | 48500 | 17:30 | NO | N | N | - | - |
| T170438 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| T175541 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| T178543 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| T185940 | 1 | T185940-A | 3 | 1 | No | 5 | 4 | 4 | 3 | PHOTO | NO | 5/5/1992 | 48641 | 21:00 | NO | Y | N | - | - |
| T185940 | 1 | T185940-A | - | - | No | - | - | - | - | PHOTO | NO | 5/5/1992 | 48641 | 21:00 | NO | Y | N | - | - |
| T185940 | 1 | T185940-A | - | - | No | - | - | - | - | PHOTO | NO | 5/5/1992 | 48641 | 21:00 | NO | Y | N | - | - |
| T190453 | 1 | T190453 | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/15/1992 | 48086/48660 | 2:55 | NO | N | N | - | - |
| T191912 | 1 | T191912 | 2 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 5/12/1992 | 48736 | 18:00 | YES | Y | N | - | - |
| T194690 | 2 | T194690-A | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 5/2/1992 | 149265 | 14:00 | NO | Y | N | - | - |
| T194690 | 2 | T194690-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 7/23/1992 | 143001 | 20:00 | NO | Y | Y | 142987 | N |
| T194690 | 2 | T194690-B | - | - | No | - | - | - | - | LIVE | YES | 7/23/1992 | 143001 | 20:00 | NO | N | N | - | - |
| T200044 | 2 | T200044-A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 11/20/1992 | 143040 | 16:25 | NO | N | N | - | - |
| T200044 | 2 | T200044-A | - | - | No | - | - | - | - | LIVE | YES | 11/20/1992 | 143040 | 16:25 | NO | Y | N | - | - |
| T200044 | 2 | T200044-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 11/20/1992 | 143052 | 23:00 | YES | N | N | - | - |
| T203653 | 4 | - | - | - | - | - | - | - | - | - | - | 5/10/1992 | 48871.3 | 23:30 | - | N | N | - | - |
| T203653 | 4 | T203653-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 5/10/1992 | 48879 | 23:30 | NO | Y | N | - | - |
| T203653 | 4 | T203653-B | - | - | No | 6 | 5 | 5 | - | LIVE | YES | 5/10/1992 | 48881 | 23:30 | NO | N | N | - | - |
| T203653 | 4 | T203653-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/10/1992 | 48885 | 23:50 | NO | N | Y | 48773 | UNK |
| T203653 | 4 | T203653-D | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 5/11/1992 | 107462 | - | NO | Y | N | - | - |
| T203653 | 4 | T203653-D | - | - | No | UNK | UNK | UNK | - | PHOTO | NO | 5/11/1992 | 107462 | - | NO | Y | N | - | - |
| T203950 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| T210205 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| T212815 | 1 | T212815-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 5/14/1992 | 143149 | 19:00 | NO | Y | N | - | - |
| T212815 | 1 | T212815-A | - | - | No | - | - | - | - | LIVE | YES | 5/14/1992 | 143149 | 19:00 | NO | Y | N | - | - |
| T214666 | 2 | T214666-A | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 5/18/1992 | 143188 | - | NO | N | N | - | - |
| T214666 | 2 | T214666-A | - | - | No | - | - | - | - | LIVE | YES | 5/18/1992 | 143188 | - | NO | N | Y | 108036 | N |
| T214666 | 2 | T214666-A | - | - | No | - | - | - | - | LIVE | YES | 5/18/1992 | 143188 | - | NO | N | Y | 143191 | N |
| T214666 | 2 | T214666-B | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 5/19/1992 | 143191; 108036 | - | NO | Y | N | - | - |
| T216491 | 1 | T216491-A | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 5/17/1992 | 49108 | - | YES | N | N | - | - |
| T216491 | 1 | - | - | - | - | - | - | - | - | - | - | 5/17/1992 | 49114 | - | - | N | N | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T049854 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T049854 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T049854 | Unfamiliar | - | 2 | 5 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | Y |
| T055635 | Unfamiliar | - | 1 | 8 | UNK | #VALUE! | 0 | 1 | UNK | 0 | 0 | #VALUE! | N | - | N | N |
| T055635 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T060326 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T060326 | Familiar Perp | - | 1 | UNK | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| T068350 | - | | - | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T069785 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T069785 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T069785 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T070594 | - | | - | - | - | - | - | - | - | - | - | - | - | | | Y | N |
| T074332 | - | | - | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T082923 | - | | - | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T084561 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T084561 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T084561 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T084561 | Unfamiliar | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| T103291 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| T103291 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| T103291 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| T103291 | Both | Witness A | | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| T103291 | Previous ID | Witness A | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| T103291 | Previous ID | - | 1 | 5 | 2 | 2 | 0 | 1 | 1 | 0 | 0 | 2 | Y | Y | N | N |
| T103291 | Previous ID | - | 1 | 5 | 2 | 2 | 0 | 1 | 1 | 0 | 0 | 2 | Y | Y | N | N |
| T103291 | Familiar Perp | Witness B | | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T103291 | Unfamiliar | Witness B | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T103291 | Previous ID | - | 1 | 5 | 2 | 2 | 1 | 0 | 0 | 0 | 1 | 2 | Y | Y | N | N |
| T090596 | - | | - | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T132315 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| T132315 | Unfamiliar | - | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| T132315 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T144003 | Unfamiliar | - | 3 | 4 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| T144003 | Unfamiliar | - | 3 | 5 | 2 | 6 | 6 | 0 | 0 | 0 | 0 | 6 | N | - | N | N |
| T145942 | - | | - | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T160582 | Unfamiliar | - | 10 | 7 | 1 | 10 | 8 | 0 | 2 | 0 | 0 | 10 | N | - | N | N |
| T155315 | Familiar Perp | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| T155315 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T155315 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| T155315 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T088883 | Unfamiliar | - | 3 | 4 | 1 | 3 | 2 | 0 | 1 | 0 | 0 | 3 | N | - | N | N |
| T170436 | - | | - | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T175541 | - | | - | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T178543 | - | | - | - | - | - | - | - | - | - | - | - | - | | | Y | N |
| T185940 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T185940 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T185940 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T190453 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T191912 | Familiar Perp | - | 2 | UNK | UNK | #VALUE! | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| T194690 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T194690 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T194690 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| T200644 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T200644 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T200644 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T203953 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| T203953 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T203953 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T203953 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T203953 | Familiar Perp | - | 1 | 6 | 1 | 1 | 0 | 0 | 0 | 1 | 0 | 1 | N | - | N | N |
| T203953 | Familiar Perp | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| T209350 | - | | - | - | - | - | - | - | - | - | - | - | - | | | Y | N |
| T210205 | - | | - | - | - | - | - | - | - | - | - | - | - | | | Y | N |
| T212815 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T212815 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T214686 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| T214686 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T214686 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T214686 | Unfamiliar | - | 2 | UNK | 1 | 1 | 2 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T216491 | Unfamiliar | - | 1 | UNK | UNK | #VALUE! | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T216491 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T230082 | 0 | | | | | - | - | - | | | | | | - | | - | - | | |
| T238571 | 0 | | | | | | | | | | | | | | | | | | |
| T243651 | 2 | T243651-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 5/31/1992 | 46221 | - | NO | Y | N | - | - |
| T243651 | 2 | T243651-B | 3 | 1 | No | 11 | 10 | 10 | 3 | PHOTO | NO | 5/31/1992 | 46221 | - | NO | N | N | - | - |
| T243651 | 2 | T243651-B | - | - | No | - | - | - | - | PHOTO | NO | 5/31/1992 | 46221 | - | NO | Y | N | - | - |
| T250344 | 0 | | | | | - | - | - | | | | | | - | | - | - | | |
| T252235 | 3 | T252235-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 6/4/1992 | 49279 | 7:00 | NO | Y | N | - | - |
| T252235 | 3 | T252235-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 6/4/1992 | 49282 | 23:00 | NO | Y | N | - | - |
| T252235 | 3 | T252235-C | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 6/7/1992 | 46288 | 14:00 | NO | Y | Y | 49279; 49282 | UNK |
| T252235 | 3 | T252235-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/7/1992 | 46288 | 14:00 | NO | Y | N | - | - |
| T261332 | 0 | | | | | - | - | - | | | | | | - | | - | | | |
| T261570 | 0 | | | | | | | | | | | | | | | | | | |
| T263381 | 0 | | | | | - | - | - | | | | | | - | | - | | | |
| T264377 | 1 | - | - | - | - | - | - | - | - | - | - | 6/13/1992 | 49425 | 1:00 | - | Y | N | - | - |
| T264377 | 1 | T264377-A | 4 | 1 | No | 5 | 4 | 4 | 4 | PHOTO | NO | 6/18/1992 | 49429 | 0:30 | NO | Y | N | - | - |
| T264377 | 1 | T264377-A | - | - | No | - | - | - | - | PHOTO | NO | 6/18/1992 | 49429 | 0:30 | NO | Y | N | - | - |
| T264377 | 1 | T264377-A | - | - | No | - | - | - | - | PHOTO | NO | 6/18/1992 | 49429 | 0:30 | NO | Y | N | - | - |
| T264377 | 1 | T264377-A | - | - | No | - | - | - | - | PHOTO | NO | 6/18/1992 | 49429 | 0:30 | NO | Y | N | - | - |
| T266237 | 0 | | | | | - | - | - | | | | | | - | | - | | | |
| T280749 | 5 | T280749-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 6/19/1992 | 49499 | 20:00 | NO | | N | - | - |
| T280749 | 5 | T280749-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 6/19/1992 | 49499 | 20:00 | NO | Y | N | - | - |
| T280749 | 5 | T280749-C | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 6/19/1992 | 49501 | 20:00 | NO | N | N | - | - |
| T280749 | 5 | T280749-D | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 6/19/1992 | 49501 | 20:00 | NO | N | N | - | - |
| T280749 | 5 | T280749-E | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 10/26/1993 | 49512 | 13:00 | NO | Y | Y | 49499 | UNK |
| T282523 | 2 | T282523-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 1/9/1993 | 49540 | - | NO | Y | Y | 49539 | UNK |
| T282523 | 2 | T282523-B | 3 | 1 | No | 6 | 5 | 5 | 3 | PHOTO | NO | 1/9/1993 | 49551 | - | NO | N | N | - | - |
| T290460 | 2 | T290460-A | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 6/27/1992 | 49588 | 8:00 | NO | N | N | - | - |
| T290460 | 2 | T290460-B | 3 | 2 | Yes | 7 | 5 | 2.5 | 6 | LIVE | YES | 6/27/1992 | 49616 | 6:00 | NO | N | N | - | - |
| T290460 | 2 | T290460-B | - | - | Yes | - | - | - | - | LIVE | YES | 6/27/1992 | 49616 | 6:00 | NO | Y | N | - | - |
| T299761 | 0 | | | | | - | - | - | | | | | | - | | - | | | |
| T306202 | 0 | | | | | - | - | - | | | | | | - | | - | | | |
| T308480 | 4 | T308480-A | 1 | 2 | Yes | 5 | 3 | 1.5 | 2 | LIVE | YES | 7/25/1992 | 49709 | 14:00 | NO | N | N | - | - |
| T308480 | 4 | T308480-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 11/14/1992 | 49721 | - | NO | N | N | - | - |
| T308480 | 4 | T308480-C | 1 | 1 | No | 8 | 7 | 7 | 1 | PHOTO | NO | 11/14/1992 | 49721 | - | NO | N | Y | 49721 | N |
| T308480 | 4 | T308480-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/14/1992 | 49713 | 15:00 | NO | N | Y | 49725 and 49721 | N |
| T311746 | 1 | T311746-A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 7/8/1992 | 143324 | - | NO | N | N | - | - |
| T313079 | 0 | | | | | - | - | - | | | | | | - | | - | | | |
| T313515 | 4 | T313515-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 7/8/1992 | 110767 | 12:30 | NO | N | N | - | - |
| T313515 | 4 | T313515-A | - | - | No | - | - | - | - | LIVE | YES | 7/8/1992 | 110767 | 12:30 | NO | N | Y | 143360 | N |
| T313515 | 4 | T313515-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 7/8/1992 | 143374 | 23:30 | NO | N | Y | 143660 | N |
| T313515 | 4 | T313515-B | - | - | No | - | - | - | - | LIVE | YES | 7/8/1992 | 143374 | 23:30 | NO | N | Y | 143660 | N |
| T313515 | 4 | T313515-C | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 7/9/1992 | 143360 | - | NO | N | N | - | - |
| T313515 | 4 | T313515-D | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 7/9/1992 | 143360 | - | NO | N | N | - | - |
| T317203 | 0 | | | | | - | - | - | | | | | | - | | - | | | |
| T319462 | 2 | T319462-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 9/30/1992 | 143418 | - | NO | N | N | - | - |
| T319462 | 2 | T319462-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 10/20/1992 | 143421 | 5:00 | NO | N | N | - | - |
| T343619 | 0 | | | | | - | - | - | | | | | | - | | - | | | |
| T352657 | 1 | T352657-A | 1 | 4 | Yes | 7 | 3 | 0.75 | 4 | LIVE | YES | 8/11/1992 | 111206 | 18:00 | NO | N | N | - | - |
| T352657 | 1 | - | - | - | - | - | - | - | - | - | - | 9/2/1992 | 50076 | 23:45 | - | Y | N | - | - |
| T358064 | 0 | - | - | - | - | - | - | - | - | - | - | 8/3/1992 | 50141 | - | - | Y | N | - | - |
| T360984 | 1 | T360984-A | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 8/4/1992 | 50182 | 22:00 | NO | N | N | - | - |
| T360984 | 1 | T360984-A | - | - | No | - | - | - | - | LIVE | YES | 8/4/1992 | 50182 | 22:00 | NO | Y | N | - | - |
| T362346 | 0 | | | | | - | - | - | | | | | | - | | - | | | |
| T366726 | 3 | T366726-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 8/7/1992 | 11810 | 19:45 | NO | N | N | - | - |
| T366726 | 3 | T366726-B | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 8/7/1992 | 50278 | - | NO | Y | N | - | - |
| T366726 | 3 | T366726-B | - | - | No | - | - | - | - | LIVE | YES | 8/7/1992 | 50278 | - | NO | Y | N | - | - |
| T366726 | 3 | T366726-B | - | - | No | - | - | - | - | LIVE | YES | 8/7/1992 | 50278 | - | NO | Y | N | - | - |
| T366726 | 3 | T366726-C | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 8/7/1992 | 50280 | 21:00 | NO | N | N | - | - |
| T366726 | 3 | T366726-C | - | - | No | - | - | - | - | LIVE | YES | 8/7/1992 | 50280 | 21:00 | NO | Y | N | - | - |
| T366726 | 3 | T366726-C | - | - | No | - | - | - | - | LIVE | YES | 8/7/1992 | 50280 | 21:00 | NO | Y | N | - | - |
| T366726 | 3 | T366726-C | - | - | No | - | - | - | - | LIVE | YES | 8/7/1992 | 50280 | 21:00 | NO | Y | N | - | - |
| T370421 | 2 | T370421-A | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 8/9/1992 | 50318 | 15:00 | YES | Y | N | - | - |
| T370421 | 2 | T370421-B | 1 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 1/7/1994 | 50335 | 3:05 | NO | N | N | - | - |
| T374032 | 1 | T374032-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 8/24/1992 | 50375 | 7:00 | NO | N | N | - | - |
| T376417 | 1 | T376417-A | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 8/14/1992 | 50418 | 22:30 | YES | N | N | - | - |
| T376749 | 0 | | | | | - | - | - | | | | | | - | | - | | | |
| T379028 | 0 | | | | | - | - | - | | | | | | - | | - | | | |
| T390473 | 4 | T390473-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/2/1992 | 50535 | 16:00 | NO | N | N | - | - |
| T390473 | 4 | T390473-B | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 9/4/1992 | 50543 | 18:00 | NO | N | N | - | - |
| T390473 | 4 | T390473-C | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 9/4/1992 | 50549 | 18:00 | NO | N | N | - | - |
| T390473 | 4 | T390473-D | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/6/1992 | 112531 | 14:00 | NO | N | Y | 50543 | UNK |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T230062 | - | | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T238571 | - | | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T243651 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T243651 | Unfamiliar | - | 1 | 11 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T243651 | Familiar Perp | - | 2 | 11 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| T250344 | - | | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T252235 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T252235 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T252235 | Both | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| T252235 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T261332 | - | | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T261570 | - | | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T263381 | - | | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T264377 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| T264377 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T264377 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T264377 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T264377 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T269237 | - | | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T280749 | Familiar Perp | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T280749 | Familiar Perp | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T280749 | Unfamiliar | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T280749 | Unfamiliar | | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T280749 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T282523 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| T282523 | Unfamiliar | - | 3 | 6 | 1 | 3 | 0 | 1 | 2 | 0 | 0 | 3 | N | - | N | N |
| T290460 | Unfamiliar | - | 3 | 4 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| T290460 | Unfamiliar | - | 1 | 7 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| T290460 | Familiar Perp | - | 2 | 7 | 2 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | N | - | N | N |
| T290761 | - | | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T306202 | - | | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T308480 | Unfamiliar | - | 1 | 5 | 2 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | N |
| T308480 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T308480 | Previous ID | - | 1 | 8 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T308480 | Previous ID | | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T311746 | Unfamiliar | - | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| T313079 | - | | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T313515 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T313515 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T313515 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T313515 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T313515 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| T313515 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| T317203 | - | | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T319462 | Unfamiliar | - | 2 | 5 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| T319462 | Unfamiliar | - | 2 | 4 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| T343919 | - | | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T352657 | Unfamiliar | - | 1 | 7 | 4 | 4 | 2 | 0 | 0 | 0 | 2 | 4 | N | - | N | N |
| T352657 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| T358094 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| T360694 | Unfamiliar | - | 3 | 5 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| T360694 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T362346 | - | | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T366726 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| T366726 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T366726 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T366726 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T366726 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T366726 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T366726 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T366726 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T370421 | Familiar Perp | - | 1 | UNK | UNK | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T370421 | Unfamiliar | - | 3 | 5 | 1 | 3 | 2 | 0 | 1 | 0 | 0 | 3 | N | - | Y | N |
| T374032 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T375417 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T375749 | - | | - | - | - | - | - | - | - | - | - | - | | | N | - |
| T370028 | - | | - | - | - | - | - | - | - | - | - | - | | | Y | N |
| T390473 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T390473 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T390473 | Unfamiliar | - | 2 | 5 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| T390473 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number of Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T399427 | 3 | T399427-A | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 8/27/1992 | 143560 | 17:00 | NO | N | Y | 143564 | N |
| T399427 | 3 | T399427-A | - | - | No | 4 | 3 | 3 | - | LIVE | YES | 8/27/1992 | 143560 | 17:00 | NO | N | N | - | - |
| T399427 | 3 | T399427-B | 1 | 1 | No | 7 | 6 | 6 | 1 | PHOTO | NO | 8/27/1992 | 143564 | 23:30 | NO | N | N | - | - |
| T399427 | 3 | T399427-C | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 8/29/1992 | 143566 | 22:30 | NO | N | N | - | - |
| T399427 | 3 | T399427-C | - | - | No | - | - | - | - | LIVE | YES | 8/29/1992 | 143566 | 22:30 | NO | N | Y | 143561 | N |
| T401341 | 5 | T401341-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/26/1992 | 50528 | 18:00 | YES | N | N | - | - |
| T401341 | 5 | T401341-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 8/27/1992 | 112762 | 22:50 | NO | N | N | - | - |
| T401341 | 5 | T401341-C | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 8/28/1992 | 50616 | - | NO | Y | N | - | - |
| T401341 | 5 | T401341-D | 4 | 1 | No | UNK | UNK | UNK | 4 | PHOTO | NO | 8/31/1992 | 112745 | 6:00 | YES | N | N | - | - |
| T401341 | 5 | T401341-D | - | - | No | - | - | - | - | PHOTO | NO | 8/31/1992 | 112745 | 6:00 | YES | Y | N | - | - |
| T401341 | 5 | T401341-D | - | - | No | - | - | - | - | PHOTO | NO | 8/31/1992 | 112745 | 6:00 | YES | N | Y | 50828 | UNK |
| T401341 | 5 | T401341-E | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/1/1992 | 50648 | 16:00 | NO | Y | Y | 50616 | UNK |
| T404414 | 0 | | | | | | | | | | | | | | | | | | |
| T412547 | 3 | | - | - | | | | | | | | | 10/25/1992 | 50754 | 23:50 | - | Y | N | - | - |
| T412547 | 3 | T412547-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 10/25/1992 | 50754 | 23:50 | NO | N | N | - | - |
| T412547 | 3 | T412547-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 4/30/1993 | 50762 | 22:00 | NO | N | N | - | - |
| T412547 | 3 | T412547-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 6/3/1993 | 50777 | 21:00 | NO | N | Y | 50754 | N |
| T419317 | 1 | T419317-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/5/1992 | 50789 | 3:00 | NO | N | N | - | - |
| T420857 | 3 | T420857-A | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 9/6/1992 | 143605 | 6:00 | NO | Y | N | - | - |
| T420857 | 3 | T420857-A | - | - | No | - | - | - | - | PHOTO | NO | 9/6/1992 | 143605 | 6:00 | NO | Y | N | - | - |
| T420857 | 3 | T420857-B | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 9/6/1992 | 143597 | 18:45 | NO | N | N | - | - |
| T420857 | 3 | T420857-B | - | - | No | - | - | - | - | LIVE | YES | 9/6/1992 | 143597 | 18:45 | NO | Y | Y | 143605 | N |
| T420857 | 3 | T420857-B | - | - | No | - | - | - | - | LIVE | YES | 9/6/1992 | 143597 | 18:45 | NO | Y | Y | 143605 | N |
| T420857 | 3 | T420857-C | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 9/7/1992 | 143615 | 20:30 | NO | N | N | - | - |
| T428093 | 0 | | | | | | - | | | | | | | | | | | | |
| T431027 | 1 | T431027-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/13/1992 | 50911 | 22:00 | NO | Y | N | - | - |
| T435041 | 1 | T435041-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 5/4/1997 | 50988 | | YES | N | N | - | - |
| T438238 | 3 | T438238-A | 2 | 2 | Yes | UNK | UNK | UNK | 4 | PHOTO | NO | 9/22/1992 | 51092 | 3:00 | NO | N | N | - | - |
| T438238 | 3 | | - | - | | - | - | - | - | | | 11/27/1992 | 51119 | 21:00 | - | Y | N | - | - |
| T438238 | 3 | T438238-B | 4 | 1 | No | 4 | 3 | 3 | 4 | LIVE | YES | 3/24/1993 | 51182 | 21:45 | NO | N | N | - | - |
| T438238 | 3 | T438238-B | - | - | No | - | - | - | - | LIVE | YES | 3/24/1993 | 51182 | 21:45 | NO | N | Y | 51092 | UNK |
| T438238 | 3 | T438238-B | - | - | No | - | - | - | - | LIVE | YES | 3/24/1993 | 51182 | 21:45 | NO | N | Y | 51092 | UNK |
| T438238 | 3 | T438238-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/25/1993 | 51172 | 18:15 | NO | N | N | - | - |
| T443724 | 1 | T443724-A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 9/19/1992 | 51210 | 11:00 | NO | N | N | - | - |
| T443724 | 1 | | - | - | | - | - | - | - | | | 3/8/1993 | 51238 | | NO | Y | N | - | - |
| T444461 | 4 | T444461-A | 5 | 1 | No | 5 | 4 | 4 | 5 | LIVE | YES | 9/22/1992 | 51294 | 22:00 | NO | N | N | - | - |
| T444461 | 4 | T444461-A | - | - | No | - | - | - | - | LIVE | YES | 9/22/1992 | 51294 | 22:00 | NO | N | Y | 51302 | N |
| T444461 | 4 | T444461-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 9/22/1992 | 51302 | - | NO | N | N | - | - |
| T444461 | 4 | T444461-C | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 10/6/1992 | 51308 | 22:00 | NO | N | N | - | - |
| T444461 | 4 | T444461-C | - | - | No | - | - | - | - | LIVE | YES | 10/6/1992 | 51308 | 22:00 | NO | Y | Y | 51316 | UNK |
| T444461 | 4 | T444461-D | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 10/6/1992 | 51316 | - | NO | Y | N | - | - |
| T444461 | 4 | T444461-D | - | - | No | - | - | - | - | PHOTO | NO | 10/6/1992 | 51316 | - | NO | N | N | - | - |
| T485112 | 2 | T485112-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 10/16/1992 | 51368 | 3:00 | NO | N | Y | 51378 | N |
| T485112 | 2 | T485112-A | - | - | No | - | - | - | - | LIVE | YES | 10/16/1992 | 51368 | 3:00 | NO | N | Y | 51378 | N |
| T485112 | 2 | T485112-B | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 10/19/1992 | 51378 | 21:00 | NO | N | N | - | - |
| T485389 | 0 | | | | | | | | | | | | | | | | | | |
| T491678 | 5 | T491678-A | 4 | 1 | No | 6 | 5 | 5 | 4 | LIVE | YES | 10/16/1992 | 51429 | 23:55 | NO | N | N | - | - |
| T491678 | 5 | T491678-B | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 10/17/1992 | 51463 | 21:05 | NO | N | N | - | - |
| T491678 | 5 | T491678-C | 2 | 2 | Yes | 7 | 5 | 2.5 | 4 | PHOTO | NO | 10/18/1992 | 114528 | 23:55 | NO | N | N | - | - |
| T491678 | 5 | T491678-D | 3 | 2 | Yes | 7 | 5 | 2.5 | 6 | LIVE | YES | 10/19/1992 | 51469 | - | NO | N | N | - | - |
| T491678 | 5 | T491678-D | - | - | Yes | - | - | - | - | LIVE | YES | 10/19/1992 | 51469 | - | NO | Y | N | - | - |
| T491678 | 5 | T491678-D | - | - | Yes | - | - | - | - | LIVE | YES | 10/19/1992 | 51469 | - | NO | N | N | - | - |
| T491678 | 5 | T491678-D | - | - | Yes | - | - | - | - | LIVE | YES | 10/19/1992 | 51469 | - | NO | Y | N | - | - |
| T491678 | 5 | T491678-D | - | - | Yes | - | - | - | - | LIVE | YES | 10/19/1992 | 51469 | - | NO | N | N | - | - |
| T491678 | 5 | T491678-E | 3 | 2 | Yes | 6 | 4 | 2 | 6 | LIVE | YES | 10/24/1992 | 114644 | 9:00 | NO | N | N | - | - |
| T491678 | 5 | T491678-E | - | - | Yes | - | - | - | - | LIVE | YES | 10/24/1992 | 114644 | 9:00 | NO | Y | N | 51469; 114562; 114564 | N |
| T505293 | 1 | | - | - | | - | - | - | - | | | 10/31/1992 | 51567 | - | - | Y | N | - | - |
| T505293 | 1 | T505293-A | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 11/15/1992 | 51569 | 20:00 | NO | N | N | - | - |
| T505293 | 1 | T505293-A | - | - | No | - | - | - | - | LIVE | YES | 11/15/1992 | 51569 | 20:00 | NO | Y | N | - | - |
| T517282 | 5 | T517282-A | 2 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 1/29/1992 | 143676 | 22:00 | YES | N | N | - | - |
| T517282 | 5 | T517282-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 2/19/1993 | 143684 | 21:00 | NO | N | Y | - | - |
| T517282 | 5 | T517282-C | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 2/19/1993 | 143686 | 21:00 | NO | N | N | - | - |
| T517282 | 5 | T517282-D | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 2/21/1993 | 143694 | 20:00 | NO | N | Y | 143686 | N |
| T517282 | 5 | T517282-E | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 3/24/1994 | 143705 | 12:00 | NO | Y | N | - | - |
| T518791 | 0 | | | | | | | | | | | | | | | | | | |
| T520448 | 2 | T520448-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 11/3/1992 | 51722 | UNK | NO | Y | N | - | - |
| T520448 | 2 | T520448-B | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 2/26/1993 | 51744 | 20:13 | NO | Y | N | - | - |
| T520448 | 2 | T520448-B | - | - | No | - | - | - | - | LIVE | YES | 2/26/1993 | 51744 | 20:13 | NO | Y | N | - | - |
| T520448 | 2 | T520448-B | - | - | No | - | - | - | - | LIVE | YES | 2/26/1993 | 51744 | 20:13 | NO | Y | Y | 51722 | N |
| T522834 | 1 | T522834-A | 6 | 2 | Yes | 7 | 5 | 2.5 | 12 | LIVE | YES | 11/4/1992 | 143719 | 21:00 | NO | N | N | - | - |

Case: 1:20-cv-04156 Document #: 339-18 Filed: 06/10/24 Page 463 of 511 PageID #:50430

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T390427 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T390427 | Unfamiliar | - | 2 | 4 | 1 | 2 | 1 | 1 | 0 | 0 | 0 | 2 | N | - | N | N |
| T390427 | Unfamiliar | - | 1 | 7 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| T390427 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| T390427 | Previous ID | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| T401341 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| T401341 | Unfamiliar | - | 2 | 5 | 1 | 2 | 1 | 1 | 0 | 0 | 0 | 2 | N | - | N | N |
| T401341 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T401341 | Unfamiliar | - | 2 | UNK | 1 | 2 | 0 | 2 | 0 | 0 | 0 | 2 | Y | Y | N | N |
| T401341 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| T401341 | Previous ID | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| T401341 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T404414 | - | | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| T412547 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| T412547 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| T412547 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T412547 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T419317 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T420857 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T420857 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T420857 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T420857 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T420857 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T420857 | Unfamiliar | - | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| T428093 | - | | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| T431027 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T435041 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| T438238 | Unfamiliar | - | 2 | UNK | 2 | 4 | 2 | 0 | 2 | 0 | 0 | 4 | N | - | Y | Y |
| T438238 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| T438238 | Unfamiliar | - | 2 | 4 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | Y | N |
| T438238 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T438238 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T438238 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T443724 | Unfamiliar | - | 2 | 4 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| T443724 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| T444461 | Unfamiliar | - | 4 | 5 | 1 | 4 | 3 | 0 | 1 | 0 | 0 | 4 | N | - | Y | Y |
| T444461 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T444461 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T444461 | Unfamiliar | - | 3 | 5 | 1 | 3 | 1 | 0 | 2 | 0 | 0 | 3 | N | - | Y | Y |
| T444461 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T444461 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T444461 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T485112 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T485112 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T485112 | Unfamiliar | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| T485380 | - | | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| T491678 | Unfamiliar | - | 4 | 6 | 1 | 4 | 0 | 0 | 4 | 0 | 0 | 4 | N | - | N | N |
| T491678 | Unfamiliar | - | 2 | 6 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | Y | N | N | N |
| T491678 | Unfamiliar | - | 2 | 7 | 2 | 4 | 0 | 2 | 2 | 0 | 0 | 4 | Y | N | N | N |
| T491678 | Unfamiliar | - | 1 | 7 | 2 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| T491678 | Familiar Perp | Witness A | | 7 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| T491678 | Unfamiliar | Witness A | 1 | 7 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| T491678 | Familiar Perp | Witness B | | 7 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| T491678 | Unfamiliar | Witness B | 1 | 7 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| T491678 | Unfamiliar | - | 1 | 6 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| T491678 | Both | - | 2 | 6 | 2 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | Y | Y | N | N |
| T505293 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| T505293 | Unfamiliar | - | 3 | 5 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| T505293 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T517282 | Unfamiliar | - | 2 | UNK | UNK | #VALUE! | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | Y |
| T517282 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T517282 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T517282 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T517282 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T518791 | - | | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| T520448 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T520448 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T520448 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T520448 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T522834 | Unfamiliar | - | 6 | 7 | 2 | 12 | 10 | 0 | 2 | 0 | 0 | 12 | N | - | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T523490 | 1 | T523490-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/17/1992 | 115293 | 13:00 | NO | Y | N | - | - |
| T526720 | 0 | | | | | - | - | - | | - | - | | | | | | | | |
| T538675 | 0 | | | | | - | - | - | | - | - | | | - | | | | | |
| T540285 | 2 | T540285-A | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 11/18/1992 | 143795 | 20:45 | NO | N | N | - | - |
| T540285 | 2 | T540285-B | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 11/17/1992 | 143799 | 15:55 | NO | N | N | - | - |
| T541671 | 5 | T541671-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 11/28/1992 | 51975 | 22:00 | NO | Y | Y | 51975 | UNK |
| T541671 | 5 | T541671-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/8/1992 | 51949 | 18:00 | NO | Y | Y | 51963 | UNK |
| T541671 | 5 | T541671-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/8/1992 | 51953 | 12:00 | NO | Y | Y | 51975 | UNK |
| T541671 | 5 | T541671-D | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 12/9/1992 | 51963 | 21:00 | NO | Y | Y | 51963 | UNK |
| T541671 | 5 | T541671-E | 2 | 1 | No | 4 | 4 | 4 | 2 | PHOTO | NO | 4/11/1995 | 51991 | - | NO | Y | N | - | - |
| T541671 | 5 | T541671-E | - | - | No | - | - | - | - | PHOTO | NO | 4/11/1995 | 51991 | - | NO | Y | N | - | - |
| T542586 | 0 | | | | | - | - | - | | - | - | | | - | | | | | |
| T547337 | 2 | T547337-A | 3 | 1 | No | UNK | UNK | UNK | 3 | PHOTO | NO | 1/1/1993 | 52097 | 23:50 | NO | N | N | - | - |
| T547337 | 2 | T547337-B | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 10/6/1993 | 115915 | 20:00 | NO | N | Y | 52097 | UNK |
| T547337 | 2 | T547337-B | - | - | No | - | - | - | - | LIVE | YES | 10/6/1993 | 115931 | 20:00 | NO | N | Y | 52097 | UNK |
| T547337 | 2 | T547337-B | - | - | No | - | - | - | - | LIVE | YES | 10/6/1993 | 115931 | 20:00 | NO | N | Y | 52097 | UNK |
| T547337 | 2 | - | - | - | - | - | - | - | - | - | - | 1/1/1993 | 52097 | 23:50 | - | Y | N | - | - |
| T555232 | 0 | | | | | - | - | - | | - | - | | | - | | | | | |
| T568121 | 0 | | | | | - | - | - | | - | - | | | - | | | | | |
| T579053 | 1 | T579053-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 12/15/1992 | 52230 | 22:30 | NO | Y | Y | 52214 | N |
| T579053 | 1 | T579053-A | - | - | No | - | - | - | - | LIVE | YES | 12/15/1992 | 52230 | 22:30 | NO | N | N | - | - |
| T586556 | 6 | T586556-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 6/19/2001 | 116332 | UNK | NO | Y | N | - | - |
| T586556 | 6 | T586556-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 6/19/2001 | 116332 | UNK | NO | Y | N | - | - |
| T586556 | 6 | T586556-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 7/2/2002 | 116334 | UNK | NO | Y | N | - | - |
| T586556 | 6 | T586556-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 7/2/2002 | 116334 | UNK | NO | N | N | - | - |
| T586556 | 6 | T586556-E | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 3/28/2004 | 116335 | UNK | NO | Y | N | - | - |
| T586556 | 6 | T586556-F | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 3/28/2004 | 116335 | UNK | NO | Y | N | - | - |
| T589343 | 0 | | | | | - | - | - | | - | - | | | | | | | | |
| T594485 | 0 | | | | | - | - | - | | - | - | | | | | | | | |
| T603038 | 1 | T603038-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | NO | 1/16/1996 | 52442; 52448 | - | NO | Y | Y | 52440 | N |
| T606326 | 0 | | | | | - | - | - | | - | - | | | - | | | | | |
| T610024 | 1 | T610024-A | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 1/5/1993 | 11704 | 15:00 | NO | Y | N | - | - |
| T610024 | 1 | T610024-A | - | - | No | - | - | - | - | LIVE | YES | 1/5/1993 | 11704 | 15:00 | NO | Y | N | - | - |
| T610024 | 1 | T610024-A | - | - | No | - | - | - | - | LIVE | YES | 1/5/1993 | 11704 | 15:00 | NO | Y | N | - | - |
| T610024 | 1 | T610024-A | - | - | No | - | - | - | - | LIVE | YES | 1/5/1993 | 11704 | 15:00 | NO | Y | N | - | - |
| T612545 | 0 | - | - | - | - | - | - | - | - | - | - | 2/19/1993 | 52541 | 18:00 | - | Y | N | - | - |
| X000396 | 0 | | | | | - | - | - | | - | - | | | - | | | | | |
| X001081 | 3 | X001081-A | 4 | 1 | No | 6 | 5 | 5 | 4 | PHOTO | NO | 1/1/1993 | 52602-6 | 22:00 | NO | N | N | - | - |
| X001081 | 3 | X001081-A | - | - | No | - | - | - | - | PHOTO | NO | 1/1/1993 | 52602-6 | 22:00 | NO | N | N | - | - |
| X001081 | 3 | X001081-B | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 1/3/1993 | 52616 | 12:20 | NO | N | N | - | - |
| X001081 | 3 | X001081-B | - | - | No | - | - | - | - | LIVE | YES | 1/3/1993 | 52616 | 12:20 | NO | Y | Y | 52602-4 | UNK |
| X001081 | 3 | X001081-C | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 1/4/1993 | 52632 | 23:30 | NO | Y | N | - | - |
| X001926 | 0 | - | - | - | - | - | - | - | - | - | - | 1/2/1992 | 52659-71 | 23:45 | - | N | N | - | - |
| X001926 | 0 | - | - | - | - | - | - | - | - | - | - | 1/3/1993 | 52675 | 16:30 | - | N | N | - | - |
| X022831 | 4 | X022831-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/22/1993 | 52784 | 13:00 | NO | N | N | - | - |
| X022831 | 4 | X022831-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/22/1993 | 52788 | 13:00 | NO | N | N | - | - |
| X022831 | 4 | X022831-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/22/1993 | 52792 | 13:00 | NO | N | N | - | - |
| X022831 | 4 | X022831-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/22/1993 | 52796 | 13:00 | NO | N | N | - | - |
| X035362 | 2 | X035362-A | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 1/29/1993 | 52831 | 20:00 | NO | N | N | - | - |
| X035362 | 2 | X035362-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 2/4/1993 | 52839 | 22:00 | NO | N | Y | 52831 | N |
| X048173 | 0 | | | | | - | - | - | | - | - | | | - | | | | | |
| X050797 | 3 | X050797-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 2/28/1993 | 52891 | 20:30 | NO | N | Y | 52899 | UNK |
| X050797 | 3 | X050797-A | - | - | #REF! | - | - | - | - | LIVE | YES | 2/28/1993 | 52891 | 20:30 | NO | N | Y | 52899 | UNK |
| X050797 | 3 | X050797-B | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 3/1/1993 | 52899 | 12:00 | NO | N | N | - | - |
| X050797 | 3 | X050797-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/8/1995 | 52909 | UNK | NO | N | N | - | - |
| X051839 | 2 | X051839-A | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 2/4/1993 | 52917 | - | NO | N | N | - | - |
| X051839 | 2 | X051839-A | - | - | No | - | - | - | - | LIVE | YES | 2/4/1993 | 52917 | - | NO | Y | N | - | - |
| X051839 | 2 | X051839-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 2/10/1993 | 52949 | 1:00 | NO | N | N | - | - |
| X054183 | 5 | | | | | | | | | | | 6/2/1993 | 53013 | 23:00 | NO | Y | N | | |
| X054183 | 5 | X054183-A | 1 | 3 | Yes | 8 | 5 | 1.666666667 | 3 | PHOTO | NO | 6/2/1993 | 53015 | 23:00 | NO | N | N | - | - |
| X054183 | 5 | X054183-B | 1 | 3 | Yes | 8 | 5 | 1.666666667 | 3 | PHOTO | NO | 6/11/1993 | 53027-9 | 14:00 | NO | Y | N | - | - |
| X054183 | 5 | X054183-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/11/1993 | 53053 | 18:45 | NO | N | Y | 53015 | UNK |
| X054183 | 5 | X054183-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/11/1993 | 53017 | 18:45 | NO | Y | Y | 53027 | UNK |
| X054183 | 5 | X054183-E | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/9/1993 | 53043 | 19:30 | NO | Y | Y | 53015 | UNK |
| X057161 | 0 | | | | | - | - | - | | - | - | | | - | | | | | |
| X086005 | 0 | | | | | - | - | - | | - | - | | | - | | | | | |
| X078890 | 0 | | | | | - | - | - | | - | - | | | - | | | | | |
| X096203 | 0 | | | | | - | - | - | | - | - | | | - | | | | | |
| X123480 | 3 | X123480-A | 3 | 1 | No | UNK | UNK | UNK | - | PHOTO | NO | 3/24/1993 | 79413 | - | YES | - | - | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T523490 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T526720 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | Y | N |
| T538675 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| T540285 | Unfamiliar | - | 3 | 4 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| T540285 | Unfamiliar | - | 3 | 5 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| T541671 | Both | - | 1 | UNK | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | Y | N | N | N |
| T541671 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | N | N | N |
| T541671 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | N | N | N |
| T541671 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | N | N | N |
| T541671 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T541671 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T542586 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| T547337 | Unfamiliar | - | 3 | UNK | 1 | 3 | 0 | 0 | 3 | 0 | 0 | 3 | N | - | N | N |
| T547337 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T547337 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T547337 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| T547337 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| T556032 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| T568121 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| T579053 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | N |
| T579053 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T586556 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T586556 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T586556 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T586556 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| T586556 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T586556 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| T580343 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| T594485 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| T603038 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| T606326 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| T610024 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T610024 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T610024 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T610024 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| T612545 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| X000396 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| X001081 | Unfamiliar | - | 3 | 6 | 1 | 3 | 2 | 0 | 1 | 0 | 0 | 3 | N | - | N | N |
| X001081 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X001081 | Unfamiliar | - | 3 | 5 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| X001081 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X001081 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X001926 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | Y | N |
| X001926 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| X022831 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| X022831 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X022831 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| X022831 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X035362 | Unfamiliar | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| X035362 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X035362 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X048173 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| X050797 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X050797 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X050797 | Unfamiliar | - | 2 | UNK | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| X050797 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| X051839 | Unfamiliar | - | 3 | 5 | 1 | 3 | 2 | 1 | 0 | 0 | 0 | 3 | N | - | N | N |
| X051839 | Familiar Perp | - | 1 | 5 | 1 | 2 | 1 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| X051839 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X054183 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| X054183 | Unfamiliar | - | 1 | 8 | 3 | 3 | 2 | 0 | 1 | 0 | 0 | 3 | N | - | Y | Y |
| X054183 | Familiar Perp | - | 1 | 8 | 3 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | Y | Y |
| X054183 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X054183 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X054183 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X057161 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| X066005 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | Y | N |
| X078900 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| X098203 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| X123480 | Unfamiliar | - | 3 | UNK | 1 | 3 | 0 | 0 | 3 | 0 | 0 | 3 | N | - | Y | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X123480 | 3 | X123480-B | 3 | 2 | Yes | 5 | 3 | 1.5 | 6 | LIVE | YES | 3/26/1993 | 18:00 | 79477 | NO | N | N | - | - |
| X123480 |  | X123480-B | - | - | Yes | - | - | - | - | LIVE | YES | 3/26/1993 | 18:00 | 79477 | NO | Y | N | - | - |
| X123480 |  | X123480-B | - | - | Yes | - | - | - | - | LIVE | YES | 3/26/1993 | 18:00 | 79477 | NO | N | N | - | - |
| X123480 |  | X123480-B | - | - | Yes | - | - | - | - | LIVE | YES | 3/26/1993 | 18:00 | 79477 | NO | Y | N | - | - |
| X123480 |  | X123480-B | - | - | Yes | - | - | - | - | LIVE | YES | 3/26/1993 | 18:00 | 79477 | NO | N | N | - | - |
| X123480 |  | X123480-B | - | - | Yes | - | - | - | - | LIVE | YES | 3/26/1993 | 18:00 | 79477 | NO | Y | N | - | - |
| X123480 | 3 |  | - | - |  | - | - | - | - |  |  | 3/27/1993 |  |  | NO | N | N | - | - |
| X123480 |  | X123480-C | 3 | 1 | No | 6 | 5 | 5 | 3 | LIVE | YES | 3/28/1993 | 18:00 | 79479 | NO | N | N | - | - |
| X129413 | 0 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X134034 | 2 | X134034-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 5/5/1993 | 16:30 | 79855 | NO | N | N | - | - |
| X134034 | 2 | X134034-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 5/5/1993 | 21:00 | 79857 | NO | N | N | - | - |
| X134034 |  | X134034 | - | - | No | - | - | - | - | LIVE | YES | 5/5/1993 | 21:00 | 79857 | NO | N | Y | 79855 | N |
| X135632 | 0 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X148140 | 1 | X148140-A | 3 | UNK | UNK | 6 | UNK | UNK | UNK | LIVE | YES | 4/8/1993 | - | 80112 | YES | N | Y | 80099 | - |
| X148140 | 1 | X148140-A | - | - | - | - | - | - | - | LIVE | YES | 4/8/1993 | - | 80112 | YES | N | N | - | - |
| X148140 | 1 | X148140-A | - | - | - | - | - | - | - | LIVE | YES | 4/8/1993 | - | 80112 | YES | N | Y | 80100 | UNK |
| X148140 | 1 | X148140-A | - | - | - | - | - | - | - | LIVE | YES | 4/8/1993 | - | 80112 | YES | N | N | - | - |
| X148140 | 1 |  | - | - | - | - | - | - | - | NO |  | 4/8/1993 | - | 80100 | - | - | - | - | - |
| X148140 | 1 |  | - | - | - | - | - | - | - | NO |  | 4/8/1993 | - | 80125 | - | - | - | - | - |
| X153174 | 3 | X153174-A | 3 | 1 | No | UNK | UNK | UNK | 3 | PHOTO | NO | 4/11/1993 | 23:30 | 80321 | NO | N | N | - | - |
| X153174 | 3 | X153174-A | - | - | No | - | - | - | - | PHOTO | NO | 4/11/1993 | 23:30 | 80321 | NO | N | N | - | - |
| X153174 | 3 | X153174-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 4/13/1993 | 17:10 | 80233 | NO | N | N | - | - |
| X153174 | 3 | X153174-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 6/1/1993 | 21:50 | 80268 | NO | N | Y | 80233 | N |
| X158148 | 0 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X165075 | 1 | X165075-A | 5 | 1 | No | 4 | 3 | 3 | 5 | LIVE | YES | 4/19/1993 | - | 80536 | NO | N | N | - | - |
| X168508 | 0 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X167593 |  |  | - | - | - | - | - | - | - | - | - | 4/20/1993 | 4:30 | 80731 | - | Y | N | - | - |
| X167593 | 1 | X167593-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 4/21/1993 | 23:28 | 80723 | NO | Y | Y | 80730 | N |
| X167593 | 1 |  | - | - | - | - | - | - | - | - | - | 4/13/2005 | 12:57 | 80746 | - | Y | - | - | - |
| X168336 | 0 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X184686 | 0 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X198517 | 0 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X198659 | 2 |  | - | - | - | - | - | - | - | - | - | 7/27/1995 | 21:30 | 53353 | - | Y | - | - | - |
| X198659 | 2 | X198659-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/1/1997 | 22:00 | 53245 | YES | Y | Y | 53243 | UNK |
| X198659 | 2 | X198659-B | 1 | UNK | UNK | 7 | UNK | UNK | UNK | PHOTO | NO | 8/4/1998 | 19:00 | 53243 | YES | Y | N | - | - |
| X198607 | 0 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X201908 | 0 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X202066 | 8 | X202066-A | 1 | 3 | Yes | UNK | UNK | UNK | 3 | PHOTO | NO | 5/11/1993 | 20:30 | 144217 | YES | Y | N | - | - |
| X202066 | 8 | X202066-A | - | - | Yes | - | - | - | - | PHOTO | NO | 5/11/1993 | 20:30 | 144217 | YES | Y | N | - | - |
| X202066 | 8 | X202066-A | - | - | Yes | - | - | - | - | PHOTO | NO | 5/11/1993 | 20:30 | 144217 | YES | Y | N | - | - |
| X202066 | 8 | X202066-B | 1 | 3 | Yes | UNK | UNK | UNK | 3 | PHOTO | NO | 5/13/1993 | 18:00 | 144225 | YES | Y | N | - | - |
| X202066 | 8 | X202066-B | - | - | Yes | - | - | - | - | PHOTO | NO | 5/13/1993 | 18:00 | 144225 | YES | Y | N | - | - |
| X202066 | 8 | X202066-B | - | - | Yes | - | - | - | - | PHOTO | NO | 5/13/1993 | 18:00 | 144225 | YES | Y | N | - | - |
| X202066 | 8 | X202066-C | 1 | 3 | Yes | UNK | UNK | UNK | 3 | PHOTO | NO | 5/13/1993 | 18:00 | 144225 | YES | Y | N | - | - |
| X202066 | 8 | X202066-C | - | - | Yes | - | - | - | - | PHOTO | NO | 5/13/1993 | 18:00 | 144225 | YES | Y | N | - | - |
| X202066 | 8 | X202066-C | - | - | Yes | - | - | - | - | PHOTO | NO | 5/13/1993 | 18:00 | 144225 | YES | Y | N | - | - |
| X202066 | 8 | X202066-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 5/29/1993 | - | 144229 | YES | Y | Y | 144217, 144229 | Y |
| X202066 | 8 | X202066-E | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/29/1994 | 20:00 | 81503 | YES | Y | Y | 144217, 144229 | UNK |
| X202066 | 8 | X202066-F | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 3/5/1997 | 17:00 | 144291 | NO | Y | Y | 144217, 144229, 81503 | UNK |
| X202066 | 8 | X202066-G | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 3/27/1997 | 15:00 | 144301 | NO | Y | Y | 144229, 14428 | UNK |
| X202066 | 8 | X202066-H | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 3/19/1994 | 14:30 | 144307 | NO | N | N | - | - |
| X205217 | 0 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X205664 | 0 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X209946 | 1 | X209946-A | 3 | UNK | UNK | 8 | UNK | UNK | UNK | LIVE | YES | 5/16/1993 | 18:00 | 53560 | NO | N | N | - | - |
| X209946 | 1 | X209946-A | 3 | UNK | UNK | 8 | UNK | UNK | UNK | CLOTHING | YES | 5/16/1993 | 18:00 | 53560 | NO | N | N | - | - |
| X222336 | 0 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| X232716 | 3 | X232716-A | 3 | 1 | No | 7 | 6 | 6 | 3 | LIVE | YES | 5/28/1993 | 9:00 | 53746 | NO | N | N | - | - |
| X232716 |  |  | - | - | - | - | - | - | - | - | - | 5/28/1993 | - | 14441 | - | N | N | - | - |
| X238408 | 0 |  | - | - | - | - | - | - | - | - | - | 6/1/1993 | 10:00 | 53837 | - | Y | N | - | - |
| X240550 | 1 | X240550-A | 2 | 2 | Yes | 5 | 3 | 1.5 | 6 | LIVE | YES | 6/2/1993 | 6:00 | 144489 | NO | Y | N | - | - |
| X240550 | 1 | X240550-A | - | - | Yes | - | - | - | - | LIVE | YES | 6/2/1993 | 6:00 | 144489 | NO | Y | N | - | - |
| X247759 | 2 | X247759-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 6/9/1993 | 8:00 | 53951 | NO | Y | N | - | - |
| X247759 | 2 | X247759-A | - | - | No | - | - | - | - | LIVE | YES | 6/9/1993 | 8:00 | 53951 | NO | Y | Y | 53973 | N |
| X247759 | 2 | X247759-B | 1 | 1 | No | 9 | 8 | 8 | 1 | PHOTO | NO | 8/13/1993 | 15:00 | 53973 | NO | Y | N | - | - |
| X250303 | 3 | X250303-A | 2 | 1 | No | 8 | 7 | 7 | 2 | PHOTO | NO | 6/22/1993 | 20:00 | 53995 | NO | N | N | - | - |
| X250303 | 3 | X250303-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/23/1993 | 1:25 | 54006 | NO | N | Y | 53995 | N |
| X250303 | 3 | X250303-C | 1 | 1 | No | 6 | 5 | 5 | 3 | LIVE | YES | 6/24/1993 | 1:25 | 54009 | NO | N | Y | 53995 | N |

Steblay Data 10-19-2022

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X123480 | Unfamiliar | Witness A | | 5 | 2 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| X123480 | Familiar Perp | Witness A | 1 | 5 | 2 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X123480 | Unfamiliar | Witness B | | 5 | 2 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| X123480 | Familiar Perp | Witness B | 1 | 5 | 2 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X123480 | Unfamiliar | Witness C | | 5 | 2 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| X123480 | Familiar Perp | Witness C | 1 | 5 | 2 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X123480 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| X123480 | Unfamiliar | - | 3 | 6 | 1 | 3 | 1 | 0 | 2 | 0 | 0 | 3 | N | - | Y | Y |
| X129413 | - | | - | - | - | - | - | - | - | - | - | - | | | N | N |
| X134034 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X134034 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X134034 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X135932 | - | | - | - | - | - | - | - | - | - | - | - | | | N | N |
| X148140 | Previous ID | - | 1 | 6 | UNK | #VALUE! | 1 | 0 | 5 | 0 | 0 | 6 | Y | Y | N | N |
| X148140 | Unfamiliar | - | 1 | 6 | UNK | #VALUE! | 1 | 0 | 5 | 0 | 0 | 6 | N | - | N | N |
| X148140 | Previous ID | Witness A | | 6 | UNK | #VALUE! | 1 | 0 | 5 | 0 | 0 | 6 | Y | Y | N | N |
| X148140 | Unfamiliar | Witness A | 1 | 6 | UNK | #VALUE! | 1 | 0 | 5 | 0 | 0 | 6 | N | - | N | N |
| X148140 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| X148140 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| X153174 | Unfamiliar | - | 2 | UNK | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| X153174 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X153174 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X153174 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X158148 | - | | - | - | - | - | - | - | - | - | - | - | | | N | N |
| X165075 | Unfamiliar | - | 5 | 4 | 1 | 5 | 5 | 0 | 0 | 0 | 0 | 5 | N | - | N | N |
| X166506 | - | | - | - | - | - | - | - | - | - | - | - | | | N | - |
| X167593 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| X167593 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| X167593 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| X168336 | - | | - | - | - | - | - | - | - | - | - | - | | | N | N |
| X184686 | - | | - | - | - | - | - | - | - | - | - | - | | | N | N |
| X198617 | - | | - | - | - | - | - | - | - | - | - | - | | | Y | N |
| X198959 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| X198959 | Both | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| X198959 | Familiar Perp | - | 1 | 7 | UNK | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| X198907 | - | - | - | - | - | - | - | - | - | - | - | - | | | N | N |
| X201908 | - | - | - | - | - | - | - | - | - | - | - | - | | | N | N |
| X201908 | - | - | - | - | - | - | - | - | - | - | - | - | | | N | N |
| X202086 | Familiar Perp | Witness A | | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X202086 | Familiar Perp | Witness A | | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X202086 | Familiar Perp | Witness A | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X202086 | Familiar Perp | Witness A | | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X202086 | Familiar Perp | Witness A | | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X202086 | Familiar Perp | Witness A | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X202086 | Familiar Perp | Witness A | | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X202086 | Familiar Perp | Witness A | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X202086 | Both | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X202086 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X202086 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X202086 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X202086 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X205217 | - | | - | - | - | - | - | - | - | - | - | - | | | N | N |
| X205684 | - | | - | - | - | - | - | - | - | - | - | - | | | Y | N |
| X206946 | Unfamiliar | - | 3 | 8 | UNK | #VALUE! | 3 | 0 | 0 | 0 | 0 | 3 | N | - | Y | Y |
| X206946 | Unfamiliar | - | 3 | 8 | UNK | #VALUE! | 3 | 0 | 0 | 0 | 0 | 3 | N | - | Y | Y |
| X222336 | - | | - | - | - | - | - | - | - | - | - | - | | | N | - |
| X232716 | Unfamiliar | - | 3 | 7 | 1 | 3 | 0 | 1 | 2 | 0 | 0 | 3 | N | - | Y | Y |
| X232716 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| X238408 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| X240550 | Familiar Perp | - | 1 | 5 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | Y | Y |
| X240550 | Familiar Perp | - | 1 | 5 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | Y | Y |
| X247759 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X247759 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X247759 | Familiar Perp | - | 1 | 9 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X250303 | Unfamiliar | - | 2 | 8 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| X250303 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X250303 | Both | - | 2 | 6 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | Y |
| X250303 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number of Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence witness saw suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X253411 | 0 | | | | | - | - | - | | - | | - | | - | | | | - | - |
| X268496 | 0 | | | | | - | - | - | | - | | - | | - | | | | - | - |
| X273883 | 2 | X273883-A | 4 | 4 | Yes | 6 | 2 | 0.5 | 16 | LIVE | YES | 6/25/1993 | 3:10 | 144647 | NO | - | N | - | - |
| X273883 | 2 | X273883-A | - | - | Yes | - | - | - | - | LIVE | YES | 6/25/1993 | 3:10 | 144647 | NO | Y | N | - | - |
| X273883 | 2 | X273883-A | - | - | Yes | - | - | - | - | LIVE | YES | 6/25/1993 | 3:10 | 144647 | NO | N | N | - | - |
| X273883 | 2 | X273883-B | 4 | 2 | Yes | 7 | 5 | 2.5 | 8 | LIVE | YES | 6/25/1993 | 4:00 | 144657 | NO | N | N | - | - |
| X276829 | 0 | | | | | - | - | - | | - | | - | | - | | | | - | - |
| X280775 | 1 | X280775-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 7/3/1993 | 16:00 | 54257 | YES | N | N | - | - |
| X284719 | 1 | X284719-A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 7/14/1993 | 16:30 | 54347 | NO | N | N | - | - |
| X294894 | 4 | X294894-A | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 7/16/1993 | UNK | 54405 | NO | N | N | - | - |
| X294894 | 4 | X294894-B | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 7/16/1993 | UNK | 54405 | NO | N | N | - | - |
| X294894 | 4 | X294894-C | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 7/16/1993 | 22:45 | 54305 | NO | N | Y | 54405 | N |
| X294894 | 4 | X294894-C | - | - | No | - | - | - | - | LIVE | YES | 7/16/1993 | 22:45 | 54305 | NO | N | Y | 54405 | UNK |
| X294894 | 4 | X294894-D | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 6/12/1993 | 17:00 | 54421 | NO | N | Y | 54405 | UNK |
| X294894 | 4 | X294894-D | - | - | No | - | - | - | - | LIVE | YES | 6/12/1993 | 17:00 | 54421 | NO | N | Y | 54405 | UNK |
| X310091 | 0 | | | | | - | - | - | | - | | - | | - | | | | - | - |
| X310333 | 0 | | | | | - | - | - | | - | | - | | - | | | | - | - |
| X318386 | 3 | X318386-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 4/20/1996 | UNK | 54577 | NO | N | N | - | - |
| X318386 | 3 | X318386-A | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 9/28/1996 | 17:50 | 54501 | NO | N | N | - | - |
| X318386 | 3 | X318386-B | - | - | No | - | - | - | - | LIVE | YES | 9/28/1996 | 20:30 | 54501 | NO | N | Y | 54577 | N |
| X318386 | 3 | X318386-C | 1 | 1 | No | 8 | 7 | 7 | 1 | LIVE | YES | 10/20/1996 | 20:35 | 54493 | NO | N | N | - | - |
| X326711 | 2 | X326711-A | 3 | 1 | No | 5 | 4 | 4 | 3 | PHOTO | NO | 10/24/1993 | UNK | 54838 | NO | N | N | - | - |
| X326711 | 2 | X326711-B | 8 | 1 | No | 5 | 4 | 4 | 8 | LIVE | YES | 10/31/1993 | 21:45 | 54822 | NO | N | N | - | - |
| X326711 | 2 | X326711-B | - | - | No | - | - | - | - | LIVE | YES | 10/31/1993 | 21:45 | 54822 | NO | N | Y | 54838 | UNK |
| X326711 | 2 | X326711-B | - | - | No | - | - | - | - | LIVE | YES | 10/31/1993 | 21:45 | 54822 | NO | N | Y | 54838 | UNK |
| X330715 | 0 | | | | | - | - | - | | - | | - | | - | | | | - | - |
| X353707 | 2 | X353707-A | 2 | 2 | Yes | 5 | 3 | 1.5 | 4 | LIVE | YES | 8/4/1993 | 6:00 | 54779 | NO | N | N | - | - |
| X353707 | 2 | X353707-B | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 11/22/1993 | 17:45 | 54796 | NO | N | N | - | - |
| X358457 | 2 | X358457-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | - | 8/6/1993 | - | 54829 | - | Y | N | - | - |
| X358457 | 2 | | - | - | - | - | - | - | - | - | - | 8/5/1993 | - | 54829 | - | Y | - | - | - |
| X358457 | 2 | X358457-B | 4 | 2 | Yes | 6 | 4 | 2 | 8 | LIVE | YES | 8/6/1993 | 19:10 | 54801 | NO | N | N | - | - |
| X358457 | 2 | X358457-B | - | - | Yes | - | - | - | - | LIVE | YES | 8/6/1993 | 19:10 | 54801 | NO | N | N | - | - |
| X358457 | 2 | X358457-B | - | - | Yes | - | - | - | - | LIVE | YES | 8/6/1993 | 19:10 | 54801 | NO | N | Y | 54829 | N |
| X363043 | 0 | | | | | - | - | - | | - | | - | | - | | | | - | - |
| X369525 | 3 | X369525-A | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 8/12/1993 | UNK | 54889 | NO | N | N | - | - |
| X369525 | 3 | X369525-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 8/12/1993 | 18:00 | 54913 | NO | N | N | - | - |
| X369525 | 3 | X369525-B | - | - | No | - | - | - | - | LIVE | YES | 8/12/1993 | 18:00 | 54913 | NO | N | Y | 54889 | UNK |
| X373094 | 1 | X373094-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 7/26/1996 | 21:00 | 54959 | YES | Y | N | - | - |
| X396851 | 4 | X396851-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 9/2/1993 | 22:00 | 54999 | YES | Y | N | - | - |
| X396851 | 4 | X396851-A | - | - | No | - | - | - | - | PHOTO | NO | 9/2/1993 | 22:00 | 54999 | YES | Y | N | - | - |
| X396851 | 4 | X396851-B | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 9/2/1993 | 22:00 | 54999 | YES | N | N | - | - |
| X396851 | 4 | X396851-C | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 9/2/1993 | 16:00 | 55005 | NO | N | Y | 54969 | UNK |
| X396851 | 4 | X396851-C | - | - | No | - | - | - | - | LIVE | YES | 9/2/1993 | 16:00 | 55005 | NO | N | Y | 54969 | UNK |
| X396851 | 4 | X396851-D | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 9/15/1993 | 14:00 | 54995 | NO | N | Y | 54969 | UNK |
| X396851 | 4 | X396851-D | - | - | No | - | - | - | - | LIVE | YES | 9/15/1993 | 14:00 | 54995 | NO | N | Y | 54969 | UNK |
| X399302 | 0 | | | | | - | - | - | | - | | - | | - | | | | - | - |
| X401936 | 3 | X401936-A | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 9/1/1993 | 2:00 | 55081 | NO | Y | N | - | - |
| X401936 | 3 | X401936-A | - | - | No | - | - | - | - | PHOTO | NO | 9/1/1993 | 2:00 | 55081 | NO | Y | N | - | - |
| X401936 | 3 | | - | - | - | - | - | - | - | - | - | 9/1/1993 | 2:00 | 55081 | - | - | - | - | - |
| X401936 | 3 | X401936-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 9/1/1993 | 3:00 | 55089 | NO | Y | N | - | - |
| X401936 | 3 | X401936-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/1/1993 | 14:30 | 55097 | NO | Y | Y | 55089 | UNK |
| X404224 | 1 | X404224-A | 1 | 2 | Yes | 5 | 3 | 1.5 | 2 | LIVE | YES | 8/31/1993 | 13:00 | 55117 | NO | N | N | - | - |
| X407041 | 3 | X407041-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 9/3/1993 | 23:00 | 55191 | NO | N | N | - | - |
| X407041 | 3 | X407041-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 9/4/1993 | 10:00 | 55229 | NO | N | N | - | - |
| X407041 | 3 | X407041-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/17/1993 | 17:00 | 55211 | NO | N | Y | 55229 | UNK |
| X432328 | 1 | X432328-A | 4 | 3 | Yes | 6 | 3 | 1 | 12 | LIVE | YES | 9/17/1993 | 4:00 | 55285 | NO | N | N | - | - |
| X434906 | 2 | X434906-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 10/5/1993 | 21:00 | 55326 | NO | Y | N | - | - |
| X434906 | 2 | X434906-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 10/5/1993 | 23:04 | 55304 | NO | Y | N | - | - |
| X446029 | 1 | X446029-A | 2 | 4 | Yes | 7 | 3 | 0.75 | 8 | LIVE | YES | 9/25/1993 | 18:00 | 144855 | NO | N | N | - | - |
| X446029 | 1 | | - | - | - | - | - | - | - | - | - | 9/26/1993 | - | 144831 | - | - | Y | N | - |
| X446029 | 1 | | - | - | - | - | - | - | - | - | - | 9/26/1993 | - | 144843 | - | - | Y | N | - |
| X446029 | 1 | | - | - | - | - | - | - | - | - | - | 9/26/1993 | - | 144841 | - | - | Y | N | - |
| X447871 | 0 | | | | | - | - | - | | - | | - | | - | | | | - | - |
| X448218 | 0 | | | | | - | - | - | | - | | - | | - | | | | - | - |
| X453866 | 0 | | | | | - | - | - | | - | | - | | - | | | | - | - |
| X458257 | 3 | X458257-A | 3 | 1 | No | 6 | 5 | 5 | 3 | PHOTO | NO | 11/3/1993 | - | 55625 | NO | N | Y | 55639 | N |
| X458257 | 3 | X458257-A | - | - | No | - | - | - | - | PHOTO | NO | 11/3/1993 | - | 55625 | NO | N | Y | 55639 | N |
| X458257 | 3 | X458257-A | - | - | No | - | - | - | - | PHOTO | NO | 11/3/1993 | - | 55625 | NO | N | Y | 55639 | N |
| X458257 | 3 | X458257-B | 3 | 1 | No | 6 | 5 | 5 | 3 | PHOTO | NO | 11/4/1993 | - | 55625 | NO | N | Y | 55625 | N |
| X458257 | 3 | X458257-B | - | - | No | - | - | - | - | PHOTO | NO | 11/4/1993 | - | 55625 | NO | N | Y | 55625 | N |
| X458257 | 3 | X458257-B | - | - | No | - | - | - | - | PHOTO | NO | 11/4/1993 | - | 55625 | NO | N | Y | 55625 | N |

Steblay Data 10-19-2022

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Filler Identifications | Number of Reported Filler Identification | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X253411 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| X268406 | - | | - | - | - | - | - | - | - | - | - | - | - | | Y | - |
| X273883 | Familiar Perp | - | 3 | 8 | 4 | 12 | 4 | 0 | 6 | 0 | 2 | 12 | Y | Y | N | N |
| X273883 | Familiar Perp | Witness A | | 8 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X273883 | Unfamiliar | Witness A | 1 | 8 | 3 | 0 | 0 | 0 | 0 | 0 | 3 | 3 | N | - | N | N |
| X273883 | Unfamiliar | - | 4 | 7 | 2 | 8 | 2 | 0 | 4 | 0 | 2 | 8 | N | - | N | N |
| X276829 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| X280775 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| X284719 | Unfamiliar | - | 2 | 4 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | Y | Y |
| X294894 | Unfamiliar | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| X294894 | Unfamiliar | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| X294894 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X294894 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X294894 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X294894 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X310091 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| X310333 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| X318386 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X318386 | Unfamiliar | - | 3 | 5 | 1 | 3 | 1 | 1 | 1 | 0 | 0 | 3 | N | - | N | N |
| X318386 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X318386 | Unfamiliar | - | 1 | 8 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X326711 | Unfamiliar | - | 3 | 5 | 1 | 3 | 2 | 0 | 1 | 0 | 0 | 3 | N | - | N | N |
| X326711 | Unfamiliar | - | 6 | 5 | 1 | 6 | 6 | 0 | 0 | 0 | 0 | 6 | N | - | N | N |
| X326711 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X326711 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X330715 | - | | - | - | - | - | - | - | - | - | - | - | - | | Y | N |
| X353707 | Unfamiliar | - | 2 | 5 | 2 | 4 | 1 | 0 | 3 | 0 | 0 | 4 | N | - | N | N |
| X353707 | Unfamiliar | - | 3 | 4 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| X358457 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X358457 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | Y |
| X358457 | Unfamiliar | - | 3 | 6 | 2 | 6 | 0 | 1 | 0 | 0 | 5 | 6 | N | - | Y | N |
| X358457 | Unfamiliar | Witness A | | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| X358457 | Previous ID | Witness A | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| X363943 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| X369525 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| X369525 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X369525 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X373084 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X396851 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X396851 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X396851 | Unfamiliar | - | 2 | UNK | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| X396851 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X396851 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X396851 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X396851 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X396302 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| X401936 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X401936 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X401936 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| X401936 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X401936 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X404224 | Unfamiliar | - | 1 | 5 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | Y |
| X407041 | Unfamiliar | - | 2 | 5 | 1 | 2 | 1 | 1 | 0 | 0 | 0 | 2 | N | - | N | N |
| X407041 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X407041 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X432328 | Unfamiliar | - | 4 | 6 | 3 | 12 | 4 | 0 | 0 | 0 | 8 | 12 | N | - | N | N |
| X434906 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X434906 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X434906 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X440029 | Unfamiliar | - | 2 | 7 | 4 | 8 | 2 | 0 | 0 | 0 | 6 | 8 | N | - | Y | Y |
| X440029 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| X440029 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| X440029 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| X447871 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| X448218 | - | | - | - | - | - | - | - | - | - | - | - | - | | Y | N |
| X453866 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| X458257 | Previous ID | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| X458257 | Previous ID | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| X458257 | Previous ID | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| X458257 | Previous ID | - | 1 | 6 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X458257 | Previous ID | - | 1 | 6 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X458257 | Previous ID | - | 1 | 6 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X458257 | 3 | X458257-C | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 11/4/1993 | 55619 | 22:50 | NO | N | Y | 55625 | N |
| X458257 | 3 | X458257-C | - | - | No | - | - | - | - | LIVE | YES | 11/4/1993 | 55619 | 22:50 | NO | N | Y | 55625 | N |
| X458257 | 3 | X458257-C | - | - | No | - | - | - | - | LIVE | YES | 11/4/1993 | 55619 | 22:50 | NO | N | Y | 55625 | N |
| X458521 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| X458554 | 5 | | | | | - | - | - | - | - | - | 10/22/1993 | 55688 | UNK | NO | Y | N | - | - |
| X458554 | 5 | X458554-A | 2 | 1 | Yes | 6 | 4 | 2 | 2 | PHOTO | NO | 10/22/1993 | 55688 | UNK | NO | N | N | - | - |
| X458554 | 5 | X458554-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 10/22/1993 | 55688 | UNK | NO | N | N | - | - |
| X458554 | 5 | X458554-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 10/29/1993 | 55696 | 1:30 | NO | N | Y | 55688 | N |
| X458554 | 5 | X458554-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/1/1993 | 55708 | 22:45 | NO | N | Y | 55688 | UNK |
| X458554 | 5 | X458554-E | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/15/1994 | 55746 | 16:30 | NO | N | Y | 55688 | N |
| X460949 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| X461578 | 1 | X461578-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 11/21/1993 | 55804 | 18:00 | YES | Y | N | - | - |
| X465215 | 2 | X465215-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/26/1993 | 85989 | 23:00 | NO | N | N | - | - |
| X465215 | 2 | X465215-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 10/9/1993 | 55668 | 17:45 | NO | N | N | - | - |
| X465215 | 2 | X465215-B | - | - | No | - | - | - | - | LIVE | YES | 10/9/1993 | 55668 | 17:45 | NO | N | Y | 55852-4 | N |
| X469989 | 2 | X469989-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 10/30/1993 | 55935 | UNK | NO | N | N | - | - |
| X469989 | 2 | X469989-B | 5 | 1 | No | 5 | 4 | 4 | 5 | LIVE | YES | 11/1/1993 | 55908 | 18:18 | NO | N | N | - | - |
| X469989 | 2 | X469989-B | - | - | No | - | - | - | - | LIVE | YES | 11/1/1993 | 55908 | 18:18 | NO | N | Y | 55935 | N |
| X472001 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| X472905 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| X478307 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| X482035 | 1 | X482035-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 10/16/1993 | 56078 | 23:30 | NO | N | N | - | - |
| X482159 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| X488331 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| X499505 | 2 | X499505-A | 2 | 1 | No | 12 | 11 | 11 | 2 | PHOTO | NO | 11/1/1993 | 56222 | 6:00 | NO | Y | N | - | - |
| X499505 | 2 | X499505-A | - | - | No | - | - | - | - | PHOTO | NO | 11/1/1993 | 56222 | 6:00 | NO | Y | N | - | - |
| X499505 | 2 | | | | | - | - | - | - | - | - | 10/30/1993 | 56230 | - | - | Y | N | - | - |
| X499505 | 2 | X499505-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 10/30/1993 | 56242 | 18:00 | NO | Y | Y | 56222 | N |
| X499505 | 2 | X499505-B | - | - | No | - | - | - | - | LIVE | YES | 10/30/1993 | 56242 | 18:00 | NO | Y | Y | 56222 | N |
| X499594 | 1 | X499594-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 10/26/1993 | 56306 | 23:00 | NO | N | N | - | - |
| X501086 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| X506880 | 2 | X506880-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 11/7/1993 | 56386 | 0:00 | NO | N | Y | 56374 | N |
| X506880 | 2 | X506880-B | 1 | 1 | No | 8 | 7 | 7 | 1 | PHOTO | NO | 11/11/1993 | 56374 | 23:00 | NO | N | N | - | - |
| X509163 | 5 | X509163-A | 2 | 2 | Yes | 6 | 4 | 2 | 4 | PHOTO | NO | 1/18/1996 | 145034 | UNK | NO | N | N | - | - |
| X509163 | 5 | X509163-A | - | - | Yes | - | - | - | - | PHOTO | NO | 1/18/1996 | 145034 | UNK | NO | N | N | - | - |
| X509163 | 5 | X509163-A | - | - | Yes | - | - | - | - | PHOTO | NO | 1/18/1996 | 145034 | UNK | NO | Y | N | - | - |
| X509163 | 5 | X509163-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/2/1996 | 145038 | UNK | NO | Y | N | - | - |
| X509163 | 5 | X509163-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/2/1996 | 145038 | UNK | NO | Y | N | - | - |
| X509163 | 5 | X509163-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/2/1996 | 145038 | UNK | NO | Y | N | - | - |
| X509163 | 5 | X509163-E | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 7/9/1997 | 145042 | UNK | NO | Y | Y | 145038 | UNK |
| X512953 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| X518897 | 2 | X518897-A | 5 | 1 | No | 5 | 4 | 4 | 5 | PHOTO | NO | 11/6/1993 | 56609/87224 | UNK | NO | N | N | - | - |
| X518897 | 2 | X518897-B | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 3/21/1997 | 56620/87213 | UNK | NO | N | Y | 56608 | N |
| X518897 | 2 | X518897-B | - | - | No | - | - | - | - | LIVE | YES | 3/21/1997 | 56620/87213 | UNK | NO | N | Y | 56608 | N |
| X518897 | 2 | X518897-B | - | - | No | - | - | - | - | LIVE | YES | 3/21/1997 | 56620/87213 | UNK | NO | N | Y | 56608 | N |
| X519377 | 2 | X519377-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 11/29/1993 | 56657 | 20:00 | NO | N | Y | 56665 | N |
| X519377 | 2 | X519377-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 11/30/1993 | 56665 | 2:00 | NO | N | N | - | - |
| X521776 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| X524372 | 2 | X524372-A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 11/23/1993 | 56717 | 19:30 | NO | Y | Y | 56725 | UNK |
| X524372 | 2 | X524372-A | - | - | No | - | - | - | - | LIVE | YES | 11/23/1993 | 56717 | 19:30 | NO | Y | N | - | - |
| X524372 | 2 | X524372-B | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 11/23/1993 | 56719 | - | NO | Y | N | - | - |
| X524372 | 2 | X524372-C | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 11/24/1993 | 56725 | UNK | NO | Y | N | - | - |
| X526458 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| X529824 | 2 | X529824-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/22/1994 | 87662 | - | NO | Y | N | - | - |
| X529824 | 2 | X529824-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 7/30/1994 | 87653 | 9:30 | NO | Y | N | - | - |
| X532566 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| X536749 | 3 | X536749-A | 2 | 1 | No | UNK | UNK | UNK | 2 | LIVE | NO | 11/18/1993 | 145160 | 5:00 | YES | N | N | - | - |
| X536749 | 3 | X536749-B | UNK | UNK | UNK | 4 | UNK | UNK | UNK | LIVE | NO | 11/17/1993 | 145134 | - | YES | N | N | - | - |
| X536749 | 3 | X536749-C | 6 | 3 | Yes | 7 | 4 | 1.333333333 | 18 | LIVE | YES | 11/18/1993 | 145140 | 22:00 | NO | N | N | - | - |
| X536749 | 3 | X536749-C | - | - | Yes | - | - | - | - | LIVE | YES | 11/18/1993 | 145140 | 22:00 | NO | N | N | - | - |
| X536749 | 3 | X536749-C | - | - | Yes | - | - | - | - | LIVE | YES | 11/18/1993 | 145140 | 22:00 | NO | Y | N | - | - |
| X536749 | 3 | X536749-C | - | - | Yes | - | - | - | - | LIVE | YES | 11/18/1993 | 145140 | 22:00 | NO | N | N | - | - |
| X536749 | 3 | X536749-C | - | - | Yes | - | - | - | - | LIVE | YES | 11/18/1993 | 145140 | 22:00 | NO | Y | N | - | - |
| X536749 | 3 | X536749-C | - | - | Yes | - | - | - | - | LIVE | YES | 11/18/1993 | 145140 | 22:00 | NO | Y | N | - | - |
| X536749 | 3 | X536749-C | - | - | Yes | - | - | - | - | LIVE | YES | 11/18/1993 | 145140 | 22:00 | NO | N | N | - | - |
| X536749 | 3 | X536749-C | - | - | Yes | - | - | - | - | LIVE | YES | 11/18/1993 | 145140 | 22:00 | NO | Y | N | - | - |
| X536749 | 3 | X536749-C | - | - | Yes | - | - | - | - | LIVE | YES | 11/18/1993 | 145140 | 22:00 | NO | Y | N | - | - |
| X536749 | 3 | X536749-C | - | - | Yes | - | - | - | - | LIVE | YES | 11/18/1993 | 145140 | 22:00 | NO | N | N | - | - |
| X539043 | 2 | X539043-A | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 12/6/1993 | 88001-2 | 22:00 | NO | N | N | - | - |
| X539043 | 2 | X539043-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/21/1995 | 87698 | 23:30 | NO | Y | Y | 88001-2 | N |
| X541123 | | | | | | | | | | - | - | - | - | - | - | - | - | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X458257 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X458257 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X458257 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X458521 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| X458554 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| X458554 | Unfamiliar | - | 1 | 6 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| X458554 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X458554 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| X458554 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X458554 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X460949 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| X461578 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| X465215 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| X465215 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| X465215 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| X469989 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| X469989 | Unfamiliar | - | 4 | 5 | 1 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | N | - | N | N |
| X469989 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X472001 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| X472905 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | Y | N |
| X478307 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| X482035 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X482159 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| X485331 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| X499505 | Familiar Perp | - | 1 | 12 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X499505 | Familiar Perp | - | 1 | 12 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X499505 | Familiar Perp | - | - | - | - | #VALUE! | 1 | - | - | - | - | - | #VALUE! | Y | Y | N | N |
| X499505 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X499505 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X499594 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| X501086 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| X506880 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X506880 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X509163 | Unfamiliar | - | 1 | 6 | 2 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| X509163 | Unfamiliar | Witness B | | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| X509163 | Familiar Perp | Witness B | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| X509163 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| X509163 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X509163 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X509163 | Both | - | 3 | 4 | 1 | 3 | 1 | 0 | 2 | 0 | 0 | 3 | N | - | N | N |
| X512953 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| X518897 | Unfamiliar | - | 5 | 5 | 1 | 5 | 5 | 0 | 0 | 0 | 0 | 5 | N | - | N | N |
| X518897 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X518897 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X518897 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X519377 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X519377 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X521776 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| X524372 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X524372 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X524372 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X524372 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X526458 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| X529824 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X529824 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| X532566 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| X536749 | Unfamiliar | - | 2 | UNK | 1 | 2 | 0 | 2 | 0 | 0 | 0 | 2 | N | - | N | N |
| X536749 | Unfamiliar | - | UNK | 4 | UNK | #VALUE! | UNK | UNK | UNK | UNK | UNK | #VALUE! | N | - | N | N |
| X536749 | Unfamiliar | - | 2 | 7 | 3 | 6 | 2 | 0 | 4 | 0 | 0 | 6 | N | - | N | N |
| X536749 | Familiar Perp | Witness A | | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X536749 | Unfamiliar | Witness A | 1 | 7 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| X536749 | Familiar Perp | Witness B | | 7 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| X536749 | Familiar Perp | Witness B | | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X536749 | Unfamiliar | Witness B | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X536749 | Familiar Perp | Witness C | | 7 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| X536749 | Familiar Perp | Witness C | | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X536749 | Unfamiliar | Witness C | 1 | 7 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| X536749 | Familiar Perp | Witness D | | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X536749 | Unfamiliar | Witness D | 1 | 7 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| X539943 | Unfamiliar | - | 2 | 6 | 1 | 2 | 0 | 1 | 1 | 0 | 0 | 2 | N | - | Y | Y |
| X539943 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | Y | N |
| X541123 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | Y | - |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X545568 | 4 | X545568-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 11/23/1993 | 57031 | 23:55 | NO | N | N | - | - |
| X545568 | 4 | X545568-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 3/8/1994 | 57021 | - | NO | Y | N | - | - |
| X545568 | 4 | X545568-C | 4 | 1 | No | 6 | 5 | 5 | 4 | PHOTO | NO | 3/8/1994 | 57023 | - | NO | N | N | - | - |
| X545568 | 4 | X545568-C | - | - | - | - | - | - | - | PHOTO | NO | 3/8/1994 | 57023 | - | NO | N | Y | 57031 | N |
| X545568 | 4 | X545568-D | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 3/8/1994 | 57009 | - | NO | N | N | - | - |
| X545568 | 4 | X545568-D | - | - | No | - | - | - | - | LIVE | YES | 3/8/1994 | 57009 | - | NO | N | Y | 57023 | N |
| X545568 | 4 | X545568-D | - | - | No | - | - | - | - | LIVE | YES | 3/8/1994 | 57009 | - | NO | N | Y | 57031 | N |
| X552814 | 1 | X552814-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 1/14/1995 | 57086 | - | YES | N | N | - | - |
| X554075 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| X557163 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| X563460 | 1 | - | - | - | - | - | - | - | - | PHOTO | - | 12/4/1993 | 57284 | 23:30 | NO | Y | N | - | - |
| X563460 | 1 | - | - | - | - | - | - | - | - | PHOTO | - | 12/4/1993 | 57284 | 23:30 | NO | N | N | - | - |
| X563460 | 1 | X563460-A | 5 | 1 | No | 5 | 4 | 4 | 5 | LIVE | YES | 12/6/1993 | 57284 | 22:00 | NO | N | N | - | - |
| X563460 | 1 | X563460-A | - | | No | - | - | - | - | LIVE | YES | 12/6/1993 | 57284 | 22:00 | NO | Y | N | - | - |
| X566418 | 1 | X566418-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/10/1993 | 145215 | 22:00 | NO | Y | Y | 57331 | N |
| X566418 | 1 | - | - | - | - | - | - | - | - | LIVE | - | 12/10/1993 | 145195 | 22:30 | - | Y | N | - | - |
| X573832 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| X575422 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| X597535 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| X598197 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| X600653 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| X600630 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| X606647 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| Y002633 | 0 | - | - | - | - | - | - | - | - | - | - | 1/4/1994 | 117444 | 2:00 | - | Y | N | - | - |
| Y004345 | 3 | Y004345-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 3/25/1994 | 57791 | 18:00 | YES | N | N | - | - |
| Y004345 | 3 | Y004345-B | 2 | 1 | No | UNK | UNK | UNK | 2 | LIVE | YES | 3/25/1994 | 57793 | 18:00 | YES | N | Y | 55791 | N |
| Y004345 | 3 | Y004345-B | - | | No | - | - | - | - | LIVE | NO | 3/25/1994 | 57793 | 18:00 | YES | N | N | - | - |
| Y004345 | 3 | Y004345-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 4/1/1994 | 57755 | 11:00 | NO | N | N | - | - |
| Y012213 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| Y017023 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| Y024704 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| Y043873 | 3 | Y043873-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 2/1/1994 | 117671 | 4:00 | YES | N | N | - | - |
| Y043873 | 3 | Y043873-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/2/1994 | 117962 | 17:30 | NO | N | N | - | - |
| Y043873 | 3 | Y043873-C | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 2/2/1994 | 117960 | 17:30 | NO | Y | N | - | - |
| Y043873 | 3 | Y043873-C | - | | No | - | - | - | - | LIVE | YES | 2/2/1994 | 117960 | 17:30 | NO | N | Y | 117962 | UNK |
| Y047471 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| Y048735 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| Y060623 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| Y065739 | 6 | Y065739-A | 3 | 1 | No | 6 | 5 | 5 | 3 | LIVE | YES | 3/25/1994 | 58068 | - | NO | N | N | - | - |
| Y065739 | 6 | Y065739-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 4/12/1994 | 58134 | 23:00 | NO | Y | N | - | - |
| Y065739 | 6 | Y065739-C | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 5/8/1994 | 58138 | 23:30 | NO | N | N | - | - |
| Y065739 | 6 | Y065739-D | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 6/26/1994 | 58132 | 23:30 | NO | Y | N | - | - |
| Y065739 | 6 | Y065739-E | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 9/29/1994 | 58150 | 23:45 | NO | N | N | - | - |
| Y065739 | 6 | Y065739-E | - | | No | - | - | - | - | LIVE | YES | 9/29/1994 | 58150 | 23:45 | NO | N | Y | 58068 | N |
| Y065739 | 6 | Y065739-E | - | | No | - | - | - | - | LIVE | YES | 9/29/1994 | 58150 | 23:45 | NO | N | Y | 58128 | N |
| Y065739 | 6 | Y065739-E | - | | No | - | - | - | - | LIVE | YES | 9/29/1994 | 58150 | 23:45 | NO | N | Y | 58138 | N |
| Y065739 | 6 | - | - | - | - | - | - | - | - | - | - | 9/29/1994 | 58169 | 23:30 | - | - | - | - | - |
| Y065739 | 6 | Y065739-F | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/29/1994 | 58161 | 23:50 | NO | N | N | - | - |
| Y092765 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| Y100198 | 1 | Y100198-A | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 3/12/1994 | 118327 | - | NO | N | N | - | - |
| Y102524 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | | | | |
| Y103853 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| Y105717 | 4 | Y105717-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 6/7/1994 | 58402 | 23:30 | NO | Y | N | - | - |
| Y105717 | 4 | Y105717-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 6/9/1994 | 58394 | - | NO | Y | Y | 58402 | N |
| Y105717 | 4 | Y105717-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 6/27/1994 | 58398 | 20:00 | NO | N | N | - | - |
| Y105717 | 4 | Y105717-D | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 6/28/1994 | 58383 | 19:00 | NO | N | N | - | - |
| Y116188 | 2 | Y116188-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 3/20/1994 | 58466 | 13:00 | NO | N | N | - | - |
| Y117102 | 3 | Y117102-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 3/21/1994 | 58512 | - | NO | Y | N | - | - |
| Y117102 | 3 | Y117102-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 3/22/1994 | 58504 | - | NO | N | N | - | - |
| Y117102 | 3 | Y117102-C | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 3/24/1994 | 58538 | - | NO | N | N | - | - |
| Y128245 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| Y128262 | 1 | Y128262-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 4/6/1994 | 58636 | 6:00 | NO | N | N | - | - |
| Y128262 | 1 | - | - | - | - | - | - | - | - | - | NO | 10/3/1994 | 58654 | - | - | N | N | - | - |
| Y132533 | 0 | | | | | | | | | | | - | - | - | - | | | | |
| Y140394 | 0 | - | - | - | - | - | - | - | - | - | - | 4/1/1999 | 58731 | - | - | Y | N | - | - |
| Y140394 | 0 | - | - | - | - | - | - | - | - | - | - | 4/1/1999 | 58731 | - | - | Y | N | - | - |
| Y140394 | 0 | - | - | - | - | - | - | - | - | - | - | 4/1/1999 | 58737 | - | - | Y | N | - | - |
| Y140394 | 0 | - | - | - | - | - | - | - | - | - | - | 5/30/1999 | 119471 | 4:30 | - | Y | N | - | - |
| Y140394 | 0 | - | - | - | - | - | - | - | - | - | - | 5/30/1999 | 119467 | 6:00 | - | Y | N | - | - |
| Y140382 | 1 | Y140382-A | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 4/19/1994 | 58753 | 18:00 | NO | N | N | - | - |
| Y145485 | 1 | Y145485-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 4/7/1994 | 58809 | - | NO | Y | N | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| X545568 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X545568 | Familiar Perp | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| X545568 | Unfamiliar | - | 3 | 6 | 1 | 3 | 2 | 0 | 1 | 0 | 0 | 3 | N | - | N | N |
| X545568 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X545568 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X545568 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X545568 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X552814 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| X554075 | - | | - | - | - | - | - | - | - | - | - | - | - | | Y | N |
| X557163 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| X563460 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| X563460 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| X563460 | Unfamiliar | - | 4 | 5 | 1 | 4 | 2 | 0 | 2 | 0 | 0 | 4 | Y | Y | N | N |
| X563460 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| X566418 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| X566418 | Familiar Perp | - | - | - | - | #VALUE! | - | - | - | - | - | #VALUE! | Y | Y | Y | N |
| X573832 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| X575422 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| X597535 | - | | - | - | - | - | - | - | - | - | - | - | - | | Y | N |
| X598197 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| X600653 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| X600830 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| X606647 | - | - | - | - | - | - | - | - | - | - | - | - | - | | Y | - |
| Y002633 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Y004345 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y004345 | Previous ID | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y004345 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| Y004345 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y012213 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| Y017923 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| Y024794 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| Y043873 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y043873 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Y043873 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y043873 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y047471 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| Y048735 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| Y060823 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| Y065739 | Unfamiliar | - | 3 | 6 | 1 | 3 | 1 | 0 | 1 | 1 | 0 | 3 | N | - | Y | N |
| Y065739 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Y065739 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Y065739 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Y065739 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Y065739 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Y065739 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Y065739 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Y065739 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| Y065739 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Y092765 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| Y100196 | Unfamiliar | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| Y102524 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| Y103853 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| Y105717 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y105717 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y105717 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y105717 | Unfamiliar | - | 2 | 4 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| Y116188 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| Y117102 | Familiar Perp | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | Y | N | N | N |
| Y117102 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y117102 | Unfamiliar | - | 2 | 5 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| Y128245 | - | | - | - | - | - | - | - | - | - | - | - | - | | Y | - |
| Y128262 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y128262 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Y132533 | - | | - | - | - | - | - | - | - | - | - | - | - | | N | - |
| Y140394 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Y140394 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Y140394 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Y140394 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Y140394 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Y142082 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| Y142082 | Unfamiliar | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| Y145485 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Y148888 | 3 | Y148888-A | 4 | 2 | Yes | 6 | 4 | 2 | 8 | LIVE | YES | 4/8/1994 | 145507, 145513 | 22:30 | NO | N | N | - | - |
| Y148888 | 3 | Y148888-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 4/9/1994 | 145531 | 20:00 | NO | N | N | - | - |
| Y148888 | 3 | Y148888-C | 1 | 2 | Yes | 6 | 4 | 2 | 2 | LIVE | YES | 4/9/1994 | 145509-11 | 0:50 | NO | N | Y | 145531 | LINK |
| Y153636 | 2 | Y153636-A | 5 | 1 | No | 5 | 4 | 4 | 5 | LIVE | YES | 8/18/1994 | 58911 | 20:00 | NO | N | N | - | - |
| Y153636 | 2 | Y153636-A | - | - | No | - | - | - | - | LIVE | YES | 8/18/1994 | 58911 | 20:00 | NO | N | Y | 58943 | N |
| Y153636 | 2 | Y153636-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 8/16/1994 | 58943 | 21:00 | NO | N | N | - | - |
| Y155969 | 5 | Y155969-A | 1 | 1 | No | 8 | 7 | 7 | 1 | PHOTO | NO | 4/13/1994 | 58971 | - | NO | N | N | - | - |
| Y155969 | 5 | Y155969-B | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 4/26/1994 | 58965 | 17:00 | NO | N | Y | 58971 | LINK |
| Y155969 | 5 | Y155969-B | - | - | No | - | - | - | - | LIVE | YES | 4/26/1994 | 58965 | 17:00 | NO | N | N | - | - |
| Y155969 | 5 | Y155969-C | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 5/18/1994 | 59010 | 23:30 | NO | N | N | - | - |
| Y155969 | 5 | Y155969-C | - | - | No | - | - | - | - | LIVE | YES | 5/18/1994 | 59010 | 23:30 | NO | N | Y | 59002 | N |
| Y155969 | 5 | Y155969-D | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 5/19/1994 | 59006 | 10:00 | NO | N | Y | 58965 | N |
| Y155969 | 5 | Y-155969-E | UNK | 1 | No | 6 | 5 | 5 | UNK | PHOTO | NO | 5/19/1994 | 59002 | - | YES | N | N | - | - |
| Y165913 | 0 | - | - | - | - | - | - | - | - | - | - | 4/19/1994 | 59018 | - | - | Y | N | - | - |
| Y165913 | 0 | - | - | - | - | - | - | - | - | - | - | 4/19/1994 | 59036 | - | - | N | N | - | - |
| Y166365 | 1 | Y166365-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 4/25/1994 | 59066 | - | NO | Y | N | - | - |
| Y167929 | 2 | Y167929-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 6/10/1994 | 59132 | 17:00 | NO | Y | Y | 59128 | N |
| Y167929 | 2 | Y167929-B | 1 | 2 | Yes | 9 | 7 | 3.5 | 2 | PHOTO | NO | 6/10/1994 | 59128 | 17:00 | NO | Y | N | - | - |
| Y179819 | 1 | Y179819-A | 14 | 1 | No | 6 | 5 | 5 | 14 | LIVE | YES | 5/5/1994 | 59142 & 59151 | 14:00 | NO | N | N | - | - |
| Y179819 | 1 | Y179819-A | - | - | No | - | - | - | - | LIVE | YES | 5/5/1994 | 59142 & 59151 | 14:00 | NO | N | Y | - | - |
| Y179819 | 1 | Y179819-A | - | - | No | - | - | - | - | LIVE | YES | 5/5/1994 | 59142 & 59151 | 14:00 | NO | Y | N | - | - |
| Y179819 | 1 | Y179819-A | - | - | No | - | - | - | - | LIVE | YES | 5/5/1994 | 59142 & 59151 | 14:00 | NO | Y | N | - | - |
| Y179819 | 1 | Y179819-A | - | - | No | - | - | - | - | LIVE | YES | 5/5/1994 | 59142 & 59151 | 14:00 | NO | Y | Y | - | - |
| Y182673 | 2 | Y182673-A | 5 | 1 | No | 5 | 4 | 4 | 5 | LIVE | YES | 4/29/1994 | 59219 | 6:00 | NO | N | N | - | - |
| Y182673 | 2 | Y182673-A | - | - | No | 5 | - | - | - | LIVE | YES | 4/29/1994 | 59219 | 6:00 | NO | Y | N | - | - |
| Y182673 | 2 | Y182673-A | - | - | No | 5 | - | - | - | LIVE | YES | 4/29/1994 | 59219 | 6:00 | NO | Y | N | - | - |
| Y182673 | 2 | Y182673-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 5/3/1994 | 59215 | 15:45 | NO | Y | N | - | - |
| Y182859 | 2 | Y182859-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 5/14/1994 | 59295 | 6:00 | NO | N | N | - | - |
| Y182859 | 2 | Y182859-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 5/30/1994 | 59301 | 18:00 | YES | N | N | - | - |
| Y182859 | 2 | Y182859-B | - | - | No | - | - | - | - | LIVE | YES | 5/14/1994 | 59301 | 18:00 | YES | N | Y | 59295 | N |
| Y183844 | 1 | Y183844-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 5/8/1994 | 59347 | - | NO | Y | N | - | - |
| Y183844 | 1 | Y183844-A | - | - | No | - | - | - | - | LIVE | YES | 5/8/1994 | 59347 | - | NO | Y | N | - | - |
| Y183844 | 1 | Y183844-A | - | - | - | - | - | - | - | - | - | 5/8/1994 | 59335 | 16:30 | - | Y | N | - | - |
| Y191409 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y219275 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y220621 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y233745 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y240898 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y246941 | 1 | Y246941-A | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 5/2/1995 | 121430 | 23:00 | NO | Y | N | - | - |
| Y246941 | 1 | Y246941-A | - | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/2/1995 | 121430 | 23:00 | NO | Y | N | - | - |
| Y246941 | 1 | Y246941-A | - | - | No | - | - | - | 1 | LIVE | YES | 5/2/1995 | 121430 | 23:00 | NO | Y | N | - | - |
| Y261996 | 6 | Y261996-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 12/9/1994 | 121540 | - | YES | N | N | - | - |
| Y261996 | 6 | Y261996-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 1/24/1995 | 121542 | - | NO | N | N | - | - |
| Y261996 | 6 | Y261996-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 5/31/1995 | 121683 | 17:30 | NO | N | N | - | - |
| Y261996 | 6 | Y261996-D | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 7/3/1995 | 121528 | - | NO | N | N | - | - |
| Y261996 | 6 | Y261996-E | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 7/3/1995 | 121529 | - | NO | N | N | - | - |
| Y261996 | 6 | Y261996-F | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 7/3/1995 | 121535 | 12:00 | NO | N | Y | 121529 | - |
| Y266576 | 1 | Y266576-A | 4 | 1 | No | 7 | 6 | 6 | 4 | LIVE | YES | 6/18/1994 | 121812 | 2:00 | NO | N | N | - | - |
| Y266576 | 1 | Y266576-A | - | - | No | - | - | - | - | LIVE | YES | 6/18/1994 | 121812 | 2:00 | NO | Y | N | - | - |
| Y266576 | 1 | Y266576-A | - | - | No | - | - | - | - | LIVE | YES | 6/18/1994 | 121812 | 2:00 | NO | Y | N | - | - |
| Y266576 | 1 | Y266576-A | - | - | No | - | - | - | - | LIVE | YES | 6/18/1994 | 121812 | 2:00 | NO | Y | N | - | - |
| Y269778 | 2 | Y269778-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 8/2/1994 | 59770 | - | NO | N | N | - | - |
| Y269778 | 2 | Y269778-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 8/21/1994 | 59740 | 11:00 | NO | N | N | - | - |
| Y293539 | 2 | Y293539-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 7/29/1994 | 145768 | - | YES | Y | N | - | - |
| Y293539 | 2 | Y293539-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 10/21/1994 | 145818 | - | NO | Y | N | - | - |
| Y293771 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y307170 | 2 | Y307170-A | 1 | 1 | No | 7 | 6 | 6 | 1 | PHOTO | NO | 7/24/1994 | 122141 | - | NO | Y | N | - | - |
| Y307170 | 2 | Y307170-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/24/1994 | 122130 | 23:45 | NO | Y | N | - | - |
| Y309700 | 4 | Y309700-A | 2 | 2 | Yes | UNK | UNK | UNK | 4 | PHOTO | NO | 7/11/1994 | 59945 | - | YES | N | N | - | - |
| Y309700 | 4 | Y309700-B | 1 | 2 | Yes | 5 | 3 | 1.5 | 2 | PHOTO | NO | 7/13/1994 | 59931 | - | NO | N | N | - | - |
| Y309700 | 4 | Y309700-C | 1 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 11/5/1994 | 59987 | - | NO | N | N | - | - |
| Y309700 | 4 | Y309700-D | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 1/27/1995 | 59969 | 0:45 | NO | N | Y | 59945 | N |
| Y309700 | 4 | Y309700-D | - | - | No | - | - | - | - | LIVE | YES | 1/27/1995 | 59969 | 0:45 | NO | N | Y | - | - |
| Y313353 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y340165 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y342382 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |

Case: 1:20-cv-04156 Document #: 339-18 Filed: 06/10/24 Page 475 of 511 PageID #:50442

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Y148888 | Unfamiliar | - | 4 | 6 | 2 | 8 | 2 | 0 | 6 | 0 | 0 | 8 | N | - | Y | Y |
| Y148888 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y148888 | Previous ID | - | 1 | 6 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | Y | Y |
| Y153936 | Unfamiliar | - | 4 | 5 | 1 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | N | - | Y | Y |
| Y153936 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y153936 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y155909 | Unfamiliar | - | 1 | 8 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y155909 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y155909 | Unfamiliar | - | 2 | 5 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| Y155909 | Unfamiliar | - | 2 | 5 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| Y155909 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y155909 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Y155909 | Unfamiliar | - | UNK | 6 | 1 | #VALUE! | UNK | 0 | 0 | 0 | 0 | #VALUE! | N | - | N | N |
| Y165913 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Y165913 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Y166365 | Familiar Perp | - | 1 | 4 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y167929 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y167929 | Familiar Perp | - | 1 | 9 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| Y179819 | Unfamiliar | - | 10 | 6 | 1 | 10 | 7 | 0 | 3 | 0 | 0 | 10 | N | - | N | N |
| Y179819 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y179819 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y179819 | Familiar Perp | - | 1 | 6 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y179819 | Familiar Perp | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Y182673 | Unfamiliar | - | 3 | 5 | 1 | 3 | 1 | 1 | 1 | 0 | 0 | 3 | N | - | N | N |
| Y182673 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y182673 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y182673 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y182859 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y182859 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y182859 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y183844 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y183844 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Y183844 | - | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| Y191409 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | | |
| Y219275 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | | |
| Y220921 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | | |
| Y233745 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | | |
| Y240898 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | | |
| Y246941 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y246941 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y246941 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y261996 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Y261996 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y261996 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y261996 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Y261996 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y261996 | Both | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Y268676 | Unfamiliar | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y268676 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y268676 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y268676 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y269778 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y269778 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Y293539 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Y293539 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y293771 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Y307170 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y307170 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y309700 | Unfamiliar | - | 2 | UNK | 2 | 4 | 2 | 1 | 1 | 0 | 0 | 4 | N | - | N | N |
| Y309700 | Unfamiliar | - | 1 | 5 | 2 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| Y309700 | Unfamiliar | - | 2 | 4 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| Y309700 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y309700 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y313353 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | | |
| Y340165 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | | |
| Y342382 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | | |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number of Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Y359808 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y360938 | 6 | Y360938-A | 5 | 1 | No | 5 | 4 | 4 | 5 | LIVE | YES | 8/9/1994 | 123107 | 2329 | NO | N | N | - | - |
| Y360938 | 6 | Y360938-A | - | - | No | - | - | - | - | LIVE | YES | 8/9/1994 | 123117 | 2329 | NO | N | N | - | - |
| Y360938 | 6 | Y360938-B | 4 | 2 | Yes | 7 | 5 | 2.5 | 8 | LIVE | YES | 8/9/1994 | 123124 | 2329 | NO | N | N | - | - |
| Y360938 | 6 | Y360938-B | - | - | Yes | - | - | - | - | LIVE | YES | 8/9/1994 | 123124 | 2329 | NO | Y | Y | 123133 | LINK |
| Y360938 | 6 | Y360938-B | - | - | Yes | - | - | - | - | LIVE | YES | 8/9/1994 | 123129 | 2329 | NO | N | N | - | - |
| Y360938 | 6 | Y360938-C | 1 | 2 | Yes | 7 | 5 | 2.5 | 2 | LIVE | YES | 8/9/1994 | 123126 | 1300 | NO | N | N | - | - |
| Y360938 | 6 | Y360938-D | 4 | 1 | No | UNK | UNK | UNK | 4 | LIVE | NO | 8/9/1994 | 123177 | 2330 | YES | N | N | - | - |
| Y360938 | 6 | Y360938-D | - | - | No | - | - | - | - | LIVE | NO | 8/9/1994 | 123177 | 2330 | NO | N | N | - | - |
| Y360938 | 6 | Y360938-E | 3 | 2 | Yes | 7 | 5 | 2.5 | 6 | PHOTO | NO | 10/7/1994 | 123177 | 400 | NO | N | N | - | - |
| Y360938 | 6 | Y360938-F | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 10/7/1994 | 123180 | | NO | N | N | - | - |
| Y362244 | 10 | Y362244-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | YES | 4/4/1990 | 60304/123372 | 16:30 | NO | N | N | - | - |
| Y362244 | 10 | Y362244-B | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | NO | 4/4/1990 | 123372 | 16:30 | NO | N | N | - | - |
| Y362244 | 10 | Y362244-C | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 1/12/1994 | 123277, 123279 | | NO | N | N | - | - |
| Y362244 | 10 | Y362244-D | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 8/11/1994 | 123376 | 20:00 | NO | N | N | - | - |
| Y362244 | 10 | Y362244-E | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/11/1994 | 123373 | | YES | N | N | - | - |
| Y362244 | 10 | Y362244-F | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/7/1994 | 123334 | 18:00 | NO | N | N | - | - |
| Y362244 | 10 | Y362244-G | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/7/1994 | 60222/60254 | 0:00 | NO | N | N | - | - |
| Y362244 | 10 | Y362244-H | UNK | 1 | No | UNK | UNK | UNK | UNK | PHOTO | NO | 9/18/1994 | 123340 | | YES | UNK | UNK | - | - |
| Y362244 | 10 | Y362244-I | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 1/15/1995 | 123308 | 14:00 | NO | N | N | - | - |
| Y362244 | 10 | Y362244-J | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 1/22/1995 | 123317 | | NO | N | Y | 123277 | N |
| Y363376 | 4 | Y363376-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 8/16/1994 | 123701 | 7:30 | NO | N | Y | 60310 | N |
| Y363376 | 4 | Y363376-B | 2 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 1/10/1995 | 123699 | 23:50 | YES | N | N | - | - |
| Y363376 | 4 | Y363376-B | - | - | UNK | - | - | - | - | PHOTO | YES | 1/10/1995 | 123699 | 23:50 | YES | N | N | 60310; 123701 | N |
| Y363376 | 4 | Y363376-C | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 2/2/1995 | 123696 | 16:30 | NO | N | Y | 60310; 123701; 123698-700 | N |
| Y363376 | 4 | Y363376-C | - | - | No | - | - | - | - | LIVE | YES | 2/2/1995 | 123698 | 16:30 | NO | N | Y | 60310; 127701; 123698-700 | N |
| Y363376 | 4 | Y363376-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/31/1995 | 123687 | 18:00 | NO | N | N | - | - |
| Y368432 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y370437 | 3 | Y370437-A | 2 | 2 | Yes | 6 | 4 | 2 | 4 | LIVE | YES | 8/13/1994 | 123627 | | NO | N | N | - | - |
| Y370437 | 3 | Y370437-B | 2 | 1 | No | 7 | 6 | 6 | 2 | PHOTO | YES | 8/22/1994 | 123915 | | NO | N | N | - | - |
| Y370437 | 3 | Y370437-C | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 10/2/1994 | 123904 | | NO | N | Y | 123915 | N |
| Y370437 | 3 | Y370437-C | - | - | No | - | - | - | - | LIVE | YES | 10/2/1994 | 123904 | | NO | N | Y | 123915 | N |
| Y370437 | 3 | Y370437-C | - | - | No | - | - | - | - | LIVE | YES | 10/2/1994 | 123904 | | NO | N | N | - | - |
| Y379362 | 1 | - | - | - | - | - | - | - | - | - | - | 8/19/1994 | 60562 | 23:30 | - | N | N | - | - |
| Y379362 | 1 | Y379362-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 11/19/1994 | 60622 | 0:15 | NO | N | N | - | - |
| Y381571 | 5 | Y381571-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | YES | 6/15/1995 | 124248 | 3:30 | NO | N | N | - | - |
| Y381571 | 5 | Y381571-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 7/22/1995 | 124243 | 23:00 | YES | N | N | - | - |
| Y381571 | 5 | Y381571-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/30/1995 | 124240 | 22:00 | YES | N | N | - | - |
| Y381571 | 5 | Y381571-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/30/1995 | 124240 | 22:00 | YES | N | N | - | - |
| Y381571 | 5 | Y381571-E | 3 | 1 | No | 6 | 5 | 5 | 3 | LIVE | YES | 9/21/1995 | 124217 | 22:00 | NO | Y | Y | 124248 | N |
| Y381571 | 5 | Y381571-E | - | - | No | - | - | - | - | LIVE | YES | 9/21/1995 | 124217 | 22:00 | NO | N | Y | 124243 | N |
| Y381571 | 5 | Y381571-E | - | - | No | - | - | - | - | LIVE | YES | 9/21/1995 | 124217 | 22:00 | NO | N | Y | 124240 | N |
| Y381724 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y383567 | 2 | Y383567-A | 1 | 3 | Yes | UNK | UNK | UNK | 3 | PHOTO | NO | 10/19/1994 | 124428 | | YES | Y | N | - | - |
| Y383567 | 2 | Y383567-A | - | - | Yes | - | - | - | - | PHOTO | NO | 10/19/1994 | 124428 | | YES | Y | N | - | - |
| Y383567 | 2 | Y383567-A | - | - | Yes | - | - | - | - | PHOTO | NO | 10/19/1994 | 124428 | | YES | Y | N | - | - |
| Y383567 | 2 | Y383567-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 10/4/1994 | 124446 | 23:45 | NO | Y | N | - | - |
| Y383567 | 2 | Y383567-B | - | - | No | - | - | - | - | LIVE | YES | 10/4/1994 | 124446 | 23:45 | NO | N | N | - | - |
| Y383625 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y385792 | 1 | Y385792-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 8/22/1994 | 60672 | 23:55 | NO | N | N | - | - |
| Y398873 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y398709 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y400403 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y402319 | 2 | Y402319-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 9/2/1994 | 125003 | 23:30 | NO | N | N | - | - |
| Y402319 | 2 | Y402319-A | - | - | No | - | - | - | - | LIVE | YES | 9/2/1994 | 125003 | 23:30 | NO | Y | Y | 125000 | LINK |
| Y402319 | 2 | Y402319-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | YES | 9/3/1994 | 125000 | 8:00 | NO | Y | N | - | - |
| Y402319 | 2 | - | - | - | - | - | - | - | - | - | - | 9/3/1994 | 124999 | 8:00 | - | N | N | - | - |
| Y405585 | 2 | Y405585-A | 2 | 2 | Yes | 12 | 10 | 5 | 2 | PHOTO | NO | 9/13/1994 | 146160 | 21:00 | NO | N | N | - | - |
| Y405585 | 2 | Y405585-B | 2 | 2 | Yes | 7 | 5 | 2.5 | 4 | LIVE | YES | 9/13/1994 | 146160 | 21:00 | NO | N | Y | 146156 | N |
| Y405585 | 2 | Y405585-B | - | - | Yes | - | - | - | - | LIVE | YES | 9/13/1994 | 146160 | 21:00 | NO | N | Y | 146156 | N |
| Y405585 | 2 | Y405585 - B | - | - | Yes | - | - | - | - | LIVE | YES | 9/13/1994 | 146160 | 21:00 | NO | N | N | - | - |
| Y422878 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y424508 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y425473 | 1 | Y425473-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/13/1994 | 61309 | | NO | Y | N | - | - |
| Y428174 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Y429687 | 1 | Y429687-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 3/2/1995 | 61399 | 20:00 | NO | N | Y | 61393 | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Y359808 | - | | - | - | - | - | - | - | - | - | - | - | | | Y | N |
| Y360938 | Unfamiliar | - | 4 | 5 | 1 | 4 | 0 | 0 | 4 | 0 | 0 | 4 | N | - | Y | Y |
| Y360938 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | Y | N | Y | Y |
| Y360938 | Unfamiliar | - | 2 | 7 | 2 | 4 | 0 | 0 | 3 | 1 | 0 | 4 | N | - | Y | Y |
| Y360938 | Both | - | 1 | 7 | 2 | 2 | 0 | 0 | 1 | 1 | 0 | 2 | N | - | Y | Y |
| Y360938 | Unfamiliar | - | 1 | 7 | 2 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | Y |
| Y360938 | Unfamiliar | - | 1 | 7 | 2 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | Y |
| Y360938 | Unfamiliar | - | 3 | UNK | 1 | 3 | 0 | 0 | 3 | 0 | 0 | 3 | N | - | Y | Y |
| Y360938 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| Y360938 | Unfamiliar | - | 3 | 7 | 2 | 6 | 3 | 0 | 0 | 0 | 3 | 6 | N | - | Y | Y |
| Y360938 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| Y362244 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Y362244 | Unfamiliar | - | 4 | 5 | 1 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | N | - | Y | N |
| Y362244 | Unfamiliar | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| Y362244 | Unfamiliar | - | 2 | 5 | 1 | 2 | 0 | 2 | 0 | 0 | 0 | 2 | Y | Y | Y | N |
| Y362244 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Y362244 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | N |
| Y362244 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | N |
| Y362244 | UNK | - | UNK | UNK | 1 | #VALUE! | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Y362244 | Unfamiliar | - | 2 | 5 | 1 | 2 | 0 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| Y362244 | Previous ID | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| Y363376 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y363376 | Unfamiliar | - | 1 | UNK | UNK | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y363376 | Previous ID | - | 1 | UNK | UNK | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y363376 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y363376 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y363376 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y368432 | - | - | - | - | - | - | - | - | - | - | - | - | | | N | - |
| Y370437 | Unfamiliar | - | 6 | 2 | 4 | 1 | 0 | 3 | 0 | 0 | 0 | 4 | N | - | N | N |
| Y370437 | Unfamiliar | - | 2 | 7 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| Y370437 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y370437 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y370437 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Y379362 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| Y379362 | Unfamiliar | - | 2 | 5 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| Y381571 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y381571 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y381571 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y381571 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Y381571 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y381571 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y381571 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y381724 | - | - | - | - | - | - | - | - | - | - | - | - | | | N | - |
| Y383567 | Familiar Perp | Witness A | | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y383567 | Familiar Perp | Witness A | | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y383567 | Familiar Perp | Witness A | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y383567 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y383567 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Y383825 | - | - | - | - | - | - | - | - | - | - | - | - | | | N | - |
| Y385792 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Y398873 | - | - | - | - | - | - | - | - | - | - | - | - | | | N | - |
| Y398709 | - | - | - | - | - | - | - | - | - | - | - | - | | | N | - |
| Y400403 | - | - | - | - | - | - | - | - | - | - | - | - | | | N | - |
| Y402319 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y402319 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y402319 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y402319 | - | - | - | - | - | - | - | - | - | - | - | - | Y | N | Y | Y |
| Y405585 | Unfamiliar | - | 1 | 12 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| Y405585 | Previous ID | Witness A | | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y405585 | Previous ID | Witness A | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y405585 | Unfamiliar | - | 1 | 7 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| Y422678 | - | - | - | - | - | - | - | - | - | - | - | - | | | Y | N |
| Y424508 | - | - | - | - | - | - | - | - | - | - | - | - | | | N | - |
| Y425473 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y428174 | - | - | - | - | - | - | - | - | - | - | - | - | | | Y | N |
| Y429687 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the Witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Y439522 | 1 | Y439522-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/21/1994 | 61461 | 15:00 | NO | N | N | - | - |
| Y440710 | 7 | - | - | - | - | - | - | - | - | - | - | 9/20/1994 | 125816 | 22:30 | - | Y | N | - | - |
| Y440710 | 7 | Y440710-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | YES | 9/20/1994 | 125816 | 22:30 | NO | N | N | - | - |
| Y440710 | 7 | Y440710-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | YES | 10/3/1994 | 125790 | - | NO | N | N | - | - |
| Y440710 | 7 | Y440710-C | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 10/12/1994 | 125794 | 22:00 | NO | N | N | - | - |
| Y440710 | 7 | Y440710-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/15/1995 | 125781 | 22:00 | NO | N | N | - | - |
| Y440710 | 7 | Y440710-E | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 9/16/1995 | 125779 | 22:00 | NO | N | Y | 125781, 125799 | UNK |
| Y440710 | 7 | Y440710-F | 2 | 1 | No | 7 | 6 | 6 | 2 | LIVE | YES | 11/5/1994 | 125789 | 23:45 | NO | N | Y | 125794 | UNK |
| Y440710 | 7 | Y440710-F | - | - | No | - | - | - | - | LIVE | YES | 11/5/1994 | 125789 | 23:45 | NO | N | Y | 125794 | UNK |
| Y440710 | 7 | Y440710-G | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | YES | 10/15/2010 | 125770 | 15:49 | NO | N | N | - | - |
| Y444604 | 1 | Y444604-A | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 11/27/1995 | 61621 | 9:00 | YES | Y | N | - | - |
| Y447096 | 1 | Y447096-A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 9/24/1994 | 61658 | 3:15 | NO | Y | N | - | - |
| Y447096 | 1 | Y447096-A | - | - | No | - | - | - | - | LIVE | YES | 9/24/1994 | 61658 | 3:15 | NO | Y | N | - | - |
| Y447096 | 1 | Y447096-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 9/24/1994 | 125963 | 3:15 | NO | Y | N | - | - |
| Y447096 | 1 | Y447096-B | - | - | No | - | - | - | - | LIVE | YES | 9/24/1994 | 125963 | 3:15 | NO | Y | N | - | - |
| Y449782 | 2 | Y449782-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 5/26/1995 | 61698 | 23:00 | NO | Y | N | - | - |
| Y449782 | 2 | Y449782-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 6/22/1995 | 61704 | 23:50 | NO | Y | N | - | - |
| Y450228 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | Y | N | - | - |
| Y455131 | 0 | | | | | - | - | - | - | - | - | 9/29/1994 | 61758 | - | - | Y | N | - | - |
| Y462577 | 2 | Y462577-A | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 10/3/1994 | 126266 | - | NO | Y | N | - | - |
| Y462577 | 2 | Y462577-A | - | - | No | - | - | - | - | PHOTO | NO | 10/3/1994 | 126266 | - | NO | Y | N | - | - |
| Y462577 | 2 | Y462577-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 12/12/1994 | 126261 | 15:25 | NO | Y | Y | 126268 | N |
| Y462577 | 2 | Y462577-B | - | - | No | - | - | - | - | LIVE | YES | 12/12/1994 | 126261 | 15:25 | NO | Y | Y | 126268 | N |
| Y469655 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | Y | Y | - | - |
| Y479557 | 3 | Y479557-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 10/15/1994 | 126401 | - | YES | Y | N | - | - |
| Y479557 | 3 | Y479557-A | - | - | No | - | - | - | - | PHOTO | NO | 10/15/1994 | 126401 | - | YES | N | N | - | - |
| Y479557 | 3 | Y479557-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 10/16/1994 | 126404 | 22:00 | NO | N | Y | 126401 | N |
| Y479557 | 3 | Y479557-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 10/16/1994 | 126306 | - | NO | Y | Y | 126401 | N |
| Y481076 | 7 | - | - | - | - | - | - | - | - | - | - | 10/24/1994 | 126549 | 22:30 | - | Y | N | - | - |
| Y481076 | 7 | Y481076-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 10/24/1994 | 126550 | 22:30 | NO | N | N | - | - |
| Y481076 | 7 | Y481076-B | 1 | UNK | UNK | UNK | UNK | UNK | UNK | LIVE | NO | 10/24/1994 | 146510 | 22:30 | YES | N | N | - | - |
| Y481076 | 7 | Y481076-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/4/1995 | 126533 | - | NO | N | Y | 126550 | UNK |
| Y481076 | 7 | Y481076-D | 1 | UNK | UNK | UNK | UNK | UNK | UNK | LIVE | NO | 8/13/1995 | 146367 | 20:00 | YES | N | N | - | - |
| Y481076 | 7 | Y481076-E | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 4/20/1996 | 126521 | 22:00 | NO | N | N | - | - |
| Y481076 | 7 | Y481076-E | - | - | No | - | - | - | - | | - | 4/20/1996 | 126521 | 22:00 | - | Y | N | - | - |
| Y481076 | 7 | Y481076-F | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 4/23/1996 | 126512 | 20:00 | NO | N | N | - | - |
| Y481076 | 7 | Y481076-G | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/15/1996 | 146383 | 20:00 | NO | N | Y | 126521 | N |
| Y498057 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | | | | |
| Y498885 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | | | | |
| Y508761 | 4 | Y508761-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 1/4/1995 | 126844 | 22:00 | NO | Y | N | - | - |
| Y508761 | 4 | Y508761-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 2/6/1995 | 126835 | 7:00 | NO | Y | N | - | - |
| Y508761 | 4 | Y508761-C | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 2/6/1995 | 126836 | 18:00 | NO | N | N | - | - |
| Y508761 | 4 | Y508761-C | - | - | No | - | - | - | - | LIVE | YES | 2/6/1995 | 126836 | 18:00 | NO | Y | Y | 126835 | N |
| Y508761 | 4 | Y508761-C | - | - | No | - | - | - | - | LIVE | YES | 2/6/1995 | 126838 | 18:00 | NO | Y | N | - | - |
| Y508761 | 4 | Y508761-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/6/1995 | 126840 | 23:00 | NO | Y | N | - | - |
| Y514603 | 1 | Y514603-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/3/1994 | 127013 | 20:00 | NO | N | N | - | - |
| Y518671 | 2 | Y518671-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 12/13/1994 | 127078 | 23:00 | NO | Y | N | - | - |
| Y518671 | 2 | Y518671-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 12/20/1994 | 127083 | 23:30 | NO | Y | Y | 127078, 127097 | N |
| Y518671 | 2 | Y518671-B | - | - | No | - | - | - | - | LIVE | YES | 12/20/1994 | 127083 | 23:30 | NO | Y | Y | 127078, 127097 | N |
| Y521187 | 1 | | | | | - | - | - | - | - | - | - | - | - | - | | | | |
| Y525086 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | | | | |
| Y552625 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | | | | |
| Y565120 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | | | | |
| Y567252 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | | | | |
| Y571509 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | | | | |
| Y581487 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | | | | |
| Y588876 | 4 | - | - | - | - | - | - | - | - | - | - | 12/16/1994 | 62561 | 12:00 | - | Y | N | - | - |
| Y588876 | 4 | Y588876-A | 1 | 2 | Yes | 5 | 3 | 1.5 | 2 | LIVE | YES | 12/17/1994 | 62563 | - | NO | N | N | - | - |
| Y588876 | 4 | Y588876-B | 1 | 1 | No | 8 | 7 | 7 | 1 | PHOTO | NO | 1/2/1995 | 62517 | - | NO | N | N | - | - |
| Y588876 | 4 | Y588876-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/2/1995 | 62525 | 22:00 | NO | N | Y | 62517 | N |
| Y588876 | 4 | Y588876-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/4/1995 | 62533 | 21:00 | NO | N | N | - | - |
| Y599412 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | | | | |
| Y603202 | 1 | - | - | - | - | - | - | - | - | - | - | 12/30/1994 | 127926 | 15:30 | - | Y | N | - | - |
| Y603202 | 1 | Y603202-A | 1 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 12/31/1994 | 146423 | 16:00 | NO | N | N | - | - |
| Y607826 | 2 | Y607826-A | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 12/28/1994 | 62571 | - | NO | N | N | - | - |
| Y607826 | 2 | Y607826-A | - | - | No | - | - | - | - | PHOTO | NO | 12/28/1994 | 62571 | - | NO | N | N | - | - |
| Y611062 | 0 | | | | | - | - | - | - | - | - | - | - | - | - | | | | |
| Y611062 | 2 | Y611062-A | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 3/28/1995 | 128282 | 23:00 | NO | N | Y | 128286 | N |
| Y611062 | 2 | Y611062-A | - | - | No | - | - | - | - | LIVE | YES | 3/28/1995 | 128282 | 23:00 | NO | Y | N | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Y439522 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y440710 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| Y440710 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y440710 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y440710 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y440710 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Y440710 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 1 | 0 | 2 | N | - | Y | N |
| Y440710 | Previous ID | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y440710 | Previous ID | - | 1 | 7 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y440710 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Y446604 | Familiar Perp | - | 1 | UNK | UNK | #VALUE! | 1 | 0 | UNK | 0 | 0 | #VALUE! | N | - | N | N |
| Y447096 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y447096 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y447096 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y447096 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y449782 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y449782 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y450228 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Y455131 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Y462577 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y462577 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y462577 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y462577 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y469655 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Y479557 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y479557 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y479557 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y479557 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y481076 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Y481076 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y481076 | Unfamiliar | - | 1 | UNK | UNK | #VALUE! | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Y481076 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Y481076 | Unfamiliar | - | 1 | UNK | UNK | #VALUE! | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y481076 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y481076 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Y481076 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Y481076 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y468057 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Y468885 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Y508761 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y508761 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y508761 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y508761 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y508761 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y508761 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y514993 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y518671 | Familiar Perp | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y518671 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| Y518671 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| Y521187 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Y525986 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Y562525 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Y565120 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Y567252 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Y571509 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Y581487 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | Y | N |
| Y588876 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| Y588876 | Unfamiliar | - | 1 | 5 | 2 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | Y |
| Y588876 | Unfamiliar | - | 1 | 8 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y588876 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y588876 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y590412 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | Y | N |
| Y603202 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| Y603202 | Unfamiliar | - | 3 | 5 | 1 | 3 | 1 | 0 | 2 | 0 | 0 | 3 | N | - | Y | N |
| Y607826 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y607826 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y609104 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Y611062 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y611062 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Y611062 | 2 | Y611062-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 3/28/1995 | 23:30 | 128296 | NO | N | N | - | - |
| Y613887 | 5 | Y613887-A | 2 | 2 | Yes | UNK | UNK | UNK | 4 | PHOTO | NO | 1/14/1995 | - | 128370; 62833 | - | YES | Y | N | - | - |
| Y613887 | 5 | Y613887-A | - | - | Yes | - | - | - | - | PHOTO | NO | 1/14/1995 | - | 128370; 62833 | - | YES | Y | N | - | - |
| Y613887 | 5 | Y613887-A | - | - | Yes | - | - | - | - | PHOTO | NO | 1/14/1995 | - | 128370; 62833 | - | YES | Y | N | - | - |
| Y613887 | 5 | Y613887-A | - | - | Yes | - | - | - | - | PHOTO | NO | 1/14/1995 | - | 128370; 62833 | - | YES | Y | N | - | - |
| Y613887 | 5 | Y613887-B | 1 | 3 | Yes | UNK | UNK | UNK | 3 | PHOTO | NO | 2/8/1995 | 8:05 | 128357; 62841 | YES | Y | N | - | - |
| Y613887 | 5 | Y613887-B | - | - | Yes | - | - | - | - | PHOTO | NO | 2/8/1995 | 8:05 | 128357; 62841 | YES | Y | N | - | - |
| Y613887 | 5 | Y613887-B | - | - | Yes | - | - | - | - | PHOTO | NO | 2/8/1995 | 8:05 | 128357; 62841 | YES | Y | N | - | - |
| Y613887 | 5 | Y613887-C | 1 | 2 | Yes | UNK | UNK | UNK | 2 | PHOTO | NO | 2/11/1995 | 16:30 | 62837 | YES | N | N | - | - |
| Y613887 | 5 | Y613887-D | 1 | 2 | Yes | UNK | UNK | UNK | 2 | PHOTO | NO | 4/17/1995 | - | 62851 | YES | Y | N | - | - |
| Y613887 | 5 | Y613887-D | - | - | Yes | - | - | - | - | PHOTO | NO | 4/17/1995 | - | 62851 | - | Y | N | - | - |
| Y613887 | 5 | Y613887-E | 2 | 2 | Yes | 7 | 5 | 2.5 | 4 | LIVE | YES | 5/16/1995 | 4:00 | 62861 | NO | N | Y | 62837 | N |
| Y613887 | 5 | Y613887-E | - | - | Yes | - | - | - | - | LIVE | YES | 5/16/1995 | 4:00 | 62861 | NO | N | Y | 62837 | N |
| Y613887 | 5 | Y613887-E | - | - | Yes | - | - | - | - | LIVE | YES | 5/16/1995 | 4:00 | 62861 | NO | Y | Y | 62835 | N |
| Y613887 | 5 | Y613887-E | - | - | Yes | - | - | - | - | LIVE | YES | 5/16/1995 | 4:00 | 62861 | NO | Y | Y | 62835 | N |
| Z000273 | 0 | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Z013243 | 0 | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Z014126 | 0 | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Z020787 | 0 | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Z022047 | 3 | Z022047-A | 3 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 1/22/1995 | 20:30 | 63052 | YES | N | N | - | - |
| Z022047 | 3 | Z022047-B | 1 | 2 | Yes | UNK | UNK | UNK | 2 | PHOTO | NO | 1/26/1995 | - | 63066 | - | YES | Y | N | - | - |
| Z022047 | 3 | Z022047-B | - | - | Yes | - | - | - | - | PHOTO | NO | 1/26/1995 | - | 63066 | - | YES | Y | N | - | - |
| Z022047 | 3 | Z022047-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/26/1995 | 2:00 | 63058 | NO | Y | Y | 63066 | UNK |
| Z037779 | 2 | Z037779 - A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 1/31/1995 | 91467 | - | NO | N | N | - | - |
| Z037779 | 2 | Z037779 - A | - | - | No | - | - | - | - | LIVE | YES | 1/31/1995 | 91467 | - | NO | N | N | - | - |
| Z037779 | 2 | Z037779 - B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 1/31/1995 | 91465 | - | NO | N | N | - | - |
| Z040646 | 2 | Z040646 - A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 2/6/1995 | 91536 | 23:00 | NO | Y | N | - | - |
| Z040646 | 2 | Z040646 - A | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 2/6/1995 | 91530 | 23:00 | NO | Y | Y | 91535 | UNK |
| Z040646 | 2 | Z040646 - B | - | - | No | - | - | - | - | LIVE | YES | 2/6/1995 | 91530 | 23:00 | NO | Y | N | - | - |
| Z042975 | 0 | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Z045057 | 2 | Z045057-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 2/4/1995 | 91774 | 23:00 | NO | N | N | - | - |
| Z045057 | 2 | Z045057-B | 2 | 3 | Yes | 8 | 5 | 1.666666667 | 6 | LIVE | YES | 2/15/1995 | 91726 | 9:30 | NO | N | N | - | - |
| Z045057 | 2 | | - | - | - | - | - | - | - | - | - | - | - | - | - | Y | N | - | - |
| Z045234 | 0 | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Z054355 | 0 | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Z069168 | 2 | Z069168-A | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 7/9/1995 | 92022 | - | NO | N | N | - | - |
| Z069168 | 2 | Z069168-B | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 7/9/1995 | 92028 | 3:00 | NO | N | Y | 92022 | N |
| Z069168 | 2 | Z069168-B | - | - | No | - | - | - | - | LIVE | YES | 7/9/1995 | 92028 | 3:00 | NO | N | Y | 92022 | N |
| Z069168 | 2 | Z069168-B | - | - | No | - | - | - | - | LIVE | YES | 7/9/1995 | 92028 | 3:00 | NO | N | N | - | - |
| Z084117 | 0 | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Z085582 | 0 | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Z093141 | 0 | | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N | - | - |
| Z101225 | 0 | | - | - | - | - | - | - | - | - | - | 3/10/1995 | 63887 | - | - | Y | N | - | - |
| Z114965 | 1 | Z114965-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 3/18/1995 | 63944 | 1:00 | YES | Y | N | - | - |
| Z130680 | 1 | Z130680-A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | NO | 3/29/1995 | 92898 | 19:30 | NO | N | N | - | - |
| Z133025 | 0 | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Z141305 | 3 | Z141305-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 4/5/1995 | 64068 | - | NO | N | N | - | - |
| Z141305 | 3 | Z141305-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 4/11/1995 | 64072 | 4:00 | YES | N | N | - | - |
| Z141305 | 3 | Z141305-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 4/11/1995 | 64072 | 4:00 | YES | Y | N | - | - |
| Z142552 | 3 | Z142552-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 6/16/1995 | 64160; 64146 | 12:00 | NO | Y | Y | 64146 | N |
| Z142552 | 3 | Z142552-B | 1 | 1 | No | 13 | 12 | 12 | 1 | PHOTO | NO | 6/20/1995 | 64146 | - | NO | Y | N | - | - |
| Z142552 | 3 | Z142552-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 6/20/1995 | 64146 | - | YES | N | Y | 64146-8; 64152 | - |
| Z142552 | 3 | - | - | - | - | - | - | - | - | - | - | 6/20/1995 | 64150 | - | - | Y | N | - | - |
| Z142552 | 3 | - | - | - | - | - | - | - | - | - | - | 6/20/1995 | 64152 | - | - | Y | N | - | - |
| Z152799 | 0 | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Z160178 | 0 | | - | - | - | - | - | - | - | - | - | 6/24/1995 | 93498 | 2100 | - | Y | N | - | - |
| Z160178 | 0 | | - | - | - | - | - | - | - | - | - | 4/15/1995 | 93589 | - | - | Y | N | - | - |
| Z160497 | 3 | Z160497-A | 8 | 1 | No | 4 | 3 | 3 | 8 | PHOTO | NO | 4/14/1995 | 64325 | - | NO | N | N | - | - |
| Z160497 | 3 | Z160497-A | - | - | No | - | - | - | - | PHOTO | NO | 4/14/1995 | 64325 | - | NO | N | N | - | - |
| Z160497 | 3 | Z160497-A | - | - | No | - | - | - | - | PHOTO | NO | 4/14/1995 | 64325 | - | NO | Y | N | - | - |
| Z160497 | 3 | Z160497-A | - | - | No | - | - | - | - | PHOTO | NO | 4/14/1995 | 64325 | - | NO | Y | N | - | - |
| Z160497 | 3 | Z160497-B | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 4/15/1995 | 64299 | 20:00 | NO | N | N | - | - |
| Z160497 | 3 | Z160497-C | 8 | 1 | No | 5 | 4 | 4 | 8 | LIVE | YES | 4/15/1995 | 64337 | 20:00 | NO | N | Y | 64299 | UNK |
| Z160497 | 3 | Z160497-C | - | - | No | - | - | - | - | LIVE | YES | 4/15/1995 | 64337 | 20:00 | NO | Y | Y | 64325 | UNK |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Y611082 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Y613887 | Familiar Perp | Witness A | | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y613887 | Familiar Perp | Witness A | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y613887 | Familiar Perp | Witness B | | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y613887 | Familiar Perp | Witness B | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y613887 | Familiar Perp | Witness A | | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y613887 | Familiar Perp | Witness A | | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y613887 | Familiar Perp | Witness A | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y613887 | Unfamiliar | - | 1 | UNK | 2 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| Y613887 | Familiar Perp | Witness A | | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y613887 | Familiar Perp | Witness A | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y613887 | Previous ID | Witness A | | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y613887 | Previous ID | Witness A | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y613887 | Both | Witness B | | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Y613887 | Both | Witness B | 1 | 7 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Z000273 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Z013243 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Z014126 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Z020787 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Z022047 | Unfamiliar | - | 3 | UNK | UNK | #VALUE! | 1 | 0 | 2 | 0 | 0 | 3 | N | - | N | N |
| Z022047 | Familiar Perp | Witness A | | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z022047 | Familiar Perp | Witness A | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z022047 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z037779 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z037779 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z037779 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z040646 | Familiar Perp | - | 1 | 8 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z040646 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z040646 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z042975 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Z045057 | Unfamiliar | - | 2 | 5 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| Z045057 | Unfamiliar | - | 2 | 8 | 3 | 8 | 0 | 0 | 6 | 0 | 0 | 6 | N | - | N | N |
| Z045057 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z045234 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | Y | N |
| Z054355 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Z069168 | Unfamiliar | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| Z069168 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z069168 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z069168 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Z084117 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Z085582 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Z093141 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | N | - | N | - |
| Z101225 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z114965 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z130680 | Unfamiliar | - | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| Z133925 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| Z141305 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z141305 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z141305 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z142552 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z142552 | Familiar Perp | - | 1 | 13 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z142552 | Previous ID | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | Y | N | N | N |
| Z142552 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z142552 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z152799 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z160178 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z160178 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z160497 | Unfamiliar | - | 5 | 4 | 1 | 5 | 3 | 1 | 1 | 0 | 0 | 5 | N | - | N | N |
| Z160497 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z160497 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z160497 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z160497 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z160497 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z160497 | Both | - | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Z160497 | 3 | Z160497-C | - | - | No | - | - | - | - | LIVE | YES | 4/15/1995 | 64337 | 20:00 | NO | Y | Y | 64327 | UNK |
| Z160497 | 3 | Z160497-C | - | - | No | - | - | - | - | LIVE | YES | 4/15/1995 | 64337 | 20:00 | NO | Y | Y | 64327 | UNK |
| Z160497 | 3 | Z160497-C | - | - | No | - | - | - | - | LIVE | YES | 4/15/1995 | 64337 | 20:00 | NO | N | Y | 64325 | UNK |
| Z160497 | 3 | Z160497-C | - | - | No | - | - | - | - | LIVE | YES | 4/15/1995 | 64337 | 20:00 | NO | N | Y | 64325 | UNK |
| Z160497 | 3 | Z160497-C | - | - | No | - | - | - | - | LIVE | YES | 4/15/1995 | 64337 | 20:00 | NO | N | Y | 64325 | UNK |
| Z182739 | 0 | | | | | | | 0 | #DIV/0! | - | - | | | | - | | | | - |
| Z198528 | 2 | Z198528-A | 1 | UNK | UNK | 5 | UNK | UNK | UNK | PHOTO | NO | 5/6/1995 | 94054 | - | YES | N | N | - | - |
| Z198528 | 3 | Z198528-B | 3 | UNK | UNK | 5 | UNK | UNK | UNK | PHOTO | NO | 5/7/1995 | 94038 | 2:30 | YES | N | N | - | - |
| Z198528 | 2 | | - | - | - | - | - | - | - | - | - | 5/13/1995 | 94024 | - | - | Y | N | - | - |
| Z211082 | 3 | Z211082-A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 5/16/1995 | 94209 | 21:30 | NO | N | Y | 94200 | UNK |
| Z211082 | 3 | Z211082-A | - | - | No | - | - | - | - | LIVE | YES | 5/16/1995 | 94209 | 21:30 | NO | N | N | - | - |
| Z211082 | 3 | Z211082-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 5/16/1995 | 94207 | 21:30 | NO | N | N | - | - |
| Z211082 | 3 | Z211082-C | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 5/30/1995 | 94202 | - | YES | N | N | - | - |
| Z211983 | 0 | | - | - | - | - | - | - | - | - | - | | | | - | | | | - |
| Z214724 | 0 | | - | - | - | - | - | - | - | - | - | | | | - | | | | - |
| Z218253 | 0 | | - | - | - | - | - | - | - | - | - | | | | - | | | | - |
| Z219872 | 0 | | - | - | - | - | - | - | - | - | - | 11/9/2000 | 94665 | - | - | Y | N | - | - |
| Z220314 | 1 | Z220314-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 6/9/1995 | 94799 | 21:00 | NO | Y | N | - | - |
| Z220314 | 1 | - | - | - | - | - | - | - | - | - | - | 7/1/1995 | 94790 | 18:00 | - | N | N | - | - |
| Z221731 | 0 | | - | - | - | - | - | - | - | - | - | | | | - | N | N | - | - |
| Z226760 | 2 | Z226760-A | 2 | UNK | UNK | 6 | UNK | UNK | UNK | PHOTO | NO | 5/30/1995 | 95088 | 23:00 | YES | N | N | - | - |
| Z226760 | 2 | Z226760-B | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 5/30/1995 | 95091 | 23:00 | NO | N | Y | 95086 | UNK |
| Z226760 | 2 | Z226760-B | - | - | No | - | - | - | - | LIVE | YES | 5/30/1995 | 95091 | 23:00 | NO | N | Y | 95086 | UNK |
| Z226760 | 2 | | - | - | - | - | - | - | - | - | - | 5/30/1995 | 95086 | 23:00 | - | N | N | - | - |
| Z232060 | 0 | | - | - | - | - | - | - | - | - | - | | | | - | | | | - |
| Z232205 | 2 | Z232205-A | 2 | 1 | No | 8 | 7 | 7 | 2 | LIVE | YES | 5/28/1995 | 95388 | 4:00 | NO | N | Y | 95271 | N |
| Z232205 | 2 | Z232205-A | - | - | No | - | - | - | - | LIVE | YES | 5/28/1995 | 95388 | 4:00 | NO | N | N | - | - |
| Z232205 | 2 | Z232205-B | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 5/29/1995 | 95397 | 6:00 | NO | N | N | - | - |
| Z240841 | 2 | Z240841-A | 1 | 1 | No | 7 | 6 | 6 | 1 | PHOTO | NO | 6/2/1995 | 95478 | - | NO | Y | N | - | - |
| Z240841 | 2 | Z240841-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/2/1995 | 95480 | 3:30 | NO | Y | N | - | - |
| Z243035 | 0 | | - | - | - | - | - | - | - | - | - | 6/6/1995 | 95516 | - | - | Y | N | - | - |
| Z245491 | 0 | | - | - | - | - | - | - | - | - | - | | | | - | | | | - |
| Z246138 | 2 | Z246138-A | 1 | 1 | No | 12 | 11 | 11 | 1 | PHOTO | NO | 6/4/1995 | 146602 | 11:00 | NO | Y | N | - | - |
| Z246138 | 2 | Z246138-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 6/5/1995 | 146612 | 5:00 | NO | Y | Y | 146602 | N |
| Z246138 | 2 | Z246138-B | - | - | No | - | - | - | - | LIVE | YES | 6/5/1995 | 146612 | 5:00 | NO | Y | N | - | - |
| Z247898 | 0 | | - | - | - | - | - | - | - | - | - | | | | - | | | | - |
| Z256229 | 0 | | - | - | - | - | - | - | - | - | - | | | | - | | | | - |
| Z257355 | 3 | Z257355-A | 3 | 1 | No | 6 | 5 | 5 | 3 | PHOTO | NO | 6/13/1995 | 146672 | - | NO | N | N | - | - |
| Z257355 | 1 | Z257355-A | - | - | No | - | - | - | - | PHOTO | NO | 6/13/1995 | 146672 | - | NO | N | N | - | - |
| Z257355 | 1 | Z257355-A | - | - | No | - | - | - | - | PHOTO | NO | 6/13/1995 | 146672 | - | NO | Y | N | - | - |
| Z263620 | 0 | | - | - | - | - | - | - | - | - | - | | | | - | | | | - |
| Z272704 | 0 | | - | - | - | - | - | - | - | - | - | | | | - | | | | - |
| Z273605 | 1 | Z273605-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 7/21/1995 | 96268 | 23:00 | YES | Y | N | - | - |
| Z273605 | 1 | | - | - | - | - | - | - | - | - | - | 7/21/1995 | 96268 | 23:00 | - | Y | N | - | - |
| Z273605 | 1 | | - | - | - | - | - | - | - | - | - | 7/23/1995 | 65373 | 23:00 | - | Y | N | - | - |
| Z273605 | 1 | - | - | - | - | - | - | - | - | - | - | 7/23/1995 | 65373 | 23:00 | - | Y | Y | 65373 | UNK |
| Z273605 | 1 | - | - | - | - | - | - | - | - | - | - | 7/24/1995 | 96250 | - | - | Y | N | - | - |
| Z273605 | 1 | - | - | - | - | - | - | - | - | - | - | 7/24/1995 | 96251 | - | - | Y | N | - | - |
| Z273605 | 1 | - | - | - | - | - | - | - | - | - | - | 7/24/1995 | 96256 | - | - | Y | N | - | - |
| Z273605 | 1 | - | - | - | - | - | - | - | - | - | - | 7/24/1995 | 96257 | - | - | Y | N | - | - |
| Z278410 | 1 | Z278410-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 8/22/1995 | 96809 | - | NO | N | N | - | - |
| Z281407 | 0 | | - | - | - | - | - | - | - | - | - | | | | - | | | | - |
| Z291479 | 0 | | - | - | - | - | - | - | - | - | - | | | | - | | | | - |
| Z295920 | 2 | Z295920-A | 1 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 7/11/1995 | 97296 | - | NO | N | N | - | - |
| Z295920 | 2 | Z295920-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 7/30/1995 | 97237 | - | NO | N | Y | 97266 | UNK |
| Z295920 | 2 | Z295920-B | - | - | No | - | - | - | - | LIVE | YES | 7/30/1995 | 97237 | - | NO | N | Y | 97266 | UNK |
| Z302913 | 0 | | - | - | - | - | - | - | - | - | - | | | | - | N | N | - | - |
| Z309421 | 2 | Z309421-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 10/27/1995 | 65609 | 23:45 | NO | Y | N | - | - |
| Z309421 | 2 | Z309421-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 11/17/1995 | 65619 | 23:45 | NO | N | N | - | - |
| Z311935 | 0 | | - | - | - | - | - | - | - | - | - | | | | - | | | | - |
| Z313984 | 2 | Z313984-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 11/29/1995 | 97472 | 21:00 | YES | N | N | - | - |
| Z313984 | 2 | Z313984-B | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 11/30/1995 | 97468 | - | NO | N | Y | 97470 | UNK |
| Z313984 | 2 | Z313984-B | - | - | No | - | - | - | - | LIVE | YES | 11/30/1995 | 97468 | - | NO | N | N | - | - |
| Z316710 | 1 | Z316710-A | 3 | 1 | No | 7 | 6 | 6 | 3 | LIVE | YES | 7/17/1995 | 97528 | 20:00 | NO | Y | Y | 97521 | N |
| Z316710 | 1 | Z316710-A | - | - | No | - | - | - | - | LIVE | YES | 7/17/1995 | 97528 | 20:00 | NO | Y | Y | 97521 | N |
| Z325455 | 1 | Z325455-A | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 7/18/1995 | 97693 | 6:00 | NO | N | N | - | - |
| Z334702 | 0 | | - | - | - | - | - | - | - | - | - | | | | - | N | N | - | - |
| Z347852 | 3 | Z347852-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/31/1995 | 97801 | 2:15 | NO | N | Y | 97799 | UNK |
| Z347852 | 3 | Z347852-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 7/31/1995 | 97799 | 9:00 | NO | N | N | - | - |
| Z347852 | 3 | Z347852-C | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 7/31/1995 | 97800 | 9:00 | NO | N | N | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Z160497 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z160497 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z160497 | Both | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z160497 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z160497 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z160497 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z182739 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z195528 | Unfamiliar | - | 1 | 5 | UNK | #VALUE! | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| Z195528 | Unfamiliar | - | 3 | 5 | UNK | #VALUE! | 3 | 0 | 0 | 0 | 0 | 3 | N | - | Y | N |
| Z195528 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| Z211082 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z211082 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z211082 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z211082 | Unfamiliar | - | 1 | UNK | UNK | #VALUE! | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z211983 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z214724 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z218253 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z219872 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z220314 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z220314 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | Y | Y |
| Z221731 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z226760 | Unfamiliar | - | 2 | 6 | UNK | #VALUE! | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| Z226760 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z226760 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z226760 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| Z232060 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z232205 | Previous ID | - | 1 | 8 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z232205 | Unfamiliar | - | 1 | 8 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z232205 | Unfamiliar | - | 2 | 6 | 1 | 2 | 0 | 1 | 1 | 0 | 0 | 2 | N | - | N | N |
| Z240841 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z240841 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z243035 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z245491 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z246138 | Familiar Perp | - | 1 | 12 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z246138 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z246138 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z247898 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z256229 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z257355 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Z257355 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z257355 | Familiar Perp | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Z263620 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z272704 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z273605 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z273605 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z273605 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z273605 | Both | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z273605 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z273605 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z273605 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z273605 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z278410 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z281407 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z291479 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z296920 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| Z296920 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Z296920 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Z302913 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z300421 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z300421 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z311935 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z313984 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Z313984 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Z313984 | Unfamiliar | - | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| Z316710 | Both | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | Y |
| Z316710 | Previous ID | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | Y |
| Z316710 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z325455 | Unfamiliar | - | 3 | 4 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| Z334702 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z347852 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z347852 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z347852 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number of Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Z347852 | 3 | Z347852-C | - | - | No | - | - | - | - | PHOTO | NO | 7/31/1995 | 97800 | 9:00 | NO | N | N | - | - |
| Z347852 | 3 | - | - | - | - | - | - | - | - | - | - | 8/2/1995 | 97790 | - | - | Y | N | - | - |
| Z364562 | 3 | Z364562-A | 1 | 4 | Yes | 7 | 3 | 0.75 | 2 | PHOTO | NO | 8/17/1995 | 97880 | 4:00 | NO | N | N | - | - |
| Z364562 | 3 | Z364562-B | 1 | 3 | Yes | UNK | UNK | UNK | 3 | PHOTO | NO | 8/18/1995 | 97887 | 4:00 | NO | N | N | - | - |
| Z364562 | 3 | Z364562-C | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 8/20/1995 | 97884 | 4:00 | NO | N | Y | 97860; 97887 | UNK |
| Z364562 | 3 | Z364562-C | - | - | No | - | - | - | - | LIVE | YES | 8/20/1995 | 97884 | 4:00 | NO | N | Y | 97860; 97887 | UNK |
| Z372589 | 0 | - | - | - | - | - | - | - | - | - | - | - | 98061 | - | - | Y | N | - | - |
| Z372589 | 0 | - | - | - | - | - | - | - | - | - | - | - | 98061 | - | - | N | N | - | - |
| Z380082 | 1 | Z380082-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 8/18/1995 | 146509 | - | YES | N | N | - | - |
| Z380082 | 1 | Z380082-A | - | - | - | - | - | - | - | PHOTO | - | 8/18/1995 | 146509 | - | YES | Y | N | - | - |
| Z385835 | 3 | - | - | - | - | - | - | - | - | - | - | 8/22/1995 | 98311 | 18:00 | - | N | N | - | - |
| Z385835 | 3 | Z385835-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 8/22/1995 | 66023 | 21:00 | NO | N | N | - | - |
| Z385835 | 3 | Z385835-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 8/22/1995 | 66027 | 21:00 | NO | N | N | - | - |
| Z385835 | 3 | Z385835-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/10/1995 | 66023 | 18:00 | NO | N | Y | 42140 | UNK |
| Z388683 | 2 | Z388683-A | 3 | Yes | 6 | 3 | 1 | 6 | LIVE | YES | 8/22/1995 | 146755 | - | NO | N | N | - | - |
| Z388683 | 2 | Z388683-B | 2 | 2 | Yes | 5 | 3 | 1.5 | 4 | LIVE | YES | 8/22/1995 | 146751 | - | NO | N | N | - | - |
| Z392919 | 2 | Z392919-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 8/29/1995 | 98546 | 1:45 | NO | N | N | - | - |
| Z392919 | 2 | Z392919-B | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | YES | 8/29/1995 | 98542 | - | YES | N | N | - | - |
| Z405104 | 6 | Z405104-A | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 8/29/1995 | 146811 | 22:00 | NO | Y | N | - | - |
| Z405104 | 6 | Z405104-A | - | - | No | - | - | - | - | LIVE | YES | 8/29/1995 | 146811 | 22:00 | NO | Y | N | - | - |
| Z405104 | 6 | Z405104-A | - | - | No | - | - | - | - | LIVE | YES | 8/29/1995 | 146811 | 22:00 | NO | Y | N | - | - |
| Z405104 | 6 | Z405104-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 8/30/1995 | 146817 | 18:20 | NO | Y | N | - | - |
| Z405104 | 6 | Z405104-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 8/30/1995 | 146821 | 18:00 | NO | Y | N | - | - |
| Z405104 | 6 | Z405104-D | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 9/2/1995 | 146849 | 21:00 | NO | Y | N | - | - |
| Z405104 | 6 | Z405104-D | - | - | No | - | - | - | - | PHOTO | NO | 9/2/1995 | 146849 | 21:00 | NO | Y | N | - | - |
| Z405104 | 6 | Z405104-E | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 9/16/1995 | 146885 | 1:15 | NO | Y | N | - | - |
| Z405104 | 6 | Z405104-E | - | - | No | - | - | - | - | PHOTO | NO | 9/16/1995 | 146885 | 1:15 | NO | Y | N | - | - |
| Z405104 | 6 | Z405104-F | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 6/26/1997 | 146786 | 22:00 | NO | Y | N | - | - |
| Z405104 | 6 | Z405104-F | - | - | No | - | - | - | - | LIVE | YES | 6/26/1997 | 146786 | 22:00 | NO | Y | N | - | - |
| Z410758 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N | - | - |
| Z412986 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N | - | - |
| Z424672 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N | - | - |
| Z425000 | 1 | - | - | - | - | - | - | - | - | - | - | 9/10/1995 | 99167 | - | - | N | N | - | - |
| Z425000 | 1 | - | - | - | - | - | - | - | - | - | - | 9/12/1995 | 99103 | 18:30 | - | Y | N | - | - |
| Z425000 | 1 | - | - | - | - | - | - | - | - | - | - | 9/12/1995 | 99109 | - | - | Y | N | - | - |
| Z425000 | 1 | - | - | - | - | - | - | - | - | - | - | 9/12/1995 | 99112 | - | - | Y | N | - | - |
| Z425000 | 1 | Z425000-A | 1 | 1 | No | 7 | 6 | 6 | 1 | LIVE | NO | 9/13/1995 | 99106 | 18:30 | NO | N | N | - | - |
| Z425000 | 1 | - | - | - | - | - | - | - | - | - | - | 9/28/1995 | 99095 | 22:30 | - | Y | N | - | - |
| Z425000 | 1 | - | - | - | - | - | - | - | - | - | - | 10/13/1995 | 99089 | 19:30 | - | Y | N | - | - |
| Z432014 | 1 | Z432014-A | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 9/14/1995 | 99288 | - | NO | N | N | - | - |
| Z437276 | 2 | Z437276-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 10/1/1995 | 99416 | 6:00 | YES | N | Y | 99379 | N |
| Z437276 | 2 | Z437276-B | 3 | 1 | No | 6 | 5 | 5 | 3 | LIVE | YES | 10/1/1995 | 99382 | 6:00 | NO | N | N | - | - |
| Z437276 | 2 | Z437276-B | - | - | No | - | - | - | - | LIVE | YES | 10/1/1995 | 99382 | 6:00 | NO | N | N | - | - |
| Z451499 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N | - | - |
| Z450028 | 5 | Z450028-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 1/27/1996 | 99575 | 21:30 | NO | Y | N | - | - |
| Z450028 | 5 | Z450028-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/15/1999 | 146939 | 1:30 | YES | Y | N | - | - |
| Z450028 | 5 | Z450028-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/15/1999 | 146939 | 1:30 | YES | N | N | - | - |
| Z450028 | 5 | Z450028-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/15/1999 | 146939 | 1:30 | YES | N | N | - | - |
| Z450028 | 5 | Z450028-E | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/15/1999 | 146939 | 1:30 | YES | N | N | - | - |
| Z450028 | 5 | - | - | - | - | - | - | - | - | - | - | 8/15/1999 | 146938; 99530 | 1:30 | - | Y | Y | 146939 | UNK |
| Z450028 | 5 | - | - | - | - | - | - | - | - | - | - | 8/15/1999 | 146938; 99530 | 1:30 | - | Y | N | - | - |
| Z459175 | 1 | - | - | - | - | - | - | - | - | - | - | 9/27/1996 | 66639 | 2:30 | - | N | N | - | - |
| Z459175 | 1 | Z459175-A | 2 | 2 | Yes | 5 | 3 | 1.5 | 4 | LIVE | YES | 9/29/1995 | 66557 | - | NO | Y | N | - | - |
| Z459175 | 1 | Z459175-A | - | - | - | - | - | - | - | LIVE | YES | 9/29/1995 | 66557 | - | NO | Y | N | - | - |
| Z459175 | 1 | Z459175-A | - | - | Yes | - | - | - | - | LIVE | YES | 9/29/1995 | 66557 | - | NO | N | N | - | - |
| Z459984 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | Y | N | - | - |
| Z462709 | 2 | Z462709-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 10/1/1995 | 99032 | - | NO | Y | N | - | - |
| Z462709 | 2 | Z462709-B | 1 | 1 | No | 7 | 6 | 6 | 1 | PHOTO | NO | 10/1/1995 | 99033 | - | NO | Y | N | - | - |
| Z462709 | 2 | - | - | - | - | - | - | - | - | - | - | 10/1/1995 | 99034-6 | - | - | N | N | - | - |
| Z471485 | 0 | - | - | - | - | - | - | - | - | - | - | 12/20/1995 | 100038 | - | - | Y | N | - | - |
| Z472960 | 2 | - | - | - | - | - | - | - | - | - | - | 10/5/1995 | 66818 | 8:30 | - | N | N | - | - |
| Z472960 | 2 | Z472960-A | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 10/5/1995 | 100229 | 9:00 | NO | Y | Y | 100220 | N |
| Z472960 | 2 | Z472960-A | - | - | No | - | - | - | - | LIVE | YES | 10/5/1995 | 100229 | 9:00 | NO | N | Y | 100220 | N |
| Z472960 | 2 | Z472960-B | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 10/5/1995 | 100220 | 12:00 | YES | N | N | - | - |
| Z475236 | 1 | - | - | - | - | - | - | - | - | - | - | 10/10/1995 | 66874 | 5:00 | - | N | N | - | - |
| Z475236 | 1 | Z475236-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/8/1995 | 66888 | 5:00 | NO | N | Y | 66874 | N |
| Z479160 | 0 | - | - | - | - | - | - | - | - | - | - | 10/13/1995 | 100556 | - | - | N | N | - | - |
| Z486489 | 4 | Z486489-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 10/14/1995 | 100582 | 5:00 | NO | Y | N | - | - |
| Z486489 | 4 | Z486489-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 10/14/1995 | 100580 | 5:00 | NO | Y | N | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Z347852 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z347852 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| Z364562 | Unfamiliar | - | 1 | 7 | 4 | 4 | 0 | 1 | 3 | 0 | 0 | 4 | N | - | N | N |
| Z364562 | Unfamiliar | - | 1 | UNK | 3 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| Z364562 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z364562 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z372589 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z372589 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| Z380862 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Z380862 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z385635 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| Z385635 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z385635 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z385635 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z388983 | Unfamiliar | - | 2 | 6 | 3 | 6 | 5 | 0 | 1 | 0 | 0 | 6 | N | - | N | N |
| Z388983 | Unfamiliar | - | 2 | 5 | 2 | 4 | 3 | 0 | 1 | 0 | 0 | 4 | N | - | N | N |
| Z392919 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z392919 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z405104 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z405104 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z405104 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z405104 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z405104 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z405104 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z405104 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z405104 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z405104 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z405104 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z405104 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z410758 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z412986 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z424872 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z425000 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| Z425000 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z425000 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z425000 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| Z425000 | Unfamiliar | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | N |
| Z425000 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| Z425000 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z432014 | Unfamiliar | - | 4 | 5 | 1 | 4 | 3 | 1 | 0 | 0 | 0 | 4 | N | - | N | N |
| Z437276 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z437276 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z437276 | Unfamiliar | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| Z451499 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z459028 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Z459028 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| Z459028 | Unfamiliar | - | 1 | UNK | UNK | #VALUE! | 0 | 0 | 0 | 0 | 1 | 1 | N | - | Y | N |
| Z459028 | Unfamiliar | - | 1 | UNK | UNK | #VALUE! | 0 | 0 | 0 | 0 | 1 | 1 | N | - | Y | N |
| Z459028 | Unfamiliar | - | 1 | UNK | UNK | #VALUE! | 0 | 0 | 0 | 0 | 1 | 1 | N | - | Y | N |
| Z459028 | Both | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| Z459028 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| Z461175 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z461175 | Familiar Perp | Witness A | | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z461175 | Familiar Perp | Witness A | | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z461175 | Unfamiliar | - | 1 | 5 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| Z465684 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | N | - | Y | N |
| Z462709 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z462709 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z462709 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z471485 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z472960 | Unfamiliar | - | - | - | - | #VALUE! | - | - | - | - | - | #VALUE! | Y | N | N | N |
| Z472960 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z472960 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z472960 | Unfamiliar | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| Z475236 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| Z475236 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| Z479160 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z486489 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z486489 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z486489 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number of Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Z486489 | 4 | Z486489-C | 1 | 3 | Yes | 6 | 3 | 1 | 3 | LIVE | YES | 10/14/1995 | 5:00 | 100576 | NO | N | N | - | - |
| Z486489 | 4 | Z486489-C | - | - | Yes | - | - | - | - | LIVE | YES | 10/14/1995 | 5:00 | 100576 | NO | Y | N | - | - |
| Z486489 | 4 | Z486489-D | 1 | 4 | Yes | 8 | 4 | 1 | 4 | LIVE | YES | 10/14/1995 | 5:00 | 100576 | NO | N | N | - | - |
| Z402864 | 2 | Z402864-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 10/19/1995 | 23:50 | 100711 | NO | Y | N | - | - |
| Z402864 | 2 | Z402864-B | 4 | 1 | No | 6 | 5 | 5 | 4 | LIVE | YES | 12/22/1995 | 23:00 | 100670 | NO | N | N | - | - |
| Z402864 | 2 | Z402864-B | - | - | No | - | - | - | - | LIVE | YES | 12/22/1995 | 23:00 | 100670 | NO | Y | Y | 100711 | N |
| Z502022 | 2 | Z502022-A | 1 | 2 | Yes | 6 | 4 | 2 | 2 | PHOTO | NO | 11/17/1995 | - | 100759 | NO | Y | N | - | - |
| Z502022 | 2 | Z502022-A | - | - | Yes | - | - | - | - | PHOTO | NO | 11/17/1995 | - | 100759 | NO | Y | N | - | - |
| Z502022 | 2 | Z502022-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 11/17/1995 | - | 100758 | NO | Y | N | - | - |
| Z502239 | 0 | - | - | - | - | - | - | - | - | - | - | 10/25/1995 | - | 67139 | - | Y | N | - | - |
| Z502239 | 0 | - | - | - | - | - | - | - | - | - | - | 10/25/1995 | - | 67145 | - | Y | N | - | - |
| Z515339 | 1 | Z515339-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 4/../2003 | - | 100880 | - | Y | N | - | - |
| Z533574 | 2 | Z533574-A | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 12/28/1995 | - | 101071 | NO | Y | N | - | - |
| Z533574 | 2 | Z533574-A | - | - | No | - | - | - | - | PHOTO | NO | 12/28/1995 | - | 101071 | NO | Y | N | - | - |
| Z533574 | 2 | Z533574-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 12/28/1995 | - | 101069 | NO | Y | Y | 101071 | N |
| Z534338 | 2 | Z534338-A | 5 | 1 | No | UNK | UNK | UNK | 5 | LIVE | YES | 11/25/1995 | - | 101302 | NO | YES | N | - | - |
| Z534338 | 2 | Z534338-B | 3 | 2 | Yes | 6 | 4 | 2 | 6 | LIVE | YES | 12/2/1995 | 2:00 | 101268 | NO | N | N | - | - |
| Z534338 | 2 | Z534338-B | - | - | Yes | - | - | - | - | LIVE | YES | 12/2/1995 | 2:00 | 101268 | NO | N | Y | 67286, 67240 | N |
| Z534338 | 2 | Z534338-B | - | - | Yes | - | - | - | - | LIVE | YES | 12/2/1995 | 2:00 | 101268 | NO | N | Y | 67286 | N |
| Z534338 | 2 | Z534338-B | - | - | Yes | - | - | - | - | LIVE | YES | 12/2/1995 | 2:00 | 101268 | NO | N | Y | 67240 | N |
| Z534338 | 2 | Z534338-B | - | - | Yes | - | - | - | - | LIVE | YES | 12/2/1995 | 2:00 | 101268 | NO | N | N | - | - |
| Z534369 | 2 | Z534369-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 11/29/1995 | - | 67326 | - | N | Y | 67332; 67324 | N |
| Z534369 | 2 | Z534369-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | - | 11/29/1995 | - | 67332 | - | N | Y | 67324 | N |
| Z536442 | 2 | - | - | - | No | - | - | - | - | - | - | - | 15:00 | 101638 | - | Y | - | - |
| Z536442 | 2 | Z536442-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/11/1996 | - | 101615 | NO | Y | Y | 101638 | UNK |
| Z536442 | 2 | Z536442-B | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 9/11/1996 | - | 101612 | NO | Y | Y | 101647 | UNK |
| Z536442 | 2 | Z536442-B | - | - | No | - | - | - | - | LIVE | YES | 9/11/1996 | - | 101612 | NO | Y | Y | 101647 | UNK |
| Z536442 | 2 | Z536442-B | - | - | No | - | - | - | - | LIVE | YES | 9/11/1996 | - | 101612 | NO | Y | Y | 101647 | UNK |
| Z536442 | 2 | Z536442-B | - | - | No | - | - | - | - | LIVE | YES | 9/11/1996 | - | 101612 | NO | Y | Y | 101647 | UNK |
| Z537749 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N | - | - |
| Z566629 | 5 | - | - | - | - | - | - | - | - | - | - | 11/28/1995 | 23:00 | 101810 | - | Y | - | - |
| Z566629 | 5 | Z566629-A | 2 | 2 | Yes | UNK | UNK | 2 | 4 | PHOTO | NO | 12/6/1995 | 23:00 | 67488 | YES | Y | N | - | - |
| Z566629 | 5 | Z566629-A | - | - | Yes | - | - | - | - | PHOTO | NO | 12/6/1995 | 23:00 | 67488 | YES | Y | N | - | - |
| Z566629 | 5 | Z566629-A | - | - | Yes | - | - | - | - | PHOTO | NO | 12/6/1995 | 23:00 | 67488 | YES | Y | N | - | - |
| Z566629 | 5 | Z566629-B | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 12/6/1995 | 23:00 | 67488 | YES | Y | N | - | - |
| Z566629 | 5 | Z566629-B | - | - | Yes | - | - | - | - | PHOTO | NO | 12/6/1995 | 23:00 | 67488 | YES | Y | N | - | - |
| Z566629 | 5 | Z566629-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 12/6/1995 | 23:00 | 67490 | YES | Y | N | - | - |
| Z566629 | 5 | Z566629-D | 1 | 2 | Yes | UNK | UNK | UNK | 2 | PHOTO | NO | 12/11/1995 | 23:00 | 67498 | YES | Y | N | - | - |
| Z566629 | 5 | Z566629-D | - | - | Yes | - | - | - | - | PHOTO | NO | 12/11/1995 | 23:00 | 67498 | YES | Y | N | - | - |
| Z566629 | 5 | Z566629-E | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 12/11/1995 | 23:00 | 67500 | YES | N | N | - | - |
| Z540335 | 0 | - | - | - | - | - | - | - | - | - | - | 12/10/1995 | - | 102053 | - | Y | N | - | - |
| Z540335 | 0 | - | - | - | - | - | - | - | - | - | - | 12/18/1995 | 23:00 | 102051 | - | Y | N | - | - |
| Z646617 | 0 | - | - | - | - | - | - | - | - | - | - | 12/14/1995 | 14:00 | 51845 | - | Y | N | - | - |
| Z646817 | 0 | - | - | - | - | - | - | - | - | - | - | 12/14/1995 | 14:00 | 51846 | - | Y | N | - | - |
| Z646617 | 0 | - | - | - | - | - | - | - | - | - | - | 12/14/1995 | 14:00 | 51847 | - | Y | N | - | - |
| Z646708 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N | - | - |
| Z648125 | 3 | Z648125-A | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 12/30/1995 | 23:30 | 102354 | NO | N | N | - | - |
| Z648125 | 3 | Z648125-B | 1 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 12/30/1995 | 22:30 | 102352 | NO | N | Y | 102354 | N |
| Z648125 | 3 | Z648125-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/19/1996 | 13:00 | 102360 | NO | N | Y | 102354 | N |
| Z653408 | 2 | Z653408-A | 1 | 2 | No | 5 | 3 | 1.5 | 2 | LIVE | YES | 12/28/1995 | - | 102443 | NO | N | N | - | - |
| Z653408 | 2 | Z653408-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/17/1996 | - | 102416 | NO | N | N | - | - |
| Z654272 | 2 | Z654272-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 4/7/1996 | 21:30 | 102842 | NO | Y | N | - | - |
| Z654272 | 2 | Z654272-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 4/7/1996 | 21:30 | 102842 | YES | Y | N | - | - |
| Z699822 | 3 | Z699822-A | 1 | 1 | No | 7 | 6 | 6 | 1 | PHOTO | NO | 1/3/1996 | - | 103053 | NO | Y | N | - | - |
| Z699822 | - | - | - | - | - | - | - | - | - | - | - | 9/7/1996 | - | 103145 | - | Y | Y | 103013, 103005 | UNK |
| Z699822 | 3 | Z699822-B | 1 | 2 | Yes | UNK | UNK | UNK | 2 | PHOTO | NO | 9/9/1996 | 17:00 | 103005 | YES | Y | N | - | - |
| Z699822 | 3 | Z699822-C | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 9/11/1996 | 23:00 | 103013 | NO | Y | Y | 103005 | N |
| Z699822 | 3 | Z699822-C | - | - | No | - | - | - | - | LIVE | YES | 9/11/1996 | 23:00 | 103013 | NO | Y | N | - | - |
| Z699822 | 3 | Z699822-C | - | - | No | - | - | - | - | LIVE | YES | 9/11/1996 | 23:00 | 103013 | NO | Y | N | - | - |
| A007569 | NONE | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| A012107 | 6 | - | - | - | Yes | - | - | - | - | - | NO | 1/10/1996 | 0:00 | 52225 | - | N | N | - | - |
| A012107 | 6 | A012107-A | 1 | 5 | Yes | 9 | 4 | 0.8 | 5 | LIVE | YES | 1/11/1996 | 0:00 | 52230 | NO | N | Y | 52225 | N |
| A012107 | 6 | A012107-A | - | - | Yes | - | - | - | - | LIVE | YES | 1/11/1996 | 0:00 | 52230 | NO | N | Y | 52225 | N |
| A012107 | 6 | A012107-A | - | - | Yes | - | - | - | - | LIVE | YES | 1/11/1996 | 0:00 | 52230 | NO | N | Y | 52225 | N |
| A012107 | 6 | A012107-A | - | - | Yes | - | - | - | - | LIVE | YES | 1/11/1996 | 0:00 | 52230 | NO | N | Y | 52225 | N |
| A012107 | 6 | A012107-A | - | - | Yes | - | - | - | - | LIVE | YES | 1/11/1996 | 0:00 | 52230 | NO | N | Y | 52225 | N |
| A012107 | 6 | A012107-B | 1 | 5 | Yes | 9 | 4 | 0.8 | 5 | LIVE | YES | 1/11/1996 | 0:00 | 52236 | NO | N | N | - | - |
| A012107 | 6 | A012107-C | 1 | 3 | Yes | 7 | 4 | 1.333333333 | 3 | LIVE | YES | 1/11/1996 | 0:00 | 52240 | NO | N | Y | 52225 | UNK |
| A012107 | 6 | A012107-C | - | - | Yes | - | - | - | - | LIVE | YES | 1/11/1996 | 0:00 | 52240 | NO | N | Y | 52225 | UNK |
| A012107 | 6 | A012107-C | - | - | Yes | - | - | - | - | LIVE | YES | 1/11/1996 | 0:00 | 52240 | NO | N | Y | 52225 | UNK |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or instantive positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Z495489 | Unfamiliar | Witness A |  | 6 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | 2 | N | - | N | N |
| Z495489 | Familiar Perp | Witness A | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z495489 | Unfamiliar | - | 1 | 8 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | 4 | N | - | N | N |
| Z492894 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z492894 | Unfamiliar | - | 3 | 6 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| Z492894 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z502022 | Familiar Perp | Witness A |  | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z502022 | Familiar Perp | Witness A | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z502022 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z502239 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z502239 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z515339 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z533574 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z533574 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z533574 | Both | - | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| Z534338 | Unfamiliar | - | 5 | UNK | 1 | 5 | 0 | 0 | 5 | 0 | 0 | 5 | N | - | N | N |
| Z534338 | Unfamiliar | - | 1 | 6 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| Z534338 | Previous ID | Witness A |  | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z534338 | Previous ID | Witness A | 1 | 6 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z534338 | Previous ID | Witness B |  | 6 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z534338 | Unfamiliar | Witness B | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z534360 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z534360 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z536442 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| Z536442 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | N |
| Z536442 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | N |
| Z536442 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Both | Y |
| Z536442 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | N |
| Z536442 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | N |
| Z537749 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z565629 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z565629 | Familiar Perp | Witness A |  | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z565629 | Familiar Perp | Witness A | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z565629 | Familiar Perp | Witness B |  | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z565629 | Familiar Perp | Witness B | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z565629 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Z565629 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Z565629 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Z565629 | Familiar Perp | Witness A |  | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z565629 | Familiar Perp | Witness A | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z565629 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z640335 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| Z640335 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z646617 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| Z646617 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| Z646617 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| Z546708 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| Z648125 | Unfamiliar | - | 2 | 6 | 1 | 2 | 1 | 1 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| Z648125 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z648125 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| Z653408 | Unfamiliar | - | 1 | 5 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| Z653408 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z654272 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z654272 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z664822 | Familiar Perp | - | 1 | 7 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| Z664822 | Both | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| Z664822 | Familiar Perp | - | 1 | UNK | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| Z664822 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z664822 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| Z664822 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A007559 | N/A |  |  |  | 0 |  |  |  |  |  |  | 0 |  |  | N | N |
| A012107 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A012107 | Previous ID | Witness A |  | 9 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| A012107 | Previous ID | Witness A |  | 9 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Y | Y | N | N |
| A012107 | Previous ID | Witness A |  | 9 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Y | Y | N | N |
| A012107 | Previous ID | Witness A | 1 | 9 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | Y | Y | N | N |
| A012107 | Unfamiliar | - | 1 | 9 | 5 | 5 | 1 | 0 | 0 | 0 | 4 | 5 | N | - | N | N |
| A012107 | Previous ID | Witness A |  | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| A012107 | Previous ID | Witness A |  | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| A012107 | Previous ID | Witness A | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |

| RDF of Homicide Files | Number of Identification Events Reported for RDF | Event Number | Number of Witness Participants in Event | Number of Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A012107 | 6 | A012107-D | 1 | 3 | Yes | 7 | 4 | 1.333333333 | 3 | LIVE | YES | 1/11/1996 | 52246 | 0:00 | NO | N | N | - | - |
| A012107 | 6 | A012107-E | 1 | 3 | Yes | 7 | 4 | 1.333333333 | 3 | LIVE | YES | 1/11/1996 | 52252 | 0:00 | NO | Y | N | - | - |
| A012107 | 6 | A012107-E | - | - | Yes | - | - | - | - | LIVE | YES | 1/11/1996 | 52252 | 0:00 | NO | Y | N | - | - |
| A012107 | 6 | A012107-E | - | - | Yes | - | - | - | - | LIVE | YES | 1/11/1996 | 52252 | 0:00 | NO | Y | N | - | - |
| A012107 | 6 | A012107-F | 3 | 2 | Yes | 5 | 3 | 1.5 | 6 | LIVE | YES | 1/11/1996 | 52258 | - | NO | N | Y | 52246 | N |
| A012107 | 6 | A012107-F | - | - | Yes | - | - | - | - | LIVE | YES | 1/11/1996 | 52258 | - | NO | N | Y | 52246 | N |
| A012107 | 6 | A012107-F | - | - | Yes | - | - | - | - | LIVE | YES | 1/11/1996 | 52258 | - | NO | N | Y | 52240 | N |
| A012107 | 6 | A012107-F | - | - | Yes | - | - | - | - | LIVE | YES | 1/11/1996 | 52258 | - | NO | N | Y | 52240 | N |
| A012107 | 6 | A012107-F | - | - | Yes | - | - | - | - | LIVE | YES | 1/11/1996 | 52258 | - | NO | N | Y | 52252 | N |
| A012107 | 6 | A012107-F | - | - | Yes | - | - | - | - | LIVE | YES | 1/11/1996 | 52258 | - | NO | N | Y | 52252 | N |
| A012107 | 6 | - | - | - | - | - | - | - | - | - | - | 1/17/1996 | 52292 | 15:30 | - | Y | N | - | - |
| A014166 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| A015939 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| A038589 | 1 | A038589-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/12/1996 | 52415 | 19:00 | NO | Y | N | - | - |
| A090347 | - | - | - | - | - | - | - | - | - | - | - | 2/9/1996 | 52472 | 1:00 | - | Y | N | - | - |
| A090347 | 3 | A090347-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 2/15/1996 | 52484 | - | NO | N | N | - | - |
| A090347 | 3 | A090347-B | 1 | 2 | Yes | 5 | 3 | 1.5 | 2 | PHOTO | NO | 2/15/1996 | 52486 | - | NO | N | N | - | - |
| A090347 | 3 | A090347-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/11/1996 | 52512 | 20:50 | NO | N | Y | 52506 | NO |
| A103098 | 4 | A103098-A | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 2/19/1996 | 52560 | 23:00 | NO | N | N | - | - |
| A103098 | 4 | A103098-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 2/19/1996 | 52552 | 2:30 | NO | N | Y | 52560 | UNK |
| A103098 | 4 | A103098-B | - | - | No | - | - | - | - | LIVE | YES | 2/19/1996 | 52552 | 2:30 | NO | N | Y | 52560 | UNK |
| A103098 | 4 | A103098-C | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 2/19/1996 | 52562 | 23:45 | NO | N | N | - | - |
| A103098 | 4 | A103098-D | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 11/10/1997 | 52606 | 21:30 | NO | N | Y | 52602 | N |
| A182364 | 4 | A182364-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 7/25/1996 | 52645 | 17:00 | YES | N | N | - | - |
| A182364 | 4 | A182364-B | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 7/25/1996 | 52646 | 17:00 | YES | N | N | - | - |
| A182364 | 4 | A182364-C | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 7/25/1996 | 52649 | 17:00 | NO | Y | N | - | - |
| A182364 | 4 | A182364-C | - | - | No | - | - | - | - | PHOTO | NO | 7/25/1996 | 52649 | 17:00 | NO | N | N | - | - |
| A182364 | 4 | A182364-D | 1 | 1 | No | UNK | UNK | UNK | - | LIVE | NO | 7/25/1996 | 52649 | 17:00 | YES | N | Y | 52649 | UNK |
| A195612 | NONE | NONE | | | | | | | 0 | | | | | | | | | | |
| A196932 | NONE | NONE | | | | | | | 0 | | | | | | | | | | |
| A203037 | NONE | NONE | | | | | | | 0 | | | | | | | | | | |
| A206287 | 5 | A206287-A | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 4/1/1996 | 52800/68177 | 18:00 | YES | N | Y | 52794 | UNK |
| A206287 | 5 | A206287-A | - | - | No | - | - | - | - | LIVE | YES | 4/1/1996 | 52800/68177 | 18:00 | YES | N | Y | 52794 | UNK |
| A206287 | 5 | A206287-B | 1 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 4/1/1996 | 52794 | 22:00 | NO | N | N | - | - |
| A206287 | 5 | A206287-C | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 4/1/1996 | 52794 | 21:00 | NO | N | N | - | - |
| A206287 | 5 | A206287-D | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 4/8/1996 | 52792/52839 | 23:00 | NO | N | Y | 52784 | UNK |
| A206287 | 5 | A206287-D | - | - | No | - | - | - | - | LIVE | YES | 4/8/1996 | 52792/52839 | 23:00 | NO | N | N | - | - |
| A206287 | 5 | A206287-E | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 4/11/1996 | 52802/52839 | 23:30 | NO | N | N | - | - |
| A234383 | 4 | A234383-A | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 4/11/1996 | 52865 | - | NO | N | N | - | - |
| A234383 | 4 | A234383-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 4/23/1996 | 52867 | - | NO | N | Y | 52865 | N |
| A234383 | 4 | A234383-B | - | - | No | - | - | - | - | LIVE | YES | 4/23/1996 | 52867 | - | NO | N | Y | 52865 | N |
| A234383 | 4 | A234383-C | 3 | 1 | No | 5 | 4 | 4 | 3 | PHOTO | NO | 6/11/1996 | 52923-5 | - | NO | N | N | - | - |
| A234383 | 4 | A234383-D | 1 | 2 | Yes | 4 | 2 | 1 | 2 | PHOTO | NO | 6/11/1996 | 52929 | 23:55 | NO | Y | N | - | - |
| A242408 | 0 | - | - | - | - | - | - | - | - | - | - | 4/10/1996 | 59021-2 | - | - | N | N | - | - |
| A247202 | NONE | | | | | | | | 0 | | | | | | | | | | |
| A256214 | 4 | A256214-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 12/28/1996 | 53048 | - | NO | Y | N | - | - |
| A256214 | 4 | A256214-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 1/28/1997 | 53040 | - | NO | N | N | - | - |
| A256214 | 4 | A256214-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | NO | 3/8/1997 | 53076, 53085 | 23:00 | NO | N | Y | 53048 | UNK |
| A256214 | 4 | A256214-D | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/18/1997 | 53036 | - | NO | N | Y | 53040 | N |
| A263351 | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - |
| A265380 | 4 | - | - | - | - | - | - | - | - | - | - | 4/22/1996 | 59945 | - | - | N | N | - | - |
| A265380 | 4 | A265380-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 6/17/1996 | 53250 | 23:30 | NO | N | Y | 53242 | UNK |
| A265380 | 4 | A265380-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 6/19/1996 | 53242 | 23:00 | NO | N | N | - | - |
| A265380 | 4 | A265380-C | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 6/19/1996 | 53234 | 15:00 | NO | N | N | - | - |
| A265380 | 4 | A265380-C | - | - | No | - | - | - | - | LIVE | YES | 6/19/1996 | 53234 | 15:00 | NO | Y | N | - | - |
| A265380 | 4 | A265380-D | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 6/27/1996 | 53250 | 18:00 | NO | N | N | - | - |
| A267008 | 1 | A267008-A | 1 | 4 | Yes | 5 | 1 | 0.25 | 4 | LIVE | NO | 04/25/1996 | 53272, 53292 | 23:30 | YES | N | N | - | - |
| A269379 | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - |
| A271988 | 3 | - | - | - | - | - | - | - | - | - | - | 03/18/1997 | 70402 | - | - | N | N | - | - |
| A271988 | 3 | A271988-A | 1 | 2 | Yes | UNK | UNK | UNK | 2 | PHOTO | NO | 03/19/1997 | 70399 | - | YES | Y | N | - | - |
| A271988 | 3 | A271988-B | 2 | UNK | UNK | 18 | UNK | UNK | UNK | PHOTO | NO | 07/25/1997 | 53373 | 23:30 | YES | N | N | - | - |
| A271988 | 3 | A271988-B | - | - | UNK | - | - | - | - | PHOTO | NO | 07/25/1997 | 53373 | 23:30 | YES | Y | N | - | - |
| A271988 | 3 | A271988-C | 3 | 1 | No | UNK | UNK | UNK | 3 | LIVE | NO | 08/12/1997 | 53383 | 23:55 | NO | N | Y | 53373 | N |
| A271988 | 3 | A271988-C | - | - | No | - | - | - | - | LIVE | NO | 08/12/1997 | 53383 | 23:55 | YES | Y | N | 53373 | N |
| A271988 | 3 | A271988-C | - | - | No | - | - | - | - | LIVE | NO | 08/12/1997 | 53383 | 23:55 | NO | N | N | - | - |
| A276340 | 6 | A276340-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 5/5/1996 | 70458 | 8:00 | NO | N | N | - | - |
| A276340 | 6 | A276340-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 5/18/1996 | 53419 | - | NO | N | N | - | - |
| A276340 | 6 | A276340-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 5/18/1996 | 53419 | - | YES | N | N | - | - |
| A276340 | 6 | A276340-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 5/26/1996 | 70448 | - | YES | N | N | - | - |
| A276340 | 6 | A276340-E | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/27/1996 | 53421 | 12:30 | NO | N | Y | 53419 | UNK |
| A276340 | 6 | A276340-F | 2 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/28/1996 | 53425 | 17:00 | NO | N | Y | 70448 | UNK |
| A276340 | 6 | A276340-F | - | - | No | - | - | - | - | LIVE | YES | 6/28/1996 | 53425 | 17:00 | NO | N | Y | 53419 | UNK |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A012107 | Unfamiliar | - | 1 | 7 | 3 | 3 | 2 | 0 | 0 | 0 | 1 | 3 | N | - | N | N |
| A012107 | Familiar Perp | Witness A | | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A012107 | Familiar Perp | Witness A | | 7 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| A012107 | Familiar Perp | Witness A | 1 | 7 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| A012107 | Previous ID | Witness A | | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| A012107 | Previous ID | Witness A | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| A012107 | Previous ID | Witness B | | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A012107 | Previous ID | Witness B | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | N | - | N | N |
| A012107 | Previous ID | Witness C | | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A012107 | Previous ID | Witness C | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | N | - | N | N |
| A012107 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A014198 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| A015939 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| A038589 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A090347 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A090347 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A090347 | Unfamiliar | - | 1 | 5 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| A090347 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A103098 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| A103098 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A103098 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A103098 | Unfamiliar | - | 2 | 5 | 1 | 2 | 0 | 1 | 1 | 0 | 0 | 2 | N | - | N | N |
| A103098 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A182364 | Unfamiliar | - | 2 | UNK | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | Y |
| A182364 | Unfamiliar | - | 2 | UNK | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | Y | Y |
| A182364 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A182364 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A182364 | Previous ID | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A196612 | N/A | | | | 0 | | | | | | | 0 | N | - | N | - |
| A196932 | N/A | | | | 0 | | | | | | | 0 | N | - | N | - |
| A203937 | N/A | | | | 0 | | | | | | | 0 | N | - | N | - |
| A206287 | Previous ID | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| A206287 | Previous ID | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| A206287 | Unfamiliar | - | 2 | 6 | 1 | 2 | 0 | 1 | 1 | 0 | 0 | 2 | N | - | Y | Y |
| A206287 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A206287 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A206287 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| A206287 | Unfamiliar | - | 2 | 4 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| A234383 | Unfamiliar | - | 2 | 6 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| A234383 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A234383 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A234383 | Unfamiliar | - | 3 | 5 | 1 | 3 | 0 | 1 | 1 | 0 | 1 | 3 | N | - | N | N |
| A234383 | Familiar Perp | - | 1 | 4 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| A242406 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A247202 | N/A | | | | 0 | | | | | | | 0 | N | - | N | N |
| A256214 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A256214 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A256214 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A256214 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A263351 | N/A | N | | | 0 | | | | | | | 0 | N | - | N | N |
| A265380 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | Y | Y |
| A265380 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A265380 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A265380 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A265380 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A265380 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A267008 | Unfamiliar | - | 1 | 5 | 4 | 4 | 1 | 0 | 0 | 0 | 3 | 4 | N | - | N | N |
| A269379 | N/A | | | | 0 | | | | | | | 0 | N | - | N | N |
| A271988 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| A271988 | Familiar Perp | - | 1 | UNK | 2 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| A271988 | Unfamiliar | - | 1 | 18 | UNK | #VALUE! | 1 | 0 | 0 | 0 | 0 | UNK | N | - | N | N |
| A271988 | Familiar Perp | - | 1 | 18 | UNK | #VALUE! | 1 | 0 | 0 | 0 | 0 | UNK | N | - | N | N |
| A271988 | Previous ID | - | 1 | UNK | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| A271988 | Both | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A271988 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| A276340 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| A276340 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A276340 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A276340 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A276340 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A276340 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| A276340 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number of Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A276340 | 6 | - | - | - | | - | - | - | - | | | 11/19/1996 | 70414 | 23:00 | | Y | N | - | - |
| A314126 | 2 | A314126-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 6/24/1996 | 53469 | 2:00 | NO | Y | N | - | - |
| A314126 | 2 | A314126-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 6/25/1996 | 53479 | 1:15 | NO | N | N | - | - |
| A314126 | 2 | A314126-B | - | - | No | - | - | - | - | LIVE | YES | 6/25/1996 | 53479 | 1:15 | NO | Y | N | - | - |
| A315294 | 2 | A315624-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/18/1996 | 53522 | 18:00 | NO | N | N | - | - |
| A315294 | 2 | A315624-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/18/1996 | 53526 | 23:00 | NO | N | Y | 53520 | |
| A325365 | 1 | A325985-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 05/30/1996 | 53596 | 23:00 | NO | Y | N | - | - |
| A325358 | 4 | A325358-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 5/15/1996 | 53656 | - | NO | N | N | - | - |
| A325358 | 4 | A325358-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/16/1996 | 53658 | 1900 | NO | N | N | - | - |
| A325358 | 4 | A325358-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/16/1996 | 53632 | 1900 | NO | N | Y | 53656 | N |
| A325358 | 4 | A325358-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 3/23/2000 | 53668 | - | NO | Y | N | - | - |
| A326902 | - | - | - | - | No | 0 | - | - | - | | | | | | | | | | |
| A339002 | 0 | - | - | - | No | - | - | - | - | | | 05/20/1996 | 53744 | - | | Y | N | - | - |
| A340033 | 1 | A340033-A | 2 | 1 | No | 7 | 6 | 6 | 2 | PHOTO | NO | 5/22/1996 | 53816-8 | 7:00 | NO | Y | N | - | - |
| A340033 | 1 | A340033-A | - | - | No | - | - | - | - | PHOTO | NO | 5/22/1996 | 53816-8 | 7:00 | NO | Y | N | - | - |
| A342423 | 1 | A342423-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 11/11/2010 | 72144-45 | 3:37 | NO | N | N | - | - |
| A342423 | 1 | - | - | - | No | - | - | - | - | | | 11/11/2010 | 72146 | 3:37 | | Y | N | - | - |
| A362905 | 3 | A362905-A | 1 | UNK | UNK | 5 | UNK | UNK | UNK | LIVE | YES | 06/28/1996 | 53893 | 14:00 | YES | N | N | - | - |
| A362905 | 3 | A362905-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 06/23/2005 | 72431 | 14:24 | NO | Y | N | - | - |
| A362905 | 3 | A362905-C | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 06/23/2005 | 72431 | 14:24 | NO | Y | N | - | - |
| A385323 | - | - | - | - | | - | - | - | - | | | | | | | | | | |
| A390028 | - | - | - | - | No | 0 | - | - | - | | | | | | | | | | |
| A403252 | 2 | A403252-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/23/1996 | 72888 | - | YES | N | N | - | - |
| A403252 | 2 | A403252-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 8/8/1996 | 54025 | - | NO | N | Y | 72888 | UNK |
| A404559 | - | - | - | - | | - | - | - | - | | | - | - | - | | - | - | - | - |
| A409938 | 7 | A409938-A | 2 | 1 | No | UNK | UNK | UNK | 2 | LIVE | NO | 6/14/1996 | 73060 | - | NO | Y | N | - | - |
| A409938 | 7 | A409938-A | - | - | No | - | - | - | - | LIVE | NO | 6/14/1996 | 73060 | - | YES | Y | N | - | - |
| A409938 | 7 | - | - | - | - | - | - | - | - | PHOTO | - | 6/17/1996 | 73184 | - | - | Y | N | - | - |
| A409938 | 7 | A409938-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 6/23/1996 | 73166 | - | NO | Y | N | - | - |
| A409938 | 7 | A409938-B | - | - | No | - | - | - | - | LIVE | YES | 6/23/1996 | 73166 | - | NO | N | N | - | - |
| A409938 | 7 | A409938-C | 1 | 3 | Yes | UNK | UNK | UNK | 3 | PHOTO | NO | 6/25/1996 | 73062 | - | YES | Y | N | - | - |
| A409938 | 7 | - | - | - | Yes | - | - | - | - | PHOTO | NO | 6/25/1996 | 73062 | - | NO | Y | N | - | - |
| A409938 | 7 | A409938-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 7/18/1996 | 72969 | - | YES | N | Y | 73062 | UNK |
| A409938 | 7 | A409938-E | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/21/1996 | 73007 | - | NO | N | N | - | - |
| A409938 | 7 | A409938-F | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/22/1996 | 73003 | - | NO | N | N | - | - |
| A409938 | 7 | A409938-G | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/7/2002 | 72392 | 22:07 | NO | N | Y | 72969, 73062 | UNK |
| A412750 | - | - | - | - | | - | - | - | - | | | - | - | - | | - | - | - | - |
| A415405 | 2 | A415405-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 7/4/1996 | 73422-5 | 21:00 | NO | Y | N | - | - |
| A415405 | 2 | A415405-B | 5 | 1 | No | 5 | 4 | 4 | 5 | LIVE | YES | 7/10/1996 | 73420 | 21:30 | NO | N | N | - | - |
| A415405 | 2 | A415405-B | - | - | No | - | - | - | - | LIVE | YES | 7/10/1996 | 73420 | 21:30 | NO | N | Y | 73422-5 | UNK |
| A420261 | - | - | - | - | | - | - | - | - | | | - | - | - | | - | - | - | - |
| A423685 | 3 | A423685-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 6/26/1996 | 73783 | 23:00 | NO | N | N | - | - |
| A423685 | 3 | A423685-B | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 6/26/1996 | 73789 | 3:00 | NO | N | Y | 73783 | UNK |
| A423685 | 3 | A423685-C | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 6/28/1996 | 73782 | 21:00 | NO | N | N | - | - |
| A423685 | 3 | - | - | - | - | - | - | - | - | | | 6/26/1996 | 73782 | 23:00 | - | Y | N | - | - |
| A425608 | 0 | - | - | - | - | - | - | - | - | | | 6/26/1996 | 54302 | - | - | Y | N | - | - |
| A425608 | 0 | - | - | - | - | - | - | - | - | | | 6/27/1996 | 54322 | 100 | - | Y | Y | 54302 | UNK |
| A425608 | 0 | - | - | - | - | - | - | - | - | | | 6/27/1996 | 54322 | 100 | - | Y | N | - | - |
| A440114 | 4 | A440114-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 7/5/1996 | 73944 | - | YES | Y | N | - | - |
| A440114 | 4 | A440114-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/12/1996 | 73933 | 18:30 | NO | Y | Y | 73944 | UNK |
| A440114 | 4 | A440114-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 7/12/1996 | 73938 | 21:00 | YES | N | N | - | - |
| A440114 | 4 | A440114-D | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 7/23/1996 | 73930 | 15:00 | NO | N | Y | 73938 | UNK |
| A440836 | 0 | - | - | - | - | - | - | - | - | | | 7/17/1996 | 54400 | UNK | - | N | N | - | - |
| A482069 | 3 | A482069-A | 1 | 2 | Yes | 7 | 5 | 2.5 | 2 | LIVE | YES | 8/3/1996 | 74298 | 7:00 | NO | N | N | - | - |
| A482069 | 3 | A482069-B | 1 | 2 | Yes | 4 | 2 | 1 | 2 | PHOTO | NO | 10/31/1996 | 74263 | - | NO | N | N | - | - |
| A482069 | 3 | A482069-C | 1 | 2 | Yes | 4 | 2 | 1 | 2 | LIVE | YES | 12/10/1996 | 74269 | 23:30 | NO | N | Y | 74263 | N |
| A482069 | 3 | A482069-C | - | - | Yes | - | - | - | - | LIVE | YES | 12/10/1996 | 74269 | 23:30 | NO | N | Y | 74263 | N |
| A496779 | 2 | A496779-A | 12 | 2 | Yes | 5 | 3 | 1.5 | 24 | LIVE | YES | 7/11/1996 | 54494 | - | NO | N | N | - | - |
| A496779 | 2 | A496779-A | - | - | Yes | - | - | - | - | LIVE | YES | 7/11/1996 | 54484 | - | NO | Y | N | - | - |
| A496779 | 2 | A496779-A | - | - | Yes | - | - | - | - | LIVE | YES | 7/11/1996 | 54484 | - | NO | Y | N | - | - |
| A496779 | 2 | A496779-A | - | - | Yes | - | - | - | - | LIVE | YES | 7/11/1996 | 54484 | - | NO | Y | N | - | - |
| A496779 | 2 | A496779-B | 1 | 2 | Yes | 6 | 4 | 2 | 2 | LIVE | YES | 7/11/1996 | 54506 | 2025 | NO | Y | N | - | - |
| A496779 | 2 | A496779-B | - | - | Yes | - | - | - | - | LIVE | YES | 7/11/1996 | 54506 | 2025 | NO | N | N | - | - |
| A498732 | 1 | A498732-A | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 7/12/1996 | 54522 | 0:10 | NO | N | N | - | - |
| A498732 | 1 | A498732-A | - | - | No | - | - | - | - | LIVE | YES | 7/12/1996 | 54522 | 0:10 | NO | Y | N | - | - |
| A498732 | 1 | A498732-A | - | - | No | - | - | - | - | LIVE | YES | 7/12/1996 | 54522 | 0:10 | NO | Y | N | - | - |
| A501075 | 0 | - | - | - | - | - | - | - | - | | NO | 01/27/1997 | 54590 | 17:00 | - | Y | N | - | - |
| A504999 | 1 | A504999-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 7/20/1996 | 54639 | 23:50 | NO | Y | N | - | - |
| A505931 | 1 | A505931-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 07/18/1996 | 74874-75, 74911 | 18:00 | N | N | N | - | - |
| A511604 | 1 | A511604-A | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 07/19/1996 | 54732-4 | 17:00 | N | N | N | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A276340 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A314128 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A314128 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A314128 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A315294 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| A315294 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A322065 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A325358 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A325358 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A325358 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A325358 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A326002 | N/A | | | | | 0 | | | | | | 0 | | | N | N |
| A339002 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A340033 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A340033 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A342423 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A342423 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A362905 | Unfamiliar | - | 1 | 5 | UNK | UNK | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| A362905 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A362905 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A385323 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N |
| A360028 | N/A | | | | | 0 | | | | | | | | | N | - |
| A403252 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| A403252 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A404559 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N |
| A409938 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| A409938 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| A409938 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A409938 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A409938 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| A409938 | Familiar Perp | Witness A | - | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A409938 | Unfamiliar | Witness A | 1 | UNK | 2 | 2 | 0 | 2 | 0 | 0 | 0 | 2 | N | - | N | N |
| A409938 | Previous ID | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A409938 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A409938 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| A409938 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A412750 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N |
| A415405 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A415405 | Unfamiliar | - | 4 | 5 | 1 | 4 | 1 | 0 | 3 | 0 | 0 | 4 | N | - | N | N |
| A415405 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A420281 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | Y | N |
| A423685 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A423685 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A423685 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| A423685 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| A425608 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A425608 | Both | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A425608 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | - | N | N |
| A440114 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A440114 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A440114 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A440836 | Unfamiliar | - | 1 | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A482669 | Unfamiliar | - | 1 | 7 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| A482669 | Unfamiliar | - | 1 | 4 | 2 | 2 | 1 | 1 | 0 | 0 | 0 | 2 | N | - | N | N |
| A482669 | Previous ID | Witness A | - | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A482669 | Previous ID | Witness A | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| A496779 | Unfamiliar | - | 10 | 5 | 2 | 20 | 5 | 3 | 12 | 0 | 0 | 20 | N | - | N | N |
| A496779 | Familiar Perp | Witness A | - | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A496779 | Familiar Perp | Witness A | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A496779 | Familiar Perp | Witness B | - | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A496779 | Familiar Perp | Witness B | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| A496779 | Familiar Perp | Witness A | - | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A496779 | Unfamiliar | Witness A | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A468732 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| A468732 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A468732 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A501075 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| A504999 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A506931 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A511604 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the Witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence witness saw the suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A511604 | 1 | A511604-A | – | – | No | – | – | – | – | PHOTO | NO | 07/19/1996 | 54732-4 | 17:00 | N | N | N | – | – |
| A530564 | 1 | A530564-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 7/31/1996 | 54758 | 23:55 | NO | N | N | – | – |
| A530564 | 1 | A530564 | – | – | – | – | – | – | – | PHOTO | – | 8/1/1996 | 54766 | – | NO | Y | N | – | – |
| A530564 | 1 | – | – | – | – | – | – | – | – | PHOTO | – | 8/1/1996 | 54766 | – | NO | Y | N | – | – |
| A567507 | 3 | A567507-A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 8/2/1996 | 54794 | – | NO | Y | N | – | – |
| A567507 | 3 | A567507-A | – | – | No | – | – | – | – | LIVE | YES | 8/2/1996 | 54794 | – | NO | N | N | – | – |
| A567507 | 3 | A567507-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/14/1996 | 54809 | – | YES | N | N | – | – |
| A584620 | 4 | A584620-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 10/1/1996 | 54855 | 2300 | NO | N | N | – | – |
| A584620 | 4 | A584620-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 10/1/1996 | 54855 | 2300 | NO | N | N | – | – |
| A584620 | 4 | A584620-C | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 9/26/1996 | 54864 | 2130 | NO | N | Y | 54855 | UNK |
| A584620 | 4 | A584620-D | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 10/18/1996 | 54866 | 1800 | NO | N | Y | 54855 | UNK |
| A584620 | 4 | – | – | – | – | – | – | – | – | LIVE | YES | 10/20/1996 | 54869 | 1800 | – | Y | N | – | – |
| A594174 | 2 | – | – | – | – | – | – | – | – | – | – | 8/22/1996 | 54946 | 2100 | – | Y | N | – | – |
| A594174 | 2 | – | – | – | – | – | – | – | – | – | – | 8/22/1996 | 54946 | 2100 | – | Y | N | – | – |
| A594174 | 2 | A594174-A | 5 | 3 | Yes | 8 | 5 | 1.666666667 | 15 | LIVE | YES | 9/23/1996 | 54918 | 2300 | NO | N | N | – | – |
| A594174 | 2 | A594174-A | – | – | Yes | – | – | – | – | LIVE | YES | 9/23/1996 | 54918 | 2300 | NO | Y | Y | 54922 | UNK |
| A594174 | 2 | A594174-A | – | – | Yes | – | – | – | – | LIVE | YES | 9/23/1996 | 54918 | 2300 | NO | N | N | – | – |
| A594174 | 2 | A594174-A | – | – | Yes | – | – | – | – | LIVE | YES | 9/23/1996 | 54918 | 2300 | NO | Y | Y | 54938, 54940 | UNK |
| A594174 | 2 | – | – | – | – | – | – | – | – | PHOTO | – | 3/20/1997 | 54970 | – | NO | Y | N | – | – |
| A594174 | 2 | A594174-B | 1 | 1 | No | 7 | 6 | 6 | 1 | LIVE | YES | 3/22/1997 | 54976 | 1600 | NO | N | N | – | – |
| A596534 | 2 | A596534-A | 1 | 1 | No | 8 | 7 | 7 | 1 | PHOTO | NO | 4/2/1997 | 55032 | 23:30 | NO | N | N | – | – |
| A596534 | 2 | A596534-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | NO | 4/2/1997 | 55032 | 23:30 | NO | N | N | – | – |
| A598345 | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| A604238 | 3 | A604238-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 8/24/1996 | 76274 | 300 | NO | Y | N | – | – |
| A604238 | 3 | A604238-B | 1 | 2 | Yes | 6 | 4 | 2 | 2 | PHOTO | NO | 8/27/1996 | 76263 | 2200 | NO | Y | N | – | – |
| A604238 | 3 | A604238-B | – | – | Yes | 6 | – | – | – | PHOTO | NO | 8/27/1996 | 76262 | 2200 | NO | Y | N | – | – |
| A604238 | 3 | – | – | – | – | – | – | – | – | – | – | 9/11/1996 | 76227 | 2345 | – | Y | N | – | – |
| A604238 | 3 | A604238-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/14/1996 | 76224 | – | NO | Y | N | – | – |
| A606220 | 1 | – | – | – | – | – | – | – | – | – | – | 08/24/1996 | 55263 | – | – | Y | N | – | – |
| A606220 | 1 | A606220-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 08/23/1996 | 55249-51 | 23:00 | N | N | N | – | – |
| A613162 | 4 | A613162-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 08/22/1996 | 55317 | 4:45 | N | Y | N | – | – |
| A613162 | 4 | A613162-A | – | – | – | – | – | – | – | LIVE | – | 08/22/1996 | 55317 | 4:45 | N | Y | N | – | – |
| A613162 | 4 | A613162-B | 3 | 1 | No | 7 | 6 | 6 | 3 | PHOTO | NO | 08/27/1996 | 55313 | 22:05 | N | Y | N | – | – |
| A613162 | 4 | A613162-B | – | – | – | – | – | – | – | PHOTO | – | 08/27/1996 | 55313 | 22:05 | N | Y | N | – | – |
| A613162 | 4 | A613162-B | – | – | – | – | – | – | – | PHOTO | – | 08/27/1996 | 55313 | 22:05 | N | N | N | – | – |
| A613162 | 4 | A613162-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 09/19/1997 | 55341 | 23:08 | N | Y | Y | 55313 | N |
| A613162 | 4 | A613162-D | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 09/19/1997 | 55345 | 18:38 | N | Y | Y | 55313 | N |
| A613162 | 4 | A613162-D | – | – | No | – | – | – | – | LIVE | YES | 09/19/1997 | 55345 | 18:38 | N | Y | Y | 55313 | N |
| A620358 | 1 | A620358-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 08/26/1996 | 55368-70 | 0:00 | N | Y | N | – | – |
| A620358 | 1 | A620358-A | – | – | No | – | – | – | – | LIVE | YES | 08/26/1996 | 55368-70 | 0:00 | N | Y | N | – | – |
| A623616 | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| A636514 | 2 | A636514-A | 4 | 1 | No | 6 | 5 | 5 | 4 | LIVE | YES | 08/31/1996 | 55442 | 23:30 | N | Y | N | – | – |
| A636514 | 2 | A636514-A | – | – | No | – | – | – | – | LIVE | YES | 08/31/1996 | 55442 | 23:30 | N | Y | N | – | – |
| A636514 | 2 | A636514-A | – | – | No | – | – | – | – | LIVE | – | 08/31/1996 | 55442 | 23:30 | N | N | N | – | – |
| A636514 | 2 | A636514-B | 1 | 2 | Yes | 7 | 5 | 2.5 | 2 | PHOTO | NO | 09/01/1996 | 55463 | 23:00 | N | N | N | – | – |
| A647945 | 2 | – | – | – | – | – | – | – | – | – | NO | 09/07/1996 | 76990 | – | – | N | N | – | – |
| A647945 | 2 | A647945-A | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 06/01/1997 | 55477 | – | N | N | Y | 55485 | UNK |
| A647945 | 2 | A647945-A | – | – | No | – | – | – | – | LIVE | – | 06/01/1997 | 55477 | – | N | N | N | – | – |
| A647945 | 2 | A647945-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 06/03/1997 | 55485 | – | N | N | N | – | – |
| A705569 | 3 | A705569-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 10/11/1996 | 55560 | – | NO | N | N | – | – |
| A705569 | 3 | – | – | – | – | – | – | – | – | – | NO | 11/12/1996 | 55527 | 22:30 | NO | Y | N | – | – |
| A705569 | 3 | A705569-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 11/12/1996 | 55527 | 22:30 | NO | N | Y | 55560 | UNK |
| A705569 | 3 | A705569-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/25/1997 | 55533 | 22:00 | NO | N | Y | 55560, 55527 | UNK |
| A732463 | NONE | | | | | 0 | | | | | | | | | | | | | |
| A736987 | 4 | A736987-A | 1 | 2 | Yes | 5 | 3 | 1.5 | 2 | LIVE | YES | 10/08/1996 | 77179 | 0:30 | NO | N | N | – | – |
| A736987 | 4 | A736987-B | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | NO | 10/09/1996 | 77178 | 22:00 | YES | N | N | – | – |
| A736987 | 4 | A736987-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 10/14/1996 | 77163 | – | NO | Y | N | – | – |
| A736987 | 4 | – | – | – | – | – | – | – | – | PHOTO | – | 10/14/1996 | 77163 | – | – | Y | N | – | – |
| A736987 | 4 | A736987-D | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 10/26/1996 | 77156 | 17:00 | NO | N | N | – | – |
| A736987 | 4 | – | – | – | – | – | – | – | – | – | NO | 10/26/1996 | 77156 | 1700 | – | Y | N | – | – |
| A742224 | NONE | | | | | 0 | | | | | | | | | | | | | |
| A744004 | NONE | | | | | 0 | | | | | | | | | | | | | |
| A766343 | 6 | A766343-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 10/23/1996 | 55808 | 19:00 | NO | N | N | – | – |
| A766343 | 6 | A766343-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 10/27/1996 | 55828 | 20:00 | NO | Y | N | – | – |
| A766343 | 6 | A766343-C | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 10/27/1996 | 55828 | 20:00 | NO | N | N | – | – |
| A766343 | 6 | A766343-D | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | YES | 10/27/1996 | 55828 | 20:00 | YES | N | N | – | – |
| A766343 | 6 | A766343-E | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 11/4/1996 | 55814 | 21:00 | NO | Y | N | – | – |
| A766343 | 6 | A766343-F | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 3/16/1999 | 55778 | 20:41 | NO | Y | Y | 55814 | UNK |
| A766343 | 6 | A766343-F | – | – | No | – | – | – | – | LIVE | YES | 3/16/1999 | 55778 | 20:41 | NO | Y | Y | 55828, 55798 | UNK |
| A771353 | 1 | – | – | – | – | – | – | – | – | PHOTO | NO | 10/28/1998 | 55912 | – | UNK | Y | N | – | – |
| A771353 | 1 | A771353-A | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 10/28/1998 | 55912 | 20:00 | NO | Y | N | – | – |
| A771353 | 1 | A771353-A | – | – | No | – | – | – | – | PHOTO | NO | 11/1/1998 | 55916 | UNK | NO | N | N | – | – |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A511604 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| A530564 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A530564 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A530564 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A567507 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A567507 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A567507 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A584620 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A584620 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A584620 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A584620 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A584620 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| A594174 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A594174 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A594174 | Unfamiliar | - | 3 | 8 | 3 | 9 | 2 | 0 | 3 | 0 | 4 | 9 | N | - | N | N |
| A594174 | Both | Witness A | | 8 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| A594174 | Unfamiliar | Witness A | 1 | 8 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | 2 | N | - | N | N |
| A594174 | Both | - | 1 | 8 | 3 | 3 | 2 | 0 | 0 | 0 | 1 | 3 | Y | Y | N | N |
| A594174 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A594174 | Unfamiliar | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A506534 | Unfamiliar | - | 1 | 8 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A506534 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A508345 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | - |
| A604238 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A604238 | Familiar Perp | Witness A | | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A604238 | Familiar Perp | Witness A | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A604238 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A604238 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A606220 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A606220 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A613162 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A613162 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A613162 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A613162 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A613162 | Unfamiliar | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A613162 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A613162 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A613162 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A620358 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A620358 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A623916 | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | N |
| A636514 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A636514 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A636514 | Unfamiliar | - | 2 | 6 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | Y | Y |
| A636514 | Unfamiliar | - | 1 | 7 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | Y |
| A847945 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | Y | N |
| A847945 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| A847945 | Unfamiliar | - | 3 | 5 | 1 | 3 | 0 | 0 | 3 | 0 | 0 | 3 | N | - | Y | N |
| A847945 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | Y | N |
| A705569 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| A705569 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A705569 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A705569 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A732483 | N/A | | | | | 0 | | | | | | 0 | | | Y | N |
| A736987 | Unfamiliar | - | 1 | 5 | 2 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| A736987 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| A736987 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A736987 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A736987 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A736987 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A742224 | N/A | | | | | 0 | | | | | | 0 | | | Y | N |
| A744094 | N/A | | | | | 0 | | | | | | 0 | | | Y | N |
| A766343 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A766343 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A766343 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A766343 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| A766343 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A766343 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A766343 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| A771353 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A771353 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A771353 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number of Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A785456 | 0 | - | - | - | - | - | - | - | - | - | - | 11/16/1996 | 55955 | - | - | Y | N | - | - |
| A785456 | 0 | - | - | - | - | - | - | - | - | - | - | 8/19/1998 | 55975 | 2:48 | - | Y | N | - | - |
| A800449 | 3 | A800449-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 11/5/1996 | 56004 | UNK | YES | Y | N | - | - |
| A800449 | 3 | A800449-A | - | - | No | - | - | - | - | PHOTO | NO | 11/5/1996 | 56004 | UNK | YES | Y | N | - | - |
| A800449 | 3 | A800449-B | 2 | 3 | Yes | 7 | 4 | 1.333333333 | 6 | LIVE | YES | 11/21/1996 | 56020, 56028 | UNK | NO | Y | Y | 56004 | UNK |
| A800449 | 3 | A800449-B | - | - | Yes | - | - | - | - | LIVE | YES | 11/21/1996 | 56020, 56028 | UNK | NO | Y | N | - | - |
| A800449 | 3 | A800449-B | - | - | Yes | - | - | - | - | LIVE | YES | 11/21/1996 | 56020, 56028 | UNK | NO | N | N | - | - |
| A800449 | 3 | A800449-B | - | - | Yes | - | - | - | - | LIVE | YES | 11/21/1996 | 56020, 56028 | UNK | NO | Y | Y | 56004 | UNK |
| A800449 | 3 | A800449-B | - | - | Yes | - | - | - | - | LIVE | YES | 11/21/1996 | 56020, 56028 | UNK | NO | N | N | - | - |
| A810975 | 1 | A810975-A | 2 | 1 | No | UNK | UNK | UNK | 2 | LIVE | YES | 12/19/1996 | 78072 | 17:00 | YES | Y | N | - | - |
| A810975 | 1 | A810975-A | - | - | No | - | - | - | - | LIVE | NO | 12/19/1996 | 78072 | 17:00 | YES | Y | N | - | - |
| A851735 | 4 | A851735-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 02/02/1997 | 78200 | 22:00 | YES | N | N | - | - |
| A851735 | 4 | A851735-B | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 3/24/1997 | 78207 | 15:30 | NO | N | N | - | - |
| A851735 | 4 | A851735-C | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 03/24/1997 | 78202 | 15:30 | NO | N | Y | 78184 | UNK |
| A851735 | 4 | A851735-D | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 03/25/1997 | 78184 | 22:00 | NO | N | N | - | - |
| A862374 | 1 | A862374-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 12/17/1996 | 56194 | 21:15 | NO | Y | Y | 56176 | UNK |
| A862918 | 2 | A862918-A | 2 | 2 | Yes | 7 | 5 | 2.5 | 4 | LIVE | YES | 12/01/1996 | 56216 | 11:00 | NO | N | N | - | - |
| A862918 | 2 | A862918-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 12/01/1996 | 56234 | 11:30 | NO | Y | N | - | - |
| A862918 | 2 | A862918-B | - | - | - | - | - | - | - | LIVE | YES | 12/01/1996 | 56234 | 11:30 | NO | Y | N | - | - |
| A863082 | 5 | A863082-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 11/30/1996 | 78553 | 21:00 | YES | N | N | - | - |
| A863082 | 5 | A863082-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 12/6/1996 | 78551 | 23:00 | NO | N | N | - | - |
| A863082 | 5 | A863082-C | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 12/6/1996 | 78551 | 23:00 | NO | Y | N | - | - |
| A863082 | 5 | - | - | - | - | - | - | - | - | PHOTO | - | 12/6/1996 | 78552 | 23:00 | - | Y | N | - | - |
| A863082 | 5 | A863082-D | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | NO | 6/19/2001 | 78463 | 15:25 | YES | N | Y | 78551 | UNK |
| A863082 | 5 | A863082-E | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | NO | 6/19/2001 | 78464 | 15:25 | YES | N | N | - | - |
| A877441 | NONE | | | | | | | | | | | | | | | | | | |
| A892485 | NONE | | | | 0 | | | | | | | | | | | | | | |
| A905179 | 1 | - | - | - | - | - | - | - | - | - | - | 12/20/1996 | 78776 | - | - | N | N | - | - |
| A905179 | 1 | A905179-A | 4 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/21/1996 | 78768 | 20:00 | NO | N | N | - | - |
| A905179 | 1 | A905179-A | - | 1 | No | - | - | - | 1 | LIVE | YES | 12/21/1996 | 78768 | 20:00 | NO | Y | N | - | - |
| A905179 | 1 | A905179-A | - | 1 | No | - | - | - | 1 | LIVE | YES | 12/21/1996 | 78768 | 20:00 | NO | Y | Y | 78766 | N |
| A909675 | 2 | A909675-A | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 7/21/1997 | 78814 | 0:00 | YES | N | Y | 78814 | N |
| A909675 | 2 | A909675-A | - | - | - | - | - | - | - | PHOTO | NO | 7/21/1997 | 78814 | 0:00 | YES | N | N | - | - |
| A909675 | 2 | A909675-B | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 7/24/1997 | 78806 | 0:30 | NO | N | Y | 78814 | UNK |
| A909675 | 2 | A909675-B | - | - | - | - | - | - | - | LIVE | YES | 7/24/1997 | 78806 | 0:30 | NO | N | Y | 78814 | UNK |
| A909675 | 2 | A909675-B | - | - | - | - | - | - | - | LIVE | YES | 7/24/1997 | 78806 | 0:30 | NO | N | N | - | - |
| A921689 | 4 | A921689-A | 7 | 1 | No | 6 | 5 | 5 | 7 | PHOTO | NO | 12/28/1996 | 78935 | 19:15 | NO | N | N | - | - |
| A921689 | 4 | A921689-A | - | - | - | - | - | - | - | PHOTO | NO | 12/28/1996 | 78935 | 19:15 | NO | Y | N | - | - |
| A921689 | 4 | A921689-B | 8 | UNK | UNK | 5 | UNK | UNK | UNK | LIVE | YES | 12/28/1996 | 78936 | 1:30 | NO | N | N | - | - |
| A921689 | 4 | A921689-C | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 1/2/1997 | 78928 | UNK | NO | N | N | - | - |
| A921689 | 4 | A921689-D | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 1/17/1997 | 78903 | 2:00 | NO | N | Y | 78927 | N |
| A921689 | 4 | A921689-D | - | - | - | - | - | - | - | LIVE | YES | 1/17/1997 | 78903 | 2:00 | NO | N | Y | 78935 | N |
| A921689 | 4 | A921689-D | - | - | - | - | - | - | - | LIVE | YES | 1/17/1997 | 78903 | 2:00 | NO | Y | Y | 78935 | N |
| A929037 | - | | | | | | | | | | | | | | | | | | |
| A993525 | 1 | A993525-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 12/5/1996 | 79340 | 21:00 | NO | N | N | - | - |
| A993525 | 1 | - | - | - | - | - | - | - | - | - | - | 2/27/2004 | 79312 | 12:09 | - | Y | N | - | - |
| B000366 | - | | | | | | | | | | | | | | | | | | |
| B005155 | 0 | - | - | - | - | - | - | - | - | - | - | 1/3/1997 | 56740; 79516 | UNK | - | N | N | - | - |
| B005155 | 0 | - | - | - | - | - | - | - | - | - | - | 1/3/1997 | 56740; 79516 | UNK | - | Y | N | - | - |
| B020857 | 1 | B020857-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 2/1/1997 | 56786 | 2:00 | N | N | N | - | - |
| B023979 | 4 | B023979-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | undated | 56879 | - | NO | N | N | - | - |
| B023979 | 4 | B023979-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 2/14/1998 | 56881 | 15:45 | NO | N | Y | 56887 | N |
| B023979 | 4 | B023979-C | 1 | 2 | Yes | 8 | 4 | 2 | 2 | PHOTO | NO | 2/15/1998 | 56889 | 2:29 | NO | N | N | - | - |
| B023979 | 4 | B023979-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 7/5/1998 | 56894 | 19:10 | NO | N | Y | 56879 | UNK |
| B025114 | - | | | | | | | | | | | | | | | | | | |
| B026500 | - | | | | | | | | | | | | | | | | | | |
| B040482 | 6 | B040482-A | 1 | 2 | Yes | UNK | UNK | UNK | 2 | PHOTO | NO | 1/22/1997 | 81742 | 15:45 | YES | N | N | - | - |
| B040482 | 6 | B040482-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 1/24/1997 | 81754 | - | YES | N | N | - | - |
| B040482 | 6 | B040482-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 1/24/1997 | 81754 | - | YES | N | Y | 81754 | Y |
| B040482 | 6 | B040482-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 1/29/1997 | 81639 | 22:45 | YES | Y | N | - | - |
| B040482 | 6 | B040482-E | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 9/17/1997 | 81636 | 19:50 | NO | Y | Y | 81639 | UNK |
| B040482 | 6 | B040482-F | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 12/18/1997 | 81632 | 20:00 | NO | N | N | - | - |
| B050491 | 4 | B050491-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/12/1997 | 81823 | 230 | NO | N | N | - | - |
| B050491 | 4 | B050491-B | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 2/12/1997 | 81822 | 400 | YES | N | N | - | - |
| B050491 | 4 | B050491-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/14/1997 | 81810 | 300 | NO | N | Y | 81822 | UNK |
| B050491 | 4 | - | - | - | - | - | - | - | - | - | - | 5/10/1997 | 81784 | - | - | N | N | - | - |
| B050491 | 4 | B050491-D | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 5/10/1997 | 81779 | - | YES | N | N | - | - |
| B069033 | - | | | | | | | | | | | | | | | | | | |
| B071768 | 4 | B071768-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 2/10/1997 | 82286 | - | N | N | N | - | - |
| B071768 | 4 | B071768-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 2/24/1997 | 82445 | - | YES | N | N | - | - |
| B071768 | 4 | B071768-C | 1 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | UNK | 82942 | - | N | N | N | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A785456 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A785456 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A809449 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A809449 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A809449 | Both | Witness A | | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A809449 | Familiar Perp | Witness A | | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A809449 | Unfamiliar | Witness A | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A809449 | Both | Witness B | | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A809449 | Unfamiliar | Witness B | 1 | 7 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| A810975 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A810975 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A851735 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| A851735 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| A851735 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| A851735 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| A862374 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| A862918 | Unfamiliar | - | 2 | 7 | 2 | 4 | 2 | 0 | 2 | 0 | 0 | 4 | N | - | N | N |
| A862918 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A862918 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A863082 | Unfamiliar | - | 2 | UNK | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | Y |
| A863082 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A863082 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A863082 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| A863082 | Previous ID | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A863082 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| A877441 | N/A | | | | 0 | | | | | | | 0 | | | N | - |
| A862485 | N/A | | | | 0 | | | | | | | 0 | | | N | - |
| A905179 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| A905179 | Unfamiliar | - | 2 | 5 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| A905179 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A905179 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A909675 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | Y |
| A909675 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A909675 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | Y |
| A909675 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A909675 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| A921689 | Unfamiliar | - | 6 | 6 | 1 | 6 | 4 | 1 | 1 | 0 | 0 | 6 | N | - | N | N |
| A921689 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A921689 | Unfamiliar | - | 6 | 5 | UNK | 6 | 0 | 0 | 6 | 0 | 0 | 6 | N | - | N | N |
| A921689 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A921689 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A921689 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| A921689 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A929037 | | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N |
| A993525 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| A993525 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B000366 | | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N |
| B005155 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B005155 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B020857 | Unfamiliar | - | 2 | 5 | 1 | 2 | 0 | 1 | 1 | 0 | 0 | 2 | N | - | N | N |
| B023979 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B023979 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B023979 | Unfamiliar | - | 1 | 6 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| B023979 | Previous ID | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B025114 | | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N |
| B026509 | | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N |
| B040482 | Unfamiliar | - | 1 | UNK | 2 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| B040482 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| B040482 | Previous ID | - | 1 | UNK | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| B040482 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B040482 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B040482 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B050491 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B050491 | Unfamiliar | - | 1 | UNK | UNK | UNK | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| B050491 | Previous ID | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B050491 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B050491 | Unfamiliar | - | 1 | UNK | UNK | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B069033 | | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N |
| B071768 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| B071768 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B071768 | Unfamiliar | - | 2 | 6 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | Y |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number of Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence witness saw suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B071768 | 4 | - | - | - | - | - | - | - | - | - | - | 9/15/00 - 10/27/00 | 12, 82213-5; 82... | UNK | - | N | N | - | - |
| B071768 | 4 | - | - | - | - | - | - | - | - | - | - | 9/15/00 - 10/27/00 | 12, 82213-5; 82... | UNK | - | Y | N | - | - |
| B071768 | 4 | B071768-D | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 01/20/2001 | 83323 | - | YES | N | N | - | - |
| B078794 | 1 | B078794-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 2/7/1997 | 83837 | 9:00 | NO | N | N | - | - |
| B078794 | 1 | - | - | - | - | - | - | - | - | - | - | 2/7/1997 | 83831 | | | N | N | - | - |
| B088508 | 2 | B088508-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 2/11/1997 | 57299 | UNK | YES | Y | N | - | - |
| B088508 | 2 | B088508-A | | | No | - | - | - | - | - | - | 2/11/1997 | 57299 | UNK | | N | N | - | - |
| B088508 | 2 | B088508-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 3/11/1997 | 84006 | 22:30 | NO | Y | Y | 57299 | UNK |
| B088508 | 2 | B088508-B | | | No | - | - | - | - | LIVE | YES | 3/11/1997 | 84006 | 22:30 | NO | Y | Y | 57299 | UNK |
| B118652 | 1 | B118652-A | 4 | 2 | Yes | 5 | 3 | 1.5 | 8 | LIVE | YES | 2/25/1997 | 84198 | 19:00 | NO | N | N | - | - |
| B118652 | 1 | - | - | - | - | - | - | - | - | - | - | 2/28/1997 | 84177 | 13:00 | - | N | N | - | - |
| B119877 | 2 | - | - | - | - | - | - | - | - | - | - | 2/1/1998 | 84380 | 22:52 | - | Y | N | - | - |
| B119877 | 2 | - | - | - | - | - | - | - | - | - | - | 2/1/1998 | 84380 | 22:52 | - | Y | N | - | - |
| B119877 | 2 | B119877-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/13/1998 | 84373 | 23:00 | NO | Y | Y | 84375 | UNK |
| B119877 | 2 | B119877-B | 1 | 2 | Yes | 6 | 4 | 2 | 2 | PHOTO | NO | 2/14/1998 | 84378 | 17:09 | NO | Y | N | - | - |
| B119877 | 2 | B119877-B | | | | - | - | - | - | PHOTO | NO | 2/14/1998 | 84378 | 17:09 | NO | Y | N | - | - |
| B126133 | 4 | B126133-A | 1 | 1 | No | 7 | 6 | 6 | 1 | PHOTO | NO | 3/8/1997 | 57438 | - | NO | Y | N | - | - |
| B126133 | 4 | B126133-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/16/1997 | 57439 | 19:40 | NO | N | Y | 57441 | N |
| B126133 | 4 | B126133-C | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 10/6/1997 | 57441 | 18:00 | NO | N | N | - | - |
| B126133 | 4 | B126133-D | 2 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 3/24/2018 | 84676 | 9:45 | YES | N | N | - | - |
| B154675 | 0 | - | - | - | - | - | - | - | - | - | - | 5/25/1997 | 57472 | 23:00 | - | Y | N | - | - |
| B154675 | 0 | - | - | - | - | - | - | - | - | - | - | 5/25/1997 | 57473 | 23:00 | - | Y | N | - | - |
| B155275 | 1 | B155275-A | UNK | 1 | UNK | UNK | UNK | UNK | UNK | LIVE | NO | 3/16/1997 | 84678 | - | YES | N | N | - | - |
| B155275 | 1 | - | - | - | - | - | - | - | - | - | - | 3/23/1997 | 85214 | - | - | Y | N | - | - |
| B155275 | 1 | - | - | - | - | - | - | - | - | - | - | 3/26/1997 | 85208 | - | - | N | N | - | - |
| B155275 | 1 | - | - | - | - | - | - | - | - | - | - | 9/15/2000 | 85769 | 8:30 | - | Y | N | - | - |
| B156940 | 1 | B156940-A | 5 | 6 | Yes | 6 | 0 | 0 | 30 | LIVE | YES | 3/15/1997 | 57692 | 23:45 | NO | N | N | - | - |
| B156940 | 1 | B156940-A | | | Yes | - | - | - | - | LIVE | | | | | NO | N | Y | 86017 | N |
| B156940 | 1 | B156940-A | | | Yes | - | - | - | - | LIVE | | | | | NO | N | Y | 86017 | N |
| B156940 | 1 | B156940-A | | | Yes | - | - | - | - | LIVE | | | | | NO | N | N | - | - |
| B181256 | 5 | B181256-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/27/1997 | 86142 | 8:00 | NO | N | Y | 86179 | N |
| B181256 | 5 | - | - | - | - | - | - | - | - | - | - | 3/29/1997 | 86371 | 9:00 | - | N | N | - | - |
| B181256 | 5 | - | - | - | - | - | - | - | - | - | - | 3/29/1997 | 86372 | 9:00 | - | Y | N | - | - |
| B181256 | 5 | - | - | - | - | - | - | - | - | - | - | 3/29/1997 | 86372 | 9:00 | - | N | N | - | - |
| B181256 | 5 | B181256-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/30/1997 | 86193 | 22:15 | NO | N | N | - | - |
| B181256 | 5 | B181256-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/31/1997 | 86191 | 0:50 | NO | N | N | - | - |
| B181256 | 5 | B181256-D | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 4/5/1997 | 86157 | 3:00 | YES | N | N | - | - |
| B181256 | 5 | - | - | - | - | - | - | - | - | - | - | 4/6/1997 | 86221 | 5:00 | - | Y | N | - | - |
| B181256 | 5 | B181256-E | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 4/8/1997 | 86146 | 23:00 | NO | N | N | - | - |
| B181640 | 2 | B181640-A | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 3/28/1997 | 86561 | - | NO | N | N | - | - |
| B181640 | 2 | B181640-B | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 12/24/1997 | 57766 | 17:37 | NO | N | N | - | - |
| B181640 | 2 | - | - | - | - | - | - | - | - | - | - | 12/30/1997 | 57776 | 15:01 | - | Y | N | - | - |
| B203667 | 7 | - | - | - | - | - | - | - | - | - | - | 4/11/1997 | 57844; 57848 | 23:00 | - | Y | N | - | - |
| B203667 | 7 | - | - | - | - | - | - | - | - | - | - | 4/14/1997 | 57854 | 23:00 | - | N | N | - | - |
| B203667 | 7 | B203667-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 4/11/1997 | 57862 | 20:30 | YES | N | N | - | - |
| B203667 | 7 | B203667-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 4/11/1997 | 57862 | 20:30 | YES | N | N | - | - |
| B203667 | 7 | B203667-C | 3 | 2 | Yes | 8 | 6 | 3 | 6 | LIVE | YES | 4/12/1997 | 57856 | 2:30 | NO | N | N | - | - |
| B203667 | 7 | B203667-D | 9 | 4 | Yes | UNK | UNK | UNK | 36 | PHOTO | NO | 4/12/1997 | 57874 | 5:00 | YES | N | N | - | - |
| B203667 | 7 | - | - | - | - | - | - | - | - | - | - | 4/12/1997 | 57878 | 15:30 | - | Y | N | - | - |
| B203667 | 7 | B203667-E | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 4/12/1997 | 57880 | 15:30 | YES | Y | N | - | - |
| B203667 | 7 | B203667-F | 4 | 2 | Yes | 7 | 5 | 2.5 | 8 | LIVE | YES | 4/12/1997 | 57890 | 17:30 | NO | N | N | - | - |
| B203667 | 7 | B203667-F | | | Yes | - | - | - | - | LIVE | YES | 4/12/1997 | 57890 | 17:30 | NO | Y | N | - | - |
| B203667 | 7 | B203667-G | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 4/13/1997 | 86930 | - | - | Y | N | - | - |
| B212756 | NONE | | | | | | | | 0 | | | | | | | | | | |
| B217304 | 4 | B217304-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 5/13/1997 | 57985 | 23:30 | NO | Y | N | - | - |
| B217304 | 4 | B217304-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 5/16/1997 | 57979 | 2:00 | NO | Y | N | - | - |
| B217304 | 4 | B217304-C | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 9/9/1997 | 57930 | 2:00 | NO | N | N | - | - |
| B217304 | 4 | B217304-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 11/9/2000 | 87003 | 9:15 | NO | N | N | - | - |
| B237365 | 4 | B237365-A | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 4/21/1997 | 58008 | UNK | NO | Y | N | - | - |
| B237365 | 4 | B237365-B | 1 | UNK | UNK | UNK | UNK | UNK | UNK | LIVE | NO | 5/1/1997 | 58022 | UNK | YES | N | N | - | - |
| B237365 | 4 | B237365-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/26/1998 | 58044 | 20:30 | NO | Y | Y | 58008 | N |
| B237365 | 4 | B237365-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/26/1998 | 58048 | 20:58 | NO | N | N | - | - |
| B237365 | 4 | - | - | - | - | - | - | - | - | - | - | 58008; 87959-60 | | | | Y | N | - | - |
| B237812 | 4 | B237812-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 5/1/1997 | 58079 | 23:30 | NO | Y | N | - | - |
| B237812 | 4 | B237812-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 5/1/1997 | 58079 | 23:30 | NO | Y | N | - | - |
| B237812 | 4 | B237812-C | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 5/1/1997 | 58067 | 21:00 | NO | N | Y | 58079 | UNK |
| B237812 | 4 | B237812-D | 2 | 1 | No | 6 | 5 | 6 | 2 | LIVE | YES | 5/1/1997 | 58067 | 3:00 | NO | N | Y | 58079 | UNK |
| B237812 | 4 | B237812-D | | | No | - | - | - | - | LIVE | YES | 5/1/1997 | 58067 | 3:00 | NO | N | N | - | - |

Steblay Data 10-19-2022

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B071768 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | Y | N |
| B071768 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| B071768 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| B078794 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B078794 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B088508 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B088508 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B088508 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B088508 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B116652 | Unfamiliar | - | 4 | 5 | 2 | 8 | 8 | 0 | 0 | 0 | 0 | 8 | N | - | N | N |
| B116652 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B119877 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B119877 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B119877 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B119877 | Familiar Perp | Witness A | - | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B119877 | Familiar Perp | Witness A | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B126133 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B126133 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B126133 | Previous ID | - | 1 | 6 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| B126133 | Unfamiliar | - | 2 | UNK | UNK | #VALUE! | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| B154675 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| B154675 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| B155275 | Unfamiliar | - | UNK | UNK | 1 | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B155275 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B155275 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| B155275 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B156940 | Unfamiliar | - | 4 | 6 | 6 | 24 | 0 | 0 | 24 | 0 | 0 | 24 | N | - | N | N |
| B156940 | Previous ID | Witness A | - | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| B156940 | Unfamiliar | Witness A | - | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | Y | Y | N | N |
| B156940 | Unfamiliar | Witness A | 1 | 6 | 4 | 4 | 0 | 0 | 4 | 0 | 0 | 4 | N | - | N | N |
| B181256 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| B181256 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B181256 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B181256 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B181256 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B181256 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B181256 | Unfamiliar | - | 2 | UNK | 1 | 2 | 0 | 1 | 1 | 0 | 0 | 2 | N | - | N | N |
| B181256 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B181640 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B181640 | Unfamiliar | - | 2 | 5 | 1 | 2 | 0 | 0 | 1 | 0 | 1 | 2 | N | - | N | N |
| B181640 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B181640 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B203667 | Familiar Perp | - | - | - | - | #VALUE! | - | - | - | - | - | - | Y | Y | N | N |
| B203667 | Unfamiliar | - | - | - | - | #VALUE! | - | - | - | - | - | - | Y | Y | N | N |
| B203667 | Unfamiliar | - | 2 | UNK | 1 | 2 | 0 | 2 | 0 | 0 | 0 | 2 | N | - | N | N |
| B203667 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B203667 | Unfamiliar | - | 3 | 6 | 2 | 6 | 1 | 0 | 4 | 1 | 0 | 6 | N | - | N | N |
| B203667 | Unfamiliar | - | 9 | UNK | 4 | 36 | 4 | 0 | 0 | 0 | 32 | 36 | N | - | N | N |
| B203667 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B203667 | Familiar Perp | - | 1 | UNK | UNK | #VALUE! | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| B203667 | Unfamiliar | - | 3 | 7 | 2 | 6 | 3 | 0 | 2 | 2 | 0 | 7 | N | - | N | N |
| B203667 | Familiar Perp | Witness A | - | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B203667 | Familiar Perp | Witness A | 1 | 7 | 1 | 0 | 1 | 0 | 0 | 1 | 0 | 2 | N | - | N | N |
| B203667 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| B212756 | N/A | - | - | - | - | 0 | - | - | - | - | - | 0 | N | - | N | N |
| B217304 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B217304 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B217304 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B217304 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B237365 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B237365 | Unfamiliar | - | 1 | UNK | UNK | UNK | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B237365 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B237365 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| B237365 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B237812 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B237812 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| B237812 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B237812 | Previous ID | - | 1 | 6 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B237812 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Bates Stamp on Report | Time of Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B238995 | 4 | B238995-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 5/5/1997 | 58171 | 21:00 | Y | N | N | - | - |
| B238995 | 4 | B238995-B | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 5/7/1997 | 58165; 88138 | 23:30 | N | N | N | - | - |
| B238995 | 4 | B238995-B | - | - | - | - | - | - | - | LIVE | YES | 5/7/1997 | 58165; 88138 | 23:30 | N | N | Y | - | - |
| B238995 | 4 | B238995-B | - | - | - | - | - | - | - | LIVE | YES | 5/7/1997 | 58165; 88138 | 23:30 | N | N | Y | 58176 | N |
| B238995 | 4 | B238995-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 5/7/1997 | 58168; 88141 | 20:30 | N | N | Y | 58171 | N |
| B238995 | 4 | B238995-D | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 5/14/1997 | 58190; 88136 | 16:30 | N | N | Y | 58176 | N |
| B244735 | 0 | - | - | - | - | - | - | - | - | - | - | 4/26/1997 | 5822;2;88256 | - | - | Y | N | - | - |
| B253787 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| B254858 | 2 | - | - | - | - | - | - | - | - | - | - | 4/26/1997 | 58447 | 3:30 | - | Y | N | - | - |
| B254858 | 2 | B254858-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 5/5/1997 | 88381 | 21:00 | NO | N | N | - | - |
| B254858 | 2 | B254858-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 5/9/1997 | 88382 | - | NO | Y | Y | 88381 | UNK |
| B254858 | 2 | B254858-B | - | - | - | - | - | - | - | LIVE | YES | 5/9/1997 | 88382 | - | NO | N | Y | 88381 | UNK |
| B280181 | 8 | B280181-A | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | NO | 5/9/1997 | 88877 | - | YES | Y | N | - | - |
| B280181 | 8 | B280181-B | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | NO | 5/9/1997 | 88877 | - | YES | N | N | - | - |
| B280181 | 8 | - | - | - | - | - | - | - | - | - | - | 5/10/1997 | 88857 | - | - | N | N | - | - |
| B280181 | 8 | B280181-C | 1 | 2 | Yes | UNK | UNK | UNK | 2 | PHOTO | NO | 5/13/1997 | 88855 | 23:30 | YES | Y | N | - | - |
| B280181 | 8 | B280181-C | - | - | Yes | - | - | - | - | PHOTO | NO | 5/13/1997 | 88855 | 23:30 | YES | Y | N | - | - |
| B280181 | 8 | B280181-D | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 5/29/1997 | 88850 | - | YES | Y | N | - | - |
| B280181 | 8 | B280181-E | 1 | 2 | Yes | 5 | 3 | 1.5 | 2 | LIVE | YES | 5/29/1997 | 88851 | 21:00 | NO | N | N | - | - |
| B280181 | 8 | B280181-F | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 5/30/1997 | 88833 | 23:30 | NO | N | N | - | - |
| B280181 | 8 | B280181-G | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 6/4/1997 | 88846 | 17:00 | NO | N | N | - | - |
| B280181 | 8 | B280181-H | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 6/5/1997 | 88835 | 4:00 | NO | N | Y | 88835 | UNK |
| B287974 | 3 | - | - | - | - | - | - | - | - | - | - | 5/30/1997 | 89014 | 15:00 | - | Y | N | - | - |
| B287974 | 3 | B287974-A | 1 | 2 | Yes | UNK | UNK | UNK | 2 | PHOTO | NO | 12/4/1997 | 88987 | 556 | YES | N | N | - | - |
| B287974 | 3 | B287974-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 7/14/1998 | 88979 | 1534 | YES | N | N | - | - |
| B287974 | 3 | B287974-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 7/14/1998 | 88979 | 1534 | YES | N | N | - | - |
| B308330 | 2 | B308330-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 5/27/1997 | 58486 | 10:30 | NO | N | Y | 58506 | UNK |
| B308330 | 2 | B308330-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/28/1997 | 58548 | 2:55 | NO | N | N | - | - |
| B310120 | 2 | B310120-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 11/13/1997 | 58598; 89702 | 500 | YES | Y | N | - | - |
| B310120 | 2 | - | - | - | - | - | - | - | - | - | - | 05/23/2002 | 89644 | 1442 | - | Y | N | - | - |
| B310120 | 2 | B310120-B | 3 | 1 | No | UNK | UNK | UNK | 3 | PHOTO | NO | 05/23/2002 | 89645 | 1442 | YES | Y | N | - | - |
| B310120 | 2 | B310120-B | - | - | No | - | - | - | - | PHOTO | NO | 05/23/2002 | 89645 | 1442 | YES | Y | N | - | - |
| B310120 | 2 | B310120-B | - | - | No | - | - | - | - | PHOTO | NO | 05/23/2002 | 89645 | 1442 | YES | N | N | - | - |
| B320673 | 1 | B320673-A | 4 | 1 | No | 4 | 3 | 3 | 4 | LIVE | YES | 05/28/97 | 58626 | 23:30 | NO | Y | N | - | - |
| B320673 | 1 | B320673-A | - | - | No | - | - | - | - | LIVE | YES | 05/28/97 | 58626 | 23:30 | NO | Y | N | - | - |
| B320673 | 1 | B320673-A | - | - | - | - | - | - | - | LIVE | YES | 05/28/97 | 58626 | 23:30 | NO | N | N | - | - |
| B321281 | 2 | B321281-A | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 9/3/1997 | 58658 | 23:00 | NO | N | N | - | - |
| B321281 | 2 | B321281-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 9/14/1997 | 58668 | 17:40 | NO | N | Y | 58658 | N |
| B321281 | 2 | B321281-B | - | - | No | - | - | - | - | LIVE | YES | 9/14/1997 | 58668 | 17:40 | NO | N | Y | 58658 | N |
| B361803 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| B362072 | 3 | B362072-A | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 6/16/1997 | 58850 | 20:00 | NO | N | N | - | - |
| B362072 | 3 | B362072-B | 2 | 3 | Yes | 6 | 3 | 1 | 6 | LIVE | YES | 6/16/1997 | 58854 | 20:00 | NO | N | N | - | - |
| B362072 | 3 | B362072-C | 2 | 2 | Yes | 6 | 4 | 2 | 4 | LIVE | YES | 6/16/1997 | 58858 | 20:00 | NO | N | N | - | - |
| B368759 | - | - | - | - | - | - | - | - | - | - | - | 6/15/97 and 6/20/97 | 58811; 58820 | UNK | - | Y | N | - | - |
| B394733 | 3 | B394733-A | 5 | 2 | Yes | 12 | 10 | 5 | 10 | PHOTO | NO | 7/1/1997 | 59082; 59034 | - | NO | N | N | - | - |
| B394733 | 3 | B394733-B | 5 | 1 | No | 6 | 5 | 5 | 5 | LIVE | YES | 7/1/1997 | 59054 | 2300 | NO | N | Y | 59082 | N |
| B394733 | 3 | B394733-B | - | - | No | - | - | - | - | LIVE | YES | 7/1/1997 | 59054 | 2300 | NO | N | Y | 59082 | N |
| B394733 | 3 | B394733-B | - | - | No | - | - | - | - | LIVE | YES | 7/1/1997 | 59054 | 2300 | NO | N | Y | 59082 | N |
| B394733 | 3 | B394733-B | - | - | No | - | - | - | - | LIVE | YES | 7/1/1997 | 59054 | 2300 | NO | N | Y | 59034 | N |
| B394733 | 3 | B394733-B | - | - | No | - | - | - | - | LIVE | YES | 7/1/1997 | 59054 | 2300 | NO | N | Y | 59034 | N |
| B394733 | 3 | B394733-C | 5 | 1 | No | 6 | 5 | 5 | 5 | LIVE | YES | 7/1/1997 | 59070 | 2300 | NO | N | Y | 59082 | N |
| B394733 | 3 | B394733-C | - | - | No | - | - | - | - | LIVE | YES | 7/1/1997 | 59070 | 2300 | NO | N | Y | 59082 | N |
| B394733 | 3 | B394733-C | - | - | No | - | - | - | - | LIVE | YES | 7/1/1997 | 59070 | 2300 | NO | N | Y | 59082 | N |
| B394733 | 3 | B394733-C | - | - | No | - | - | - | - | LIVE | YES | 7/1/1997 | 59070 | 2300 | NO | N | Y | 59034 | N |
| B394733 | 3 | B394733-C | - | - | No | - | - | - | - | LIVE | YES | 7/1/1997 | 59070 | 2300 | NO | N | Y | 59034 | N |
| B402211 | 1 | B402211-A | 7 | 2 | Yes | 7 | 5 | 2.5 | 14 | LIVE | YES | 7/1/1997 | 59100 | 21:20 | NO | N | N | - | - |
| B402211 | 1 | - | - | - | - | - | - | - | - | - | - | 8/1/1997 | 59123 | - | - | N | N | - | - |
| B404614 | 5 | B404614-A | 2 | 2 | Yes | 9 | 7 | 3.5 | 4 | PHOTO | NO | 7/9/1997 | 59153 | 23:30 | NO | Y | N | - | - |
| B404614 | 5 | B404614-A | - | - | Yes | - | - | - | - | PHOTO | NO | 7/9/1997 | 59153 | 23:30 | NO | Y | N | - | - |
| B404614 | 5 | B404614-A | - | - | Yes | - | - | - | - | PHOTO | NO | 7/9/1997 | 59153 | 23:30 | NO | Y | N | - | - |
| B404614 | 5 | B404614-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/12/1997 | 59159 | 2100 | NO | Y | Y | 59153 | N |
| B404614 | 5 | B404614-A | - | - | No | - | - | - | - | LIVE | YES | 7/12/1997 | 59153 | 2100 | NO | Y | Y | 59153 | N |
| B404614 | 5 | B404614-D | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 7/23/1997 | 59197 | 18:45 | NO | Y | Y | 59153 | N |
| B413483 | 1 | B413483-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 7/9/1997 | 59281 | UNK | NO | Y | N | - | - |
| B420172 | 0 | - | - | - | - | - | - | - | - | - | - | 7/12/1997 | 59306 | 16:00 | - | N | N | - | - |
| B420172 | 0 | - | - | - | - | - | - | - | - | - | - | 7/12/1997 | 59336 | 16:00 | - | N | N | - | - |
| B422097 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| B429383 | 1 | B429383-A | 3 | 1 | No | UNK | UNK | UNK | 3 | PHOTO | NO | 7/19/1997 | 59447 | 20:30 | YES | N | N | - | - |
| B429383 | 1 | B429383-A | - | - | No | - | - | - | - | PHOTO | - | 7/19/1997 | 59451 | 20:30 | YES | N | N | - | - |
| B429383 | 1 | B429383-A | - | - | - | - | - | - | - | PHOTO | - | 7/19/1997 | 59453 | 20:30 | YES | N | N | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B238995 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | | N | N |
| B238995 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B238995 | Familiar Perp | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B238995 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| B238995 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B238995 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| B244735 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| B253787 | | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N |
| B254858 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B254858 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B254858 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| B254858 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B280181 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B280181 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B280181 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| B280181 | Familiar Perp | Witness A | | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B280181 | Familiar Perp | Witness A | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B280181 | Familiar Perp | - | 1 | UNK | UNK | #VALUE! | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B280181 | Unfamiliar | - | 1 | 5 | 2 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| B280181 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| B280181 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B280181 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B287974 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| B287974 | Unfamiliar | - | 1 | UNK | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | Y | N |
| B287974 | Unfamiliar | - | 1 | UNK | UNK | #VALUE! | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| B287974 | Unfamiliar | - | 1 | UNK | UNK | #VALUE! | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| B308339 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B308339 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B310120 | Familiar Perp | | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B310120 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B310120 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B310120 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B310120 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B320673 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B320673 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B320673 | Unfamiliar | - | 2 | 4 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| B321281 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| B321281 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B321281 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B361803 | | - | - | - | - | - | - | - | - | - | - | - | - | - | Y | N |
| B362072 | Unfamiliar | - | 2 | 6 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| B362072 | Unfamiliar | - | 2 | 6 | 3 | 8 | 1 | 0 | 5 | 0 | 0 | 6 | N | - | N | N |
| B362072 | Unfamiliar | - | 2 | 6 | 2 | 4 | 0 | 0 | 4 | 0 | 0 | 4 | N | - | N | N |
| B368759 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B394733 | Unfamiliar | - | 5 | 12 | 2 | 10 | 9 | 0 | 1 | 0 | 0 | 10 | N | - | Y | Y |
| B394733 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B394733 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B394733 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B394733 | Previous ID | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| B394733 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B394733 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B394733 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B394733 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B394733 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B402211 | Unfamiliar | - | 7 | 7 | 2 | 14 | 11 | 0 | 3 | 0 | 0 | 14 | N | - | N | N |
| B402211 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B404614 | Familiar Perp | Witness A | | 9 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B404614 | Familiar Perp | Witness A | 1 | 9 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B404614 | Familiar Perp | Witness B | | 9 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B404614 | Familiar Perp | Witness B | 1 | 9 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B404614 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B404614 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B404614 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B413483 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B420172 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | Y | N |
| B420172 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | Y | N |
| B422097 | | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N |
| B429383 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B429383 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B429383 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |

Area Five Homicide Files, 1989-1996    Steblay Data 10-19-2022

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number of Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B429383 | 1 | - | - | - | - | - | - | - | - | - | - | 10/8/1997 | 59463 | 0:12 | - | Y | N | - | - |
| B439808 | 3 | B439808-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 7/23/1997 | 93771 | UNK | YES | N | N | - | - |
| B439808 | 3 | B439808-B | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 7/23/1997 | 93797 | 23:00 | NO | N | N | - | - |
| B439808 | 3 | B439808-C | 3 | 4 | Yes | 8 | 4 | 1 | 12 | LIVE | YES | 7/23/1997 | 93800 | 23:45 | NO | N | N | - | - |
| B439808 | 3 | B439808-C | - | - | Yes | - | - | - | - | LIVE | YES | 7/23/1997 | 93800 | 23:45 | NO | N | N | - | - |
| B439808 | 3 | B439808-C | - | - | Yes | - | - | - | - | LIVE | YES | 7/23/1997 | 93800 | 23:45 | NO | N | Y | 93771 | N |
| B439808 | 3 | B439808-C | - | - | Yes | - | - | - | - | LIVE | YES | 7/23/1997 | 93800 | 23:45 | NO | N | N | - | - |
| B439808 | 3 | B439808-C | - | - | Yes | - | - | - | - | LIVE | YES | 7/23/1997 | 93800 | 23:45 | NO | N | Y | 93771 | - |
| B442532 | 5 | B442532-A | UNK | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 7/19/1997 | 93897 | 19:50 | YES | N | N | - | - |
| B442532 | 5 | B442532-B | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 7/20/1997 | 93896 | 1:08 | YES | N | N | - | - |
| B442532 | 5 | B442532-C | 5 | UNK | UNK | 5 | UNK | UNK | UNK | LIVE | YES | 7/21/1997 | 59531 | - | YES | N | N | - | - |
| B442532 | 5 | B442532-D | 3 | 1 | No | 5 | 4 | 4 | 3 | PHOTO | NO | 8/8/1997 | 59545 | 19:41 | NO | N | N | - | - |
| B442532 | 5 | B442532-E | 5 | 1 | No | 5 | 4 | 4 | 5 | LIVE | YES | 8/8/1997 | 59599 | 19:44 | NO | N | N | - | - |
| B442532 | 5 | B442532-E | - | - | No | - | - | - | - | LIVE | YES | 8/8/1997 | 59599 | 19:44 | NO | N | Y | 59545 | UNK |
| B442532 | 5 | B442532-E | - | - | No | - | - | - | - | LIVE | YES | 8/8/1997 | 59599 | 19:44 | NO | N | Y | 59545 | UNK |
| B442532 | 5 | B442532-E | - | - | No | - | - | - | - | LIVE | YES | 8/8/1997 | 59599 | 19:44 | NO | N | Y | 59545 | UNK |
| B447609 | 10 | B447609-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 07/20/1997 | 94062 | 16:00 | NO | Y | N | - | - |
| B447609 | 10 | B447609-B | 1 | 1 | No | 4 | 3 | 3 | 1 | PHOTO | NO | 07/20/1997 | 94070-80 | 23:50 | NO | Y | N | - | - |
| B447609 | 10 | B447609-C | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 07/24/1997 | 94052 | 20:00 | NO | Y | N | - | - |
| B447609 | 10 | B447609-C | - | - | No | - | - | - | - | LIVE | YES | 07/24/1997 | 94052 | 20:00 | NO | Y | N | - | - |
| B447609 | 10 | B447609-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 07/25/1997 | 94050 | 0:45 | NO | Y | Y | 59607-9 | - |
| B447609 | 10 | B447609-E | 1 | 2 | Yes | 6 | 4 | 2 | 2 | PHOTO | NO | 07/29/1997 | 94074 | 22:45 | NO | N | N | - | - |
| B447609 | 10 | B447609-F | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 08/05/1997 | 94046 | 9:00 | NO | N | Y | 94074 | UNK |
| B447609 | 10 | B447609-G | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 08/06/1997 | 94059 | 19:50 | NO | Y | Y | 94062 | N |
| B447609 | 10 | B447609-G | - | - | No | - | - | - | - | LIVE | YES | 08/06/1997 | 94059 | 19:50 | NO | Y | Y | 94080 | N |
| B447609 | 10 | B447609-G | - | - | No | - | - | - | - | LIVE | YES | 08/06/1997 | 94059 | 19:50 | NO | N | N | - | - |
| B447609 | 10 | B447609-H | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 12/04/1997 | 59503 | 22:32 | NO | Y | Y | 59609 | UNK |
| B447609 | 10 | B447609-I | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 05/06/1998 | 59609 | 10:00 | NO | Y | N | - | - |
| B447609 | 10 | B447609-J | 1 | UNK | UNK | UNK | UNK | UNK | UNK | LIVE | YES | 08/22/1998 | 59502 | 23:00 | YES | N | N | - | - |
| B464955 | 1 | B464955-A | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 07/27/97 | 59635 | - | N | Y | N | - | - |
| B464955 | 1 | B464955-A | - | - | No | - | - | - | - | PHOTO | NO | 07/27/97 | 59635 | - | N | Y | N | - | - |
| B470090 / B470088 | 0 | - | - | - | - | - | - | - | - | - | - | 7/30/1997 | 59588 | 4:00 | - | N | N | - | - |
| B484342 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| B496300 | 3 | B496300-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 08/10/97 | 59769 | 22:00 | N | N | N | - | - |
| B496300 | 3 | B496300-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 08/10/97 | 59769 | 22:00 | N | N | N | - | - |
| B496300 | 3 | B496300-C | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 08/10/97 | 59775 | 21:30 | N | N | N | - | - |
| B496300 | 3 | B496300-C | - | - | No | - | - | - | - | LIVE | YES | 08/10/97 | 59775 | 21:30 | N | N | Y | 59769 | N |
| B496300 | 3 | - | - | - | - | - | - | - | - | - | - | 08/10/97 | 59765 | 22:00 | - | N | N | - | - |
| B507114 | NONE | | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| B510974 | 3 | - | - | - | - | - | - | - | - | - | - | 8/14/1997 | 59893-9; 59879 | UNK | - | Y | N | - | - |
| B510974 | 3 | B510974-A | 5 | 1 | No | 7 | 6 | 6 | 5 | PHOTO | NO | 8/15/1997 | 59881 | 8:00 | NO | Y | N | - | - |
| B510974 | 3 | B510974-A | - | - | No | - | - | - | - | PHOTO | NO | 8/15/1997 | 59881 | 8:00 | NO | Y | N | - | - |
| B510974 | 3 | B510974-A | - | - | No | - | - | - | - | PHOTO | NO | 8/15/1997 | 59881 | 8:00 | NO | Y | N | - | - |
| B510974 | 3 | B510974-A | - | - | No | - | - | - | - | PHOTO | NO | 8/16/1997 | 59887 | 22:15 | NO | Y | N | - | - |
| B510974 | 3 | B510974-A | - | - | No | - | - | - | - | PHOTO | NO | 8/17/1997 | 59889 | UNK | NO | Y | N | - | - |
| B510974 | 3 | B510974-B | 2 | 1 | No | 7 | 6 | 6 | 2 | PHOTO | NO | 8/18/1997 | 59891 | UNK | NO | Y | N | - | - |
| B510974 | 3 | B510974-B | - | - | No | - | - | - | - | PHOTO | NO | 9/5/1997 | 59913-5 | UNK | NO | N | N | - | - |
| B510974 | 3 | - | - | - | - | - | - | - | - | - | - | 9/5/1997 | 59917 | UNK | - | Y | N | - | - |
| B510974 | 3 | B510974-C | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 9/13/1997 | 59903 | 19:00 | NO | N | N | - | - |
| B525511 | 3 | B525511-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/23/1997 | 59947 | UNK | NO | N | N | - | - |
| B525511 | 3 | - | - | - | - | - | - | - | - | - | - | 8/23/1997 | 59943 | 3:00 | - | Y | N | - | - |
| B525511 | 3 | B525511-B | 3 | 1 | No | 6 | 5 | 5 | 3 | PHOTO | NO | 9/6/1997 | 59979 | 20:30 | NO | N | N | - | - |
| B525511 | 3 | B525511-C | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 9/11/1997 | 59967 | 21:55 | NO | Y | Y | 59953 | N |
| B525511 | 3 | B525511-C | - | - | No | - | - | - | - | LIVE | YES | 9/11/1997 | 59967 | 21:55 | NO | Y | Y | 59941 | N |
| B525511 | 3 | B525511-C | - | - | No | - | - | - | - | LIVE | YES | 9/11/1997 | 59967 | 21:55 | NO | N | N | - | - |
| B530253 | NONE | | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| B537808 | - | - | - | - | - | - | - | - | - | - | - | 8/11/2015 | 95113 | 13:57 | - | Y | N | - | - |
| B544594 | 3 | B544594-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/25/1998 | 60139 | 15:40 | NO | Y | N | - | - |
| B544594 | 3 | - | - | - | - | - | - | - | - | - | - | 4/10/1998 | 60145 | 19:41 | - | Y | N | - | - |
| B544594 | 3 | B544594-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 12/1/1998 | 60137 | 23:00 | YES | N | N | - | - |
| B544594 | 3 | B544594-C | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/23/1998 | 60147 | 23:55 | NO | N | Y | 60137 | UNK |
| B555356 | NONE | | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| B555626 | 0 | - | - | - | - | - | - | - | - | - | - | 9/3/1997 | 60243; 95604 | 0:23 | - | N | N | - | - |
| B562446 | 6 | - | - | - | - | - | - | - | - | - | - | 9/5/1997 | 603057 | 20:00 | - | Y | N | - | - |
| B562446 | 6 | B562446-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 9/7/1997 | 60294 | 17:00 | YES | N | N | - | - |
| B562446 | 6 | B562446-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 09/24/97 | 60290 | 9:46 | YES | N | N | - | - |
| B562446 | 6 | B562446-C | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 10/15/1997 | 60311 | 22:00 | NO | Y | Y | 60337 | N |
| B562446 | 6 | B562446-C | - | - | No | - | - | - | - | LIVE | YES | 10/15/1997 | 60311 | 22:00 | NO | Y | Y | 60290 | UNK |
| B562446 | 6 | B562446-C | - | - | No | - | - | - | - | LIVE | YES | 10/15/1997 | 60311 | 22:00 | NO | N | N | - | - |
| B562446 | 6 | B562446-D | 4 | 1 | No | 6 | 5 | 5 | 4 | LIVE | YES | 10/16/97 | 60315 | 14:00 | NO | N | N | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B429383 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B439808 | Unfamiliar | - | 2 | UNK | 1 | 2 | 0 | 2 | 0 | 0 | 0 | 2 | N | - | Y | N |
| B439808 | Unfamiliar | - | 3 | 5 | 1 | 3 | 1 | 2 | 0 | 0 | 0 | 3 | N | - | Y | N |
| B439808 | Unfamiliar | - | 1 | 8 | 4 | 4 | 0 | 0 | 4 | 0 | 0 | 4 | N | - | Y | N |
| B439808 | Unfamiliar | Witness A | | 8 | 3 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | Y | N |
| B439808 | Previous ID | Witness A | 1 | 8 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| B439808 | Unfamiliar | Witness B | | 8 | 3 | 3 | 2 | 0 | 1 | 0 | 0 | 3 | N | - | Y | N |
| B439808 | Previous ID | Witness B | 1 | 8 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| B442532 | Unfamiliar | - | UNK | UNK | UNK | UNK | 1 | UNK | UNK | UNK | UNK | 1 | N | - | Y | N |
| B442532 | Unfamiliar | - | 1 | UNK | UNK | UNK | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| B442532 | Unfamiliar | - | 5 | 5 | UNK | UNK | 0 | 0 | 5 | 0 | 0 | 5 | N | - | Y | N |
| B442532 | Unfamiliar | - | 3 | 5 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | Y | N |
| B442532 | Unfamiliar | - | 2 | 5 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | Y | Y |
| B442532 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B442532 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B442532 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B447809 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B447809 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B447809 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B447809 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B447809 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| B447809 | Unfamiliar | - | 1 | 6 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| B447809 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B447809 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B447809 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B447809 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B447809 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B447809 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B447809 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B464955 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B464955 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B470590 / B470088 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B484342 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | N |
| B496300 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B496300 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B496300 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B496300 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B496300 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B507114 | N/A | | | | 0 | | | | | | | 0 | | | N | N |
| B510974 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B510974 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B510974 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B510974 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B510974 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B510974 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B510974 | Familiar Perp | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B510974 | Unfamiliar | - | 1 | 7 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| B510974 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B510974 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B525511 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| B525511 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| B525511 | Unfamiliar | - | 3 | 6 | 1 | 3 | 2 | 0 | 1 | 0 | 0 | 3 | N | - | Y | N |
| B525511 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B525511 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | N |
| B525511 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | N |
| B530253 | N/A | | | | 0 | | | | | | | 0 | | | Y | N |
| B537808 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B544594 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B544594 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B544594 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B544594 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B555356 | N/A | | | | 0 | | | | | | | 0 | | | N | N |
| B559926 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B562446 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B562446 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B562446 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B562446 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | N | N |
| B562446 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B562446 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| B562446 | Unfamiliar | - | 4 | 5 | 1 | 4 | 0 | 0 | 4 | 0 | 0 | 4 | N | - | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Procedure? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B562446 | 6 | B562446-E | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 10/16/97 | 22:27 | 60293 | NO | N | N | - | - |
| B562446 | 6 | B562446-F | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 10/17/97 | 21:00 | 60305 | YES | Y | N | - | - |
| B562446 | 6 | B562446-C | - | - | No | UNK | - | - | - | PHOTO | NO | 10/17/97 | 21:00 | 60305 | NO | N | N | - | - |
| B568371 | 2 | B568371-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 09/09/97 | 1:31 | 60305-7 | NO | Y | N | - | - |
| B568371 | 2 | B568371-A | - | - | No | - | - | - | - | LIVE | YES | 09/09/97 | 1:31 | 60305-7 | NO | N | N | - | - |
| B568371 | 2 | B568371-B | 4 | 1 | No | UNK | UNK | UNK | 4 | PHOTO | NO | 09/12/97 | UNK | 60423 | YES | N | N | - | - |
| B569762 | NONE | | | | | 0 | | | | | | | | | | | | | |
| B579839 | 3 | B579839-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/17/1997 | 20:27 | 60490 | N | Y | N | - | - |
| B579839 | 3 | B579839-B | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 9/29/1997 | 18:38 | 60455 | N | Y | N | - | - |
| B579839 | 3 | B579839-B | - | - | No | - | - | - | - | PHOTO | NO | 9/29/1997 | 18:38 | 60455 | N | Y | N | - | - |
| B579839 | 3 | B579839-C | 1 | 1 | No | - | - | - | 1 | LIVE | | | | | N | Y | Y | 60485 | UNK |
| B583716 | 6 | B583716-A | 1 | 2 | Yes | 6 | 4 | 2 | 2 | PHOTO | NO | 10/31/1997 | 2:00 | 60608 | N | Y | N | - | - |
| B583716 | 6 | B583716-A | - | - | Yes | - | - | - | - | PHOTO | NO | 10/31/1997 | 2:00 | 60608 | N | N | N | - | - |
| B583716 | 6 | B583716-B | 1 | 4 | Yes | UNK | UNK | UNK | 4 | PHOTO | NO | 11/8/1997 | 1:00 | 60586 | Y | Y | N | - | - |
| B583716 | 6 | B583716-B | - | - | Yes | UNK | UNK | UNK | - | PHOTO | NO | 11/8/1997 | 1:00 | 60586 | Y | Y | N | - | - |
| B583716 | 6 | B583716-B | - | - | Yes | UNK | UNK | UNK | - | PHOTO | NO | 11/8/1997 | 1:00 | 60586 | Y | Y | N | - | - |
| B583716 | 6 | B583716-B | - | - | Yes | UNK | UNK | UNK | - | PHOTO | NO | 11/8/1997 | 1:00 | 60586 | Y | Y | N | - | - |
| B583716 | 6 | B583716-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 12/19/1997 | 2:44 | 60594 | N | N | N | - | - |
| B583716 | 6 | B583716-D | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 12/19/1997 | 22:00 | 60558; 60602 | N | N | N | - | - |
| B583716 | 6 | B583716-E | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 12/20/1997 | 1:49 | 60590 | N | N | N | - | - |
| B583716 | 6 | B583716-F | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 12/21/1997 | 23:00 | 60554 | N | N | N | - | - |
| B584768 | NONE | | | | | 0 | | | | | | | | | | | | | |
| B585959 | NONE | | | | | | | | | | | | | | | | | | |
| B601054 | | | | | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| B602349 | 4 | B602349-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/22/1997 | 22:26 | 60884 | N | N | N | - | - |
| B602349 | 4 | B602349-B | 4 | 1 | No | 6 | 5 | 5 | 4 | LIVE | YES | 9/22/1997 | 21:14 | 60893 | N | N | N | - | - |
| B602349 | 4 | B602349-B | - | - | No | - | - | - | - | | | 9/24/1997 | | 60901 | | Y | N | - | - |
| B602349 | 4 | B602349-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 3/26/1998 | 2:30 | 97398 | Y | Y | N | - | - |
| B602349 | 4 | B602349-D | UNK | 1 | No | 4 | 3 | 3 | UNK | LIVE | NO | 12/31/1998 | 16:00 | 60914 | Y | UNK | UNK | - | - |
| B607224 | 0 | - | - | - | - | - | - | - | - | - | - | 11/10/1997 | 22:00 | 61009 | - | N | N | - | - |
| B615338 | 1 | B615338-A | 4 | 1 | No | 6 | 5 | 5 | 4 | PHOTO | NO | 4/29/1999 | 2:00 | 61035; 61063; 61070; 61087; 61115 | NO | N | N | - | - |
| B615338 | 1 | | | | | | | | - | | | | | | | N | N | - | - |
| B636957 | 3 | B636957-A | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 10/11/1997 | 23:30 | 61189 | NO | N | N | - | - |
| B636957 | 3 | B636957-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 10/25/1997 | 20:45 | 61199 | NO | Y | Y | 61205 | UNK |
| B636957 | 3 | B636957-B | - | - | No | - | - | - | - | LIVE | YES | 10/25/1997 | 20:45 | 61199 | NO | Y | Y | 61205 | UNK |
| B636957 | 3 | B636957-C | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 10/26/1997 | 20:00 | 61205 | YES | Y | N | - | - |
| B636957 | 3 | B636957-C | - | - | No | - | - | - | - | PHOTO | NO | 10/26/1997 | 20:00 | 61205 | YES | Y | N | - | - |
| B640021 | 3 | B640021-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 10/29/1997 | 19:38 | 61265; 1938 | NO | Y | Y | 61251-3 | N |
| B640021 | 3 | B640021-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 11/1/1997 | 2200 | 61249 | YES | Y | N | - | - |
| B640021 | 3 | B640021-C | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | NO | 11/1/1997 | 22:00 | 61261 | YES | Y | Y | 61253 | N |
| B653073 | 0 | - | - | - | No | - | - | - | - | - | - | 10/12/1997 | 17:26 | 61313 | - | Y | N | - | - |
| B655241 | 7 | B655241-A | 6 | 1 | No | 4 | 3 | 3 | 6 | LIVE | YES | 10/14/1997 | 16:39 | 61333 | NO | Y | Y | 61359 | N |
| B655241 | 7 | B655241-A | - | - | No | 4 | - | - | - | LIVE | YES | 10/14/1997 | 16:39 | 61333 | NO | N | N | - | - |
| B655241 | 7 | B655241-A | - | - | No | 4 | - | - | - | LIVE | YES | 10/14/1997 | 16:39 | 61333 | NO | Y | Y | 61359 | N |
| B655241 | 7 | B655241-B | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 10/16/1997 | 18:40 | 61359 | NO | Y | N | - | - |
| B655241 | 7 | B655241-B | - | - | No | 6 | - | - | - | PHOTO | NO | 10/16/1997 | 18:40 | 61359 | NO | Y | N | - | - |
| B655241 | 7 | B655241-C | 1 | 2 | Yes | 6 | 4 | 2 | 2 | PHOTO | NO | 10/16/1997 | 18:40 | 61359 | NO | Y | N | - | - |
| B655241 | 7 | B655241-D | 1 | 2 | Yes | 6 | 4 | 2 | 2 | PHOTO | NO | 10/16/1997 | 18:40 | 61363 | NO | Y | N | - | - |
| B655241 | 7 | B655241-D | - | - | No | 6 | - | - | - | PHOTO | NO | 10/16/1997 | 18:40 | 61363 | NO | Y | N | - | - |
| B655241 | 7 | B655241-E | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 1/30/1998 | 22:51 | 61367 | NO | N | N | - | - |
| B655241 | 7 | B655241-F | 2 | 1 | No | 5 | 4 | 4 | 2 | PHOTO | NO | 1/30/1998 | 22:51 | 61367 | NO | N | N | - | - |
| B655241 | 7 | B655241-G | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 7/13/1998 | 19:20 | 61383 | NO | N | Y | 61367 | N |
| B662923 | NONE | | | | | 0 | | | | | | | | | | | | | |
| B673166 | 4 | B673166-A | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 10/20/1997 | 15:30 | 61466 | NO | Y | N | - | - |
| B673166 | 4 | B673166-A | - | - | No | - | - | - | - | PHOTO | NO | 10/20/1997 | 15:30 | 61466 | NO | Y | N | - | - |
| B673166 | 4 | B673166-B | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 10/20/1997 | 15:30 | 61466 | NO | Y | N | - | - |
| B673166 | 4 | B673166-B | - | - | No | - | - | - | - | PHOTO | NO | 10/20/1997 | 15:30 | 61466 | NO | Y | N | - | - |
| B673166 | 4 | B673166-C | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 10/21/1997 | 21:45 | 61478 | NO | Y | Y | 61466 | UNK |
| B673166 | 4 | B673166-C | - | - | No | - | - | - | - | LIVE | YES | 10/21/1997 | 21:45 | 61478 | NO | Y | Y | 61466 | UNK |
| B673166 | 4 | B673166-D | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 10/30/1997 | 11:30 | 61470 | NO | Y | Y | 61466 | UNK |
| B673166 | 4 | B673166-D | - | - | No | - | - | - | - | LIVE | YES | 10/30/1997 | 11:30 | 61470 | NO | Y | Y | 61466 | UNK |
| B686053 | 10 | B686053-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 1/11/1998 | 23:00 | 61503 | YES | Y | N | - | - |
| B686053 | 10 | B686053-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 1/11/1998 | 23:00 | 61503 | YES | Y | N | - | - |
| B686053 | 10 | B686053-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 1/11/1998 | 23:00 | 61503 | YES | Y | N | - | - |
| B686053 | 10 | B686053-D | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 5/7/1998 | 22:00 | 61519 | YES | Y | N | - | - |
| B686053 | 10 | B686053-E | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 5/7/1998 | 22:00 | 61523 | YES | Y | N | - | - |
| B686053 | 10 | B686053-F | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 5/7/1998 | 22:00 | 61523 | YES | Y | N | - | - |
| B686053 | 10 | B686053-G | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 5/7/1998 | 22:00 | 61523 | YES | Y | N | - | - |
| B686053 | 10 | B686053-H | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 5/7/1998 | 22:00 | 61525 | YES | N | N | - | - |
| B686053 | 10 | B686053-I | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 5/7/1998 | 22:00 | 61531 | YES | N | N | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B562446 | Unfamiliar | - | 2 | 5 | 1 | 2 | 0 | 1 | 1 | 0 | 0 | 2 | N | - | N | N |
| B562446 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B562446 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B568371 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B568371 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B568371 | Unfamiliar | - | 4 | UNK | 1 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | N | - | N | N |
| B569762 | N/A | | | | | 0 | | | | | | 0 | | | Y | N |
| B579639 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| B579639 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| B579639 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| B579639 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| B583716 | Familiar Perp | Witness A | | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B583716 | Unfamiliar | Witness A | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B583716 | Familiar Perp | Witness A | | UNK | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B583716 | Familiar Perp | Witness A | | UNK | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B583716 | Familiar Perp | Witness A | | UNK | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B583716 | Familiar Perp | Witness A | 1 | UNK | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B583716 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B583716 | Unfamiliar | - | 4 | 5 | 1 | 4 | 1 | 1 | 2 | 0 | 0 | 4 | N | - | N | N |
| B583716 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B583716 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B584788 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| B585059 | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | - |
| B601054 | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - | N | - |
| B602349 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B602349 | Unfamiliar | - | 4 | 6 | 1 | 4 | 0 | 2 | 2 | 0 | 0 | 4 | N | - | N | N |
| B602349 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B602349 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B607224 | UNK | - | UNK | 4 | 1 | UNK | UNK | UNK | UNK | UNK | UNK | UNK | N | - | N | N |
| B615338 | Unfamiliar | - | 4 | 6 | 1 | 4 | 2 | 1 | 1 | 0 | 0 | 4 | N | - | N | N |
| B615338 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B639957 | Unfamiliar | - | 2 | 4 | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| B639957 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B639957 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B639957 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B639957 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B640021 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B640021 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B640021 | Both | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B653073 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B655241 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B655241 | Unfamiliar | - | 4 | 4 | 1 | 4 | 4 | 0 | 0 | 0 | 0 | 4 | N | - | N | N |
| B655241 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B655241 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B655241 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B655241 | Unfamiliar | - | 1 | 6 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| B655241 | Familiar Perp | Witness A | | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B655241 | Familiar Perp | Witness A | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B655241 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| B655241 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| B655241 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B662923 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| B673166 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B673166 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B673166 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B673166 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B673166 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B673166 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B673166 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B673166 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B688053 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B688053 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B688053 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B688053 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B688053 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B688053 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B688053 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B688053 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B686053 | 10 | B686053-J | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 5/7/1998 | 61531 | 22:00 | YES | Y | N | - | - |
| B697511 | 0 | - | - | - | - | - | - | - | - | - | - | 11/06/1997 | 61607-08 | 23:00 | - | N | N | - | - |
| B699331 | 1 | B699331-A | 3 | 1 | No | 6 | 5 | 5 | 3 | LIVE | YES | 11/1/1997 | 61861-61679 | UNK | NO | N | N | - | - |
| B699585 | 2 | B699585-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 11/3/1997 | 61731 | 4:00 | NO | Y | N | - | - |
| B699585 | 2 | B699585-B | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 8/22/1998 | 61895 | 23:47 | NO | Y | Y | 61731 | UNK |
| B699585 | 2 | - | - | - | - | - | - | - | - | - | - | 8/26/1998 | 61714-5 | 20:20 | - | Y | N | - | - |
| B746996 | NONE | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - |
| B747057 | 2 | B747057-A | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 11/25/1997 | 99546 | 2:21 | NO | N | N | - | - |
| B747657 | 2 | B747657-B | 1 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 11/25/1997 | 99544 | 21:43 | NO | N | N | - | - |
| B747657 | 2 | - | - | - | - | - | - | - | - | - | - | 11/25/1997 | 99540 | 23:00 | - | Y | N | - | - |
| B748149 | 2 | B748149-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 11/30/1997 | 61793 | UNK | NO | N | N | - | - |
| B748149 | 2 | B748149-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 2/21/1998 | 61771-3 | 22:55 | NO | N | Y | 61793 | N |
| B782915 | 3 | B782915-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 12/16/1997 | 61850 | 20:39 | NO | N | Y | 999727 | UNK |
| B782915 | 3 | B782915-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 12/17/1997 | 61842 | 23:00 | NO | N | N | - | - |
| B782915 | 3 | B782915-C | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 2/26/1998 | 61815 | 16:05 | NO | Y | N | - | - |
| B826351 | 2 | B826351-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/31/1997 | 61894 | 22:45 | NO | Y | N | - | - |
| B826351 | 2 | B826351-B | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 12/31/1997 | 61893 | 22:01 | NO | N | N | - | - |
| B826351 | 2 | B826351-B | - | - | - | - | - | - | - | LIVE | YES | 12/31/1997 | 61893 | 22:01 | NO | Y | N | - | - |
| B826351 | 2 | B826351-B | - | - | - | - | - | - | - | LIVE | YES | 12/31/1997 | 61893 | 22:01 | NO | Y | N | - | - |
| C004518 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| C009109 | 1 | C009109-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 2/25/1998 | 62004-5 | 11:37 | NO | N | N | - | - |
| C030805 | NONE | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - |
| C032085 | NONE | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - |
| C037884 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| C043281 | 3 | C043281-A | UNK | 1 | No | 6 | UNK | UNK | UNK | PHOTO | NO | 1/21/1998 | 100778 | 20:24 | YES | UNK | UNK | - | - |
| C043281 | 3 | C043281-B | 1 | 2 | Yes | 6 | 4 | 2 | 2 | PHOTO | NO | 1/28/1998 | 62181-3 | 21:04 | NO | N | N | - | - |
| C043281 | 3 | C043281-B | - | - | Yes | - | - | - | - | PHOTO | NO | 1/28/1998 | 62181-3 | 21:04 | NO | Y | N | - | - |
| C043281 | 3 | C043281-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 1/28/1998 | 62183 | 21:04 | NO | Y | N | - | - |
| C045438 | 1 | C045438-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 1/21/1998 | 62229 | 22:47 | NO | Y | N | - | - |
| C046190 | 0 | - | - | - | - | - | - | - | - | - | - | 1/29/1998 | 62259 | 23:59 | - | Y | N | - | - |
| C050061 | 3 | C050061-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 02/09/1998 | 62321, 101279-80 | UNK | NO | Y | Y | 62319 | - |
| C050061 | 3 | C050061-B | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 02/09/1998 | 101279-80 | UNK | YES | N | N | - | - |
| C050061 | 3 | C050061-C | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 02/09/1998 | 101346-47, 101279-80 | UNK | NO | Y | N | - | - |
| C050061 | 0 | - | - | - | - | - | - | - | - | - | - | 02/09/1998 | 101279-80 | UNK | - | Y | N | - | - |
| C054088 | 3 | C054088-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 8/23/1998 | 62350 | 23:00 | YES | Y | N | - | - |
| C054088 | 3 | C054088-B | 4 | 1 | No | 5 | 4 | 4 | 4 | LIVE | YES | 07/10/2022 | 62364 | 20:34 | NO | N | N | - | - |
| C054088 | 3 | C054088-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 07/24/1998 | 62360 | 21:00 | YES | N | N | - | - |
| C054088 | 3 | - | - | - | - | - | - | - | - | - | - | 10/27/1998 | 62365 | 23:30 | - | Y | N | - | - |
| C065598 | 2 | C065598-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 02/07/1998 | 62495 | UNK | NO | Y | N | - | - |
| C065598 | 2 | C065598-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 02/08/1998 | 62479 | 1:15 | NO | N | N | - | - |
| C065598 | 2 | C065598-B | - | - | - | - | - | - | - | LIVE | YES | 02/08/1998 | 62479 | 1:15 | NO | Y | Y | 62495 | UNK |
| C072051 | 4 | C072051-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 2/13/1998 | 101726 | 19:00 | NO | Y | N | - | - |
| C072051 | 4 | C072051-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 2/18/1998 | 101726 | 21:30 | NO | Y | N | - | - |
| C072051 | 4 | C072051-C | 2 | 1 | No | 6 | 5 | 5 | 2 | PHOTO | NO | 2/18/1998 | 101726 | 21:35 | NO | N | N | - | - |
| C072051 | 4 | C072051-C | - | - | No | - | - | - | - | PHOTO | NO | 2/19/1998 | 101727 | UNK | NO | Y | N | - | - |
| C072051 | 4 | C072051-D | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 3/2/1998 | 101681 | 18:30 | NO | Y | Y | 101725 | UNK |
| C078254 | NONE | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - |
| C086176 | 4 | C086176-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 4/23/1998 | 62617 | 15:06 | YES | Y | N | - | - |
| C086176 | 4 | C086176-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 4/23/1998 | 62619 | 15:06 | YES | Y | N | - | - |
| C086176 | 4 | C086176-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 4/23/1998 | 62619 | 15:06 | YES | Y | N | - | - |
| C086176 | 4 | C086176-D | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 6/2/1998 | 62629 | 10:22 | NO | Y | Y | 62619 | UNK |
| C086176 | 4 | C086176-D | - | - | No | - | - | - | - | LIVE | YES | 6/2/1998 | 62629 | 10:22 | NO | Y | Y | 62617 | UNK |
| C111439 | NONE | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - |
| C115375 | 4 | C115375-A | 1 | 2 | Yes | 6 | 4 | 2 | 2 | PHOTO | NO | 3/18/1998 | 62789 | 15:30 | NO | Y | N | - | - |
| C115375 | 4 | C115375-A | - | - | Yes | 6 | - | - | - | PHOTO | NO | 3/18/1998 | 62789 | 15:30 | NO | Y | N | - | - |
| C115375 | 4 | C115375-B | UNK | 1 | No | UNK | UNK | UNK | UNK | PHOTO | NO | 4/19/1998 | 62702 | 14:17 | NO | UNK | N | - | - |
| C115375 | 4 | C115375-C | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | NO | 4/19/1998 | 62704 | 14:17 | YES | Y | N | - | - |
| C115375 | 4 | C115375-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 4/30/1995 | 62747 | 18:00 | NO | Y | Y | 62789 | N |
| C137761 | NONE | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - |
| C138725 | 8 | C138725-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 3/6/1998 | 62862 | 22:52 | NO | Y | N | - | - |
| C138725 | 8 | C138725-B | 1 | 2 | Yes | 11 | 9 | 4.5 | 2 | PHOTO | NO | 3/6/1998 | 62882 | 10:13 | NO | Y | N | - | - |
| C138725 | 8 | C138725-B | - | - | Yes | - | - | - | - | PHOTO | NO | 3/6/1998 | 62882 | 10:13 | NO | N | N | - | - |
| C138725 | 8 | C138725-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 3/6/1998 | 62856 | 22:53 | YES | N | N | - | - |
| C138725 | 8 | C138725-D | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/30/1998 | 62920 | 20:16 | NO | N | Y | 62882 | N |
| C138725 | 8 | C138725-E | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 6/22/1998 | 62866 | 13:17 | NO | N | Y | 62882 | N |
| C138725 | 8 | C138725-F | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 12/16/1998 | 62906 | 23:55 | YES | N | N | - | - |
| C138725 | 8 | C138725-G | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | YES | 1/18/2001 | 102569 | 8:00 | NO | Y | Y | 62862 | N |
| C138725 | 8 | C138725-H | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 4/27/2000 | 102529 | 12:51 | NO | Y | N | - | - |
| C143881 | 1 | C138725-H | - | - | No | 5 | 4 | 4 | 1 | LIVE | YES | 1/28/2010 | 102488 | 14:08 | NO | N | N | - | - |
| C143881 | 1 | C143881-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 3/9/1998 | 62941 | 17:15 | NO | N | N | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B686053 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B697511 | Unfamiliar | | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B696331 | Unfamiliar | - | 3 | 6 | 1 | 3 | 1 | 0 | 0 | 0 | 2 | 3 | N | - | N | N |
| B696585 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B696585 | Both | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| B696585 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B746696 | N/A | | | | | 0 | | | | | | 0 | | | Y | N |
| B747657 | Unfamiliar | - | 3 | 4 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| B747657 | Unfamiliar | - | 2 | 5 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| B747657 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| B748149 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| B748149 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| B782915 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B782915 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B782915 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B826351 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B826351 | Unfamiliar | - | 2 | 5 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| B826351 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| B826351 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C004518 | | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| C00410a | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| C030805 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| C032085 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| C037884 | | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| C043281 | UNK | - | UNK | 6 | UNK | UNK | UNK | UNK | UNK | UNK | UNK | UNK | - | N | - | N | N |
| C043281 | Unfamiliar | Witness A | | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| C043281 | Familiar Perp | Witness A | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C043281 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| C045438 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C046190 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C050061 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C050061 | Unfamiliar | - | 1 | UNK | UNK | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| C050061 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C050061 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C054088 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C054088 | Unfamiliar | - | 4 | 5 | 1 | 4 | 3 | 0 | 1 | 0 | 0 | 4 | N | - | N | N |
| C054088 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C054088 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C065598 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C065598 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C065598 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C072051 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C072051 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C072051 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C072051 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C072051 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C076254 | N/A | | | | | 0 | | | | | | 0 | | | Y | N |
| C086176 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C086176 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C086176 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C086176 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C086176 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C111439 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| C115375 | Familiar Perp | Witness A | | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C115375 | Familiar Perp | Witness A | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C115375 | UNK | - | UNK | UNK | 1 | #VALUE! | UNK | UNK | UNK | UNK | UNK | #VALUE! | N | - | N | N |
| C115375 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C115375 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C137791 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| C138725 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C138725 | Familiar Perp | Witness A | | 11 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C138725 | Unfamiliar | Witness A | 1 | 11 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C138725 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| C138725 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| C138725 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C138725 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| C138725 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C138725 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C138725 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C143881 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |

| RDF of Homicide Files | Number of Identification Events Reported for RDF | Event Number | Number of Witness Participants in Event | Number of Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C175194 | 1 | C175194-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 04/17/1998 | 23:30 | 62974; 103191-2 | NO | Y | N | - | - |
| C175194 | 1 | - | - | - | - | - | - | - | - | - | NO | 04/17/1998 | 23:30 | 62982 | - | Y | N | - | - |
| C175194 | 1 | - | - | - | - | - | - | - | - | - | NO | 04/17/1998 | 23:30 | 62994 | - | Y | N | - | - |
| C175194 | 1 | - | - | - | - | - | - | - | - | - | NO | 04/17/1998 | 23:30 | 63000 | - | Y | N | - | - |
| C184347 | 1 | C184347-A | 5 | 1 | No | 4 | 3 | 3 | 5 | LIVE | YES | 03/27/1998 | 5:00 | 63050-4, 63108 | NO | Y | N | - | - |
| C184347 | 1 | C184347-A | - | - | No | - | - | - | - | LIVE | YES | 03/27/1998 | 5:00 | 63052-4, 63108 | NO | N | N | - | - |
| C184347 | 1 | C184347-A | - | - | No | - | - | - | - | LIVE | YES | 03/27/1998 | 5:00 | 63053-4, 63108 | NO | N | N | - | - |
| C198126 | 1 | C198126-A | 1 | 1 | No | UNK | UNK | UNK | 1 | LIVE | NO | 4/30/1998 | 23:00 | 63131 | 2300 | YES | N | Y | 63131 | N |
| C227605 | 1 | C227605-A | 8 | 1 | No | 5 | 4 | 4 | 8 | LIVE | YES | 4/15/1998 | 1400 | 63261 | 1400 | NO | N | - | - |
| C227605 | 1 | C227605-A | - | - | No | - | - | - | - | LIVE | YES | 4/15/1998 | 1400 | 63261 | 1400 | NO | Y | N | - | - |
| C250690 | | | | | | 0 | | | | | | | | | | | | | |
| C273881 | | | | | | 0 | | | | | | | | | | | | | |
| C283710 | 5 | C283710-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 5/10/1998 | 4:00 | 63452 | YES | N | N | - | - |
| C283710 | 5 | C283710-B | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 5/14/1998 | 23:30 | 63448 | 2330 | YES | N | Y | - | - |
| C283710 | 5 | C283710-C | 3 | 1 | No | 5 | 4 | 4 | 3 | LIVE | YES | 5/19/1998 | 23:30 | 63422 | 2330 | NO | N | Y | 63448 | UNK |
| C283710 | 5 | C283710-C | - | - | No | - | - | - | - | LIVE | YES | 5/19/1998 | 23:30 | 63422 | 2330 | NO | N | Y | 63448 | UNK |
| C283710 | 5 | C283710-C | - | - | No | - | - | - | - | LIVE | YES | 5/19/1998 | 23:30 | 63422 | 2330 | NO | N | N | - | - |
| C283710 | 5 | C283710-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 5/28/1998 | 23:30 | 63470 | 2330 | NO | N | N | - | - |
| C283710 | 5 | C283710-E | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 6/1/1998 | 5:00 | 63436 | 5:00 | NO | N | Y | 63452 | N |
| C283710 | 5 | C283710-E | - | - | No | 5 | - | - | - | LIVE | YES | 6/1/1998 | 5:00 | 63436 | 5:00 | NO | N | Y | 63452 | N |
| C296530 | 2 | C296530-A | 3 | 1 | No | UNK | UNK | UNK | 3 | LIVE | NO | 5/30/1998 | 03:17 | 63517 | UNK | NO | N | N | - | - |
| C296530 | 2 | C296530-A | - | - | No | - | - | - | - | LIVE | NO | 5/30/1998 | 03:17 | 63517 | UNK | NO | Y | N | - | - |
| C296530 | 2 | C296530-B | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 5/31/1998 | 21:20 | 63495 | 21:20 | NO | N | N | - | - |
| C296530 | 2 | C296530-B | - | - | No | - | - | - | - | LIVE | YES | 5/31/1998 | 21:20 | 63495 | 21:20 | NO | N | Y | 63517 | UNK |
| C296530 | 2 | C296530-B | - | - | No | - | - | - | - | LIVE | YES | 5/31/1998 | 21:20 | 63495 | 21:20 | NO | N | Y | 63517 | UNK |
| C303365 | 4 | C303365-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 05/24/1998 | | 63551 | UNK | NO | Y | N | - | - |
| C303365 | 4 | C303365-B | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 05/24/1998 | | 63553 | UNK | NO | Y | Y | 63575 | N |
| C303365 | 4 | C303365-B | - | - | No | - | - | - | - | LIVE | YES | 05/24/1998 | | 63553 | UNK | NO | Y | N | - | - |
| C303365 | 4 | C303365-B | - | - | No | - | - | - | - | LIVE | YES | 05/24/1998 | | 63553 | UNK | NO | N | N | - | - |
| C303365 | 4 | C303365-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 05/25/1998 | | 63579 | UNK | NO | Y | N | - | - |
| C303365 | 4 | | - | - | No | - | - | - | - | LIVE | YES | 05/25/1998 | | 63575 | UNK | NO | Y | N | - | - |
| C303365 | 4 | C303365-D | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 05/26/1998 | | 63575 | UNK | NO | Y | N | - | - |
| C345475 | NONE | | | | | 0 | | | | | | | | | | | | | |
| C348555 | NONE | | | | | | | | | | | | | | | | | | |
| C352357 | 1 | C352357-A | UNK | UNK | UNK | 6 | UNK | UNK | UNK | UNK | NO | 08/31/1998 | 16:08 | 105180-1 | YES | UNK | UNK | - | - |
| C352357 | 1 | - | - | - | - | - | - | - | - | - | NO | 08/31/1998 | | 105180-98 | - | Y | N | - | - |
| C355803 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| C368664 | 1 | - | - | - | - | - | - | - | - | - | NO | 10/24/1998 | 17:50 | 63767 | - | Y | N | - | - |
| C368664 | 1 | - | - | - | - | - | - | - | - | - | NO | 6/15/1998 | 23:00 | 63783 | - | Y | N | - | - |
| C368664 | 1 | - | - | - | - | - | - | - | - | - | NO | 6/15/1998 | | 63785 | - | Y | N | - | - |
| C368664 | 1 | C368664-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 01/05/2003 | 0:15 | 105662 | N | N | N | - | - |
| C384549 | 3 | C384549-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 07/08/1998 | 24:00:00 | 63831 | 24:00:00 | NO | Y | N | - | - |
| C384549 | 3 | C384549-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 07/08/1998 | 24:00:00 | 63831 | 24:00:00 | NO | Y | N | - | - |
| C384549 | 3 | C384549-C | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 07/08/1998 | 24:00:00 | 63831 | 24:00:00 | NO | Y | N | - | - |
| C384549 | 3 | - | - | - | - | - | - | - | - | - | - | 11/27/1998 | 23:00 | 105823 | 23:00 | - | Y | N | - | - |
| C384549 | 3 | - | - | - | - | - | - | - | - | - | - | 11/27/1998 | 23:00 | 105826 | 23:00 | - | Y | Y | 105825-6 | - |
| C384549 | 3 | - | - | - | - | - | - | - | - | - | - | 11/03/2000 | 9:03 | 105814 | 9:03 | - | Y | N | - | - |
| C397367 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| C402843 | 3 | C402843-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 9/29/1998 | 17:06 | 63888 | 17:06 | NO | Y | N | - | - |
| C402843 | 3 | C402843-B | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 12/18/1998 | 18:45 | 63882 | 18:45 | NO | Y | Y | 63888 | N |
| C402843 | 3 | C402843-B | - | - | No | - | - | - | - | LIVE | YES | 12/18/1998 | 18:45 | 63882 | 18:45 | NO | Y | N | - | - |
| C402843 | 3 | C402843-B | - | - | No | - | - | - | - | LIVE | YES | 12/18/1998 | 18:45 | 63882 | 18:45 | NO | Y | N | - | - |
| C402843 | 3 | C402843-C | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 6/8/1999 | 11:00 | 63908 | 11:00 | NO | Y | N | - | - |
| C423057 | 3 | C423057-A | 1 | 2 | Yes | 6 | 4 | 2 | 2 | LIVE | NO | 07/11/1998 | 21:34 | 63933 | 21:34 | NO | N | N | - | - |
| C423057 | 3 | C423057-B | 1 | 2 | Yes | 6 | 4 | 2 | 2 | LIVE | NO | 07/26/1998 | | 63957 | - | NO | Y | N | - | - |
| C423057 | 3 | C423057-B | - | - | Yes | - | - | - | - | LIVE | NO | 07/26/1998 | | 63957 | - | NO | Y | N | - | - |
| C423057 | 3 | C423057-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | NO | 08/22/1998 | 19:00 | 63951-2 | 19:00 | NO | Y | N | - | - |
| C435542 | 1 | C435542-A | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 7/9/1998 | 2:00 | 64011 | 2:00 | NO | Y | N | - | - |
| C437502 | 0 | - | - | - | - | - | - | - | - | - | - | 07/18/1998 | | 64053-5 | - | N | N | - | - |
| C464281 | 2 | C464281-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 07/27/1998 | 23:00 | 106938 | 23:00 | NO | Y | N | - | - |
| C464281 | 2 | C464281-B | 2 | 1 | No | 7 | 6 | 6 | 2 | LIVE | YES | 08/09/1998 | 17:34 | 106991 | 17:34 | NO | Y | Y | 106938 | N |
| C464281 | 2 | C464281-B | - | - | No | - | - | - | - | LIVE | YES | 08/09/1998 | 17:34 | 106991 | 17:34 | NO | N | Y | 106937 | N |
| C475208 | 3 | C475208-A | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 08/20/1998 | 0:55 | 64161 | 0:55 | YES | Y | N | - | - |
| C475208 | 3 | C475208-B | 2 | 1 | No | 5 | 4 | 4 | 2 | LIVE | YES | 12/31/1998 | 1:44 | 64175 | 1:44 | NO | N | N | - | - |
| C475208 | 3 | C475208-B | - | - | No | - | - | - | - | LIVE | YES | 12/31/1998 | 1:44 | 64175 | 1:44 | NO | N | N | - | - |
| C475208 | 3 | C475208-C | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 02/11/1999 | 1:00 | 64171 | 1:00 | NO | Y | N | - | - |
| C498577 | 0 | - | - | - | - | - | - | - | - | - | - | 9/24/1998 | 16:34 | 64213 | 16:34 | - | Y | N | - | - |
| C498577 | 0 | - | - | - | - | - | - | - | - | - | - | 9/24/1998 | 16:34 | 64213 | 16:34 | - | Y | N | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C175194 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C175194 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C175194 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C175194 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C184347 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C184347 | Unfamiliar | - | 3 | 4 | 1 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | N | - | N | N |
| C184347 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| C198126 | Previous ID | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | Y | Y | Y | Y |
| C227805 | Unfamiliar | - | 7 | 5 | 1 | 7 | 7 | 0 | 0 | 0 | 0 | 7 | N | - | N | N |
| C227805 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C250890 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| C273881 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| C283710 | Unfamiliar | - | 2 | UNK | 1 | 2 | 1 | 1 | 0 | 0 | 0 | 2 | N | - | N | N |
| C283710 | Unfamiliar | - | 2 | UNK | 1 | 2 | 1 | 1 | 0 | 0 | 0 | 2 | N | - | N | N |
| C283710 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C283710 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C283710 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C283710 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| C283710 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C283710 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C296530 | Unfamiliar | - | 2 | UNK | 1 | 2 | 0 | 0 | 2 | 0 | 0 | 2 | N | - | N | N |
| C296530 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C296530 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| C296530 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| C296530 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C303365 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C303365 | Both | - | 1 | 4 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C303365 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C303365 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| C303365 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C303365 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C303365 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C345475 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| C348555 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| C352357 | N/A | - | UNK | 6 | UNK | #VALUE! | UNK | UNK | UNK | UNK | UNK | #VALUE! | N | - | N | N |
| C352357 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C355803 | | - | - | - | - | - | - | - | - | - | - | - | - | N | - | - |
| C368694 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C368694 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C368694 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C368694 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| C384549 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C384549 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C384549 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C384549 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C384549 | Both | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C384549 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C367367 | | - | - | - | - | - | - | - | - | - | - | - | - | N | - | - |
| C402843 | Familiar Perp | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| C402843 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C402843 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C402843 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C402843 | Familiar Perp | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| C423057 | Unfamiliar | - | 1 | 6 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| C423057 | Familiar Perp | Witness A | | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C423057 | Familiar Perp | Witness A | | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| C423057 | Familiar Perp | | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| C425542 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C437502 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C464281 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C464281 | Both | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C464281 | Previous ID | - | 1 | 7 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C475208 | Familiar Perp | - | 1 | UNK | UNK | #VALUE! | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C475208 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C475208 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C475208 | Familiar Perp | - | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C498577 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C498577 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C501370 | 1 | C501370-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 8/25/1998 | 64260 | 3:49 | NO | N | N | – | – |
| C508182 | 3 | C508182-A | 1 | 1 | No | 3 | 2 | 2 | 1 | PHOTO | NO | 8/20/1998 | 64291 | UNK | NO | Y | N | – | – |
| C508182 | 3 | C508182-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 8/20/1998 | 64307 | 23:20 | NO | Y | Y | 64291 | N |
| C508182 | 3 | C508182-C | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 8/21/1998 | 64283 | 4:30 | NO | N | N | – | – |
| C515703 | – | – | – | – | – | – | – | – | – | – | – | 8/16/1998 | 64362 | 13:13 | – | Y | N | – | – |
| C515703 | 1 | C515703-A | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | YES | 08/17/1998 | 64348 | 7:04 | NO | Y | N | – | – |
| C515703 | 1 | C515703-A | – | – | No | – | – | – | – | LIVE | YES | 08/17/1998 | 64348 | 7:04 | NO | N | Y | 107830 | N |
| C522384 | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| C535103 | 4 | C535103-A | 2 | 1 | No | UNK | UNK | UNK | 2 | PHOTO | NO | 09/18/1998 | 64458 | 14:56 | YES | Y | N | – | – |
| C535103 | 4 | C535103-A | – | – | – | – | – | – | – | PHOTO | – | 09/18/1998 | 64458 | 14:56 | YES | N | N | – | – |
| C535103 | 4 | C535103-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | NO | 03/11/1999 | 64436 | 18:45 | NO | Y | Y | 64434 | UNK |
| C535103 | 4 | C535103-B | – | – | – | – | – | – | – | LIVE | NO | 03/11/1999 | 64436 | 18:45 | NO | N | Y | 64434 | UNK |
| C535103 | 4 | C535103-C | 2 | UNK | UNK | 6 | UNK | UNK | UNK | PHOTO | NO | 03/11/1999 | 64436 | 18:45 | NO | Y | N | – | – |
| C535103 | 4 | C535103-C | – | – | – | – | – | – | – | PHOTO | NO | 03/11/1999 | 64436 | 18:45 | NO | N | N | – | – |
| C535103 | 4 | C535103-D | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 02/12/1999 | 64440 | 0:41 | NO | Y | Y | 64436, 64474 | UNK |
| C535103 | 4 | C535103-D | – | – | – | – | – | – | – | LIVE | YES | 02/12/1999 | 64440 | 0:41 | NO | N | Y | 64436, 64474 | UNK |
| C535352 | 1 | C535352-A | 4 | 1 | No | 5 | 4 | 4 | 4 | PHOTO | NO | 8/23/1998 | 64517 | 17:00 | NO | Y | N | – | – |
| C535352 | 1 | C535352-A | – | – | No | – | – | – | – | PHOTO | NO | 8/23/1998 | 64517 | 17:00 | NO | Y | N | – | – |
| C535352 | 1 | C535352-A | – | – | No | – | – | – | – | PHOTO | NO | 8/23/1998 | 64517 | 17:00 | NO | Y | N | – | – |
| C535352 | 1 | C535352-A | – | – | No | – | – | – | – | PHOTO | NO | 8/23/1998 | 64517 | 17:00 | NO | N | N | – | – |
| C535352 | 1 | – | – | – | – | – | – | – | – | – | NO | 8/30/1998 | 64513 | 22:26 | – | Y | N | – | – |
| C535352 | 1 | – | – | – | – | – | – | – | – | – | NO | 10/2/1998 | 64508 | 11:20 | – | Y | N | – | – |
| C537005 | 1 | C537005-A | 1 | 1 | No | 11 | 10 | 10 | 1 | – | NO | 12/15/1998 | 108146 | UNK | NO | Y | N | – | – |
| C566124 | 4 | C566124-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 9/12/1998 | 108259 | UNK | NO | N | N | – | – |
| C566124 | 4 | C566124-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 9/12/1998 | 64623; 108259 | UNK | YES | N | N | – | – |
| C566124 | 4 | C566124-C | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | NO | 9/12/1998 | 64623; 064617 | UNK | NO | N | Y | 64623 | UNK |
| C566124 | 4 | C566124-D | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | NO | 9/12/1998 | 64628; 64611 | UNK | NO | N | Y | 64623 | UNK |
| C585855 | NONE | | | | | 0 | | | | | | | | | | | | | |
| C604389 | 6 | C604389-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 09/21/1998 | 64811 | 19:58 | YES | Y | N | – | – |
| C604389 | 6 | C604389-B | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 09/21/1998 | 64829 | 19:29 | NO | Y | Y | 64811 | UNK |
| C604389 | 6 | C604389-C | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 09/30/1998 | 64777 | 0:11 | NO | N | Y | 64735 | N |
| C604389 | 6 | C604389-D | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 10/01/1998 | 64819 | 2:20 | NO | N | Y | 64739 | UNK |
| C604389 | 6 | C604389-E | 1 | 2 | Yes | 6 | 4 | 2 | 2 | PHOTO | NO | 10/2/1998 | 64735 | 2:00 | NO | N | N | – | – |
| C604389 | 6 | C604389-F | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 10/2/1998 | 64739 | – | NO | N | N | – | – |
| C604389 | 6 | – | – | – | – | – | – | – | – | – | – | 10/2/1998 | 64735 | 2:00 | – | N | N | – | – |
| C617250 | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| C650817 | 1 | C650817-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 10/14/1998 | 64895 | 19:17 | YES | Y | N | – | – |
| C651530 | 1 | C651530-A | 3 | 1 | No | 4 | 3 | 3 | 3 | LIVE | YES | 10/11/1998 | 109103 | 0:50 | NO | Y | N | – | – |
| C651530 | 1 | C651530-A | – | – | – | – | – | – | – | LIVE | – | 10/11/1998 | 109103 | 0:50 | NO | N | N | – | – |
| C651530 | 1 | C651530-A | – | – | – | – | – | – | – | LIVE | – | 10/11/1998 | 109103 | 0:50 | NO | N | N | – | – |
| C653538 | 4 | C653538-A | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | NO | 2/6/1999 | 65001 | 19:15 | NO | Y | N | – | – |
| C653538 | 4 | C653538 -B | 1 | 3 | Yes | UNK | UNK | UNK | 3 | PHOTO | NO | 2/6/1999 | 65001 | 19:15 | YES | N | N | – | – |
| C653538 | 4 | C653538-C | 2 | UNK | Yes | 12 | UNK | UNK | UNK | LIVE | YES | 2/9/1999 | 65037 | 21:19 | YES | N | Y | 65001 | N |
| C653538 | 4 | C653538-C | – | – | Yes | – | – | – | – | LIVE | YES | 2/9/1999 | 65037 | 21:19 | YES | N | Y | 65001 | N |
| C653538 | 4 | C653538-C | – | – | Yes | – | – | – | – | LIVE | YES | 2/9/1999 | 65037 | 21:19 | YES | Y | Y | 65001 | N |
| C653538 | 4 | C653538-C | – | – | Yes | – | – | – | – | LIVE | YES | 2/9/1999 | 65037 | 21:19 | YES | N | N | – | – |
| C653538 | 4 | C653538-D | 1 | UNK | Yes | 9 | UNK | UNK | UNK | LIVE | YES | 2/25/1999 | 65043 | 20:35 | YES | N | N | – | – |
| C653538 | 4 | – | – | – | – | – | – | – | – | – | – | 2/6/99; 2/14/99 | 65001; 65009 | 19:15; 23:00 | – | Y | N | – | – |
| C667887 | 0 | – | – | – | – | – | – | – | – | – | – | 1/10/1999 | 65095 | 22:33 | – | Y | N | – | – |
| C667887 | 0 | – | – | – | – | – | – | – | – | – | – | 7/25/2000 | 109466 | – | – | N | N | – | – |
| C672678 | 3 | C672678-A | 1 | 2 | Yes | 5 | 3 | 1.5 | 2 | PHOTO | NO | 11/1/1998 | 65115 | 7:23 | NO | Y | N | – | – |
| C672678 | 3 | C672678-A | – | – | Yes | – | – | – | – | PHOTO | NO | 11/1/1998 | 65115 | 7:23 | NO | N | N | – | – |
| C672678 | 3 | C672678-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 11/10/1998 | 65107 | UNK | NO | Y | N | – | – |
| C672678 | 3 | C672678-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 12/4/1998 | 65131 | 14:30 | NO | Y | Y | 65115 | N |
| C673410 | NONE | | | | | 0 | | | | | | | | | | | | | |
| C687989 | NONE | | | | | 0 | | | | | | | | | | | | | |
| C702440 | 0 | – | – | – | – | – | – | – | – | – | – | 11/2/1998 | 65276 | 23:38 | – | Y | N | – | – |
| C702440 | 0 | – | – | – | – | – | – | – | – | – | – | 11/6/1998 | 65250-8 | 2:32 | – | Y | N | – | – |
| C706297 | 3 | C706297-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 12/1/1998 | 65370 | 19:17 | NO | Y | N | – | – |
| C706297 | 3 | C706297-B | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 3/30/1999 | 65360 | 18:05 | YES | N | N | – | – |
| C706297 | 3 | C706297-C | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | NO | 4/4/1999 | 65364 | 13:47 | NO | N | Y | 65370 | UNK |
| C713215 | 0 | – | – | – | – | – | – | – | – | – | NO | 11/19/1998 | 65406-8 | 21:25 | – | Y | N | – | – |
| C713913 | 2 | C713913-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 11/18/1998 | 65420 | 22:35 | NO | Y | N | – | – |
| C713913 | 2 | C713913-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 11/18/1998 | 65420 | 22:35 | NO | Y | N | – | – |
| C722335 | 5 | C722335-A | 1 | 1 | No | 7 | 6 | 6 | 1 | LIVE | NO | 11/11/1998 | 65532 | 3:30 | YES | N | N | – | – |
| C722335 | 5 | C722335-B | 1 | 2 | Yes | 5 | 3 | 1.5 | 2 | PHOTO | NO | 11/14/1998 | 65562 | – | NO | Y | N | – | – |
| C722335 | 5 | C722335-B | – | – | Yes | – | – | – | – | PHOTO | NO | 11/14/1998 | 65562 | – | NO | N | N | – | – |
| C722335 | 5 | C722335-C | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 11/14/1998 | 65562 | – | NO | Y | N | – | – |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C501370 | Unfamiliar | - | 2 | UNK | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| C508182 | Familiar Perp | - | 1 | 3 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C508182 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C508182 | Unfamiliar | - | 2 | 4 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | N | N |
| C515703 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C515703 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C515703 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C522384 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| C535103 | Familiar Perp | - | 1 | UNK | UNK | UNK | 0 | 1 | 0 | 0 | 0 | UNK | UNK | N | - | N | N |
| C535103 | Unfamiliar | - | 1 | UNK | UNK | UNK | 0 | 1 | 0 | 0 | 0 | UNK | UNK | N | - | N | N |
| C535103 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C535103 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C535103 | Familiar Perp | - | 1 | 6 | UNK | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| C535103 | Unfamiliar | - | 1 | 6 | UNK | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| C535103 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C535103 | Previous ID | - | 1 | 4 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| C535352 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C535352 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C535352 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C535352 | Unfamiliar | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C535352 | - | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C535352 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C537005 | Familiar Perp | - | 1 | 11 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C566124 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C566124 | Unfamiliar | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C566124 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C566124 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C585855 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| C604389 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C604389 | Both | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| C604389 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C604389 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C604389 | Unfamiliar | - | 1 | 6 | 2 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | Y | Y |
| C604389 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C604389 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | Y | Y |
| C617250 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | N | - |
| C650817 | Familiar Perp | - | 1 | UNK | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C651530 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C651530 | Familiar Perp | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C651530 | Unfamiliar | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C653538 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C653538 | Unfamiliar | - | 1 | UNK | 3 | 3 | 0 | 0 | 3 | 0 | 0 | 3 | N | - | Y | Y |
| C653538 | Previous ID | Witness A | | 12 | UNK | #VALUE! | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C653538 | Previous ID | Witness A | | 12 | UNK | #VALUE! | 0 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C653538 | Both | Witness A | 1 | 12 | UNK | #VALUE! | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C653538 | Unfamiliar | - | 1 | 12 | UNK | #VALUE! | 3 | 0 | 0 | 0 | 0 | 3 | N | - | Y | Y |
| C653538 | Unfamiliar | - | 1 | 9 | UNK | #VALUE! | 3 | 0 | 0 | 0 | 0 | 3 | N | - | Y | Y |
| C653638 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| C667887 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C667887 | Unfamiliar | Witness A | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| C672678 | Familiar Perp | Witness A | | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C672678 | Unfamiliar | Witness A | | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| C672678 | Familiar Perp | - | 1 | UNK | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| C672678 | Both | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C673410 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| C667989 | N/A | | | | | 0 | | | | | | 0 | | | N | - |
| C702440 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C702440 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C700297 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C700297 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| C700297 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C713215 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C713913 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C713913 | Familiar Perp | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | Y |
| C722335 | Unfamiliar | - | 1 | 7 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| C722335 | Familiar Perp | Witness A | | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C722335 | Familiar Perp | Witness A | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C722335 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |

Steblay Data 10-19-2022

| RD# of Homicide Files | Number of Identification Events Reported for RD# | Event Number | Number of Witness Participants in Event | Number of Suspects in Event | Is the Event A Multiple Suspect Event? | Number of Individuals in Event | Number of Fillers in Event | Number of Fillers Per Suspect in Event | Number of Total Possible Positive IDs for Event | Is the Event A Live Lineup or Photo Array Identification Procedure? | Is the Event Reported in an Official Lineup Report? | Date of Report | Time of Report | Bates Stamp on Report | Is the File Missing Information Needed to Code the File? | Was the witness familiar with the suspect prior to the first documented identification procedure? | Had the witness seen the suspect in a prior identification procedure? | If so, Bates number of prior identification procedure | If there is evidence Witness saw Suspect in prior ID procedure, are the fillers in this lineup/photo array the same? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C722335 | 5 | C722335-D | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | NO | 11/14/1998 | 20:00 | 65588 | NO | N | Y | 65484 | UNK |
| C722335 | 5 | C722335-E | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 11/14/1998 | 23:45 | 65484 | NO | N | N | - | - |
| C722335 | 5 | - | - | - | - | - | - | - | - | - | - | 11/14/1998 | 23:45 | 65498 | - | Y | N | - | - |
| C722335 | 5 | - | - | - | - | - | - | - | - | - | - | 11/14/1998 | 23:45 | 65494 | - | Y | N | - | - |
| C722335 | 5 | - | - | - | - | - | - | - | - | - | - | 11/14/1998 | 23:45 | 65502 | - | Y | N | - | - |
| C722335 | 5 | - | - | - | - | - | - | - | - | - | - | 11/14/1998 | 23:45 | 65558 | - | Y | N | - | - |
| C722335 | 5 | - | - | - | - | - | - | - | - | - | - | 11/14/1998 | 23:45 | 65498 | - | Y | N | - | - |
| C722335 | 5 | - | - | - | - | - | - | - | - | - | - | 11/18/1998 | 1:00 | 65606 | - | Y | N | - | - |
| C722335 | 5 | - | - | - | - | - | - | - | - | - | - | 11/20/1998 | 23:00 | 65464 | - | Y | N | - | - |
| C725067 | NONE | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| C729422 | 3 | C729422-A | 1 | 1 | No | 13 | 12 | 12 | 1 | PHOTO | NO | 11/16/1998 | 20:57 | 111742 | NO | Y | N | - | - |
| C729422 | 3 | - | - | - | - | - | - | - | - | - | - | 12/10/1998 | 23:44 | 111745 | - | N | N | - | - |
| C729422 | 3 | C729422-B | 2 | 1 | No | 6 | 5 | 5 | 2 | LIVE | NO | 10/7/1999 | 23:00 | 65590 | NO | N | N | - | - |
| C729422 | 3 | C729422-C | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | NO | 10/8/1999 | 15:05 | 65588 | NO | N | N | - | - |
| C731677 | 2 | C731677-A | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 11/20/1998 | 1:30 | 65730 | NO | N | Y | 65770 | N |
| C731677 | 2 | C731677-B | 2 | 1 | No | 4 | 3 | 3 | 2 | LIVE | YES | 11/20/1998 | 23:00 | 65734 | NO | N | N | - | - |
| C731677 | 2 | - | - | - | - | - | - | - | - | - | - | 11/29/1998 | 23:59 | 65740 | - | Y | N | - | - |
| C739122 | 1 | - | - | - | - | - | - | - | - | - | - | 12/7/2003 | 20:32 | 112343 | - | Y | N | - | - |
| C739122 | 1 | - | - | - | - | - | - | - | - | - | - | UNK | UNK | 112361 | - | N | N | - | - |
| C739122 | 1 | - | - | - | - | - | - | - | - | PHOTO | - | 8/23/2004 | 23:11 | 112331 | - | Y | N | - | - |
| C739122 | 1 | C739122-A | 3 | 1 | No | 6 | 5 | 5 | 3 | PHOTO | NO | 8/23/2004 | 23:11 | 112333 | NO | N | N | - | - |
| C739679 | 5 | C739679-A | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 11/22/1998 | 3:30 | 112902-3 | NO | N | N | - | - |
| C739679 | 5 | C739679-B | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 11/23/1998 | UNK | 112903 | NO | Y | Y | 112902 | N |
| C739679 | 5 | C739679-C | 1 | 1 | No | 6 | 5 | 5 | 1 | PHOTO | NO | 11/23/1998 | UNK | 112903 | NO | Y | Y | 112902 | N |
| C739679 | 5 | C739679-D | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 1/19/1998 | 18:49 | 112878 | NO | N | N | - | - |
| C739679 | 5 | C739679-E | 1 | 1 | No | 6 | 5 | 5 | 1 | LIVE | YES | 1/19/1999 | 18:57 | 112908 | NO | N | N | - | - |
| C743922 | 9 | C743922-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 12/7/1998 | 23:29 | 65898 | NO | Y | N | - | - |
| C743922 | 9 | C743922-B | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/15/1998 | 19:14 | 65902 | NO | Y | Y | 65898 | UNK |
| C743922 | 9 | C743922-C | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 12/15/1998 | 20:39 | 65914 | YES | N | N | - | - |
| C743922 | 9 | - | - | - | - | - | - | - | - | - | - | 12/15/1998 | 20:39 | 65914 | - | Y | N | - | - |
| C743922 | 9 | C743922-D | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/15/1998 | 19:16 | 65888 | NO | N | N | - | - |
| C743922 | 9 | C743922-E | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 12/20/1998 | 23:37 | 65898 | NO | N | N | - | - |
| C743922 | 9 | C743922-F | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/29/1998 | 16:38 | 65930 | NO | N | Y | 65886 | UNK |
| C743922 | 9 | C743922-G | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 12/29/1998 | 21:33 | 65934 | NO | N | N | - | - |
| C743922 | 9 | C743922-H | 1 | 1 | No | 4 | 3 | 3 | 1 | LIVE | YES | 9/1/2000 | 11:30 | 65654 | NO | N | Y | 65914 | UNK |
| C743922 | 9 | C743922-I | 1 | 1 | No | 5 | 4 | 4 | 1 | LIVE | YES | 9/1/2000 | 11:14 | 65949 | NO | N | N | - | - |
| C756745 | 2 | - | - | - | - | - | - | - | - | - | - | 11/27/1998 | 18:00 | 65983 | - | Y | N | - | - |
| C756745 | 2 | C756745-A | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 12/8/1998 | 0:15 | 66011 | NO | Y | N | - | - |
| C756745 | 2 | C756745-B | 1 | 1 | No | 5 | 4 | 4 | 1 | PHOTO | NO | 12/30/1999 | 0:16 | 113161 | NO | Y | N | - | - |
| C774913 | 3 | C774913-A | 1 | 1 | No | UNK | UNK | UNK | 1 | PHOTO | NO | 12/5/1998 | 11:10 | 113309 | NO | N | N | - | - |
| C774913 | 3 | C774913-B | 9 | 1 | No | 5 | 4 | 4 | 9 | LIVE | YES | 12/5/1998 | 13:06 | 113296 | NO | N | N | - | - |
| C774913 | 3 | C774913-B | - | - | No | - | - | - | - | LIVE | YES | 12/6/1998 | 1:28 | 113309 | NO | N | Y | 113309 | UNK |
| C774913 | 3 | C774913-C | UNK | UNK | UNK | 5 | UNK | UNK | UNK | LIVE | NO | 12/8/1998 | 0:40 | 113421; 113297 | YES | N | N | - | - |
| C781734 | NONE | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| C801440 | NONE | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| C801672 | 1 | - | - | - | - | - | - | - | - | - | - | 12/20/1998 | 8:57 | 113831 | - | Y | N | - | - |
| C801672 | 1 | C801672-A | 1 | UNK | UNK | UNK | UNK | UNK | UNK | PHOTO | NO | 2/10/1999 | 17:00 | 66085 | YES | Y | N | - | - |
| C801672 | 1 | - | - | - | - | - | - | - | - | - | - | 2/14/1999 | 16:30 | 113820 | - | Y | N | - | - |
| C801672 | 1 | - | - | - | - | - | - | - | - | - | - | 2/18/1999 | 17:00 | 66113 | - | Y | N | - | - |
| C819100 | NONE | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - |
| C822300 | NONE | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - | - | - | - |

| RD# of Homicide Files | Is the witness familiar with the suspect? | Column to Track Same Familiar Witness | Number of Witnesses Viewing Lineup | Number of Total Individuals Participating in Lineup | Number of Suspects Participating in Lineup | Number of Total Possible Positive IDs for Event | Number of Reported Positive Identifications | Number of Reported Tentative Positive Identifications | Number of Reported Negative Identifications | Number of Reported Filler Identifications | Number of Witnesses Viewed But No Reported Outcome or Incomplete Reported Outcome | Total Number of Coded Outcomes for All Witnesses In Event | Is there a Showup In File? | Was there a positive or tentative positive ID during show up? | Was Detective Guevara Involved Investigation? | Was Detective Guevara Involved Identification Procedure? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| C722335 | Previous ID | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C722335 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| C722335 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C722335 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C722335 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C722335 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C722335 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C722335 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C726057 | - | - | - | - | - | - | - | - | - | - | - | - | Y | - | N | - |
| C729422 | Familiar Perp | - | 1 | 13 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| C729422 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| C729422 | Unfamiliar | - | 2 | 6 | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| C729422 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C731677 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | N |
| C731677 | Unfamiliar | - | 2 | 4 | 1 | 2 | 1 | 0 | 1 | 0 | 0 | 2 | N | - | Y | N |
| C731677 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | Y |
| C739122 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C739122 | Unfamiliar | - | - | - | - | - | - | - | - | - | - | - | Y | N | N | N |
| C739122 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C739122 | Unfamiliar | - | 3 | 6 | 1 | 3 | 2 | 1 | 0 | 0 | 0 | 3 | N | - | N | N |
| C739679 | Unfamiliar | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | Y | N |
| C739679 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | N |
| C739679 | Both | - | 1 | 6 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | Y | Y | Y | N |
| C739679 | Unfamiliar | - | 1 | 4 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | Y |
| C739679 | Unfamiliar | - | 1 | 6 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | Y | N |
| C743022 | Familiar Perp | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| C743022 | Both | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C743022 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| C743022 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C743022 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| C743022 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | N | - | N | N |
| C743022 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C743022 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| C743022 | Previous ID | - | 1 | 4 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C743022 | Unfamiliar | - | 1 | 5 | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| C756745 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | N | N |
| C756745 | Familiar Perp | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C756745 | Familiar Perp | - | 1 | 5 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C774913 | Unfamiliar | - | 1 | UNK | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | N | - | N | N |
| C774913 | Unfamiliar | - | 8 | 5 | 1 | 8 | 4 | 2 | 2 | 0 | 0 | 8 | N | - | N | N |
| C774913 | Previous ID | - | 1 | 5 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | N | - | N | N |
| C774913 | Unfamiliar | - | UNK | 5 | UNK | #VALUE! | 2 | 0 | 0 | 0 | 0 | 2 | N | - | N | N |
| C781734 | N/A | | | | | | 0 | | | | | | 0 | | | N | - |
| C801440 | N/A | | | | | | 0 | | | | | | 0 | | | N | - |
| C801672 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| C801672 | Familiar Perp | - | 1 | UNK | UNK | #VALUE! | 0 | 0 | UNK | 0 | - | #VALUE! | N | - | Y | N |
| C801672 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| C801672 | Familiar Perp | - | - | - | - | - | - | - | - | - | - | - | Y | Y | Y | N |
| C819100 | | | | | | | 0 | | | | | | 0 | | | N | - |
| C822300 | | | | | | | 0 | | | | | | 0 | | | N | - |