**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEMETRIUS JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No.: 20 cv 4156** |
| | ) | |
| **REYNALDO GUEVARA, et al.,** | ) | **Judge Sara L. Ellis** |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT REYNALDO GUEVARA'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Defendant Guevara's Motion for Summary Judgment adopted certain portions of the Motion for Summary Judgment filed by his co-defendants, Ernest Halvorsen (deceased), Darryl Daley, William Erickson, and John Healy. *See* Dckt. No. 309. To this end, Defendant Guevara similarly adopts the reply in support of these same legal arguments filed by his co-defendants as well as his co-defendants' arguments in Part I of their reply asserting that Plaintiff has improperly attempted to insert new legal and evidentiary theories into this case via his response as a way to avoid summary judgment, has distorted the evidentiary record, and has disregarded the parties' Joint Statement of Facts. *See* Co-Def.'s Reply in Supp. MSJ. To the extent this Court grants such Motion on these bases, this Court should similarly grant Defendant Guevara's Motion for Summary Judgment as well.

Beyond this, Plaintiff offers several additional procedural obstacles he claims preclude this Court from entering summary judgment on Defendant Guevara's behalf in particular: (1) Defendant Guevara somehow has acted improperly in adopting arguments of his co-defendants and that this is tantamount to him not filing a motion at all; and (2) Defendant Guevara is not allowed to move for summary judgment at all because of his decision to use the rights that the Fifth Amendment of the Constitution of the United States grants him. Neither of these arguments have merit.

1

I.    **Plaintiff's Argument That Defendant Guevara Cannot Adopt Legal Arguments Of His Co-Defendants Is Baseless.**

Plaintiff initially takes issue with Defendant Guevara adopting arguments made by his co-defendants and avers that this is somehow procedurally improper. *See* Dckt. No. 341 at 29. According to Plaintiff, this is tantamount to Defendant Guevara not filing a motion for summary judgment at all because his co-defendants "do not make any argument that [Defendant Guevara] in particular is entitled to summary judgment" and claims that Defendant Guevara has waived his right to summary judgment as a result. *Id.* Plaintiff is plainly incorrect.

First, there is nothing inappropriate about adopting arguments made by a similarly situated co-defendant in the same case in a contemporaneously-filed set of briefs, it is done routinely in this court and others, and Plaintiff cites no law holding to the contrary (Dckt No. 341 at 27-29). *See e.g, Desai v. General Growth Properties, Inc.,* 654 F.Supp.2d 836, 841 (N.D.Ill. 2009)("Although Freibaum's counsel have filed a separate motion to dismiss and reply brief, those documents simply adopt in their entirety, and incorporate by reference, the other Defendants' motion and briefs. Hence the Defendants' separate filings will be treated as if they were single documents."); *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 861 F.Supp. 1402, 1406 (N.D.Ill., 1994)(same); *United States v. Indiana University Health Inc.*, 2016 WL 10567965, at *1 (S.D.Ind. 2016)(same); Fed. R. Civ. P. 10(c)(explicitly permitting adoption by reference of pleadings by reference to other pleading). Indeed, this process is particularly appropriate here. As this court is well-aware, Plaintiff alone filed a grossly bloated series of documents during the summary judgment briefing replete with a 170-page response brief and a nearly 500 paragraph statement of disputed facts. *See* Dckt. Nos. 340, 341. It would make little practical sense for Defendant Guevara to mire this Court down in yet additional briefing making the exact same arguments about the exact same evidence and legal theories as similarly situated co-defendants when adoption serves the same purpose. Indeed, such a procedural efficiency is wholly consistent with this Court's summary judgment procedures which contemplate the

coordination and consolidation of similar factual material relied on during the summary judgment process. *See* Judge Sara L. Ellis Case Procedures, Summary Judgment Practice (https://www.ilnd.uscourts.gov/judge-info.aspx? IuUaWzNcEoMjnUrpQywl4u6GKGneLRit).

