# EXHIBIT 13

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUES RIVERA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12-CV-4428 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| REYNALDO GUEVARA et al., ) | |
| ) | |
| Defendants. ) | |

**RULING ON PLAINTIFF'S MOTIONS IN LIMINE NO. 4 TO LIMIT OPINIONS OF DEFENDANTS' PROSECUTOR EXPERT BERNARD MURRAY AND NO. 5 TO LIMIT TESTIMONY OF DEFENDANTS' POLICE PRACTICES EXPERT JEFFREY NOBLE**

In this 42 U.S.C. § 1983 and state law action, plaintiff Jacques Rivera ("Rivera") claims that material, exculpatory documents were withheld from him during his criminal prosecution. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). He claims that he was wrongfully convicted of the 1988 murder of Felix Valentin ("Valentin") as a result of *Brady* violations, and the fabrication of evidence. Plaintiff will attempt to hold the City of Chicago ("the City") liable under *Monell* under several theories, including a "street files" claim that the City had a widespread practice of "maintaining 'street files' that were not routinely disclosed to prosecutors and criminal defendants." *Rivera v. Guevara*, No. 12-CV-4428, 2018 WL 2183998, at *33 (N.D. Ill. May 11, 2018) (quoting the City's characterization of theory); *see also Jones v. City of Chicago*, 856 F.2d 985, 995 (7th Cir. 1988). The court's summary judgment opinion discusses the legal and factual background in detail.

Rivera has filed separate motions in limine seeking to limit the testimony of two experts retained by the City, Bernard Murray ("Murray") and Jeffrey Noble ("Noble"). Many of Murray and Noble's opinions respond to the opinions of Rivera's expert, Michael Brasfield ("Brasfield").

The court recited the standard for admitting expert opinion testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), at summary judgment. *See* 2018 WL 2183998, at *34–35. Minus the summary judgment-only material, the court incorporates that standard as if set forth in full here.

**Plaintiff's Motion in Limine No. 4 to Limit Opinions of Defendants' Prosecutor Expert Bernard Murray**

Murray is a former prosecutor. Rivera seeks to exclude three types of opinions expressed in his report.

The first responds to a comparison conducted by Brasfield. *See* Brasfield Report 40–49. Brasfield reviewed files for homicide investigations for the three years surrounding the Valentin investigation. *See* Brasfield Report 41. Brasfield compared (1) 38 "criminal defense files" produced by the Cook County Public Defender's Office; (2) corresponding "permanent retention files" maintained at the Chicago Police Department's ("CPD") warehouse; and (3) "investigative files" kept in filing cabinets at Gang Crimes North. *See id.*; *see also id.* Attachment F (summarizing files reviewed). Brasfield found that the criminal defense files were missing documents: (a) 74% were missing handwritten notes; (b) 10% were missing General Progress Reports; (c) 17% were missing memoranda. Brasfield Report 43. Brasfield's report states that, "in the majority of cases I reviewed there were significant amounts of relevant information that would have aided the defendant and therefore should have been disclosed under standard police procedures." *Id.* at 45; *see also id.* at 49, 68.

Murray analyzed nine of the files Brasfield reviewed. *See* Murray Report 12–21. He analyzes the missing documents to critique Brasfield's opinions on the significance, or lack thereof, of the missing documents, generally opining that Brasfield's opinions that the documents

2

should have been turned over to defense counsel are speculative and unsupported by a proper analysis of the documents' significance. *See id.*

Conceding that Murray's opinions on the files he reviewed are admissible, plaintiff argues that Murray should be limited to his disclosed opinions on the files he actually reviewed. *See* Fed. R. Civ. P. 26(a)(2)(B), 37(c)(1). Rivera argues that the court should bar Murray from testifying about his opinion on what a comparison of all of the files would have revealed, expressing opinions about the CPD's subpoena unit, and opining on the soundness of the city's written policies. Pl.'s Mot. in Limine No. 4 at 2–3, ECF No. 416.

This request is denied. On the two pages prior to the comparison of nine specific files plaintiff cites, Murray levels systemic criticisms of Brasfield's analysis. He begins by asserting that "[s]ome of the documents that Plaintiff's Expert identifies as missing from the criminal defense files are not substantive investigative material." Murray Report 9. Examples include inventory sheets, envelopes, and letters from prosecutors about a case's outcome. *Id.* Murray also explains that some documents, such as medical examiner reports, would be present in an investigative file but disclosed by a third party to a criminal defendant. *Id.* at 10. Murray explicitly bases his analysis on the summary of the files Brasfield reviewed attached to his report. *Id.* (discussing Brasfield Report Attachment F). Plaintiff ignores this portion of Murray's report in his reply. *See* ECF No. 506 at 6–8. The court therefore has no reason on this record to doubt that experts in Murray's field commonly rely on other experts' summaries. *See Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 618 (7th Cir. 2002) ("Expert 1 may have relied on something prepared using the expertise of Expert 2, who in turn relied on the expertise of Expert 3, and on out until we reach Expert N. There is no reason to assume that Experts 2, 3, and others are 'hiding behind' Expert 1, if the information they produce is commonly relied upon by people

3

in the field of Expert 1."). Murray may offer opinions within the scope of his disclosed opinions critiquing Brasfield's comparison of files, *see* Murray Report 10–11, in addition to the nine files he reviewed.

