# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DEMETRIUS JOHNSON,                  )
                                    )
                    *Plaintiff,*    )          Case No. 20 CV 4156
                                    )
v.                                  )          District Judge Sara L. Ellis
                                    )
REYNALDO GUEVARA, *et al.*,         )          Magistrate Judge Heather K. McShain
                                    )
                    *Defendants.*   )

**<u>DEFENDANTS' RENEWED MOTION TO BIFURCATE TRIAL</u>**

<u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD .......................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

   I.   PLAINTIFF'S *MONELL* CLAIM SHOULD BE BIFURCATED BECAUSE A JOINT
      TRIAL WOULD UNFAIRLY PREJUDICE ALL DEFENDANTS. .................................. 4

  II.  BIFURCATION IS APPROPRIATE BECAUSE THE CITY'S LIABILITY DEPENDS
      ENTIRELY ON PLAINTIFF FIRST PROVING LIABILITY AGAINST THE
      DEFENDANT OFFICERS. ............................................................................................. 15

 III.  BIFURCATION OF *MONELL* TRIAL PROMOTES SIGNIFICANT JUDICIAL
      ECONOMY. ................................................................................................................... 18

CONCLUSION .................................................................................................................. 22

## <u>CASES</u>

*Ackerman v. Allen*, 2017 WL 1536447 (N.D. Ill., April 27, 2017) ................................................ 16

*Bradford v. City of Chicago*, 2019 WL 5208852 (N.D. Ill. October 16, 2019 ........................ 4, 17

*Carr v. City of North Chicago*, 908 F.Supp.2d 926 (N.D. Ill. 2012) ..................................... 15, 19

*Castillo v. City of Chicago*, 2012 WL 1658350 (N.D. Ill. May 11, 2012) .................................. 24

*Chlopek v. Federal Insurance Co.*, 499 F.3d 692 (7th Cir. 2007) ....................................... 4, 21, 23

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ................................................................. 18

*Cruz v. City of Chicago*, 2008 WL 5244616 (N.D. Ill. Dec. 16, 2008) ........................................ 4

*Dollard v. Whisenand*, 946 F.3d 342 (7th Cir. 2019) ................................................................. 13

*Estate of McIntosh v. City of Chicago*, 2015 WL 5164080 (N.D. Ill. Sept. 2, 2015) ................. 15

*First Midwest Bank v. City of Chicago*, 988 F.3d 978 (7th Cir. 2021) ........................................ 18

*Gibson v. City of Chicago*, 2021 WL 2127182 (N.D. Ill. April 6, 2021) ..................................... 15

*Horton v. City of Chicago*, 2016 WL 316878 (N.D. Ill. 2016) .................................................... 23

*Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117 (7th Cir. 1999) .................................. 4

*Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647 (7th Cir. 2021) ...................................... 17

*Johnson v. Guevara,* No. 20 C 4156, 2025 WL 903813 (N.D. Ill. Mar. 24, 2025) ..................... 13

*Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988) .............................................................. 12

*Kuri v. City of Chicago*, 409 F.Supp.3d 626 (N.D. Ill. 2019) ..................................................... 20

*Lindsey v. Orlando*, 232 F.Supp.3d 1027 (N.D. Ill. 2017) .......................................................... 18

*Lopez v. City of Chicago,* 2002 WL 335346 (N.D. Ill. Mar. 1, 2002) .......................................... 15

*Medina v. City of Chicago*, 100 F.Supp.2d 893 (N.D. Ill. 2000) ................................................. 19

*Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978) .............................. 1

*Moore v. City of Chicago*, 2007 WL 3037121 (N.D. Ill. Oct. 15, 2007) ..................................... 24

*Moran v. Calumet City*, 54 F.4th 483 (7th Cir. 2022) ................................................................. 18

*Ojeda-Beltran v. Lucio*, 2008 WL 2782815 (N.D. Ill. July 16, 2008) ......................................... 14

*Palmer v. City of Chicago*, 755 F.2d 560 (7th Cir. 1985) ("*Palmer I*") ....................................... 12

*Palmer v. City of Chicago*, 806 F.2d 1316 (7th Cir. 1987) ("*Palmer II*") .................................... 12

*Savory v. Cannon*, 2022 WL 767169 (N.D. Ill. March 14, 2022) ................................................ 24

*Swanigan v. City of Chicago*, 775 F.3d 953 (7th Cir. 2015) ................................................... 18, 24

*Swanigan v. City of Chicago*, 881 F.3d 577 (7th Cir. 2018) ........................................................ 20

*Taylor v. Kachiroubas*, 2013 WL 6050492 (N.D. Ill. Nov. 15, 2013) .......................................... 23

*Treece v. Hochstetler*, 213 F.3d 360 (7th Cir. 2000) ................................................................ 4, 18

*Veal v. Kachiroubas*, 2014 WL 321708 (N.D. Ill. Jan. 29, 2014) ................................................ 14

*Washington v. Boudreau*, No. 16-cv-01893, 2023 WL 184239 (N.D. Ill. Jan. 13, 2023) ....... 14, 16

*Williams v. City of Chicago,* 315 F.Supp.3d 1060 (N.D. Ill. 2018) ........................................ 19, 24

*Wrice v. Byrne*, 14 C 5934, 2020 WL 13961378 (N.D. Ill. June 24, 2020) .................................. 20

## RULES

Fed. R. Civ. P. 42(b) .................................................................................................................. 3, 18

Defendants Reynaldo Guevara, and Geri Lynn Yanow as Special Representative for Ernest Halvorsen (deceased) and William Erikson (deceased) (collectively, "Defendant Officers"), and the City of Chicago (the "City"), by and through their undersigned counsel, in accordance with this Court's order dated May 26, 2021, dkt. 77, renew their motion to bifurcate Plaintiff's claims against Defendant Officers from their claim against the City pursuant to *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978) for trial. Bifurcation is now appropriate because (1) trying the *Monell* claim with the claims against Defendant Officers (two of whom are deceased and who will have no opportunity to testify) will unfairly prejudice all Defendants; (2) as a matter of law, the *Monell* claim is wholly contingent on resolving the claims against Defendant Officers and are unnecessary to try; and (3) bifurcating *Monell* from trial serves interests of judicial economy. In support of their Motion, Defendants state as follows:

## INTRODUCTION

At the outset of this litigation, the Court denied a motion for bifurcation finding that the "Defendants' prejudice argument is premature because the Court cannot determine at this time the evidence the parties intend to introduce at trial, making it difficult to assess the potential prejudice the City and the Defendant Officers would face if the *Monell* claim proceeds alongside the other claims at trial." (5/26/21 Order, dkt. 77, at 3-4). The Court invited a "renewed motion to bifurcate prior to trial based on specific evidence the parties intend to present on the individual and municipal liability claims." (*Id.* at 4). That time is now. The Court has ruled on the parties' various summary judgment motions and set this matter for trial to commence on January 5, 2026, for the remaining claims. (Dkt. 388). A single trial of the fabrication of evidence, *Brady* claims, and derivative claims under both federal and Illinois law (failure to intervene, conspiracy, IIED, and willful and wanton misconduct) against the Defendant Officers and the *Monell* claim against the

