**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEMETRIUS JOHNSON | ) | |
| | ) | Case No. 20 CV 4156 |
| Plaintiff, | ) | |
| | ) | Hon. Sara L. Ellis, |
| v. | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, et al. | ) | |
| | ) | |
| *Defendants*. | ) | JURY TRIAL DEMANDED |
| | ) | |

**PLAINTIFF'S CORRECTED CONSOLIDATED RESPONSE IN
OPPOSITION TO DEFENDANTS' MOTIONS REGARDING
OTHER BAD ACTS OF DEFENDANT REYNALDO GUEVARA**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES ..................................................... **Error! Bookmark not defined.**

INTRODUCTION ............................................................................................................. 1

APPLICABLE LEGAL FRAMEWORK ................................................................................ 4

OTHER BAD ACTS OF REYNALDO GUEVARA ............................................................... 6

A.      Relevant Rule 404(b) Evidence Relating to Chicago Police Officer William Dorsch ...... 7

B.      Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of Juan Johnson (404(b) Witnesses Sam Perez and Sal Ortiz) ...................................................................... 9

C.      Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of Thomas Sierra (404(b) Witness Jose Melendez) ...................................................................................... 11

D.      Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of Roberto Almodovar and William Negron (404(b) Witness Kennelly Saez) .................................. 13

E.      Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of Luis Serrano (404(b) Witness Evelyn Diaz) ...................................................................................... 14

F.      Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of Jacques Rivera (Cross-Examination Only) ............................................................................................ 15

G.      Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of Geraldo Iglesias (Cross-Examination Only) ............................................................................................ 20

H.      Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of Robert Bouto (Cross-Examination Only) ............................................................................................ 22

I.      Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of David Colon (Cross-Examination Only) ............................................................................................ 23

J.      Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of Jose Montanez and Armando Serrano (Cross-Examination Only) .......................................................... 25

K.      The City of Chicago's Own Investigation of Guevara Corroborates the Evidence Set Out Above .......................................................................................................................... 26

ADMISSIBILITY OF OTHER ACTS EVIDENCE ............................................................... 27

A.      Other-Acts Evidence Is Admissible to Show Defendants' Intent ..................................... 27

B.      Other-Acts Evidence Is Admissible to Show Absence of Mistake or Accident ............... 31

C.      Other-Acts Evidence Is Admissible to Show Knowledge ................................................ 32

D.      Other-Acts Evidence Is Admissible to Show Opportunity .............................................. 34

E.      Other-Acts Evidence Is Admissible to Show Identity ..................................................... 35

F.      Other-Acts Evidence Is Admissible to Show Preparation and Plan ................................ 37

G.     Other-Acts Evidence Is Admissible for Other Permissible Purposes As Well................ 38

H.     Defendants' Arguments to Exclude This Evidence Lack Merit ........................................ 41

I.      Federal Rule of Evidence 403 Does Not Call for Exclusion, Particularly Given Limiting Instructions.................................................................................................................... 43

J.      Guevara's Argument That Other Bad Acts Were Not Disclosed Is Frivolous ................ 44

K.     Judicial Determinations of Guevara's Misconduct .......................................................... 50

CONCLUSION ...................................................................................................................... 51

## TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Batchelor v. City of Chicago*, No. 18-cv-8513, 2020 WL 13647794 (N.D. Ill. Nov. 17, 2020) ................................................................................................................ 5

*Burton v. City of Zion*, 901 F.3d 772 (7th Cir. 2018) .................................... 4, 5, 33, 34

*Cazares v. Frugoli*, 2017 WL 4150719 (N.D. Ill. Sept. 19, 2017) .............................. 40

*Daniels v. Williams*, 474 U.S. 327 (1986) ................................................................. 27

*David v. Caterpillar*, 324 F.3d 851 (7th Cir. 2003) ............................................ 49, 50

*Davies v. Benbenek*, 2014 WL 12660537 (N.D. Ill. May 28, 2014)............................. 5

*Edwards v. Thomas*, 31 F. Supp. 2d 1069 (N.D. Ill. 1999) ............................ 28, 40, 43

*Harris v. City of Chicago*, No. 14-cv-4391, 2018 WL 2183992 (N.D. Ill. May 11, 2018)............ 4

*Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd*., 1996 WL 680243 (N.D. Ill. 1996) ............................................................................................................ 48, 49

*Hill v. City of Chicago*, 2011 WL 3840336 (N.D. Ill. Aug. 30, 2011) ........................ 38

*Holmes v. Godinez*, 2016 WL 4091625 (N.D. Ill. Aug. 2, 2016) ............................... 39

*Huddleston v. United States*, 485 U.S. 681 (1988) ................................................... 41

*Jackson v. Esser*, 105 F.4th 948 (7th Cir. 2024)...................................................... 4, 5

*Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503 (7th Cir. 1997)................... 40

*Lange v. City of Oconto*, 28 F.4th 825 (7th Cir. 2022).................................... 29, 33, 39

*Meridian Fin. Advisers, Ltd., v. Pence*, 2010 WL 2772840 (S.D. Ind. 2010) ............. 48

*Molnar v. Booth*, 229 F.3d 593 (7th Cir.2000) ......................................................... 38

*People v. Allen*, 420 N.W.2d 499 (Mich. 1988) ........................................................ 44

*Petrovic v. City of Chicago*, 2008 WL 818309 (N.D. Ill. Mar. 21, 2008) ................... 42

*Rivera v. Guevara*, No. 12-cv-04428, 2018 WL 11468923 (N.D. Ill. June 1, 2018) ........... passim

## TABLE OF AUTHORITIES

*Se-Kure Controls, Inc., v. Vanguard*, 2007 WL 781253 (N.D. Ill. 2007) .................................... 50

*Shields v. United States*, 2017 WL 1196830 (N.D. Ill. Mar. 31, 2017) ........................................ 36

*State Farm v. Campbell*, 538 U.S. 408 (2003) ................................................................. 40

*United States v. Anifowoshe*, 307 F.3d 643 (7th Cir.2002) ................................................. 42

*United States v. Anzaldi*, 800 F.3d 872 (7th Cir. 2015) ................................................... 29

*United States v. Arnold*, 773 F.2d 823 (7th Cir. 1985) .................................................... 29

*United States v. Bell*, 624 F.3d 803 (7th Cir.2010) ....................................................... 38

*United States v. Brown*, 31 F.3d 484 (7th Cir. 1994) ...................................................... 43

*United States v. Brown*, 471 F.3d 802 (7th Cir. 2006) ................................................. 37, 42

*United States v. Burrows*, 48 F.3d 1011 (7th Cir. 1995) ................................................... 34

*United States v. Chaverra-Cardona*, 879 F.2d 1551 (7th Cir. 1989) ........................................ 34

*United States v. Clark*, 774 F.3d 1108 (7th Cir. 2014) .................................................... 37

*United States v. Connelly*, 874 F.2d 412 (7th Cir. 1989) .................................................. 37

*United States v. Curtis*, 781 F.3d 904 (7th Cir. 2015) .................................................... 29

*United States v. DeFillipo*, 590 F.2d 1228 (2d Cir. 1979) ................................................. 30

*United States v. Gomez,* 763 F.3d 845 (7th Cir. 2014) ................................................ passim

*United States v. Grabiec*, 563 F.2d 313 (7th Cir. 1977) ................................................... 40

*United States v. Harris*, 536 F.3d 798 (7th Cir. 2008) .................................................... 33

*United States v. Hernandez*, 84 F.3d 931 (7th Cir. 1996) .................................................. 32

*United States v. Hillsberg*, 812 F.2d 328 (7th Cir. 1987) ................................................. 32

*United States v. Hudson*, 884 F.2d 1016 (7th Cir. 1989) ................................................... 36

*United States v. Johnson*, No. 24-2027, 2025 WL 1541048 (7th Cir. May 30, 2025) ......................... 29

# TABLE OF AUTHORITIES

*United States v. King*, 627 F.3d 641 (7th Cir. 2010) .................................................... 39

*United States v. Kreiser*, 15 F.3d 635, 640 (7th Cir. 1994) .................................... 32, 42

*United States v. Macedo*, 371 F.3d 957 (7th Cir. 2004) .......................................... 29

*United States v. Macedo*, 406 F.3d 778 (7th Cir. 2005) .......................................... 42

*United States v. McGee*, 408 F.3d 966 (7th Cir. 2005).......................................... 39

*United States v. Mireles*, 116 F.4th 713 (7th Cir. 2024)..................................... 29, 44

*United States v. Nolan*, 910 F.2d 1553 (7th Cir. 1990) ........................................ 29

*United States v. Shackleford*, 738 F.2d 776 (7th Cir. 1984) ................................ 36

*United States v. Smith*, 80 F.3d 1188 (7th Cir. 1996) ........................................... 39

*United States v. Taylor*, 728 F.2d 864 (7th Cir. 1984)........................................... 38

*United States v. Thomas*, 986 F.3d 723 (7th Cir. 2021)................................ 31, 36, 37

*United States v. Tylkowski*, 9 F.3d 1255 (7th Cir. 1993) ....................................... 32

*United States v. Urena*, 844 F.3d 681 (7th Cir. 2016) ........................................... 33

*United States v. Vance*, 764 F.3d 667 (7th Cir. 2014) ........................................... 37

*United States v. Walter*, 870 F.3d 622 (7th Cir. 2017) ............................................ 4

*United States v. White*, 68 Fed. App'x 707 (7th Cir. 2003)................................... 33

*United States v. Wimberly*, 60 F.3d 281 (7th Cir. 1995).......................................... 42

*United States v. Wormick*, 709 F.2d 454 (7th Cir. 1983 ......................................... 28

*United States v. York*, 933 F.2d 1343 (7th Cir. 1991)............................................. 42

*Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557 (7th Cir. 1990)......................... 39

*Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993) ...................................... passim

*Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917 (2004)....................40

## TABLE OF AUTHORITIES

*Wrice v. Burge*, 2016 WL 6962838 (N.D. Ill. Nov. 29, 2016) ...................................................... 39

*Young v. Rabideau*, 821 F.2d 373 (7th Cir. 1987) ................................................................. 28, 32

**Rules**

Fed R. Civ. P. 26(a)(1).................................................................................................................... 50

Fed. R. Evid. 404(b)............................................................................................................... passim

Plaintiff, DEMETRIUS JOHNSON, by his attorneys, respectfully submits this consolidated response in opposition to Defendants' Motion *In Limine* No. 8, Dkt. 402 at 31-34, and Defendants' Motion *in Limine* No. 13, *id.* at 43-59, stating in support as follows:

## INTRODUCTION

Evidence of other acts of misconduct committed by Defendant Reynaldo Guevara is admissible in this case. *United States v. Gomez* provides that other-act evidence is admissible under Rule 404(b) "when its admission is supported by some propensity-free chain of reasoning." 763 F.3d 845, 856 (7th Cir. 2014) (*en banc*). In light of the defenses sure to be presented at trial by Defendant Guevara, there are ample propensity-free reasons for this Court to admit other-acts evidence.

Consider the starkly different accounts the jury will hear explaining Plaintiff's wrongful conviction for the Fred murder. According to Plaintiff, Guevara and the other Defendants decided to frame Plaintiff, manufactured false evidence to implicate him in the crime, including a fabricated identification from an eyewitness, and suppressed exculpatory and impeachment evidence that could have been used to undermine key State's witnesses, and that could have been used to prove Plaintiff's innocence. Defendants will dispute Plaintiff on each of these points. They will tell the jury that they did not commit any police misconduct; that they did not fabricate false evidence or reports; that they did not suppress evidence; and that Plaintiff was properly arrested, prosecuted, and convicted of murder. And they will argue that they would not have— indeed, could not have—committed the grossly illegal misconduct of framing an innocent man. As explained in this response, it is these disputes—and the defense theories advanced by Defendants—that justify admitting other-acts evidence at trial.

Though there are permissible uses of other-acts evidence in this case, Plaintiff recognizes that this does not mean that he can conduct a three-ring circus about Guevara's reprehensible past misconduct. Indeed, Guevara's misconduct is so expansive and well documented that it would be impossible to scratch the surface in the time allotted for trial. Plaintiff has no intention of holding a series of mini-trials on Guevara's other acts. Instead, cognizant of this Court's limited time to complete this trial, and consistent with Rule 403, Plaintiff will limit his presentation of this evidence to calling no more than four or five live witnesses to testify about other acts, and to cross-examining Guevara and other Defendants about a limited and defined set of other acts. Though there are a number of fact patterns discussed in this response, to be clear Plaintiff is not intending to explore all of them at trial. He expects the Court to limit his presentation.

Moreover, the presentation of these cases can be enormously streamlined for two significant and uncommon reasons: (1) Defendant Guevara does not deny any of the misconduct set out below. Instead, he is pleading his Fifth Amendment right not to incriminate himself in response to all questions about these cases, and so the proof of many of these other-acts fact patterns will take mere minutes. (2) The fact patterns below from *Rivera* and *Juan Johnson* have been adjudicated already to judgment against Guevara, so he cannot dispute those facts due to issue preclusion.

Moreover, although there is an ample amount of compelling other-acts evidence described in this response, the undeniable reality that Guevara was a singularly bad police officer does not warrant the conclusion that the evidence against him would be unduly prejudicial because of its strength. On the contrary, the fact that there is such a developed body of past, proven misconduct makes the evidence more reliable and probative of the permissible purposes

2

for which other-acts evidence is admissible under Rule 404(b). Indeed, former Chicago Police Officer Dorsch and the City's own investigation of Guevara confirm the reliability and probative value of this other-acts evidence.