Moreover, contrary to Plaintiff's accusations of a boilerplate adoption of arguments, Defendant Guevara did *not* simply wholesale adopt his co-defendants' arguments in their entirety but, rather, specifically identified which arguments universally applied to him as well as these co-defendants and which did not. *See* Dckt. No. 309 at 2-5 (adopting substantive legal arguments of co-defendants but excluding adoption of personal involvement arguments). Plaintiff's undeveloped arguments that Defendant Guevara is somehow not similarly situated with these other defendants as to certain pieces of evidence and legal theories is wholly unavailing. *See* Dckt. No. 341 at 29 ("Guevara does not address multiple items of evidence that he fabricated or suppressed himself, joining a motion that does not address those fabrications and suppressions, and so Guevara cannot possibly claim an entitlement to summary judgment on the malicious prosecution, Fourth Amendment, IIED, conspiracy, and other claims that flow from the same misconduct."). Plaintiff leaves it somewhat a mystery which piece(s) of evidence or legal theories he is referring to that Defendant Guevara in particular did not adopt and, thus, Plaintiff himself has failed to develop his argument resulting in waiver.

In essence, Plaintiff argues that Defendant Guevara cannot obtain summary judgment on claims on which he has not moved. Dckt. No. 341 at 28-29. This is true but not at all what Defendant Guevara has sought to do, of course. Defendant Guevara adopted arguments that universally apply regardless of which named Defendant is alleged to have been involved in the alleged transgressions at issue and specifically excluded the arguments that do rely on the specific acts or omissions of any particular defendant. *See* Dckt. No. 309 at 2-5. These include joining arguments:

- based on absence of evidence of knowing fabrication of third-party witness identifications because witnesses confirmed veracity of identifications;
- that allegedly fabricated evidence was not used at trial;
- that suggestive identification claims are not legally cognizable under Section 1983;

- that identifications were not suggestive and were reliable as a matter of law;
- that there is no evidence that any defendant knew that identifications were false;
- that qualified immunity shields defendants from claims because alleged unconstitutionality of conduct was not well established;
- that concealment of alleged misconduct is not a freestanding *Brady* claim;
- that Plaintiff's awareness of allegedly suppressed evidence bars his *Brady* claim;
- that there is no *Brady* claim based on suppression of evidence not established to have existed in first place;
- that probable cause existed for Plaintiff's prosecution/detention;
- that Plaintiff cannot establish a failure to intervene claim without underlying constitutional violation;
- that failure to intervene is not a cognizable cause of action;
- that Plaintiff's IIED claim is barred because of the insufficiency of his constitutional claims;
- that conspiracy claims cannot proceed without an underlying constitutional or state law violation; and
- that there is no separate claim for willful and wanton conduct under Illinois law.

All of these adopted arguments either pertain to objective legal infirmities that have nothing to do with any particular defendant's conduct or misconduct (i.e. probable cause, qualified immunity, lack of cognizability of *Brady* theories, lack of cognizability of suggestive identification claims, etc.), the dearth of evidence supporting claims made by Plaintiff (e.g. no evidence that certain pieces of evidence were fabricated because witnesses stood by claims, etc.), relevance of Plaintiff's knowledge of allegedly suppressed evidence, and other such issues that have nothing to do with Defendant Guevara's individual actions. *Id.* None of these issues are impacted by whether it is Defendant Guevara who has made the argument in his own brief or whether he has adopted the argument of another Defendant making the same argument. *Id.* Stated another way, it does not matter for these arguments what exactly Defendant Guevara was accused of doing in particular because either the law or the evidence (or both) defeat the claims regardless. Thus, at bottom, Defendant Guevara is entitled to summary judgment to the same extent as his co-defendants for the reason set forth in their briefs.

## II. Plaintiff's Attempts To Convince This Court To Overrule Decades Of Law On The Standards Applied When A Defendant Invokes His Fifth Amendment Rights Are Baseless.