Second, plaintiff claims that Murray, and defendants in general, should be barred from expressing the opinion that the files produced during discovery in this case by the Cook County Public Defender or private defense attorneys are incomplete. Rivera contends that Murray did not disclose such an opinion or that his opinion only "hints" at it. The court cannot agree. Murray's critique of Brasfield's methodology begins: "First, [Brasfield] assumes that criminal defense attorney's files, as they exist today, contain all the reports produced during pretrial discovery" in the criminal case. Murray Report 21–22. This opinion was therefore disclosed as Rule 26(a)(2)(B) requires.

Plaintiff also argues that there is no evidentiary basis for doubting the completeness of the files. Pl.'s Mot. in Limine No. 4 at 3. At summary judgment, defendants introduced statements from Brasfield that he could not confirm that the files were in the same condition as they were when they were produced, which alone seems to legitimize this issue. *Rivera*, 2018 WL 2183998, at *38. The inference that the files are in the same condition now as they were when the defendant went to trial is a necessary link in the chain of reasoning needed to support a finding for plaintiff on his *Monell* "street files" claim, so he bears the burden of proof on the issue. *See id.* at *37–38; *Jenkins v. Bartlett*, 487 F.3d 482, 493 (7th Cir. 2007). Moreover, Murray discloses the bases for his opinion that the files were not complete in his report. *See* Murray Report 21–22 (explaining that one criminal defense file contained no police reports and that another file included a transmittal letter from a prosecutor to the defense attorney, but the

4

file did not include the documents). Plaintiff does not take issue with this methodology, and Murray's opinions will be admitted.

Third, plaintiff asks the court to bar an opinion about the CPD's handling of subpoenas. *See* Murray Report 4. Defendants concede that if the court excludes Brasfield's opinions on this subject, this issue will be moot because Murray will have nothing to rebut. The court has done so in its ruling on the motions in limine on Brasfield. The parties may, however, ask the court to revisit this issue if reasonable diligence becomes relevant at trial.

The final opinion of Murray's plaintiff seeks to exclude reads in full:

> The CPD developed a policy, Special Order 83-1 and later orders, to ensure compliance with the rules of discovery in criminal cases. From the perspective of a prosecutor, the CPD's policy is good. It requires detectives to turn in all material they generate or receive during an investigation so that it is maintained in the Investigative File for production and use during the criminal case and enhances the prosecutor's ability to fulfill his or her responsibilities under the law. Plaintiff's Expert disclosed in the *Fields*' litigation that, as a police officer, he routinely shredded his investigative notes. Unlike plaintiff's expert's own practice, CPD's policy requires the detectives to submit their handwritten notes as well as their formal reports for inclusion in the file. This policy is beneficial as information contained in a GPR or note will nevertheless be maintained and produced to the prosecutor and defense attorney for later review. It does not matter to the attorneys in the courtroom whether the detectives write their notes on a GPR, a legal pad, in a to/from memo format, or in some other fashion; the crucial point is that the relevant information developed during the investigation is submitted for later use by the prosecutor and defense attorney.

Murray Report 6.

Murray lacks proper support for this opinion. Fed. R. Evid. 702. At his deposition, Murray admitted that he does not know about national police recordkeeping and disclosure practices. *See* ECF No. 416 Ex. 3 at 52–53. Thus, when he opines the policy is "good," he supplies a bottom line conclusion supported by nothing more than a restatement of what the policy requires punctuated with a swipe at Brasfield. *See* Murray Report 6; *Hayes v. Raytheon*

5

*Co.*, 23 F.3d 410, 1994 WL 143000, at *4 (7th Cir. 1994) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." (quoting *Mid–State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*, 877 F.2d 1333, 1339 (7th Cir. 1989))). Murray is therefore barred from expressing his opinion that the City's orders issued in the wake of *Jones*/*Palmer* were "good."