City will be extremely complex, time-consuming, unwieldy, and expensive. The parties' recent exchange of proposed trial exhibits, proposed proofs, and anticipated witnesses demonstrates this point. Plaintiff intends to offer approximately 250 exhibits related solely to his *Monell* claim – just one of those exhibits includes over **200,000 pages of documents**, and there are many more exhibits that are equally voluminous. (*See, e.g.,* Plaintiff's Exhibit List, No. 354 labeled "Documents relating to Guevara victim Roberto Almodovar and William Negron," one of over 60 exhibits that include hundreds if not thousands of pages of document labeled "Documents related to Guevara victim XXX"). To be sure, rather than being predicated upon a discrete policy issue stemming from a singular municipal action, Plaintiff's *Monell* claim is complex and predicated upon alleged systemic flaws as well as behavioral norms spanning decades of time. To that end, Plaintiff intends to introduce wide-ranging evidence, including contested past and current pending litigation matters, scores of disputed allegations from other incidents, exhibits that include hundreds of thousands of pages of documents, and more. There can be no question that a simultaneous trial would be unfairly prejudicial to both the City and the Defendant Officers, particularly where this Court has narrowed the *Brady* claims against Defendant Officers to whether one lineup report and/or Guevara's handwritten notes of witness interviews (which are disputed to have existed in the first place) were concealed, which is the only claim that would support the only *Monell* theory Plaintiff will be permitted to pursue at trial (his evidence suppression theory). (3/24/25 Mem. Op., dkt. 395, at 71-77).

Further, despite the Court's granting summary judgment for the City "on all of Johnson's *Monell* claims except for the suppression of evidence claims," (3/24/25 Mem. Op., dkt. 395, at 77), Plaintiff does not believe the Court has narrowed his *Monell* claim, or even that his *Monell* claim is even limited to information that addresses his suppression theory against the City. This is

destined to compound motion practice in an already overly litigated case. The experience in getting Plaintiff to comply with this Court's standing order on Rule 56.1 alone forecasted what is to come when the parties get down to disputing excerpts within the *Monell* evidence Plaintiff has amassed for his proffered trial exhibits. All of which is unnecessary and will only further detract from reaching the core remaining constitutional issues in this case: Did Guevara fabricate Ricardo Burgos' identification and conceal exculpatory notes from witness interviews and did Guevara, Halvorsen, and Erickson conceal the lineup report wherein Aby Gonzalez reportedly identified Bryan Johns. The factual and legal underpinnings to adjudicate those claims are already complex and will command significant resources and marshalling of much evidence and witnesses. *Monell* adds nothing to the merits of those issues and affords Plaintiff not a cent of additional recovery if he proves those claims. The burdens on the trial process and prejudicial effect of the evidence are decidedly unnecessary. This is particularly true because, as summary judgment has made clear, Plaintiff's theory of liability against the City under *Monell* depends completely upon Plaintiff first proving that Defendant Officers violated his constitutional rights, specifically, whether Defendant Officers concealed the disputed evidence. If he does, Plaintiff will be afforded all the relief to which he is entitled and if he does not, he cannot prevail under *Monell*. As explained below, Defendants' Motion should be granted.

## LEGAL STANDARD

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims." Fed. R. Civ. P. 42(b); *Chlopek v. Federal Insurance Co.*, 499 F.3d 692, 700 (7th Cir. 2007) (bifurcation appropriate if it will "prevent prejudice to a party or promote judicial economy"). "If one of these criteria is met, the district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate

the Seventh Amendment," which guarantees a jury trial for civil cases in federal court. *Id.* "District courts approach bifurcation motions with a pragmatic mindset," *Cruz v. City of Chicago*, 2008 WL 5244616, at *1 (N.D. Ill. Dec. 16, 2008), and have "considerable discretion to order the bifurcation of a trial." *Treece v. Hochstetler*, 213 F.3d 360, 364-65 (7th Cir. 2000).

## ARGUMENT

I. **PLAINTIFF'S *MONELL* CLAIM SHOULD BE BIFURCATED BECAUSE A JOINT TRIAL WOULD UNFAIRLY PREJUDICE ALL DEFENDANTS.**

Bifurcation may be proper based on prejudice alone. *See Chlopek*, 499 F.3d at 700 (bifurcation is appropriate *either* to prevent prejudice *or* to promote judicial economy) (emphasis added); *Bradford v. City of Chicago*, 2019 WL 5208852, at *4 (N.D. Ill. October 16, 2019) ("prejudice alone can justify bifurcation"). A court must determine if separate trials would avoid prejudice against a party or serve the purpose of judicial economy, though only one of these criteria needs to be met. *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999).

Here, a combined trial that includes the *Monell* claim in this case will significantly and unnecessarily prejudice both the City and the Defendant Officers, particularly where two of the Defendant Officers, Halvorsen and Erickson, are deceased and therefore cannot defend themselves against the tsunami of *Monell* evidence that Plaintiff will introduce at trial to prove his *Monell* claim. Nor can the City defend itself by examining these Defendant Officers as to their understanding of the CPD policy and procedure.

In addition to Exhibit No. 354, "Documents relating to Guevara victim Roberto Almodovar and William Negron," discussed above, Plaintiff has identified 250 exhibits to support his *Monell* claim:

|   | Exhibit No. | Description |
|---|---|---|
| 1 | 168 | Personnel File of Reynaldo Guevara |