In addition, the jury can be instructed that the other-acts evidence is only relevant to the specific permissible uses identified in this response, which will avoid the danger of the jury drawing the impermissible propensity inference. Defendants are correct that there is always some danger of unfair prejudice in the introduction of this type of evidence, but the Seventh Circuit in *Gomez* made crystal clear that limiting instructions rather than exclusion are the way to deal with that danger of prejudice. 763 F.3d at 860-61. Moreover, even without a limiting instruction, there is no reasonable argument that a limited presentation of other-acts evidence, which is extremely probative of issues in the upcoming trial on which 404(b) dictates that other-acts evidence is admissible, is *substantially outweighed* by the danger of unfair prejudice. Presented in the limited way that Plaintiff proposes, other-acts evidence passing muster under Rules 404(b) and 403 can be introduced without prolonging the trial and avoiding the danger of prejudice.

On the other hand, if the Court excluded all of the other-acts evidence relating to Guevara at trial, then Defendants would have free rein to tell the jury a version of the story of the Fred investigation that would make it appear as if the whole thing was an honest mistake. Allowing Defendants to take that position in the face of volumes of evidence showing that there was nothing at all accidental about what happened to Plaintiff would be unfairly prejudicial to Plaintiff in the extreme. This Court should deny Defendants' motion to exclude other-acts evidence, consistent with the following outline for presentation of that evidence.

## APPLICABLE LEGAL FRAMEWORK

Rule 404(b) bars evidence of other acts offered "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). But it allows other-act evidence for "another purpose," including but not limited to "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2); *United States v. Walter*, 870 F.3d 622, 628 (7th Cir. 2017).

In *United States v. Gomez*, the Seventh Circuit overhauled its test for determining whether evidence is admissible under Rule 404(b), 763 F.3d 845, 856 (7th Cir. 2014) (*en banc*), and has since "stressed that *Gomez* requires judges to look 'more generally to the Federal Rules of Evidence,'" *Jackson v. Esser*, 105 F.4th 948, 963 (7th Cir. 2024) (quoting *Burton v. City of Zion*, 901 F.3d 772, 779 (7th Cir. 2018)). *Gomez* holds that Rule 404(b) "allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning." 763 F.3d 845, 856 (7th Cir. 2014) (*en banc*); see also *id.* at 856 ("[T]he district court should not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevant to that purpose—or more specifically, how the evidence is relevant without relying on a propensity inference"). Nevertheless, "[o]ther-act evidence need not be excluded whenever a propensity inference can be drawn." *Id.* at 860. After analyzing whether other-acts evidence is admissible under Rule 404(b), including whether a jury could "find by a preponderance of the evidence that the other act was committed," *Harris v. City of Chicago*, No. 14-cv-4391, 2018 WL 2183992, at *16 (N.D. Ill. May 11, 2018) (quoting *Gomez*, 763 F.3d at 854), the Court applies Rule 403 as well. *Gomez*, 763 F.3d at 857.

Before discussing the other-acts of Guevara and the particular propensity-free permissible uses of other-acts evidence that apply in this case, it is important to point out that the Seventh Circuit has clarified that under *Gomez*, the similarity of other acts to those at issue in a case remains a proper consideration for 404(b) relevancy analysis, but it is not dispositive. See, *e.g.*, *Jackson*, 105 F.4th at 963 (quoting *Burton*, 901 F.3d at 779) ("Sometimes similarity . . . will be relevant to the inquiry and sometimes [it] will not. If [it is] not, then a court may not reject the evidence based on a lack of similarity . . . .").

Furthermore, the Seventh Circuit has endorsed the use of other-acts evidence almost exactly like the evidence that Plaintiff seeks to introduce here, in circumstances nearly identical to this case. In *Wilson v. City of Chicago*, the Seventh Circuit reversed a district court's decision to exclude at trial evidence of Chicago Police Officer Jon Burge's other acts of witness coercion, which were similar to the acts of witness coercion at issue in the case going to trial, holding that those other acts were admissible to show intent, opportunity, preparation, and plan, as well as to impeach Burge's denial that he had engaged in those acts. 6 F.3d 1233, 1238 (7th Cir. 1993); see also *Davies v. Benbenek*, 2014 WL 12660537, at *3 (N.D. Ill. May 28, 2014) (recognizing that the other acts in *Wilson* were probative of the defendant police officers "having the means, intent, and ability to use force against suspects during their interrogation at a police station"); *Rivera v. Guevara*, No. 12-cv-04428, 2018 WL 11468923, at *5 (N.D. Ill. June 1, 2018) (finding *Wilson* controlled 404(b) analysis for probing intent, absence of mistake, and knowledge); *Batchelor v. City of Chicago*, No. 18-cv-8513, 2020 WL 13647794, at *7 (N.D. Ill. Nov. 17, 2020) (finding *Wilson* controlled 404(b) analysis for probing "motive, intent, plan, preparation, knowledge, absence of mistake, or modus operandi in utilizing manufactured and false polygraph

examination results to coerce a confession, in addition to possible impeachment material" at discovery stage). *Wilson* dictates admission of other-acts evidence in this case.

## OTHER BAD ACTS OF REYNALDO GUEVARA

Reynaldo Guevara has an extensive history of gross misconduct. It is no exaggeration to say he is likely responsible for more wrongful murder convictions than any other officer ever employed by the Chicago Police Department, including Jon Burge. At least 51 men and women have been exonerated after being wrongly convicted of murder as the result of Guevara's misconduct—together they served centuries behind bars.[1] Guevara's misconduct has led to investigative probes by the City of Chicago itself, the Cook County State's Attorney, and others. His corruption has been widely recognized by state and federal judicial and executive authorities. More than 20 civil cases are currently pending in this District concerning Guevara's misconduct in murder investigations. In all of those cases Guevara used techniques to fix cases the same as those he used to frame Plaintiff here.

That said, Plaintiff is not attempting to present this whole history of misconduct at trial. Doing so would take months, and the parties have much less time to complete the trial. Instead, and contrary to Defendants' suggestion, Plaintiff has already strictly limited the Rule 404(b) evidence that he intends to rely upon at trial. He has cut his witness list to 10 Rule 404(b) witnesses, including former Chicago Police Officer Dorsch, who is a witness with knowledge of Guevara's past efforts to rig identifications in a murder case. Plaintiff intends to call at most four

---

[1] As of the filing of this complaint, 51 people have had their convictions thrown out because of Defendant Guevara's misconduct. They are Jacques Rivera, Juan Johnson, Jose Montanez, Armando Serrano, Jorge Pacheco, Roberto Almodovar, William Negron, Jose Maysonet, Angel Rodriguez, Santos Flores, Arturo DeLeon-Reyes, Gabriel Solache, Ariel Gomez, Xavier Arcos, Ricardo Rodriguez, Robert Bouto, Thomas Sierra, Geraldo Iglesias, David Gecht, Richard Kwil, Ruben Hernandez, Juan Hernandez, Rosendo Hernandez, Ray Munoz, David Lugo, Carlos Andino, Daniel Rodriguez, Jaime Rios, Jose Cruz, Marilyn Mulero, Nelson Gonzalez, Johnny Flores, Adolfo Rosario, Eruby Abrego, Jeremiah Cain, Edwin Davila, Alfredo Gonzalez, Gamalier Rivera, Fabian Santiago, Madeline Mendoza, John Martinez, Jose Tinajero, Thomas Kelly, Louis Robinson, Tony Gonzalez, Edwin Ortiz, Oscar Soto, David Krueger, Tyrece Williams, Antonio McDowell, and Plaintiff Demetrius Johnson.

or five of those witnesses live at trial. The limited other presentation of other-acts of Guevara and others will be presented by way of cross-examination.

Moreover, Plaintiff has already limited the other-acts evidence to those instances in which Guevara fabricated false police reports documenting investigative information that was manufactured, fabricated eyewitness statements and suspect identifications, and suppressed exculpatory and impeachment evidence, just as Guevara did in Plaintiff's case. In so doing, Plaintiff has excluded from this response a large volume of cases that involve Guevara committing other kinds of misconduct that are no longer or never were at issue in this case, for example cases in which he extracted false confessions from suspects using physical force and psychological abuse during interrogations.

Plaintiff describes the other-acts evidence he anticipates using in this section.[2]

### A. Relevant Rule 404(b) Evidence Relating to Chicago Police Officer William Dorsch

William Dorsch is a former Chicago police detective who worked at Area Five and has first-hand knowledge about Guevara's fabrication of witness identifications and false reports during a murder investigation that Dorsch was working. See Ex. 1 (Dorsch Testimony from Solache Post-Conviction Hearing) at 74:18-151:22; Ex. 2 (Dorsch Testimony from Montanez Post-Conviction Hearing) 56:7-192:15; Ex. 3 (Dorsch Testimony from Jacques Rivera Trial). Dorsch has testified about this misconduct in the past. *Ibid.* In *Rivera v. Guevara*, in response to a motion to exclude Rule 404(b) evidence from Guevara, Judge Gotschall permitted Dorsch to testify. Ex. 4-12 (No. 12-cv-4428, Dkt. 407, 411, 478, 479, 494, 540, 570, 582, 600.).

---

[2] While the admissibility of other-acts evidence might change depending on testimony and argument from Defendants at trial, Plaintiff anticipates that the following accurately represents the bulk of the Rule 404(b) evidence that he seeks to present at trial.

At trial, Dorsch will testify that, a number of months before Guevara made detective in 1990, Dorsch was assigned to investigate a murder that had occurred in the Humboldt Park neighborhood. During the investigation, Guevara brought two juveniles into the police station, who had purportedly witnessed the shooting and had supposedly recorded the license plate number of the car in which the shooter was riding. Ex. 3 (Dorsch Testimony from Jacques Rivera Trial) at 2746:1; Ex. 13 (*Rivera*, No. 12-cv-4428 Doc. No. 317) at ¶154.

In a conference room of Area Five, Dorsch created a photo array so that the two juveniles could attempt to identify the shooter. Doc. No. 317 at ¶154; see also Ex. 2 (Dorsch Testimony from Montanez Post-Conviction Hearing) at 66-67; Ex. 3 (Dorsch Testimony from Jacques Rivera Trial) at 2746:10-18. The first of the two juveniles viewed the photo array for a long period of time, and before he had identified any person, Guevara put his finger on the suspect's photo and said, "That's him." Ex. 2 (Dorsch Testimony from Montanez Post-Conviction Hearing) at 68-69; Ex. 3 (Dorsch Testimony from Jacques Rivera Trial) at 2747:15-20. In response, the juvenile adopted Guevara's story and identified the suspect he had pointed out. *Id.* at 69; Ex. 3 (Dorsch Testimony from Jacques Rivera Trial) at 2748:1-17. Dorsch then directed Guevara to leave the room, and Dorsch alone performed the photo identification procedure with the second of the two juveniles. *Id.* at 69-70. The second juvenile was unable to make an identification. *Id.*

After the photo identification procedures, Dorsch conducted a live lineup, in which the first juvenile selected the suspect who Guevara had pointed out in the photo array, and the second did not make an identification. *Id.* at 76-77. Based on the identification, the suspect was charged with murder. *Id*. at 78. Ex. 3 (Dorsch Testimony from Jacques Rivera Trial) at 2748:24 - 2749:4. Subsequently, Dorsch spoke to the two juveniles without Guevara present, and they admitted that

they had been paid to falsely claim that the suspect was the person responsible for the shooting. *Id.* at 81-82. Ex. 3 (Dorsch Testimony from Jacques Rivera Trial) at 2749:20-24. Prosecutors spoke to the two juveniles, and the suspect was released. *Id.* at 83. Ex. 3 (Dorsch Testimony from Jacques Rivera Trial) at 2750:12-14.

### B. Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of Juan Johnson (404(b) Witnesses Sam Perez and Sal Ortiz)

Juan Johnson was wrongly convicted of the September 1989 murder of Ricardo Fernandez. The crime occurred in Humboldt Park, in the street outside of a nightclub, where Fernandez was beaten to death. Ex. 14 (*Johnson v. Guevara* Trial Transcript) at 11-14. Guevara and Defendant Gawrys and Mingey investigated the crime. Ex. 14 (*Johnson v. Guevara* Trial Transcript) at 1450-1451; see also Ex. 15 (Supp. Report produced in *Johnson v. Guevara* signed by Gawrys, Guevara, and Mingey).

The day after Fernandez was killed, Guevara approached 404(b) witness Samuel Perez (aka "Spanky"), put him inside his car, showed him photographs of Johnson and three other men, and told Perez that he did not care who got charged for the murder but that he thought it should be Johnson and the three others depicted. Ex. 16 (Sam Perez Dep. in *Johnson v. Guevara*) at 90-92, 95; see also Ex. 14 (*Johnson v. Guevara* Trial Transcript) at 618-620.

After talking with Perez, Guevara approached 404(b) witness Sal Ortiz on the corner of Kostner and Armitage. Ex. 14 (*Johnson v. Guevara* Trial Transcript) at 1016. There, Guevara put some photographs of Johnson and others on his car and told Ortiz that they were the people responsible for killing Fernandez. *Id.* at 1017-1020. At the police station, Guevara showed Ortiz three photographs, told him that they were going to do a live lineup, and instructed him to identify the person in the first photo as the one who had beaten Fernandez with a 2"x4", the second photo as the person who had held a bat during the crime, and the third as the person who

had fought with bottles and bricks. *Id.* at 1046. The photograph of the first person was Johnson. Ortiz then identified those people in the live lineup. *Id.* at 1047. At Johnson's criminal re-trial, Ortiz testified that Guevara had shown him photographs of Johnson and had instructed him to pick Johnson from a lineup. Ex. 14 (*Johnson v. Guevara* Trial Transcript) at 1053, 1090.