Plaintiff spends seven pages of his already bloated response brief presenting a convoluted argument attempting to convince this Court to ignore every single case in existence addressing the evidentiary standards this Court must apply where a defendant has invoked his Constitutional Rights under the Fifth Amendment. *See* Dckt. No. 314 at 31-37. Plaintiff instead asks this Court to chart a new path in derogation of law whereby a Fifth Amendment invocation is alone sufficient evidence to carry a plaintiff's summary judgment burden and, additionally, that defendants who invoke their constitutional rights during civil litigation are categorically denied any opportunity to seek summary judgment and must proceed to trial automatically. *Id.*

Plaintiff's arguments are premised on two baseless contentions. The first is that a civil defendant somehow must personally and affirmatively introduce evidence supporting his right to summary judgment in order to satisfy his burden of production in moving for summary judgment (as opposed to merely pointing to the absence of evidence supporting the claims against him). *See* Dckt. No. 341 at 32-33 (arguing that "[t]he movant 'cannot sustain its burden merely by denying the allegations in the opponent's pleadings, or merely by asserting that the nonmovant lacks evidence to support its claim'" and that "[a] moving party who asserts their Fifth Amendment right to remain silent in response to questions about every material fact cannot satisfy the initial burden of production at summary judgment, because that party can neither point to evidence negating an essential element of the claim nor establish that proof will be lacking on material facts at trial."). This has not been the law for many years and, indeed, this theory was rejected by the Supreme Court nearly forty years ago.

In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the Supreme Court addressed the proper standards for Courts to apply under Rule 56 when a civil defendant did not produce affirmative evidence supporting the non-existence of a fact on which the plaintiff bore the ultimate burden of proof. *Id.* In that case, the Court of Appeals had reversed a lower court's award of summary judgment in favor of a civil defendant because it found that the defendant's "summary judgment motion was

rendered 'fatally defective' by the fact that [the defendant] 'made no effort to adduce any evidence, in the form of affidavits or otherwise, to support its motion.'" *Id.* at 322. Citing *Adickes* (the same pre-*Celotex* case that Plaintiff relies on here), the Court of Appeals held that "the party opposing the motion for summary judgment bears the burden of responding only after the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact." *Id.* The Supreme Court reversed and held that a civil defendant need not introduce any evidence whatsoever to be entitled to summary judgment but must only identify the absence of evidence that a plaintiff needs to carry their ultimate burden of proof at trial. *Id.* at 322-23. The Court explained:

> We think that the position taken by the majority of the Court of Appeals is inconsistent with the standard for summary judgment set forth in Rule 56(c) of the Federal Rules of Civil Procedure….In our view, the plain language of Rule 56(c) mandates the entry of summary judgment…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof…
>
> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. But unlike the Court of Appeals, we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim. On the contrary, Rule 56(c), which refers to "the affidavits, if any" , suggests the absence of such a requirement. And if there were any doubt about the meaning of Rule 56(c) in this regard, such doubt is clearly removed by Rules 56(a) and (b), which provide that claimants and defendants, respectively, may move for summary judgment "with or without supporting affidavits.." The import of these subsections is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied. One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose. *Id.* (citations omitted).

The import of this rule is that a civil defendant need only state that no evidence exists to support some point or another in order to shift the burden back to a plaintiff to show that he or she is wrong by actually showing the affirmative existence of such evidence; no other obligation whatsoever is required. *See e.g. Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir.2013)(defendant's burden on summary judgment "may be discharged by showing—that is, point[ing] out to the district court—that there is an absence of evidence to support the nonmoving party's case."); *Wrenn v. Exelon Generation LLC*, 2021 WL 2222677, *8 (N.D.Ill., 2021)("Because the movant on summary judgment need only show that there is 'an absence of evidence to support the nonmoving party's case,' ExGen has met its burden of production."). Contrary to Plaintiff's suggestion about Defendant Guevara failing to provide sufficient affirmative evidence supporting his arguments to shift the burden back to Plaintiff, the Supreme Court holds that Defendant Guevara does not need to do anything other than generally say Plaintiff cannot support some fact or another. *Id.* The burden then shifts back to Plaintiff to affirmatively prove Defendant Guevara wrong with actual evidence. *Id.* If Plaintiff cannot do so, he loses, plain and simple. *Id.*