### Plaintiff's Motion in Limine No. 5 to Limit Testimony of Defendants' Police Practices Expert Jeffrey Noble

Jeffrey J. Noble, the City's police practices expert, has 28 years of police experience. Noble Report ¶ 2, ECF No. 417-1. When he retired in 2012, he served as the Deputy Chief of Police of Irvine, California, a city of more than 218,000 people. *Id.* Noble's report cites Brasfield's report repeatedly, sometimes critiques it, and offers his own expert opinions based on his knowledge, skill, experience, and training. For instance, Nobel opines that "[t]here is no generally accepted practice in policing that all investigative material must be maintained in a single centralized location." *Id.* ¶ 13(a). Noble responds to Brasfield's opinions on standard practices for recording what is learned during an investigation, *see* Brasfield Report 32, with the opinion that "officers are trained to document evidence that is pertinent to their investigation, not every possible bit of information." Noble Report ¶ 14(b). Plaintiff objects to two categories of Noble's opinions in his fifth motion in limine.

The first is Noble's assessment of Brasfield's qualifications to express certain opinions. Specifically, Noble expresses an opinion about Brasfield's qualifications to express opinions on what documents should be in a criminal defense attorney's files. Noble's report states that "[n]o reasonable police practices expert would offer an opinion regarding what may be contained within a defense attorney's files on any particular case. Those files are not public documents, they may include attorney-client privileged documents, and police officers do not have any

6

access to a defense attorney's files." Noble Report ¶ 46. This opinion appears to be intended to undercut Brasfield's comparison of CPD-produced files with criminal defense files discussed earlier in this order. *See* Brasfield Report 40–43.

As plaintiff argues, Noble's opinions on Brasfield's qualifications usurp the court's role. Experts cannot express opinions on legal questions; the task of instructing the jury on the law falls to the judge. *United States v. Simon*, 727 F.3d 682, 697 (7th Cir. 2013) (citing *United States v. Farinella*, 558 F.3d 695, 700 (7th Cir. 2009)). The question of whether an expert's testimony is admissible is a legal question for the court to decide. *Stachon v. Woodward*, No. 2:12-cv-440, 2015 WL 5773707, at *2 (N.D. Ind. Sept. 30, 2015) (citing *Hardiman v. Davita Inc.*, No. 2:05-CV-262-JM, 2007 WL 1395568, at *2 (N.D. Ind. May 10, 2007)); *Porter v. Whitehall Labs., Inc.*, 791 F. Supp. 1335, 1342 (S.D. Ind. 1992); *see also* Fed. R. Evid. 104. Under *Daubert*, the court must determine, among other things, that an expert's opinion falls within the scope of his expertise. *Dura Automotive*, 285 F.3d at 615; *Queen v. W.I.C., Inc.*, No. 14-CV-519-DRH-SCW, 2017 WL 3872180, at *4 (S.D. Ill. Sept. 5, 2017). Because Noble attempts to make the scope determination about Brasfield's testimony reserved for the court, Noble Report ¶ 46, Noble's opinion that Brasfield is not qualified to express an opinion on what should have been in criminal defense files is inadmissible.

Plaintiff also objects to quotations in Noble's report from the testimony of Lou Reiter ("Reiter"), a police procedures expert hired by a plaintiff. Twice, Noble quotes Reiter's testimony that the CPD's written orders governing the retention and creation of police investigative documents, special order 83-1, were then "state of the art." Noble Report ¶¶ 14(d), 39 (adding proviso that the special order 83-1 should have included an auditing provision).

7

Because the City has not shown that Noble's Reiter quotations do more than parrot the opinions of another expert on the same subject, the court bars Noble's references to Reiter. Defendants cite *Dura Automotive*, 285 F.3d at 612–13, for the following proposition: "that Mr. Noble relied upon information from others in his field in forming his own conclusions does not necessitate the exclusion of his testimony." Resp. 6, ECF No. 456. *Dura Automotive* explains the principle more precisely. "[I]t is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge *not possessed by the first expert*." *Dura Automotive*, 285 F.3d at 613 (emphasis added). The emphasized language explains why Noble's efforts to quote Reiter must fail. Both experts admittedly have expertise on the same subject, police procedures. The court can discern no synthesis of Reiter's testimony in Noble's report. Noble just amplifies Reiter's opinions. That is improper. *See Paramount Media Grp., Inc. v. Vill. of Bellwood*, 308 F.R.D. 162, 165 (N.D. Ill. 2015). Noble may not mention Reiter's testimony.

## Conclusion

For the reasons stated, plaintiff's motion in limine no. 4, ECF No. 416, is granted in part, denied in part as moot as to Murray's opinions on the CPD's handling of subpoenas, and denied in part. Murray is barred from expressing his opinion that the City's orders issued in the wake of *Jones*/*Palmer* were "good" or from drawing an implied comparison to Brasfield, whose record-keeping obligations are not comparable to those of police officers.

Plaintiff's motion in limine no. 5, ECF No. 417, is granted. Defendants' expert Jeffrey J. Noble is barred from testifying to his opinion that Brasfield is not qualified to express an opinion on what documents should be in a criminal defense attorney's file. Noble also may not refer to

8

the testimony of Lou Reiter.


Date:  June 5, 2018 /s/
Joan B. Gottschall
United States District Judge

9