| 2 | 169 | Complaint Register Files and Disciplinary Records of Reynaldo Guevara |
| 3 | 170 | Personnel File of Ernest Halvorsen |
| 4 | 171 | Complaint Register Files and Disciplinary Records of Ernest Halvorsen |
| 5 | 172 | Personnel File of William Erickson |
| 6 | 173 | Complaint Register Files and Disciplinary Records of William Erickson |
| 7 | 174 | Personnel File of Darryl Daley |
| 8 | 175 | Complaint Register Files and Disciplinary Records of Darryl Daley |
| 9 | 176 | Personnel File of John Healy |
| 10 | 177 | Complaint Register Files and Disciplinary Records of John Healy |
| 11 | 178 | Complaint Register History for Guevara, Halvorsen, Erickson, Daley, and Healy |
| 12 | 179 | Training History for Guevara, Halvorsen, Erickson, Daley, and Healy |
| 13 | 180 | Complimentary History for Guevara, Halvorsen, Erickson, Daley, and Healy |
| 14 | 181 | Expert Report of Thomas Tiderington |
| 15 | 182 | Supplemental Report of Thomas Tiderington |
| 16 | 183 | Articles and Literature Cited in Expert Report and Supplement of Thomas Tiderington |
| 17 | 184 | Dataset from Expert Report of Thomas Tiderington - Attachment E, Solache/Reyes |
| 18 | 185 | Dataset from Expert Report of Thomas Tiderington - Attachment F, Sierra |
| 19 | 186 | Expert Report of Thomas Tiderington Attachment H, Expert Report of Michael Brasfield and Data Analysis, Fields |
| 20 | 187 | Expert Report of Thomas Tiderington Attachment I, Expert Report of Michael Brasfield and Data Analysis, Rivera |
| 21 | 191 | Expert Report of Nancy Steblay |
| 22 | 192 | Supplemental Report of Nancy Steblay |
| 23 | 193 | Rebuttal Report of Nancy Steblay |
| 24 | 194 | Articles and Literature Cited in Expert Report, Supplement, and Rebuttal Report of Nancy Steblay |
| 25 | 195 | Steblay Dataset from *Johnson* |
| 26 | 196 | Expert Report of Nancy Steblay in *Iglesias v. Guevara* |
| 27 | 197 | Steblay Dataset from *Iglesias* |
| 28 | 198 | Rebuttal Report of Andrea Lyon |
| 29 | 199 | Expert Report of John Wixted |
| 30 | 200 | Expert Report of John Wixted |
| 31 | 201 | Expert Report of Ronald Muich |
| 32 | 202 | Expert Report of Bernard Murray |
| 33 | 203 | Expert Report of Ralph Rider |
| 34 | 204 | Defendants' Rule 26(a)(2) Expert Disclosure |
| 35 | 243 | 1995-1998 Area Five Investigative Street Files |
| 36 | 244 | 1995-1998 CCPD Files |
| 37 | 245 | 1995-1998 RD Files |
| 38 | 246 | 1991-1995 RD Files |
| 39 | 247 | 1991-1995 Investigative Files |
| 40 | 248 | 1987-1991 CR Files |

| 41 | 249 | Area Five Investigative Street Files from *Rivera* |
| 42 | 250 | Area Five Permanent Retention Files from *Rivera* |
| 43 | 251 | Files from Area North Inspection from *Rivera* |
| 44 | 252 | Criminal Defense Files Corresponding to Area Five Investigative Street Files from *Rivera* |
| 45 | 253 | Cook County State's Attorney Files Corresponding to Area Five Investigative Street Files from *Rivera* |
| 46 | 254 | CCSAO File for Ardell Clemons |
| 47 | 255 | CCSAO File for Guy Rainey |
| 48 | 256 | CCSAO File for Oscar Soto |
| 49 | 257 | CCSAO File for Kimberly Mathis |
| 50 | 258 | CCSAO File for Leon Fields |
| 51 | 259 | IACP 1967 Witness Perception Training Key |
| 52 | 260 | IACP 1992 Showups, Photo IDs, and Lineup Paper |
| 53 | 261 | IACP 1993 Showups, Photo IDs, and Lineup Paper |
| 54 | 262 | G.O. 83-5 (Lineups) |
| 55 | 263 | G.O. 88-18 (Line Up Procedures) |
| 56 | 264 | G.O. 06-02 (Line Up Procedures) |
| 57 | 265 | Detective Division – Identification Procedures 1996 |
| 58 | 266 | S.O. 82-2 and Memo |
| 59 | 267 | 1982 memo regarding street files |
| 60 | 268 | Memo 2 |
| 61 | 269 | April 20, 1982 Teletype |
| 62 | 270 | Detective Division Special Order 83-1 |
| 63 | 271 | Detective Division Special Order 83-2 |
| 64 | 272 | Detective Division Special Order 86-3 |
| 65 | 273 | SOP - Ch. 5,8,18 (1988) |
| 66 | 274 | G.O. 87-7 (Interrogations) |
| 67 | 275 | G.O. 89-3 (Preliminary Investigations) |
| 68 | 276 | G.O. 97-4 (Crime Scene Protection Processing) |
| 69 | 277 | S.O. 06-02 (Line Up Procedures) |
| 70 | 278 | SOP - Ch. 5,8,18 (1992) |
| 71 | 279 | SO 04-03-04 (Interviewing Patients At Cook County Hospital) |
| 72 | 280 | GO 82-14 (Complaints and Disciplinary Procedures) |
| 73 | 281 | Policies on Department Organization |
| 74 | 282 | CPD Unit Designations |
| 75 | 283 | Policies on Felony Review |
| 76 | 284 | Gang Crimes Activity Summary Forms |
| 77 | 285 | Inventory Forms |
| 78 | 286 | Chicago Police Maps |
| 79 | 287 | Chicago Crime Annual Reports 1980-1992 |
| 80 | 288 | Murder Statistic Sheets 1988-1990 |
| 81 | 289 | Fields Street File |
| 82 | 290 | Fields PRF |
| 83 | 291 | Fields Area File |

| | | |
|---|---|---|
| 84 | 292 | Defendant City of Chicago's Answers to Plaintiff's Fifth Set of Interrogatories in Fields |
| 85 | 293 | Trial Transcript from Fields |
| 86 | 294 | Jury Instructions in Fields |
| 87 | 295 | Minute Entry, Verdict Summary |
| 88 | 296 | Judgment in Fields |
| 89 | 297 | Defendants' Combined Post-Trial Motions |
| 90 | 298 | Plaintiff's Response to Defendants' Post-Trial Motions |
| 91 | 299 | Defendants' Reply in Support of their Post-Trial Motions |
| 92 | 300 | Fields Opinion Order |
| 93 | 301 | Palmer v. City of Chicago, 562 F. Supp. 1067 (N.D. Ill. 1983) (Shadur Order) |
| 94 | 302 | Palmer v. City of Chicago, 755 F.2d 560 (7th Cir. 1985) |
| 95 | 303 | Palmer v. City of Chicago, 806 F.2d 1316 (7th Cir. 1986) |
| 96 | 304 | Affidavit of Jeff Haas |
| 97 | 305 | Jones v. City of Chicago, 856 F.2d 985 (7th Cir. 1988) |
| 98 | 306 | Rivera Investigative File |
| 99 | 307 | Rivera Permanent Retention File |
| 100 | 308 | Rivera Criminal Defense Attorney File |
| 101 | 309 | Rivera v. Guevara, City's Response to Plaintiff's 17th RFP |
| 102 | 310 | Rivera v. Guevara, City's Amended Response to Plaintiff's 17th RFP |
| 103 | 311 | Rivera v. Guevara, City's Response to Plaintiff's First Set of Interrogatories |
| 104 | 312 | Rivera v. Guevara, City's Responses and Objections to Plaintiff's Second Set of Interrogatories |
| 105 | 313 | Rivera v. Guevara, City's Answer to Plaintiff's Fourth Set of Interrogatories |
| 106 | 314 | Rivera v. Guevara, City's Answer to Plaintiff's Fifth Set of Interrogatories |
| 107 | 315 | Rivera v. Guevara, City's Answer to Plaintiff's Seventh Set of Interrogatories |
| 108 | 316 | Rivera v. Guevara, City's Answer to Plaintiff's Eighth Set of Interrogatories |
| 109 | 317 | Rivera v. Guevara, City's Answer Plaintiff's Ninth Set of Interrogatories |
| 110 | 318 | Rivera v. Guevara, City's Supp Response to Plaintiff's Interrogatory No. 14 |
| 111 | 319 | Rivera v. Guevara, City's Response to Plaintiff's Second Set of Requests to Admit |
| 112 | 320 | Rivera v. Guevara, City's Response to Plaintiff's Third Set of Requests to Admit |
| 113 | 321 | Rivera v. Guevara, City's Response to Plaintiff's Fourth Set of Requests to Admit |
| 114 | 322 | Rivera v. Guevara, City's Supp Responses and Objections to Interrogatories 2 and 3 of Second Set |
| 115 | 323 | Jury Instructions in Rivera |
| 116 | 324 | Jury Verdict in Rivera |
| 117 | 325 | Judgment in Rivera |
| 118 | 326 | Rivera v Guevara, et al. Defendant City of Chicago's 59(a) Motion for a New Trial |
| 119 | 327 | Rivera v. Guevara, et al. Plaintiff's Response to Defendants' Post-Trial Motion |