Both Perez and Ortiz provided depositions and trial testimony in *Johnson v. Guevara* describing Guevara's eyewitness manipulations. Ex. 16 (Sam Perez Dep. in *Johnson v. Guevara*) at 90-92, 95, 104-106, 112; see also Ex. 17 (Sal Ortiz Dep. I in *Johnson v. Guevara*) at 137-147; see also Ex. 14 (*Johnson v. Guevara* Trial Transcript) at 618-626, 1016-1020, 1046-1052, 1111-1113.

After spending 12 years in prison for a crime he did not commit, Johnson was exonerated in 2004, when he was granted post-conviction relief, re-tried, and acquitted. Doc. No. 314-1 at 64. Subsequently, Johnson sued Guevara in 2005, alleging that Guevara had violated his right to due process by manufacturing false identifications during the investigation. See *Johnson v. Guevara, et al.*, No. 05-cv-1042 (N.D. Ill.).

In 2009, a jury returned a verdict of $21 million for Johnson on those claims and judgment was entered. Ex. 14 (*Johnson v. Guevara* Trial Transcript) at 2133. Guevara is therefore precluded from relitigating these facts. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) ("[Preclusion] has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party . . . and of promoting judicial economy by preventing needless litigation."); *Bailey v. Andrews*, 811 F.2d 366, 369 (7th Cir. 1987) (explaining that for issue preclusion to apply in a § 1983 suit, four requirements must be met: (1) the issue must be the same as that involved in the prior judicial proceeding; (2) the issue must actually have been

litigated; (3) the issue must have been resolved; and (4) the issue must have been necessary to the judgment in the prior proceeding).

### C.     Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of Thomas Sierra (404(b) Witness Jose Melendez)

Thomas Sierra was wrongly convicted of the 1995 shooting murder of Noel Andujar and spent 22 years in prison before he was exonerated in January 2018. See generally Ex. 18 (*Sierra v. Guevara, et al.*, No. 18-cv-3029, Dkt. 1 (N.D. Ill. Apr. 30, 2018)). The crime, which occurred in Logan Square on May 23, 1995, involved a shooting between two moving cars. Ex. 19 (Expert Report of Tiderington in *Sierra*), Ex. 20 (Expert Report of Dysart in *Sierra*). Immediately after the incident, while they were still at the scene, the two eyewitnesses—Jose Melendez and Alberto Rodriguez—who had been riding in the car with Andujar told police that they could not describe the shooter, except to say that he was a Latino male. Ex. 21 (General Offense Case Report - *Sierra*) at AR-L 120247-120248. The car in which the shooter had been riding had tinted windows that were rolled up throughout the shooting. *Id.*

The day after the shooting, Guevara, Mingey, and other police officers were assigned to the case. Ex. 22 (Guevara Supp. Report) at AR-L 120253-120254. Despite there being no eyewitness identification of any person, Guevara decided on a theory that Sierra had been involved in the shooting, and he worked to obtain an identification of Sierra. *Id.* at AR-L 120255-120257.

On May 30, 1995, Guevara brought Melendez and Rodriguez to Area Five to view a live lineup. Before the lineup, they showed Melendez and Rodriguez each a photo array. After the photo arrays, Melendez and Rodriguez were shown a lineup simultaneously, in which they purportedly selected Sierra. Ex. 22 (Guevara Supp. Report) at AR-L 120263-120264.

However, Melendez has testified in Sierra's civil case that Guevara fabricated his identification of Sierra out of whole cloth. Ex. 23 (Melendez Deposition in *Rivera*). Melendez

11

testified that he told Guevara that he did not know who the shooter was and could not identify him; that during a photo array Guevara held a photo of Sierra in his hand and told him that the photo depicted the perpetrator, saying that he had reason to believe that Sierra was the perpetrator Ex. 23 (Melendez Deposition in *Rivera*) at 132:17-135:10; and that Guevara told him to identify Sierra as the shooter. Guevara fabricated a false report about the identification procedure that does not make any mention of the true circumstances of these identifications. Ex. 22 (Guevara Supp. Report) at AR-L 120255-120257.

In addition, Guevara had brought a car that he thought had been used by Sierra in the shooting to the parking lot of Area Five. Guevara showed the car to Melendez and Rodriguez, who told him that it was not the car used in the shooting. Ex. 25 (Rodriguez Testimony in *People v. Sierra*) at E113-114; see also Ex. 23 (Melendez Deposition in *Rivera*) at 147:10-155:15. Nonetheless, Guevara falsely reported that Melendez and Rodriguez "both identified the [car] as the car from which Thomas Sierra fired his gun." Ex. 22 (Guevara Supp. Report) at AR-L 120269. Based on these identifications, Sierra was convicted of the Andujar murder.

After spending more than two decades in prison, Sierra was exonerated in 2018, when he was granted post-conviction relief and the Cook County State's Attorney dropped all charges against him. Ex. 26 (Order Vacating Conviction in *People v. Sierra*). In 2022, Sierra was granted a certificate of innocence. Ex. 27 (Order Granting COI in *People v. Sierra*).

Sierra sued Guevara in 2018, alleging that he had violated his right to due process by fabricating false police reports, fabricating false witness statements and identifications, and suppressing material exculpatory evidence. The case was litigated through summary judgment before Judge Robert Blakley. See Ex. 28 (18-cv-3029, Dkt. 520; Plaintiff's Response to Summary Judgment); Ex. 29 (Plaintiff's Statement of Facts). While summary judgment was

pending, Sierra settled his claims against all Defendants for $17.5 million. Ex. 30 (*Sierra Settlement Agreement*).

###### D. Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of Roberto Almodovar and William Negron (404(b) Witness Kennelly Saez)

Roberto Almodovar and William Negron were wrongly convicted of the 1994 murders of Jorge Rodriguez and Amy Merkes and both served 23 years in prison before they were exonerated in 2017. See generally *Negron v. Guevara, et al.*, 18-cv-2701, Dkt. 1 (N.D. Ill. April 18, 2018). The murders occurred on the night of August 31, 1994. According to Guevara, a witness described one of the offenders as having a rectangular head with long hair, which matched Almodovar's description. See Ex. 31 at 2 (Guevara September 13, 1994 Supp Report). When Guevara learned that Almodovar had a friend, Negron, he used photographs of the two men to obtain identifications from the two eyewitnesses, who then implicated Almodovar and Negron at trial.

In reality, no one had ever described any of the offenders as having a rectangular face and long hair. See Ex. 32 (September 1, 1994 Supp. Report) at 33114 (describing one of the suspects, who was not identified as Almodovar, as having a long face). While still in the hospital recovering from a wound sustained in the shooting, the first witness was visited and reported that police officers showed her two photographs and told her that the people in the photos committed the shooting. See Ex. 33 at 2 (Melinda Power Affidavit).

The second witness, Kennelly Saez, in recanting his trial testimony, testified that a Latino detective showed him photographs of Almodovar and Negron and told him that they were the culprits. See Ex. 34 (Saez Testimony in *People v. Negron*) at CCSAO 035474-81. It is undisputed that Guevara was the detective who obtained identifications from both of these witnesses. Ex. 35 (Guevara Testimony in *People v. Almodovar*). Eventually, the State dismissed

all charges against Almodovar and Negron and they were each granted a certificate of innocence. See Ex. 36 (Certificates of Innocence for Negron and Almodovar).

### E. Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of Luis Serrano (404(b) Witness Evelyn Diaz)

Luis Serrano was wrongly convicted of the murder of Raul Rodriguez in Logan Square and was sentenced to 55 years in prison. Rodriguez was shot to death on his way to work in the early morning hours at the corner of Kedzie and Armitage on August 19, 1995. Ex. 37 (Police File re: Homicide of Raul Rodriguez) at JR-JJ 018765-71.

The day after the shooting, Guevara found Serrano standing at the same intersection where the shooting had occurred. *Id.* at JR-JJ 018775. Guevara took Serrano to the station, took his photograph, and released him. *Id.* The next day Guevara showed the photo of Serrano to the victim's brothers, who purportedly told Guevara that Serrano was wearing a chain belonging to their deceased brother in the photo. *Id.* at JR-JJ 018773-75. A day later, the brothers allegedly told Guevara that they had spoken to a woman named Evelyn Diaz who had witnessed the shooting. *Id.* at JR-JJ 018775-76.

According to his report, Guevara interviewed Diaz in Rodriguez's brother's apartment on August 22. The report states that Diaz gave descriptions of several men she saw outside her apartment on the morning of the shooting, that she had seen Rodriguez as he was leaving for work that morning, and that she had looked away from the window for three or four minutes, at which point she heard gunshots, looked out the window, and saw Rodriguez lying on the ground. *Id.* at JR-JJ 018776. The report states that Diaz positively identified Serrano as one of the men she had seen that morning in a photo array. *Id.* at JR-JJ 018777.

Diaz gave a deposition on July 2, 2008 in *Johnson v. Guevara*, No. 5-cv-1042 (N.D. Ill. 2005). Diaz disputed what the police reports said about her witnessing the shooting and

identifying Serrano. She testified that Guevara's report was largely fabricated. Ex. 38 (Diaz

Dep.) at 56-57. Guevara came to her apartment, and told her she had to come to the police station

with him or else he would take her child away. *Id.* at 46:16-49:12; Ex. 37(Police File re:

Homicide of Raul Rodriguez) at JR-JJ 018776-77. At the police station, Guevara showed her a

book with photographs in it. Ex. 38 (Diaz Dep.) at 64-67. Guevara repeatedly showed Diaz one

photograph and asked her if she knew the man in the photo. *Id.* Guevara told her that the man

was the shooter. *Id.* Guevara showed her a photograph of the suspect and told her it "was the

guy." *Id*. at 57, 69-70. Diaz told Guevara that she did not recall seeing the man on the night of

the shooting. *Id*. at 70. Guevara told her that she better identify the shooter or that he was going

to send her to jail and take her son away. *Id*. at 71. Guevara's report of this identification

procedure does not make any mention of the true circumstances of these identifications. Ex. 37

(Police File re: Homicide of Raul Rodriguez) at JR-JJ 018765- JR-JJ 018789.

###### F.     Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of Jacques Rivera (Cross-Examination Only)

Jacques Rivera was wrongly convicted of the 1988 murder of 16-year-old Felix Valentin.

See generally Ex. 39 at 1-6 (12-cv-4428, Dkt. 321; Plaintiff's response in opposition to summary

judgment in *Rivera v. Guevara*). Valentin was shot 11 times while sitting in his car, and died in

the hospital two weeks later. Ex. 40 (PX11 – General Offense Case Report with Fax Stamp) He

initially told police the shooter was between 16 and 18 years old and later reported that he had

been shot by a member of the Imperial Gangsters. Ex. 41 (PX19C - General Offense Report

Missing Lopez Name and Other Information); Ex. 42 (PX12 – 8/??/88 General Progress Report);

Ex. 43 (PX19B - 8/31/88 Supplementary Report Regarding Valentin Identification of

Rodriguez); Ex. 44 (June 5, 2018 Transcript of Proceedings) at 136–37, 152–54. The lone

potential eyewitness, Orlando Lopez, provided a barebones description of the shooter as an 18

year old wearing a black jacket, dark pants, and gym shoes. Ex. 42(PX12 – 8/??/88 General Progress Report); Ex. 44 (June 7, 2018 Transcript of Proceedings) at 585-89.

Rivera, who was 23 years old at the time, did not match the description, and no evidence tied him to the crime. Nevertheless, Guevara targeted Rivera as the only suspect. After spending more than 20 years in prison for a crime he did not commit, Rivera was exonerated in 2011. He sued in 2012, and in 2018, a jury found Guevara, Gawrys, Mingey, and the City of Chicago liable and awarded Rivera over $17 million in damages. Ex. 46 (*Rivera* Verdict).

Guevara controlled every aspect of the investigation. On the day of the shooting, Guevara requested Rivera's rap sheet and had his mugshot printed. However, according to Guevara's version of events in his September 16 closing report, Rivera did not become a suspect until August 29, 1988—two days after Guevara inexplicably pulled Rivera's records and photograph—when he was identified by Lopez in a gang photobook. There is no explanation for why Guevara was focused on Rivera as a suspect two days before he was a suspect. Ex. 47 (PX1A – 9/16/88 Report); Ex. 48 (PX4 – Rivera Rap Sheet Issued on Inquiry 8/27/88); Ex. 42 (PX12 – 8/??/88 General Progress Report); Ex. 49 (PX66 – Jacques Rivera Photograph); Ex. 50 (June 8, 2018 Transcript of Proceedings) at 576-77, 674-75; 681-99, 816-17, 931-35; Ex. 51 (June 12, 2018 Transcript of Proceedings) at 1278-79, 1296, 1324; Ex. 52 (June 13, 2018 Transcript of Proceedings) at 1648-1657; Ex. 53 (June 14, 2018 Transcript of Proceedings) at 1736-50, 1763-64; Ex. 11 (June 19, 2018 Transcript of Proceedings) at 2509; Ex. 55 (June 20, 2018 Transcript of Proceedings) at 2760.