The second contention advanced by Plaintiff on this point is that a civil defendant who invokes his Fifth Amendment Rights is not entitled to rely on the same evidentiary standards outlined by the United States Supreme Court in *Celotex* because he has deprived a plaintiff of evidence as a result of this invocation. Dckt. No. 341 at 34-37. Specifically, Plaintiff asserts that invocation of one's Fifth Amendment Rights on a fact or issue should *itself alone* create an issue of fact rendering summary judgment unavailable. *Id.* at 34-36 ("Applied to this case, this Court must draw the adverse inference at summary judgment against Guevara on those material facts about which he has asserted his Fifth Amendment rights, and so Guevara cannot satisfy his burden of showing there are no disputes of material fact at this stage."). Plaintiff's counsel is well-aware that this is not the law and that applying such a rule would not only overrule decades of established law but would be unconstitutional. Indeed,

7

this exact argument is one that these same plaintiff's attorneys have been peddling to district courts without success for years, including in cases involving Defendant Guevara.

On this point, Plaintiff briefly takes a stab at attempting to convince this Court that there is some split in the law on this issue and that Courts have occasionally followed their reasoning. *See* Dckt. No. 341 at 36 n. 5 ("And the rule is not so simple in the case law. In some circumstances, parties are granted judgment merely because the opposing party has asserted their Fifth Amendment rights.") *citing Lyons v. Johnson*, 415 F.2d 540, 541 (9th Cir. 1969); *United States v. $39,000.00 in U.S. Currency*, 951 F.3d 740, 742 (6th Cir. 2020). This is a wildly misleading and erroneous argument. The cases cited concern *plaintiffs/claimants* who have invoked their Fifth Amendment Rights in cases that they have brought and bear the burden of proof. The law on this topic is decidedly (and obviously) quite different in those instances and for good reason. *See Crandall v. Hard Rock Cafe Intern.(Chicago)Inc.*, 2000 WL 782938, at *2 (N.D.Ill. 2000)("When presented with issues of this genre, courts have fashioned divergent outcomes, which turn on the status of the party asserting his Fifth Amendment right. For civil defendants, courts may not ignore the other evidence at bar and grant summary judgment against a defendant based exclusively upon him exercising his Fifth Amendment right. Civil plaintiffs, however, are subject to a different treatment. The prevailing view in this District and the Seventh Circuit is that a plaintiff may not invoke his privilege against self-incrimination to refuse to answer questions that are relevant to the issues of his claim."); *Kisting v. Westchester Fire Ins. Co.*, 290 F.Supp. 141 (W.D.Wis.1968) *aff'd* 416 F.2d 967 (7th Cir.1969)("[A] plaintiff in a civil action who exercises his privilege against self-incrimination to refuse to answer questions pertinent to the issues involved will have his complaint dismissed upon timely motion."); *Dimensions Medical Center, Ltd. v. Principal Financial Group, Ltd.*, 1996 WL 494229 (N.D.Ill. 1996); *Hiley v. United States*, 807 F.2d 623, 628 (7th Cir.1986)("[A] plaintiff, who initiates a civil action but refuses to present evidence, cannot then prevail on the merits with regard to those issues on which he bears the burden of proof."). A plaintiff bears

the ultimate burden of proof in the case they have brought. *Id.* The Courts rightly hold that a plaintiff may not simultaneously seek affirmative relief while at the same time refusing to provide evidence on the claims they brought. *Id.* A civil defendant, on the other hand, need not ever produce a single piece of evidence at trial (much less on summary judgment) and, if no such evidence is ever introduced, the court is required to enter judgment in such defendant's favor as a rule.