| 120 | 328 | Rivera v. Guevara, et al. Defendant City of Chicago's Reply in Support of its Renewed Motion for Judgment |
| 121 | 329 | PC Petition in Rivera |
| 122 | 330 | PC Order in Rivera |
| 123 | 331 | COI Order in Rivera |
| 124 | 332 | Plaintiff's Motion to Compel Discovery |
| 125 | 333 | Wells Report in Rivera |
| 126 | 334 | Appendix A to Wells Report in Rivera |
| 127 | 335 | Rivera v. Guevara Trial Transcript |
| 128 | 336 | Kluppelberg Investigative File, 562-35 |
| 129 | 337 | Kluppelberg Permanent Retention File, Dkts. 562-2 |
| 130 | 338 | Kluppelberg Newly Discovered File, 562-6 |
| 131 | 339 | COI Kluppelberg |
| 132 | 340 | State of IL v. Kluppelberg Report of Proceedings |
| 133 | 341 | Expert Report of Michael Brasfield in Kluppelberg |
| 134 | 342 | Klupperlberg v. Burge, et al. Defendants' Objections and Response to Plaintiff's Third Set of Requests for Admission |
| 135 | 343 | Deposition of Kathleen Loughran |
| 136 | 344 | OIG June 20, 2020 Report |
| 137 | 345 | OIG Sept. 2021 Follow-Up Report |
| 138 | 346 | Documents Regarding Notice to the City of Chicago |
| 139 | 347 | Richard Brzeczek Testimony in Hampton v. City of Chicago, et al., 12-cv-5640 |
| 140 | 348 | Milton Deas Testimony in Hampton v. City of Chicago, et al., 12-cv-5640 |
| 141 | 349 | John Stibich Testimony in Hampton v. Chicago, 12-cv-5640 |
| 142 | 350 | Detective Division File Control Order and Memo, 04/19/1982 |
| 143 | 351 | Detective Division Training Materials from 1988-1996 |
| 144 | 352 | Policy and Procedure Recommendations for the Collection and Preservation of Eyewitness Identification Evidence, 2020 |
| 145 | 353 | Documents relating to Guevara victims Eruby Abrego and Jeremiah Cain |
| 146 | 354 | Documents relating to Guevara victim Roberto Almodovar and William Negron |
| 147 | 355 | Documents relating to Guevara victim Carlos Andino |
| 148 | 356 | Documents relating to Guevara victim Xavier Arcos |
| 149 | 357 | Documents relating to Guevara victim Robert Bouto |
| 150 | 358 | Documents relating to Guevara victim Jose Cruz |
| 151 | 359 | Documents relating to Guevara victim Edwin Davila |
| 152 | 360 | Documents relating to Guevara victim Johnny Flores |
| 153 | 361 | Documents relating to Guevara victim Santos Flores, David Rivera, and Nelson Rivera |
| 154 | 362 | Documents relating to Guevara victims David Gecht, Richard Kwil, and Ruben Hernandez |
| 155 | 363 | Documents relating to Guevara victim Ariel Gomez |
| 156 | 364 | Documents relating to Guevara victim Nelson Gonzalez |
| 157 | 365 | Documents relating to Guevara victim Tony Gonzalez |

8

| 158 | 366 | Documents relating to Guevara victims Juan and Rosendo Hernandez |
|---|---|---|
| 159 | 367 | Documents relating to Guevara victim Geraldo Iglesias |
| 160 | 368 | Documents relating to Guevara victims Juan and Henry Johnson |
| 161 | 369 | Documents relating to Guevara victim David Krueger |
| 162 | 370 | Documents relating to Guevara victims Thomas Kelly, John Martinez, Jose Tinajero |
| 163 | 371 | Documents relating to Guevara victim David Lugo (aka David Colon) |
| 164 | 372 | Documents relating to Guevara victim Jose Maysonet and Alfredo Gonzalez |
| 165 | 373 | Documents relating to Guevara victim Antonio McDowell |
| 166 | 374 | Documents relating to Guevara victim Madeline Mendoza |
| 167 | 375 | Documents relating to Guevara victim Marilyn Mulero |
| 168 | 376 | Documents relating to Guevara victim Reynaldo Munoz |
| 169 | 377 | Documents relating to Guevara victim Edwin Ortiz |
| 170 | 378 | Documents relating to Guevara victim Jorge Pacheco |
| 171 | 379 | Documents relating to Guevara victim Jaime Rios |
| 172 | 380 | Documents relating to Guevara victim Gamalier Rivera |
| 173 | 381 | Documents relating to Guevara victim Jacques Rivera |
| 174 | 382 | Documents relating to Guevara victim Louis Robinson |
| 175 | 383 | Documents relating to Guevara victim Angel Rodriguez |
| 176 | 384 | Documents relating to Guevara victim Ricardo Rodriguez |
| 177 | 385 | Documents relating to Guevara victim Daniel Rodriguez |
| 178 | 386 | Documents relating to Guevara victim Adolfo Rosario |
| 179 | 387 | Documents relating to Guevara victim Fabian Santiago |
| 180 | 388 | Documents relating to Guevara victim Armando Serrano and Jose Montanez |
| 181 | 389 | Documents relating to Guevara victim Thomas Sierra |
| 182 | 390 | Documents relating to Guevara victims Gabriel Solache and Arturo Reyes |
| 183 | 391 | Documents relating to Guevara victim Oscar Soto |
| 184 | 392 | Documents relating to Guevara victim Tyrece Williams |
| 185 | 393 | Documents relating to Guevara victim Eliezer Cruzado |
| 186 | 394 | Documents relating to Guevara victim Voytek Dembski |
| 187 | 395 | Documents relating to Guevara victim Angel Diaz |
| 188 | 396 | Documents relating to Guevara victim Adrian Duta |
| 189 | 397 | Documents relating to Guevara victim Graciela Flores |
| 190 | 398 | Documents relating to Guevara victim Mario Flores |
| 191 | 399 | Documents relating to Guevara victim Adolfo Frias-Munoz |
| 192 | 400 | Documents relating to Guevara victim Rafael Garcia |
| 193 | 401 | Documents relating to Guevara victim Leshurn Hunt |
| 194 | 402 | Documents relating to Guevara victim Almarie Lloyd |
| 195 | 403 | Documents relating to Guevara victim Jose E. Melendez |
| 196 | 404 | Documents relating to Guevara victim Jacqueline Montanez |
| 197 | 405 | Documents relating to Guevara victim Virgilio Calderon Muniz |
| 198 | 406 | Documents relating to Guevara victim Daniel Pena |
| 199 | 407 | Documents relating to Guevara victim David Rivera |
| 200 | 408 | Documents relating to Guevara victim Manuel Rivera |
| 201 | 409 | Documents relating to Guevara victim Maria Rivera |