On August 31, Guevara and other officers placed Rivera in a live lineup, which Lopez viewed. Ex. 56 (PX14 – 8/31/88 General Progress Report); Ex. 57 (PX62 – Photos of First Lineup); Ex. 45 (June 7, 2018 Transcript of Proceedings) at 529-35. Lopez picked a filler, not

Rivera. Three fillers confirmed the lineup occurred, Ex. 58 (June 11, 2018 Transcript of Proceedings) at 1011-19, 1057-61; Ex. 59 (June 25, 2018 Transcript of Proceedings) at 3711-21, and Lopez himself confirmed that he participated in two lineups, with the first occurring shortly after the shooting. Ex. 52 (June 13, 2018 Transcript of Proceedings) at 1651; Ex. 60 (Designated Deposition Testimony of Orlando Lopez) at 178. There would have been a police report created had Lopez selected Rivera, but the report was suppressed. Ex. 45 (June 7, 2018 Transcript of Proceedings) at 548-554, 629-630. Because the lineup did not produce the result Guevara and his colleagues wanted, they wrote a false report claiming the lineup could not be completed because Lopez could not be located, and that they instead conducted a photo array with a different witness. Ex. 13 (Plaintiff's Combined Local Rule 56.1(b)(3)(B) Statement, Dkt. 317) at ¶¶ 36–37, 67–68.

Guevara suppressed all documentation of the lineup—including hold papers, the GPR, and lineup photographs—by keeping them in an investigative file that was never disclosed to prosecutors or defense counsel. Ex. 61 (June 6, 2018 Transcript of Proceedings) at 205–06; Ex. 51 (June 12, 2018 Transcript of Proceedings) at 1387–89, 1399, 1422–23; Ex. 62 (June 21, 2018 Transcript of Proceedings) at 3100–03, 3131–32; Ex. 63 (PX19 – Valentin Investigative Street File) at 57, 59, 64; Ex. 57 (PX62 – Photos of First Lineup); Ex. 64 (PX269 - Documents That Are In Valentin Investigative Street File But Not In Judge Wadas's Criminal Defense File). One of the only documents in the file that was disclosed was the false report stating the lineup never happened. Ex. 65 (PX19F – 9/1/88 Report, First Lineup).

Guevara suppressed additional CPD investigative materials from the Valentin homicide. Both prosecutors and the defense requested all of the investigative files. Ex. 50 (June 14, 2018 Transcript of Proceedings) at 1375-84; Ex. 66 (PX39 – Wadas Motion for Discovery); Ex. 46

(PX40 – State's Answer to Discovery); Ex. 68 (PX43A - Police Records in Judge Kenneth Wadas's Criminal Defense File); Ex. 62 (June 21, 2018 Transcript of Proceedings) at 3103-05, 3109-17. Neither prosecutors nor the defense received the complete investigative files. Ex. 64 (PX269 - Documents That Are In Valentin Investigative Street File But Not In Judge Wadas's Criminal Defense File); Ex. 69 (June 18, 2018 Transcript of Proceedings) at 2243-51; Ex. 53 (June 14, 2018 Transcript of Proceedings) at 1395-1412; Ex. 62 (June 21, 2018 Transcript of Proceedings) at 3099-3114. Many investigative notes or reports were not turned over. Ex. 64 (PX269 - Documents That Are In Valentin Investigative Street File But Not In Judge Wadas's Criminal Defense File).

Another report that was disclosed in the criminal case was a 9/16 report which contained one of Guevara's most unrealistic fabrications: a fabricated identification of Rivera by the victim, Valentin, shortly before Valentin's death. Ex. 47 (PX1A – 9/16/88 Report); Ex. 53 (June 14, 2018 Transcript of Proceedings) at 1704-06. There was no contemporaneous documentation of this alleged identification, just the 9/16 report, weeks after the fact. Ex. 63 (PX19 – Valentin Investigative Street File); Ex. 53 (June 14, 2018 Transcript of Proceedings) at 1705-07. Years later, Guevara's colleague testified that Valentin had made an "unreliable" identification of Rivera, which directly contradicts the report, which says that Rivera was identified. Ex. 53 (June 14, 2018 Transcript of Proceedings) at 1707-16; Ex. 47 (PX1A – 9/16/88 Report); Ex. 53 (June 14, 2018 Transcript of Proceedings) at 1715-16.

In reality, by the date of the purported identification, Valentin was effectively in a coma. According to Dr. Sharkey, his treating physician in the hospital after the shooting, and his medical records, at the time that Guevara purportedly obtained Valentin's identification of Rivera, Valentin was not responsive, his neurological functioning was ceasing, he had no

reaction to painful stimuli and his pupils did not react to light, and he was on heavy doses of drugs that induced paralysis so that he would not involuntarily kick the breathing machine that was keeping him alive. Ex. 70 (PX31A - Felix Valentin Medical Records Discussed by Dr. Sharkey); Ex. 71 (Designated Deposition Testimony of Dr. Arthur Sharkey) at 27-45; Ex. 52 (June 13, 2018 Transcript of Proceedings) at 1680; Ex. 53 at 1687, 1707-09. He could not have identified anyone, and did not identify a photo of Rivera at all on that day. Ex. 71 (Designated Deposition Testimony of Dr. Arthur Sharkey) at 55-56, 175-178. Guevara falsely reported Valentin's identification of Rivera, without reporting the true circumstances of that purported identification.

Dr. Sharkey already testified in the civil case, and his qualifications were ruled upon by the court—this Court does not need to re-adjudicate the validity of his testimony because it has already been established. Moreover, Guevara cannot contest any of the above facts because there is a judgment against him on all of these issues, and issue preclusion prevents him from litigating them here. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) ("[Preclusion] has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party . . . and of promoting judicial economy by preventing needless litigation."); *Bailey v. Andrews*, 811 F.2d 366, 369 (7th Cir. 1987) (explaining that for issue preclusion to apply in a § 1983 suit, four requirements must be met: (1) the issue must be the same as that involved in the prior judicial proceeding; (2) the issue must actually have been litigated; (3) the issue must have been resolved; and (4) the issue must have been necessary to the judgment in the prior proceeding); see also Ex. 46 (Verdict in *Rivera*); Ex. 110 (Judgment in *Rivera*). Accordingly there will be no dispute at trial about these facts—they can simply be presented to a jury via cross examination.

19

### G.     Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of Geraldo Iglesias (Cross-Examination Only)

Geraldo Iglesias was wrongly convicted of the 1993 shooting murder of Monica Roman in Logan Square and spent nearly two decades in prison before he was exonerated in 2019. *See generally Iglesias v. Guevara, et al.*, No. 19-cv-6508, Doc. No. 278 (N.D. Ill. Mar. 24, 2024). The crime was a lone gunman firing into a fully passengered automobile, killing Monica Ramon who was sitting in the front passenger seat, and it occurred on June 7, 1993. *Id.* Immediately after the incident, responding detectives interviewed all of the witnesses who had been in the car with Roman and all of the witnesses at the scene. Ex. 73 (6/7/1993 Supplemental Report) at RFC-Iglesias 139–53. None, including Rosendo Ochoa and Hugo Rodriguez, got a good look at the shooter nor could any make an identification. *Id.* (absence of such information). Many circumstances of the shooting made it impossible for Ochoa and Rodriguez to see the shooter, let alone make an identification. Pl. Resp. Defs. Mot. Summ. J. 4–5, *Iglesias*, No. 19-cv-6508, Dkt. 278.

Weeks after the shooting the case went cold, and that's when Guevara, Halvorsen, and other police officers got involved. *Id.* at 5–6. Guevara pulled Iglesias's rap sheet, decided on a theory that he had been involved in the shooting, and worked to obtain his identification. *Id.* On June 23 and June 24, 1993, Defendants fabricated all of the evidence implicating Iglesias in the murder. Defendants then created a report of their handiwork, which included: false claims that Ochoa and Rodriguez—two weeks after the murder—could now identify Iglesias, and a fabricated confidential informant's statement. Ex. 74 (Closing Report, 6/24/1993) at RFC-Iglesias 119, 121, 123, 125; Ex. 75 (6/23/1993 Ochoa Lineup Supplementary Report); Ex. 76 (6/23/1993 Rodriguez Lineup Supplementary Report) at RFC-Iglesias 133; Ex. 77 (Deposition of Stephen Gawrys) at 67:23-68:21 (their names at bottom of report means they were involved in

preparing the report).  Based solely on Defendants' report recounting fabricated witness statements, Iglesias was charged, detained, and prosecuted for Roman's murder. Ex.74 at RFC-Iglesias 123, 125; Ex. 78 (Deposition of Michael Latz) at 24:3–13, 46:6–25.

But the case against Iglesias was weak. About a month after Iglesias had been charged, Guevara and Halvorsen forced a jailhouse informant named Francisco Vicente to recount a story that Guevara and Halvorsen had fabricated: that while Vicente had been in Cook County Jail, he ran into Iglesias, who confessed to shooting Monica Roman. This interaction between Vicente and Iglesias never occurred, but Guevara and Halvorsen forced Vicente to adopt the statement they had fabricated by physically abusing him, threatening him, and making him promises—none of which were disclosed. *Id.*

And this wasn't the first time they had done so with Vicente: In other cases, using the same physical abuse, threats, and promises, Guevara and Halvorsen forced Vicente to falsely claim that four other innocent men—Jose Montanez, Armando Serrano, Angel Pacheco, and Robert Bouto—had each confessed to him about other crimes in which Guevara and Halvorsen were the investigating detectives. Ex. 79 (Expert Report of Nancy Franklin); Ex. 80(Certificate of Innocence Hearing Transcript).  All were wrongly convicted, and this information was suppressed in each of their trials. Ex. 81 (Deposition of Francisco Vicente in *Bouto* and *Iglesias*) at 69:15–71:3, 74:1–10, 75:4–77:14, 89:18–91:10, 91:18–92:2, 98:19–99:10, 143:19–145:6, 145:23–146:5, 146:16-147:21.

Guevara and Halvorsen fabricated reports recounting fabricated witness statements, and throughout trial suppressed the true circumstances of the force, threats, and promises Defendants used to obtain fabricated accounts. Ex. 111; Ex. 112; Ex. 81 at 69:15-71:3, 98:2-14, 280:22-282:5, 283:2-285:12; Exs. 113 & 114, (omitted from police files), Ex. 115 (no mention in

prosecution file). At trial, Vicente testified about the fabricated confession that Iglesias purportedly made to him in Cook County Jail. Ex. 82 (Trial Testimony of Francisco Vicente) at V15-22. Based on Defendants' report recounting these fabricated identifications, confidential informant tip, and jail-house confession, Iglesias was convicted of the Roman murder. Ex. 116 at AA27; Ex. 117 at EP Subpoena Response 88-89.

Vicente has since testified to the truth of Defendants' report consistently, across multiple depositions and sworn statements in recent years that the statements he made against Iglesias and the other four men were all false; they were all manufactured by Guevara and Halvorsen; and that he was forced to give those statements because of physical abuse, threats, and promises from Guevara and Halvorsen. Ex. 81 at 69:15-71:3, 74:1-10, 75:4-77:14, 89:18-91:10, 91:18-92:2, 98:19-99:10, 143:19-145:6, 145:23-146:5, 146:16-147:21, 283:2-285:12; Ex. 111; Ex. 112.

In Iglesias's subsequent litigation against Defendants for violating his constitutional rights, Defendants conceded that they were not entitled to summary judgment on the issue of Vicente's account. Ex. 72 (Pl. Resp. Defs. Mot. Summ. J. at 15, *Iglesias*, No. 19-cv-6508, Dkt. 278). After Guevara and Halvorsen pled the Fifth, the City of Chicago conducted an investigation into allegations of misconduct against Defendant Guevara, and concluded as part of that investigation that Vicente's statements implicating Iglesias and all four other men were false and fabricated. Ex. 81 at 244:11; 224:11-233:23; Ex. 48 at 19:17-22:1; 46:20-48:6; 296:13-297:2, 247:24-248:5; Ex. 101 at 34, 44; Ex. 103 at 48-50, 57-58.

### H. Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of Robert Bouto (Cross-Examination Only)

Robert Bouto was wrongly convicted of the 1993 murder of Salvadore Ruvalcaba. His conviction was eventually overturned, but not until he had been incarcerated 23 years. Ruvalcaba was murdered on May 14, 1993, and the initial reports described the shooter as having a

22

ponytail. See Ex. 83 (General Offense Case Report - Bouto). Two witnesses, Carl Richmond and Rey Lozada, identified Bouto from a lineup conducted by Guevara. See Ex. 84 (Guevara May 16, 1993 Report). Although Bouto did not have a ponytail, and presented alibi testimony from two witnesses, he was nevertheless convicted and imprisoned. See Ex. 85 (Line-up photos taken the day of the shooting, depicting Mr. Bouto without a ponytail); Ex. 86 (Alibi Trial Testimony of Astefan and Kandah).

After trial, both Richmond and Lozada came forward to reveal that their identifications had been fabricated by Guevara. Both were permitted to view Bouto in custody at the police station before viewing the lineup conducted by Guevara. See Ex. 87 ¶¶ 6-7 (Richmond Affidavit); Ex. 120 ¶6 (Lozada Affidavit). Richmond explained that Guevara told him that he had caught the shooter, and that all Richmond and Lozada had to do was identify Bouto. See Ex. 87 ¶ 9 (Richmond Affidavit). Bouto's conviction was overturned on April 30, 2018. See Ex. 48 (Order dated April 30, 2018).

## I. Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of David Colon (Cross-Examination Only)

On July 19, 1991, Michael Velez and sixteen-year-old Julio Sanchez were outside riding their bicycles near Sanchez's home at the intersection of Hamlin and Palmer, when someone came up next to Velez and fatally shot him. Ex. 20 (Sanchez Dep. *Juan Johnson v. Guevara*, No. 05 C 1042) at 7, 20-23. Police spoke to Julio Sanchez directly after the shooting, and then approached him again almost two months later on his seventeenth birthday, September 8, 1991, when he was high on marijuana and drinking alcohol. *Id.* at 116-17, 128-29.