Despite making a half-hearted attempt to convince this Court that the law might be on his side, what is really afoot in Plaintiff's Response is a naked attempt to enlist this Court in overruling decades of jurisprudence from the Supreme Court, the Seventh Circuit, and every district court to pass on the matter which hold that a civil defendant's invocation of his or her Fifth Amendment Rights standing alone is not itself evidence of any fact and that a plaintiff attempting to avail himself of an adverse inference from such an invocation must first affirmatively introduce other evidence to support the existence/non-existence of such fact. *See* Dckt. No. 341 at 35-37. Plaintiff eventually admits that this is precisely what the courts have held but suggests that all of these courts "incorrectly decided" this issue and that they all "depart from established law." Dckt. No. 341 at 35-36.

Beyond making such a bold proclamation that decades of case law have "depart[ed] from established law," Plaintiff offers zero legal support for this argument and cites no case supporting the "established law" he claims is at issue. Dckt. No. 341 at 31-37. This is because none exists. Every case on the matter has held that a civil defendant who invokes his Fifth Amendment Rights during discovery may move for summary judgment based on the absence of evidence and that this must be granted by the Court if a plaintiff fails to provide evidence to support a claim other than the defendant's invocation. *See LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995)("[s]ilence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden."); *National Acceptance Co. of Am. v. Bathalter*, 705 F.2d 924 (7th Cir. 1983); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 675 (5th Cir. 1999)("[T]he adverse inference

from a party's refusal to answer questions was not enough to create an issue of fact to avoid summary judgment."); *Avirgan v. Hull*, 932 F.2d 1572, 1580 (11th Cir. 1991)("Invocation of the fifth amendment privilege did not give rise to any legally cognizable inferences sufficient to preclude entry of summary judgment. The negative inference, if any, to be drawn from the assertion of the fifth amendment does not substitute for evidence needed to meet the burden of production."); *Wrice v. Burge*, 2020 WL 419419, *2 (N.D.Ill., 2020)(granting summary judgment to invoking defendant and holding that a claim against an invoking defendant "cannot survive unless he can identify evidence, in addition to [the invoking defendant's] silence [to support such claim].");  *Rivera v. Guevara*, 2018 WL 11468922, *1 (N.D.Ill. 2018)("Here permissive means that '[s]ilence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden.'"); *Kluppelberg v. Burge*, 2017 WL 3142757, *4 (N.D. Ill. 2017)("[T]he non-movant must point to some evidence in addition to defendant's silence to avoid summary judgment"); *Ruiz-Cortez v. City of Chicago*, 2016 WL 6270768, *7 (N.D.Ill. 2016)("[S]ilence, and adverse inferences drawn from it, cannot be the sole basis for finding liability."); *Logan v. City of Chi.*, 891 F. Supp.2d 897, 901 (N.D. Ill. 2012)("[A] party's refusal to answer questions during discovery is not enough to create an issue of fact to avoid summary judgment."); *Cincinnati Ins. Co. v. Greene*, 2012 WL 3202962 at *3 (N.D. Ind. 2012)(before an adverse inference may be drawn, "there must be independent corroborative evidence to support the negative inference beyond the invocation of the privilege."); *Barker v. International Union of Operating Engineers Local 150*, 2011 WL 6338800, *6 (N.D.Ill. 2011)("[A]n adverse inference based on silence pursuant to the assertion of the Fifth Amendment privilege is insufficient by itself to create an issue of material fact precluding summary judgment"); *McArdle v. Peoria School Dist. No. 150*, 833 F.Supp.2d 1020, 1030 (C.D.Ill. 2011)("While adverse inferences may be drawn against a party who invokes her Fifth Amendment rights against self-incrimination, this privilege may not preclude summary judgment where the elements of the case were not met…In this case, Plaintiff cannot establish a genuine issue

of material fact that Davis or the District violated her First Amendment rights other than Davis' invocation of her privilege against self-incrimination."); *Thompson v. City of Chi.*, 2009 WL 674353, *3 (N.D.Ill. 2009); *Hawkins v. St. Clair Cty.*, 2009 WL 559373, *5 (S.D. Ill. 2009); *Cho v. Holland*, 2006 WL 2859453, *6 (N.D. Ill. 2006); *Evans v. City of Chicago*, 2006 WL 463041, *6 (N.D. Ill. 2006); *FTC v. Consumer Alliance, Inc.*, 2003 WL 22287364, at *3–4 (N.D. Ill. 2003); *City of Chicago v. Reliable Truck Parts Co.*, 822 F.Supp. 1288, 1293–94 (N.D. Ill. 1993)(defendants who invoked Fifth Amendment privilege did not lose the ability to contest other evidence supporting plaintiff's motion for summary judgment).