| 202 | 410 | Documents relating to Guevara victim Ruben Sanchez |
|---|---|---|
| 203 | 411 | Documents relating to Guevara victim Freddy and Concepcion Santiago |
| 204 | 412 | Documents relating to Guevara victim Luis Serrano |
| 205 | 413 | Documents relating to Guevara victim Annie Turner |
| 206 | 414 | Documents relating to Ferdinand Vargas |
| 207 | 415 | Documents relating to Guevara victim Jesus Velez |
| 208 | 416 | Documents relating to Guevara victim Victor Vera |
| 209 | 417 | Documents relating to Guevara victim Melvin Warren |
| 210 | 418 | Armando Serrano Certificate of Innocence |
| 211 | 419 | Jose Montanez Certificate of Innocence |
| 212 | 420 | Robert Bouto Certificate of Innocence |
| 213 | 421 | Almodovar Certificate of Innocence |
| 214 | 422 | Negron Certificate of Innocence |
| 215 | 423 | Jacques Rivera Certificate Innocence |
| 216 | 424 | Iglesias Certificate of Innocence |
| 217 | 425 | Sierra Certificate of Innocence |
| 218 | 426 | Reyes Certificate of Innocence |
| 219 | 427 | Solache Certificate of Innocence |
| 220 | 428 | Daniel Rodriguez Certificate of Innocence |
| 221 | 429 | Gamalier Rivera Certificate of Innocence |
| 222 | 430 | Rosendo Hernandez Certificate of Innocence |
| 223 | 431 | Juan Hernandez Certificate of Innocence |
| 224 | 432 | David Gecht Certificate of Innocence |
| 225 | 433 | Kwil Certificate of Innocence |
| 226 | 434 | David Lugo/Colon Certificate of Innocence |
| 227 | 435 | Nelson Gonzalez Certificate of Innocence |
| 228 | 436 | Madeline Mendoza Certificate of Innocence |
| 229 | 437 | Ray Munoz Certificate of Innocence |
| 230 | 438 | Jaime Rios Certificate of Innocence |
| 231 | 439 | Jose Maysonet Certificate of Innocence |
| 232 | 440 | Samuel Perez 302 |
| 233 | 441 | Mohammed Omar 302 |
| 234 | 442 | FBI investigation, indictment, wiretaps, and trial transcript in United States v. Miedzianowski |
| 235 | 443 | Title III Wiretap of Joseph Miedzianowski, Chad Johnson |
| 236 | 444 | Fred Rock Deposition Transcript |
| 237 | 445 | Materials from City of Chicago's investigation of misconduct by Reynaldo Guevara, conducted by Sidley Austin |
| 238 | 446 | Sidley Austin Montanez/Serrano Report |
| 239 | 447 | June 14, 1993 Report from Serrano Investigation |
| 240 | 448 | Sidley Austin Almodovar/Negron Report |
| 241 | 449 | Sidley Austin Bouto Report |
| 242 | 450 | Sidley Austin Solache/Reyes Report |
| 243 | 451 | Dorsch Trial Testimony in Rivera |
| 244 | 452 | Dorsch Post-Conviction Hearing Testimony in Solache |

| 245 | 453 | Dorsch Post-Conviction Hearing Testimony in Montanez |
| 246 | 454 | Guevara in Behavioral Intervention Program |
| 247 | 455 | Deposition Testimony of Gloria Ortiz Bordoy in Juan Johnson |
| 248 | 456 | Deposition Testimony of Maria Rivera in Juan Johnson (vol. 2) |
| 249 | 457 | Deposition Testimony of Evelyn Diaz in Juan Johnson |
| 250 | 458 | Report of Guevara Retirement |

Even a cursory review of this list demonstrates that Plaintiff intends to interject scores of unrelated documents related to hundreds if not thousands of unrelated incidents in pursuit of his *Monell* claim. And, this list demonstrates, as for Defendant Officers, a joint trial will invite evidence concerning police conduct spanning decades that is entirely unrelated to the conduct of Defendant Officers, the facts of this case, or the relevant time period. First, Plaintiff purports to draw a similarity between a single unsigned lineup report and unidentified handwritten notes of witness interviews in this case and the *file* that was subject to the litigation in *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988), as well as the Seventh Circuit's decisions in *Palmer v. City of Chicago*, 755 F.2d 560 (7th Cir. 1985) ("*Palmer I*") and *Palmer v. City of Chicago*, 806 F.2d 1316 (7th Cir. 1987) ("*Palmer II*"). Indeed, Plaintiff's *Monell* expert, Thomas Tiderington, devotes eleven pages of his sixty-eight-page Report on the history of the *Jones* and *Palmer* cases, CPD's policies in the wake of *Jones* and *Palmer*, and his conclusion that these written policies did not adequately address the *Jones* and *Palmer* "street files" problem.

However, Plaintiff's premise for the theory that *Jones* and *Palmer* established a "problem of system suppression of investigative materials" is flawed. Neither of these cases stands for the proposition that the City had an evidence suppression policy *per se*. In fact, in *Jones*, the Seventh Circuit specifically noted that "the lawfulness of the street files practice has never been adjudicated." 856 F.2d at 995. Furthermore, in *Palmer II*, the Court affirmatively held that the class plaintiffs failed to prove any systemic constitutional violations as a result of the City's "street

file" practice. 806 F.2d at 1320-21. Specifically, the Seventh Circuit found that the class plaintiffs' claims "depend[] on there being exculpatory material in the street files – *and there isn't any*. The suit has been abandoned because it has been shown to have, in fact, *no legal merit*." *Id*. (emphasis added). A single unsigned lineup report and unidentified handwritten notes is nothing like the *Jones* "street file." And while this Court denied the City's *Daubert* motion which sought to bar Tiderington from opining on *Jones* and *Palmer*, this Court expressly concluded that the "City will have the opportunity to question Mr. Tiderington about his knowledge and review of the cases in his cross-examination." *Johnson v. Guevara,* No. 20 C 4156, 2025 WL 903813, at *12 (N.D. Ill. Mar. 24, 2025). Based upon the flaws that, in the City's view, permeate Tiderington's analysis of these two cases, the cross-examination on those points will be extensive. Likewise, Plaintiff's reliance on *Fields v. City of Chicago*, *Rivera v. City of Chicago*, and *Kluppelberg v. City of Chicago* and the analysis conducted by a different expert, Mike Brasfield, that Mr. Tiderington adopted to prop up his street files opinion will similarly inject extensive cross-examination to expose Mr. Tiderington's abject failure to conduct any of the analysis set forth in Mr. Brasfield's opinions. Plaintiff has also identified at least 11 exhibits from the *Fields* civil lawsuit including hundreds of pages of trial testimony, at least 41 exhibits from the *Rivera* civil lawsuit including thousands of pages of trial testimony and at least 8 exhibits from the Kluppelberg civil lawsuit.