Julio Sanchez was brought into what looked like an interrogation room at the police station and given four photo albums from which to identify Velez's killer. *Id.* at 133. An officer stayed in the room with him because he was intoxicated. *Id.* at 148. He told the officer that he could not

identify the shooter from the pictures in the album. *Id.* at 135-36, 144. The officer went into the hall and came back with six to ten loose photos, all of which seemed to be of the same person, and asked Julio Sanchez to identify the shooter. *Id.* at 136-38, 141. Sanchez told the officer that he could not identify the shooter. *Id.* at 136. The officer left the room again and came back with what Sanchez believed to be the same photos. *Id.* at 140, 149. Sanchez eventually identified the shooter in one of the photos because he was tired and wanted the process to end, but he did not think the photo depicted the shooter. *Id.* at 148. Right after Sanchez identified the person from the photos, he was asked to identify that person from a line-up. *Id.* at 150. From the line-up, he selected the man that most resembled the man in the photos. *Id.* at 158. That man was David Colon. *Id.* at 157. Sanchez only chose David Colon from the line-up because he believed that the police officers were suggesting that he choose Colon because he looked most like the man in the photos they presented to him. *Id.* at 160.

Chicago Police Department Reports show that Detective Reynaldo Guevara was one of the two police officers conducting the line-up for Julio Sanchez on September 8, 1991. Ex. 21 (Excerpts from David Colon Chicago Police Department Supplemental Report). Sanchez believed that one of the officers who presented the photos to him stood behind him during the line-up. Ex. 20 at 153. Sanchez did not believe that the person he identified—David Colon—to be the actual shooter, and as a result, he refused to testify at Colon's trial. *Id.* at 167-69.

After a full evidentiary hearing, the court dismissed all charges against Mr. Colon based on his claim of actual innocence, and subsequently granted him a Certificate of Innocence. Ex. 91 (Colon COI).

24

J.    **Relevant Rule 404(b) Evidence Relating to the Wrongful Conviction of Jose Montanez and Armando Serrano (Cross-Examination Only)**

Jose Montanez and Armando Serrano were wrongly convicted of the 1993 murder of Rodrigo Vargas and both served 23 years in prison before they were exonerated in 2016. See generally *Montanez v. Guevara*, No. 17-cv-4560, Dkt. 1 (N.D. Ill. June 19, 2017). Mr. Vargas was murdered on February 5, 1993. The case went unsolved for a number of months, until a heroin addict named Francisco Vicente, discussed above, was arrested for committing a number of armed robberies. According to Vicente, Guevara physically beat him and provided him undisclosed incentives to falsely implicate Montanez and Serrano in the murder. Ex. 30 (Affidavit of Francisco Vicente). Bowing to the coercion, Vicente repeated the story fed to him by Guevara at the Montanez and Serrano trial, leading the court to convict both men of murder. Vicente later disclosed that Guevara had told him to implicate Montanez and Serrano, and both Montanez and Serrano were released and received certificates of innocence. Ex. 31 (Montanez and Serrano COIs).[3]

Guevara obtained rap sheets for Montanez and Serrano in relation to the Vargas homicide before there was any reason to suspect either Montanez or Serrano in that crime. Specifically, there was no mention of Montanez or Serrano as suspects in the Vargas homicide investigation until June 2, 1993. See Ex. 32 (Guevara June 2, 1993 Supp. Report). But in May 1993, Guevara sought and obtained criminal history reports for both Montanez and Serrano, a week before they were implicated by anyone in connection with the Vargas murder or any other crime. Compare Ex. 33 (Criminal History Requests for Montanez and Serrano), with Ex. 34 (Rap Sheet).

---

[3] Guevara and Mingey also coerced another man, Timothy Rankins, to falsely implicate Montanez and Serrano, see Ex. 35 (Rankins statement), but Rankins never testified at Montanez and Serrano's trial. Rankins's account, however, corroborates Vicente's, to the extent that he accuses Guevara and Mingey of feeding him facts about the Vargas murder and coercing him to falsely implicate Montanez and Serrano. See *id*.

In the Vargas case, the victim's widow testified that Guevara manipulated her into adopting a false story that she had identified Mr. Montanez's car as the perpetrators' vehicle. Mrs. Vargas testified that Guevara told her that the killers' vehicle was an abandoned car, and that bullet holes in Mr. Montanez's car were forensically matched to the crime scene, and that the car sustained damage in the course of the Vargas homicide. Ex. 98 (Vargas dep) at 116-24, 230-234 This information was false. According to the scene supplementary report, there were no witnesses to the shooting and no suggestion that the perpetrators' vehicle had been shot or damaged in the attack on Vargas, who was killed as he entered his van to leave for work. Ex. 99 (scene supp ex) Mr. Montanez's car happened to appear to be abandoned because it had no license plates on it. Ex. 100 (photo of Montanez car)

In addition, Guevara claimed in his June 2, 1993 supplementary report that he learned about an encounter between the victim and the perpetrators the day before the shooting from Vicente. See Ex. 32 (Guevara June 2, 1993 Supp. Report). Mrs. Vargas testified that this was a lie. In fact, she told Guevara months before he interacted with Vicente about the encounter that Guevara claimed came from Vicente. Ex. 98 (Vargas dep) at 96-102

### K.    The City of Chicago's Own Investigation of Guevara Corroborates the Evidence Set Out Above

In 2013, the City hired Scott Lassar of Sidley & Austin to investigate Guevara's misconduct on its behalf. After conducting an exhaustive investigation, Lassar discovered that at least six men investigated by Guevara had been wrongfully convicted, including Robert Bouto, Gabriel Solache, Arturo Reyes, Jose Montanez, Armando Serrano, and Roberto Almodovar. See Ex. 101, 102, 103, and 104 (Lassar reports for each of these cases).

In these cases, Lassar determined that Guevara had engaged in misconduct in obtaining Mr. Bouto's, Mr. Solache's, and Mr. Reyes's conviction, including manipulating witnesses to

falsely identify Bouto and physically abusing Solache and Reyes. See Ex. 101 at 43 (Lassar report for Bouto); Ex. 102 at 12-13 (Lassar report for Solache and Reyes). Lassar also found that Mr. Montanez, Mr. Serrano, Mr. Bouto, and Mr. Almodovar were likely innocent of the crimes Guevara had pressed against them. See Ex. 103 at 58 (Lassar report for Montanez and Serrano); Ex. 101 at 43-44 (Lassar report for Bouto); Ex. 104 at 15 (Lassar report for Almodovar). It goes without saying that the City's findings that Guevara engaged in misconduct in these cases substantially bolsters the evidence set out above.

## ADMISSIBILITY OF OTHER ACTS EVIDENCE

Other-acts evidence relating to Guevara is admissible in this case to prove intent, knowledge, opportunity, preparation and plan, the absence of mistake and lack of accident, Defendants' identity, and on other material issues. These categories of permissible uses for other-acts evidence of overlap to some extent, but Plaintiff discusses each in turn below, identifying the admissible evidence from the cases above. In each category, there are propensity-free explanations for why the other-acts evidence is relevant to a central dispute at trial.

Plaintiff described above how Guevara often committed fabrication of witness statements and identifications, false reporting, and suppression of evidence in front of his partners and supervisors, but Plaintiff intends to introduce other-acts evidence only against Guevara at the upcoming trial. The other acts of Guevara that Plaintiff focuses on from the above cases are in the categories: fabrication of false witness identifications, fabrication of false reports, and suppressions of evidence.

### A. Other-Acts Evidence Is Admissible to Show Defendants' Intent

When intent is a material issue in a case because it is contested, other-acts evidence demonstrating that Guevara acted with the requisite intent is admissible under Rule 404(b). In order to hold Defendants liable under section 1983, Plaintiff must show that they engaged

intentionally in conduct that violated the Constitution. Negligent conduct that causes harm is not enough. *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

As they did at summary judgment, Defendants will take full advantage of this standard at trial, and they will advance a defense that they did not act intentionally at all. Instead, they will argue, they were duped by witnesses and at worst acted negligently. As their jury instructions make clear, Defendants will vigorously dispute whether Plaintiff can show they intended to violate his rights, and in doing so they make intent a central issue for the trial.

Other-acts evidence showing that Guevara intentionally fabricated a false report that Aby Gonzalez had not identified Johns as the shooter, that Guevara knowingly fabricated a witness identifications for Ricardo Burgos, and that Guevara intentionally suppressed exculpatory and impeachment evidence during Plaintiff's criminal prosecution, instead of doing all those things negligently, is therefore admissible. See *Wilson*, 6 F.3d at 1238 (reversing district court and ordering new trial because other acts of Jon Burge should have been admitted to demonstrate that acted intentionally when he tortured Wilson and violated his rights); *Young v. Rabideau*, 821 F.2d 373, 379-80 (7th Cir. 1987) (permitting evidence of past misconduct to rebut the "main defense that [the party] did not intend to [commit the misconduct in the present case]"); *United States v. Wormick*, 709 F.2d 454, 459-60 (7th Cir. 1983) (deciding that evidence that police officer had fabricated a false police report in the past was admissible under Rule 404(b) to show intent to create false reports in the present case); see also *Rivera*, 2018 WL 11468923, at *6 (finding 404(b) evidence of Guevara's prior incidents of fabricated evidence, coercive identifications, and other constitutional violations highly probative of intent); *Edwards v. Thomas*, 31 F. Supp. 2d 1069, 1074-75 (N.D. Ill. 1999) (use of excessive force admissible to prove intent to use force).

28

Repeatedly the Seventh Circuit has held that other-acts evidence comes in where a defendant argues that they lacked the requisite intent and acted in good faith. See *United States v. Anzaldi*, 800 F.3d 872, 882 (7th Cir. 2015) (holding that it was not an abuse of discretion for the district judge to admit evidence of other bad acts where they showed intent and "also helped negate [the defendant's] asserted defense that she had acted in good faith"); *United States v. Curtis*, 781 F.3d 904, 910 (7th Cir. 2015) (holding that where a defendant opens the door by suggesting that he acted in good faith, other-acts evidence are admissible to rebut the defense and show intent); *United States v. Mireles*, 116 F.4th 713, 725 (7th Cir. 2024) ("By placing his knowing participation at issue, Mireles increased the probative value of otherwise tangential other-act evidence, and the government was entitled to introduce evidence to rebut the argument."); *Lange v. City of Oconto*, 28 F.4th 825, 843 (7th Cir. 2022), *reh'g denied*, No. 20-3048, 2022 WL 1119894 (7th Cir. Apr. 14, 2022) (affirming trial courts admission of other-acts evidence to explain "why and what the defendant[-officers] were thinking" when intentional discrimination was at issue); *United States v. Johnson*, No. 24-2027, 2025 WL 1541048 (7th Cir. May 30, 2025) (affirming trial courts admission of prior drug deals to probe defendant's intent to distribute methamphetamine and negate personal use defense); *United States v. Nolan*, 910 F.2d 1553, 1561 (7th Cir. 1990) (holding that evidence of 17 other bank robberies were relevant to show intent and to rebut the defendant's claim that he had entered a bank with innocent intent); *United States v. Arnold*, 773 F.2d 823, 833 (7th Cir. 1985) (concluding that a failed prior attempt to bribe a witness was relevant to show intention to bribe a witness in the present case).

The same is true when a defendant claims that they lacked intent and were instead duped by third parties. *United States v. Macedo*, 371 F.3d 957, 967 (7th Cir. 2004) (holding that district court did not abuse its discretion by admitting past crimes where the defendant's theory of the

29

case was that he lacked the requisite intent and instead was a "dupe"); *Mireles*, 116 F.4th at 725 (affirming district court's admission of defendant's failure to file taxes as probative of his involvement in a drug conspiracy, where his central defense was that "he was just a gullible friend who had been duped); see also *United States v. DeFillipo*, 590 F.2d 1228, 1240 (2d Cir. 1979) (where defense claimed defendants were innocent dupes in working with stolen goods, intent in issue).

Defendants' position at trial that they acted in good faith makes other-acts of Guevara admissible to show that he did not act in good faith. In particular, other acts set out above are relevant to the theory that Guevara intentionally fabricated a false report stating that Gonzalez had not identified Johns as the shooter. Guevara intentionally wrote similar false reports in the case described by Dorsch (*supra* Section A), as well as in the cases of Juan Johnson (Section B), Sierra (Section C), Almodovar/Negron (Section D) (Almodovar confirmed by the City's Lassar investigation), Serrano (Section E), Rivera (Section F), Iglesias (Section G), Bouto (Section H) (confirmed by the City's Lassar investigation), Colon (Section I), and Montanez/Serrano (Section J) (confirmed by the City's Lassar investigation). These other acts rebut the claim by Guevara that he acted like a reasonable investigator and followed the evidence in the Fred investigation where it led him.

Defendants will also present a case that they did not intentionally fabricate an identification for witness Ricardo Burgos, and that instead they obtained legitimate identifications through procedures performed in good faith. In other words, Defendants will claim that they would never intentionally instruct that a witness should pick a particular person during an identification procedure. In all of the cases just referenced, Guevara intentionally instructed witnesses to select individuals from photo arrays or lineups before they had made any

30

selection. Former Chicago Police Officer Dorsch will testify that he witnessed this conduct first hand in a case that he was investigating around the same time as the Fred investigation (Section A). These other-acts are therefore admissible on the question of Guevara's intention to dictate the selection of Plaintiff from identification procedures during the Fred investigation.