Plaintiff's baseless attempt to seduce this court into overruling decades of law is a tactic that his attorneys have been attempting without success for years including in cases involving Defendant Guevara. *See Rivera*, 319 F.Supp.3d 1004. Indeed, the baseless nature of this exact argument was meticulously set forth by Judge Gotschall in *Rivera v. Guevara*:

> Rivera "acknowledges that courts may not enter judgment based solely on an invocation of the Fifth Amendment," but he nevertheless argues that Guevara cannot win at summary judgment because Guevara has invoked his Fifth Amendment right to be silent. Rivera reasons that a defendant who invokes his right to remain silent in a civil case deprives the plaintiff of an important source of proof. Without a rule requiring denial of summary judgment, a defendant in Guevara's position would be able to use the Fifth Amendment to "shift the burden at summary judgment" to the plaintiff.
>
> The Seventh Circuit balanced the tradeoffs in civil cases of requiring proof of liability other than a party's reliance on the Fifth Amendment privilege in its first case applying *Baxter* [*v. Palmigiano*, 425 U.S. 308 (1976)]:
>
>> Inevitably, in civil cases where related criminal charges are involved, tension will arise between plaintiffs' rights to a just and timely adjudication and defendants' rights to refuse to answer under the Fifth Amendment upon a reasonable fear of prosecution. At the least, defendants may not be free to defend the suit as they would like, while plaintiffs may be prevented from acquiring evidence helpful, or even necessary, to their case. That tension is not for us to resolve, for it has its sources in the Constitution itself…
>
> Courts in the Seventh Circuit have accordingly held that to create a fact issue for trial, a party resisting summary judgment cannot rely exclusively on the moving party's invocation of the Fifth Amendment privilege. This court agrees with the reasoning of those decisions.

Requiring other evidence does not shift Guevara's summary judgment burden to Rivera. If the plaintiff will bear the burden of persuasion at trial, Guevara's initial summary judgment obligation is satisfied "by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Guevara did not need to "support [his] motion with affidavits or other similar materials negating the opponent's claim."..Under *Baxter*, *LaSalle Bank*, and a host of district court cases in this circuit, defendants' motions for summary judgment cannot be denied solely because Guevara has exercised his Fifth Amendment right to remain silent any more than the question of liability for damages could be sent to the jury on that basis alone. Instead, Rivera must identify additional evidence that would permit the jury to impose liability. *Id.* (citations omitted).

In another case involving these same attorneys and an invoking police officer defendant (Jon Burge), Judge Lefkow again held that this argument was without basis and granted the invoking defendant summary judgment. *Kluppelberg*, 2017 WL 3142757 at *4-5. The court explained:

When a defendant has invoked his Fifth Amendment right against self-incrimination, as Burge has consistently done during this case, adverse factual inferences may be drawn from the choice to remain silent. At the same time, a plaintiff may not rest solely on the defendant's assertion of privilege to establish liability based on refusal to answer a complaint or to testify at a disciplinary hearing if there is no other evidence supporting liability. Burge relies on this doctrine, not to establish liability, but to be exonerated from it, contending that there is no other evidence in the record from which a reasonable jury could infer liability.