Additionally, equally prejudicial is the introduction of non-party officers' actions at trial through the vehicle of hundreds of unrelated homicide investigations that Plaintiff plans to introduce to prove his *Monell* claim —evidence that otherwise would be impermissible propensity evidence barred by Federal Rules of Evidence 403 and 404(b). Plaintiff seeks to use *Monell* to raise the specter of unrelated police misconduct so that Defendant Officers will be found liable by association. But "the concept of guilt by association is repugnant to our notion of elemental justice

and fair play." *Dollard v. Whisenand*, 946 F.3d 342, 359 (7th Cir. 2019). Plaintiff intends, through his expert, to introduce evidence of unrelated homicide files that his expert concluded contained documents that were withheld. This evidence will amount to accusations that the City, through its practices, committed multiple *Brady* violations. Accordingly, if alleged City practices based largely on unrelated homicide cases are shared with the jury, the extreme prejudice suffered by Defendant Officers, two of whom are deceased and have no ability to distance themselves from any of the unrelated investigations and *Brady* accusations, can only be cured by the bifurcation at trial of Plaintiff's claims against Defendant Officers and his *Monell* claim against the City.

Various courts that have bifurcated *Monell* claims for trial agree. *See Washington v. Boudreau*, No. 16-cv-01893, 2023 WL 184239, at *6 (N.D. Ill. Jan. 13, 2023) (finding the risk of unfair prejudice to defendants justified bifurcation, noting that "[i]t is possible, perhaps probable, that a jury would, by association, impermissibly tag the defendant officers with accountability for the notorious and lurid 'Burge era' after having been presented with evidence to that effect"); *Ojeda-Beltran v. Lucio*, 2008 WL 2782815, at *3 (N.D. Ill. July 16, 2008) (finding "there is a real 'danger that evidence admissible on the issues relating to conduct by the City ... will contaminate the mind of the finder of fact in its consideration of the liability of the other defendant[s]" and concluding bifurcation of the *Monell* claim "is a proper means to combat this potential prejudice"); *Veal v. Kachiroubas*, 2014 WL 321708, at *6 (N.D. Ill. Jan. 29, 2014) ("Presenting evidence to the jury regarding [an] [entity]-wide policy, practice or custom involving improper [individual] actions poses a danger of undue prejudice to the [individuals] by creating the perception that the [entity] routinely acts improperly, even if the [individuals] acted properly…."); *Lopez v. City of Chicago,* 2002 WL 335346, at *2 (N.D. Ill. Mar. 1, 2002) ("[w]ithout bifurcation, the jury would likely hear evidence against the City of Chicago's various acts of alleged police misconduct

13

committed by numerous non-party officers to establish a policy or practice. Such evidence can be prejudicial to the individual defendants."); *Carr v. City of North Chicago*, 908 F.Supp.2d 926, 934 (N.D. Ill. 2012) (allegations of misconduct against non-defendants could prejudice defendants' ability to distinguish their own actions from those of other non-party officers and strongly favors bifurcation). Indeed, even courts that have denied bifurcation motions, finding undue prejudice analysis "premature and too speculative" at the early stages of the case, have stated they may still order a bifurcation of trial. *Estate of McIntosh v. City of Chicago*, 2015 WL 5164080, at *9 (N.D. Ill. Sept. 2, 2015); s*ee also Gibson v. City of Chicago*, 2021 WL 2127182, at *3 (N.D. Ill. April 6, 2021) (the court would "consider a renewed motion to bifurcate prior to trial based on specific evidence the parties intend to present on the individual and municipal liability claims").

Jury instructions also cannot prevent Defendant Officers from being irreparably tainted by evidence concerning the conduct of other non-party officers. While courts are divided on the efficacy of limiting instructions, there is no dispute that bifurcation eliminates the risk of prejudice. As then-Chief Judge Castillo wrote in a case presenting the possibility of far less actual prejudice than presented here,

> Bifurcation also reduces the risk of unfairly prejudicial evidence being presented at trial. By their very nature, *Monell* claims normally invite the use of evidence of other instances where municipality employees violated an individual's constitutional rights. Evidence of other non-party officers using excessive force could lead the jury to infer that the Defendant Officers committed similar acts, even if the evidence presented at trial did not support such a finding. It is true that courts may minimize this risk by instructing the jury, and juries are presumed to dutifully follow limiting instructions. *However, while jury instructions may correct for such prejudice, bifurcation avoids it entirely.*

*Ackerman v. Allen*, 2017 WL 1536447, at *5 (N.D. Ill., April 27, 2017) (emphasis added). Chief Judge Castillo added that "[b]ifurcation will also reduce unfair prejudice to Defendants by minimizing the opportunities for the jury to infer the guilt of one party by the acts of another," and

14

while limiting instructions might minimize the prejudice from presenting individual and *Monell* claims in the same trial, "the fact that such prejudice is curable does not mean that it is unavoidable." *Id.* at *7. *See also Washington*, 2023 WL 184239, at *6 ("This case presents one of those perhaps-rare occasions where, in the Court's view, limiting instructions and stipulations are insufficient to ameliorate the potential prejudice to Defendants.").

Finally, bifurcation of the *Monell* claim at trial is necessary to avoid prejudice to the City. Plaintiff has claims against the Defendant Officers other than his *Brady* claims. Specifically, his fabrication of evidence claim related to Guevara's lineup report (no identification of Johns) and the identification of Plaintiff by Ricardo Burgos in both the photo array and lineup that Ricardo viewed, as well as liability stemming from the derivative claims based upon these alleged fabrications. But *Monell* and its progeny provide Section 1983 plaintiffs with a means to hold a municipality liable for its *own* conduct, not a way to establish the City's liability solely by association with Defendant Officers. "*Monell* rejected the common-law theory of respondeat superior liability for an employee's actions. Instead, the Court crafted a new, more restrictive standard to determine when a municipal government itself has caused a deprivation of constitutional rights." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). Trying all claims together makes it much more likely that jurors will misunderstand *Monell* liability and treat it as nothing more than vicarious liability. This point is "compelling" and "counsels in favor of bifurcation." *Bradford*, 2019 WL 5208852, at *4. For these reasons, therefore, Defendants' bifurcation motion should be granted.