The same propensity-free chain of reasoning regarding proof of intent applies when it comes to showing Guevara's intent to suppress an exculpatory police report regarding the Johns identification by Gonzalez, as well notes and information about his interactions with witnesses. On these subjects, too, Defendants will present a case to the jury that, even if these events occurred, they had no intention of violating Plaintiff's federally protected rights. But as far as Guevara is concerned, he intentionally suppressed exculpatory information in the cases of Juan Johnson (Section B), Sierra (Section C), Rivera (Section F), Iglesias (Section G), and Montanez/Serrano (Section J). The Court should admit the other-acts evidence for this reason.

### B. Other-Acts Evidence Is Admissible to Show Absence of Mistake or Accident

These same other acts are also relevant and admissible to prove the closely related theory that Guevara did not make a mistake in causing the wrongful prosecution and conviction of Plaintiff. Defendants will claim at trial—as they did at summary judgment—that the following version of events should be believed: they did not tell witnesses to implicate Plaintiff; witnesses selected Plaintiff themselves; no one identified Johns and nothing was hidden; and that they had no reason to suspect anyone but Plaintiff in their criminal investigation. Under this theory, it was at worst a mistake on Defendants' part to implicate Plaintiff, and not a frame job that renders them liable.

In their reply, Defendants will not be able to disavow that mistake or accident will be a major pillar of their defenses, and so the same other-acts evidence discussed in the section

31

directly above will be admissible to demonstrate lack of accident or mistake. *United States v. Thomas*, 986 F.3d 723, 727, 732 (7th Cir. 2021) (holding district court did not err admitting evidence of three fires to negate defendant's claim that the second and third fires were accidental, in a mail fraud case where intent was at issue); *United States v. Hernandez*, 84 F.3d 931, 935 (7th Cir. 1996) (evidence of prior drug crime was properly admitted to show absence of mistake); *United States v. Kreiser*, 15 F.3d 635, 640 (7th Cir. 1994) (permitted evidence showing defendant "was not some hapless fool mistakenly caught up in an overzealous law enforcement action"); *United States v. Tylkowski*, 9 F.3d 1255, 1262 (7th Cir. 1993) (permitting "evidence of another crime which tends to undermine the defendant's innocent explanations for his act"); *Young*, 821 F.2d at 379 (concluding that a prison's prior misconduct negates the defense that he committed similar misconduct accidentally); *United States v. Hillsberg*, 812 F.2d 328, 334 (7th Cir. 1987) (holding that prior firings of a gun on different occasions were relevant to prove that the defendant had not accidentally discharged the weapon on the occasion in question); see also *Rivera*, 2018 WL 11468923, at *6 (finding 404(b) evidence of Guevara's prior incidents of fabricated evidence, coercive identifications, and other constitutional violations highly probative of absence of mistake). Guevara's other acts are relevant to prove that Guevara did not make a mistake during the investigation of the Fred murder and the prosecution of Plaintiff.

### C.    Other-Acts Evidence Is Admissible to Show Knowledge

Similarly, other acts evidence is relevant and admissible to show that Guevara had knowledge of the misconduct in this case that Plaintiff says occurred. Defendants will claim that they did not know that Aby Gonzalez had identified Bryan Johns. Moreover they will say they had no idea that Ricardo Burgos's identification was fabricated. And they will claim they had no knowledge that key evidence was suppressed. Other-acts evidence is admissible at minimum to show that Guevara had knowledge of all of these things. For instance, Guevara knowledge that

32

Ricardo Burgos's identification and the reports about it were fabricated is demonstrated by his conduct in the case described by Dorsch (Section A), as well as in the cases of Juan Johnson (Section B), Sierra (Section C), Almodovar/Negron (Section D), Serrano (Section E), Rivera (Section F), Iglesias (Section G), Bouto (Section H), Colon (Section I), and Montanez/Serrano (Section J). That Guevara had knowledge of suppression of the true circumstances of the Johns identification and other witness accounts is shown by his knowledge of suppressions in Juan Johnson (Section B), Sierra (Section C), Rivera (Section F), Iglesias (Section G), and Montanez/Serrano (Section J).

Other acts are admissible when a defendant denies knowledge of facts in order to show that the defendant in fact had knowledge. See, *e.g.*, *United States v. Urena*, 844 F.3d 681, 683 (7th Cir. 2016) (other acts relevant after *Gomez* to show knowledge of misconduct when knowledge was denied); *Lange*, 28 F.4th at 843 (affirming trial courts admission of other-acts evidence to explain "why and what the defendant[-officers] were thinking"); *United States v. White*, 68 Fed. App'x 707, 711 (7th Cir. 2003) (unpublished) (evidence of an officer's previous discipline for using excessive force relevant to charge that the officer used force knowingly); *United States v. Harris*, 536 F.3d 798, 806 (7th Cir. 2008) (prior drug deals admissible to prove defendant knew about drugs).

At the same time, Defendants will attempt to convince the jury that they lacked another type of knowledge: they will argue they did not have the skill or the means necessary to commit the type of fabrications of reports and identifications that Plaintiff claims occurred. Other-acts evidence is also admissible without reference to propensity to show that a defendant in fact did have the requisite knowledge and skill. See, *e.g.*, *Burton*, 901 F.3d at 780 (reversing trial court's excluding evidence of defendant-officer's prior excessive force to an arrestee for its relevance in

determining requisite knowledge for applying reasonable force to the same arrestee). An other

act's relevance and probative value for requisite knowledge are heightened when its inclusion

would ameliorate an information asymmetry. *Id.* at 781 ("[I]t would create an odd asymmetry to

say that a police officer may consider a suspect's prior bad acts when considering the amount of

force to use, but need not consider his own prior bad acts."). Each of the instances above shows

manipulation of evidence to generate evidence implicating a suspect selected by Guevara, and

the techniques employed—for example, instructing the witness to select a particular suspect in

the case described by Dorsch (Section A), as well as in Juan Johnson (Section B), Sierra (Section

C), Almodovar/Negron (Section D), Serrano (Section E), Rivera (Section F), Bouto (Section H),

Colon (Section I), and Montanez/Serrano (Section J)–demonstrate Guevara's knowledge.

Additional cases supporting admission of other-acts evidence for this proper purpose are cited in

the next section, on the closely related category of using other acts to show opportunity.

### D. Other-Acts Evidence Is Admissible to Show Opportunity

Defendants will also no doubt defend themselves by suggesting that Plaintiff is an

unhinged conspiracy theorist, in the sense that the conspiracy and misconduct he alleges is so

extreme that it could not possibly happen within the Chicago Police Department, and in the midst

of such a large group of people. In short, Defendants will argue that, even if Plaintiff can show

the requisite intent and the means to commit the alleged misconduct, Defendants would have had

no opportunity to engage in such bad behavior.

Opportunity (or the chance or capacity to commit an act) is an additional permissible use

of other-acts evidence in this case. *Wilson*, 6 F.3d at 1238 (Burge's past abuse of suspects

admissible to show opportunity to abuse suspect in the present case); *United States v. Burrows*,

48 F.3d 1011, 1018 (7th Cir. 1995) (evidence of prior bad acts involving handguns was

admissible to show that defendant had the opportunity to possess a handgun); *United States v.*

*Chaverra-Cardona*, 879 F.2d 1551, 1553 (7th Cir. 1989) (evidence of other acts by the defendant were admissible to show that she had the opportunity to commit the drug crimes at issue); see also *Rivera*, 2018 WL 11468923, at *6 (finding 404(b) evidence of Guevara's prior incidents of fabricated evidence, coercive identifications, and other constitutional violations highly probative of opportunity).

The cases discussed above show with ample and extremely reliable evidence–sometimes evidence that has resulted in a federal judgment–that Guevara had the capacity, and indeed the nearly unlimited opportunity, to decide to frame criminal suspects, to fabricate false police reports, to create witness statements and identifications, and to withhold from the criminal justice system just about any investigative material he wanted to.

### E.    Other-Acts Evidence Is Admissible to Show Identity

Independently, use of other-acts evidence is permissible to show the identity and *modus operandi* of Guevara. A key piece of suppressed evidence in this case is Guevara's report of Gonzalez's identification of Johns. That evidence would have been the greatest piece of exculpatory and impeachment evidence Plaintiff and his attorneys could have hoped for in defending his criminal case, as they have all testified. Indeed, state prosecutors no doubt would have dropped (or would never have pursued) charges had they learned of that evidence, as they testified.

Recognizing how thoroughly this evidence supports Plaintiff's due process claims for suppression of evidence, Defendants will adopt the only defense available—they contend contrary to the evidence that they did not and would not withhold this evidence. Defendants will argue vehemently that, even if one believes Plaintiff's evidence, it was not them who caused Plaintiff to go without this critical report.

35

In this situation, where Defendants intensely dispute whether it was them who committed the misconduct, the law permits the use of other-acts to show identity. The distinctive features of Guevara's other misconduct are relevant to show that it was him who suppressed the report of Johns's identification. Where Defendants have engaged in similar acts of misconduct, those other acts are admissible to prove it was them this time as well. See *Gomez*, 763 F.3d at 861 ("[O]ne accepted way to use other-act evidence to prove identity is to argue that the perpetrator had a distinctive modus operandi."); *Shields v. United States*, 2017 WL 1196830 (N.D. Ill. Mar. 31, 2017) (holding that evidence of modus operandi is usually used to prove identity).

One of Defendants' arguments is that none of the other-acts evidence is sufficiently similar to be used in the upcoming trial. The context in which similarity really matters is when 404(b) evidence is used to prove identity or *modus operandi*. But identical acts are not necessary. Plaintiff must show "only that the prior acts bear 'a singular strong resemblance to the pattern of the offense charged.'" *United States v. Hudson*, 884 F.2d 1016, 1021 (7th Cir. 1989) (quoting *United States v. Shackleford*, 738 F.2d 776, 783 (7th Cir. 1984)). This is because "[d]istinctiveness is key to whether something is proper modus operandi evidence," and inherently, "[s]uch uniqueness lies on a spectrum." *Thomas*, 986 F.3d at 731. The past incidents must only be "sufficiently idiosyncratic to permit an inference of pattern for purposes of proof." *Shackleford*, 738 F.2d at 783. That said, many of the other acts discussed in this brief are so similar to the misconduct at issue here that they are properly classified as *modus operandi* evidence.

Here, Guevara's other acts of suppression and fabrication are so distinctive that they can be admitted in order to show that it was Guevara who suppressed the Johns identification and fabricated a false report covering that identification up. Guevara did exactly the same

36

combination of fabrication of a false report to suppress the real exculpatory evidence in Juan Johnson (Section B), Sierra (Section C), Rivera (Section F), Iglesias (Section G), and Montanez/Serrano (Section J).

Guevara's other acts are much more similar to the fact pattern in this case than the usual case in which other acts are admitted to prove identity or *modus operandi*. See, *e.g.*, *United States v. Clark*, 774 F.3d 1108, 1114 (7th Cir. 2014) (evidence of uncharged robberies with very similar victims and descriptions of the perpetrator were relevant to identify defendant as the charged robber); *United States v. Vance*, 764 F.3d 667, 669 (7th Cir. 2014) (evidence of uncharged robberies of trio of restaurants relevant to show identity of perpetrators in a series of bank robberies where robbers used the same ski-masks and gun, and had one robber approach the counter while the other stood guard); *United States v. Brown*, 471 F.3d 802, 806 (7th Cir. 2006) (evidence that defendant had purchased drugs from the same drug dealer before was relevant when defense tried to argue that drug dealer had mistakenly identified defendant); *United States v. Connelly*, 874 F.2d 412, 417 (7th Cir. 1989) (to be admissible as *modus operandi* evidence, similarities must be "sufficiently idiosyncratic to permit an inference of pattern for purposes of proof) (internal citation omitted). Accordingly, the other-acts evidence can be used to prove Guevara's identity as well.

### F. Other-Acts Evidence Is Admissible to Show Preparation and Plan

In addition, as in *Wilson v. City of Chicago*, evidence of a police officer's past misconduct involving manipulation of witnesses is admissible to show preparation and planning on the part of the same officer engaging in the same type of misconduct in the case before the court. 6 F.3d at 1238 (police officers' previous interrogation methods "admissible for other purposes, including . . . preparation, and plan"); see also *Thomas,* 986 F.3d at 727, 732 (holding district court did not err admitting other-act evidence under 404(b) which tended to prove a plan,

"scheme or artifice to defraud"); *Rivera*, 2018 WL 11468923, at *6 (finding 404(b) evidence of Guevara's prior incidents of fabricated evidence, coercive identifications, and other constitutional violations highly probative of a plan); *Hill v. City of Chicago*, 2011 WL 3840336 (N.D. Ill. Aug. 30, 2011) (granting in part and denying in part motion to exclude prior acts evidence on theory that they were sufficiently similar that they showed preparation and planning on the part of the defendant officers). As in *Wilson* and *Hill*, the identified other acts here are sufficiently similar to the Fred investigation to show preparation and planning on the part of Guevara.

### G.      Other-Acts Evidence Is Admissible for Other Permissible Purposes As Well

Finally, evidence of Guevara's other acts is admissible for other purposes as well. It is admissible to impeach Guevara on the stand. If he is pleading his Fifth Amendment right to remain silent, and the jury is not required to draw an inference against him, then his answers are tantamount to a denial. And so when he is asked whether he would ever have told Ricardo Burgos who to identify, for example, his answer can be impeached with evidence that he did precisely that in the cases described by Dorsch (Section A), and the cases of Johnson (Section B), Sierra (Section C), and many others already discussed.