To prevent the case from going to the jury undermines the jury's ability to draw adverse inferences that could establish the elements of the claim. Nonetheless, the courts that have addressed the issue in the context of a defendant's seeking summary judgment have held that the non-movant must point to some evidence in addition to defendant's silence to avoid summary judgment…With regard to Burge's personal knowledge of the New File,…the only evidence Kluppelberg can point to is Burge's silence. Because "the direct inference of guilt from silence is forbidden," this is insufficient to avoid summary judgment. *Id.*

Without any legal authority on his side, Plaintiff instead offers convoluted analogies and ponderous hypotheticals designed to critique the fairness or practicality of the rule:

Consider the question this way: Suppose there were a blanket rule that judgment cannot be entered against a party merely because that party has asserted the Fifth Amendment privilege. This rule would not justify the conclusion that a summary judgment motion filed by a party asserting the privilege cannot be denied on that basis. Entering a judgment against a party who asserts the Fifth is much different than denying a motion for summary judgment filed by a party who asserts the Fifth. The former situation imposes a high cost for asserting the Fifth Amendment and ends the litigation; the latter merely requires the party asserting the Fifth to

12

> face a trial. In response to Johnson's motion, Guevara was in the former situation; now that
> he has moved for summary judgment against Johnson, he is in the latter.

*See* Dckt. No. 341 at 35-36. It is difficult to track what exactly Plaintiff is arguing here other than

simply bemoaning the unfairness of treating civil defendants who invoke differently than civil plaintiffs

and arguing that there should be essentially an "automatic trial penalty" against any civil defendant for

have the temerity to actually insist upon using the rights that the Constitution affords him. *Id.*

Once again, as Plaintiff's counsel is well-aware, this exact attempt to create ambiguity by

relying on the differing procedural postures of a defendant *moving* for summary judgment versus a

defendant *defending* against one has been explicitly rejected. *See Logan*, 891 F.Supp.2d at 901. In *Logan*

(another one of Plaintiff's counsel's other cases), this exact argument was rejected by Judge Bucklo:

> Plaintiff argues that the facts of the case in front of me are distinguishable from the facts in
> other civil cases to have dealt with the issue of a party's invocation of the Fifth Amendment
> privilege. Specifically, plaintiff contends that the case law does not adequately address the
> situation which presents itself here: defendants invoke their Fifth Amendment privilege during
> discovery and then turn around and seek summary judgment, asserting that the plaintiff has
> no evidence on which to base his claims. The posture of this case is, indeed, different from
> that in *Seguban*, where the movant was the plaintiff and the nonmovants invoked their Fifth
> Amendment rights. But in that case, the Seventh Circuit also recognized that one party's
> silence will inevitably disadvantage the party's opponent, whose case suffers from the inability
> to obtain discovery.
>
> At least two circuit courts [*Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 675 (5th Cir.1999) and
> *Avirgan v. Hull*, 932 F.2d 1572, 1580 (11th Cir.1991)] have concluded that a party's refusal to
> answer questions during discovery is "not enough to create an issue of fact to avoid summary
> judgment." The holdings of Curtis and Avirgan comport with the reasoning of *Seguban*, which
> noted that allowing an adverse inference to supplant the burden of production would "place
> too high a cost" on a party's exercise of its Fifth Amendment privilege. Even in the case before
> me, then, where Logan has been disadvantaged by the failure of defendants Burge, Basile,
> McKenna, Pienta, and DiGiacomo to answer questions during their depositions, plaintiff must
> come forward with some other evidence of defendants' involvement in his injuries. *Id.*
> (citations omitted).

Despite Plaintiff's efforts to complicate this issue by offering confusing analogies and fairness

complaints, this is actually a very simple issue to resolve and not one limited to circumstances where

a defendant has invoked his Fifth Amendment Rights. This issue is one which strikes at the heart of

the burden of proof applicable in civil cases and the entire purpose of Rule 56 in the first place.

Whether a defendant invokes his Fifth Amendment Rights or there is some other reason for the absence of evidence from the record, courts are not allowed to simply order a trial to proceed without a plaintiff affirmatively showing that he will be able to introduce actual evidence supporting his claims to satisfy the burden of proof. *Celotex*, 477 U.S. at 322-23. In other words, the focus is always on what the plaintiff *has* produced not on what the defendant *has not* produced. *Id.* The absence of evidence at the summary judgment stage, means a plaintiff's case is over. *Id.* There is no exception for proof buried within the inference from a defendant's decision to invoke his constitutional rights.