## II.  BIFURCATION IS APPROPRIATE BECAUSE THE CITY'S LIABILITY DEPENDS ENTIRELY ON PLAINTIFF FIRST PROVING LIABILITY AGAINST THE DEFENDANT OFFICERS.

Plaintiff cannot prevail against the City as to his *Brady* theory (the only *Monell* theory that

remains after summary judgment) unless he first proves that the Defendant Officers knowingly concealed the Erickson lineup report and/or Guevara witness interview notes (presuming Plaintiff first proves they existed in the first place) that caused him to suffer prejudice at his criminal trial and, in turn, damages. *Moran v. Calumet City*, 54 F.4th 483, 492 (7th Cir. 2022) (setting forth the required elements for § 1983 liability for a fair trial *Brady* claim). Again, there must be "more than simply proving that exculpatory evidence was not disclosed to the defense." *Id*. As the Supreme Court has stated, "if [plaintiff is] unsuccessful in [his] claims against the individual defendants, [he] will no longer have a cause of action against the city." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021); s*ee also Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015). Thus, if Plaintiff does not prove that Defendant Officers concealed the Erickson lineup report or that witness interview notes were created and concealed by Guevara and, the concealment of at least one of those things caused him to suffer prejudice at his criminal trial and damages, then his claim against the City is extinguished.

Pursuant to *Heller*, Plaintiff first must prove his claims against Defendant Officers in order to succeed against the City on his *Monell* claim. For this reason, bifurcation is proper. *See Treece*, 213 F.3d at 364 (approving bifurcation in light of *Heller*); *Lindsey v. Orlando*, 232 F.Supp.3d 1027, 1035 (N.D. Ill. 2017) ("Bifurcating the claims makes particular sense where the *Monell* claim is wholly dependent on the outcome of the cases against the individual defendants."); *Carr*, 908 F.Supp.2d at 930 (bifurcation is appropriate if the plaintiff did not suffer an injury to his constitutional rights); *Williams v. City of Chicago,* 315 F.Supp.3d 1060, 1081 (N.D. Ill. 2018) ("because there is no way that a jury could consistently find the City liable without first finding the Officers liable, this factor weighs in favor of bifurcation").

Indeed, trial of the *Monell* claim asserted by Plaintiff ultimately may be unnecessary under any circumstances. If Defendant Officers are found not liable as to the *Brady* claims, there will be no basis to impose *Monell* liability on the City, for the reasons explained above. Conversely, if one or more of the Defendant Officers are found liable to Plaintiff as to the *Brady* claims, the City will consent to the entry of a judgment against it for any compensatory damages a jury awards against the Defendant Officers, plus reasonable attorney fees, without requiring Plaintiff to prove the remaining elements of Section 1983 municipal liability. *See* "Limited Consent to Entry of Judgment" (attached as Ex. 1). Defendants recognize this Court has previously refrained from adopting this Limited Consent but much has changed since that ruling and now that this matter is set for trial this is no small benefit to Plaintiff, as "the decision of a plaintiff to pursue a *Monell* claim carries with it a heavy burden of discovery and proof." *Medina v. City of Chicago*, 100 F.Supp.2d 893, 894 (N.D. Ill. 2000). Most importantly, even if Plaintiff prevails on his constitutional claims against Defendant Officers, he cannot recover any more compensation against the City even if he were to prevail against the City on his *Monell* claim. S*ee Swanigan v. City of Chicago*, 881 F.3d 577, 582 (7th Cir. 2018) ("Federal common law prevents § 1983 plaintiffs from recovering twice for the same injury. That means Swanigan cannot recover from the City for the prolonged detention because he was compensated for that constitutional violation in his suit against the officers."). In fact, Judge Chang recently found that where there is a verdict against the indemnified defendant officers, there no longer is a case or controversy to proceed on a *Monell* claim. *See Kuri v. City of Chicago*, 409 F.Supp.3d 626, 653 (N.D. Ill. 2019) (denying plaintiff's motion to re-open previously bifurcated *Monell* claim following verdict against individual defendants for lack of "live case or controversy against the City on which Kuri can move forward"); *see also Wrice v. Byrne*, 14 C 5934, 2020 WL 13961378, at *1-2 (N.D. Ill. June

24, 2020) (rejecting plaintiff's attempt to litigate *Monell* claim after prevailing against defendant officers).

The Limited Consent, as a practical matter, allows Plaintiff to obtain a judgment against the City for any compensatory damages to which he is entitled, thereby avoiding altogether the need for trial of the *Monell* claim. This would be true even if any Defendant Officer successfully asserts a qualified immunity defense on the grounds that the offending conduct did not violate a clearly established right. *See* Ex. 1, Consent at ¶5. Thus, the City's Limited Consent eliminates any concern that bifurcation will affect Plaintiff's recovery of compensatory damages.

## III. BIFURCATION OF *MONELL* TRIAL PROMOTES SIGNIFICANT JUDICIAL ECONOMY.

Bifurcation will also further judicial economy. *See* Fed. R. Civ. P. 42(b); *Chlopek*, 499 F.3d at 700 (bifurcation appropriate if it will "prevent prejudice to a party or promote judicial economy"). Here, the significant costs and burdens of trial and the factual and legal complexity of the *Monell* case against the City—considerations relevant to judicial efficiency—militate against a single trial of all claims against all Defendants.

After five years of litigating both the claims against the Defendant Officers and the *Monell* claim against the City, the evidentiary record in this case is massive. Thousands and thousands of pages of documents have been made part of the record. Plaintiff and the City attached more than 300 hundred exhibits culled from this record to their summary judgment and *Daubert* filings related to Plaintiff's *Monell* claim—an accurate predictor of the magnitude of documentary evidence that will be introduced at trial and the length of time required to present this evidence to the jury. As part of pretrial preparation, Plaintiff identified nearly 500 exhibits on his initial list, approximately 250 exhibits of this list (or half of his proposed trial record) are earmarked exclusively for Plaintiff's *Monell* claim, including transcripts of trial and deposition testimony in

other cases, and CCSAO files, homicide files, and certificates of innocence from cases that are wholly unrelated to the present matter. Plaintiff's proposed exhibit no. 354, an exhibit labeled "documents related to Guevara victim Roberto Almodovar and William Negron," alone includes bates-stamps to multiple productions, including in cases other than the present matter, and amounts to **over 200,000 pages of documents**. One such document that is cited for this Almodovar/Negron exhibit, Bates No. Bluhm 033535, is a letter from Senior law students, Tia Trout-Perez and Sarah Terman, at Bluhm Legal Clinic to Roberto Almodovar regarding a potential interview. Roberto Almodovar, Tia Trout-Perez, and Sarah Terman are not on Plaintiff's witness list but the City might have to call them to defend itself.  Further, Defendants will have to respond and rebut this evidence with their own exhibits and witnesses. The Almodovar/Negron 200,000-page exhibit is exemplary of the magnitude of information Plaintiff intends to interject in this trial and demonstrates both the breadth and complexity of a *Monell* trial.  There are approximately 64 other exhibits similarly labeled "documents relating Guevara victim…," all with comparable bates ranges, referencing 79 purported Guevara "victims." (*See* Plaintiff's Exhibit List, Exhibit Nos. 353-417). The majority of the individuals are plaintiffs themselves with currently pending or recently resolved cases.  To the extent Plaintiff is permitted to introduce this evidence, despite Defendants' multiple objections, Defendants will need to rebut that evidence with their own evidence, adding weeks to what is already a lengthy trial.