The use of other acts to impeach claims of innocence by specific contradiction is permissible. See *United States v. Bell*, 624 F.3d 803, 810-11 (7th Cir.2010) (allowing other acts to bolster witness's impeaching power); *Molnar v. Booth*, 229 F.3d 593, 603-04 (7th Cir.2000) (allowing evidence of prior instances of similar sexual harassment for "impeachment purposes"); *United States v. Taylor*, 728 F.2d 864, 872 (7th Cir. 1984) (allowing evidence of other drugs and guns seized in home search against criminal defendant for impeachment). Guevara has received ample notice that other acts evidence could be used against them for impeachment purposes, and accordingly, the opportunity to produce rebuttal witnesses. See *Rivera*, No. 12-CV-04428, 2018

WL 11468923, at *2 (N.D. Ill. June 1, 2018) (deciding use of 404(b) for Guevara's impeachment on notice grounds).

In addition, evidence of other acts is also admissible to impeach Guevara's credibility. *Lange*, 28 F.4th at 843–44 (affirming district court's admission of other-acts evidence bearing on a party's "credibility as to the extent of her disability" in a reasonable accommodations claim); *United States v. Smith*, 80 F.3d 1188, 1193 (7th Cir. 1996) (prior acts showing untrustworthiness are admissible to impeach witness's credibility); *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir. 1990) (prior acts involving deceit are admissible to impeach witness's credibility); *Wrice v. Burge*, 2016 WL 6962838, at *6 (N.D. Ill. Nov. 29, 2016) (allowing evidence of other bad acts to attack witness's credibility). Or to show that Guevara is biased in his testimony. *United States v. McGee*, 408 F.3d 966, 982 (7th Cir. 2005) (extrinsic evidence admissible for impeachment purposes to show bias); *Holmes v. Godinez*, 2016 WL 4091625, at *5 (N.D. Ill. Aug. 2, 2016) ("Defendant will be barred from offering bad act propensity evidence, but will be permitted to inquire into specific incidents of conduct on cross-examination to establish bias or the witnesses' character for truthfulness.").

Moreover, other acts can be used to corroborate the testimony of key third party witnesses who contend, for example, that Guevara fabricated a false account and recorded it in police reports. That testimony is corroborated by the fact that Guevara did exactly that with other eyewitness and witness statements in other cases, including the cases of Sierra (Section C), Luis Serrano (Section E), Jacques Rivera (Section F), and Geraldo Iglesias (Section G). Evidence that corroborates testimony on material points is admissible under Rule 404(b). *United States v. King*, 627 F.3d 641, 649 (7th Cir. 2010) ("If the 'bad acts' are really direct evidence of the crime charged, Rule 404(b) is inapplicable."); *United States v. Grabiec*, 563 F.2d 313, 318 (7th Cir.

39

1977) (explaining that "additional criminal activities may be admitted to show a pattern of conduct corroborating a similar pattern carried out during the conspiracy and a method of operation," and concluding evidence of previous gang activity was admissible to show drug conspiracy).

The evidence of other acts is also centrally relevant to Plaintiff's *Monell* theories that the Chicago Police Department routinely suppressed exculpatory information. *Cazares v. Frugoli*, 2017 WL 4150719, at *9 (N.D. Ill. Sept. 19, 2017) (evidence of one officer's prior acts and especially the police department's "investigations into those accidents, are highly relevant to Plaintiffs' *Monell* claim, independent of any propensity chain of inference"). There is no credible argument *against* admitting Guevara's other acts for this purpose.

Finally, other-acts are doubly relevant to proving punitive damages. First, the Seventh Circuit has recognized that other acts are relevant to punitive damages because they show that the defendant intended to cause harm. *Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503, 517 (7th Cir. 1997) (affirming decision to admit evidence of prior similar acts for the purpose of showing intent as relevant to damages); see also *Edwards*, 31 F. Supp. 2d at 1074 n.8 (plaintiff's request "for punitive damages would appear to make the issue of Officers' intent to do harm relevant on that claim"). Second, the Seventh Circuit has also held that evidence of repeated misconduct is also relevant because punitive damages are designed to deter and punish precisely this sort of pattern of misconduct. *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 930-31 (2004) (holding that other bad acts are admissible on question of punitive damages, and distinguishing *State Farm v. Campbell*, 538 U.S. 408 (2003)). Defendant Guevara's other acts directly harmed both Plaintiff and many other citizens. And the use of those other acts, nearly identical to Defendant's actions in this case, are permissible for the purpose of

40

deterring future conduct, and are directly probative of Defendant's malicious intent or lack thereof (e.g., whether Defendant intended to harm Plaintiff individually or as part of a larger, unfeeling plan).

### H.    Defendants' Arguments to Exclude This Evidence Lack Merit

Defendants make a number of half-hearted arguments for exclusion of other-acts evidence that they apply generally to all of Guevara's past bad acts. They contend that the facts of some of the other-acts cases discussed above are contested, and they argue that these factual disputes call for exclusion. But the Seventh Circuit has been clear that Rule 404(b) does not require the Plaintiff to prove the other acts to the Court by a preponderance of the evidence before those other acts are admitted. *Gomez*, 763 F.3d at 854 (citing *Huddleston v. United States*, 485 U.S. 681, 689-90 (1988)).

Nonetheless, there is strong evidence supporting the other acts, as Plaintiff's extensive citations to sworn testimony above show. In addition, and critically, Guevara has pleaded his Fifth Amendment right to remain silent in response to all questions about his misconduct in each and every one of the cases above. If Guevara fears incriminating himself by responding to basic questions about whether he rigged the identification procedures and suppressed evidence about eyewitnesses in these cases, then an inference is warranted that the evidence and accounts set out above accurately describe his misconduct. In *Juan Johnson* and *Rivera*, as discussed, there are judgments against Guevara, and so he is actually issue precluded from litigating the facts at issue above. And were all of that not enough, Illinois courts have found that many of the men wrongly convicted by Guevara's misconduct were innocent, and they have been awarded Certificates of Innocence. Defendants' argument that the facts of these cases are too disputed to warrant admission of this evidence should be rejected.

As discussed, Defendants also argue that these other cases are too factually dissimilar to serve as admissible other-acts evidence. Plaintiff discussed the similarity of the other-acts above, in the context of identity, where similarity is important to showing *modus operandi*. But in general the Seventh Circuit has "repeatedly said that the 'similarity' requirement for admitting other-act evidence is not 'unduly rigid,' but instead is 'loosely interpreted and applied[.]'" *Gomez*, 763 F.3d at 854; see also *United States v. York*, 933 F.2d 1343 (7th Cir. 1991) (if prior act is sufficiently similar in type, it need not be a "duplicate[ ] of the one for which the defendant is now being tried"). As Plaintiff has discussed at length already, the other-acts cases bear striking similarities to the present case—with many identical features—and that similarity is enough to dispose of Defendants' general arguments to the contrary.

Finally, though Defendants do not present any argument about the timing of these other acts, forfeiting the argument, the other acts are close in time to the case here. The Seventh Circuit holds that "the temporal proximity of the prior acts to the current charge is not alone determinative of admissibility." *United States v. Macedo*, 406 F.3d 778, 793 (7th Cir. 2005). Moreover, in many cases the court of appeals has endorsed admitting other acts that are nearly a decade or more removed in time. See, *e.g.*, *id.* at 793 (nine-year gap in time sufficiently close to make other act admissible); *United States v. Wimberly*, 60 F.3d 281, 285 (7th Cir. 1995) (13 years when evidence highly similar and relevant to credibility); *United States v. Kreiser*, 15 F.3d 635, 640 (7th Cir.1994) (seven years); *Petrovic v. City of Chicago*, 2008 WL 818309, at *3 (N.D. Ill. Mar. 21, 2008) (eight years). It makes no difference whether the other acts or prior to or after the incident on trial. *United States v. Brown*, 31 F.3d 484, 492 (7th Cir.1994) ("[T]rial courts may admit evidence of prior or subsequent bad acts"); *United States v. Anifowoshe*, 307 F.3d 643, 646–47 (7th Cir.2002) ("[B]y its very terms, 404(b) does not distinguish between

42

'prior' and 'subsequent' acts"); *United States v. Brown*, 31 F.3d 484, 492 (7th Cir. 1994) (Under Rule 404(b), "trial courts may admit evidence of prior or subsequent bad acts"); *Edwards*, 31 F. Supp. 2d at 1075. The highly similar other acts of Guevara discussed above are all sufficiently close in time—most are within five years—to be admitted, particularly so given that they are highly probative of many disputed issues at trial.

### I.  Federal Rule of Evidence 403 Does Not Call for Exclusion, Particularly Given Limiting Instructions

Defendants also argue that exclusion is appropriate under Rule 403 because of unfair prejudice. Dkt. 402 at 55-58. Of course, that balance depends on the extent to which the factual issues on which the other-acts evidence is admissible are disputed, for the more disputed they are the more probative the other act evidence. *Gomez*, 763 F.3d 845, 857. Similarly, the greater number of disputed issues on which other-acts evidence is properly admitted, the greater the probative value (without any corresponding increase in the danger of unfair prejudice). When one considers how diametrically opposed the parties theories of this case are on so many different issues, and how many of those issues permit the admission of other-acts evidence, it is clear that the other-acts evidence in this case has tremendous probative value.

Accordingly, for evidence of other acts to be excluded in this case, they would have to have caused such extreme unfair prejudice to Guevara that this tremendous probative value would be substantially outweighed. Defendants have not shown at all that the danger of the prohibited propensity inference is so great that it commands exclusion of the other-acts evidence. Moreover, given that Plaintiff is limiting the evidence to just a few witnesses–many of whom have testified before, so the parties know precisely what they will say and can even read the testimony or play it for the jury–and will present the rest through cross-examination, there is not a credible argument that outright exclusion is warranted. In fact, the evidence that Plaintiff intends to

43

present is already narrowly limited, and Plaintiff submits that the Rule 403 balance is already properly struck by that balance. To the extent that Plaintiff is incorrect, the Court can of course apply Rule 403 as the evidence comes in—to repeat, Plaintiff will not explore all of the facts of the other acts above with Guevara on the stand.

Finally, to the extent that there is a concern about unfair prejudice from the prohibited propensity inference, the Seventh Circuit has instructed lower courts how to deal with that concern: by using limiting instructions. In *Gomez* the Seventh Circuit stressed that "[a]ppropriate jury instructions may help to reduce the risk of unfair prejudice inherent in other-act evidence." 763 F.3d at 860; see also *id.* at 861 (stating that Seventh Circuit Criminal Pattern Jury Instruction 3.11 is a good starting point, which should be customized to the case). There the Court concluded, "[W]e see no reason to keep the jury in the dark about the rationale for the rule against propensity inferences. Lay people are capable of understanding the foundational principle in our system of justice that 'we try cases, rather than persons.'" *Id.* at 861 (quoting *People v. Allen*, 420 N.W.2d 499, 504 (Mich. 1988)). A limiting instruction about the permissible use of other-acts evidence will adequately control for the danger of unfair prejudice in this case. Defendant Guevara argues otherwise, but he cites only cases that predated *Gomez*'s direction that limiting instructions are preferable to outright exclusion of evidence. One of the innovations of the Seventh Circuit's *en banc* decision was that it expressed a preference for explanation of other acts evidence to the jury, and the Seventh Circuit has repeatedly reaffirmed since that limiting instructions are assumed to be effective. *E.g.*, *United States v. Mireles*, 116 F.4th 713, 726 n.4 (7th Cir. 2024). Guevara's argument that limiting instructions are ineffective should be rejected.

### J. Guevara's Argument That Other Bad Acts Were Not Disclosed Is Frivolous

Finally, Plaintiff addresses briefly the frivolous argument Guevara leads with in his motion and which pervades his argument that evidence of his other bad acts should not be

admitted in this case. Guevara argues that his other bad acts should not be admitted because they were not disclosed to him during discovery in this case. Dkt. 402 at 43-49. The idea that Guevara was not on notice of his alleged other bad acts throughout this litigation is frankly galling. Defendant Guevara's misconduct has been properly disclosed and litigated dozens of times, including in this case and in more than thirty other civil cases which name Guevara as a Defendant[4] and in which he is represented by the same counsel as in this case.[5]

In this case in particular, Plaintiff properly disclosed all of the 404(b) evidence which he seeks to use at trial. On November 2, 2020, Plaintiff issued his initial Rule 26(a)(1) disclosures, which list all of the other bad acts which Plaintiff will rely on pursuant to Fed. R. Evid. 404(b). Ex. 118 (Plaintiff's Rule 26(a)(1) Initial Disclosures). When Guevara issued an interrogatory seeking more information about 404(b) witnesses, Plaintiff, by incorporating his response to the same Interrogatory in his responses to Defendant Daley's interrogatories, responded as follows:

> Plaintiff directs Defendants to the parties' Rule 26 and other disclosures of witnesses in this case, depositions of those witnesses, the documents exchanged in discovery, and the parties' prior agreements regarding witnesses to be presented