Nor is there any basis (legal, logical, or otherwise) to impose a "automatic trial penalty" on a defendant who has invoked. That is precisely what Rule 56 is designed to *preclude* in the first instance. Summary judgment is routinely referred to as the "put up or shut up" moment in a lawsuit. *See e.g. Brown v. CACH, LLC*, 94 F.4th 665, 667 (7th Cir. 2024)("Summary judgment is the 'put up or shut up' time in litigation."). If Plaintiff has evidence to support a contention on which Defendant Guevara has invoked his Fifth Amendment Rights, now is the time he must show his cards. But, if he does not show the court this evidence now, a trial is not allowed, period.

There is no effective evidentiary difference between a court entering summary judgment for a defendant when there is no evidence to support certain claims and entering a directed verdict for this same defendant at trial when the same dearth of evidence reveals itself there. *See Celotex,* 417 U.S. at 323 *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)("[T]he standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...."). If Plaintiff proceeded to trial and failed to support a claim with evidence other than pointing to Defendant Guevara's invocation, this Court would obviously be required to enter a directed verdict. Forcing a jury to sit through a trial which would fail to produce affirmative evidence (and, thus, result in a directed verdict) does not just penalize an invoking defendant but, rather, penalizes the jury, the judge, and the entire judicial system by wasting resources putting on a "show trial" which is doomed

from the start. This is the entire purpose for courts ruling on summary judgment motions instead of sending every case to a jury trial.

Indeed, the distinction that Plaintiff seeks to make with his convoluted hypothetical is exactly what *Seguban* and *National Acceptance* held were *not allowed*. In both cases, the Seventh Circuit explicitly held that a court was not permitted to bypass an analysis of the evidence supporting a plaintiff's claims merely because an opposing party had invoked his Fifth Amendment Rights to provide affirmative evidence on the claim. *Seguban*, 54 F.3d at 389–92 ("[T]he defendant's silence be weighed in light of other evidence rather than leading directly and without more to the conclusion of guilt or liability…[A]lthough 'the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them', an analysis of that evidence is nonetheless required…"); *National Acceptance Co. of Am.*, 705 F.2d 924 ("It is our best judgment, in the light of *Baxter*, that even in a civil case a judgment imposing liability cannot rest solely upon a privileged refusal to admit or deny at the pleading stage. We conclude that defendant's claim of privilege should not have been deemed an admission, and that plaintiff should have been put to its proof, either by way of evidentiary support for a motion for summary judgment or at trial."). In fact, *Seguban* held that doing otherwise would not only be improper but, indeed, unconstitutional. *Id.* at 391-92 (noting that using Fifth Amendment invocation as affirmative evidence "without regard to the other evidence" supporting the existence of the facts sought to be established "exceeds constitutional bounds.") *citing Baxter*, 425 U.S. at 318; *U.S. v. White*, 589 F.2d 1283 (5th Cir. 1979).

Simply stated, this Court should follow every other case adjudicating this issue and reject Plaintiff's years long crusade to attempt to get a district court to "bite" on their baseless attempts to overrule decades of established legal precedent. Regardless of his decision to use the rights that the Constitution of the United States grants him, Defendant Guevara is entitled to summary judgment in this case for the reasons set forth in the briefs.

WHEREFORE Defendant Reynaldo Guevara prays this Court enter summary judgment in his favor and against Plaintiff and for whatever other relief this Court deems fit.

Respectfully submitted,
BORKAN & SCAHILL, LTD.

By:    /s/ Timothy P. Scahill
           Timothy P. Scahill

Steven B. Borkan
Timothy P. Scahill
Special Assistants Corporation Counsel
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312)580-1030
*Attorneys for Reynaldo Guevara*