In addition, a single trial of all claims against all Defendants will require the parties to simultaneously put on separate cases based on categorically different facts and legal theories. The claims against Defendant Officers focus on their investigation of the June 12, 1991, gang-related shooting of Edwin Fred, Raul Ortiz, and Forrest Garnett and Plaintiff's ensuing prosecution that led to his conviction for crimes in connection with that shooting. In stark contrast, Plaintiff's

*Monell* claim implicates countless non-party police officers, supervisors, and command personnel, as well as civilian employees, spanning a quarter-century, and involving multitudinous police-related activities. Municipal liability will depend on a jury sorting through this massive amount of evidence to determine if (1) certain systemic practices exist, (2) the City's final policymakers were deliberately indifferent to them, and (3) those practices caused Defendant Officers to violate Plaintiff's constitutional rights.[1]  Based upon the number of exhibits Plaintiff is seeking to introduce and the number of unrelated events Plaintiff believes is relevant to his *Monell* claim, the jury's task will be overwhelming and will undoubtedly prejudice Defendant Officers.

Facing similar circumstances, courts have granted bifurcation to serve the interests of judicial economy. In *Horton v. City of Chicago*, 2016 WL 316878 (N.D. Ill. 2016), the court found that the trial of the plaintiff's individual claims against the defendant officer "would be longer and more legally and factually complex if the *Monell* claim [was] not bifurcated." *Id.* at *4. The *Horton* court further noted that "[a]lthough the parties have not estimated the number of additional trial days that would be needed for the *Monell* claim, it undoubtedly would take a significant amount of time to present evidence concerning the City policies and practices that allegedly led to [defendant officers] violating [plaintiff's] constitutional rights." *Id.*[2] As a result, the court concluded that "[o]n balance … bifurcation of the *Monell* claim for discovery and trial would 'promote judicial economy.'" *Id.* (citing *Chlopek*, 499 F.3d at 700).

And in *Taylor v. Kachiroubas*, 2013 WL 6050492 (N.D. Ill. Nov. 15, 2013), the court

---

[1] As explained above, these tasks are performed at the risk of blurring the boundary between the conduct of Defendant Officers and that of non-party City employees, to the detriment of the former, *see* discussion *supra* Section I, and as a matter of *Monell* law they are unnecessary. *See* discussion *supra* Section II.

[2] Based on defense counsel's experience, trial of the *Monell* claim will add at least a full week to the trial which will likely last more than three weeks even without it.  Based upon Plaintiff's proposed trial exhibits it is likely that trial of the *Monell* claim could take more than a full week.

employed the following reasoning in its grant of bifurcation:

> In this case, the facts relevant to the claims against the individual defendants are much narrower than those relevant to the claims against [the municipality. Plaintiffs'] claims against the individual defendants hinge on facts related to the investigation of [the murder in question], the alleged coercion of their confessions, and the fabrication and withholding of evidence concerning their involvement in the murder. In contrast, the *Monell* claims will turn on facts including—but not limited to—how the [municipality] trained its police officers, whether [it] was alerted to problems in obtaining confessions or handling juvenile offenders, and how [it] responded to complaints against police officer.

*Id.* at *3. *See also Swanigan v. City of Chicago*, 775 F.3d 953, 963 (7th Cir. 2015) ("District courts, municipal defendants, and even plaintiffs have incentives to minimize duplication of effort in § 1983 cases that combine claims against individual public officials and a municipal defendant. The stipulation and stay of the *Monell* suit in this case achieved the goal of avoiding unnecessary complexity and effort."); *Williams*, 315 F.Supp.3d at 1083 ("instead of focusing on street files from decades ago or broad questions about the City's training or disciplinary policy, the parties can focus on establishing what happened to Williams and whether it violated his constitutional rights."); *Castillo v. City of Chicago*, 2012 WL 1658350, at *6 (N.D. Ill. May 11, 2012) ("There is no doubt that including the § 1983 claims against the City would add greater length and complexity to trial than if the suit were to proceed against the individual officers alone."); *Savory v. Cannon*, 2022 WL 767169, at *5 (N.D. Ill. March 14, 2022) (bifurcation "will allow the parties to more quickly resolve the officer defendants' liability and likely will make the overall litigation far more efficient."); *Moore v. City of Chicago*, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007) ("claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them.").

Moreover, in the interest of judicial economy, as by way of one example, in *Rivera*, the

*Monell* evidence added approximately 5 days to the trial, including the testimony of 6 experts and 2 30(b)(6) witnesses. Likewise, this case includes 4 experts and perhaps 3 30(b)(6) witnesses (depending on this Court's resolution of objections), adding an expected 5 days to the trial.

## CONCLUSION

In considering the "specific evidence the parties intend to present on the individual and municipal liability claims," prudential concerns—the avoidance of unfair prejudice, deference to the relationship between individual and municipal liability, and promotion of judicial economy—are paramount. As explained above, bifurcation is the proper procedural mechanism to address these concerns. Accordingly, Defendants ask this Court to bifurcate for trial Plaintiff's claims against Defendant Officers from their *Monell* claims against the City, and for any further relief this Court deems just.

Dated: July 18, 2025

Respectfully submitted,

/s/ Eileen E. Rosen

Eileen E. Rosen
*One of the Attorneys for City of Chicago*

Eileen E. Rosen
Theresa B. Carney
Catherine M. Barber
Austin G. Rahe
Lauren M. Ferrise
Rock Fusco & Connelly, LLC
333 W. Wacker Drive, 19th Floor
Chicago, IL 60606
312-474-1000
erosen@rfclaw.com

/s/ Josh M. Engquist

Josh M. Engquist
*One of the Attorneys for deceased Defendants Halvorsen and Erikson*

Josh M. Engquist
James G. Sotos
David A. Brueggen
Elizabeth R. Flemming
The Sotos Law Firm, P.C.
141 W. Jackson, Suite 1240A
Chicago, IL 606064
630-735-3300
jengquist@jsotoslaw.com

/s/ Timothy P. Scahill

Timothy P. Scahill
*One of the Attorneys for Defendant Guevara*

Timothy P. Scahill

22

Borkan & Scahill, Ltd.
20 S. Clark St., Suite 1700
Chicago, IL 60603
312-580-1030
tscahill@borkanscahill.com