---

[4] A non-exhaustive list of all the cases in which Guevara is a Defendant and in which evidence of his other bad acts have been disclosed and/or introduced as evidence at trial includes: *J. Johnson v. Guevara,* No. 05-cv-1042 (N.D. Ill.); *J. Rivera v. Guevara,* No. 12-cv-4428 (N.D. Ill.); *DeLeon-Reyes v. Guevara,* No. 18-cv-1028 (N.D. Ill.); *Solache v. Guevara,* No. 18-cv-2312 (N.D. Ill.); *Almodovar v. Guevara,* No. 18-cv-2341 (N.D.Ill.); *Negron v. Guevara,* No. 18-cv-2701 (N.D. Ill.); *Serrano v. Guevara,* No. 17-cv-2869 (N.D. Ill.); *Sierra v. Guevara,* No. 18-cv-3029 (N.D. Ill.); *Gomez v. Guevara,* No. 18-cv-3335 (N.D. Ill.); *Montanez v. Guevara,* No. 17-cv-4560 (N.D. Ill.); *Maysonet v. Guevara,* No. 18-cv-2342 (N.D. Ill.); *R. Rodriguez v. Guevara,* No. 18-cv-7951 (N.D. Ill.); *Bouto v. Guevara,* No. 19-cv-2441 (N.D. Ill.); *Iglesias v. Guevara,* No. 19-cv-6508 (N.D. Ill.); *D. Johnson v. Guevara,* No. 20-cv-4156 (N.D. Ill.); *D. Rodriguez v. Guevara,* No. 22-cv-6141 (N.D. Ill.); *Rios v. Guevara,* No. 22-cv-3973 (N.D. Ill.); *Gonzalez v. Guevara,* No. 22-cv-6496 (N.D. Ill.); *Flores v. Guevara,* No. 23-cv-1736 (N.D. Ill.); *Hernandez, et al. v. Guevara,* No. 23-cv-1737 (N.D. Ill.); *Lugo v. Guevara,* No. 23-cv-1738 (N.D. Ill.); *Davila v. Guevara,* No. 23-cv-1739; *Abrego v. Guevara,* No. 23-cv-1740; *Martinez v. Guevara,* No. 23-cv-1741 (N.D. Ill.); *Gecht v. Guevara,* No. 23-cv-1742 (N.D. Ill.); *G. Rivera v. Guevara,* No. 23-cv-1743 (N.D. Ill.); *Mendoza v. Guevara,* No. 23-cv-2441 (N.D. Ill.); *Munoz v. Guevara,* No. 23-cv-3210 (N.D. Ill.) *Cruz v. Guevara,* No. 23-cv-4268 (N.D. Ill.); *Kwil v. Guevara,* No. 23-cv-4279 (N.D. Ill.); *Cain v. Guevara,* No. 23-cv-14282 (N.D. Ill.); *R. Hernandez v. Guevara,* No. 23-cv-15375 (N.D. Ill.); *Tinajero v. Guevara,* No. 24-cv-1598 (N.D. Ill.); *Kelly v. Guevara,* No. 24-cv-5458 (N.D. Ill.); *Robinson v. Guevara,* No. 24-cv-5954 (N.D. Ill.); *Ortiz v. Guevara,* No. 24-cv-11057 (N.D. Ill.); and *O. Soto v. Guevara,* No. 24-cv-12554 (N.D. Ill.). In other words, there are at least 38 such cases, including this one.

[5] Of these 38 cases, Defendant Guevara is or was represented by the same counsel which represents him in this case in 32 cases.

under Federal Rule of Evidence 404(b). In addition, Plaintiff directs Defendants to his responses to Defendant Guevara's First Set of Interrogatories No. 2, which Plaintiff expressly incorporates here by reference. Plaintiff's investigation into this matter continues, and he reserves his right to supplement this response as new information comes to light.

Ex. 119 (Plaintiff's Fourth Supplemental Responses to Defendant Daley's First Set of Interrogatories).

On April 6, 2021, the Court instructed Plaintiff to limit his list of 404(b) witnesses to ten. Dkt. 61. On April 16, 2021, Plaintiff properly limited his list of potential 404(b) witnesses to the following ten people: Evelyn Diaz, William Dorsch, Luis Figueroa, Jose Melendez, Salvador Ortiz, Samuel Perez, Carl Richmond, Robert Ruiz, Kennelly Saez, and David Velazquez. Ex. 118 (Plaintiff's Supplemental 26(a)(1) disclosures). Not only did Plaintiff's Supplemental Disclosures provide sufficient information about these witnesses, particularly about the nature of the other bad acts each witness will testify to at trial, each of these witnesses had already or has since been disclosed in, again, more than thirty civil cases to which Guevara is a party and in which he is represented by the same counsel that he is represented by in this case.

Further, as Guevara's own motion demonstrates, Plaintiff disclosed detailed information about each of these witnesses' prior testimony, including testimony from civil cases in which Defendant Guevara is a defendant. Dkt. 402, at pp. 45-46. For example:

Evelyn Diaz is believed to have information about the misconduct of Defendant Guevara, as well as other unknown officers, in connection with the Orlando Guirola homicide investigation in 1988, including the manipulation of eyewitness identification procedures, fabrication of evidence, and suppression of evidence.

William Dorsch is believed to have information about the misconduct of Defendant Guevara, including the manipulation of eyewitness identification procedures, fabrication of evidence, and suppression of evidence. Mr. Dorsch has previously testified in the postconviction proceedings of Arturo DeLeon-Reyes and Gabriel Solache and was deposed in *Rivera v. Guevara*, *et al.*, No. 12 C 4428 (N.D. Ill.). 201 N. Salem Drive Schaumburg, IL 60194, (312) 960-0659, (312) 752-3966.

46

> Luis Figueroa is believed to have information about the misconduct of Defendant Guevara, as well as other unknown officers, in connection with the Yolanda Leal homicide investigation in 1995, including physical abuse, unlawful interrogation tactics, suppression of evidence, and fabrication of evidence. Mr. Figueroa previously testified at the criminal trial of Angel Diaz.
>
> Jose E. Melendez is believed to have information about the misconduct of Defendant Guevara, as well as other unknown officers, in connection with the Noel Andujar and Ruben Gonzalez homicide investigations in 1995, including physical abuse, unlawful interrogation tactics, suppression of evidence, and fabrication of evidence. Mr. Melendez previously testified in the criminal proceedings of Thomas Sierra and was deposed in *Sierra v. Guevara*, No. 18 C 3029. 14 48th Avenue Bellwood, IL 60104, (773) 426-0666.

*Id.* But even where Plaintiff did not write exactly where these witnesses testified previously, Guevara was still on notice about these witnesses and their prior testimony about his past misconduct.

For instance, Evelyn Diaz, in addition to being disclosed in this case, was deposed on July 2, 2008 in *Juan Johnson v. Guevara*, No. 05-cv-1042 (N.D. Ill.). Plaintiff produced her testimony from *Juan Johnson* in the present case at AR-L 148635-148741. Diaz was also disclosed as a 404(b) witness in *Rivera v. Guevara*, No. 12-cv-4428 (N.D. Ill.) as part of Rivera's initial disclosures *in 2012*. William Dorsch, in addition to being disclosed in this case, was deposed on June 11, 2021 in *DeLeon-Reyes v. Guevara*, No. 18-cv-1028, and he was deposed and testified at trial in *Rivera v. Guevara*, No. 12-cv-4428 (N.D. Ill.). Plaintiff produced his testimony from these cases in the present case at AR-L 149927-149911, AR-L 573076-573488, and AR-L 619717-620277. Luis Figueroa, in addition to being disclosed in this case, testified at the criminal trial of Angel Diaz and has recanted his testimony in that case, alleging that Guevara's misconduct coerced him to make a false identification. Plaintiff produced Mr. Figueroa's testimony from the Angel Diaz trial in the present case at AR-L 129863-129871, along with his affidavit recanting his testimony at AR-L 525548-525550. Jose Melendez, in addition to being disclosed in this case, was deposed on September 13, 2019 in *Sierra v.*

*Guevara*, No. 18-cv-3029 (N.D. Ill.). Plaintiff produced his testimony from *Sierra* and from other cases in the present case at AR-L 129872-129883, AR-L 155271-155312, AR-L 508403-508723, and AR-L 562430-562732.

The same exact situation applies to the other six 404(b) witnesses. Despite Guevara's aversions to the contrary, each of these witnesses was properly disclosed by Plaintiff in 2021, and by Plaintiff's counsel to Defendant Guevara's civil counsel for years. To the extent it exists, Plaintiff has disclosed each of these witnesses' prior testimony, which goes over the nature of Plaintiff's bad acts allegations against Guevara in great detail. This information is properly incorporated by reference in response to Defendant Daley's Interrogatory No. 2. These disclosures of witnesses and the production of their prior testimony is more than sufficient to provide Defendant Guevara notice of the other bad acts which will be introduced against him at trial in this case. In short, there is no disclosure problem in this case.

Guevara argues that "The purpose of Rule 26(a)(1) is not only to avoid surprise but also to allow parties to prepare their trial strategy" and "to prevent trial by ambush[.]". Dkt. 402 at 47 (citing *Meridian Fin. Advisers, Ltd., v. Pence*, 2010 WL 2772840, at *8 (S.D. Ind. 2010) and *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd*., 1996 WL 680243, at *8 (N.D. Ill. 1996)). But, quite frankly, it is difficult to conceive of a party having *more* notice of the evidence and witnesses demonstrating other bad acts pursuant to Rule 404(b) than Guevara has in this instance.

Even if Guevara believed that Plaintiff's limited disclosures were insufficient to put him on notice about these allegations about other bad acts under Rule 404(b), he did not, until this motion, follow-up with Plaintiff to request more specific and detailed information. Guevara did not issue one Rule 37 letter on this topic. He did not seek to confer about this topic. He never

48

requested that Plaintiff supplement his interrogatory responses or update his disclosures to address the concerns that he now raises. He did not seek court intervention to ensure that Plaintiff provided more information about bad-acts evidence and witnesses under Rule 404(b). And he never sought to depose any of these witnesses in this case, despite their timely and proper disclosure.[6] In fact, Guevara has not raised this alleged disclosure deficiency a single time in the more than thirty civil cases in which these witnesses are disclosed as witnesses under Rule 404(b), in which Guevara is a Defendant, and in which he is represented by the same counsel as he is in this case.

Defendants also argue that Plaintiff failed to adequately disclose these witnesses because he did not provide exhaustive contact information. Dkt. 402 at 49. But all the parties have the same contact information, and they have exchanged contact information with one another whenever asked. Defendants never contacted Plaintiff and said they lacked contact information of these witnesses they needed, even though they knew from the start of this case that these are witnesses Plaintiffs may rely on, so they cannot now argue that they were prejudiced or "ambushed" by these witnesses. *David v. Caterpillar*, 324 F.3d 851, 857 (7th Cir. 2003); *Heidelberg*, No. 95-cv-0673, 1996 WL 680243, at *8 (N.D. Ill. 1996). To the extent that Plaintiff did not provide complete contact information for these witnesses in his disclosures and his interrogatory responses, Plaintiff has since provided the contact information which he knows to Defendants in his Witness List.

---

[6] To be clear, Plaintiff does not expect any of these witnesses to testify beyond what they have already testified, and he has represented as much to Defendants. See, *e.g.*, Dkt. 60, at 2-3 ("Many of the other-acts witnesses listed by Plaintiff have testified already on the subjects at issue, some repeatedly. Many have testified recently in pending civil lawsuits where all of the parties are represented by the same lawyers who represent the parties in this case. Still others will testify in civil lawsuits shortly, as discovery into Defendant Guevara and his colleagues' other acts takes place in many pending civil cases involving his misconduct. Accordingly, much of the testimony of these witnesses is already a matter of record, and any new burden will be shared among multiple cases, where, as Plaintiff has argued separately, consolidated depositions can be conducted. See Dkt. 54 (Plaintiff's Motion for Protective Order to Prevent Duplicative Depositions of Third-Party Witnesses in the Guevara Cases)").

It is telling evidence of the strength of Guevara's other arguments about the relevance of this bad acts evidence under Rule 404(b) that he leads with this frivolous argument about disclosures. At bottom, Rule 26 exists to ensure that all parties are on notice of the witnesses and the subject matter of testimony that might testify on particular subjects. Fed R. Civ. P. 26(a)(1); *David v. Caterpillar, Inc.*, 324 F.3d 851 (7th Cir. 2003) (affirming district courts admitting witness testimony despite plaintiff's failure to amend 26(a)(1) when defendants were aware of the witness and subject of potential testimony eighteen months before trial); *Se-Kure Controls, Inc., v. Vanguard*, 2007 WL 781253, at *6–7 (N.D. Ill. 2007) (finding no grounds for exclusion because rules required only "that the information be made known in the context of the case itself" and that parties are under "no obligation to provide supplemental or corrective information" to their disclosures when that information is "otherwise made known to the other parties during the discovery process *or* in writing") (emphasis added). It would be difficult to imagine a civil litigation scenario in which a party has more notice of potentially admissible evidence in a case than Guevara has of his own past misconduct at issue in dozens of past and pending civil cases. Defendant Guevara and his counsel's inattention to Plaintiff's disclosures of Rule 404(b) evidence and witnesses during discovery in this case, and in other cases, should not be rewarded.

**K.      Judicial Determinations of Guevara's Misconduct**

Other than as set out above, Plaintiff does not intend to call undisclosed judges, state officials, or other witnesses to opine about Defendant Guevara's past misconduct. To the extent that Defendants' Motion *in Limine* No. 8 seeks exclusion of such information, Plaintiff states that he does not intend to introduce such evidence, except in connection with the other acts expressly identified above.

## CONCLUSION

For all of the reasons set for above, Plaintiff respectfully requests that the Court deny Defendants motion to exclude Rule 404(b) evidence, consistent with the plan set forth in this response for presenting that evidence for permissible purposes.

Respectfully Submitted,

**DEMETRIUS JOHNSON**

By:     /s/ Steve Art
*One of Plaintiff's Attorneys*

Jon Loevy
Anand Swaminathan
Steven Art
Alyssa Martinez
LOEVY & LOEVY
311 N. Aberdeen St., Third Floor
Chicago, IL 60607
(312) 243-5900
steve@loevy.com